Robert L. Stepans
Ryan R. Shaffer
James C. Murnion
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT  59802
Tel: (406) 543-6929
Fax: (406) 721-1799
rob@mss-lawfirm.com
ryan@mss-lawfirm.com
james@mss-lawfirm.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, <br><br> Plaintiffs, <br><br> vs. <br><br> WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR., <br><br> Defendants. | Case No. CV-20-52-BLG-SPW <br><br> **PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANT WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(2), FED.R.CIV.P** |

Over the course of several decades, members and elders of the Jehovah's Witnesses in Hardin, Montana ("Hardin Congregation") engaged in a systematic pattern of sexually abusing children in the congregation.  Defendant Watch Tower

Bible and Tract Society of Pennsylvania ("WTPA"), in conjunction with

Defendant Watchtower Bible and Tract Society of New York ("WTNY"), directed

the Hardin Congregation to actively protect the pedophiles and the church from

anyone trying to enforce or abide by Montana law.  With the assistance of WTPA,

these pedophiles were able to abuse many different children, including Plaintiffs,

and did so undetected by Montana authorities over the course of decades.

To obscure the unspeakable horror suffered by these kids, the collective

Jehovah Witnesses entities seek to spread blame in an endless circle.  WTPA is

asking this Court to find that it does not have jurisdiction to hold WTPA

accountable for the acts and omissions it directed the Hardin Congregation to take,

i.e. to undermine Montana law and shield child rapists.  As described in the

Complaint, WTPA worked with WTNY to create a framework within which

predators were free to abuse children without fear of prosecution and with the

assurance that the church would not turn them in to law enforcement or case

workers, teachers, counselors, or others that could have intervened on behalf of the

children and stopped the abuse.

This Court has specific jurisdiction over WTPA based on the detailed

allegations in the Complaint, which are supported and corroborated by its exhibits

and the exhibits to this brief.  Montana has a strong interest in maintaining

jurisdiction over this case because WTPA was actively encouraging and directing

its elders, managers, directors, and congregations in Montana to act in violation of Montana law.

The named Jehovah Witness entities worked in concert to flaunt Montana law and allowed for many children in Montana to be victimized, and they did so to avoid legal liability.  WTPA and WTNY called the shots.  Together, they instructed the Hardin Congregation how to handle child sexual abuse at the hands of church members and the congregations complied with unfortunate efficacy. WTPA does not get to instruct the Hardin Congregation to protect sexual predators from Montana law on the one hand, and then ask for immunity from suit in Montana on the other.  The intentionality of WTPA's conduct in Montana, and the destructive impact it had on Plaintiffs' lives, is what makes this case so important. WTPA is not above Montana law, and Plaintiffs are entitled to their proverbial day in court against WTPA.

## I.     Background

Plaintiffs generally allege in their Complaint that several high-ranking officials of Hardin's local Jehovah Witness's congregation repeatedly sexually abused them in the 1970s and 80s when Plaintiffs were children.  *See generally*, Doc. 1 at ¶¶ 32-43. The same and additional church members knew of such abuse. However, based on the policies and direction of WTPA, those with knowledge of the abuse either did nothing to stop it or took action to conceal it, thereby actively

facilitating the continuation of such abuse, and, in any event, never reported the abuse to the police or child protective services.  *Id.* at ¶¶ 44-45.  As a result, the known and completely preventable sexual of abuse of Plaintiffs was allowed to continue, causing them lifelong and severe damages.  *Id.* at ¶¶ 46-47.

While the Jehovah Witnesses use "dozens" of legal entities to conduct their business, Plaintiffs sued WTPA because evidence indicates that it played a central role in  how child sexual abuse was concealed and facilitated at local congregations like the one in Hardin.  *Id.* at ¶¶ 11-31; https://www.jw.org/en/jehovahs-witnesses/faq/watchtower-society/ (attached as **Exhibit A**).  For instance, WTPA is involved in publishing the Jehovah Witnesses' "Bible-based literature."  **Ex. A**.  Such literature included directives to local congregations (such as the Hardin Congregation) to conceal child sexual abuse from local authorities and non-church members.  Doc. 1 at ¶¶ 17-21; examples of written church policies attached as **Exhibit B**.

## II.     Law

"In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper."  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  "If the district court decides the motion without an evidentiary hearing, . . . then 'the plaintiff need only make a prima facie showing of the jurisdictional facts.'"  *Id.*

(quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)).  "Uncontroverted allegations in the plaintiff's complaint must be taken as true.  Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor."  *Id.* (internal citations and quotation marks omitted).

Where "no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits."  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citing Fed. R. Civ. P. 4(k)(1)(A)).  The Montana Supreme Court uses a two-part test to analyze whether personal jurisdiction over a nonresident defendant is proper:

> We first determine whether personal jurisdiction exists under M.R. Civ. P. 4(b)(1).  Personal jurisdiction may exist under Rule 4(b)(1) in one of two ways: a party may be found within the state of Montana and subject to general jurisdiction, or the claim for relief may arise from any of the acts listed in Rule 4(b)(1)(A-G) and create specific jurisdiction for the purpose of litigating that particular claim.  If personal jurisdiction exists under the first step of the test, we then determine whether the exercise of personal jurisdiction conforms with the traditional notions of fair play and substantial justice embodied in the due process clause.

*Milky Whey, Inc. v. Dairy Partners*, LLC, 342 P.3d 13, 17 (Mont. 2015) (internal citations and quotation marks omitted).

"Montana courts may exercise specific jurisdiction over any person 'as to any claim for relief arising from the doing personally, **or through an employee or agent**, of any of the … acts' listed in the state's 'long-arm statute,' adopted in Montana through this Court's Rules of Civil Procedure."  *Id.* (quoting Mont. R.

Civ. P. 4(b)(1)(A-G)) (emphasis added).  The long-arm act relevant here is "the

commission of any act resulting in accrual within Montana of a tort action."  Mont.

R. Civ. P. 4(b)(1)(B).

> The Ninth Circuit applies a three-part due process test:
>
> The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable.

*Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995) (citing

cases).

## III.   Argument

### a. The WTPA affidavit cannot be accepted as complete and accurate because it is contradicted by other evidence.

WTPA's sole support for its motion is the Affidavit of its general counsel,

Philip Brumley, Esq. ("Brumley"), which alleges WTPA's sole reasons for

existence are to hold the copyright to the published materials at issue in this case

and provide international humanitarian aid.  Doc. 14-1.  On its face, the Brumley

affidavit is self-serving, conclusory, and lacks factual details or evidentiary support

that would permit a reasonable analysis of its accuracy.[1]  Worse, several of Brumley's key assertions are directly contradicted by other more reliable sources. By way of example, while Brumley asserts WTPA does not publish anything, the Jehovah Witnesses website plainly states that WTPA "is used by Jehovah's Witnesses to support their worldwide work, which includes **publishing** Bibles and Bible-based literature."  Doc. 14-1 at ¶¶ 14-15; **Ex. A** (emphasis added).

Further, Plaintiffs are in possession of two documents that prove WTPA is not the passive entity portrayed in the affidavit.  The first is a letter dated September 18, 1970 from WTPA to the Bethel family.  Letter attached as **Exhibit C**.  In the letter, WTPA informs the Bethel family that one of its members has been dismissed as unfit to be associated with the church.  **Ex. C**.  This letter raises serious doubts about the accuracy of Brumley's statement that WTPA "does not appoint or remove elders, ministerial servants or publishers in congregations of Jehovah Witnesses in Montana."  Doc. 14-1 at ¶ 12.

The second document is a letter dated May 9, 2002 from WTPA to BBC Panorama.  Letter attached as **Exhibit D**.  Therein, WTPA describes in detail its policies and procedures for how local congregations should handle child sexual

---

[1] For example, many of Brumley's allegations are framed in the present tense and do not even purport to address the time period in which the abuse occurred.

abuse committed by one of their members. **Ex. D**. This letter begs the question: if WTPA merely holds copyrights and "provides international humanitarian aid", as stated by Brumley, then why is it responding to the BBC's questions about the church's policies and procedures for handling child sexual abuse in the church? Doc. 14-1 at ¶ 13; **Ex. D**.

Material inconsistencies between Brumley's affidavit and other more objective evidence renders the affidavit wholly unreliable. It would set a dangerous precedent if defendants could avoid jurisdiction by simply submitting a conclusory and unsupported affidavit from their general counsel. The Court should accordingly disregard the affidavit. *See, e.g., Casey v. Lewis,* 4 F.3d 1516, 1527 (9th Cir. 1993) ("Conclusory affidavits that do not affirmatively show personal knowledge of specific facts are insufficient.").

**b. Watch Tower is subject to specific personal jurisdiction because its actions in Montana resulted in the accrual of Plaintiffs' tort claims.**

Specific jurisdiction is proper where, as here, through its own actions or the actions of an employee or agent, there results an accrual within Montana of a tort action. Mont. R. Civ. P. 4(b)(1)(B). "'Specific' or 'case-linked' jurisdiction depends on an affiliation between the forum and the underlying controversy, principally an activity or occurrence that takes place in the forum state and is therefore subject to the state's regulation." *Tackett v. Duncan*, 334 P.3d 920, 925 (Mont. 2014). "[S]pecific jurisdiction focuses on the relationship among the

defendant, the forum, and the litigation, and depends on whether the defendant's suit-related conduct created a substantial connection with the forum state[.]" *Id.* (internal citations and quotation marks omitted).

Here, Plaintiffs have alleged that WTPA (in conjunction with WTNY) implemented the policies and procedures that local congregations were to follow in cases of child sex abuse in the 1970s and 80s. Specifically, WTPA and WTNY developed and enforced the policy prohibiting church members from reporting child sex abuse to anyone outside of the church, including law enforcement. The Elders of the Hardin Congregation followed this policy and concealed the sexual abuse of Plaintiffs from law enforcement and failed to take any reasonable steps to stop it, thus allowing the abuse to continue unhindered for years.

Moreover, Plaintiffs have alleged that, at all times relevant, the church members who were aware of the abuse, but did nothing to stop it, were acting as agents of WTPA. Doc. 1 at ¶ 43. The Brumley affidavit does not controvert this fact, and for the purpose of the pending motion, it must be taken as true. *Boschetto*, 539 F.3d at 1015 ("Uncontroverted allegations in the plaintiff's complaint must be taken as true."). Plaintiff has adequately plead and supported its allegations that WTPA's actions, both directly and through its agents, resulted in the accrual of a tort in Montana. As such, the Court exercising specific personal jurisdiction over WTPA is appropriate.

c.  **WTPA purposefully availed itself to the privileges of Montana because it directs and controls the Hardin Congregation in Montana.**

As set forth by the United States Supreme Court:

> This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts or of the "unilateral activity of another party or a third person[.]"  Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a "substantial connection" with the forum State. Thus where the defendant "deliberately" has engaged in significant activities within a State or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985) (internal citations omitted).[2]  "A nonresident defendant purposefully avails itself of the benefits and

---

[2]WTPA suggests the *Calder* "effects" or "purposeful direction" test applies because Plaintiffs' claims sound in tort.  Doc. 14 at 13.  However, the Ninth Circuit has expressly stated that the effects test does not apply in negligence cases. *Holland Am. Line Inc. v. Wartsila N.A., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) ("it is well established that the *Calder* test applies only to intentional torts, not to the breach of contract and negligence claims presented here.").  All of Plaintiffs' claims against WTPA are negligence claims and *Calder* does not apply to this case.

protections of the laws of the forum state when it takes voluntary action designed to have an effect in the forum." *B.T. Metal Works and Daryl Boyd, D.B.A. v. United Die and Mfg. Co.*, 100 P.3d 127, 134 (Mont. 2004).

Here, nothing about WTPA's actions are "random", "fortuitous", or "attenuated". Plaintiffs have alleged that WTPA (in conjunction with WTNY) created, published, and distributed to the Hardin Congregation policies and procedures that protected known child predators. *See B.T. Metal Works*, 100 P.3d at 134 (defendant who knowingly shipped materials to Montana, *inter alia*, purposefully availed itself to Montana jurisdiction.). The Elders of the Hardin Congregation followed WTPA's directives and concealed the sexual abuse committed by its members and agents, resulting in the years-long abuse of Plaintiffs.

While Brumley's affidavit disputes these allegations, the affidavit is incomplete and inaccurate. Contrary to Brumley's affidavit, the Jehovah Witnesses website states that WTPA "is used by Jehovah's Witnesses to support their worldwide work, which includes **publishing** Bibles and Bible-based literature." Doc. 14-1 at ¶¶ 14-15; **Ex. A** (emphasis added). However, even if the Court accepts Brumley's assertion that WTPA is merely the copyright holder to the subject policies and procedures that were published in Montana, that means it permitted WTNY to print and distribute such materials to Montana. To be sure, as

the copyright holder, WTPA had the right to control the copyrighted material, and to prevent WTNY and others from copying and distributing such material.  *See* 17 USC § 106; *see also Harper & Row, Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 551 (1985) (Implicit in the copyright holder's exclusive right to distribute copies of his work to the public is the right not to publish the work).  Whether WTPA itself distributed the materials or permitted WTNY to do the same, WTPA's conduct in Montana played a significant role in causing the sexual abuse of Plaintiffs to continue for years.

Moreover, the Jehovah Witnesses expressly state its mission is "worldwide", which of course includes Montana.  **Ex. A**.  There are 20 local congregations in Montana, including the Hardin Congregation, some of which have existed for decades.[3]  *See Abbey v. Chubb Corp.*, CV 05-23-H-DWM, 2006 WL 8449567, at *2 (D. Mont. Apr. 10, 2006) (finding purposeful availment where defendant expressed an intent to operate in Montana, *inter alia*).  These Montana congregations, including Hardin, are supported by WTPA's conduct and activities. By virtue of its conduct in Montana, WTPA has enjoyed the benefit of spreading

---

[3] Plaintiffs' counsel was able to search for local congregations in Montana by visiting https://www.jw.org/en/jehovahs-witnesses/meetings/ and clicking on "Find a Location Near You".

its worldwide mission here.  This is a pervasive and continuing presence in

Montana supporting jurisdiction over WTPA by this Court.[4]

### d.  Plaintiffs' claims arise from WTPA's forum-related activities.

This prong of the due process test is easily satisfied here, and largely

overlaps with the specific personal jurisdiction analysis set forth above.  *See*

*Abbey*, 2006 WL 8449567, at *1 (recognizing long-arm statute analysis and due

process analysis are redundant).  Plaintiffs' allegations and evidence support a

conclusion that WTPA's policies and procedures for handling child sexual assault

were sent to the Elders of the Hardin Congregation.  It was church policy to

conceal child sex abuse instead of preventing it or reporting it to authorities, and

there is no evidence that the Hardin Congregation deviated or was excepted from

such policy.  The Elders relied on those policies to conceal the known sexual abuse

of Plaintiffs from authorities or otherwise take reasonable action to stop the abuse.

As a result, Plaintiffs suffered years of sexual abuse that could have been

prevented.

///

---

[4] This case has no similarity to those cited by WTPA where a nonresident is not

subject to personal jurisdiction in Montana by merely executing a contract with a

Montana resident.

**e.  Exercise of jurisdiction over WTPA is reasonable.**

"Once it has been decided that a defendant purposefully established

minimum contacts within the forum State, these contacts may be considered in

light of other factors to determine whether the assertion of personal jurisdiction

would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at

476–77.  "However, 'where a defendant who purposefully has directed his

activities at forum residents seeks to defeat jurisdiction, he must present a

compelling case that the presence of some other considerations would render

jurisdiction unreasonable.'"  *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d

1482, 1487 (9th Cir. 1993), *holding modified by Yahoo! Inc. v. La Ligue Contre Le

Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) (quoting *Burger King*,

471 U.S. at 477)); *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 443

P.3d 407, 413 (Mont. 2019), *cert. granted*, 140 S. Ct. 917 (2020) ("Once the

plaintiff demonstrates that the first element is satisfied—that the defendant

purposefully availed itself of the privilege of conducting activities in Montana—a

presumption of reasonableness arises, which the defendant can overcome only by

presenting a compelling case that jurisdiction would be unreasonable." (citing *B.T.

Metal Works*, 100 P.3d at 134).  Courts consider seven factors to determine if

jurisdiction is reasonable:

> (1) the extent of the defendants' purposeful interjection into the forum
> state's affairs; (2) the burden on the defendant of defending in the

forum; (3) the extent of conflict with the sovereignty of the
defendants' state; (4) the forum state's interest in adjudicating the
dispute; (5) the most efficient judicial resolution of the controversy;
(6) the importance of the forum to the plaintiff's interest in convenient
and effective relief; and (7) the existence of an alternative forum.
None of the factors is dispositive in itself; instead, we must balance all
seven.

*Core-Vent Corp*, 11 F.3d at 1487 (citing cases).

Considering all the factors, it is clear that jurisdiction over WTPA is

reasonable, and WTPA has not overcome the presumption of the same. *See Ford*

*Motor Co.*, 443 P.3d at 413.  (1) There are over a dozen of local congregations in

Montana, all of which receive publications owned by WTPA.  (2) While it claims

defending against this suit in Montana would be a burden, WTPA fails to

demonstrate or explain how the burden would be greater than the burden any

defendant endures, especially in light of its "worldwide" mission and presence.  (3)

There is no conflict with the sovereignty of Pennsylvania or New York.  (4)

Montana has an obvious interest in protecting its children from child sex abuse and

penalizing those that protect pedophiles.  Here, we have nonresident Defendants

that actively told their members in Montana to not report or stop known child sex

abuse because they believe they are above human laws.  This flagrant disregard for

Montana's laws and its children's health and safety creates an obvious interest in

adjudicating this case in Montana.  (5) A federal court in Montana will provide the

most efficient resolution of this controversy and there is no information to the

contrary.  (6) Montana is important to Plaintiffs claims because all of the abuse and its subsequent coverup occurred in Montana, and as already stated, a Montana-based court will provide efficient resolution to this controversy.  (7) New York is potentially an alternative forum because, like Montana, its legislature created a one-year statute of limitations window for child sex abuse suits.

   **f.  If the Court is inclined to grant WTPA's motion, Plaintiffs must be allowed an opportunity to conduct jurisdictional discovery.**

   For the reasons set forth above, the Court should deny WTPA's motion on the pleadings and the materials submitted thus far.  However, assuming arguendo that personal jurisdiction has not been adequately demonstrated, Plaintiffs must be given an opportunity to conduct jurisdictional discovery. *Butcher's Union Loc. No. 498, United Food and Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) ("Discovery should ordinarily be granted where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" (quoting *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 n. 1 (9th Cir. 1977))); *Laub v. U.S. Dept. of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003) ("Although a refusal to grant discovery to establish jurisdiction is not an abuse of discretion when 'it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction,' discovery should be granted when, as here, the jurisdictional facts are contested or more facts are needed." (citing cases)).

Here, the inconsistencies in Brumely's affidavit alone show that critical jurisdictional facts are contested and/or omitted entirely.  Moreover, it appears from WTPA's and WTNY's filings that they are working in concert to (a) get WTPA dismissed from this case and (b) push responsibility on the PA entity.  *See* Doc. 15 at ¶¶ 29-31, 44, 50 (WTNY Answer stating that allegations regarding published policies on child sexual abuse and their effect are not properly directed to WTNY).  Such issues raise the question of whether WTPA and WTNY are really separate and distinct entities, or whether they should be treated as one for the purposes of this litigation.[5]

If the motion is not denied outright, Plaintiffs must be allowed jurisdictional discovery, including but not limited to: (1) written discovery and a deposition of Brumley to explore the full extent of WTPA's involvement with local congregations generally and the Hardin Congregation specifically; and (2) written discovery and Rule 30(b)(6) depositions of WTPA and WTNY to explore their corporate relationship, whether they share the same directors, principals, general counsel or executives, whether they share offices, the degree to which they

---

[5] Plaintiffs have filed concurrently with this brief their Amended Complaint seeking to pierce the corporate veil of WTPA and WTNY.

conspired in directing the Hardin Congregation to protect pedophiles, and other issues relevant to piercing the corporate veil.

### IV.    Conclusion

WTPA is not above the law.  The directives it created, published, and distributed to Montana ensured pedophiles that their horrific crimes would never be reported to the authorities or otherwise hindered by the church.  This pedophile haven resulted in Montana children like Plaintiffs suffering years of sexual abuse that was known to be occurring by church officials, who, at the direction of WTPA and WTNY, did nothing to stop it.  Montana has the unique interest in ensuring that its laws proscribing child molestation and mandatory reporting are obeyed by nonresident entities that choose to enter Montana.  For all the reasons set forth above, personal jurisdiction of WTPA is proper and WTPA's motion should be denied.

DATED this 13th day of July, 2020.

By: /s/ Ryan Shaffer
      Robert L. Stepans
      Ryan R. Shaffer
      James C. Murnion
      MEYER, SHAFFER & STEPANS PLLP
      *Attorneys for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 7.1</u>

Plaintiff certifies that this Brief in Response has 3,919 words and is in compliance with L.R. 7.1(d)(2).

MEYER, SHAFFER & STEPANS, PLLP

/s/ Ryan Shaffer
By: Ryan R. Shaffer
*Attorneys for Plaintiff*