*Exhibit D*

# WATCH TOWER
Bible and Tract Society of Pennsylvania
Office of Public Information
25 Columbia Heights, Brooklyn, NY 11201-2483, U.S.A.
Phone: (718) 560-5600   Fax: (718) 560-5619

*Original via fax*

May 9, 2002

Betsan Powys
BBC Panorama

Dear Ms. Powys:

This is in response to your fax of April 30, 2002, in which you advise us that BBC-TV is preparing a program on the way Jehovah's Witnesses handle child abuse matters. You have kindly offered us the opportunity to be interviewed on-camera; however, we must respectfully decline.

We are not opposed to giving interviews in general; however, it is likely that among those whose views will be expressed on your broadcast will be some persons who are Jehovah's Witnesses. In our view, it would be neither proper nor Scriptural for us to place ourselves in what might turn out to be an adversarial position with our Christian brothers and sisters in a public setting. (1 Corinthians 6:1-8; Ephesians 4:2) We trust that you will understand our position in this regard.

Although unable to participate in an interview, we are certainly willing to comment on the questions that you raised in your fax. We note that these center almost exclusively on the nature of the records that we keep on alleged child abusers. You tell us that it is vital that we answer your questions on our record-keeping procedures because of the "very serious nature of the allegations made to the programme," although you do not specify what the allegations are. First of all, however, please allow us to comment on the way that child abuse accusations are handled by Jehovah's Witnesses. We realize that you did not ask us to touch on this aspect; nevertheless, it is essential that we comment on it to provide an appropriate, frank answer.

In the United States, when any one of Jehovah's Witnesses is accused of an act of child abuse, the local elders are expected to investigate. The procedure is as follows. Two elders meet separately with the accused and the accuser to see what each says on the matter. If the accused denies the charge, the two elders may arrange for him to have the opportunity to confront the accuser in their presence. If during that meeting the accused still denies the charges and there are no others who can substantiate them, the elders cannot take action within the congregation at that time. Why not? As a Bible-based organization, we must adhere to what the Scriptures say, namely, "No single witness should rise up against a man respecting any error or any sin . . . at the mouth of two witnesses or at the mouth of three witnesses the matter should stand good." (Deuteronomy 19:15) Jesus reaffirmed this principle as recorded at Matthew 18:15-17.

When the branch office receives an allegation of child abuse, a check of the records might reveal that similar, uncorroborated allegations were lodged against the same person in the past, perhaps when he was living in another part of the country. When a second credible allegation by a different person is lodged against the same individual, the elders are authorized by the Scriptures to handle the case.

However, even if the elders cannot take congregational action, they are expected to report the allegation to the branch office of Jehovah's Witnesses in their country, if local privacy laws permit. Again, privacy laws permitting, a record is made at the branch office that the individual has been accused of child abuse. Each branch office of Jehovah's Witnesses keeps its own records, if that is allowed by local jurisdiction. In the United States we do not have records of child abusers who live in other lands. If privacy laws do not allow such records to be kept, the elders do whatever is permitted within the law to see to it that children are protected. The aim is to balance the right to privacy of the individual with the overriding need to protect the safety of children.—1 Timothy 5:19.

In addition to making a report to the branch office of Jehovah's Witnesses, the elders may be required by law to report even uncorroborated or unsubstantiated allegations to the authorities. If so, we expect the elders to comply. Additionally, the victim may wish to report the matter to the authorities, and it is his or her absolute right to do so. In the United States, reporting requirements vary from state to state. It can be quite a challenge to keep abreast of the reporting requirements, but our Legal Department makes every effort to do so.

If, when confronted, the accused confesses that he is guilty of child abuse, the elders take appropriate action. If he is not repentant, he will not be permitted to remain a member of the congregation. Even if he is repentant--is cut to the heart, and is thus resolutely determined to avoid such conduct in the future--what was stated in the January 1, 1997, issue of The Watchtower applies. The article said: "For the protection of our children, a man known to have been a child molester does not qualify for a responsible position in the congregation. Moreover, he cannot be a pioneer [full-time missionary of Jehovah's Witnesses] or serve in any other special, full-time service." (1 Timothy 3:2, 7-10) We take such action because we are concerned with maintaining Bible standards and protecting our children. Everyone in our organization is expected to meet the same requirements, namely, to be clean physically, mentally, morally, and spiritually.—[2 Corinthians] 7:1; Ephesians 4:17-19; 1 Thessalonians 2:4.

In a few instances, individuals guilty of an act of child abuse have been appointed to positions within the congregation if their conduct has been otherwise exemplary for decades. All of the circumstances would need to be considered carefully. Suppose, for example, that a long time ago a 16-year-old boy had sexual relations with a consenting 15-year-old girl. Depending upon the U.S. jurisdictions where he lived when this happened, elders are required to report this as an incident of child abuse. Let us say that twenty years have passed. The child abuse reporting law may have changed; he may even have married the girl! Both have been living exemplary lives and they are respected. In such a rare case, the man could possibly be appointed to a responsible position within the congregation.

Our procedures have been refined over time. Our policy over the past several years has been that at least twenty years must have passed before an individual who committed an act of child abuse could even be considered for appointment to a responsible position in the congregation, if ever. The Bible teaches that individuals can repent of their sins and "turn to God by doing works that befit repentance," and we accept what the Bible says. (Acts 26:20) Still, the safety of our children is of the utmost importance, so we realize that the local elders must be very careful when recommending individuals who may have been guilty of an act of child abuse in the distant past.

You have been told that here in the United States we have compiled a list of 23,720 names of child abusers. That is false. First of all, the total number of names in our records is considerably lower

Betsan Powys
May 9, 2002
Page 3

than that. In addition, it is not meaningful to focus on the number of names we have in our records. This is because our figures include the names of many persons who have only been accused of child abuse whereas the charges have not been substantiated. We keep these records to document our compliance with what the law requires in many U.S. jurisdictions. Also included on our list are allegations made on the basis of so-called "repressed memories," the validity of which many authorities challenge. Then there are the names of persons who have been accused of abusing children before becoming Jehovah's Witnesses as well as individuals who have never been baptized Witnesses but whose names we are obliged to keep because of their association with the Witnesses. (An example of this would be a non-Witness father or step-father who is accused by his Witness children or step-children of abusing them.) To be safe, we also list the names of persons who may or may not be considered as child abusers, depending upon the jurisdiction where they live (for example, that 16-year-old boy who had sexual relations with the consenting 15-year-old girl). The name of an individual who was guilty of voyeurism or involved with child pornography, as further examples, would also be included on the list. And, to be sure, the list also includes names of persons who are actually guilty of child abuse. We do not apologize for keeping such records here in the United States. Apart from being legally needed, they have been very helpful to us in our efforts to protect the flock from harm. (Isaiah 32:2) Christian parents can rightly feel secure in the knowledge that such efforts are made to screen out possible child abusers from appointment to responsible positions within the congregation.

Ms. Powys, please do not conclude that we believe that our system is perfect. No human organization is perfect. But we do believe that we have a strong, Bible-based policy on child abuse. Anyone in a responsible position who is guilty of child abuse would be removed from his responsibilities without hesitation. We certainly would not knowingly transfer him to serve elsewhere.

Child abuse is abhorrent to us. Even one abused child is one too many. At least since 1981, our journals, *The Watchtower* and *Awake!*, have featured articles to educate both Witnesses and the public regarding the importance and need to protect children from child abuse. Among others, there was the article "Let Us Abhor What Is Wicked!" published in the January 1, 1997, issue of *The Watchtower*; "Help For the Victims of Incest" in the October 1, 1983, *Watchtower*; "Your Child Is in Danger!", "How Can We Protect Our Children?", and "Prevention in the Home," all in the October 8, 1993, *Awake!*, as well as "Child Molesting—Every Mother's Nightmare" in the January 22, 1985, *Awake!* Over the years, as we have noted areas where our policies could be strengthened, we have followed through. We are continuing to refine them.

We trust that you will find the information in this letter to be helpful. As you will note, we have responded to the broad issues you raise rather than providing specific answers to your detailed list of questions. We note that you sent a similar list of questions to our offices in London. We understand they are answering your questions in accordance with their procedures and adherence to British law. With every good wish, I am,

                Very truly yours,

                J. R. Brown
                Director
                Office of Public Information

JRB:at