Robert L. Stepans
Ryan R. Shaffer
James C. Murnion
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT  59802
Tel: (406) 543-6929
Fax: (406) 721-1799
rob@mss-lawfirm.com
ryan@mss-lawfirm.com
james@mss-lawfirm.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY,<br><br>          Plaintiffs,<br><br>vs.<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR.,<br><br>          Defendants. | Case No.<br><br>**FIRST AMENDED COMPLAINT AND JURY DEMAND** |

COMES NOW the Plaintiffs, Tracy Caekaert ("Caekaert") and Camillia Mapley ("Mapley"), by and through undersigned counsel, and for their causes of action and claims for relief against the Defendants, state and allege as follows:

## I. PARTIES, JURISDICTION & VENUE

1. Caekaert is a citizen and resident of Maricopa County, Arizona.

2. Mapley is a citizen and resident of Australia.

3. During all times relevant, Defendant Watchtower Bible and Tract Society of New York, Inc. ("Watchtower NY") is and was a New York corporation conducting business in the State of Montana, with its principal place of business in New York.

4. During all times relevant, Defendant Watch Tower Bible and Tract Society of Pennsylvania Inc. ("Watchtower PA") is and was a Pennsylvania corporation conducting business in the State of Montana, with its principal place of business in New York.

5. Defendant Bruce Mapley Sr. ("Mapley Sr.") is a citizen and resident of Jefferson County, Alabama.

6. During all times relevant, the events and claims described in this Complaint occurred in Big Horn County, Montana.

7. This Court has original subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 due to the diversity of citizenship of the parties hereto, and by virtue of the fact that the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

8. This Court may properly maintain personal jurisdiction over Watchtower NY and Watchtower PA because they are business entities operating in the State of Montana and this judicial district who's acts and omissions resulted in the accrual of the tort actions plead below, were directly involved in the acts and omissions at issue in this case, and their presence in and contacts with the State of Montana and this judicial district are sufficient to support an exercise of jurisdiction that comports with traditional notions of fair play and substantial justice.

9. This Court may properly maintain personal jurisdiction over Mapley Sr. because his acts and omissions within this federal judicial district resulted in the accrual of the tort actions plead below, and his presence in and contacts with the State of Montana and this judicial district are sufficient to support an exercise of jurisdiction that comports with traditional notions of fair play and substantial justice.

10. Venue is proper under 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

## II. FACTS COMMON TO ALL CLAIMS

At all times relevant to the claims made herein:

11. The Jehovah's Witness Church ("Church") is structured hierarchically.

12. Watchtower NY is the head of the religion and the Church and exercises control of the Church and the operation of local congregations.

13. New members of the Church are given the title of Unbaptized Publisher.

14. Unbaptized Publishers can be promoted sequentially to Baptized Publisher, Ministerial Servant, and finally, Elder.

15. In each promotion, the local congregation recommends members for promotion, and Watchtower NY ultimately decides whether to promote a member after vetting the member.

16. Baptized Publishers, Ministerial Servants, and Elders are all agents of their local congregation and Watchtower NY and PA.

17. Watchtower PA is the publishing wing of the Church, responsible for creating and transmitting church policy and doctrine to local congregations and members.

18. The Church, through Watchtower NY and Watchtower PA, instructs its members to report wrongdoing to their local Elders, rather than reporting such conduct to law enforcement.

19. The Church, through Watchtower NY and Watchtower PA, controls how allegations of child sexual abuse committed by church members are handled.

20. The Church, through Watchtower NY and Watchtower PA, instructs and commands its local congregations to not report child sexual abuse to law enforcement or child protective services.

21. Instead of allowing law enforcement to investigate and prosecute allegations of child sexual abuse by church members, the Church, through Watchtower NY and Watchtower PA, has adopted its own process for the investigation, prosecution, and punishment of church members that are accused of sexual abuse (the "Watchtower Protocols").

22. Records of Watchtower's Protocols are maintained by both the local congregation and Watchtower NY.

23. Pursuant to the Watchtower Protocols, when a local congregation's Elders determine that allegations of sexual abuse are true, they are instructed to not report it to law enforcement and thereby keep it secret.

24. Pursuant to the Watchtower Protocols, when a local congregation's Elders determine that allegations of sexual abuse are true, they institute one of three types of punishment: private reproof, public reproof, or disfellowship.

25. Pursuant to the Watchtower Protocols, when a local congregation's Elders determine that allegations of sexual abuse are true the Elders merely announce to the local congregation that the member is being punished,

without telling the local members what the punishment is for or warning its members that the person being punished is a sexual abuser.

26. Pursuant to the Watchtower Protocols, when a local congregation's Elders determine that allegations of sexual abuse are true, Watchtower NY permits the sexual abuser to rejoin the church without restrictions or warnings to others.

27. Watchtower's Protocols have been instituted by Watchtower NY and Watchtower PA to supplant the mandatory reporting requirements of Montana with its own policy of secrecy of, and tolerance for, child sexual abuse.

28. By prohibiting church members from reporting sexual abuse to law enforcement and enacting its own Watchtower Protocols, Watchtower NY and Watchtower PA have accepted the unique and special responsibility of protecting minors from sexual predators.

29. The Watchtower Protocols is intended to protect the reputation of the church rather than protect people from sexual predators.

30. The Watchtower Protocols fails to take any reasonable steps to protect its members and members of the public, including Plaintiffs, from child sexual abuse.

31. The Watchtower Protocols's published materials instructing Church members to not report child abuse to law enforcement effectively protecting sexual predators and fostering an environment within the Church that encouraged childhood sexual abuse without consequence.

32. Watch Tower PA and Watchtower NY are the alter egos of each other that have been used as a subterfuge to defeat public convenience, justify wrong, and/or perpetuate fraud, such that piercing the corporate veil is appropriate.

33. Defendant Mapley Sr. and his family, including Caekaert and Mapley, joined the Hardin, Montana Congregation of Jehovah Witnesses ("Hardin Congregation") in or around 1973 after being recruited by Gunner Haines ("Haines") and his wife, Joyce Haines.

34. At that time, Mapley Sr. had been sexually abusing Plaintiffs approximately twice a week for several years. The abuse occurred whenever Shirley Mapley left the house and generally consisted of forced oral sex and fondling the girls' genitals.

35. Mapley Sr. used intimidation, threats, and force to ensure Plaintiffs were both compliant and remained silent about the sexual abuse.

36. Haines sexually abused Plaintiffs in his home sometime in 1976 or 1977.

37. The abuse consisted of forced oral sex on Caekaert who 11 years was approximately old at the time.  Aff. of Shirley Gibson, ¶ 3, March 26, 2020 (attached as **Exhibit A**).

38. Shortly after being sexually abused by Haines, and before 1979, Caekaert informed Mapley Sr. of the sexual abuse inflicted by Haines.

39. Shortly after Caekaert reported Haines' sexual absue and before 1979, Haines confessed to the Elders of the Hardin Congregation that he had assaulted Caekaert.  **Ex. A** at ¶ 4.

40. At that time or shortly thereafter, Mapley Sr. self-confessed to the Elders of the Hardin Congregation that he had also sexually abused Plaintiffs.

41. At the time of the events set forth herein, Mapley Sr. and Haines were both Ministerial Servants with the Hardin Congregation, and thus agents of the Church, when they were sexually abusing Plaintiffs.

42. Pursuant to the Watchtower Protocols, Elder Martin Svensen ("Svensen") and two other Elders investigated the allegations of sexual abuse against Mapley Sr. and Haines.

43. At the time of the events set forth herein, Svensen was the Senior Elder of the Hardin Congregation and was himself engaged in serial sexual abuse of children.  Aff. of James Rowland, ¶¶ 4, 7, April 14, 2020 (attached as **Exhibit B**).

44. At all times relevant, Svensen, Mapley Sr., and Haines were agents of Watchtower NY and Watchtower PA.

45. Pursuant to the Watchtower Protocols, Mapley Sr.'s and Haines' serial sexual abuse of Plaintiffs was minimized and their punishment was negligible, which merely consisted of the Elders announcing to the Hardin Congregation that the men had committed a wrongdoing, without disclosing any details of the wrongdoing, and temporarily relieving the men of their positions and duties in the Church.

46. Pursuant to the Watchtower Protocols, none of the Defendants, nor Svensen or Haines, reported the sexual abuse to law enforcement or child protective services as required by applicable law at the time. **Ex. A** at ¶ 4-5.

47. Pursuant to the Watchtower Protocols, and within a year of having admitted to abusing Caekaert, Mapley Sr. and Haines were permitted to rejoin the Church in positions of authority, and as agents and representatives of the church. **Ex. A** at ¶ 6.

48. Thereafter, and because the Watchtower Protocols protects sexual predators, Mapley Sr. continued to sexually abuse Caekaert and Mapley throughout their childhood.

49. By prohibiting disclosure of sexual abuse within the church to law enforcement, Watchtower NY and Watchtower PA failed to take reasonable

steps to protect children in the community, including Plaintiffs, from continued and repeated sexual abuse.

50. By failing to adequately investigate and punish admitted instances of sexual abuse within the church, Watchtower NY and Watchtower PA failed to take reasonable steps to protect children in the community, including Plaintiffs, from continued and repeated sexual abuse.

51. The Watchtower Protocols failed to enact and implement any reasonable steps to prevent the continued sexual abuse of Caekaert and Mapley, and thereby effectively permitted and sanctioned such abuse to continue.

52. As a result of the sexual abuse perpetrated by Mapley Sr. and Haines that went unreported and unhindered by Svensen and the Church, Caekaert and Mapley have suffered severe, debilitating, lifelong emotional and psychological damage.

53. Defendant Mapley Sr. admitted to the commission of the act of childhood sexual abuse against Plaintiffs and Defendant Watchtower NY or Defendant Watchtower PA has a record of this admission in its possession.

54. Plaintiffs can establish that officers, directors, officials, volunteers, representatives, and/or agents of Defendant Watchtower NY knew, had reason to know, or were otherwise on notice of widespread unlawful childhood sexual abuse by employees, officers, directors, officials,

volunteers, representatives, and/or agents of the Church and Watchtower NY failed to take reasonable steps to prevent future acts of such unlawful sexual abuse.

55. Plaintiffs can establish that officers, directors, officials, volunteers, representatives, and/or agents of Defendant Watchtower PA knew, had reason to know, or were otherwise on notice of sexual abuse against Plaintiffs by employees, officers, directors, officials, volunteers, representatives, and/or agents and failed to take reasonable steps to prevent future acts of such unlawful sexual abuse.

56. In 1997, the Church, through Watchtower NY and Watchtower PA, instructed elders to send a report to Watchtower NY of anyone who is currently serving or who formerly served in a Watchtower appointed position that is known to have engaged in childhood sexual abuse.  Aff. Of Mark O'Donnell, ¶¶ 11-12, April 15, 2020 (attached as **Exhibit C**).

57. Watchtower NY maintains a complete file of these reports (the "Watchtower Sexual Abuse Database").  **Ex. C** at ¶ 13.

58. Watchtower NY keeps the Watchtower Sexual Abuse Database secret.  **Ex. C** at ¶ 13.

59. Upon information and belief, Watchtower NY and/or Watchtower PA are in possession of the Watchtower Sexual Abuse Database and other documents

that contain evidence that Mapley Sr. and Haines admitted to sexually abusing Plaintiffs.

60. Recently, in other child sexual abuse cases, Watchtower NY has refused to produce in discovery the Watchtower Sexual Abuse Database and other documents in its possession that document admissions of childhood sexual abuse by church agents and representatives. *E.g. Padron v. Watchtower Bible & Tract Socy. of New York, Inc.,* 225 Cal. Rptr. 3d 81, 86 (Cal. App. 4th Dist. 2017); J.*W. v. Watchtower Bible and Tract Socy. of New York, Inc.*, 241 Cal. Rptr. 3d 62, 67 (Cal. App. 4th Dist. 2018), *reh'g denied* (Dec. 31, 2018), *review denied* (Mar. 27, 2019), *cert. denied*, 140 S. Ct. 217 (2019).

### III.  CLAIMS

#### First Claim: Negligence
(All Defendants)

61. All of the allegations contained in the preceding paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in full.

62. Defendants owed Plaintiffs the duty to act with the care that a reasonable person would exercise.

63. Without limitation, Defendants Watchtower NY and Watchtower PA breached such duty by: implementing the Watchtower Protocols; failing to

take reasonable steps to prevent known and unknown sexual predators from sexually abusing children in the Church's community; publishing material and directives that protected sexual predators within the Church and failed to protect victims of sexual abuse committed by agents and representatives of the Church; failing to report known sexual abuse committed by agents and representatives of the Church; ignoring mandatory reporting laws and keeping known child sex abuse secret; failing to train its employees and agents to prevent, identify, investigate, respond to, or report to the proper authorities the sexual abuse of children; failing to properly and thoroughly investigate, respond to, and report the sexual abuse of Plaintiffs; employing, promoting, and allowing Svensen to continue to act as Senior Elder despite being a known child abuser; fostering an environment where sexual predators like Mapley Sr., Svenson, and Haines could abuse children, including the Plaintiffs, without consequence.

64. Defendant Mapley Sr. in both his individual capacity and as an agent and representative of the Church, breached such duty by sexually abusing Plaintiffs and failing to take reasonable steps to protect them from sexual abuse.

65. As a direct and proximate cause of Defendants' breaches, Plaintiffs have suffered damages.

## Second Claim: Negligence Per Se
(All Defendants)

66. All of the allegations contained in the preceding paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in full.

67. Defendants violated Montana's mandatory reporting statute as it existed at all times relevant to this case, including all years before 1979, by not reporting the sexual abuse of Plaintiffs as required by the mandatory reporting statute.  R.C.M. 10-1304 (attached as **Exhibit D**).

68. Montana's mandatory reporting statute in effect at the time that Defendants became aware of such abose was enacted to protect a specific class of people: children who are victims of abuse or neglect.

69. Plaintiffs were member of such class.

70. Plaintiffs' injuries are the sort that the statute was enacted to prevent.

71. The statute was intended to regulate members of Defendants' class.

72. As a direct and proximate cause of Defendants' violation of the statute, Plaintiffs have suffered damages.

///

///

///

## Third Claim: Battery
(Mapley Sr.)

73. All of the allegations contained in the preceding paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in full.

74. Defendant Mapley Sr. acted intending to cause a harmful or offensive contact with Plaintiffs.

75. An offensive and harmful contact with Plaintiffs occurred as a result.

76. As a direct and proximate cause of such intentional acts, Plaintiffs have suffered damages.

## Punitive Damages
(All Defendants)

77. All of the allegations contained in the preceding paragraphs of this Complaint are incorporated by reference herein as if the same were set forth in full.

78. Defendants are guilty of actual malice.

79. Defendants had knowledge of facts or intentionally disregards facts that created a high probability of injury to Plaintiffs and: (1) deliberately proceeded to act in conscious or intentional disregard of the high probability of injury to Plaintiffs; and/or (2) deliberately proceeded to act with indifference to the high probability of injury to Plaintiffs.

## IV. Prayer for Relief

WHEREFORE, Plaintiffs claim relief against Defendants as follows:

a. Judgment against Defendants for general damages in amounts consistent with the allegations contained herein and to be established by the evidence at trial.

b. Judgment against Defendants for special damages in amounts consistent with the allegations contained herein and to be established by the evidence at trial, including the continuing and ongoing harm Plaintiffs suffer to this day not only from the abuse itself, but the subsequent coverup.

c. Judgment against Defendants for the costs incurred in prosecuting these claims, including reasonable attorneys' fees.

d. Punitive damages in amounts consistent with the allegations contained herein and to be established by the evidence at trial.

e. Pre-judgment and post-judgment interest.

f. Such other and further relief as the Court deems just and equitable.

## V. Jury Demand

Plaintiffs hereby demand a jury trial on all issues allowed by applicable law.

DATED this 17th day of July, 2020.

///

/s/ Ryan Shaffer
Robert L. Stepans
Ryan R. Shaffer
James C. Murnion
*Attorneys for Plaintiff*