Guy W. Rogers
Jon A. Wilson
BROWN LAW FIRM, P.C.
315 North 24th Street
P.O. Drawer 849
Billings, MT 59103-0849
Tel. (406) 248-2611
Fax (406) 248-3128

Joel M. Taylor, Esq. (appearing *pro hac vice*)
MILLER MCNAMARA & TAYLOR LLP
100 South Bedford Road, Suite 340
Mount Kisco, New York 10549
Tel./E-Fax (845) 288-0844
*Attorneys for Defendants Watchtower Bible and Tract Society of New York, Inc.,
and Watch Tower Bible and Tract Society of Pennsylvania*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | Cause No. CV 20-52-BLG-SPW |
| Plaintiffs, | **DEFENDANT WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA'S PRELIMINARY PRETRIAL STATEMENT** |
| vs. | |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR., | |
| Defendants. | |

WATCHTOWER BIBLE AND
TRACT SOCIETY OF NEW YORK,
INC.

          Cross-Claimant,

vs.

BRUCE MAPLEY SR.,

          Cross-Claim Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

---

COMES NOW Defendant Watch Tower Bible and Tract Society of Pennsylvania (hereinafter "WTPA"), by and through its attorneys, and hereby submits its Preliminary Pretrial Statement pursuant to Local Rule 16.2(b)(1) and this Court's Order Providing for Jurisdictional Discovery (Doc. 32) dated August 18, 2020. Nothing herein waives, explicitly or implicitly, WTPA's claim it is not subject to personal jurisdiction in Montana. WTPA's arguments in that regard have been made in prior pleadings. *See* Doc. 13 (WTPA's Motion to Dismiss Pursuant to Rule 12(b)(2), Fed.R.Civ.P.); Doc. 14 (WTPA's Brief in Support of Motion to Dismiss Pursuant to Rule 12(b)(2), Fed.R.Civ.P.); and Doc. 25 (WTPA's Reply Brief in Support of Motion to Dismiss Pursuant to Rule 12(b)(2), Fed.R.Civ.P.)[1]. WTPA's position is that after Court-ordered jurisdictional discovery is completed, this Court should grant WTPA's Motion to Dismiss (Doc. 13).

---

[1] Doc. 25 references an "Exhibit 1"—Second Affidavit of Philip Brumley, Esq.—which was filed as Doc. 26.

## A. Brief Factual Outline of Case.

According to the allegations in Plaintiffs' First Amended Complaint and Jury Demand (hereinafter "First Amended Complaint") (Doc. 22), in or around 1973, co-Defendant Bruce Mapley Sr. and his family, including Plaintiffs Tracy Caekaert and Camillia Mapley, joined the Hardin, Montana Congregation of Jehovah's Witnesses (hereinafter referred to as the "Hardin Congregation"). Doc. 22, ¶ 33. At that time, Mr. Mapley Sr. had allegedly been sexually abusing Plaintiffs twice a week for several years. *Id.*, ¶ 34. Mr. Mapley Sr. allegedly "used intimidation, threats, and force to ensure Plaintiffs were both compliant and remained silent about the [alleged] sexual abuse." *Id.*, ¶ 35. Another member of the Hardin Congregation, Gunner Haines, allegedly sexually abused Plaintiffs in or around 1976 or 1977. *Id.*, ¶ 36.

Plaintiffs' First Amended Complaint alleges Ms. Caekaert informed Mr. Mapley Sr. of Mr. Haines' alleged sexual abuse and Mr. Haines confessed to the Elders of the Hardin Congregation. *Id.*, ¶¶ 38-39. Mr. Mapley Sr. also allegedly self-confessed to sexually abusing Plaintiffs to the Elders of the Hardin Congregation. *Id.*, ¶ 40. Both alleged confessions happened around 1979, at which time both Mr. Haines and Mr. Mapley Sr. were allegedly Ministerial Servants with the Hardin Congregation. *Id.*, ¶¶ 39-41. Plaintiffs allege Mr. Mapley Sr. continued to sexually abuse them throughout their childhood. *Id.*, ¶ 48.

Plaintiffs allege WTPA is liable under negligence, negligence per se, and punitive damage theories. *Id.*, ¶¶ 61-65 (negligence allegation); ¶¶ 66-72 (negligence per se allegation); and ¶¶ 77-79 (punitive damages allegation). WTPA's position is it is not subject to personal jurisdiction in Montana, and therefore Plaintiffs' claims against WTPA are not actionable in Montana. *See* Docs. 13, 14, and 25. As such, and until this Court rules on WTPA's pending Motion to Dismiss (Doc. 13), WTPA is not in a position to respond substantively to Plaintiffs' allegations against it.

## B. Basis for Federal Jurisdiction and Venue.

Plaintiffs assert federal jurisdiction is appropriate under 28 U.S.C. § 1332 based on diversity of citizenship and the amount in controversy exceeding $75,000 exclusive of interest and costs. *See* Doc 22, ¶ 7. Plaintiffs assert venue is proper in this Court under 28 U.S.C. § 1391 because "a substantial part of the events or omissions giving rise to these claims occurred in this judicial district." *Id.*, ¶ 10.

## C. Factual Basis of Each Claim or Defense.

As noted above, WTPA's position is it is not subject to personal jurisdiction in Montana. The factual basis for this position is addressed in Docs. 14 and 25, which are adopted and incorporated herein by reference. Summarily, WTPA is not at home in Montana, as it is a non-profit religious membership corporation formed under the laws of the State of Pennsylvania that has its registered office in Tuxedo

Park, New York. *See* Doc. 14, p. 3 (citing Affidavit of Phillip Brumley (Doc. 14-1), ¶¶ 3-4). Further, WTPA has not transacted business in Montana, nor has it done anything resulting in the accrual within Montana of a tort action. In fact, WTPA has not done anything related to this action aimed at anything or anyone in Montana. Thus, Plaintiffs cannot show the exercise of personal jurisdiction over WTPA is appropriate.

### D. Legal Theory Underlying Each Claim or Defense.

Again, WTPA's position is it is not subject to personal jurisdiction in Montana. The legal theory underlying WTPA's claim in this regard is Rule 12(b)(2), Fed.R.Civ.P. and case law regarding personal jurisdiction. Such case law is discussed at length in Docs. 14 and 25, which are adopted and incorporated herein by reference.

Summarily, WTPA is not "at home" in Montana as is required to authorize the exercise of general personal jurisdiction. *See First Natl. Bank of Sioux Falls v. Estate of Carlson*, 448 F.Supp.3d 1091, 1098 (D. Mont. 2020); *see also, DeLeon v. BNSF Ry. Co.*, 2018 MT 219, ¶ 8, 392 Mont. 446, 426 P.3d 1. Plaintiffs agree. *See* Doc. 21 (Plaintiffs' Response Brief in Opposition to WTPA's Motion to Dismiss advances no argument for why general personal jurisdiction over WTPA is proper).

Regarding specific personal jurisdiction, Plaintiffs cannot satisfy the first step of the personal jurisdiction inquiry—showing personal jurisdiction exists under

Montana's long-arm statute, Rule 4(b)(1), M.R.Civ.P.  *See DeLeon*, ¶ 10 (explaining first step of the test for personal jurisdiction) (citation omitted).   Even if Plaintiffs could satisfy the first step, however, the exercise of personal jurisdiction over WTPA would not comport with due process requirements.  *See id.* (explaining the second step of the personal jurisdiction inquiry) (citations omitted).   Indeed, Plaintiffs cannot satisfy the three-part test Montana courts have adopted to determine whether the exercise of personal jurisdiction over a foreign entity like WTPA comports with due process.  *See First Natl. Bank of Sioux Falls*, 448 F.Supp.3d at 1097-98 (setting forth the three-part test under the due process inquiry) (citations omitted).

### E. Computation of Damages.

WTPA has not claimed damages.  Rather, WTPA is contesting whether it is subject to personal jurisdiction in Montana.

### F. Pendency or Disposition of Related State or Federal Litigation.

As explained in the Joint Notice of Related Case (Doc. 16), the instant lawsuit shares similarities with Case No. CV-20-059-BLG-SPW.  WTPA has moved to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), Fed.R.Civ.P., in that case as well.  Other than Case No. CV-20-059-BLG-SPW, WTPA is unaware of any related state or federal litigation.

### G. Proposed Additional Stipulations of Fact and Understanding as to What Law Applies.

As WTPA is contesting personal jurisdiction, this section regarding proposed additional stipulations of fact is inapplicable until this Court rules on WTPA's pending Motion to Dismiss (Doc. 13).

Regarding what law applies to WTPA's pending Motion to Dismiss, WTPA understands this Court will apply Montana law, and, depending on whether Plaintiffs can satisfy the first step of the personal jurisdiction inquiry, federal law. *See First Natl. Bank of Sioux Falls*, 448 F.Supp.3d at 1096-98 (explaining what law Montana Federal Courts look to when ruling on a Motion to Dismiss for lack of personal jurisdiction).   Notwithstanding, as the Ninth Circuit has explained in a case discussing whether a foreign entity was subject to personal jurisdiction in Montana, "the jurisdictional analyses under state law and federal due process are the same." *King v. American Family Mut. Ins. Co.*, 632 F.3d 570, 579 (9th Cir. 2011) (citation omitted).

## H. Proposed Deadlines Relating to Joinder of Parties or Amendment of Pleadings.

As WTPA is contesting personal jurisdiction, this section is inapplicable until this Court rules on WTPA's pending Motion to Dismiss (Doc. 13).

## I. Identification of Controlling Issues of Law Suitable for Pretrial Disposition.

WTPA's position is its Motion to Dismiss (Doc. 13) is suitable for pretrial disposition. Until this Court rules on WTPA's pending Motion to Dismiss, WTPA is unaware of any other issues suitable for pretrial disposition.

**J. Name, City, and State of Current Residence of Each Individual Known or Believed to Have Information That may be Used in Proving or Denying any Party's Claims or Defenses, and a Summary of That Information.**

Again, WTPA's position is it is not subject to personal jurisdiction in Montana. Those who may have information pertinent to whether WTPA is subject to personal jurisdiction include the following individuals:

1. Philip Brumley, Esq.
   c/o Brown Law Firm, P.C.

Mr. Brumley is general counsel for WTPA and has submitted two affidavits (Docs. 14-1 and 26) which explain his personal knowledge of facts pertinent to the personal jurisdiction issue. As explained therein, Mr. Brumley has knowledge regarding WTPA as an entity. Summarily, Mr. Brumley has knowledge of the corporate formation history, where WTPA is located, the fact that WTPA is not a direct or indirect parent or subsidiary of co-Defendant WTNY, and WTPA's activities.

2. Other Representatives of WTPA (yet to be determined)
   c/o Brown Law Firm, P.C.

Other representatives of WTPA may have knowledge pertinent to the jurisdiction issue regarding WTPA. However, without knowing what information

Plaintiffs are looking for, WTPA does not know what representative(s) to list who can potentially speak to the information Plaintiffs request.

**K. Substance of any Insurance Agreement.**

WTPA is not aware of any insurance agreement(s) applicable to the claims in this matter.

**L. Status of Settlement Discussions and Prospects for Compromise.**

The parties have not yet discussed settlement. Given WTPA's pending Motion to Dismiss (Doc. 13), it is unknown whether this matter may be resolved by settlement. Again, WTPA's position is this Court should grant WTPA's Motion to Dismiss at the conclusion of jurisdictional discovery.

**M. Suitability of Special Procedures.**

**<u>WTPA's Position Statement Re: Scope of Jurisdictional Discovery</u>**

In their First Amended Complaint (Doc. 22), Plaintiffs allege that WTNY and WTPA "are the alter egos of each other that have been used as a subterfuge to defeat public convenience, justify wrong, and/or perpetuate fraud, such that piercing the corporate veil is appropriate." *See* Doc. 22, ¶ 32. In their Response Brief in Opposition to WTPA's Motion to Dismiss (Doc. 21), Plaintiffs allege questions exist regarding "whether WTPA and WTNY are really separate and distinct entities, or whether they should be treated as one for the purposes of this litigation." *See* Doc. 21, p. 17. Plaintiffs pointed out that they had filed an Amended Complaint "seeking

to pierce the corporate veil of WTPA and WTNY." *Id.* at n. 5. Plaintiffs have

indicated they want the scope of discovery to allow them to explore whether WTPA

and WTNY were a "single enterprise." *See* Doc. 36, pp. 4-5. Plaintiffs would also

like to depose WTNY, presumably for the "single enterprise" theory. *See id.* As

explained below, Plaintiffs' position in this regard lacks authority and should be

rejected accordingly.

### a. Plaintiffs' Proposed "Single Enterprise" Theory is not a Recognized Theory for Jurisdiction Purposes.

While Plaintiffs have advanced different names for their theory that WTPA

and co-Defendant WTNY should be treated as one, Plaintiffs have tried to

substantiate their proposed scope of jurisdictional discovery into such an alleged

connection by relying on a "single enterprise" theory. Courts in the Ninth Circuit

do not recognize such a "single enterprise" theory as a basis for jurisdiction. As one

court within the Ninth Circuit recently noted in an opinion addressing a similar

theory:

> Plaintiff's collective enterprise theory fails to persuade. As MLG
> points out, numerous courts in this circuit have rejected the use of such
> a theory as a basis for establishing jurisdiction. *See Iconlab Inc. v.
> Valeant Pharms. Int'l, Inc.*, No. 8:16-CV-01321-JLS-KES, 2017 WL
> 7240856, at *6 (C.D. Cal. Apr. 25, 2017) ("Plaintiffs' other, exotic
> theories of imputing contacts—'single enterprise,' 'aiding and
> abetting,' and 'ratification'—are not valid theories of establishing
> personal jurisdiction in the Ninth Circuit to the extent that they stray
> from the well-established alter ego and agency theories."); *Campanelli
> v. Image First Unif Rental Serv., Inc.*, No. 15-cv-04456, 2016 WL
> 4729173, at *7 (N.D. Cal. Sept. 12, 2016) (observing that " 'single

enterprise' and 'joint employer' theories are bases for liability, *not* tests for personal jurisdiction."); *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 990 (E.D. Cal. 2012) ("Here, even if plaintiff's allegation that the entity defendants were a 'consolidated farming enterprise that included every aspect of egg production' was true, that is not enough to demonstrate that each separate entity was actually involved in the sale and delivery of the allegedly tainted eggs by Quality Egg to NuCal in California.").

*Pitt v. Metropolitan Tower Life Ins. Co.*, 2020 WL 1557429, *4 (N.D. Cal. 2020). No Montana court appears to have recognized a "single enterprise" theory as a basis for personal jurisdiction. Thus, Plaintiffs' reliance on a "single enterprise" theory to support their proposed scope of jurisdictional discovery should be rejected.

### b. As WTPA and WTNY are not in a Parent-Subsidiary Relationship, Plaintiffs Should not be Allowed to Engage in a Fishing Expedition During Jurisdictional Discovery.

Even if Plaintiffs try to reframe their "single enterprise" justification to a recognized theory of jurisdiction like alter ego, Plaintiffs' proposed jurisdictional discovery into some alleged connection between WTPA and WTNY should still be rejected because Plaintiffs should not be permitted to engage in a "fishing expedition." As explained in *Consumer Financial Protection Bureau v. Think Finance, LLC,* under the recognized alter ego test for personal jurisdiction purposes, which allows one entity's forum contacts to be imputed to another's, a prima facie showing of the following two elements is required: (1) such unity of interest and ownership that the separate entities no longer exist; and (2) failure to disregard the entities' separateness would result in fraud or injustice. 2018 WL 3707911, *5 (D.

Mont. 2018) (citing *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071, 1073 (9th Cir. 2015)).

In *Ranza*, the Ninth Circuit explained, "[t]he 'alter ego…relationship is typified by

parental control of the subsidiary's internal affairs or daily operations." *Ranza*, 793

F.3d at 1071 (citation omitted).  The Ninth Circuit held, "the alter ego test may be

used to extend personal jurisdiction to a foreign parent *or* subsidiary when, in

actuality, the foreign entity is not really separate from its domestic affiliate." *Id.*,

793 F.3d at 1073 (citation omitted; italics in original).

Here, as Mr. Brumley has already testified, "WTPA is not the direct or indirect

parent or subsidiary of any other corporation involved in this action." *See* Doc. 14-

1, ¶ 6.  Mr. Brumley also testified, "WTPA has its own assets, liabilities, offices,

board of directors, and officers, separate from every other entity used by Jehovah's

Witnesses." *Id.*, ¶ 5.  As such, WTPA and WTNY are separate entities.  Since there

is nothing to suggest Mr. Brumley's testimony in these regards is false in any way,

such separateness between WTPA and WTNY should be respected.  Indeed, a

"general presumption" exists "in favor of respecting the corporate entity." *NuCal*

*Foods, Inc.*, 887 F.Supp.2d at 993 (citations omitted).

Pursuant to the foregoing, Plaintiffs should not be allowed to engage in a

"fishing expedition" during jurisdictional discovery in an attempt to substantiate an

inviable theory.  A "single enterprise" theory is unrecognized by courts within the

Ninth Circuit, and even giving Plaintiffs the benefit of the doubt, no alter ego theory

can be substantiated under the facts.  Indeed, a parent-subsidiary relationship is necessary to substantiate the recognized alter ego theory for personal jurisdiction, and WTPA has already explained via sworn testimony it is not in a parent-subsidiary relationship with WTNY.  This Court should therefore limit the scope of jurisdictional discovery and prohibit Plaintiffs from probing an alleged relationship between WTPA and WTNY.  This includes inquiry into matters regarding an alleged connection between WTPA and WTNY as well as a deposition of WTNY.  WTPA respectfully requests such relief.

DATED this 1st day of October, 2020.

By:   /s/ Guy W. Rogers
Guy W. Rogers
BROWN LAW FIRM, P.C.
*Attorneys for Defendants Watchtower
Bible and Tract Society of New York,
Inc., and Watch Tower Bible and
Tract Society of Pennsylvania*

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 1, 2020, a copy of the foregoing was served

on the following person(s):

1.      U.S. District Court, Billings Division

2.      Robert L. Stepans
          Ryan R. Shaffer
          James C. Murnion
          MEYER, SHAFFER & STEPANS, PLLP
          430 Ryman Street
          Missoula, MT 59802

3.      Bruce G. Mapley Sr.
          3905 Caylan Cove
          Birmingham, AL 35215

by the following means:

| 1, 2 | CM/ECF | _____ | Fax |
|------|--------|-------|-----|
| _____ | Hand Delivery | _____ | E-Mail |
| 3 | U.S. Mail | _____ | Overnight Delivery Services |

By:  /s/ Guy W. Rogers
      Guy W. Rogers
      BROWN LAW FIRM, P.C.
      *Attorneys for Defendants Watchtower*
      *Bible and Tract Society of New York,*
      *Inc., and Watch Tower Bible and*
      *Tract Society of Pennsylvania*