Guy W. Rogers
Jon A. Wilson
BROWN LAW FIRM, P.C.
315 North 24th Street
P.O. Drawer 849
Billings, MT 59103-0849
Tel. (406) 248-2611
Fax (406) 248-3128

Joel M. Taylor, Esq. (appearing *pro hac vice*)
MILLER MCNAMARA & TAYLOR LLP
100 South Bedford Road, Suite 340
Mount Kisco, New York 10549
Tel./E-Fax (845) 288-0844
*Attorneys for Defendants Watchtower Bible and Tract Society of New York, Inc.,*
*and Watch Tower Bible and Tract Society of Pennsylvania*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY,<br><br>Plaintiffs,<br><br>vs.<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR.,<br><br>Defendants. | Cause No. CV 20-52-BLG-SPW<br><br>**DEFENDANT WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.'S PRELIMINARY PRETRIAL STATEMENT** |

WATCHTOWER BIBLE AND )
TRACT SOCIETY OF NEW YORK, )
INC. )
)
        Cross-Claimant, )
)
vs. )
)
BRUCE MAPLEY SR., )
)
        Cross-Claim Defendant. )
)

COMES NOW Defendant Watchtower Bible and Tract Society of New York, Inc. (hereinafter "WTNY"), by and through its attorneys, and hereby submits its Preliminary Pretrial Statement pursuant to Local Rule 16.2(b)(1) and this Court's Order Providing for Jurisdictional Discovery (Doc. 32) dated August 18, 2020.[1]

**A. Brief Factual Outline of Case.**

According to the allegations in Plaintiffs' First Amended Complaint and Jury Demand (hereinafter "First Amended Complaint") (Doc. 22), in or around 1973, co-Defendant Bruce Mapley Sr. and his family, including Plaintiffs Tracy Caekaert and Camillia Mapley, joined the Hardin, Montana Congregation of Jehovah's Witnesses (hereinafter referred to as the "Hardin Congregation"). Doc. 22, ¶ 33. At that time, Mr. Mapley Sr. had allegedly been sexually abusing Plaintiffs twice a week for

---

[1] WTNY filed a Preliminary Pretrial Statement on July 13, 2020. *See* Doc. 19. WTNY is filing this Preliminary Pretrial Statement consistent with this Court's August 18, 2020 Order (Doc. 32) and to reflect the developments in the litigation since July 13, 2020.

several years. *Id.*, ¶ 34. Mr. Mapley Sr. allegedly "used intimidation, threats, and force to ensure Plaintiffs were both compliant and remained silent about the [alleged] sexual abuse." *Id.*, ¶ 35. Another member of the Hardin Congregation, Gunner Haines, allegedly sexually abused Plaintiffs in or around 1976 or 1977. *Id.*, ¶ 36.

Plaintiffs' First Amended Complaint alleges Ms. Caekaert informed Mr. Mapley Sr. of Mr. Haines' alleged sexual abuse and Mr. Haines confessed to the Elders of the Hardin Congregation. *Id.*, ¶¶ 38-39. Mr. Mapley Sr. also allegedly self-confessed to sexually abusing Plaintiffs to the Elders of the Hardin Congregation. *Id.*, ¶ 40. Both alleged confessions happened around 1979, at which time both Mr. Haines and Mr. Mapley Sr. were allegedly Ministerial Servants with the Hardin Congregation. *Id.*, ¶¶ 39-41. Plaintiffs allege Mr. Mapley Sr. continued to sexually abuse them throughout their childhood. *Id.*, ¶ 48.

Plaintiffs' allegations against WTNY are largely based on alleged "Watchtower Protocols," which term WTNY does not understand. *See* WTNY's Answer to First Amended Complaint, Cross-Claim, and Demand for Jury Trial (hereinafter "Answer to First Amended Complaint") (Doc. 27), ¶¶ 21-22. WTNY denies Plaintiffs' claims against it.

## B. Basis for Federal Jurisdiction and Venue.

Plaintiffs assert federal jurisdiction is appropriate under 28 U.S.C. § 1332 based on diversity of citizenship and the amount in controversy exceeding $75,000

exclusive of interest and costs. *See* Doc. 22, ¶ 7. Plaintiffs assert venue is proper in this Court under 28 U.S.C. § 1391 because "a substantial part of the events or omissions giving rise to these claims occurred in this judicial district." *Id.*, ¶ 10.

## C. Factual Basis of Each Claim or Defense.

1. WTNY denies each and every allegation in Plaintiffs' First Amended Complaint not specifically admitted, denied, or qualified.

The factual basis for this affirmative defense is that to the extent any doubt exists regarding admissions or denials in WTNY's Answer to First Amended Complaint, every allegation not specifically admitted, denied, or qualified is hereby denied.

2. Plaintiffs' First Amended Complaint fails to state a claim against WTNY upon which relief can be granted.

The factual basis for this affirmative defense is WTNY's position it bears no liability for the claims asserted in Plaintiffs' First Amended Complaint. WTNY's position is insufficient proof exists to show it had a duty to Plaintiffs, and even if it had such a duty, insufficient proof exists to show WTNY breached any duty. Finally, WTNY's position is insufficient proof exists to show it caused or contributed to Plaintiffs' claimed damages. WTNY also asserted this affirmative defense in the event it becomes otherwise clear during discovery that Plaintiffs cannot prove a set of facts in support of their claims that would entitle them to relief against WTNY.

3. <u>Plaintiffs' First Amended Complaint, and each cause of action therein, is barred by the First Amendment to the U.S. Constitution and/or Article II, Sections 4-5 of The Constitution of the State of Montana.</u>

The factual basis for this affirmative defense is that WTNY is a religious entity and therefore should be allowed to freely exercise its religious beliefs without governmental interference or discrimination.

4. <u>Plaintiffs' First Amended Complaint, and each cause of action thereof, characterizes church hierarchy, doctrine, policy and practices to establish a foundational basis for liability in violation of federal and state constitutional proscriptions.</u>

The factual basis for this affirmative defense is that WTNY is a religious entity and therefore should be allowed to freely exercise its religious beliefs without governmental interference or discrimination.   WTNY's position is its religious beliefs and practices should not be used as the basis for imposing liability on it for Plaintiffs' claimed damages.

5. <u>Plaintiffs' First Amended Complaint, and each cause of action thereof, improperly blurs the existence of distinct legal entities to conflate their existence into a singular religious entity in violation of the First and Fourteenth Amendments to the United States Constitution.</u>

The factual basis for this affirmative defense is that Plaintiffs' First Amended Complaint fails to differentiate between WTNY and co-Defendant Watch Tower Bible and Tract Society of Pennsylvania (hereinafter "WTPA"), but instead conflates the two entities, which are separate.

6. The claim for punitive damages violates WTNY's right to due process and equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution and/or Article II, Sections 5 and 17 (equal protection and due process) of The Constitution of the State of Montana.

WTNY is a religious entity and should not be held liable for punitive damages for exercising its religious beliefs.

7. The imposition of punitive damages in this case would violate the Commerce Clause of the United States Constitution.

WTNY is a religious entity and should not be held liable for punitive damages for exercising its religious beliefs. Punishing WTNY for conduct that is lawful and comports with its religious beliefs would be improper.

8. The imposition of punitive damages in this case would violate the First, Fifth, Sixth, Eighth and/or Fourteenth Amendments to the United States Constitution.

WTNY is a religious entity and should not be held liable for punitive damages for exercising its religious beliefs. Punishing WTNY for conduct that is lawful and comports with its religious beliefs would be improper.

9. With respect to the claim for punitive damages, WTNY specifically incorporates by reference all standards of limitations regarding the determination and enforceability of punitive damages awards which arose in the decisions of *BMW of North America v. Gore*, 517 U.S. 599 (1996); *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001); *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *Williams v. Phillip Morris*, 549 U.S. 336 (2007); and *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008), as well as the limits imposed by Mont. Code Ann. § 27-1-220 et seq.

The factual basis for this affirmative defense is contingent upon a finding that WTNY is liable for punitive damages. WTNY disputes liability, but to the extent WTNY is found liable for punitive damages, its position is the standards and limitations described in the cases and statutes cited in this affirmative defense should apply.

10. Plaintiffs have not pleaded and proved sufficient facts to support an award of punitive damages against WTNY under applicable law including, but not limited to, the failure to plead and prove conduct by an officer, director or managing agent of WTNY that would entitle them to recover punitive damages and failure to plead facts sufficient to meet the requisites of Mont. Code Ann. 27-1-220 et seq.

The factual basis for this affirmative defense is the lack of proof to substantiate Plaintiffs' claim for punitive damages against WTNY.

11. If and only if Plaintiffs' allegations are accurate, then WTNY assert their entitled to an apportionment of fault by the trier of fact between any person (legal or natural) to whom apportionment of fault may be made under Mont. Code Ann. § 27-1-703 and other statutory and common law principles.

The factual basis for this affirmative defense is that based on the allegations in Plaintiffs' First Amended Complaint, individuals and/or entities other than WTNY appear to have committed the conduct Plaintiffs allege caused their claimed damages. Such individuals identified in Plaintiffs' First Amended Complaint include co-Defendant Mr. Mapley Sr., Gunner Haines, Martin Svensen, and other members of the Hardin Congregation.

12. <u>Some or all of Plaintiffs' claims are barred by Mont. Code Ann. § 27-2-216 and other applicable law, rule, statute or regulation controlling or requiring the institution of suit within a certain period of time following its accrual.  Accordingly, Plaintiffs' claims are barred as a matter of law.</u>

The factual basis for this affirmative defense is the fact that according to the allegations in Plaintiffs' First Amended Complaint, the alleged abuse occurred back in the 1970s, WTNY understands upon information and belief both Plaintiffs are over the age of 27, and the instant claim was not brought until April 2020.  WTNY also asserted this affirmative defense in the event it becomes clear during discovery that Plaintiffs' claims are barred by Mont. Code Ann. § 27-2-216 for other reasons.

13. <u>Plaintiffs' claims are barred, in whole or in part, by reason of laches, estoppel, waiver, res judicata, and/or other equitable defenses.</u>

The factual basis for this affirmative defense is that Plaintiffs should be prohibited from making a claim they thought existed and could have brought long ago.

14. <u>WTNY had no duty to and/or breached no duty to Plaintiffs.</u>

The factual basis for this affirmative defense is that WTNY, a New York religious corporation, did not owe a duty to Plaintiffs, who, according to the claims in the First Amended Complaint, were in Montana at the time the alleged abuse occurred.  Even if WTNY did owe a duty, however, it is WTNY's position insufficient proof exists to show it breached any duty.

15. <u>Plaintiffs' claims are barred by the doctrine of Charitable Immunity.</u>

The factual basis for this affirmative defense is that WTNY is a charitable organization formed for nonprofit purposes, is organized exclusively for religious, charitable, or educational purposes, and promotes such objectives and purposes at all times, and therefore Plaintiffs, who were beneficiaries of WTNY's charitable works, should not be allowed to seek damages from WTNY for alleged torts.

16. <u>Plaintiffs' claims are barred for lack of personal jurisdiction over WTNY.</u>

The factual basis for this affirmative defense is that WTNY is a New York corporation with its principal place of business in New York. *See* WTNY's Answer to First Amended Complaint (Doc. 27), ¶ 3.

17. <u>The acts or omissions of third parties, individuals, or entities for which WTNY has no responsibility, either directly or indirectly, whether or not presently named parties to this action, were the sole, intervening, or contributing cause of Plaintiffs' claimed damages, if there are any. Such acts or omissions bar and/or proportionately reduce recovery, if any, by Plaintiffs against WTNY.</u>

The factual basis for this affirmative defense is that WTNY did not commit any of the acts of alleged abuse set forth in Plaintiffs' First Amended Complaint. Further, WTNY's position is it did not commit any acts or omissions which would create liability for Plaintiffs' claimed damages.   It is WTNY's position other individuals or entities, including, but not limited to, co-Defendant Mr. Mapley Sr. and Gunner Haines, caused Plaintiffs' claimed damages.

18. <u>Plaintiffs have failed to join all necessary and indispensable persons for a full and just adjudication of the purported causes of action asserted in the First Amended Complaint.</u>

The factual basis for this affirmative defense is that Plaintiffs appear to have failed to join individuals who have allegedly caused or contributed to Plaintiffs' claimed damages, including, but not limited to, Mr. Haines.

19. <u>To the extent Plaintiffs have failed to mitigate, minimize, or avoid any of their claimed damages, any recovery against WTNY is void or must be reduced accordingly.</u>

Although currently unclear given the early stage of the litigation, WTNY raised this affirmative defense to the extent one or both Plaintiffs has/have failed to mitigate, minimize, or avoid any of their claimed damages.

20. <u>Pursuant to Mont. Code Ann. § 27-1-308, any recovery against WTNY must be reduced by the amount of any payments received by Plaintiffs from collateral sources.</u>

Although currently unclear given the early stage of the litigation, WTNY raised this affirmative defense to the extent it becomes clear during discovery that one or both Plaintiffs have received payment from collateral sources which would implicate Mont. Code Ann. § 27-1-308.

21. <u>Plaintiffs' alleged injuries, harm, losses, and/or damages, if there are any, are a result of pre-existing and/or unrelated medical, psychological, and/or emotional conditions for which WTNY is not responsible.</u>

Although currently unclear given the early stage of the litigation, WTNY raised this affirmative defense to the extent it becomes clear during discovery that

the claimed damages of one or both Plaintiffs are due to pre-existing and/or unrelated medical, psychological, and/or emotional conditions.

22. <u>Plaintiffs' alleged injuries, harm, losses, and/or damages, if there are any, are a result of post-event and/or unrelated medical, psychological, and/or emotional conditions for which WTNY is not responsible.</u>

Although currently unclear given the early stage of the litigation, WTNY raised this affirmative defense to the extent it becomes clear during discovery that the claimed damages of one or both Plaintiffs are due to post-event and/or unrelated medical, psychological, and/or emotional conditions.

23. <u>Plaintiffs are not entitled to an award of prejudgment interest.</u>

The factual basis for this affirmative defense is the lack of authority for prejudgment interest provided in Plaintiffs' First Amended Complaint and the fact that Plaintiffs are seeking damages for alleged personal injuries.

24. <u>WTNY hereby gives notice of an intent to rely upon such other affirmative defenses as may become available or apparent during the course of discovery or other proceedings and thus reserves the right to amend this list or assert such other defenses to which WTNY is entitled. WTNY also reserves the right to withdraw any affirmative defenses upon discovery of factors or evidence rendering such action appropriate.</u>

WTNY raised this affirmative defense to ensure it is able to assert additional affirmative defenses that may become apparent as the litigation progresses and additional information is learned. Similarly, WTNY wants to ensure it is able to withdraw any affirmative defense raised as the litigation progresses and additional information is learned.

## D. Legal Theory Underlying Each Claim or Defense.

1. <u>WTNY denies each and every allegation in Plaintiffs' First Amended Complaint not specifically admitted, denied, or qualified.</u>

*See* Rules 8(b)(2), (3), (4), and (6), Fed.R.Civ.P.

2. <u>Plaintiffs' First Amended Complaint fails to state a claim against WTNY upon which relief can be granted.</u>

*See* Rule 12(b)(6), Fed.R.Civ.P.

3. <u>Plaintiffs' First Amended Complaint, and each cause of action therein, is barred by the First Amendment to the U.S. Constitution and/or Article II, Sections 4-5 of The Constitution of the State of Montana.</u>

*See* the First Amendment to the United State Constitution, which provides in pertinent part that "Congress shall make no law restricting an establishment of religion, or prohibiting the free exercise thereof[.]"  Article II, Section 5 of The Constitution of the State of Montana also provides that "[t]he State shall make no law respecting an establishment of religion or prohibiting the free exercise thereof." Article II, Section 4 of The Constitution of the State of Montana provides in pertinent part that "[n]o person shall be denied the equal protection of laws" and "[n]either the state nor any person…or institution shall discriminate against any person in the exercise of his civil or political rights on account of…religious ideas."

4. <u>Plaintiffs' First Amended Complaint, and each cause of action thereof, characterizes church hierarchy, doctrine, policy and practices to establish a foundational basis for liability in violation of federal and state constitutional proscriptions.</u>

As the United States Supreme Court has explained, "[h]ierarchial churches may be defined as those organized as a body with other churches having similar faith and doctrine with a common ruling convocation or ecclesiastical head." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America*, 344 U.S. 94, 110 (1952). The United States Supreme Court has also explained that under the First Amendment, religious organizations retain the power to "decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 565 U.S. 171, 186 (2012) (citation omitted). Under the First and Fourteenth Amendments, the Court has concluded:

> In short, the First and Fourteenth Amendments permit hierarchical religious organizations to establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudicating disputes over these matters. When this choice is exercised and ecclesiastical tribunals are created to decide disputes over the government and direction of subordinate bodies, the Constitution requires that civil courts accept their decisions as binding upon them.

*Serbian Eastern Orthodox Diocese for U.S. of America and Canada v. Milivojevich*, 426 U.S. 696, 724-25 (1976).

Pursuant to the First Amendment, courts are required "to conspicuously avoid intermeddling in matters concerning religious doctrine, church practices, and questions of internal governance." *Doe v. Corporation of Catholic Bishop of Yakima*, 957 F.Supp.2d 1225, 1229 (E.D. Wash. 2013) (citation omitted).

"Questions of hiring, ordaining, and retaining clergy…necessarily involve interpretation of religious doctrine, policy, and administration." *Gibson v. Brewer*, 952 S.W.2d 239, 246-47 (Mo. 1997) (en banc). "[E]xcessive entanglement between church and state has the effect of inhibiting religion, in violation of the First Amendment." *Id.*, 952 S.W.2d at 247 (citations omitted). Further, "judicial inquiry into hiring, ordaining, and retaining clergy would result in an endorsement of religion, by approving one model for church hiring, ordination, and retention of clergy." *Id.* (citation omitted).

As "[a]djudicating the reasonableness of a church's supervision of a cleric— what the church 'should know'—requires inquiry into religious doctrine[,]" the same "create[s] an excessive entanglement, inhibit[s] religion, and result[s] in the endorsement of one model of supervision." *Id.* (citations omitted). "The First Amendment does not…allow a court to decide issues of church government— whether or not a cleric should have a supervisor." *Id.*, 952 S.W.2d at 248.

5. <u>Plaintiffs' First Amended Complaint, and each cause of action thereof, improperly blurs the existence of distinct legal entities to conflate their existence into a singular religious entity in violation of the First and Fourteenth Amendments to the United States Constitution.</u>

*See* the First and Fourteenth Amendments to the United States Constitution. In addition, and based on those Amendments, the United States Supreme Court has concluded as follows:

In short, the First and Fourteenth Amendments permit hierarchical religious organizations to establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudicating disputes over these matters. When this choice is exercised and ecclesiastical tribunals are created to decide disputes over the government and direction of subordinate bodies, the Constitution requires that civil courts accept their decisions as binding upon them.

*Serbian Eastern Orthodox Diocese for U.S. of America and Canada v. Milivojevich*, 426 U.S. 696, 724-25 (1976).

The U.S. Supreme Court recognizes that distinct legal rights and obligations exist for each legal entity. In *Santa Clara County v. Southern Pacific Railroad*, 118 U.S. 394 (1886), the Court held that certain constitutional rights (there, the equal protection clause of the 14th Amendment) protect legal persons such as corporations and other organizations. Earlier, in 1819, in *Dartmouth College v. Woodward*, 17 U.S. 518 (1819), the Court had recognized that certain constitutional protections are enjoyed by corporations. In *First National Bank of Boston v. Bellotti*, 435 U.S. 765 (1978), the Court recognized a corporation's separate right under the First Amendment to free speech Recently, in *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014), the Court found that the Religious Freedom Restoration Act of 1993 exempted Hobby Lobby from aspects of the Patient Protection and Affordable Care Act that placed a substantial burden on the company's owners' free exercise of closely held beliefs.

6. <u>The claim for punitive damages violates WTNY's right to due process and equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution and/or Article II, Sections 5 and 17 (equal protection and due process) of The Constitution of the State of Montana</u>.

*See* the Fourteenth Amendment to the United States Constitution and Article II, Sections 5 and 17 of The Constitution of the State of Montana.

7. <u>The imposition of punitive damages in this case would violate the Commerce Clause of the United States Constitution</u>.

*See* Article I, Section 8, Clause 3 to the United States Constitution. Also, the United States Supreme Court has concluded that "a State may not impose economic sanctions on violators of its laws with the intent of changing the tortfeasors' lawful conduct in other states." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, (1996). As a logical extension, a State should not be allowed to impose economic sanctions on an entity like WTNY when its conduct was lawful according to its religious beliefs.

8. <u>The imposition of punitive damages in this case would violate the First, Fifth, Sixth, Eighth and/or Fourteenth Amendments to the United States Constitution</u>.

*See* the First, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

//

//

//

9. <u>With respect to the claim for punitive damages, WTNY specifically incorporates by reference all standards of limitations regarding the determination and enforceability of punitive damages awards which arose in the decisions of *BMW of North America v. Gore*, 517 U.S. 599 (1996); *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001); *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *Williams v. Phillip Morris*, 549 U.S. 336 (2007); and *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008), as well as the limits imposed by Mont. Code Ann. § 27-1-220 et seq.</u>

*See BMW of North America v. Gore*, 517 U.S. 599 (1996); *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001); *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *Williams v. Phillip Morris*, 549 U.S. 336 (2007); *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008); Mont. Code Ann. § 27-1-220; and Mont. Code Ann. § 27-1-221.

10. <u>Plaintiffs have not pleaded and proved sufficient facts to support an award of punitive damages against WTNY under applicable law including, but not limited to, the failure to plead and prove conduct by an officer, director or managing agent of WTNY that would entitle them to recover punitive damages and failure to plead facts sufficient to meet the requisites of Mont. Code Ann. 27-1-220 et seq.</u>

*See* Mont. Code Ann. §§ 27-1-220 and 27-1-221.

11. <u>If an only if Plaintiffs' allegations are accurate, then WTNY assert their entitled to an apportionment of fault by the trier of fact between any person (legal or natural) to whom apportionment of fault may be made under Mont. Code Ann. § 27-1-703 and other statutory and common law principles.</u>

*See* Mont. Code Ann. § 27-1-703.

//

12. <u>Some or all of Plaintiffs' claims are barred by Mont. Code Ann. § 27-2-216 and other applicable law, rule, statute or regulation controlling or requiring the institution of suit within a certain period of time following its accrual.  Accordingly, Plaintiffs' claims are barred as a matter of law.</u>

*See* Mont. Code Ann. § 27-2-216.

13. <u>Plaintiffs' claims are barred, in whole or in part, by reason of laches, estoppel, waiver, res judicata, and/or other equitable defenses.</u>

*See Wicklund v. Sundheim*, 2016 MT 62, ¶ 40, 383 Mont. 1, 367 P.3d 403 (describing laches affirmative defense); *Huseman v. Icicle Seafoods, Inc.*, 471 F.3d 1116, 1126 (9th Cir. 2006) (also describing laches affirmative defense); *Arthur v. Pierre Ltd.*, 2004 MT 303, ¶ 30, 323 Mont. 453, 100 P.3d 987 (describing doctrine of equitable estoppel); *In re Petition to Transfer Territory From Popular Elementary School Dist. No. 9*, 2015 MT 278, ¶ 14, 381 Mont. 145, 364 P.3d 1222 (noting waiver "is the voluntary and intentional relinquishment of a known right, claim or privilege, which may be proved by express declarations or by a course of acts and conduct which induces the belief that the intent and purpose was waiver") (citation omitted); *VanDyke Const. Co. v. Stillwater Mining Co.*, 2003 MT 279, ¶ 15, 317 Mont. 519, 78 P.3d 844 (also describing waiver); and *Olsen v. Miller*, 2012 MT 88, ¶¶ 20-21, 364 Mont. 523, 276 P.3d 934 (describing doctrine of res judicata).

14. <u>WTNY had no duty to and/or breached no duty to Plaintiffs.</u>

The legal basis for this affirmative defense rests in part on the fact that whether a duty exists presents a question of law, and it is WTNY's position it owed no duty

to Plaintiffs.  *See, e.g., Henricksen v. State*, 2004 MT 20, ¶ 21, 319 Mont. 307, 84 P.3d 38 (citation omitted).  Even if WTNY owed a duty, where reasonable minds cannot differ, the question of whether a party breached a duty can be decided as a matter of law.  *See, e.g., Gonzales v. Wal-Mart Stores, Inc.*, 2011 WL 1042183, *1 (D. Mont. 2011) ("Ordinarily, the question of whether a duty has been breached is a question of fact to be decided by the finder of fact, but when reasonable minds cannot differ, breach of duty can be decided on summary judgment") (citation omitted). WTNY's position is the instant case is one where, even if this Court concluded WTNY owed a duty, the facts will show reasonable minds cannot differ and therefore the issue of whether WTNY breached any duty can be resolved on summary judgment.

15. <u>Plaintiffs' claims are barred by the doctrine of Charitable Immunity</u>.

WTNY's position is the doctrine of charitable immunity should be applied in Montana despite a prior Montana Supreme Court case—*Davis v. Church of Jesus Christ of Latter Day Saints*, 258 Mont. 286, 302-305, 852 P.2d 640, 650-52 (1993), *overruled on other grounds in Gilko v. Permann*, 2006 MT 30, 331 Mont. 112, 130 P.3d 155—where the Court concluded the doctrine is inapplicable.  WTNY believes reconsideration of the applicability of the doctrine is appropriate based on more recent case law in other jurisdictions such as New Jersey.  *See Mason v. Roman*

*Catholic Archdiocese of Trenton*, 2019 WL 1320299, *6 (D.N.J. 2019) (showing

example of charitable immunity).  As a Georgia Court of Appeals has noted:

> The general purpose of the charitable immunity doctrine is that a
> qualifying organization's charitable assets should not be depleted by
> subjection to liability for negligence and that it would be against
> public policy, as well as against the settled principles of law, to allow
> any judgment to be rendered against it because of the negligence of
> any of its employees or agents, except where it failed to exercise
> ordinary care in selecting and retaining its employees and servants.

*Shamblin v. Corporation of Presiding Bishop of the Church of Jesus Christ of Latter*

*Day Saints*, 836 S.E.2d 171, 175 (Ga. App. 2019).

16. <u>Plaintiffs' claims are barred for lack of personal jurisdiction over
    WTNY.</u>

*See* Rule 12(b)(2), Fed.R.Civ.P.

17. <u>The acts or omissions of third parties, individuals, or entities for which
    WTNY has no responsibility, either directly or indirectly, whether or not
    presently named parties to this action, were the sole, intervening, or
    contributing cause of Plaintiffs' claimed damages, if there are any.  Such
    acts or omissions bar and/or proportionately reduce recovery, if any, by
    Plaintiffs against WTNY.</u>

Even if WTNY is adjudged liable, superseding, intervening causes can serve

to cut off a defendant's liability.  *See, e.g., Covey v. Briska*, 2019 MT 164, ¶ 60, 396

Mont. 362, 445 P.3d 785 (citations omitted).  Mont. Code Ann. § 27-1-703 also

establishes when liability, if found, is several or joint.

18. <u>Plaintiffs have failed to join all necessary and indispensable persons for
    a full and just adjudication of the purported causes of action asserted in
    the First Amended Complaint.</u>

*See* Rule 19, Fed.R.Civ.P.

19. <u>To the extent Plaintiffs have failed to mitigate, minimize, or avoid any of their claimed damages, any recovery against WTNY is void or must be reduced accordingly.</u>

*See Kraft v. High County Motors, Inc.*, 2012 MT 83, ¶ 60, 364 Mont. 465, 276 P.3d 908 ("The duty of the injured party to reduce or mitigate damages 'is a positive duty, within limits…'") (citations omitted).

20. <u>Pursuant to Mont. Code Ann. § 27-1-308, any recovery against WTNY must be reduced by the amount of any payments received by Plaintiffs from collateral sources.</u>

*See* Mont. Code Ann. § 27-1-308.

21. <u>Plaintiffs' alleged injuries, harm, losses, and/or damages, if there are any, are a result of pre-existing and/or unrelated medical, psychological, and/or emotional conditions for which WTNY is not responsible.</u>

Under Montana law, the plaintiff has the burden of establishing causation. *See, e.g., Cheff v. BNSF Ry. Co.*, 2010 MT 235, ¶ 36, 358 Mont. 144, 243 P.3d 1115 (citation omitted). Defendants are permitted to submit evidence of other injuries and may present evidence that a claimed injury is divisible. *Id.* (citations omitted). Defendants are not liable for claimed damages "which would have resulted from [the plaintiff's] previous condition without [alleged] aggravation." *Kegel v. U.S.*, 289 F.Supp. 790, 795 (D. Mont. 1968).

//

22. <u>Plaintiffs' alleged injuries, harm, losses, and/or damages, if there are any, are a result of post-event and/or unrelated medical, psychological, and/or emotional conditions for which WTNY is not responsible.</u>

Under Montana law, the plaintiff has the burden of establishing causation. *See, e.g., Cheff v. BNSF Ry. Co.*, 2010 MT 235, ¶ 36, 358 Mont. 144, 243 P.3d 1115 (citation omitted). Defendants are permitted to submit evidence of other injuries and may present evidence that a claimed injury is divisible. *Id.* (citations omitted). Defendants are not liable for claimed damages "which would have resulted from [the plaintiff's] previous condition without [alleged] aggravation." *Kegel v. U.S.*, 289 F.Supp. 790, 795 (D. Mont. 1968).

23. <u>Plaintiffs are not entitled to an award of prejudgment interest.</u>

*See Daly v. Swift & Co.*, 90 Mont. 52, 300 P. 265, 269 (1931) ("[T]he universal rule, at least in the absence of statute, is that interest cannot be allowed on damages awarded for personal injuries"); and *Glacier Tennis Club at Summit, LLC v. Treweek Const. Co., Inc.*, 2004 MT 70, ¶ 56, 320 Mont. 351, 87 P.3d 431, *overruled on other grounds in Johnson v. Costco Wholesale*, 2007 MT 43, 336 Mont. 105, 152 P.3d 727) (noting that even though Mont. Code Ann. § 27-1-210 provides some authority for prejudgment interest, the Montana Supreme Court "has consistently held that prejudgment interest is inappropriate when the amount of a party's damages is uncertain or disputed") (citations omitted). *See also* Mont. Code Ann. § 27-1-210.

24. <u>WTNY hereby gives notice of an intent to rely upon such other affirmative defenses as may become available or apparent during the course of discovery or other proceedings and thus reserves the right to amend this list or assert such other defenses to which WTNY is entitled. WTNY also reserves the right to withdraw any affirmative defenses upon discovery of factors or evidence rendering such action appropriate.</u>

*See* Rule 8(c), Fed.R.Civ.P. (standing for proposition a responsive pleading "must affirmatively state any avoidance or affirmative defense") and Rule 15(a), Fed.R.Civ.P. (authorizing amendments to pleadings).

**E. Computation of Damages.**

WTNY is not claiming any damages in this matter.  However, WTNY has made a cross-claim for contribution against co-Defendant Bruce Mapley, Sr., and demands the relief and benefit of application of Mont. Code Ann. § 27-1-703.  *See* Doc. 27, p. 18.  That contribution cross-claim does not request damages, but rather requests contribution from Mr. Mapley Sr. in the event WTNY is found liable to Plaintiffs.

**F. Pendency or Disposition of Related State or Federal Litigation.**

As explained in the Joint Notice of Related Case (Doc. 16), the instant lawsuit shares similarities with Case No. CV-20-059-BLG-SPW.  Other than that lawsuit, WTNY is unaware of any related state or federal litigation.

**G. Proposed Additional Stipulations of Fact and Understanding as to What Law Applies.**

As noted in the parties' Joint Statement of Inability to Stipulate to Any Facts, the parties cannot agree to any stipulations of fact at this time, and WTNY does not believe any stipulations of fact are appropriate at this time.

WTNY understands this Court will apply state (Montana) substantive law and federal procedural law in this case which has been brought in federal court under 28 U.S.C. § 1332.  *See Otto v. Newfield Exploration Co.*, 2017 WL 3616712, *1 (D. Mont. 2017) ("Federal courts apply state substantive law and federal procedural law to diversity cases") (citations omitted).  Any choice of law determination will be made by applying Montana's choice of law principles.  *See Otto v. Newfield Exploration Co.*, 2016 WL 9461791, *2 (D. Mont. 2016) ("Federal courts sitting in diversity look to the law of the forum state in making a choice of law determination") (citation omitted).

## H. Proposed Deadlines Relating to Joinder of Parties or Amendment of Pleadings.

WTNY's position is a joinder/amendment deadline should be made following the conclusion of jurisdictional discovery regarding the personal jurisdiction issue involving co-Defendant WTPA.  As it is currently unknown when such jurisdictional discovery will be completed, WTNY's position is a scheduling conference should be held at the conclusion of jurisdictional discovery, at which time the parties can evaluate a proper joinder/amendment deadline.

## I. Identification of Controlling Issues of Law Suitable for Pretrial Disposition.

As a threshold matter, WTNY brings to the Court's attention a pending Motion to Dismiss Pursuant to Rule 12(b)(2), Fed.R.Civ.P., filed by WTPA. *See* Docs. 13 and 14. That Motion to Dismiss is likely suitable for pretrial disposition following the conclusion of jurisdictional discovery.

Another issue that may be suitable for pretrial disposition pending discovery is a statutes of limitation issue under Mont. Code Ann. § 27-2-216.

Another issue that may be suitable for pretrial disposition is whether WTNY owed a duty to Plaintiffs since the existence of a duty constitutes a question of law. *See, e.g., Henricksen v. State*, 2004 MT 20, ¶ 21, 319 Mont. 307, 84 P.3d 38 (citation omitted). Relatedly, even if WTNY did owe a duty, whether WTNY breached that duty may be suitable for pretrial disposition. *See, e.g., Gonzales v. Wal-Mart Stores, Inc.*, 2011 WL 1042183, *1 (D. Mont. 2011) ("Ordinarily, the question of whether a duty has been breached is a question of fact to be decided by the finder of fact, but when reasonable minds cannot differ, breach of duty can be decided on summary judgment") (citation omitted).

Information learned via discovery may present additional issues that are suitable for pretrial disposition.

//

**J. Name, City, and State of Current Residence of Each Individual Known or Believed to Have Information That may be Used in Proving or Denying any Party's Claims or Defenses, and a Summary of That Information.**

1. Plaintiff Tracy Caekaert.
   c/o Attorneys Robert L. Stepans / Ryan R. Shaffer /James C. Murnion of
   MEYER, SHAFFER & STEPANS, PLLP
   430 Ryman Street
   Missoula, MT 59802

Plaintiff Tracy Caekaert, who, according to Plaintiffs' First Amended Complaint, is a resident of Maricopa County, Arizona (*see* Doc. 22, ¶ 1), is expected to have information regarding the allegations in Plaintiffs' First Amended Complaint.

2. Plaintiff Camillia Mapley
   c/o Attorneys Robert L. Stepans / Ryan R. Shaffer /James C. Murnion of
   MEYER, SHAFFER & STEPANS, PLLP
   430 Ryman Street
   Missoula, MT 59802

Plaintiff Camillia Mapley, who, according to Plaintiffs' First Amended Complaint, is a resident of Australia (*see* Doc. 22, ¶ 2), is expected to have information regarding the allegations in Plaintiffs' First Amended Complaint.

3. Past and/or Current Members of the Hardin Congregation
   Hardin, MT 59034

WTNY expects past and/or current Members of the Hardin Congregation may have information relevant to the allegations and claims contained in Plaintiffs' First Amended Complaint.

4. Co-Defendant Bruce Mapley Sr.
   3905 Caylan Cove
   Birmingham, AL 35215

WTNY expects co-Defendant Bruce Mapley Sr. may have information regarding the allegations set out in Plaintiffs' First Amended Complaint.

5. Shirley Gibson
   Address Unknown

According to Doc. 22-1, which is an affidavit signed by Shirley Gibson attached to Plaintiffs' First Amended Complaint, Ms. Gibson is the former wife of co-Defendant Bruce Mapley Sr. and the mother of Plaintiffs. WTNY expects she may therefore have information regarding the allegations in Plaintiffs' First Amended Complaint. Ms. Gibson is also expected to have information regarding the assertions in Doc. 22-1.

6. Representative of WTNY (yet to be determined)
   c/o Brown Law Firm, P.C.

A representative of WTNY who is yet to be determined is expected to be able to testify as to WTNY's information or lack thereof regarding the allegations contained in Plaintiffs' First Amended Complaint, specifically those addressed at WTNY.

## K. Substance of any Insurance Agreement.

WTNY is not aware of any insurance agreement(s) applicable to the claims in this matter.

**L. Status of Settlement Discussions and Prospects for Compromise.**

The parties have not yet discussed settlement.  Given the early stages of the litigation, it is unknown whether this matter may be resolved by settlement.

**M. Suitability of Special Procedures.**

Based on currently available information at this early stage in the litigation, WTNY does not believe any special procedures are necessary.

Notwithstanding, WTNY does have a position with respect to the Court-ordered jurisdictional discovery regarding WTPA's pending Motion to Dismiss Pursuant to Rule 12(b)(2), Fed.R.Civ.P. (Doc. 13).   Although jurisdictional discovery has not yet begun, WTNY understands Plaintiffs want to include within the scope of jurisdictional discovery: (1) whether WTNY and WTPA were a "single enterprise"; and (2) a deposition of WTNY.  *See* Joint Jurisdictional Discovery Plan (Doc. 36), pp. 4-5.  WTNY disputes Plaintiffs' proposed scope for multiple reasons. *Id.*

First, as explained in co-Defendant WTPA's contemporaneously filed Preliminary Pretrial Statement, a "single enterprise" theory is inapplicable.  That argument is adopted and incorporated herein by reference.  Summarily, a "single enterprise" theory is not a recognized theory for jurisdiction purposes.  Even if it was, however, WTPA and WTNY are separate entities and are not in a parent-

subsidiary relationship.   As such, Plaintiffs' proposed scope for jurisdictional discovery is too broad and should be rejected accordingly.

Second, and building from the foregoing, WTPA should not have to endure a deposition when the same would not accomplish anything related to whether WTPA is subject to personal jurisdiction in Montana.   Indeed, WTNY and WTPA are separate entities and are not in a parent-subsidiary relationship.   Thus, allowing Plaintiffs to depose WTNY would improperly expand the scope of jurisdictional discovery regarding whether WTPA is subject to personal jurisdiction in Montana into an unwarranted fishing expedition.

DATED this 1st day of October, 2020.

By:  /s/ Guy W. Rogers
Guy W. Rogers
BROWN LAW FIRM, P.C.
*Attorneys for Defendants Watchtower Bible and Tract Society of New York, Inc., and Watch Tower Bible and Tract Society of Pennsylvania*

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 1, 2020, a copy of the foregoing was served on the following person(s):

1.   U.S. District Court, Billings Division

2.   Robert L. Stepans
     Ryan R. Shaffer
     James C. Murnion
     MEYER, SHAFFER & STEPANS, PLLP
     430 Ryman Street
     Missoula, MT 59802

3.   Bruce G. Mapley Sr.
     3905 Caylan Cove
     Birmingham, AL 35215

by the following means:

| | | | |
|---|---|---|---|
| 1, 2 | CM/ECF | _____ | Fax |
| _____ | Hand Delivery | _____ | E-Mail |
| 3 | U.S. Mail | _____ | Overnight Delivery Services |

By:   /s/ Guy W. Rogers
      Guy W. Rogers
      BROWN LAW FIRM, P.C.
      *Attorneys for Defendants Watchtower*
      *Bible and Tract Society of New York,*
      *Inc., and Watch Tower Bible and*
      *Tract Society of Pennsylvania*