FILED

MAY 0 4 2021

Clerk, U.S. Courts
District Of Montana
Billings Division

Kevin M. Funyak
STACEY & FUNYAK
The Grand Building, Suite 700
100 North 27th Street
P.O. Box 1139
Billings, MT 59103-1139
Phone: (406) 259-4545
Fax: (406) 259-4540
kfunyak@staceyfunyak.com
*Attorneys for Non-Party Hardin Congregation*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | | |
|---|---|---|
| TRACY CAERKAERT and CAMILLIA MAPLEY, | ) | Cause No. CV 20-52-BLG-SPW |
| | ) | |
| Plaintiffs, | ) | **BRIEF OPPOSING PLAINTIFFS'** |
| | ) | **MOTION TO COMPEL RE:** |
| vs. | ) | **HARDIN CONGREGATION'S** |
| WATCHTOWER BIBLE AND | ) | **SUBPOENA** |
| TRACT SOCIETY OF NEW YORK, | ) | |
| INC. and WATCHTOWER BIBLE | ) | |
| AND TRACT SOCIETY OF | ) | |
| PENNSYLVANIA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| WATCHTOWER BIBLE AND | ) | |
| TRACT SOCIETY OF NEW YORK, | ) | |
| | ) | |
| Cross Claimant, | ) | |
| vs. | ) | |
| BRUCE MAPLEY, SR., | ) | |
| | ) | |
| Cross Defendant. | ) | |

The Hardin Congregation hereby files this brief in opposition to the *Plaintiffs'*
*Motion To Compel Re: The Hardin Congregations Subpoena.* The Hardin
Congregation is a non-party to this litigation. As such, it is seeking to intervene
pursuant to Rule 24(b), F.R.Civ.P. to for the limited and exclusive purpose of
responding to the plaintiffs' motion as it has a vested interest in the resolution of the
issues raised by plaintiffs.

### 1. Factual Background Of Relevance To The Hardin Congregation Subpoena.

Plaintiffs' counsel implies an urgency in filing the current motion to compel,
going so far as to assert that the undesigned "would not commit to conferring" about
those issues raised concerning the Hardin Congregation's subpoena response. The
actual history of the plaintiffs' subpoena tells a different story.

Plaintiffs' initial subpoena to the Hardin Congregation was compiled on
December 17, 2020. (**Exhibit A**).[1] That subpoena was never served on the Hardin
Congregation, nor was any member of the Hardin Congregation ever aware of any
effort by plaintiffs to do so. Despite no service or even any effort to serve the
subpoena by plaintiffs, the Hardin Congregation retained counsel to assist it with
responding to the subpoena. Plaintiffs subsequently issued that subpoena which is
now at issue on January 11, 2021.

---

[1] The actual subpoena responded to that is now at issue was subsequently issued on January 11, 2021.

While the validity of the subpoena was clearly in question under applicable Federal Rules of Civil Procedure, the Hardin Congregation opted to cooperate and allow its counsel to accept service on January 27, 2021 expressly reserving its objections. Defense counsel's accompanying letter of February 2, 2021 detailed its objections. (**Exhibit B**). In response, plaintiffs' counsel sought to impose unilateral deadlines on the Hardin Congregation's response to the subpoena and then on the time frame for it to address plaintiffs' concerns with the subpoena response. The Hardin Congregation responded to the subpoena on February 11, 2021 again expressly setting forth its objections including: "the scope of the *Subpoena Duces Tecum* can be interpreted as seeking the production of confidential information and/or documentation protected under the §26-1-804, MCA and related case law."

Then, in a letter dated March 30, 2021, some 7 weeks later, plaintiffs' counsel first raised issues with the subpoena response. (**Exhibit C**). Contrary to plaintiffs' assertion, defense counsel did not refuse to confer as no such request to do so was contained in that letter. Rather, plaintiffs' counsel requested an updated *Privilege Log* be provided and that full copies of withheld/redacted documents be produced. On April 7, 2021, plaintiffs' counsel was advised that a response on behalf of the Hardin Congregation addressing issues raised would be provided well short of the 7 weeks it took plaintiffs to first raise issues. (**Exhibit D**). After sending that letter, defense counsel heard nothing more from plaintiffs' counsel until being provided

the courtesy of a notice from Watchtower counsel that plaintiffs intended to file their pending motion.

2. **The Hardin Congregation's Claim Of Privilege And Its *Privilege Log* Are Appropriate Under Montana Law.**

The Montana Supreme Court first addressed the clergy-penitent privilege in State v. MacKinnon, (1998) 288 Mont. 329, 957 P.2d 23. This case was the Court's first experience with the application of the clergy-penitent statute (§26-1-804, MCA) and dealt with statements that had been made by MacKinnon to church clergy in the presence of others. While the Court ultimately ruled the specific communications at issue were not protected, its holding is nonetheless relevant to the issues now before this Court.

In reaching its ruling, the Court reviewed the Utah Supreme Court's opinion in Scott v. Hammock, (Utah 1994) 870 P.2d 947. The Court analyzed the Scott Court's adoption of a broader interpretation of the clergy-penitent privilege "holding that the privilege applied to non-penitential communications *between laypersons and clergy if the communications were 'made in confidence and for the purpose of seeking or receiving religious guidance, admonishment or advice and that the cleric was acting in his or her religious role pursuant to the practice and discipline of the church.'"* (Emphasis added). MacKinnon at ¶23, Scott at 956. The Court went on to expressly recognize that "under the federal First Amendment and under Article II, Section 5 of the Montana Constitution, all persons are guaranteed the free exercise

of their religious beliefs and all religions are guaranteed governmental neutrality."

Id. at ¶24. With this in mind, the Court expressly adopted the broader interpretation

of the clergy-penitent privilege as recognized in Scott, holding:

> Thus, in order to minimize the risk that §26-1-804, MCA, might be
> discriminatorily applied because of differing judicial perceptions of a
> given church's practices a religious doctrine, and in order to least
> interfere with the federal and Montana constitutional protections of
> religious freedom referred to above, *we conclude that Utah's broader
> interpretation of the clergy-penitent privilege as set forth in Scott is the
> better view, and we adopt that approach.* (Emphasis added).

Id.

Subsequently, in Nunez v. Watchtower Bible and Tract Society of New York,

Inc., (2018) 398 Mont. 261, 455 P.3d 829, the Montana Supreme Court again

addressed the issue of confidential communications. Importantly, in Nunez, the

Court did so in the specific context of the Jehovah's Witnesses faith. Therein, the

Court took recognized that basic tenets specific to the Jehovah's Witnesses' faith put

an "emphasis on confidentiality particularly in handling communications and reports

of" what the Court described as serious sin. This emphasis on confidentiality

expressly applied to: 1) promises to congregants that what they discussed with elders

would remain strictly confidential; 2) that the requirement that elders keep such

communications strictly confidential was based in Scripture; 3) that congregation

members must trust elders to keep all spiritual communications strictly confidential;

4) that the premise the confidential treatment of such communications applied to all

members and not just those accused of or confessing serious sin; 5) that an elder's disclosure of confidential communications to those not entitled to hear such communications could call into question an elder's qualifications and result in an elder's removal; 6) that a local elder's communications with experienced elders in New York are likewise strictly confidential; and 7) that all spiritual communications taking place during investigations were strictly confidential. Id. at ¶¶18 & 24. The Court concluded the confidential investigative process "necessarily involves multiple elders and congregation members, including the accused, CCJW elders who provide spiritual guidance and local elders who conduct the investigation." Ultimately holding "undisputed material facts demonstrate the Jehovah's Witnesses maintain confidentiality pursuant to church doctrine, canon and/or established practice when they receive and internally address reports of child sexual abuse." Id. at ¶25.

While the Montana Supreme Court's holdings in MacKinnon and Nunez may not set forth privileges under specific headings, they clearly expand on the clergy-penitent privilege and provide case law support for the assertion that all communications between Jehovah's Witnesses members and elders provided with an expectation of confidentiality as well as all communications between Jehovah's Witnesses elders and experienced elders in New York for guidance and assistance are considered strictly confidential and are not subject to disclosure.

a. **The privileges relied upon by the Hardin Congregation are sanctioned under Montana case law.**

Plaintiffs assert that three of the Hardin Congregation's claimed privileges are not valid. These privileges include: 1) third-party privacy; 2) congregant expectation of confidentiality; and 3) elder expectation of confidentiality. Plaintiff argues that because they "could not find any legal support or recognition of these three privileges, this Court should rule the privileges are not a valid basis to withhold documents."

As shown above, the Montana Supreme Court's holdings in MacKinnon and Nunez refute plaintiffs' position. While the three privileges asserted by the Hardin Congregation's within its *Privilege Log* may not be specifically set out within these cases holdings or in a specific statute, the express language of the Court in adopting a broader recognition of what constitutes confidential communications within the Jehovah's Witnesses faith clearly fits within these privileged categories. The Jehovah's Witnesses faith must be allowed to be maintain all such communications as strictly confidential in accordance with church doctrine, canon and established practice. A such, the plaintiffs' request that this Court rule these privileges to constitute an invalid basis to withhold communications clearly made with an expectation of confidentiality must be DENIED.

**b. The Hardin Congregation *Privilege Log* was appropriate.**

The plaintiffs' argument regarding the Hardin Congregation's *Privilege Log* begins with a recitation of §26-1-804, MCA, Montana's clergy-penitent privilege statute. While the language of the statute would seem to require a limited application of the clergy-penitent privilege to only those communications conveyed during a confession, as already shown above, Montana case law establishes otherwise. While plaintiffs go on to recognize the Montana Supreme Court's adoption of an expanded application of the privilege in MacKinnon, plaintiffs still fail to acknowledge to holding in Nunez which recognized the expanded application of this privilege in the specific context of the Jehovah's Witness faith.

As far as the sufficiency of the Hardin Congregation's *Privilege Log*, in relevant part Rule 45(e)(2), M.R.Fed.P. provides:

> (A) A person withholding subpoenaed information under a claim that it is privileged... must:
> (ii) describe the nature of the withheld documents, communications or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

Plaintiff asserts "the Hardin Congregation's descriptions of the withheld documents do not provide enough detail to know if they would qualify under the limited clergy-penitent privilege." Plaintiff argues the Hardin Congregation's *Privilege Log* as provided is deficient because it does not identify the subject matter of the documents, whether third-parties may have been present, whether statements

were made in confidence and whether an elder was acting within his official capacity. Even a cursory reading of the *Privilege Log* reveals these assertions to be inaccurate. Each communication for which a privilege was asserted by the Hardin Congregation was identified within the *Privilege Log* as fitting one or more of the following four descriptions:

- Correspondence from Hardin Congregation elders made in confidence to Watchtower New York the purpose of seeking or receiving religious guidance, admonishment or advice.
- Correspondence from the Hardin Congregation to Watchtower New York legal department seeking legal advice.
- Correspondence from congregant to Hardin Congregation elders made in confidence to the elders for the purpose of seeking religious guidance, admonishment or advice.
- Internal note by Hardin Congregation concerning ecclesiastical investigation method.

As is evident from the descriptions set forth, each of these communications consisted of either a letter directed from a congregant to an elder, a letter from a Hardin Congregation elder to a Watchtower New York elder, a letter from a Hardin Congregation elder to legal counsel or an internal note specific to an ecclesiastical investigation. All such communications were made with an expectation of confidentiality pursuant to church doctrine, canon and established practice. Each communication was obviously not an oral communication that was made in the presence of other third-parties. Only the author of such a confidential communication can waive the privilege, and a congregant's expectation that a communication be held in strict confidence would be entirely frustrated if the Hardin

Congregation were forced to disclose the author. Likewise, sensitive information concerning others who are not involved in this litigation obviously must be kept strictly confidential. Finally, no information specific to plaintiffs or referencing was redacted.

Plaintiffs also assert that if a communication dealt with the reporting of the wrongful conduct of another member to an elder, the privilege does not apply. However, this argument is not supported by the language of MacKinnon and it is in fact refuted by the express language of Nunez. Id. at ¶¶18 & 24.

Contrary to plaintiffs' assertions, information complying with Rule 45, F.R.Civ.P. was provided within the *Privilege Log* by the Hardin Congregation without betraying the expectation that the communications at issue would be held in strict confidence. To conclude otherwise would be contrary to the Montana Supreme Court's express holding that the Jehovah's Witnesses must be allowed to maintain such communications as strictly confidential, and that requiring disclosure would conflict with church doctrine, canon and established practice. Plaintiffs' motion requiring a *Privilege Log* containing additional details and/or requiring an *in-camera* inspection by the Court must likewise be DENIED.

### 3. **Conclusion.**

Pursuant to applicable Montana case law on point, this Court must preserve the sanctity of the Jehovah's Witnesses right to maintain all of the communications at issue in strict confidence in accordance with church doctrine, canon and established practice. Plaintiffs' *Motion To Compel* must therefore be DENIED its entirety.

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the length requirement of Local Rule 7.1(d)(2) for response briefs, and that this brief contains 2050 words, excluding the caption, certificate of service and this certificate of compliance.

RESPECTFULLY SUBMITTED this 4th day of May, 2021.

STACEY & FUNYAK

By: _____
Kevin M. Funyak
*Attorneys for Non-Party Hardin*
*Congregation*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 24.1(b)(1)(C), I hereby certify that on the $\cancel{4}$th day of May, 2021, a true and correct copy of the foregoing ***Brief Opposing Plaintiffs' Motion To Compel Re: Hardin Congregation's Subpoena*** was served upon the following person(s) by depositing the same in the U.S, Mail, postage prepaid, and by email addressed as follows:

Ryan R. Shafer
MEYER, SHAFFER & STEPANS, PLLP
430 Ryman Street
Missoula, Montana 59802
ryan@mss-lawfirm.com

Guy W. Rogers
Jon A. Wilson
BROWN LAW FIRM, P.C.
P.O. Drawer 849
Billings, MT 59103
grogers@brownfirm.com
jwilson@brownfirm.com

Joel M. Taylor
Miller McNamara & Taylor LLP
100 South Bedford Road, Suite 340
Mount Kisco, NY 10549
jtaylor@mmt-law.com

Bruce G. Mapley, Sr.
3905 Caylan Cove
Birmingham, AL 35215

STACEY & FUNYAK

By: _Brenda L Smith_

DEC 21 2020

Ryan R. Shaffer
Robert L. Stepans
James C. Murnion
MEYER, SHAFFER & STEPANS, PLLP
430 Ryman Street
Missoula, MT  59802
Tel: (406) 543-6929
Fax: (406) 721-1799
ryan@mss-lawfirm.com
rob@mss-lawfirm.com
james@mss-lawfirm.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY,<br>            Plaintiffs,<br><br>    vs.<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.,<br>WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR.,<br>            Defendants,<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.,<br>            Cross Claimant,<br><br>BRUCE MAPLEY, SR.,<br>            Cross Defendant. | Case No. CV-20-52-BLG-SPW<br><br>**NOTICE OF SUBPOENA DUCES TECUM** |



EXHIBIT
A
tabbies

Pursuant to Rule 45(a)(4) of the Federal Rules of Civil Procedure, Plaintiffs hereby provides Defendants notice of the Subpoena Duces Tecum attached hereto as **Exhibit A**.

DATED this 17th day of December, 2020.

MEYER, SHAFFER & STEPANS, PLLP

/s/ Ryan Shaffer
Robert L. Stepans
Ryan R. Shaffer
James C. Murnion

*Attorneys for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of December, 2020, a true and accurate

copy of the foregoing was served on the following via email and U.S. Mail:

Guy W. Rogers
Jon A. Wilson
BROWN LAW FIRM, P.C.
315 North 24th Street
PO Drawer 849
Billings, MT 59103
grogers@brownfirm.com
jwilson@brownfirm.com

Joel M. Taylor, Esq. *pro hac vice*
Miller McNamara & Taylor LLP
100 South Bedford Road, Suite 340
Mount Kisco, NY 10549
jtaylor@mmt-law.com

Bruce G. Mapley, Sr. (U.S. Mail ONLY)
3905 Caylan Cove
Birmingham, AL 35215

/s/ Ryan Shaffer

*Exhibit A*

Ryan R. Shaffer
Robert L. Stepans
James C. Murnion
MEYER, SHAFFER & STEPANS, PLLP
430 Ryman Street
Missoula, MT 59802
Tel: (406) 543-6929
Fax: (406) 721-1799
ryan@mss-lawfirm.com
rob@mss-lawfirm.com
james@mss-lawfirm.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY,<br>　　　　　　Plaintiffs,<br>　vs. | )<br>)<br>)<br>)<br>) | Case No. CV-20-52-BLG-SPW |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.,<br>WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and<br>BRUCE MAPLEY SR.,<br>　　　　　　Defendants, | )<br>)<br>)<br>)<br>)<br>)<br>) | **SUBPOENA DUCES TECUM** |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.,<br>　　　　　　Cross Claimant, | )<br>)<br>)<br>)<br>) | |
| BRUCE MAPLEY, SR.,<br>　　　　　　Cross Defendant. | )<br>)<br>)<br>) | |

TO:   Kingdom Hall of Jehovah's Witnesses
      704 4th Street W
      Hardin, MT  59034

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, you are hereby

commanded to provide to the law offices of **Meyer, Shaffer & Stepans, PLLP,**

**430 Ryman Street, Missoula, MT 59802,** within 14 days of service of this

Subpoena Duces Tecum and by 5:00 p.m. on the date thereof, and then and there to

produce copies of the items listed below in your possession or under your control

(the undersigned will pay all associated costs of copying or reproduction):

1.  A copy of all membership records for the years 1970 to 1995.

2.  A copy of all correspondence from Watch Tower Bible and Tract Society of
Pennsylvania between the years 1970 and 1995.

3.  A copy of all correspondence from Watchtower Bible and Tract Society of
New York between the years 1970 and 1995.

4.  A copy each Kingdom Ministry School Course in your possession from the
years 1972 to 1995.

5.  A copy of each document in your possession that was provided to you by the
Watch Tower Bible and Tract Society of Pennsylvania.

6.  A copy of each document in your possession indicating how much financial
support Watch Tower Bible and Tract Society of Pennsylvania has provided to
the Hardin Congregation.

7.  A copy of each document in your possession indicating the amount of
donations collected by the Hardin Congregation that were sent to the Watch
Tower Bible and Tract Society of Pennsylvania.

8.  A copy of all documents in your possession identifying one or more Elders
in the Hardin Congregation between 1970 and 1995.

9.  A copy of all documents in your possession identifying one or more Ministerial Servants in the Hardin Congregation between 1970 and 1995.

10. A copy of all documents in your possession identifying one or more Branch Overseers, for the Hardin Congregation between 1970 and 1995.

11. A copy of all documents in your possession relating to abuse of Tracy Caekaert or Camillia Mapley.

12. A copy of all documents in your possession identifying one or more Circuit Overseers, for the Hardin Congregation between 1970 and 1995.

13. A copy of all documents in your possession identifying one or more District Overseers, for the Hardin Congregation between 1970 and 1995.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c),

relating to the place of compliance; Rule 45(d), relating to your protection as a

person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to

respond to this subpoena and the potential consequences of not doing so.

DATED this 17th day of December, 2020.

MEYER, SHAFFER & STEPANS, PLLP


/s/ Ryan Shaffer
Robert L. Stepans
Ryan R. Shaffer
James C. Murnion

*Attorneys for Plaintiffs*

### Rule 45. Subpoena

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served

before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it

has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

.   .   .

 **(g) Contempt.** The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

# STACEY & FUNYAK
### ATTORNEYS AT LAW
THE GRAND BUILDING, SUITE 700
100 NORTH 27TH STREET
P.O. BOX 1139
BILLINGS, MONTANA 59103-1139

CALVIN J. STACEY
KEVIN M. FUNYAK
MORGAN M. SORENA

PHONE:   406-259-4545
FAX:   406-259-4540

February 2, 2021

*Via Email & U.S. Mail*

Ryan R. Shaffer
MEYER, SHAFFER & STEPAN
430 Ryman Street
Missoula, MT 59802
ryan@mss-lawfirm.com

**RE:**   *Caekaert & Mapley v. Watchtower, et.al. (Cause No. CV-20-52-BLG-SPW)*
   *Rowland & Schulze v. Watchtower, et.al. (Cause No. CV-20-59-BLG-SPW)*

Ryan,

As previously discussed, enclosed are the signed *Acknowledgements* for the *Subpoenas Duces Tecum* directed to my client the Hardin Congregation. I have signed these *Acknowledgements*, but I modified the language of each to make clear that the timeline for my client's response is based off of the date signed.

Additionally, under Rule 45 of the Federal Rules of Civil Procedure, I have 14 days from the date the Acknowledgements are signed to formally serve any objections to the *Subpoenas* themselves. I will formally serve those objections on behalf of the Hardin Congregation as part of their responses to the *Subpoenas*. Again, those objections would include, but not necessarily be limited to the following:

- The *Subpoenas* are not properly signed by counsel [Rule 45(a)(3)];
- The Subpoenas require the production of requested information and documents in excess of 100 miles away from the Hardin Congregation [Rule 45(c)(2)(A) and Rule 45(d)(3)(A)(ii)];
- The *Subpoenas* impose an undue burden on the Hardin Congregation in that they request the production of information and documents for an undefined period of time (see ¶¶5, 6, 7 & 11) [Rule 45(d)(1)];
- The *Subpoenas* impose an undue burden on the Hardin Congregation in that they request the production of information and documents dating back to a period of time between 36 to 51 years ago (see ¶¶1-4, 8-10 & 12-13) [Rule 45(d)(1)];
- Considering the timeframe contemplated, the *Subpoenas* fail to allow for a reasonable time for compliance [Rule 45(d)(3)(A)(i)]; and


EXHIBIT
B

Mr. Ryan Shaffer
February 2, 2021
Page 2

· The scope of the *Subpoenas* can be interpreted as seeking the production of confidential information and/or documentation protected under the §26-1-804, MCA and related case law.

With the foregoing in mind, I continue to work with the Hardin Congregation To try to identify all information and documentation that is responsive to your *Subpoenas*. As soon as that can be compiled, I will get a formal response to each *Subpoena* mailed out to you.

At this point, it does not appear that there will be a great deal of information or documentation that will be responsive to the *Subpoenas*. This is with the exception of materials that would be considered responsive to ¶5 of your *Subpoenas*. That information and documentation consists of a large number of publications and books that the Hardin Congregation obviously will not be copying. That would be unduly burdensome and costly, not to mention these materials are also copyrighted. With this in mind, the Hardin Congregation will compile a detailed roster of all such publications and books. You can review that roster and if you decide you want to review any specific items, arrangements will be made so that you can view them in my office.

If you should have any questions in this regard, please call. My continued best to you.

Very sincerely yours,

*Kevin M. Funyak*

Kevin M. Funyak

Ryan Shaffer | ryan@mss-lawfirm.com
Robert L. Stepans | rob@mss-lawfirm.com
James Murnion | james@mss-lawfirm.com

**Meyer, Shaffer**
**& Stepans, PLLP**

March 30, 2021

<u>**Via Fax, Email and U.S. Mail**</u>

Kevin M. Funyak
Stacey & Funyak
PO Box 1139
Billings, MT  59103-1139

FX: (406) 259-4540

kfunyak@staceyfunyak.com



Re:  Hardin Congregation's Response to Plaintiffs' Subpoena Duces Tecum
       *Rowland & Schulze v Watchtower Bible and Tract Society of New York, Inc., et. al.*

Dear Kevin:

Thank you for providing the Hardin Congregation's documents and response to Plaintiffs' Subpoena Duces Tecum in the above matter.  We do have a couple concerns regarding redacted documents and the privilege log.  They are outlined below.

First, the privilege log does not contain enough detail to verify whether a privilege applies, and which privilege applies to each document.  For example, the log does not identify the authors of documents that are withheld or the parties to communications that are withheld.  We would also ask that additional detail about the subject matter of the privileged material be provided.  We believe that such additional information can and should be provided so that we can better assess the veracity of the claimed privileges.

Next, three of the Hardin Congregation's claimed basis for withholding are not recognized under Montana law:  Third-Party Privacy; Congregant Expectation of Confidentiality; Elder Expectation of Confidentiality.  There is no legal basis to withhold documents based on these alleged privileges, which are not recognized by law.  Therefore, we request that your client turn over unredacted documents that were withheld based on these privileges.  This includes unredacted portions of the documents at "Row_Hardin000104 – 108" that were redacted.

Third, the Clergy-Penitent Privilege (§ 26-1-804) applies only to testimony and not to documents: "A clergyman or priest cannot, without the consent of the person making the confession, be <u>examined</u> as to any <u>confession</u> made to him in his professional character in the course of discipline enjoined by the church to which he belongs" (emphasis added).  The subpoena at issue does not seek to examine any clergyman or priest and therefore the statute does not apply.  In addition, none of the documents withheld under this statute appear to involve a

"confession" based on the descriptions in the privilege log.  Your cited authority for withholding, *State v. MacKinnon, 288 Mont. 329, 957 P.2d 23 (Mont. 1998)*, involved an alleged confession and not documents and does not justify withholding documents that are responsive to the subpoena. *MacKinnon* declined to apply the claimed privilege and stated that testimonial exclusionary rules "must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth."  Our review of the applicable law indicates that there is no basis to withhold documents from the subpoena based on the Clergy-Penitent privilege and we respectfully request that those documents be turned over.

Based on the foregoing, we are requesting that you update your privilege log with additional detail to support the claimed attorney-client privilege on documents 3, 8 & 9, and produce full copies of the documents erroneously withheld or redacted at entries 1, 2, 4-7, 11 & 12.  Thanks for your continued professional cooperation and please contact me if you would like to discuss any of the above.

Sincerely,

MEYER, SHAFFER & STEPANS, PLLP

Ryan Shaffer

# STACEY & FUNYAK

### ATTORNEYS AT LAW

THE GRAND BUILDING, SUITE 700
100 NORTH 27TH STREET
P.O. BOX 1139
BILLINGS, MONTANA 59103-1139

CALVIN J. STACEY
KEVIN M. FUNYAK
MORGAN M. SORENA

PHONE:  406-259-4545
FAX:  406-259-4540

April 7, 2021

*Via Email & U.S. Mail*

Ryan R. Shaffer
MEYER, SHAFFER & STEPAN
430 Ryman Street
Missoula, MT  59802
ryan@mss-lawfirm.com

*RE:    Caekaert & Mapley v. Watchtower, et.al. (Cause No. CV-20-52-BLG-SPW)*
*Rowland & Schulze v. Watchtower, et.al. (Cause No. CV-20-59-BLG-SPW)*

Ryan,

I did not see in your letter of March 30, 2021 where you requested that I confirm its receipt. That said, please be advised that I did receive your letter of March 30, 2021.

Your letter arrived in my office during a week that I was out of my office. Since returning back to my office, I have been dealing with other pressing case maters and briefing deadlines.

Considering that the subpoena responses in question were sent out back on February 2, 2021, and you did not send any letter raising any concerns with those subpoena responses until your March 30, 2021, I did not think there was an urgency in responding. Like you, I am busy with other case matters, but I will do my best try to respond the issues you have raised in your letter in a similar time frame if not sooner. I trust that will be acceptable.

Plea know that when I leave my office later today, I will be gone out of state through at least next Monday.

If you should have any questions in this regard, please call. My continued best to you.

Very sincerely yours,

Kevin M. Funyak

**EXHIBIT**

**D**