Guy W. Rogers
Jon A. Wilson
Aaron M. Dunn
BROWN LAW FIRM, P.C.
315 North 24th Street
P.O. Drawer 849
Billings, MT 59103-0849
Tel. (406) 248-2611
Fax (406) 248-3128

Joel M. Taylor, Esq. (appearing *pro hac vice*)
MILLER MCNAMARA & TAYLOR LLP
100 South Bedford Road, Suite 340
Mount Kisco, New York 10549
Tel./E-Fax (845) 288-0844
*Attorneys for Defendants Watchtower Bible and Tract Society of New York, Inc.,
and Watch Tower Bible and Tract Society of Pennsylvania*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY,<br><br>Plaintiffs,<br><br>vs.<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR.,<br><br>Defendants. | Cause No. CV 20-52-BLG-SPW<br><br>**DEFENDANTS WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA'S AND WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.'S RESPONSE BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL JURISDICTIONAL DISCOVERY RESPONSES AND FOR COSTS AND FEES** |

WATCHTOWER BIBLE AND )
TRACT SOCIETY OF NEW YORK, )
INC. )
)
    Cross-Claimant, )
)
vs. )
)
BRUCE MAPLEY SR., )
)
    Cross-Claim Defendant. )

# TABLE OF CONTENTS

**Page**

**TABLE OF CONTENTS**………………………………………...………..i

**TABLE OF AUTHORITIES**………………………………………….iii

**EXHIBIT INDEX** ………………………………………………….iv

**BACKGROUND** ……………………………………...……..……..1

    **A. Procedural Background Leading to Plaintiffs' MTC**………….…….1

    **B. Jurisdictional Discovery Requests**……………………………...3

        **1. WTPA**………………………………………………......3

        **2. WTNY**……………………………………………………4

    **C. Correspondence Regarding Jurisdictional Discovery Issues
    Raised by Plaintiffs**……………………………………………...5

**ARGUMENT**……………………………………………………...8

    **I.    The Scope of Jurisdictional Discovery is Limited**……………...…..9

        **A. Plaintiffs Have Been Told on Multiple Occasions the
        Only Documents Withheld Have Been Based on
        Temporal Limitations on the Scope of Jurisdictional
        Discovery**……………………………………………...12

        **B. Plaintiffs' Attempts to Extend the Temporal Scope of
        Jurisdictional Discovery Should be Denied**…………………...14

    **II.   WTNY's Responses to Plaintiffs' Interrogatories 6-7
    are Proper**…………………………………………………17

III.    WTPA Properly Responded to RFP 61.................................19

IV.    WTNY Properly Responded to Plaintiffs' Interrogatories 9 and 15, and WTPA Properly Responded to Plaintiffs' Interrogatories 25 and 26............................................20

V.    WTPA Properly Responded to Plaintiffs' RFAs 4, 6, 7, 14 & 26 to WTPA.................................................22

VI.    WTPA and WTNY Should Not Have to Undergo the Burdensome Task of Describing Efforts Made to Search for Requested Documents.................................26

VII.   Compelling WTPA and WTNY to Prepare Corporate Representatives for Rule 30(b)(6) Depositions is Improper Because no 30(b)(6) Depositions Have Taken Place and Therefore no Justiciable Issue Exists.................................27

VIII.  Plaintiffs Are Not Entitled To Fees And Costs.......................27

CONCLUSION.................................................28

CERTIFICATE OF COMPLIANCE.................................30

CERTIFICATE OF SERVICE.................................31

# TABLE OF AUTHORITIES

**Cases**                                                                                 **Page**

*Calix Networks, Inc. v. Wi-Lan, Inc.*, 2010 WL 3515759
(N.D. Cal. Sept. 8, 2010)……………………………………………………9, 15

*Churchill v. Trinity Universal Ins. Co.*, 2009 WL 10690201
(D. Mont. June 19, 2009)………………………………………………..……13

*Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147
(3d Cir. 2010)……………………………………………………………......9

*First Nat'l Bank of Sioux Falls v. Estate of Carlson*, 448 F.Supp.3d 1091
(D. Mont. 2020)………………………………………………………………..10

*Gersh v. Anglin*, 2019 WL 265800 (D. Mont. Jan. 18, 2019)………………………12

*Gersh v. Anglin*, 2021 WL 461570 (D. Mont. Feb. 9, 2021)………………......27-28

*Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328
F.3d 1122 (9th Cir. 2003)…………………………………………………....…3

*In re Zantac (Ranitidine) Product Liability Litigation*, 2020 WL 6907056
(S.D. Fla. Nov. 24, 2020)……………………………………………..…..…………9

*Kelley v. Billings Clinic*, 2013 WL 141442 (D. Mont. April 8, 2013)…………..……19

*Lauter v. Anoufrieva*, 2009 WL 10672595 (C.D. Cal. March 30, 2009)…………..22

*Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 (3d Cir. 2015)…........9, 15

*Machinery Solutions, Inc. v. Doosan Infracore America Corp.*, 323 F.R.D.
522 (D.S.C. 2018)…………………………………………………..……..22

*McCall v. State Farm Mut. Auto. Ins. Co.*, 2017 WL 3174914
(D. Nev. July 26, 2017)……………………………………………………..20

*Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015)………………………………10-11

*Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015)……………...……..…3, 11, 19, 20

*Reno v. Western Cab Co.*, 2020 WL 5902318 (D. Nev. Aug. 31, 2020)…………15

**_Statutes and Rules_**

Fed.R.Civ.P. 26……………………………………………..…….......9, 17, 18, 19

Fed.R.Civ.P. 30(b)(6)……………………………………………………….27

Fed.R.Civ.P. 33…………………………………………………..…………13

Fed.R.Civ.P. 34…………………………………………………..…………13

Fed.R.Civ.P. 36…………………………………………...13, 22, 23, 24, 25, 26

Fed.R.Civ.P. 37………………………………………...…………………27, 28

M.R.Civ.P. 4(b)……………………………………………………….10, 14

L.R. 7.1……………………………………………………………………30

L.R. 26.3………………………………………………………………..…13

## **EXHIBIT INDEX**

**Exhibit 1**    Draft Joint Jurisdictional Discovery Plan Drafted by
Plaintiffs' Counsel………………………………………2, 7, 11

**Exhibit 2**    Letter to Plaintiffs' Counsel dated January 22, 2021….5, 16, 23

**Exhibit 3**    Letter to Plaintiffs' Counsel dated February 12,
2021………………………………………………………6, 21, 24

**Exhibit 4**    Letter to Plaintiffs' Counsel dated March 22, 2021…...6, 21, 24

**Exhibit 5**    Letter to Plaintiffs' Counsel dated
April 8, 2021…………………….......……….7, 13, 17, 21, 23, 24, 26

**Exhibit 6**      Pertinent Pages of WTNY's Responses to Plaintiffs'
                   First Set of Jurisdictional Discovery to WTNY…...….........18

**Exhibit 7**      Pertinent Pages of WTPA's Responses to Plaintiffs'
                   Second Set of Jurisdictional Discovery to WTPA……….....18

**Exhibit 8**      Pertinent Pages of WTNY's Responses to Plaintiffs'
                   Second Set of Jurisdictional Discovery to WTNY……....…..18

**Exhibit 9**      Pertinent Pages of WTPA's Responses to Plaintiffs'
                   Third Set of Jurisdictional Discovery to WTPA………....18, 25

Defendants Watch Tower Bible and Tract Society of Pennsylvania (hereinafter "WTPA") and Watchtower Bible and Tract Society of New York, Inc. (hereinafter "WTNY"), by and through their attorneys, hereby submit their Response Brief in Opposition to Plaintiffs' Motion to Compel Jurisdictional Discovery Responses and for Costs and Fees (hereinafter "Plaintiffs' MTC") (Doc. 56).[1]  For the reasons explained below, Plaintiffs' MTC should be denied, and both WTPA and WTNY respectfully request such relief.

## **BACKGROUND**

### **A. Procedural Background Leading to Plaintiffs' MTC.**

In April 2020, Plaintiffs filed the instant action seeking to hold WTPA and WTNY (as well as Defendant/Cross Defendant Bruce Mapley Sr.) liable for claimed sexual abuse that allegedly occurred in or around Hardin, Montana in the 1970s and 1980s. *See* Doc. 1[2]; *see also*, Doc. 40, p. 2 (Plaintiffs contending "[t]his case revolves around the serial sexual abuse of Plaintiffs when they were children in the 1970s and 80s."). WTPA moved to dismiss the claims against it on personal jurisdiction grounds. *See* Docs. 13 & 14. Plaintiffs argued WTPA is subject to specific jurisdiction. *See* Doc. 21. On August 14, 2020, this Court entered an Order Providing

---

[1]As Plaintiffs' MTC alleges issues with both WTPA's and WTNY's jurisdictional discovery responses, WTPA and WTNY file this Response Brief jointly.
[2] Superseded by Doc. 22.

for Jurisdictional Discovery (Doc. 32), which allowed only jurisdictional discovery to take place pending a resolution of WTPA's Motion to Dismiss. Doc. 32, pp. 5-6.

Per the Court's directives, the parties submitted a Joint Jurisdictional Discovery Plan (Doc. 36), which Plaintiffs' counsel drafted. *See* **Exhibit 1** (true and correct copy of draft Joint Jurisdictional Discovery Plan received in e-mail from Plaintiffs' counsel). The parties agreed to the following scope of jurisdictional discovery:

1) WTPA's contacts and communications with the local Jehovah's Witness congregations in Montana, if any, during the relevant time period.

2) WTPA's activities and conduct in Montana, if any during the relevant time period.

3) The Hardin Montana Jehovah's Witness congregation's contacts with WTPA, if any, during the relevant time period.

Doc. 36, p. 3.

Plaintiffs argued the relevant time period was 1970 to 1995, while WTPA and WTNY argued the relevant period was 1973 to 1990. *Id.*, p. 4.

Plaintiffs also requested permission to engage in jurisdictional discovery to determine "[w]hether WTPA and WTNY were a 'single enterprise,'" including taking a deposition of WTNY. *Id.* at pp. 4-5.[3] Plaintiffs argued:

---

[3] Plaintiffs subsequently dropped the "single enterprise" language and proceeded on an "alter ego" theory. *See* Doc. 44.

Plaintiffs should be permitted to discovery on the identities of WTPA's and WTNY's executives and board of directors during the relevant time period, whether WTPA and WTNY comingled assets during the relevant time period, and whether WTPA controlled and directed the activities of WTNY.

Doc. 44, p. 6 (citing *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134-35 (9th Cir. 2003) and *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071-75 (9th Cir. 2015)); *see also*, Doc. 44, p. 9 (requesting discovery into similar matters as set forth on p. 6 of Doc. 44).

Following briefing, this Court entered an Order Re Scope of Jurisdictional Discovery (Doc. 47), permitting Plaintiffs "to conduct discovery into WTPA's and WTNY's corporate relationship from 1973 to 1992." Doc. 47, p. 5. This Court did not alter the parties' agreements regarding the scope of jurisdictional discovery set forth in Doc. 36.

## B. Jurisdictional Discovery Requests.

### 1. WTPA

Served in October 2020, Plaintiffs' first jurisdictional discovery requests to WTPA contained 19 Interrogatories, 52 Requests for Production (hereinafter "RFP" or, when plural, "RFPs"), and 12 Requests for Admission (hereinafter "RFA" or, when plural, "RFAs"). Portions of WTPA's answers/responses are contained in Doc. 57-10. WTPA supplemented its responses to Plaintiffs' first set of jurisdictional discovery to WTPA on December 15, 2020, and March 22, 2021.

Served in November 2020, Plaintiffs' second jurisdictional discovery requests to WTPA contained 14 Interrogatories, 8 RFPs, and 4 RFAs. Portions of WTPA's answers/responses are contained in Docs. 57-11 and 57-8 (at pp. 12-21). WTPA supplemented its responses to Plaintiffs' second set of jurisdictional discovery to WTPA on January 15, 2021.

Served in late January 2021, Plaintiffs' third jurisdictional discovery requests to WTPA contained 12 Interrogatories, 21 RFPs, and 14 RFAs. Portions of WTPA's answers/responses are contained in Docs. 57-1, 57-5 (at pp. 2-12), and 57-12. WTPA supplemented its responses to Plaintiffs' third set of jurisdictional discovery to WTNY on April 19, 2021, and April 28, 2021.

In total, WTPA has responded to 45 Interrogatories, 81 RFPs, and 30 RFAs during jurisdictional discovery. WTPA has also issued 5 supplements. WTPA has produced 63,469 pages of documents.

## 2. WTNY

Served in November 2020, Plaintiffs' first jurisdictional discovery requests to WTNY contained 5 Interrogatories, 4 RFPs, and 3 RFAs. WTNY responded and has supplemented twice, first on March 31, 2021, and second on April 19, 2021.

Served in January 2021, Plaintiffs' second jurisdictional discovery requests to WTNY contained 19 Interrogatories, 12 RFPs, and 1 RFA. Portions of WTNY's answer/responses are contained in Docs. 57-6 and 57-8 (at pp. 2-11). WTNY

supplemented its responses to Plaintiffs' second set of jurisdictional discovery to WTNY on March 31, 2021.

In total, WTNY has responded to 24 Interrogatories, 16 RFPs, and 4 RFAs during jurisdictional discovery. WTNY has also issued 3 supplements. WTNY has produced 210 pages of documents.

Together, WTPA and WTNY have responded to 5 sets of jurisdictional discovery requests consisting of 69 Interrogatories, 97 RFPs, and 34 RFAs. Defendants have issued a total of 8 discovery supplements and have produced over 63,500 pages of documents. As demonstrated below, Defendants have also gone to great lengths to try and satisfy concerns Plaintiffs have raised regarding jurisdictional discovery.

### C. Correspondence Regarding Jurisdictional Discovery Issues Raised by Plaintiffs.

On January 19, 2021, Plaintiffs' counsel sent a letter regarding purported discovery issues with respect to WTPA. Pertinent to the issues raised in Plaintiffs' MTC, Plaintiffs took issue with how WTPA responded to Plaintiffs' RFAs 4, 6, and 7. Through counsel, WTPA responded on January 22, 2021 with a 5-page letter and addressed all the issues Plaintiffs raised, including issues regarding RFAs 4, 6, and 7 to WTPA. *See* **Exhibit 2**, pp. 4-5.

Plaintiffs' counsel subsequently sent two letters dated January 26, 2021, regarding alleged issues with WTPA's responses to Plaintiffs' Second Set of Jurisdictional Discovery and WTNY's responses to Plaintiffs' First Set of Jurisdictional Discovery. Pertinent to Plaintiffs' MTC, Plaintiffs took issue with WTPA's responses to Plaintiffs' RFA 14 and Interrogatory 25. Through counsel, WTPA and WTNY responded on February 12, 2021 with a 3-page letter addressing all the issues Plaintiffs raised. *See* **Exhibit 3** (w/o enclosure).

On March 10, 2021, Plaintiffs' counsel sent another letter regarding claimed discovery issues. Pertinent to Plaintiffs' MTC, the March 10 letter once again raised issues with WTPA's responses to Interrogatory 25 and RFA 14 despite those requests being addressed by letter nearly a month earlier as shown in **Exhibit 3** (on p. 2). Still, WTPA and WTNY responded through counsel on March 22, 2021 with a 3-page letter once again addressing Plaintiffs' concerns. *See* **Exhibit 4**.

Also on March 22, 2021, WTPA and WTNY, through counsel, sent a 10-page letter to Plaintiffs' counsel responding to e-mail correspondence from Plaintiffs' counsel. *See* Doc. 57-2. At Plaintiffs' request, WTPA and WTNY went through each answer or response to Plaintiffs' second set of jurisdictional discovery to both entities and explained whether information had been withheld pursuant to objections stated. *Id.*

On March 26, 2021, Plaintiffs' counsel sent another letter regarding purported issues with WTPA's and WTNY's responses to jurisdictional discovery. Pertinent to the issues raised by Plaintiffs' MTC, Plaintiffs expressed dissatisfaction with the efforts WTPA and WTNY undertook to explain whether documents were being withheld pursuant to the proper objections stated as set forth in Doc. 57-2. Plaintiffs also raised issues regarding the temporal scope of jurisdictional discovery. In addition, Plaintiffs raised issues with WTNY's responses to Plaintiffs' Interrogatories 6-7 and 9.   As for WTPA, Plaintiffs raised issues with WTPA's responses to Plaintiffs' RFPs 73-76 and 78 and RFA 26.   Plaintiffs finally alleged, in conclusory fashion, that an impasse had been reached regarding disputes over WTPA's responses to Plaintiffs' RFAs 4, 6, 7 and 14, as well as Plaintiffs' Interrogatory 25.

On April 8, 2021, following a call between counsel, WTPA and WTNY responded to Plaintiffs' concerns with a thorough 12-page letter. *See* **Exhibit 5** (w/o enclosure[4]). As with previous correspondence, Plaintiffs were reminded what they agreed to in terms of the temporal scope of discovery and were asked to explain their reasoning for alleging the temporal scope extended far beyond what was suggested back in September 2020. *Id.*, pp. 2-3. To remove all doubt regarding withholding of

---

[4] The enclosure was **Exhibit 1** hereto.

documents, Plaintiffs were unequivocally advised the only documents that had been withheld pursuant to objections stated consisted of documents falling outside the temporal scope. *Id.*, p. 3. In addition, WTNY addressed Plaintiffs' concerns regarding Interrogatories 6-7 and 9. *Id.*, pp. 4-5. WTPA addressed Plaintiffs' concerns regarding Interrogatory 25, RFPs 73-76 and 78, and RFAs 4, 6, 7, 14, and 26. *Id.*, pp. 3, 6-10. As with previous correspondence, Plaintiffs were advised the Defendants remained willing to discuss and work through issues. *Id.*, p. 12.

Plaintiffs thereafter sent a letter dated April 9, 2021 with a one paragraph response indicating—in conclusory fashion—several issues still existed. Plaintiffs filed their MTC with a supporting Brief on April 20, 2021. *See* Docs. 56-57.[5]

## ARGUMENT

Plaintiffs' MTC fails to recognize the limitations imposed on jurisdictional discovery and, as a result, fails to acknowledge that both WTPA's and WTNY's responses and objections to Plaintiffs' voluminous jurisdictional discovery requests are proper. Just because Plaintiffs do not like the answers and responses provided by WTPA and WTNY does not mean Defendants have failed to adhere to their discovery obligations. As the indisputable facts and applicable law show, Plaintiffs'

---

[5] References to Doc. 57 will refer to the page number on the ECF stamp on the top of each page as opposed to the page numbers on the bottom of each page.

MTC is without merit. This Court should deny the same and decline to award Plaintiffs fees and costs.

## I.    The Scope of Jurisdictional Discovery is Limited.

While the Federal Rules of Civil Procedure authorize a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," Fed.R.Civ.P. 26(b)(1), jurisdictional discovery cannot be employed as a license to engage in a "fishing expedition." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108, n.38 (3d Cir. 2015) (citation omitted); *see also*, *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147 (3d Cir. 2010) ("A plaintiff may not, however, undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery.") (citation omitted). To order jurisdictional discovery, the request must be "based on more than a 'hunch that it might yield jurisdictionally relevant facts[.]'" *Calix Networks, Inc. v. Wi-Lan, Inc.*, 2010 WL 3515759, *3 (N.D. Cal. Sept. 8, 2010) (citation omitted). As such, Plaintiffs are not permitted to use jurisdictional discovery "in an attempt to marshal facts that he 'should have had – but did not – before coming through the courthouse doors.'" *In re Zantac (Ranitidine) Product Liability Litigation*, 2020 WL 6907056, *2 (S.D. Fla. Nov. 24, 2020) (citation omitted).

Here, jurisdictional discovery is further limited by the fact that Plaintiffs have conceded WTPA is not subject to general personal jurisdiction, meaning the inquiry is only whether WTPA is subject to specific personal jurisdiction. To find a nonresident defendant like WTPA subject to specific personal jurisdiction, Plaintiffs must first satisfy Montana's long-arm statute, M.R.Civ.P. 4(b)(1). *First Nat'l Bank of Sioux Falls v. Estate of Carlson*, 448 F.Supp.3d 1091, 1097 (D. Mont. 2020). Plaintiffs contend they can satisfy Montana's long-arm statute under only provision 4(b)(1)(B), M.R.Civ.P., which requires "the commission of any act resulting in accrual within Montana of a tort action[.]" Doc. 21, p. 6.

Next, Plaintiffs must show the exercise of personal jurisdiction over WTPA would comport with due process. *First Nat'l Bank of Sioux Falls*, 448 F.Supp.3d at 1097. The due process analysis implicates a three-part test:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or results from the defendant's forum-related activities; and

(3) the exercise of jurisdiction must be reasonable.

*Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citation omitted).[6]

Plaintiffs have alleged WTPA is subject to personal jurisdiction under an alter ego theory. However, to satisfy the same, Plaintiffs must, at a minimum, make a prima facie showing of the following: (1) such unity of interest and ownership between WTPA and WTNY that the separate entities no longer exist; and (2) that failure to disregard the entities' separateness would result in fraud or injustice. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015)). "The 'alter ego…relationship is typified by parental control of the subsidiary's internal affairs or daily operations." *Id.*, 793 F.3d at 1071 (citation omitted). This Court allowed jurisdictional discovery "regarding WTPA's corporate relationship with WTNY from 1973 to 1992[.]" Doc. 47, p. 5.

In addition to the foregoing limitations on jurisdictional discovery, the parties agreed to the following limited scope in their Joint Jurisdictional Discovery Plan drafted by Plaintiffs' counsel[7]:

1) WTPA's contacts and communications with the local Jehovah's Witness congregations in Montana, if any, during the relevant time period.

2) WTPA's activities and conduct in Montana, if any during the relevant time period.

---

[6] In tort suits such as this, the "purposeful direction test" is employed under the first factor of the due process test. *See* Doc. 25, pp. 8-10 (discussing case law).

[7] *See* **Exhibit 1**.

3) The Hardin Montana Jehovah's Witness congregation's contacts with WTPA, if any, during the relevant time period.

Doc. 36, p. 3. Plaintiffs argued the relevant time period was 1970 to 1995, while WTPA and WTNY argued the relevant period was 1973 to 1990. *Id.*, p. 4. Nothing about this Court's Order Re Scope of Jurisdictional Discovery setting a temporal scope of 1973 to 1992 for "[d]iscovery regarding WTPA's corporate relationship with WTNY[,]" altered the parties' agreements set forth in Doc. 36.

Pursuant to the foregoing, significant limits exist with respect to what Plaintiffs are entitled to in jurisdictional discovery. Thus, when analyzing Plaintiffs' MTC, this Court should consider the proportionality of Plaintiffs' jurisdictional discovery requests consistent with the foregoing limitations. *Gersh v. Anglin*, 2019 WL 265800, *1 (D. Mont. Jan. 18, 2019) (noting both the parties and the court "have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes.") (citation omitted). As explained below, WTPA's and WTNY's objections, responses, and efforts to resolve areas of disagreement comport with the limited scope of jurisdictional discovery.

### A. Plaintiffs Have Been Told on Multiple Occasions the Only Documents Withheld Have Been Based on the Temporal Limitations on the Scope of Jurisdictional Discovery.

Plaintiffs' MTC argues Plaintiffs cannot tell whether documents have been withheld pursuant to objections stated. *See* Doc. 57, pp. 9-12. However, Plaintiffs

were explicitly informed by letter dated April 8, 2021, the only documents that had been withheld were based on the temporal scope limitations. *See* **Exhibit 5**, p. 3 ("To reiterate from our call with [Plaintiffs' counsel] on March 29, 2021 and as a follow-up the 10-page letter we sent dated March 22, 2021 [i.e., Doc. 57-2], *the only documents that have been withheld pursuant to the objections stated consist of documents falling outside the relevant time period discussed above. Other than such documents, the objections stated have been stated so as to avoid waiving the same...*") (emphasis added). As such, Plaintiffs' reliance on RFP 77 to WTPA is odd, especially considering WTPA's response indicated, "none." *See* Doc. 57, p. 11. Contrary to Plaintiffs' suggestion, WTPA's "none" response was self-explanatory.

It appears Plaintiffs' main issue is that WTPA and WTNY have objected. However, given the limitations on jurisdictional discovery set forth above and further explained herein, there can be no question WTPA and WTNY properly objected to Plaintiffs' jurisdictional discovery requests. In fact, WTPA and WTNY were <u>required</u> to state objections or risk waiving the same. *See* Fed.R.Civ.P. 33(b)(4); Fed.R.Civ.P. 34(b)(2)(B)-(C); Fed.R.Civ.P. 36(a)(5); L.R. 26.3(a)(4).[8] Thus, WTPA and WTNY should not be faulted for properly objecting.

---

[8] Using "subject to and without waiving" does not constitute an evasive response when the responding party is attempting to balance the need to preserve objections while also providing substantive information to the requesting party. *Churchill v. Trinity Universal Ins. Co.*, 2009 WL 10690201, *7 (D. Mont. June 19, 2009).

**B. Plaintiffs' Attempts to Extend the Temporal Scope of Jurisdictional Discovery Should be Denied.**

Despite agreeing to limit the scope of jurisdictional discovery to: (1) WTPA's contacts and communications with the local Jehovah's Witness congregations in Montana, if any; (2) WTPA's activities and conduct in Montana, if any; and (3) The Hardin Montana Jehovah's Witness congregation's contacts with WTPA, if any, for a maximum period of 1970-1995, *see* Doc. 36, pp. 3-4, Plaintiffs now contend discovery requests seeking information before 1973 or after 1992 are proper because such information could have been relied on by elders and officials when handling sexual abuse allegations. *See* Doc. 57, p. 12.

Several problems with Plaintiffs' position exist. First, it defies logic to assert elders and/or officials could have relied on information published or copyrighted *after* the alleged sexual abuse took place and was allegedly reported to certain individuals "when handling sexual abuse allegations" as Plaintiffs assert. Thus, any requests seeking information after the alleged sexual abuse happened and was allegedly reported cannot be a proper focus of jurisdictional discovery, which again is limited to whether Plaintiffs can satisfy Montana's long-arm statute under Rule 4(b)(1)(B), M.R.Civ.P. and, if so, whether Plaintiffs can satisfy the due process test. All objections made to requests seeking information after 1992—or at least 1995— are therefore proper.

Second, Plaintiffs' position is based on "hunches" certain information or documents *could* be relevant to the personal jurisdiction issue. *See* Doc. 57, p. 12 ("It is *believed* that those Montana elders and officials relied on the guidance in those WTPA documents when handling the Plaintiffs' sexual abuse during the 1973 to 1992 time-period."); p. 13 ("Plaintiffs requested production of WTPA documents that the Hardin congregation *may* have relied on in its handling of the Plaintiffs' sexual abuse.") (emphasis added). Mere "hunches" are insufficient, as are attempts to "go fishing." *Calix Networks, Inc.*, 2010 WL 3515759 at *3 (citation omitted); *Lincoln*, 800 F.3d at 108, n.38 (citation omitted). Consistent with such case law, the "proportionality requirement is meant to ensure that judges and parties are vigilant in ensuring the discovery process 'provides parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery.'" *Reno v. Western Cab Co.*, 2020 WL 5902318, *1 (D. Nev. Aug. 31, 2020) (citation omitted).

Plaintiffs' reliance on a letter dated November 1, 1995 addressed "TO ALL BODIES OF ELDERS IN BRITAIN" on letterhead with an address of "The Ridgeway London NW7 1RN England" is of no refuge to Plaintiffs' argument to extend the temporal scope of jurisdictional discovery. *See* Doc. 57, p. 12 (citing Doc. 57-4). In January 2021, Plaintiffs were informed such letter was only sent to

congregations in England, not the U.S. **Exhibit 2**, p. 3. Plaintiffs were informed any communications like Doc. 57-4 would have been sent by WTNY. *Id.*

Plaintiffs' reliance on RFP 75 to WPTA fares no better. Plaintiffs contend they "*believe*" the document requested, which predated 1973, "may include guidance and instruction that elders in the Hardin congregation relied on when handling reports of Plaintiffs' sexual abuse." Doc. 57, p. 13 (emphasis added). Notwithstanding this mere "hunch," before this document was supplemented by WTPA on April 28, 2021, Plaintiffs used the same exact document in a deposition on April 23, 2021.[9] Plaintiffs' effort to compel production of a document that was already in their possession makes no sense.

Pursuant to the foregoing, it is not a statute, a specific case, or a court rule which serves to limit the temporal scope of jurisdictional discovery. Rather, the temporal scope is limited by the parties' agreements, pertinent case law regarding specific personal jurisdiction, and proportionality considerations. Plaintiffs' attempt to extend the temporal scope beyond what the parties agreed to in September 2020 based on mere hunches information or documents Plaintiffs believe *could* be relevant to the personal jurisdiction issue should therefore be denied.[10]

---

[9] Counsel is not yet in possession of the deposition transcript from April 23, 2021. However, the same shows Plaintiffs used the exact same document requested in RFP 75 to WTPA to question a deponent.
[10] Nonetheless, in the spirit of good faith, WTPA has tried to accommodate Plaintiffs' requests and has supplemented with documents responsive to RFPs 75, 76, and 78 to WTPA. WTPA will

## II.    WTNY's Responses to Plaintiffs' Interrogatories 6-7 are Proper.

Plaintiffs' MTC also takes issue with WTNY's responses to Plaintiffs' Interrogatories 6-7 regarding the identity of individuals "who worked at the church's Service Department and Legal Department from 1960 to 1990." WTNY informed Plaintiffs the requests were objectionable for numerous reasons, including the temporal limitations, overbreadth, vagueness as to the term "church's Legal Department" (with respect to Interrogatory 7), and proportionality. *See* Doc. 57-6, pp. 4-5. WTNY subsequently informed Plaintiffs WTNY has no responsive information for the pertinent time period and reiterated the objectionable nature of the requests. *See* Doc. 57-2, pp. 3-4. Before Plaintiffs filed their MTC, WTNY once again attempted to resolve Plaintiffs' concerns by informing Plaintiffs no lists or documents exist showing who worked in the Service Department and/or Legal Department. *See* **Exhibit 5**, p. 4. WTNY also informed Plaintiffs no lists of individuals who resided in New York exist which could conceivably be used to figure out who worked in the Service Department and Legal Department during the relevant time period. *Id.*

Despite such correspondence, Plaintiffs' MTC seeks to compel additional responses to Interrogatories 6-7 to WTNY on grounds those Interrogatories were

---

continue to search for specifically requested documents and supplement consistent with Rule 26, Fed.R.Civ.P.

propounded "to identify witnesses who may be able to testify to WTNY and WTPA's corporate relationship between 1973 and 1992." Doc. 57, p. 17. Such a request is puzzling considering Plaintiffs argued they "should be permitted to discovery on the identifies of WTPA's and WTNY's executives and board of directors during the relevant time period, whether WTPA and WTNY commingled assets during the relevant time period, and whether WTPA controlled and directed the activities of WTNY." Doc. 44, p. 6. Plaintiffs were provided with the identities of the executives and board of directors for both WTPA and WTNY. *See* **Exhibit 6** (pertinent pages of WTNY's responses to Plaintiffs' first set of jurisdictional discovery, providing names of all executives and directors from 1973-1992), pp. 3-8; and **Exhibit 7** (pertinent pages of WTPA's responses to Plaintiffs' second set of jurisdictional discovery to WTPA, providing the names of all executives and directors from 1973-1992), pp. 5-9. Further, Plaintiffs have been provided with 3 living individuals most knowledgeable of WTNY's and WTPA's activities in the United States for the appropriate period. *See* **Exhibit 8** (pertinent pages of WTNY's responses to Plaintiffs' second set of jurisdictional discovery to WTNY), p. 4; and **Exhibit 9** (pertinent pages of WTPA's responses to Plaintiffs' third set of jurisdictional discovery to WTPA), p. 10.

Clearly, Interrogatories 6 and 7 to WTNY fail to meet the proportionality requirements imposed by Rule 26, Fed.R.Civ.P., when considering what information

Plaintiffs have been provided. Indeed, Plaintiffs have been provided with the exact information they stated they wanted (*see* Doc. 44, p. 6), and can take corporate depositions if they wish. *See Kelley v. Billings Clinic*, 2013 WL 141442, *5 (D. Mont. April 8, 2013) (noting "the appropriate method to obtain" additional information would be "through deposition.") (citation omitted). Thus, far from "complete obstruction," WTNY fairly responded to Plaintiffs' Interrogatories 6 and 7.  Plaintiffs' MTC in this regard should therefore be denied.

## III.   WTPA Properly Responded to RFP 61.

Plaintiffs' MTC regarding RFP 61 to WTPA should be denied for multiple reasons. First, Plaintiffs' MTC implicitly acknowledges RFP 61 was objectionable on temporal scope grounds considering the RFP sought information from 1960-1995, whereas Plaintiffs' MTC only requests documents for 1973-1992. *See* Doc. 57, pp. 9, 25.

Second, considering Plaintiffs have been provided with the names of executives and directors for both WTPA and WTNY for the years 1973-1992 as discussed above, coupled with the fact that Plaintiffs were provided Articles of Incorporation which describe how directors are elected, RFP 61 plainly fails Rule 26, Fed.R.Civ.P.'s proportionality requirement. While Plaintiffs conclusory assert RFP 61 is relevant to Plaintiffs' alter ego theory, Plaintiffs fail to explain how. Relevancy is not apparent, as nothing in case law such as *Ranza* speaks to votes or

appointments of corporate directors.  Therefore, Plaintiffs have the burden to show as much.  *McCall v. State Farm Mut. Auto. Ins. Co.*, 2017 WL 3174914, *6 (D. Nev. July 26, 2017) ("[W]hen relevancy is not readily apparent...the party seeking discovery has the burden to show the relevancy of the request.") (citations omitted).

Having failed this burden, Plaintiffs' MTC regarding RFP 61 to WTPA should be denied.

## IV.   WTNY Properly Responded to Plaintiffs' Interrogatories 9 and 15, and WTPA Properly Responded to Plaintiffs' Interrogatories 25 and 26.

Plaintiffs' issues with WTNY's responses to Plaintiffs' Interrogatories 9 and 15, as well as WTPA's responses to Plaintiffs' Interrogatories 25 and 26, all of which concern the Governing Body, a non-party to this litigation, are misplaced. *See* Doc. 57, pp. 18-21; Doc. 57-8, p. 5 (Plaintiffs' Interrogatory 9 to WTNY); pp. 7-8 (Plaintiffs' Interrogatory 15 to WTNY); p. 17 (Plaintiffs' Interrogatory 25 to WTPA); and p. 26 (Plaintiffs' Interrogatory 26 to WTPA). Plaintiffs contend they need information regarding the Governing Body in order to "fully and fairly resolve Plaintiffs' alter ego claim." Doc. 57, pp. 18-21.  However, Plaintiffs did not sue the Governing Body, but rather WTPA and WTNY (as well as Mr. Mapley). Furthermore, such argument does not have any support under the case law regarding an alter ego theory of jurisdiction. *See Ranza*, 793 F.3d at 1073.

Regardless, WTPA and WTNY indisputably fairly responded to these Interrogatories. *See* Doc. 57-8, pp. 5-6, 8-9, 17-18, and 26-27. While Plaintiffs are unsatisfied with the facts, the Governing Body provides ecclesiastical guidance which is generally followed by Jehovah's Witnesses not because there is any legal obligation to do so, but rather because of the spiritually mature nature of the individuals serving on the Governing Body. WTPA and WTNY have explained as much to Plaintiffs on multiple occasions. *See* **Exhibit 3**, p. 2 (explaining WTPA's response to Interrogatory 25); **Exhibit 4**, p. 2 (same); **Exhibit 5**, pp. 4-5 (explaining WTNY's responses to Interrogatory 9); pp. 6-7 (again explaining WTPA's response to Interrogatory 25). While Plaintiffs' MTC cherry-picks a document Plaintiffs obtained from a subpoena issued on the Hardin Congregation to try and substantiate their claim the Governing Body does more than what WTPA and WTNY provided in discovery responses, *see* Doc. 57, p. 20, Plaintiffs were informed the approval of appointment of elders is an administrative matter which fits within the ecclesiastical structure of the religion. *See* **Exhibit 5**, p. 5.

Pursuant to the foregoing, Plaintiffs' MTC regarding Interrogatories 9 and 15 to WTNY and 25 and 26 to WTPA, which attempts to manufacture an issue where none exists, should be denied.

//

//

## V.   WTPA Properly Responded to Plaintiffs' RFAs 4, 6, 7, 14 & 26 to WTPA.

Another area of disagreement is WTPA's responses to Plaintiffs' RFAs. *See*

Doc. 57, pp. 21-24 (alleging issues with WTPA's answers to RFAs 4, 6, 7, 14, &

26). Plaintiffs' arguments are misplaced. In pertinent part, Rule 36 provides:

> (4) ***Answer***.  If a matter is not admitted, the answer must specifically
> deny it or state in detail why the answering party cannot truthfully
> admit or deny it.  A denial must fairly respond to the substance of
> the matter; and when good faith requires that a party qualify an
> answer or deny only a part of a matter, the answer must specify the
> part admitted and qualify or deny the rest.  The answering party may
> assert lack of knowledge or information as a reason for failing to
> admit or deny only if the party states that it has made reasonable
> inquiry and that the information it knows or can readily obtain is
> insufficient to enable it to admit or deny.

Fed.R.Civ.P. 36(a)(4).  Consistent with such language, "[i]f any portion of an RFA

is true, the party to whom it is directed must admit that portion and qualify or deny

the rest." *Lauter v. Anoufrieva*, 2009 WL 10672595, *2 (C.D. Cal. March 30, 2009)

(citations omitted). Responses admitting in part and denying part are proper.

*Machinery Solutions, Inc. v. Doosan Infracore America Corp.*, 323 F.R.D. 522

(D.S.C. 2018) (citation omitted).

Plaintiffs' RFA 4 to WTPA asked WTPA to admit "that in 1977 WTPA

notified persons endeavoring to donate to the Jehovah's Witness church to make

their contributions payable to WTPA." Doc. 57, p. 22 (quoting Doc. 57-10, p. 4).

RFA 6 asked WTPA to admit similarly, but in 2003. Doc. 57-10, p. 4.  RFA 7 asked

WTPA to admit similarly "for the period 1977 through 2003[.]" *Id.*, p. 5. WTPA responded to RFAs 4 and 6 by admitting in part and denying in part: "WTPA admits that it accepts voluntary donations in support of its religious activities but denies that it 'notified' persons to donate to it in 1977 [or 2003]." *Id.*, p. 4. WTPA responded to RFA 7 by pointing to its responses to RFAs 4 and 6.   *Id.*, p. 5.

Far from "evad[ing a] respons[e] to the substance," as Rule 36(a)(4), Fed.R.Civ.P. permits parties to do, WTPA denied it "notified" persons to donate to it as the RFAs request, but admitted it accepted voluntary donations in support of its religious activities. WTPA has reiterated this point multiple times. *See* **Exhibit 2**, pp. 4-5; and **Exhibit 5**, pp. 8-9. Clearly, Plaintiffs are attempting to manufacture a dispute where none can be had. Just because Plaintiffs apparently do not like the responses given does not mean the responses are improper or "evasive." Plaintiffs' contrary arguments are misplaced.

Moving to RFA 14 to WTPA, the same requested WTPA "admit that at all times *between 1970 and the present*, WTPA works and has worked under the direction of the faithful and discrete slave class and its Governing Body." Doc. 57-11, p. 7 (emphasis added). After properly objecting as to the temporal scope, WTPA highlighted the ambiguity in the RFA "as to the term 'worked under the direction'" and noted "the term 'its Governing Body'" was "unintelligible" "as the two terms 'faithful and discreet slave' and 'Governing Body' are religiously understood to be

one in the same." Subject to those objections, WTPA denied "to the extent that [the RFA] suggests any legal direction or oversight." Doc. 57-11, pp. 7-8.

Plaintiffs take issue with the qualification WTPA provided and assert they "simply want to know whether WTPA was working under the direction and oversight of the Governing Body during the period 1973 to 1992 as indicated in certain documents." Doc. 57, p. 23. Notwithstanding the obvious difference in Plaintiffs' representation regarding the temporal scope of the RFA compared to the actual language of the RFA, Plaintiffs' argument misses the mark. As has been explained to Plaintiffs on multiple occasions, the point is WTPA cannot truthfully admit it worked under the direction and oversight of the Governing Body as Plaintiffs request without qualifying that the Governing Body has no legal direction or oversight over WTPA. *See* **Exhibit 3**, p. 2; **Exhibit 4**, p. 2; **Exhibit 5**, pp. 9-10. WTPA was explicitly authorized to qualify its response as it did. *See* Fed.R.Civ.P. 36(a)(4) (noting that "when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest."). Thus, Plaintiffs' MTC should be denied with respect to RFA 14.

Turning to Plaintiffs' RFA 26 to WTPA, the same requested WTPA "admit that [it] has collected money from Montana for the purchase of insurance policies." Doc. 57-12, p. 7. Notwithstanding the questionable nature of the request considering the same does not appear to be tied to issues pertinent to personal jurisdiction, and

subject to a proper objection based on the lack of a temporal limitation in the request, WTPA noted consistent with the plain language of Rule 36(a)(4), Fed.R.Civ.P. that after making a reasonable inquiry, it could neither admit nor deny the RFA. WTPA explained, "the information it knows or can readily obtain is insufficient to enable it to confirm whether any congregations in Montana participated in the KHAA during the relevant time period." Doc. 57-12, pp. 7-8.

Contrary to Plaintiffs' representations, the reference to the KHAA was made not to "evade[] Plaintiffs' request[,]" but rather because that is the subject of the RFA when put in context. In the same discovery requests that included RFA 26, Plaintiffs asked questions regarding the Kingdom Hall Assistance Arrangement ("KHAA"), a program with no predecessor that was started in 1989 "to be a voluntary pooling of assets to provide funds to repair property damage, care for liability claims from Kingdom Hall operations when there was no insurance coverage, and purchase coverage where necessary." *See* **Exhibit** 9, pp. 6-9. Plaintiffs were informed WTPA "has no knowledge or information about any claims, paid or denied, during the time period at issue." *Id.*, p. 9. Though the KHHA is not an "insurance policy" as the phrase "insurance policy" is commonly understood, the KHAA would be the only conceivable "insurance policies" fitting under the RFA. Nonetheless, as Plaintiffs were told before they filed their MTC, WTPA will

supplement its response to RFA 26 to provide Plaintiffs with the answer they already know. *See* **Exhibit 5**, p. 10.

Pursuant to the foregoing, Plaintiffs' arguments regarding how WTPA responded to RFAs 4, 6, 7, 14 and 26 are misplaced. WTPA responded consistent with Rule 36(a)(4), Fed.R.Civ.P. Therefore, Plaintiffs' MTC should be denied with respect to RFAs 4, 6, 7, 14 and 26 to WTPA.

## VI. WTPA and WTNY Should Not Have to Undergo the Burdensome Task of Describing Efforts Made to Search for Requested Documents.

In addition to the foregoing areas of disagreement, Plaintiffs are unsatisfied with efforts conducted to look for responsive information to discovery requests. *See* Doc. 57, pp. 25-26. However, Plaintiffs conspicuously fail to cite to any authority for the proposition a responding party must set forth exactly what type of search it performed. If litigants had to explain their process of searching for responsive documents to all discovery requests, discovery would transform into a game of "show your work" akin to what primary school students must do for math homework.

If Plaintiffs believe some document(s) or information exist that has not been produced, Plaintiffs are welcome to argue as much. Plaintiffs can also ask questions regarding searches performed during depositions if they wish. However, demanding

WTPA and WTNY to set forth the extent of the searches performed is improper, and Plaintiffs' MTC in this regard should be denied.

## VII.   Compelling WTPA and WTNY to Prepare Corporate Representatives for Rule 30(b)(6) Depositions is Improper Because no 30(b)(6) Depositions Have Taken Place and Therefore no Justiciable Issue Exists.

Included in Plaintiffs' request for relief is a request for WTPA and WTNY to "[p]repare corporate representatives for Rule 30(b)(6) topics…" Doc. 57, p. 26. However, no Rule 30(b)(6) depositions have taken place to date. Thus, no justiciable controversy exists. Should an issue arise during a deposition, Plaintiffs are welcome to bring the issue(s) to the Court's attention. Until then, any request for relief is purely speculative and not justiciable. Plaintiffs' "requests" regarding Rule 30(b)(6) depositions that have yet to take place should therefore be denied.[11]

## VIII.  Plaintiffs Are Not Entitled To Fees And Costs.

Because Plaintiffs' MTC should be denied for the reasons explained above, Plaintiffs' request for costs and fees should be denied.[12] Should this Court grant Plaintiffs' MTC, however, Plaintiffs are still not entitled to fees and costs because reasonable expenses must not be awarded where an "opposing party's nondisclosure

---

[11] Neither WTPA nor WTNY have any intention of impeding any 30(b)(6) depositions. Both intend to make objections where appropriate.  However, without knowing what questions will be asked, it would be purely speculative to state whether objections will be made and, if so, on what grounds.
[12] In fact, if Plaintiffs' MTC is denied, Plaintiffs are required to pay WTPA and WTNY "reasonable expenses incurred in opposing the motion, including attorney's fees" unless "the motion was substantially justified or other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(a)(5)(B).

or response was substantially justified...or other circumstances make an award of expenses unjust." *Gersh v. Anglin*, 2021 WL 461570, *5 (D. Mont. Feb. 9, 2021) (citation omitted); *see also*, Fed.R.Civ.P. 37(a)(5)(A) (providing bases for not ordering fees and costs).

As set forth above, WTPA's and WTNY's responses, objections, and nondisclosures were all proper and therefore substantially justified. Moreover, considering the great lengths both WTPA and WTNY have gone to in an attempt to work through the issues raised by Plaintiffs and accommodate Plaintiffs' concerns, at a minimum, this Court should conclude an award of expenses is unjust. Thus, however this Court rules on Plaintiffs' MTC, Plaintiffs are not entitled to fees or costs.

## **CONCLUSION**

Pursuant to the foregoing, Plaintiffs' MTC should be denied. The scope of jurisdictional discovery is far narrower than Plaintiffs suggest, and WTPA and WTNY have properly responded and objected to Plaintiffs' jurisdictional discovery requests. Plaintiffs should not be permitted to engage in a "fishing expedition" and stretch the scope of jurisdictional discovery to obtain what Plaintiffs believe *may* be pertinent to the personal jurisdiction issues currently before this Court. This Court should therefore enter an Order denying Plaintiffs' MTC, denying Plaintiffs' request for fees and costs, and ordering whatever other relief this Court deems just and

proper under the circumstances.   WTPA and WTNY both respectfully request such relief.

DATED this 11th day of May, 2021.

By: ___/s/ Jon A. Wilson_____
Jon A. Wilson
BROWN LAW FIRM, P.C.
*Attorneys for Defendants Watchtower Bible and Tract Society of New York, Inc., and Watch Tower Bible and Tract Society of Pennsylvania*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(d)(2)(E), the undersigned hereby certifies this brief complies with L.R. 7.1(d)(2)(A). According to the word-processing unit used to prepare this brief, the word count is **6,418** words excluding caption and certificates of service and compliance.

DATED this 11th day of May, 2021.

By:   /s/ Jon A. Wilson
Jon A. Wilson
BROWN LAW FIRM, P.C.
*Attorneys for Defendants Watchtower*
*Bible and Tract Society of New York,*
*Inc., and Watch Tower Bible and*
*Tract Society of Pennsylvania*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 11, 2021, a copy of the foregoing was served on

the following person(s):

1.      U.S. District Court, Billings Division

2.      Robert L. Stepans
           Ryan R. Shaffer
           James C. Murnion
           MEYER, SHAFFER & STEPANS, PLLP
           430 Ryman Street
           Missoula, MT 59802

3.      Bruce G. Mapley Sr.
           3905 Caylan Cove
           Birmingham, AL 35215

by the following means:

| 1, 2 | CM/ECF | | Fax |
| --- | --- | --- | --- |
| | Hand Delivery | | E-Mail |
| 3 | U.S. Mail | | Overnight Delivery Services |

By:   /s/ Jon A. Wilson
          Jon A. Wilson
          BROWN LAW FIRM, P.C.
          *Attorneys for Defendants Watchtower*
          *Bible and Tract Society of New York,*
          *Inc., and Watch Tower Bible and*
          *Tract Society of Pennsylvania*