

# BROWN LAW FIRM, PC

315 N. 24th Street | PO Drawer 849 | Billings, Montana 59103-0849
Phone: 406.248.2611 | Fax: 406.248.3128

John J. Russell
Michael P. Heringer
Guy W. Rogers
Scott G. Gratton
Kelly J.C. Gallinger*
Jeffrey T. McAllister
Jon A. Wilson
Seth A. Cunningham
Shane A. MacIntyre
Adam M. Shaw
Brett C. Jensen*
Catrina V. MacIntyre
Aaron M. Dunn
Nathan A. Burke
Alex J. Ames

Of Counsel
Robert L. Sterup

Retired
Rockwood Brown
John Walker Ross
Margy Bonner

*also licensed in
North Dakota

Jon A. Wilson
jwilson@brownfirm.com

Aaron M. Dunn
adunn@brownfirm.com

April 8, 2021

**VIA EMAIL and U.S. MAIL**
Robert L. Stepans / rob@mss-lawfirm.com
Ryan R. Shaffer / ryan@mss-lawfirm.com
James C. Murnion / james@mss-lawfirm.com
MEYER SHAFFER & STEPANS PLLP
430 Ryman Street
Missoula, MT 59802

Re:   *Tracy Caekaert and Camillia Mapley v. Watchtower Bible and Tract Society of New York, Inc., et al.*
      USDC Billings Division 20-CV-52-SPW-TJC
      File No. 78280.001

   *Ariane Rowland and Jamie Schulze v. Watchtower Bible and Tract Society of New York, Inc., et al.*
   USDC Billings Division 20-CV-59-SPW-TJC
   File No. 78280.002

Gentlemen:

We are writing in response to Ryan's March 26, 2021 letter, our follow-up phone conversation with Ryan on March 29, 2021, and the issues listed in Ryan's e-mail dated April 6, 2021. This letter serves as a continued attempt to meet and confer regarding these various discovery issues. Both Watchtower Bible and Tract Society of New York, Inc. (hereinafter "WTNY") and Watch Tower Bible and Tract Society of Pennsylvania (hereinafter "WTPA") remain committed to trying to resolve any issues with Plaintiffs regarding Plaintiffs' jurisdictional discovery requests to WTNY and WTPA.

Below goes through the various issues we understand are, in Plaintiffs' position, still unresolved. If you believe additional issues exist which we do not address below, please let us know so we can address the same in a future letter. Please also note nothing herein constitutes a waiver, whether explicit or implicit, of any of WTPA's or WTNY's rights.

Brown Law Firm, P.C.
April 8, 2021
Page 2 of 12

All such rights are explicitly reserved, and nothing herein should be construed otherwise.

<u>Objections Stated by WTPA and WTNY to Plaintiffs' Jurisdictional Discovery Requests</u>

As an initial matter, we want to address Ryan's March 26, 2021 letter wherein Ryan states the objections WTPA and WTNY asserted were "inappropriate...[and] not permissible[.]" We are struggling to understand Plaintiffs' contention. What about the objections stated make the same "inappropriate" and/or "not permissible"? Please advise so we can understand where Plaintiffs are coming from.

<u>Relevant Time Period for Jurisdictional Discovery</u>

We understand that Plaintiffs want to extend the relevant time period far beyond 1973-1992. We have concerns with Plaintiffs' approach in this regard and believe a detailed background is necessary to assist Plaintiffs in understanding our position.

As you may recall, on September 3, 2020, the parties participated in a telephone conference to discuss jurisdictional discovery. *See* Doc. 28, n.1 in the *Rowland* matter; Doc. 36, n.1 in the *Caekaert* matter. On September 17, 2020, Ryan sent an e-mail with a draft Jurisdictional Discovery Plan Plaintiffs' counsel drafted. The draft Jurisdictional Discovery Plan received in Ryan's September 17, 2020 e-mail is enclosed herewith (**Enclosure 1**). Page 3 of the same reads:

> Counsel for the parties agree to the following scope of jurisdictional discovery:
>
> ➤ WTPA's contacts and communications with the local Jehovah's Witness congregations in Montana, if any, during the relevant time period.
>
> ➤ WTPA's activities and conduct in Montana during the relevant time period.
>
> ➤ The Hardin Montana Jehovah's Witness congregation's contacts with WTPA, if any, during the relevant time period.

On Page 4, Plaintiffs represented they "***believe the relevant time period is 1970 to 1995***[.]" (emphasis added).

After edits unrelated to the foregoing, a Joint Jurisdictional Discovery Plan was filed in both matters. *See* Doc. 36 in the *Caekaert* matter; Doc. 28 in the *Rowland* matter. Both contain, verbatim, the language quoted above. *See* Doc. 36 in the *Caekaert* matter, pp. 3-4; Doc. 28 in the *Rowland* matter, pp. 3-4.

Brown Law Firm, P.C.
April 8, 2021
Page 3 of 12

On November 30, 2020, the Court issued Orders in both cases regarding the scope of jurisdictional discovery. *See* Doc. 47 in the *Caekaert* matter; Doc. 37 in the *Rowland* matter. The Court ordered "that Plaintiffs shall be permitted to conduct discovery into WTPA's and WTNY's corporate relationship from 1973 to 1992." Doc. 47, p. 5 in the *Caekaert* matter; Doc. 37, p. 5 in the *Rowland* matter.

The Court did *not* hold discovery outside the scope of what the parties agreed to in the Joint Jurisdictional Discovery Plan was permissible as Plaintiffs appear to be suggesting. Thus, we are puzzled as to why Plaintiffs are now taking the position they should not be held to the Joint Jurisdictional Discovery Plan and instead should be permitted to discovery far beyond the time period Plaintiffs suggested. Please advise and explain to us what we are missing, if anything. While we are not trying to be difficult, we cannot understand the difference between Plaintiffs' current position and Plaintiffs' position in September 2020.

## Withholding of Documents Pursuant to Objections Stated Regarding Jurisdictional Discovery

To reiterate from our call with Ryan on March 29, 2021 and as a follow-up to the 10-page letter we sent dated March 22, 2021, the only documents that have been withheld pursuant to the objections stated consist of documents falling outside the relevant time period discussed above. Other than such documents, the objections stated have been stated so as to avoid waiving the same. *See* Fed.R.Civ.P. 33(b)(4); Fed.R.Civ.P. 34(b)(2)(B)-(C); Fed.R.Civ.P. 36(a)(5); L.R. 26.3(a)(4). It is our position the objections stated are proper, and please explain your reasoning in Plaintiffs hold a contrary position.

## Plaintiffs' RFPs Nos. 73-76 and 78 to WTPA

Pursuant to the discussion above, documents not produced in response to Plaintiffs' RFPs Nos. 73-76 and 78 to WTPA—to the extent the same are in WTPA's possession, custody, or control[1]—have not been produced due to the time period issue. To reiterate from above, we respectfully ask Plaintiffs to explain their position regarding the relevant time period, which again appears to contrast with Plaintiffs' position back in September 2020. However, in the spirit of good faith and cooperation, WTPA is willing to produce the specifically-identified documents in RFPs Nos. 76 and 78 that are in WTPA's possession, custody, or control that predate 1993. These materials are being gathered and will be produced in supplemental discovery responses.

---

[1] Please see our March 22, 2021 letter for an explanation as to whether the documents requested are in WTPA's possession, custody, or control.

Plaintiffs' Interrogatories Nos. 6 & 7 to WTNY

Despite informing you that no list or other type of document exists which shows individuals who worked in the Service Department and/or Legal Department during the relevant time period, Ryan's March 26, 2021 letter indicates Plaintiffs still take issue with WTNY's Answers to Plaintiffs' Interrogatories Nos. 6-7.[2] In our call with Ryan on March 29, Ryan indicated Plaintiffs want confirmation as to whether there is a list of Jehovah's Witnesses who resided in New York during the time period requested, which in turn would shed light on who worked in the Service Department and Legal Department during the relevant time period.

It is our understanding no such lists or other types of documents exist. Further, Plaintiffs do not appear to understand that multiple departments exist. Finally, it is our understanding the number of Jehovah's Witnesses who resided in New York is in the thousands. As such, finding potential names would require asking those still alive to remember who worked in specific departments approximately a half-century ago. Considering we have provided Plaintiffs with Boards of Directors during the relevant time period (for both WTPA and WTNY), we fail to see how Plaintiffs' Interrogatories Nos. 6 and 7 to WTNY meet the proportionality requirement set forth in Rule 26, Fed.R.Civ.P. and case law previously provided to Plaintiffs regarding proportionality. Please advise regarding Plaintiffs' position.

Ultimately, WTNY has nothing in its possession, custody, or control which would provide responsive, discoverable information to Plaintiffs Interrogatories Nos. 6 & 7 to WTNY. Of course, if we come across any responsive, discoverable information, we will supplement WTNY's Answers accordingly.

Plaintiffs' Interrogatories Nos. 9 and 17 to WTNY

Based on Ryan's March 26, 2021 letter and our phone call with Ryan on March 29, 2021, we understand Plaintiffs believe issues exist with Plaintiffs' Interrogatories Nos. 9 and 17 to WTNY. Interrogatory No. 9 asks WTNY to "[i]dentify what the governing body does, where it is located, what it is responsible for, how it makes decisions, etc.?" WTNY responded as follows:

> Objection. Please refer to the General Objection, above, for an explanation as to why the time period requested in this Interrogatory is improper. This request is also irrelevant, is not reasonably calculated to lead to the discovery of admissible evidence, and is vague and ambiguous as to the term 'etc.' Subject to and without waiving these objections: The Governing Body is a small group of spiritually-

---

[2] We note that while Ryan's March 26, 2021 letter states the Interrogatories are "reasonably calculated to lead to discovery of admissible information[,]" such language has no support under the Federal Rules of Civil Procedure. *See* Commission Comments to 2015 Amendment to Rule 26 (explaining that the phrase "reasonably calculated to lead to the discovery of admissible evidence" was deleted because the phrase was being incorrectly used to define the scope of discovery.

Brown Law Firm, P.C.
April 8, 2021
Page 5 of 12

> mature Christians who provide spiritual guidance to Jehovah's Witnesses worldwide. The Governing Body follows the pattern set by 'the apostles an elders in Jerusalem' the first century, who made important decisions on behalf of the entire Christian congregation. (Acts 14:2) Like those faithful men, the members of the Governing Body are not the leaders of Jehovah's Witnesses. The Governing Body serves in Warwick, New York, U.S.A.

From Ryan's March 26 letter and our phone call with Ryan on March 29, we understand Plaintiffs' issues with WTNY's Answer to Plaintiffs' Interrogatory No. 9 are: (1) Plaintiffs want additional clarification of the ecclesiastical nature of the Governing Body; and (2) Plaintiffs believe the Governing Body does more than what has been represented.

As we tried to explain to Ryan during our March 29 call, the ecclesiastical guidance provided by the Governing Body, in general terms, constitutes spiritual guidance provided to individual Jehovah's Witnesses based on scripture. Black's Law Dictionary also defines "ecclesiastical" as "[o]f, relating to, or involving the church, esp. as an institution." ECCLESIASTICAL, Black's Law Dictionary (11th ed. 2019). Other definitions of ecclesiastical are similar. *See* Merriam-Webster, Ecclesiastical ("1. of or relating to a church especially as an established institution. 2. suitable for use in a church."); Dictionary.com, Ecclesiastical ("of or relating to the church or the clergy; churchly; clerical; not secular.").

Ecclesiastical guidance is not the same as legal direction. For example, if, as part of the ecclesiastical guidance the Governing Body provides to those who follow the religion, the Governing Body determines scripture teaches Jehovah's Witnesses should not celebrate Christmas, no organization or entity associated with Jehovah's Witnesses would hold a Christmas party. Such organizations and/or entities would not be legally prohibited from holding a Christmas party. However, holding a Christmas party would be contrary to the ecclesiastical guidance provided based on scripture.

Moving to Plaintiffs' assertion the Governing Body does more than has been represented, Ryan identified a document produced by the Hardin Congregation in response to Plaintiffs' subpoena, which indicated the Governing Body "approved the recommendations on the reverse side as indicated by the Watchtower Society stamp below." We understand such "approval" is a templated administrative matter and is part of the ecclesiastical structure of the religion. We also understand that members of the Governing Body have anonymously drafted or edited articles which are contained in publications WTPA copyrights and WTNY publishes. Again, that fits squarely within the scope of the ecclesiastical guidance the Governing Body provides to those who follow the faith.

Interrogatory No. 17 asks WTNY to "identify the documents that 'members of the religious order of Jehovah's Witnesses' provided to local congregations as part of providing 'ecclesiastical oversight.'" WTNY responded as follows:

> Objection. Please refer to the General Objection, above, for an explanation as to why the time period requested in this Interrogatory is improper. WTNY further objects on grounds that this request seeks information outside the scope of Court-permitted jurisdictional discovery, is irrelevant to the extent it seeks information concerning congregations outside of Montana, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad, and is not proportional to the needs of the case.

We fail to see how Plaintiffs' Interrogatory No. 17 comports with the scope of jurisdictional discovery permitted as to WTNY. *See* Doc. 47, p. 5 in the *Caekaert* matter; Doc. 37, p. 5 in the *Rowland* matter (both permitting Plaintiffs to "conduct discovery into WTPA's and WTNY's corporate relationship from 1973 to 1992"). Please advise as to Plaintiffs' position in this regard.

It appears to us that Plaintiffs' Interrogatory No. 17 is the quintessential "give me everything that could possibly exist" type of interrogatory we believe plainly fails to meet Rule 26, Fed.R.Civ.P.'s proportionality requirement. As one Montana court has explained, "[i]n the written discovery process, parties are not entitled to each and every detail that could possibly exist in the universe of facts." *Kelley v. Billings Clinic*, 2013 WL 1414442, *4 (D. Mont. April 8, 2013) (citations omitted). Plaintiffs' Interrogatory No. 17 to WTNY does not provide any sort of specifications on what in particular Plaintiffs are looking for. We are willing to work with Plaintiffs but believe some cooperation from Plaintiffs would help narrow the scope of Plaintiffs' request.

Plaintiffs' Interrogatory No. 25 to WTPA

Ryan's March 26, 2021 letter indicates a dispute still exists regarding Plaintiffs' Interrogatory No. 25 to WTPA, which asks WTPA to "describe the relationship between the Governing Body, WTPA and WTNY for each during the period 1970-1995 as it pertains to directing the affairs of Jehovah's Witnesses congregations in the United States." WTPA answered as follows:

> Objection. Please refer to WTPA's Third General Objection, above, for an explanation as to why the time period requested in this Interrogatory is improper. Subject to and without waiving this objection: The Watch Tower Bible and Tract Society of Pennsylvania is a nonprofit corporation formed in 1884 under the laws of the Commonwealth of Pennsylvania, U.S.A. It is used by Jehovah's Witnesses to support their worldwide work, which includes publishing Bibles and Bible-based literature. Besides the Watch Tower Bible and Tract Society of Pennsylvania, Jehovah's Witnesses have other legal entities that perform various legal tasks associated with fulfilling Jesus' commission recorded at Matthew 28:19, 20. One such legal entity is [WTNY], which prints Bibles and Bible-based literature that is used by Jehovah's Witnesses. Some of that literature is used in

Brown Law Firm, P.C.
April 8, 2021
Page 7 of 12

> connection with the ministry done by Jehovah's Witnesses, again in connection with Jesus' commission in Matthew 28:19-20. Congregations form for the purpose of allowing Jehovah's Witnesses and others interested in attending their meetings to gather together to worship God. At their own choice, congregations may form corporations or trusteeships to own property used as Kingdom Halls (meeting places). Those that do not form a corporation or trusteeship typically remain unincorporated associations. Each legal entity is separate and distinct from one another. The Governing Body of Jehovah's Witnesses is an ecclesiastical group of men who care for the spiritual interests of Jehovah's Witnesses. It has no legal or corporate control over any entity used by Jehovah's Witnesses.

As we explained to Ryan during our call on March 29, 2021, the Governing Body does not manage either WTPA or WTNY. While WTPA and WTNY work closely with the Governing Body with respect to the ecclesiastical guidance the Governing Body provides to those who follow the religion as explained above (i.e., Christmas example), the Governing Body has no legal control over either entity. However, as you will note from the Defendants previously provided discovery responses, in the history of Jehovah's Witnesses there were times when the boards of directors for WTPA and WTNY included individuals who were also members of the Governing Body.

For these reasons, we struggle to see what remaining issue(s) exist with respect to Plaintiffs' Interrogatory No. 25 to WTPA. Please advise if Plaintiffs contend an issue/issues still exist so we can understand where Plaintiffs are coming from.

<u>Plaintiffs' RFA No. 3 to WTPA & Plaintiffs' Interrogatory No. 18 to WTPA</u>

Ryan's March 26, 2021 letter indicates an issue exists with respect to RFA No. 3 to WTPA, which asked WTPA to "admit that in 1977, [WTNY] was a subsidiary of WTPA." WTPA responded as follows: "Deny. WTNY has no corporate parent and is not a 'legal' subsidiary of any other entity. In a religious sense it is secondary or supplemental to WTPA in that it provides publishing services to WTPA."

Ryan's March 26 letter also indicates an issue exists with respect to WTPA's Answer to Plaintiffs' Interrogatory No. 18, which asks WTPA to "identify the date the Watchtower Bible and Tract Society of New York ceased operating as a subsidiary of WTPA." WTPA responded by explaining, "WTNY has never operated as a subsidiary of WTPA."

During our call with Ryan on March 29, 2021, we again explained the lack of a parent subsidiary relationship between WTPA and WTNY, as we have done previously.

Ryan conceded during our call that there is no evidence of WTPA and WTNY being in a parent-subsidiary relationship (Ryan noted looking at Secretary of State website(s)), but nonetheless indicated a disagreement still exists based on a single sentence which uses the word "subsidiary."[3] Black's Law Dictionary defines "subsidiary" in pertinent part as "subordinate." *See* SUBSIDIARY, Black's Law Dictionary (11th ed. 2019). The Merriam-Webster dictionary defines "subsidiary" in part as "furnishing aid or support" and "of secondary importance." Dictionary.com defines "subsidiary" in part as "serving to assist or supplement; auxiliary; supplementary" and "subordinate or secondary." In contrast to such definitions, Black's Law Dictionary defines "subsidiary corporation" as "[a] corporation in which a parent corporation has a controlling share." *See* CORPORATION; subsidiary corporation, Black's Law Dictionary (11th ed. 2019).

Again, WTPA is not a "parent corporation ha[ving] a controlling share" of WTNY. Instead, WTNY is secondary in that it was formed after WTPA and therefore "subordinate" in that sense. As previously explained, WTNY "assist[s] or supplement[s]" WTPA with respect to publishing services provided to WTPA.

Please advise to the extent Plaintiffs are unwilling to concede WTPA's Response to Plaintiffs' RFA No. 3 and WTPA's Answer to Plaintiffs' Interrogatory No. 18 both comply with the Federal Rules of Civil Procedure. We are happy to consider any additional information Plaintiffs believe is pertinent.

Plaintiffs' RFA No. 4 to WTPA

Ryan's March 26, 2021 letter indicates an issue exists regarding WTPA's Response to Plaintiffs' RFA No. 4. During our call with Ryan on March 29, 2021, Ryan reiterated an unidentified issue still exists with WTPA's response to Plaintiffs' RFA No. 4, which asks WTPA to "admit that in 1977 WTPA notified persons endeavoring to donate to the Jehovah's Witness church to make their contributions payable to WTPA." WTPA responded as follows: "Admit in part and deny in part. WTPA admits that it accepts voluntary donations in support of its religious activities but denies that it 'notified' persons to donate to it in 1977."

We struggle to see what issue exists. While Ryan stated during the March 29 phone call that it is okay if we disagree, and we generally agree with that statement, we are genuinely wondering what Plaintiffs' position is regarding WTPA's response to Plaintiffs' RFA No. 4. Part of having a disagreement is understanding what the other person's/party's position is. Please advise.

---

[3] It appears Plaintiffs are referencing Doc. 44-1, p. 10 in the *Caekaert* matter (Doc. 36-1, p. 10 in the *Rowland* matter), which reads in part: "The Watch Tower Bible and Tract society of Pennsylvania is the parent corporate agency of Jehovah's Witnesses. It works with its subsidiary legal agencies such as the Watchtower Bible and Tract Society of New York, Inc., the International Bible Students Association, and many others scattered throughout the earth, for carrying on the business that must be done in order to print and ship the good news."

Plaintiffs' RFA No. 6 to WTPA

Based on Ryan's March 26, 2021 letter and our phone call with Ryan on March 29, it appears Plaintiffs contend an issue exists with WTPA's Response to Plaintiffs' RFA No. 6, which asks WTPA to "admit that in 2003 WTPA notified persons endeavoring to donate to the Jehovah's Witness church to make their contributions payable to WTPA." WTPA responded as follows: "Admit in part and deny in part. WTPA admits that it accepts voluntary donations in support of its religious activities but denies that it 'notified' persons to donate to it in 2003."

As with Plaintiffs' RFA No. 4 to WTPA, we struggle to understand what issue purportedly still exists with respect to WTPA's Response to Plaintiffs' RFA No. 6. Again, part of having a disagreement is understanding what the other person's/party's position is. Please advise.

Plaintiffs' RFA No. 7 to WTPA

Based on Ryan's March 26, 2021 letter and our phone call with Ryan on March 29, it appears Plaintiffs contend an issue exists with WTPA's Response to Plaintiffs' RFA No. 7, which asks WTPA to "admit that for the period 1977 through 2003 WTPA notified persons endeavoring to donate to the Jehovah's Witness church to make their contributions payable to WTPA." WTPA responded as follows: "*See* Responses to Request for Admission Nos. 4 and 6."

Based on the preceding discussion regarding WTPA's responses to Plaintiffs' RFAs Nos. 4 and 6, we struggle to understand what issue purportedly still exists with respect to WTPA's Response to Plaintiffs' RFA No. 7. To reiterate from above, part of having a disagreement is understanding what the other person's/party's position is. Please advise.

Plaintiffs' RFA No. 14 to WTPA

Based on Ryan's March 26, 2021 letter and our phone call with Ryan on March 29, it appears Plaintiffs contend an issue exists with WTPA's Response to Plaintiffs' RFA No. 14, which asks WTPA to "admit that at all times between 1970 and the present, WTPA works and has worked under the direction of the faithful and discrete slave class and its Governing Body." WTPA responded as follows:

> Objection. Please refer to WTPA's Third General Objection, above, for an explanation as to why the time period requested in this Request for Admission is improper. This request is also ambiguous as to the term 'worked under the direction' and unintelligible as to the term 'its Governing Body' as the two terms 'faithful and discreet slave' and 'Governing Body' are religiously understood to be one in the same. Subject to and without waiving these objections, WTPA denies this Request to the extent that it suggests any legal direction or oversight.

Brown Law Firm, P.C.
April 8, 2021
Page 10 of 12

As we explained to Ryan during on March 29 call, Plaintiffs' RFA No. 14 is drafted in a way that required WTPA to respond as it did. What do Plaintiffs mean by "under the direction of..."? As we have repeatedly explained to Plaintiffs, the Governing Body (also referred to as the "faithful and discreet slave") provides ecclesiastical guidance but has no legal control over any entity related to Jehovah's Witnesses.

For the reasons reiterated above, WTPA responded to Plaintiffs' RFA No. 14 as it did. Please advise whether Plaintiffs still believe an issue exists with respect to Plaintiffs' RFA No. 14 to WTPA.

Plaintiffs' RFA No. 26 to WTPA

Ryan's March 26, 2021 letter indicates Plaintiffs have an issue with how WTPA responded to Plaintiffs' RFA No. 26. Contrary to what Ryan's March 26 letter states, Plaintiffs' RFA No. 26 asks WTPA to "admit that WTPA has collected money from Montana for the purchase of insurance policies."[4] WTPA responded as follows:

> Objection: Please refer to WTPA's Third General Objection, above, for an explanation as to why the time period requested in this Request for Admission is improper. Subject to and without waiving said objection: WTPA can neither admit nor deny this request. WTPA has made reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it to confirm whether any congregations in Montana participated in KHAA during the relevant time period.

Plaintiffs have taken the position WTPA improperly reformulated the RFA. We respectfully disagree. However, we will supplement WTPA's Response to align with the specific language of the RFA.

Plaintiffs' Request for Written Confirmation as to Whether WTPA and/or WTNY Have Specific Documents Allegedly Responsive to Plaintiffs' Jurisdictional Discovery Requests

In our conversation with Ryan on March 29, 2021, Ryan indicated Plaintiffs want written confirmation regarding whether WTPA and WTNY have specific documents allegedly responsive to Plaintiffs' jurisdictional discovery requests. While WTPA and WTNY have shown they are willing to work with Plaintiffs and will continue to do so, we are concerned Plaintiffs want to use any written confirmation provided as a game of "gotcha" to the extent there is a misunderstanding regarding what has been requested in jurisdictional discovery and/or the parties are speaking past each other. In our position, discovery should not be employed as a game

---

[4] Ryan's March 26 letter states Plaintiffs "asked that WTPA admit it collected money from *persons in* Montana for the purchase of insurance policies." (emphasis added). No "persons in" is contained in Plaintiffs' RFA No. 26.

Brown Law Firm, P.C.
April 8, 2021
Page 11 of 12

of "gotcha." *See BankDirect Capital Finance, LLC v. Capital Premium Financing, Inc.*, 2018 WL 946396, *3 (N.D. Ill. Feb. 20, 2018) ("Discovery is not a game of 'gotcha.'") (citation omitted). Thus, we believe the parties should be able to communicate through counsel and come to an understanding on alleged jurisdictional discovery issues without resorting to a game of "gotcha," which we believe is improper and inconsistent with both the spirit of discovery and the Rules of Civil Procedure.

Deposition of Philip Brumley in his Individual Capacity

Switching gears slightly, we wanted to address Plaintiffs' request to take Philip Brumley's deposition in his individual capacity for purposes of jurisdictional discovery. We respectfully ask Plaintiffs to let us know why Plaintiffs believe a deposition of Mr. Brumley in his individual capacity is necessary considering Mr. Brumley will be WTPA's corporate designee for WTPA's 30(b)(6) deposition. As such, it is our position any questions Plaintiffs may want to ask Mr. Brumley in his individual capacity pertaining to jurisdictional discovery can be asked during WTPA's 30(b)(6) deposition. Please advise if you believe Plaintiffs need two separate dates, one for Mr. Brumley in his individual capacity, and another for WTPA's 30(b)(6) deposition.

30(b)(6) Deposition of WTNY

Mr. Mario Moreno will be WTNY's corporate designee for WTNY's 30(b)(6) deposition. Mr. Moreno is available for deposition on April 28 or April 29 or April 30, 2021.

Plaintiffs' Request to Take a Perpetuation Deposition of Mr. Rowland

We understand Plaintiffs want to take a perpetuation deposition of Mr. Rowland given his old age and apparent bad health, and that you intend to ask questions during this proposed deposition that are unrelated to jurisdictional discovery. As an initial matter, to the extent any questions are asked by any party in this proposed deposition that go beyond jurisdictional discovery, we request an agreement that the same will not be deemed an explicit or implicit waiver of WTPA's personal jurisdiction argument. Additionally, since no discovery regarding Plaintiffs' actual claims have yet occurred, our ability to question Mr. Rowland during this proposed deposition would be limited. As such, we also request an agreement that WTNY (and WTPA, if its Motions to Dismiss Pursuant to Rule 12(b)(2), Fed.R.Civ.P., are denied), may re-open the deposition of Mr. Rowland during discovery of Plaintiffs' actual claims. We believe such agreements are only fair given the circumstances. Please advise, and please also identify some proposed dates Plaintiffs are looking at for this proposed deposition so we can coordinate our schedules.

30(b)(6) Deposition of WTPA

Per your request, WTPA is holding the April 26, 2021 date for a 30(b)(6) deposition. Please let us know if Plaintiffs would like to proceed with that 30(b)(6) deposition as soon as possible so

Brown Law Firm, P.C.
April 8, 2021
Page 12 of 12

we can either clear that date from our calendars or continue to hold the same. It is our position neither we nor our clients should have to continue to hold a date if Plaintiffs have no intention on proceeding.

<u>Notes to the Recently Produced Financial Documents</u>

WTNY is checking to see if it has these notes and we will provide an update once it has done so.

<u>Conclusion</u>

After reviewing this letter, we hope Plaintiffs will have a better understanding of our client's positions regarding jurisdictional discovery. Thank you for your attention to this matter, and please contact us with any questions or concerns. As always, we remain willing to discuss and work through issues with Plaintiffs.

Sincerely,

Jon A. Wilson
Aaron M. Dunn
JAW/AMD
enclosure
cc:   Joel M. Taylor (via e-mail) (w/enclosure)