## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

TRACY CAEKAERT, and CAMILLIA
MAPLEY,

             Plaintiffs,

   vs.

WATCHTOWER BIBLE AND
TRACT SOCIETY OF NEW YORK,
INC., WATCH TOWER BIBLE AND
TRACT SOCIETY OF
PENNSYLVANIA, and BRUCE
MAPLEY SR.,

             Defendants.


WATCHTOWER BIBLE AND
TRACT SOCIETY OF NEW YORK,
INC.

             Cross-Claimant,

vs.

BRUCE MAPLEY SR.,

             Cross-Claim Defendant.

Cause No. CV 20-52-BLG-SPW

**ORDER RE MOTION TO COMPEL
JURISDICTIONAL DISCOVERY
RESPONSES AND FOR COSTS
AND FEES**

- 1 -

This matter comes before the Court on Plaintiffs Tracy Caekaert and Camillia Mapley's Motion to Compel Jurisdictional Discovery Responses and for Costs and Fees, filed April 20, 2021. (Doc. 56). Defendants Watch Tower Bible and Tract Society of Pennsylvania ("WTPA") and Watchtower Bible and Tract Society of New York, Inc. ("WTNY") responded opposing the Motion on May 11, 2021. (Doc. 67). Plaintiffs filed a reply on May 25, 2021. (Doc. 72). The Court held oral argument on the Motion on June 23, 2021. The Motion is deemed ripe for adjudication and, for the following reasons, the Court grants Plaintiffs' Motion.

## I.    BACKGROUND

Plaintiffs filed the instant lawsuit asserting claims of negligence, negligence per se, and punitive damages against Defendants WTPA and WTNY stemming from allegations that members of a local Jehovah's Witnesses congregation sexually abused Plaintiffs when they were children. (Doc. 22). Defendant WTPA filed a motion to dismiss arguing that it is not subject to general or specific personal jurisdiction in Montana. (Doc. 14 at 1-2). The Court reserved ruling on the merits of WTPA's motion pending jurisdictional discovery after the Court determined that "Plaintiff's exhibits show[ed] WTPA may have played a greater role in the church's governance in the past . . . ." (Doc. 32 at 5).

Pursuant to that discovery order, Plaintiffs served three sets of written discovery on WTPA and two sets of written discovery on WTNY. (Doc. 57 at 8).

The instant motion pertains to WTPA's and WTNY's objections to those discovery requests that the parties were unable to reconcile.

## II.   LEGAL STANDARD

Pretrial discovery is "accorded a broad and liberal treatment. *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). District courts have broad discretion in managing discovery. *Dichter-Mad Fam. Partners, LLP v. U.S.*, 709 F.3d 749, 751 (9th Cir. 2013).

## III.   DISCUSSION

Plaintiffs make two broad complaints about Defendants' discovery responses: (1) Plaintiffs complain that Defendants "refuse to identify which specific objections they are relying on to withhold documents and information;" (Doc. 57 at 9) and (2) Plaintiffs assert that Defendant's time-period objection is unreasonable as a basis to withhold documents (*Id.* at 12). Plaintiffs also make several narrower complaints about Defendants' responses to specific requests.

### A. Identifying Defendants' Objections

Plaintiffs complain that, except for the first set of written discovery, Defendants have objected to nearly every discovery request but have failed to

identify where they are withholding documents and, if so, which specific objection Defendants are asserting. Plaintiffs point to two specific discovery request responses where Defendants assert a general objection but refuse to disclose where any responsive documents are being withheld that would be relevant to the request. (Doc. 57 at 10). Plaintiffs assert this practice is antagonistic to the Federal Rules of Civil Procedure and request an order requiring Defendants to supplement their discovery responses "with clear statements of where they are withholding responsive information or materials based on their stated objections." (*Id.* at 11-12).

Defendants respond that they are only withholding documents under their time-period objection and Plaintiffs were explicitly informed of this objection in an April 8, 2021 letter. Therefore, Defendants argue, they have complied with the Rules of Civil Procedure and properly objected.

Federal Rule of Civil Procedure 34(b)(2)(C) states that "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection." The Rule, and subsequent amendments, was intended to relieve the confusion created when a producing party states several objections yet still produces responsive documents and the requesting party is left with uncertainty whether further responsive documents were withheld under the objections or not. Fed. R. Civ. P. 34 Advisory Committee Notes (2015). "The producing party does not need to provide a detailed description or log of all documents withheld, but does need to

alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection." *Id.*

While the Defendants claim to have complied with this Rule by generally informing Plaintiffs' counsel of their time-period objection via written correspondence, the Court is not convinced this practice conforms with Rule 34's requirements. Rule 34 requires the producing party to state an objection to a request and to state whether responsive documents are being withheld on the basis of that objection. A review of Defendants' responses to Plaintiffs' discovery requests demonstrates that Defendants failed to inform Plaintiffs if documents were being withheld due to their time-period objection. Therefore, the Court orders Defendants to supplement their discovery responses with statements of where they are withholding responsive documents or information based on the objection asserted to the discovery request.

## B. Defendants' Time-Period Objections

Noted above, Defendants' sole objection to Plaintiffs' discovery requests is that the requests seek documents and information outside of the time period during which Plaintiffs' alleged sexual abuse occurred. Defendants assert that the jurisdictional discovery allowed by the Court is limited to "(1) WTPA's contacts and communications with the local Jehovah's Witness congregations in Montana, if any; (2) WTPA's activities and conduct in Montana, if any, and (3) the Hardin Montana

Jehovah's Witness congregation's contacts with WTPA, if any, for a maximum period of 1970-1995." (Doc. 67 at 21). The relevant time period regarding Plaintiffs' sexual abuse allegations took place between 1973 and 1992. Thus, any documents or information created after 1992 are irrelevant, according to Defendants, because the Hardin Congregation elders could not have relied on that guidance when investigating alleged sexual abuse in the years prior. Defendants argue Plaintiffs' requests for documents created before 1973 are similarly deficient because the requests are based on "'hunches' certain information or documents could be relevant to the personal jurisdiction issue." (Doc. 67 at 22) (italics removed).

Plaintiffs claim that "[c]ritical to this case and the Court's possible jurisdiction over WTPA is the existence of evidence that WTPA, through documents or other communication, instructed or guided the Hardin congregation's handling of Plaintiffs' sexual abuse allegations . . . ." (Doc. 57 at 12). Plaintiffs' discovery requests sought those documents or other communications, including documents dating outside the period from 1973 to 1992 because "they are referenced in more modern documents, indicating that they are source material for documents that the Hardin congregation likely relied on when it decided how to respond to reports of the Plaintiffs' sexual abuse." (*Id.* at 13).

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be

admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The Court previously ordered that Plaintiffs shall be allowed to seek jurisdictional discovery "related to the corporate relationship between WTPA and WTNY from the years 1973 to 1992." (Doc. 47 at 2). The parties could not agree on the relevant time period to conduct discovery on other aspects of jurisdiction (i.e., WTPA's contacts with Montana), but no party argued for extending the time period beyond 1995. (Doc. 36 at 4). Further, Plaintiffs identified 1973 to 1992 as the relevant period of time within which their alleged sexual abuse occurred. (Doc. 57 at 6).

The Court agrees with Defendants' argument that documents and information produced after 1992 could not be relied on by Hardin Congregation elders between 1973 and 1992 and are therefore irrelevant to demonstrate Plaintiffs' claims. Plaintiffs appear to concede this point as they do not seriously contest the issue of post-1992 discovery in their motion.

However, the Court is not persuaded by Defendants' arguments regarding documents and information published or copyrighted before 1973. It takes no stretch of the imagination to believe that local Jehovah Witness congregations routinely rely on books, pamphlets, and other documents created by Defendants for years after those documents were created. Plaintiffs described this very occurrence in their reply brief. Plaintiffs requested that Defendants produce all versions and revisions of a

book created by WTPA but WTPA refused to produce it. Plaintiffs then deposed Mr. Rowland, a Hardin Congregation elder, who testified that he and other elders relied on the WTPA book for guidance in their roles. Following the deposition, WTPA produced a 1972 version of the book. (Doc. 72 at 8).

This example demonstrates that materials produced before 1973 may still be relevant to Defendants' contacts with Montana between 1973 and 1992 and are thus discoverable. Defendants' blanket objection to producing materials pre-dating 1973 is unreasonable and invalid as an objection to Plaintiffs' discovery requests. That is not to say Plaintiffs are allowed to go on fishing expeditions, as Defendants fear. The limitations of Rule 26(b)(1) constrain Plaintiffs' ability to discover only those documents that are relevant to Plaintiffs' claims and proportional to their needs. Plaintiffs assert that many of the documents requested in discovery "were only requested by Plaintiffs because they are referenced in more modern documents, indicating that they are source material for documents that the Hardin congregation likely relied on when it decided how to respond to reports of the Plaintiffs' sexual abuse." (Doc. 57 at 13). The Court finds that Plaintiffs' discovery requests satisfy Rule 26(b)(1)'s requirements and orders Defendants to produce all non-privileged documents responsive to those requests.

### C. Specific Objections

#### a. Interrogatories 6-7 to WTNY

Plaintiffs requested that WTNY identify individuals who worked at the organization's Service Department and Legal Department from 1960 to 1990 in order to depose those employees with knowledge of the corporate relationship between WTNY and WTPA between 1973 and 1992. (Doc. 57 at 17). Plaintiffs assert this request was reasonable as they narrowed the request to two departments and relevant to discovering information on the possible alter-ego relationship between the two organizations. (*Id.* at 18).

Defendants objected to the request due to asserted temporal limitations, overbreadth, vagueness, and proportionality. (Doc. 67 at 24). WTNY subsequently informed Plaintiffs that it had no responsive information to Plaintiffs' requests because no list or document exists describing the information sought and repeated the organization's objections to the request. (*Id.*). Defendants did provide Plaintiffs with the identities of the executives and board of directors for WTNY and WTPA as well as the identities of three individuals Defendants assert are most knowledgeable about WTNY's and WTPA's activities during the relevant time period. (Doc. 67 at 25). Defendants argue these disclosures satisfy Plaintiffs' request and any additional, required disclosures would fail Rule 26's proportionality requirement. (*Id.*).

The Court finds Defendants' arguments unpersuasive. Plaintiffs assert they are seeking the identities of employees of two specific departments in order to depose those individuals with knowledge of the corporate relationship between

WTNY and WTPA. The relationship between WTNY and WTPA is relevant to Plaintiffs' argument that the organizations operated as alter-egos of each other during the relevant time-period. The Court previously allowed discovery on this exact issue. (Doc. 47). Thus, Interrogatories 6 and 7 satisfy Rule 26's relevancy requirement.

The Court also finds that Interrogatories 6 and 7 satisfy Rule 26's proportionality requirement. Plaintiffs have narrowed the information sought to employees of two departments during a specific range of years. WTNY states that no list or document exists with the information requested, yet Defendants provide no information on what efforts were taken to find responsive documents. The Court finds it questionable that two corporate entities failed to keep any employment records of those individuals working for their service and legal departments between 1960 and 1990. Even if that were true, Defendants must at least explain what reasonable efforts were made to discover the information. Fed. R. Civ. P. 26(g)(1). Defendants appear to argue that because they disclosed the identities of some individuals with knowledge of the corporate relationship, that should relieve the party of the obligation to fully respond to the Interrogatories with the remaining identities. However, that is not the practice of the rules of discovery. Unless limited by privilege, relevancy, or proportionality, a party must fully respond to a discovery request in good faith or explain why documents are being withheld. Fed. R. Civ. P.

26(b)(1). The Court orders Defendants to respond to Plaintiffs' Interrogatory Nos. 6 and 7 in good faith.

### b. Interrogatory Nos. 9 and 15 to WTNY and Nos. 25 and 26 to WTPA

Plaintiffs served Interrogatory Nos. 9 and 15 to WTNY and Nos. 25 and 26 to WTPA in order to discover information on the role of the Governing Body in relation to WTNY and WTPA. (Doc. 57 at 19). Specifically, Plaintiffs are attempting to determine what control the Governing Body has over WTNY, WTPA, and Jehovah's Witnesses such as approving the selection or deletion of local congregation elders. Plaintiffs assert that Defendants' responses to those Interrogatories have been vague and non-responsive.

Defendants respond that Plaintiffs' issues with the Interrogatory answers are misplaced and that the Governing Body is a non-party to this litigation. Defendants assert that they fairly answered the Interrogatories and explained that the Governing Body provides ecclesiastical guidance to Jehovah's Witnesses but that the Body has no legal control over WTNY or WTPA. The approval of local elders falls within that ecclesiastical guidance, as Defendants assert was explained to Plaintiffs on multiple occasions.

The Court agrees with Plaintiffs that Defendants' answers to the Interrogatories are vague to the point of non-responsive. Defendants answered generally that the Governing Body "is an ecclesiastical group of men who care for

the spiritual interests of Jehovah's Witnesses." (Doc. 67-5 at 7). However, within that ecclesiastical guidance falls the administrative task of approving local elders. (Doc. 67 at 28). This information was later explained to Plaintiffs in a phone conversation after Defendants had responded to the Interrogatories, but the information was not included in Defendants' responses. (Doc. 67-5 at 5). This signals to the Court that Defendants were aware of more specific tasks the Governing Body undertook within their realm of ecclesiastical guidance that Defendants did not acknowledge in their written responses until further prompted by Plaintiffs. Fed. R. Civ. P. 33(b)(3) requires that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Defendants are ordered to fully and completely respond to Interrogatory Nos. 9 and 15 to WTNY and Nos. 25 and 26 to WTPA.

### c. RFA Nos. 4, 6, and 7 to WTPA

Plaintiffs submitted several Requests for Admission seeking to have Defendants admit that WTPA notified individuals to make contributions payable to WTPA in years including 1977, 2003, and the period between those two years. Plaintiffs argue that Defendants "failed to respond to the plain language of Plaintiffs' RFA and evaded good faith answers . . . ." (Doc. 57 at 22). Specifically, Defendants responded to the RFAs that "WTPA admits that it accepts voluntary donations in support of its religious activities but denies that it 'notified' persons to donate to it.

. . ." (*Id.*). Plaintiffs request that the Court compel Defendants to answer the RFAs as they were written and served. Defendants respond that they properly answered the RFA by denying in part and admitting in part – a practice allowed by the rules of discovery.

While it is true that Defendants partially admitted and partially denied Plaintiffs' RFA, Defendants failed to respond to the actual request. Plaintiffs' RFA asks Defendants to admit that, for those making contributions, WTPA notified individuals to make those contributions payable to itself. (Doc. 57-10 at 4). Defendants responded that WTPA accepted voluntary donations but denied "that it 'notified' persons to donate to it . . . ." (*Id.*). This response does not respond to the request of whether WTPA notified individuals making contributions to make their contributions or donations payable to itself. Fed. R. Civ. P. requires parties denying a request for admission to "fairly respond to the substance of the matter . . . ." Therefore, the Court orders Defendants to answer Plaintiffs' RFA Nos. 4, 6, and 7 as they were written and served.

### d. RFA No. 14 to WTPA

Similar to the above issue, Plaintiffs complain that Defendants failed to properly respond to the substance of RFA No. 14 as written and instead reformulated the RFA to evade the request. RFA 14 asked WTPA to admit that "at all times between 1970 and the present, WTPA works and has worked under the direction of

the faithful and discrete slave class and its Governing Body." (Doc. 57-11 at 7). Defendants responded that the request was unintelligible as the faithful and discrete slave class and Governing Body are considered one to Jehovah's Witnesses and that the RFA was ambiguous regarding the phrase "worked under the direction." (*Id.*). Defendants ultimately denied the RFA "to the extent that it suggests any legal direction or oversight." (*Id.*). Defendants contend this response was proper because "WTPA cannot truthfully admit it worked under the direction and oversight of the Governing Body as Plaintiffs request without qualifying that the Governing Body has no legal direction or oversight over WTPA." (Doc. 67 at 31).

The Court finds Defendants' response unpersuasive and that it does not satisfy Rule 36. Plaintiffs did not constrain their RFA to the legal direction of the Governing Body. Instead, the RFA asks Defendants to admit generally that WTPA worked under the direction of the Governing Body. (Doc. 57-11 at 7). While Defendants responded with a denial that WTPA worked under the legal direction of the Governing Body, Defendants said nothing about whether WTPA nevertheless followed the administrative, religious or any other guidance passed down by the Governing Body. The Court orders Defendants to respond to Plaintiffs' RFA No. 14 as written and served.

### e. RFP 61 to WTPA

Plaintiffs' RFP 61 asks Defendants to "produce a copy of each corporate record between 1960 and 1995 memorializing the affirmative vote or appointment of all corporate directors who served on the Board of Directors." (Doc. 57-1 at 7). Defendants responded with a general objection to the temporal scope of the request followed by a statement that "WTPA has already produced responsive articles of incorporation during the relevant time-period." (*Id.* at 7-8). Plaintiffs assert this response fails to address the actual request for production and Plaintiffs ask the Court to order the production of documents "evidencing the vote or appointment of directors who served between 1973 and 1992." (Doc. 57 at 25). Defendants argue that they have already produced the Articles of Incorporation as well as the names of the executives and directors for WTPA and WTNY during the relevant years. Therefore, Defendants seemingly argue Plaintiffs have all the information they need to satisfy RFP 61.

Again, this is not the rule. Plaintiffs seek documentation of the votes for directors serving on the Board of Directors to understand whether the directors "were appointed pursuant to [WTPA's] articles of incorporation or were instead controlled by WTNY, the Governing Body, or by some other means . . ." in order to understand the corporate relationship between WTPA and WTNY. (Doc. 72 at 12). This information is relevant to Plaintiffs' alter-ego theory for personal jurisdiction of

WTPA. Therefore, the RFP satisfies Rule 26's relevancy and proportionality requirements and Defendants are ordered to respond to RFP 61 with the identified documents or deny that the documents exist.

### f. Efforts to Search and Obtain Requested Documents and Information

Finally, Plaintiffs ask for "clarification, on the record, regarding the scope of the search and inquiry made by Defendants in all instances where they state they made a reasonable inquiry, but 'readily obtainable information' resulted in nothing responsive." (Doc. 57 at 26). Plaintiffs assert that while Defendants responded to many RFAs and RFPs that a reasonable inquiry was made to discover the information, Defendants did not provide further information on what efforts were made such as searching corporate records or whether the answering party relied on their personal memory of the events.

Defendants respond that it would be unduly burdensome to explain what process was used to search for documents for every discovery request. Therefore, Defendants assert it would be improper for WTNY or WTPA to have to set forth the efforts expended when responding to Plaintiffs' requests and Plaintiffs have failed to cite any legal authority declaring otherwise.

Fed. R. Civ. P. 26(g)(1) requires parties responding to discovery requests to certify that the response is accurate and complete to the best of the party's knowledge after a reasonable inquiry. "A party must make a reasonable inquiry to determine

whether responsive documents exist, and if they do not, the 'party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence.'" *Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. Dec. 19, 2012) (quoting *Marti v. Baires*, 2012 WL 2029720, at *19-20 (E.D. Cal. June 5, 2012)); *See also Heyman v. Nevada ex rel. Bd. of Regents of Nevada System of Higher Educ.*, 2017 WL 6614093, at *1 (D. Nev. Dec. 27, 2017). Therefore, regarding those instances that Defendants were unable to produce any responsive documents or information, under Rule 26(g)(1) Defendants are ordered to supplement their discovery responses with sufficient detail on the search efforts undertaken for the Court to determine if those efforts were reasonable.

### D. Attorney's Fees and Costs

If a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. Fed. R. Civ. P. 37(a)(5)(A). However, the court must not award fees and costs if: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Id.*

Here, the Court has granted Plaintiffs' motion in its entirety and overruled Defendants' objections, a significant number of which were not substantially justified. The Court finds it appropriate for Plaintiffs to recover the reasonable expenses and attorney's fees they incurred by bringing their motion to compel.

To help determine the proper amount of expenses, Plaintiffs' counsel shall file a pleading setting forth the amount of expenses and attorney's fees they seek to recover and an affidavit itemizing those expenses and fees within 30 days of this order. Defendants shall have 14 days thereafter to respond. The Court will then issue a second order, specifying the amount of the award and setting the time of payment.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs Tracy Caekaert and Camillia Mapley's Motion to Compel Jurisdictional Discovery Responses and for Costs and Fees (Doc. 56) is **GRANTED**.

The Clerk of Court is directed to notify counsel of the entry of this Order.

DATED this _____ day of August, 2021.

Susan P. Watters
SUSAN P. WATTERS
United States District Judge

- 18 -