Robert L. Stepans
Ryan R. Shaffer
James C. Murnion
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT  59802
Tel: (406) 543-6929
Fax: (406) 721-1799
rob@mss-lawfirm.com
ryan@mss-lawfirm.com
james@mss-lawfirm.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

TRACY CAEKAERT, and CAMILLIA MAPLEY,

        Plaintiffs,

    vs.

WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR.,

        Defendants,

WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.,
        Cross Claimant,

BRUCE MAPLEY, SR.,
        Cross Defendant.

Case No. CV-20-52-BLG-SPW

**PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANT WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(2), FED.R.CIV.P**

# **Table of Contents**

INTRODUCTION ...................................................................................1

WTPA MISLED THE COURT ................................................................2

RELEVANT FACTS AND EVIDENCE ..................................................3

   I.  WTPA was the primary corporate entity leading the Jehovah's Witnesses' worldwide activities. ..........................................................................3

   II.  Local congregations were trained and required to follow the Watchtower Protocols and reported directly to WTPA representatives. .............................5

   III. WTPA's rules and policies that protect and encourage child sex abuse. ..........8

   IV. Plaintiffs' evidence establishes that WTPA's rules and representatives permitted the sexual abuse of Plaintiffs to go unchallenged at the Hardin congregation. ....................................................................................12

APPLICABLE LAW ..............................................................................17

ARGUMENT ........................................................................................18

   I.  WTPA is subject to Montana's long-arm statute because its activities in Montana resulted in the accrual of Plaintiff's torts. ........................................18

   II.  Jurisdiction over WTPA in Montana is consistent with the Constitutional standard. ...........................................................................................21

     A.  WTPA took voluntary action designed to have an effect in Montana. ........21

     B.  Plaintiffs' claims arise from WTPA's Activities in Montana. ....................23

     C.  Jurisdiction over WTPA in Montana comports with "fair play and substantial justice." ........................................................................24

CONCLUSION .....................................................................................27

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
i

# Table of Authorities

**Cases**

*Abbey v. Chubb Corp.,*
   CV 05-23-H-DWM, 2006 WL 8449567, at \*1–2 (D. Mont. Apr. 10, 2006).......24

*B.T. Metal Works and Daryl Boyd, D.B.A. v. United Die and Mfg. Co.,*
   100 P.3d 127 (Mont. 2004)....................................................................................21

*Brand v. Menlove Dodge*,
   796 F.2d 1070 (9th Cir. 1986) ....................................................... 25, 27

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)........................................................................ 23, 25

*Cameron v. Thomson Intl., Inc.*,
   CV 21-17-BLG-SPW-TJC, 2021 WL 3409999, at \*1 (D. Mont. July 19, 2021),
   *report and recommendation adopted*, CV 21-17-BLG-SPW, 2021 WL 3406352
   (D. Mont. Aug. 4, 2021) ...................................................................................18

*Core-Vent Corp. v. Nobel Industries AB*,
   11 F.3d 1482 (9th Cir. 1993) .........................................................................26

*Fiore v. Walden*,
   688 F.3d 558 (9th Cir. 2012) .........................................................................19

*Jackson v. Kroll, Pomerantz and Cameron*,
   724 P.2d 717 (Mont. 1986)..............................................................................21

Omeluk v. Langsten Slip & Batbyggeri A/S,
   52 F.3d 267 (9th Cir.1995) ..............................................................................18

*Paccar Intern., Inc. v. Com. Bank of Kuwait, S.A.K.*,
   757 F.2d 1058, 1065 (9th Cir. 1985) ...................................................26

*Panavision Intern., L.P. v. Toeppen*,
   141 F.3d 1316 (9th Cir. 1998) .........................................................................18

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
ii

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ........................................................... 17, 23

*Tackett v. Duncan*,
334 P.3d 920 (Mont. 2014)........................................................... 20, 22

*Walden v. Fiore*,
134 S. Ct. 1115 (2014)...........................................................19

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
433 F.3d 1199 (9th Cir. 2006) ...........................................................26

**Statutes**

17 U.S.C. § 106...........................................................22

**Rules**

Mont. R. Civ. P. 4(b)(1)(B)...........................................................18
Mont. R. Civ. Pro. 4(b)(B)...........................................................17

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
iii

## Exhibit Index

| Document Description[1] | Tab No. |
|---|---|
| *Branch Organization Manual* 1-4, ¶ 34 (1977). | 1 |
| Amendment to the Articles of Incorporation of WTPA at 1481 (1945). | 2 |
| *1980 Yearbook of Jehovah's Witnesses* 257 (1980). | 3 |
| *1970 Yearbook of Jehovah's Witnesses* 38 (1970). | 4 |
| *Organized to Accomplish our Ministry* 26 (1983). | 5 |
| *Organized to Accomplish Our Ministry* (1989). | 6 |
| *In re Holocaust Litigation*, Proposed Plan of Allocation for Jehovah's Witness Victims and Targets of Nazi Persecution, CV-96-4849 (E.D.N.Y. Dec. 7, 1999). | 7 |
| Def. WTPA's 3d Supp. Resps. to Plfs.' 1st Set of Jurisdictional Disco., RFA Nos. 4, 6, 7 (Sept. 21, 2021); *Counsel on Theocratic Organization for Jehovah's Witnesses* 56 (1949); *Preaching and Teaching in Peace and Unity* 50 (1960); *Branch Organization Manual* 22-1, ¶ 5 (1977); *Branch Organization Manual* 22-6 (1986); Def. WTPA's 4th Supp. Resps. to Plfs.' 3d Set of Jurisdictional Disco., Interrog. No. 36 (Sept. 21, 2021). | 8 |
| *Kingdom Ministry School Course* (1972). | 9 |
| *Branch Organization Manual* 4-1, ¶ 1 (1977). | 10 |
| Dep. of Ashe Richard, 232:5–233:4, 320:8–322:14 (April 1, 2014); Def. WTPA's 4th Supp. Resps. to Plfs.' 3d Set of Jurisdictional Disco., RFA Nos 27–29 (Sept. 21, 2021); *Branch Organization Manual* 4-1, ¶ 2 (1977). | 11 |
| *Counsel on Theocratic Organization for Jehovah's Witnesses* 19–22 (1949); *Preaching and Teaching in Peace and Unity* 27 (1960); *Organized to Accomplish our Ministry* 41 (1983). | 12 |
| 1973-1992 Summary and Comparison of WTPA and WTNY Corporate Officers and Governing Body Members (as identified in Def. WTPA's 2d Supp. Resps. to Plfs.' 2d Set of Jurisdictional Disco., Interrog. Nos. 20–21, 23 (Sept. 21, 2021); Def. WTNY's 3d Supp. Resps. to Plfs.' 1st Set of Jurisdictional Disco., Interrog. Nos. 2–4 (Sept. 21, 2021)). | 13 |

[1] To assist the reader quickly identify relevant portions of certain pages included in these documents, highlights have been added by counsel in various places.

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
iv

| | |
|---|---|
| *Preaching and Teaching in Peace and Unity* 28 (1960). | 14 |
| *Organized to Accomplish our Ministry* 138–153 (1983); *see generally* Depo. of Ashe Richard, 190:25–192:18 (March 31, 2014) | 15 |
| *Pay Attention to Yourselves and to All the Flock* (1991). | 16 |
| Def. WTPA's 2d Supp. Resps. to Plfs.' 1st Set of Jurisdictional Disco., Interrog. No. 19 (March 22, 2021). | 17 |
| *1970 Yearbook of Jehovah's Witnesses* 37–41 (1970). | 18 |
| *Branch Organization Manual* 23-1, ¶¶ 1–5 (1977). | 19 |
| *Keeping a Clean Organization of Talkers*, Vol. LXXV The Watchtower 13, at 17 (1954); *Organized to Accomplish our Ministry* 42–43, 47–52 (1983); *Preaching and Teaching in Peace and Unity* 50 (1960). | 20 |
| *1975 Yearbook of Jehovah's Witnesses* 204 (1974). | 21 |
| *Circuit Overseer Guidelines* (2018). | 22 |
| *Questions from Readers*, Vol. XCII The Watchtower 195, at 222–224 (1971). | 23 |
| Dep. of Ashe Richard, 276:10–280:21 (April 1, 2014); Letter from WTNY, to All Bodies of Elders in the United States, 3 (July 1, 1989); Letter from WTNY, to All Bodies of Elders, 2–3 (March 14, 1997). | 24 |
| *Comfort for Those with a "Stricken Spirit"*, The Watchtower, Nov. 1, 1995, at 25, 28. | 25 |
| *Pay Attention to Yourselves and to All the Flock* 69 (1977) | 26 |
| *Pay Attention to Yourselves and to All the Flock* 65 (1977); Dep. of Ashe Richard, 276:10–280:21 (April 1, 2014). | 27 |
| Letter from WTNY, to All Bodies of Elders in the United States (July 1, 1989). | 28 |
| Dep. of Ashe Richard at 279:11–19 (April 1, 2014) | 29 |
| *"A Time to Speak"—When?*, The Watchtower, Sept. 1, 1987, at 12. | 30 |
| Dep. of James Rowland, 65:25–72:21, 168:1–170:2 (April 23, 2021). | 31 |
| *Organization for Kingdom-Preaching and Disciple-Making* (1972). | 31A |
| Letter from Hardin Congregation Elders (Feb. 24, 1996). | 32 |
| Letter from Roberta LaChusa (Feb. 12, 1997). | 33 |
| Letter from Norman Kaufman, to Hardin Congregation (Dec. 28, 2010). | 34 |
| Dep. of James Rowland at 78:10–80:19 (April 23, 2021). | 35 |
| Dep. of James Rowland, 132:5–18, 133:20–134:14 (April 23, 2021). | 36 |

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
v

| Dep. of James Rowland, 130:15–131:1–10 (April 23, 2021). | 37 |
| Aff. of Shirley Gibson, March 26, 2020; Letter from Hardin Congregation to Governing Body of Jehovah's Witnesses (Dec. 22, 1984). | 38 |
| Def. WTNY's 2d Supp. Resps. to Plfs.' 2d Set of Jurisdictional Disco., Interrog. No. 16 (Sept. 21, 2021). | 39 |
| Def. WTPA's 1st Supp. Resps. to Plfs.' 1st Set of Jurisdictional Disco., RFP Nos. 8, 48 (Dec. 15, 2020); Def. WTPA's 4th Supp. Resps. to Plfs.' 3d Set of Jurisdictional Disco., Interrog. No. 35 (Sept. 21, 2021). | 40 |

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
vi

Plaintiffs, by and through their counsel of record, respond in opposition to Defendant Watch Tower Bible and Tract Society of Pennsylvania's ("WTPA") Motion to Dismiss Pursuant to Rule 12(b)(2), Fed.R.Civ.P. (Doc. 13) ("Motion") as follows:

**INTRODUCTION**

Plaintiffs brought this case against WTPA because it played an active role in establishing, disseminating, and enforcing the policies that permitted – and indeed encouraged – rampant and known sexual abuse of Plaintiffs by Hardin congregation elders.[2]  First Am. Compl. and Jury Demand, ¶¶ 17–31 (Doc. 22).  As will be described in detail below, WTPA's own documents and words establish that at relevant times it:

    a. Was the primary corporate entity leading all of the Jehovah's Witnesses' world-wide efforts;

    b. Authored, published, and disseminated the policies that effectively sanctioned rampant child sexual abuse by Hardin congregation elders;

    c. Sent representatives to Montana to train Hardin congregation elders on how to enforce those policies; and

---

[2] For ease of reference, Plaintiffs refer to these policies collectively as the "Watchtower Protocols."

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
1

   d. Sent representatives to the Hardin congregation who were notified of

the sexual abuse but demanded that the victims and their families

remain quiet rather than reporting it to secular authorities as required

by Montana law.

WTPA's Montana based and directed activities were substantial, and they were

intended to affect the behavior of Montana residents in Hardin.  It is therefore both

fair and appropriate for Montana courts to exercise jurisdiction over it.

## WTPA MISLED THE COURT

WTPA justified its Motion to Dismiss by representing that it had no contacts

or conduct in Montana.  Br. in Support of Def. WTPA's Mot. to Dismiss Pursuant

to Rule 12(b)(2), Fed.R.Civ.P. (Doc. 14).  In support of its Motion, WTPA

submitted the affidavits of its legal counsel, representing to the Court that it was

nothing more than a passive copyright holder conducting humanitarian aid around

the world.  Aff. of Philip Brumley, Esq., ¶¶ 8–15, June 22, 2020 (Doc. 14-1);

Second Aff. of Philip Brumley, Esq., ¶ 4, July 27, 2020 (Doc. 26).  Nothing could

be further from the truth.

The evidence of WTPA's Montana based and directed activities come from

its own documents; all of which WTPA was well aware of when it filed its Motion.

It is now apparent that WTPA hoped that the Court would not permit Plaintiffs to

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
2

conduct discovery to find these documents, and when that failed, WTPA and the Hardin congregation attempted to obstruct such discovery.  Order re Mot. to Compel Hardin Congregation's Subpoena (Doc. 82); Order re Mot. to Compel Jurisdictional Disc. Resps. and for Costs and Fees (Doc. 85).  WTPA's material misrepresentations and obstructive conduct have resulted in an 18-month delay of this case and hundreds of hours of wasted time litigating a Motion that is based on a falsified version of WTPA.

## RELEVANT FACTS AND EVIDENCE[3]

### I.    WTPA was the primary corporate entity leading the Jehovah's Witnesses' worldwide activities.

Contrary to representations made to this Court, WTPA did far more than passively hold copyrights and provide humanitarian aid.  By its own admission, WTPA was the Jehovah's Witnesses' (the "Organization") primary, principal, and parent corporate entity:

> ➢ "The Watch Tower Bible and Tract Society of Pennsylvania is the parent corporate agency of Jehovah's Witnesses. It works with its subsidiary legal agencies such as the Watchtower Bible and Tract Society of New

---

[3] The factual recitations contained herein apply to the time-period at issue in this case: 1973–1995.  Additionally, the evidence supporting factual assertions has been organized and filed with the Court in an Appendix.  All evidentiary citations are made to the corresponding document number in the Appendix.

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
3

York, Inc., the International Bible Students Association, and many others scattered throughout the earth[.]" App. 1.

➢ WTPA's stated purpose was to act as the "legal world-wide governing agency for the body of Christian persons known as the Jehovah's witnesses[.]"  App. 2.

➢ "Watch Tower Bible and Tract Society of Pennsylvania . . . is the parent of similar religious corporations formed world wide."  App. 3.

➢ The Organization's other corporations "all look to the Watch Tower Bible and Tract Society of Pennsylvania as the mother organization that supervises the printing and publication of all the literature that has proved so beneficial to Jehovah's witnesses in their study of the Bible, and in their proclamation of the good news of God's kingdom."  App. 4.

➢ "The first in time and the principal corporation used in this way is the Watch Tower Bible and Tract Society of Pennsylvania."  App. 5; App. 6 at 26.

➢ WTPA was the "corporate agency directing the administrative and religious work of Jehovah's Witnesses worldwide[.]"  App. 7.

WTPA was also the entity used by the Organization for its worldwide fundraising efforts.  App. 8.

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
4

The evidence establishes that WTPA was the principal and primary corporation directing the Organization's work across the world from at least 1945 to 1999, i.e., the entire relevant time-period to this case.  The notion that WTPA only passively held copyrights and provided humanitarian aid is so thoroughly and completely false that the Court must consider sanctioning each of the lawyers who advanced this position.

II.   **Local congregations were trained and required to follow the Watchtower Protocols and reported directly to WTPA representatives.**

Local Jehovah's Witness congregations were required to maintain an internal hierarchy that enforced the Watchtower Protocols and reported to WTPA representatives.  New congregation members were given the rank of unbaptized publisher and could be promoted sequentially to baptized publisher, ministerial servant, and finally, elder.  App. 9 at 18–21; App. 10.  Members of local congregations are required and expected to follow the Watchtower Protocols that WTPA established and disseminated.  App. 11.

The power to appoint elders and ministerial servants of each congregation is centralized with one group of men, who all served concurrently on the WTPA and Watchtower Bible and Tract Society of New York ("WTNY") Boards of Directors,

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
5

as well as on the Organization's "Governing Body"[4] (collectively referred to as the "Society").  App. 12.  The top ranking elder of each local congregation, known as the Presiding Overseer, is the only elder permitted to communicate directly with the Society.  App. 9 at 52–53, 120; App. 14.

Congregation elders are responsible for, *inter alia*, adjudicating disputes and disciplinary issues among congregation members, such as accusations of child sexual abuse.  App. 15.  Elders are instructed on how to carry out such responsibilities because the Society provides them with training and WTPA books and manuals such as *Kingdom Ministry School Course Book*, *Organized to Accomplish Our Ministry*, and *Pay Attention to Yourselves and to All the Flock*.  App. 6; App. 9; App. 16; App. 17.  Elders are expected and required to follow the rules, policies, and directives set forth by WTPA when dealing with allegations of wrongdoing.  App. 11; App. 16 at 66.  According to the 1970 Jehovah's Witnesses Yearbook, WTPA controlled publication and dissemination of Watchtower Protocols in the various WTPA publications:

> There is a board of directors that is elected by those who make up the membership of this legal corporation, the Watch Tower Bible and

---

[4] With virtually no exception, the group of men on the Organization's "Governing Body" were the exact same men who sat on the Boards of Directors for both WTPA and WTNY.  App. 13.  As the 1970 Yearbook of Jehovah's Witnesses noted, "So really the governing body of Jehovah's witnesses is the board of directors of the Watch Tower Bible and Tract Society of Pennsylvania[.]"  App. 4.

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
6

Tract Society of Pennsylvania.  This board of directors has officers, a president, vice-president, and secretary-treasurer.  These officers and directors see that the work is done in accordance with the purpose of the corporation.  They see to it that the Holy Bible is studied and that material is prepared for publication that helps people understand the Bible.  This material is prepared by many persons throughout the world who are keen students of the Bible and who can write well.  It is then sent to the headquarters organization at 124 Columbia Heights, Brooklyn, New York, and through a writing staff the material is edited by brothers who are of the anointed remnant and published in *The Watchtower* and *Awake!* or in bound books . . .

App. 18 at 37–38.  According to this same document, WTPA organized and held regional Kingdom Ministry School trainings to teach new elders how to implement the Society's policies.  App. 18 at 40–41 (noting "This schooling has proved to be very advantageous world wide in helping the brothers who are overseers or ministerial servants and who are very interested in the sheeplike ones in the congregation.").

Finally, WTPA representatives, known as District and Circuit Overseers, served as a crucial link between local congregations and the Society by routinely visiting local congregations and assisting them with implementation of the Watchtower Protocols, including handling allegations of wrongdoing within the congregation.  App. 9 at 106–08, 119; App. 18 at 38–39; App. 20.  The 1970 Yearbook of Jehovah's Witnesses specifically notes that it was WTPA who "sent" these representatives to local congregations:

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
7

> They use the Watchtower Bible and Tract Society of Pennsylvania to arrange conventions . . . to building printing plants for publications of the Bible, the *Watchtower* and *Awake!* magazines, and other Bible textbooks and booklets. **This corporation also sends out special ministers, such as circuit and district servants, to visit all the congregations of Jehovah's witnesses throughout the world.**

App. 18 at 38–39 (emphasis added). WTPA's practice of sending its representatives to every congregation began around 1942. App. 21. The WTPA Circuit and District Overseers were trained in the Watchtower Protocols with WTPA materials. App. 22.

## III. WTPA's rules and policies that protect and encourage child sex abuse.

The Watchtower Protocols are expansive; they dictate most aspects of everyday life in the congregation, including topics like medical care, voting, military service, marriage, and sexual activities. *See generally*, App. 9; App. 16 at 21–22, 132–42. Many of these policies effectively supplant the secular criminal justice system with the Society's own investigative procedures and evidentiary burden to adjudicate reports of wrongdoing, including allegations of sexual abuse. App. 9 at 81–86, 114–17, 123–26; App. 16 at 90–142.

Members know to take their problems to the elders of their local congregation. App. 9 at 126; App. 16 at 139; App. 23 at 223; App. 30 at 13. Elders, in turn, are commanded not to discuss wrongdoing with secular authorities, but to bring such issues to the Society instead. App. 24. This arrangement

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
8

effectively cedes control over investigations into wrongdoing to congregational elders and the select group of men in New York who control the Society.

Several WTPA policies work together to protect and shield pedophiles from accountability, thereby effectively permitting known child sex abuse to occur within a congregation. First, the "two-witness rule" provides that elders investigating reports of wrongdoing cannot act or sanction a wrongdoer unless there is a confession or there are at least two witnesses who will testify to the wrongdoing. App. 9 at 111, 114; App. 25 ("If the accusation [of child sexual abuse] is denied, the elders should explain to the accuser that nothing more can be done in a judicial way. And the congregation will continue to view the one accused as an innocent person."); App. 26.

Second, the Society demanded and enforced strict confidentiality over allegations of wrongdoing brought to elders, including allegations of child sex abuse and information learned during investigative and disciplinary processes. App. 16 at 79, 105; App. 23; App. 25 ("The names of any 'remembered' abusers should be kept in strict confidence."); App. 27; App. 28 at 2. Elders are warned that "Improper use of the tongue by an elder can result in serious legal problems for the individual, the congregation, and even the Society." App. 28 at 1. The Society went so far as to demand that elders who receive reports of child sex abuse

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
9

call the Society's legal department instead of the police.  App. 28 at 3.  Elders who

disobey the Society's strict confidentiality requirements risk losing their

ecclesiastical privileges or worse, being disfellowshipped.  App. 29; App. 37.  The

Society's stated motivation for enforcing its strict confidentiality requirements is to

protect itself from legal responsibility:

> If the elders fail to follow the Society's direction carefully in handling
> confidential matters, such mistakes could result in successful litigation
> by those offended. Substantial monetary damages could be assessed
> against the elders or congregation. In some cases where the authorities
> are involved, certain complications could lead to a fine or
> imprisonment. These possibilities underscore **the need for elders to
> be discerning and to follow carefully directions provided by the
> Society.**

App. 28 at 2 (emphasis in original).

When an elder is informed of an allegation of wrongdoing, the Watchtower

Protocols mandate that the elder conduct an informal investigation.  If, and only if,

the investigation has evidence showing wrongdoing, i.e. either a confession or two

eye-witnesses, then a "judicial committee" is formed of at least three elders to hear

and decide the matter.  App. 6 at 145–53; App. 9 at 114–17, 123–26.  When a

judicial committee finds that wrongdoing occurred (whether through two or more

witnesses or a confession) the Watchtower Protocols instruct elders that their

"objective is to help [the wrongdoer] get restored spiritually, if possible, rather

than drive him away."  App. 9 at 114.  Regardless of the "gravity of the wrong",

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
10

including child sexual abuse, wrongdoers are not disfellowshipped from a congregation if they are show "sincere repentance".  App. 9 at 115.  In certain cases of wrongdoing, the elders announce to the congregation that the wrongdoer has "engaged in 'conduct unbecoming a Christian'".  App. 9 at 116, *see also* 123.  However, the Watchtower Protocols prohibit the elders from announcing the specific conduct for WTPA's expressly stated purpose: "to avoid possible legal difficulties[.]"  App. 9 at 116, *see also* 123.

A final and critical WTPA rule is that secular laws are only to be obeyed if they do not conflict with the Society's laws: "Christians are to obey all secular laws that do not conflict with Biblical laws[.]" App. 9 at 30, *see also* 91–93, 131.  WTPA's 1987 *Watchtower* magazine specifically cautioned members that Jehovah's law is supreme:

> There are times when a Christian 'must obey God as ruler rather than men.'
>
> .          .          .
>
> We cannot ignore Caesar's law or the seriousness of an oath, but Jehovah's law is supreme.

App. 30 at 13, 15.

Taken together, the Watchtower Protocols effectively supplanted the secular process of investigating and prosecuting child sexual abuse.  Abusers and

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
11

pedophiles knew that they could escape responsibility by denying the abuse and leaving the child victim as the only witness.  Abusers and pedophiles also knew that the accusations would be kept confidential and not reported to secular authorities.  As such, WTPA and the Society created an insular justice system that left pedophiles free of responsibility, while leaving their victims without recourse or protection.  It is these WTPA policies and actions that are at issue in this case.

## IV.  Plaintiffs' evidence establishes that WTPA's rules and representatives permitted the sexual abuse of Plaintiffs to go unchallenged at the Hardin congregation.

On April 23, 2021, Plaintiffs deposed former Hardin congregation elder, James Rowland.  Mr. Rowland's testimony establishes that he and other Hardin congregation elders were trained and required to follow WTPA policies that permitted child sex abuse to go unchallenged, that he reported allegations of child sex abuse to WTPA's Circuit Overseers , and that he was eventually removed from the Hardin congregation for raising his concerns.

Mr. Rowland testified that, as an elder, he was provided and routinely relied on WTPA's books *Kingdom Ministry School Course* and *Organization for Kingdom-Preaching and Disciple-Making*.  App. 31 (referenced books at App. 9, 31A).  Mr. Rowland testified that when he was promoted to the position of elder he was required to attend an extensive training in Billings, MT that was put on by "the

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
12

people from New York" where he was provided a copy of WTPA's *Kingdom Ministry School Course* and trained in all of WTPA's policies, including:

> [T]he responsibility you have in talking to people, and what happens if you're rejected or physically assaulted or whatever, you know, how to handle situations like that . . .

App. 31.  Mr. Rowland also testified that WTPA's *Organization for Kingdom-Preaching and Disciple-Making* was a book that helped him understand "the stream of responsibilities" within the Hardin congregation, and that it was an important book in helping him understand his job as an elder.  App. 31 at 169:1–2.

Documents produced by the Hardin congregation demonstrate that the WTPA Watchtower Protocols were being relied on in Hardin, including during the congregation's mishandling of child sexual abuse:

➢ A 1996 handwritten letter regarding tobacco use by a congregation member references "KS pg. 99" which is a reference to WTPA's *Kingdom Ministry School Course* book.  App. 32.

➢ The author of 1997 letter about child sexual abuse within the Hardin congregation personally endorses WTPA's "two witness rule," noting that she strongly believes "in this principle."  App. 33 at 2.

➢ The author of a 2010 letter regarding child sexual abuse within the Hardin congregation discusses judicial committees for vetting accusations of child

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
13

sex abuse, and WTPA's "two witness rule", noting that when the accused elder, Martin Svenson, denied the accusations, "[t]here was then nothing more that we could do."  App. 34 at 1.

Mr. Rowland testified that WTPA's books had trained him to take concerns about things like child sex abuse to the Presiding Overseer who was then responsible for taking such concerns to WTPA and the Society.  App. 35. However, because the Presiding Overseer, Martin Svenson, was one of the principal culprits of the sex abuse, Mr. Rowland approached another elder, Gary Baker, who refused to help.  App. 35.

Mr. Rowland also testified that he took his concerns about child sex abuse in Hardin to WTPA's Circuit Overseers, who not only refused to assist, but physically threatened Mr. Rowland:

> . . . I don't know if you're going to ask me how the circuit overseers treated me. I'll tell you. I said in one, the first meeting, Brother Polakowski, I said, "There's something serious going on with Martin." I said, "We've got to talk about it as a body of elders." He jumped up, and I thought he was going to hit me. Come running across. He said, "Don't you ever say anything about Martin Svensen again. Got it?"
>
> And that was the end of any hearing, or -- I don't know if they sent those papers to the incident to New York. That was none of my business, I guess.
>
> .    .    .

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
14

> A.    The same thing happened with Brother Milneck. He's the one that said, "If you do anything wrong, I'm going to be like a millstone around your neck when they throw you in the water."
>
> Q.    What did that mean?
>
> A.    Don't ever cross him up.
>
> Q.    Did you tell Brother Milneck the same thing you told the other visiting overseer?
>
> A.    Yeah. He was sitting there –
>
> Q.    Where were you?
>
> A.    In a circuit overseer's visit with the elders in Hardin.
>
> Q.    Were you in the Kingdom Hall, or –
>
> A.    Kingdom Hall. And I said, "There's something going on, Brother Milneck." I said, "And it can't go on much longer." I said, "There's pedophilia in this congregation, rampant, and it involves Martin Svensen." He jumped up and come right over to me like he was going to hit me.

App. 36.

When asked why he did not take his concerns about child sex abuse to secular authorities, Mr. Rowland testified he wanted to rely on the process that WTPA had instilled in him, and he was fearful that deviating from that process would result in him being removed from the church:

> Q.    Would you have gone to the police if you felt like you could have?

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
15

> A.     I would have went outside of the organization.  But, see, I believed totally in the footsteps of Jesus Christ.  And on the one hand, I didn't want to drag Jehovah's name in, because I knew there was a process for handling this.
>
> Q.     The process in this book here, Exhibit 2?
>
> A.     Yeah
>
> Q.     Yeah.
>
> A.     And secondly, I knew that if I did, and they did it me anyhow, I'd have been like an apostate.  But as it was, I was removed from responsibility and kicked out of the congregation anyway, without a hearing, without "Boo."  The circuit overseers came out there, and Brother Miller, "You have to sign this.  They decided against you."

App. 37.  As it turned out, Mr. Rowland's concerns were valid; rather than taking any action to stop the reported child sex abuse that was occurring within the Hardin congregation, WTPA's Circuit Overseer informed Mr. Rowland he was disfellowshipped out of the congregation.  App. 37.

In contrast to how the Watchtower Protocols were enforced on those who attempt to protect victims of sex abuse, like Mr. Rowland, the same protocols let admitted pedophiles like Bruce Mapley Sr. and Gunner Haines remain active in the Organization, without providing any notice to people in the community that they

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
16

are sexual predators.  App. 38.[5]  Thus, the Watchtower Protocols thoroughly abandoned victims like Plaintiffs here, while extending a caring hand to pedophiles, all the while keeping it secret from secular authorities and the community.

## APPLICABLE LAW

For a federal court to exercise personal jurisdiction over a nonresident defendant, two requirements must be met: jurisdiction must be proper under the state's long-arm statute, and jurisdiction must satisfy the constitutional standard. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004). Montana's long-arm statute provides for the exercise of personal jurisdiction over an out-of-state defendant: "[A]s to any claim for relief arising from the doing personally, or through an employee or agent, of any of the following acts: . . . (B) the commission of any act resulting in accrual within Montana of a tort action[.]" Mont. R. Civ. Pro. 4(b)(B).  On the second requirement, the Ninth Circuit applies a three-part test to determine if the exercise of personal jurisdiction comports with the Constitution:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in

---

[5] Hardin Congregation documents confirm that Mr. Mapley was simply removed from his position as a ministerial servant as punishment for admitting to the sexual abuse of children in the congregation.  App. 38.

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
17

the forum, thereby invoking the benefits and protections of its laws;
(2) the claim must be one which arises out of or results from the
defendant's forum-related activities; and (3) exercise of jurisdiction
must be reasonable.

*Panavision Intern., L.P. v. Toeppen,* 141 F.3d 1316, 1320 (9th Cir. 1998) (quoting

*Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 270 (9th Cir.1995)).

"In ruling on a motion to dismiss for lack of personal jurisdiction, a court

may consider declarations, discovery materials, and uncontroverted allegations in

the complaint." *Cameron v. Thomson Intl., Inc.*, CV 21-17-BLG-SPW-TJC, 2021

WL 3409999, at *1 (D. Mont. July 19, 2021), *report and recommendation*

*adopted*, CV 21-17-BLG-SPW, 2021 WL 3406352 (D. Mont. Aug. 4, 2021).

Plaintiffs are entitled to resolution of all disputed facts in their favor and all

reasonable inferences in their favor where personal jurisdiction of a defendant is at

stake. *Fiore v. Walden*, 688 F.3d 558, 574–75 (9th Cir. 2012) (citing cases), *rev'd*

*on other grounds by Walden v. Fiore*, 134 S. Ct. 1115 (2014).

## ARGUMENT

I.   **WTPA is subject to Montana's long-arm statute because its activities in
     Montana resulted in the accrual of Plaintiff's torts.**

Specific jurisdiction is proper under Montana's long arm statute where, as

here, through its own actions, or those of its representatives, there results an

accrual within Montana of a tort action.  Mont. R. Civ. P. 4(b)(1)(B). "'Specific' or

'case-linked' jurisdiction depends on an affiliation between the forum and the

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
18

underlying controversy, principally an activity or occurrence that takes place in the forum state and is therefore subject to the state's regulation." *Tackett v. Duncan*, 334 P.3d 920, 925 (Mont. 2014).  "[S]pecific jurisdiction focuses on the relationship among the defendant, the forum, and the litigation, and depends on whether the defendant's suit-related conduct created a substantial connection with the forum state[.]" *Id.* (internal citations and quotation marks omitted).

Here, Plaintiffs' evidence, in the form of WTPA's own words and documents - and the sworn testimony of James Rowland - establishes the following about WTPA's Montana activity:

1. WTPA disseminated the Watchtower Protocols to the Hardin Congregation's elders and members through various WTPA publications, including the *Kingdom Ministry Coursebook*, *Organized to Accomplish our Ministry*, *Pay Attention to Yourselves and All the Flock*, and WTPA's *Awake* and *Watchtower* magazines.  App. 6; App. 9; App. 16; App. 17; App. 18 at 37–38.

2. WTPA organized a two-week Kingdom Ministry School held in Billings, MT, where the Watchtower Protocols were taught to the Hardin elders.  App. 18; App. 31.

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
19

3. WTPA sent Circuit Overseers to Hardin to enforce the Watchtower Protocols.  App. 9 at 106–08, 119; App. 18 at 38–39; App. 20.

4. WTPA's Circuit Overseers came to Hardin, MT where they were specifically notified about the child sexual abuse at issue in this case, and instead of reporting it to secular authorities or otherwise taking action to end the abuse, they sanctioned the elder who raised the concerns.  App. 36.

Plaintiffs have produced overwhelming evidence that WTPA availed itself of Montana's courts by directing and engaging in conduct in Montana which gave rise to Plaintiffs' claims.  No credible argument can be made that WTPA's "suit related conduct" did not create a "substantial connection" with Montana.  Indeed, the Montana Supreme Court has found personal jurisdiction proper over nonresident defendants in tort cases with far fewer Montana contacts than WTPA's contacts in this case.  *See, e.g., B.T. Metal Works and Daryl Boyd, D.B.A. v. United Die and Mfg. Co.,* 100 P.3d 127, 134 (Mont. 2004) (knowingly sending products to Montana and calling a Montana business once was a sufficient basis to for personal jurisdiction over an Ohio defendant); *Jackson v. Kroll, Pomerantz and Cameron*, 724 P.2d 717, 721 (Mont. 1986) (sufficient Montana contacts existed where a

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
20

defendant in New York arranged for an investigation of plaintiff's insurance claim in Montana and subsequently denied the claim in New York).

WTPA actively sent its publications and representatives to Montana for the purpose of enforcing the Watchtower Protocols, which caused those who knew about the sex abuse of Plaintiffs to sweep it under the proverbial rug instead of reporting it to secular authorities, as required by Montana law.   As such, Plaintiffs' claims arise out of WTPA's Montana contacts, and those contacts are the "substantial connection" to Montana that give this Court authority to exercise jurisdiction over it.  *Tackett*, 334 P.3d at 925.

## II. Jurisdiction over WTPA in Montana is consistent with the Constitutional standard.

A. WTPA took voluntary action designed to have an effect in Montana.

As set forth by the United States Supreme Court:

This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts or of the "unilateral activity of another party or a third person[.]"  Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a "substantial connection" with the forum State. Thus where the defendant "deliberately" has engaged in significant activities within a State or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
21

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985) (internal citations omitted).  "A nonresident defendant purposefully avails itself of the benefits and protections of the laws of the forum state when it takes voluntary action designed to have an effect in the forum."  *B.T. Metal Works*, 100 P.3d at 134.

In this case, WTPA's intentional dissemination of the Watchtower Protocols to Montana, by itself, is sufficient for the Court to maintain jurisdiction over it. *Schwarzenegger,* 374 F.3d at 802–03 ("The Supreme Court has held that due process permits the exercise of personal jurisdiction over a defendant who 'purposefully direct[s]' his activities at residents of a forum, even in the 'absence of physical contacts' with the form.").  Here, as the publisher and copyright holder, WTPA disseminated the *Kingdom Ministry Coursebook* to Montana where it was relied upon by the Hardin congregation's mishandling of child sex abuse.  App. 9; App. 31.  Even for publications where WTPA is simply the copyright holder, that is not a passive role, and WTPA must have granted permission to the Organization to print and disseminate those publications to Montana.  App. 40; *see also* 17 U.S.C. § 106 ("the owner of copyright under this title has the exclusive rights to do and to authorize . . ." reproduction and distribution of copyrighted material).

However, Plaintiffs' evidence establishes much more than WTPA "directing" its out-of-state activities to residents of Montana.  The evidence shows

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
22

WTPA sent representatives into Montana, that those representatives trained elders of the Hardin congregation on the Watchtower Protocols, and that two of those representatives were informed of the child sex abuse at issue, who both demanded that it be kept quiet with threats of retribution that were ultimately enforced.  App. 36.  There is nothing "random," "fortuitous," or "attenuated" about WTPA's Montana contacts in this case.  To the contrary, all of WTPA's Montana based and directed conduct was intentional and for the explicit purpose of effecting the behavior of Montana residents in Hardin, to the extreme detriment of Plaintiffs.  As such, the evidence establishes that WTPA purposefully availed itself of Montana law.

B. Plaintiffs' claims arise from WTPA's Activities in Montana.

This prong of the due process test is easily satisfied here and overlaps with the Montana long-arm statute analysis set forth above.  *See Abbey v. Chubb Corp.,* CV 05-23-H-DWM, 2006 WL 8449567, at *1–2 (D. Mont. Apr. 10, 2006) (recognizing the Montana long-arm statute analysis and the Ninth Circuit's due process analysis are redundant).

Plaintiffs' Montana long-arm statute analysis sets forth the evidence establishing that their claims arise from WTPA's Montana activities.  *Supra,* pp.

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
23

18–21.  Rather than repeat those facts and arguments, Plaintiffs reference and

incorporate them herein.

>   C. Jurisdiction over WTPA in Montana comports with "fair play and substantial justice."

"Once it has been decided that a defendant purposefully established

minimum contacts within the forum State, these contacts may be considered in

light of other factors to determine whether the assertion of personal jurisdiction

would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at

476–77.  However, once it is shown that an out-of-state defendant has purposefully

availed itself of the privilege of conducting activities in the forum state, a

presumption of reasonableness arises, which the defendant can only overcome by

"presenting a compelling case that jurisdiction would be unreasonable."  *Brand v.*

*Menlove Dodge*, 796 F.2d 1070, 1074 (9th Cir. 1986); *see also Core-Vent Corp. v.*

*Nobel Industries AB*, 11 F.3d 1482, 1487 (9th Cir. 1993), *holding modified by*

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th

Cir. 2006).

Courts consider seven factors to determine if jurisdiction is reasonable:

(1) the extent of the defendants' purposeful interjection into the forum
state's affairs; (2) the burden on the defendant of defending in the
forum; (3) the extent of conflict with the sovereignty of the
defendants' state; (4) the forum state's interest in adjudicating the
dispute; (5) the most efficient judicial resolution of the controversy;

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
24

(6) the importance of the forum to the plaintiff's interest in convenient
and effective relief; and (7) the existence of an alternative forum.
None of the factors is dispositive in itself; instead, we must balance all
seven.

*Core-Vent Corp.*, 11 F.3d at 1487–88 (citing *Paccar Intern., Inc. v. Com. Bank of*

*Kuwait, S.A.K.*, 757 F.2d 1058, 1065 (9th Cir. 1985)).

Here, the evidence strongly supports a conclusion that jurisdiction over

WTPA is reasonable, and WTPA cannot overcome the presumption of the same.

*See Brand*, 796 F.2d at 1074.

1) There are dozens of local congregations in Montana, all of which received

   publications owned, published, and sold by WTPA, had elders trained by

   WTPA, and to which WTPA sent its Circuit and District Overseers to help

   manage the congregations.  App. 39.

2) While it claims defending against this suit in Montana would be a burden,

   WTPA fails to demonstrate or explain how the burden would be greater than

   the burden any defendant endures, especially considering its "worldwide"

   mission and substantial presence in and contacts with Montana.

   Additionally, WTPA's counsel concurrently represents WTNY, and will

   already be litigating this case in Montana.

3) There is no conflict with the sovereignty of Pennsylvania or New York.

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
25

4) Montana has an obvious and critical interest in protecting its children from child sex abuse and penalizing entities that harbor and protect pedophiles in violation of Montana law.  Here, the non-resident Defendants, and particularly WTPA, actively trained their members in Montana to cover up and not report known child sex abuse to secular authorities and enacted policies that protected abusers from discipline and detection (e.g., the two-witness rule).  This flagrant disregard for Montana's laws and its children's health and safety creates an obvious interest in adjudicating this case in Montana.

5) A federal court in Montana will provide the most efficient resolution of this controversy and there is no information to the contrary.

6) Montana is important to Plaintiffs claims because all the abuse and its subsequent coverup occurred in Montana, and as already stated, a Montana-based court will provide efficient resolution to this controversy.

7) There is no alternative forum to adjudicate Plaintiffs' claims.

Under these circumstances, an exercise of jurisdiction over WTPA for its conduct is certainly reasonable and WTPA has not put forth any evidence, let alone a compelling case, to the contrary.  In fact, the only thing that WTPA has put forth is the materially false assertion that it had no Montana contacts.  Based on the

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
26

foregoing, the exercise of jurisdiction over WTPA comports with the

Constitutional requirements of "fair play and substantial justice."

## CONCLUSION

Based upon the foregoing, it is now clear that WTPA's Motion never had

merit and was in fact based on material misrepresentations about WTPA and its

conduct in Montana.  WTPA's frivolous and misleading Motion forced Plaintiffs

to spend 18 months marshalling evidence that WTPA had in its possession all

along.  WTPA was hoping that the Court would not permit Plaintiffs to find this

evidence and, in fact, obstructed Plaintiffs' efforts to do so.  WTPA's Motion

should be denied, and the Court should consider sanctioning WTPA and each

lawyer that advanced its misleading conduct.

DATED this 5th day of November, 2021.

MEYER, SHAFFER & STEPANS PLLP


By: /s/ Ryan Shaffer
         Ryan R. Shaffer

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
27

## **CERTIFICATE OF SERVICE**

Pursuant to Local Rule 1.4, this document has been served on all parties via electronic service through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

By: /s/ Ryan Shaffer
   Ryan R. Shaffer
   MEYER, SHAFFER & STEPANS PLLP

   *Attorneys for Plaintiffs*


## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(d)(2), Plaintiff hereby certifies that this brief complies with the length requirement for briefs, and that this brief contains 5,846 words, excluding the caption, certificates of service and compliance, table of contents and authorities, and exhibit index.

By: /s/ Ryan Shaffer
   Ryan R. Shaffer
   MEYER, SHAFFER & STEPANS PLLP

   *Attorneys for Plaintiffs*

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
28