Gerry P. Fagan
Christopher T. Sweeney
Jordan W. FitzGerald
MOULTON BELLINGHAM PC
27 North 27th Street, Suite 1900
P.O. Box 2559
Billings, Montana 59103-2559
Telephone: (406) 248-7731
Fax: (406) 248-7889
Gerry.Fagan@moultonbellingham.com
Christopher.Sweeney@moultonbellingham.com
Jordan.FitzGerald@moultonbellingham.com

*Attorneys for Defendant Watch Tower Bible and Tract Society of Pennsylvania*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT and CAMILLIA MAPLEY,<br><br>Plaintiffs,<br><br>-vs-<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR.,<br><br>Defendants.<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, | Case No. CV-20-00052-SPW-TJC<br><br><br>**DEFENDANT WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA'S RESPONSE IN OPPOSITIOIN TO PLAINTIFFS' MOTION FOR SANCTIONS** |

Cross-Claimants,

-vs-

BRUCE MAPLEY SR.,

Cross-Defendant.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... iii

EXHIBIT INDEX ................................................................................ iiv

INTRODUCTION ....................................................................................1

ARGUMENT ...........................................................................................3

    I.     Plaintiffs' Factual Basis for Sanctions is Meritless. ...........................3

          A.    Mr. Taylor Has Done Nothing Warranting Sanctions
                Against Him or WTPA. ...................................................................3

          B.    Mr. Brumley Was Truthful and Has Done Nothing
                Warranting Sanctions Against Him or WTPA .........................5

          C.    Plaintiffs' Case for a "Particularly Egregious" Discovery
                Violation is Their Weakest Argument. ......................................9

    II.    Rule 11's Safe Harbor Provision Is Fatal to Plaintiffs' Motion
         For Sanctions. ................................................................................12

          A.    WTPA Should Not be Denied Safe Harbor Protection
                After Plaintiffs Invoked Rule 11...............................................12

          B.    Rule 11's Safe Harbor Provision Protects Messrs.
                Brumley and Taylor from Plaintiffs' Baseless
                 Accusations. ................................................................................17

    III.   Plaintiffs Did Not Meet Their Burden of Proof to Show that
         Sanctions are Warranted under 28 U.S.C. § 1927 or "Inherent
         Powers," Even if the Safe Harbor. ...............................................18

CONCLUSION .....................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Barber v. Miller*, 146 F.3d 707 (9th Cir. 1998) .................................................13, 14

*Cameron v. Rantz*, No. CV 08-42-H-DWM, 2009 WL 2421720 (D. Mont. July 30, 2009)..........................................................................................13

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)..........................................................15

*Holgate v. Baldwin*, 425 F.3d 671 (9th Cir. 2005) .....................................................14

*Mellott v. MSN Commc'ns, Inc.*, 492 F. App'x 887, 888 (10th Cir. 2012) ..............16

*Miccosukee Tribe of Indians of Fla. v. Cypress*, 686 F. App'x 823 (11th Cir. 2017) ........................................................................................ 15-16

*NASCO, Inc. v. Calcasieu Television & Radio, Inc*., 894 F.2d 696 (5th Cir. 1990) ........................................................................................ 15-16

*Operating Engineers Pension Trust v. A–C Co.,* 859 F.2d 1336 (9th Cir.1988). ........................................................................................20

*Peer v. Lewis*, 571 F. App'x 840, 2014 WL 3339502 (11th Cir. 2014)............. 15-16

*Primus Automotive Financial Services, Inc. v. Batarse*, 115 F.3d 644 (9th Cir. 1997) .........................................................................................3, 20

*Roadway Exp., Inc. v. Piper,* 447 U.S. 752 (1980)............................................ 18-19

*Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383 (Fed. Cir. 2017) ....................................................16

*Yurman Studio, Inc. v. Castaneda*, 2008 WL 4949775 (S.D.N.Y. Nov. 19, 2008) ........................................................................................ 15-16

**STATUTES**

Fed. R. Civ. P. 11 ................................................................................passim

28 U.S.C. § 1927..................................................................15, 18, 19, 20

35 U.S.C. § 285 ..............................................................................17

## <u>EXHIBIT INDEX</u>

Exhibit 1:   Plaintiffs' proposed Motion for Rule 11 Sanctions and Brief in Support

Exhibit 2:   WTPA's Response to Plaintiffs' Request for Production No. 25

Exhibit 3:   Excerpts from James Rowland's Deposition

## **INTRODUCTION**

Defendant Watch Tower Bible and Tract Society of Pennsylvania ("WTPA"), on behalf of itself and attorneys Philip Brumley and Joel Taylor, hereby opposes Plaintiffs' Motion for Sanctions (Doc. 101). As set forth more fully below, the record shows that Plaintiffs, in their zeal to seek sanctions, misrepresented or mischaracterized Mr. Brumley's and Mr. Taylor's alleged conduct. There are four clear and independent reasons why Plaintiffs' motion must be denied.

First, Mr. Taylor has not engaged in any sanctionable conduct. To date, the sum total of his actions include: (a) requesting *pro hac vice* admission and (b) appearing at a deposition. Plaintiffs do not allege any misconduct in connection with those activities because none exists. Tellingly, Mr. Taylor's request for admission was granted *after* the briefing on the jurisdiction motion was complete. The record is devoid of evidence that Mr. Taylor has informed this Court on any matter in this case.

Second, Mr. Brumley's affidavits about which Plaintiffs complain are not sanctionable. Mr. Brumley's statements are true despite Plaintiffs' mischaracterizations of his words. Inexplicably, Plaintiffs repeatedly refer to his affidavits, but do not quote his actual words. Plaintiffs instead preferred to add their own interpretation and inaccurate commentary, followed by their argument

that Mr. Brumley's words were misleading. Plaintiff's commentary could have been clarified at Mr. Brumley's deposition if they truly had questions about what Mr. Brumley had said, which Plaintiffs *sua sponte* cancelled. Plaintiffs' exercise of willful blindness does not equate to a basis for sanctions. An unbiased analysis of Mr. Brumley's affidavits provides no basis for sanctions.[1]

Third, the "safe harbor" provision of Rule 11 absolutely applies to these circumstances and precludes sanctions, even if the accusations were true (which they are not). Indeed, Plaintiffs threatened WTPA with a Rule 11 motion for sanctions if WTPA did not withdraw its Motion to Dismiss (*see* Plaintiffs' proposed Rule 11 motion and brief attached as Exhibit 1). Plaintiffs' demand for withdrawal contained the very same accusations about allegedly false representations. Although WTPA's Motion to Dismiss was made in good faith, it withdrew that motion because it recognized that some of the religious literature produced in discovery is awkwardly worded and could possibly cause confusion on the personal jurisdiction issue. Plaintiffs moved for sanctions anyway, in violation of the rule's safe harbor provision. To affirmatively invoke the Rule 11 safe harbor to induce WTPA to withdraw its Motion to Dismiss and then seek sanctions after

---

[1] In their furthered zeal to portray WTPA as a bad actor, Plaintiffs try to malign the reputation of Messrs. Brumley and Taylor by referring the Court to cases that do not involve WTPA.

WTPA complied with Plaintiffs' demand is audacious and unsupportable. Rule 11 forbids such action. Otherwise, the safe harbor provision would be meaningless.

Fourth, the mischaracterized evidence upon which Plaintiffs rely falls short of the bad faith threshold required for sanctions. *Primus Automotive Financial Services, Inc. v. Batarse*, 115 F.3d 644 (9th Cir. 1997) (explaining that "sanctions should be reserved for the 'rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose'."). Thus, the Court must deny the motion.

## ARGUMENT

## I.  PLAINTIFFS' FACTUAL BASIS FOR SANCTIONS IS MERITLESS.

Overall, Plaintiffs accuse Mr. Taylor and Mr. Brumley of making false statements to the Court and hiding evidence to succeed on WTPA's Motion to Dismiss on personal jurisdiction grounds. (*See* Doc. 101 at 2 & Doc. 102 at 4-6) However, Plaintiffs' accusations are meritless, as the evidence shows.

### A.   Mr. Taylor Has Done Nothing Warranting Sanctions Against Him or WTPA.

Mr. Taylor has done nothing in this lawsuit but file a motion for admission *pro hac vice* and appear at a deposition. Despite the absence of any alleged sanctionable conduct in this case, Plaintiffs claimed, without a shred of evidence, that Mr. Taylor's relationship with WTNY gives him unfettered access to information about WTPA, and that this access should have compelled him to

disclose the existence of a publication that WTPA had already produced to Plaintiffs. (*See* Doc. 102, p. 9). The rationale is, at best, bizarre.

In acknowledgment of the deficiencies relating to their allegations of sanctionable conduct against Mr. Taylor, Plaintiffs attempt to taint his reputation by referring to other lawsuits against a co-defendant and assert that those suits show a pattern by WTPA, Mr. Taylor and Mr. Brumley. (*See* Doc. 102, pp. 10-11). Plaintiffs failed to inform the court that those suits **did not** involve WTPA and **did not** involve Mr. Brumley. As for Mr. Taylor, he was only involved in the *Nunez* case. The issue in dispute in *Nunez* centered on contested attorney-client privileged documents after a $35,000,000 jury verdict was reversed on appeal by the Montana Supreme Court. Plaintiffs have misrepresented to this Court that WTPA and/or Mr. Brumley had anything to do with those lawsuits. Moreover, Plaintiffs have provided this Court with no basis to sanction Mr. Taylor in this case for perceived misconduct in another case involving another party.

Finally, it is worth noting that Plaintiffs did not bother to make any specific factual allegations as to Mr. Taylor's representations. Plaintiffs' lone factual allegation related to Mr. Taylor appears to comprise of a single paragraph which merely stated that Mr. Taylor has represented Watchtower entities in the past, and that he was admitted *pro hac vice* in this matter in September 2020, which was

after the Motion to Dismiss briefing and supporting affidavits were filed. (*See* Doc. 102, p. 5).

> **B.   Mr. Brumley Was Truthful and Has Done Nothing Warranting Sanctions Against Him or WTPA.**

Plaintiffs have gone to great lengths to misinterpret, misconstrue, and/or mischaracterize Mr. Brumley's statements, only to then attack his integrity based solely on their own inaccurate commentary.

For example, Plaintiffs claim that Mr. Brumley falsely asserted that WTPA did not publish copyrighted material. (Doc. No. 102 at 4, ¶ 6(a)) Plaintiffs point to a web page (Doc. 21-1) and say it establishes that WTPA publishes Bibles and Bible-based literature. (*Id.*) First, what Mr. Brumley *actually* said was that WTPA does not "author the substantive content or print hard copies of the books, magazines, brochures and tracts" to which WTPA owns copyrights. (Doc. 14-1, ¶ 15) Second, the webpage does not say that WTPA publishes Bibles. It says that WTPA supports Jehovah's Witnesses' "worldwide work, which includes publishing Bibles and Bible-based literature." (Doc. 21-1, p. 3) That sentence describes what Jehovah's Witnesses' worldwide work includes, not what WTPA does to support it. Because the web statement could be misunderstood, Mr. Brumley clarified it in his Second Affidavit. He said:

> Doc 21-1 is a screenshot of a page on a website. As the website states, WTPA "is used by Jehovah's Witnesses to support their worldwide work, which includes publishing Bibles and Bible-based

literature." (emphasis added). WTPA and Jehovah's Witnesses are not one and the same, and the "support" WTPA provides to Jehovah's Witnesses includes owning the copyright to the Bible and other Bible-based materials and funding international humanitarian relief efforts. (Doc. 26, ¶ 4)

Another example is Plaintiffs' assertion that Mr. Brumley said that WTPA "does nothing more than passively hold copyrights and provide international aid." (*See* Doc. 102, p. 4). Plaintiffs cited two letters they claim show that WTPA also handles the "discipline of church members and child sex abuse in Jehovah's Witness congregations." (Doc. 102 at 4-5, ¶ 6(b), *citing* Docs. 21-3 & 21-4)[2] Contrary to Plaintiffs' contention, Mr. Brumley never said what Plaintiffs claim he said. Mr. Brumley stated in his Affidavit that "WTPA exists to provide certain business needs of Jehovah's Witnesses **including, among other things,** holding. copyright to books, magazines, songs, and videos. It also provides international humanitarian aid to communities after natural disasters." (Doc. 14-1 at ¶ 13 (emphasis added)). Mr. Brumley's statement provided examples of WTPA's work, not WTPA's sole functions.

Moreover, the letters Plaintiffs cited are at best irrelevant and do not contradict anything Mr. Brumley said. Doc. 21-3 was a 1970 letter that was not sent to anyone in Montana. The letter informed an individual in New York at "Bethel" (the name Jehovah's Witnesses give their organizational facilities) about

---

[2] Plaintiffs also reference Doc. 21-2 in an earlier paragraph, but that document is a letter from Watchtower Bible and Tract Society of New York, Inc., not from WTPA.

a decision that another individual was "not a fit person to be associated with the Bethel family" in New York. That was an internal personnel communication. It was not sent to Montana. It did not say or even hint that WTPA had anything to do with the internal matter it described.

Doc. 21-4 was a 2002 WTPA letter to Betsan Powys of the BBC television network declining an interview for a program the BBC was preparing on how the church handled sexual abuse allegations there—in Britain—and explaining how the religion of Jehovah's Witnesses handled such issues. That letter has nothing to do with any jurisdictional issues in this case or Mr. Brumley's Affidavit.

Plaintiffs referenced a number of other WTPA letters and a court pleading which they argued show that "Mr. Brumley's assertion that WTPA did nothing more than hold copyrights and provide humanitarian aid was false." (Doc. 102 at 5, ¶ 8, *citing* Docs. 29-1, 29-2, 29-3, 29-4. Again, Mr. Brumley did not say that, nor do the documents bear on WTPA activities in Montana.

Document 29-1 is a letter written on "Writing Committee" letterhead, not WTPA letterhead. The Governing Body of Jehovah's Witnesses has committees responsible for providing Bible-based, ecclesiastical guidance to Jehovah's Witnesses around the earth, and this exhibit is an example. WTPA was the "signator" of the letter and signed "For the Writing Committee." The content

shows that the Writing Committee, not WTPA, was providing the guidance to Australia, not to Montana.

Document 29-2 is a letter from WTPA to elders in England. Its use of the words "enquiries" and "whilst" and its mention of the absence of "Ecclesiastical Privilege in this country" are giveaways of that fact. Plaintiffs provide no evidence that the document was ever circulated in United States.  And it is consistent with WTPA focus on international matters, not domestic issues in Montana.

Document 29-3 is a WTPA newsletter to all elders and concerns procedures to apply for a tuition-free Bible missionary school in New York. Though sent to elders in the United States, it was not specific to any state, and neither said nor indicated anything about WTPA activities in Montana.

Document 29-4 is again from WTPA to elders in England, not the United States.

Document 29-5 is a court filing seeking to obtain monetary recovery for Jehovah's Witnesses around the world who were victims of the Holocaust. The lawsuit was in New York. The few surviving victims could have then been located anywhere in the world. The filing had nothing to do with WTPA activity in Montana. It called WTPA "the corporate agency directing the administrative and religious work of Jehovah's Witnesses worldwide," which is an accurate general

portrayal of WTPA's worldwide activities. It did not suggest that WTPA engaged in any activity in Montana.

None of these documents have anything to do with the jurisdictional issue in this case, nor do any show that Mr. Brumley was dishonest with the Court. As such, sanctions against him or WTPA are wholly inappropriate. WTPA withdrew its jurisdictional motion because the communications noted above clouded an otherwise clear issue. WTPA is confident that, even without further contesting jurisdiction, it has other meritorious defenses.

## C.   Plaintiffs' Case for a "Particularly Egregious" Discovery Violation is Their Weakest Argument.

Plaintiffs misinformed the Court about how they obtained a key document to use in the James Rowland deposition, claiming that WTPA did not provide it to them. The fact is, WTPA *did* provide it, and Plaintiffs used the very document WTPA produced as an exhibit during the deposition.

Plaintiffs described WTPA's asserted failure to produce the document as "[p]articularly egregious." (Doc. 102 at 10) They also falsely stated that "WTPA and its lawyers refused to produce a 1972 WTPA publication known as the Kingdom Ministry School Course." (*Id.*) Plaintiffs then claimed that they were "able to obtain the document on their own and then use it at James Rowland's deposition." (*Id.*) Plaintiffs argued this alleged failure to produce the Kingdom Ministry School Course book constituted the advancement of "materially false and

misleading statements to this Court" and was an attempt "to hide documents directly undermining [Mr. Brumley's and Mr. Taylor's] scheme." (*Id.*)

Given the actual facts, it is hard to see Plaintiffs' argument as anything other than a ruse. WTPA **produced** the 1972 Kingdom Ministry School Course book in discovery on November 20, 2020. (*See* WTPA Response to Plaintiffs' RFP No. 25, excerpts attached as Exhibit 2 herein). The book was the very first document WTPA produced in this case – more than **six months before** Plaintiffs deposed James Rowland. (*See* Excerpts of Rowland Depo, attached as Exhibit 3)

Plaintiffs' own questioning in the Rowland deposition acknowledged that they had received the document from WTPA:

> Q.   Let me show you a document. This is called "Kingdom Ministry School Course."
>
> A.   Yeah.
>
> Q.   And it's Bates WTPA 1 is the first page of this document.  It's the document that was given to us by WTPA, the Pennsylvania corporation.
>
> A.   Yeah.

(*See* Doc. 102-2, Plfs.' Exh. 2, at p. 3) (emphasis added)

It may be correct to call Plaintiffs' example "particularly egregious," but not for the reasons Plaintiffs had in mind.

Plaintiffs also claimed that, "contrary to Mr. Brumley's representations that WTPA does not publish or disseminate policies or procedures to Jehovah's

Witness congregations in Montana," they learned through the deposition of James Rowland that "a manual published and copyrighted by WTPA was disseminated to, and referenced by, the Hardin congregation elders when they chose not to report child sexual abuse at issue in this case to secular authorities." (Doc. 102 at 5-6, ¶ 10, *citing* Rowland Depo. At pp. 67-72)

The only part of that claim that is true is that WTPA published the 1972 course book. That does not alter the fact that WTPA has not published literature in the United States for decades.  The course book did not address the subject of child abuse or WTPA activities in Montana.

Moreover, Mr. Rowland's deposition does not say what Plaintiffs claimed. His testimony neither stated that WTPA disseminated the manual to the Hardin congregation nor that it was used by the Hardin congregation for anything related to the alleged child sexual abuse at issue. (*See* Doc. 102-2 at 67:14-72:21) Instead, Mr. Rowland discussed in general how the course book was used. He testified that he was trained as an elder at Kingdom Ministry School (Doc 102-2 at 89:2-3). He referenced the Kingdom Ministry School Course (book), 1972 version. (Doc 102-2 at 103:20-22). The book is Exhibit 2 to Mr. Rowland's deposition. (Doc 102-2 at 105:4-5). It is Bates-stamped WTPA 1 to 136. (Doc 102-2 at 105:5-7). Mr. Rowland said he was directed "by New York" to handle matters as an elder a certain way. (Doc 102-2 at 118:21-119:6). He spoke of "direction from New

11

York." (Doc 102-2 at 126:12-127:2). He did not say whether the instructors from New York or the persons he could call in New York were from Watch Tower Bible and Tract Society of Pennsylvania, or Watchtower Bible and Tract Society of New York, Inc., or the religious branch office of Jehovah's Witnesses in New York. He did not say who sent the course book to his congregation. His testimony in no way refuted the facts submitted by Mr. Brumley and in no way impacted the personal jurisdiction issue that was then pending before this Court. It is disingenuous at best for Plaintiffs to claim that WTPA acted in bad faith when Plaintiffs declined WTPA's invitation to depose Mr. Brumley and clarify any facts on which Plaintiffs may have had questions.

## II.   RULE 11'S SAFE HARBOR PROVISION IS FATAL TO PLAINTIFFS' MOTION FOR SANCTIONS.

The safe harbor from sanctions provided for in Rule 11 clearly applies here and should be applied to deny Plaintiffs' Motion for Sanctions, regardless of Plaintiffs' studious efforts to avoid invoking Rule 11 in this Motion.

### A.   WTPA Should Not be Denied Safe Harbor Protection After Plaintiffs Invoked Rule 11.

Rule 11 of the Federal Rules of Civil Procedure governs three primary subjects: (1) the signing of pleadings, motions, and other papers; (2) the implied representations made to the court through presenting such pleadings, motions, and other papers; and (3) sanctions for violating the provisions of Rule 11.  As to the

last subject, Rule 11 places specific procedural requirements on a party wishing to

file a motion for sanctions:

> ***Motion for Sanctions.*** A motion for sanctions must be made
> separately from any other motion and must describe the specific
> conduct that allegedly violates Rule 11(b). The motion must be served
> under Rule 5, **but it must not be filed or be presented to the court if**
> **the challenged paper, claim, defense, contention, or denial is**
> **withdrawn or appropriately corrected within 21 days after service**
> **or within another time the court sets**. If warranted, the court may
> award to the prevailing party the reasonable expenses, including
> attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11(c)(2) (emphasis added). The emphasized portion of the sentence

above is referred to as Rule 11's "safe harbor" provision, which was added via

amendments to the Rule in 1993. The Advisory Committee Notes make the

purpose of the amendments clear:

> These provisions are intended to provide a type of "safe harbor"
> against motions under Rule 11 in that a party will not be subject to
> sanctions on the basis of another party's motion unless, after receiving
> the motion, it refuses to withdraw that position or to acknowledge
> candidly that it does not currently have evidence to support a specified
> allegation. Under the former rule, parties were sometimes reluctant to
> abandon a questionable contention lest that be viewed as evidence of a
> violation of Rule 11; under the revision, the timely withdrawal of a
> contention will protect a party against a motion for sanctions.

Fed. R. Civ. P. 11, Adv. Comm. Notes, 1993 Amend.; *see also Barber v. Miller*,

146 F.3d 707, 710 (9th Cir. 1998); *Cameron v. Rantz*, No. CV 08-42-H-DWM,

2009 WL 2421720, at *3 (D. Mont. July 30, 2009).

The Ninth Circuit enforces the safe harbor provision "**strictly**." *See Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir. 2005) (citations omitted) (emphasis added). And a court must reject or reverse any award of sanctions when the challenging party failed to comply with the safe harbor provisions, even when the underlying filing is frivolous. *Id.* (*citing Barber,* 146 F.3d at 711).

Here, there is no question that Plaintiffs **invoked** and **followed** the Rule 11 procedure and that WTPA **complied** with the safe harbor provision. Indeed, Plaintiffs followed the Rule 11 procedure on October 21, 2021, by serving WTPA by email with a planned Motion for Sanctions and Brief in Support. (*See* Exhibit 1; Doc. 95 at 3, ¶ 7, and Doc. 102 at 7, ¶ 14). That brief not only relied upon Rule 11 but made the same arguments now asserted in support of alternative sanctions – that Mr. Brumley lied in his Affidavits, that his statements were "egregious," that Defendants "hid" documents, and that "Defendants consistently behave this way in litigation." (*See* Plaintiffs' Brief in Support of Rule 11 Motion for Sanctions, attached as Exh. 1, at pp. 2-4, 7-8 & 9) The relief requested is essentially the same – an award of attorney fees and a daily monetary sanction for each day Mr. Brumley and Mr. Taylor allegedly improperly or vexatiously delayed proceedings. (*Compare* Exhibit 1, p. 10 to Plaintiffs' Brief, Doc. 102, p. 12)

Likewise, there is no question that WTPA invoked the safe harbor provision on November 5, 2021, by withdrawing its pending Motion to Dismiss,

notwithstanding a good faith belief that the motion was meritorious. (Doc. 94) Accordingly, Rule 11 applies here and WTPA is entitled to the protection of its safe harbor provision. Plaintiffs' Motion should be denied.

Plaintiffs attempted to evade the safe harbor provision that they affirmatively invoked by merely styling their Motion for Sanctions pursuant to 28 U.S.C. § 1927 and "the Court's inherent authority." (*See* Doc. 101 at 2; Doc. 102 at 7-9). Plaintiffs devoted no more than seven repetitive sentences to their argument that the safe harbor does not apply or diminish the Court's inherent powers. (*See* Doc. 102 at 8 & 11) To support that argument, Plaintiffs primarily relied on *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991), which was <u>decided two years before the safe harbor provision even existed in Rule 11</u>. *See* Fed. R. Civ. P. 11, Adv. Comm. Notes, 1993 Amend. *Chambers* obviously did not, and could not have, addressed the Rule 11 safe harbor provision, since it did not exist. *Chambers* is therefore distinguishable and of no import here.

Plaintiffs also string-cited six other decisions without discussing any of them. (Doc. 102 at 9, ftnote 4, & at 11) Even a cursory review of those cases reveals that each is distinguishable and not applicable here. The cases stand for the proposition that the Court retains powers to sanction conduct apart from Rule 11 and particularly when Rule 11 does not apply. *See NASCO, Inc. v. Calcasieu Television & Radio, Inc*., 894 F.2d 696, 702 (5th Cir. 1990); *Yurman Studio, Inc. v.*

*Castaneda*, 2008 WL 4949775 (S.D.N.Y. Nov. 19, 2008); *Peer v. Lewis*, 571 F. App'x 840, 2014 WL 3339502 (11th Cir. 2014); & *Miccosukee Tribe of Indians of Fla. v. Cypress*, 686 F. App'x 823 (11th Cir. 2017).

None of those cases involved a party like these Plaintiffs affirmatively invoking Rule 11 to demand the withdrawal of motion under a threat of Rule 11 sanctions, and then moving for the same sanctions under a different label after the opponent invoked the safe harbor provision. Indeed, in *Mellott v. MSN Commc'ns, Inc.*, 492 F. App'x 887, 888 (10th Cir. 2012), *Peer*, and *Miccosukee*, the appellate courts specifically noted that the safe harbor provision was not available because the safe harbor procedures had not been complied with. *See Mellott*, 492 Fed. App'x at 888; *Peer*, 571 Fed. App'x. at 843 (Rule 11 motion untimely); *Miccosukee*, 686 F. App'x at 827 (failed to file Rule 11 motion which would have given opposing party 21 days to withdraw pleading at issue). That is exactly the opposite situation presented in this case. The safe harbor provision is available here because Plaintiffs invoked it and WTPA complied with it.

Only in *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383 (Fed. Cir. 2017) did the court address the propriety of issuing a sanction even after a party had complied with the safe harbor provision contained in Rule 11. *Rothschild* was a patent infringement case. The *Rothschild* Court ruled that sanctions were proper in that specific case under a specific patent

litigation statute that can award attorney fees "in exceptional cases." *See Rothschild*, 858 F.3d at 1390, *citing* 35 U.S.C. § 285. *Rothschild* is obviously not applicable here because this is not a patent infringement case and 35 U.S.C. § 285 is not applicable or available.

### B.     Rule 11's Safe Harbor Provision Protects Messrs. Brumley and Taylor from Plaintiffs' Baseless Accusations.

The language of Rule 11 flatly contradicts Plaintiffs' argument that the safe harbor provision applies only to those individuals who are "signatories to WTPA's Motion," and, since Brumley and Taylor did not sign the specific Motion, they are afforded no protection. (*See* Doc. 102 at 11)     Rule 11 expressly applies to affidavits supporting a motion as well as arguments advocating the position. It specifically states "[b]y **presenting to the court** a pleading, written motion, **or other paper**--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that…" Fed. R. Civ. P. 11(b) (emphasis added). As such, neither the sanctions provisions nor the safe harbor protections are construed so narrowly as Plaintiffs now advocate.

Here, Mr. Brumley signed the Affidavits that WTPA filed with the Court -- the very "paper" that Plaintiffs argue now was improper. Plaintiffs claim that attorneys Brumley and Taylor advocated WTPA's position. (*See* Doc. 102, 9-11). But, there is absolutely no evidence that Mr. Taylor advocated *any* position in connection with the instant Motion to Dismiss. Indeed, the briefing on the Motion

to Dismiss was complete before Mr. Taylor was admitted to appear in the case. Assuming, *arguendo,* that Mr. Taylor's statements in a different case, in another jurisdiction, while acting on behalf of a different client could somehow be construed as advocating WTPA's position in this case, both Brumley and Taylor are entitled to the protection afforded by the safe harbor provision under the plain terms of Rule 11. Plaintiffs should not be allowed to suddenly shift gears after WTPA complied with the safe harbor provision to argue that the very process Plaintiffs invoked did not actually apply.

In summary, Plaintiffs' demand for sanctions under 28 U.S.C. § 1927 and "the Court's inherent authority" would entirely defeat the purpose of the 1993 amendments to Rule 11 that created the safe harbor. *See Barber*, 146 F.3d at 710. Plaintiffs clearly invoked Rule 11 to induce WTPA to withdraw its Motion to Dismiss and WTPA fully complied with the safe harbor provision. Plaintiffs' bold attempt to do an end-run around the safe harbor provision is not supported by the law or the facts here. Plaintiffs' Motion should be denied.

## III. PLAINTIFFS DID NOT MEET THEIR BURDEN OF PROOF TO SHOW THAT SANCTIONS ARE WARRANTED UNDER 28 U.S.C. § 1927 OR "INHERENT POWERS," EVEN IF THE SAFE HARBOR DID NOT APPLY.

Assuming *arguendo* that Plaintiffs' Motion for Sanctions could avoid the Rule 11 safe harbor provision, their Motion must still be denied. The power to sanction must be exercised with restraint and discretion. *Roadway Exp., Inc. v.*

*Piper,* 447 U.S. 752 (1980). Plaintiffs did not come close to proving that sanctions under 28 U.S.C. § 1927 or the Court's "inherent powers" are supported or justified.

Plaintiffs' primary argument -- their so-called "[p]articularly egregious" conduct justifying sanctions -- is that WTPA hid the Kingdom Ministry Course document from them. (*See* Doc. 102 at 10) As noted, Plaintiffs argued WTPA's alleged failure to produce the Kingdom Ministry School Course constituted the advancement of "materially false and misleading statements to this Court" and was an attempt "to hide documents directly undermining [Mr. Brumley's and Mr. Taylor's] scheme." (*Id.*) As also noted, Plaintiffs' argument is clearly false and unsupported. WTPA did no such thing, as is clear from the record.

With the accusation of "particularly egregious" conduct dead on the vine, their Motion for sanctions is also dead, even if Rule 11 did not apply to their Motion. Without this allegedly "egregious" conduct proven, the only other argument of note is their repeated allegation that Mr. Brumley claimed that WTPA "does nothing more than passively hold copyrights and provide international aid." (Doc. 102 at 4-5, ¶ 6(b), *citing* Docs. 21-3 & 21-4)[3] As noted above, Mr. Brumley never in fact stated what Plaintiffs claim he did. On the contrary, he actually stated that "WTPA exists to provide certain business needs of Jehovah's Witnesses including, among other things, holding copyright to books, magazines, songs, and

---

[3] Plaintiffs also reference Doc. 21-2 in an earlier paragraph, but that document is a letter from Watchtower Bible and Tract Society of New York, Inc., not from WTPA.

videos. It also provides international humanitarian aid to communities after natural disasters." (Doc. 14-1 at ¶ 13) Plaintiffs' attempt to spin Mr. Brumley's truthful statement to mischaracterize it as a lie is plainly insufficient to support the sanctions they demand. Moreover, the smattering of internal and international communications and a court pleading in New York over a half century ago in no way establishes that Mr. Brumley lied in his Affidavit.

It must not be lost on this Court that Plaintiffs tossed in a quick reference to sanctions orders involving discovery issues in two other, non-related cases involving WTNY (but not WTPA). Plaintiffs argued that "this is how attorneys for WTPA and WTNY litigate." (Doc. 102 at 10) This Court should not tolerate or condone Plaintiff's obvious attempt to prejudice the Court against WTPA, Mr. Brumley, and Mr. Taylor. Those orders have nothing whatsoever to do with the issues or facts in this case. This Motion must be resolved on the facts and merits of this Motion, not the findings of another court in a different jurisdiction involving a different party addressing a different issue.

Furthermore, sanctions under both 28 U.S.C. § 1927 and the Court's "inherent powers" set a high bar. Both require a showing that an attorney acted recklessly, in bad faith, or oppressively, as acknowledged by Plaintiff in their Brief. (*See* Doc. 102 at 7-8) (citations omitted) Plaintiffs even acknowledged in their Brief that a court "must make an explicit finding" under its inherent powers

that the attorney acted in bad faith. (*Id.* at 8) (citation omitted) Furthermore, such sanctions "should be reserved for the '**rare and exceptional case** where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose.'" *See Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (emphasis added), *citing Operating Engineers Pension Trust v. A–C Co.,* 859 F.2d 1336, 1344 (9th Cir.1988).

This is not a "rare and exceptional case," no matter how hard Plaintiffs argued. That WTPA mailed some letters to individuals or entities wholly unrelated to Montana and filed a court document in New York certainly did not come close to justifying an "explicit finding" that Mr. Brumley somehow acted in bad faith by explaining the lack of activity in Montana. Moreover, Plaintiffs' false argument about "particularly egregious" conduct decidedly does not assist their Motion. Accordingly, Plaintiffs' Motion for Sanctions fails, even if it could avoid the Rule 11 safe harbor.

## **CONCLUSION**

The Court should deny Plaintiffs' Motion for Sanctions. Their Motion lacks accurate factual support for such sanctions and is an improper attempt to circumvent the safe harbor provision of Rule 11.

**DATED** this 28th day of December 2021.

MOULTON BELLINGHAM PC


By ___*/s/ Christopher T. Sweeney*___
  GERRY P. FAGAN
  CHRISTOPHER T. SWEENEY
  JORDAN W. FITZGERALD

  *Attorneys for Watch Tower Bible and*
  *Tract Society of Pennsylvania*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(d)(2)(E), I certify that this brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double-spaced, with left, right, top, and bottom margins of one inch; and that the word count calculated by Microsoft Word is 4,942 words, excluding the Table of Contents, Table of Authorities, Certificate of Compliance, and Certificate of Service.


By   */s/ Christopher T. Sweeney*
    Christopher T. Sweeney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on 28th day of December, 2021, a copy of the foregoing was served on the following persons:

1.    U.S. District Court, Billings Division

2.    Robert L. Stepans
      Ryan R. Shaffer
      James C. Murnion
      MEYER, SHAFFER & STEPANS, PLLP
      430 Ryman Street
      Missoula, MT 59802
      *Attorneys for Plaintiffs*

3.    Jon A. Wilson                 Joel M. Taylor, Esq. (*pro hac vice*)
      Brett C. Jensen               MILLER MCNAMARA & TAYLOR LLP
      BROWN LAW FIRM, P.C.          100 South Bedford Road, Suite 340
      315 North 24th Street         Mount Kisco, NY 10549
      P.O. Drawer 849
      Billings, MT 59103-0849
      *Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

4.    Bruce G. Mapley, Sr.
      3905 Caylan Cove
      Birmingham, AL 35215

By the following means:

|   1, 2, 3   | CM/ECF |  _____ | Fax |
|  _____  | Hand Delivery | _____ | E-Mail |
|     4       | U.S. Mail | _____ | Overnight Delivery Services |

                              By   */s/ Christopher T. Sweeney*
                                   Christopher T. Sweeney