1    Kim Marchwick
     Registered Professional Reporter
2    Certified Realtime Reporter
     Federal Certified Realtime Reporter
3    2601 2nd Ave. N., Suite 4209
     Billings, Montana 59101
4    (406) 671-2307 cellular
     marchwickkim@gmail.com
5

6                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MONTANA
7                      BILLINGS DIVISION
                  _____
8
     TRACY CAEKAERT and CAMILLIA MAPLEY,)
9                                       )
                    Plaintiffs,         )
10        vs.                           ) Case No. CV 20-52-BLG-SPW
                                        )
11   WATCHTOWER BIBLE and TRACT SOCIETY )
     OF NEW YORK, INC., WATCHTOWER      )
12   BIBLE and TRACT SOCIETY OF         )
     PENNSYLVANIA, and                  )
13   BRUCE MAPLEY, SR.,                 )
                                        )
14                  Defendants,         )
                                        ) Motions for Sanctions
15   WATCHTOWER BIBLE and TRACT SOCIETY )
     of NEW YORK, INC.,                 )
16                                      )
                 Cross-Claimant,        )
17                                      )
     BRUCE MAPLEY, SR.,                 )
18                                      )
                 Cross-Defendant,       )
19                  _____
20   ARIANE ROWLAND and JAMIE SCHULZE,  )
                                        )
21                  Plaintiffs,         )
          vs.                           ) Case No. CV 20-59-BLG-SPW
22                                      )
     WATCHTOWER BIBLE and TRACT SOCIETY )
23   OF NEW YORK, INC., and WATCHTOWER  )
     BIBLE and TRACT SOCIETY OF         )
24   PENNSYLVANIA,                      )
                                        )
25                  Defendants.         )

1

2                    _____

                     TRANSCRIPT OF PROCEEDINGS
3                     Tuesday, April 5, 2022
                      9:33 a.m. to 10:44 a.m.
4                    _____

5
              BEFORE THE HONORABLE SUSAN P. WATTERS
6                UNITED STATES DISTRICT COURT JUDGE
          FOR THE DISTRICT OF MONTANA - BILLINGS DIVISION
7

8
                 JAMES F. BATTIN FEDERAL COURTHOUSE
9                      2601 2nd Avenue North
                       Billings, Montana 59101
10

11                   _____

12

                            **APPEARANCES**
13

14   For the Plaintiffs:

15       Robert L. Stepans, Esq.
         Ryan R. Shaffer, Esq.
16       James C. Murnion, Esq. (Appearing via Zoom)
         **MEYER, SHAFFER & STEPANS, PLLP**
17       430 Ryman Street
         Missoula, Montana 59802
18       rob@mss-lawfirm.com
         ryan@mss-lawfirm.com
19       james@mss-lawfirm.com

20
     Also present:  Jessica Yuhas, Paralegal
21

22

23

24

25           Proceedings recorded by machine shorthand
         Transcript produced by computer-aided transcription

1

**APPEARANCES  (Continued)**

2

For the Defendant Watchtower Bible and Tract Society of New
3    York, Inc.

4         Jon A. Wilson, Esq.
          **BROWN LAW FIRM, P.C.**
5         315 North 24th Street
          Billings, Montana 59103-0849
6         jwilson@brownfirm.com

7

For the Defendants Watchtower Bible and Tract Society of New
8    York, Inc., and Watchtower Bible and Tract Society of
     Pennsylvania:
9
          Joel M. Taylor, Esq. (Appearing via Zoom)
10        **MILLER MCNAMARA & TAYLOR, LLP**
          100 South Bedford Road, Suite 340
11        Mount Kisco, New York 10549
          jtaylor@mmt-law.com
12
For the Defendants Watchtower Bible and Tract Society of
13    Pennsylvania:

14
          Gerry P. Fagan, Esq.
15        Christopher T. Sweeney, Esq.
          Jordan W. FitzGerald, Esq.
16        **MOULTON, BELLINGHAM, LONGO & MATHER, P.C.**
          27 North 27th Street, Suite 1900
17        P. O. Box 2559
          Billings, Montana 59101
18        Gerry.Fagan@moultonbellingham.com
          Christopher.Sweeney@moultonbellingham.com
19        Jordan.FitzGerald@moultonbellingham.com

20

21                          **CONTENTS**

22                                                         PAGE

23    Proceedings                                           4

24    Certificate of Reporter                               48

25    Word Indexing                                         49

1        <u>MORNING SESSION, TUESDAY, APRIL 5, 2022</u>

2            (Whereupon, the court convened at 9:33 a.m., with all

3     interested parties present and the following proceedings were

4     had:)

5            THE COURT:  Amanda, would you please call the

6     matters on the calendar.

7            THE CLERK:  Yes, Your Honor.

8            The Court has set aside this time to hear the

9     matters of CV 20-52-BLG-SPW, Caekaert vs. Watchtower Bible and

10    Tract Society of New York, Incorporated, and in Cause No.

11    CV 20-59-BLG-SPW, Rowland vs. Watchtower Bible and Tract

12    Society of New York, New York, Incorporated.

13            This is the time set for a motion hearing.

14            THE COURT:  Okay.  We've also got Watchtower Bible

15    and Tract Society of Pennsylvania as a defendant in each of

16    those cases.

17            All right.  Well, I think I know who everybody is

18    from my cheat sheet that Amanda made for me, but maybe for the

19    record we'll have counsel identify themselves.  So starting

20    with counsel for the plaintiffs in both cases, if you could

21    please identify yourselves for the record.

22            MR. SHAFFER:  Morning, Your Honor.  Ryan Shaffer.

23            MR. STEPANS:  Good morning, Your Honor.  Rob Stepans

24    on behalf of plaintiffs.

25            THE CLERK:  Are your mics on, Counsel?

 1                    MR. STEPANS:  Oh, I apologize; they're not.

 2                    THE CLERK:  Thank you.

 3                    MR. STEPANS:  Good morning, Your Honor.  Rob Stepans

 4      on behalf of plaintiffs.

 5                    THE COURT:  Okay.

 6                    MR. MURNION:  And, Your Honor, this is James Murnion

 7      on Zoom here, just listening in, for the plaintiffs, though.

 8                    THE COURT:  Okay.  And then on behalf of Watchtower

 9      New York.

10                    MR. WILSON:  Your Honor, Jon Wilson here on behalf

11      of Watchtower New York.

12                    THE COURT:  Okay.  And then on behalf of Watchtower

13      Pennsylvania?

14                    MR. SWEENEY:  Chris Sweeney here for Pennsylvania.

15                    MR. FAGAN:  Good morning, Your Honor.  I'm

16      Gerry Fagan.

17                    MR. FITZGERALD:  Good morning, Your Honor.

18      Jordan FitzGerald.

19                    THE COURT:  Okay.  And then I understand Jessica,

20      the paralegal, is here, too.  All right.

21                    Good morning, everybody.  This is the time set for

22      hearing on the plaintiffs' motions for sanctions.  These

23      motions -- a motion was filed in each of the two cases.

24                    THE CLERK:  Sorry to interrupt, did you also make

25      aware of who else is on Zoom, Mr. --

1          THE COURT:  I thought -- oh, yes.  Mr. Taylor,

2    Joel Taylor is on Zoom also.

3          MR.  TAYLOR:  Good morning, Your Honor.

4          THE COURT:  Thank you, Amanda.  I apologize.

5          So we're here for the plaintiffs' motions for

6    sanctions in each of these cases and so who is going to be

7    taking charge for plaintiffs today?

8          MR. STEPANS:  I will, if it pleases the Court, Your

9    Honor.

10          THE COURT:  Okay.  Go ahead, Mr. Stepans.  Thank

11    you.

12          MR. STEPANS:  May I use the lectern?

13          THE COURT:  You may.  That's perfectly fine.

14          MR. STEPANS:  Your Honor, I suppose as an initial

15    matter I would -- plaintiffs filed a motion to supplement.

16    Defendants both objected, but I don't believe I've seen any

17    briefing on that, so I don't know if the Court wants me to

18    speak to that motion or speak to the contents of what

19    plaintiff was attempting to supplement the record with, but I

20    thought I would introduce that topic.

21          THE COURT:  Thank you for reminding me about that.

22          Mr. Wilson, so on behalf of Watchtower New York,

23    what is the basis of your objection?

24          MR. WILSON:  Thank you, Your Honor.

25          The basis of that objection is that the affidavit in

1    issue was dealing with other different issues that are at

2    issue in this case and whether the statements in the affidavit

3    do not have any applicability to the present matter, Your

4    Honor.

5              THE COURT:  Okay.  And on behalf of Watchtower

6    Pennsylvania, what is the basis of your objection?

7              MR. SWEENEY:  Thank you, Judge.

8              We would echo the comments from New York, and we

9    will discuss the substance of that affidavit during our

10   argument to the extent the Court wants us to.  I would also

11   point out that the affidavit is from a representative from the

12   New York corporation, and we're here for a motion for

13   sanctions against the Pennsylvania corporation.

14             So to Mr. Wilson's point I do not believe it is

15   applicable, and it was late filed.  We have not had a chance

16   to respond.

17             THE COURT:  Okay.  Well, for purposes of this

18   hearing, I'm going to grant the motion to supplement the

19   record, and counsel can flesh out their objections or respond

20   to the arguments that -- and with that I mean defense

21   counsel -- the plaintiffs' counsel makes this morning.

22             And, of course, I'll take into consideration the

23   arguments that may go to the weight of the affidavit as it

24   pertains to these motions for sanctions.

25             So you may proceed, Mr. Stepans.

```
 1              MR. STEPANS:  Thank you, Your Honor.

 2              Your Honor, it is -- as it pertains to the

 3    Don Adams' supplement and the affidavit, I would suggest that

 4    the Court that the very reasons that the defendant

 5    corporations are objecting are the reason that the Court

 6    should, in fact, consider this affidavit.  It's extremely

 7    telling that the affidavit was filed for a different purpose

 8    and that is the substance of our argument.

 9              In 1986, Don Adams, who is holding himself out as a

10    representative of the WTNY corporation, submits this affidavit

11    and in it makes very specific contentions about the hierarchal

12    structure of -- in the place in which these two defendant

13    corporations hold.

14              So in 1986, what Mr. Adams did, and I think the

15    contents of that affidavit are very telling, Your Honor,

16    because it's several things.  Number one, Mr. Adams makes

17    assertions that are particular to both WTNY and WTPA and, in

18    fact, if you look at page -- I point the Court's attention --

19    this is document 117, page 3 of 7 in the document.

20              And, Your Honor, what's really important about this

21    affidavit, first of all, it is from the relevant time period,

22    1986; and the second part is that Mr. Adams not only makes

23    assertions by way of affidavit that support plaintiffs'

24    contention that during the relevant time period WTPA was, in

25    fact, involved in a number of things that would bring them
```

1    under the purview of this Court for purposes of jurisdiction.

2              But it's not only that, Your Honor, what he does is

3    point to specific publications.  Publications that we have

4    submitted to this Court.  And what Mr. Adams does is pull

5    quotes from them directly in furtherance of explaining that

6    hierarchal organization to the Court in Bonham County [sic],

7    Texas.

8              So it was certainly a different situation, and

9    certainly there was a different set of assertions that were

10    being made to the Court in that instance compared to what are

11    being made in this particular case.

12              So I'd ask the Court to consider when defendant

13    corporation WTPA says, "Well, we withdrew our motion because

14    these are archaic texts.  They are awkwardly worded.  They

15    build confusion."  But in 1986, Don Adams in an affidavit is

16    quoting verbatim from those same texts in order to tell the

17    court this is a hierarchal organization with WTPA at the top.

18    "Those operating under us do not have the sovereignty or

19    authority to do the things that they are saying."

20              So when they want to hold on to a Kingdom Hall in

21    1986, those assertions pointing to those documents are in no

22    way awkward, clumsy, poorly written, or causing confusion;

23    they are instead being asserted for the certain specific

24    purpose of having the Court recognize that hierarchal

25    structure and cement WTPA's ability to maintain control over

1    that physical property because of the control that they had

2    over the congregations.

3            As I indicated, Your Honor, this page 3 of 7 on

4    document 117, which is plaintiffs' supplement -- motion to

5    supplement on the sanctions, we pulled two quotes from this

6    affidavit.  Those quotes, Your Honor, if we were to pull -- if

7    you go to the next page, page 4, those quotes are pulled

8    directly from the material -- let's see here, "This is

9    organized to accomplish our ministry."

10           I'm not sure if this has been filed, but at any

11   rate, Your Honor, this -- the document "Organized to

12   Accomplish Our Ministry," which was published by WTPA,

13   indicates the use of religious corporations -- excuse me.  The

14   quote that Don Adams pulls is from that document.

15           So then now it's awkwardly worded, and the reason

16   they pulled their jurisdictional motion is because it might be

17   too confusing for us.  I submit to you, Your Honor, this is a

18   critical piece of information.  There is no question that this

19   affidavit was submitted and the purposes for which it was

20   submitted were different.  So --

21           THE COURT:  Can you tell me, in a nutshell, what was

22   that case about?

23           MR. STEPANS:  My understanding, Your Honor, was that

24   there was a congregation in Bonham County, Texas, that was

25   attempting to essentially assert control over their -- over

1    that Kingdom Hall.  And my understanding is that what they

2    were trying to -- there was a power play by a congregation

3    saying these corporations can't -- you know, they aren't in

4    charge of this.

5           So when WTNY and WTPA came back and said, "No, we

6    are in control" -- this is a piece of property, basically, so

7    a Kingdom Hall is the church and the real estate they own

8    around it.  When this local congregation tried to assert

9    itself as having dominion over that, making assertions that

10   were not in line with WTPA and WTNY.

11          Those defendant corporations then said, "No, we're

12   in charge of all of it, and here's how you know:  These

13   publications that we put out in the world, they say exactly

14   what it is.  They say we are at the top and we run the show,

15   and under us is these 95 branches, and we direct them."

16          Is that -- that's about as much as I know, Your

17   Honor.

18          THE COURT:  Okay.  That's in some context for me.

19          MR. STEPANS:  Your Honor, the second thing, I guess,

20   I should address at the front end, and I can do more

21   comparison, but I think that what I'd ask -- I'll come back to

22   the Don Adams' affidavit.

23          Let's go to WTPA's response, Your Honor.  I do have

24   to address this because we identified an incorrect document,

25   and I want to make sure that I -- we did indicate in our

```
 1    brief, our reply brief, that we had indicated an incorrect

 2    document.

 3            So our opening brief we were talking about the

 4    Kingdom Ministry coursebook, and WTPA is correct, I mean they

 5    took a lot of umbrage about it, but it was -- they are

 6    correct.  That is not a -- the actual document was the source

 7    and the substance of a motion to compel that this Court heard

 8    previously.

 9            And that document is the WTPA's 1972 Organization

10    For Kingdom-Preaching and Disciple-Making.  So I apologize to

11    the Court for making that mistake, but the document in

12    question, just to refresh the Court's recollection as it

13    pertains to that motion to compel, James Rowland was deposed

14    in this case early on, and Mr. Rowland identified the 1972

15    Organization for Kingdom-Preaching and Disciple-Making as

16    containing the information that guided and directed him as an

17    elder in the Hardin congregation during his time there.

18            And it wasn't until after Mr. Rowland identified

19    that and plaintiff was able to secure it through other means

20    outside of discovery that WTPA actually turned it over.  Why

21    that's important, Your Honor, is that at the inception of this

22    case WTPA asked this Court to do two things; they asked the

23    Court to dismiss the case against them entirely and to

24    prohibit any discovery from being done at all into that

25    question.
```

1          In support of those two aims, WTPA submitted two

2     items to Your Honor, and those are the affidavits of

3     Mr. Brumley.  It's on the strength of those two affidavits,

4     and not on anything else, that WTPA asked this Court to

5     dismiss the case outright and to prevent plaintiffs from doing

6     any discovery.

7          Subsequent to that, plaintiffs asked for a document

8     by name in discovery.  It was not turned over.  And that is

9     this WTPA's 1972 Organization for Kingdom-Preaching and

10    Disciple-Making.  In a situation like this, Your Honor, where

11    we're forced to play hide-and-seek, and we have to rely on the

12    assertions from these defendant corporations, it's almost

13    impossible to understand how submitting the request to dismiss

14    these cases, and then dragging us through 18 months where they

15    are fighting the discovery, not participating, taking

16    positions that are contrary to their own literature -- and to

17    be honest, Your Honor, I understand the Rule 11 situation

18    as -- you know, we couldn't actually put together a Rule 11

19    letter because we didn't have enough information until

20    October.  So we had been pulled through it for about a year

21    and a half, asking they dismiss it, asking for the documents,

22    and to no avail.

23          That's why we're here, because I think we lose track

24    a little bit of the fact that, you know, my clients, obviously

25    this is pretty delayed justice for them.  And fortunately the

1      opportunity to come bring these cases has been presented.  But

2      here we are, a year and a half, and all we got through is

3      jurisdictional discovery only to have them dismiss it

4      summarily without adequate explanation to the Court as to why

5      the assertions were being made all along by WTPA.

6              In that context, Your Honor, I guess I'd like to

7      point the Court to -- back to those documents and those

8      assertions that WTPA made at the front end.  So this is

9      document 18, and this is defendants' reply brief in support of

10     motion to dismiss for lack of jurisdiction, WTPA page 14 of

11     17.  Okay.  And this WTPA says, quote, starting --

12             THE COURT:  I'm sorry to interrupt.  What

13     document -- are you talking about a CM/ECF document?

14             MR. STEPANS:  Yes, Your Honor.  I'm sorry.  This is

15     the defendants' reply brief in support of motion to dismiss,

16     document 18 -- oh, I apologize.  It is --

17             THE COURT:  In which case?

18             MR. STEPANS:  Let me make sure I've got the right

19     one.  This looks like it's filed in the Caekaert case, Your

20     Honor.  Let me make sure.  Oh, no, excuse me.  This is

21     Rowland; document 18 in Rowland.

22             THE COURT:  Okay.  I have Caekaert up, so give me

23     just a second.

24             MR. STEPANS:  Okay.

25             THE COURT:  Okay.  I've got it.  So direct me to

1    what you're talking about specifically.

2              MR. STEPANS:  Thank you, Your Honor.

3              So this is page 14 of 17, and it is the first full

4    paragraph on that, starting with -- "Starting with plaintiffs'

5    assertion, jurisdictional discovery is necessary to explore

6    the full extent of WTPA's involvement," et cetera.  WTPA says

7    this:  "The Brumley affidavit affirmatively states that WTPA

8    has no contact with congregations of Jehovah's Witnesses

9    located in Montana.  Allowing jurisdictional discovery on that

10   basis would not uncover anything that is already known."

11             So if we look back to Mr. Brumley's affidavit, Your

12   Honor, the -- this is document 14.1.

13             THE COURT:  Yes.  I actually have a hard copy of it

14   here.

15             MR. STEPANS:  Okay.  And I would ask the Court to --

16   I'd point the Court's attention to paragraph 11 and paragraphs

17   14 through 16.  Those are affirmative assertions and

18   representations to this Court.  The commentary from WTPA now

19   is that those are not sanctionable because they are

20   technically true.

21             The contents of that affidavit, Your Honor, if they

22   are "technically true" and then omit all of the important

23   facts, and the corporation asked the Court to dismiss it on

24   that basis, as we indicated in our briefing, it's either

25   unbelievably reckless that WTPA wouldn't go into its own

1   documents and find the materials that we've submitted,

2   including -- and I'll just run through this -- document 96.1,

3   the *Watchtower* April 1, 1971, indicates that it is published

4   by the *Watchtower* Bible and Tract Society of Pennsylvania.

5          Document 96-1 at 945, the *Watchtower*,

6   September 1, 1987, published by Watchtower Bible and Tract

7   Society Pennsylvania.  Document 96-1 at 295, the Kingdom

8   Ministry School Course 1972, compiled and published by the

9   *Watchtower* Bible and Tract Society of Pennsylvania.

10         Document 96-1 at 757, the 1975 Yearbook of Jehovah's

11  Witnesses, corporate publishers, Watchtower Bible and Tract

12  Society of Pennsylvania.

13         The defendant wasn't trying to get the Court to do

14  something else.  The defendant was trying to get the Court on

15  the strength of Mr. Brumley to dismiss the case outright on

16  jurisdictional grounds and not allow any discovery.  As a

17  result, that's either bad faith or it's reckless, and in

18  either case, plaintiffs -- any plaintiffs -- and, you know, my

19  clients are no exceptions to that -- should not be subject to

20  these kind of games in discovery.

21         We should be already probably getting ready for

22  trial.  We should have gone through the discovery by now.  And

23  I would submit to the Court that it wasn't for lack of trying

24  on the plaintiffs' part.  Where we dug up some of this

25  information that should have been provided to us probably in

1    initial discovery, the efforts that we made, I think there

2    were seven or eight letters back and forth over the period of

3    time leading up to the last sanctions hearing that we had.

4            So subject to any questions from Your Honor, I think

5    our briefing covers the rest of it, but I wanted to cover

6    those couple items.  And subject to any questions, Your Honor,

7    I guess I'd reserve just a little bit of time to reply if it

8    would be okay.

9            THE COURT:  Sure.  And I don't have any questions of

10   you right now.

11           MR. STEPANS:  Thank you, Your Honor.

12           THE COURT:  And okay.  Mr. Sweeney, you are

13   representing WTPA.  You may go ahead.

14           MR. SWEENEY:  Thank you, Judge.

15           As an initial matter, Mr. Stepans, I believe, was

16   referring to the Rowland case.  I probably should have called

17   him.  My references are going to be to the documents in the

18   Caekaert case.  So if you need a second to switch over to

19   that, my apologies for any inconvenience there.

20           THE COURT:  That's okay.  Let me get back to

21   Caekaert.  All right.  I'm back at the Caekaert case.

22           MR. SWEENEY:  Thank you, Judge.

23           I want to spend some time this morning going through

24   what the plaintiffs actually argued in both their opening

25   brief as well as their reply.  And some of this is -- was

 1     covered in our response, but given the gravity of the
 2     situation, I think it's important that we cover these points
 3     in detail.
 4           And it's going to become clear, if it hasn't already
 5     from the briefing, that the motion for sanctions has
 6     absolutely no merit, because there has been no attempt to
 7     trick the Court, conceal facts, be deceptive, and all of the
 8     other words that the plaintiffs used to describe the
 9     Pennsylvania corporation's manner in which they have handled
10     the motion to dismiss.
11           So I want to take a little time to discuss what they
12     actually argued in their motion.  As Mr. Stepans pointed out,
13     and as the Court is aware, in support of the motion to dismiss
14     for lack of personal jurisdiction, the Pennsylvania
15     corporation submitted two affidavits from Mr. Brumley.  And
16     the plaintiffs' claim seems to be that the affidavits contain
17     a bunch of misrepresentations.
18           And in making this argument in their brief, the
19     plaintiffs completely misinterpret -- not even misinterpret --
20     they misquote and misrepresent what Mr. Brumley actually said
21     in his affidavits, and I think it's important to discuss what
22     he said.
23           Now, plaintiffs' argument, the first argument they
24     have, with respect to Brumley's affidavit, plaintiffs claim
25     that he falsely asserted that WTPA does not publish

1   copyrighted material.  Then the plaintiffs point to a

2   document, which is 21-1 in the Caekaert matter, which is a

3   printout of a website, to argue that WTPA does, in fact,

4   publish copyrighted material, and they are, therefore, lying

5   in Mr. Brumley's affidavit.

6        Here's the problem with that argument.  What Brumley

7   actually testified to was that WTPA does not author the

8   substantive content or print hard copies of the books,

9   magazines, brochures, and tracts referred to above.  On the

10  contrary, the copyrighted materials are published by

11  codefendant Watchtower Bible and Tract Society of New York, a

12  separate corporation.

13       That's what Mr. Brumley actually said in his

14  affidavit.  Document 21-1, which is the website states that

15  WTPA is, quote, used by Jehovah's Witnesses to support their

16  worldwide work, which includes publishing Bibles and

17  Bible-based literature.  Plaintiffs have read this incorrectly

18  to believe that it states that the Pennsylvania corporation is

19  publishing the Bibles and Bible-based literature and,

20  therefore, is lying.

21       The fact is this says "Jehovah's Witnesses and their

22  worldwide work that includes publishing Bibles and Bible-based

23  literature."  Brumley submitted his second affidavit and

24  cleared this up.  In his second affidavit, which was document

25  26, he stated, quote, WTPA and Jehovah's Witnesses are not one

1    in the same, and the support WTPA provides to Jehovah's

2    Witnesses includes owning the copyright to the Bible and other

3    Bible-based materials and funding international humanitarian

4    relief matters.

5              This reference to the website that talks about the

6    Jehovah's worldwide work in publishing Bibles is not stating

7    that Pennsylvania publishes the Bibles and does not contradict

8    Philip Brumley's affidavit whatsoever.  So their first

9    argument is flat wrong.

10             We also pointed this out in our brief, and I would

11   note that in the plaintiffs' reply, they seemed to have

12   abandoned that argument.  They make no mention of it, nor do

13   they address our counterargument that what this website said

14   is not contradictory to Mr. Brumley's argument.  That seemed

15   to be abandoned because it was not brought up in the reply.

16             Plaintiffs then move on to point to two letters,

17   which are document 21-3 and 21-4.  And plaintiffs again

18   misrepresent Brumley's testimony in its affidavits to claim

19   plaintiffs' version of Brumley's testimony is that Brumley

20   asserted that "WTPA does nothing more than passively hold

21   copyrights and provide international humanitarian aid."

22   That's not what Brumley said.  These affidavits are short.

23   It's not hard to find what he actually said.

24             Plaintiffs then point to some letters to try to

25   convince the Court that Brumley was lying.  Here is what

1   Brumley actually said:  "WTPA exists to provide certain

2   business needs of Jehovah's Witnesses, including, among other

3   things, holding copyright to books, magazines, songs, and

4   videos.  It also provides international humanitarian aid to

5   communities after natural disasters."

6           In his affidavit, Mr. Brumley provided examples of

7   work that WTPA does.  He did not purport to provide an

8   exhaustive list of what WTPA does.  Indeed he says they --

9   WTPA does these things, among other things.  And I'm going to

10  talk in a second what plaintiffs should have done when they

11  read his affidavit.

12          It's important to note, though, that the plaintiffs'

13  request for sanctions is continually based on their

14  misrepresentation of Mr. Brumley's testimony in his affidavit.

15  They go on to cite a letter, which is 21-3 in Caekaert, to

16  argue that he is not telling the truth.

17          This is a letter from 1970 from WTPA's past

18  president, who I understand is now deceased, to an individual

19  in New York explaining that another person in New York was not

20  fit to be associated with the Bethal family.  This was an

21  internal communication.  It wasn't sent to Montana, has

22  nothing to do with personal jurisdiction in Montana, and has

23  -- in no way contradicts what Mr. Brumley said.

24          They similarly cite 21-4 to support their argument.

25  This is a May 2002 letter from the Pennsylvania corporation to

1    the BBC television network regarding how Jehovah's Witnesses

2    handle sex abuse matters.  Once again, I don't know why this

3    is cited, but nothing in this contradicts what Mr. Brumley

4    said in his affidavit nor does it do anything to establish

5    personal jurisdiction in Montana.

6         And then, briefly, they cite five more letters,

7    which I'll touch on just very briefly, to claim that

8    Mr. Brumley is lying, and they are 29-1 through 29-5.  In

9    their argument, they claim that they found additional evidence

10   to prove that WTPA was lying and to prove that WTPA is

11   incorrect when it states that it does nothing more than hold

12   copyrights and provide humanitarian aid.

13        Once again, WTPA and Mr. Brumley have not taken the

14   position that the only thing they do is hold copyright and

15   provide humanitarian aid.  That is plaintiffs'

16   mischaracterization of Mr. Brumley's testimony.  I've read for

17   the Court what he actually said.

18        Document 29-1 is a letter from a writing committee

19   that was signed by WTPA and was sent to Australia.  29-2 is a

20   letter from WTPA's office in London to elders in England.

21   29-3 is a 1995 letter that was sent to all elders in the

22   United States that concerns applying for tuition-free Bible

23   missionary in New York.

24        29-4 was another letter in England from 1995.  And

25   29-5 is some court filing relating to the Holocaust in

1    retaining -- in gaining compensation for Jehovah's Witnesses.

2    Beyond me why these things are cited, but plaintiffs argue

3    that all of these documents we just went through show that

4    Mr. Brumley is lying.  And it doesn't take a very close

5    examination to show that nothing in these documents

6    contradicts what Mr. Brumley said in his affidavits.

7          Now, in their reply, the plaintiffs again double

8    down, and they just say Mr. Brumley's claims -- his testimony

9    is false.  We've explained in our response why that's not

10   true.  They double down, they say it's false, they say it's

11   misleading.  Then they acknowledge that it's technically true,

12   but they state that it was intentionally crafted to convince

13   the Court of something that was never true and "to trick the

14   Court" -- those are the words they use in their brief.  That's

15   not the case because there is nothing in that affidavit that's

16   inaccurate.  There is nothing in that affidavit that's untrue.

17         We have a lot of argument from plaintiffs, but no

18   evidence to contradict what Mr. Brumley said in his affidavit.

19   It should also be pointed out, and this cannot be lost on the

20   Court, if the plaintiffs wanted more information from

21   Mr. Brumley, other than the two, two-page affidavits he

22   submitted, they should have deposed him.

23         In fact, in March of 2021, plaintiffs were seeking

24   to do just that.  By then his two affidavits had been filed,

25   everybody knew what they had said, and plaintiffs had ample

1    opportunity to depose him to get any clarification they

2    wanted.  And, in fact, in September of 2021, we weren't

3    counsel for the Pennsylvania corporation, but I understand a

4    deposition for Mr. Brumley was actually noticed by the

5    plaintiffs and then unilaterally cancelled by the plaintiffs.

6    They had ample opportunity to clarify anything in his

7    affidavit and they chose not to.

8              They seem to argue -- plaintiffs seem to argue that

9    if an opposing affidavit does not contain facts that are good

10   for them, then the affidavit is subject to sanctions as is the

11   author.

12             The purpose of an affidavit is to set forth true

13   facts.  It is not meant to be an exhaustive recitation of all

14   facts the author of the affidavit knows or an exhaustive list

15   of information the plaintiff wants to know.  That is what

16   depositions are for.

17             THE COURT:  Right.  But in the context of WTPA's

18   motion to dismiss for lack of jurisdiction, WTPA was relying

19   primarily, if not solely, on Brumley's affidavits without any

20   clarification or supplementation that would be provided to the

21   Court.  The Court obviously doesn't go to depositions, so -- I

22   haven't mischaracterized that, have I?

23             MR. SWEENEY:  No.  And Pennsylvania's position is

24   that there would be nothing learned during a deposition that

25   would have contradicted or supported an objection to the

1    motion to dismiss.  The affidavit was sufficient.  The point

2    I'm making is, based on plaintiffs' argument that it was

3    misleading and trickery and deceiving because it was

4    incomplete, they could have certainly talked to Mr. Brumley

5    and gotten more information from him.  Our position is, even

6    if they had done that, the arguments to dismiss for lack of

7    personal jurisdiction would still be as strong, but they chose

8    not to do so.

9           Now, at the beginning of Mr. Stepans' argument, he

10   pointed to a document that was incorrect in his opening brief

11   and acknowledged that it was the wrong document, and I think

12   he said "We've take a lot of umbrage over that."  And I want

13   to touch on that just briefly, because it gets into the

14   document they actually meant, according to them.

15          They refer to, in their opening brief, which they

16   admit was the wrong document, a 1990 -- 1972 Kingdom

17   Ministries School Course Book.  And they call this "A

18   particularly egregious example of WTPA's hiding evidence,"

19   when in fact WTPA had produced that.  It was the first

20   document they produced in November 2020, plaintiffs had it all

21   along.

22          But I bring this up because this is a perfect

23   example of, frankly, the sloppy and unsubstantiated

24   allegations that the plaintiffs are levying against the

25   Pennsylvania corporation in support of their motions for

1    sanctions.  These arguments are not thought through.  And so

2    in their reply, they change tactics and instead point to a

3    1972 "Organization for Kingdom-Preaching and Disciple-Making."

4            What Mr. Stepans did not tell you when he explained

5    to you that WTPA wouldn't produce the document, what

6    Mr. Stepans didn't tell you was that plaintiffs already had

7    it.  Plaintiffs produced it in January of 2021, before

8    Mr. Rowland was deposed, and then after the deposition it was

9    produced back to them by the Pennsylvania corporation.

10           The Court will recall that as part of the

11   jurisdictional discovery, there was an order from the Court

12   limiting discovery about the corporate relationship from 1973

13   to either 1992 or 1995.  This book was obviously outside of

14   that window.  So there was a disagreement as to whether this

15   document was produced.

16           But the important part here, the plaintiffs already

17   had it, and ultimately it was produced by the Pennsylvania

18   corporation anyway so it was produced twice, and that was not

19   acknowledged to you by the plaintiffs.

20           THE COURT:  Well, they did say they had it before

21   the Rowland deposition but not from WTPA.

22           MR. SWEENEY:  Right, they did collect it.  Okay.

23   And if they said that, my apologies.

24           THE COURT:  They did say that.

25           MR. SWEENEY:  I just wanted to be clear, that they

 1   had it, there's been no prejudice to them, and, of course, the

 2   reasonable and valid reason why it wasn't produced was because

 3   of the Court's order that Pennsylvania understood to believe

 4   that this document was outside of the discovery window.

 5           THE COURT:  So what -- why -- when was this

 6   organization document?  When was that published?

 7           MR. SWEENEY:  1972 is my understanding.

 8           THE COURT:  Okay.  So the year before the window?

 9           MR. SWEENEY:  Correct.  And I'm not really sure

10   about the importance of this book anyways.  My understanding

11   is this book went to all Jehovah's Witnesses to acquaint them

12   with how congregations work.  It was disseminated by the New

13   York corporation, not the Pennsylvania corporation.  It

14   plainly states on the front of it that PA, the Pennsylvania

15   corporation holds the copyright, but New York published this.

16           It's not clear why we are even talking about that

17   book because there is nothing in that that either contradicts

18   Mr. Brumley's testimony or that really establishes personal --

19   I don't see how there is a connection between the personal

20   jurisdiction of Pennsylvania and this book.

21           Now, let's keep in mind what we're doing here, the

22   plaintiffs are asking for sanctions against both Mr. Brumley

23   and Mr. Taylor.  They throw Mr. Taylor in the mix, and I'm not

24   sure why.  The way I understand their argument, he was an

25   attorney, he should have recognized that Brumley's affidavit

1     was full of lies and, as an attorney, should have corrected

2     them.  As I've spent time discussing and I argued in our

3     response, there is nothing inaccurate in Mr. Brumley's

4     affidavit.

5             But Mr. Taylor's actions in this matter have been

6     extremely limited.  He appeared pro hac, he appeared at the

7     deposition, and he's appearing at this hearing.  In their

8     briefs, they seem to argue that because Mr. Taylor was

9     involved in some other cases involving the New York

10    corporation, he should have taken that knowledge and corrected

11    misstatements in Brumley's affidavits.  We have covered this;

12    there was no misstatements.

13            But the other lawsuits didn't involve WTPA.  They

14    didn't involve Mr. Brumley.  And the only one that involved

15    Mr. Taylor was the Nunez case.  Plaintiffs have failed to

16    establish how Mr. Taylor's involvement in another case

17    representing another party is a basis for sanctions in this

18    case, especially since they have been unable to identify any

19    sanctionable conduct in the first instance.  So we're

20    scratching our head as to Mr. Taylor, because that's our

21    position with respect to him.

22            Now, this Don Adams' affidavit -- Judge, at the

23    beginning of this, I understand you granted the motion to

24    supplement, and I think I may have heard you say that we can

25    flesh out our objections later.  Did you want me to state our

1    objections, even though you've already granted it, or should I

2    just talk about the substance?

3              THE COURT:  Well, I thought if you wanted to make

4    further argument on your objection for purposes of the record,

5    you could or we can just -- I have granted the motion and so

6    if you wish to just get into the substance, you can do that,

7    too.

8              MR. SWEENEY:  Well, let me just make our record

9    then.  So our objection, of course, it was late filed.  We

10   have not had an opportunity to respond to it.  We have not had

11   an opportunity to talk to Mr. Adams -- I don't even know if

12   Mr. Adams is alive.  And Mr. Adams was, as he testified in his

13   affidavit, a representative of the New York corporation, not

14   the Pennsylvania corporation.

15             Nowhere in his affidavit does he claim to have

16   personal knowledge of the Pennsylvania's corporation business

17   or how it does business.  And we don't even know what the

18   purpose of that affidavit was.  Mr. Stepans' understanding of

19   the case is similar to mine, it was 40 years ago almost.

20             So we aren't all sure even what the case was about.

21   We don't even know what the purpose of the affidavit was.  So

22   to cherry-pick an affidavit from somebody we don't have a

23   chance to talk to and was late filed we believe is improper

24   and should not be considered by the Court.

25             Now as to the substance of Mr. Adams' affidavit, I

1  don't see how that pertains to the motion to dismiss for lack

2  of personal jurisdiction.  He, again, claims that the church

3  is hierarchal, but there is no legal relationship between the

4  New York corporation and the Pennsylvania corporation.

5           We've produced all the corporate records going back

6  to the 80s.  There's no legal relationship between the two.

7  So it's not clear how Mr. Adams' affidavit in a Texas case

8  somehow shows that Pennsylvania corporation is subject to

9  personal jurisdiction in Montana.

10          So all we have to say about that is that it seems

11  completely irrelevant and other than our objections, we'll

12  leave it at that.

13          THE COURT:  Okay.

14          MR. SWEENEY:  I want to talk about the law for a

15  minute.  In particular, I want to start with Rule 11.  So it's

16  clear that WTPA withdrew its motion to dismiss and took

17  advantage of the safe harbor provision of Rule 11.

18          Last fall the plaintiff sent a letter to the

19  Pennsylvania corporation and threatened sanctions under Rule

20  11, specifically under Rule 11, if the motion was not

21  withdrawn.  They invoked the 21-day safe harbor provision.

22          That safe harbor provision provides that a motion

23  for sanctions cannot be filed under Rule 11 if the challenged

24  filing is withdrawn within 21 days after being provided notice

25  of the intended motion for sanctions.  And as we pointed out

1   in our brief, the advisory committee states the safe harbor

2   protects a party against a motion for sanctions if the

3   challenged paper is withdrawn.

4           Now, plaintiffs' counsel specifically said they were

5   going to file a motion for Rule 11 sanctions if the motion to

6   dismiss was not withdrawn.  Relying on plaintiffs'

7   representations and the safe harbor rule, Pennsylvania

8   corporation did withdraw the motion.  This was not an

9   admission that the motion was without merit.

10          Pennsylvania corporation believes the motion had

11  merit.  They have good-faith arguments that they are not

12  subject to jurisdiction in Montana; however, when they were

13  faced with an uncertain ruling on that motion, as well as a

14  threatened Rule 11 motion for sanctions, the decision was made

15  to withdraw the motion and move forward on the merits.

16          And they did so, knowing that they would be --

17  Pennsylvania corporation would be protected from sanctions

18  under Rule 11 which was as represented by the plaintiffs.

19  Then as soon as that motion was -- as soon as the motion to

20  dismiss was withdrawn, the plaintiffs filed a motion for

21  sanctions anyways under 28 U.S.C. 1927 and the Court's

22  inherent power to sanction.

23          Their Rule 11 threat was simply a Trojan horse to

24  trick Pennsylvania corporation to withdraw the motion and ask

25  for sanctions anyways.  They concealed they were going to do

 1   that.  When they asked for Rule 11 sanctions or told

 2   Pennsylvania they were going to do that, there's no mention

 3   that a motion for sanctions would be filed regardless whether

 4   the safe harbor provision was utilized.

 5          So they allowed the Pennsylvania corporation to

 6   withdraw the motion, and then they sprung their motion for

 7   sanctions on them anyways.  And the basis for the sanctions

 8   they now seek are exactly the same as they claimed they were

 9   going to seek under Rule 11.  It's not -- it's bad faith to

10   invoke Rule 11, let somebody withdraw a motion, and file a

11   motion for sanctions anyway, and the Court should not tolerate

12   this.

13          Frankly, it would defeat the safe harbor provision.

14   Rule 11 allows parties to withdraw challenged papers that may

15   run afowl of the rule by giving them the protection of the

16   safe harbor.  The Ninth Circuit says this must be strictly

17   followed.  It's very simple.  Why would a party ever withdraw

18   a challenged paper under Rule 11 if they were going to face

19   sanctions anyways?

20          Especially, as the plaintiffs have done here, the

21   withdrawal of the motion is going to be used to support a

22   request for sanctions later.  And that's what the plaintiffs

23   have done here.  They said, "Withdraw your motion to dismiss

24   or file Rule 11."  We said, "All right.  We'll take advantage

25   of the safe harbor."

1          We withdraw.  They filed the motion for sanctions

2   anyways, and then argue the fact that we withdrew the motion

3   as evidence that the motion didn't have merit in the first

4   place.  That would completely defeat Rule 11 safe harbor, if a

5   party can invoke it and be sanctioned for it anyways as well

6   as using the withdrawal of the motion to support the motion

7   for sanctions under 1927 or the Court's inherent powers.  The

8   safe harbor was utilized.  That should be the end of the

9   question.  And on that basis alone, the motion for sanctions

10  should be denied.

11          Now, the plaintiffs also make the argument that

12  Mr. Brumley and Mr. Taylor should not get the benefits of the

13  safe harbor.  And the language of Rule 11 defeats this

14  argument.  Rule 11 applies to those who present to the Court a

15  pleading, written motion, or other paper, or someone who later

16  advocates for one of those things.

17          Obviously, Mr. Brumley signed an affidavit, and

18  that's a large part of the plaintiffs' allegations.  With

19  respect to Mr. Taylor, they argue that he advocated for it by

20  not correcting it.  Rule 11 doesn't just apply to those who

21  sign papers, and neither does the safe harbor.

22          Plaintiffs seem to argue that there is a group of

23  attorneys that can be sanctioned under Rule 11 but aren't

24  entitled to the protection of the safe harbor, and that's

25  obviously not the case.  They threatened sanctions against

1    Mr. Brumley and Mr. Taylor under Rule 11, they invoked that

2    process, and Mr. Brumley and Mr. Taylor are likewise entitled

3    to the safe harbor of Rule 11.

4         Now, with respect to the Court's inherent power to

5    sanction as well as 1927, the plaintiffs hope the Court

6    ignores the safe harbor, Rule 11, and just sanctions them

7    anyway, but neither of those are applicable.  The standard for

8    sanctions under both the Court's inherent power and 1927 are

9    similar.  The Ninth Circuit has said that sanctions may be

10   awarded when a party is acting in bad faith, vexatiously,

11   wantonly or oppressive reasons.

12        Under 1927 an attorney may be sanctioned if the

13   attorney multiples proceedings unreasonably and vexatiously.

14   Both essentially require a finding of bad faith, and bad faith

15   is warranted or found when an attorney knowingly or recklessly

16   raises a frivolous argument or argues a meritorious claim for

17   the purposes of harassing an opponent.  Neither are the

18   case -- neither is the case here.

19        Pennsylvania corporation filed a motion to dismiss.

20   It's true that they objected to jurisdictional discovery, but

21   I'm sure as this Court knows, and I think all the attorneys in

22   the room know too, it is common and probably usually the case

23   that when jurisdictional discovery is sought, the opposing

24   party objects to such request.

25        Objecting to jurisdictional discovery is not bad

1    faith.  Similarly, as we have spent some time this morning

2    discussing and as is in our brief, plaintiffs have not pointed

3    to anything that Pennsylvania corporation has stated that is

4    inaccurate, untrue, misleading, deceiving, or trying to trick

5    the Court.

6         The bottom line is, Your Honor, when it comes back

7    to the Brumley affidavit, which seems to have been the thrust

8    of the argument here, the plaintiffs chose not to depose him.

9    And had they wanted clarification of what he said, they

10   certainly could have done that and supplemented their record,

11   and they chose not to do so.

12        Mr. Brumley has not said anything untrue.

13   Mr. Taylor certainly hasn't said anything that's untrue.

14   Pennsylvania corporation has not acted in bad faith

15   whatsoever.  And so we would submit that the motion for

16   sanctions should be denied at a minimum because the safe

17   harbor Provision of Rule 11 was complied with, but even if the

18   Court were to get beyond that, there is no bad faith by

19   Pennsylvania corporation.  The motion to dismiss was made in

20   good faith, and the motions for sanctions should be denied.

21        THE COURT:  Thank you, Mr. Sweeney.

22        And I assume, Mr. Wilson, you're just here

23   representing your client; you don't have anything to argue

24   particularly.

25        MR. WILSON:  Correct, Your Honor.

```
 1                    THE COURT:  Okay.  Thank you.

 2                    Mr. Stepans, you may rebut.

 3                    MR. STEPANS:  Thank you, Your Honor.

 4                    MR. WILSON:  Your Honor, sorry to interrupt.  It

 5       looks like maybe Joel has something to say.

 6                    THE COURT:  Okay.  Well, I'll let him speak before

 7       you rebut, Mr. Stepans.

 8                    MR. STEPANS:  Sure.

 9                    THE COURT:  Go ahead, Mr. Taylor.

10                    THE CLERK:  Mr. Taylor, do you have something to say

11       to the Court?

12                    MR. TAYLOR:  We lost audio for a second at the

13       speaker lectern but I can hear you fine.

14                    THE CLERK:  Okay.

15                    THE COURT:  Okay.  So is that just what you wanted

16       to tell us, Mr. Taylor, what that you'd lost audio?

17                    MR. TAYLOR:  Yes, Your Honor.  Of course if the

18       Court has any questions for me, I'm available to answer them

19       as the Court wishes also.

20                    THE COURT:  Okay.  Thank you.  I don't have any

21       questions of you at this time.

22                    Mr. Stepans.

23                    MR. STEPANS:  Thank you, Your Honor.

24                    Your Honor, on the publishing as it pertains to the

25       affidavit of Mr. Brumley, so if we go back to Mr. Brumley's
```

1    affidavit, this is, let's see, paragraphs 14, 15, and 16.

2            THE COURT:  And that's document 14-1, correct?

3            MR. STEPANS:  That is correct, Your Honor.

4            THE COURT:  Okay.

5            MR. STEPANS:  Those three, in particular No. 15,

6    "WTPA does not author the substantive content or print hard

7    copies of the books, magazines, brochures, and tracts referred

8    to above."  So, I mean, I did not concede that this was

9    technically true.

10           Defendants are saying it's technically true.  I'm

11   saying it could technically be true that that at this moment

12   in time is accurate, but that it has nothing to do with the

13   substance and contents of this case.

14           So if that's just an informative piece of

15   information that they would like to give to the Court that has

16   no bearing whatsoever on the question of jurisdiction as it

17   pertains to the facts that are present in this case, I submit

18   to you, Your Honor, that that is bad faith.  There is no other

19   reason to submit it to you.

20           The Brumley affidavit -- let's see, so once again,

21   document 14-1, and this is paragraph 13, "WTPA exists to

22   provide certain business needs of Jehovah's Witnesses

23   including, among other things, holding copyrights, et cetera,"

24   and then it goes on to explain.  What does that have to do

25   with this case?

1          If we're supposed to go depose Mr. Brumley and find

2     out the nature of all those things, why are they submitting

3     that to you, Your Honor, if not to tell you that WTPA doesn't

4     do what we're saying, it does something else.

5          Mr. Brumley's affidavit, paragraph 10, "WTPA has no

6     contact with congregations of Jehovah's Witnesses located in

7     Montana."  If we could go back to the documents I referenced,

8     which I didn't hear Mr. Sweeney refer to, and those are

9     documents 96-1 that I read out loud.

10          Each one of those indicates that those are published

11     by WTPA.  By extrapolation, the assertion is made that these

12     materials are used and disseminated in order to provide

13     direction to the congregants and the elders.  That's the

14     assertion that has been made, that they go out worldwide.

15          I submit to you, Your Honor, that when Mr. Brumley

16     says that, quote, WTPA has no contact with congregations of

17     Jehovah's Witnesses located in Montana, that is not an

18     accurate statement based on the materials that we have, the

19     documents that indicate unequivocally that WTPA published them

20     straight up, and those are 96.1 that I referred to.

21          Document 96.1 at 11 -12 is WTPA's articles of

22     incorporation as amended in 1945.  Those articles appear to

23     still be in play and certainly they comport with what

24     Mr. Adams said in 1986.  In the articles of incorporation, and

25     I'll quote just a few, Your Honor, because I think this is

1    pretty important language in the context of Mr. Brumley's

2    affidavit:

3         "The purposes of this society are to act as the

4    servant legal worldwide governing agency for the body of

5    Christian persons known as Jehovah's Witnesses."  Goes on to

6    many other things, including "to print and distribute Bibles

7    and to disseminate Bible truths in various languages by means

8    of making and publishing literature containing information in

9    common explaining Bible truths and prophecies.  To authorize

10   and appoint agents, servants, employees, teachers,

11   instructors, evangelists, missionaries" -- okay.

12        We go on -- let's see, "To establish and maintain

13   private Bible schools and classes, to provide and maintain

14   homes, places, and buildings for gratuitous housing of such

15   students, lecturers, teachers, ministers.  To support,

16   maintain, and send out to various parts of the world Christian

17   missionaries, teachers, and instructors in the bible and Bible

18   literature."  So they do all of these things; and Mr. Brumley

19   says they basically do nothing, they just hold on to the

20   copyrights.

21        Again, Your Honor, I would go back to reckless or

22   bad faith.  I want to be honest, I had no hope that this

23   motion would be pulled out under Rule 11, but I don't know

24   what to do other than come to the Court and ask for sanctions

25   in this situation, Your Honor.

1          As we laid out in our brief, where two affidavits

2    are filed, and it is on the strength of those affidavits --

3    not some other explanation, not some other extenuating

4    circumstances, not some additional information -- it's on the

5    basis of the assertions in that that they ask to be dismissed

6    outright and for us not to do any discovery.

7          The 1972 document, if the Court recalls, and

8    Mr. Sweeney's firm was not in the case at that point in time,

9    but if you remember, we held a motion to compel hearing.  The

10   evidence was clear that the 1972 document was, in fact, being

11   used well beyond 1973, into the 80s, in the Hardin

12   congregation.

13         By all accounts there was not a new edition that was

14   turned out in '73 or '74 and so that was the document that was

15   in play at that point in time in Hardin, and it fell within

16   that timeframe.

17         Your Honor, going back to Mr. Adams' affidavit,

18   this -- and so Mr. Adams' affidavit in our motion to

19   supplement, if you would -- if I could point the Court's

20   attention to paragraph 6.

21         THE COURT:  Of the affidavit or your motion?

22         MR. STEPANS:  Of the affidavit, Your Honor, I'm

23   sorry.

24         THE COURT:  Okay.  I'm there.

25         MR. STEPANS:  Okay.  "To implement their decisions

1    the governing body uses a hierarchal organization together

2    with corporate entities when appropriate to accomplish it's

3    worldwide work of teaching and declaring the good news," et

4    cetera, et cetera.

5              "The principal corporation used by the governing

6    body is the Watchtower Bible and Tract Society of

7    Pennsylvania."  Paragraph 7, under the *Watchtower* Bible and

8    Tract Society of Pennsylvania the governing body directs 95

9    branches through branch committees that report their progress

10   to the governing body and implement the directives in a

11   uniform manner.

12             Here the cite is very important, Your Honor.  He

13   cites to "see organized to accomplish our ministry, pages 26

14   and 27."  I'll go to those.  "This is organized to accomplish

15   our ministry."  It is a WTPA document, Bates 028731 through

16   028954.  Take the Court to page 26, so this was -- 26 and 27.

17   This is what Mr. Adams cites to.

18             THE COURT:  Is that document filed in the Court

19   record?

20             MR. STEPANS:  I do not believe it is, Your Honor.

21   The quote is -- the excerpts are via Mr. Adams' affidavit and

22   our supplement, so these excerpts -- I'm going to go a little

23   beyond it, if that's okay with Your Honor, it's to continue

24   this sentence.  Okay.

25             Under -- this is page 26 and the heading is, "Use of

1   Religious Corporations.  It has proved to be the course of

2   wisdom for the faithful slave to organize certain corporations

3   that are recognized by the laws of various countries.  These

4   religious corporations own and operate printing facilities

5   that produce and distribute Bibles and Bible literature on a

6   worldwide basis for use in the Kingdom Ministry.

7          "The first in time and the principal corporation

8   used in this way is the *Watchtower* Bible and Tract Society of

9   Pennsylvania.  The *Watchtower* Society has extended its works

10  worldwide, establishing branch offices in various countries.

11         "Also in compliance with local government

12  regulations, a number of other religious societies have been

13  legally formed, such as Watchtower Bible and Tract Society of

14  New York and the International Bible Students Association.

15         "All these legal instrumentalities cooperate with

16  one another.  These and other legal corporations are used by

17  the modern-day governing body of Jehovah's Witnesses to

18  facilitate the preaching of the good news worldwide and care

19  of the spiritual needs."

20         Your Honor, in 1986, Mr. Adams asserts to the Court,

21  unequivocally, that that's the hierarchal structure of this

22  organization, that WTPA is the first in line, that all of them

23  look to WTPA.  Those are the assertions from Mr. Adams.  He's

24  quoting from the material that we have asserted is exactly the

25  basis for the jurisdiction -- for jurisdiction to be

1    appropriate.

2            As it pertains to Rule 11, Your Honor, and the

3    request for sanctions, I have to be honest, I did not -- I

4    told Your Honor that I don't like to be in here on discovery

5    disputes, and I think you may at some point not believe me

6    because here we are again.

7            But in a situation such as this, where we are so

8    reliant on the good faith of defendants to come forward with

9    this information where they have asked this Court to rely on

10   these affidavits, without question, in order to dismiss the

11   case, prevent us from doing discovery, and finding these

12   facts, it's my position that as a result of that -- because

13   they ask the Court to do that, because they obstructed

14   discovery, because we're 18 months in, that I don't know what

15   the proper sanction would be exactly, but I am in a position

16   to come here and ask the Court whether it is appropriate

17   because based on everything that I've seen, it can only be

18   recklessness or bad faith that leads us to where we're at

19   right now as opposed to getting ready for trial.

20           So with respect, Your Honor, and subject to any

21   other questions, I submit this to the Court reluctantly in

22   this fashion, but without any other option as to how to know

23   that we are going to be able to proceed in this case and rely

24   on the representations that are made from these corporations.

25           Thank you.

1           THE COURT:  Thank you.

2           Well, I will deem the motion submitted, and

3    Mr. Taylor's got his hand up again.

4           MR. TAYLOR:  Your Honor, if I might have just two

5    minutes of the Court's time?

6           THE COURT:  All right.  Go ahead.

7           MR. TAYLOR:  As Your Honor is aware, prior to the

8    current law firm representing the Pennsylvania corporation,

9    both corporations were represented by the same counsel.  My

10   understanding is that the publications cited in the Don Adams'

11   affidavit were produced to plaintiffs' counsel, along with

12   about 70,000 other pages of documents.

13          And to the uninformed, Mr. Adams' affidavit could be

14   misunderstood.  Mr. Adams is talking about both about the

15   religious structure of the faith and also the corporate

16   structure.

17          In the religious structure of the faith, he

18   describes a hierarchy.  And he says that "There is a religious

19   governing body which is not one in the same as the board of

20   directors."  And then he also describes "branches which are

21   religious constructs, not corporate constructs."

22          Interestingly, if plaintiffs' counsel had kept

23   reading in the Don Adams' affidavit, it would explain in the

24   very following paragraphs that the New York corporation is the

25   corporation responsible for interaction with Jehovah's

1    Witnesses in the United States.  It's the very next paragraph

2    in that affidavit, but he doesn't refer to it because it's

3    inconvenient.

4            But it's distinction between the religious and

5    corporate that it's confusing.  And on behalf of the New York

6    corporation, it has not contested jurisdiction, and indeed,

7    the documents that were produced by the Hardin congregation,

8    the actual congregation in Montana, all refer back to the New

9    York corporation.

10           In fact, the letter that formed the corporation for

11   the Hardin congregation is indeed a New York letterhead.  It

12   is not a Pennsylvania corporation.  And so this confusion that

13   arises between the religious construct and the corporate

14   construct is why we have this confusion.  Never has there ever

15   been an attempt to engage in any bad faith, and certainly I

16   have never made any representations to this Court other than

17   the one that I'm making right now.

18           That's all I have to say, Your Honor.  Thank you for

19   hearing me.

20           THE COURT:  Well, what difference would it make for

21   personal jurisdiction of WTPA and this Court whether the

22   contacts that WTPA had with the State of Montana were through

23   some religious sort of structure or hierarchy or through a

24   corporate structure?

25           MR. TAYLOR:  In fact, Your Honor, it hasn't been

1    WTPA that's been having those contacts.  The challenge that

2    plaintiffs' counsel is trying to understand is where the

3    Pennsylvania corporation sits.  And it keeps referring to a

4    hierarchy, but the hierarchy is not on the corporate side.

5           The hierarchy represents how the religion is

6    structured, not how the corporation is structured, which is

7    why the corporation records don't show anything to suggest

8    that NY is a subsidiary, a child, or a parent for any

9    corporate relationship between the entities because none

10   exist.

11          And so it is -- that's in part, Your Honor, why the

12   motion was withdrawn.  We understand that when you are looking

13   at a religion and then these corporations, it is entirely

14   confusing.  It's understood.  But we would be pleased to have

15   the opportunity to bring these facts to bear through

16   deposition and discovery, and then the Court can assess it at

17   the conclusion of discovery to see whether or not Pennsylvania

18   has any contacts, meaningful contacts, with any congregation

19   in Montana let alone the allegations related to the complaints

20   at issues here.

21          THE COURT:  Well, there would be no need for that,

22   the motion has been withdrawn, so there'd be no need for

23   further discovery on it.  I don't know that you answered my

24   question, particularly, Mr. Taylor, about what difference it

25   would make whether WTPA had influence over, for example, the

1   Hardin congregation with regard to religious sort of

2   activities or through some more corporate kind of aspect as

3   far as jurisdiction goes.

4          MR.    TAYLOR:  To be clear, Your Honor, the

5   Pennsylvania corporation had no religious authority, control,

6   influence over the Hardin congregation to the extent one would

7   argue, and I would rebut that argument, that the

8   Pennsylvania -- or the New York corporation had that

9   relationship, I think those facts would be borne out during

10  discovery.

11         THE COURT:  Okay.  Thank you, Mr. Taylor.

12         Mr. Stepans, did you have anything you wish to say

13  with regard to Mr. Taylor's comments?

14         MR. STEPANS:  No, I don't believe so, Your Honor.

15  Thank you.

16         THE COURT:  All right.  Okay.  So I think everyone's

17  had an opportunity to be heard, I hope so.  So as I was

18  saying, the Court will deem the motions for sanctions in these

19  two cases submitted for ruling.

20         And thank you, Counsel.  We're adjourned.

21      (Whereupon, the proceedings adjourned at 10:44 a.m.)

22                       --o0o--

23

24

25

1                          **CERTIFICATE OF REPORTER**

2               I, Kim Marchwick, a Registered Professional Reporter

3      and Certified Realtime Reporter, do hereby certify that the

4      foregoing 47 pages of transcript is a true and correct record

5      of the proceedings given at the time and place hereinbefore

6      mentioned; that the proceedings were reported by me in machine

7      shorthand and thereafter reduced to typewritten form using

8      Computer-Aided Transcription; that after being reduced to

9      typewritten form, a certified copy of this transcript will be

10     filed electronically with the court.

11              I further certify that I am not an attorney for nor

12     employed by, nor related to any of the parties or attorneys to

13     this action, nor financially interested in this action.

14              Whereupon, this document was signed by me in

15     Billings, Montana, this Friday, the 13th day of May, 2022.

16

17

18                              */s/ Kim Marchwick*

19                              _____
                                Kim Marchwick
                                Registered Professional Reporter
20                              Federal Certified Realtime Reporter
                                Certified Realtime Reporter
21                              2601 2nd Avenue North
                                Billings, Montana 58102
22                              (406) 671-2307
                                marchwickkim@gmail.com
23

24

25

**'**

22:24, 26:13

**2**

'**73** [1] - 40:14
'**74** [1] - 40:14

20-52-BLG-SPW [1]
- 4:9
20-59-BLG-SPW [1]
- 4:11
**2002** [1] - 21:25
**2020** [1] - 25:20
**2021** [3] - 23:23,
24:2, 26:7
**2022** [1] - 4:1
**21** [1] - 30:24
**21-1** [1] - 19:2, 19:14
**21-3** [2] - 20:17,
21:15
**21-4** [2] - 20:17,
21:24
**21-day** [1] - 30:21
**26** [5] - 19:25, 41:13,
41:16, 41:25
**27** [2] - 41:14, 41:16
**28** [1] - 31:21
**29-1** [2] - 22:8, 22:18
**29-2** [1] - 22:19
**29-3** [1] - 22:21
**29-4** [1] - 22:24
**29-5** [2] - 22:8, 22:25
**295** [1] - 16:7

**0**

**028731** [1] - 41:15
**028954** [1] - 41:16

**1**

**1** [2] - 16:3, 16:6
**10** [1] - 38:5
**10:44** [1] - 47:21
**11** [30] - 13:17,
13:18, 15:16, 30:15,
30:17, 30:20, 30:23,
31:5, 31:14, 31:18,
31:23, 32:1, 32:9,
32:10, 32:14, 32:18,
32:24, 33:4, 33:13,
33:14, 33:20, 33:23,
34:1, 34:3, 34:6,
35:17, 38:21, 39:23,
43:2
**117** [2] - 8:19, 10:4
**12** [1] - 38:21
**13** [1] - 37:21
**14** [4] - 14:10, 15:3,
15:17, 37:1
**14-1** [1] - 37:2, 37:21
**14.1** [1] - 15:12
**15** [2] - 37:1, 37:5
**16** [2] - 15:17, 37:1
**17** [2] - 14:11, 15:3
**18** [5] - 13:14, 14:9,
14:16, 14:21, 43:14
**1927** [5] - 31:21,
33:7, 34:5, 34:8,
34:12
**1945** [1] - 38:22
**1970** [1] - 21:17
**1971** [1] - 16:3
**1972** [9] - 12:9,
12:14, 13:9, 16:8,
25:16, 26:3, 27:7,
40:7, 40:10
**1973** [2] - 26:12,
40:11
**1975** [1] - 16:10
**1986** [7] - 8:9, 8:14,
8:22, 9:15, 9:21,
38:24, 42:20
**1987** [1] - 16:6
**1990** [1] - 25:16
**1992** [1] - 26:13
**1995** [3] - 22:21,

**3**

**3** [2] - 8:19, 10:3

**4**

**4** [1] - 10:7
**40** [1] - 29:19

**5**

**5** [1] - 4:1

**6**

**6** [1] - 40:20

**7**

**7** [3] - 8:19, 10:3,
41:7
**70,000** [1] - 44:12
**757** [1] - 16:10

**8**

**80s** [2] - 30:6, 40:11

**9**

**945** [1] - 16:5
**95** [2] - 11:15, 41:8
**96-1** [4] - 16:5, 16:7,
16:10, 38:9
**96.1** [3] - 16:2,
38:20, 38:21
**9:33** [1] - 4:2

**A**

**a.m** [2] - 4:2, 47:21
**abandoned** [2] -
20:12, 20:15
**ability** [1] - 9:25
**able** [2] - 12:19,
43:23
**absolutely** [1] - 18:6
**abuse** [1] - 22:2
**accomplish** [4] -
10:9, 41:2, 41:13,
41:14
**Accomplish** [1] -
10:12
**according** [1] -
25:14
**accounts** [1] - 40:13
**accurate** [2] - 37:12,
38:18
**acknowledge** [1] -
23:11
**acknowledged** [2] -
25:11, 26:19
**acquaint** [1] - 27:11
**act** [1] - 39:3
**acted** [1] - 35:14
**acting** [1] - 34:10
**actions** [1] - 28:5
**activities** [1] - 47:2
**actual** [2] - 12:6,
45:8
**Adams** [15] - 8:9,
8:14, 8:16, 8:22, 9:4,
9:15, 10:14, 29:11,
29:12, 38:24, 41:17,
42:20, 42:23, 44:14
**Adams'** [11] - 8:3,
11:22, 28:22, 29:25,
30:7, 40:17, 40:18,
41:21, 44:10, 44:13,
44:23
**additional** [2] - 22:9,
40:4

**address** [3] - 11:20,
11:24, 20:13
**adequate** [1] - 14:4
**adjourned** [2] -
47:20, 47:21
**admission** [1] - 31:9
**admit** [1] - 25:16
**advantage** [2] -
30:17, 32:24
**advisory** [1] - 31:1
**advocated** [1] -
33:19
**advocates** [1] -
33:16
**affidavit** [64] - 6:25,
7:2, 7:9, 7:11, 7:23,
8:3, 8:6, 8:7, 8:10,
8:15, 8:21, 8:23,
9:15, 10:6, 10:19,
11:22, 15:7, 15:11,
15:21, 18:24, 19:5,
19:14, 19:23, 19:24,
20:8, 21:6, 21:11,
21:14, 22:4, 23:15,
23:16, 23:18, 24:7,
24:9, 24:10, 24:12,
24:14, 25:1, 27:25,
28:4, 28:22, 29:13,
29:15, 29:18, 29:21,
29:22, 29:25, 30:7,
33:17, 35:7, 36:25,
37:1, 37:20, 38:5,
39:2, 40:17, 40:18,
40:21, 40:22, 41:21,
44:11, 44:13, 44:23,
45:2
**affidavits** [15] - 13:2,
13:3, 18:15, 18:16,
18:21, 20:18, 20:22,
23:6, 23:21, 23:24,
24:19, 28:11, 40:1,
40:2, 43:10
**affirmatively** [1] -
15:7
**afowl** [1] - 32:15
**agency** [1] - 39:4
**agents** [1] - 39:10
**ago** [1] - 29:19
**ahead** [4] - 6:10,
17:13, 36:9, 44:6
**aid** [4] - 20:21, 21:4,
22:12, 22:15
**aims** [1] - 13:1
**alive** [1] - 29:12
**allegations** [3] -
25:24, 33:18, 46:19
**allow** [1] - 16:16
**allowed** [1] - 32:5
**allowing** [1] - 15:9
**allows** [1] - 32:14

**almost** [2] - 13:12,
29:19
**alone** [2] - 33:9,
46:19
**Amanda** [3] - 4:5,
4:18, 6:4
**amended** [1] - 38:22
**ample** [2] - 23:25,
24:6
**answer** [1] - 36:18
**answered** [1] - 46:23
**anyway** [3] - 26:18,
32:11, 34:7
**anyways** [7] - 27:10,
31:21, 31:25, 32:7,
32:19, 33:2, 33:5
**apologies** [2] -
17:19, 26:23
**apologize** [4] - 5:1,
6:4, 12:10, 14:16
**appear** [1] - 38:22
**appeared** [2] - 28:6
**appearing** [1] - 28:7
**applicability** [1] - 7:3
**applicable** [2] - 7:15,
34:7
**applies** [1] - 33:14
**apply** [1] - 33:20
**applying** [1] - 22:22
**appoint** [1] - 39:10
**appropriate** [3] -
41:2, 43:1, 43:16
**April** [1] - 16:3
**APRIL** [1] - 4:1
**archaic** [1] - 9:14
**argue** [11] - 19:3,
21:16, 23:2, 24:8,
28:8, 33:2, 33:19,
33:22, 35:23, 47:7
**argued** [3] - 17:24,
18:12, 28:2
**argues** [1] - 34:16
**argument** [21] -
7:10, 8:8, 18:18,
18:23, 19:6, 20:9,
20:12, 20:14, 21:24,
22:9, 23:17, 25:2,
25:9, 27:24, 29:4,
33:11, 33:14, 34:16,
35:8, 47:7
**arguments** [5] -
7:20, 7:23, 25:6,
26:1, 31:11
**arises** [1] - 45:13
**articles** [3] - 38:21,
38:22, 38:24
**aside** [1] - 4:8
**aspect** [1] - 47:2
**assert** [2] - 10:25,
11:8

**asserted** [4] - 9:23, 18:25, 20:20, 42:24
**assertion** [3] - 15:5, 38:11, 38:14
**assertions** [11] - 8:17, 8:23, 9:9, 9:21, 11:9, 13:12, 14:5, 14:8, 15:17, 40:5, 42:23
**asserts** [1] - 42:20
**assess** [1] - 46:16
**associated** [1] - 1:20
**Association** [1] - 42:14
**assume** [1] - 35:22
**attempt** [2] - 18:6, 45:15
**attempting** [2] - 6:19, 10:25
**attention** [3] - 8:18, 15:16, 40:20
**attorney** [5] - 27:25, 28:1, 34:12, 34:13, 34:15
**attorneys** [2] - 33:23, 34:21
**audio** [2] - 36:12, 36:16
**Australia** [1] - 22:19
**author** [4] - 19:7, 24:11, 24:14, 37:6
**authority** [2] - 9:19, 47:5
**authorize** [1] - 39:9
**avail** [1] - 13:22
**available** [1] - 36:18
**awarded** [1] - 34:10
**aware** [3] - 5:25, 18:13, 44:7
**awkward** [1] - 9:22
**awkwardly** [2] - 9:14, 10:15

**B**

**bad** [12] - 16:17, 32:9, 34:10, 34:14, 34:25, 35:14, 35:18, 37:18, 39:22, 43:18, 45:15
**based** [8] - 19:17, 19:19, 19:22, 20:3, 21:13, 25:2, 38:18, 43:17
**basis** [11] - 6:23, 6:25, 7:6, 15:10, 15:24, 28:17, 32:7, 33:9, 40:5, 42:6,

42:25
**Bates** [1] - 41:15
**BBC** [1] - 22:1
**bear** [1] - 46:15
**bearing** [1] - 37:16
**become** [1] - 18:4
**beginning** [2] - 25:9, 28:23
**behalf** [8] - 4:24, 5:4, 5:8, 5:10, 5:12, 6:22, 7:5, 45:5
**believes** [1] - 31:10
**benefits** [1] - 33:12
**Bethal** [1] - 21:20
**between** [6] - 27:19, 30:3, 30:6, 45:4, 45:13, 46:9
**beyond** [4] - 23:2, 35:18, 40:11, 41:23
**Bible** [24] - 4:9, 4:11, 4:14, 16:4, 16:6, 16:9, 16:11, 19:11, 19:17, 19:19, 19:22, 20:2, 20:3, 22:22, 39:7, 39:9, 39:13, 39:17, 41:6, 41:7, 42:5, 42:8, 42:13, 42:14
**bible** [1] - 39:17
**Bible-based** [4] - 19:17, 19:19, 19:22, 20:3
**Bibles** [7] - 19:16, 19:19, 19:22, 20:6, 20:7, 39:6, 42:5
**bit** [2] - 13:24, 17:7
**board** [1] - 44:19
**body** [7] - 39:4, 41:1, 41:6, 41:8, 41:10, 42:17, 44:19
**Bonham** [2] - 9:6, 10:24
**Book** [1] - 25:17
**book** [5] - 26:13, 27:10, 27:11, 27:17, 27:20
**books** [3] - 19:8, 21:3, 37:7
**borne** [1] - 47:9
**bottom** [1] - 35:6
**branch** [2] - 41:9, 42:10
**branches** [3] - 11:15, 41:9, 44:20
**brief** [14] - 12:1, 12:3, 14:9, 14:15, 17:25, 18:18, 20:10, 23:14, 25:10, 25:15, 31:1, 35:2, 40:1
**briefing** [4] - 6:17,

15:24, 17:5, 18:5
**briefly** [3] - 22:6, 22:7, 25:13
**briefs** [1] - 28:8
**bring** [4] - 8:25, 14:1, 25:22, 46:15
**brochures** [2] - 19:9, 37:7
**brought** [1] - 20:15
**Brumley** [36] - 13:3, 15:7, 16:15, 18:15, 18:20, 19:6, 19:13, 19:23, 20:19, 20:22, 20:25, 21:1, 21:6, 21:23, 22:3, 22:8, 22:13, 23:4, 23:6, 23:18, 23:21, 24:4, 25:4, 27:22, 28:14, 33:12, 33:17, 34:1, 34:2, 35:7, 35:12, 36:25, 37:20, 38:1, 38:15, 39:18
**Brumley's** [18] - 15:11, 18:24, 19:5, 20:8, 20:14, 20:18, 20:19, 21:14, 22:16, 23:8, 24:19, 27:18, 27:25, 28:3, 28:11, 36:25, 38:5, 39:1
**build** [1] - 9:15
**buildings** [1] - 39:14
**bunch** [1] - 18:17
**business** [4] - 21:2, 29:16, 29:17, 37:22

**C**

**Caekaert** [8] - 4:19, 14:19, 14:22, 17:18, 17:21, 19:2, 21:15
**calendar** [1] - 4:6
**cancelled** [1] - 24:5
**cannot** [2] - 23:19, 30:23
**care** [1] - 42:18
**case** [31] - 7:2, 9:11, 10:22, 12:14, 12:22, 12:23, 13:5, 14:17, 14:19, 16:15, 16:18, 17:16, 17:18, 17:21, 23:15, 28:15, 28:16, 28:18, 29:19, 29:20, 30:7, 33:25, 34:18, 34:22, 37:13, 37:17, 37:25, 40:8, 43:11, 43:23
**cases** [8] - 4:16, 4:20, 5:23, 6:6, 13:14, 14:1, 28:9,

47:19
**causing** [1] - 9:22
**cement** [1] - 9:25
**certain** [4] - 9:23, 21:1, 37:22, 42:2
**certainly** [7] - 9:8, 9:9, 25:4, 35:10, 35:13, 38:23, 45:15
**cetera** [4] - 15:6, 37:23, 41:4
**challenge** [1] - 46:1
**challenged** [4] - 30:23, 31:3, 32:14, 32:18
**chance** [2] - 7:15, 29:23
**change** [1] - 26:2
**charge** [3] - 6:7, 11:4, 11:12
**cheat** [1] - 4:18
**cherry** [1] - 29:22
**cherry-pick** [1] - 29:22
**child** [1] - 46:8
**chose** [4] - 24:7, 25:7, 35:8, 35:11
**Chris** [1] - 5:14
**Christian** [2] - 39:5, 39:16
**church** [2] - 11:7, 30:2
**Circuit** [2] - 32:16, 34:9
**circumstances** [1] - 40:4
**cite** [4] - 21:15, 21:24, 22:6, 41:12
**cited** [3] - 22:3, 23:2, 44:10
**cites** [2] - 41:13, 41:17
**claim** [7] - 18:16, 18:24, 20:18, 22:7, 22:9, 29:15, 34:16
**claimed** [1] - 32:8
**claims** [2] - 23:8, 30:2
**clarification** [3] - 24:1, 24:20, 35:9
**clarify** [1] - 24:6
**classes** [1] - 39:13
**clear** [7] - 18:4, 26:25, 27:16, 30:7, 30:16, 40:10, 47:4
**cleared** [1] - 19:24
**CLERK** [6] - 4:7, 4:25, 5:2, 5:24, 36:10, 36:14
**client** [1] - 35:23
**clients** [2] - 13:24,

16:19
**close** [1] - 23:4
**clumsy** [1] - 9:22
**CM/ECF** [1] - 14:13
**codefendant** [1] - 19:11
**collect** [1] - 26:22
**commentary** [1] - 15:18
**comments** [2] - 7:8, 47:13
**committee** [2] - 22:18, 31:1
**committees** [1] - 41:9
**common** [2] - 34:22, 39:9
**communication** [1] - 21:21
**communities** [1] - 21:5
**compared** [1] - 9:10
**comparison** [1] - 11:21
**compel** [3] - 12:7, 12:13, 40:9
**compensation** [1] - 23:1
**compiled** [1] - 16:8
**complaints** [1] - 46:19
**completely** [3] - 18:19, 30:11, 33:4
**compliance** [1] - 42:11
**complied** [1] - 35:17
**comport** [1] - 38:23
**conceal** [1] - 18:7
**concealed** [1] - 31:25
**concede** [1] - 37:8
**concerns** [1] - 22:22
**conclusion** [1] - 46:17
**conduct** [1] - 28:19
**confusing** [3] - 10:17, 45:5, 46:14
**confusion** [4] - 9:15, 9:22, 45:12, 45:14
**congregants** [1] - 38:13
**congregation** [11] - 10:24, 11:2, 11:8, 12:17, 40:12, 45:7, 45:8, 45:11, 46:18, 47:1, 47:6
**congregations** [5] - 10:2, 15:8, 27:12, 38:6, 38:16
**connection** [1] -

27:19
**consider** [2] - 8:6, 9:12
**consideration** [1] - 7:22
**considered** [1] - 29:24
**construct** [2] - 45:13, 45:14
**constructs** [2] - 44:21
**contact** [3] - 15:8, 38:6, 38:16
**contacts** [4] - 45:22, 46:1, 46:18
**contain** [2] - 18:16, 24:9
**containing** [2] - 12:16, 39:8
**content** [2] - 19:8, 37:6
**contention** [1] - 8:24
**contentions** [1] - 8:11
**contents** [4] - 6:18, 8:15, 15:21, 37:13
**contested** [1] - 45:6
**context** [4] - 11:18, 14:6, 24:17, 39:1
**continually** [1] - 21:13
**continue** [1] - 41:23
**contradict** [2] - 20:7, 23:18
**contradicted** [1] - 24:25
**contradictory** [1] - 20:14
**contradicts** [4] - 21:23, 22:3, 23:6, 27:17
**contrary** [2] - 13:16, 19:10
**control** [5] - 9:25, 10:1, 10:25, 11:6, 47:5
**convened** [1] - 4:2
**convince** [2] - 20:25, 23:12
**cooperate** [1] - 42:15
**copies** [2] - 19:8, 37:7
**copy** [1] - 15:13
**copyright** [4] - 20:2, 21:3, 22:14, 27:15
**copyrighted** [3] - 19:1, 19:4, 19:10
**copyrights** [4] - 20:21, 22:12, 37:23,

39:20
**corporate** [12] - 16:11, 26:12, 30:5, 41:2, 44:15, 44:21, 45:5, 45:13, 45:24, 46:4, 46:9, 47:2
**corporation** [47] - 7:12, 7:13, 8:10, 9:13, 15:23, 18:15, 19:12, 19:18, 21:25, 24:3, 25:25, 26:9, 26:18, 27:13, 27:15, 28:10, 29:13, 29:14, 29:16, 30:4, 30:8, 30:19, 31:8, 31:10, 31:17, 31:24, 32:5, 34:19, 35:3, 35:14, 35:19, 41:5, 42:7, 44:8, 44:24, 44:25, 45:6, 45:9, 45:10, 45:12, 46:3, 46:6, 46:7, 47:5, 47:8
**corporation's** [1] - 18:9
**Corporations** [1] - 42:1
**corporations** [12] - 8:5, 8:13, 10:13, 11:3, 11:11, 13:12, 42:2, 42:4, 42:16, 43:24, 44:9, 46:13
**correct** [6] - 12:4, 12:6, 27:9, 35:25, 37:2, 37:3
**corrected** [2] - 28:1, 28:10
**correcting** [1] - 33:20
**counsel** [11] - 4:19, 4:20, 7:19, 7:21, 24:3, 31:4, 44:9, 44:11, 44:22, 46:2
**Counsel** [2] - 4:25, 47:20
**counterargument** [1] - 20:13
**countries** [2] - 42:3, 42:10
**County** [2] - 9:6, 10:24
**couple** [1] - 17:6
**course** [5] - 7:22, 27:1, 29:9, 36:17, 42:1
**Course** [2] - 16:8, 25:17
**coursebook** [1] - 12:4
**court** [3] - 4:2, 9:17, 22:25

**COURT** [47] - 4:5, 4:14, 5:5, 5:8, 5:12, 5:19, 6:1, 6:4, 6:10, 6:13, 6:21, 7:5, 7:17, 10:21, 11:18, 14:12, 14:17, 14:22, 14:25, 15:13, 17:9, 17:12, 17:20, 24:17, 26:20, 26:24, 27:5, 27:8, 29:3, 30:13, 35:21, 36:1, 36:6, 36:9, 36:15, 36:20, 37:2, 37:4, 40:21, 40:24, 41:18, 44:1, 44:6, 45:20, 46:21, 47:11, 47:16
**Court** [60] - 4:8, 6:8, 6:17, 7:10, 8:4, 8:5, 9:1, 9:4, 9:6, 9:10, 9:12, 9:24, 12:7, 12:11, 12:22, 12:23, 13:4, 14:4, 14:7, 15:15, 15:18, 15:23, 16:13, 16:14, 16:23, 18:7, 18:13, 20:25, 22:17, 23:13, 23:14, 23:20, 24:21, 26:10, 26:11, 29:24, 32:11, 33:14, 34:5, 34:21, 35:5, 35:18, 36:11, 36:18, 36:19, 37:15, 39:24, 40:7, 41:16, 41:18, 42:20, 43:9, 43:13, 43:16, 43:21, 45:16, 45:21, 46:16, 47:18
**Court's** [10] - 8:18, 12:12, 15:16, 27:3, 31:21, 33:7, 34:4, 34:8, 40:19, 44:5
**cover** [2] - 17:5, 18:2
**covered** [2] - 18:1, 28:11
**covers** [1] - 17:5
**crafted** [1] - 23:12
**critical** [1] - 10:18
**current** [1] - 44:8
**CV** [2] - 4:9, 4:11

## D

**days** [1] - 30:24
**dealing** [1] - 7:1
**deceased** [1] - 21:18
**deceiving** [2] - 25:3, 35:4
**deceptive** [1] - 18:7
**decision** [1] - 31:14
**decisions** [1] - 40:25

**declaring** [1] - 41:3
**deem** [2] - 44:2, 47:18
**defeat** [2] - 32:13, 33:4
**defeats** [1] - 33:13
**defendant** [8] - 4:15, 8:4, 8:12, 9:12, 11:11, 13:12, 16:13, 16:14
**defendants** [3] - 6:16, 37:10, 43:8
**defendants'** [2] - 14:9, 14:15
**defense** [1] - 7:20
**delayed** [1] - 13:25
**denied** [3] - 33:10, 35:16, 35:20
**depose** [2] - 24:1, 35:8, 38:1
**deposed** [3] - 12:13, 23:22, 26:8
**deposition** [6] - 24:4, 24:24, 26:8, 26:21, 28:7, 46:16
**depositions** [2] - 24:16, 24:21
**describe** [1] - 18:8
**describes** [2] - 44:18, 44:20
**detail** [1] - 18:3
**difference** [2] - 45:20, 46:24
**different** [5] - 7:1, 8:7, 9:8, 9:9, 10:20
**direct** [2] - 11:15, 14:25
**directed** [1] - 12:16
**direction** [1] - 38:13
**directives** [1] - 41:10
**directly** [2] - 9:5, 10:8
**directors** [1] - 44:20
**directs** [1] - 41:8
**disagreement** [1] - 26:14
**disasters** [1] - 21:5
**Disciple** [4] - 12:10, 12:15, 13:10, 26:3
**Disciple-Making** [4] - 12:10, 12:15, 13:10, 26:3
**discovery** [26] - 12:20, 12:24, 13:6, 13:8, 13:15, 14:3, 15:5, 15:9, 16:16, 16:20, 16:22, 17:1, 26:11, 26:12, 27:4, 34:20, 34:23, 34:25, 40:6, 43:4, 43:11,

**discuss** [3] - 7:9, 18:11, 18:21
**discussing** [2] - 28:2, 35:2
**dismiss** [22] - 12:23, 13:5, 13:13, 13:21, 14:3, 14:10, 14:15, 15:23, 16:15, 18:10, 18:13, 24:18, 25:1, 25:6, 30:1, 30:16, 31:6, 31:20, 32:23, 34:19, 35:19, 43:10
**dismissed** [1] - 40:5
**disputes** [1] - 43:5
**disseminate** [1] - 39:7
**disseminated** [2] - 27:12, 38:12
**distinction** [1] - 45:4
**distribute** [2] - 39:6, 42:5
**document** [42] - 8:19, 10:4, 10:11, 10:14, 11:24, 12:2, 12:6, 12:9, 12:11, 13:7, 14:9, 14:13, 14:16, 14:21, 15:12, 16:2, 16:7, 16:10, 19:2, 19:14, 19:24, 20:17, 22:18, 25:10, 25:11, 25:14, 25:16, 25:20, 26:5, 26:15, 27:4, 27:6, 37:2, 37:21, 38:21, 40:7, 40:10, 40:14, 41:15, 41:18
**Document** [1] - 16:5
**documents** [12] - 9:21, 13:21, 14:7, 16:1, 17:17, 23:3, 23:5, 38:7, 38:9, 38:19, 44:12, 45:7
**dominion** [1] - 11:9
**Don** [8] - 8:3, 8:9, 9:15, 10:14, 11:22, 28:22, 44:10, 44:23
**done** [6] - 12:24, 21:10, 25:6, 32:20, 32:23, 35:10
**double** [2] - 23:7, 23:10
**down** [2] - 23:8, 23:10
**dragging** [1] - 13:14
**dug** [1] - 16:24
**during** [5] - 7:9, 8:24, 12:17, 24:24, 47:9

## E

**early** [1] - 12:14
**echo** [1] - 7:8
**edition** [1] - 40:13
**efforts** [1] - 17:1
**egregious** [1] -
25:18
**eight** [1] - 17:2
**either** [5] - 15:24,
16:17, 16:18, 26:13,
27:17
**elder** [1] - 12:17
**elders** [3] - 22:20,
22:21, 38:13
**employees** [1] -
39:10
**end** [3] - 11:20, 14:8,
33:8
**engage** [1] - 45:15
**England** [2] - 22:20,
22:24
**entirely** [2] - 12:23,
46:13
**entities** [2] - 41:2,
46:9
**entitled** [2] - 33:24,
34:2
**especially** [2] -
28:18, 32:20
**essentially** [2] -
10:25, 34:14
**establish** [3] - 22:4,
28:16, 39:12
**establishes** [1] -
27:18
**establishing** [1] -
42:10
**estate** [1] - 11:7
**et** [4] - 15:6, 37:23,
41:3, 41:4
**evangelists** [1] -
39:11
**evidence** [5] - 22:9,
23:18, 25:18, 33:3,
40:10
**exactly** [4] - 11:13,
32:8, 42:24, 43:15
**examination** [1] -
23:5
**example** [3] - 25:18,
25:23, 46:25
**examples** [1] - 21:6
**exceptions** [1] -
16:19
**excerpts** [2] - 41:21,
41:22
**excuse** [2] - 10:13,
14:20

**exhaustive** [3] -
21:8, 24:13, 24:14
**exist** [1] - 46:10
**exists** [2] - 21:1,
37:21
**explain** [2] - 37:24,
44:23
**explained** [2] - 23:9,
26:4
**explaining** [3] - 9:5,
21:19, 39:9
**explanation** [2] -
14:4, 40:3
**explore** [1] - 15:5
**extended** [1] - 42:9
**extent** [2] - 7:10,
15:6, 47:6
**extenuating** [1] -
40:3
**extrapolation** [1] -
38:11
**extremely** [2] - 8:6,
28:6

## F

**face** [1] - 32:18
**faced** [1] - 31:13
**facilitate** [1] - 42:18
**facilities** [1] - 42:4
**fact** [13] - 8:6, 8:18,
8:25, 13:24, 19:3,
19:21, 23:23, 24:2,
25:19, 33:2, 40:10,
45:10, 45:25
**facts** [9] - 15:23,
18:7, 24:9, 24:13,
24:14, 37:17, 43:12,
46:15, 47:9
**FAGAN** [1] - 5:15
**Fagan** [1] - 5:16
**failed** [1] - 28:15
**faith** [17] - 16:17,
31:11, 32:9, 34:10,
34:14, 35:1, 35:14,
35:18, 35:20, 37:18,
39:22, 43:8, 43:18,
44:15, 44:17, 45:15
**faithful** [1] - 42:2
**fall** [1] - 30:18
**false** [2] - 23:9,
23:10
**falsely** [1] - 18:25
**family** [1] - 21:20
**far** [1] - 47:3
**fashion** [1] - 43:22
**fell** [1] - 40:15
**few** [1] - 38:25
**fighting** [1] - 13:15

**file** [3] - 31:5, 32:10,
32:24
**filed** [16] - 5:23,
6:15, 7:15, 8:7,
10:10, 14:19, 23:24,
29:9, 29:23, 30:23,
31:20, 32:3, 33:1,
34:19, 40:2, 41:18
**filing** [2] - 22:25,
30:24
**fine** [2] - 6:13, 36:13
**firm** [2] - 40:8, 44:8
**first** [9] - 8:21, 15:3,
18:23, 20:8, 25:19,
28:19, 33:3, 42:7,
42:22
**fit** [1] - 21:20
**FITZGERALD** [1] -
5:17
**FitzGerald** [1] - 5:18
**five** [1] - 22:6
**flat** [1] - 20:9
**flesh** [2] - 7:19,
28:25
**followed** [1] - 32:17
**following** [2] - 4:3,
44:24
**forced** [1] - 13:11
**formed** [2] - 42:13,
45:10
**forth** [2] - 17:2,
24:12
**fortunately** [1] -
13:25
**forward** [2] - 31:15,
43:8
**frankly** [2] - 25:23,
32:13
**free** [1] - 22:22
**frivolous** [1] - 34:16
**front** [3] - 11:20,
14:8, 27:14
**full** [3] - 15:3, 15:6,
28:1
**funding** [1] - 20:3
**furtherance** [1] - 9:5

## G

**gaining** [1] - 23:1
**games** [1] - 16:20
**Gerry** [1] - 5:16
**given** [1] - 18:1
**good-faith** [1] -
31:11
**governing** [7] - 39:4,
41:1, 41:5, 41:8,
41:10, 42:17, 44:19
**government** [1] -

42:11
**grant** [1] - 7:18
**granted** [3] - 28:23,
29:1, 29:5
**gratuitous** [1] -
39:14
**gravity** [1] - 18:1
**grounds** [1] - 16:16
**group** [1] - 33:22
**guess** [3] - 11:19,
14:6, 17:7
**guided** [1] - 12:16

## H

**hac** [1] - 28:6
**half** [2] - 13:21, 14:2
**Hall** [3] - 9:20, 11:1,
11:7
**hand** [1] - 44:3
**handle** [1] - 22:2
**handled** [1] - 18:9
**harassing** [1] -
34:17
**harbor** [17] - 30:17,
30:21, 30:22, 31:1,
31:7, 32:4, 32:13,
32:16, 32:25, 33:4,
33:8, 33:13, 33:21,
33:24, 34:3, 34:6,
35:17
**hard** [4] - 15:13,
19:8, 20:23, 37:6
**Hardin** [7] - 12:17,
40:11, 40:15, 45:7,
45:11, 47:1, 47:6
**head** [1] - 28:20
**heading** [1] - 41:25
**hear** [3] - 4:8, 36:13,
38:8
**heard** [3] - 12:7,
28:24, 47:17
**hearing** [7] - 4:13,
5:22, 7:18, 17:3,
28:7, 40:9, 45:19
**held** [1] - 40:9
**hide** [1] - 13:11
**hide-and-seek** [1] -
13:11
**hiding** [1] - 25:18
**hierarchal** [7] - 8:11,
9:6, 9:17, 9:24, 30:3,
41:1, 42:21
**hierarchy** [5] -
44:18, 45:23, 46:4,
46:5
**himself** [1] - 8:9
**hold** [6] - 8:13, 9:20,
20:20, 22:11, 22:14,

39:19
**holding** [3] - 8:9,
21:3, 37:23
**holds** [1] - 27:15
**Holocaust** [1] -
22:25
**homes** [1] - 39:14
**honest** [3] - 13:17,
39:22, 43:3
**Honor** [69] - 4:7,
4:22, 4:23, 5:3, 5:6,
5:10, 5:15, 5:17, 6:3,
6:9, 6:14, 6:24, 7:4,
8:1, 8:2, 8:15, 8:20,
9:2, 10:3, 10:6,
10:11, 10:17, 10:23,
11:17, 11:19, 11:23,
12:21, 13:2, 13:10,
13:17, 14:6, 14:14,
14:20, 15:2, 15:12,
15:21, 17:4, 17:6,
17:11, 35:6, 35:25,
36:3, 36:4, 36:17,
36:23, 36:24, 37:3,
37:18, 38:3, 38:15,
38:25, 39:21, 39:25,
40:17, 40:22, 41:12,
41:20, 41:23, 42:20,
43:2, 43:4, 43:20,
44:4, 44:7, 45:18,
45:25, 46:11, 47:4,
47:14
**hope** [3] - 34:5,
39:22, 47:17
**horse** [1] - 31:23
**housing** [1] - 39:14
**humanitarian** [5] -
20:3, 20:21, 21:4,
22:12, 22:15

## I

**identified** [3] -
11:24, 12:14, 12:18
**identify** [3] - 4:19,
4:21, 28:18
**ignores** [1] - 34:6
**implement** [2] -
40:25, 41:10
**importance** [1] -
27:10
**important** [9] - 8:20,
12:21, 15:22, 18:2,
18:21, 21:12, 26:16,
39:1, 41:12
**impossible** [1] -
13:13
**improper** [1] - 29:23
**inaccurate** [3] -

23:16, 28:3, 35:4
**inception** [1] - 12:21
**includes** [3] - 19:16, 19:22, 20:2
**including** [4] - 16:2, 21:2, 37:23, 39:6
**incomplete** [1] - 25:4
**inconvenience** [1] - 17:19
**inconvenient** [1] - 45:3
**Incorporated** [2] - 4:10, 4:12
**incorporation** [2] - 38:22, 38:24
**incorrect** [4] - 11:24, 12:1, 22:11, 25:10
**incorrectly** [1] - 19:17
**indeed** [3] - 21:8, 45:6, 45:11
**indicate** [1] - 11:25, 38:19
**indicated** [3] - 10:3, 12:1, 15:24
**indicates** [3] - 10:13, 16:3, 38:10
**individual** [1] - 21:18
**influence** [2] - 46:25, 47:6
**information** [11] - 10:18, 12:16, 13:19, 16:25, 23:20, 24:15, 25:5, 37:15, 39:8, 40:4, 43:9
**informative** [1] - 37:14
**inherent** [4] - 31:22, 33:7, 34:4, 34:8
**initial** [3] - 6:14, 17:1, 17:15
**instance** [2] - 9:10, 28:19
**instead** [2] - 9:23, 26:2
**instructors** [2] - 39:11, 39:17
**instrumentalities** [1] - 42:15
**intended** [1] - 30:25
**intentionally** [1] - 23:12
**interaction** [1] - 44:25
**interested** [1] - 4:3
**interestingly** [1] - 44:22
**internal** [1] - 21:21

**international** [3] - 20:3, 20:21, 21:4
**International** [1] - 42:14
**interrupt** [3] - 5:24, 14:12, 36:4
**introduce** [1] - 6:20
**invoke** [2] - 32:10, 33:5
**invoked** [2] - 30:21, 34:1
**involve** [2] - 28:13, 28:14
**involved** [3] - 8:25, 28:9, 28:14
**involvement** [2] - 15:6, 28:16
**involving** [1] - 28:9
**irrelevant** [1] - 30:11
**issue** [2] - 7:1, 7:2
**issues** [2] - 7:1, 46:20
**items** [2] - 13:2, 17:6
**itself** [1] - 11:9

## J

**James** [2] - 5:6, 12:13
**January** [1] - 26:7
**Jehovah's** [17] - 15:8, 16:10, 19:15, 19:21, 19:25, 20:1, 20:6, 21:2, 22:1, 23:1, 27:11, 37:22, 38:6, 38:17, 39:5, 42:17, 44:25
**Jessica** [1] - 5:19
**Joel** [2] - 6:2, 36:5
**Jon** [1] - 5:10
**Jordan** [1] - 5:18
**Judge** [4] - 7:7, 17:14, 17:22, 28:22
**jurisdiction** [17] - 9:1, 14:10, 18:14, 21:22, 22:5, 24:18, 25:7, 27:20, 30:2, 30:9, 31:12, 37:16, 42:25, 45:6, 45:21, 47:3
**jurisdictional** [9] - 10:16, 14:3, 15:5, 15:9, 16:16, 26:11, 34:20, 34:23, 34:25
**justice** [1] - 13:25

## K

**keep** [1] - 27:21

**keeps** [1] - 46:3
**kept** [1] - 44:22
**kind** [2] - 16:20, 47:2
**Kingdom** [11] - 9:20, 11:1, 11:7, 12:4, 12:10, 12:15, 13:9, 16:7, 25:16, 26:3, 42:6
**Kingdom-Preaching** [4] - 12:10, 12:15, 13:9, 26:3
**knowing** [1] - 31:16
**knowingly** [1] - 34:15
**knowledge** [2] - 28:10, 29:16
**known** [2] - 15:10, 39:5
**knows** [2] - 24:14, 34:21

## L

**lack** [6] - 14:10, 16:23, 18:14, 24:18, 25:6, 30:1
**laid** [1] - 40:1
**language** [2] - 33:13, 39:1
**languages** [1] - 39:7
**large** [1] - 33:18
**last** [2] - 17:3, 30:18
**late** [3] - 7:15, 29:9, 29:23
**law** [2] - 30:14, 44:8
**laws** [1] - 42:3
**lawsuits** [1] - 28:13
**leading** [1] - 17:3
**leads** [1] - 43:18
**learned** [1] - 24:24
**leave** [1] - 30:12
**lectern** [2] - 6:12, 36:13
**lecturers** [1] - 39:15
**legal** [3] - 30:3, 30:6, 39:4, 42:15, 46:16
**legally** [1] - 42:13
**letter** [10] - 13:19, 21:15, 21:17, 21:25, 22:18, 22:20, 22:21, 22:24, 30:18, 45:10
**letterhead** [1] - 45:11
**letters** [4] - 17:2, 20:16, 20:24, 22:6
**levying** [1] - 25:24
**lies** [1] - 28:1
**likewise** [1] - 34:2
**limited** [1] - 28:6

**limiting** [1] - 26:12
**line** [3] - 11:10, 35:6, 42:22
**list** [2] - 21:8, 24:14
**listening** [1] - 5:7
**literature** [7] - 13:16, 19:17, 19:19, 19:23, 39:8, 39:18, 42:5
**local** [2] - 11:8, 42:11
**located** [2] - 15:9, 38:6, 38:17
**London** [1] - 22:20
**look** [3] - 8:18, 15:11, 42:23
**looking** [1] - 46:12
**looks** [2] - 14:19, 36:5
**lose** [1] - 13:23
**lost** [3] - 23:19, 36:12, 36:16
**loud** [1] - 38:9
**lying** [6] - 19:4, 19:20, 20:25, 22:8, 22:10, 23:4

## M

**magazines** [3] - 19:9, 21:3, 37:7
**maintain** [4] - 9:25, 39:12, 39:13, 39:16
**manner** [2] - 18:9, 41:11
**March** [1] - 23:23
**material** [4] - 10:8, 19:1, 19:4, 42:24
**materials** [5] - 16:1, 19:10, 20:3, 38:12, 38:18
**matter** [5] - 6:15, 7:3, 17:15, 19:2, 28:5
**matters** [4] - 4:6, 4:9, 20:4, 22:2
**mean** [3] - 7:20, 12:4, 37:8
**meaningful** [1] - 46:18
**means** [2] - 12:19, 39:7
**meant** [2] - 24:13, 25:14
**mention** [2] - 20:12, 32:2
**merit** [4] - 18:6, 31:9, 31:11, 33:3
**meritorious** [1] - 34:16
**merits** [1] - 31:15

**mics** [1] - 4:25
**might** [2] - 10:16, 44:4
**mind** [1] - 27:21
**mine** [1] - 29:19
**minimum** [1] - 35:16
**ministers** [1] - 39:15
**Ministries** [1] - 25:17
**ministry** [4] - 10:9, 41:13, 41:15
**Ministry** [4] - 10:12, 12:4, 16:8, 42:6
**minute** [1] - 30:15
**minutes** [1] - 44:5
**mischaracterizatio n** [1] - 22:16
**mischaracterized** [1] - 24:22
**misinterpret** [2] - 18:19
**misleading** [3] - 23:11, 25:3, 35:4
**misquote** [1] - 18:20
**misrepresent** [2] - 18:20, 20:18
**misrepresentation** [1] - 21:14
**misrepresentation s** [1] - 18:17
**missionaries** [2] - 39:11, 39:17
**missionary** [1] - 22:23
**misstatements** [2] - 28:11, 28:12
**mistake** [1] - 12:11
**misunderstood** [1] - 44:14
**mix** [1] - 27:23
**modern** [1] - 42:17
**modern-day** [1] - 42:17
**moment** [1] - 37:11
**Montana** [11] - 15:9, 21:21, 21:22, 22:5, 30:9, 31:12, 38:7, 38:17, 45:8, 45:22, 46:19
**months** [2] - 13:14, 43:14
**MORNING** [1] - 4:1
**morning** [10] - 4:22, 4:23, 5:3, 5:15, 5:17, 5:21, 6:3, 7:21, 17:23, 35:1
**motion** [63] - 4:13, 5:23, 6:15, 6:18, 7:12, 7:18, 9:13, 10:4, 10:16, 12:7, 12:13, 14:10, 14:15,

18:5, 18:10, 18:12, 18:13, 24:18, 25:1, 28:23, 29:5, 30:1, 30:16, 30:20, 30:22, 30:25, 31:2, 31:5, 31:8, 31:9, 31:10, 31:13, 31:14, 31:15, 31:19, 31:20, 31:24, 32:3, 32:6, 32:10, 32:11, 32:21, 32:23, 33:1, 33:2, 33:3, 33:6, 33:9, 33:15, 34:19, 35:15, 35:19, 39:23, 40:9, 40:18, 40:21, 44:2, 46:12, 46:22

**motions** [7] - 5:22, 5:23, 6:5, 7:24, 25:25, 35:20, 47:18

**move** [2] - 20:16, 31:15

**MR** [50] - 4:22, 4:23, 5:1, 5:3, 5:6, 5:10, 5:14, 5:15, 5:17, 6:3, 6:8, 6:12, 6:14, 6:24, 7:7, 8:1, 10:23, 11:19, 14:14, 14:18, 14:24, 15:2, 15:15, 17:11, 17:14, 17:22, 24:23, 26:22, 26:25, 27:7, 27:9, 29:8, 30:14, 35:25, 36:3, 36:4, 36:8, 36:12, 36:17, 36:23, 37:3, 37:5, 40:22, 40:25, 41:20, 44:4, 44:7, 45:25, 47:4, 47:14

**multiples** [1] - 34:13

**MURNION** [1] - 5:6

**Murnion** [1] - 5:6

**must** [1] - 32:16

**N**

**name** [1] - 13:8

**natural** [1] - 21:5

**nature** [1] - 38:2

**necessary** [1] - 15:5

**need** [3] - 17:18, 46:21, 46:22

**needs** [3] - 21:2, 37:22, 42:19

**network** [1] - 22:1

**never** [3] - 23:13, 45:14, 45:16

**new** [1] - 40:13

**New** [23] - 4:10, 4:12, 5:9, 5:11, 6:22, 7:8, 7:12, 19:11,

21:19, 22:23, 27:12, 27:15, 28:9, 29:13, 30:4, 42:14, 44:24, 45:5, 45:8, 45:11, 47:8

**news** [2] - 41:3, 42:18

**next** [2] - 10:7, 45:1

**Ninth** [2] - 32:16, 34:9

**none** [1] - 46:9

**note** [2] - 20:11, 21:12

**nothing** [12] - 20:20, 21:22, 22:3, 22:11, 23:5, 23:15, 23:16, 24:24, 27:17, 28:3, 37:12, 39:19

**notice** [1] - 30:24

**noticed** [1] - 24:4

**November** [1] - 25:20

**nowhere** [1] - 29:15

**number** [3] - 8:16, 8:25, 42:12

**Nunez** [1] - 28:15

**nutshell** [1] - 10:21

**NY** [1] - 46:8

**O**

**objected** [2] - 6:16, 34:20

**objecting** [2] - 8:5, 34:25

**objection** [6] - 6:23, 6:25, 7:6, 24:25, 29:4, 29:9

**objections** [4] - 7:19, 28:25, 29:1, 30:11

**objects** [1] - 34:24

**obstructed** [1] - 43:13

**obviously** [5] - 13:24, 24:21, 26:13, 33:17, 33:25

**October** [1] - 13:20

**office** [1] - 22:20

**offices** [1] - 42:10

**omit** [1] - 15:22

**once** [3] - 22:2, 22:13, 37:20

**one** [10] - 8:16, 14:19, 19:25, 28:14, 33:16, 38:10, 42:16, 44:19, 45:17, 47:6

**opening** [4] - 12:3, 17:24, 25:10, 25:15

**operate** [1] - 42:4

**operating** [1] - 9:18

**opponent** [1] - 34:17

**opportunity** [7] - 14:1, 24:1, 24:6, 29:10, 29:11, 46:15, 47:17

**opposed** [1] - 43:19

**opposing** [2] - 24:9, 34:23

**oppressive** [1] - 34:11

**option** [1] - 43:22

**order** [5] - 9:16, 26:11, 27:3, 38:12, 43:10

**Organization** [4] - 12:9, 12:15, 13:9, 26:3

**organization** [5] - 9:6, 9:17, 27:6, 41:1, 42:22

**organize** [1] - 42:2

**organized** [3] - 10:9, 41:13, 41:14

**Organized** [1] - 10:11

**outright** [3] - 13:5, 16:15, 40:6

**outside** [3] - 12:20, 26:13, 27:4

**own** [4] - 11:7, 13:16, 15:25, 42:4

**owning** [1] - 20:2

**P**

**PA** [1] - 27:14

**page** [10] - 8:18, 8:19, 10:3, 10:7, 14:10, 15:3, 23:21, 41:16, 41:25

**pages** [2] - 41:13, 44:12

**paper** [3] - 31:3, 32:18, 33:15

**papers** [2] - 32:14, 33:21

**paragraph** [7] - 15:4, 15:16, 37:21, 38:5, 40:20, 41:7, 45:1

**paragraphs** [2] - 15:16, 37:1, 44:24

**paralegal** [1] - 5:20

**parent** [1] - 46:8

**part** [6] - 8:22, 16:24, 26:10, 26:16, 33:18, 46:11

**participating** [1] -

13:15

**particular** [4] - 8:17, 9:11, 30:15, 37:5

**particularly** [3] - 25:18, 35:24, 46:24

**parties** [2] - 4:3, 32:14

**parts** [1] - 39:16

**party** [6] - 28:17, 31:2, 32:17, 33:5, 34:10, 34:24

**passively** [1] - 20:20

**past** [1] - 21:17

**Pennsylvania** [45] - 4:15, 5:13, 5:14, 7:6, 7:13, 16:4, 16:7, 16:9, 16:12, 18:9, 18:14, 19:18, 20:7, 21:25, 24:3, 25:25, 26:9, 26:17, 27:3, 27:13, 27:14, 27:20, 29:14, 30:4, 30:8, 30:19, 31:7, 31:10, 31:17, 31:24, 32:2, 32:5, 34:19, 35:3, 35:14, 35:19, 41:7, 41:8, 42:9, 44:8, 45:12, 46:3, 46:17, 47:5, 47:8

**Pennsylvania's** [2] - 24:23, 29:16

**perfect** [1] - 25:22

**perfectly** [1] - 6:13

**period** [3] - 8:21, 8:24, 17:2

**person** [1] - 21:19

**personal** [10] - 18:14, 21:22, 22:5, 25:7, 27:18, 27:19, 29:16, 30:2, 30:9, 45:21

**persons** [1] - 39:5

**pertains** [7] - 7:24, 8:2, 12:13, 30:1, 36:24, 37:17, 43:2

**Philip** [1] - 20:8

**physical** [1] - 10:1

**pick** [1] - 29:22

**piece** [3] - 10:18, 11:6, 37:14

**place** [2] - 8:12, 33:4

**places** [1] - 39:14

**plainly** [1] - 27:14

**plaintiff** [4] - 6:19, 12:19, 24:15, 30:18

**plaintiffs** [46] - 4:20, 4:24, 5:4, 5:7, 6:7, 6:15, 13:5, 13:7, 16:18, 17:24, 18:8, 18:19, 18:24, 19:1,

19:17, 20:16, 20:17, 20:24, 21:10, 23:2, 23:7, 23:17, 23:20, 23:23, 23:25, 24:5, 24:8, 25:20, 25:24, 26:6, 26:7, 26:16, 26:19, 27:22, 28:15, 31:18, 31:20, 32:20, 32:22, 33:11, 33:22, 34:5, 35:2, 35:8

**plaintiffs'** [20] - 5:22, 6:5, 7:21, 8:23, 10:4, 15:4, 16:24, 18:16, 18:23, 20:11, 20:19, 21:12, 22:15, 25:2, 31:4, 31:6, 33:18, 44:11, 44:22, 46:2

**play** [4] - 11:2, 13:11, 38:23, 40:15

**pleading** [1] - 33:15

**pleased** [1] - 46:14

**pleases** [1] - 6:8

**point** [15] - 7:11, 7:14, 8:18, 9:3, 14:7, 15:16, 19:1, 20:16, 20:24, 25:1, 26:2, 40:8, 40:15, 40:19, 43:5

**pointed** [6] - 18:12, 20:10, 23:19, 25:10, 30:25, 35:2

**pointing** [1] - 9:21

**points** [1] - 18:2

**poorly** [1] - 9:22

**position** [6] - 22:14, 24:23, 25:5, 28:21, 43:12, 43:15

**positions** [1] - 13:16

**power** [4] - 11:2, 31:22, 34:4, 34:8

**powers** [1] - 33:7

**Preaching** [4] - 12:10, 12:15, 13:9, 26:3

**preaching** [1] - 42:18

**prejudice** [1] - 27:1

**present** [4] - 4:3, 7:3, 33:14, 37:17

**presented** [1] - 14:1

**president** [1] - 21:18

**pretty** [2] - 13:25, 39:1

**prevent** [2] - 13:5, 43:11

**previously** [1] - 12:8

**primarily** [1] - 24:19

**principal** [2] - 41:5, 42:7

**print** [3] - 19:8, 37:6,

39:6
**printing** [1] - 42:4
**printout** [1] - 19:3
**private** [1] - 39:13
**pro** [1] - 28:6
**problem** [1] - 19:6
**proceed** [2] - 7:25, 43:23
**proceedings** [3] - 4:3, 34:13, 47:21
**process** [1] - 34:2
**produce** [2] - 26:5, 42:5
**produced** [1] - 25:19, 25:20, 26:7, 26:9, 26:15, 26:17, 26:18, 27:2, 30:5, 44:11, 45:7
**progress** [1] - 41:9
**prohibit** [1] - 12:24
**proper** [1] - 43:15
**property** [2] - 10:1, 11:6
**prophecies** [1] - 39:9
**protected** [1] - 31:17
**protection** [2] - 32:15, 33:24
**protects** [1] - 31:2
**prove** [2] - 22:10
**proved** [1] - 42:1
**provide** [8] - 20:21, 21:1, 21:7, 22:12, 22:15, 37:22, 38:12, 39:13
**provided** [4] - 16:25, 21:6, 24:20, 30:24
**provides** [2] - 20:1, 21:4, 30:22
**Provision** [1] - 35:17
**provision** [5] - 30:17, 30:21, 30:22, 32:4, 32:13
**publications** [4] - 9:3, 11:13, 44:10
**publish** [2] - 18:25, 19:4
**published** [9] - 10:12, 16:3, 16:6, 16:8, 19:10, 27:6, 27:15, 38:10, 38:19
**publishers** [1] - 16:11
**publishes** [1] - 20:7
**publishing** [6] - 19:16, 19:19, 19:22, 20:6, 36:24, 39:8
**pull** [2] - 9:4, 10:6
**pulled** [5] - 10:5, 10:7, 10:16, 13:20,

39:23
**pulls** [1] - 10:14
**purport** [1] - 21:7
**purpose** [5] - 8:7, 9:24, 24:12, 29:18, 29:21
**purposes** [6] - 7:17, 9:1, 10:19, 29:4, 34:17, 39:3
**purview** [1] - 9:1
**put** [2] - 11:13, 13:18

**Q**

**questions** [6] - 17:4, 17:6, 17:9, 36:18, 36:21, 43:21
**quote** [7] - 10:14, 14:11, 19:15, 19:25, 38:16, 38:25, 41:21
**quotes** [4] - 9:5, 10:5, 10:6, 10:7
**quoting** [2] - 9:16, 42:24

**R**

**raises** [1] - 34:16
**rate** [1] - 10:11
**read** [4] - 19:17, 21:11, 22:16, 38:9
**reading** [1] - 44:23
**ready** [2] - 16:21, 43:19
**real** [1] - 11:7
**really** [3] - 8:20, 27:9, 27:18
**reason** [4] - 8:5, 10:15, 27:2, 37:19
**reasonable** [1] - 27:2
**reasons** [2] - 8:4, 34:11
**rebut** [3] - 36:2, 36:7, 47:7
**recitation** [1] - 24:13
**reckless** [3] - 15:25, 16:17, 39:21
**recklessly** [1] - 34:15
**recklessness** [1] - 43:18
**recognize** [1] - 9:24
**recognized** [2] - 27:25, 42:3
**recollection** [1] - 12:12
**record** [8] - 4:19,

4:21, 6:19, 7:19, 29:4, 29:8, 35:10, 41:19
**records** [2] - 30:5, 46:7
**refer** [4] - 25:15, 38:8, 45:2, 45:8
**reference** [1] - 20:5
**referenced** [1] - 38:7
**references** [1] - 17:17
**referred** [3] - 19:9, 37:7, 38:20
**referring** [2] - 17:16, 46:3
**refresh** [1] - 12:12
**regard** [2] - 47:1, 47:13
**regarding** [1] - 22:1
**regardless** [1] - 32:3
**regulations** [1] - 42:12
**related** [1] - 46:19
**relating** [1] - 22:25
**relationship** [5] - 26:12, 30:3, 30:6, 46:9, 47:9
**relevant** [2] - 8:21, 8:24
**reliant** [1] - 43:8
**relief** [1] - 20:4
**religion** [2] - 46:5, 46:13
**religious** [12] - 10:13, 42:4, 42:12, 44:15, 44:17, 44:18, 44:21, 45:4, 45:13, 45:23, 47:1, 47:5
**Religious** [1] - 42:1
**reluctantly** [1] - 43:21
**rely** [3] - 13:11, 43:9, 43:23
**relying** [2] - 24:18, 31:6
**remember** [1] - 40:9
**reminding** [1] - 6:21
**reply** [9] - 12:1, 14:9, 14:15, 17:7, 17:25, 20:11, 20:15, 23:7, 26:2
**report** [1] - 41:9
**representations** [4] - 15:18, 31:7, 43:24, 45:16
**representative** [3] - 7:11, 8:10, 29:13
**represented** [2] - 31:18, 44:9
**representing** [4] -

17:13, 28:17, 35:23, 44:8
**represents** [1] - 46:5
**request** [5] - 13:13, 21:13, 32:22, 34:24, 43:3
**require** [1] - 34:14
**reserve** [1] - 17:7
**respect** [5] - 18:24, 28:21, 33:19, 34:4, 43:20
**respond** [3] - 7:16, 7:19, 29:10
**response** [4] - 11:23, 18:1, 23:9, 28:3
**responsible** [1] - 44:25
**rest** [1] - 17:5
**result** [2] - 16:17, 43:12
**retaining** [1] - 23:1
**Rob** [2] - 4:23, 5:3
**room** [1] - 34:22
**Rowland** [9] - 4:11, 12:13, 12:14, 12:18, 14:21, 17:16, 26:8, 26:21
**rule** [2] - 31:7, 32:15
**Rule** [28] - 13:17, 13:18, 30:15, 30:17, 30:19, 30:20, 30:23, 31:5, 31:14, 31:18, 31:23, 32:1, 32:9, 32:10, 32:14, 32:18, 32:24, 33:4, 33:13, 33:14, 33:20, 33:23, 34:1, 34:3, 34:6, 35:17, 39:23, 43:2
**ruling** [2] - 31:13, 47:19
**run** [3] - 11:14, 16:2, 32:15
**Ryan** [1] - 4:22

**S**

**safe** [17] - 30:17, 30:21, 30:22, 31:1, 31:7, 32:4, 32:13, 32:16, 32:25, 33:4, 33:8, 33:13, 33:21, 33:24, 34:3, 34:6, 35:16
**sanction** [3] - 31:22, 34:5, 43:15
**sanctionable** [2] - 15:19, 28:19
**sanctioned** [3] -

33:5, 33:23, 34:12
**sanctions** [40] - 5:22, 6:6, 7:13, 7:24, 10:5, 17:3, 18:5, 21:13, 24:10, 26:1, 27:22, 28:17, 30:19, 30:23, 30:25, 31:2, 31:5, 31:14, 31:17, 31:21, 31:25, 32:1, 32:3, 32:7, 32:11, 32:19, 32:22, 33:1, 33:7, 33:9, 33:25, 34:6, 34:8, 34:9, 35:16, 35:20, 39:24, 43:3, 47:18
**School** [2] - 16:8, 25:17
**schools** [1] - 39:13
**scratching** [1] - 28:20
**second** [8] - 8:22, 11:19, 14:23, 17:18, 19:23, 19:24, 21:10, 36:12
**secure** [1] - 12:19
**see** [8] - 10:8, 27:19, 30:1, 37:1, 37:20, 39:12, 41:13, 46:17
**seek** [3] - 13:11, 32:8, 32:9
**seeking** [1] - 23:23
**seem** [4] - 24:8, 28:8, 33:22
**send** [1] - 39:16
**sent** [4] - 21:21, 22:19, 22:21, 30:18
**sentence** [1] - 41:24
**separate** [1] - 19:12
**September** [2] - 16:6, 24:2
**servant** [1] - 39:4
**servants** [1] - 39:10
**SESSION** [1] - 4:1
**set** [5] - 4:8, 4:13, 5:21, 9:9, 24:12
**seven** [1] - 17:2
**several** [1] - 8:16
**sex** [1] - 22:2
**SHAFFER** [1] - 4:22
**Shaffer** [1] - 4:22
**sheet** [1] - 4:18
**short** [1] - 20:22
**show** [4] - 11:14, 23:3, 23:5, 46:7
**shows** [1] - 30:8
**sic** [1] - 9:6
**side** [1] - 46:4
**sign** [1] - 33:21
**signed** [2] - 22:19, 33:17

**similar** [2] - 29:19, 34:9
**similarly** [2] - 21:24, 35:1
**simple** [1] - 32:17
**simply** [1] - 31:23
**sits** [1] - 46:3
**situation** [6] - 9:8, 13:10, 13:17, 18:2, 39:25, 43:7
**slave** [1] - 42:2
**sloppy** [1] - 25:23
**societies** [1] - 42:12
**society** [1] - 39:3
**Society** [13] - 4:10, 4:12, 4:15, 16:4, 16:7, 16:9, 16:12, 19:11, 41:6, 41:8, 42:8, 42:9, 42:13
**solely** [1] - 24:19
**someone** [1] - 33:15
**songs** [1] - 21:3
**soon** [2] - 31:19
**sorry** [5] - 5:24, 14:12, 14:14, 36:4, 40:23
**sort** [2] - 45:23, 47:1
**sought** [1] - 34:23
**source** [1] - 12:6
**sovereignty** [1] - 9:18
**speaker** [1] - 36:13
**specific** [3] - 8:11, 9:3, 9:23
**specifically** [3] - 15:1, 30:20, 31:4
**spend** [1] - 17:23
**spent** [2] - 28:2, 35:1
**spiritual** [1] - 42:19
**sprung** [1] - 32:6
**standard** [1] - 34:7
**start** [1] - 30:15
**starting** [3] - 4:19, 14:11, 15:4
**Starting** [1] - 15:4
**state** [2] - 23:12, 28:25
**State** [1] - 45:22
**statement** [1] - 38:18
**statements** [1] - 7:2
**States** [2] - 22:22, 45:1
**states** [8] - 15:7, 19:14, 19:18, 22:11, 27:14, 31:1
**stating** [1] - 20:6
**STEPANS** [24] - 4:23, 5:1, 5:3, 6:8, 6:12, 6:14, 8:1,

10:23, 11:19, 14:14, 14:18, 14:24, 15:2, 15:15, 17:11, 36:3, 36:8, 36:23, 37:3, 37:5, 40:22, 40:25, 41:20, 47:14
**Stepans** [12] - 4:23, 5:3, 6:10, 7:25, 17:15, 18:12, 26:4, 26:6, 36:2, 36:7, 36:22, 47:12
**Stepans'** [2] - 25:9, 29:18
**still** [2] - 25:7, 38:23
**straight** [1] - 38:20
**strength** [3] - 13:3, 16:15, 40:2
**strictly** [1] - 32:16
**strong** [1] - 25:7
**structure** [8] - 8:12, 9:25, 42:21, 44:15, 44:16, 44:17, 45:23, 45:24
**structured** [2] - 46:6
**students** [1] - 39:15
**Students** [1] - 42:14
**subject** [7] - 16:19, 17:4, 17:6, 24:10, 30:8, 31:12, 43:20
**submit** [7] - 10:17, 16:23, 35:15, 37:17, 37:19, 38:15, 43:21
**submits** [1] - 8:10
**submitted** [10] - 9:4, 10:19, 10:20, 13:1, 16:1, 18:15, 19:23, 23:22, 44:2, 47:19
**submitting** [2] - 13:13, 38:2
**subsequent** [1] - 13:7
**subsidiary** [1] - 46:8
**substance** [7] - 7:9, 8:8, 12:7, 29:2, 29:6, 29:25, 37:13
**substantive** [2] - 19:8, 37:6
**sufficient** [1] - 25:1
**suggest** [2] - 8:3, 46:7
**summarily** [1] - 14:4
**supplement** [9] - 6:15, 6:19, 7:18, 8:3, 10:4, 10:5, 28:24, 40:19, 41:22
**supplementation** [1] - 24:20
**supplemented** [1] - 35:10
**support** [12] - 8:23,

13:1, 14:9, 14:15, 18:13, 19:15, 20:1, 21:24, 25:25, 32:21, 33:6, 39:15
**supported** [1] - 24:25
**suppose** [1] - 6:14
**supposed** [1] - 38:1
**SWEENEY** [11] - 5:14, 7:7, 17:14, 17:22, 24:23, 26:22, 26:25, 27:7, 27:9, 29:8, 30:14
**Sweeney** [4] - 5:14, 17:12, 35:21, 38:8
**Sweeney's** [1] - 40:8
**switch** [1] - 17:18

## T

**tactics** [1] - 26:2
**talks** [1] - 20:5
**Taylor** [17] - 6:1, 6:2, 27:23, 28:8, 28:15, 28:20, 33:12, 33:19, 34:1, 34:2, 35:13, 36:9, 36:10, 36:16, 46:24, 47:11
**TAYLOR** [7] - 6:3, 36:12, 36:17, 44:4, 44:7, 45:25, 47:4
**Taylor's** [4] - 28:5, 28:16, 44:3, 47:13
**teachers** [3] - 39:10, 39:15, 39:17
**teaching** [1] - 41:3
**technically** [6] - 15:20, 15:22, 23:11, 37:9, 37:10, 37:11
**television** [1] - 22:1
**testified** [2] - 19:7, 29:12
**testimony** [6] - 20:18, 20:19, 21:14, 22:16, 23:8, 27:18
**Texas** [3] - 9:7, 10:24, 30:7
**texts** [2] - 9:14, 9:16
**THE** [53] - 4:5, 4:7, 4:14, 4:25, 5:2, 5:5, 5:8, 5:12, 5:19, 5:24, 6:1, 6:4, 6:10, 6:13, 6:21, 7:5, 7:17, 10:21, 11:18, 14:12, 14:17, 14:22, 14:25, 15:13, 17:9, 17:12, 17:20, 24:17, 26:20, 26:24, 27:5, 27:8, 29:3, 30:13, 35:21,

36:1, 36:6, 36:9, 36:10, 36:14, 36:15, 36:20, 37:2, 37:4, 40:21, 40:24, 41:18, 44:1, 44:6, 45:20, 46:21, 47:11, 47:16
**themselves** [1] - 4:19
**there'd** [1] - 46:22
**therefore** [2] - 19:4, 19:20
**threat** [1] - 31:23
**threatened** [3] - 30:19, 31:14, 33:25
**three** [1] - 37:5
**throw** [1] - 27:23
**thrust** [1] - 35:7
**timeframe** [1] - 40:16
**today** [1] - 6:7
**together** [2] - 13:18, 41:1
**tolerate** [1] - 32:11
**took** [2] - 12:5, 30:16
**top** [2] - 9:17, 11:14
**topic** [1] - 6:20
**touch** [2] - 22:7, 25:13
**track** [1] - 13:23
**Tract** [12] - 4:10, 4:11, 4:15, 16:4, 16:6, 16:9, 16:11, 19:11, 41:6, 41:8, 42:8, 42:13
**tracts** [2] - 19:9, 37:7
**trial** [2] - 16:22, 43:19
**trick** [4] - 18:7, 23:13, 31:24, 35:4
**trickery** [1] - 25:3
**tried** [1] - 11:8
**Trojan** [1] - 31:23
**true** [10] - 15:20, 15:22, 23:10, 23:11, 23:13, 24:12, 34:20, 37:9, 37:10, 37:11
**truth** [1] - 21:16
**truths** [2] - 39:7, 39:9
**try** [1] - 20:24
**trying** [6] - 11:2, 16:13, 16:14, 16:23, 35:4, 46:2
**TUESDAY** [1] - 4:1
**tuition** [1] - 22:22
**tuition-free** [1] - 22:22
**turned** [2] - 12:20, 13:8, 40:14
**twice** [1] - 26:18

**two** [16] - 5:23, 8:12, 10:5, 12:22, 13:1, 13:3, 18:15, 20:16, 23:21, 23:24, 30:6, 40:1, 44:4, 47:19
**two-page** [1] - 23:21

## U

**U.S.C** [1] - 31:21
**ultimately** [1] - 26:17
**umbrage** [2] - 12:5, 25:12
**unable** [1] - 28:18
**unbelievably** [1] - 15:25
**uncertain** [1] - 31:13
**uncover** [1] - 15:10
**under** [18] - 9:1, 9:18, 11:15, 30:19, 30:20, 30:23, 31:18, 31:21, 32:9, 33:18, 33:7, 33:23, 34:1, 34:8, 34:12, 39:23, 41:7, 41:25
**understood** [2] - 27:3, 46:14
**unequivocally** [2] - 38:19, 42:21
**uniform** [1] - 41:11
**unilaterally** [1] - 24:5
**uninformed** [1] - 44:13
**United** [2] - 22:22, 45:1
**unreasonably** [1] - 34:13
**unsubstantiated** [1] - 25:23
**untrue** [4] - 23:16, 35:4, 35:12, 35:13
**up** [8] - 14:22, 16:24, 17:3, 19:24, 20:15, 25:22, 38:20, 44:3
**uses** [1] - 41:1
**utilized** [2] - 32:4, 33:8

## V

**valid** [1] - 27:2
**various** [4] - 39:7, 39:16, 42:3, 42:10
**verbatim** [1] - 9:16
**version** [1] - 20:19
**vexatiously** [2] - 34:10, 34:13
**via** [1] - 41:21

**videos** [1] - 21:4
**vs** [2] - 4:9, 4:11

## W

**wantonly** [1] - 34:11
**wants** [3] - 6:17, 7:10, 24:15
**warranted** [1] - 34:15
**Watchtower** [20] - 4:9, 4:11, 4:14, 5:8, 5:11, 5:12, 6:22, 7:5, 16:3, 16:4, 16:5, 16:6, 16:9, 16:11, 19:11, 41:6, 41:7, 42:8, 42:9, 42:13
**website** [4] - 19:3, 19:14, 20:5, 20:13
**weight** [1] - 7:23
**whatsoever** [3] - 20:8, 35:15, 37:16
**WILSON** [4] - 5:10, 6:24, 35:25, 36:4
**Wilson** [3] - 5:10, 6:22, 35:22
**Wilson's** [1] - 7:14
**window** [3] - 26:14, 27:4, 27:8
**wisdom** [1] - 42:2
**wish** [2] - 29:6, 47:12
**wishes** [1] - 36:19
**withdraw** [8] - 31:8, 31:15, 31:24, 32:6, 32:10, 32:14, 32:17, 33:1
**Withdraw** [1] - 32:23
**withdrawal** [2] - 32:21, 33:6
**withdrawn** [7] - 30:21, 30:24, 31:3, 31:6, 31:20, 46:12, 46:22
**withdrew** [3] - 9:13, 30:16, 33:2
**Witnesses** [16] - 15:8, 16:11, 19:15, 19:21, 19:25, 20:2, 21:2, 22:1, 23:1, 27:11, 37:22, 38:6, 38:17, 39:5, 42:17, 45:1
**worded** [2] - 9:14, 10:15
**words** [2] - 18:8, 23:14
**works** [1] - 42:9
**world** [2] - 11:13,

39:16
**worldwide** [9] - 19:16, 19:22, 20:6, 38:14, 39:4, 41:3, 42:6, 42:10, 42:18
**writing** [1] - 22:18
**written** [2] - 9:22, 33:15
**WTNY** [4] - 8:10, 8:17, 11:5, 11:10
**WTPA** [56] - 8:17, 8:24, 9:13, 9:17, 10:12, 11:5, 11:10, 12:4, 12:20, 12:22, 13:1, 13:4, 14:5, 14:8, 14:10, 14:11, 15:6, 15:7, 15:18, 15:25, 17:13, 18:25, 19:3, 19:7, 19:15, 19:25, 20:1, 20:20, 21:1, 21:7, 21:8, 21:9, 22:10, 22:13, 22:19, 24:18, 25:19, 26:5, 26:21, 28:13, 30:16, 37:6, 37:21, 38:3, 38:5, 38:11, 38:16, 38:19, 41:15, 42:22, 42:23, 45:21, 45:22, 46:1, 46:25
**WTPA's** [10] - 9:25, 11:23, 12:9, 13:9, 15:6, 21:17, 22:20, 24:17, 25:18, 38:21

## Y

**year** [3] - 13:20, 14:2, 27:8
**Yearbook** [1] - 16:10
**years** [1] - 29:19
**York** [23] - 4:10, 4:12, 5:9, 5:11, 6:22, 7:8, 7:12, 19:11, 21:19, 22:23, 27:13, 27:15, 28:9, 29:13, 30:4, 42:14, 44:24, 45:5, 45:9, 45:11, 47:8
**yourselves** [1] - 4:21

## Z

**Zoom** [3] - 5:7, 5:25, 6:2