*Exhibit A*

Robert L. Stepans  
Ryan R. Shaffer  
James C. Murnion  
Meyer, Shaffer & Stepans, PLLP  
430 Ryman Street  
Missoula, MT  59802  
Tel: (406) 543-6929  
Fax: (406) 721-1799  
rob@mss-lawfirm.com  
ryan@mss-lawfirm.com  
james@mss-lawfirm.com  

Matthew L. Merrill (appearing *pro hac vice*)  
Merrill Law, LLC  
1863 Wazee Street, #3A  
Denver, CO  80202  
Tel: (303) 947-4453  
matthew@merrillwaterlaw.com  

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY,<br><br>           Plaintiffs,<br><br>    vs.<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR.,<br><br>        Defendants,<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.,<br>        Cross Claimant,<br><br>BRUCE MAPLEY, SR.,<br>        Cross Defendant. | Case No. CV-20-52-BLG-SPW<br><br>**DECLARATION OF RYAN R. SHAFFER** |

ARIANE ROWLAND, and JAMIE          )
SCHULZE                            )          Cause No. CV 20-59-BLG-SPW
                    Plaintiff,     )
        vs.                        )
                                   )
WATCHTOWER BIBLE AND TRACT         )
SOCIETY OF NEW YORK, INC., and     )
WATCH TOWER BIBLE AND TRACT        )
SOCIETY OF PENNSYLVANIA,           )
                                   )
                    Defendants.    )
_____    )

I, Ryan R. Shaffer, an attorney duly admitted to practice law in this Court, declares that the following is true and correct:

1.      I submit this Declaration in support of Plaintiffs' Motions to Compel Depositions in the above-referenced matters. Docs. 153 & 154 in CV 20-52-BLG-SPW; Docs. 131 & 132 in CV-20-59-BLG-SPW-TJC (hereinafter referred to as "Plaintiffs' Motions").

2.      I am counsel of record for Plaintiffs in the above-referenced matters and am submitting this declaration as evidence of the conferral efforts made to resolve discovery disputes that led to the filing of Plaintiffs' Motions.

3.      As it pertains to Plaintiffs' request to take a staggered deposition of WTNY under Rule 30(b)(6), the following efforts were made to confer prior to filing Plaintiffs' Motion:

Declaration of Ryan R. Shaffer
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
*Rowland and Schulze v. Watchtower Bible Tract of New York, Inc., et. al.*
Page 2 of 7

a. On September 23, 2022, Plaintiffs sent a letter setting forth their proposal for a staggered deposition of WTNY which set forth the specific reasons such an arrangement made sense given the current posture of this case.  Letter from Ryan Shaffer to WTNY's counsel (Sept. 23, 2022) (attached as **Exhibit 1**).  Specifically:

> The purpose of the presently noticed deposition topics is to obtain foundational testimony regarding the manner in which information regarding child sex abuse at U.S. Congregations during the period 1973 to 1992 was obtained, stored, and managed over time.  As discovery continues to progress in these cases, Plaintiffs anticipate deposing WTNY on other topics material to this case under Fed. R. Civ. Pro. 30(b)(6).  However, Plaintiffs are not prepared to notice those topics because we first need to resolve disputes over WTNY's claims of testimonial privilege.  Please let me know if you have any concerns or objections in this regard.

b. Counsel for WTNY responded by stating that it did not "envision producing 30(b)(6) representatives of WTNY for deposition on multiple occasions . . ."  Letter from Jon Wilson to Ryan Shaffer (Sept. 26, 2022) (attached as **Exhibit 2**).

c. Plaintiffs' counsel then requested a phone call to discuss, among other things, staggering WTNY's deposition.  Email from Ryan Shaffer to defense counsel (Sept. 27, 2022) (attached as **Exhibit 3**).

Declaration of Ryan R. Shaffer
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
*Rowland and Schulze v. Watchtower Bible Tract of New York, Inc., et. al.*
Page 3 of 7

d.  Defense counsel chose not to respond to Plaintiffs' request for a phone call, and instead sent an email reiterating WTNY's opposition to a staggered Rule 30(b)(6) deposition.  Email from Chris Sweeney to Ryan Shaffer (Sept. 28, 2022) (attached as **Exhibit 4**).

e.  Plaintiffs' counsel then requested that WTNY reconsider its position by further explaining why it is not reasonable to require a deposition of WTNY on all conceivable topics in the case, right now.  Letter from Ryan Shaffer to all Defense Counsel (Sept. 29, 2022) (attached as **Exhibit 5**).   In this letter, Plaintiffs' counsel specifically stated:

> We would like to figure out a way to reach an agreement on the staggered discovery rather than burdening the judge with it.  However, if that is not possible, we will seek relief from the Court early next week.  Please let me know by close of business on Monday, October 3rd if you are willing to consider working something out.

f.  On October 5, 2022, counsel for WTNY stated that it could find no authority for staggering topics of depositions under Rule 30(b)(6) and suggested that Plaintiffs go to New York for the limited topics already noticed, and then seek leave from the Court for other topics

Declaration of Ryan R. Shaffer
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
*Rowland and Schulze v. Watchtower Bible Tract of New York, Inc., et. al.*
Page 4 of 7

later.  Email from Brett Jensen to Ryan Shaffer (Oct. 5, 2022) (attached as **Exhibit 6**).

g. At this point, it was evident that the parties disagreed on the process for taking WTNY's deposition and it would be important to get guidance from the Court before proceeding.

4. As it pertains to Plaintiffs' request to depose Allen Shuster, Gary Breaux, and Gene Smalley, the following efforts were made to confer prior to filing Plaintiffs' Motion:

a. With the ability to take a staggered deposition of WTNY now in question, on September 27, 2022 Plaintiffs' counsel sought dates for the depositions of Allen Shuster, Gary Breaux, and Gene Smalley.  **Ex. 3**.

b. On September 28, 2022, counsel for WTPA responded by stating that they would need to consult with them and "evaluate any notices addressed to them individually to assess next steps."  **Ex. 4**.

c. On September 29, 2022, Plaintiffs' counsel provided draft notices for the aforementioned depositions.  **Ex. 5**.

Declaration of Ryan R. Shaffer
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
*Rowland and Schulze v. Watchtower Bible Tract of New York, Inc., et. al.*
Page 5 of 7

d.  Plaintiffs' counsel also sought clarification as to whether  WTNY / WTPA were willing to make Shuster, Breaux, and Smalley available for a deposition.  **Ex. 5**.

e.  On October 5, 2022, WTNY's counsel responded by raising a series of concerns about Plaintiffs' request to depose Shuster, Breaux, and Smalley, and asked the Plaintiffs "provide the basis for the necessity of these depositions, especially since there has yet to be a Rule 30(b)(6) deposition of the defendants." **Ex. 6**.

f.  Plaintiffs responded by noting that Shuster, Breaux, and Smalley have been a part of the Jehovah's Witness organization in New York during the time period relevant to this case and that they have knowledge relevant to the issues in the case.  Email from Ryan Shaffer to Brett Jensen (Oct. 5, 2022) (attached as **Exhibit 7**).

5.  During previous conferral efforts over jurisdictional discovery earlier in this case, Plaintiffs spent three (3) months conferring with WTNY's counsel (at that time WTPA's counsel) regarding non-responsive discovery answers.  *See* Plaintiffs' Notice of Written Discovery and Associated Conferral Efforts (Doc. 54).

Declaration of Ryan R. Shaffer
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
*Rowland and Schulze v. Watchtower Bible Tract of New York, Inc., et. al.*
Page 6 of 7

6. At the end of that three-month process, WTNY's counsel was still asking for more conferral and asserting that it did not understand where Plaintiffs were coming from.  Letter from Jon Wilson to Ryan Shaffer (Apr. 8, 2021) (attached as **Exhibit 8**).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 2nd day of November, 2021.

By: /s/ Ryan Shaffer
Ryan R. Shaffer
MEYER, SHAFFER & STEPANS PLLP
*Attorneys for Plaintiffs*

Declaration of Ryan R. Shaffer
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
*Rowland and Schulze v. Watchtower Bible Tract of New York, Inc., et. al.*
Page 7 of 7

*Exhibit 1*



**Meyer, Shaffer & Stepans, PLLP**

**Ryan Shaffer** | ryan@mss-lawfirm.com
**Robert L. Stepans** | rob@mss-lawfirm.com
**James Murnion** | james@mss-lawfirm.com

September 23, 2022

**Via Email and U.S. Mail**

Jon A. Wilson
Brett C. Jensen
BROWN LAW FIRM, P.C.
P.O. Drawer 849
Billings, MT  59103

jwilson@brownfirm.com
bjensen@brownfirm.com

Joel M. Taylor, Esq. *pro hac vice*
Miller McNamara & Taylor LLP
100 South Bedford Road, Suite 340
Mount Kisco, NY  10549

jtaylor@mmt-law.com

   Re: *Caekaert & Mapley v. Watchtower Bible and Tract Society of New York, Inc., et al.*
    *Rowland & Schulze v. Watchtower Bible and Tract Society of New York, Inc., et al.*

Dear Jon and Joel:

   Thanks for our call on Monday regarding the upcoming Rule 30(b)(6) deposition of WTNY.  As it pertains to the scope of that deposition, and the preparation of designees to testify to the topics noticed, I wanted to summarize our understandings based on the call.

   First, it is our understanding that any and all information pertaining to reports of child sex abuse occurring, or alleged to have occurred, at a U.S. Congregation prior to 2000 is in the possession of WTNY.  Conversely, information about sex abuse occurring, or alleged to have occurred, at a U.S. Congregation prior to 2000 is not in the possession of WTPA or CCJW.  Assuming that is true, and as we therefore understand it, there is no need for us to notice up a 30(b)(6) deposition of WTPA or CCJW to obtain information in their possession regarding allegations of child sex abuse at Jehovah's Witness congregations pre the year 2000 because those two entities do not have possession over such information.   <u>Please let me know if our understanding is incorrect in this regard</u>.

   Second, it is our understanding that there is no such thing as what has previously been referred to as a "CM database" or "child maltreatment database" that housed that topic of information exclusively.  As we understood Joel's statements, past references to a "CM database" were the result of imprecise language, and "CM" was actually a code entered into a

September 23, 2022
2

Lotus database used by the WTNY Legal Department for tagging information related to child sex abuse.  <u>Please let me know if our understanding is incorrect in this regard.</u>

       Third, one of the concerns we raised is that we do not know the differences between the various JW entities, departments, and offices and how that may impact where information regarding child sex abuse at U.S. Congregations is currently stored, or was stored previously.  For instance, we don't know if files/information kept by the U.S. Branch Office are considered to be files/information under the control of WTNY.  And if not, which entity would we need to notice up for a definition to obtain an understanding of what files/information is under the control of the U.S. Branch Office?  I am sure you can appreciate that our goal in coming to NY for the foundational deposition is to obtain a complete understanding of where and how information about child sex abuse at U.S. congregations was obtained, stored, and managed over time.  To the extent that this requires cooperation amongst counsel on questions such as whether information is in the possession of the U.S. Branch Office is also in the possession of WTNY, we appreciate your assistance in advance of our trip to New York so that we can ensure it is an efficient use of time for all parties.  <u>Please confirm, one way or the other, whether information in files controlled by the U.S. Branch Office pertaining to child sex abuse allegations at U.S. Congregations that occurred before 2000 is under the control of WTNY.</u>

       Lastly, we wanted to make sure that counsel understands that the presently noticed Rule 30(b)(6) topics do not cover the entirety of testimony that Plaintiffs may seek from WTNY in this case.  The purpose of the presently noticed deposition topics is to obtain foundational testimony regarding the manner in which information regarding child sex abuse at U.S. Congregations during the period 1973 to 1992 was obtained, stored, and managed over time.  As discovery continues to progress in these cases, Plaintiffs anticipate deposing WTNY on other topics material to this case under Fed. R. Civ. Pro. 30(b)(6).  However, Plaintiffs are not prepared to notice those topics because we first need to resolve disputes over WTNY's claims of testimonial privilege.  Please let me know if you have any concerns or objections in this regard.

       Sincerely,

       MEYER, SHAFFER & STEPANS, PLLP

       Ryan R. Shaffer

*Exhibit 2*



**BROWN** LAW FIRM, PC

Michael P. Heringer
Guy W. Rogers
Scott G. Gratton
Kelly J.C. Gallinger*
Jon A. Wilson
Seth A. Cunningham
Shane A. MacIntyre
Adam M. Shaw
Brett C. Jensen*
Nathan A. Burke
Alex J. Ames
Zachary A. Hixson

Of Counsel
Robert L. Sterup

Retired
Rockwood Brown
John Walker Ross
Margy Bonner
John J. Russell

315 N. 24th Street | PO Drawer 849 | Billings, Montana 59103-0849
Phone: 406.248.2611 | Fax: 406.248.3128

Jon A. Wilson
jwilson@brownfirm.com

Brett C. Jensen
bjensen@brownfirm.com

September 26, 2022

**VIA EMAIL and U.S. MAIL**
Robert L. Stepans / rob@mss-lawfirm.com
Ryan R. Shaffer / ryan@mss-lawfirm.com
James C. Murnion / james@mss-lawfirm.com
MEYER SHAFFER & STEPANS PLLP
430 Ryman Street
Missoula, MT 59802

Re:     *Tracy Caekaert and Camillia Mapley v. Watchtower Bible and Tract Society of New York, Inc., et al.*
        USDC Billings Division 20-CV-52-SPW-TJC
        File No. 78280.001

        *Ariane Rowland and Jamie Schulze v. Watchtower Bible and Tract Society of New York, Inc., et al.*
        USDC Billings Division 20-CV-59-SPW-TJC
        File No. 78280.002

Gentlemen:

We are writing in response to James's letter dated September 15, 2022, regarding Requests for Production (hereinafter "RFP") Nos. 51-53, and our telephone conversation with Ryan and Matthew Merrill on September 19, 2022, regarding a range of discovery-related topics, including those RFPs.  Enclosed please find supplemental discovery responses, a second amended privilege log, and additional production documents. Below is a brief summary of the updates.

As to RFP No. 51, WTNY stands on its response, as a diligent search has been conducted, and nothing remains of the documents sought.  Such documents were not maintained for extended periods of time in the ordinary course.  WTNY is unaware of the existence of any additional responsive documents from the relevant time period, except as produced or logged by the Hardin Congregation.

*also licensed in North Dakota

Brown Law Firm, P.C.
September 26, 2022
Page 2 of 2


As to RFP No. 52, WTNY understood the question to be seeking "Hardin Congregations' Permanent Congregation File," meaning the file the Hardin Congregation maintains at its place of worship.  Watchtower does not and never has had access to that file.  However, based on the clarification in your letter and our phone conversation with Ryan and Matthew, WTNY has located what remains of its Hardin congregation file (other than previously produced records/communications between WTNY and Hardin Congregation) that included an S-303 Report from 1993, an S-205 application from 1986, 4 pages of notes from an unknown source describing events involving members of the Hardin congregation, and several pages of notes/letters that were previously produced or logged by non-party congregations.  WTNY is unaware of the existence of any additional responsive documents from the relevant time period.

As to RFP No. 53, WTNY has no additional documents responsive to this RFP and is unaware of the existence of any additional responsive documents from the relevant time period, except as produced or logged by the Hardin Congregation.

We are also writing in response to Ryan's letter dated September 23, 2022.  The understanding set forth in the first summary paragraph is correct.  The understanding set forth in the second summary paragraph is also correct, although "CM" refers to a type of call, not a code.  The understanding set forth in the third summary paragraph is additionally correct as to communications to or from WTNY, although WTNY does not have local congregation records unless such records were given to WTNY.

Finally, as to the 30(b)(6) deposition of WTNY, the length of the deposition is limited to 7 hours pursuant to Rule 30(d)(1), Fed.R.Civ.P.  We do not envision producing 30(b)(6) representatives of WTNY for deposition on multiple occasions, just as we anticipate you do not intend to make each of your respective clients available for deposition on multiple occasions.

Thank you for your attention to these matters, and please contact us with any questions.

Sincerely,

Jon A. Wilson
Brett C. Jensen
JAW / BCJ
enclosures
cc:     Joel M. Taylor (via e-mail) (w/enclosures)

*Exhibit 3*

**From:** Ryan Shaffer
**Sent:** Tuesday, September 27, 2022 6:25 PM
**To:** Jon Wilson; Joel Taylor; Gerry.Fagan@moultonbellingham.com; Christopher Sweeney
**Cc:** Rob Stepans; Jessica Yuhas
**Subject:** NY Depos; Plaintiff Depos

Do you guys have time for a call in the next day or so to discuss depo scheduling and related issues?

As far as Depos in NY on 10/11 and 10/12 go, I am concerned that we are not going to be ready.  I understand WTNY's position is that we must notice up all 30b6 topics at one time.  If we cannot come to an agreement on that issue, we may need to get some time with the Judge before we go.  Additionally, we have been considering adding a couple topics related to corporate hierarchy / organization.  We would also like to get Gene Smalley, Gary Breaux and Allen Shuster deposed.  This all leaves me uncertain about the presently set dates of 10/11 and 10/12.  We may need to look towards Nov.

We are still working on Plaintiffs' availability.
Ariane Rowland in Billings (not sure if 10/31/22 works, hope to know this week);
Cami Mapley remote, possibly on 10/24/22 (Montana), but we are working on logistics of setting up a location in Australia with a video feed that will accommodate a 4:00 am Australian start time (noon Mountain time);
Tracey Caekaert in Missoula (waiting on confirmation for 10/28);
Jamie Schulze in Missoula (late Nov. or early Dec. due to work and other scheduling issues)

With Ms. Caekaert and Ms. Schulze being deposed in Missoula, consider whether you would like them scheduled on consecutive days.

Thanks,


Ryan R. Shaffer



*Montana Office:*
430 Ryman St.
Missoula, MT  59802
Tel: 406-543-6929
Fax: 406-721-1799

*Wyoming Office:*
3490 Clubhouse Drive, Suite 104
Wilson, WY 83014
Tel: 307-734-9544
Fax: 307-733-3449

The information contained in this email is confidential and privileged. If you are not the intended recipient, please ignore and delete this message and inform the sender of the mistake. This email may be subject to the attorney-client privilege and attorney work product doctrine. If you are not the intended recipient, please ignore and delete this message and inform the sender of the mistake.

1

*Exhibit 4*

| From: | Christopher Sweeney |
|---|---|
| To: | Ryan Shaffer; Jon Wilson; Joel Taylor; Gerry Fagan |
| Cc: | Rob Stepans; Jessica Yuhas; Brett Jensen; Jordan W. FitzGerald |
| Subject: | RE: NY Depos; Plaintiff Depos |
| Date: | Wednesday, September 28, 2022 3:56:40 PM |
| Attachments: | image002.png |

Ryan –

I am writing regarding your email below. I have spoken with Joel, Jon and Brett, and am providing a combined response to your email.

We can't tell if you intend to take the two depositions in New York on October 11th and 12th or not. Please let us know by 12:00 p.m. noon tomorrow, Thursday, September 29th, whether you will be taking those two depositions in New York. We need time to make travel arrangements, some of which may not be refundable, prepare witnesses and otherwise arrange our schedules. Your office has set depositions a number of times in these cases, only to later cancel them. This costs the law firms, our clients, and the potential deponents time and money. If you intend to take those two depositions in October, let us know. If not, then the next time you notice up the depositions, we will assume you intend to take them as noticed and we will book travel and prepare witnesses accordingly. If you again change your mind after sending the notice, we intend to request the Court that we be reimbursed for our costs and fees incurred.

Regarding the 30(b)(6) issues, I understand WTNY informed you by letter dated September 26, 2022, of its position that it does not envision producing 30(b)(6) representatives on multiple occasions.

Regarding the plaintiffs' depositions, the general rule is that the plaintiffs are required to make themselves available in Billings to be deposed since that is the venue in which they chose to file their lawsuits. In good faith, we've agreed that Cami Mapley's deposition can occur remotely because she is in another country. We received your email stating Tracey Caekaert and Jamie Schulze are available to be deposed in Missoula. Can you let us know on what authority you are relying that would require the defendants to travel to Missoula to depose Tracey and Jamie when they chose to file their lawsuits in Billings? If the two depositions are in Missoula, will plaintiffs reimburse defendants the cost of travel and accommodations, as well as the attorney's fees for ten hours of travel per attorney?

Regarding the depositions of Gene Smalley, Gary Breaux and Allen Shuster, we understand that they are members of the faith in New York, but neither WTPA nor WTNY has ever communicated with them regarding any potential depositions.  As such, we would need to consult with them and evaluate any notices addressed to them individually to assess next steps.

Last, we received your email this afternoon inquiring about a status conference with the Court. What do you intend to discuss at a status conference?

**Chris Sweeney**
(406) 248-7731

MOULTONBELLINGHAM PC

*Exhibit 5*



**Meyer, Shaffer & Stepans, PLLP**

Ryan Shaffer | ryan@mss-lawfirm.com
Robert L. Stepans | rob@mss-lawfirm.com
James Murnion | james@mss-lawfirm.com

September 29, 2022

**<u>Via Email and U.S. Mail</u>**

Jon A. Wilson
Brett C. Jensen
BROWN LAW FIRM, P.C.
P.O. Drawer 849
Billings, MT  59103

jwilson@brownfirm.com
bjensen@brownfirm.com

Joel M. Taylor, Esq. *pro hac vice*
Miller McNamara & Taylor LLP
100 South Bedford Road, Suite 340
Mount Kisco, NY  10549

jtaylor@mmt-law.com

Christopher T. Sweeney
Gerry P. Fagan
Jordan W. FitzGerald
27 North 27th Street, Suite 1900
P.O. Box 2559
Billings, MT  59103

christopher.sweeney@moultonbellingham.com
gerry.fagan@moultonbellingham.com
jordan.fitzgerald@moultonbellingham.com

Re: *Caekaert & Mapley v. Watchtower Bible and Tract Society of New York, Inc., et al.*
*Rowland & Schulze v. Watchtower Bible and Tract Society of New York, Inc., et al.*

Dear Counsel,

Due to the dispute about the staggering of WTNY's deposition topics we need to cancel the deposition that was previously noticed for October 11th.

Please find enclosed draft deposition notices for Phillip Brumley, Gary Breaux, Gene Smalley, and Allen Shuster.  We are anticipating about a half-day for each of these witnesses. Please confirm that you will produce these gentlemen for depositions (or specifically state that you will not) and let us know dates that work for each as soon as you can.

September 29, 2022
Page 2

As it pertains to the deposition of WTNY, Plaintiffs would like to agree on a staggered discovery plan where we depose WTNY first on the foundation of the privilege claims and corporate structure so that we can resolve disputes over the privilege, while reserving liability topics (i.e. direction given by WTNY to local congregations, knowledge WTNY had of what occurred at local congregations) for later once we know what evidence and testimony will be in play. Jon has requested that we provide notice of those other topics now. It is not possible to do this right now because the case is evolving with discovery. However, I can state that none of the later topics will duplicate the topics we would notice now. We understand the time limits in the rules and are not asking for an agreement to exceed those right now. We would like to figure out a way to reach an agreement on the staggered discovery rather than burdening the judge with it. However, if that is not possible we will seek relief from the Court early next week. Please let me know by close of business on Monday, October 3rd if you are willing to consider working something out.

Regarding Plaintiffs' depositions, Ariane Rowland can be available in either Billings or Missoula. However, October 31st does not work. Ms. Rowland is available the week of November 7th. As previously noted, Ms. Caekaert and Ms. Schulze will be available in Missoula where we can best provide for their respective mental health needs before and after their depositions. Jon has asked me to explain why such mental health attention cannot be provided just as easily in Billings. It relates to the association of Billings to the trauma suffered, as well as support available to the Plaintiffs that exists in Missoula that does not exist in Billings. We would hope that the Defendants could understand this. We would work to group Ms. Schulze and Ms. Caekaert together to cut down on travel if that is what the Defendants preferred. We are still working on logistics for Ms. Mapley's video deposition; please confirm you are still preferring October 24th and we will work to make that happen.

Based on Jon's email of today, I understand that you will be responding to Plaintiffs' Motion for a new Scheduling Order. Given that, and given my request that we work out a plan for staggered discovery to include staggered 30(b)(6) topics for WTNY, we agree that there is no need to seek time with the Court right now.

We look forward to hearing from you on these issues.

Sincerely,

MEYER, SHAFFER & STEPANS, PLLP

Ryan R. Shaffer

Cc: Bruce Mapley, Sr., via email and U.S. Mail

*Exhibit 6*

**From:** Brett Jensen <BJensen@brownfirm.com>
**Sent:** Wednesday, October 5, 2022 2:05 PM
**To:** Ryan Shaffer <ryan@mss-lawfirm.com>; Rob Stepans <rob@mss-lawfirm.com>; James Murnion <james@mss-lawfirm.com>
**Cc:** Gerry Fagan <Gerry.Fagan@moultonbellingham.com>; 'Christopher Sweeney'
<Christopher.Sweeney@moultonbellingham.com>; Jordan W. FitzGerald <Jordan.FitzGerald@moultonbellingham.com>; Jon
Wilson <jwilson@brownfirm.com>; Sylvia Basnett <SBasnett@brownfirm.com>; Barbara Bessey <BBessey@brownfirm.com>
**Subject:** Caekaert and Rowland Cases

Hi Ryan:

We are writing in response to your October 4, 2022 letter addressed to all defense counsel that references your September 29,
2022 letter.  To be clear, no one at the Brown Law Firm or Miller McNamara & Taylor received your September letter until
yesterday when we received it in the U.S. Mail.  It appears the only electronic recipients of the letter were at Moulton
Bellingham.

First, as to the Brumley deposition and the deposition of your clients, Moulton Bellingham will coordinate the response on
behalf of WTNY and WTPA.

Second, as to the proposed depositions of Messrs. Breaux, Shuster, and Smalley, we are concerned that the requests may be
inappropriate, premature, or ultimately unnecessary.  None of them have any direct knowledge of any of the claims, none of
them have ever met your clients or co-defendant Mr. Mapley, and none of them were executive officers or members of the
boards of directors of either corporation during the relevant time period.  Moreover, because of their important roles in
connection with the religion, they may be subject to protection under the apex doctrine.  In addition, Mr. Smalley is over 82
years old.  Can you provide the basis for the necessity of these depositions, especially since there has yet to be a Rule 30(b)(6)
deposition of the defendants?  Thereafter, we will decide whether to seek the Court's assistance with protective orders.

Third and finally, we would like to respond to the Rule 30(b)(6) issues raised in your September letter.  We have been unable to
locate any authority for the staggering of the corporate deponent(s).  It appears you want us to agree in advance to multiple
depositions on topics yet to be determined.  Absent some authority to the contrary, it would seem prudent to schedule the
deposition when you deem appropriate, take it, and then if you feel there is a legitimate need to reopen the deposition, that you
then seek leave of Court to obtain permission.  At that point, your arguments and our response will be concrete rather than
hypothetical.

I think I have covered everything here, but let me know if there is anything else currently pending that we need to discuss.

Sincerely,

Brett C. Jensen
Brown Law Firm, P.C.
315 North 24th Street
P.O. Drawer 849
Billings, MT 59103-0849
Telephone: (406) 248-2611
Fax: (406) 248-3128

**Confidentiality Notice:** *The information contained in this e-mail communication and any attached documentation may be
privileged, confidential or otherwise protected from disclosure and is intended only for the use of the designated
recipient(s).  This information, along with any attachments, constitutes attorney-client and/or attorney work product and is
confidential in nature.  This information is not intended for transmission to, or receipt by, any unauthorized person.  The use,
distribution, transmittal or re-transmittal by an unintended recipient of this communication is strictly prohibited without our
express approval in writing or by e-mail.  If you are not the intended recipient of this e-mail, please delete it from your system
without copying it and notify the above sender so that our e-mail address may be corrected.  Receipt by anyone other than the
intended recipient is not a waiver of any attorney-client or work-product privilege.*

*Exhibit 7*

**From:** Ryan Shaffer
**Sent:** Wednesday, October 5, 2022 3:24 PM
**To:** Brett Jensen <BJensen@brownfirm.com>
**Cc:** Gerry Fagan <Gerry.Fagan@moultonbellingham.com>; 'Christopher Sweeney' <Christopher.Sweeney@moultonbellingham.com>; Jordan W. FitzGerald <Jordan.FitzGerald@moultonbellingham.com>; Jon Wilson <jwilson@brownfirm.com>; Sylvia Basnett <SBasnett@brownfirm.com>; Barbara Bessey <BBessey@brownfirm.com>
**Subject:** RE: Caekaert and Rowland Cases

Brett,

Yes, understood on the electronic correspondence, that was our fault.  Sorry about that.

Thanks for your email.

As it pertains to Breaux, Shuster, and Smalley, these gentleman have been a part of the Jehovah's Witness organization in New York during the time period relevant to this case and have knowledge relevant to issues in this case.  My understanding is that Plaintiffs get to choose the sequence of their discovery; let me know if you understand otherwise.  While Plaintiffs have been attempting to arrange a Rule 30b6 deposition, that does not preclude us from deposing other people with knowledge relevant to issues in this case, including Breaux, Shuster and Smalley.  The fact that Mr. Smalley is 82 only increases the urgency of getting his testimony preserved sooner than later.  In the interest of moving things along, we intend to file a Motion to Compel these depositions.

It appears that WTNY is not agreeing to a staggered Rule 30b6 deposition.  Thanks for clarifying WTNY's position on that.

I look forward to hearing from Gerry and Chris on Brumley and the Plaintiffs' depos.

Best,

Ryan R. Shaffer



*Montana Office:*
430 Ryman St.
Missoula, MT  59802
Tel: 406-543-6929
Fax: 406-721-1799

*Wyoming Office:*
3490 Clubhouse Drive, Suite 104
Wilson, WY 83014
Tel: 307-734-9544
Fax: 307-733-3449

The information contained in this email is confidential and privileged. If you are not the intended recipient, please ignore and delete this message and inform the sender of the mistake. This email may be subject to the attorney-client privilege and attorney work product doctrine. If you are not the intended recipient, please ignore and delete this message and inform the sender of the mistake.

*Exhibit 8*



### BROWN LAW FIRM, PC

John J. Russell
Michael P. Heringer
Guy W. Rogers
Scott G. Gratton
Kelly J.C. Gallinger*
Jeffrey T. McAllister
Jon A. Wilson
Seth A. Cunningham
Shane A. MacIntyre
Adam M. Shaw
Brett C. Jensen*
Catrina V. MacIntyre
Aaron M. Dunn
Nathan A. Burke
Alex J. Ames

Of Counsel
Robert L. Sterup

Retired
Rockwood Brown
John Walker Ross
Margy Bonner

315 N. 24th Street | PO Drawer 849 | Billings, Montana 59103-0849
Phone: 406.248.2611 | Fax: 406.248.3128

Jon A. Wilson
jwilson@brownfirm.com

Aaron M. Dunn
adunn@brownfirm.com

April 8, 2021

**VIA EMAIL and U.S. MAIL**
Robert L. Stepans / rob@mss-lawfirm.com
Ryan R. Shaffer / ryan@mss-lawfirm.com
James C. Murnion / james@mss-lawfirm.com
MEYER SHAFFER & STEPANS PLLP
430 Ryman Street
Missoula, MT 59802

Re:     *Tracy Caekaert and Camillia Mapley v. Watchtower Bible and Tract Society of
         New York, Inc., et al.*
         USDC Billings Division 20-CV-52-SPW-TJC
         File No. 78280.001

         *Ariane Rowland and Jamie Schulze v. Watchtower Bible and Tract Society of
         New York, Inc., et al.*
         USDC Billings Division 20-CV-59-SPW-TJC
         File No. 78280.002

Gentlemen:

We are writing in response to Ryan's March 26, 2021 letter, our follow-up phone
conversation with Ryan on March 29, 2021, and the issues listed in Ryan's e-mail dated
April 6, 2021. This letter serves as a continued attempt to meet and confer regarding
these various discovery issues. Both Watchtower Bible and Tract Society of New York,
Inc. (hereinafter "WTNY") and Watch Tower Bible and Tract Society of Pennsylvania
(hereinafter "WTPA") remain committed to trying to resolve any issues with Plaintiffs
regarding Plaintiffs' jurisdictional discovery requests to WTNY and WTPA.

*also licensed in
North Dakota*

Below goes through the various issues we understand are, in Plaintiffs' position, still
unresolved. If you believe additional issues exist which we do not address below, please
let us know so we can address the same in a future letter. Please also note nothing herein
constitutes a waiver, whether explicit or implicit, of any of WTPA's or WTNY's rights.

Brown Law Firm, P.C.
April 8, 2021
Page 2 of 12

All such rights are explicitly reserved, and nothing herein should be construed otherwise.

Objections Stated by WTPA and WTNY to Plaintiffs' Jurisdictional Discovery Requests

As an initial matter, we want to address Ryan's March 26, 2021 letter wherein Ryan states the objections WTPA and WTNY asserted were "inappropriate…[and] not permissible[.]"  We are struggling to understand Plaintiffs' contention.  What about the objections stated make the same "inappropriate" and/or "not permissible"? Please advise so we can understand where Plaintiffs are coming from.

Relevant Time Period for Jurisdictional Discovery

We understand that Plaintiffs want to extend the relevant time period far beyond 1973-1992. We have concerns with Plaintiffs' approach in this regard and believe a detailed background is necessary to assist Plaintiffs in understanding our position.

As you may recall, on September 3, 2020, the parties participated in a telephone conference to discuss jurisdictional discovery. *See* Doc. 28, n.1 in the *Rowland* matter; Doc. 36, n.1 in the *Caekaert* matter.   On September 17, 2020, Ryan sent an e-mail with a draft Jurisdictional Discovery Plan Plaintiffs' counsel drafted.  The draft Jurisdictional Discovery Plan received in Ryan's September 17, 2020 e-mail is enclosed herewith (**Enclosure 1**). Page 3 of the same reads:

> Counsel for the parties agree to the following scope of jurisdictional discovery:
>
> ➢ WTPA's contacts and communications with the local Jehovah's Witness congregations in Montana, if any, during the relevant time period.
>
> ➢ WTPA's activities and conduct in Montana during the relevant time period.
>
> ➢ The Hardin Montana Jehovah's Witness congregation's contacts with WTPA, if any, during the relevant time period.

On Page 4, Plaintiffs represented they "***believe the relevant time period is 1970 to 1995***[.]" (emphasis added).

After edits unrelated to the foregoing, a Joint Jurisdictional Discovery Plan was filed in both matters.  *See* Doc. 36 in the *Caekaert* matter; Doc. 28 in the *Rowland* matter. Both contain, verbatim, the language quoted above.  *See* Doc. 36 in the *Caekaert* matter, pp. 3-4; Doc. 28 in the *Rowland* matter, pp. 3-4.

Brown Law Firm, P.C.
April 8, 2021
Page 3 of 12

On November 30, 2020, the Court issued Orders in both cases regarding the scope of jurisdictional discovery. *See* Doc. 47 in the *Caekaert* matter; Doc. 37 in the *Rowland* matter. The Court ordered "that Plaintiffs shall be permitted to conduct discovery into WTPA's and WTNY's corporate relationship from 1973 to 1992." Doc. 47, p. 5 in the *Caekaert* matter; Doc. 37, p. 5 in the *Rowland* matter.

The Court did *not* hold discovery outside the scope of what the parties agreed to in the Joint Jurisdictional Discovery Plan was permissible as Plaintiffs appear to be suggesting. Thus, we are puzzled as to why Plaintiffs are now taking the position they should not be held to the Joint Jurisdictional Discovery Plan and instead should be permitted to discovery far beyond the time period Plaintiffs suggested. Please advise and explain to us what we are missing, if anything. While we are not trying to be difficult, we cannot understand the difference between Plaintiffs' current position and Plaintiffs' position in September 2020.

<u>Withholding of Documents Pursuant to Objections Stated Regarding Jurisdictional Discovery</u>

To reiterate from our call with Ryan on March 29, 2021 and as a follow-up to the 10-page letter we sent dated March 22, 2021, the only documents that have been withheld pursuant to the objections stated consist of documents falling outside the relevant time period discussed above. Other than such documents, the objections stated have been stated so as to avoid waiving the same. *See* Fed.R.Civ.P. 33(b)(4); Fed.R.Civ.P. 34(b)(2)(B)-(C); Fed.R.Civ.P. 36(a)(5); L.R. 26.3(a)(4). It is our position the objections stated are proper, and please explain your reasoning in Plaintiffs hold a contrary position.

<u>Plaintiffs' RFPs Nos. 73-76 and 78 to WTPA</u>

Pursuant to the discussion above, documents not produced in response to Plaintiffs' RFPs Nos. 73-76 and 78 to WTPA—to the extent the same are in WTPA's possession, custody, or control[1]—have not been produced due to the time period issue. To reiterate from above, we respectfully ask Plaintiffs to explain their position regarding the relevant time period, which again appears to contrast with Plaintiffs' position back in September 2020. However, in the spirit of good faith and cooperation, WTPA is willing to produce the specifically-identified documents in RFPs Nos. 76 and 78 that are in WTPA's possession, custody, or control that predate 1993. These materials are being gathered and will be produced in supplemental discovery responses.

---

[1] Please see our March 22, 2021 letter for an explanation as to whether the documents requested are in WTPA's possession, custody, or control.

Brown Law Firm, P.C.
April 8, 2021
Page 4 of 12

<u>Plaintiffs' Interrogatories Nos. 6 & 7 to WTNY</u>

Despite informing you that no list or other type of document exists which shows individuals who worked in the Service Department and/or Legal Department during the relevant time period, Ryan's March 26, 2021 letter indicates Plaintiffs still take issue with WTNY's Answers to Plaintiffs' Interrogatories Nos. 6-7.[2] In our call with Ryan on March 29, Ryan indicated Plaintiffs want confirmation as to whether there is a list of Jehovah's Witnesses who resided in New York during the time period requested, which in turn would shed light on who worked in the Service Department and Legal Department during the relevant time period.

It is our understanding no such lists or other types of documents exist. Further, Plaintiffs do not appear to understand that multiple departments exist. Finally, it is our understanding the number of Jehovah's Witnesses who resided in New York is in the thousands. As such, finding potential names would require asking those still alive to remember who worked in specific departments approximately a half-century ago.  Considering we have provided Plaintiffs with Boards of Directors during the relevant time period (for both WTPA and WTNY), we fail to see how Plaintiffs' Interrogatories Nos. 6 and 7 to WTNY meet the proportionality requirement set forth in Rule 26, Fed.R.Civ.P. and case law previously provided to Plaintiffs regarding proportionality. Please advise regarding Plaintiffs' position.

Ultimately, WTNY has nothing in its possession, custody, or control which would provide responsive, discoverable information to Plaintiffs Interrogatories Nos. 6 & 7 to WTNY.  Of course, if we come across any responsive, discoverable information, we will supplement WTNY's Answers accordingly.

<u>Plaintiffs' Interrogatories Nos. 9 and 17 to WTNY</u>

Based on Ryan's March 26, 2021 letter and our phone call with Ryan on March 29, 2021, we understand Plaintiffs believe issues exist with Plaintiffs' Interrogatories Nos. 9 and 17 to WTNY. Interrogatory No. 9 asks WTNY to "[i]dentify what the governing body does, where it is located, what it is responsible for, how it makes decisions, etc.?" WTNY responded as follows:

> Objection.  Please refer to the General Objection, above, for an explanation as to why the time period requested in this Interrogatory is improper.  This request is also irrelevant, is not reasonably calculated to lead to the discovery of admissible evidence, and is vague and ambiguous as to the term 'etc.' Subject to and without waiving these objections: The Governing Body is a small group of spiritually-

---

[2] We note that while Ryan's March 26, 2021 letter states the Interrogatories are "reasonably calculated to lead to discovery of admissible information[,]" such language has no support under the Federal Rules of Civil Procedure. *See* Commission Comments to 2015 Amendment to Rule 26 (explaining that the phrase "reasonably calculated to lead to the discovery of admissible evidence" was deleted because the phrase was being incorrectly used to define the scope of discovery.

Brown Law Firm, P.C.
April 8, 2021
Page 5 of 12

> mature Christians who provide spiritual guidance to Jehovah's Witnesses worldwide. The Governing Body follows the pattern set by 'the apostles an elders in Jerusalem' the first century, who made important decisions on behalf of the entire Christian congregation. (Acts 14:2) Like those faithful men, the members of the Governing Body are not the leaders of Jehovah's Witnesses. The Governing Body serves in Warwick, New York, U.S.A.

From Ryan's March 26 letter and our phone call with Ryan on March 29, we understand Plaintiffs' issues with WTNY's Answer to Plaintiffs' Interrogatory No. 9 are: (1) Plaintiffs want additional clarification of the ecclesiastical nature of the Governing Body; and (2) Plaintiffs believe the Governing Body does more than what has been represented.

As we tried to explain to Ryan during our March 29 call, the ecclesiastical guidance provided by the Governing Body, in general terms, constitutes spiritual guidance provided to individual Jehovah's Witnesses based on scripture. Black's Law Dictionary also defines "ecclesiastical" as "[o]f, relating to, or involving the church, esp. as an institution." ECCLESIASTICAL, Black's Law Dictionary (11th ed. 2019). Other definitions of ecclesiastical are similar. *See* Merriam-Webster, Ecclesiastical ("1. of or relating to a church especially as an established institution. 2. suitable for use in a church."); Dictionary.com, Ecclesiastical ("of or relating to the church or the clergy; churchly; clerical; not secular.").

Ecclesiastical guidance is not the same as legal direction. For example, if, as part of the ecclesiastical guidance the Governing Body provides to those who follow the religion, the Governing Body determines scripture teaches Jehovah's Witnesses should not celebrate Christmas, no organization or entity associated with Jehovah's Witnesses would hold a Christmas party. Such organizations and/or entities would not be legally prohibited from holding a Christmas party. However, holding a Christmas party would be contrary to the ecclesiastical guidance provided based on scripture.

Moving to Plaintiffs' assertion the Governing Body does more than has been represented, Ryan identified a document produced by the Hardin Congregation in response to Plaintiffs' subpoena, which indicated the Governing Body "approved the recommendations on the reverse side as indicated by the Watchtower Society stamp below." We understand such "approval" is a templated administrative matter and is part of the ecclesiastical structure of the religion. We also understand that members of the Governing Body have anonymously drafted or edited articles which are contained in publications WTPA copyrights and WTNY publishes. Again, that fits squarely within the scope of the ecclesiastical guidance the Governing Body provides to those who follow the faith.

Interrogatory No. 17 asks WTNY to "identify the documents that 'members of the religious order of Jehovah's Witnesses' provided to local congregations as part of providing 'ecclesiastical oversight.'" WTNY responded as follows:

Brown Law Firm, P.C.
April 8, 2021
Page 6 of 12

> Objection.  Please refer to the General Objection, above, for an explanation as to why the time period requested in this Interrogatory is improper.  WTNY further objects on grounds that this request seeks information outside the scope of Court-permitted jurisdictional discovery, is irrelevant to the extent it seeks information concerning congregations outside of Montana, is not reasonably calculated to lead to the discovery of admissible evidence, is overly broad, and is not proportional to the needs of the case.

We fail to see how Plaintiffs' Interrogatory No. 17 comports with the scope of jurisdictional discovery permitted as to WTNY.  *See* Doc. 47, p. 5 in the *Caekaert* matter; Doc. 37, p. 5 in the *Rowland* matter (both permitting Plaintiffs to "conduct discovery into WTPA's and WTNY's corporate relationship from 1973 to 1992").  Please advise as to Plaintiffs' position in this regard.

It appears to us that Plaintiffs' Interrogatory No. 17 is the quintessential "give me everything that could possibly exist" type of interrogatory we believe plainly fails to meet Rule 26, Fed.R.Civ.P.'s proportionality requirement. As one Montana court has explained, "[i]n the written discovery process, parties are not entitled to each and every detail that could possibly exist in the universe of facts." *Kelley v. Billings Clinic*, 2013 WL 1414442, *4 (D. Mont. April 8, 2013) (citations omitted). Plaintiffs' Interrogatory No. 17 to WTNY does not provide any sort of specifications on what in particular Plaintiffs are looking for.  We are willing to work with Plaintiffs but believe some cooperation from Plaintiffs would help narrow the scope of Plaintiffs' request.

Plaintiffs' Interrogatory No. 25 to WTPA

Ryan's March 26, 2021 letter indicates a dispute still exists regarding Plaintiffs' Interrogatory No. 25 to WTPA, which asks WTPA to "describe the relationship between the Governing Body, WTPA and WTNY for each during the period 1970-1995 as it pertains to directing the affairs of Jehovah's Witnesses congregations in the United States." WTPA answered as follows:

> Objection.  Please refer to WTPA's Third General Objection, above, for an explanation as to why the time period requested in this Interrogatory is improper. Subject to and without waiving this objection: The Watch Tower Bible and Tract Society of Pennsylvania is a nonprofit corporation formed in 1884 under the laws of the Commonwealth of Pennsylvania, U.S.A.  It is used by Jehovah's Witnesses to support their worldwide work, which includes publishing Bibles and Bible-based literature.  Besides the Watch Tower Bible and Tract Society of Pennsylvania, Jehovah's Witnesses have other legal entities that perform various legal tasks associated with fulfilling Jesus' commission recorded at Matthew 28:19, 20.  One such legal entity is [WTNY], which prints Bibles and Bible-based literature that is used by Jehovah's Witnesses.  Some of that literature is used in

Brown Law Firm, P.C.
April 8, 2021
Page 7 of 12

> connection with the ministry done by Jehovah's Witnesses, again in connection with Jesus' commission in Matthew 28:19-20. Congregations form for the purpose of allowing Jehovah's Witnesses and others interested in attending their meetings to gather together to worship God. At their own choice, congregations may form corporations or trusteeships to own property used as Kingdom Halls (meeting places). Those that do not form a corporation or trusteeship typically remain unincorporated associations. Each legal entity is separate and distinct from one another. The Governing Body of Jehovah's Witnesses is an ecclesiastical group of men who care for the spiritual interests of Jehovah's Witnesses. It has no legal or corporate control over any entity used by Jehovah's Witnesses.

As we explained to Ryan during our call on March 29, 2021, the Governing Body does not manage either WTPA or WTNY. While WTPA and WTNY work closely with the Governing Body with respect to the ecclesiastical guidance the Governing Body provides to those who follow the religion as explained above (i.e., Christmas example), the Governing Body has no legal control over either entity. However, as you will note from the Defendants previously provided discovery responses, in the history of Jehovah's Witnesses there were times when the boards of directors for WTPA and WTNY included individuals who were also members of the Governing Body.

For these reasons, we struggle to see what remaining issue(s) exist with respect to Plaintiffs' Interrogatory No. 25 to WTPA. Please advise if Plaintiffs contend an issue/issues still exist so we can understand where Plaintiffs are coming from.

Plaintiffs' RFA No. 3 to WTPA & Plaintiffs' Interrogatory No. 18 to WTPA

Ryan's March 26, 2021 letter indicates an issue exists with respect to RFA No. 3 to WTPA, which asked WTPA to "admit that in 1977, [WTNY] was a subsidiary of WTPA." WTPA responded as follows: "Deny. WTNY has no corporate parent and is not a 'legal' subsidiary of any other entity. In a religious sense it is secondary or supplemental to WTPA in that it provides publishing services to WTPA."

Ryan's March 26 letter also indicates an issue exists with respect to WTPA's Answer to Plaintiffs' Interrogatory No. 18, which asks WTPA to "identify the date the Watchtower Bible and Tract Society of New York ceased operating as a subsidiary of WTPA." WTPA responded by explaining, "WTNY has never operated as a subsidiary of WTPA."

During our call with Ryan on March 29, 2021, we again explained the lack of a parent subsidiary relationship between WTPA and WTNY, as we have done previously.

Brown Law Firm, P.C.
April 8, 2021
Page 8 of 12

Ryan conceded during our call that there is no evidence of WTPA and WTNY being in a parent-subsidiary relationship (Ryan noted looking at Secretary of State website(s)), but nonetheless indicated a disagreement still exists based on a single sentence which uses the word "subsidiary."[3]  Black's Law Dictionary defines "subsidiary" in pertinent part as "subordinate." *See* SUBSIDIARY, Black's Law Dictionary (11th ed. 2019). The Merriam-Webster dictionary defines "subsidiary" in part as "furnishing aid or support" and "of secondary importance." Dictionary.com defines "subsidiary" in part as "serving to assist or supplement; auxiliary; supplementary" and "subordinate or secondary." In contrast to such definitions, Black's Law Dictionary defines "subsidiary corporation" as "[a] corporation in which a parent corporation has a controlling share."  *See* CORPORATION; subsidiary corporation, Black's Law Dictionary (11th ed. 2019).

Again, WTPA is not a "parent corporation ha[ving] a controlling share" of WTNY.  Instead, WTNY is secondary in that it was formed after WTPA and therefore "subordinate" in that sense. As previously explained, WTNY "assist[s] or supplement[s]" WTPA with respect to publishing services provided to WTPA.

Please advise to the extent Plaintiffs are unwilling to concede WTPA's Response to Plaintiffs' RFA No. 3 and WTPA's Answer to Plaintiffs' Interrogatory No. 18 both comply with the Federal Rules of Civil Procedure.  We are happy to consider any additional information Plaintiffs believe is pertinent.

Plaintiffs' RFA No. 4 to WTPA

Ryan's March 26, 2021 letter indicates an issue exists regarding WTPA's Response to Plaintiffs' RFA No. 4.  During our call with Ryan on March 29, 2021, Ryan reiterated an unidentified issue still exists with WTPA's response to Plaintiffs' RFA No. 4, which asks WTPA to "admit that in 1977 WTPA notified persons endeavoring to donate to the Jehovah's Witness church to make their contributions payable to WTPA."  WTPA responded as follows: "Admit in part and deny in part. WTPA admits that it accepts voluntary donations in support of its religious activities but denies that it 'notified' persons to donate to it in 1977."

We struggle to see what issue exists.  While Ryan stated during the March 29 phone call that it is okay if we disagree, and we generally agree with that statement, we are genuinely wondering what Plaintiffs' position is regarding WTPA's response to Plaintiffs' RFA No. 4.  Part of having a disagreement is understanding what the other person's/party's position is.  Please advise.

---

[3] It appears Plaintiffs are referencing Doc. 44-1, p. 10 in the *Caekaert* matter (Doc. 36-1, p. 10 in the *Rowland* matter), which reads in part: "The Watch Tower Bible and Tract society of Pennsylvania is the parent corporate agency of Jehovah's Witnesses. It works with its subsidiary legal agencies such as the Watchtower Bible and Tract Society of New York, Inc., the International Bible Students Association, and many others scattered throughout the earth, for carrying on the business that must be done in order to print and ship the good news."

Brown Law Firm, P.C.
April 8, 2021
Page 9 of 12

Plaintiffs' RFA No. 6 to WTPA

Based on Ryan's March 26, 2021 letter and our phone call with Ryan on March 29, it appears Plaintiffs contend an issue exists with WTPA's Response to Plaintiffs' RFA No. 6, which asks WTPA to "admit that in 2003 WTPA notified persons endeavoring to donate to the Jehovah's Witness church to make their contributions payable to WTPA." WTPA responded as follows: "Admit in part and deny in part. WTPA admits that it accepts voluntary donations in support of its religious activities but denies that it 'notified' persons to donate to it in 2003."

As with Plaintiffs' RFA No. 4 to WTPA, we struggle to understand what issue purportedly still exists with respect to WTPA's Response to Plaintiffs' RFA No. 6. Again, part of having a disagreement is understanding what the other person's/party's position is. Please advise.

Plaintiffs' RFA No. 7 to WTPA

Based on Ryan's March 26, 2021 letter and our phone call with Ryan on March 29, it appears Plaintiffs contend an issue exists with WTPA's Response to Plaintiffs' RFA No. 7, which asks WTPA to "admit that for the period 1977 through 2003 WTPA notified persons endeavoring to donate to the Jehovah's Witness church to make their contributions payable to WTPA." WTPA responded as follows: "*See* Responses to Request for Admission Nos. 4 and 6."

Based on the preceding discussion regarding WTPA's responses to Plaintiffs' RFAs Nos. 4 and 6, we struggle to understand what issue purportedly still exists with respect to WTPA's Response to Plaintiffs' RFA No. 7. To reiterate from above, part of having a disagreement is understanding what the other person's/party's position is. Please advise.

Plaintiffs' RFA No. 14 to WTPA

Based on Ryan's March 26, 2021 letter and our phone call with Ryan on March 29, it appears Plaintiffs contend an issue exists with WTPA's Response to Plaintiffs' RFA No. 14, which asks WTPA to "admit that at all times between 1970 and the present, WTPA works and has worked under the direction of the faithful and discrete slave class and its Governing Body." WTPA responded as follows:

> Objection. Please refer to WTPA's Third General Objection, above, for an explanation as to why the time period requested in this Request for Admission is improper. This request is also ambiguous as to the term 'worked under the direction' and unintelligible as to the term 'its Governing Body' as the two terms 'faithful and discreet slave' and 'Governing Body' are religiously understood to be one in the same. Subject to and without waiving these objections, WTPA denies this Request to the extent that it suggests any legal direction or oversight.

Brown Law Firm, P.C.
April 8, 2021
Page 10 of 12

As we explained to Ryan during on March 29 call, Plaintiffs' RFA No. 14 is drafted in a way that required WTPA to respond as it did.  What do Plaintiffs mean by "under the direction of…"?  As we have repeatedly explained to Plaintiffs, the Governing Body (also referred to as the "faithful and discreet slave") provides ecclesiastical guidance but has no legal control over any entity related to Jehovah's Witnesses.

For the reasons reiterated above, WTPA responded to Plaintiffs' RFA No. 14 as it did.  Please advise whether Plaintiffs still believe an issue exists with respect to Plaintiffs' RFA No. 14 to WTPA.

Plaintiffs' RFA No. 26 to WTPA

Ryan's March 26, 2021 letter indicates Plaintiffs have an issue with how WTPA responded to Plaintiffs' RFA No. 26.  Contrary to what Ryan's March 26 letter states, Plaintiffs' RFA No. 26 asks WTPA to "admit that WTPA has collected money from Montana for the purchase of insurance policies."[4]  WTPA responded as follows:

> Objection: Please refer to WTPA's Third General Objection, above, for an explanation as to why the time period requested in this Request for Admission is improper.  Subject to and without waiving said objection: WTPA can neither admit nor deny this request. WTPA has made reasonable inquiry, and the information it knows or can readily obtain is insufficient to enable it to confirm whether any congregations in Montana participated in KHAA during the relevant time period.

Plaintiffs have taken the position WTPA improperly reformulated the RFA. We respectfully disagree.  However, we will supplement WTPA's Response to align with the specific language of the RFA.

Plaintiffs' Request for Written Confirmation as to Whether WTPA and/or WTNY Have Specific Documents Allegedly Responsive to Plaintiffs' Jurisdictional Discovery Requests

In our conversation with Ryan on March 29, 2021, Ryan indicated Plaintiffs want written confirmation regarding whether WTPA and WTNY have specific documents allegedly responsive to Plaintiffs' jurisdictional discovery requests. While WTPA and WTNY have shown they are willing to work with Plaintiffs and will continue to do so, we are concerned Plaintiffs want to use any written confirmation provided as a game of "gotcha" to the extent there is a misunderstanding regarding what has been requested in jurisdictional discovery and/or the parties are speaking past each other. In our position, discovery should not be employed as a game

---

[4] Ryan's March 26 letter states Plaintiffs "asked that WTPA admit it collected money from *persons in* Montana for the purchase of insurance policies." (emphasis added).  No "persons in" is contained in Plaintiffs' RFA No. 26.

Brown Law Firm, P.C.
April 8, 2021
Page 11 of 12

of "gotcha." *See BankDirect Capital Finance, LLC v. Capital Premium Financing, Inc.*, 2018 WL 946396, *3 (N.D. Ill. Feb. 20, 2018) ("Discovery is not a game of 'gotcha.'") (citation omitted). Thus, we believe the parties should be able to communicate through counsel and come to an understanding on alleged jurisdictional discovery issues without resorting to a game of "gotcha," which we believe is improper and inconsistent with both the spirit of discovery and the Rules of Civil Procedure.

Deposition of Philip Brumley in his Individual Capacity

Switching gears slightly, we wanted to address Plaintiffs' request to take Philip Brumley's deposition in his individual capacity for purposes of jurisdictional discovery. We respectfully ask Plaintiffs to let us know why Plaintiffs believe a deposition of Mr. Brumley in his individual capacity is necessary considering Mr. Brumley will be WTPA's corporate designee for WTPA's 30(b)(6) deposition. As such, it is our position any questions Plaintiffs may want to ask Mr. Brumley in his individual capacity pertaining to jurisdictional discovery can be asked during WTPA's 30(b)(6) deposition. Please advise if you believe Plaintiffs need two separate dates, one for Mr. Brumley in his individual capacity, and another for WTPA's 30(b)(6) deposition.

30(b)(6) Deposition of WTNY

Mr. Mario Moreno will be WTNY's corporate designee for WTNY's 30(b)(6) deposition. Mr. Moreno is available for deposition on April 28 or April 29 or April 30, 2021.

Plaintiffs' Request to Take a Perpetuation Deposition of Mr. Rowland

We understand Plaintiffs want to take a perpetuation deposition of Mr. Rowland given his old age and apparent bad health, and that you intend to ask questions during this proposed deposition that are unrelated to jurisdictional discovery. As an initial matter, to the extent any questions are asked by any party in this proposed deposition that go beyond jurisdictional discovery, we request an agreement that the same will not be deemed an explicit or implicit waiver of WTPA's personal jurisdiction argument. Additionally, since no discovery regarding Plaintiffs' actual claims have yet occurred, our ability to question Mr. Rowland during this proposed deposition would be limited. As such, we also request an agreement that WTNY (and WTPA, if its Motions to Dismiss Pursuant to Rule 12(b)(2), Fed.R.Civ.P., are denied), may re-open the deposition of Mr. Rowland during discovery of Plaintiffs' actual claims. We believe such agreements are only fair given the circumstances. Please advise, and please also identify some proposed dates Plaintiffs are looking at for this proposed deposition so we can coordinate our schedules.

30(b)(6) Deposition of WTPA

Per your request, WTPA is holding the April 26, 2021 date for a 30(b)(6) deposition. Please let us know if Plaintiffs would like to proceed with that 30(b)(6) deposition as soon as possible so

Brown Law Firm, P.C.
April 8, 2021
Page 12 of 12

we can either clear that date from our calendars or continue to hold the same.  It is our position neither we nor our clients should have to continue to hold a date if Plaintiffs have no intention on proceeding.

<u>Notes to the Recently Produced Financial Documents</u>

WTNY is checking to see if it has these notes and we will provide an update once it has done so.

<u>Conclusion</u>

After reviewing this letter, we hope Plaintiffs will have a better understanding of our client's positions regarding jurisdictional discovery. Thank you for your attention to this matter, and please contact us with any questions or concerns.  As always, we remain willing to discuss and work through issues with Plaintiffs.

Sincerely,

Jon A. Wilson
Aaron M. Dunn
JAW/AMD
enclosure
cc:      Joel M. Taylor (via e-mail) (w/enclosure)

# Enclosure 1

Robert L. Stepans
Ryan R. Shaffer
James C. Murnion
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT 59802
Tel: (406) 543-6929
Fax: (406) 721-1799
rob@mss-lawfirm.com
ryan@mss-lawfirm.com
james@mss-lawfirm.com

*Attorneys for Plaintiff*

DEFENSE LAWYERS / FIRM

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, <br><br> Plaintiffs, <br><br> vs. <br><br> WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR., <br><br> Defendants, <br><br> WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., <br> Cross Claimant, <br><br> BRUCE MAPLEY, SR., <br> Cross Defendant. | Case No. CV-20-52-BLG-SPW <br><br><br> **JOINT JURISDICTIONAL DISCOVERY PLAN** |

Pursuant to the Court's August 18, 2020 Order, Plaintiffs and Defendants Watchtower Bible and Tract Society of New York, Inc. ("WTNY"), Watch Tower Bible and Tract Society of Pennsylvania ("WTPA"), by and through their undersigned counsel, submit this proposed Joint Jurisdictional Discovery Plan for the Court's consideration.[1]

## Jurisdictional Discovery in Related Case

The jurisdictional question pending in this case is also before the Court in Cause No. CV 20-59-BLG-SPW where the Court has similarly ordered jurisdictional discovery.  *See* ECF Doc. # 24.  Counsel for the parties agree that the jurisdictional issues in both cases are substantially similar and the jurisdictional discovery plan should be the same in both cases.  The parties further agree that, with the Court's approval, the case numbers for both cases shall appear in the caption for all jurisdictional discovery and such discovery may be used in both cases.

## Jurisdictional Discovery Does Not Limit the Right to Subsequent Fact Discovery

This discovery plan is intended to define the parameters and timing of jurisdictional discovery pursuant to the Court's Orders as it pertains to the personal

---

[1] On September 3, 2020, the parties held a telephone conference to discuss jurisdictional discovery.  Pro se Defendant Bruce Mapley Sr. was invited to attend but declined.

jurisdiction of the Court over WTPA.  Thus, the parties agree and understand that written discovery and depositions conducted under this Joint Jurisdictional Discovery Plan do not count against any party's right to conduct substantive factual discovery after the Court resolves WTPA's Motion to Dismiss.

### Areas of Agreement on the Proposed Scope of Jurisdictional Discovery[2]

Counsel for the parties agree to the following scope of jurisdictional discovery:

➢ WTPA's contacts and communications with the local Jehovah's Witness congregations in Montana, if any, during the relevant time period.

➢ WTPA's activities and conduct in Montana during the relevant time period.

➢ The Hardin Montana Jehovah's Witness congregation's contacts with WTPA, if any, during the relevant time period.

### Proposed Schedule for Jurisdictional Discovery

Counsel for the parties agree to the following schedule to complete jurisdictional discovery:

➢ Written discovery and service of third-party subpoenas to be completed by **February 26, 2021.**  Plaintiffs agree to serve an initial set of written discovery on or before **October 15, 2020**.

---

[2] The parties disagreed on several issues pertaining to the scope of jurisdictional discovery.  These disagreements have been summarized below.

➢ Depositions of individuals with knowledge pertinent to the
jurisdictional questions before the Court by **April 30, 2021**.

The parties agree that this proposed schedule is contingent upon the timely
completion of written discovery by the above deadline, which will require any
party answering or responding to discovery to be diligent and timely in such
answers and responses.  In the event discovery disputes or other complications
delay completion of written discovery, the parties shall request a status conference
with the Court to resolve such disputes and modify this schedule accordingly.

### Areas of Disagreement on the Proposed Scope of Jurisdictional Discovery

Counsel for the parties disagreed on the scope of jurisdictional discovery in
the following areas:

1. Relevant time period.

    a. Counsel for the parties disagree on the relevant time period.  Plaintiffs
    believe the relevant time period is 1970 to 1995; Defendants believe
    the relevant time period is 1973 to 1990.

2. Whether WTPA and WTNY were a "single enterprise."

    a. Counsel for the parties disagree on whether Plaintiffs should be
    entitled to discover facts bearing on whether WTPA and WTNY were
    a "single enterprise" during the relevant time period.  Plaintiffs
    believe they should be able to discovery facts bearing on whether

WTNY and WTPA were a "single enterprise" during this phase of discovery.  Defendants believe that such discovery is not permitted.

3.  Deposition of WTNY.

a.  Counsel for the parties disagreed on whether Plaintiffs should be entitled to depose WTNY as part of the jurisdictional discovery phase. Plaintiffs believe that they should be permitted to depose WTNY during this phase of discovery; Defendants believe such discovery is not permitted.

These disagreements will be best described and understood in the context of specific discovery requests and objections.  The parties will first endeavor to resolve any such disputes without the assistance of the Court.  If it is determined that the Court's assistance is needed, the parties will notify the Court of such and will proceed as the Court orders, including making additional informal efforts to resolve any remaining disputes.

DATED this 24th day of September, 2020.

By: /s/ Ryan Shaffer_____
  Robert L. Stepans
  Ryan R. Shaffer
  James C. Murnion
  MEYER, SHAFFER & STEPANS PLLP
  *Attorneys for Plaintiff*

By: __/s/ Guy W. Rogers_____
  Guy W. Rogers

Jon A. Wilson
BROWN LAW FIRM, P.C.
*Attorneys for Defendants Watchtower Bible and Tract Society of New York, Inc., and Watch Tower Bible and Tract Society of Pennsylvania*

CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of September, 2020, a true and accurate

copy of the foregoing was served on the following via email and U.S. Mail:

**VIA CM/ECF ONLY**
Guy W. Rogers
Jon A. Wilson
BROWN LAW FIRM, P.C.
315 North 24th Street
PO Drawer 849
Billings, MT  59103
grogers@brownfirm.com
jwilson@brownfirm.com

**VIA U.S. MAIL ONLY**
Bruce G. Mapley, Sr.
3905 Caylan Cove
Birmingham, AL 35215


    /s/ Ryan Shaffer