# EXHIBIT A

# EXCERPTS OF DEPOSITION OF CAMILLIA MAPLEY



COURT REPORTING

LEGAL VIDEOGRAPHY

VIDEOCONFERENCING

TRIAL PRESENTATION

MOCK JURY SERVICES

LEGAL TRANSCRIPTION

COPYING AND SCANNING

LANGUAGE INTERPRETERS



NAEGELI
DEPOSITION & TRIAL

CELEBRATING
40
YEARS IN BUSINESS

(800) 528-3335

NAEGELIUSA.COM

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION


TRACY CAEKAERT, and CAMILLIA MAPLEY,

      Plaintiffs,

v.                            Cause No. CV 20-52-BLG-SPW

WATCHTOWER BIBLE AND TRACT SOCIETY
OF NEW YORK, INC., WATCH TOWER
BIBLE AND TRACT SOCIETY OF
PENNSYLVANIA, and BRUCE MAPLEY SR.,

      Defendants.

_____

WATCHTOWER BIBLE AND TRACT SOCIETY
OF NEW YORK, INC.

      Cross-Claimant,

v.

BRUCE MAPLEY SR.,

      Cross-Claim Defendant.

_____


REMOTE VIDEOTAPED DEPOSITION OF

CAMILLIA MAPLEY


TAKEN ON
AEDT:  WEDNESDAY, NOVEMBER 30, 2022; 5:12 A.M.
MST:  TUESDAY, NOVEMBER 29, 2022; 11:12 A.M.


WORKSPACES - LEVEL 5
171 COLLINS STREET
MELBOURNE, 3000 AUSTRALIA

58

1    Q.  And what was discussed?
2    A.  That he was sexually abusing, and that he
3  was really sorry and he was crying and said he would
4  never do it again.
5    Q.  And I don't know if we need to know the
6  details, but did he elaborate during that meeting on
7  what the sexual abuse consisted of?
8    A.  I don't recall.  I just remember him
9  crying.
10    Q.  Were there any other times that he sat you
11  down and spoke about this?
12    A.  Not that I recall.
13    Q.  Are you aware of anybody else that Bruce
14  told this to?
15    A.  No.
16    Q.  You referenced this sit-down meeting
17  occurring after Gunner was found out.  What did you
18  mean by that?
19    A.  From my understanding as a nine- or ten-
20  year-old child, Gunner told Bruce, I believe, that
21  he sexually abused Tracy.
22    Q.  Did Gunner ever tell you that?
23    A.  No.
24    Q.  I understand that you're alleging in this
25  lawsuit that Gunner also sexually assaulted you, do

59

1  I have  that right?
2    A.  Yes.
3    Q.  Do you know if Gunner ever told Bruce
4  Senior that he was sexually abusing you?
5    A.  Don't know.
6    Q.  Other than this one meeting in the late
7  '70s, did you ever speak about this with Bruce
8  Senior?
9      MR. SHAFFER:  Object to form.
10  BY MR. SWEENEY:
11    A.  Yes, when I told Anne-Marie my cousin.
12    Q.  When was that?
13    A.  When they came to visit, '85?  Summer of
14  '85?
15    Q.  What was that discussion like?  Was it a
16  discussion with you, your cousin and Bruce, or what
17  happened?
18    A.  No, it was a discussion between my cousin,
19  excuse me, my cousin and I.
20    Q.  I'll back up to my question then.  I
21  probably asked it in a confusing way.
22      Other than discussing this in the late
23  '70s with Bruce and the rest of your immediate
24  family when Bruce cried, have you ever discussed
25  your allegations of sexual abuse with Bruce Senior?

60

1    A.  No.  I don't recall.
2    Q.  Do you know if Bruce was ever disciplined
3  by the Jehovah's Witness church?
4    A.  I believe so.
5    Q.  What discipline did he incur?
6    A.  I don't know.
7    Q.  Was Bruce ever dis-fellowshipped from the
8  Hardin Congregation, do you know?
9    A.  I don't think so.
10    Q.  Is Bruce Senior currently a Jehovah's
11  Witness?
12    A.  I don't know.  I think so, but I don't
13  know.
14    Q.  Did you ever inform anybody at WTPA or
15  WTNY Bruce's sexual abuse of you?
16    A.  No.
17    Q.  Did you ever inform anybody at the Hardin
18  Congregation?
19    A.  No.
20    Q.  And did you ever inform law enforcement?
21    A.  No.
22    Q.  You have recently dismissed your claims
23  against Bruce Senior, do I have that right?
24      MR. SHAFFER:  Object to form.  Her lawyers
25  did that.  That's correct.  That's what the record

61

1  will reflect.
2  BY MR. SWEENEY:
3    Q.  Cami, are you aware of that?
4    A.  Yes.
5    Q.  Can you tell me why?
6    A.  No, I don't know.
7    Q.  And you don't --
8    A.  That's for -- I'm not the legal team.
9    Q.  Why did you sue Bruce Senior in the first
10  place?
11      MR. SHAFFER:  Object to form.  Cami hired
12  lawyers to take what happened to her, what she
13  recited happened to her and put that into legal
14  papers and filed them on her behalf, so if you're
15  asking her for the strategic reasoning behind her
16  lawyers' decisions, I think that's an improper
17  question.
18      MR. SWEENEY:  I think your comments are
19  improper, Ryan.  My question is direct.  She sued
20  Bruce Mapley Senior.  I'm asking her why.
21      MR. SHAFFER:  Same objection.
22  BY MR. SWEENEY:
23    Q.  You can answer, Cami.
24    A.  Because he sexually abused me.
25    Q.  Then why  have you now dismissed your



62

1 claims against Bruce Senior?
2      MR. SHAFFER: Same objection.
3 BY MR. SWEENEY:
4      A.  And my answer is, is that's the lawyers'
5 decision.
6      Q.  Did you reach a settlement with Bruce
7 Senior?
8      A.  I have no contact with the man.
9      Q.  I appreciate that, but do you know if you
10 have entered into a settlement agreement with Bruce
11 Senior?
12      A.  If I have no contact, I have no contact.
13 How can I settle an agreement with him?
14      Q.  Do you know if you have released him from
15 being liable for the allegations in your complaint?
16      A.  I have no idea.
17      Q.  And I think you're testifying that you
18 don't know if you entered into a written settlement
19 agreement with Bruce Senior, is that accurate?
20      MR. SHAFFER: Object to form.  She said --
21 BY MR. SWEENEY:
22      A.  I never said I --
23      Q.  All right.
24      A.  I never said I didn't know.
25      MR. SHAFFER: Misstates her testimony.

63

1 BY MR. SWEENEY:
2      Q.  I'll ask you then, have you entered into a
3 written settlement agreement with Bruce Senior?
4      A.  No.
5      Q.  Is your testimony today that you have no
6 idea why he has been dismissed from this lawsuit?
7      MR. SHAFFER: Asked and answered.
8 BY MR. SWEENEY:
9      A.  Once again, that is for my lawyers to make
10 decision about what's happening.
11      Q.  And I appreciate that, Cami.  I'm asking
12 about your personal knowledge.  Do you know why he
13 was dismissed from this lawsuit?
14      MR. SHAFFER: Cami, don't answer that.
15 You and I have talked about that.  He's not allowed
16 to ask you that question.
17      MR. SWEENEY: Well, Ryan, she doesn't get
18 to insulate testimony simply by bringing it up with
19 you.  If she knows why a person she'd sue has been
20 dismissed, she has to tell me that.
21      MR. SHAFFER: If she knows why her lawyers
22 dismissed Bruce Mapley, she has to tell you that?  I
23 disagree.  Cami, don't answer the question.
24      MR. SWEENEY: Well, Ryan, this is not your
25 lawsuit.  This is hers.  She sued Bruce.  She

64

1 dismissed Bruce.  I'm going to ask her why.
2      If the answer is she doesn't know, she can
3 tell me that, but I don't think she gets to hide
4 behind attorney/client privilege for why she named
5 somebody as a defendant or why she dismissed them.
6      MR. SHAFFER: Her testimony has been
7 clear.  She left that to her lawyers to decide.  Her
8 lawyers decided it.  You're asking her now to get
9 into what her lawyers told her as about why her
10 lawyers dismissed Bruce Mapley, I believe that's
11 getting into attorney/client privilege
12 communication.  I'm not going to let her answer it.
13 BY MR. SWEENEY:
14      Q.  Cami, do you think Bruce Senior should
15 still be a defendant in this lawsuit?
16      A.  Well, his name's still on it, so isn't he?
17      Q.  He has been dismissed by order of court,
18 so inaccurately his name was represented as being in
19 the caption, but the claims have been dismissed, to
20 clear that up for you.
21      A.  Well, I think the truth should come out,
22 and that's what our goal is here, isn't it?
23      Q.  And I appreciate that, but my question is:
24 Do you think Bruce Senior should still be a
25 defendant in this lawsuit?

65

1      A.  Don't know.
2      Q.  How did you know Gunner Haines?
3      A.  He was in the congregation.
4      Q.  When did Gunner pass away?
5      MR. SHAFFER: Object to form.
6      MR. SWEENEY: Let's clear that up, Ryan,
7 just so the record's clear.  What exactly is your
8 objection?
9      MR. SHAFFER: Foundation.  Speculation.
10 If you really want to find that information, it's in
11 the newspaper.  I don't think it's a proper question
12 for this witness.
13 BY MR. SWEENEY:
14      Q.  Cami, do you know when Gunner passed away?
15      A.  No.
16      Q.  Has it been more than ten --
17      A.  I have a general idea, but --
18      Q.  What is your general idea?
19      A.  I don't know, Bruce Junior told me.  I
20 don't know how long ago that was.
21      Q.  What years do you claim Gunner abused you?
22      A.  '77?  '78?
23      Q.  How many times did Gunner Haines abuse
24 you?
25      A.  Once.

```
 1                          CERTIFICATE

 2

 3          I, Megan Ramirez, do hereby certify that I reported
     all proceedings adduced in the foregoing matter and that
 4   the foregoing transcript pages constitutes a full, true

 5   and accurate record of said proceedings to the best of my
     ability.
 6
            I further certify that I am neither related to
 7   counsel or any party to the proceedings nor have any

 8   interest in the outcome of the proceedings.

 9          IN WITNESS HEREOF, I have hereunto set my hand this
     14th day of December, 2022.
10

11

12

13

14   _____

15                   Megan Ramirez

16

17

18

19

20

21

22

23

24

25
```