Robert L. Stepans
Ryan R. Shaffer
James C. Murnion
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT  59802
Tel: (406) 543-6929
Fax: (406) 721-1799
rob@mss-lawfirm.com
ryan@mss-lawfirm.com
james@mss-lawfirm.com

Matthew L. Merrill (appearing *pro hac vice*)
Merrill Law, LLC
6631 Mariposa Court
Denver, CO  80221
Tel: (303) 947-4453
matthew@merrillwaterlaw.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, <br><br> Plaintiffs, <br><br> vs. <br><br> WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR., <br><br> Defendants, <br><br> WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., <br> Cross Claimant, <br><br> BRUCE MAPLEY, SR., <br> Cross Defendant. | Case No. CV-20-52-BLG-SPW <br><br> AND <br><br> Cause No. CV 20-59-BLG-SPW <br><br> **PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION OF NON-PRIVILEGED INFORMATION IN DOCUMENTS WITHHELD BY WTNY ON THE BASIS OF CLERGY-PENITENT PRIVILEGE** |

ARIANE ROWLAND, and JAMIE            )
SCHULZE,                             )
                                     )
               Plaintiffs,           )
                                     )
       vs.                           )
                                     )
WATCHTOWER BIBLE AND TRACT           )
SOCIETY OF NEW YORK, INC.,           )
WATCH TOWER BIBLE AND TRACT          )
SOCIETY OF PENNSYLVANIA,             )
                                     )
               Defendants.           )
                                     )

///

///

///

# TABLE OF CONTENTS

SUMMARY OF PLAINTIFFS' MOTION ..................................................................1

FACTUAL BACKGROUND .................................................................................2

    A. Plaintiffs' Cases...................................................................................2

    B. Documents Withheld by WTNY Under Clergy-Penitent Privilege..........4

        a. Reports of Known Child Molesters .......................................................4

        b. Bruce Mapley, Sr. Disfellowship Form .................................................5

        c. Other Letters .......................................................................................5

APPLICABLE LAW ............................................................................................6

ARGUMENT ......................................................................................................8

    A. Reports of Known Child Molesters (Privilege Log Entries 27-36)
       Are Secular Business Records....................................................................9

        a. Relevance and Importance of Reports to Plaintiffs' Case...................10

        b. WTNY Has Not Met Its Burden .........................................................12

        c. Privilege Log Entry 29 (Report Regarding Gunnar Hain) .................13

        d. Privilege Log Entries 27, 28, 30 – 36 (Reports of Other
           Known Child Molesters in Montana)....................................................14

    B. Bruce Mapley, Sr. Disfellowship Form (Privilege Log Entry 40)..........15

    C. Other Letters Withheld by WTNY ........................................................16

Plaintiffs' Brief in Support of Their Motion to Compel Production of Non-Privileged
Information in Documents Withheld by WTNY on the Basis of Clergy-Penitent Privilege

i

a.  Letters Regarding Gunnar Hain (Privilege Log Entries 37 and 39).............................................................................16

b.  Letter from the Hardin Congregation to WTNY Service Department Regarding Martin Svenson (Privilege Log Entry 38)..............................................................................17

D.  Request for *In Camera Review*.................................................18

E.  This Court has Already Determined that WTNY's Alleged Third Party Privacy Privilege is Not Recognized by Montana Law.................18

CONCLUSION ...........................................................................19

Plaintiffs' Brief in Support of Their Motion to Compel Production of Non-Privileged Information in Documents Withheld by WTNY on the Basis of Clergy-Penitent Privilege

ii

# TABLE OF AUTHORITIES

## Cases

*Ellis v. U.S.*,
    922 F.Supp. 539 (D. Utah 1996)................................................................7

*McFarland v. W. Congregation of Jehovah's Witnesses, Lorain Ohio, Inc.*,
    60 N.E. 39 (Ohio Ct. App. 2016)................................................. 6, 7, 15

*Nelson v. City of Billings*,
    412 P3d 1058 (2018)....................................................................7, 13

*State v. Gooding*,
    989 P.2d 304 (1999)................................................................. 6, 7, 13

*State v. MacKinnon*,
    957 P.2d 23, 28 (1998)............................................................. 6, 7, 15

*Sweeney v. Dayton*,
    416 P.3d 187 (2018)....................................................................7, 13

*Trammel v. U.S.*,
    445 U.S. 40 (1980)......................................................................19

## Statutes

Mont. Code Ann. §26-1-804 ................................................................6

Mont. Code Ann. §27-1-221 ..............................................................11

Mont. Code Ann. §27-1-221 (7) ..........................................................11

Mont. Code. Ann. §27-2-216 (5) (a).......................................................10

## Other Authorities

Montana Pattern Jury Instructions 2d 25.65 .............................................11

Montana Pattern Jury Instructions 2d 25.66 .............................................11

Plaintiffs' Brief in Support of Their Motion to Compel Production of Non-Privileged
Information in Documents Withheld by WTNY on the Basis of Clergy-Penitent Privilege
iii

Plaintiffs in the above referenced matters submit the following brief in support of their Motion to Compel Production of Non-Privileged information being withheld by Defendant Watchtower Bible and Tract Society of New York, Inc. ("WTNY") under the alleged authority of Montana's clergy-penitent privilege.

## SUMMARY OF PLAINTIFFS' MOTION

WTNY is withholding documents evidencing its corporate knowledge of unlawful child sex abuse within the Jehovah's Witness church, including the child sex abuse at issue in this case. There is a significant likelihood that these documents contain evidence supporting Plaintiffs' claims, including evidence that WTNY was on notice of the abuse through its various agents.

According to WTNY, Montana's clergy-penitent privilege - which only applies to a limited category of communications between a cleric and penitent – provides it authority to withhold the documents. Yet, the documents are corporate reports of known child molesters within the church and correspondence between various groups of Jehovah's Witness elders about those child molesters. These are secular, corporate reporting documents; they are not privileged communications between clerics and penitents.

WTNY asserts that any document pertaining to, referencing, or evidencing unlawful child sex abuse is privileged because WTNY considers the documents to be "confidential" under an investigative/judicial process within the Jehovah's

Plaintiffs' Brief in Support of Their Motion to Compel Production of Non-Privileged Information in Documents Withheld by WTNY on the Basis of Clergy-Penitent Privilege

1

Witness church.  But confidential does not equal privileged, and secular

investigative reports do not equal clergy-penitent religious communications.

WTNY has not established that any parts of the withheld documents meet

the test of a genuinely privileged clergy-penitent communication, let alone every

word on every document.[1]  While confessions and confidential communication to a

cleric that are part of an established clergy-penitent process can be privileged, the

fact that child sex abuse occurred and that WTNY had notice of it cannot be.

WTNY had the burden of proving that its sweeping claims of testimonial privilege

permit it to withhold all information in the withheld documents.  It has not done so.

## FACTUAL BACKGROUND

A. Plaintiffs' Cases

This case is about the sexual abuse of children by elders and ministerial

servants in the Hardin, MT congregation of Jehovah's Witnesses during the period

1973 to 1992.  Plaintiffs are victims of this abuse and they have brought claims

against corporations that were used by the Jehovah's Witness church (the

"Organization") to implement policies and practices that protected the perpetrators

---

[1] Even assuming one or more of the withheld documents contain a genuinely
privileged communication, other parts of these documents likely contain non-
privileged information that may bear on the question of what WTNY's elders knew
about the sexual abuse, how WTNY handled reports of the abuse, and why
WTNY's elders failed to report the abuse to authorities as required by law.

Plaintiffs' Brief in Support of Their Motion to Compel Production of Non-Privileged
Information in Documents Withheld by WTNY on the Basis of Clergy-Penitent Privilege

2

and permitted the abuse to continue without consequence.

Front and center in this case is what the corporate defendants knew, or had reason to know, about the abuse (either directly or through their representatives) and what, if anything, they did to prevent it.  Plaintiffs' evidence already establishes that:

➢ In 1977, the Jehovah's Witness elders in the Hardin Congregation – who were appointed, trained, and supervised by WTNY - learned that Bruce Mapley, Sr. had been sexually abusing Plaintiffs.  Rather than report the abuse to law enforcement as required by Montana law, the Jehovah's Witness elders told Plaintiffs' mother to keep the abuse secret. [2]  Dep. Trans. of Shirley Gibson, 60:17-64:5 (Apr. 14, 2022) (relevant portions attached as **Exhibit A**).

➢ When the father of two other Plaintiffs raised concerns about widespread child sex abuse within the Hardin Congregation, he was told to keep it quiet.  Dep. Trans. of James Rowland, 131:12-134:21 (Apr. 23, 2021) (relevant portions attached as **Exhibit B**).

The evidence will show that WTNY encouraged its elders to keep child sex

---

[2] In 1977, Montana's mandatory reporting statute required the Hardin Congregation elders to report the sexual abuse to law enforcement.

Plaintiffs' Brief in Support of Their Motion to Compel Production of Non-Privileged Information in Documents Withheld by WTNY on the Basis of Clergy-Penitent Privilege

3

abuse secret and that is what they did.  As a result, Plaintiffs suffered dearly.

B. Documents Withheld by WTNY Under Clergy-Penitent Privilege[3]

WTNY has withheld many documents that likely provide additional

evidence of: (a) the sexual abuse at issue in this case; (b) what WTNY's agents and

representatives knew about unlawful child sex abuse within the Organization; and

(c) what, if anything, WTNY and its agents did to stop the sexual abuse.

### a.  Reports of Known Child Molesters

In 1997, WTNY sent all Jehovah's Witness congregations a letter asking

them to send WTNY a detailed report about anyone "in your congregation who is

known to have been guilty of child molestation in the past."  March 14, 1997 All

Bodies of Elders Letter ("1997 BOE") (attached as **Exhibit D**).  Plaintiffs

requested copies of the reports submitted to WTNY from Montana congregations.

**Ex. C** (Pls. RFP No. 10 in Caekaert / Mapley and Pls. RFP No. 9-11 in Rowland /

Schulze).  WTNY objected and referenced ten (10) privilege log entries, all of

which make the same conclusory assertion that the reports are communications

between a member of the clergy and a penitent for the purpose of "seeking or

receiving religious guidance, admonishment, or advice."  **Ex. C (**WTNY's RFP

---

[3] An index of documents being withheld by WTNY under the assertion of clergy-penitent privilege, along with a copy of the relevant discovery requests, responses and WTNY's Second Supplemental Privilege Log is attached hereto as **Exhibit C** for the Court's convenience.

Plaintiffs' Brief in Support of Their Motion to Compel Production of Non-Privileged
Information in Documents Withheld by WTNY on the Basis of Clergy-Penitent Privilege

4

Responses and Second Supplemental Privilege Log Entries 27-36).

### b.  Bruce Mapley, Sr. Disfellowship Form

WTNY is withholding a "form" regarding Bruce Mapley, Sr. that was sent from the Canyon Ferry Congregation to the Organization's Service Department. **Ex. C** (Privilege Log Entry 40).  This form is most likely an S-77 or S-79 form used by Jehovah's Witness congregations to inform the Organization that a congregant has been disfellowshipped.[4]  As with every document that it has withheld based on clergy-penitent privilege, WTNY summarily asserts that the form is "seeking or receiving religious guidance, admonishment or advice." **Ex. C** (Privilege Log Entry 40).

### c.   Other Letters

WTNY has also withheld:

➢ A letter from the Hardin Congregation to the Pacific Washington Congregation regarding known child molester, Gunnar Hain." **Ex. C** (Privilege Log Entry 37).

➢ A letter from the Hardin Congregation to the WTNY Service Department

---

[4] Disfellowshipping is a form of punishment used by the Church when an internal committee of elders determines that a person has committed a serious sin and is unrepentant, has a "truly bad heart, or is determined to pursue a God-dishonoring course. Jehovah's Witness Elder Textbook (1991), pp 119-128 (attached as **Exhibit E**).

Plaintiffs' Brief in Support of Their Motion to Compel Production of Non-Privileged Information in Documents Withheld by WTNY on the Basis of Clergy-Penitent Privilege

5

regarding Hardin Congregation elder and presiding overseer, Martin

Svenson.  **Ex. C** (Privilege Log Entry 38).

➢ A letter from WTNY's Service Department to the Hardin Congregation

regarding known child molester, Gunnar Hain.  **Ex. C** (Privilege Log

Entries 39).

## APPLICABLE LAW

Montana's clergy-penitent privilege is to be strictly construed and protects

from disclosure: (1) a confession or other non-penitential statement made to a

member of the clergy; (2) in confidence; (3) for the purpose of seeking or receiving

religious guidance, admonishment, or advice; so long as (4) the cleric was acting in

his or her religious role pursuant to the established practices of the subject church.

*State v. MacKinnon*, 957 P.2d 23, 28 (1998); *State v. Gooding*, 989 P.2d 304, 307

(1999); *see also* Mont. Cod Ann. §26-1-804.

Just because information about child sex abuse is considered confidential by

the Jehovah's Witness church does not mean it is privileged under applicable law.

*See* Doc. 79 at 19 (citing *McFarland v. W. Congregation of Jehovah's Witnesses,

Lorain Ohio, Inc.*, 60 N.E. 39 (Ohio Ct. App. 2016).  Significant information about

child sexual abuse occurring within the Jehovah's Witness church is not privileged

from disclosure:

Plaintiffs' Brief in Support of Their Motion to Compel Production of Non-Privileged
Information in Documents Withheld by WTNY on the Basis of Clergy-Penitent Privilege

6

➢ Statements made to a cleric without a corresponding request for spiritual advice or counseling are not protected by the clergy-penitent privilege. *MacKinnon*, 957 P.2d at 28-29.

➢ Statements or confessions that are not kept confidential are not protected by the clergy-penitent privilege. *Id*.; *Gooding*, 989 P.2d at 307.

➢ Reports of known child molesters, even if confidential to the Jehovah's Witness Organization, are not protected by the clergy penitent privilege because they are not part of an established clergy-penitent religious process. *McFarland*, 60 N.E. at 49-50 (noting that testimonial privileges must be strictly construed against the party asserting them and the required element of seeking religious advice or guidance must be present); *see also Ellis v. U.S.*, 922 F.Supp. 539, 541 (D. Utah 1996) (communication to a cleric for administrative or informational purposes is secular in nature and therefore cannot be protected from production).

WTNY has the burden of establishing that all information contained in the withheld documents is privileged. *Sweeney v. Dayton*, 416 P.3d 187, 190 (2018); *see also*, *Nelson v. City of Billings*, 412 P3d 1058, 1071 (2018); *Gooding*, 989 P.2d at 307 (citing *MacKinnon* for the long-established rule that "testimonial privileges must be strictly construed because they contravene the fundamental principle that the public has the right to everyone's evidence."). WTNY cannot meet this burden

Plaintiffs' Brief in Support of Their Motion to Compel Production of Non-Privileged
Information in Documents Withheld by WTNY on the Basis of Clergy-Penitent Privilege

7

with assumptions, conclusory descriptions, or non-evidentiary representations of counsel.  WTNY must meet its burden with evidence.

If WTNY asserts that a confession was made, WTNY must prove it.  If WTNY asserts that the confession was confidential, WTNY must prove it.  If WTNY asserts that the confidential confession was made in the course of the Jehovah's Witness's clergy-penitential religious process, WTNY must prove it.  If WTNY asserts that a penitent was seeking or receiving spiritual advice, WTNY must prove it.  In sum, if WTNY wants to continue withholding material evidence based on the clergy-penitent privilege, it must establish that all such evidence is indeed privileged.

## ARGUMENT

While the law protects the sanctity of the established Jehovah's Witness clergy-penitent religious process, WTNY cannot establish that the withheld documents were produced as part of that process.  For example, WTNY is withholding corporate reports it received from local congregations about the existence of known child molesters within the church.  But those corporate reports were not produced as part of an established, sacred, religious process.  They were produced as part of a 1997 corporate investigative process.  Montana's clergy-penitent privilege does not protect documents produced as part of a 1997 corporate investigative process.  And even if WTNY could establish the existence of a

Plaintiffs' Brief in Support of Their Motion to Compel Production of Non-Privileged
Information in Documents Withheld by WTNY on the Basis of Clergy-Penitent Privilege

8

privileged clergy-penitent communication in one or more of the documents, other information in the documents is not privileged and should be produced.

A. Reports of Known Child Molesters (Privilege Log Entries 27-36) Are Secular Business Records.

WTNY's 1997 BOE letter was sent to all Jehovah's Witness congregations in the United States and required each congregation to prepare and send Watchtower a report providing information about known child molesters. **Ex. D**. The reports were to identify details about the known molester, details about the sexual abuse, and what actions were taken, if any, by the congregation. **Ex. D**. In 1998, WTNY reminded its U.S. congregations about the 1997 BOE letter and the importance of submitting the requested child molestation reports because it was concerned about legal liability, noting that "court officials and lawyers will hold responsible any organization that knowingly appoints former child abusers to positions of trust . . ." July 20, 1998 All Bodies of Elders Letter ("1998 BOE") (attached as **Exhibit F**).

Jehovah's Witness congregations in Montana responded to the 1997 BOE by preparing and delivering the requested reports to WTNY. **Ex. C** (entries 27-36). WTNY's privilege log claims the reports are privileged communications between a penitent and cleric that are "seeking or receiving religious guidance, admonishment, or advice." *Id*. But the documents themselves are not a sacred

Plaintiffs' Brief in Support of Their Motion to Compel Production of Non-Privileged Information in Documents Withheld by WTNY on the Basis of Clergy-Penitent Privilege

9

privileged religious communication between a cleric and a penitent.  They are

secular reports produced as part of a 1997 corporate investigation.  Doc. 82 at 3.[5]

### a.  Relevance and Importance of Reports to Plaintiffs' Case

Reports of known child molesters received by WTNY are important

evidence on several issues in this case.  First, Plaintiffs' have brought their claims

under a Montana statute that requires Plaintiffs to demonstrate that:

> *the entity against whom the action is commenced, based upon*
> *documents or admissions by employees, officers, directors, officials,*
> *volunteers, representatives, or agents of the entity, knew, had reason*
> *to know, or was otherwise on notice of* **any unlawful sexual conduct**
> *by an employee, officer, director, official, volunteer, representative,*
> *or agent and failed to take reasonable steps to prevent future acts of*
> *unlawful sexual conduct.*

Mont. Code. Ann. §27-2-216 (5) (a) (*emphasis added*).  Reports received by

WTNY of known sexual molesters in Montana are likely to provide evidence of

what WTNY's local volunteers, representatives, or agents knew about "**any**

**unlawful sexual** conduct" and when they knew it.

Second, the processes and procedures that the corporate defendants put in

place for handling reports of sexual abuse are at issue.  The withheld documents

are likely to shed light on what WTNY knew about the prevalence of child sex

---

[5] *Document 1* referred to in the Court's July 30, 2021, Order (Doc. 82) is the same
document identified in WTNY's Privilege Log entry 29, which is the Hardin
congregation's report of known child molester Gunnar Hain.

Plaintiffs' Brief in Support of Their Motion to Compel Production of Non-Privileged
Information in Documents Withheld by WTNY on the Basis of Clergy-Penitent Privilege

10

abuse at its congregations and when it knew it, and will bear on the level of care it should have exercised in protecting young victims from known child molesters.  At trial, when Plaintiffs produce compelling they were abused by WTNY agents and representatives, WTNY will want to argue that the Hardin congregation and the perpetrators were "rogue" actors, and therefore WTNY cannot possibly be responsible for their conduct.  However, based on WTNY's privilege log, child sex abuse in the Jehovah's Witness church was not just limited to the Hardin congregation.  At least nine other Montana congregations submitted reports of known child molesters within the church.  Plaintiffs are entitled to this evidence to rebut any argument that the Hardin congregation and perpetrators were rogue outliers.

Finally, reports of known child molesters received by WTNY will be relevant to Plaintiffs' claims for punitive damages.  Liability for punitive damages can be established by showing that the corporate defendants knowingly failed to take reasonable steps to stop the widespread child sex abuse that they knew was occurring at its congregations.  *See* Mont. Code Ann. §27-1-221; MPI2d 25.65. Additionally, when determining the appropriate amount of punitive damages, the jury will be asked to consider the "extent and enormity of the wrong" and "the intent of the party committing it."  Mont. Code Ann. §27-1-221 (7); MPI2d 25.66. Evidence of widespread reports of known child molesters submitted to WTNY are

Plaintiffs' Brief in Support of Their Motion to Compel Production of Non-Privileged
Information in Documents Withheld by WTNY on the Basis of Clergy-Penitent Privilege

11

direct evidence of the "extent and enormity of the wrong" and the corporate

defendants' intent in choosing to protect the Organization's reputation rather than

protecting victims of child sex abuse.  In sum, the reports of known child molesters

set forth in WTNY's privilege log are material evidence that Plaintiffs are entitled

to obtain in discovery.[6]

### b.  WTNY Has Not Met Its Burden

WTNY has not established that the reports contain any information obtained

as part of a confidential, sacred religious process.   WTNY provides no evidence of

what constitutes its established clergy-penitent religious process; WTNY provides

no evidence that any of the documents include a communication between a cleric

that was conducted as part of that established religious process; and WTNY

provides no evidence that such communication was conducted confidentially and

that such confidentiality was maintained over time.  There is no sworn statement,

from a person with adequate knowledge and foundation, satisfying any parts of

Montana's clergy-penitent test for any information on any of the withheld

---

[6] As it has throughout this case, WTNY is likely to argue that the withheld
documents are not discoverable because they are dated after the abuse at issue
occurred.  This is a red herring because the 1997 BOE specifically requests reports
of known child molesters who committed past abuse.  As the 1997 report about
Gunnar Hain demonstrates (Privilege Log entry 29), the documents refer to historic
child sex abuse that predates the report.  Thus, the date of the withheld report does
not matter; it is the content of the report that matters.

Plaintiffs' Brief in Support of Their Motion to Compel Production of Non-Privileged
Information in Documents Withheld by WTNY on the Basis of Clergy-Penitent Privilege

12

documents.  Yet, that is WTNY's burden.  *Sweeney*, 416 P.3d at 190; *Nelson*, 412

P3d at 1071; *Gooding*, 989 P.2d at 307.  Even if WTNY provides the necessary

sworn statement establishing that one or more of the withheld documents contain a

genuinely privileged communication, the clergy-penitent privilege would not apply

to any other information in the purely secular, corporate reports.

### c. Privilege Log Entry 29 (Report Regarding Gunnar Hain)

During the jurisdictional discovery phase of this case, the Hardin

congregation withheld a copy of a report it sent to WTNY regarding known child

molester, Gunnar Hain.  *See* Doc. 59 and 59-3 (identifying Hardin congregation

privilege log entry No. 1 as April 23, 1997, correspondence from the Hardin

congregation to WTNY).  In assessing whether clergy-penitent privilege applied to

the document, the Court noted that it did not include a plea for religious guidance

or questions of a religious nature.  Doc. 82 at 3.  But, because the document states

that the Hardin congregation learned of information contained in the document

from a confession, the Court ruled that the report was subject to the clergy-penitent

privilege.  Doc. 82 at 4.

Subsequently, Plaintiffs learned that Gunnar Hain chose to disclose his

molestation of Plaintiffs to a non-cleric, thereby making his confession public.  *See*

Doc. 132 & 133.  Accordingly, Plaintiffs filed a Motion to Compel production of

the Gunnar Hain report, arguing that he had waived any privilege he may have

Plaintiffs' Brief in Support of Their Motion to Compel Production of Non-Privileged
Information in Documents Withheld by WTNY on the Basis of Clergy-Penitent Privilege

13

enjoyed because the confession was no longer confidential.  *Id*.  If the Court agrees that Hain waived privilege, then the entire report should be produced.  If the Court disagrees with Plaintiffs' waiver argument, Plaintiffs respectfully request that the information learned from the privileged confession be redacted and all other information in the report be produced.[7]

### d.  Privilege Log Entries 27, 28, 30 – 36 (Reports of Other Known Child Molesters in Montana)

WTNY has not established that the other nine (9) reports it received of known child molesters at Jehovah's Witness congregations in Montana include a privileged communication between a penitent and a cleric.  On their face, the reports are administrative and secular in nature and are not a communication between a penitent and a cleric.  WTNY's privilege log fails to establish that any of the reports include information obtained from a confession by a penitent to a cleric, that was made in confidence, as part of the Jehovah's Witness clergy-penitent religious process.  WTNY refused to provide foundational information about the privilege claims during the conferral period.  Yet, that is WTNY's

---

[7] To the extent that Plaintiffs now ask the Court to consider whether parts of the subject document can be produced with redactions, it is because the Hardin Congregation's description did not disclose that the document was a corporate report requested by WTNY's 1997 BOE Letter.  Therefore, Plaintiffs were not able to fully brief how the clergy-penitent privilege may apply, or not apply, to various parts of the document and the possibility of production with redactions was not briefed or properly before the Court at that time.

Plaintiffs' Brief in Support of Their Motion to Compel Production of Non-Privileged Information in Documents Withheld by WTNY on the Basis of Clergy-Penitent Privilege

14

burden if it wants to withhold discoverable information.  *MacKinnon*, 957 at 27-29; *McFarland*, 60 N.E. at 49-50.  Any reports that do not include information obtained through legitimately privileged communication should be produced.  If one or more reports contain a genuinely privileged communication, Plaintiffs believe the communication should be redacted and the rest of the document produced.

B. <u>Bruce Mapley, Sr. Disfellowship Form (Privilege Log Entry 40)</u>

WTNY is withholding a 1999 "Form" pertaining to Bruce Mapley, Sr.'s child sex abuse that it summarily describes as "seeking or receiving religious guidance, admonishment, or advice."  **Ex. C** (Privilege Log Entry 40).  According to the Jehovah's Witness elder textbook, these forms are intended to notify "the Society" of the person's name, the scriptural reason for the disfellowshipping, the date of the action, and a brief review of the evidence supporting the decision to disfellowship.  **Ex. F** at 122.  An exemplary copy of an S-77 NOTIFICATION OF DISFELLOWSHIPPING OR DISASSICATION is attached as **Exhibit G**.

There is nothing on the form indicating that it has anything to do with a penitent seeking or receiving spiritual advice or guidance from a cleric.  WTNY has not provided any evidence establishing that the form, or any information on the form, was obtained during a legitimately confidential clergy-penitent process.  And, as set forth in a separate motion pending before the Court, Plaintiffs have

Plaintiffs' Brief in Support of Their Motion to Compel Production of Non-Privileged Information in Documents Withheld by WTNY on the Basis of Clergy-Penitent Privilege

15

produced evidence that Mr. Mapley chose to share the fact that he molested

Plaintiffs outside of the Jehovah's Witness clergy-penitent process, thereby

eliminating the confidentiality of any confession made to a cleric for that conduct.

*See* Doc. 132 & 133.  If the Court concludes that the form includes privileged

information, and that privilege was not waived by Mapley, Plaintiffs respectfully

request that a redacted document be produced.

    C. Other Letters Withheld by WTNY

    WTNY has withheld three other letters from production without describing

how they could possibly constitute a privileged communication between a penitent

and a cleric.

    **a.  Letters Regarding Gunnar Hain (Privilege Log Entries 37 and 39)**

    In September of 1997, the Hardin Congregation sent a letter to a

congregation in Washington regarding Gunnar Hain.  **Ex. C** (Privilege Log Entry

37).  This letter is likely what the Organization refers to as a *Letter of Introduction*,

which is written when a member moves from one congregation to another.

According to the 1997 BOE, such a letter is supposed to outline the moving

member's "background and what the elders in the old congregation have been

doing to assist him" along with "needed cautions."  **Ex. D** at 2.  In 1999, the

WTNY Service Department sent the Hardin Congregation a letter concerning

Gunnar Hain.  **Ex. C** (Privilege Log Entry 39).

Plaintiffs' Brief in Support of Their Motion to Compel Production of Non-Privileged
Information in Documents Withheld by WTNY on the Basis of Clergy-Penitent Privilege

16

Letters from one congregation to another, and from the WTNY Service Department to a local congregation, are not communications between a penitent and a cleric where the penitent is seeking spiritual guidance or advice.  Nothing in the description provided by WTNY indicates that documents contain information obtained from a genuinely privileged clergy-penitent communication.  When asked to provide foundational information regarding the general nature of the spiritual advice given or sought in the document, WTNY refused.

WTNY has not met its burden of proving that the withheld letters contain a confession that was confidential and made as part of the Jehovah's Witnesses' established clergy-penitent religious process.  Moreover, even if either letter includes a genuinely privileged communication, Plaintiffs have set forth how Mr. Hain waived the privilege as it pertains to his sexual molestation of Plaintiffs. Doc. 132 & 133.  In the event that the Court concludes the documents do include legitimately privileged communications, Plaintiffs respectfully request that those be redacted, and the remainder of the letters be produced.

### b. Letter from the Hardin Congregation to WTNY Service Department Regarding Martin Svenson (Privilege Log Entry 38)

In 1998, the Hardin Congregation sent WTNY Service Department a letter regarding Martin Svenson.  **Ex. C** (Privilege Log Entry 38).  WTNY summarily describes the letter as "seeking or receiving religious guidance, admonishment, or

Plaintiffs' Brief in Support of Their Motion to Compel Production of Non-Privileged Information in Documents Withheld by WTNY on the Basis of Clergy-Penitent Privilege

17

advice." *Id*.  A letter from the Hardin Congregation to the WTNY Service Department is not a privileged communication between a penitent and a cleric. WTNY has not established that the letter contains privileged information that was obtained as part of the church's established clergy-penitent religious process.  Even if the letter includes a genuinely privileged confession or non-penitential statement made by Mr. Svenson to a cleric, Plaintiffs respectfully request that it be redacted and the remainder of the document be produced.

      D.  Request for *In Camera Review*

To the extent the Court does not compel production of the withheld documents, Plaintiffs respectfully request that the documents be submitted for *in camera* review.  Because the documents either evidence the child sex abuse at issue in this case or are likely to provide admissible evidence on some aspect of Plaintiffs' claims, Plaintiffs have demonstrated a reasonable belief that *in camera* review may yield additional evidence establishing their claims.

      E.  This Court has Already Determined that WTNY's Alleged Third Party Privacy Privilege is Not Recognized by Montana Law

WTNY's assertion of the unrecognized third-party privacy privilege has already been rejected by the Court.  Doc. 79 at 5-13.  Because third-party privacy is not a recognized privilege in Montana, WTNY should be ordered to stop

Plaintiffs' Brief in Support of Their Motion to Compel Production of Non-Privileged Information in Documents Withheld by WTNY on the Basis of Clergy-Penitent Privilege

18

withholding documents based on such privilege, including the documents Plaintiffs

seek through this Motion.

## CONCLUSION

WTNY has the burden of establishing that all four components of Montana's

clergy-penitent privilege permit it to withhold every word of every document.  As

the U.S. Supreme Court has noted:

> Testimonial exclusionary rules and privileges contravene the fundamental principle that " 'the public . . . has a right to every man's evidence.' " As such, they must be strictly construed and accepted "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth."

*Trammel v. U.S.*, 445 U.S. 40, 50 (1980) (internal citations omitted) (citing

cases).  None of the documents withheld by WTNY appear to constitute privileged

communications between a penitent and a cleric.

Confidential documents are not privileged documents, and Montana's

clergy-penitent privilege does not protect corporate investigative reports and

corporate correspondence about child sex abuse from disclosure.  It only protects

certain communications between a cleric and a penitent.  Even if one or more

secular documents contain a confession from Gunnar Hain or Bruce Mapley, Sr.,

Plaintiffs have set forth facts establishing that both men waived their privilege by

failing to keep their confessions confidential.  Doc. 132 & 133.  Finally, assuming

Plaintiffs' Brief in Support of Their Motion to Compel Production of Non-Privileged
Information in Documents Withheld by WTNY on the Basis of Clergy-Penitent Privilege

19

one or more of the withheld documents contains a privileged communication, it should be redacted so that all other information in the document can be produced.

DATED 3rd day of January, 2023.

MEYER, SHAFFER & STEPANS PLLP


By: /s/ Ryan Shaffer
  Ryan R. Shaffer
  MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

Plaintiffs' Brief in Support of Their Motion to Compel Production of Non-Privileged Information in Documents Withheld by WTNY on the Basis of Clergy-Penitent Privilege

20

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), Plaintiff hereby certifies that this brief complies with the length requirement for briefs, and that this brief contains 4,261 words, excluding the caption, certificates of service and compliance, table of contents and authorities, and exhibit index.

By: /s/ Ryan Shaffer
      Ryan R. Shaffer
      MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 1.4, this document has been served on all parties via electronic service through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

By: /s/ Ryan Shaffer
      Ryan R. Shaffer
      MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

Plaintiffs' Brief in Support of Their Motion to Compel Production of Non-Privileged Information in Documents Withheld by WTNY on the Basis of Clergy-Penitent Privilege

21