*Exhibit F*



# WATCHTOWER
**BIBLE AND TRACT SOCIETY OF NEW YORK, INC.**

25 COLUMBIA HEIGHTS, BROOKLYN, NEW YORK 11201-2483, U.S.A.     PHONE (718) 625-3600

July 20, 1998

## CONFIDENTIAL

TO ALL BODIES OF ELDERS

Dear Brothers:

We are here providing, for your future reference, information that was presented at the 15-hour supplementary course for congregation elders on certain serious matters.

**Child Molestation:** The Society's letter to all bodies of elders dated March 14, 1997, page 2, paragraph 5, states: *"[G]ive the Society a report on anyone who is currently serving or who formerly served in a Society-appointed position in your congregation who is known to have been guilty of child molestation in the past."* Reports indicate that some elders think this direction does not apply if before his baptism the person sexually abused a child. However, even in such a situation, the elders should write the branch office. This is true even if what occurred was many years ago. If any body of elders has not yet reported such a matter, they should immediately do so. Furthermore, any correspondence put in the confidential congregation file about an individual accused of child molestation, proven or otherwise, should be marked "Do Not Destroy" and be kept indefinitely.

In the Kingdom Ministry School Supplementary Course for Congregation Elders there was a panel discussion in Unit 5b, **"USE DISCERNMENT IN HANDLING SERIOUS MATTERS."** This portion of the course addressed questions related to the problems associated with child abuse. Question 6 to the panel asked: "What factors should be considered in determining what congregation privileges, if any, a former child molester can enjoy?" The answer included the statement: "There are also legal considerations." Some have inquired about how and why legal considerations should affect our recommendations of those who have been guilty of child abuse in the past.

Those who are appointed to privileges of service, such as elders and ministerial servants, are put in a position of trust. One who is extended privileges in the congregation is judged by others as being worthy of trust. This includes being more liberal in leaving children in their care and oversight. The congregation would be left unprotected if we prematurely appointed someone who was a child abuser as a ministerial servant or an elder. In addition, court officials and lawyers will hold responsible any organization that knowingly appoints former child abusers to positions of trust, if one of these, thereafter, commits a further act of child abuse. This could result in costly lawsuits, involving dedicated funds that should be used to further the Kingdom work. So, legal considerations must also be weighed along with the degree of notoriety, the extent of the misconduct, how many years ago the sin occurred, and how the brother is now viewed by the congregation and people in the community including those he victimized.

CAEKAERT/MAPLEY 004058

TO ALL BODIES OF ELDERS
July 20, 1998
Page 2

**Scriptural Freedom to Remarry:** The 1991 Kingdom Ministry School textbook, page 135, paragraph 1, describes a situation where an adulterous mate unilaterally obtains a divorce over the objection of the innocent mate. In such a case, the guilty one is not free to remarry.

What if the innocent mate consents to the divorce by signing the divorce papers? Does this free the guilty mate to remarry? Yes, Jesus' counsel at Matthew 5:37 applies here: "Let your *Yes* mean Yes, your *No*, No." If the innocent mate, perhaps in an effort to protect herself financially or to obtain custody of children, agrees to a divorce obtained by her adulterous husband, the adulterous one is then free to remarry. Although the innocent one may claim forgiveness, by signing the divorce papers she indicates her rejection of the adulterous mate. Since she has rejected that one, she holds no further claim on him, and he is Scripturally free to remarry.

Another situation involving the Scriptural freedom to remarry is where an unscriptural divorce is obtained and then, some time later, one of the mates commits fornication. In such a case, does either one have a Scriptural basis to remarry?

If a man takes the initiative and divorces his mate without a Scriptural basis and his divorced wife later commits adultery, both are free to remarry. This is because, by his previous unscriptural action of divorcing his wife, the husband has given evidence of his wanting to reject her. What is stated in the 1991 Kingdom Ministry School textbook, page 135, paragraph 6, applies: *"A person who commits adultery after having been divorced by his or her mate on unscriptural grounds would be Scripturally free to remarry, since he or she had already been rejected by the mate that obtained the divorce."* However, the converse is not necessarily true. If the one who initiated the unscriptural divorce later commits adultery, that one is still obligated to confess to the mate, although they are legally divorced. The innocent mate must be given the opportunity to determine whether to forgive or not. However, in both cases, the one committing adultery would need to meet with a judicial committee.

While the principles outlined above should prove helpful in handling inquiries from publishers about the Scriptural freedom to remarry, the elders should always exercise extreme caution when providing an answer. They should never inform a publisher that there appears to be a basis for Scriptural freedom to divorce and remarry, *unless conclusive evidence has been established* (1) that adultery was committed, (2) that the innocent mate has rejected the guilty one, and (3) that a legal, final divorce has been obtained. Because of the numerous factors involved in such matters, in many cases it will be best to write the Society. When doing so, always provide as many details as possible, including the names of the individuals involved. The Society will then provide the needed assistance.

When a divorced brother or sister wishes to remarry, the elders should kindly request to see the divorce papers to make sure that that one is legally free to do so. They should also determine that it has been established that both parties involved are Scripturally free to remarry. (Matt. 19:9) This will help servants of Jehovah to preserve the cleanness of the congregation and avoid entering adulterous marriages. Always review the Society's letter to all bodies of elders

CAEKAERT/MAPLEY 004059

TO ALL BODIES OF ELDERS
July 20, 1998
Page 3

dated May 15, 1988, regarding guidelines on wedding procedures before agreeing to solemnize any marriage.

Please be assured of our prayers on your behalf as you endeavor to fulfill your weighty responsibilities as shepherds of the flock.  We send herewith a warm expression of our Christian love and best wishes.

Your brothers,

*Watchtower B. & T. Society*
OF NEW YORK, INC.

P.S. to Body of Elders:  At the next meeting of the entire body of elders, the presiding overseer should have this letter read and should have each elder make the following notations in the margins of his personal copy of the 1991 Kingdom Ministry School textbook:

On page 93, next to paragraphs 10-11:  See the Society's letters dated July 20, 1998; March 14, 1997; August 1, 1995; February 3, 1993; March 23, 1992; and July 1, 1989.

On page 135, next to paragraphs 1-6:  See the Society's letter dated July 20, 1998.

CAEKAERT/MAPLEY 004060