Robert L. Stepan
Ryan R. Shaffer
James C. Murnion
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT  59802
Tel: (406) 543-6929
Fax: (406) 721-1799
rob@mss-lawfirm.com
ryan@mss-lawfirm.com
james@mss-lawfirm.com

Matthew L. Merrill (appearing *pro hac vice*)
Merrill Law, LLC
6631 Mariposa Court
Denver, CO  80221
Tel: (303) 947-4453
matthew@merrillwaterlaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | | |
|---|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | ) ) ) | Cause No. CV-20-52-BLG-SPW |
| Plaintiffs, | ) ) | AND |
| vs. | ) ) | Cause No. CV 20-59-BLG-SPW |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, | ) ) ) ) ) | |
| Defendants, | ) ) | **PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION OF ALL DISCOVERABLE DOCUMENTS AND INFORMATION AT THE JEHOVAH'S WITNESSES' NEW YORK HEADQUARTERS** |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, | ) ) ) ) ) | |
| Cross Claimants, | ) ) | |
| BRUCE MAPLEY, SR., | ) ) | |
| Cross Defendant. | ) ) | |

ARIANE ROWLAND, and JAMIE
SCHULZE,

        Plaintiffs,

    vs.

WATCHTOWER BIBLE AND TRACT
SOCIETY OF NEW YORK, INC.,
WATCH TOWER BIBLE AND TRACT
SOCIETY OF PENNSYLVANIA,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

///

///

///

TABLE OF CONTENTS

SUMMARY OF PLAINTIFFS' MOTION ................................................................1

APPLICABLE LAW ........................................................................................4

FACTS BEARING ON PLAINTIFFS' MOTION ..................................................6

   A.  The Organization's Corporations, Offices, Committees, and Departments.....6

   B.  The Organization's Structure is not Clear from the Outside...........................6

   C.  Why the Court's Assistance is Needed.........................................................13

ARGUMENT ..................................................................................................14

   A.  The Organization's Entities Are Centrally Coordinated. ..............................14

   B.  Overlap of Personnel and the Legal Department ...........................................17

   C.  Expresses Coordination Between WTNY and Other Entities Regarding
       Child Sex Abuse Information .......................................................................18

   D.  It has already been established that WTNY has access to all Service
       Department records......................................................................................20

CONCLUSION ...............................................................................................21

Plaintiffs' Brief in Support of Their Motion to Compel Production of All Discoverable
Documents and Information at the Jehovah's Witnesses' New York Headquarters

i

TABLE OF AUTHORITIES

**Cases**

*Afros S.P.A. v. Krauss–Maffei Corp.*,
   113 F.R.D. 127 (D. Del. 1986) ................................................. 5, 17, 20

*Amy Merie Vigue, et al. v. Edward Norman Davis, et al.*,
   (Feb. 29, 2007) ......................................................................................11

*Annessa Lewis v. Bellows Falls Congregation of Jehovah's Witnesses, Inc.*
   (October 12, 2015) ........................................................................ 13, 20

*Charissa W. & Nicole D. v. WTNY, et al.*
   (Sept. 29, 2006) ........................................................................................9

*Colon v. Blades*,
   268 F.R.D. 129 (D.P.R. 2010) ................................................................5

*Coventry Capital US LLC v. EEA Life Settlements Inc.*,
   334 F.R.D. 68 (S.D.N.Y. 2020) ..............................................................5

*Delgado v. Las Lomas Spanish Congregation of Jehovah's Witnesses, et al.*
   (Feb. 18, 2014) ........................................................................................9

*Doe v. WTNY*
   (Feb. 15, 2012) ........................................................................................7

*Does I–IV v. WTNY*
   (March 20, 2015) ....................................................................................9

*Green v. Fulton*,
   157 F.R.D. 136 (D. Me. 1994) ................................................................5

*Japan Halon Co. v. Great Lakes Chem. Corp.*,
   155 F.R.D. 626 (N.D. Ind. 1993) ............................................................5

*Lopez v. Does*
   (April 1, 2014) ........................................................................................7

*Padron v. Watchtower Bible & Tract Socy. of New York, Inc.*,
   225 Cal. Rptr. 3d 81 (Cal. App. 4th Dist. 2017) ............................ 17, 21

*SEC v. Credit Bancorp, Ltd.*,
  194 F.R.D. 469 (S.D.N.Y. Oct. 28, 2009) ...............................................................5

*St. Jude Med. S.C., Inc. v. Janssen-Counotte*,
  305 F.R.D. 630 (D. Or. 2015)................................................................................5

*Thales Avionics Inc. v. Matsushita Avionics Sys. Corp.*,
  SACV04454JVSMLGX, 2006 WL 6534230 (C.D. Cal. Mar. 8, 2006) . 17, 18, 20

*Uniden Am. Corp. v. Ericsson Inc.*,
  181 F.R.D. 302 (M.D.N.C. 1998).........................................................................18

*United States v. Faltico*,
  586 F.2d 1267 (8th Cir. 1978) ................................................................................5

**Rules**

Fed. R. Civ. P. Rule 34 .............................................................................. 4, 5, 7, 20

Plaintiffs' Brief in Support of Their Motion to Compel Production of All Discoverable
Documents and Information at the Jehovah's Witnesses' New York Headquarters
iii

Plaintiffs submit the following Brief in Support of Their Motion to Compel Production of All Discoverable Documents and Information at the Jehovah's Witnesses' New York Headquarters ("Motion").

## SUMMARY OF PLAINTIFFS' MOTION

The Jehovah's Witnesses church is an organization (the "Organization") of corporations and various unincorporated bodies, offices, committees, and departments (collectively referred to as the "Organization's Entities") that work together to carry out the Organization's work and purposes.  While the division of authority between the Organization's Entities is unclear and subject to change, they are all located (or have offices) in New York, they all appear to ultimately answer to one group of men known as the Governing Body, and most of them share a common legal department.

Plaintiffs bring this Motion because WTNY is using the Organization's opaque organizational structure to unreasonably limit the scope of its discovery production.  For example:

1.  The Organization's Circuit Overseer Reports - which document the activities, news, and problems at the Organization's local congregations - were routinely filled out by Circuit Overseers and then sent to what the Organization calls its "Branch Office" in New York.  Watch Tower Bible and Tract Society of Pennsylvania, *Kingdom Ministry School Course*,

106–07 (1972) (attached as **Exhibit A**).

2. Plaintiffs independently obtained a copy of one of these reports from 1978, wherein the Circuit Overseer visiting the Hardin Congregation wrote, "Ministerial Svt., bro Gunnar Hain, was restricted (prayer, talks, etc.); Society was not notified.  The elders are intending to <u>write immediately</u>, as several months have passed."  Report on Circuit Overseer Visit with Congregation from Brad Lovett, Circuit Overseer, to Branch Office, 2 (March 14–19, 1978) (attached as **Exhibit B**).

3. The report is signed by WTNY's Circuit Overseer and states that it was to be "mailed promptly to the branch office" in New York.  **Ex. B**.

4. This document establishes that, in 1978, the Organization's New York headquarters was provided a report identifying a problem at the Hardin Congregation with known child molester, Gunnar Hain.

5. In response to Plaintiffs' request for production seeking the Hardin Congregation's Circuit Overseer Reports that make mention of the perpetrators in this case, WTNY responded that "After a diligent search, WTNY has been unable to locate any information responsive to this request."  WTNY's Resp. to Pls.' 2d Set of Combined Interrogs., RFPs, and RFAs at RFP No. 32, June 16, 2022 (Caekaert Case); WTNY's Resp. to Pls.' 2d Set of Combined Interrogs., RFPs, and RFAs at RFP No. 30,

June 16, 2022 (Rowland Case) (attached as **Exhibit C**).[1]

6.  While the document was sent to the Organization's Branch Office, WTNY has not stated whether its "diligent search" included all of those files.

7.  Counsel for WTNY also stated that it will not accept service of a subpoena for documents at unincorporated entities, like the Branch Office, because they are not legal entities capable of being served.

Therefore, according to WTNY, critical evidence like the 1978 Hardin Congregation Circuit Overseer Report, could be sitting at the Organization's New York Headquarters but does not have to be produced and cannot be obtained by subpoena.

The Organization is also attempting to use its corporations to avoid searching and producing other relevant child sex abuse records.  The Organization's Service Department is a known repository of child sex abuse records.  However, according to WTNY, in 2001 it transferred the Service Department to its sister corporation, Christian Congregation of Jehovah's Witnesses ("CCJW"), therefore, according to WTNY, it has no obligation to search and produce Service Department child sex abuse records from 2001 forward.  As

---

[1] WTNY subsequently produced one of these reports for the Hardin Congregation from 1993, but no others.

WTNY would have it, by simply transferring the "Service Department" from one sister corporation to another, the Organization has conveniently rendered twenty-one (21) years of child sex abuse records undiscoverable in this case.

Plaintiffs cannot say if discoverable information and documents outside of what WTNY has produced and identified in its privilege logs exist at the Organization's New York headquarters.  Only WTNY knows this.  However, questions exist about the scope of the search conducted to date at the New York headquarters, and whether it included all files and computer systems that may contain discoverable information.  The evidence establishes that WTNY can and should search all such files.  Plaintiffs therefore bring this Motion respectfully seeking an order requiring WTNY and its Legal Department to search for, obtain, and produce all discoverable information and documents at the Organization's New York headquarters.

## APPLICABLE LAW

Rule 34 of the Federal Rules of Civil Procedure entitles a party to all discoverable, non-privileged documents in opposing parties' "possession, custody, or control."  "Legal ownership or actual physical possession is not required; documents are considered to be under a party's 'control' when that party has the right, authority or ability to obtain those documents upon demand."  *Colon v. Blades*, 268 F.R.D. 129, 132 (D.P.R. 2010) (quoting *Green v. Fulton*, 157 F.R.D.

136, 142 (D. Me. 1994)).  "One of the circumstances which warrants a finding of control is where a corporate entity has the ability in the ordinary course of business to obtain documents held by another corporate entity."  *Coventry Capital US LLC v. EEA Life Settlements Inc.*, 334 F.R.D. 68, 72–73 (S.D.N.Y. 2020) (quoting *SEC v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 472 (S.D.N.Y. Oct. 28, 2009)).

Federal courts have found that documents in the direct possession of a subsidiary must be produced by a parent because they are subject to the effective control of the parent.  *United States v. Faltico*, 586 F.2d 1267, 1270 (8th Cir. 1978).  Likewise, documents in the direct possession of a parent company have been ordered to be produced by a subsidiary when their corporate relationship is of a sufficiently close nature.  *Japan Halon Co. v. Great Lakes Chem. Corp.*, 155 F.R.D. 626, 627 (N.D. Ind. 1993).  Even documents in the direct possession of affiliated corporations in foreign countries have been ordered to be searched and produced by their affiliated corporation in the United States.  *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 305 F.R.D. 630, 638 (D. Or. 2015).  The Rule 34 control analysis does not depend on any managerial power of one corporation over another, "but rather that there be a close coordination between them."  *Id.* (quoting *Afros S.P.A. v. Krauss–Maffei Corp.*, 113 F.R.D. 127, 129 (D. Del. 1986)).

## FACTS BEARING ON PLAINTIFFS' MOTION

**A. The Organization's Corporations, Offices, Committees, and Departments.**

There are many incorporated and unincorporated entities at the

Organization's New York headquarters.  While there are almost certainly more,

Plaintiffs are aware of the following:

| CORPORATIONS | GOVERNING BODY COMMITTEES | DEPARTMENTS | OTHER OFFICES / BODIES |
|---|---|---|---|
| WTNY | Personnel | Service | Governing Body |
| Watch Tower Bible and Tract Society of Pennsylvania ("WTPA") | Publishing | Legal | United States Branch Office |
| CCJW | Service | Writing | World Headquarters |
| Religious Order of Jehovah's Witnesses, Inc. | Coordinators | | United States Branch Committee ("U.S. Branch Committee") |
| | Teaching | | |
| | Writing | | |

**B. The Organization's Structure is not Clear from the Outside**

The Organization's structure has shifted over time and is unclear.  However,

what is known demonstrates that the Organization's Entities are endlessly

intertwined and coordinated.  As shown by the below facts[2]—all from the sworn testimony of Defendants' representatives or materials published by the Organization—the Organization's Entities share employees and lawyers, and appear to function as a single unit with no meaningful distinction between them for purposes of Rule 34:

- There exists an unincorporated religious order known as the Worldwide Order of Special Full-Time Servants of Jehovah's Witnesses ("Order"), whose members serve the Organization full time and who serve under vows of poverty and obedience.  Dec. of Gary Breaux, ¶ 3, Oct. 18, 2022 (Doc. 160-2 in CV-20-52), (Doc. 136-2 in CV-20-59); Dep. of Mario Moreno at 8:5–11:2, *Lopez v. Does* (April 1, 2014) (attached as **Exhibit D**).

- The Governing Body is the Organization's highest-ranking body.  It is a group of eight men of the Order that oversee all Organizational activities worldwide.  Dep. of Allen Shuster at 19:6–13, *Doe v. WTNY* (Feb. 15, 2012) (relevant excerpts attached as **Exhibit E**); **Ex. D** at 7:14–9:21;

---

[2] While many of the below facts are written in the present tense, they should only be understood to be accurate as of the date of the cited source material, which represents the most current information in Plaintiffs' possession.  Plaintiffs' attempt to depose the witnesses most knowledgeable on these subjects is now before the Court.  (Doc. 153 in CV-20-52), (Doc. 131 in CV-20-59).

WTPA, *What is the Governing Body of Jehovah's Witnesses?*,

https://www.jw.org/en/jehovahs-witnesses/faq/governing-body-jw-

helpers (last visited January 13, 2023) (attached as **Exhibit F**).

- For years, the men on the Governing Body were also the corporate
  officers of Defendants WTNY and WTPA. (Doc. 96-1 at 461–63 in CV-
  20-52) (Doc. 86-1 at 461–63 in CV-20-59).

- The Governing Body has six committees: the Coordinators' Committee,
  the Personnel Committee, the Publishing Committee, the Service
  Committee, the Teaching Committee, and the Writing Committee. These
  committees are made up of two to three members of the Governing Body
  and non-voting helpers. **Ex. D** at 18:3–19:5.

- The Service Committee oversees an unincorporated entity known as the
  U.S. Branch Committee. **Ex. D** at 27:19–25.

- The U.S. Branch Committee, unlike the other previously mentioned
  committees, is not comprised of members of the Governing Body, but
  rather twelve to fourteen elders who are members of the Order. **Ex. E** at
  13:17–20; **Ex. D** at 50:4–51:10.

- The U.S. Branch Committee oversees both the Legal Department (for
  matters in the United States) and the Service Department, among others.
  **Ex. D** at 34:10–24, 38:14–39:20; Dep. of Mario Moreno at 218:1–8,

Plaintiffs' Brief in Support of Their Motion to Compel Production of All Discoverable
Documents and Information at the Jehovah's Witnesses' New York Headquarters
Page **8**

*Delgado v. Las Lomas Spanish Congregation of Jehovah's Witnesses, et al.* (Feb. 18, 2014) (relevant excerpts attached as **Exhibit G**).

- The Legal Department is part of, and operates through, WTNY.  **Ex. D** at 40:8–21; Dec. of Mario F. Moreno, Esq. at ¶ 2, *Charissa W. & Nicole D. v. WTNY, et al.* (Sept. 29, 2006) (attached as **Exhibit H**).

- The Legal Department functions as in-house counsel for WTNY and provides legal advice to many (if not all) of the Organization's Entities, including but not limited to the U.S. Branch Committee, the Service Department, CCJW, the Service Committee, the Governing Body, and local congregations in the United States and their elders.  **Ex. H** at ¶ 2; **Ex. D** at 26:22–27:18; **Ex. E** at 22:13–23:8.

- The Legal Department also functions as the World Headquarters of Jehovah's Witnesses' Legal Department working under the oversight of the Governing Body's Coordinators Committee.  **Ex. D** at 38:14–39:3.

- The Legal Department's overseer is Philip Brumley ("Brumley").  Aff. of Philip Brumley, Esq. at ¶ 3, *Does I–IV v. WTNY* (March 20, 2015) (attached as **Exhibit I**); **Ex. D** at 38:14–39:3.

- Brumley is the general counsel of WTPA.  Aff. of Philip Brumley, ¶ 1 (Doc. 14-1 in CV-20-52) (Doc. 10-1 in CV-20-59).

- Brumley is also the general counsel of WTNY.  **Ex I** at ¶ 2.

- Brumley is also general counsel for the Organization's World Headquarters of Jehovah's Witnesses.  Letter from WHQ Legal Department to WTPA (June 7, 2017) (attached as **Exhibit J**); C-SPAN, *Jehovah's Witnesses and Human Rights*,  https://www.c-span.org/video/?452868-4/jehovahs-witnesses-human-rights (last visited January 13, 2023).

- The United States Branch Office is made up of all of the departments that are located at three locations in New York that facilitate and provide services to congregations of Jehovah's Witnesses in the United States and has been referred to as the national headquarters of the Jehovah's Witnesses.  **Ex. D** at 49:9–50:3.

- The United States Branch Office has several departments, but that does not include the Writing Department, which is part of the World headquarters.  **Ex. D** at 33:20–34:9.

- The United States Branch Office uses the Organization's corporations for certain purposes, including using WTNY's letterhead to communicate with bodies of elders and congregations in the United States.  **Ex. D** at 35:13–36:12.

- The Service Department, which is part of the United States Branch Office, is under the oversight of the U.S. Branch Committee.  **Ex. D** at

34:10–20.

- The Service Department communicates through CCJW, but CCJW has no oversight over the Service Department.  **Ex. G** at 215:3–13.

- CCJW is one of the Organization's corporations, the objectives of which are carried out by 200 members of the Order in New York and 300 volunteers nationwide, all of whom are supervised by Gary Breaux ("Breaux") and Allen Shuster ("Shuster").  Dec. of Gary Breaux, ¶ 4, Oct. 18, 2022 (Doc. 160-2 in CV-20-52) (Doc 136-2 in CV-20-59).

- Breaux is also a member of the Order, and he is the Vice President and a voting member of CCJW.  Dec. of Gary Breaux, ¶¶ 4, 9; *Amy Merie Vigue, et al. v. Edward Norman Davis, et al.*, (Feb. 28, 2007) (attached as **Exhibit K**).

- Breaux is also the overseer of the Service Department and shares oversight thereof with Shuster and Anthony Griffin ("Griffin").  **Ex. E** at 22:13–23:8; Service Department Manual, 2 (Feb. 1, 2021) (attached as **Exhibit L**).

- Breaux is also a voting member of WTPA.  **Ex. K** at ¶ 2.

- Breaux is also the Assistant Secretary of WTNY.  Am. Certificate of Incorporation of WTNY (Feb. 26, 2009) (attached as **Exhibit M**).

- Along with Griffin, Breaux also serves as a Service Committee Helper,

Plaintiffs' Brief in Support of Their Motion to Compel Production of All Discoverable
Documents and Information at the Jehovah's Witnesses' New York Headquarters
Page **11**

who are a group of Jehovah's Witnesses that assist the Governing Body's Service Committee, and "[a]lthough they do not share in making decisions, the helpers provide valuable advice and background information, implement the committee's decisions, and monitor the results and progress of these." **Ex. F**.

- In turn, Breaux reports to the U.S. Branch Committee. **Ex. E** at 13:13–14.

- The U.S. Branch Committee shares members with WTNY. **Ex. E** at 17:14–19.

- WTNY has approximately 50 to 55 voting members who are "all pretty much members of the [Order] for many years, maybe decades[.]" **Ex. D** at 57:4–18.

- Persons serving within WTNY have "authority to implement or impose policies, procedures or decisions upon CCJW." **Ex. E** at 16:25–17:13.

- WTNY's Legal Department has access to, and has previously searched the files of its client, the Service Department, for all congregations in the United States. Dec. of Douglas Chappel at ¶¶ 17–20, *Annessa Lewis v. Bellows Falls Congregation of Jehovah's Witnesses, Inc.* (October 12, 2015) (attached as **Exhibit N**).

These are the facts Plaintiffs have obtained without taking depositions of the men

Plaintiffs' Brief in Support of Their Motion to Compel Production of All Discoverable
Documents and Information at the Jehovah's Witnesses' New York Headquarters
Page **12**

most knowledgeable of the Organization's structure.  Nevertheless, these limited

facts demonstrate that the entities were designed to be centrally controlled and

function as a single Organization.

### C. Why the Court's Assistance is Needed.

Plaintiffs have explicitly asked WTNY and WTPA to search for and produce

all discoverable documents in the Organization's possession, regardless of whether

it is purportedly housed by CCJW, the U.S. Branch Committee, the Service

Department, or some other incorporated or unincorporated entity.  In response,

WTNY stated:

> WTNY is not the Governing Body, it is not a committee of the
> Governing Body, it is not the Christian Congregation of Jehovah's
> Witnesses, and it is not the U.S. Branch Committee.  WTNY does
> not control or have custody of records that belong [to] third parties,
> and it has not searched the files of any such third parties.

Correspondence from Brett Jensen to Ryan Shaffer, 2 (Oct. 28, 2022) (attached as

**Exhibit O**).  While WTNY's statement makes it clear that it has not searched

certain files at the New York headquarters, it is unclear whether other files have

been searched.  For instance, have the files of the Branch Office, World

Headquarters, and Service Department been searched (either in whole or in part)?

Counsel for the parties have conferred to no avail.  During one such

conferral, Plaintiffs' counsel asked WTNY's counsel Joel Taylor if WTNY's legal

department would accept service of a subpoena addressed to CCJW or the U.S.

Plaintiffs' Brief in Support of Their Motion to Compel Production of All Discoverable
Documents and Information at the Jehovah's Witnesses' New York Headquarters
Page **13**

Branch Committee.  After all, the same legal department that represents WTNY also represents CCJW and the U.S. Branch Committee.  As to CCJW, Mr. Taylor unequivocally said no, WTNY's Legal Department would not accept service.  As to the U.S. Branch Committee, Mr. Taylor said it was not a legal entity capable of being served at all.

## ARGUMENT

The Organization Entities are a cohesive, coordinated group controlled by the same men, located in the same buildings, and sharing common lawyers and personnel.  WTNY can obtain and produce all discoverable documents located at the Organization's New York headquarters.  In fact, WTNY had no problem producing documents it alleged were in the possession of CCJW when it was ordered to do so in at least one previous case.

### A. The Organization's Entities Are Centrally Coordinated.

The Governing Body "oversees the worldwide activity of Jehovah's Witnesses."  **Ex. E** at 19:6–13.  According to WTNY's former Assistant Secretary-Treasurer, the Governing Body is ultimately in control of the Organization's Entities:

///

///

///

5.      Regarding the position of the Governing Body, Organized to

Accomplish Our Ministry states at page 28:

> All in the organization recognize God's way of theocratic
> control.  The congregations acknowledge and conform to the
> guidance of the Governing Body as it outlines organizational
> arrangements for the benefit of all.

6.      To implement their decisions, the Governing Body uses a

hierarchical organization together with corporate entities, when

appropriate, to accomplish its worldwide work of teaching and

declaring the good news of God's established Kingdom.

Aff. of Don Adams, ¶¶ 5–6 (Doc. 117-1 in CV-20-52) (Doc. 106-1 in CV-20-59).

As WTNY's representative stated, all in the Organization acknowledge and

conform to the control of the Governing Body, and the Governing Body uses the

Organization's hierarchical entities to accomplish the Organization's work.

For years, and with virtually no exception, the same group of men who

comprised the Governing Body also sat on the Boards of Directors of both WTNY

and WTPA while also serving as their corporate officers.  According to WTPA, it

is used by Jehovah's Witnesses "to support their worldwide work."  WTPA 2d

Supp. Resps. to Pls.' 2d Set of Jurisdictional Disc., Answer to Interrog. No. 25

(Sept. 9, 2021) (attached as **Exhibit P**).  WTNY's purpose includes, *inter alia*, the

publication of bibles, the provision of buildings and housing for ministers,

Plaintiffs' Brief in Support of Their Motion to Compel Production of All Discoverable
Documents and Information at the Jehovah's Witnesses' New York Headquarters
Page **15**

supporting missionaries, to establish and oversee congregations of Jehovah's

Witnesses, and "to be and act as the ecclesiastical governing body in the United

States of the religious group known as Jehovah's Witnesses."  Am. and Restated

Certificate of Incorporation of WTNY (Feb. 22, 1982 (attached as **Exhibit Q**).

While the Organization has formed various incorporated and unincorporated

entities, control is central and coordinated.

As a discovery referee involved with similar issues in California noted:

> *The structure of the Jehovah's Witnesses is complicated, and at the*
> *risk of oversimplification, based on the evidence presented in this*
> *motion, an entity known as the United States Branch oversees the*
> *Jehovah's Witnesses in the United States through a committee known*
> *as the U.S. Branch Committee.  The various activities of the United*
> *States Branch are carried out through corporations or departments.*
> *Watchtower is one of the corporations and the service department is*
> *one of the departments.  The service department communicates with*
> *various Jehovah's Witnesses congregations and bodies of elders in the*
> *United States, and up until March 2001, when CCJW was formed, the*
> *service department operated through Watchtower.  In March 2001,*
> *after the formation of CCJW, the service department began operating*
> *through CCJW.  The evidence indicates that the creation of CCJW*
> *was primarily to reinforce the concept that the Jehovah's Witnesses*
> *are a religion as opposed to simply a printing corporation, as*
> *Watchtower was apparently being perceived, but there was no*
> *substantive change in the purpose or operation of the service*
> *department after March 2001.  The service department has received*
> *responses to the March 14, 1997 Body of Elders letter since 1997 and*
> *continuing to the present*

*Padron v. Watchtower Bible & Tract Socy. of New York, Inc.*, 225 Cal. Rptr. 3d 81,

91 (Cal. App. 4th Dist. 2017).

Plaintiffs' Brief in Support of Their Motion to Compel Production of All Discoverable
Documents and Information at the Jehovah's Witnesses' New York Headquarters
Page **16**

According to WTNY's representative, the Governing Body uses the Organization's Entities to achieve its worldwide work.  This is central control and coordination, establishing sufficient control to obtain documents from those Entities.  *Afros*, 113 F.R.D. at 129; *Thales Avionics Inc. v. Matsushita Avionics Sys. Corp.,* SACV04454JVSMLGX, 2006 WL 6534230, at *4 (C.D. Cal. Mar. 8, 2006).

### B. Overlap of Personnel and the Legal Department

The evidence also shows important overlap between personnel amongst the Organization's Entities.  Gary Breaux plays an active role in the operation of WTNY, WTPA, CCJW, the U.S. Branch Committee, and the Service Department.  Philip Brumley is general counsel for WTNY, WTPA, and the Organization's World Headquarters.  Mr. Brumley and his legal department operate through WTNY, but also represent WTPA, CCJW, U.S. Branch Committee, Service Department, Service Committee, Governing Body, and the World Headquarters.

Additionally, the U.S. Branch Committee oversees the Organization's Legal Department and the Service Department, among others.  At the same time, the U.S. Branch Committee is a client of WTNY's Legal Department.  The U.S. Branch Committee also shares members with WTNY, who are all members of the Order.  The evidence presently available establishes significant intermingling of personnel between WTNY and the U.S. Branch Committee.

Evidence of intermingling directors, officers, or personnel is evidence of coordinated control amongst entities. *Thales Avionics*, 2006 WL 6534230 at *4 (citing *Uniden Am. Corp. v. Ericsson Inc.*, 181 F.R.D. 302, 306 (M.D.N.C. 1998)). Here, while Plaintiffs have been prevented from conducting discovery into the full coordination amongst the Organization's Entities, even the limited evidence available shows significant overlap, intermingling, and central control. Breaux and Brumley have roles for the main entities that are likely to have discoverable child sex abuse information, including WTNY, WTPA, CCJW, the Service Department, the Branch Office, and the Branch Committee. The Organization's Legal Department is likewise connected to most, if not all, of the Organization's Entities.

## C. Expresses Coordination Between WTNY and Other Entities Regarding Child Sex Abuse Information

During conferral regarding the scope of WTNY's search for requested records at the Organization's headquarters, counsel implied that WTNY had communicated / coordinated with the other entities regarding certain types of documents:

> *It is WTNY's understanding that it is the exclusive repository of [its religious and legal records, communications, documents, and forms involving the Hardin Congregation] in the United States for the relevant years. <u>If any communications were directed to some other entity associated with the Jehovah's Witnesses in New York, it is WTNY's understanding that the practice would have been for those communications to be forwarded to WTNY for handling.</u>*

**Ex. O** at 2 (emphasis added). [3]  The representations in WTNY's letter are only reliable if WTNY endeavored to ensure that they were accurate, in which case it must have communicated directly with the people who knew the locations of all "religious" and "legal" documents pertaining to child sex abuse at the New York headquarters.  The sharing of information regarding the location of all child sex abuse records at the New York headquarters evidences coordination that satisfies the Rule 34 control rule.  *Afros*, 113 F.R.D. at 129; *Thales Avionics Inc.*, 2006 WL 6534230, *4.

---

[3] WTNY's letter raises more questions than answers.  First, representing that WTNY is the sole repository for "its" own religious and legal records is effectively meaningless and says nothing about whether it is also the sole repository for all child sex abuse records at the New York headquarters.  Other questions raised by the letter include:

1. How did WTNY come to its understandings about documents the other entities have or don't have, and did this include communication with the each of the Organization's Entities?
2. If WTNY has not coordinated with the other entities, how can it certify that it is the sole repository of documents or information responsive to Plaintiffs' discovery requests?
3. What does WTNY consider to be its "religious" and "legal" communications, documents, and forms, and do these two self-described categories of documents cover everything requested by Plaintiffs in discovery, such as records from the Organization's HuB database and Child Maltreatment database?
4. What does WTNY mean when refers to the "relevant years," and does this include all documents that may reference abuse or perpetrators at issue in this case, regardless of the date on such document?
5. What about WTNY's "religious" records from 2001 forward that may contain information relevant to this case?

**D. It has already been established that WTNY has access to all Service Department records.**

WTNY refuses to search for and/or produce any documents received by the Service Department after March 2001, arguing that WTNY transferred the Service Department to CCJW in 2001, and therefore the Service Department records from that date forward are not WTNY's to produce.  Transferring an entire Department and its records from one entity to another requires coordination.  The decision to do so is not made without a coordinated effort amongst the Organization's Entities. WTNY does not explain how it can obtain some records from the Service Department but not others.

But more directly, WTNY has already conceded in prior litigation that it can search and produce all of the Service Department's child sex abuse records. Douglas Chappel, who has served in the Service Department since 1980, provided a declaration in the matter entitled *Annessa Lewis v. Bellows Falls Congregation of Jehovah's Witnesses, Inc.* acknowledging that the plaintiff in that case had requested all reports of childhood sexual abuse from 1960 to the present received from all 14,000 congregations in the United States.  He then declared that "[a]t present, a Watchtower Legal Department paralegal is physically examining each file to locate any correspondence in response to the March 14, 1997 Letter or related to the subject of child abuse." **Ex. N** at ¶¶ 17–20.  Thus, WTNY, through

its Legal Department, has already obtained all the Service Department files for

every congregation at issue in this case without limitation by time-period.

WTNY has previously been ordered to search for and produce post-2001

Service Department records.  *Padron*, 225 Cal. Rptr. 3d at 101 (affirming daily

monetary sanctions after finding WTNY "was in 'custody and control' of

responsive documents beyond the March 2001 creation of CCJW.").  The *Padron*

court found that multiple WTNY agents—by their own sworn testimony—had

access to the Service Department's files for all congregations in the United States

for all time periods.  *Id.*  WTNY should be ordered to search for and then produce

any discoverable post-2001 Service Department records.

## CONCLUSION

The Organization is one conglomerate all working towards the same goals,

led by the same group of men known as the Governing Body.  The myriad

connections, coordination, and overlap between WTNY, WTPA, CCJW, the

Service Department, the Legal Department, the U.S. Branch Committee, the

Branch Office, and many other entities establishes that WTNY has the ability to

obtain discoverable documents and information at the New York headquarters.

Accordingly, Plaintiffs respectfully request that the Court issue an Order requiring

WTNY to search for and produce discoverable documents and information at the

Plaintiffs' Brief in Support of Their Motion to Compel Production of All Discoverable
Documents and Information at the Jehovah's Witnesses' New York Headquarters
Page **21**

New York headquarters, regardless of the entity that allegedly has physical possession of the documents.

DATED 13th day of January, 2023.

MEYER, SHAFFER & STEPANS PLLP


By: /s/ Ryan Shaffer
     Ryan R. Shaffer
     MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(d)(2), Plaintiff hereby certifies that this brief complies with the length requirement for briefs, and that this brief contains 4,478 words, excluding the caption, certificates of service and compliance, table of contents and authorities, and exhibit index.

By: <u>/s/ Ryan Shaffer</u>
Ryan R. Shaffer
MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*


## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Local Rule 1.4, this document has been served on all parties via electronic service through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

By: <u>/s/ Ryan Shaffer</u>
Ryan R. Shaffer
MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*