Robert L. Stepans                         Matthew L. Merrill (appearing *pro hac vice*)
Ryan R. Shaffer                           Merrill Law, LLC
James C. Murnion                          6631 Mariposa Court
Meyer, Shaffer & Stepans, PLLP            Denver, CO  80221
430 Ryman Street                          Tel: (303) 947-4453
Missoula, MT  59802                       matthew@merrillwaterlaw.com
Tel: (406) 543-6929
Fax: (406) 721-1799
rob@mss-lawfirm.com
ryan@mss-lawfirm.com
james@mss-lawfirm.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | | |
|---|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | ) ) ) | Cause No. CV-20-52-BLG-SPW |
| Plaintiffs, | ) ) | AND |
| vs. | ) ) ) | Cause No. CV 20-59-BLG-SPW |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, | ) ) ) ) ) | **PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION TO COMPEL *IN CAMERA* REVIEW OF DOCUMENTS WITHHELD ON THE BASIS OF ATTORNEY-CLIENT PRIVILEGE** |
| Defendants, | ) ) ) | |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, | ) ) ) ) | |
| Cross Claimants, | ) ) ) | |
| BRUCE MAPLEY, SR., | ) ) | |
| Cross Defendant. | ) ) | |

| ARIANE ROWLAND, and JAMIE SCHULZE, | ) ) |
|---|---|
| Plaintiffs, | ) ) ) |
| vs. | ) ) |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, | ) ) ) ) ) |
| Defendants. | ) ) ) |

## SUMMARY OF PLAINTIFFS' POSITION

Defendant Watchtower Bible and Tract Society of New York, Inc. ("WTNY") has withheld documents evidencing its corporate knowledge of child sexual abuse within the Jehovah's Witnesses church (the "Organization").  According to WTNY, the documents are contemporaneous notes made during phone calls from local elders to WTNY's corporate Legal Department regarding the child sexual abuse at issue in this case.

While the attorney-client privilege can protect interviews of a corporation's employees by its legal department as part of an internal investigation, that is not the privilege being asserted by WTNY.  Instead, WTNY argues that its corporate legal department formed an independent attorney-client relationship with each elder who called to report child sexual abuse.  Thus, as WTNY would have it,

anyone who calls its corporate Legal Department to report child sexual abuse becomes a client and all information shared during the call is privileged.

It is well-established that corporate legal departments represent their corporations, not each person who calls the corporation to report wrongdoing. Based on the limited information available to Plaintiffs, it appears that WTNY is attempting to assert a privilege that is not supported by the facts and circumstances of the subject calls.

The withheld notes of the calls are likely to provide evidence of whether the communications were clients calling their lawyers for legal advice, or, are more accurately characterized as witnesses simply calling to report their knowledge of child sexual abuse without any genuine attorney-client relationship being formed. Accordingly, Plaintiffs seek in camera review of the documents as the best way to ensure protection of all parties' rights.

## FACTUAL BACKGROUND

A. <u>Plaintiffs' Cases</u>

This case is about the sexual abuse of children by elders and ministerial servants in the Hardin, MT congregation of Jehovah's Witnesses during the period 1973 to 1992. Plaintiffs are victims of this abuse and brought claims against corporations that were used by the Organization to implement policies and practices that protected the perpetrators and permitted the abuse to continue.

Plaintiffs' Brief in Support of Their Motion to Compel *In Camera* Review of Documents
Withheld on the Basis of Attorney-Client Privilege
Page **3** of **14**

B. <u>WTNY instructed Elders to Report Known Child Sex Abusers to the WTNY Legal Department</u>

WTNY instructs its elders to report instances of child sexual abuse to its Legal Department.  This policy has been in effect since at least 1989 and indicates a corporate effort to protect "the Society" from potential lawsuits instituted by "vindictive or disgruntled" abuse victims.   Letter from WTNY to All Bodies of Elders in the U.S. at 3 (July 1, 1989) (attached as **Exhibit A**).  The letter indicates a corporate effort **Ex. A** at 2.

C. <u>WTNY Attorney-Client Privilege Entries</u>[1]

WTNY's privilege log includes two general categories of withheld documents resulting from local elders reporting instances of child sexual abuse to WTNY's Legal Department: (1) notes and call summaries (entries 1–26); and (2) "client intake forms" (entries 45–49).  **Ex. B**.  A separate letter from the Brown Law Firm sets forth the parties to each allegedly privileged communication and asserts that any elder who called WTNY's Legal Department became a client of the Legal Department by virtue of what occurred during the phone call.  Letter from Brown Law Firm to Meyer, Shaffer & Stepans at 2–10, 12–13 (May 2, 2022) (attached as **Exhibit C**).  Entries 1 through 26 contain notes from anywhere

---

[1] An index of documents being withheld by WTNY under the assertion of attorney-client privilege, along with a copy of the relevant discovery requests, responses and WTNY's Second Supplemental Privilege Log is attached hereto as **Exhibit B** for the Court's convenience.

Plaintiffs' Brief in Support of Their Motion to Compel *In Camera* Review of Documents
Withheld on the Basis of Attorney-Client Privilege
Page 4 of 14

between 1 and 19 separate calls, sometimes occurring decades apart.  **Ex C** at 2–10.

## APPLICABLE LAW

"The attorney-client privilege protects communication between attorney and client during the course of the professional relationship."  *Am. Zurich Ins. Co. v. Montana Thirteenth Jud. Dist. Ct.*, 280 P.3d 240, 245 (Mont. 2012); *see also*, *Sweeney v. Dayton*, 416 P.3d 187, 190 (Mont. 2018) (citing *State ex rel. U.S. Fid. and Guar. Co. v. Montana Second Jud. Dist. Ct.*, 783 P.2d 911, 914–15 (Mont. 1989)).  "The privilege serves to ensure attorneys freely give accurate and candid advice to their clients without the fear it later will be used against the client."  *Id.* (citing *Inter–Fluve v. Mont. Eighteenth Jud. Dist. Ct.*, 112 P.3d 258, 261 (Mont. 2005)).  However, "the privilege must be construed narrowly because it obstructs the truth-finding process.  The privilege 'protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege.'"  *Id.* (quoting *Fisher v. U.S.*, 425 U.S. 391, 403 (1976)).

It is well known that "complications in the application of the privilege arise when the client is a corporation, which in theory is an artificial creature of the law, and not an individual...."  *Inter-Fluve.*, 112 P.3d at 261 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389–90 (1981)); *see also, Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 496–97 (S.D.N.Y. 2019) (citing cases).  Accordingly,

Plaintiffs' Brief in Support of Their Motion to Compel *In Camera* Review of Documents
Withheld on the Basis of Attorney-Client Privilege
Page **5** of 14

"In cases that involve in-house counsel, it is necessary to apply the privilege cautiously and narrowly 'lest the mere participation of an attorney be used to seal off disclosure.'" *Neuder v. Battelle P. N.W. Nat. Laboratory*, 194 F.R.D. 289, 295 (D.D.C. 2000).  When corporate legal departments are investigating potential wrongdoing within the corporation, communication with corporate personnel can be privileged.  *Parneros*, 332 F.R.D. at 493–94.  However, this privilege only applies to communication between the corporate legal department and corporate representatives.  *Id*.

## ARGUMENT

WTNY denies that the elders who called its Legal Department to report child sexual abuse were its agents.[2]  As a result, WTNY cannot now argue that communications between those elders and its Legal Department are privileged under the line of cases where the corporation, as the client, is conducting an investigation into wrongdoing.  Instead, WTNY has staked its privilege claim to the assertion that each elder who calls to report child sexual abuse becomes an individual client of the corporate Legal Department in his own right.

---

[2] Plaintiffs disagree with WTNY's position on agency of the elders and are aware of evidence establishing that WTNY appointed, trained, and controlled those elders.  Nevertheless, Plaintiffs' view on the question of agency is irrelevant to this Motion.

WTNY's position is not consistent with accepted notions of what constitutes an attorney-client relationship, and it has not presented evidence that the elders were calling the corporate Legal Department because they believed that they had retained it as their lawyer.  The evidence shows that the elders called the WTNY Legal Department because WTNY corporate policy instructed them to do so, and the withheld documents are likely to support this conclusion.  Resolution of the parties' disagreement over the nature of the phone calls will come down to the details of each call which can only be investigated by reviewing the withheld documents.  Accordingly, because there is at least a reasonable likelihood that the withheld documents contain evidence that the attorney-client privilege does not apply, *in camera* review of the documents is appropriate.  *U.S. v. Zolin,* 491 U.S. 554, 572 (1989).

### A. The Client of the Corporate Legal Department is the Corporation

"A lawyer employed or retained by an organization represents the organization acting through its duly authorized agents."  *Inter-Fluve*, 112 P.3d at 263–64 (citing Rule 1.13 Mont. Rules of Professional Conduct); *see also Egan v. McNamara*, 467 A.2d 733, 738 (D.C. App. 1983) (noting that the duty of the corporate legal department is owed to the corporation and not the individuals who control it); *Wayland v. Shore Lobster 7 Shrimp Corp.*, 537 F.Supp. 1220, 1223

Plaintiffs' Brief in Support of Their Motion to Compel *In Camera* Review of Documents
Withheld on the Basis of Attorney-Client Privilege
Page **7** of **14**

(S.D.N.Y. 1982).  A comment to the ABA's Model Rule of Professional Conduct

1.13 clarifies:

> *When one of the constituents of an organizational client*
> *communicates with the organization's lawyer in that person's*
> *organizational capacity, the communication is protected by Rule 1.6 .*
> *. . This does not mean, however, that constituents of an organizational*
> *client are the clients of the lawyer.*

ABA Model Rule of Prof. Conduct 1.13, Comment 2.

The law regarding representation by in-house legal departments, as well as

accepted rules for the representation of corporations, dictates that WTNY's in-

house Legal Department represents WTNY and not every elder who calls the Legal

Department to report knowledge of child sexual abuse.  While conversations

between WTNY's Legal Department and WTNY's corporate representatives could

be privileged under certain circumstances, it would require a finding that the elders

who called the Legal Department were doing so in the elder's "organizational

capacity" as WTNY employees or agents.  *Parneros*, 332 F.R.D. at 493–94.

For reasons that transcend this privilege dispute, WTNY denies that its

elders are agents of the corporation.  WTNY's Answer to Pls.' Req. for Admission

No. 27 (Dec. 2, 2022) (attached as **Exhibit D**).  As a result, WTNY has chosen to

abandon the accepted attorney-client privilege protection for communications

between corporate legal departments and corporate agents that occur during a

corporate investigation.

Plaintiffs' Brief in Support of Their Motion to Compel *In Camera* Review of Documents
Withheld on the Basis of Attorney-Client Privilege
Page **8** of 14

B. <u>Calling a Corporate Legal Department to Report Wrongdoing Does
Not Create an Attorney-Client Relationship</u>

WTNY has staked its claim of attorney-client privilege on the untenable

position that anyone who calls the corporate legal department to report instances of

child sexual abuse *ipso facto* becomes a client of the corporate legal department.

"'The existence of an attorney-client relationship is generally a question of fact.'"

*In re Marriage of Perry*, 2013 MT 6, ¶ 15 (quoting *Krutzfeldt Ranch, LLC v.*

*Pinnacle Bank*, 2012 MT 15, ¶ 13).  "[T]he party asserting privilege has the burden

to prove . . .  the attorney-client privilege [applies]."  *Sweeney*, 416 P.3d at 190

(citing *State ex rel. U.S. Fid. and Guar. Co.*, 783 P.2d at 914–15.

WTNY admits that there are no attorney-client agreements between the

elders of the Hardin Congregation and WTNY.  WTNY's Resp. to Pls.' RFP No.

40, Aug. 26, 2022 (Caekaert Case); WTNY's Resp. to Pls.' RFP No. 38, Aug. 26,

2022 (Rowland Case) (attached as **Exhibit E**).   WTNY has not produced any

evidence establishing an independent attorney-client relationship between its legal

department and any of the elders who made the subject calls.

Contrary to WTNY's assertion, it is well-established that corporate legal

departments represent their corporations.  *Inter-Fluve*, 112 P.3d at 263–64.  While

such representation can extend to those that control the corporation, it does not

extend to anyone and everyone who calls to report instances of criminal conduct

Plaintiffs' Brief in Support of Their Motion to Compel *In Camera* Review of Documents
Withheld on the Basis of Attorney-Client Privilege
Page **9** of **14**

occurring within the corporation.  ABA Model Rule of Prof. Conduct 1.13, Comment 2.

Here, the evidence is that WTNY's elders were calling the corporate legal department to report child sexual abuse because that is what WTNY had instructed them to do, not because they believed that they were calling their privately retained attorneys for legal advice.  All of the evidence is that they were doing what WTNY demanded of them: reporting instances of child sexual abuse for the purpose of protecting "the Society."  The evidence is that WTNY's Legal Department was representing the interest of its corporate client during the subject phone calls, not the interests of the elders.

WTNY's position, that its corporate legal department forms an independent attorney-client relationship with any elder who calls to report child sexual abuse, is not credible for other reasons.  For instance, to be true, WTNY's corporate legal department would need to: (1) have lawyers licensed to practice in each of the states from which the elders were calling, and (2) obtain a waiver of the obvious conflict that arises between WTNY and the elder.  Yet, WTNY has not shown that it had lawyers licensed to practice law in Montana (or the other 49 states) during all time periods when communications are being withheld.[3]  WTNY has not

---

[3] In fact, WTNY has not even shown that its corporate legal department provided the elders legal advice on any of the subject calls, let alone all of them.

Plaintiffs' Brief in Support of Their Motion to Compel *In Camera* Review of Documents
Withheld on the Basis of Attorney-Client Privilege
Page **10** of **14**

demonstrated waivers of the conflict of interest that would inevitably arise when the corporate legal interests diverge from individual elder's legal interests.

The conflict issue is particularly problematic for WTNY and illustrates exactly why its tortured attorney-client argument should not be accepted by the Court.  In 2022, two Illinois Jehovah's Witness elders who called the "Jehovah's Witnesses world headquarters" were told that they did not have to report known child sexual abuse and were subsequently convicted for failing to report the abuse. Shaw Local News Network, *Jehovah's Witnesses elders sentenced to supervision, community service for not reporting child's sexual abuse*, https://www.shawlocal.com/northwest-herald/news/2022/03/26/jehovahs-witnesses-elders-sentenced-to-supervision-community-service-for-not-reporting-childs-sexual-abuse/ (last visited January 18, 2023); Lake & McHenry County Scanner, *Judge sentences 2 Jehovah's Witnesses elders to court supervision, community service for failing to report sexual assault*, https://www.lakemchenryscanner.com/2022/03/26/judge-sentences-2-jehovahs-witnesses-elders-to-court-supervision-community-service-for-failing-to-report-sexual-assault/ (last visited January 18, 2023).

As this episode illustrates, the only interest being served by instructing the Illinois elders that they did not have to report known child sexual abuse to secular authorities was WTNY's.  Indeed, while WTNY has an interest in keeping child

Plaintiffs' Brief in Support of Their Motion to Compel *In Camera* Review of Documents
Withheld on the Basis of Attorney-Client Privilege
Page **11** of **14**

abuse within the church quiet, the obvious interest of the elders is to report so that they avoid any possibility of criminal liability.  Ultimately, all of the evidence establishes that the elders were simply reporting instances of child sexual abuse as WTNY asked of them, not calling a privately retained lawyer for legal advice.

## CONCLUSION

The only plausible way for the attorney-client privilege to attach to the subject communications would be if they were from WTNY corporate agents pursuant to a corporate investigation process that the Legal Department was conducting.  *See, e.g., Parneros*, 332 F.R.D. at 493–94.  But, for other strategic reasons in this case, WTNY is denying that its elders are agents and therefore denies that the elders were making the subject phone calls in this capacity.  As a result, it is making the untenable assertion that its corporate legal department moonlights as the personal lawyer for anyone who calls to report child sexual abuse within the Jehovah's Witness church.

WTNY's position is not supported by evidence of a legitimate attorney-client relationship and would require WTNY's Legal Department to routinely ignore and violate numerous ethical rules that prohibit such arrangements. Because the withheld documents are likely to contain evidence showing that the communications at issue were not legitimately privileged, Plaintiffs respectfully

Plaintiffs' Brief in Support of Their Motion to Compel *In Camera* Review of Documents
Withheld on the Basis of Attorney-Client Privilege
Page **12** of 14

submit that *in camera* review is the best way to balance the parties' respective

interests.

DATED 18th day of January, 2023.

MEYER, SHAFFER & STEPANS PLLP


By: /s/ Ryan Shaffer
Ryan R. Shaffer
MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

Plaintiffs' Brief in Support of Their Motion to Compel *In Camera* Review of Documents
Withheld on the Basis of Attorney-Client Privilege
Page **13** of 14

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(d)(2), Plaintiff hereby certifies that this brief complies with the length requirement for briefs, and that this brief contains 2,352 words, excluding the caption, certificates of service and compliance, table of contents and authorities, and exhibit index.

By: /s/ Ryan Shaffer
Ryan R. Shaffer
MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Local Rule 1.4, this document has been served on all parties via electronic service through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

By: /s/ Ryan Shaffer
Ryan R. Shaffer
MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

Plaintiffs' Brief in Support of Their Motion to Compel *In Camera* Review of Documents
Withheld on the Basis of Attorney-Client Privilege
Page **14** of 14