Gerry P. Fagan
Christopher T. Sweeney
Jordan W. FitzGerald
MOULTON BELLINGHAM PC
27 North 27th Street, Suite 1900
P.O. Box 2559
Billings, Montana 59103-2559
Telephone: (406) 248-7731
Fax: (406) 248-7889
Gerry.Fagan@moultonbellingham.com
Christopher.Sweeney@moultonbellingham.com
Jordan.FitzGerald@moultonbellingham.com

*Attorneys for Defendant Watch Tower Bible and Tract Society of Pennsylvania*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT and CAMILLIA MAPLEY,<br><br>Plaintiffs,<br><br>-vs-<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR.,<br><br>Defendants.<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, | Case No. CV-20-00052-SPW-TJC<br><br>**DEFENDANT WATCHTOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA'S RESPONSE TO PLAINTIFFS' MOTION TO FILE A SECOND AMENDED COMPLAINT** |

|  | Cross-Claimants, |
|---|---|
| -vs- | |
| BRUCE MAPLEY SR., | |
| | Cross-Defendant. |

## **INTRODUCTION**

Defendant Watchtower Bible and Tract Society of Pennsylvania ("WTPA") objects to Plaintiffs' motion to file a second amended complaint for the following reasons:

1. Plaintiffs proposed amendment violates the Court's scheduling order, which required that amendments to pleadings be filed no later than February 14, 2022.

2. The basis for plaintiffs' "new" allegations is information plaintiffs have had in their possession since nearly the beginning of this lawsuit in 2020. They have not provided a basis for their unreasonable delay in seeking to amend now. Allowing plaintiffs to amend now will require a new scheduling order and add further delay in this matter.

3. There are a total of four plaintiffs in this case and the related *Rowland* matter (Cause No. CV 20-59-BLG-SPW). Two of the four plaintiffs have already been deposed, and the other two will be deposed in early February, before plaintiffs' motion to amend will be ruled upon. WTPA will not have the ability to depose any

of the plaintiffs regarding any of their new allegations if the amendment is allowed or have sufficient time to conduct discovery on those new allegations.

4.  The thrust of plaintiffs' new allegations is that WTPA and WTNY are liable for each other's actions. Those claims are futile and should not be permitted.

Defendant Watchtower Bible and Tract Society of New York, Inc. ("WTNY") has also filed an objection to plaintiffs' motion to amend. WTPA joins in that objection as well.

Further, to the extent plaintiffs are moving to amend to fix typographical errors and other nominal inaccuracies in their previous complaint, WTPA submits that it is not necessary to file an amended complaint to correct those issues; they can be corrected in the final pretrial order.

## **PLAINTIFFS' MOTION TO AMEND**

On January 6, 2023, more than two and a half years after plaintiffs started this lawsuit, they filed a motion to file a second amended complaint. Per plaintiffs' own brief, they claim the amendment is meant to "clarify the relationship between the corporate defendants and fix other lingering inaccuracies and typographical errors from previous complaints." Pls. Br., p. 3 (Doc. 190). Plaintiffs also claim that, "These are routine, **timely** amendments . . . " *Id*. (emphasis added). Plaintiffs then summarily argue that they have discovered information since their last amended complaint that supports the new request for amendment, without explaining to the

Court what that "new" information actually is or when they discovered it. *Id*. at 4. Plaintiffs then conclude that their proposed amendment "will not result in any conceivable 'undue prejudice'" because discovery does not conclude until the end of March 2023. *Id*. at 5.

What plaintiffs fail to tell the Court is that their amendments are not timely by almost a year. The Court's scheduling order (Doc. 105) set February 14, 2022, as the amendment deadline. Plaintiffs late attempt to amend now violates the Court's scheduling order. Why plaintiffs represent to the Court that their attempted amendment is "timely" is unknown. Further, plaintiffs have not even attempted to show they have "good cause" to amend now, as required by Fed.R.Civ.P. 16(b)(4).

Plaintiffs also fail to tell the Court that two of the four plaintiffs in the two cases have already been deposed and the other two will be deposed in early February, before the Court rules upon plaintiffs' motion to amend. While it is true that discovery ends at the end of March, WTPA will not have the chance to depose any of the plaintiffs regarding any of their new allegations before trial, and likely will not have time to conduct any discovery whatsoever on the new allegations, which is obviously unduly prejudicial and should not be allowed.

Plaintiffs also fail to tell the Court that the information upon which they base their new allegations has been known to plaintiffs for a year, and perhaps **multiple years**. Plaintiffs admit as much in their brief. They argue, "Defendants have been on

notice regarding Plaintiffs 'alter ego' theory for over two years." Pls. Br. P. 5. If defendants were on notice of plaintiffs' theory that they are now trying to insert into their amended complaint, obviously so were plaintiffs. Yet, plaintiffs do not attempt to justify their years-long delay in asserting that claim.

For the reasons set forth in this brief, plaintiffs' motion to amend should be denied.

## ARGUMENT

### I. Legal authority on amendments to pleadings.

Both Fed.R.Civ.P. 16(b) and Fed.R.Civ.P. 15(a)(2) control plaintiffs' current motion to amend. Rule 16(b) provides that a Court's scheduling order may be modified only upon good cause and the judge's consent. Rule15(a)(2) provides, "…a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." "But a district court need not grant leave to amend where the amendment: (1) prejudices the other party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

//

//

//

## II.     Plaintiffs' motion to amend should be denied.

### 1.     Plaintiffs' motion to amend is untimely and violates the Court's scheduling order.

The Court's scheduling order (Doc. 105) set the deadline to amend pleadings for February 14, 2022. This was a date agreed to by all the parties at the Court's telephonic scheduling conference on December 17, 2021. The amendment deadline in the Court's scheduling order has never been modified.

Plaintiffs' motion to amend was filed nearly a year after the agreed-upon amendment deadline. Plaintiffs do not attempt to justify this late filing other than to vaguely state that they have learned additional information since their last amended complaint that justifies their new amendment. This argument is flawed for several reasons.

First, plaintiffs do not elaborate on what the "new" information is that they have obtained that would justify such a late amendment. The reality is, nearly all of the information that WTNY and WTPA have provided to plaintiffs in discovery was produced a year, if not *years*, ago, and long before the amendment deadline. Plaintiffs are very cagey in the way they describe the alleged "new" information because the information upon which their new allegations are based has been in their possession for a very long time. Plaintiffs are at fault for the delay in seeking the late amendment, and it should not be permitted now.

Second, plaintiffs admit that they had the information to support their new allegation for years. In support of their argument that WTPA will not be prejudiced by the amendment, plaintiffs argue that "Defendants have been on notice regarding Plaintiffs' 'alter ego' theory for over two years." Pls. Br. p. 5. Yet, plaintiffs do not attempt to justify why they have waited "over two years", and right before the discovery deadline, to propose their new amendments. Again, almost all the information WTPA and WTNY have produced in discovery was produced long before the amendment deadline. Plaintiffs' reasoning for the late amendment is woefully inadequate to support such a late filing.

Third, plaintiffs flatly overlook Rule 16's requirement that a scheduling order can only be amended upon a showing of "good cause." Fed.R.Civ.P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.") Plaintiffs' request to amend now, nearly a year after the amendment deadline, requires an amendment to the scheduling order, which can only be allowed upon a showing of good cause.

"[T]he liberal amendment standard set out in Rule 15(a) is inapplicable until Plaintiff first demonstrates that 'good cause' as prescribed by Rule 16(b) justifies the amendment." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 606–07 (E.D. Cal. 1999). Once a district court files a pretrial scheduling order pursuant to Rule 16 that establishes a deadline for amending pleadings, "a motion seeking to amend

pleadings is governed first by Rule 16(b), and only secondarily by Rule 15(a)." *Id*.; citing *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604 (9th Cir.1992). "If the Court considered only Rule 15(a) without regard to Rule 16(b), it would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Id*., citing *Sosa v. Airprint Systems, Inc.,* 133 F.3d 1417, 1419 (11th Cir.1998) and *Eckert Cold Storage, Inc. v. Behl,* 943 F.Supp. 1230, 1232 n. 3 (E.D.Cal.1996).

Rule 16(b)'s requirement of "good cause" is **more stringent** than the amendment procedures of Rule 15. *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 952 (9th Cir. 2006)

Rule 16's "good cause" standard focuses on the diligence of the party seeking amendment. *Jackson,* 186 F.R.D. at 607. "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. . . . [C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. . . If [the moving] party was not diligent, then the inquiry must end." *Johnson*, 975 F.2d at 609.

To demonstrate diligence under Rule 16's "good cause" standard, plaintiffs must show the following: (1) that plaintiffs were diligent in assisting the Court in creating a working Rule 16 order, (2) that plaintiffs noncompliance with a Rule 16 deadline occurred notwithstanding diligent efforts to comply, because of

8

development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference, and (3) that plaintiffs were diligent in seeking amendment of the Rule 16 order once it became apparent they could not comply. *Jackson*, 186 F.R.D. at 608.

Notwithstanding the fact that plaintiffs completely overlook Rule 16 and its good cause requirement, plaintiffs do not satisfy any of these diligence inquiries. First, as plaintiffs argue, they were making their alter-ego claims more than two years ago. The Court conducted a scheduling conference on December 17, 2021, and plaintiffs agreed at that time that the amendment deadline should be just two months later on February 14, 2022.[1] Requesting that the Court modify a deadline more than a year after it passed is not diligent. Second, plaintiffs' new allegations were reasonably foreseeable at the time of the scheduling conference in December 2021; they are not based on unexpected information. Last, plaintiffs have not been diligent in seeking the amendment. The proposed amendments are based on information plaintiffs have had for over a year, if not years.

Plaintiffs have failed to recognize that they must first establish "good cause" under Rule 16 before they can seek an amendment under Rule 15. In any event,

---

[1] Note that this scheduling conference occurred after WTPA withdrew its motion to dismiss for lack of personal jurisdiction. Further, it is important to note that significant discovery occurred while WTPA's motion to dismiss was pending, and that motion did not act as an impediment to plaintiffs discovering the facts that purportedly now support their new amendments.

plaintiffs cannot establish "good cause" under Rule 16 to allow their untimely amendment, and their motion should be denied.

## 2. Allowing Plaintiffs' amendment at this late stage will cause undue delay.

Defendants' expert witness disclosure is due March 15, 2023, and discovery closes March 31, 2023. (Doc. 174). Very little time remains before these deadlines. Given that plaintiffs will likely file a reply, this matter will not be fully briefed until early February, and presumably will not be ruled upon for at least several weeks after that. That will not leave WTPA anywhere near the time it will need to conduct discovery on the new allegations by March 31, 2023, or obtain discovery on the new allegations to provide to its experts by March 15, 2023.

If the Court allows the amendment, it will certainly necessitate a new scheduling order to reset discovery and expert deadlines. That should not be permitted. This case was filed in April 2020; we are coming to the three-year anniversary of this case. Plaintiffs have had ample opportunity to conduct discovery and timely submit amendments. They should not be permitted to continue to protract this litigation even further with delayed amendments.

## 3. WTPA will be prejudiced by the amendment because it will not be able to depose any of the plaintiffs or conduct discovery regarding the new allegations.

There are two plaintiffs in this case and two in the related *Rowland* matter. Two of those plaintiffs have already been deposed, and the other two are set to be

deposed in early February. Even if the motion to amend was granted and plaintiffs amended complaint was filed today, WTPA would be unduly prejudiced because it would be unable to ask questions in a deposition of the two plaintiffs who have already been deposed. Plus, given the trajectory of the briefing on plaintiffs' motion to amend, the Court will not have the chance to issue a ruling until after the remaining two plaintiffs' depositions are completed in February.

Plaintiffs' late motion to amend is plainly unduly prejudicial to WTPA because it will not have the chance to depose any of the plaintiffs regarding the new allegations. The prejudice to WTPA is obvious.

Plaintiffs state in their brief that "the current scheduling order permits discovery through March 31, 2023, which provides Defendants more than enough time to conduct additional discovery should they decide to do so." Pls. Br., p. 5. This argument fails. First, it overlooks the fact that all of the plaintiffs will have been deposed by the time the amended complaint is filed, if the Court permits it.

Second, even assuming the Court ruled on the motion to amend by the end of February and the amended complaint was immediately filed, that would only permit WTPA one chance to submit written discovery on the new allegations, and WTPA would have to scramble to schedule any additional depositions necessary based on the new allegations, if such scheduling would even be possible.

The Ninth Circuit addressed a similar situation in *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946. There, a plaintiff attempted to amend its answer to a counterclaim to assert an affirmative defense *before* the amendment deadline in the court's scheduling order and with eight months of discovery left. Because the motion to amend was filed before the amendment deadline, the court applied the more relaxed standard of Rule 15 instead of the more stringent standard of Rule 16(b). Even under the more relaxed standard, the district court denied the request to amend as untimely and prejudicial, and the Ninth Circuit affirmed. In determining that the motion to amend was untimely, the Ninth Circuit focused on when the party knew or should have known the facts that formed the basis of the amendment and noted that it previously held that an eight-month delay made an amendment untimely. *Id.* at 953, citing *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir. 1991). The Ninth Circuit found that when the plaintiff filed its original answer to the counterclaim in May 2003, it had all the information it needed to raise the affirmative defense it sought to raise by the amendment. The plaintiff sought to amend in August 2003, only three months after its original answer, and the Ninth Circuit agreed that it was untimely.

Here, plaintiffs' untimeliness is much more severe. First, their motion to amend was filed nearly a year after the deadline to amend, unlike in *AmerisourceBergen* in which the motion to amend was filed before the deadline.

Second, plaintiffs have had the information upon which their amendment is based for more than a year, and perhaps even *years*. Yet, they waited until just two months before the expert and discovery deadline to seek an amendment. Plaintiffs pay short shrift to the timing of their motion to amend, without any real explanation at all. Again, plaintiffs have had the information necessary for any amendments for a very long time, and their attempt to amend now is untimely.

Further, as plaintiffs argue here, the plaintiff in *AmerisourceBergen* argued that the amendment should be allowed because there were eight months of discovery time left. The Ninth Circuit found that such an argument is unconvincing:

> Even though eight months of discovery remained, requiring the parties to scramble and attempt to ascertain whether the Procrit purchased by AmerisourceBergen was tainted, would have unfairly imposed potentially high, additional litigation costs on Dialysist West that could have easily been avoided had AmerisourceBergen pursued its "tainted product" theory in its original complaint or reply. Allowing AmerisourceBergen to "advance different legal theories and require proof of different facts" at this stage in the litigation would have prejudiced Dialysist West and unfairly delayed Dialysist West's collection of a judgment worth approximately $2.2 million.

*Id*. at 953.

Here, assuming the Court granted plaintiffs' motion, it is quite likely there will not be any discovery time left for WTPA to ascertain information related to the new allegations. If any discovery time is left, WTPA will have to madly scramble to get any discovery done. As the Ninth Circuit stated in *AmerisourceBergen*, that

...

could have been avoided had plaintiffs timely pursued their new allegations, which they did not.

WTPA will be unduly prejudiced by the late amendment, which is sufficient reason for the Court to deny plaintiffs' motion.

### 4. **Plaintiffs' new allegations are that WTPA and WTNY are liable for each other's actions. This claim is futile and should not be permitted.**

"A court may deny leave to amend where the amendment would be futile or where the amended complaint would be subject to dismissal." *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (internal quotations and citations omitted). "A proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

Here, plaintiffs' new allegations against WTPA are that that WTPA and WTNY were agents of one another, were alter egos of one another, and were acting in concert, thereby making them vicariously liable for the others' actions. *See* Proposed Seconded Amended Complaint, ¶¶ 16-33, 44, 46-49, and 81 (Doc. 190-1). Plaintiffs have yet to identify any action or inaction by either WTPA or WTNY that would make them liable to plaintiffs, but nevertheless plaintiffs are seeking to proceed with their new allegations.

Plaintiffs' amendments to assert theories of "alter ego" and "vicarious liability" between WTPA and WTNY are meritless and futile. The theories are the byproduct of plaintiffs' efforts to somehow hold WTPA liable for acts it never took.

"Alter ego" is not a viable theory in this case. Claiming that one is the alter ego of another is a theory to allow a plaintiff to "pierce" the veil of a corporate entity. "The doctrine is used to impose liability on an individual who uses an entity merely as an instrumentality to conduct his or her own personal business; such liability results from fraud or injustice perpetrated not on the corporation, but on third persons dealing with the corporation...." *See* 114 Am. Jur. *Proof of Facts* 3d 403 § 5 (Westlaw 2014); 1 Fletcher Cyc. Corp. §§ 41.10 and 41.20. The "alter ego theory narrowly focuses on the personal liability of controlling shareholders." *See* Jody J. Brewster, Comment, *Piercing the Corporate Veil in Montana*, 44 Mont. L. Rev. 91, 106-10. As a matter of law, an "alter ego" theory clearly does not apply in this case.

Further, a "vicarious liability" claim similarly is not viable in this case. "Vicarious liability" is a theory where an employer may be liable for the tortious acts of its independent contractor. *See e.g., Stricker v. Blaine Cnty.*, 2019 MT 280, ¶ 12, 398 Mont. 43, 48, 453 P.3d 897, 901; *see also*, *Brenden v. City of Billings*, 2020 MT 72, ¶ 13, 399 Mont. 352, 359, 470 P.3d 168, 172 ("common law doctrine of respondeat superior imposes vicarious liability on employers for the tortious conduct of employees committed while acting within the scope of their

employment."). It arises from the concept that a principal may be liable for "ordinary negligence" committed by the principal's agent. Mont. Code Ann. § 28-10-606. Plaintiffs have not cited, and we are unaware, of any authority to employ "vicarious liability" to hold one corporation liable for acts of another corporation.

A claim is futile if no set of facts can be proved under the amendment that would constitute a valid and sufficient claim or defense." *Miller*, 845 F.2d at 214. Plaintiffs' proposed amendments against WTPA do not make sense – WTPA or WTNY could not be alter egos of one another, nor could they be vicariously liable for each other's actions. Plaintiffs proposed amendments are futile and should not be allowed.

## **CONCLUSION**

For the reasons stated above, plaintiffs' very late motion to amend their complaint should be denied.

**DATED** this 20th day of January, 2023.

                MOULTON BELLINGHAM PC

                By   */s/ Christopher T. Sweeney*
                     Christopher T. Sweeney

                     *Attorneys for Watch Tower Bible and Tract Society of Pennsylvania*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(d)(2)(E), I certify that this brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double-spaced, with left, right, top, and bottom margins of one inch; and that the word count calculated by Microsoft Word is 3,462 words, excluding the Table of Contents, Table of Authorities, Certificate of Compliance, and Certificate of Service.


By  */s/ Christopher T. Sweeney*
       Christopher T. Sweeney

# CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of January, 2023, a copy of the foregoing was served on the following persons:

1. U.S. District Court, Billings Division

2. Robert L. Stepans
   Ryan R. Shaffer
   James C. Murnion
   MEYER, SHAFFER & STEPANS, PLLP
   430 Ryman Street
   Missoula, MT 59802
   *Attorneys for Plaintiffs*

3. Jon A. Wilson                    Joel M. Taylor, Esq. (*pro hac vice*)
   Brett C. Jensen                  MILLER MCNAMARA & TAYLOR LLP
   BROWN LAW FIRM, P.C.             100 South Bedford Road, Suite 340
   315 North 24th Street          Mount Kisco, NY 10549
   P.O. Drawer 849
   Billings, MT 59103-0849
   *Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

4. Bruce G. Mapley, Sr.
   3905 Caylan Cove
   Birmingham, AL 35215

By the following means:

| | | | |
|---|---|---|---|
| 1, 2, 3 | CM/ECF | ____ | Fax |
| ____ | Hand Delivery | ____ | E-Mail |
| ____ | U.S. Mail | ____ | Overnight Delivery Services |
| 4 | Certified Mail, Return Receipt Requested | | |

By   */s/ Christopher T. Sweeney*
     Christopher T. Sweeney

4881-0412-1419, v. 2