Jon A. Wilson
Brett C. Jensen
BROWN LAW FIRM, P.C.
315 North 24th Street
P.O. Drawer 849
Billings, MT 59103-0849
Tel. (406) 248-2611
Fax (406) 248-3128

Joel M. Taylor, Esq. (appearing *pro hac vice*)
MILLER MCNAMARA & TAYLOR LLP
100 South Bedford Road, Suite 340
Mount Kisco, New York 10549
Tel./E-Fax (845) 288-0844
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY,<br><br>Plaintiffs,<br><br>vs.<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR.,<br><br>Defendants. | Cause No. CV 20-52-BLG-SPW<br><br>**DEFENDANT WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.'S RESPONSE BRIEF IN OPPOSITION TO PLAINTIFFS' "MOTION TO COMPEL PRODUCTION OF ALL DISCOVERABLE DOCUMENTS AND INFORMATION AT THE JEHOVAH'S WITNESSES' NEW YORK HEADQUARTERS" (DOC. 191)** |

| | |
|---|---|
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC. | ) ) ) ) |
| Cross-Claimant, | ) ) ) |
| vs. | ) ) ) |
| BRUCE MAPLEY SR., | ) ) ) |
| Cross-Claim Defendant. | ) |

**COMES NOW**, Defendant Watchtower Bible and Tract Society of New York, Inc., ("WTNY"), by and through counsel, and hereby submits its Response Brief in Opposition to Plaintiffs' Motion to Compel Production of All Discoverable Documents and Information at the Jehovah's Witnesses' New York Headquarters.

## I.     INTRODUCTION

To be clear, after a diligent search of records, Watchtower Bible and Tract Society of New York, Inc. ("WTNY") has produced to Plaintiffs or listed on a privilege log, every document in its possession that is responsive to any discovery demand. WTNY has never transferred documents responsive to any discovery demand to any other entity, corporation, or otherwise. The suggestion that WTNY is playing fast and loose with its records is patently false. The reality is that Plaintiffs' allegations lack legal merit, so Plaintiffs' counsel must pivot to manufacturing discovery disputes.

Plaintiffs' motion presents an overbroad request seeking the extraordinary relief of having WTNY produce documents it does not possess and does not have the legal right to obtain. Nor can WTNY produce what no longer exists, despite Plaintiffs' insistence. As acknowledged by Plaintiffs, WTNY has represented and continues to represent that it is the sole repository for all religious communications (inclusive of memoranda, letters, forms, etc.) involving congregations of Jehovah's Witnesses in the United States (including circuit overseers) regarding all matters responsive to discovery demands through March 2001. Simply because a document from 40 years ago may have existed, does not mean that it must exist now and WTNY is hiding it. Plaintiffs' tortured reasoning does not justify the current motion, which was also brought in derogation of controlling Ninth Circuit precedent, the Federal Rules of Civil Procedure, and Plaintiffs' counsel's duty of candor under rules of professional conduct. Accordingly, the motion should be denied.

## II.    RELEVANT FACTS

- Plaintiffs have served 164 requests for production to date (including the jurisdictional phase) to Defendant WTPA, with another 100 to Defendant WTNY (including the jurisdictional phase).

- WTNY has produced 1,150 pages of responsive documents.

- After a thorough search, WTNY produced or logged every responsive document.

- Counsel conferred.

- In the moving papers, Plaintiffs identify various entities including corporations that serve the faith of Jehovah's Witnesses, i.e., the governing body, the U.S. Branch Committee, the U.S. Service Department, WTPA, WTNY and CCJW. Each entity is distinct. WTNY is not the governing body. WTNY is not the branch committee. WTNY is not CCJW. WTNY does not control any of those other entities. WTNY does not possess, have custody of or control the documents that the other entities might possess. While the entities enjoy a close working relationship with one another in the faith, none controls the records of the others. Yet, Plaintiffs ask this Court to compel WTNY to search the records and files of each distinct entity.

### III. LEGAL ARGUMENT

A. <u>Ninth Circuit Law Controls</u>

A cursory review of the Table of Authorities reveals the striking absence of citation to controlling case law. Rather than directing this Court to well-established binding law from the Ninth Circuit Court of Appeals, the "Applicable Law," section of Plaintiffs' brief erroneously advises the court to apply the "practical ability" test for control on the basis of non-binding case law from the District of Puerto Rico and courts in other circuits. (*See* Doc. 192, pp. 4-5). While courts in other circuits expand the definition of "control" of documents to include not just those documents a party

has a legal right to obtain, but also those that a party has a practical ability to obtain, the Ninth Circuit has a narrower definition. *See Citric Acid Litigation*, 191 F.3d 1090 (9th Cir. 1999) ("we conclude . . . that **the legal control test is the proper standard** under Rule 45." [emphasis added]). The legal control test means a party may be ordered to produce a document in the possession of a non-party entity only if the party has a legal right to obtain the document, or has control over the entity in possession of the document. *Chamber of Com. of United States of Am. v. City of Seattle*, 334 F.R.D. 440, 441 (W.D. Wash. 2020). A party's medical records in possession of a doctor are a perfect example of this: the party has a legal right to obtain such records from his/her physician. *See*, *e.g*., *Soto v. City of Concord*, 162 F.R.D. 603, 620 (N.D. Cal. 1995) The practical ability test Plaintiffs advocate was rejected in *Citric Acid Litigation, supra.*

The *Citric Acid Litigation* involved a dispute brought under Rule 45 in connection with a subpoena for records to a non-party, as opposed to a request for documents under Rule 34. But the rules are integrated[1], and the test is the same. *See* Advisory Committee Notes ("… The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34."). *Cf* Order Granting Motion to Quash Subpoena

---

[1] Rule 34(a) addresses document requests to a party whereas Rule 34(c) addresses document requests to a non-party, as permitted by Rule 45.

dated May 6, 2022, in *BNSF Railway Co. v. Center for Asbestos Related Disease,* CV 19-40-M-DLC (D. Mont.) ("…Rule 45 has been crafted to mirror 'the other discovery rules,' *see* Federal Rule of Civil Procedure 45, Advisory Committee Note, 1970 Amendment…"); *In re ATM Fee Antitrust Litigation*, 233 F.R.D. 542, 544 (N.D.Cal. 2005), quoting 5A Moore's Federal Practice, P. 45.05(2) at 45-32 n. 6(a) (1979) ("A rule 45 subpoena, as well as a rule 34 document request, may reach only those documents within the possession, custody or control of the subpoenaed person.").

Further, the *Citric Acid* analysis included a discussion of analogous facts in *United States v. International Union of Petroleum and Industrial Workers, AFL-CIO,* 870 F.2D 1450 (9th Cir. 1989), also addressing a Rule 45 subpoena. There, the Department of Labor asked the District Court to compel an "international union" to produce documents in the possession of the "local unions" because there was a close relationship between the entities.[2] The Ninth Circuit affirmed the District Court's Order denying a motion to compel. The documents were not in the possession of the international union because "the contract governing the union

---

[2] The relationship among entities that are a part of the faith of Jehovah's Witnesses are different than the structure of a union. On such matters of religious governance, the Court must accept Jehovah's Witnesses' explanation of its organizational structure. *See Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 724-25 (1976) (The First and Fourteenth Amendments permit hierarchical religious organizations to establish their own rules and regulations for . . . government.") Since March 2001, WTNY has not had actual possession of, nor legal control over, any documents created after that date other than those from the Legal Department, which are listed on the privilege log.

relationship did not expressly give" the international union the right to obtain the records upon demand. The *International Union* court explained,

> Control must be firmly placed in reality [citations omitted], not in an esoteric concept such as "inherent relationship." We do not look to whether the International theoretically controlled the local; rather, we inquire whether *actual* control existed. . . . The Department's "inherent relationship" argument also runs contrary to the principles that dictate union governance. The Supreme Court has stated that union constitutions "prescribe the legal relationship and the rights and obligations between the parent and affiliated locals."

870 F.2d at 1454.

Thus, since the local union "could legally—and without breaching any contract—"continue to refuse to turn over such documents, the court could not compel the international union to obtain and produce the documents. The party defendant (the international union) had produced all documents in its actual possession and control and suggested the plaintiff could obtain other documents directly from the locals. The same is true here.

Further, there is no parent-child corporate relationship between WTNY and any other entity. In 1977, a religious guide written by non-lawyers referred to WTPA as the "parent corporate agency of Jehovah's Witnesses". The statement was not a legal declaration, but simply a reflection of its age and historical significance to Jehovah's Witnesses. (*See* Exhibit A, WTPA's Responses to Plaintiffs' First Set of Jurisdictional Discovery, Requests for Admission Nos. 2-3, dated November 20,

2020). Moreover, even if it were true today, WTPA is a defendant in this lawsuit and has already responded to Plaintiffs' discovery demands.

Since 2001, a different corporation (Christian Congregation of Jehovah's Witnesses ("CCJW")) has been working with the Service Department, which, Plaintiffs contend, is the known repository for information they seek (Doc. 192, pp. 3 and 20). Plaintiffs cannot provide evidence that WTNY transferred ownership or control over its records to CCJW because that never happened. In 2001, CCJW took up certain functions formerly handled by WTNY. CCJW owns/controls all its records since its creation just as WTNY owns/controls all its pre-March 2001 records (exclusive of its logged legal records which go to present).

Plaintiffs have not demonstrated any efforts to obtain records from CCJW. *See Oil Heat Inst. of Oregon v. Nw. Nat. Gas*, 123 F.R.D. 640, 642 (D. Or. 1988)(denying motion to compel where there was no evidence requesting party could not "obtain the requested information directly from the member organizations" who were non-parties). Plaintiffs simply complain that they are not satisfied with WTNY's representation that it conducted a thorough search of all its records and, after identifying responsive documents, either produced each one or it on a privilege log. CCJW is a corporation capable of being served with a subpoena. For that reason alone, Plaintiffs' Motion to Compel should be denied because WTNY has fully responded to Plaintiffs' Requests for Production of Documents.

B. <u>The Local Rules of Court Require Citation to Controlling Authority</u>

Local Rule 83.2 provides that attorneys practicing before this Court must adhere to the Rules of Conduct promulgated by the American Bar Association's Model Rules of Professional Conduct (ABA R.P.C.) and the Montana Rules of Professional Conduct (Mt.R.P.C.).  ABA Rule 3.3(a)(2) and Mt.R.P.C. 3.3(a)(2) are identical; both require an attorney to inform the court of controlling case law:

> Rule 3.3: CANDOR TOWARD THE TRIBUNAL
>
> a.   A lawyer shall not knowingly:
> 1.   <u>make a false statement of</u> fact or <u>law</u> to a tribunal <u>or fail to correct a false statement of</u> material fact or <u>law</u> previously made to the tribunal by the lawyer;
> 2.   fail to disclose to the tribunal <u>legal authority in the controlling jurisdiction</u> known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
> 3.   offer evidence that the lawyer knows to be false . . .

As discussed in section A above, Plaintiffs disregard controlling case law from the Ninth Circuit Court of Appeals and attempt to persuade the Court to employ a standard that the Ninth Circuit has expressly rejected.  Plaintiffs should correct the error by withdrawing the motion to compel.

Perhaps more egregiously, Plaintiffs grossly mislead the court by describing—in the present tense—purported "facts" that have not been established for this case.  (*See* Doc. 192, p.7, footnote 2).  They attempt to diminish the falsity of those purported facts by stating that "they <u>should only be understood to be</u>

accurate as of the date of the cited source material" – some of which are **a half-century old.** *See* e.g., Plaintiffs' Exhibit A (Doc. 192-1), which is dated 1972—**a full 50 years ago**—and their Exhibit B (Doc. 192-2), dated 1978—45 years ago. Plaintiffs also acknowledge that their Exhibit B was generated by a non-party, to be delivered to a non-party. They argue that because they believe WTNY had that document a half century ago that WTNY has a duty to produce it in this litigation. WTNY cannot produce documents from 40-50 years ago that it does not possess. They no longer exist.

Additionally, Plaintiffs acknowledge that some two decades ago, when a new corporation (CCJW) was formed, it took over functions WTNY had performed in relation to the Service Department. Since that time, WTNY—in the normal course of business—had no possession or control over any documents that were created or received post March 2001 by the Service Department or any other entity acting on behalf of Jehovah's Witnesses in the United States. There is nothing nefarious about that adjustment made in the normal course of activities. No prior request, nor CCJW's purported prior cooperation with the production of documents in other cases, prevents CCJW from declining a request for production today. That is precisely the situation that existed in the controlling case here. *See In re Citric Acid Litigation,* 191 F.3d at 1108 ("Varni claims that C&L-US has the practical ability to obtain documents from C&L-Switzerland because C&L-Switzerland has voluntarily

furnished C&L-US with documents and information in the past.")  WTNY does not have the "legal right" to force any other entity to turn over records.  The Plaintiffs can employ other discovery devices to obtain records from those non-parties.

WTNY has been forthcoming in identifying not only records in its possession, but also its belief that *all* responsive documents in existence through March 2001 (excepting its logged legal records which go to the present) have, in fact, been identified and either produced or logged.  This includes any documents that may have been directed to non-corporeal entities like the Governing Body and the United States Branch Committee.  Plaintiffs even quote WTNY's response on page 18 of the moving papers.  Until March 2001, any communication directed to Jehovah's Witnesses in New York that involved the Hardin Congregation would have been routed to WTNY for handling.  At that time, WTNY was maintaining those records in the Service Department, which since March 2001 coordinates activities through CCJW.  If Plaintiffs sincerely believe that pre-2001 documents exist that WTNY has not produced, they can direct requests to CCJW and wait for a response.

Plaintiffs' arguments notwithstanding, WTNY has conducted a thorough search for relevant information and has produced, or logged, each responsive document.  The Motion to Compel further production should be denied.

## IV. CONCLUSION

The Ninth Circuit has yet to adopt the "practical ability" test for determining a party's "control" over documents. Until that time, and for the present motion, a party like WTNY only controls those documents it has a legal right to obtain. WTNY has no legal right to obtain and compel CCJW to produce documents in the latter's possession. Moreover, Plaintiffs have made no effort to obtain documents directly from CCJW itself.

Accordingly, and for all the reasons argued herein, the Court should decline Plaintiffs' Motion.

DATED this 27th day of January, 2023.

> By: /s/ Jon A. Wilson
> Jon A. Wilson
> BROWN LAW FIRM, P.C.
> *Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(d)(2)(E), the undersigned hereby certifies this brief complies with L.R. 7.1(d)(2)(A). According to the word-processing unit used to prepare this brief, the word count is 2,463 words excluding caption, table of contents and authorities, exhibit index, and certificates of service and compliance.

DATED this 27th day of January, 2023.

By: /s/ Jon A. Wilson
Jon A. Wilson
BROWN LAW FIRM, P.C.
*Attorneys for Defendants Watchtower Bible and Tract Society of New York, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on January 27th, 2023, a copy of the foregoing was served on the following person(s):

1. U.S. District Court, Billings Division

2. Robert L. Stepans/Ryan R. Shaffer/James C. Murnion
   MEYER, SHAFFER & STEPANS, PLLP
   430 Ryman Street
   Missoula, MT 59802

3. Matthew L. Merrill (appearing *pro hac vice*)
   MERRILL LAW, LLC
   1863 Wazee Street, Suite 3A
   Denver, CO 80202

4. Gerry P. Fagan/Christopher T. Sweeney/Jordan W. FitzGerald
   MOULTON BELLINGHAM PC
   P.O. Box 2559
   Billings, MT 59103-2559

5. Bruce G. Mapley Sr.
   3905 Caylan Cove
   Birmingham, AL 35215

by the following means:

| | | | |
|---|---|---|---|
| __1-4__ | CM/ECF | _____ | Fax |
| _____ | Hand Delivery | _____ | E-Mail |
| __5__ | U.S. Mail | _____ | Overnight Delivery Services |

By: __/s/ Jon A. Wilson__
Jon A. Wilson
BROWN LAW FIRM, P.C.
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*