| | |
|---|---|
| Robert L. Stepans | Matthew L. Merrill (appearing *pro hac vice*) |
| Ryan R. Shaffer | Merrill Law, LLC |
| James C. Murnion | 6631 Mariposa Court |
| Meyer, Shaffer & Stepans, PLLP | Denver, CO  80221 |
| 430 Ryman Street | Tel: (303) 947-4453 |
| Missoula, MT  59802 | matthew@merrillwaterlaw.com |
| Tel: (406) 543-6929 | |
| Fax: (406) 721-1799 | |
| rob@mss-lawfirm.com | |
| ryan@mss-lawfirm.com | |
| james@mss-lawfirm.com | |

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

TRACY CAEKAERT, and CAMILLIA MAPLEY,

      Plaintiffs,

vs.

WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA,

      Defendants,

WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA,

      Cross Claimants,

BRUCE MAPLEY, SR.,

      Cross Defendant.

Case No. CV-20-52-BLG-SPW

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION OF NON-PRIVILEGED INFORMATION IN DOCUMENTS WITHHELD BY WTNY ON THE BASIS OF CLERGY-PENITENT PRIVILEGE (DOC. 187)**

## INTRODUCTION TO REPLY

The law must be the final arbiter of what is privileged and not privileged. Defendant Watchtower Bible and Tract Society of New York, Inc. ("WTNY") asks the Court to ignore Montana law governing the clergy-penitent privilege so that it can withhold entire categories of documents evidencing the abuse at issue in this case that are not privileged. Plaintiffs therefore respectfully urge the Court to order *in camera* review of the subject documents and apply Montana law as it exists, rather than as WTNY wants it to exist.

## THE CLERGY-PENITENT PRIVILEGE IN MONTANA

Montana's clergy-penitent privilege protects from disclosure: (1) a confidential confession, or other non-penitential statement made to a member of the clergy in the course of the church's disciplinary process; (2) made for the purpose of seeking or receiving religious guidance, admonishment, or advice; so long as (3) the cleric was acting in his or her religious role pursuant to the established disciplinary practices of the subject church. *State v. MacKinnon*, 957 P.2d 23, 28 (Mont. 1998); *State v. Gooding*, 989 P.2d 304, 307 (Mont. 1999); *see also* Mont. Cod Ann. § 26-1-804.

When considering the breadth of Montana's clergy-penitent privilege, the Montana Supreme Court explicitly adopted the approach of the Utah Supreme

Court in *Scott v. Hammock*. *MacKinnon*, 957 P.2d at 28 (citing *Scott v. Hammock*, 870 P.2d 947 (Utah 1994). In *Scott,* the question was a narrow one: "[W]hether nonpenitential communications between a lay person and a clergyman are privileged under Utah law." 870 P.2d 947 at 949. The answer was yes, so long as the nonpenitential statement was made in the course of discipline enjoined by the church:

> We conclude that the term "confession" need not be construed to apply only to penitential communications and that broad construction of that term is necessary to take into account the essential religious role clergy play in the dealing with the wrongdoing of parishioners.

*Id*. at 953–55 (noting that the expansion of the privilege to include nonpenitential statements was only justified if those statements were made "in the course of the discipline enjoined by the church . . ."). *Id*.

Thus, *Scott* (and by extension *MacKinnon*) does not represent some massive expansion of the clergy-penitent privilege rendering any religious communication about child sexual abuse privileged. Montana's adoption of *Scott* only expanded protection of the Montana clergy-penitent privilege from "confessions" to include other nonpenitential statements <u>if they were made as part of the church's disciplinary process</u>. *MacKinnon*, 957 P.2d at 28 (District court properly concluded that MacKinnon's statements were not privileged because they were not

made "in the course of discipline enjoined" by MacKinnon's church). That's it, nothing more.

Nothing in *MacKinnon* or *Scott* provides that internal reports of known child molesters are privileged. Nothing in *MacKinnon* or *Scott* provides that letters from one congregation to another about a known pedophile are privileged. Nothing in *MacKinnon* or *Scott* provides that a letter referencing allegations made against an elder are privileged. Nothing in *MacKinnon* or *Scott* provides that an administrative form recording the disfellowshipping of a known child molester is privileged. None of those documents constitute a confession or a nonpenitential statement made pursuant to the church's disciplinary process, and they are not privileged communications under applicable Montana law.

## WTNY IS ASKING TO EXPAND THE CLERGY-PENITENT PRIVILEGE BEYOND ITS INTENDED PURPOSE

Montana's clergy-penitent privilege must be applied to achieve the purpose of the privilege; but no more than that. That "purpose" is to permit parishioners to seek spiritual advice and guidance clergy. *MacKinnon*, 957 P.2d at 28; *Scott* 870 P.2d at 955 ("clergy must be able to counsel and admonish with confidentiality if they are to "show the transgressor the error of his way; to teach him the right way; to point the way to faith, hope, and consolation [and] perchance to lead him to seek atonement.").

Plaintiffs are not asking this court to order disclosure of any confidential communication, penitential or otherwise, made by a parishioner who was seeking religious guidance from a member of the Jehovah's Witnesses clergy because those statements are privileged. But WTNY is clearly withholding documents that include information that goes well beyond such privileged communications. For instance, neither the plain language nor the purpose of the Montana clergy-penitent privilege protects corporate reports of known pedophiles within the Jehovah's Witnesses church from disclosure. Ultimately, WTNY is asking this Court to adopt an interpretation of the Montana clergy-penitent privilege that goes well beyond its scope and purpose as set forth in *MacKinnon*.

**WTNY ROUTINELY OVERCLAIMS CLERGY-PENITENT PRIVILEGE**

In 2013, Elizabeth McFarland sued WTNY alleging that it failed to protect her from a known pedophile who was a member of her Jehovah's Witnesses congregation. *McFarland v. W. Congregation of Jehovah's Witnesses, Lorain, Ohio, Inc.*, 60 N.E. 39, 44 (Ohio Ct. App. 2016). During discovery, WTNY claimed the clergy-penitent privilege over the same sorts of documents it is withholding in this case. *Id*. at 44–47. In total, the *McFarland* court reviewed nineteen separate documents and determined that only four of them were appropriately withheld by WTNY. *Id*. at 57.

The *McFarland* court's analysis is instructive and applicable to the documents in this case.[1] As it has done here, in *McFarland*, WTNY demonstrated its propensity to overclaim the clergy-penitent privilege and force plaintiffs to spend months, if not years, litigating unfounded privilege claims. While not an exhaustive list, the *McFarland* court determined that many of WTNY's sweeping claims of clergy-penitent privilege were improper because it withheld:

- ➢ Communications that had a secular, non-religious purpose;
- ➢ Communications that only reported wrongdoing and did not include a parishioner seeking religious advice or counseling;
- ➢ Communications that included unsolicited religious counseling;
- ➢ Communication to non-clergy;
- ➢ Communications from one congregation to another that only conveyed background and factual information about a person; and
- ➢ Communications that were not a request or a response to a request for religious counseling, advice, or guidance.

---

[1] Like Montana's clergy-penitent privilege, the statute at issue in *McFarland* protected confidential communications to a member of clergy, acting in their role as a clergyman, pursuant to the established disciplinary practices of their church, and for the purpose of seeking or receiving religious guidance, admonishment, or advice. *Id* at 46–47. This Court previously noted that Ohio's clergy-penitent privilege is similar to Montana's and thus instructive to this case. (Doc. 79 at 18, 20).

*Id* at 48–55. The common feature of all documents improperly withheld by WTNY in *McFarland* was that they did not satisfy every component of the statutory test.

WTNY has been repeatedly told that communications and documents like those referenced above should not be withheld under a clergy-penitent privilege statute like Montana's. Nevertheless, that is exactly what it has done in this case. For instance, both this Court and the *McFarland* court have already told WTNY that the reports of known child molesters it received in response to the 1997 All Bodies of Elders Letter (WTNY P.L. entries 27–36) are secular in nature and are not communications where a parishioner is seeking religious guidance, counseling, or advice. Yet, WTNY has withheld all such documents and insists on mischaracterizing them as a confidential communication "seeking or receiving religious guidance, admonishment, or advice."

It is obvious that WTNY's characterization of the withheld documents is self-serving and intended to convince the Court of things that are not true. WTNY's privilege log entry number 29 is a particularly egregious example. There, the privilege log states that it is a confidential communication "seeking or receiving religious guidance, admonishment, or advice concerning Third Party Gunnar Hain." Doc. 188-3 at 22. However, nine months after providing its

privilege log to Plaintiffs, WTNY just now disclosed that the document includes allegations made against two additional perpetrators involved in this case, Martin Svenson and Bruce Mapley.[2]  Doc. 193 at 18.  WTNY fails to explain why this material information was not disclosed in its March 25, 2022, privilege log.  It is impossible for Plaintiffs to understand, let alone fairly litigate, WTNY's claims of privilege when it misrepresents and mischaracterizes the withheld documents.

### WTNY'S RELIANCE ON CHURCH EMPLOYMENT AND APPOINTMENT CASES DO NOT APPLY

To justify its position that Montana's clergy-penitent privilege permits it to withhold the subject documents, WTNY cites a series of cases that have nothing to do with applying the clergy-penitent privilege: *Our Lady of Guadalupe School v. Morrissey-Berru,* 140 S.Ct. 2049 (2020); *Serbian Eastern Orthodox Diocese for U. S. of America and Canada v. Milivojevich*, 426 U.S. 696 (1976); *Hadnot v. Shaw*, 826 P.2d 978 (OK 1992);  *Seattle's Union Gospel Mission v. Woods*, 212 L. Ed. 2d 318 (Mar. 21, 2022).  (Doc. 193 at 13–14).  Each of these cases involve a plaintiff asking a court to interfere with the employment and/or appointment decisions of a church.  Plaintiffs are not asking this Court to interfere with WTNY's employment,

---

[2] While it remains unclear to Plaintiffs where the accusations against Svenson and Mapley came from, if Hain was reporting the misconduct of others during his own confession, those accusations would not be privileged because they would not constitute statements Hain made for the purpose of seeking religious guidance for his own transgressions.

appointment, or governance decisions. Plaintiffs are simply asking the Court to apply Montana's clergy-penitent privilege as established by the Montana legislature and interpreted by the Montana Supreme Court.

## WTNY MISSTATES MONTANA LAW REGARDING WAIVER OF THE CLERGY-PENITENT PRIVILEGE

Montana law provides that a privilege is waived if the holder "voluntarily discloses or consents to disclosure of any significant part of the privileged matter." Mont. R. Evid. 503. WTNY asks this Court to ignore the "disclosure of any significant part of the privileged matter" component of Montana law, and instead apply the law of other jurisdictions that require more. (Doc. 193 at 24–26). The court should reject WTNY's argument. Montana law is plain and explicit: revealing any "significant part" of the privileged matter constitutes waiver.

## DEFENDANTS' KNOWLEDGE OF CHILD SEXUAL ABUSE AT THEIR CONGREGATIONS IN MONTANA IS RELEVANT

WTNY argues that documents showing its knowledge of child sexual abuse occurring in Montana are not relevant to the statute of limitations analysis.[3] (Doc. 193 at 26–27). WTNY's position would require the Court to read out the words

---

[3] WTNY chose not to contest Plaintiffs' argument that these documents were also relevant to: (a) counter WTNY's position that the Hardin Congregation was a rogue congregation acting in ways not in conformance with Defendants' policies and practices; and (b) Plaintiffs' claims for punitive damages. (Doc. 188 at 15–17).

"any unlawful sexual conduct" from Montana Code Annotated Section 27-2-216(5)(a), which states in pertinent part:

> A claim for damages described in subsection (3) that would otherwise be barred because the applicable statute of limitations has expired must be revived if the court concludes that the entity against whom the action is commenced, based upon documents or admissions by employees, officers, directors, officials, volunteers, representatives, or agents of the entity, knew, had reason to know, or was otherwise on notice of **any unlawful sexual conduct by an** employee, officer, director, official, volunteer, representative, or agent and failed to take reasonable steps to prevent future acts of unlawful sexual conduct.

(emphasis added). Contrary to WTNY's position, the statute plainly states that Plaintiffs claims may be pursued if Court concludes that WTNY knew, had reason to know, or was on notice of "any unlawful sexual conduct" by its agents or representatives and failed to take reasonable steps to prevent "future acts." WTNY's relevance argument requires this Court to ignore the plain language of Montana statute, which is not permitted. *See, e.g.*, *Goble v. Montana State Fund*, 325 P.3d 1211, 1217 (Mont. 2014) ("the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted."). The reports of known Jehovah's Witnesses pedophiles received by WTNY are relevant to several aspects of this case and should therefore be produced.

///

## CONCLUSION

It is Montana law that governs whether the documents being withheld by WTNY are privileged. While *MacKinnon* expanded protection of the clergy-penitent privilege to include nonpenitential statements made by a parishioner during that church's disciplinary process, it did not alter any other components of the clergy-penitent privilege test. WTNY still must show that all of the withheld documents are confidential communications between a parishioner and a member of the clergy where the parishioner is seeking religious guidance or counseling for his or her transgressions. WTNY has not met this burden for any of the withheld documents.

DATED 31st day of January, 2023.

> MEYER, SHAFFER & STEPANS PLLP
>
> By: /s/ Ryan Shaffer
>     Ryan R. Shaffer
>     MEYER, SHAFFER & STEPANS PLLP
>
> *Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), Plaintiff hereby certifies that this brief complies with the length requirement for briefs, and that this brief contains 2,098 words, excluding the caption, certificates of service and compliance, table of contents and authorities, and exhibit index.

> By: /s/ Ryan Shaffer
> Ryan R. Shaffer
> MEYER, SHAFFER & STEPANS PLLP
>
> *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 1.4, this document has been served on all parties via electronic service through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

> By: /s/ Ryan Shaffer
> Ryan R. Shaffer
> MEYER, SHAFFER & STEPANS PLLP
>
> *Attorneys for Plaintiffs*