Jon A. Wilson
Brett C. Jensen
BROWN LAW FIRM, P.C.
315 North 24th Street
P.O. Drawer 849
Billings, MT 59103-0849
Tel. (406) 248-2611
Fax (406) 248-3128

Joel M. Taylor, Esq. (appearing *pro hac vice*)
MILLER MCNAMARA & TAYLOR LLP
100 South Bedford Road, Suite 340
Mount Kisco, NY 10549
Telephone/E-Fax: (845) 288-0844
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, <br><br> Plaintiffs, <br><br> vs. <br><br> WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR., <br><br> Defendants. | Cause No. CV 20-52-BLG-SPW <br><br> **DEFENDANT WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.'S RESPONSE BRIEF IN OPPOSITION TO PLAINTIFFS' "MOTION TO COMPEL *IN CAMERA* REVIEW OF DOCUMENTS WITHHELD ON THE BASIS OF ATTORNEY-CLIENT PRIVILEGE" (DOC. 195)** |

| | |
|---|---|
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC. | ) ) ) ) ) |
| Cross-Claimant, | ) ) ) |
| vs. | ) ) ) |
| BRUCE MAPLEY SR., | ) ) ) |
| Cross-Claim Defendant. | ) |

**COMES NOW**, Defendant Watchtower Bible and Tract Society of New York, Inc., ("WTNY"), by and through counsel, and hereby submits its Response Brief in Opposition to Plaintiffs' Motion to Compel *In Camera* Review of Documents Withheld on the Basis of Attorney-Client Privilege.

## INTRODUCTION

Plaintiffs ask the Court to compel *in camera* review of documents withheld by Watchtower Bible & Tract Society of New York, Inc. ("WTNY") based on the attorney-client privilege. Plaintiffs' motion is based on the false assumption that attorneys at the WTNY Legal Department are no different than in-house corporate counsel for Walmart, Twitter, or McDonald's. But there is a significant difference. WTNY exists to support the affairs of the religious body of believers known as Jehovah's Witnesses. The attorneys at the WTNY Legal Department do the same by providing legal guidance and advice to Jehovah's Witnesses' elders ("clergy" as defined legally). In short, the attorneys represent the broader religious faith in the

United States, not just the corporate entity that exists to support the faith.  Thus, the communications at issue are plainly privileged.  An *in camera* review is both unwarranted and a waste of judicial resources.

## BACKGROUND

A religion, or faith-based community, is a collection of people with shared religious beliefs and practices.  They typically need a place to worship, which requires owning property.  They need the ability to contract.  They need a bank account.  And, these days, they often need legal advice. Thus, religious communities create legal entities to hold assets, contract, hire employees, print literature, and support other necessary secular affairs of the spiritual body of believers.  *See* W. Cole Durham and Robert Smith, 1 Religious Organizations and the Law § 8.2 (2d ed., 2022) (hereafter "Religious Organizations").   But the corporation (or corporations[1]) is not itself the *ekklesia*—the Greek word often translated in the New Testament as "church" or "congregation" (Acts 11:26; 1 Corinthians 15:9).  Instead, it exists to support the congregation of believers.

This is different than secular businesses, which are generally considered "coextensive with [their] corporate form."  Religious Organizations § 8.2.  Walmart, for example, does not exist apart from its corporate existence.  Thus, "[a] lawyer

---

[1] "A church … can have many corporate entities …."  W. Cole Durham and Robert Smith, 1 Religious Organizations and the Law § 8.2 (2d ed., 2022).

representing a corporation usually does so by representing the corporate entity because the corporation defines all of the duties and rights of the enterprise." *Id*.

Religious organizations are different. Membership in a church or faith group does not require stock ownership or appointment to a corporate position. *Id*. It simply requires shared beliefs, religious practices, and association according to church doctrine and policy (or Scripture). *Id*. Religious organizations need legal entities to pursue "their religious and charitable purposes in a manner that can interact with the secular world." *Id*. "Just as individuals create a bank account to facilitate financial transactions with others, religious organizations form legal entities to engage with the secular world." *Id*. But that legal entity "is not the church," it is a tool used by the faith. *Id*. "Thus, a lawyer representing a church may think of a corporate entity as a tool rather than as the church itself." *Id*.

As described by one court, a religious corporation "is civil in nature and is an entity distinguishable from an ecclesiastical society or association, the one having jurisdiction over the temporal or secular and the other over ecclesiastical or spiritual affairs."[2] *Willis v. Davis*, 323 S.W.2d 847, 848 (Ky. 1959).

---

[2] *See also Christian Church of Huntsville v. Sommer*, 43 So. 8, 9 (Ala. 1907) ("An incorporated church is composed of two distinct elements, viz.: The church proper, as distinguished from the entity created by the act of incorporation; and the corporation itself, which has relation only to the temporalities of the institution. The purpose of the incorporation of a church is to acquire and care for the property thereof."); *Folwell v. Bernard, By and Through Bernard*, 477 So.2d 1060, 1063 (Fla. App. 1985) ("[W]henever a religious society incorporates, it assumes a dual existence; two distinct entities come into being – one, the church, which is conceived and

## STATEMENT OF FACTS

WTNY is a corporation that is tax exempt under section 501(c)(3) of the Internal Revenue Code and is organized under the Not-for-Profit Corporation Law of the State of New York.  *See* Affidavit of Mario Moreno ("Moreno Affidavit"), attached as Exhibit A.  It supports the religious body of Christians in the United States known as Jehovah's Witnesses by, as examples, it owns real estate to provide housing and office facilities for members of the religious order who serve under vows of poverty and obedience, and it prints religious materials in the United States.  *Id*, ¶ 7

WTNY also has attorneys, sometimes called the Legal Department, whose purpose is the same as WTNY's—to support the religious body of believers known as Jehovah's Witnesses.  *Id*, ¶ 8  Thus, the WTNY Legal Department provides legal guidance and advice not just to WTNY, but to elders around the nation who take the lead in caring for the ministry of Jehovah's Witnesses.  *Id*, ¶¶ 6, 8-9   These attorneys are in-house counsel not just for WTNY, but for the broader religious community of elders, congregations of Jehovah's Witnesses, and other legal entities used by Jehovah's Witnesses.  *Id*, ¶ 9

---

endures wholly free from the civil law, and the other, the corporation created through the state prescribed method.  (cite omitted).  Each remains separate, though closely allied.").

In 1989, WTNY sent a letter to All Bodies of Elders with this instruction: "Many states have child abuse reporting laws. When elders receive reports of physical or sexual abuse of a child, they should contact the Society's Legal Department immediately." (Doc. 196-1 at 4.) As stated in *Nunez v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 455 P.3d 829, 833 (Mont. 2020), "When elders receive a report of physical or sexual child abuse, they are instructed to immediately call the Watchtower legal department in New York to determine whether the laws of their jurisdiction require them to report the abuse to authorities. According to the Jehovah's Witnesses, elders will report child abuse to secular authorities if required by law[.]"

Elders do not call the Legal Department as private individuals, but in their capacity as ministers. Moreno Affidavit, ¶ 10. They speak as ministers to legal counsel for the faith and with the expectation of confidentiality. *Id*, ¶ 11. Attorneys at WTNY understand that they represent WTNY *and* the elders in their ecclesiastical (clerical) capacity, and that their communications are privileged. *Id*, ¶ 12. Accordingly, no court has ever compelled WTNY to produce these attorney-client communications absent a waiver of the privilege--which pre-supposes existence of the privilege.

## ARGUMENT

"The attorney-client privilege protects communications between attorney and client during the course of the professional relationship." *Am. Zurich Ins. Co. v. Montana Thirteenth Jud. Dist. Ct.*, 280 P.3d 240, 245 (Mont. 2012). The purpose and policy rationale of the privilege is to "'encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy depends upon the lawyer's being fully informed by the client.'" *Nelson v. City of Billings,* 2018 MT 36, ¶ 23, 390 Mont. 290, 412 P.3d 1058 (internal citations omitted). As Plaintiffs point out, "[a] lawyer employed or retained by an organization represents the organization acting through its duly authorized agents." *Inter-Fluve v. Mont. Eighteenth Jud. Dist. Ct.*, 112 P.3d 258, 261 (Mont. 2005).

Plaintiffs contend that this means "that WTNY's in-house Legal Department represents WTNY and not every elder who calls the Legal Department" for legal advice. (Doc. 196 at 8.) Plaintiffs misunderstand the way religious organizations work. Unlike secular corporations, a religious organization has an existence separate from the corporation (or corporations) through which it conducts affairs in the secular world. The Catholic Church, for example, is not a corporation. It has many

corporate entities through which it conducts secular affairs, but those corporations are not the Church.

Likewise, the religious body of Christian believers known as Jehovah's Witnesses is not a corporate entity. It's a faith community, a Christian denomination. But it must have legal entities to function in a secular world. WTNY is one of those entities. It exists to support the religious purpose of Jehovah's Witnesses.

Thus, the attorneys at the WTNY Legal Department do not merely represent WTNY, they represent the broader faith that WTNY exists to support. When an elder calls for legal advice in his ecclesiastical (clerical) capacity, he is calling as an agent of the religious community that WTNY supports. He is not, as Plaintiffs contend, a "witness[ ] simply calling to report their knowledge of child sexual abuse without any genuine attorney-client relationship being formed." (Doc. 196 at 3.) He is, rather, a minister calling for legal advice in his ecclesiastical (clerical) capacity from attorneys who represent the religious community. Thus, when an elder consults with an attorney at WTNY for advice in his capacity as a minister (clergyman), he is no different for attorney-client privilege purposes than the plaintiffs in this case speaking with their attorneys.

By contrast, if an elder called the WTNY Legal Department for advice about a personal matter—*e.g.*, drafting a will—he would be turned away. The attorneys

do not represent him in his personal capacity. But if a Congregation receives a subpoena for confidential records, and the elders call the WTNY Legal Department for advice, they are seeking legal advice in their ecclesiastical (clerical) capacity, not as outsiders to the attorney-client relationship.

Plaintiffs misleadingly state "WTNY admits that there are no attorney-client agreements between the elders of the Hardin Congregation and WTNY." (Doc. 196 at 9.) What WTNY admits is that there is no *written* attorney-client agreement between the attorneys and individual elders or congregations. Nor is there a reason for one. Nothing in the law requires an attorney to have a written agreement to protect attorney-client communications: the only requirement is that an individual communicating with the attorney is doing so for the purpose of seeking legal advice. *See Nelson*, ¶ 23; *see also In re Grand Jury Subpoena Issued to Powers*, 68 F.3d 480 (9th Cir. 1995). More importantly, there is a common understanding that has been in place since at least 1989 that when elders call the WTNY Legal Department in their capacity as ministers (clergy), there is an attorney-client relationship and an expectation of confidentiality.[3]

---

[3] The Ninth Circuit expressly acknowledges a written agreement is not necessary. *See Waggoner v. Snow, Becker, Kroll, Klaris & Krauss*, 991 F.2d 1501, 1505 (9th Cir. 1993) ("A formal contract is not necessary to show that an attorney-client relationship has been formed."); *E .F. Hutton & Co. v. Brown*, 305 F. Supp. 371, 388 (S.D. Tex. 1969) ("[The attorney-client relationship] is not dependent on the payment of a fee, nor upon the execution of a formal contract.").

There is no doubt that when elders call the WTNY Legal Department, they understand that an attorney-client relationship exists and that their communications are privileged and confidential. The attorney-client privilege "attaches to communications as long as the client reasonably believes that an attorney-client relationship exists." Paul R. Rice et al., 1 Attorney-Client Privilege in the U.S. § 4:1. *See Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir. 1978) (attorney-client relationship "hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice"); *United States v. Dennis*, 843 F.2d 652, 657 (2d Cir. 1988) ("The key, of course, to whether an attorney/client relationship existed is the intent of the client and whether [the client] reasonably understood the conference to be confidential [despite the presence of his father]."); *In re Grand Jury Subpoena*, 201 F. Supp. 3d 767, 774 (W.D.N.C. 2016) ("Indeed, the Fourth Circuit has described the very 'essence' of the attorney-client privilege as the client's intention that the communication remain confidential.").

Plaintiffs assert that if the Watchtower Legal Department represents each elder that calls for legal advice, there would need to be "a waiver of the obvious conflict that arises between WTNY and the elder." (Doc. 196 at 10.) But there is no conflict. Plaintiffs simply assert one based on their view that "while WTNY has an interest in keeping child abuse within the church quiet, the obvious interest of the

elders is to report so that they avoid any possibility of criminal liability." (Doc. 156 at 11-12.)

WTNY has no interest in covering up child abuse, and Plaintiffs supply none, other than empty rhetoric supported by their counsel's imagination. Far from having a conflict, WTNY and the elders who consult with attorneys at the WTNY Legal Department have identical interests: obeying the law and observing their religion. *See*, *e.g.*, *Tichenor v. Roman Catholic Church of Archdiocese of New Orleans*, 32 F.3d 953, 959-60 (5th Cir. 1994)(noting that the interest shared by the Catholic Church and its clergy is to promote the faith, and that illegal sexual pursuits are not a shared interest). And the former is entirely consistent with the latter. If the law of the state in question requires a report, Jehovah's Witnesses obey the law, even if it means disclosing a communication considered confidential in their religious beliefs and practices. But where the law does not require disclosure and the communication is confidential under their beliefs and practices, their interests in complying with the law and observing their religious beliefs remain fully aligned.

Plaintiffs cite news articles about two elders who were convicted of a misdemeanor in Illinois for failure to report. The articles are inadmissible hearsay. *See Twardowski v. American Airlines*, 535 F.3d 952, 961 (9th Cir. 2008) ("Passengers' only submission in support is a newspaper article, which is hearsay.").

In any case, they have nothing to do with whether the documents at issue in this case are privileged.

Plaintiffs also contend that the WTNY Legal Department cannot represent local ministers because the attorneys would have to be "licensed to practice in each of the states from which the elders were calling …." (Doc. 196 at 10.) That is false.[4] *See  Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 994-995 (9th Cir. 2009)(acknowledging existence of attorney-client privilege in context of Illinois lawyer representing client based in Nevada). A lawyer "practicing as in-house counsel … may provide legal services … to the lawyer's employer or its organizational affiliates" so long as they are not the type of services "for which the forum requires pro hac vice admission …." ABA Model Rule 5.5(d). WTNY Legal Department functions as in-house counsel for ministers affiliated to it in the faith of Jehovah's Witnesses.

Moreover, Rule 5.5 of the ABA's Model Rules of Professional Conduct (which is identical to Rule 5.5 of the Montana Rules of Professional Conduct) also authorizes any lawyer to "provide legal services on a temporary basis" in a jurisdiction where he or she is not licensed if those services "arise out of or are

---

[4] Plaintiffs' argument is especially disingenuous in light of the fact that Plaintiffs are represented in this action by an out-of-state attorney whose communications they assert are strictly privileged even though many of those communications seem to have occurred before his *pro hac* admission in Montana. (Doc. 126; Doc. 144-5; *See* also Plaintiffs' privilege logs attached as Exhibit B).

reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice."  This rule "reflects the modern trend in the law of multijurisdictional practice." *Colmar, Ltd. v. Fremantlemedia North America, Inc.*, 801 N.E.2d 1017, 1026 (Ill. App. 2003).  It "represent[s] a … new latitude" that accommodates the increasingly mobile and electronic nature of modern legal practice.  Ronald D. Rotunda & John S. Dzienkowski, Legal Ethics: The Lawyer's Deskbook on Professional Responsibility § 5.5–2, at 1100-01, 1112 (2016).  "[T]he need to provide effective and efficient legal services to persons and businesses with interstate legal concerns requires that jurisdictions not erect unnecessary barriers to interstate law practice."  Restatement (Third) of the Law Governing Lawyers § 3 (2000) comment b.

Under this rule, "[a]ssociation with local counsel . . . is not required in most instances of in-state practice.  Among other things, the additional expense for the lawyer's client of retaining additional counsel and educating that lawyer about the client's affairs would make such required retention unduly burdensome." *Id.* comment e.

Here, the WTNY Legal Department exists to provide legal guidance and advice to elders of the religious community of believers known as Jehovah's Witnesses.  Advising ministers regarding reporting obligations is surely reasonably related to that practice.

Finally, Plaintiffs supply nothing more than mere "belief" that attorney-client privilege does not apply, and that is not justification for *in camera* review. The Ninth Circuit has explained a party's belief that documents are not privileged based solely on "unfounded suspicion" is not a sufficient factual showing to justify an *in camera* review. *Rock River Communications, Inc. v. Universal Music Group, Inc.*, 745 F.3d 343, 353 (9th Cir. 2016). Rather, a party challenging the application of attorney-client privilege to particular documents is required to make a "threshold showing" that material is not privileged prior to a court reviewing it *in camera*. *Brown v. Bank of Am., N.A.*, 660 Fed. Appx. 506, 507 (9th Cir. 2016). Plaintiffs make no such showing here.

## CONCLUSION

The WTNY Legal Department is not like a typical in-house corporate legal team that simply represents the corporation. That is because WTNY is not a typical corporation. Its existence is not co-extensive with the religious body of believers known as Jehovah's Witnesses. WTNY exists to support a religious purpose and the ecclesiastical ministers of a religious faith community. The WTNY Legal Department exists for the same purpose. It can only do that if it can provide legal advice to local elders in their ecclesiastical (clerical) capacity.

Accordingly, the challenged communications at issue are therefore privileged and *in camera* review is unnecessary.

DATED this 1st day of February, 2023.

By: /s/ Jon A. Wilson
Jon A. Wilson
BROWN LAW FIRM, P.C.
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(d)(2)(E), the undersigned hereby certifies this brief complies with L.R. 7.1(d)(2)(A). According to the word-processing unit used to prepare this brief, the word count is 3,034 words excluding caption, table of contents and authorities, exhibit index, and certificates of service and compliance.

DATED this 1st day of February, 2023.

By:   /s/ Jon A. Wilson
       Jon A. Wilson
       BROWN LAW FIRM, P.C.
       *Attorneys for Defendants Watchtower Bible and Tract Society of New York, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on February 1, 2023, a copy of the foregoing was served on the following person(s):

1. U.S. District Court, Billings Division

2. Robert L. Stepans/Ryan R. Shaffer/James C. Murnion
   MEYER, SHAFFER & STEPANS, PLLP
   430 Ryman Street
   Missoula, MT 59802

3. Matthew L. Merrill (appearing *pro hac vice*)
   MERRILL LAW, LLC
   1863 Wazee Street, Suite 3A
   Denver, CO 80202

4. Gerry P. Fagan/Christopher T. Sweeney/Jordan W. FitzGerald
   MOULTON BELLINGHAM PC
   P.O. Box 2559
   Billings, MT 59103-2559

5. Bruce G. Mapley Sr.
   3905 Caylan Cove
   Birmingham, AL 35215

by the following means:

| | | | |
|---|---|---|---|
| _1-4_ | CM/ECF | ___ | Fax |
| ___ | Hand Delivery | ___ | E-Mail |
| _5_ | U.S. Mail | ___ | Overnight Delivery Services |

By: /s/ Jon A. Wilson
Jon A. Wilson
BROWN LAW FIRM, P.C.
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*