| | |
|---|---|
| Robert L. Stepans | Matthew L. Merrill (appearing *pro hac vice*) |
| Ryan R. Shaffer | Merrill Law, LLC |
| James C. Murnion | 6631 Mariposa Court |
| Meyer, Shaffer & Stepans, PLLP | Denver, CO  80221 |
| 430 Ryman Street | Tel: (303) 947-4453 |
| Missoula, MT  59802 | matthew@merrillwaterlaw.com |
| Tel: (406) 543-6929 | |
| Fax: (406) 721-1799 | |
| rob@mss-lawfirm.com | |
| ryan@mss-lawfirm.com | |
| james@mss-lawfirm.com | |

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | |
| Plaintiffs, | Case No. CV-20-52-BLG-SPW |
| vs. | **PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO AMEND (DOC. 191)** |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, | |
| Defendants, | |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, | |
| Cross Claimants, | |
| BRUCE MAPLEY, SR., | |
| Cross Defendant. | |

## SCOPE OF RELIEF SOUGHT IN PLAINTIFFS' MOTION

After reviewing the evidence, Plaintiffs have determined it is appropriate to limit the relief sought by their Motion. While the initial Motion sought production of all documents and information at the Jehovah's Witness New York Headquarters, the evidence supports narrower relief. Therefore, based on the evidence, Plaintiffs are requesting an Order requiring WTNY to search and produce responsive documents and information from the U.S. Branch Office (which includes the Service Department and all of its documents) and the Christian Congregation of Jehovah's Witnesses ("CCJW").

## THERE IS NO DISTINCTION BETWEEN WTNY AND THE U.S. BRANCH OFFICE

WTNY insists that *it* is not the Service Department or the U.S. Branch Office. But this conclusory statement is meaningless because the Service Department and U.S. Branch Office are non-entities that exist in name only; they are nothing more than labels that the Jehovah's Witness Organization (the "Organization") has given to groups of men who, like WTNY, are carrying out the Organization's tasks. WTNY presents no evidence of boundaries or distinctions between WTNY, the Service Department, and U.S. Branch Office. In fact, the evidence is to the contrary, they are the same thing.

WTNY Assistant Secretary-Treasurer, Don Adams, stated under oath, "[t]he Watchtower Bible and Tract Society of New York, Inc. **is a branch used to**

**administer to the needs of Jehovah's Witnesses in the United States**." Doc. 117-1 (Affidavit of Don Adams, ¶8 (Feb 11. 1986)) (emphasis added). WTNY and the U.S. Branch Office have indistinguishable purposes, that both include caring for the needs of Jehovah's Witnesses in the United States, printing and shipping bible based literature, arranging and overseeing the education and instruction of Jehovah's Witnesses in the United States, and overseeing congregations of Jehovah's Witnesses in the United States. *See e.g.* 1982 Amended and Restated Certificate of Incorporation of WTNY, pp 2-3 (produced by WTNY in Response to Plaintiffs' RFP No. 4 during jurisdictional discovery and attached as **Exhibit A**); *see also* Watch Tower Bible and Tract Society of Pennsylvania, *United States Branch Office of Jehovah's Witnesses* (2017) (attached as **Exhibit B**).

WTNY's lawyer, Mario Moreno, testified that the Service Department is in the U.S. Branch Office, which uses WTNY for certain purposes, including using WTNY letterhead for communication with elders and congregations in the United States. Doc. 192 at 10. They are all represented by WTNY's Legal Department. Doc. 192 at 9. Individuals serve all three entities, like Gary Breaux, who is the "overseer" of the Service Department, the Assistant Secretary of WTNY, and reports to the U.S. Branch Committee. Doc. 192 at 11-12. An objective view of the evidence reveals that there is no distinction between WTNY, the U.S. Branch Office, and the Service Department. WTNY offers no evidence to the contrary.

Therefore, Plaintiffs respectfully request an Order requiring WTNY to search for and produce discoverable documents and information located at the U.S. Branch Office.

### WTNY HAS CUSTODY, POSSESSION AND CONTROL OVER ALL SERVICE DEPARTMENT AND CCJW RECORDS

WTNY refuses to produce child sex abuse records from the Service Department that were created after the year 2001, arguing that those records are CCJW documents, and not WTNY's. WTNY fails to explain how it is able to obtain some records from the Service Department, but not others.[1] WTNY also fails to explain how it had the right to obtain and produce post-2001 Service Department records in the *Padron* case but cannot do so here. Ultimately, it appears that WTNY is attempting to create a distinction in the Service Department records that has no evidentiary, legal, or logical support.

Furthermore, the Service Department is simply a name given to people performing tasks at the U.S. Branch Office, which is itself a non-entity that acts through and is no different than WTNY. *See supra* pp. 2-4. The evidence establishes that the WTNY is the entity that completes the work of the U.S. Branch Office, which includes the Service Department. Therefore, the evidence

---

[1] For example, WTNY provides no evidence that the non-corporeal Service Department has any formal policy, rule, or procedure which would officially limit WTNY's access to Service Department records based on certain date ranges.

establishes that WTNY has custody, possession, and control of all Service Department records.

But even if WTNY's mythical distinction in the Service Department records beginning in the year 2001 were honored, the evidence also establishes that WTNY has sufficient control over CCJW to obtain its documents. Specifically, Allen Shuster testified that personnel within WTNY have "the authority to implement or impose policies, procedures, or decisions upon Christian Congregation of Jehovah's Witnesses." 192-5 at 16:25 – 17:13. This is clear and undisputed evidence that WTNY has sufficient power and authority to obtain all discoverable CCJW documents, including those that are apparently housed in the Service Department. *See Padron v. Watchtower Bible & Tract Socy. of New York, Inc.*, 225 Cal. Rptr. 3d 81, 91 (Cal. App. 4th Dist. 2017).

## WTNY OFFERS NO EVIDENCE OF ITS OWN

WTNY describes the evidence supporting Plaintiffs' Motion as "egregiously" and "grossly" misleading because some of the referenced statements were from previous years. Doc. 202 at 9.[2] The fact that Mario Moreno's sworn testimony about the WTNY Legal Department was in 2014 does not mean that it is

---

[2] As to the *egregiously misleading* argument, Plaintiffs' Brief specifically highlighted that the evidence was only current as to the date of the cited source material. Far from an attempt to make the evidence something that it is not, Plaintiffs explicitly highlighted the age of the evidence.

inaccurate today. And while WTNY complains about the evidence, it offers none. To be sure, if WTNY has more current evidence regarding the structure of the Organization, where is it?

WTNY also fails to mention that it has prevented Plaintiffs from deposing the people with the most knowledge about the Organization's structure. Doc. 153. If WTNY wants to contest Plaintiffs' evidence as stale, it should let Plaintiffs do discovery or offer evidence of its own so that the record may be complete and accurate. That is how factual issues are contested in litigation by parties that are acting in good faith. The evidence submitted in support of Plaintiffs' brief is *the evidence* and it provides a sufficient basis to conclude that there is no recognizable difference between WTNY and the U.S. Branch Office, which includes the Service Department. The evidence also establishes that WTNY has power and authority to obtain discoverable documents from its partner, CCJW.

### *CITRIC ACID* AND THE CONTROL TEST

WTNY criticizes Plaintiffs for citing out-of-circuit cases discussing the practical ability test without also acknowledging *Citric Acid* where the Ninth Circuit chose not to use the practical ability test. While not an ethical violation, it is fair to criticize Plaintiffs for not finding and acknowledging the *Citric Acid* case.

Nevertheless, application of the practical ability test does not appear to be settled law and WTNY attempts to make the case something that it is not. Years

after *Citric Acid,* this Judicial District applied the practical ability test to a question of control over documents. *DLJ Mortg. Capital, Inc. v. Lemon Creek Ranch, LLC*, CV 12-55-BU-DLC, 2013 WL 12134036, at *2 (D. Mont. Sept. 3, 2013) (citing *In re Lozano*, 392 B.R. 48, 54 (S.D.N.Y. 2008)). The practical ability test can certainly be harmonized as part of the control test under the right set of facts. For instance, in this case, where one Organization has set up numerous related corporate and non-corporate entities that share personnel, lawyers, office buildings, and letterhead, the *practical ability* of one entity to go next door and obtain documents from another of those entities should be a relevant consideration when determining those entities have the legal right to obtain documents from each other.

### WTNY'S LEGAL DEPARTMENT WOULD NOT ACCEPT SERVICE OF A CCJW SUBPOENA AND THE ORGANIZATION'S NON-ENTITIES CANNOT BE SERVED

WTNY alleges that Plaintiffs made no effort to obtain documents from CCJW directly. Not true. Plaintiffs' counsel asked WTNY's lawyers if WTNY's Legal Department—which also represents CCJW—would accept service of a subpoena. WTNY lawyer, Joel Taylor, stated that the Legal Department would not accept service. WTNY does not explain why its Legal Department, which represents CCJW, would not accept service of a subpoena for CCJW.

Joel Taylor also noted that non-entities, like the U.S. Branch Office, do not actually exist in the eyes of the law, and therefore cannot be served with a subpoena. Thus, as WTNY and Mr. Taylor would have it, any document that the Organization unilaterally decides is possessed or controlled by one of its non-entities becomes undiscoverable and out of reach to Plaintiffs. Such an arrangement, whereby a party to litigation can unilaterally designate some documents as its own, and other documents as belonging to its non-incorporated affiliates, would completely undermine the principle of open and honest discovery as set forth in the Federal Rules. The Court should not accept WTNY's fictional distinctions between itself and its affiliated, unincorporated entities.

## WTNY WILL NOT REVEAL THE SCOPE OF ITS SEARCH

WTNY states that it has diligently searched all of *its* files and produced (or claimed privilege over) all of *its* documents. But it is not clear what this means. WTNY never articulates how anyone can determine where *its* documents end, and those of non-entities like the U.S. Branch Office begin. For instance, Mario Moreno testified that the U.S. Branch Office sends out letters on WTNY letterhead. Doc. 192-4 at 35:13 – 36:12. Is this a U.S. Branch Office document that was not searched for, or is this a WTNY document that was searched for? WTNY does not say, and it is therefore impossible to know if WTNY conducted a full and complete search of documents it has possession, custody, and control over.

## CONCLUSION

The evidence establishes that WTNY has possession, custody, and control of all documents at the U.S. Branch Office, including all child sex abuse documents in the Service Department regardless of the year they were created. The evidence also establishes that WTNY has control over CCJW's documents. WTNY offers absolutely no evidence for the mythical distinctions it attempts to make between *its* documents and those of the non-corporeal U.S. Branch Office or CCJW; it simply wants the Court to accept what it says because it says it. This is not how the legal system works. Plaintiffs' uncontroverted evidence shows WTNY can search for and produce all U.S. Branch Office documents (including its Service Department) and all CCJW documents.

DATED 10th day of February, 2023.

                              MEYER, SHAFFER & STEPANS PLLP

                              By: /s/ Ryan Shaffer
                                      Ryan R. Shaffer
                                      MEYER, SHAFFER & STEPANS PLLP
                                      *Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), Plaintiff hereby certifies that this brief complies with the length requirement for briefs, and that this brief contains 1,737 words, excluding the caption, certificates of service and compliance, table of contents and authorities, and exhibit index.

                By: /s/ Ryan Shaffer
                      Ryan R. Shaffer
                      MEYER, SHAFFER & STEPANS PLLP

                *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 1.4, this document has been served on all parties via electronic service through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

DATED 10th day of February, 2023.

        MEYER, SHAFFER & STEPANS PLLP

        By: /s/ Ryan Shaffer
            Ryan R. Shaffer
            MEYER, SHAFFER & STEPANS PLLP

        *Attorneys for Plaintiffs*