| | |
|---|---|
| Robert L. Stepans | Matthew L. Merrill (appearing *pro hac vice*) |
| Ryan R. Shaffer | Merrill Law, LLC |
| James C. Murnion | 6631 Mariposa Court |
| Meyer, Shaffer & Stepans, PLLP | Denver, CO 80221 |
| 430 Ryman Street | Tel: (303) 947-4453 |
| Missoula, MT 59802 | matthew@merrillwaterlaw.com |
| Tel: (406) 543-6929 | |
| Fax: (406) 721-1799 | |
| rob@mss-lawfirm.com | |
| ryan@mss-lawfirm.com | |
| james@mss-lawfirm.com | |

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | )<br>)<br>) |
| Plaintiffs, | )<br>) Case No. CV-20-52-BLG-SPW<br>) |
| vs. | ) **PLAINTIFFS' REPLY IN**<br>) **SUPPORT OF THEIR** |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, | ) **MOTION TO COMPEL**<br>) **DOCUMENTS WITHHELD**<br>) **BASED ON ATTORNEY-**<br>) **CLIENT PRIVILEGE**<br>) **(DOC. 195)** |
| Defendants, | )<br>) |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, | )<br>)<br>)<br>) |
| Cross Claimants, | )<br>) |
| BRUCE MAPLEY, SR., | )<br>) |
| Cross Defendant. | )<br>) |

WTNY has invented a new "client" that it now tells the Court enjoys attorney-client privilege with its corporate legal department. Ten months ago, when Plaintiffs asked WTNY to identify the client for each privileged communication, its lawyers stated that the clients were:

> [t]hose who sought or were provided legal advice by WTNY's Legal Department, **including the elders who communicated with WTNY's Legal Department individually and on behalf of their Congregations**.

Doc. 196-3 at 2 (emphasis added). Now, WTNY has changed course and asserts that "[e]lders do not call the Legal Department as private individuals, but in their capacity as ministers" and for the "faith." Doc. 204 at 6.

This begs the question: why is WTNY having such trouble identifying the capacity in which the elders were calling the Legal Department? Were they calling as individuals? Were they calling on behalf of their Congregations? Were they calling on behalf of "the faith"? While WTNY says different things at different times, it fails to offer any competent evidence on the question.

A party withholding material evidence under the attorney-client privilege should not have difficulty identifying the client. Yet, WTNY has been withholding material evidence under the attorney-client privilege for nearly a year and it cannot come up with a coherent, consistent story about who the client is and why the privilege should apply.

Plaintiffs' Reply Brief in Support of Their Motion to Compel Documents
Withheld Based on Attorney-Client Privilege (Doc. 195)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
Page **2** of 15

WTNY's problem is that it does not want to admit elders are corporate agents because that would impute knowledge of the child sex abuse occurring in Hardin Montana to WTNY. Thus, WTNY has been forced to fabricate justifications for why the attorney-client privilege permits it to withhold material evidence. WTNY wants it both ways: elders are spiritual agents of the "broader religious faith" for the purpose of an expanded attorney-client privilege, but these same people are not agents of the defendant corporations because that would impute damaging knowledge on WTNY.

Ultimately, because WTNY refuses to admit that its elders are corporate agents, it cannot establish the requisite attorney-client relationship between its corporate legal department and the elders who called it. Because WTNY cannot meet its burden of establishing that the attorney-client privilege protects the subject communications, Plaintiffs respectfully request that the Court order the withheld documents produced.[1]

///

///

---

[1] Plaintiffs' Motion originally asked for *in camera* review because Plaintiffs assumed that WTNY would respond with some sort evidence of an attorney-client relationship between its corporate legal department and the elders who called. WTNY did not do so and cannot meet the basic requirement of establishing an attorney-client relationship. Therefore, there is no need for *in camera* review and the documents should just be produced.

Plaintiffs' Reply Brief in Support of Their Motion to Compel Documents
Withheld Based on Attorney-Client Privilege (Doc. 195)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*

Page 3 of 15

## WTNY FAILS TO ESTABLISH THE REQUISITE ATTORNEY-CLIENT RELATIONSHIP

WTNY originally asserted that the elders became clients of the Legal Department in their own right, as "individuals" and on behalf of their respective Congregations. Doc. 196-3 at 2; *see also* Doc. 196-4 (WTNY's denial to Pls. Req. for Admis. No. 27). But WTNY provides the Court with no evidence that any of these 38 elders believed they were calling their lawyer for legal advice. To the contrary, the evidence establishes that these 38 people were corporate representatives who were following corporate instructions to report pedophiles and known child sex abuse to the corporate legal department. Doc. 196 at 4.

As the party withholding evidence under claim of attorney-client privilege, WTNY has the burden of establishing the existence of an attorney-client relationship. *Sweeney v. Dayton*, 416 P.3d 187, 190 (Mont. 2018) ("[T]he party asserting privilege has the burden to prove eight essential elements for the attorney-client privilege to apply."); *see also United States v. W.R. Grace*, 455 F.Supp.2d 1140, 1145 (D. Mont. 2006). The existence of an attorney-client relationship is a question of fact. *Krutzfeldt Ranch, LLC v. Pinnacle Bank*, 272 P.3d 635, 640 (Mont. 2012). In general, an attorney-client relationship arises when:

> (1) a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person, and either

Plaintiffs' Reply Brief in Support of Their Motion to Compel Documents Withheld Based on Attorney-Client Privilege (Doc. 195)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
Page 4 of 15

>> (a) the lawyer manifests to the person consent to do so; or
>
> (b) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services; or
>
> (2) a tribunal with the power to do so appoints the lawyer to provide the services.

*Harry A. v. Duncan*, 330 F. Supp. 2d 1133, 1141 (D. Mont. 2004) (quoting Restatement (Third) of the Law Governing Lawyers § 14 (2000)).

Here, WTNY admits that there are no written attorney-client agreements and it offers no evidence that the WTNY corporate legal department formed an attorney-client relationship with any of the 38 callers. Instead, WTNY asserts that "there is a common understanding that has been in place since at least 1989 that when elders call the WTNY Legal Department in their capacity as ministers (clergy), there is an attorney-client relationship . . ." Doc. 204 at 9. Conclusory statements of counsel and not evidence, and WTNY offers nothing evidencing that any of the 38 elders had such a "common understanding."

As WTNY acknowledges, the attorney-client privilege only applies if the client has a personal, subjective belief that he is consulting a lawyer and "manifested intention to seek professional legal advice." Doc. 204 at 10. WTNY fails to provide a single affidavit – or any other evidence – establishing that any of the 38 elders who called WTNY believed they were calling their personal lawyer

Plaintiffs' Reply Brief in Support of Their Motion to Compel Documents
Withheld Based on Attorney-Client Privilege (Doc. 195)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
Page 5 of 15

for legal advice. WTNY has not established the basic prerequisite to application of the attorney-client privilege: the existence of an attorney-client relationship. Accordingly, WTNY has no basis to withhold the subject documents.

## WTNY INVENTS A NEW CLIENT

Nearly a year after first claiming the attorney-client privilege permits it to withhold evidence, WTNY has invented a new client for its claim. WTNY now asserts that its corporate legal department represents "the broader religious faith in the United States" and the client to the subject phone calls was each elder "as an agent of the religious community that WTNY supports". (Doc. 204 at 2–3, 8).

WTNY's invention of a new attorney-client relationship between its corporate legal department and the Jehovah's Witness faith has no basis in fact or law. The Jehovah's Witnesses established WTNY as a secular entity with a corporate legal department to take advantage of, and seek protection within, secular law. *See, e.g., Watchtower Bible and Tract Socy. of New York, Inc. v. Village of Stratton*, 536 U.S. 150 (2002) (WTNY seeking protection of the First Amendment to challenge local permitting ordinance). In addition to benefiting from secular law, WTNY is also bound by it, and this includes the law governing the formation of attorney-client relationships. Under that law, WTNY's legal department represents WTNY:

Plaintiffs' Reply Brief in Support of Their Motion to Compel Documents
Withheld Based on Attorney-Client Privilege (Doc. 195)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
Page **6** of 15

> A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents.

Mont. R. Prof. Con. 1.13(a). This rule has been adopted and approved by the Montana Supreme Court. *See, e.g., Matter of Petitions of McCabe and Zemen*, 544 P.2d 825, 827–28 (Mont. 1975).

While advisory only, the State Bar of Montana has issued ethics opinions discussing the scope of corporate counsel's representation. Fundamental is the principle that a lawyer representing an entity has only one client – the entity itself. Mont. State Bar, Ethics Opinions 870513 & 940202 (attached as **Exhibit A**). Significant to the State Bar was the potential for conflicts of interest associated with co-client representation:

> The lawyer is required to stay loyal to the one client – the entity; that, in turn, might very well require the lawyer to be "disloyal" to a particular individual. This policy is legally correct and a necessary consequence of the well established principles of agency law upon which the entity theory rests.

**Ex. A** (Ethics Opinion 870513). Also important to the *entity as client* approach to Rule 1.13 is the fact that an entity "provides a clearly definable client with identifiable lines of authority." **Ex. A** (Ethics Opinion 940202).

Lawyers must have an identifiable client to whom they owe their duties, such as keeping the client informed, avoiding conflicts of interest, and consulting about the ways in which the client's objectives are to be accomplished. *See* Mont.

Plaintiffs' Reply Brief in Support of Their Motion to Compel Documents
Withheld Based on Attorney-Client Privilege (Doc. 195)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
Page **7** of **15**

Rules Prof. Conduct 1.1–1.20.  A religious faith is not a "clearly definable client with identifiable lines of authority" recognized by secular law.  WTNY fails to explain how it could satisfy any of these duties to an undefined "broader religious faith."

WTNY points to no law or regulation permitting its corporate legal department to form an attorney-client relationship with a "religious faith" that has no identifiable secular existence.  Moreover, WTNY offers no statement from anyone purporting to be the authority figure for this "broader religious faith" agreeing that the WTNY Legal Department is its lawyer and that the elders are its agents.  Instead, WTNY relies on conclusory statements of counsel.  A "religious faith" is not the client of a corporation's legal department, and WTNY's effort to invent a new client to shield production of documents should be rejected.

## CONFLICTS OF INTEREST

WTNY cavalierly brushes aside the fact that two of its elders were recently convicted of failing to report known child sex abuse because they followed instructions from WTNY's Legal Department not to report it.  (Doc. 204 at 11).  The self-authenticating public record of elder Michael Penkava's conviction and sentencing for violating Illinois child sex abuse reporting provisions is attached as **Exhibit B**.  Additionally, a self-authenticating post-conviction Motion describing the State's evidence that resulted in the convictions states:

Plaintiffs' Reply Brief in Support of Their Motion to Compel Documents
Withheld Based on Attorney-Client Privilege (Doc. 195)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
Page **8** of 15

> On November 18, 2020, the State charged two Elders (i.e. clergy) of a local Jehovah's Witnesses' Congregation, Michael Penkava and Colin Scott, with Violating the Illinois Abused and Neglected Child Reporting Act, 325 ILCS 4/4.  We alleged that Penkava and Scott failed to immediately report to the Illinois Department of Children and Family Services what they knew about [] abuse.  The evidence at trial established that in July of 2006, [] wife informed Penkava and Scott of the outcry statements her daughter had made to her regarding [] sexual abuse.  After learning of the abuse, in part through [] wife, Penkava and Scott called the Office of General Counsel for the Watchtower Bible and Tract Society (aka, the "Legal Department) and were informed that they did not need to report the abuse.  **Relying on the advice of the Legal Department, neither Scott nor Penkava reported [] sexual abuse in 2006.  On March 18, 2022, Penkava and Scott were found guilty.**

*People of the State of Illinois v. Colin Scott*, People's Motion to Unimpound (April 22, 2022) (emphasis added) (attached as **Exhibit C**).

The Penkava/Scott case illustrates a textbook conflict of interest.  WTNY's corporate legal department, whose duty is to WTNY, wrongly advised elders about their reporting obligations.  As a result, known child sex abuse was not reported as required by law and the elders were convicted of a crime.  Apparently undeterred, WTNY blithely asserts that "there is no conflict" with such simultaneous representation.  (Doc. 204 at 10).

This federal district court has considered simultaneous representation by an organization's lawyers and disagrees with WTNY.  *See Harry A v. Duncan*, 330 F.Supp.2d 1133, 1141- 42 (D. Mont. 2005).  In *Harry*, lawyers for a school district contended that they also represented individual employees of the district.  *Id*. at

Plaintiffs' Reply Brief in Support of Their Motion to Compel Documents
Withheld Based on Attorney-Client Privilege (Doc. 195)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
Page **9** of 15

1141. Citing the Restatement (Third) of Law Governing Lawyers, the Court disagreed, noting that "whether an attorney-client relationship exists is a question of fact, and the inquiry involves whether entering into a co-client status is reasonable in light of any conflicts of interest between the organization and the employee or agent." *Id*. at 1142 (citing Restatement § 14 cmt. f). While many factors led the Court to conclude that the school district's lawyers did not simultaneously represent its employees, the possible conflicts of interest weighed against a finding that simultaneous representation existed. *Id*.

      Here, WTNY is asking this Court to recognize that its corporate legal department can simultaneously represent it and its elders, but it offers no evidence of an attorney-client relationship with the elders. Thus, like the Court in *Harry*, this Court must make an inquiry into whether WTNY's purported simultaneous co-client argument is "reasonable in light of any conflicts of interest between the organization and the employee or agent." *Id*. As the Penkava/Scott case illustrates, it is not reasonable because it leaves child sex abuse unreported while subjecting the elders to criminal liability. WTNY identifies no facts supporting its assertion that its corporate legal department established an attorney-client relationship with any of the 38 elders whose communications it seeks to withhold.

///

///

Plaintiffs' Reply Brief in Support of Their Motion to Compel Documents
Withheld Based on Attorney-Client Privilege (Doc. 195)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
Page 10 of 15

### THE ELDERS REPORTED KNOWN CHILD SEX ABUSE BECAUSE THEY WERE INSTRUCTED TO BY WTNY

Montana's attorney-client privilege only protects statements made "which might not have been made absent the privilege." *Nelson v. City of Billings*, 412 P.3d 1058, 1069 (Mont. 2018).  Thus, even if WTNY could establish the requisite attorney-client relationship, it must also establish that the elders' statements "might not have been made absent the privilege."  It has not done so.  In fact, the evidence is to the contrary and establishes that the elders called WTNY to report instances of child sexual abuse because that is what they were instructed to do by WTNY. (Doc. 196 at 4).  WTNY has not established that any of the withheld statements "might not have been made absent the privilege" and therefore it cannot meet its burden of establishing that the attorney-client privilege applies to any of the withheld documents.

### THE LAW PROBABLY PROTECTS PORTIONS OF THE SUBJECT COMMUNICATIONS IF WTNY ACKNOWLEDGES THAT ELDERS ARE ITS AGENTS

The attorney-client privilege may protect portions of the subject documents if WTNY acknowledged that its elders are corporate agents who made the phone calls pursuant to an established corporate process.  *Inter-Fluve v. Mont. Eighteenth Jud. Dist. Ct.*, 112 P.3d 258, 261 (Mont. 2005).  WTNY's briefing routinely suggested that elders are corporate representatives:

Plaintiffs' Reply Brief in Support of Their Motion to Compel Documents
Withheld Based on Attorney-Client Privilege (Doc. 195)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*

Page **11** of 15

> Thus, the WTNY Legal Department provides legal guidance and advice not just to WTNY, but to elders around the nation who take the lead in caring for the ministry of Jehovah's Witnesses.
>
> Elders do not call the Legal Department as private individuals, but in their capacity as ministers.
>
> Attorneys at WTNY understand that they represent WTNY *and* the elders in their ecclesiastical (clerical) capacity, and their communications are privileged.

(Doc. 204 at 6–7. But, instead of admitting what appears to be obvious, i.e., that elders are corporate agents, WTNY denies that elders are corporate agents. (Doc. 196-4 at WTNY's denial to Pls. Req. for Admission No. 27).[2] Accordingly, WTNY is denying itself the only legitimate basis in law to protect portions of the subject documents from disclosure. If the Court were to find that elders are corporate agents of WTNY, then *in camera* review would be appropriate to redact genuinely privileged communications, while producing information to which Plaintiffs are entitled. *See Porter v. Arco Metals Co., Div. of Atl. Richfield Corp.*, 642 F.Supp. 1116, 1118 (D. Mont. 1986) (protection of the attorney-client privilege extends to *communications* and does not protect *facts*).

///

---

[2] At some point in this litigation, Plaintiffs will be submitting overwhelming evidence that elders are indeed agents of WTNY. For instance, WTNY appoints the elders, it instructs the elders on how to do their jobs, it tells them what to do when they learn about pedophiles and child sex abuse within the church, and it ultimately removes them when it wants to.

Plaintiffs' Reply Brief in Support of Their Motion to Compel Documents
Withheld Based on Attorney-Client Privilege (Doc. 195)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*

Page **12** of 15

## CONCLUSION

WTNY insists that because the Jehovah's Witnesses are a religious organization, a different set of rules should apply. As WTNY would have it, Plaintiffs and the Court must simply accept that its corporate legal department represents whomever WTNY says it represents, regardless of whether the law recognizes such a relationship and regardless of whether WTNY offers any evidence as support. But there is not one set of rules for "religious" corporations and another set of rules for secular corporations. There is one set of rules, and it demands that a corporation withholding evidence based on the attorney-client privilege establish that the privilege applies, including the existence of an attorney-client relationship.

Here, because WTNY does not want to acknowledge that its elders are corporate agents, it has decided to forego the only legitimate basis by which the attorney-client privilege may apply to the subject communications. Because WTNY cannot establish that its corporate legal department had an attorney-client relationship with elders who called to provide information about child sex abuse, it has not met its burden to withhold the subject evidence. Accordingly, Plaintiffs respectfully request that the Court order WTNY to produce all documents identified in its privilege log entries 1–26 and 45–49.

DATED 15th day of February, 2023.

Plaintiffs' Reply Brief in Support of Their Motion to Compel Documents
Withheld Based on Attorney-Client Privilege (Doc. 195)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
Page 13 of 15

        MEYER, SHAFFER & STEPANS PLLP

By: /s/ Ryan Shaffer
    Ryan R. Shaffer
    MEYER, SHAFFER & STEPANS PLLP
    *Attorneys for Plaintiffs*

Plaintiffs' Reply Brief in Support of Their Motion to Compel Documents
Withheld Based on Attorney-Client Privilege (Doc. 195)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*

Page **14** of **15**

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), Plaintiff hereby certifies that this brief complies with the length requirement for briefs, and that this brief contains 2,767 words, excluding the caption, certificates of service and compliance, table of contents and authorities, and exhibit index.

        By: /s/ Ryan Shaffer
            Ryan R. Shaffer
            MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 1.4, this document has been served on all parties via electronic service through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

DATED 15th day of February, 2023.

        MEYER, SHAFFER & STEPANS PLLP

        By: /s/ Ryan Shaffer
            Ryan R. Shaffer
            MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

Plaintiffs' Reply Brief in Support of Their Motion to Compel Documents
Withheld Based on Attorney-Client Privilege (Doc. 195)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
Page **15** of 15