Jon A. Wilson
Brett C. Jensen
Michael P. Sarabia
BROWN LAW FIRM, P.C.
315 North 24th Street
P.O. Drawer 849
Billings, MT 59103-0849
Tel. (406) 248-2611
Fax (406) 248-3128

Joel M. Taylor, Esq. (appearing *pro hac vice*)
MILLER MCNAMARA & TAYLOR LLP
100 South Bedford Road, Suite 340
Mount Kisco, New York 10549
Tel./E-Fax (845) 288-0844

*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, <br><br> Plaintiffs, <br><br> vs. <br><br> WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR., <br><br> Defendants. | Cause No. CV 20-52-BLG-SPW <br><br><br> **DEFENDANT WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.'S SURREPLY BRIEF IN OPPOSITION TO PLAINTIFFS' "MOTION TO COMPEL IN CAMERA REVIEW OF DOCUMENTS WITHHELD ON THE BASIS OF ATTORNEY-CLIENT PRIVILEGE" (DOC. 195)** |

1

| | |
|---|---|
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC. | )<br>)<br>)<br>)<br>) |
| Cross-Claimant, | )<br>)<br>) |
| vs. | )<br>)<br>) |
| BRUCE MAPLEY SR., | )<br>)<br>) |
| Cross-Claim Defendant. | )<br>)<br>) |

WTNY submits this sur-reply to address matters raised for the first time in Plaintiffs' reply brief in support of their original Motion to Compel In Camera Review of Documents Withheld on the Basis of Attorney-Client Privilege (Doc. 195), including Plaintiffs' new request for relief.

## ARGUMENT

Plaintiffs now ask this Court to hold that there is no attorney-client relationship between the Legal Department *and the very clients it exists to represent*. For decades, Jehovah's Witnesses clergy (elders) have sought legal advice from the Legal Department. When elders receive a subpoena for documents in the Congregation's possession, they seek advice from the Legal Department. When elders receive a confession related to abuse, they seek advice from the Legal Department. Indeed, when they receive a mundane complaint about a slip-and-fall matter, they call the Legal Department.

2

Plaintiffs' motion made a single argument – that Jehovah's Witnesses elders might not be calling as clients when they speak to the Legal Department because they are not "corporate representatives." (Doc. 196 at 6, 8). WTNY responded with an affidavit from Mario Moreno, who was Associate General Counsel in the Legal Department from 1994 to 2016. He explained:

> 8.  The Legal Department supports the faith and provides legal guidance and advice to WTNY *and to elders, when operating in their ecclesiastical role as ministers in congregations of Jehovah's Witnesses throughout the United States*.
> 9.  WTNY attorneys are in-house counsel not just for WTNY, but for the broader religious community of elders, congregations of Jehovah's Witnesses, and other legal entities used by Jehovah's Witnesses.
> 10. Elders do not call WTNY Legal Department as private individuals, but in their capacity as ministers.
> 11. Elders speak as ministers to legal counsel for the faith and with the expectation of confidentiality.

(Doc. 204-1, emphasis added.)

Plaintiffs ignore Moreno's affidavit. It establishes, without question, that an attorney-client relationship exists when elders call the Legal Department in their clerical capacity, which covers all the communications at issue here.

Plaintiffs' reply correctly cites the test for an attorney-client relationship. (Doc. 208 at 4-5, *citing Harry A. v. Duncan*, 330 F. Supp. 2d 1133, 1141 (D. Mont. 2004).) Moreno's affidavit establishes each of the elements. Plaintiffs ignore it.

Plaintiffs also ignore the difference between an in-house legal department for a corporation like Walmart, and the legal department of a religious organization,

3

which might not be limited to representing the corporation that houses it. The Legal Department has never represented just WTNY. The assertion that the Legal Department can only represent WTNY is contrary to law and logic. The Legal Department can represent WTNY, other entities that support the denomination known as Jehovah's Witnesses (including local congregations), and elders who need legal advice in their ministerial capacity, just as a private law firm could.

Plaintiffs argue that a "religious faith is not a 'clearly definable client with identifiable lines of authority' recognized by secular law." (Doc. 208 at 8). But this doesn't involve representation of a "religious faith" in some general, amorphous sense. It involves the Legal Department's representation of specific congregation elders on specific legal issues arising from their specific ecclesiastical positions. It also involves the reliance of those elders on such legal representation. The Legal Department has represented elders of Jehovah's Witnesses for decades without controversy or confusion. And the "lines of authority" are quite easy to draw. If a Catholic priest, or a Lutheran pastor, called the Legal Department, he would be turned away. If an ordinary congregant in the Jehovah's Witnesses' faith called the Legal Department, he or she would be turned away. But clergy (elders) can call the Legal Department and receive confidential legal advice about church matters because of the unique role they play within the faith and because they are agents of their Congregation, which the Legal Department also represents.

4

"WTNY's problem," Plaintiff argues, "is that it does not want to admit elders are corporate agents ...." (Doc. 208 at 3). That is not a problem, because elders are not. They have no authority to do anything on WTNY's behalf. That does not mean they cannot have an attorney-client relationship with attorneys in the Legal Department.

Plaintiffs say the attorney-client privilege should be rejected because WTNY did not provide an affidavit from any of the elders who sought legal advice. Moreno was Associate General Counsel at WTNY for 22 years. He plainly has the personal knowledge needed to testify that an attorney-client relationship exists when an elder calls the Legal Department about a matter of church concern.[1]

Also, this is not the first time in this litigation that this issue has been raised. Plaintiffs subpoenaed the Hardin Congregation and the West Laurel Congregation. Both asserted that communications in their possession between Congregation elders and the Legal Department were privileged. (Exh. _.) Plaintiffs filed a motion to compel with respect to some documents, but "do not make an argument that the attorney-client privilege should not apply." (Doc. 79 at 17 n.1.) Thus, WTNY has not "been forced to fabricate" new justifications in response to this motion "for why the attorney-client privilege permits it to withhold material evidence." (Doc. 208 at

---

[1] Plaintiffs assert that "[c]onclusory statements of counsel [are] not evidence, and WTNY offers nothing evidencing that an of the 38 elders had such a 'common understanding.'" (Doc. 208 at 5). But WTNY's opposition is not based on conclusory statements from counsel; it is based on the sworn testimony and personal knowledge of Mr. Moreno.

5

3). Nor has WTNY "invented a new client for its claim." (*Id.* at 6.) WTNY has consistently and successfully—in this case and every other case where the issue has been raised—asserted the attorney-client privilege as to communications between the Legal Department and congregation elders.

Plaintiffs argue that a conflict of interest exists that precludes recognition of the attorney-client privilege. Any alleged conflict is irrelevant. Plaintiffs cite no authority suggesting that a conflict vitiates the attorney-client privilege. A person who consults their attorney in confidence is entitled to assert the attorney-client privilege even if it turns out the attorney had a conflict. A conflict does not abrogate the privilege.

In any case, there is no conflict in attorneys representing both WTNY, which exists to support the purpose of Jehovah's Witnesses, and elders (clergy) for congregations of Jehovah's Witnesses, who likewise support and promote the same purpose. In giving legal advice to elders, the Legal Department is not representing one client that is "directly adverse" to another client; nor is there a "significant risk that the representation of one client … will be materially limited by the lawyer's responsibilities to another client …." Mont. R. Professional Conduct 1.7(a).

Plaintiffs present two new exhibits related to a criminal case in Illinois in support of their irrelevant assertion of a conflict. But there was no conflict in the Illinois matter or in this case, and the documents add nothing. Plaintiffs' claim of a

conflict is based on the false and unfounded assertion that the advice given in the Illinois matter was in WTNY's interests but not the elders' interests because WTNY "has an interest in keeping child abuse within the church quiet …." (Doc. 156 at 11-12.) Plaintiffs cannot create a conflict through false assertions.[2] And again, the alleged existence of a conflict in this situation does not vitiate the attorney-client privilege.

Plaintiffs cite *Harry A. v. Duncan*, 330 F. Supp. 2d 1133 (D. Mont. 2004). In *Duncan*, the Court held that for purposes of litigation against an organization (in that case a school district), the organization's counsel had multiple clients *Id.* at 1140. The case doesn't apply here except to highlight that in-house counsel could have more than one client. As pointed out above, WTNY's attorneys represent many different clients in different contexts. They represent congregations, their elders (who are, in their capacity as elders, congregation agents), and any of the corporations that were established to serve the interests of Jehovah's Witnesses. The case neither establishes a requirement for elder-Watchtower agency for assertion of the attorney-client privilege nor disproves it.

If *Harry A.* has any application here, it shows the absence of a conflict and the existence of an attorney-client relationship protected by the attorney-client privilege.

---

[2] WTNY believes the court in the Illinois case erred in its conclusion that the elders had a duty to report, just as the district court in *Nunez v. Watchtower Bible & Tract Soc'y*, 455 P.3d 829 (Mont. 2020), erred in its conclusion that elders had a duty to report—an error corrected by the Montana Supreme Court. The elders in the Illinois case chose not to appeal, however, because the punishment was so minimal—a $250 fine. (*See* Doc. 208-2).

## CONCLUSION

The matters raised for the first time in Plaintiffs' reply brief, including Plaintiffs' new request for relief, should be ignored. The affidavit by Attorney Moreno provides ample evidence of an attorney-client relationship between WTNY's attorneys and elders who call for legal advice. Since Plaintiffs neither provide evidence to the contrary nor cite to law supporting their position, WTNY prays that the Court find that the communications between the elders and WTNY counsel are attorney-client privileged.