IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT and CAMILLIA MAPLEY, | CV 20-52-BLG-SPW |
| Plaintiffs, | |
| vs. | ORDER |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIERY OF PENNSYLVANIA, | |
| Defendants. | |

Before the Court is Plaintiffs Tracy Caekaert and Camillia Mapley's

Affidavit/Declaration of Supporting Documents of Costs, Expenses, and Attorney

Fees (Doc. 144) filed pursuant to the Court's grant of Plaintiff's Motion for

Sanctions (Doc. 135, "Order"). Plaintiffs request $190,723.11 for costs, expenses,

and attorneys' fees. Defendant Watch Tower Bible and Tract Society of

Pennsylvania ("WTPA") objects to some of the hours Plaintiffs' attorneys

expended as excessive, redundant, or otherwise unnecessary. (Doc. 165). WTPA

also asks the Court to stay the payment of sanctions pending appeal. (*Id.*).

Plaintiffs did not file a reply brief.

For the following reasons, the Court grants Plaintiffs' counsel $154,448.11

and denies WTPA's request to stay payment.

1

I. **Background**

The Court outlined the facts of this case in the Order. (Doc. 135 at 1-3). The Court adopts the Order's relevant background and recites only those additional facts necessary to analyzing Plaintiffs' fee request.

The Court granted Plaintiffs' Motion for Sanctions as to Philip Brumley, WTPA's General Counsel, and denied it as to Joel Taylor, Associate General Counsel for Defendant Watchtower Bible and Tract Society of New York. The Court ordered Plaintiffs to "submit a financial affidavit of all costs, expenses, and attorneys' fees directly resulting from their efforts to respond to WTPA's motion to dismiss and conducting jurisdictional discovery in response to WTPA's motion to dismiss and Brumley's affidavit." (*Id.* at 14-15). Brumley timely objected.

II. **Standard for Attorneys' Fees[1]**

Reasonable attorneys' fees are generally calculated with the lodestar method. The lodestar figure is the number of hours reasonably expended on a case multiplied by a reasonable hourly rate. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). "A reasonable hourly rate is ordinarily the 'prevailing market rate [ ] in the relevant community.'" *Id.* (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010)). The lodestar figure "roughly approximates the fee that the

---

[1] WTPA does not challenge the $14,363.11 request for costs and expenses. As such, the Court only will discuss it in the final award calculation.

prevailing attorney would have received if he or she had been representing a

paying client who was billed by the hour in a comparable case." *Perdue*, 559 U.S.

at 551 (emphasis omitted). It is thus a presumptively reasonable fee. *Gonzalez v.*

*City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). The Court can increase or

decrease the lodestar figure, based on factors not subsumed in the calculation.

*Kelly*, 822 F.3d at 1099 (citations omitted).

The party seeking attorneys' fees carries "the burden of documenting the

appropriate hours expended in the litigation, and [is] required to submit evidence in

support of those hours worked." *United Steelworkers of Am. v. Ret. Income Plan*

*for Hourly-Rated Emps. of Asarco, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008)

(internal quotations and citations omitted). Counsel, however, "are not required to

record in great detail how each minute of [their] time was expended ... [but] only

keep records in sufficient detail that a neutral judge can make a fair evaluation of

the time expended, the nature and need for the service, and the reasonableness of

fees to be allowed." *Id.* (internal quotations and citations omitted). "[E]xcessive,

redundant, or otherwise unnecessary" hours must be excluded from the request and

award. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009).

If a party demonstrates that their request is reasonable, the opposing party

has the "burden of providing specific evidence to challenge the accuracy and

reasonableness of the hours charged." *McGrath v. County of Nevada*, 67 F.3d 248,

3

255 (9th Cir. 1995). When ruling, the awarding court must explain its determination of the lodestar amount "with sufficient specificity to permit an appellate court to determine whether the district court abused its discretion in the way the analysis was undertaken." *McCown*, 565 F.3d at 1102.

## III. Analysis

### A. *Reasonableness of Attorneys' Fee Request*

#### 1. *Meeting Time*

The Court first will address WTPA's argument that the hours Plaintiffs' counsel spent in meetings is duplicative and excessive. (Doc. 165 at 23). WTPA contends that no more than 10 hours of meeting time are reasonable. (*Id.*).

"Participation of more than one attorney does not necessarily amount to unnecessary duplication of effort." *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004). Rather, "'[a]n award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation.'" *Mardirossian v. Guardian Life Ins. Co. of Am.*, 457 F. Supp. 2d 1038, 1050 (C.D. Cal. 2006) (quoting *Johnson v. Univ. Coll.*, 706 F.2d 1205, 1208 (11th Cir. 1983)).

A "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary" requires exclusion of duplicated effort among timekeepers. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (an

4

attorney's duty to exercise "billing judgment [mandates that] [h]ours ... not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority") (emphasis original) (citations and internal quotation marks omitted).

Thus, when reviewing fee petitions in which multiple attorneys billed hours, the Court should carefully review the requested hours to determine if there was duplication of efforts, while considering, for example, the complexity of the case. *See Democratic Party of Wash. State,* 388 F.3d at 1286-87; *see also Walker v. U.S. Dep't of Hous. & Urban Dev.,* 99 F.3d 761, 768 (5th Cir. 1996) ("If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized.").

Billing for multiple attorneys attending intra-firm meetings can be duplicative. *Strand v. Auto. Machinists Pension Trust*, Civil No. 06-1193-PK, 2007 WL 2029068, at *6 (D. Or. July 11, 2007) ("Good billing judgment requires that time spent in conference among multiple attorneys be billed to only one of those attorneys."). It is appropriate to exclude those hours billed by the attorney(s) with the lowest rates. *Id.*

The Court agrees with *Strand* that the meeting time here should be billed per conference, not per attorney. Plaintiffs did not provide any argument why the complexity of the issues discussed at the meetings or any other factor necessitated

four attorneys and a paralegal, and thus have not met their burden to show the reasonableness of billing for each attorney's meeting time.  As such, the Court will allow a single recovery of 20.8 hours—the time Plaintiffs' attorneys spent in intra-firm meetings[2]—at $300/hour—the highest billing rate—for a total of $6,240.

> 2.      *Robert Stepans*

WTPA disputes Robert Stepans' fee request for two reasons: (1) his time is generally not compensable because his work involved passive review of other attorneys' work, and a fourth billing attorney was not necessary for such tasks, and (2) his time logged for reviewing documents was block billed, not specific enough in terms of the documents reviewed, and thus too suspect for the Court to award compensation.  (Doc. 165 at 15-16).

Excluding meeting time, Stepans logged 10 hours for document review, 23.2 hours for travel, and 2.6 hours for court time.  (Doc. 144-3 at 7-8).  Of the 10 hours listed for document review, 8.6 were between July 13, 2020 and March 20, 2021, for discovery document review, and 1.4 were dedicated to reviewing this Court's orders.  (*Id.*).  Stepans attached a list of the documents he reviewed and their Bates numbers.  (*Id.* at 10).  None of the Bates numbers in Stepans' list match those in

---

[2] This excludes time spent meeting with third parties (*e.g.* meeting with consultant, Doc. 144-4 at 11, line 20 and calls with defense counsel, Doc. 144-2 at 11, line 64).  The Court allows for recovery per attorney for such meetings.  Additionally, the Court excludes the 3.8 hours billed by Matthew Merrill for meetings that no other attorneys nor the paralegal had on their time entries. (Doc. 144-5 at lines 15, 18, 25, 34, 46, 47, 50, and 54).

the other attorneys' lists. As for Stepans' travel and court time, Stepans argued for

Plaintiffs at the April 5, 2022, hearing. (Doc. 130). The record is not clear if he

argued at the June 23, 2021, hearing, however he did attend. Stepan logged 11.6

hours of travel time and 1.3 hours of court time for each hearing.

Given that Stepans reviewed documents that no other attorney reviewed and

argued a motion for his clients, Stepans' role in the jurisdictional issues was not

passive or limited to observing other attorneys. WTPA does not point to any

specific entry in Stepans' log that would provide for the opposite conclusion. The

Court also disagrees with WTPA's bare assertion that the jurisdictional issue was

not so complex so as to require multiple attorneys. Plaintiffs' work on the

jurisdictional dispute—excluding the related sanctions issue—lasted for 17 months

and required review of thousands of documents. That is hardly straightforward,

particularly since WTPA's unreasonable and vexatious actions fueled the dispute.

As for WTPA's contention that Stepans' block billing for document review

is insufficiently specific, the Court disagrees. First, 8.6 hours over eight months is

very little time, about one hour per month. Second, Stepans provided a list of the

documents he reviewed and their Bates numbers. (Doc. 144-3 at 10). Because

Stepans only logged one entry for discovery document review, the 8.6 hours must

have been dedicated to reviewing the documents listed. This is defined enough to

allow for recovery.

Accordingly, the Court allows for recovery of the time billed by Stepans (except meeting time). The Court will decrease his travel time for the hearings to match that of Ryan Shaffer (10 hours per hearing), since presumably both attorneys drove from Missoula and had similar (if not identical, if they were carpooling) travel times. Plaintiffs' counsel thus can recover 15.6 hours at $300/hour and 20 hours at $150/hour (for travel), for a total of $7,680 for Stepans' fees.

### 3.   Matthew Merrill

WTPA objects to the hours expended by Matthew Merrill for two reasons: (1) Merrill billed for time when he was not an attorney of record on the case, and (2) his blocked billed entries for document review are duplicative of work logged by other attorneys. (Doc. 165 at 17-18). The Court disagrees with both objections.

As to the argument that Merrill cannot recover because he was not an attorney of record, WTPA does not provide nor could the Court find a case that supports such a rule. In fact, WTPA's argument is undercut by the fact that a paralegal—who can never be an attorney of record—can nonetheless recover for legal work performed on the case. It is a regular practice for non-attorneys-of-record to recover their fees.

As to WTPA's block billing argument, the record does not demonstrate that Merrill's work was duplicative of other attorneys' work. First, none of the Bates numbers on Merrill's document log match those on other attorneys' logs. Second,

8

the fact that Stepans and Merrill block billed for review of the same broad category of documents over the same seven-month period does not support an inference that their work was identical. (*Cf.* Doc. 144-3 at 7 and Doc. 144-5 at 7). Had WTPA provided any support for such an assertion, the Court would be willing to entertain it. However, WTPA pointed to no specific evidence to support such an objection and thus failed to meet its burden. *See McGrath*, 67 F.3d at 255.

For these reasons, the Court awards Merrill's request for 67.2 hours at $300 an hour, for a total recovery of $20,160.

### 4. Document Review Time

WTPA next objects generally to the hours spent reviewing documents as "grossly unreasonable" and unreliable. (Doc. 165 at 18). WTPA points out that the four attorneys seeking fees for document review have identical entries for document review: "Review of Jehovah's Witness documents obtained from Defendants and Third Parties re: WTPA's role in the church and contacts with Montana." (*See* Doc. 144-2 at 9; Doc. 144-3 at 7; Doc. 144-4 at 10; Doc. 144-5 at 7). James Murnion is the only attorney who specified in his entries the Bates numbers for the documents he reviewed. (Doc. 144-4 at 10). WTPA argues that the lack of specificity of the attorneys' entries in terms of the time allotments and the specific documents reviewed should be looked at with skepticism. (Doc. 165 at 19). WTPA again asks the Court to infer, without providing specific evidence, that

the documents reviewed by each attorney were the same, presumably because they are described in the time entries the same way.

As to Murnion, WTPA contends that many of the documents he reviewed were produced by Plaintiffs and reviewed for preparing their complaint, so his time is not recoverable. (*Id.* at 19-20). WTPA also argues that Murnion should not recover fees for 41.6 hours of reviewing documents "flagged in the document management spreadsheet as potentially PJ relevant" because the description is too vague. (*Id.* at 20 (citing Doc. 144-4 at 13)).

The Court disagrees with WTPA on each of these points. First, each attorney provided a list of the documents they each reviewed and their Bates numbers. (Doc. 144-2 at 15-16; Doc. 144-3 at 10; Doc. 144-4 at 15-22; Doc. 144-5 at 12-16). The lists are specific enough to overcome the skepticism with which the Court must review block billed entries and for the Court to conclude that the attorneys did not bill to review any of same documents. Second, WTPA did not cite nor could the Court find a rule that categorically prohibits a party from billing for time spent reviewing their own documents, or billing for re-reviewing documents when the related issue is different from the issue presented when the document was originally reviewed. The Court does not expect any attorney to commit to memory the contents of every document after reading it once, let alone apply the contents of a document to a new context.

Accordingly, the Court rejects WTPA's objections to time billed by

Plaintiffs' attorneys for document review.

    5.    *Tasks Unrelated to Jurisdictional Dispute*

The Court can only award fees for time "reasonably incurred because of"

conduct that "multiplies the proceedings in any case unreasonably and

vexatiously." 28 U.S.C. § 1927. In determining the scope of allowable sanctions

under § 1927, the Court applies a but-for test. *Redding v. Prosight Specialty*

*Mgmt. Co., Inc.*, CV 12-98-H-CCL, 2017 WL 5526353, at *3 (D. Mont. Nov. 17,

2017). Any sanctions must be compensatory rather than punitive. *Goodyear Tire*

*& Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017).

Here, the Court limited its award to "all costs, expenses, and attorney's fees

directly resulting from their efforts to respond to WTPA's motion to dismiss and

conducting jurisdictional discovery in response to WTPA's motion to dismiss and

Brumley's affidavit." (Doc. 135 at 14).

    a.    *Hardin Congregation Subpoena and Motion to Compel*

WTPA argues that all hours related to Plaintiffs' subpoena and subsequent

Motion to Compel (Doc. 58) concern clergy-penitent privilege, not jurisdiction.

(Doc. 165 at 22).

WTPA's understanding of the subpoena of and motion to compel the Hardin

Congregation is overly narrow and ignores the larger context in which those filings

existed. It is true that the legal issue disputed in the motion to compel was clergy-penitent privilege. However, the documents requested in the subpoena and the documents Plaintiffs sought to compel production of directly informed the jurisdictional issue. The Court need not look further than the title of the scheduling order in which the Court allowed for a third-party subpoena of the Hardin Congregation: Joint *Jurisdictional* Discovery Plan. (Doc. 42) (emphasis added). Plaintiffs' motion to compel further supports this conclusion. (Doc. 58).

Thus, the time Plaintiffs' counsel spent on the subpoena of the Hardin Congregation and the subsequent motion to compel are within the scope of recoverable fees outlined by the Order.

      b.    *Obtaining Sanctions*

WTPA next argues that the time Plaintiffs' counsel spent pursuing sanctions should be excluded as beyond the scope of the Order. The Court disagrees. The Order defined the scope of recoverable fees as those "directly resulting from their efforts to respond to WTPA's motion to dismiss and conducting jurisdictional discovery in response to WTPA's motion to dismiss and Brumley's affidavit." (Doc. 135 at 14). Plaintiffs' Motion for Sanctions was a direct result of their efforts to respond to WTPA's motion to dismiss: Had WTPA not filed its motion to dismiss based on their jurisdictional arguments, Plaintiffs would not have requested sanctions.

Ninth Circuit caselaw supports an award for hours spent obtaining sanctions. In *Blixseth*, the Ninth Circuit explained that § 1927 "permits recovery of fees 'incurred because of [the sanctionable] conduct,' and that were there no sanctionable conduct, there would have been no proceeding to impose sanctions, and no fees incurred in that proceeding." *Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626, 631 (9th Cir. 2017) (quoting *Norelus v. Denny's Inc.*, 628 F.3d 1270, 1297-1302 (11th Cir. 2010)). "[E]xcluding the costs of obtaining the sanctions award would not fully compensate the harmed party for the wrongful conduct it has suffered." *Id.* (citing *Norelus*, 628 F.3d at 1298; *Haynes v. City and Cty. Of San Francisco*, 688 F.3d 984, 987-88 (9th Cir. 2012)).

Based on the Order and Ninth Circuit caselaw, the Court declines to exclude the hours billed for obtaining sanctions from the fee request.

### 6.   *Response Brief to WTPA's Motion to Dismiss*

WTPA next contends that the hours billed by Shaffer and Murnion for drafting the response brief to the motion to dismiss are suspect and excessive. (Doc. 165 at 23). WTPA argues the claimed hours are suspect because the time is blocked billed and the brief "was never filed." (*Id.*). Additionally, WTPA asserts that billing 65.5 hours for work by two attorneys (28 hours billed by Shaffer and 35.5 hours by Murnion) in a single day for a response brief is both literally impossible and generally excessive. (*Id.*).

13

As to WTPA's first argument, the Court disagrees that it should disregard any hours billed for drafting the response brief because it "was never filed." Plaintiffs filed their response brief to the motion to dismiss on November 5, 2021. (Doc. 96). Thus, the Court can only assume that WTPA takes issue with the fact that it had withdrawn its motion to dismiss before Plaintiffs filed their response brief. Importantly, though, WTPA filed its notice of withdrawal the same day Plaintiffs filed their response brief. (Doc. 94). WTPA's withdrawal also came 16 months after it filed the motion, after extensive discovery disputes over the jurisdictional argument with which WTPA sought to dispose of the case, and after repeated requests by Plaintiffs to withdraw the motion. (*See* Doc. 95). Plaintiffs acknowledged in a notice to the Court that WTPA withdrew its motion but explained that they still intended to file their response brief to "make a record as to how WTPA attempted to mislead this Court." (*Id.* at 3).

Though the Court never considered Plaintiffs' response brief, the Court understands Plaintiffs' reasons for still filing their brief, since Brumley's sanctionable conduct permitted WTPA to move to dismiss and multiplied the proceedings for 17 months through jurisdictional discovery and motions to compel. (Doc. 135 at 13). The Court declines to exclude the hours spent on the response brief for that reason.

14

However, the Court agrees with WTPA that the hours billed are suspect and excessive. Both Shaffer and Murnion claimed to have worked on the response brief on November 5, 2021, for more hours than are in a day. Had they provided the Court with a date range on which they worked on the brief, the Court would likely look at the hours with less suspicion.

Even assuming Shaffer and Murnion worked on the response brief over a longer period of time, Plaintiffs do not justify why 65.6 hours was necessary. The hours also are block billed, so the Court cannot scrutinize the specific hours spent on the brief. Thus, the Court finds it appropriate to reduce the hours Shaffer and Murnion billed for drafting the response to WTPA's motion to dismiss.

WTPA did not suggest a reasonable number of hours that the attorneys should have spent on the response, or a means by which the Court should reduce the hours. And since Shaffer and Murnion block billed these hours, the Court cannot cut specific hours. Because of the lack of guidance provided by the parties and the ambiguity of the time entries, the Court will make "across-the-board percentage cuts" to hours claimed by Shaffer and Murnion. *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992). The Court may employ this "meat-axe approach," so long as it articulates its reasoning for selecting specific percentage deductions. *Id.*

15

The Court recognizes that the jurisdictional issue was complicated, and
Plaintiffs' counsel were obstructed from obtaining the information necessary to
timely resolve the motion to dismiss. Thus, the Court finds that hours in excess of
a simpler case are justified. At the same time, the Court agrees with WTPA's
assertion that 65.6 hours is grossly excessive. Given these competing factors, the
Court finds that a 25% cut to the hours billed by Shaffer and Murnion for drafting
the response brief is appropriate. Thus, Shaffer and Murnion can recover for 20.25
and 22.5 hours, respectively, for their time spent on the response brief.

### 7.    Paralegal Fees

Fees for work done by paralegals are compensable, so long as the work
performed is work otherwise performed by a lawyer and billed at a higher rate.
*See Missouri v. Jenkins by Agyei*, 491 U.S. 274, n.10 (1989). Such work includes
factual investigation, assisting with discovery, checking legal citations, and
drafting correspondence. *Id.* "Purely clerical or secretarial tasks should not be
billed at a paralegal rate, regardless of who performs them." *Id.*

Courts have ruled on whether the individual tasks billed by Jessica Yuhas
are clerical or work of an attorney. As stated in *Jenkins*, checking legal citations is
not clerical. *Id. See also eMove Inc. v. SMD Software Inc.*, No. CV-10-02052-
PHX-JRG, 2012 WL 4856276, at *7 (D. Ariz. Oct. 11, 2012) (collecting cases
holding that cite-checking is not a clerical or secretarial task). Assembling,

photocopying, and mailing exhibits and pleadings is clerical, as is proofreading, filing, Bates numbering, and calendaring. *eMove*, 2012 WL 4856276, at *7; *Hopi Tribe v. United States*, 55 Fed. Cl. 81, 99 (Fed. Cl. 2002).

Here, Yuhas billed 50 hours for Bates numbering and organizing incoming documents; 40.2 hours for proofreading, checking citations, creating and organizing exhibits, creating duplicate filings for the companion cases, and converting documents to .pdf for filing; and 19.6 hours for filing pleadings, facilitating service of documents, and mailing letters. (Doc. 144-6 at 8-11).[3] All these tasks except checking citations are clerical.

Accordingly, the Court excludes from the fee award Yuhas' 50 hours for Bates numbering and organizing incoming documents, and 19.6 hours for filing pleadings, facilitating service of documents, and mailing letters. As for the 40.2 remaining hours, neither party suggests how the Court should decrease the hours requested. Nor does Yuhas specify in her time entries when she was cite-checking. As such, the Court will apply a percentage reduction.

Checking citations is only one of five tasks included in the 40.2 hours requested for Yuhas' time. However, the Court recognizes that, proportional to the other tasks listed, checking citations likely takes a significant amount of time.

---

[3] Yuhas also billed 23.4 hours for meeting time. (Doc. 144-6 at 11). As the Court already has discussed, she may recover for the 5.5 hours spent meeting with a third-party consultant, but none of the remaining hours for intra-firm meetings.

Balancing these factors, the Court finds that a 50% reduction to the 40.2 is appropriate. Thus, Yuhas may recover 5.5 hours for meeting time and 20.1 hours for checking citations, for a total of 25.6 hours at $75/hour, or $1,920.

### 8.   Computation of Final Award

Applying the cuts the Court has found to be appropriate, the reimbursable hours, excluding travel, are:

- Shaffer: 165.85 hours, at $300/hour, for a total of $49,755
- Stepans: 15.6 hours, at $300/hour, for a total of $4,680
- Murnion: 236.65 hours, at $200/hour, for a total of $47,330
- Merill: 67.2 hours, at $300/hour, for a total of $20,160
- Yuhas: 25.6 hours, at $75/hour, for a total of $1,920
- Intra-Firm Meetings: 20.8 hours, at $300/hour, for a total of $6,240

The reimbursable travel hours are:

- Shaffer: 40 hours, at $150/hour, for a total of $6,000
- Stepans: 20 hours, at $150/hour, for a total of $3,000
- Murnion: 10 hours, at $100/hour, for a total of $1,000

Each person may recover as follows:

- Shaffer: $55,755
- Stepans: $7,680
- Murnion: $48,330
- Merill: $20,160
- Yuhas: $1,920
- Intra-Firm Meetings: $6,240

WTPA therefore owes Plaintiffs' counsel $140,085 in attorneys' fees.

Combined with the $14,363.11 request for costs and expenses, WTPA owes

Plaintiffs' counsel $154,448.11 in sanctions. This award covers the total amount

owed by WTPA for its conduct in this case and in the companion case, *Rowland v. Watchtower Tract and Bible Society of New York*, CV 20-59-BLG-SPW.

## B.    *Staying Order of Payment*

WTPA lastly requests that the Court stay any order of payment pending its appeal of the Court's imposition of sanctions.  (Doc. 165 at 25-32).  In deciding whether to stay a sanctions order pending appeal, the Court considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).  The moving party need not show it is "more likely than not" that he will succeed on the merits, only that substantial or serious legal questions exist for appeal.  *W. Sec. Bank v. Schneider Ltd. P'ship*, No. CV 15-10-BLG-SPW-CSO, 2015 WL 9641678, at *2 (D. Mont. Dec. 21, 2015).

Here, WTPA argues that serious legal questions exist as to whether Brumley qualifies as a sanctionable attorney under 28 U.S.C. § 1927.  Section 1927 states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

WTPA argues that Ninth Circuit law implies, and out of circuit district and appeals courts have held, that in-house counsel who is not an attorney of record in the case is not considered an attorney under § 1927. (Doc. 165 at 26-31). WTPA also argues that requiring immediate payment would impose financial hardship on Brumley and irreparably harm his reputation, while granting a stay would not injure Plaintiffs or impact the public interest. (*Id.* at 31-32).

As for the first factor, the Court need not address the substance of WTPA's argument because WTPA did not raise this issue in its response brief to Plaintiffs' Motion for Sanctions when it was appropriate to do so and thus has waived the argument. If WTPA argues it on appeal, the Ninth Circuit likely will disregard it as raised for the first time on appeal. *Raich v. Gonzalez*, 500 F.3d 850 (9th Cir. 2007). Further, an interlocutory appeal would fail because an order of sanctions is not an immediately appealable issue. *See Beck v. Test Masters Edu. Servs., Inc.*, 937 F. Supp. 2d 85, 87 (D.D.C. 2013) (denying motion to stay payment of sanctions because an order for sanctions is not an appealable issue, thus the party had not shown a likelihood of success on the merits). This factor thus weighs heavily against granting a stay.

As to the financial injury to Brumley, "[i]t is elementary that, in most circumstances, a payment of money causes no irreparable harm." *Id.* (citing *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)). "The key

word in this consideration is *irreparable*," and money is almost always

recoverable.  *Id.*; *Wis. Gas Co.*, 758 F.2d at 674.  In contrast, harm to Brumley's

reputation is irreparable.  Thus, the Court gives some weight to this factor.

As to the third factor, the fact that Plaintiffs' counsel "would have to wait

years until an appeal is resolved to collect its reasonable attorneys' fees and costs"

constitutes an injury, particularly here where the Motion for Sanctions was filed

almost a year and a half ago and the Order on the motion was filed seven months

ago.  *Metal Jeans, Inc. v. Metal Sport, Inc.*, No. CV 15-08987-DDP (RAOx), 2019

WL 1427104, at *2 (C.D. Cal. Jan. 15, 2019).  This factor weighs against a stay.

Lastly, as to the public interest, the Court disagrees with WTPA that the

public interest is unaffected.  The public interest can be general and lie in the

timely resolution of disputes and the consistent enforcement of court orders.

*Stargaze Mgmt. v. George Smith Partners, Inc.*, No. CV-15-02755-R, 2015 WL

12656917, at *1 (C.D. Cal. Nov. 6, 2015).  This factor weighs against a stay.

Considering the weight of the factors together, and in particular the heavy

weight of the first factor against a stay, it is clear that stay is inappropriate.  The

only support for a stay is the harm to Brumley's reputation, which is not enough to

overcome the weight of the other factors.  As such, the Court denies WTPA's

request to stay payment of sanctions.

## IV.    Conclusion

For these reasons, Plaintiffs' attorneys are awarded $154,448.11 for

WTPA's sanctioned conduct in this case and in the companion case, *Rowland v.*

*Watchtower Tract and Bible Society of New York*, CV 20-59-BLG-SPW.  The

Court denies WTPA's request to stay payment of this sanction pending appeal.

DATED the _14th_ day of April, 2023.

SUSAN P. WATTERS
UNITED STATES DISTRICT JUDGE