IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT and CAMILLIA MAPLEY,<br><br>Plaintiffs,<br><br>vs.<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIERY OF PENNSYLVANIA, INC.<br><br>Defendants. | CV 20-52-BLG-SPW<br><br>ORDER |

Before the Court is Plaintiffs Tracy Caekaert and Camillia Mapley's Motion to Compel Depositions (Doc. 153) and Motion for a Hearing on the Motion to Compel Depositions (Doc. 171). Plaintiffs seek a staggered deposition schedule for Defendant Watchtower Bible and Tract Society of New York, Inc.'s ("WTNY") 30(b)(6) corporate representative witnesses. (Doc. 153). Plaintiffs also move to compel the depositions of Allen Shuster, Gary Breaux, and Gene Smalley—Jehovah's Witness elders who worked for WTNY "during all times relevant to Plaintiffs' claims and who have substantial knowledge and information relevant to Plaintiffs' case." (*Id.* at 1-2).

1

WTNY opposes the motion, arguing that (1) Plaintiffs failed to satisfy their meet-and-confer obligations; (2) depositions of Shuster, Breaux, and Smalley are inappropriate; and (3) staggered depositions are not supported by law. (Doc. 160). Plaintiffs filed a reply brief (Doc. 170), and the motion is ripe.

The parties' briefing is sufficient for the Court to rule without a hearing. As such, the Court denies the motion for a hearing. The Court also denies the motion to compel for the reasons explained below.

I.  **Discussion**

Under Federal Rule of Civil Procedure 30(b)(6), in a notice or subpoena for deposition, a party may name an organization as a deponent. The named organization "must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf[.]" *Id.* The designee is colloquially known as a 30(b)(6) witness. Depositions are limited to one day of seven hours, unless stipulated or ordered by the Court. Fed. R. Civ. P. 30(d)(1).

A party must obtain leave of court to re-depose a deponent if they already have been deposed in a case. Fed. R. Civ. P. 30(a)(2)(ii). Because of this restriction and the factors the Court considers in a motion for leave, the deposing party generally covers all the relevant topics in that one deposition. *See* Fed. R. Civ. P. 26(b)(1), (2) (factors relevant to motion for leave for additional discovery).

2

Plaintiffs here are requesting a staggered deposition schedule, meaning that Plaintiffs will conduct the 30(b)(6) deposition in two phases. (Doc. 154 at 8-9). They will first depose WTNY's 30(b)(6) witness for information related to WTNY's claims of testimonial privilege. (*Id.*). Plaintiffs expect the deposition to elicit information they will use to challenge WTNY's claims of privilege. (*Id.* at 9). Plaintiffs would then, on a later date, notice and depose the witness about the merits of Plaintiffs' claims. (*Id.*). Plaintiffs reason that deposing WTNY's 30(b)(6) witness once and noticing all their deposition topics now is untenable because the topics they wish to cover in the first deposition may allow them access to privileged information that could impact the scope of a subsequent deposition. (*Id.*).

A.   *Failure to Meet and Confer*

Prior to filing a discovery motion, counsel must meet and confer, or attempt to do so, in good faith. *See also* Fed. R. Civ. P. 37(a)(1) ("The motion [to compel] must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action); D. Mont. L.R. 26.3(c)(1) (March 2022)[1] ("The Court will deny any discovery motion unless the parties have

---

[1] The Court applies the previous version of the Local Rules, approved in March 2022 because Plaintiffs' motion was filed before the effective date of the current rules (December 1, 2022). However, the language of Local Rule 26.3(c)(1) is the same in both versions of the rules.

3

conferred concerning all disputed issues before the motion is filed."). The meet and confer requirement is specific and requires "direct dialogue and discussion." D. Mont. L.R. 26.3(c)(1) ("The mere sending of a written, electronic, or voicemail communication does not satisfy this requirement. Rather, this requirement can be satisfied only through direct dialogue and discussion in a face-to-face meeting (whether in person or by electronic means), in a telephone conversation, or in detailed, comprehensive correspondence.").

The meet and confer requirement seeks "to lessen the burden on the court and reduce the unnecessary expenditure of resources by litigants, through promotion of informal, extra-judicial resolution of discovery disputes." *Osborne v. Billings Clinic*, CV 14-126-BLG-SPW, 2015 WL 1643379, at *1 (D. Mont. Apr. 13, 2015) (citations omitted). The obligation also "promote[s] a frank exchange between counsel to resolve issues by agreement or at least narrow and focus the matters in controversy before judicial resolution is sought." *Id.* (citation omitted).

For the meet and confer obligations to serve their purpose, "the parties [must] treat the informal negotiation process as a substitute for, and not simply a formal prerequisite to, judicial review of discovery disputes." *Id.* In order to accomplish this,

> [t]he parties must present to each other the merits of their respective positions with the same candor, specificity, and support during informal negotiations as during the briefing of discovery motions. Only after all the cards have been laid on the table, and a party has meaningfully assessed the

relative strengths and weaknesses of its position in light of all available information, can there be 'a sincere effort' to resolve the matter.

*Id.* at 2 (citation omitted). Judicial intervention should only occur when informal negotiations on the disputed substantive issues have reached an impasse, or one party has acted in bad faith by refusing to negotiate or provide specific support for its claims. *Id.*

WTNY argues the Court should deny Plaintiffs' motion because Plaintiffs failed to satisfy their obligation to meet and confer about the staggered deposition schedule and deposing Shuster, Breaux, and Smalley. WTNY asserts that Plaintiffs only proposed the staggered deposition schedule in the letter received October 4. (Doc. 160 at 15). WTNY also claims that Plaintiffs failed to identify any facts that the men have that are relevant to Plaintiffs' claims even after WTNY explained it had "concerns" that depositions of Shuster, Breaux, and Smalley "may be inappropriate, premature, or ultimately unnecessary" because none have any direct knowledge of the claims, have ever met Plaintiffs or then-co-defendant Bruce Mapley Sr., or were executive officers or members of the board of directors of WTNY during the relevant period. (*Id.* at 13-14; Doc. 170-1 at 24). WTNY also points out that Plaintiffs did not address the issues regarding the apex doctrine and Smalley's age that WTNY raised in its October 5 email. (Doc. 160 at 14).

Plaintiffs disagree, maintaining that WTNY invokes the meet and confer requirement as part of its repeated efforts to delay production of evidence. (Doc.

5

170 at 6). Plaintiffs note that they stated the basis for staggered depositions in their September 23 letter and offered to talk on the phone, but that WTNY remained opposed to the schedule. (*Id.* at 3-4). As for Shuster, Breaux, and Smalley, Plaintiffs explain they provided notices for each deposition, but WTNY would not agree to producing the men. (*Id.* at 4-5). Plaintiffs then outline, in great detail, why Shuster, Breaux, and Smalley are necessary to depose. (*Id.* at 8-11).

Having reviewed the parties' correspondence on these issues, the Court finds that Plaintiffs satisfied their meet and confer obligations for the staggered deposition schedule. Plaintiffs explained the staggered deposition schedule and its purpose in their September 23 and 29 letters. (Doc. 170-1 at 11, 22 (stating they would first depose witnesses on the foundation for certain privilege claims, then depose on liability topics)). Plaintiffs also were clear that they would seek relief from the Court if an agreement could not be reached. (*Id.* at 16, 22). WTNY repeatedly stated its opposition to this arrangement without suggesting it needed clarification or wished to come to an agreement. (*Id.* at 14, 18, 24). In fact, when Plaintiffs asked to talk on the phone about the issue, WTNY ignored Plaintiffs' request. (*Id.* at 16). Given WTNY's consistent opposition and disinterest in negotiation, the parties were at an impasse by the end of the day on October 5. Plaintiffs rightly determined that judicial intervention was necessary.

However, as to the depositions of Shuster, Breaux, and Smalley, Plaintiffs jumped the gun on seeking judicial intervention because WTNY never had an opportunity to meaningfully assess and articulate its position on the necessity of the depositions. Plaintiffs asked to depose Shuster, Breaux, and Smalley for the first time in their September 27 letter, to which WTNY responded that it would need to talk with the men. (Doc. 170-1 at 16, 18-19). Plaintiffs then provided their deposition notices.[2] (*Id.* at 21). WTNY responded that it was "concerned" about the depositions—particularly considering the application of the apex doctrine and Smalley's age—and asked for the basis for needing them. (*Id.* at 24). WTNY never stated it would refuse to produce the men. (*Id.* (after seeing the basis for the necessity of the depositions "we will decide whether to seek ... protective orders.")). In their October 5 response, Plaintiffs explained for the first time the basis for the depositions but did not respond to the specific concerns regarding the apex doctrine and Smalley's age. (*Id.* at 26 (Shuster, Breaux, and Smalley "have been a part of the Jehovah's Witness organization in New York during the time period relevant to this case and have knowledge relevant to the issues in this case.")). WTNY never had a chance to respond to Plaintiffs' explanation before they filed their motion to compel.

---

[2] Plaintiffs' deposition notices are not in the record, so the Court cannot assess if the notices provided more detail than the October 5 email about the information sought from the men, or if they were boilerplate notices.

7

Even if WTNY had the time to assess and articulate its position, it could not meaningfully do so because Plaintiffs' explanation of the need for the depositions lacked the specificity required by *Osborne*. Plaintiffs simply stated that the men had relevant information to the case because they were part of WTNY during the relevant period. They did not identify the relevant parts of the case, the kind of relevant information sought, and why the men were qualified to provide such information. Had Plaintiffs provided in their pre-motion correspondence the reasons laid out in their briefing (Doc. 170 at 8-11), Plaintiffs would have stated with sufficient specificity the grounds for their deposition requests.

The Court understands Plaintiffs' frustration with the discovery process in this case. However, discussing the issue over eight days hardly rises to the level of bad faith Plaintiffs seem to assume WTNY is approaching all discovery disputes with. Regardless of past conduct, Plaintiffs still have an obligation to fully flesh out discovery disputes with WTNY until an impasse is reached, as it did with the staggered deposition issue.

As such, the parties shall engage in a meaningful meet and confer about the depositions of Shuster, Breaux, and Smalley. If any disputes remain, Plaintiffs may re-file their motion to compel. At that time, counsel should be prepared to present evidence of specific compliance with the meet and confer rule.

//

B.  *Staggered Deposition Schedule*

As stated, Plaintiffs ask the Court to preauthorize a staggered deposition schedule for WTNY's 30(b)(6) witnesses so that they can first obtain information to overcome WTNY's privilege claims, access such privileged information, and then later depose WTNY witnesses about the merits of their claims.

Plaintiffs do not cite, nor could the Court find, a case in which a court preauthorized staggered depositions over the opposition of the other party. The cases cited by Plaintiffs involved motions for leave to take another deposition or motions for protective orders after the initial deposition(s) was/were complete. *E.g. Quality Aero Tech., Inc. v. Telemetrie Elektronik GmbH*, 212 F.R.D. 313, 319 (E.D.N.C. 2002) (granting motion to compel a second 30(b)(6) deposition that was noticed without leave of the court and was on different topics than the first deposition); *Kimberly-Clark Corp. v. Tyco Healthcare Retail Grp.*, No. 05-C-985, 2007 WL 601837, at *2 (E.D. Wis. Feb. 23, 2007) (granting motion for leave to take a second deposition); *Bldg. Materials Corp. of Am. v. Henkel Corp.*, No. 6:15-cv-548-Orl-22GJK, 2016 WL 11164043, at *1 (M.D. Fla. Apr. 29, 2016) (denying motion for protective order filed to prevent third deposition of 30(b)(6) corporate representative without leave of the court). In cases where the court authorized staggered depositions prior to any depositions being taken, the parties had stipulated to a staggered schedule. *E.g. Rosales v. Crawford and Co.*, No. 2:20-cv-

9

02530 JAM AC, 2021 WL 4429468 (E.D. Cal. Sept. 27, 2021). Further, the Court finds that such a schedule would only serve the convenience of Plaintiffs while failing to protect the interests of WTNY and its witnesses. For these reasons, the Court denies Plaintiffs' request.

The parties raise the separate issue of whether Plaintiffs will need leave of court if they decide to re-depose the 30(b)(6) witness. (*Cf.* Doc. 154 at 8-9 and Doc. 160 at 22-23). WTNY contends that Rule 30(a)(2) requires Plaintiffs to move for leave to re-depose any corporate witness designee. *See* Fed. R. Civ. P. 30(a)(2)(A)(ii). Plaintiff maintains that they are not required to do so for deposition of a corporation under Rule 30(b)(6).

Under Rule 30(a)(2)(A)(ii), a party must obtain leave of court if the parties have not stipulated to the deposition and "the deponent has already been deposed in the case." The Ninth Circuit has not decided whether a corporation is a "deponent" subject to the limitations of Rule 30(a)(2)(A)(ii), or whether those limitations apply only to individual deponents. *See Peterson v. Alaska Commc'ns Sys. Grp., Inc.*, No. 3:12-cv-90-TMB-MMS, 2020 WL 6889168, at *3 (D. Alaska Nov. 22, 2020); *Heath v. Google LLC*, No. 15-cv-1824-BLF (VKD), 2018 WL 4491368, at *2 (N.D. Cal. Sept. 19, 2018). District courts are split. *Compare, e.g., Blackwell v. City and County of San Francisco*, No. C-07-4629 SBA (EMC), 2010 WL 2608330 (N.D. Cal. June 25, 2010) (second corporate deposition requires

leave of court); *State Farm Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227 (E.D. Pa. 2008) (same) *with, e.g., HVAC Tech. LLC v. Southland Indus.*, No. 5:15-cv-2934-PSG, 2016 WL 3030196 (N.D. Cal. Apr. 8, 2016) (second corporate deposition does not require leave of court, so long as topics do not overlap); *Quality Aero Tech.*, 212 F.R.D. at 319 (same).

The Court agrees with the district courts requiring leave in order to protect the deponent(s) and ensure judicial economy. With leave, the Court—"not an inevitably self-interested party—determines that requested discovery is consistent with the principles stated in Rule 26(b)(2) …." *Burdick v. Union Sec. Ins. Co.*, CV 07-4028 ABC (JCx), 2008 WL 5102851, at *2 (C.D. Cal. Dec. 3, 2008). Thus, if Plaintiffs seek to depose WTNY's 30(b)(6) witnesses multiple times, they must seek leave of court.

## II. Conclusion

For these reasons, Plaintiffs Tracy Caekaert and Camillia Mapley's Motion to Compel Depositions (Doc. 153) and Motion for a Hearing on their motion to compel (Doc. 171) are denied.

DATED this 18th day of April, 2023.

*/s/ Susan P. Watters*
SUSAN P. WATTERS
UNITED STATES DISTRICT JUDGE

11