Gerry P. Fagan
Christopher T. Sweeney
Jordan W. FitzGerald
MOULTON BELLINGHAM PC
27 North 27th Street, Suite 1900
P.O. Box 2559
Billings, Montana 59103-2559
Telephone: (406) 248-7731
Fax: (406) 248-7889
Gerry.Fagan@moultonbellingham.com
Christopher.Sweeney@moultonbellingham.com
Jordan.FitzGerald@moultonbellingham.com

*Attorneys for Defendant Watch Tower Bible and Tract Society of Pennsylvania*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT and CAMILLIA MAPLEY,<br><br>Plaintiffs,<br><br>-vs-<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR.,<br><br>Defendants. | Case No. CV-20-00052-SPW-TJC<br><br><br><br>**DEFENDANT WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA'S BRIEF IN SUPPORT OF MOTION TO COMPEL RESPONSES BY CAMILLIA MAPLEY** |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA,<br><br>Cross-Claimants, | |

-vs-

BRUCE MAPLEY SR.,

Cross-Defendant.

MOULTON BELLINGHAM PC
ATTORNEYS AT LAW

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION** ……………………………………………………………………….6

**ARGUMENT** …………………………………………………………………………7-29

    I.     PLAINTIFF MUST BE COMPELLED TO PROVIDE COMPLETE RESPONSES TO RFP NOS. 10 AND 36. ……………………………9-18

    II.    PLAINTIFF MUST BE COMPELLED TO PROVIDE PROPER RESPONSES TO INTERROGATORIES NOS. 3, 5, 6, AND 7……..18-29

  **CONCLUSION** ………………………………………………………………..29-30

## <u>TABLE OF AUTHORITIES</u>

*A. Farber & Ptnrs., Inc. v. Garber*,
   234 F.R.D. 186 (C.D. Cal. 2006) ................................................................ 14, 16

*AECOM Energy & Constr., Inc. v. Ripley*,
   2018 U.S. Dist. LEXIS 224110 (C.D. Cal. 2018) ............................................ 16

*Amica Mut. Ins. Co. v. Momii*,
   2016 WL 5942307 (D. Mont. Oct. 13, 2016) ...................................................... 7

*Blankenship v. Hearst Corp.,* 519 F.2d 418, 429 (9th Cir. 1975) ………………..13

*Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court*, 408 F.3d 1142, 1149
(9th Cir. 2005) ............................................................................... 15-18, 26

*Columbia Falls Aluminum Co., LLC v. Atl. Richfield Co.*,
   2019 U.S. Dist. LEXIS 142162 (D. Mont.) ...................................................... 29

*Duran v. Cisco Sys., Inc.*,
   258 F.R.D. 375 (C.D. Cal. 2009) ...................................................................... 16

*Economic Research Servs. v. Northwestern Corp.*,
   2009 U.S. Dist. LEXIS 146069 (D. Mont.) ................................................. 17, 18

*Hill v. Asset Acceptance, LLC*,
   2014 U.S. Dist. LEXIS 91190 (S.D. Cal. July 3, 2014) ................................... 12

*Lawman v. City and Cnty. of San Francisco*,
   159 F. Supp. 3d 1130 (N.D. Cal. 2016) ........................................................... 28

*Mulero-Abreu v. P.R. Police Dep't*, 675 F.3d 88, 93 (1st Cir. 2012) ……………. 28

*Osborne v. Billings Clinic*,
   2015 U.S. Dist. LEXIS 38716 (D. Mont.) .................................................. 11, 12

*Painters Joint Comm. v. v. Emp. Painters Trust Health & Welfare Fund*,
   2011 U.S. Dist. LEXIS 113278 (D. Nev.) .................................................. 13, 14

*Rogers v. Giurbino*
   288 F.R.D. 469 (S.D. Cal. 2012)........................................................... 12, 13, 14

*Russell v. Daiichi-Sankyo, Inc.*,
   2012 U.S. Dist. LEXIS 49161 (D. Mont.).......................................... 7, 8, 15, 26

*Shqeirat v. U.S. Airways Group, Inc.*,
  2008 WL 4232018 (D. Minn. 2008) ........................................................... 20, 27

*Trammel v. U.S.*,
  445 U.S. 40 (1980) ...................................................................................... 7

*United States ex rel. Rembert v. Bozeman Health Deaconess Hosp.*,
  2018 U.S. Dist. LEXIS 85885 (D. Mont.) ......................................................... 16

*United States v. Int'l Union of Petroleum and Indus. Workers, AFL–CIO,* 870 F.2d
  1450, 1452 (9th Cir.1989) …………………………………………………… 11, 12

*Villery v. Jones*,
  2021 U.S. Dist. LEXIS 103867 ......................................................................... 16

*Walker v. Lakewood Condominium Owners Assoc.,* 186 F.R.D. 584, 587 (C.D. Cal.
1999) ........................................................................................................................ 14

Moore's Federal Practice - Civil § 33.103 (2023) .................................................... 28

Moore's Federal Practice - Civil § 34.14  (2023) .................................................... 12

Fed. R. Civ. P. 26 ................................................................. 7, 8, 14, 16, 17, 20 26

Fed. R. Civ. P. 33 ......................................................................... 7, 26, 27, 28, 29

Fed. R. Civ. P. 34 .............................................................................. 7, 8, 11, 12

Fed. R. Civ. P. 37 ...................................................................................................... 7

**MOULTON BELLINGHAM PC**
ATTORNEYS AT LAW

## **INTRODUCTION**

While Plaintiffs in this case seemingly never miss an opportunity to attempt to portray the Defendants as bad actors who persistently obstruct discovery and violate the Rules of Civil Procedure (*see* most recently, Doc. No. 201, p. 2 & Doc. No. 215, p. 2), and currently have at least three separate Motions to Compel pending (plus two Motions to Compel that the Court recently denied[1]), Plaintiff Camillia Mapley has failed to respond in compliance with the Rules of Civil Procedure to at least six discovery requests by co-Defendant Watch Tower Bible and Tract Society of Pennsylvania ("WTPA"). Wielding little more than narrative objections about such issues as what her counsel believes is "unfair" to ask in discovery, Plaintiff has relevant documents in her possession which she refuses to produce in response to two Requests for Production and she failed to provide responses to four Interrogatories with anything that even comes close to complying with the Rules of Civil Procedure.

Plaintiff Mapley should be compelled to provide fully compliant responses to WTPA's Request for Production Nos. 10 and 36 and Interrogatories Nos. 3 and 5-7.

//

//

---

[1] *See* Doc. Nos. 132, 153, 187, 191, 195, 217, & 222.

**MOULTON BELLINGHAM PC**
ATTORNEYS AT LAW

## **ARGUMENT**

As this Court has previously recognized in this case, "[it] is a fundamental principle that 'the public ... has a right to every man's evidence.' " *See* Order, June 30, 2021, doc. no. 79, at p. 6, *citing Trammel v. U.S.*, 445 U.S. 40, 50 (1980) (*quoting United States v. Bryan*, 339 U.S. 323, 331 (1950)). In this case, WTPA's Motion to Compel is required for it to enforce that "fundamental principle" and obtain Plaintiff Mapley's evidence.

A party's motion to compel must:

(A)    set forth the basis for the motion;

(B)    certify that the parties complied with subsection (c)(1) or a description of the moving party's attempts to comply; and

(C)    attach, as an exhibit, the full text of the discovery sought and the full text of the response.

*See* District of Montana Local Rule 26.3(c)(2). That same Local Rule, along with Fed. R. Civ. P. 37(a)(3)(B), requires the parties to confer through direct dialogue such as telephone or other detailed communication before a court grants any motion to compel discovery.

A party may move for an order compelling an answer, designation, production, or inspection if an opposing party fails to answer interrogatories submitted under Rule 33 or fails to produce documents requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iii–iv); *see also Amica Mut. Ins. Co. v. Momii*, No. CV

16-24-BLG-SPW, 2016 WL 5942307, at *2–3 (D. Mont. Oct. 13, 2016). A motion to compel may be filed when a party disagrees with the objections asserted by the opposing party and wants to compel more complete answers. *See Russell v. Daiichi-Sankyo, Inc.*, 2012 U.S. Dist. LEXIS 49161, *2 (D. Mont.) (citation omitted). "The Court has wide discretion in controlling discovery." *Id.* (citation omitted).

The scope of discovery allowed by Rule 26(b) is as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount of controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

*Id., citing* Fed. R. Civ. P. 26(b)(1). An interrogatory may relate to any matter that may be inquired into under Rule 26(b). *See Amica Mut., citing* Fed. R. Civ. P. 33(a)(2). Likewise, a party may request another party to produce material within the scope of Rule 26(b). *Id., citing* Fed. R. Civ. P. 34(a).

The undersigned certifies that the parties conferred to attempt a resolution to the discovery dispute as required by the Local Rules and Federal Rules of Civil Procedure. The parties wrote several letters and emails and conferred on the telephone calls several times to address the deficiencies that WTPA had identified in Plaintiff Mapley's Responses and Supplemental Responses to WTPA's First and

8

Second Sets of Discovery Requests. (*See* Letters attached as Exhibits 1-5) The parties' efforts to resolve the discovery issues contained in Plaintiff's Responses, including Supplemental Responses, were not successful, however.

WTPA asserts the following two discovery issues for the Court's consideration. Although WTPA addressed additional discovery responses in its meet-and-confer letter that were also deficient, WTPA decided those other responses were not impactful enough to warrant the Court's involvement and time at this point.

## I.   PLAINTIFF MUST BE COMPELLED TO PROVIDE COMPLETE RESPONSES TO RFP NOS. 10 AND 36.

In Requests for Production Nos. 10 and 36, WTPA sought production of documents from Plaintiff Mapley which are obviously relevant to the claims and defenses in this case because the Requests explicitly seek documents related to sexual abuse claims. However, despite her attorneys' admissions they possess relevant documents, Plaintiff refused to produce any of the documents. Instead, Plaintiff Mapley only asserted a brief boilerplate objection to RFP No. 10 and an unfounded narrative objection to RFP No. 36, both of which lack merit. Mapley should be compelled to provide complete production of the documents requested in RFP Nos. 10 and 36.

WTPA requested in RFP No. 10 the production of documents, including electronic documents, in Mapley's possession or control that related to the allegations of child sexual abuse by or against religious entities and members of

9

Jehovah's Witnesses. (*See* RFP No. 10 & Response, excerpt from Mapley's Response to WTPA's First Set of Discovery Requests, attached as Exh. 6) Plaintiff asserted only a five-line boilerplate objection that the Request was "vague, ambiguous, overbroad," had "nothing to do with any fact or issue in this case," and sought documents protected by the work-product privilege. (Exh. 6)

WTPA requested in RFP No. 36 the production of documents that she or her attorneys have received from third parties that related to alleged sexual abuse by members of, or claims against, Jehovah's Witnesses. (*See* RFP No. 36 & Response, excerpt from Mapley's Response to WTPA's Second Set of Discovery Requests, attached as Exh. 7) Mapley's counsel objected. In a long narrative objection, Mapley's counsel argued that the Request "does not seek evidence bearing on any fact in dispute in this case" and was instead a "fishing expedition" to find out what Mapley's attorneys knew or possessed in regard to the sexual abuse allegations. (*Id.*) Plaintiffs' counsel declared "Plaintiffs' lawyers are not producing" the documents they had. (*Id.*) In addition, her attorneys argued the requested documents constituted privileged attorney work product. (*Id.*)

Mapley's attorneys also had previously sent a letter in which they had discussed the scope of RFP No. 36. (*See* Exh. 3) In the letter, one of her attorneys admitted they did have responsive documents (*e.g.*, various articles "that are related to child sex abuse perpetrated by members of religious organizations that are in my

file"), but nevertheless still refused to produce the documents. (*Id.*) Counsel argued the documents did not "bear on a particular fact issue in our case" and stated Mapley would not produce anything unless WTPA could identify a specific fact at issue that the documents would be relevant to. (*Id.*)

Mapley's refusal to answer RFP Nos. 10 and 36, and her counsel's objections to the same, are meritless. Neither Request is improper, and both clearly seek documents that are relevant in this case. Both Requests seek production of documents about the most basic issue in this case – child sexual abuse. There are multiple reasons why Mapley's objections to RFP Nos. 10 and 36 are not well taken and Mapley should be compelled to produce responsive documents to both Requests.

First, Mapley obviously possesses or controls documents that are responsive to both Requests. Her counsel admitted that he maintained such documents in his file. (*See* Exh. 3) Documents maintained in her counsel's file certainly constitute documents that Mapley possesses or controls or has a legal right to obtain, or at a minimum are available to her from her attorney as her agent.

Under Rule 34(a), a party may request the production of documents that are "in the responding party's possession, custody, or control." *See Osborne v. Billings Clinic*, 2015 U.S. Dist. LEXIS 38716, * 14 (D. Mont.) (D. Mont. Mar. 26, 2015), *citing* Fed. R. Civ. P. 34(a)(1). "[F]ederal courts have consistently held that documents are deemed to be within the 'possession, custody or control' for purposes

of Rule 34 if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand." *See Osborne, citing United States v. Int'l Union of Petroleum and Indus. Workers, AFL–CIO,* 870 F.2d 1450, 1452 (9th Cir.1989). "A party responding to a Rule 34 production request cannot furnish only that information within his immediate knowledge or possession; he is under an affirmative duty to seek that information reasonably available to him from his employees, agents, or others subject to his control." *See Osborne, citing Rogers v. Giurbino,* 288 F.R.D. 469, 485 (S.D. Cal. 2012) (internal citations omitted).

Of significance here, if a party's attorneys have possession of documents, those documents are considered within the possession, custody, or control of the party for purposes of discovery. *See Hill v. Asset Acceptance, LLC*, 2014 U.S. Dist. LEXIS 91190, 2014 WL 3014945, at *7 (S.D. Cal. July 3, 2014); *see also*, 7 Moore's Federal Practice - Civil § 34.14 (documents in possession of party's attorney considered to be within control of party within meaning of Rule 34) (citing cases). Therefore, Plaintiff Mapley has an obligation here to produce the documents her attorneys have admitted they have, if the documents are relevant.

Second, despite Plaintiff's protests, these documents are certainly relevant -- and potentially highly relevant -- to Plaintiff Mapley's allegations and claims against WTPA (as well as to WTNY). Plaintiffs have repeatedly characterized their case as being about the alleged sexual abuse of children by members of Jehovah's

12

Witnesses. (*See, for example,* Plfs.' Brf. in Supp. of Their Motion to Compel In Camera Review, Doc. no. 196, p. 3) Both of the Requests that Mapley refused to answer seek on their face documents related to Mapley's allegations of sexual abuse by members of Jehovah's Witnesses. RFP No. 10 seeks documents that are relevant to allegations of child sexual abuse by or against members of Jehovah's Witnesses. (Exh. 6) RFP No. 36 seeks documents Plaintiff received from third parties that related to alleged sexual abuse by members of, or claims against, Jehovah's Witnesses. (Exh. 7) Furthermore, Mapley's counsel admitted in his letter that the documents he maintains in a file are relevant to the child sexual abuse allegations at issue in this case when he wrote: "newspaper articles, magazine articles, internet articles, etc. that are related to child sex abuse perpetrated by members of religious organizations that are in my file." (*See* Exh. 3 (emphasis added))

In addition, blanket relevancy objections such as made here by Plaintiff Mapley in response to RFP Nos. 10 & 36 are generally rejected by courts. *See e.g., Rogers, supra*, 288 F.R.D. at 483 (blanket assertion that requests are irrelevant is insufficient), *citing Painters Joint Comm.* v. *Emp. Painters Trust Health & Welfare Fund*, 2011 U.S. Dist. LEXIS 113278, at *16-17 (D. Nev. Sept. 29, 2011). Citing a Ninth Circuit decision, the Federal District Court in Nevada recognized that it "is also well established that the party resisting discovery bears the burden of showing why a discovery request should be denied." *See Painters Joint Comm.*, 2011 U.S.

Dist. LEXIS 113278, *16, *citing Blankenship v. Hearst Corp.,* 519 F.2d 418, 429 (9th Cir. 1975). The Nevada Federal Court recognized that "the party opposing discovery bears the burden of showing the discovery is overly broad and duly (sic) burdensome, or not relevant" and "the objecting party must specifically detail the reasons why each request is irrelevant." *Id.* at **16-17 (citations omitted). The Court further recognized that "[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all." *See Id.* at *17, *quoting Walker v. Lakewood Condominium Owners Assoc.,* 186 F.R.D. 584, 587 (C.D. Cal. 1999)); *see also, A. Farber & Ptnrs., Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D Cal. 2006) ("boilerplate relevancy objections, without setting forth any explanation or argument why the requested documents are not relevant, are improper."). Plaintiff's blanket relevancy objection to Request Nos. 10 and 36 should accordingly be rejected.

Furthermore, Plaintiff's argument that WTPA must first establish that the Requests are relevant to a "fact at issue in this case" (*see* Plaintiff's objection to RFP No. 10, Exh. 6) is plainly wrong. The allowed scope of discovery is much broader than Plaintiffs' argument: "any nonprivileged matter that is relevant to any party's claim or defense." (*See* Fed. R. Civ. P. 26(b)(1)). There is no requirement in the Rules of Civil Procedure which would force a propounding party to identify first a specific fact at issue to which the request is relevant.

Furthermore, Plaintiff's attempt to shift the burden to WTPA to identify why the Request is relevant is improper. As established above by the Nevada Federal Court, it is the <u>objecting</u> party which bears the burden "of showing the discovery is … not relevant," rather than the propounding party's burden to show it is relevant. *See Painters Joint Comm.*, *supra,* 2011 U.S. Dist. LEXIS 113278 at *16. Plaintiff's effort to force WTPA to show its Requests are relevant to a "fact at issue in this case" is unfounded and should be rejected.

In reality, there is no doubt that these two Requests seek documents which are relevant to the claims in this case, or, at a minimum, are calculated to lead to admissible evidence. Plaintiff Mapley should be compelled to produce them.

Third, Plaintiff's overall boilerplate objections (i.e., "vague, ambiguous, overbroad" (Exh. 6, Resp. to RFP No. 10 ) and "this request is not compliant with the scope of discovery" (Exh. 7, Resp. to RFP No. 36)) are not well taken and should be rejected. Courts, including the Montana Federal District Court and the Ninth Circuit, reject boilerplate objections because they lack specificity and substance. For example, Judge Ostby recognized that the "recitation of 'boilerplate, shotgun-style objections' are not consistent with the requirements of discovery rules." *See Russell v. Daiichi-Sankyo, Inc.*, 2012 U.S. Dist. LEXIS 49161, *3 (granting motion to compel) (citations omitted). Judge Ostby also recognized that the Ninth Circuit "expressly disapproved boilerplate objections," too. *Id., citing Burlington Northern*

& *Santa Fe Ry. Co. v. U.S. Dist. Court,* 408 F.3d 1142, 1149 (9th Cir. 2005) ("We hold that boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege"). Many other courts agree. *See e.g., Villery v. Jones*, 2021 U.S. Dist. LEXIS 103867, *8-9 ("declin[ing] to consider objections raised in boilerplate language" and requiring responding party to respond further to seventy requests for admission); *AECOM Energy & Constr., Inc. v. Ripley*, 2018 U.S. Dist. LEXIS 224110, at *18 (C.D. Cal. Oct. 3, 2018) ("Boilerplate objections of any type are improper in federal court."); *A. Farber & Partners*, *supra*, 234 F.R.D. at 188 ("[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections"); *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 379 (C.D. Cal. 2009) (noting that "unexplained and unsupported boilerplate objections are improper").

Fourth, Plaintiff's objection that the documents maintained in this case by her counsel constituted privileged attorney work product is also meritless. Work product applies to documents which a party "prepared in anticipation of litigation or for trial." *See* Fed. R. Civ. P. 26(b)(3)(A) (emphasis added). In addition, documents are protected as work product if the documents "would not have been created in substantially similar form but for the prospect of litigation." *See United States ex rel. Rembert v. Bozeman Health Deaconess Hosp.*, 2018 U.S. Dist. LEXIS 85885, *5-6

(D. Mont.) (emphasis added). Neither Plaintiff nor her attorneys <u>prepared</u> or <u>created</u> these documents; they merely gathered them and now possess them. Therefore, the requested documents are not actual work product, they are merely documents held by counsel.

Furthermore, even if they were protected work product documents, Plaintiff waived any privilege to them by failing to identify them in a privilege log with sufficient information about them to allow WTPA to assess the privilege claim. *See* Fed. R. Civ. P. 26(b)(5). Courts in the District of Montana have held that "[b]lanket assertions" of privilege are " 'extremely disfavored.' " *See United States, supra, citing United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002). Instead, the "party claiming the privilege must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted." *Id.* It is a well-established rule that the failure to produce a supporting privilege log in a timely manner constitutes waiver of the privilege. *See Economic Research Servs. v. Northwestern Corp*., 2009 U.S. Dist. LEXIS 146069, *7-8 (D. Mont.) (Judge Ostby ruling six-month delay in filing privilege log waived privilege), *citing Burlington Northern, supra,* 408 F.3d at 1149-50 (five-month delay constituted waiver).

In this case, it has been more than nine months since Plaintiff filed her objection to RFP No. 10 and approximately seven months since she filed her

ATTORNEYS AT LAW

response to RFP No. 36. Even if she had asserted specific privilege objections rather than the blanket privilege objections that she did assert, she waived any applicable privilege to the documents by failing to timely file a supporting privilege log. *See Economic Research Servs.*, at *7-8, & *Burlington Northern,* at 1149-50.

In sum, Plaintiff Mapley should be compelled to provide full responses to WTPA's RFP Nos. 10 and 36. Both requests seek documents that are relevant to this case and the documents are within the possession and control of Plaintiff. Furthermore, Plaintiff's blanket objections to both responses are not well taken or effective. Finally, to the extent, if any, that any of the documents may have been privileged, Plaintiff waived the privilege by failing to provide a supporting privilege log.

## II.  PLAINTIFF MUST BE COMPELLED TO PROVIDE PROPER RESPONSES TO INTERROGATORIES NOS. 3, 5, 6, AND 7.

Plaintiff Mapley should be compelled to serve responses that comply with the Rules of Civil Procedure to four Interrogatories served by WTPA. These Interrogatories essentially sought the identification of various facts that are relevant, such as the facts relating to Plaintiff's allegations that WTPA knew she was being or had been sexually abused. Plaintiff's responses to Interrogatory Nos. 3 and 5-7 have so many things wrong with them that it is frankly difficult to succinctly discuss the responses. Her responses included narrative objections by counsel, which include rambling, unsupported arguments of counsel about what is or is not "fair" to ask

18

Plaintiff in discovery. Plaintiff's counsel also allowed their client to provide in supplementary responses her "response." Unfortunately, Plaintiff's purported responses did not respond in any way to the actual requests and certainly did not comply with the Rules of Civil Procedure. The responses are more along the line of nonfactual rants and questions by Plaintiff about Jehovah's Witnesses. In short, Plaintiff's counsel's objections are groundless, and Plaintiff's supplemental responses do not comply with the Rules of Civil Procedure.

WTPA served Interrogatories Nos. 3 and 5-7 on Plaintiff Mapley. (Excerpts attached as Exh. 8, which include the initial request, objections, and subsequent supplemental responses by Mapley)  Interrogatory No. 3 sought the identification of facts which were relevant to Plaintiff's allegations of negligence against WTPA. (*Id.* at p. 3[2]) Interrogatory No. 5 sought the identification of facts which were relevant to Plaintiff's allegations that WTPA knew that individuals had sexually abused a minor before they allegedly abused Plaintiff. (*Id.* at p. 8) Interrogatory No. 6 sought the identification of facts which were relevant to Plaintiff's allegations that individuals who allegedly abused Plaintiff were agents of WTPA. (*Id.* at p. 13) And Interrogatory No. 7 requested Plaintiff to identify what actions Plaintiff contended WTPA should have taken in response to the abuse Plaintiff alleged had occurred to her. (*See Id.* at p. 22)

---

[2] The page number referenced herein is the original page number on the supplemental responses.

MOULTON BELLINGHAM PC
ATTORNEYS AT LAW

Each of these Interrogatories sought basic, relevant, factual information in this case. The Interrogatories were not in any way improper, out-of-bounds, or, frankly, even surprising in this case. The Interrogatories comply with Rule 26 and what is allowed to be sought in discovery.

Similarly to Requests for Production Nos. 10 and 36, Plaintiff refused to provide proper responses to Interrogatories Nos. 3 and 5-7. Plaintiff Mapley's initial Response to each was only an objection by her counsel. Her counsel's objection to each Interrogatory was nearly identical. With no explanation as to how it specifically applied to the respective requests, counsel objected that each Interrogatory was "overly broad and unduly burdensome" and cited a decision from Minnesota entitled *Shqeirat v. U.S. Airways Group, Inc.*, 2008 WL 4232018, at *4 (D. Minn. 2008). (*Id.* at pp. 3, 8, 13-14, & 22) Her counsel apparently contended that each Interrogatory at issue was objectionable because it allegedly constituted an improper "contention" interrogatory which " 'required [Plaintiff] to provide a narrative account of its case.' " (*Id., citing Shqeirat*)

Counsel also went on to object – without any supporting authority – that it was improper in the first place to address to Plaintiff these Interrogatories because she was not a lawyer and did not know what was relevant or not:

> Further, Interrogatories are to be directed to parties and are not intended to be inquiries into the legal theories and workings of attorneys. Plaintiff is not a lawyer and is not capable of, nor can be expected to, distinguish relevant from irrelevant facts regarding any legal analysis,

20

including whether any facts are relevant or not relevant to legal theories
put forth by her lawyer.

(*Id.* at pp. 3, 8, 14, & 22-23).

Counsel for WTPA wrote to Plaintiff's counsel to explain that their objections
to the four Interrogatories were improper and to request supplementation with
compliant responses. (*See* Exh. 4) Plaintiff Mapley responded by supplementing her
Responses. The supplemental responses are a confusing mishmash of more
unsupported narrative objections and more of counsel's own ideas on what is a
proper Interrogatory and what is not, or what is "unfair" or not to ask, coupled with
some bizarre comments or questions about Jehovah's Witnesses tossed in by
Plaintiff Mapley as purported supplemental responses.

Her supplemental responses to Interrogatories Nos. 3, 5, and 6 included
additional, very similar narrative objections by her counsel. In a nutshell, counsel
appeared to object again because the Interrogatories were directed to their clients
rather than to counsel. Counsel objected about how the requests were "inherently
fraught and unfair" because WTPA directed the Interrogatories to Plaintiff and she
was not "knowledgeable of the entirety of the facts in the case," she did not
understand "legal concepts like relevancy and negligence," and she could not "make
judgments about which facts support the legal claims that were drafted by the
lawyers." (*See* Exh. 8, at pp. 3-6, 9-11, & 14-17) Plaintiff Mapley's counsel further
objected that these requests "should be answered by Plaintiff's lawyers" because

21

they are trained in some of the legal concepts involved here, have knowledge of the facts, and "it is their job to apply those facts to those legal concepts." (*Id.*)

Finally, her supplemental responses to Interrogatory Nos. 3, 5 and 6 also contained references by "Plaintiff's counsel" to categories of some documents which counsel evidently contended were relevant to WTPA's respective requests. (*Id.* at pp. 4-5, 9-11, & 15-16) These references were hugely broad, such as "the affidavits of James Rowland and Shirley Gibson" or "attached lists of documents identified as Tabs to ECF Doc. 96 and their associated Bates numbers." (*Id.*) Counsel's general references referred to hundreds of pages of documents, and possibly over a thousand. For example, there are 40 tabs to ECF Doc. 96 and the documents therein are at least four inches high when printed out.

Plaintiff Mapley also supplemented her response to Interrogatory No. 7. In this supplemental response, she dropped the "inherently fraught and unfair" objections from her supplemental responses to Interrogatory Nos. 3, 5 and 6. Instead, she only provided a purported response of her own. (*Id.* at pp. 23-24)

Plaintiff Mapley's own supplemental responses to Interrogatories Nos. 3 and 5 - 7 can be fairly characterized as somewhat bizarre, but no matter how they are characterized, the responses are not compliant with the Rules of Civil Procedure. Plaintiff's own supplemental response to Interrogatory No. 3 (which requested the specification of facts relevant to her negligence claim) was:

Notwithstanding the foregoing [objections], and for the purpose of avoiding the unnecessary waste of time that WTPA's threatened motion to compel would entail, when presented with the precise question set forth in WTPA's interrogatory, Plaintiff responded as follows:

> *It is not my obligation to define the organization private meaning concerning WTPA. The private meaning of WTPA is not a common meaning in which all can share or comprehend with the very purpose it is now being used.*
>
> *The following are fact through the indoctrination as a child.*
>
> *The fact is that from the moment I was brought in the Jehovah Witnesses organization as a seven year old child, through no choice of my own, it was always instilled in me the following teachings that 1) Jehovah's witness are a representation of Jehovah, 2) Jehovah's witness are a representation of the organization, 3) Jehovah's witness do not behave in a manner that would bring reproach upon the organization or the name of the organization, 4) A congregation is a representative of Jehovah, and his true organization WTNY and WTPA, 5) the Elders are a representative of the congregation, the congregation is a representative of the WTNY and WTPA, WTNY and WTPA, the governing body speaks directly to god and is given guidance and authority, and 6) the Elders took guidance from the Governing body who represented Jehovah and its organization that being WTNY and WTPA.*

(*Id.* at pp. 6-7) (italics and typos in original)

Her own supplemental response to Interrogatory No. 5 (which requested the

specification of facts relevant to her allegations that WTPA knew she was being

sexually abused) was:

Notwithstanding the foregoing [objections], and for the purpose of avoiding the unnecessary waste of time that WTPA's threatened motion to compel would entail, when presented with the precise question set forth in WTPA's interrogatory, Plaintiff responded as follows:

MOULTON BELLINGHAM PC
ATTORNEYS AT LAW

> *What difference does it make if they abused 100 million children before me, the organization was made aware of multiple children being abused and did nothing but hush it.*

(*Id.* at p. 11) (italics in original)

Her supplemental response to Interrogatory No. 6 (which requested the specification of facts relevant to her allegations that several local members of Jehovah's Witnesses were agents of WTPA) is too long to repeat here verbatim (it is over four pages long), but it began as follows:

*Qui facit per alium facit per se.*

*Matthew 7:16-27*

*Are you now claiming and denying these three men never represented WTPA?*

*Are you now denying that Svensen was not an agent WTPA as an Elder?*

*Are you now denying Haine was not an agent for WTPA as a ministerial servant?*

*Are you now denying Mapley Sr, Haine and Svensen was not representing WTPA by taking me door to door preaching to the whole of Big Horn County to witness?*

*Are you now denying my experience of sitting through hours of meeting listening to them tell us how all Jehovah witnesses represent the organization?*

> *Do you now deny that your agents and publication did not instruct the*
>
> *above how to represent WTPA?*
>
> *Could it be that WT{A actually is the principle that instructs the agentx?*
>
> *If Wiki is printing misinformation of facts about WTPA to the public, is it*
>
> *not your duty as a reprentave of Jehovah to correct this?*

(*Id.* at pp. 17-18) (italics and typos in original) She then added about three more

pages which she appears to have copied from various Wikipedia entries on

Jehovah's Witnesses (and which Mapley provided the citations for in her response).

(*Id.* at pp. 18-21)

Plaintiff Mapley's supplemental response to Interrogatory No. 7 (which

requested her to specify what actions she contended that WTPA should have taken

in regard to her alleged sexual abuse) was:

> **SUPPLEMENTAL ANSWER:** When presented with the precise question
> set forth in WTPA's interrogatory, Plaintiff responded as follows:
>
> > *I require accreditation that deems WTPA able to act with authority on*
> > *the mental, emotion, psychological, physical, sexual, and spiritual*
> > *abuse of any victim that report it.*
> >
> > *WTPA is a represent WTNY, governing body, congregations, elders,*
> > *ministerial servants and members does it not?*
> >
> > *Above all please provide facts that prove WTPA, WTNY and governing*
> > *body have the accreditation to advise their representatives elders on*
> > *the welfare, mental, physical psychological out come to any member of*
> > *the congregation?*

*What mental healthcare accreditation does WTPA possess to advise others?*

*Without making WTPA sound like a cult, describe how you deem authority over others?*

(*See Id.* at pp. 23-24) (italics and typos in original)

Both her counsel's objections and her own supplemental responses to Interrogatory Nos. 3 and 5-7 are plainly inadequate. There is no legal support for either.

First, her counsel's objections are not supported or meritorious. To the extent that her "overly broad and unduly burdensome" objections are "boilerplate" or "shotgun-style" objections, they are strongly disapproved of, as discussed previously. *See  Russell, supra*, 2012 U.S. Dist. LEXIS 49161, *3 (Judge Ostby granting motion to compel); *see also Burlington Northern*, *supra*, 408 F.3d at 1149 (Ninth Circuit expressly disapproving of boilerplate objections).

In addition, counsel's objection that it is "inherently fraught and unfair" to request Plaintiff to identify facts which are relevant to her claims and allegations is unfounded. That counsel could not provide any authority for their objection was no surprise. The identification of relevant facts by the opposing party is the bedrock purpose of discovery. The Rules of Civil Procedure undisputedly allow a party to request the identification of facts or documents that are relevant to the  allegations against that party. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery

regarding any nonprivileged matter that is relevant to any party's claim or defense…"). Interrogatories "**must** be answered **by the party** to whom they are directed." *See* Fed. R. Civ. P. 33(b)(1)(A) (emphasis added). In addition, an "interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact…" *See* Fed. R. Civ. P. 33(a)(2).

Finally, counsel's initial objection that the Interrogatories were objectionable because they were allegedly inappropriate "contention" interrogatories was unsupported. The decision counsel cited, *Shqeirat v. U.S. Airways Group, Inc.*, 2008 WL 4322018, was misplaced. The Court in *Shqeirat* actually allowed "contention" interrogatories. However, the Court cautioned that "a contention interrogatory will be considered overly broad and unduly burdensome if it seeks all facts supporting a claim or defense, <u>such that the answering party is required to provide a narrative account of its case</u>." *Id.* (emphasis added) WTPA's Interrogatories did not seek a narrative account from Plaintiff Mapley; they merely requested her to identify facts which are relevant to her allegations and claims.

In short, none of counsel's objections to Interrogatories Nos. 3 and 5-7 had merit or were supported by law. They should be disregarded.

Second, Plaintiff Mapley's actual written supplemental responses were obviously not compliant with the Rules of Civil Procedure. Plaintiff was required to

MOULTON BELLINGHAM PC
ATTORNEYS AT LAW

answer each interrogatory "separately and fully in writing." *See* Fed. R. Civ. P. 33(b)(3). However, she obviously did not identify any facts which were relevant to the respective requests, or even attempt to do so. (*See* Exh. 8, at pp. 6-7, 11, 17-21, & 23-24) She merely fired back her own questions and accusations. (*Id.*) While her responses may have satisfied a personal need for her, her responses did not satisfy her obligations under the Rules of Civil Procedure.

Finally, it is insufficient for Plaintiff's counsel to refer to broad swathes of documents in purported response to specific requests in the Interrogatories. The general rule is that "[o]rdinarily, responses to interrogatories should not incorporate outside material by reference." *See* 7 Moore's Federal Practice - Civil § 33.103 (2023) (citation omitted). In addition, responses to interrogatories "must be responsive to the question, complete in themselves, and should not refer to pleadings, depositions, other documents, or other interrogatories…" *Id., citing, in part*, *Mulero-Abreu v. P.R. Police Dep't*, 675 F.3d 88, 93 (1st Cir. 2012) (rejecting plaintiffs' answer to interrogatories which only referred to a deposition; "answering interrogatories simply by directing the proponent to rummage through other discovery materials falls short of the obligations imposed by Rule 33.") Many courts agree, including courts in the Ninth Circuit. *See Lawman v. City and Cnty. of San Francisco*, 159 F. Supp. 3d 1130, 1140 (N.D. Cal. 2016) ("An answer

to an Interrogatory should be complete in itself …" and "Incorporation by reference is not a responsive answer.") (citations omitted).

In addition, although Plaintiffs did not invoke Rule 33(d) in their responses, their responses would have been improper even if they had invoked Rule 33(d). While a party can in certain circumstances refer to business records as a proper response to an interrogatory, that is only proper if the burden on deriving the answer from those records is substantially the same for either party and merely listing various documents is not proper under Rule 33(d). *Id.* "Making only a general reference to a mass of documents or records is an abuse of Rule 33(d)." *See Columbia Falls Aluminum Co., LLC v. Atl. Richfield Co.*, 2019 U.S. Dist. LEXIS 142162, **8-9 (D. Mont.) (Judge Molloy rejecting Rule 33(d) response to interrogatory which generally referred to other documents to be produced and ordering proper response).

In this case, counsel's general reference to hundreds of pages of discovery is clearly an insufficient response to Interrogatory Nos. 3, 5, and 6.

## **CONCLUSION**

Plaintiff Camilla Mapley's responses to WTPA's Request for Production Nos. 10 and 36 and to Interrogatories Nos. 3 and 5-7 do not comply with her obligations under the Rules of Civil Procedure. Plaintiff Mapely should be compelled to provide fully compliant responses to all six of these requests, including production of all

relevant documents maintained by her counsel, and the submission of her own responses to the interrogatories in a manner which fully complies with Rule 33.

**DATED** this 21st day of April, 2023.

MOULTON BELLINGHAM PC


By    */s/ Gerry Fagan*
       Gerry Fagan

*Attorneys for Watch Tower Bible and Tract Society of Pennsylvania*

## **EXHIBIT INDEX**

Exhibit 1    7/21/22 Letter to Plaintiffs' counsel re: Deficient Discovery Responses

Exhibit 2    8/16/22 Letter from Plaintiffs' counsel re: Response to 7/21/22 Letter

Exhibit 3    9/30/22 Letter from Plaintiffs' counsel re: WTPA's 2nd Set of Combined Discovery

Exhibit 4    1/6/23 Letter to Plaintiffs' counsel re: Discovery

Exhibit 5    1/19/23 Letter from Plaintiffs' counsel  re: Discovery

Exhibit 6    Plaintiff Camillia Mapley's Answers & Responses to Defendant WTPA's 1st Discovery Requests

Exhibit 7    Plaintiff Camillia Mapley's Answers & Responses to Defendant WTPA's 2nd Discovery Requests

Exhibit 8    Plaintiff Camillia Mapley's Amended Answers & Responses to Defendant WTPA's 1st Discovery Requests

MOULTON BELLINGHAM PC
ATTORNEYS AT LAW

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(d)(2)(E), I certify that this brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double-spaced, with left, right, top, and bottom margins of one inch; and that the word count calculated by Microsoft Word is 5,756 words, excluding the Table of Contents, Table of Authorities, Certificate of Compliance, and Certificate of Service.

By */s/* Gerry Fagan
Gerry Fagan

MOULTON BELLINGHAM PC
ATTORNEYS AT LAW

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of April, 2023, a copy of the foregoing was served on the following persons:

1.  U.S. District Court, Billings Division

2.  Robert L. Stepans
    Ryan R. Shaffer
    James C. Murnion
    MEYER, SHAFFER & STEPANS, PLLP
    430 Ryman Street
    Missoula, MT 59802
    *Attorneys for Plaintiffs*

3.  Jon A. Wilson                    Joel M. Taylor, Esq. (*pro hac vice*)
    Brett C. Jensen                  MILLER MCNAMARA & TAYLOR LLP
    BROWN LAW FIRM, P.C.             100 South Bedford Road, Suite 340
    315 North 24th Street Mount Kisco, NY 10549
    P.O. Drawer 849
    Billings, MT 59103-0849
    *Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

4.  Bruce G. Mapley, Sr.
    3905 Caylan Cove
    Birmingham, AL 35215

By the following means:

| | | | |
|---|---|---|---|
| 1, 2, 3 | CM/ECF | _____ | Fax |
| _____ | Hand Delivery | _____ | E-Mail |
| _____ | U.S. Mail | _____ | Overnight Delivery Services |
| 4 | Certified Mail, Return Receipt Requested | | |

By    */s/ Gerry Fagan*
      Gerry Fagan

4881-0412-1419, v. 2