Robert L. Stepans
Ryan R. Shaffer
James C. Murnion
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT  59802
Tel: (406) 543-6929
Fax: (406) 721-1799
rob@mss-lawfirm.com
ryan@mss-lawfirm.com
james@mss-lawfirm.com

Matthew L. Merrill (appearing *pro hac vice*)
Merrill Law, LLC
6631 Mariposa Court
Denver, CO  80221
Tel: (303) 947-4453
matthew@merrillwaterlaw.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | Case No. CV-20-52-BLG-SPW |
| Plaintiffs, | |
| vs. | **PLAINTIFF CAMILLIA MAPLEY'S AMENDED FIRST SUPPLEMENTAL ANSWERS AND RESPONSES TO DEFENDANT WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA'S FIRST DISCOVERY REQUESTS TO PLAINTIFF CAMILLA MAPLEY** |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY, SR., | |
| Defendants, | |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., | |
| Cross Claimant, | |
| BRUCE MAPLEY, SR., | |
| Cross Defendant. | |

**EXHIBIT 8**

perceptions, and understanding of the nature and type of the information requested thereby.

## DISCOVERY REQUESTS

**INTERROGATORY NO. 3:**   Please state with particularity all facts that are relevant to your allegations of negligence against WTPA.

**ANSWER:**  Objection, overly broad and unduly burdensome. *See, e.g., Shqeirat v. U.S. Airways Group, Inc.,* CIV.07-1513 ADM/AJB, 2008 WL 4232018, at *4 (D. Minn. Sept. 9, 2008) ("a contention interrogatory will be considered overly broad and unduly burdensome 'if it seeks 'all facts' supporting a claim or defense, such that the answering party is required to provide a narrative account of its case.'").  Further, Interrogatories are to be directed to parties and are not intended to be inquiries into the legal theories and workings of attorneys. Plaintiff is not a lawyer and is not capable of, nor can be expected to, distinguish relevant from irrelevant facts regarding any legal analysis, including whether any facts are relevant or not relevant to legal theories put forth by her lawyer.

**SUPPLEMENTAL ANSWER:** Asking a party to litigation to identify "all facts" that are "relevant" to her legal claims is inherently fraught and unfair because parties to litigation hire and rely on their lawyers to: (1) be knowledgeable of the entirety of the facts in a case; (2) understand legal concepts like relevancy and negligence; and (3) make judgments about which facts support the legal claims

that were drafted by the lawyers.  Rather than seeking Plaintiff's testimony or recollection of discoverable facts and events that she has personal knowledge of, this interrogatory asks her to make a conclusion about what evidence may be relevant to her negligence claims.

Plaintiff does not have knowledge of all of the evidence in the case that would implicate WTPA, or a working understanding of legal concepts like *relevance*, *negligence*, *agency,* and *alter ego*, that would allow her to answer this Interrogatory in any sort of meaningful way that furthers a legitimate purpose in this case.  Plaintiff's counsel continues to believe that this is a question that is suited for and should be answered by Plaintiff's lawyers because they do have knowledge of the documents and facts in this case, they have been trained to understand the concepts of *relevance* and *negligence*, and it is their job to apply those facts to those legal concepts.

With that in mind, it is overly burdensome to demand that Plaintiff's counsel – or any attorney – identify with particularity every single fact that is relevant to the four elements of a negligence claim, as well as facts bearing on whether WTPA and WTNY were alter egos of each other during the period of time at issue.  At this stage of the litigation, with discovery ongoing and far from complete, Plaintiff's counsel can only refer WTPA to:

1. All documents referenced in ECF Doc. 96. *See* attached lists of documents identified as Tabs to ECF Doc. 96 and their associated Bates numbers.

2. Documents being withheld by Defendant WTNY under one or more assertions of privilege evidencing that WTNY or WTPA - either acting directly or through their agents in Hardin, MT - knew of the child sex abuse at issue in this case but failed to report it to law enforcement or take other action to prevent it. *See e.g.* Entries 1 – 26, 29, and 37 – 49 to WTNY's Supplemental Privilege Log.

3. The deposition transcripts of James Rowland and Shirley Gibson, including exhibits thereto.

4. The affidavits of James Rowland and Shirley Gibson.

If WTPA chooses to ask Plaintiff questions in discovery that seek her knowledge of the events at issue - i.e. who sexually abused her, where that abuse took place, when that abuse took place, who she told about the abuse, and her knowledge of how the Jehovah's Witness church handled reports of the sexual abuse – she has the personal knowledge to answer such questions.  It is this information that forms the basis of Plaintiff's claims.  Plaintiff hired lawyers who reviewed such information, and after an inquiry reasonable under the circumstances, came to the conclusion that a negligence claim against WTPA was appropriate.  Plaintiff did not, nor could she as a layperson, conduct the same type

of analysis as her lawyers and the assertion that Plaintiff is personally obligated to identify all evidence that is *relevant* to her *negligence* claim is inherently inappropriate, unfair, outside the scope of discovery, and constitutes harassment.

Notwithstanding the foregoing, and for the purpose of avoiding the unnecessary waste of time that WTPA's threatened motion to compel would entail, when presented with the precise question set forth in WTPA's interrogatory, Plaintiff responded as follows:

> *It is not my obligation to define the organization private meaning concerning WTPA. The private meaning of WTPA is not a common meaning in which all can share or comprehend with the very purpose it is now being used.*
>
> *The following are fact through the indoctrination as a child.*
>
> *The fact is that from the moment I was brought in the Jehovah Witnesses organization as a seven year old child, through no choice of my own, it was always instilled in me the following teachings that 1) Jehovah's witness are a representation of Jehovah, 2) Jehovah's witness are a representation of the organization, 3) Jehovah's witness do not behave in a manner that would bring reproach upon the organization or the name of the organization, 4) A congregation is a representative of Jehovah, and his true organization WTNY and WTPA, 5) the Elders are a representative of the*

*congregation, the congregation is a representative of the WTNY and WTPA,*

*WTNY and WTPA, the governing body speaks directly to god and is given*

*guidance and authority, and 6) the Elders took guidance from the Governing*

*body who represented Jehovah and its organization that being WTNY and*

*WTPA.*

**REQUEST FOR PRODUCTION NO. 2:**    Please produce a copy of each

and every document identified in or related to your answer to the Interrogatory

immediately above.

**RESPONSE:**  Plaintiff has already produced all responsive, non-privileged

documents in her possession.

**SUPPLEMENTAL RESPONSE:**  No document is identified in Plaintiff's

answer to the preceding interrogatory.  The scope of documents "related" to

Plaintiff's answer regarding all facts supporting her claim is inherently broad

because the question asked in the interrogatory is inherently broad, and therefore

appears to include every document that Plaintiff may use to prove her case at trial.

For an itemized list of these documents, please refer to Plaintiff's Rule 26

disclosures and all supplements thereto, which itemize the documents Plaintiff may

use to support her claims by Bates number.  *See also* documents referenced in the

preceding interrogatory answer.

The list of documents identified here is not represented to be exhaustive

Plaintiff Camillia Mapley's Amended First Supplemental Answers and Responses to Defendant Watch Tower Bible
and Tract Society of Pennsylvania's First Discovery Requests to Plaintiff Camillia Mapley
Page 7 of 32

because discovery is ongoing and Plaintiffs' counsel has not reviewed every line of every document produced in this case.

**INTERROGATORY NO. 5:**   Regarding the individuals who you have alleged sexually abused yourself or the other Plaintiffs, please state with particularity all facts that in any way show WTPA knew that any of those persons had sexually abused a minor prior to his/her sexual abuse of you.

**ANSWER:**  Objection, overly broad and unduly burdensome. *See, e.g., Shqeirat v. U.S. Airways Group, Inc.*, CIV.07-1513 ADM/AJB, 2008 WL 4232018, at *4 (D. Minn. Sept. 9, 2008) ("a contention interrogatory will be considered overly broad and unduly burdensome 'if it seeks 'all facts' supporting a claim or defense, such that the answering party is required to provide a narrative account of its case.'"). Further, Interrogatories are to be directed to parties and are not intended to be inquiries into the legal theories and workings of attorneys. Plaintiff is not a lawyer and is not capable of, nor can be expected to, distinguish relevant from irrelevant facts regarding any legal analysis, including whether any facts are relevant or not relevant to legal theories put forth by her lawyer. Objection, vague and calls for information that Plaintiff does not have personal knowledge of. *See* Ans. to Int. No. 4.  Furthermore, testimony from Shirley Gibson establishes that the abuse at issue continued after representatives of WTPA/WTNY were notified that Plaintiff had been sexually abused.

**SUPPLEMENTAL ANSWER:**  Asking a party to litigation to identify "all facts" supporting a component of her legal claims is inherently fraught and unfair because parties to litigation hire and rely on their lawyers to: (1) be knowledgeable of the entirety of the facts in a case; (2) understand legal concepts like notice; and (3) make judgments about which facts support the legal claims that were drafted by the lawyers.  Rather than seeking Plaintiff's testimony or recollection of discoverable facts and events that she has personal knowledge of, this interrogatory asks her to make a conclusion about what evidence may be relevant to her negligence claims.

Plaintiff does not have knowledge of all of the evidence in the case that would implicate WTPA, or a working understanding of legal concepts like *notice*, that would allow her to answer this Interrogatory in any sort of meaningful way that furthers a legitimate purpose in this case.  Plaintiff's counsel continues to believe that this is a question that is suited for and should be answered by Plaintiff's lawyers because they do have knowledge of the documents and facts in this case, they have been trained to understand the concepts of *relevance* and *negligence*, and it is their job to apply those facts to those legal concepts.  With this in mind, Plaintiff's counsel refers WTPA to the following documents:

1. Documents evidencing that WTPA's control over the Jehovah's Witness church during the time period in question.  *See* attached lists of documents

identified as Tabs to ECF Doc. 96 and their associated Bates numbers.

2. Documents evidencing that WTPA and WTNY were one in the same during the time period in question. *See* documents referenced in Tab 13 to ECF Doc. 96.

3. Documents evidencing that elders and ministerial servants at the Hardin Congregation were agents of WTNY / WTPA. MAP_HARDIN 000001 - 000099

4. Documents being withheld by Defendant WTNY under one or more assertions of privilege evidencing that WTNY or WTPA - either acting directly or through their agents in Hardin, MT - knew of the child sex abuse at issue in this case but failed to report it to law enforcement or take other action to prevent it. *See e.g.* Entries 1 – 26, 29, and 37 – 49 to WTNY's Supplemental Privilege Log.

5. The deposition transcripts of James Rowland and Shirley Gibson, including exhibits thereto.

6. The affidavits of James Rowland and Shirley Gibson.

7. Documents evidencing that WTPA/WTNY enforced policies that had the effect of encouraging the child sex abuse to continue by protecting the perpetrators, not believing the victims, and requiring all who knew about the child sex abuse to keep it quiet and confidential. *See e.g.* Documents

referenced in Tabs 6, 9, 16, 23, 24, 25, 26, 28, and 29 to ECF Doc. 96.

If WTPA chooses to ask Plaintiff questions in discovery that seek her knowledge of the events at issue - i.e. who sexually abused her, where that abuse took place, when that abuse took place, who she told about the abuse, and her knowledge of how the Jehovah's Witness church handled reports of the sexual abuse – she has the personal knowledge to answer such questions. It is this information that forms the basis of Plaintiff's claims. Plaintiff hired lawyers who reviewed such information, and after an inquiry reasonable under the circumstances, came to the conclusion that a negligence claim against WTPA was appropriate. Plaintiff did not, nor could she as a layperson, conduct the same type of analysis as her lawyers and the assertion that Plaintiff is personally obligated to identify all evidence that is *relevant* to her *negligence* claim is inherently inappropriate, unfair, outside the scope of discovery, and constitutes harassment.

Notwithstanding the foregoing, and for the purpose of avoiding the unnecessary waste of time that WTPA's threatened motion to compel would entail, when presented with the precise question set forth in WTPA's interrogatory, Plaintiff responded as follows:

> *What difference does it make if they abused 100 million children before me, the organization was made aware of multiple children being abused and did nothing but hush it.*

**RESPONSE:** Plaintiff has already produced all responsive, non-privileged documents in her possession. There are approximately 72,000 documents bates stamped by the parties in this case and Plaintiff's counsel has not sorted through each one of these documents to determine if it is responsive to this RFP. Some documents responsive to this Request were referred to in pages 5-12 of Plaintiffs' Response to WTPA's Motion to Dismiss (ECF Doc. 96) and were attached in the appendix to such pleading. WTPA is in possession or control of other documents published by various Jehovah's Witness entities that are responsive to this Request. *See also* Deposition Transcript of James Rowland. Deposition Transcript of Shirley Gibson (Mapley). Rowland Affidavit (ECF Doc. 1-2). Gibson Affidavit (ECF Doc. 1-1).

**SUPPLEMENTAL RESPONSE:** *See* Supp. Resp. to RFP No. 3 and the documents referenced therein.

**INTERROGATORY NO. 6:** Regarding your allegations in paragraph 44 of the First Amended Complaint, please state with particularity all facts that in any way establish that Mr. Svensen, Mr. Mapley Sr., and Mr. Haines were agents of WTPA.

**ANSWER:** Objection, overly broad and unduly burdensome. *See, e.g., Shqeirat v. U.S. Airways Group, Inc.,* CIV.07-1513 ADM/AJB, 2008 WL 4232018, at *4 (D. Minn. Sept. 9, 2008) ("a contention interrogatory will be

considered overly broad and unduly burdensome 'if it seeks 'all facts' supporting a claim or defense, such that the answering party is required to provide a narrative account of its case.'").  Further, Interrogatories are to be directed to parties and are not intended to be inquiries into the legal theories and workings of attorneys. Plaintiff is not a lawyer and is not capable of, nor can be expected to, distinguish relevant from irrelevant facts regarding any legal analysis, including whether any facts establish agency, as the term is defined and understood under applicable law.

**SUPPLEMENTAL ANSWER:**  Plaintiff's counsel, not Plaintiff formulated the allegation in question.  After an inquiry reasonable under the circumstances, Plaintiff's counsel made the allegation in question because evidence supports a conclusion that WTNY and WTPA were alter egos of each other during the time period in question and therefore a representative of one could be determined to be a representative of both under applicable legal doctrine.  At the time of filing, and based on an inquiry reasonable under the circumstances, Plaintiff's counsel also determined that the people referenced held positions at the Hardin Congregation which would qualify them as representatives of either WTNY or WTPA, or both.  For instance, Hain and Svenson were appointed as ministerial servants and elders, and Mapley was appointed as a ministerial servant.

Asking a party to litigation to identify "all facts" that pertain to whether a particular person is an agent or representative of a corporate entity is inherently

fraught and unfair because parties to litigation hire and rely on their lawyers to: (1) be knowledgeable of the entirety of the facts in a case; (2) understand legal concepts like agency; and (3) make judgments about which facts support the legal claims that were drafted by the lawyers. Rather than seeking Plaintiff's testimony or recollection of discoverable facts and events that she has personal knowledge of, this interrogatory asks her to make a conclusion about what evidence may be relevant to her negligence claims.

Plaintiff does not have knowledge of all of the evidence in the case that would implicate WTPA, or a working understanding of legal concepts like *agency,* and *alter ego,* that would allow her to answer this Interrogatory in any sort of meaningful way that furthers a legitimate purpose in this case. Plaintiff's counsel continues to believe that this is a question that is suited for and should be answered by Plaintiff's lawyers because they do have knowledge of the documents and facts in this case, they have been trained to understand the concepts of *relevance* and *negligence,* and it is their job to apply those facts to those legal concepts. With this in mind, Plaintiff's counsel refers WTPA to the following documents:

1. Documents evidencing that WTPA's control over the Jehovah's Witness church during the time period in question. *See* attached lists of documents identified as Tabs to ECF Doc. 96 and their associated Bates numbers.

2. Documents evidencing that WTPA and WTNY were one in the same during

the time period in question. *See* documents referenced in Tab 13 to ECF Doc. 96.

3. Documents evidencing that elders and ministerial servants at the Hardin Congregation were agents of WTNY / WTPA.  MAP_HARDIN 000001 - 000099

4. Documents being withheld by Defendant WTNY under one or more assertions of privilege evidencing that WTNY or WTPA - either acting directly or through their agents in Hardin, MT - knew of the child sex abuse at issue in this case but failed to report it to law enforcement or take other action to prevent it.   *See e.g.* Entries 1 – 26, 29, and 37 – 49 to WTNY's Supplemental Privilege Log.

5. Documents establishing that WTNY's legal department provides legal advice to elders of congregations, including the Hardin Congregation. *See e.g.* Entries 1-26 of WTNY's Supplemental Privilege Log.

6. The deposition transcripts of James Rowland and Shirley Gibson, including exhibits thereto.

7. The affidavits of James Rowland and Shirley Gibson.

If WTPA chooses to ask Plaintiff questions in discovery that seek her knowledge of the events at issue - i.e. who sexually abused her, where that abuse took place, when that abuse took place, who she told about the abuse, and her

knowledge of how the Jehovah's Witness church handled reports of the sexual abuse – she has the personal knowledge to answer such questions. It is this information that forms the basis of Plaintiff's claims. Plaintiff hired lawyers who reviewed such information, and after an inquiry reasonable under the circumstances, came to the conclusion that a negligence claim against WTPA was appropriate. Plaintiff did not, nor could she as a layperson, conduct the same type of analysis as her lawyers and the assertion that Plaintiff is personally obligated to identify all evidence that establishes *agency* of certain individuals - which is a legal concept - is inherently inappropriate, unfair, outside the scope of discovery, and constitutes harassment.

Notwithstanding the foregoing, and for the purpose of avoiding the unnecessary waste of time that WTPA's threatened motion to compel would entail, when presented with the precise question set forth in WTPA's interrogatory, Plaintiff responded as follows:

> *Qui facit per alium facit per se.*
>
> *Matthew 7:16-27*
>
> *Are you now claiming and denying these three men never represented WTPA?*
>
> *Are you now denying that Svensen was not an agent WTPA as an Elder?*
>
> *Are you now denying Haine was not an agent for WTPA as a ministerial*

*servant?*

*Are you now denying Mapley Sr, Haine and Svensen was not representing WTPA by taking me door to door preaching to the whole of Big Horn County to witness?*

*Are you now denying my experience of sitting through hours of meeting listening to them tell us how all Jehovah witnesses represent the organization?*

*Do you now deny that your agents and publication did not instruct the above how to represent WTPA?*

*Could it be that WT{A actually is the principle that instructs the agentx?*

*If Wiki is printing misinformation of facts about WTPA to the public, is it not your duty as a reprentave of Jehovah to correct this?*

*If the below is false information, why are JW.ORG hyperlinked?*

*https://en.wikipedia.org/wiki/Watch_Tower_Bible_and_Tract_Society_of_Pennsylvania*

*The Watch Tower Bible and Tract Society of Pennsylvania is a nonstock, not-for-profit organization[4] headquartered in Warwick, New York. It is the main legal entity used worldwide by Jehovah's Witnesses to direct, administer and disseminate doctrines for the group and is often referred to by members of the denomination simply as "the Society". It is the parent*

organization of a number of Watch Tower subsidiaries, including the
Watchtower Society of New York and International Bible Students
Association.[5][6] The number of voting shareholders of the corporation is
limited to between 300 and 500 "mature, active and faithful" male Jehovah's
Witnesses.[7] About 5800 Jehovah's Witnesses provide voluntary unpaid
labour, as members of a religious order, in three large Watch Tower Society
facilities in New York;[8] nearly 15,000 other members of the order work at
the Watch Tower Society's other facilities worldwide.

The organization was formed in 1881 as Zion's Watch Tower Tract Society
for the purpose of distributing religious tracts.  The society was
incorporated in Pittsburgh, Pennsylvania on December 15, 1884. In 1896,
the society was renamed Watch Tower Bible and Tract Society. Following a
leadership dispute in the Bible Student movement, the Watch Tower Society
remained associated with the branch of the movement that became known as
Jehovah's Witnesses. In 1955, the corporation was renamed Watch Tower
Bible and Tract Society of Pennsylvania.   In 1976, all activities of the
Watch Tower Society were brought under the supervision of the Governing
Body of Jehovah's Witnesses.

https://en.wikipedia.org/wiki/Organizational_structure_of_Jehovah%27s_W
itnesses

Plaintiff Camillia Mapley's Amended First Supplemental Answers and Responses to Defendant Watch Tower Bible
and Tract Society of Pennsylvania's First Discovery Requests to Plaintiff Camillia Mapley
Page 19 of 32

*Jehovah's Witnesses are organized hierarchically, and are led by the Governing Body of Jehovah's Witnesses from the Watch Tower Society's headquarters in Warwick, New York. The Governing Body, along with other "helpers", are organized into six committees responsible for various administrative functions within the global Witness community, including publication, assembly programs and evangelizing activity. The Governing Body and its committees supervise operations of nearly one hundred branch offices worldwide. Each branch office oversees the activities of Jehovah's Witnesses in a particular country or region, and may include facilities for the publication and distribution of Watch Tower Society literature. Directly appointed by the Governing Body, branch committees supervise administrative functions for congregations in their jurisdiction. Congregations are further organized into circuits of about twenty congregations each. The Governing Body directly appoints circuit overseers as its representatives to supervise activities within circuits. Headquarters representatives visit groups of branch offices to provide instruction and report the branch's activities to the Governing Body. Each congregation is served by a group of locally recommended male elders and ministerial servants, appointed by the circuit overseer. Elders take responsibility for congregational governance, pastoral work, setting meeting times, selecting*

*speakers, conducting meetings, directing the public preaching work, and forming judicial committees to investigate and decide disciplinary action in cases where members are believed to have committed serious sins. Ministerial servants fulfil clerical and attendant duties, but may also teach and conduct meetings.*

**Children**

*When accompanied by adults, children of baptized Witnesses may participate in organized preaching without formally qualifying. However, only those recognized as publishers are counted in the denomination's official membership statistics.  Children of Witness parents may be asked to participate in demonstrations at congregation meetings and assemblies, or as models and actors in materials published by the Watch Tower Society. epresent. v. 1) to act as the agent for another. 2) to act as a client's attorney. Please define and classify "agent" so I can gain a clearer understanding of your question. According to blacks law there are many different definitions.*

**REQUEST FOR PRODUCTION NO. 5:**   Please produce a copy of each and every document identified in or related to your answer to the Interrogatory immediately above.

**RESPONSE:**  Plaintiff has already produced all responsive, non-privileged documents in her possession.

**SUPPLEMENTAL RESPONSE:** No document is identified in Plaintiff's answer to the preceding interrogatory. The scope of documents "related" to Plaintiff's answer is inherently vague and subject to interpretation, but when interpreted broadly to mean documents which evidence a conclusion that the people listed were agents or representatives of WTNY/WTPA, Plaintiff's counsel refers WTPA to the documents identified in the supplemental answer to the preceding interrogatory.

The list of documents identified here is not represented to be exhaustive because discovery is ongoing and Plaintiffs' counsel has not reviewed every line of every document produced in this case.

**INTERROGATORY NO. 7:** Regarding your allegations of sexual abuse, please state with particularity what actions you contend that WTPA should have taken, when it should have taken those actions, and why those actions should have been taken by WTPA.

**ANSWER:** Objection, overly broad and unduly burdensome. *See, e.g., Shqeirat v. U.S. Airways Group, Inc.*, CIV.07-1513 ADM/AJB, 2008 WL 4232018, at *4 (D. Minn. Sept. 9, 2008) ("a contention interrogatory will be considered overly broad and unduly burdensome 'if it seeks 'all facts' supporting a claim or defense, such that the answering party is required to provide a narrative account of its case.'"). Further, Interrogatories are to be directed to parties and are

not intended to be inquiries into the legal theories and workings of attorneys. Plaintiff is not a lawyer and is not capable of, nor can be expected to, distinguish relevant from irrelevant facts regarding any legal analysis, including the legal obligations of WTNY/WTPA regarding its knowledge of abuse occurring in Hardin, MT.

Without waiving the preceding objection, Plaintiff's lawyers can state that WTPA, through its agents or otherwise, should have alerted secular authorities to the known and admitted fact Bruce Mapley Sr. and Gunnar Hain sexually abused Plaintiffs immediately upon learning of the same because WTPA was required by the mandatory statute existing at the time to do so, and because a reasonable organization in WTPA's situation would have done the same.

**SUPPLEMENTAL ANSWER:**  When presented with the precise question set forth in WTPA's interrogatory, Plaintiff responded as follows:

> *I require accreditation that deems WTPA able to act with authority on the mental, emotion, psychological, physical, sexual, and spiritual abuse of any victim that report it.*
>
> *WTPA is a represent WTNY, governing body, congregations, elders, ministerial servants and members does it not?*
>
> *Above all please provide facts that prove WTPA, WTNY and governing body have the accreditation to advise their representatives elders on the welfare,*

*mental, physical psychological out come to any member of the*

*congregation? What mental healthcare accreditation does WTPA possess to*

*advise others?*

*Without making WTPA sound like a cult, describe how you deem authority*

*over others?*

**REQUEST FOR PRODUCTION NO. 8:**   Please produce all social

networking postings and communications, (including but not limited to Facebook,

Snapchat, Instagram, Myspace, LinkedIn, YouTube, Twitter, Google Plus, Tumblr,

WhatsApp, etc....) by you from the period 2003 to the present, including

photographs, written posts, social media contacts (e.g., "Friends"), and indications

of interest in people, places, things, or issues.

**RESPONSE:**  Objection, overbroad, undue burden, and a party seeking

entire social media accounts must first make a threshold showing that private

social media data will lead to relevant information.  *See e.g. Keller v. Natl.*

*Farmers Union Prop. & Cas. Co.,* CV 12-72-M-DLC-JCL, 2013 WL 27731 at *4

(D. Mont. Jan. 2, 2013).  WTPA has not made the required threshold showing.

**SUPPLEMENTAL RESPONSE:**  Pursuant to parties August 4, 2022

phone call and in light of the ruling in *Keller v. Natl. Farmers Union Prop. & Cas.*

*Co.,* Plaintiff is providing the following list of her former and current social

network accounts.

Plaintiff Camillia Mapley's Amended First Supplemental Answers and Responses to Defendant Watch Tower Bible
and Tract Society of Pennsylvania's First Discovery Requests to Plaintiff Camillia Mapley
Page 24 of 32

## <u>CERTIFICATE OF OBJECTIONS</u>

I, Ryan R. Shaffer, hereby certify that I made each of the foregoing objections.

Ryan R. Shaffer
*Attorney for Plaintiff*

Plaintiff Camillia Mapley's Amended First Supplemental Answers and Responses to Defendant Watch Tower Bible
and Tract Society of Pennsylvania's First Discovery Requests to Plaintiff Camillia Mapley
Page 31 of 32

## CERTIFICATE OF SERVICE

I hereby certify that on this $\underline{6^{th}}$ day of January, 2023, a true and accurate

copy of the foregoing was served on the following via email and U.S. Mail:

Jon A. Wilson
Brett C. Jensen
BROWN LAW FIRM, P.C.
315 North 24th Street
PO Drawer 849
Billings, MT  59103
jwilson@brownfirm.com
bjensen@brownfirm.com

Joel M. Taylor, Esq. *pro hac vice*
Miller McNamara & Taylor LLP
100 South Bedford Road, Suite 340
Mount Kisco, NY  10549
jtaylor@mmt-law.com
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

Gerry P. Fagan
Christopher T. Sweeney
Jordan W. FitzGerald
27 North 27th Street, Suite 1900
P.O. Box 2559
Billings, MT  59103
gerry.fagan@moultonbellingham.com
christopher.sweeney@moultonbellingham.com
jordan.fitzgerald@moultonbellingham.com
*Attorneys for Defendant Watch Tower Bible and Tract Society of Pennsylvania*

Bruce G. Mapley, Sr.
3905 Caylan Cove
Birmingham, AL 35215
bruce_mapley@yahoo.com

Jessica Yuhas, Paralegal

Plaintiff Camillia Mapley's Amended First Supplemental Answers and Responses to Defendant Watch Tower Bible
and Tract Society of Pennsylvania's First Discovery Requests to Plaintiff Camillia Mapley
Page 32 of 32

# Exhibit Index

| Document Description[1] | Tab No. |
|---|---|
| *Branch Organization Manual* 1-4, ¶ 34 (1977). | 1 |
| Amendment to the Articles of Incorporation of WTPA at 1481 (1945). | 2 |
| *1980 Yearbook of Jehovah's Witnesses* 257 (1980). | 3 |
| *1970 Yearbook of Jehovah's Witnesses* 38 (1970). | 4 |
| *Organized to Accomplish our Ministry* 26 (1983). | 5 |
| *Organized to Accomplish Our Ministry* (1989). | 6 |
| *In re Holocaust Litigation*, Proposed Plan of Allocation for Jehovah's Witness Victims and Targets of Nazi Persecution, CV-96-4849 (E.D.N.Y. Dec. 7, 1999). | 7 |
| Def. WTPA's 3d Supp. Resps. to Plfs.' 1st Set of Jurisdictional Disco., RFA Nos. 4, 6, 7 (Sept. 21, 2021); *Counsel on Theocratic Organization for Jehovah's Witnesses* 56 (1949); *Preaching and Teaching in Peace and Unity* 50 (1960); *Branch Organization Manual* 22-1, ¶ 5 (1977); *Branch Organization Manual* 22-6 (1986); Def. WTPA's 4th Supp. Resps. to Plfs.' 3d Set of Jurisdictional Disco., Interrog. No. 36 (Sept. 21, 2021). | 8 |
| *Kingdom Ministry School Course* (1972). | 9 |
| *Branch Organization Manual* 4-1, ¶ 1 (1977). | 10 |
| Dep. of Ashe Richard, 232:5–233:4, 320:8–322:14 (April 1, 2014); Def. WTPA's 4th Supp. Resps. to Plfs.' 3d Set of Jurisdictional Disco., RFA Nos 27–29 (Sept. 21, 2021); *Branch Organization Manual* 4-1, ¶ 2 (1977). | 11 |
| *Counsel on Theocratic Organization for Jehovah's Witnesses* 19–22 (1949); *Preaching and Teaching in Peace and Unity* 27 (1960); *Organized to Accomplish our Ministry* 41 (1983). | 12 |
| 1973-1992 Summary and Comparison of WTPA and WTNY Corporate Officers and Governing Body Members (as identified in Def. WTPA's 2d Supp. Resps. to Plfs.' 2d Set of Jurisdictional Disco., Interrog. Nos. 20–21, 23 (Sept. 21, 2021); Def. WTNY's 3d Supp. Resps. to Plfs.' 1st Set of Jurisdictional Disco., Interrog. Nos. 2–4 (Sept. 21, 2021)). | 13 |

[1] To assist the reader quickly identify relevant portions of certain pages included in these documents, highlights have been added by counsel in various places.

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*

iv

| | |
|---|---|
| *Preaching and Teaching in Peace and Unity* 28 (1960). | 14 |
| *Organized to Accomplish our Ministry* 138–153 (1983); *see generally* Depo. of Ashe Richard, 190:25–192:18 (March 31, 2014) | 15 |
| *Pay Attention to Yourselves and to All the Flock* (1991). | 16 |
| Def. WTPA's 2d Supp. Resps. to Plfs.' 1st Set of Jurisdictional Disco., Interrog. No. 19 (March 22, 2021). | 17 |
| *1970 Yearbook of Jehovah's Witnesses* 37–41 (1970). | 18 |
| *Branch Organization Manual* 23-1, ¶¶ 1–5 (1977). | 19 |
| *Keeping a Clean Organization of Talkers*, Vol. LXXV The Watchtower 13, at 17 (1954); *Organized to Accomplish our Ministry* 42–43, 47–52 (1983); *Preaching and Teaching in Peace and Unity* 50 (1960). | 20 |
| *1975 Yearbook of Jehovah's Witnesses* 204 (1974). | 21 |
| *Circuit Overseer Guidelines* (2018). | 22 |
| *Questions from Readers*, Vol. XCII The Watchtower 195, at 222–224 (1971). | 23 |
| Dep. of Ashe Richard, 276:10–280:21 (April 1, 2014); Letter from WTNY, to All Bodies of Elders in the United States, 3 (July 1, 1989); Letter from WTNY, to All Bodies of Elders, 2–3 (March 14, 1997). | 24 |
| *Comfort for Those with a "Stricken Spirit"*, The Watchtower, Nov. 1, 1995, at 25, 28. | 25 |
| *Pay Attention to Yourselves and to All the Flock* 69 (1977) | 26 |
| *Pay Attention to Yourselves and to All the Flock* 65 (1977); Dep. of Ashe Richard, 276:10–280:21 (April 1, 2014). | 27 |
| Letter from WTNY, to All Bodies of Elders in the United States (July 1, 1989). | 28 |
| Dep. of Ashe Richard at 279:11–19 (April 1, 2014) | 29 |
| *"A Time to Speak"—When?*, The Watchtower, Sept. 1, 1987, at 12. | 30 |
| Dep. of James Rowland, 65:25–72:21, 168:1–170:2 (April 23, 2021). | 31 |
| *Organization for Kingdom-Preaching and Disciple-Making* (1972). | 31A |
| Letter from Hardin Congregation Elders (Feb. 24, 1996). | 32 |
| Letter from Roberta LaChusa (Feb. 12, 1997). | 33 |
| Letter from Norman Kaufman, to Hardin Congregation (Dec. 28, 2010). | 34 |
| Dep. of James Rowland at 78:10–80:19 (April 23, 2021). | 35 |
| Dep. of James Rowland, 132:5–18, 133:20–134:14 (April 23, 2021). | 36 |

Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss
Pursuant to Rule 12(b)(2), Fed.R.Civ.P
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
v

| | |
|---|---|
| Dep. of James Rowland, 130:15–131:1–10 (April 23, 2021). | 37 |
| Aff. of Shirley Gibson, March 26, 2020; Letter from Hardin Congregation to Governing Body of Jehovah's Witnesses (Dec. 22, 1984). | 38 |
| Def. WTNY's 2d Supp. Resps. to Plfs.' 2d Set of Jurisdictional Disco., Interrog. No. 16 (Sept. 21, 2021). | 39 |
| Def. WTPA's 1st Supp. Resps. to Plfs.' 1st Set of Jurisdictional Disco., RFP Nos. 8, 48 (Dec. 15, 2020); Def. WTPA's 4th Supp. Resps. to Plfs.' 3d Set of Jurisdictional Disco., Interrog. No. 35 (Sept. 21, 2021). | 40 |

**Plaintiffs' Response Brief in Opposition to Defendant's Motion to Dismiss**
**Pursuant to Rule 12(b)(2), Fed.R.Civ.P**
*Tracy Caekaert, et al. v. Watchtower Bible and Tract Society of New York, Inc., et al.*
vi

| Document Description |
|---|
| *Branch Organization Manual* 1-4, ¶ 34 (1977). CAEKAERT/MAPLEY 001819 & 001826 |
| Amendment to the Articles of Incorporation of WTPA at 1481 (1945). CAEKAERT/MAPLEY 003101-003123 |
| *1980 Yearbook of Jehovah's Witnesses* 257 (1980). WTPA058773 & 059029 |
| *1970 Yearbook of Jehovah's Witnesses* 38 (1970). CAEKAERT/MAPLEY 003211 & 003233 |
| *Organized to Accomplish our Ministry* 26 (1983). WTPA028731-028732 & 028756 |
| *Organized to Accomplish Our Ministry* (1989). WTPA033861-034084 |
| *In re Holocaust Litigation,* Proposed Plan of Allocation for Jehovah's Witness Victims and Targets of Nazi Persecution, CV-96-4849 (E.D.N.Y. Dec. 7, 1999). CAEKAERT/MAPLEY 000344-000348 |
| Def. WTPA's 3d Supp. Resps. to Plfs.' 1st Set of Jurisdictional Disco.; RFA Nos. 4, 6, 7 (Sept. 21, 2021); *Counsel on Theocratic Organization for Jehovah's Witnesses* 56 (1949); WTPA066317 & 066372 *Preaching and Teaching in Peace and Unity* 50 (1960); WTPA066250 & 066299 *Branch Organization Manual* 22-1, ¶ 5 (1977); CAEKAERT/MAPLEY 001819 & 002025 *Branch Organization Manual* 22-6 (1986); CAEKAERT/MAPLEY 030311 & 030516 Def. WTPA's 4th Supp. Resps. to Plfs.' 3d Set of Jurisdictional Disco., Interrog. No. 36 (Sept. 21, 2021). |
| *Kingdom Ministry School Course* (1972). CAEKAERT/MAPLEY 000486-000622 |
| *Branch Organization Manual* 4-1, ¶ 1 (1977). CAEKAERT/MAPLEY 001819 & 001861 |
| Dep. of Ashe Richard, 232:5–233:4, 320:8–322:14 (April 1, 2014); CAEKAERT/MAPLEY 003865, 003881-003882, & 003969-003971 Def. WTPA's 4th Supp. Resps. to Plfs.' 3d Set of Jurisdictional Disco., RFA Nos 27–29 (Sept. 21, 2021); *Branch Organization Manual* 4-1, ¶ 2 (1977). CAEKAERT/MAPLEY 001819 & 001861 |
| *Counsel on Theocratic Organization for Jehovah's Witnesses* 19–22 (1949); |

| |
|---|
| WTPA066317 & 066335-066338<br>*Preaching and Teaching in Peace and Unity* 27 (1960);<br>WTPA066250 & 066276<br>*Organized to Accomplish our Ministry* 41 (1983);<br>WTPA028731-028732 & 028771 |
| 1973-1992 Summary and Comparison of WTPA and WTNY Corporate Officers and Governing Body Members (as identified in Def. WTPA's 2d Supp. Resps. to Plfs.' 2d Set of Jurisdictional Disco.,<br>CAEKAERT/MAPLEY 004018-004019<br>Interrog. Nos. 20–21, 23 (Sept. 21, 2021); Def. WTNY's 3d Supp. Resps. to Plfs.' 1st Set of Jurisdictional Disco., Interrog. Nos. 2–4 (Sept. 21, 2021)). |
| *Preaching and Teaching in Peace and Unity* 28 (1960).<br>WTPA066250 & 066277 |
| *Organized to Accomplish our Ministry* 138–153 (1983);<br>WTPA028731-028732 & 028868-028883<br>*see generally* Depo. of Ashe Richard, 190:25–192:18 (March 31, 2014)<br>CAEKAERT/MAPLEY 003642 & 003831-003833 |
| *Pay Attention to Yourselves and to All the Flock* (1991).<br>CAEKAERT/MAPLEY 001501-001654 |
| Def. WTPA's 2d Supp. Resps. to Plfs.' 1st Set of Jurisdictional Disco., Interrog. No. 19 (March 22, 2021). |
| *1970 Yearbook of Jehovah's Witnesses* 37–41 (1970).<br>CAEKAERT/MAPLEY 003210-003214 & 003233 |
| *Branch Organization Manual* 23-1, ¶¶ 1–5 (1977).<br>CAEKAERT/MAPLEY 001819 & 002035 |
| *Keeping a Clean Organization of Talkers*, Vol. LXXV The Watchtower 13, at 17 (1954);<br>WTPA063214-063215, 063226 & 063230<br>*Organized to Accomplish our Ministry* 42–43, 47–52 (1983);<br>WTPA028731-028732, 028772-028773, & 028777-028782<br>*Preaching and Teaching in Peace and Unity* 50 (1960).<br>WTPA066250 & 066299 |
| *1975 Yearbook of Jehovah's Witnesses* 204 (1974).<br>WTPA056815, 057018, & 057073 |
| *Circuit Overseer Guidelines* (2018).<br>CAEKAERT/MAPLEY 001240-001369 |
| *Questions from Readers*, Vol. XCII The Watchtower 195, at 222–224 (1971).<br>CAEKAERT/MAPLEY 000356-000357 & 000385-000387 |
| Dep. of Ashe Richard, 276:10–280:21 (April 1, 2014); |

| |
|---|
| CAEKAERT/MAPLEY 0003865 & 003925-003929<br>Letter from WTNY, to All Bodies of Elders in the United States, 3 (July 1, 1989);<br>CAEKAERT/MAPLEY 002782-002787<br>Letter from WTNY, to All Bodies of Elders, 2–3 (March 14, 1997).<br>CAEKAERT/MAPLEY 002791-002793 |
| *Comfort for Those with a "Stricken Spirit"*, The Watchtower, Nov. 1, 1995, at 25, 28.<br>CAEKAERT/MAPLEY 000388-000389, 000412 & 000415 |
| *Pay Attention to Yourselves and to All the Flock* 69 (1977)<br>CAEKAERT/MAPLEY 000626-000627 & 000693-000694 |
| *Pay Attention to Yourselves and to All the Flock* 65 (1977);<br>CAEKAERT/MAPLEY 000626-000627 & 000690<br>Dep. of Ashe Richard, 276:10–280:21 (April 1, 2014).<br>CAEKAERT/MAPLEY 003865-004017 |
| Letter from WTNY, to All Bodies of Elders in the United States (July 1, 1989).<br>CAEKAERT/MAPLEY 002782-002787 |
| Dep. of Ashe Richard at 279:11–19 (April 1, 2014)<br>CAEKAERT/MAPLEY 003865 & 003928 |
| *"A Time to Speak"—When?*, The Watchtower, Sept. 1, 1987, at 12.<br>WTPA051915-051916 & 051926-051929 |
| Dep. of James Rowland, 65:25–72:21, 168:1–170:2 (April 23, 2021). |
| *Organization for Kingdom-Preaching and Disciple-Making* (1972).<br>CAEKAERT/MAPLEY 002835-003026 |
| Letter from Hardin Congregation Elders (Feb. 24, 1996).<br>Hardin Congregation Subpoena Exhibit 1 Produced in the Rowland/Schulze Case (ROW_HARDIN000104) |
| Letter from Roberta LaChusa (Feb. 12, 1997).<br>Hardin Congregation Subpoena Exhibit 4 Produced in the Rowland/Schulze Case |
| Letter from Norman Kaufman, to Hardin Congregation (Dec. 28, 2010).<br>Hardin Congregation Subpoena Exhibit 7 Produced in the Rowland/Schulze Case |
| Dep. of James Rowland at 78:10–80:19 (April 23, 2021). |
| Dep. of James Rowland, 132:5–18, 133:20–134:14 (April 23, 2021). |
| Dep. of James Rowland, 130:15–131:1–10 (April 23, 2021). |
| Aff. of Shirley Gibson, March 26, 2020;<br>Letter from Hardin Congregation to Governing Body of Jehovah's Witnesses (Dec. 22, 1984).<br>MAP_HARDIN000090 |

| |
|---|
| Def. WTNY's 2d Supp. Resps. to Plfs.' 2d Set of Jurisdictional Disco., Interrog. No. 16 (Sept. 21, 2021). |
| Def. WTPA's 1st Supp. Resps. to Plfs.' 1st Set of Jurisdictional Disco., RFP Nos. 8, 48 (Dec. 15, 2020); Def. WTPA's 4th Supp. Resps. to Plfs.' 3d Set of Jurisdictional Disco., Interrog. No. 35 (Sept. 21, 2021). |