Robert L. Stepans
Ryan R. Shaffer
James C. Murnion
Victoria K.M. Gannon
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT  59802
Tel: (406) 543-6929
Fax: (406) 721-1799
rob@mss-lawfirm.com
ryan@mss-lawfirm.com
james@mss-lawfirm.com
katy@mss-lawfirm.com
*Attorneys for Plaintiffs*

Matthew L. Merrill (appearing *pro hac vice*)
Merrill Law, LLC
6631 Mariposa Court
Denver, CO  80221
Tel: (303) 947-4453
matthew@merrillwaterlaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | | |
|---|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | ) | Case No. CV-20-52-BLG-SPW |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANT WTPA'S MOTION TO COMPEL RESPONSES BY CAMILLIA MAPLEY (DOC. 223)** |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA., | ) ) ) ) | |
| Defendants, | ) ) | |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., AND WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, | ) ) ) ) | |
| Cross Claimants | ) ) | |
| BRUCE MAPLEY, SR., | ) ) | |
| Cross Defendant. | ) | |

Plaintiff Camillia Mapley responds in opposition to Defendant Watch Tower Bible and Tract Society of Pennsylvania's ("WTPA") Motion to Compel Responses by Camillia Mapley ("Motion").  (Doc. 223).

## SUMMARY OF OPPOSITION

When the Defendants propound legitimate discovery requests that the Plaintiffs are capable of answering, the Plaintiffs answer them.  However, the discovery requests at issue in WTPA's Motion are all objectionable, including contention interrogatories that should either never require an answer, or only be answered after discovery is complete.  Nevertheless, Plaintiff provided WTPA responsive, compliant answers.

WTPA's central complaint is that it wanted Ms. Mapley to personally answer its contention interrogatories, which seek identification of all relevant facts to various legal claims and positions.  As Plaintiff's counsel stated repeatedly, Ms. Mapley hired her lawyers to identify relevant facts and apply them to the law.  She does not have knowledge of all relevant facts discovered by her lawyers, and even if she did, she is not trained or capable of determining which of those facts are relevant to the various legal issues in this case.  As a result, her personal opinion about what facts are relevant to the legal claims drafted by her lawyers will surely be incomplete and unhelpful to advancing any legitimate purpose of discovery.

A careful review of WTPA's discovery requests, as well as Plaintiff's exhaustive efforts to answer them to WTPA's satisfaction, reveals that WTPA is not interested in ascertaining facts or narrowing the basic issues between the parties before trial.  Instead, WTPA is intent on harassing Plaintiff without any reasonable justification.  Plaintiff therefore respectfully requests that the Court enter an Order denying WTPA's Motion, protecting Plaintiff from further harassment, and awarding her fees and costs expended responding to the Motion.

## APPLICABLE LAW

The scope of discovery is:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b).  "Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." *Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D. 652, 655 (C.D. Cal. 2005) (citing *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal.1998)).

On a motion to compel, the moving party has the initial burden of establishing that the information sought is within the scope of permissible discovery. *Colaco v. ASIC Advantage Simplified Pension Plan*, 301 F.R.D. 431, 434 (N.D. Cal. 2014). "An opposing party can meet its burden by demonstrating that the information is being sought to delay bringing the case to trial, to embarrass or harass, is irrelevant or privileged, or that the person seeking discovery fails to show need for the information." *Id*.

## ARGUMENT

### I.   **WTPA'S Objectionable *Contention Interrogatories***

WTPA's Interrogatories 3, 5, 6, and 7 are contention interrogatories that ask Plaintiff to provide a laundry list of every fact that could be "relevant" to nearly every legal issue in her case, or to state her contention on a legal question:

**INTERROGATORY NO. 3**: Please state with particularity all facts that are relevant to your allegations of negligence against WTPA.

**INTERROGATORY NO. 5**: Regarding the individuals who you have alleged sexually abused yourself or the other Plaintiffs, please state with particularity all facts that in any way show WTPA knew that any of those persons had sexually abused a minor prior to his/her sexual abuse of you.

**INTERROGATORY NO. 6**: Regarding your allegations in paragraph 44 of the First Amended Complaint, please state with particularity all facts that in any way establish that Mr. Svensen, Mr. Mapley Sr., and Mr. Haines were agents of WTPA.

**INTERROGATORY NO. 7**: Regarding your allegations of sexual abuse, please state with particularity what actions you contend that

WTPA should have taken, when it should have taken those actions, and why those actions should have been taken by WTPA.

(Doc. 224-8 at 2, 7, 11, 20).

Contention interrogatories demanding that a party set forth every fact that may be relevant to a legal claim are plainly objectionable. *Aldapa v. Fowler Packing Company Inc.*, 310 F.R.D. 583, 591 (E.D. Cal. Oct. 29, 2015) ("[c]ontention interrogatories which 'systematically track all of the allegations in an opposing party's pleadings, and that ask for "each and every fact" and application of law to fact that supports the party's allegations are an abuse of the discovery process because they are overly broad and unduly burdensome.'"); *Shqeirat v. U.S. Airways Group, Inc.,* CIV 07-1513 ADM/AJB, 2008 WL 4232018 at *4 (D. Minn. Sept. 9, 2008) ("[A] contention interrogatory will be considered overly broad and unduly burdensome 'if it seeks 'all facts' supporting a claim or defense, such that the answering party is required to provide a narrative account of its case.'").

"[T]here is considerable recent authority for the view that the wisest general policy is to defer propounding and answering contention interrogatories until near the end of the discovery period." *In re Convergent Techs. Securities Litig.*, 108 F.R.D. 328, 336 (N.D. Cal. 1985). This is because "[t]o force [a party] to respond at this stage in the litigation would require [the party] to 'articulate theories of [its] case not yet fully developed.'" *McCrink v. Peoples Benefit Life Ins. Co.,*

CIV.A.2:04CV01068LDD, 2004 WL 2743420, at *4 (E.D. Pa. Nov. 29, 2004). Answering may "inappropriately lock [the party] into certain legal positions." *U.S. v. Educ. Mgt. LLC*, 2:07-CV-00461, 2013 WL 3854458, at *24 (W.D. Pa. May 14, 2013).

Moreover, because parties must timely supplement answers when new information becomes available under Federal Rule of Civil Procedure 26(e), requiring responses to contention interrogatories prior to the conclusion of discovery is likely to require repeated supplementation of responses. "Such repeated supplementation will not increase the efficiency of the discovery process." *Id.* at *24. The serving party bears the burden of showing the answers "will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56." *In re Convergent*, 108 F.R.D. at 338–39.

Here, WTPA's contention interrogatories demand Plaintiff provide a comprehensive list of every fact supporting her claims and provide her position on legal issues well before discovery has concluded.[1]  Under applicable law, Plaintiffs

---

[1] For instance, "all facts that are relevant" to Plaintiffs' negligence claims against WTPA necessarily includes, at a minimum, all facts pertaining to: (a) the four elements of negligence; (b) joint and several liability; (c) alter ego liability; (d) joint venture liability; (e) principles of agency law; and (f) principles of comparative fault.

should either be protected from answering the contention interrogatories altogether, or permitted to answer them after discovery has been concluded. WTPA's Motion should be denied.

## II.   Plaintiff Provided Responsive Answers

Despite the objectionable nature of WTPA's contention interrogatories, which should either not be answered at all, or only be answered once discovery is complete, Plaintiff's counsel provided responsive answers to each of them:

➢ Plaintiff's supplemental answer to Interrogatory No. 3 identified responsive information and evidence supporting her negligence claims. (Doc. 224-8 at 4).  Because this interrogatory is extremely objectionable due to its breadth and burden of answering, Plaintiff's willingness to answer it at all is more than required under applicable law.  *See, Aldapa*, 310 F.R.D. at 591 (contention interrogatories seeking every fact supporting a claim are an abuse of the discovery process).

➢ Plaintiff's original answer to Interrogatory No. 5 identified responsive information, namely, that Plaintiff's mother had notified WTPA/WTNY representatives that Plaintiff had been sexually abused.  (Doc. 224-8 at 7).  Then, Plaintiff's supplemental answer identified additional responsive facts.  (Doc. 224-8 at 8-10).  Given the early stage of the case,

this answer fully complied with applicable law governing contention interrogatories. *In re Convergent*, 108 F.R.D. at 336.

➤ Plaintiff's supplemental answer to Interrogatory. No. 6 identified responsive facts. (Doc. 224-8 at 13-14). Plaintiff's counsel went above and beyond simply stating "facts" and explained the general basis of its legal theory regarding agency. (Doc. 224-8 at 12). Given the early stage of the case, this answer fully complied with applicable law governing contention interrogatories. *In re Convergent*, 108 F.R.D. at 336.

➤ Plaintiff's original answer to Interrogatory No. 7 identified Plaintiff's position about what WTPA should have done, i.e. reported the known child sex abuse to law enforcement as required by Montana law. (Doc. 224-8 at 21)

While WTPA's contention interrogatories were objectionable, and arguably should not have been answered at all, Plaintiff answered them. Plaintiff's counsel did so to ensure that it was proceeding with transparency about its contentions and the facts that had been discovered to date supporting Plaintiff's case. Accordingly, WTPA has no valid complaint about Plaintiff's answers and its Motion should be denied.

///

///

**III.     WTPA's Unreasonable Demand That Plaintiffs Personally Answer the Contention Interrogatories Constitutes Harassment**

Compounding the inherently objectionable nature of WTPA's contention interrogatories is its insistence that Plaintiff herself provide answers to them. WTPA's demand is unreasonable and serves no conceivable purpose other than to harass and embarrass Plaintiff because accurately answering contention interrogatories requires knowledge of all evidence in the case and application of that evidence to various legal principles.  Parties are not required to know all the facts in their case, nor are they equipped to apply all of those facts to law.  That is precisely what their lawyers are hired to do.

Accordingly, it serves no conceivable purpose to force layperson parties to answer a contention interrogatory that requires knowledge of the law and every fact discovered in the case.  By way of example, to answer WTPA's Interrogatory 3, Ms. Mapley would have to know:

> ➢ The difference between fact and opinion testimony;
>
> ➢ What constitutes negligence, i.e. duty, breach, causation, and damages;
>
> ➢ How to prove various theories of liability such as agency, joint and several liability, alter ego liability, and joint venture liability;
>
> ➢ What constitutes relevant evidence; and
>
> ➢ All of the evidence discovered by Plaintiff's counsel in this case.

It should go without saying that Ms. Mapley cannot reasonably be expected to know those things.

Ms. Mapley simply does not have knowledge of most of the facts relevant to her claims. She was a young child during the time in question, and she hired lawyers to discover and know those facts. For example, relevant to the allegation that WTPA and WTNY were effectively one entity for the purpose of liability is the fact they were managed simultaneously by the same group of men to accomplish a common purpose during the relevant time period. Ms. Mapley has no way of knowing this, nor should she be expected to. She hired lawyers to uncover and know these facts. There are hundreds of similar facts "relevant" to Ms. Mapley's claims that she simply has no knowledge of. As a result, WTPA's insistence that Ms. Mapley answer the contention interrogatory would inevitably guarantee an incomplete answer that fails to account for hundreds of relevant facts.

Plaintiff's counsel attempted to explain the inherent problems with WTPA's position. Specifically, Plaintiff's counsel stated in response to Interrogatory 3:

> Asking a party to litigation to identify "all facts" that are "relevant" to her legal claims is inherently fraught and unfair because parties to litigation hire and rely on their lawyers to: (1) be knowledgeable of the entirety of the facts in a case; (2) understand legal concepts like relevancy and negligence; and (3) make judgments about which facts support the legal claims that were drafted by the lawyers. Rather than seeking Plaintiff's testimony or recollection of discoverable facts and events that she has personal knowledge of, this interrogatory asks her to make a conclusion about what evidence may be relevant to her negligence claims.

Plaintiff does not have knowledge of all of the evidence in the case that would implicate WTPA, or a working understanding of legal concepts like relevance, negligence, agency, and alter ego, that would allow her to answer this interrogatory in any sort of meaningful way that furthers a legitimate purpose in this case. Plaintiff's counsel continues to believe that this is a question that is suited for and should be answered by Plaintiff's lawyers because they do have knowledge of the documents and facts in this case, they have been trained to understand the concepts of relevance and negligence, and it is their job to apply those facts to those legal concepts.

If WTPA chooses to ask Plaintiff questions in discovery that seek her knowledge of the events at issue - i.e. who sexually abused her, where that abuse took place, when that abuse took place, who she told about the abuse, and her knowledge of how the Jehovah's Witness church handled reports of the sexual abuse - she has the personal knowledge to answer such questions. It is this information that forms the basis of Plaintiff s claims. Plaintiff hired lawyers who reviewed such information, and after an inquiry reasonable under the circumstances, came to the conclusion that a negligence claim against WTPA was appropriate. Plaintiff did not, nor could she as a layperson, conduct the same type of analysis as her lawyers and the assertion that Plaintiff is personally obligated to identify all evidence that is relevant to her negligence claim is inherently inappropriate, unfair, outside the scope of discovery, and constitutes harassment.

(Doc. 224-8 at 2–5).

Nevertheless, because WTPA was threatening to file a motion demanding that Ms. Mapley provide a personal answer to each contention interrogatory, Plaintiff's counsel agreed to get her responses in an effort to avoid wasting time on

this very Motion.[2]  Plaintiff's counsel told WTPA that Ms. Mapley did not have

the requisite knowledge, information, or capability to provide meaningful answers

to the contention interrogatories and that if actually wanted responsive information,

it could look to the answers drafted by Plaintiff's counsel.

WTPA fails to articulate any good faith reason for demanding an answer to

its own interrogatory which will be guaranteed to be incomplete.  Such an answer

would not help identify Plaintiff's evidence or positions for trial, nor would it help

narrow the issues in the case.  Indeed, if WTPA is genuinely interested in

understanding the evidence, facts, and positions Plaintiff will bring to trial, then it

need look no further than the answers Plaintiff's counsel set forth in the

interrogatory answers.  Moreover, with Ms. Mapley's interrogatory answers in

hand, WTPA deposed her in November of 2022.  There, its lawyers asked her

about her personal knowledge of some of these very issues.  For example:

| 66 |
|---|
| 17    **Q.  Who at WTNY or WTPA knew about Gunner's** |
| 18  **abuse of you?** |
| 19      A.  Couldn't possibly know. |
| 20    **Q.  Did you ever inform anybody at WTPA or** |
| 21  **WTNY that you were abused by Gunner?** |
| 22      A.  No. |

---

[2] Some of Ms. Mapley's responses are remarkably on point for a layperson.  For example, in response to Interrogatory 6, which concerned whether local Hardin elders and ministerial servants were agents of WTPA, she described: (1) WTPA is the parent legal entity of other Watch Tower entities; (2) the hierarchical nature of the JW's organization; and (3) how local elders and ministerial servants are appointed by men higher in the hierarchy than them.  (Doc. 224-8 at 16–18).

Dep. of Camillia Mapley, 66:17–22, (Nov. 29, 2022) (excerpt attached as **Exhibit A**).

WTPA's continuing demand that Ms. Mapley personally answer its objectionable contention interrogatories in some other way than she already has, after her counsel has already provided responsive answers, and after WTPA had a chance to ask her about her personal knowledge on these topics at her deposition, serves no legitimate purpose in this case.  Rather, it appears to be an obvious effort to harass her and waste time that could be spent legitimately working towards resolution of this case.  Based on this, WTPA's Motion should be denied, and Plaintiff should be awarded her fees and costs for responding to the vexatious Motion.  Fed. R. Civ. P. 37(5)(B); *Colaco*, 301 F.R.D. at 434.

## IV.   WTPA'S Requests for Production Seek Documents Beyond the Scope of Discovery

WTPA's requests for production seek documents outside the scope of permissible discovery under Rule 26.  While the scope of discovery is intended to be broad, Requests for Production 10 and 36 seek production of <u>any</u> document in Plaintiffs' possession relating to <u>any</u> alleged child sex abuse involving Jehovah's Witnesses at <u>any</u> time, and <u>anywhere</u>:

> **REQUEST FOR PRODUCTION NO. 10:** Please produce all written or electronic information in your possession, custody, or control about alleged child sexual abuse by, or claims against, religious entities and members of Jehovah's Witnesses, including

newspapers, magazines, books, the internet, or information from
counselors, therapists, or other mental health professionals about those
subjects.

**REQUEST FOR PRODUCTION NO. 36:** Please produce any
documents that you or your attorneys have received from any third
parties relating to alleged child sexual abuse by, or claims against,
religious entities and members of Jehovah's Witnesses, including but
not limited to newspapers, magazines, books, and/or internet articles.
If you withhold any such responsive documents on the basis of
privilege and/or work product, please identify the withheld documents
in your Privilege Log pursuant to WTPA's Interrogatory No. 14.

(Doc. 224-6 at 2–3); (Doc. 224-7 at 2–3).  WTPA's requests for documents contain

no limitation regarding time, place, parties, or circumstance.

WTPA's limitless requests are objectionable because WTPA cannot show

that they would "lead to relevant evidence."  *Sorosky v. Burroughs Corp.*, 826 F.2d

794, 805 (9th Cir. 1987); *Nugget Hydroelectric, L.P. v. P. Gas and Elec. Co.*, 981

F.2d 429, 438-39 (9th Cir. 1992) (noting that the party serving such broad

discovery must make a showing that the burdens of discovery would be minimal

and that the requested documents would lead to relevant evidence.).  By way of

example, if Plaintiffs' counsel looked at an internet news story regarding serial

child sexual abuse occurring within a Pennsylvania Jehovah's Witnesses

congregation, it would be responsive to RFPs 10 and 36.[3]  Yet, it is difficult to

---

[3] https://lawandcrime.com/crime/sad-and-disturbing-5-jehovahs-witnesses-
congregation-members-charged-with-sexual-abuse-of-young-children/

ascertain how such a document could possibly have any relevance or help resolve a disputed issue in the case.

At the same time, forcing Plaintiffs' counsel and their staff to go through their files, work computer, personal home computer, personal cellphone, etc. and find every document, news story, internet article, etc. that relates to any Jehovah's Witnesses child sex abuse occurring anywhere at any time would require hours and hours of searching without any benefit to the case.  Plaintiffs' counsels' staff would then have to collect, bates stamp, index, and ultimately produce all of these materials.

Rule 26 requires consideration of "the parties' relative access to relevant information" when assessing whether a particular discovery request is within the scope of permissible discovery.  Fed. R. Civ. Pro. 26(b)(1).  The broad category of documents sought by WTPA are not documents that are uniquely in Plaintiff's possession.  WTPA will certainly have better access to Jehovah's Witnesses child sex abuse documents than Plaintiff.   To be sure, WTPA is part of the Jehovah's Witnesses organization, and it fails to articulate why it would need to obtain from the Plaintiff documents pertaining to completely unrelated Jehovah's Witnesses child sex abuse.

Ultimately, WTPA cannot establish that Requests for Production 10 and 36 are crafted to obtain discoverable documents under Rule 26.  Plaintiff's objections

were appropriate.[4]  Thus, WTPA cannot meet its burden of establishing that

Requests for Production 10 and 36 seek documents within the permissible scope of

discovery, and its Motion should be denied.  *Colaco*, 301 F.R.D. at 434.

## V.   WTPA is Not Willing to Adopt the Version of Relevance it Asks This Court To Apply to Plaintiffs

WTPA's brief makes the conclusory assertion that all documents concerning

any child sex abuse involving a Jehovah's Witnesses "are <u>obviously relevant</u> to the

claims and defenses in this case because the Requests explicitly seek documents

related to sexual abuse claims."  (Doc. 224 at 9 (emphasis added)).  While

Plaintiff's counsel does not agree with this premise, in an effort to resolve the

parties' dispute, we were willing to adopt it and produce all documents related to

Jehovah's Witnesses child sex abuse claims in our possession so long as the

Defendants would do the same.  A copy of the proposed Stipulation that was sent

to WTPA on May 2, 2023 and is attached as **Exhibit B**.  In short, if the Defendants

agreed to play by the same set of rules as they want Plaintiff to play by, i.e.

---

[4] Plaintiff's work product objection was made because the requests are so broad that they include any notes or other documents prepared by Plaintiffs' counsel, investigators, and consultants that concern the abuse in this case or the Jehovah's Witnesses child abuse problems in general.  These are materials that Defendants have repeatedly and without justification attempted to obtain from Plaintiffs' counsel during discovery.  The work product objection was never intended to apply to documents like newspaper or internet articles about unrelated child sex abuse.

produce all documents in their possession related to child sex abuse claims, then Plaintiff was willing to do so.

WTPA responded that it was unwilling to sign the proposed stipulation endorsing its own position on what constitutes "obviously relevant" evidence in this case. WTPA's refusal to endorse its own representation to this Court about what is relevant evidence in this case cuts to the core of the weakness in its argument. It is not surprising that WTPA is unwilling to adopt the very relevance standard that it endorses in its briefing. To do so would require it and WTNY to search for, produce, and agree to the relevancy of every document in their collective possession pertaining to any Jehovah's Witnesses child sex abuse occurring anywhere at any time.

Regardless, Plaintiffs' view is that WTPA's Requests for Production 10 and 36 are too broad because they seek documents that are beyond the scope of discovery under Rule 26. As a result, Plaintiffs' objections to those requests are justified, and WTPA's Motion should be denied. Furthermore, because WTPA is not willing to stand behind the position it asks this Court to adopt, it appears that its Motion is frivolous and vexatious, and it should be ordered to pay Plaintiff's fees and costs expended in response. Fed. R. Civ. P. 37(5)(B).

///

///

## CONCLUSION

WTPA had the burden of showing that its discovery requests were within the scope of permissible discovery.  It cannot do so.  Its discovery requests are all objectionable.  Despite this, Plaintiff provided responsive answers to the interrogatories.  WTPA's demand that Ms. Mapley answer them personally serves no legitimate purpose in this case: it does not help identify evidence; it does not help identify Plaintiff's trial position; and it does not help eliminate fact disputes ahead of trial.  To the contrary, because she does not know all of the facts and is not trained to apply them to the law, her answers are guaranteed to be incomplete and inaccurate.  The only conceivable reason WTPA is demanding incomplete and inaccurate discovery answers is to use them for some ulterior purpose.

WTPA's conduct and its frivolous Motion should not be tolerated.  Plaintiffs therefore respectfully request the Court deny WTPA's Motion, consider whether the Motion was not substantially justified such that sanctions to reimburse Plaintiff's fees and costs are appropriate, and issue a protective order forbidding WTPA from continuing to harass Plaintiffs with the requests at issue in its Motion and, if it persists, exempting Plaintiffs and their counsel from any otherwise existing requirement to engage with WTPA on these issues.

DATED this 5th day of May, 2023.

By: /s/ Ryan Shaffer
      Ryan R. Shaffer
      MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 1.4, this document has been served on all parties via electronic service through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

By: /s/ Ryan Shaffer
      Ryan R. Shaffer
      MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), Plaintiff hereby certifies that this brief complies with the length requirement for briefs, and that this brief contains 3,974 words, excluding the caption, certificates of service and compliance, table of contents and authorities, and exhibit index.

By: /s/ Ryan Shaffer
      Ryan R. Shaffer
      MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*