Jon A. Wilson
Brett C. Jensen
Michael P. Sarabia
BROWN LAW FIRM, P.C.
315 North 24th Street
P.O. Drawer 849
Billings, MT 59103-0849
Tel. (406) 248-2611
Fax (406) 248-3128

Joel M. Taylor, Esq. (appearing *pro hac vice*)
MILLER MCNAMARA & TAYLOR LLP
100 South Bedford Road, Suite 340
Mount Kisco, New York 10549
Tel./E-Fax (845) 288-0844
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY,<br><br>              Plaintiffs,<br><br>     vs.<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR.,<br><br>              Defendants. | Cause No. CV 20-52-BLG-SPW<br><br>**DEFENDANT WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.'S BRIEF IN SUPPORT OF MOTION FOR PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(c).** |

WATCHTOWER BIBLE AND )
TRACT SOCIETY OF NEW YORK, )
INC. )
)
       Cross-Claimant, )
)
vs. )
)
BRUCE MAPLEY SR., )
)
       Cross-Claim Defendant. )
_____)

## INTRODUCTION

Defendant Watchtower Bible and Tract Society of New York, Inc. ("WTNY"), by and through its attorneys, respectfully submits this brief in support of its Motion for a Protective Order.

As explained more fully below, plaintiffs want to depose three men who have no personal knowledge of the purported abuse at issue in this case. Two of the three have testified as corporate designees for WTNY in the past: Messrs. Allen Shuster and Gary Breaux.  The third, Mr. Marvin Gene Smalley is 83 years old and has never been used by WTNY as a corporate designee. WTNY has not designated any of them in this lawsuit, and opposes their being deposed without some degree of effort by the plaintiffs to pursue less intrusive discovery. These three men do not have any unique knowledge regarding Plaintiffs' purported deposition topics. Their knowledge about the topics Plaintiffs are interested in is at

best equal to that of the person WTNY offers as a 30(b)(6) witness in this case, and

whom WTNY proposed as an alternative as part of its earnest meet-and-confer

efforts: namely, Thomas Jefferson, Jr. WTNY's designee is more readily available,

younger and in better health, and is not an apex witness, unlike Messrs. Shuster

and Breaux. Plaintiffs' insistence on deposing Messrs. Shuster, Breaux and

Smalley is unnecessarily cumulative, harassing, and designed to take multiple

30(b)(6) depositions in direct violation of the Court's ruling on that issue. (Doc.

222).

Plaintiffs have yet to articulate why they need or want the depositions of

these three men, let alone why they cannot be satisfied with the deposition of

WTNY's designated Rule 30(b)(6) witness.

## PROCEDURAL BACKGROUND

- On April 18, 2023, the Court entered its Order denying Plaintiffs' Motion to
  Compel Depositions dated April 18, 2023 (Doc. 222).

- Plaintiffs' counsel sent an e-mail dated April 19, 2023, indicating they still
  wanted to depose Messrs. Shuster, Breaux, and Smalley, and asking to
  schedule a time to confer regarding related issues. *See*, Foundational
  Affidavit of Jon A. Wilson in Support of WTNY's Motion for Protective
  Order (hereafter "Wilson Affidavit"), Ex. 1.

- A conference call to discuss the requested depositions occurred on April 25, 2023. *Id.*, ¶ 5, Ex. 2.

- During the conference call, plaintiffs' counsel said the depositions of the three individuals wouldn't be binding on WTNY. *Id.*, ¶ 5.

- Following the conference call, Plaintiffs' counsel sent a letter and an e-mail dated April 26, 2023, asking for identification of alternate witnesses with substantially similar knowledge. *Id.*, Exs. 3-4.

- WTNY's counsel responded by letter dated May 1, 2023, identifying alternate witnesses.  This letter asked Plaintiffs' counsel to advise by May 2, 2023, whether they were amenable to depositions of the alternate witnesses, so that WTNY could file a motion for protective order if necessary.  Wilson Aff., Ex. 5.

- Plaintiffs' counsel responded by letter later on May 1, 2023, rejecting the alternate witnesses proposed by WTNY. *Id.*, Ex. 6.

- By letter dated May 3, 2023, WTNY's counsel confirmed it would be filing a motion for protective order if Plaintiffs proceeded with issuing deposition notices directed to Messrs. Shuster, Breaux, and Smalley.  This letter noted WTNY's counsel's understanding that Plaintiffs' counsel would object to such protective order, but asked Plaintiffs' counsel to advise if this understanding was correct so the Court could be advised. *Id.*, Ex. 7.

- By letter dated May 15, 2023, Plaintiffs' counsel indicated agreement that the dispute regarding the requested depositions of Messrs. Shuster, Breaux, and Smalley was ripe for resolution by the Court, and advised they would file a motion to compel if WTNY did not file a motion for protective order by May 22, 2023. *Id.*, Ex. 8.

- By letter dated May 17, 2023, Plaintiffs' counsel provided deposition notices directed to Messrs. Smalley, Breaux, and Shuster, and again advised they would file a motion to compel if WTNY did not file a motion for protective order by May 22, 2023. *Id.*, Ex. 9.

- By letter dated May 17, 2023, WTNY's counsel confirmed it would proceed with filing a motion for protective order with the understanding that Plaintiffs' counsel objected to the same. *Id.*, Ex. 10.

**PLAINTIFFS' DUPLICATIVE DEPOSITION TOPICS**

After the meet and confer call, Plaintiffs identified the following deposition topics to include: knowledge "(for all time periods at issue in this case) of the Jehovah's Witnesses Organization's corporate structure, the policies and procedures in place for handling accusations of child sex abuse, how the Service Department communicated with local congregations, and the process for the appointment and deletion of elders and ministerial servants." *Id.*, Ex. 3, p. 2.

Not only do Plaintiffs want WTNY to produce three individuals to testify about identical topics, Plaintiffs' 28-page proposed Rule 30(b)(6) deposition notice to WTNY (containing 44 topics with an additional 40 sub-parts and 37 document demands) requests WTNY produce a fourth witness for the same information. (*See* Wilson Aff., Ex. 11). For example:

Rule 30(b)(6) Deposition Topic 8.:

Function and operation of the Service Department, including but not limited to (1) all jobs, positions, roles, titles, etc. for personnel in the Service Department, and the duties and qualifications of each; (2) the intake process for anyone who talks to the Service Department about child sex abuse; (3) whether reports of child sex abuse are handled differently than reports of other types of wrongdoing; (4) how documents generated by the Service Department, or received directly from local congregations, are stored and maintained.

Rule 30(b)(6) Deposition Topic 9.:

Structure, function, operation of the Governing Body, included but not limited to (1) the structure, membership, composition, and organization of the Governing Body including any committees or established subsets of the Governing Body from 1973 to the present, (2) the Governing Body's role in researching, considering, debating, creating, adopting, implementing, and evaluating organizational policy within the Jehovah's Witness Religion, (3) the identities, duties, and

responsibilities of agents and staff members to the individual members of the

Governing Body, to the Governing Body as a whole, or to any committee or

established subset of the Governing Body from 1973 to the present, (4) the

Governing Body's role in considering, investigation, researching, adjudicating,

and/or responding to specific allegations of childhood sexual abuse committed by

Jehovah's Witnesses or issuing directions or instructions to other to so consider,

investigation, researching, adjudicating, and/or responding to such specific

allegations, (5) the orders, decisions, decrees, or other directives authored, issued,

or approved by the Governing Body or any committee or established subset of the

Governing Body regarding any specific investigation, allegation, complaint,

lawsuit, or other matter involving childhood sexual abuse committed by Jehovah's

Witnesses, (6) the Governing Body's awareness and discussions of, and decision

making process regarding claims of sexual abuse by Gunnar Hain and Bruce

Mapley, Sr., and (7) the efforts of the Governing Body to determine the existence,

occurrence, prevalence, and/or scope of childhood sexual abuse committed by

Jehovah's Witnesses within the Jehovah's Witness religion.

Rule 30(b)(6) Deposition Topic 10.:

Please identify all written and unwritten policies and procedures that apply

to the obtaining and storing of information about child sex abuse allegations

occurring within Jehovah's Witness congregations.

Rule 30(b)(6) Deposition Topic 11:

Identify how elders have been instructed to report instances or allegations of child sex abuse to WTNY, WTPA, CCJW, or any other Jehovah's Witness entity or group responsible for managing and responding to instances or allegations of child sex abuse.

*See also* Rule 30(b)(6) Deposition Topics 12-16, 21, 22-39 as further duplicative.

Plaintiffs also want WTNY to designate "a list of alternative witnesses ... that would have similar personal history and knowledge as Mr. Shuster and Mr. Breaux..." (*Id.*, Ex. 3, p.2) That is not what Rule 30(b)(6) (or any other rule) requires. If one person knows the information sought, then one witness is enough to designate, and that person merely needs to have knowledge about the pertinent topics, not "similar personal history." Notably, more than 2 years ago, WTNY identified Messrs. Thomas Jefferson, Mario Moreno, and Alan Browning as persons most knowledgeable in response to plaintiffs' interrogatories.  While plaintiffs belated suggest that WTNY has not provided a list of alternative witnesses, these names have been readily available to plaintiffs. Id., Ex. 5, p. 3.

## PLAINTIFFS CANNOT JUSTIFY MULTIPLE DEPOSITIONS

Plaintiffs claim that Shuster, Breaux, and Smalley are not 30(b)(6) witnesses in this lawsuit. That much is right – WTNY has not designated them. But, as shown above, the very topics on which Plaintiffs want to depose them are the same

as those about which WTNY's designated 30(b)(6) witness would testify.  As explained in prior briefing to this Court (Doc. 160), Messrs. Shuster, Breaux and Smalley have no direct knowledge about the claims in this case, have not met Plaintiffs or Bruce Mapley Sr., and have no personal knowledge about any of the people or the claims involved in this lawsuit. What they do know are the beliefs and practices of Jehovah's Witnesses, but that knowledge is not unique, and plaintiffs have indicated their testimony on those subjects would not bind WTNY– further underscoring the superfluousness of deposing them.

The declarations of Messrs. Breaux, Shuster and Smalley were filed as exhibits to Document 160, WTNY's response brief in opposition to Plaintiffs' Motion to Compel Depositions. Mr. Shuster's Declaration is Exhibit A to Document 160. Mr. Breaux' Declaration is Exhibit B. Although Messrs. Shuster and Breaux were connected with WTNY in years past, for several years they have served on the board of directors of a different corporation, Christian Congregation of Jehovah's Witnesses (CCJW). Mr. Shuster is CCJW's President, and Mr. Breaux is its Vice President. Shuster Dec., ¶ 4; Breaux Decl., ¶ 4.  Their work for CCJW and for the religion of Jehovah's Witnesses is extensive, neither knows the plaintiffs or the accused abusers. Shuster Decl., ¶ 8; Breaux Decl., ¶ 8. Neither has ever cared for, corresponded or communicated with congregations in Montana. Shuster Decl., ¶ 7; Breaux Decl., ¶ 7. Neither has ever attended religious services

in Hardin, Montana. Shuster Decl., ¶ 9; Breaux Decl., ¶ 9. Neither was a corporate

member or executive officer of WTNY or WTPA during the time of the alleged

abuse. Shuster Decl., ¶ 6; Breaux Decl., ¶ 6. Mr. Breaux was not serving at the

United States Branch facilities in New York until 1994, well after the alleged

abuse ended. Breaux Decl., ¶ 5.

     As members of the Order, both Messrs. Shuster and Breaux serve as

executive officers of CCJW, which was incorporated in 2000 and became

operational in 2001. CCJW is the corporation used by Jehovah's Witnesses to

communicate with and provide operational support to over 12,000 congregations of

Jehovah's Witnesses nationwide. In addition, it is used in the organization of larger

conventions of Jehovah's Witnesses to contract with arenas, stadiums, and hotels

and motels annually. CCJW's corporative objectives are carried out by over 200

members of the Order on-site in New York and 300 volunteers located throughout

the United States. Messrs. Shuster and Breaux oversee (manage) these individuals.

This is not an exhaustive list of the activities of CCJW, but is designed to provide

the Court with insight into their heavy responsibilities. Shuster Decl., ¶ 4; Breaux

Decl., ¶ 4. Both men are apex witnesses. Their duties are critical to the operations

of CCJW today. They would need to spend several days each to prepare for

depositions about past operations of WTNY and about the past practices of

Jehovah's Witnesses in the 1970s and 1980s in the area of child abuse. It would be

unfair to them and to CCJW to force them to devote the time they would need to prepare for a deposition in this lawsuit.

Mr. Smalley is 83 years old. As stated in Mr. Smalley's Declaration, which is Exhibit C to Document 160, Mr. Smalley supports the religion's efforts to produce Bible-based literature. See Smalley Decl., ⁋ 4. He was 82 years old when he signed his declaration. *Id*. Though he has proofread materials involving child abuse and Jehovah's Witnesses, he has never been responsible for drafting or writing those materials. *Id.,* ⁋ 5. During his entire time as a member of WTNY and Watch Tower Bible and Tract Society of Pennsylvania (hereafter "WTPA"), he never cared for, corresponded, or communicated with congregations in Montana. *Id*., ⁋ 7. He does not know any of the plaintiffs or alleged abusers. *Id*., ⁋ 9. He has no personal, direct or indirect knowledge about the abuse allegations in the operative Complaint. Smalley Decl., ⁋ 11. Because of the limits of his work, he knows less than a corporate designee would know on the topics Plaintiffs say they wish to explore. More to the point, while he is acquainted with the beliefs and practices of Jehovah's Witnesses, he admits that other, younger members of the religious Order to which he belongs are far more conversant on matters of alleged child abuse than he is. *Id*., ⁋ 12.

## ARGUMENT AND AUTHORITIES

The topic of apex witnesses is well-discussed in numerous decisions. *See*, *e.g.*, *Pinn, Inc. v. Apple Inc.*, 2021 WL 4775969, *2–*4 (C.D. Cal. 2021) (granting protective order to prohibit, under the apex doctrine, the deposition of one of the accused infringer's senior executives who reported directly to the CEO; finding, inter alia, that the patentee failed to show that the executive had relevant first-hand knowledge; finding that the executive receiving a "cold" email from the patentee suggesting that the accused infringer should acquire the patentee, which email did not even mention the asserted patents, failed to show that the executive had any unique personal knowledge relevant to the infringement dispute); *Rembrandt Diagnostics, LP v. Innovacon, Inc.*, No. 16-cv-0698 CAB, 2018 WL 692259, at *6-7 (S.D. Cal. Feb 2, 2018); *Eggleston v. Chicago Journeymen Plumbers' Loc. Union No. 130, U.A.*, 657 F.2d 890, 904 (7th Cir. 1981). Such decisions typically begin by reciting Fed.R.Civ.P. 26(b)1), which permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." "The 2015 amendments to Rule 26(b)(1) emphasize

the need to impose 'reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'" *Roberts v. Clark County Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016).

Here, Plaintiffs cannot show the burden to these three men would be outweighed by its likely benefit – particularly since none of them have the time or energy to meaningfully prepare, and Plaintiffs have already indicated that their testimony would not bind WTNY. WTNY respectfully requests the Court to deny Plaintiffs' requested depositions for good cause. Fed.R.Civ. P. 26(c)(1)(A), which authorizes the Court to "issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense[,]" including prohibiting or limiting a deposition.

When a party seeks to prohibit a deposition of a company representative, either present or former, courts impose further conditions:

> When a party seeks the deposition of a high-level executive (a so-called "apex" deposition), courts have "observed that such discovery creates a tremendous potential for abuse or harassment." Courts have discretion to limit discovery where the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive."

*Apple Inc. v. Samsung Electronics Co., Ltd.*, 282 F.R.D. 259, 262-263 (N.D. Cal. 2012) (citations omitted). Courts review "(1) whether the deponent has unique, first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive

discovery methods." *Id*. at 263 (citations omitted).  Courts generally do not permit depositions of high-ranking officials before the depositions of lower ranking employees with more direct knowledge of the case have been taken. *K.C.R. v. County of Los Angeles,* No. CV 13-3806 PSG (SSx), 2014 WL 3434257, at *3 (C.D. Cal. July 11, 2014).

In *Braga v. Hodgson*, 605 F.3d 58, 60 (1st Cir. 2010), the First Circuit upheld the protection of an apex witness where the deposition proponent "put forth no evidence or plausible argument suggesting that a deposition of [the high-level executive] was reasonably calculated to lead to other discoverable materials regarding the party's claims." The same was held in *West v. City of Albany, Georgia*, 830 Fed.Appx. 588, 593 (11th Cir. 2020), where the harm from the apex deposition was disproportionate to the discovery request since the information sought would not make the plaintiff's claims any "more or less true." The Fifth Circuit, in *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979), held that a litigant must first depose lower-ranked employees and/or supervisors with more relevant knowledge before seeking an apex deposition. The Sixth Circuit explained the apex doctrine: it does not allow a party to "go fishing", and the difficulty for high-level personnel to schedule a deposition because of their duties can be enough to prevent their apex deposition entirely. *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 846 (6th Cir. 2017). The Tenth Circuit deemed apex depositions a "severe

hardship" and precluded an apex deposition of a high-level IBM executive who had no personal knowledge of the relevant facts, where the plaintiff had not deposed appropriate supervisors first, and the location and timing of the deposition and the apex deponent's prescheduled meetings with senior management were in conflict with the date the plaintiff selected. *Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 483 (10th Cir. 1995).

Fed.R.Civ.P. 26(c)(1) requires one seeking protection to show "good cause" to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The party who opposes a deposition must show "that specific prejudice or harm will result" if the order is not granted. *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). WTNY has offered equally competent deponents with fewer responsibilities who are more knowledgeable about WTNY's knowledge concerning child abuse issues and allegations in the 1970s up to today than Messrs. Breaux, Shuster and Smalley are. Messrs. Breaux and Shuster were up-to-date on similar topics back when they were designated as 30(b)(6) witnesses for WTNY in past lawsuits, but their present duties have removed them from the issues on which Plaintiffs seek their depositions. Those other deponents are more familiar today with those facts, because they have studied them more recently, and have prepared to discuss them – which Messrs. Breaux, Shuster, and Smalley have not done in several years. But Plaintiffs don't

want to depose the witnesses WTNY offers. Plaintiffs want who they want, apex or not. No matter that Plaintiffs have not tried to depose those with similar knowledge and less responsibilities. No matter that Mr. Smalley is 83 and lacks the energy he had years ago. No matter that Messrs. Breaux and Shuster are executive officers of CCJW, handling high-level decisions for that company, and that their connection with WTNY is several years removed.

To require an elderly gentleman and two apex executives whose work is removed from the goings on of a congregation in Montana and from the topics sought by Plaintiffs to testify at depositions in this case would constitute a hardship on all three. No information that is not available from a 30(b)(6) witness could possibly be gained from any of them.

## CONCLUSION

For the reasons urged in its Response Brief in Opposition to Plaintiff's Motion to Compel Depositions, Doc. 160, and herein, WTNY respectfully requests the Court issue an order disallowing Plaintiffs from deposing Messrs. Breaux, Shuster, and Smalley.

DATED this 18th day of May, 2023.

By:   /s/ Jon A. Wilson
        Jon A. Wilson
        BROWN LAW FIRM, P.C.

*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(d)(2)(E), the undersigned hereby certifies this brief complies with L.R. 7.1(d)(2)(A). According to the word-processing unit used to prepare this brief, the word count is 3,297 words excluding caption, table of contents and authorities, exhibit index, and certificates of service and compliance.

DATED this 18th day of May, 2023.

By:   /s/ Jon A. Wilson
Jon A. Wilson
BROWN LAW FIRM, P.C.
*Attorneys for Defendants Watchtower*
*Bible and Tract Society of New York,*
*Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 18, 2023, a copy of the foregoing was served on

the following person(s):

1.     U.S. District Court, Billings Division

2.     Robert L. Stepans/Ryan R. Shaffer/James C. Murnion
       MEYER, SHAFFER & STEPANS, PLLP
       430 Ryman Street
       Missoula, MT 59802

3.     Matthew L. Merrill (appearing *pro hac vice*)
       MERRILL LAW, LLC
       1863 Wazee Street, Suite 3A
       Denver, CO 80202

4.     Gerry P. Fagan/Christopher T. Sweeney/Jordan W. FitzGerald
       MOULTON BELLINGHAM PC
       P.O. Box 2559
       Billings, MT 59103-2559

5.     Bruce G. Mapley Sr.
       3905 Caylan Cove
       Birmingham, AL 35215

by the following means:

| | | | |
|---|---|---|---|
| _1-4_ | CM/ECF | _____ | Fax |
| _____ | Hand Delivery | _____ | E-Mail |
| _5_ | U.S. Mail | _____ | Overnight Delivery Services |

By:   _/s/ Michael P. Sarabia_____
       Michael P. Sarabia
       BROWN LAW FIRM, P.C.

*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*