**Jon Wilson**

| | |
|---|---|
| **From:** | Jessica Yuhas <jessica@mss-lawfirm.com> |
| **Sent:** | Friday, December 23, 2022 2:15 PM |
| **To:** | Christopher Sweeney; Jon Wilson; Brett Jensen; Gerry Fagan; Jordan W. FitzGerald; Joel Taylor (jtaylor@mmt-law.com |
| **Cc:** | Barbara Bessey; Carrie Nance; Sylvia Basnett; Ryan Shaffer; Rob Stepans; James Murnion; Matthew Merrill; Katy Gannon |
| **Subject:** | RE: Caekaert/Mapley & Rowland/Schulze |
| **Attachments:** | 2022-12-23 DRAFT 30(b)(6) Depo. Notice to WTNY.pdf |

Counsel,

Attached please find DRAFT 30(b)(6) Deposition Notice to WTNY.

Please let me know if you want a copy of this mailed to your offices.

Thank you,

Jessica Yuhas
Paralegal



Meyer, Shaffer
& Stepans, PLLP

*Montana Office:*
430 Ryman St.
Missoula, MT 59802
Tel: 406-543-6929
Fax: 406-721-1799

*Wyoming Office:*
3490 Clubhouse Drive, Suite 104
Wilson, WY 83014
Tel: 307-734-9544
Fax: 307-733-3449

The information contained in this email is confidential and privileged. If you are not the intended recipient, please ignore and delete this message and inform the sender of the mistake. This email may be subject to the attorney-client privilege and attorney work product doctrine. If you are not the intended recipient, please ignore and delete this message and inform the sender of the mistake.

**From:** Jessica Yuhas
**Sent:** Friday, December 23, 2022 1:19 PM
**To:** 'Christopher Sweeney' <Christopher.Sweeney@moultonbellingham.com>; 'jwilson@brownfirm.com'
<jwilson@brownfirm.com>; 'Brett Jensen' <BJensen@brownfirm.com>; 'Gerry Fagan'
<Gerry.Fagan@moultonbellingham.com>; 'Jordan W. FitzGerald' <Jordan.FitzGerald@moultonbellingham.com>; 'Joel
Taylor (jtaylor@mmt-law.com' <jtaylor@mmt-law.com>
**Cc:** 'Barbara Bessey' <BBessey@brownfirm.com>; 'Carrie Nance' <Carrie.Nance@moultonbellingham.com>; 'Sylvia

1

Basnett' <SBasnett@brownfirm.com>; Ryan Shaffer <ryan@mss-lawfirm.com>; Rob Stepans <rob@mss-lawfirm.com>;
James Murnion <james@mss-lawfirm.com>; Matthew Merrill <matthew@merrillwaterlaw.com>; Katy Gannon
<katy@mss-lawfirm.com>
**Subject:** Caekaert/Mapley & Rowland/Schulze

Counsel,

Attached please find our letter of today's date.  This has also been mailed out.

Thank you,

Jessica Yuhas
Paralegal



*Montana Office:*
430 Ryman St.
Missoula, MT  59802
Tel: 406-543-6929
Fax: 406-721-1799

*Wyoming Office:*
3490 Clubhouse Drive, Suite 104
Wilson, WY 83014
Tel: 307-734-9544
Fax: 307-733-3449

The information contained in this email is confidential and privileged. If you are not the intended recipient, please ignore and delete this message and inform the sender of the mistake. This email may be subject to the attorney-client privilege and attorney work product doctrine. If you are not the intended recipient, please ignore and delete this message and inform the sender of the mistake.

Robert L. Stepans
Ryan R. Shaffer
James C. Murnion
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT  59802
Tel: (406) 543-6929
Fax: (406) 721-1799
rob@mss-lawfirm.com
ryan@mss-lawfirm.com
james@mss-lawfirm.com

Matthew L. Merrill (appearing *pro hac vice*)
Merrill Law, LLC
1863 Wazee Street, #3A
Denver, CO  80202
Tel: (303) 947-4453
matthew@merrillwaterlaw.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, ) <br> ) <br> Plaintiffs, ) <br> vs. ) <br> ) <br> WATCHTOWER BIBLE AND TRACT ) <br> SOCIETY OF NEW YORK, INC., ) <br> WATCH TOWER BIBLE AND TRACT ) <br> SOCIETY OF PENNSYLVANIA, and ) <br> BRUCE MAPLEY SR., ) <br> Defendants, ) <br> ) <br> WATCHTOWER BIBLE AND TRACT ) <br> SOCIETY OF NEW YORK, INC., ) <br> Cross Claimant, ) <br> ) <br> BRUCE MAPLEY, SR., ) <br> Cross Defendant. ) <br> ) | Case No. CV-20-52-BLG-SPW |

ARIANE ROWLAND, and JAMIE
SCHULZE

         Plaintiff,

  vs.

WATCHTOWER BIBLE AND TRACT
SOCIETY OF NEW YORK, INC., and
WATCH TOWER BIBLE AND TRACT
SOCIETY OF PENNSYLVANIA,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Cause No. CV 20-59-BLG-SPW

## SECOND AMENDED NOTICE OF RULE 30(b)(6) FOUNDATIONAL DEPOSITION OF DEFENDANT WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC. REGARDING THE INFORMATION PERTAINING TO CHILD SEX ABUSE

**PLEASE TAKE NOTICE** that Plaintiffs, by and through undersigned counsel, hereby cancels the deposition of Defendant Watchtower Bible and Tract Society of New York, Inc. ("WTNY) previously noted for **DATE HERE, 2023,** starting at **9:00 a.m. (ET)**, at **Miller, McNamara & Taylor, LLP, 100 South Bedford Road, Suite 340, Mount Kisco, NY 10549** and reschedules this deposition as set forth below.  Pursuant to Federal Rule of Civil Procedure 30(b)(6), and for the purpose of obtaining foundational testimony regarding the Jehovah's Witness Organization's policies and practices pertaining to the existence of information about child sex abuse, the Plaintiffs in the above-entitled actions will take the oral deposition of Defendant Watchtower Bible and Tract Society of

New York, Inc. ("WTNY") on _____ starting at

_____ **(ET)** and continuing thereafter until the same shall be completed.

The deposition will take place at **Veritext Legal Solutions, 50 Main Street, 3rd**

**Floor, White Plains, NY  10606**.  The deposition will be recorded by

stenographic means before a duly qualified court reporter and by audiovisual

means.

      WTNY shall designate and prepare one or more officers, officials, directors,

managing agents, employees, or other person who has knowledge to testify on its

behalf, setting forth in the designation, for each person designated, the matters on

which the person will testify on the following topics:

1.  Identification of each database[1] or filing system which contains, or

    previously contained, information about child sex abuse allegations

    involving a person or persons associated with the Jehovah's Witnesses

    organization (including all local congregations) in any capacity at any time.[2]

---

[1] For the purpose of this Notice, a "database" is commonly understood to be an organized collection of information, regardless of format or label.

[2] Because Plaintiffs do not know all of the organized collections of data with information about child sex abuse at Jehovah's Witness congregations, this topic is intended to require WTNY to prepare a witness to inform Plaintiffs about the existence of each such organized collections of data without limitation, but certainly including:

> ➢ Files maintained by the Service Department for each congregation. *See Lopez v. Watchtower Bible and Tract Socy. Of New York, Inc.*, 201 Cal. Rptr. 3d 156, 169 (Cal.App. 4th Dist. 2016);

2.  For each database or filing system responsive to Topic No. 1, the following information:

   a.  The date that the database or filing system was created;

   b.  The number of years the database or filing system was actively managed and maintained;

   c.  The format of the data and information contained in the database or filing system (i.e. was it digital, and if so, what format?);

   d.  Each category of information contained in the database or filing system;

   e.  The types of information contained in the database or filing system, including identification of whether the database or filing system contains (or contained) information about historical child sex abuse at Jehovah's Witness congregations;

   f.  The source material for all information contained in the database or filing system;

---

> The CM database, as referenced by Joel Taylor in the attached transcript of proceedings. Reporter's Transcript, 25:16 – 26:11 (Aug. 11, 2021) (attached as **Exhibit A**);
> The raw data, electronic data, call logs, or whatever other information was collected and organized as referenced by Joel Taylor in the attached transcript of proceedings. **Ex A**, 27:1-12; and
> The HuB database.

g.  The location of the database or filing system, including identification of any digital platform, server, or computer system hosting the database or filing system;

h.  The person(s) responsible for entering information into the database or filing system;

i.  The person(s) responsible for maintaining the information in the database or filing system;

j.  Identification of person(s) with access to the database or filing system, including members of the Governing Body;

k.  Identification of person(s) who were excluded from having access to the database or filing system, including members of the Governing Body;

l.  How information in the database or filing system is disseminated and/or retrieved by intended users;

m. The available methods of searching the database or filing system;

n.  Whether the database or filing system still exists; and

o.  For any database or filing system that no longer exists, the current location of all information previously contained in that database or filing system.

    p. For any database or filing system that no longer exists, identification of the person(s) responsible for integrating the information previously contained therein into any other database or filing system.

3. All policies (written or unwritten) pertaining to the entry, maintenance, and deletion of information for all databases or filing systems responsive to Topic No. 1.

4. All policies (written or unwritten) pertaining to restricting access to each database or filing system responsive to Topic No. 1.

5. All policies (written or unwritten) pertaining to document retention to each database or filing system responsive to Topic No. 1.

6. Identify each entity, department, individual, or group of individuals, regardless of corporate affiliation, who is responsible for obtaining and storing information about child sex abuse allegations involving a person or persons associated with the Jehovah's Witnesses organization (including all local congregations) in any capacity at any time.

7. Function and operation of the Legal Department, including but not limited to (1) all jobs, positions, roles, titles, etc. for personnel in the Legal Department, and the duties and qualifications of each; (2) the intake process for clients of the Legal Department, including whether conflict checks are conducted and conflict waivers are used, attorney-client agreements exist,

how the scope of the representation is determined, how intake information is stored, who has access to the intake information, and whether reports of child sex abuse are handled differently than other reports of wrongdoing; (3) the representation process, including whether the scope of the representation is described to the client, how the client file is stored and maintained, who has access to the client file, any limitations on the type of legal work that may be performed by the Legal Department (civil, criminal, business, etc.); and (4) how documents generated by the Legal Department, or received directly from local congregations, are stored and maintained.

8. Function and operation of the Service Department, including but not limited to (1) all jobs, positions, roles, titles, etc. for personnel in the Service Department, and the duties and qualifications of each; (2) the intake process for anyone who talks to the Service Department about child sex abuse; (3) whether reports of child sex abuse are handled differently than reports of other types of wrongdoing; (4) how documents generated by the Service Department, or received directly from local congregations, are stored and maintained.

9. Structure, function, operation of the Governing Body, included but not limited to (1) the structure, membership, composition, and organization of the Governing Body including any committees or established subsets of the

Governing Body from 1973 to the present, (2) the Governing Body's role in researching, considering, debating, creating, adopting, implementing, and evaluating organizational policy within the Jehovah's Witness Religion, (3) the identities, duties, and responsibilities of agents and staff members to the individual members of the Governing Body, to the Governing Body as a whole, or to any committee or established subset of the Governing Body from 1973 to the present, (4) the Governing Body's role in considering, investigation, researching, adjudicating, and/or responding to specific allegations of childhood sexual abuse committed by Jehovah's Witnesses or issuing directions or instructions to other to so consider, investigation, researching, adjudicating, and/or responding to such specific allegations, (5) the orders, decisions, decrees, or other directives authored, issued, or approved by the Governing Body or any committee or established subset of the Governing Body regarding any specific investigation, allegation, complaint, lawsuit, or other matter involving childhood sexual abuse committed by Jehovah's Witnesses, (6) the Governing Body's awareness and discussions of, and decision making process regarding claims of sexual abuse by Gunnar Hain and Bruce Mapley, Sr., and (7) the efforts of the Governing Body to determine the existence, occurrence, prevalence, and/or

scope of childhood sexual abuse committed by Jehovah's Witnesses within the Jehovah's Witness religion.

10. Please identify all written and unwritten policies and procedures that apply to the obtaining and storing of information about child sex abuse allegations occurring within Jehovah's Witness congregations.

11. Identify how elders have been instructed to report instances or allegations of child sex abuse to WTNY, WTPA, CCJW, or any other Jehovah's Witness entity or group responsible for managing and responding to instances or allegations of child sex abuse.

12. Procedures for receiving calls from elders about allegations of child sex abuse as they existed during the time period 1973 to 1992.

   a. How calls received from elders were passed from the Legal Department to the Service Department;

   b. Documentation of the calls to and information received by the Service Department;

   c. How the Service department information is stored in the HuB database; and

   d. Sharing of information between legal department and service department regarding calls from elders about allegations of child sex abuse.

13. Procedures for receiving calls from elders about allegations of child abuse.

    a. How calls received from elders are passed from the Legal Department to the Service Department;

    b. Documentation of the calls to and information received by the Service Department;

    c. How the Service department information is stored in the HuB database; and

    d. Sharing of information between legal department and service department regarding calls from elders about allegations of child sex abuse.

    e. The rules, policies, protocols and procedures followed by Service Department personnel when responding to inquiries, requests or reports from congregations, elders or members of Jehovah's Witnesses involving childhood sexual abuse.

14. The corporate and administrative structure of Watchtower Bible and Tract Society of New York, Inc. from 1973 to the present.

15. The managerial hierarchy, staff functions, organization, individual staff job descriptions of the Service Department of Watchtower Bible and Tract Society of New York, Inc. from 1973 to the present.

16. The managerial hierarchy, staff functions, organization, individual staff job descriptions of the Legal Department of Watchtower Bible and Tract Society of New York, Inc. from 1973 to the present.

17. Statistical compilations, records, summaries, databases or other gathering and organization or analysis of information concerning reports of sexual abuse of children by members of the Jehovah's Witnesses, including but not limited to, Governing Body members, district overseers, circuit overseers, elders, ministerial servants, pioneers, publishers, baptized publishers, and individuals.

18. Compilations, summaries, studies, databases, collections or other gathering and organization or analysis of information concerning reports of sexual abuse of children by members of the Jehovah's Witnesses, including but not limited to, Governing Body members, district overseers, circuit overseers, elders, ministerial servants, pioneers, publishers, baptized publishers, and individuals in the possession of the Legal Department.

19. Compilations, summaries, studies, databases, collections or other gathering and organization or analysis of information concerning reports of sexual abuse of children by members of the Jehovah's Witnesses, including but not limited to, Governing Body members, district overseers, circuit overseers,

elders, ministerial servants, pioneers, publishers, baptized publishers, and individuals in the possession of the Service Department.

20. Individual written accounts, reports, summaries, letters, emails, facsimiles, and records, whether or not compiled, concerning reports of sexual abuse of children by members of the Jehovah's Witnesses, including but not limited to, Governing Body members, district overseers, circuit overseers, elders, ministerial servants, pioneers, publishers, baptized publishers, and individuals from received by Watchtower for the time period of 1973 to present.

21. Policies, procedures, protocols, guidelines, and instructions provided by Watchtower Bible and Tract Society of New York, Inc. to elders, ministerial servants, or other members of Jehovah's Witnesses relevant to the investigation, reporting, or documenting of reports, information, accusations, complaints, or admissions of childhood sexual abuse by members of Jehovah's Witnesses, in effect since 1973.

22. Policies, procedures, protocols, guidelines, and instructions provided by the Governing Body to elders, ministerial servants, or other members of Jehovah's Witnesses relevant to the investigation, reporting, or documenting of reports, information, accusations, complaints, or admissions of childhood sexual abuse by members of Jehovah's Witnesses, in effect since 1973.

23. Policies, procedures, protocols, guidelines, and instructions provided by Watchtower Bible and Tract Society of New York, Inc. to elders, ministerial servants, or other members of Jehovah's Witnesses relevant to the cooperation and communication with secular law enforcement agencies concerning reports of childhood sexual abuse by members of the Jehovah's Witnesses, in effect since 1973.

24. The administrative process, procedures, and involvement of corporate personnel in the proposal of, drafting of, review of, and distribution of Body of Elders Letters from the time period of 1973 to the present.

25. The purpose and intent of the Body of Elder letter dated August 1, 1995.

26. The corporate interpretation of, and implementation of, the Body of Elder letter dated August 1, 1995.

27. The purpose and intent of the Body of Elder letter dated March 14, 1997.

28. The corporate interpretation of, and implementation of, the Body of Elder letter dated March 14, 1997.

29. The purpose and intent of the Body of Elder letter dated July 20, 1998.

30. The corporate interpretation of, and implementation of, the Body of Elder letter dated July 20, 1998.

31. The purpose and intent of the Body of Elder letter dated March 23, 1992.

32. The corporate interpretation of, and implementation of, the Body of Elder letter dated March 23, 1992.

33. The purpose and intent of the Body of Elder letter dated February 3, 1993.

34. The corporate interpretation of, and implementation of, the Body of Elder letter dated February 3, 1993.

35. The purpose and intent of the Body of Elder letter dated July 1, 1989.

36. The corporate interpretation of, and implementation of, the Body of Elder letter dated July 1, 1989.

37. The purpose and intent of the Body of Elder letter dated October 1, 2012.

38. The corporate interpretation of, and implementation of, the Body of Elder letter dated October 1, 2012.

39. Any and all education or training provided by Watchtower to its elders and/or ministerial servants, regarding preventing childhood sexual abuse or responding to or investigating an allegation of childhood sexual abuse.

40. Any and all education or training provided by Watchtower to its elders, ministerial servants, or publishers regarding avoiding or preventing childhood sexual abuse.

41. Any and all education or training provided by Watchtower to minor members regarding avoiding, preventing or reporting childhood sexual abuse.

42. Gunnar Hains's association with any Jehovah's Witness Congregation, including Hardin Congregation of Jehovah's Witnesses, including but not limited to the date and place of Hain's baptism, any appointed positions held by Hain, any periods of time Hain served as a regular or auxiliary pioneer, all congregations of which Hain was ever a member, any Judicial Committees, Judicial investigations or congregational discipline (disfellowship, reproof, counsel, marking) involving Hain, and any allegations, rumors, reports, or complaints concerning sexual molestation, sexual abuse, or other improper conduct with a minor of a sexual or potentially sexual nature by Gunnar Hain.

43. Bruce Mapley, Sr.'s association with any Jehovah's Witness Congregation, including Hardin Congregation of Jehovah's Witnesses, including but not limited to the date and place of Mapley, Sr.'s baptism, any appointed positions held by Mapley, Sr., any periods of time Mapley, Sr. served as a regular or auxiliary pioneer, all congregations of which Mapley, Sr. was ever a member, any Judicial Committees, Judicial investigations or congregational discipline (disfellowship, reproof, counsel, marking) involving Mapley, Sr., and any allegations, rumors, reports, or complaints concerning sexual molestation, sexual abuse, or other improper conduct with a minor of a sexual or potentially sexual nature by Bruce Mapley, Sr..

44. The processes, searches, and efforts of the Service Department to gather documents responsive to the March 14, 1997 Body of Elders letter for production in the matter entitled *Osbaldo Padron v. Defendant Doe 1, et al*, San Diego Superior Court Case Number 37-2013-00067529-CU-PO-CTL.

**NOTICE IS FURTHER GIVEN** to defendant that said deponent is requested to bring with him at the above notices time and place the following, which are in his possession or under his control or in the possession or under the control of his attorneys:

1.  Any and all records, written communications, files, reports, or other documentary, tangible, or electronically created or stored information of any kind mentioning or referring to Gunnar Hain.

2.  Any and all records, written communications, files, reports, or other documentary, tangible, or electronically created or stored information of any kind mentioning or referring to Bruce Mapley, Sr.

3.  Any and all records, written communications, files, reports, or other documentary, tangible, or electronically created or stored information of any kind, evidencing the corporate and administrative structure of Watchtower Bible and Tract Society of New York, Inc.

4. Any and all records, written communications, files, reports, or other documentary, tangible, or electronically created or stored information of any kind evidencing the managerial hierarchy, staff functions, organization, individual staff job descriptions of the Legal Department of Watchtower Bible and Tract Society of New York, Inc. from 1973 to the present.

5. Any and all records, written communications, files, reports, or other documentary, tangible, or electronically created or stored information of any kind evidencing the managerial hierarchy, staff functions, organization, individual staff job descriptions of the Service Department of Watchtower Bible and Tract Society of New York, Inc. from 1973 to the present.

6. Any and all records, written communications, files, reports, or other documentary, tangible, or electronically created or stored information of any kind, evidencing the statistical compilations, databases, records, summaries, or other gathering and organization or analysis of information concerning reports of sexual abuse of children by members of the Jehovah's Witnesses, including but not limited to, elders, ministerial servants, and publishers.

7. Any and all records, written communications, files, reports, or other documentary, tangible, or electronically created or stored information of any kind, evidencing compilations, summaries, studies, databases, collections or other gathering and organization or analysis of information concerning reports of sexual abuse of children by members of the Jehovah's Witnesses, including but not limited to, Governing Body members, district overseers, circuit overseers, elders, ministerial servants, pioneers, publishers, baptized publishers, and individuals in the possession of the Legal Department.

8. Any and all individual written accounts, reports, summaries, letters, emails, facsimiles, and records, whether or not compiled, concerning reports of sexual abuse of children by members of the Jehovah's Witnesses, including but not limited to, Governing Body members, district overseers, circuit overseers, elders, ministerial servants, pioneers, baptized publishers, and individuals generated prior to December 31, 1997.

9. Any and all records, written communications, files, reports, or other documentary, tangible, or electronically created or stored information of any kind evidencing the policies, procedures, protocols, guidelines, and instructions provided by Watchtower Bible and Tract Society of New

York, Inc. to elders, ministerial servants, or other members of Jehovah's Witnesses relevant to the investigation, reporting, or documenting of reports, information, accusations, complaints, or admissions of childhood sexual abuse by members of Jehovah's Witnesses, in effect since 1973.

10. Any and all records, written communications, files, reports, or other documentary, tangible, or electronically created or stored information of any kind evidencing the policies, procedures, protocols, guidelines, and instructions provided by the Governing Body to elders, ministerial servants, or other members of Jehovah's Witnesses relevant to the investigation, reporting, or documenting of reports, information, accusations, complaints, or admissions of childhood sexual abuse by members of Jehovah's Witnesses, in effect since 1973.

11. Any and all records, written communications, files, reports, or other documentary, tangible, or electronically created or stored information of any kind evidencing the administrative process, procedures, and involvement of corporate personnel in the proposal of, drafting of, review of, and distribution of Body of Elders Letters from the time period of 1973 to the present.

12. Any and all records, written communications, files, reports, or other documentary, tangible, or electronically created or stored information of

any kind, evidencing the policies, procedures, protocols, guidelines, and instructions provided by Watchtower Bible and Tract Society of New York, Inc. to elders, ministerial servants, or other members of Jehovah's Witnesses relevant to the cooperation and communication with secular law enforcement agencies concerning reports of childhood sexual abuse by members of the Jehovah's Witnesses, in effect since 1973.

13. Any and all internal memorandum, instructions, guidelines, emails, policies, procedures, or other documentary, tangible, or electronically stored information of any kind, evidencing Watchtower Bible and Tract Society of New York, Inc. corporate discussion of, interpretation of, or guidelines on the utilization of, that Body of Elder letter dated August 1, 1995.

14. Any and all internal memorandum, instructions, guidelines, emails, policies, procedures, or other documentary, tangible, or electronically stored information of any kind, evidencing Watchtower Bible and Tract Society of New York, Inc. corporate discussion of, interpretation of, or guidelines on the utilization of, that Body of Elder letter dated March 14, 1997.

15. All letters, emails, facsimiles, or other documentary, tangible, or electronically stored information of any kind received by the Service

Department (whether operating under Watchtower or Christian Congregation of Jehovah's Witnesses, Inc.) at any time in response to the Body of Elder Letter Dated March 14, 1997.

16. Any and all internal memorandum, instructions, guidelines, emails, policies, procedures, or other documentary, tangible, or electronically stored information of any kind, evidencing Watchtower Bible and Tract Society of New York, Inc. corporate discussion of, interpretation of, or guidelines on the utilization of, that Body of Elder letter dated July 20, 1998.

17. Any and all internal memorandum, instructions, guidelines, emails, policies, procedures, or other documentary, tangible, or electronically stored information of any kind, evidencing Watchtower Bible and Tract Society of New York, Inc. corporate discussion of, interpretation of, or guidelines on the utilization of, that Body of Elder letter dated March 23, 1992.

18. Any and all internal memorandum, instructions, guidelines, emails, policies, procedures, or other documentary, tangible, or electronically stored information of any kind, evidencing Watchtower Bible and Tract Society of New York, Inc. corporate discussion of, interpretation of, or

guidelines on the utilization of, that Body of Elder letter dated February 3, 1993.

19. Any and all internal memorandum, instructions, guidelines, emails, policies, procedures, or other documentary, tangible, or electronically stored information of any kind, evidencing Watchtower Bible and Tract Society of New York, Inc. corporate discussion of, interpretation of, or guidelines on the utilization of, that Body of Elder letter dated July 1, 1989.

20. Any and all internal memorandum, instructions, guidelines, emails, policies, procedures, or other documentary, tangible, or electronically stored information of any kind, evidencing Watchtower Bible and Tract Society of New York, Inc. corporate discussion of, interpretation of, or guidelines on the utilization of, that Body of Elder letter dated October 1, 2012.

21. Any and all memorandum, instructions, guidelines, policies, procedures, manuals or other documentary, tangible, or electronically stored information of any kind, instructing Service Department personnel when responding to inquiries, requests or reports from congregations, elders, or members of Jehovah's Witnesses involving childhood sexual abuse.

22. Any and all records, written communications, files, reports, or other documentary, tangible, or electronically created or stored information of any kind evidencing or explaining Watchtower's document retention policies from 1973 to the present.

23. Any and all records, written communications, files, reports, or other documentary, tangible, or electronically created or stored information of any kind explaining or evidencing any and all education or training provided by Watchtower to its elders, ministerial servants, or publishers regarding avoiding or preventing childhood sexual abuse.

24. Any and all records, written communications, files, reports, or other documentary, tangible, or electronically created or stored information of any kind explaining or evidencing any and all education or training provided by Watchtower to minor members regarding avoiding, preventing or reporting childhood sexual abuse.

25. Each iteration of the guidelines entitled "Branch Organization" that was in effect in between 1973 to the present.

26. Any and all records, written communications, files, reports, or other documentary, tangible, or electronically created or stored information of any kind explaining or evidencing the relationship between Hardin

Congregation of Jehovah's Witnesses and Watchtower Bible and Tract Society of New York, Inc.

27. Any and all minutes, transcriptions, audio, video, or stenographic recordings or reproductions of all meetings or portions of meetings of the Governing Body regarding childhood sexual abuse committed by Jehovah's Witnesses, including but not limited to formulation of policy and discussion of particular childhood sexual abuse matters.

28. Any and all minutes, transcriptions, audio, video, or stenographic recordings or reproductions of all meetings or portions of meetings of any committee comprised of members of the Governing Body regarding childhood sexual abuse committed by Jehovah's Witnesses, including but not limited to formulation of policy and discussion of particular childhood sexual abuse matters.

29. Any and all minutes, transcriptions, audio, video, or stenographic recordings or reproductions of all meetings or portions of meetings of any committee comprised of members of the Governing Body regarding he above-captioned matter involving alleged or confirmed childhood sexual abuse committed by Gunnar Hain and Bruce Mapley, Sr.

30. Any and all internal memorandum, instructions, guidelines, emails, policies, procedures, or other documentary, tangible, or electronically

stored information of any kind generated by or circulated among the Governing Body regarding childhood sexual abuse by Jehovah's Witnesses, including but not limited to formulation of policy and particular childhood sexual abuse matters.

31. Any and all internal memorandum, instructions, guidelines, emails, policies, procedures, or other documentary, tangible, or electronically stored information of any kind generated by or circulated among the Governing Body regarding the above-captioned matter involving alleged or confirmed childhood sexual abuse committed by Gunnar Hain and Bruce Mapley, Sr.

32. Any and all orders, instructions, decisions, decrees, or other directives authored, issued, or approved by the Governing Body regarding any specific claim, allegation, or report of childhood sexual abuse committed by Jehovah's Witnesses.

33. Any and all internal memorandum, instructions, guidelines, emails, policies, procedures, or other documentary, tangible, or electronically stored information of any kind transmitted between the Governing Body and any department of Watchtower Bible and Tract Society of New York, Inc. regarding childhood sexual abuse committed by Jehovah's Witnesses, excluding communications with the legal department.

34. Any and all records, written communications, files, reports, or other documentary, tangible, or electronically created or stored information of any kind transmitted between the Governing Body and any person or entity regarding childhood sexual abuse committed by Jehovah's Witnesses.

35. Any and all written job descriptions or orientation or instructional materials provided to employees, volunteers, agents, or staff assisting the Governing Body, or any committed or established subset of the Governing Body.

36. Any and all records, written communications, files, reports, or other documentary, tangible, or electronically created or stored information of any kind detailing the structure, membership, and organization of the Governing Body.

37. Any and all records, written communications, files, reports, or other documentary, tangible, or electronically created or stored information of any kind detailing the membership of the various Governing Body committees.

DATED this _____ day of _____, 202__.

MEYER, SHAFFER & STEPANS, PLLP

/s/ Ryan Shaffer

Ryan R. Shaffer

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this _____ day of _____, 202___, a true and

accurate copy of the foregoing was served on the following via email and U.S.

Mail:

Jon A. Wilson
Brett C. Jensen
BROWN LAW FIRM, P.C.
315 North 24th Street
PO Drawer 849
Billings, MT  59103
jwilson@brownfirm.com
bjensen@brownfirm.com

Joel M. Taylor, Esq. *pro hac vice*
Miller McNamara & Taylor LLP
100 South Bedford Road, Suite 340
Mount Kisco, NY  10549
jtaylor@mmt-law.com
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

Gerry P. Fagan
Christopher T. Sweeney
Jordan W. FitzGerald
27 North 27th Street, Suite 1900
P.O. Box 2559
Billings, MT  59103
gerry.fagan@moultonbellingham.com
christopher.sweeney@moultonbellingham.com
jordan.fitzgerald@moultonbellingham.com
*Attorneys for Defendant Watch Tower Bible and Tract Society of Pennsylvania*

Bruce G. Mapley, Sr.
3905 Caylan Cove
Birmingham, AL 35215
bruce_mapley@yahoo.com

/s/ Ryan Shaffer