IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT and CAMILLIA MAPLEY, | CV 20-52-BLG-SPW |
| Plaintiffs, | |
| vs. | ORDER |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, INC., | |
| Defendants. | |

Before the Court is Plaintiffs Tracy Caekaert and Camillia Mapley's Motion to Compel Production of All Discoverable Documents and Information at the Jehovah's Witnesses' New York Headquarters. (Doc. 191). Plaintiffs initially asked the Court to require Defendant Watchtower Bible and Tract Society of New York, Inc. ("WTNY") to search for, obtain, and produce all discoverable information and documents at the Jehovah's Witnesses' New York headquarters. (*Id*. at 2).[1] On reply, Plaintiffs narrowed their request for relief to include only two Jehovah's Witnesses entities at the New York headquarters—the U.S. Branch

---

[1] For consistency, when citing to the docket, the Court will use the page numbers generated by CM/ECF rather than those assigned by the parties themselves.

Office, including the Service Department, and the Christian Congregation of Jehovah's Witnesses ("CCJW").  (Doc. 207 at 2).

WTNY opposes the motion, arguing that WTNY is a distinct entity from the U.S. Branch Office and CCJW and thus does not control any of their documents. (Doc. 202 at 3-4).  Without the requisite control, WTNY cannot be compelled to produce responsive documents from the U.S. Branch Office and CCJW.  (*Id*.).

For the following reasons, the Court grants the motion as to WTNY's obligation to search for, obtain, and produce all discoverable information and documents at the Service Department and CCJW, and denies the motion with respect to the U.S. Branch Office.

I.     **Relevant Background**

The Court is familiar with the facts of this case and will only recite those relevant to the instant motion.

According to Plaintiffs, the Jehovah's Witnesses church drafts "Circuit Overseer Reports," which document activities, news, and problems at the church's local congregations.  (Doc. 192 at 6 (citing Doc. 192-1)).  The reports are drafted by church personnel, known as circuit overseers, and sent to the church's "Branch Office" in New York.  *Id*.

During this litigation, Plaintiffs independently obtained a circuit overseer report from a 1978 visit to the Hardin Congregation that stated, "Gunnar Hain was

restricted (prayers, talks, etc.); Society was not notified. The elders are intending to write immediately, as several months have passed." (*Id*. at 7 (citing Doc. 192-2 at 2)). After reviewing this report, Plaintiffs requested WTNY produce all circuit overseer reports that mention the perpetrators in this case. (Doc. 192-3 at 3, 6). WTNY responded, "After a diligent search, WTNY has been unable to locate information responsive to this request." (*Id*.). Plaintiffs note that WTNY "has not stated whether its 'diligent search' included" the circuit overseer reports sent to the Branch Office. (Doc. 192 at 8).

WTNY also refused to search the church's Service Department for child sex abuse records from March 2001 to present. (*Id*.). The Service Department operated through WTNY until March 2001, when it began operating through CCJW. WTNY argues that when this transition occurred, WTNY no longer had control of incoming Service Department documents. (Doc. 202 at 8).

Plaintiffs filed this motion in response to what Plaintiffs perceive as WTNY's overly narrow search for responsive documents. Plaintiffs believe WTNY has control over documents in the U.S. Branch Office—and by extension the Service Department—and CCJW because WTNY shares personnel with the two entities, has previously searched their documents in legal actions, and is overseen by the same governing body of elders. Thus, Plaintiffs argue WTNY can produce responsive documents from the U.S. Branch Office and CCJW.

## II.    Legal Standard

Federal Rule of Civil Procedure 34 allows a party to request the production of documents that are "in the responding party's possession, custody, or control." Documents are deemed to be within the responding party's control for purposes of Rule 34 if the party has actual control over the documents or has the legal right to obtain the documents on demand. *United States v. Int'l Union of Petroleum and Indus. Workers, AFL–CIO,* 870 F.2d 1450, 1452 (9th Cir. 1989) ("*International Union*"). *See also In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (control under Rule 34 "is defined as the legal right to obtain documents upon demand."). As such, a "party responding to a Rule 34 production request cannot furnish only that information within his immediate knowledge or possession; he is under an affirmative duty to seek that information reasonably available to him from his employees, agents, or others subject to his control." *Rogers v. Giurbino,* 288 F.R.D. 469, 485 (S.D. Cal.  2012) (internal citations omitted). However, in the Ninth Circuit, a party does not have control over discoverable documents and an affirmative duty to seek such documents held by another person or entity if it only has the practical ability to obtain them. *Citric Acid*, 191 F.3d at 1108.

In assessing whether a party has control over documents held by another person or entity, "[t]he relationship between the party and the person or entity having actual possession of the document is central[.]" *Osborne v. Billings Clinic*,

CV 14-126-BLG-SPW, 2015 WL 1412626, at *6 (D. Mont. Mar. 26, 2015) (citing *Estate of Young ex rel. Young v. Holmes*, 134 F.R.D. 291, 294 (D. Nev. 1991)). *But see Otos v. WHPacific, Inc.*, 2:16-cv-01623-RAJ, 2017 WL 2452008, at *2 (W.D. Wash. June 6, 2017) (refusing to assess the nature of the relationship of the parties in determining "control"). Courts consider a number of factors related to the nature of a relationship between entities, including (1) commonality of ownership, (2) exchange or intermingling of personnel, (3) exchange of documents in the ordinary course of business, and (4) employing the same attorneys. *Thales Avionics Inc. v. Matsushita Avionics Sys. Corp.*, No. SACV 04-454-JVS(MLGx), 2006 WL 6534230, at *4 (C.D. Cal. Mar. 8, 2006); *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp. Inc.*, CV 14-03053 MWF (AFMx), 2018 WL 1157752, at *19 (C.D. Cal. Mar. 2, 2018).

As for the parties' respective burdens of proof, the party seeking production of documents over which control is disputed bears the burden of proving that the opposing party has control over such documents. *International Union*, 870 F.2d at 1452. At the same time, "when a party claims that all the requested documents have already been produced, it must state that fact under oath in response to the request." 7 James Wm. Moore, et al., *Moore's Federal Practice – Civil* § 34.13(2)(a) (2023). "Similarly, if a responding party contends that documents are not in its custody or control, the court may require more than a simple assertion to

that effect." *Bryant v. Armstrong*, 285 F.R.D. 596, 603 (S.D. Cal. 2012) (citing

Moore, *supra*, § 34.13(2)(a)); *DLJ Mortg. Cap., Inc. v. Lemon Creek Ranch*, CV

12-55-BU-DLC, 2013 WL 12134036 at *2 (citing *Bryant*, 285 F.R.D. at 603).

## III.   Discussion

In their initial brief, Plaintiffs apply the practical control test.  (Doc. 192 at

10 (citing *Coventry Cap. US LLC v. EEA Life Settlements Inc.*, 334 F.R.D. 68, 72-

73 (S.D.N.Y. 2020))).  WTNY points out in its response that Plaintiffs applied the

wrong test, so Plaintiffs should withdraw the motion.  (Doc. 202 at 4-5).  On reply,

Plaintiffs acknowledge they applied the incorrect standard for custody but argue

their points equally apply to the legal right test.  (Doc. 207 at 5, 7).  Specifically,

Plaintiffs argue that WTNY has control of documents held by the U.S. Branch

Office and CCJW because the evidence shows (1) the church's entities are

centrally controlled and coordinated; (2) personnel among the church's entities

overlap; (3) WTNY and other church entities previously coordinated on child sex

abuse information; (4) WTNY and the Service Department previously coordinated

to transfer WTNY's records to CCJW in March 2001; and (5) WTNY previously

searched the Service Department records in a 2014 case against a Vermont

congregation.  (Doc. 192 at 19-26).  In support of these points, Plaintiffs provide

deposition testimony from church personnel and other exhibits.  As for caselaw,

Plaintiffs cite the *Thales* factors in support of their first three points.

6

In response, WTNY argues that under the legal rights test, it does not have control over CCJW or U.S. Branch Office documents because WTNY is distinct from the other entities within the church. (Doc. 202 at 4, 8). Plaintiffs' evidence demonstrating otherwise "grossly mislead[s]" the Court because it is outdated. (*Id*. at 9). Additionally, WTNY contends that no parent-child corporate relationship exists between it and any other entity. (*Id*. at 7-8). Lastly, WTNY asserts that Plaintiffs have not demonstrated any efforts to obtain records from CCJW, as required, and instead "simply complain they are not satisfied with WTNY's representation that it conducted a thorough search of its records." (*Id*. at 8 (citing *Oil Heat Inst. Of Or. v. Nw. Nat. Gas*, 123 F.R.D. 640, 642 (D. Or. 1988))).

As an initial matter, the Court agrees with WTNY that the legal right test applies to Plaintiffs' motion. *See Citric Acid*, 191 F.3d at 1108. However, the Court also agrees with Plaintiffs that their main points still are relevant. Since Plaintiffs admit to their error on reply and supply the Court with evidence applicable to the legal right test, denial of the motion on that basis is inappropriate.

Looking to the substance of the parties' arguments, the Court finds that WTNY has control over documents held by CCJW and the Service Department because WTNY failed to provide an affirmation under oath or any evidence that it does not have control over Service Department and CCJW documents. *See Bryant*, 285 F.R.D. at 603; *DLJ Mortg. Cap.*, 2013 WL 12134036 at *2. Instead, WTNY

7

simply asserts that it is distinct from the Service Department and CCJW and does not have control over their records.  (Doc. 202 at 4, 8).  Likewise, when analogizing to caselaw, WTNY summarizes, in great detail, the other cases' facts and holdings, but then merely states, for instance, "The same is true here" to support the analogies.  (*Id*. at 7).

To justify its failure to provide evidence of its assertions, WTNY seems to rely on the contention that the Court "must accept Jehovah's Witnesses' explanation of its organizational structure."  (Doc. 202 at n.2 (citing *Serbian E. Orthodox Diocese for the U.S.A. and Canada v. Milivojevich*, 426 U.S. 696, 724-25 (1976))).  Though the Court agrees with WTNY that it cannot question WTNY's asserted organizational structure under *Milivojevich*, *Milivojevich* does not absolve WTNY of its duty to support its explanation of its organizational structure with evidence.

Where WTNY cites to evidence in the record, it is only to rebut narrow arguments made by Plaintiffs that do not impact the ultimate issue of control.  For instance, WTNY argues that there is no parent-child corporate relationship between WTNY and any other entity that would give WTNY the legal right to demand documents.  (Doc. 202 at 7-8 (citing Doc. 202-1)).  However, a parent-child corporate relationship is only one way an entity can have control over another entity's records.  *See, e.g.*, *DLJ Mortg. Cap.*, 2013 WL 12134036 at *2 (finding

that one company holding interest in a loan had a legal right to demand files from the company that originally made the loan and assigned the interest).  Additionally, in response to Plaintiffs' argument that WTNY's transfer of Service Department records to CCJW in 2001 required coordination among the entities, WTNY only contends that Plaintiffs cannot prove that WTNY transferred the pre-March 2001 records to CCJW.  (Doc. 202 at 8).  Even accepting WTNY's assertion that it possesses the pre-2001 records and CCJW possesses the post-2001 records, WTNY's argument does not speak to whether it has a legal right to demand the post-March 2001 documents from CCJW.

Significantly, WTNY also does not address Plaintiffs' extensive circumstantial evidence, supported by deposition testimony and other exhibits, demonstrating that WTNY has control over the documents held by the Service Department and CCJW under *Thales*.  (Doc. 192 at 11-18).  Citing to a 2012 deposition from the assistant overseer of the Service Department, Plaintiffs explain that "[p]ersons within WTNY have 'authority to implement or impose policies, procedures or decisions upon CCJW.'"  (*Id*. at 17 (citing 192-5 at 4-5)).  Given such authority, WTNY presumably can order CCJW to search its records.  Plaintiffs also note that the church's legal department, which operates through WTNY, serves as legal counsel for WTNY and the U.S. Branch Committee, which oversees the Service Department.  (*Id*. at 14 (citing Docs. 192-4 at 9; 192-5 at 6;

192-8 at 3)); *Almont Ambulatory Surgery Ctr.*, 2018 WL 1157752, at *19. In fact,

WTNY's legal department had access to and searched the Service Department files

in a 2014 case against a Jehovah's Witnesses congregation in Vermont. (*Id.* at 17

(citing Doc. 192-14 at 6-7)). In terms of the exchange of personnel among the

entities, Plaintiffs point out that Gary Breaux served as assistant secretary of

WTNY, overseer of the Service Department, and vice president and a voting

member of CCJW at various points between 2007 and 2022.[2] (Doc. 192 at 16-17

(citing Doc. 160-2 at 2-3; Doc. 192-11 at 3-4; Doc. 192-12 at 3; Doc. 192-13 at

5)); *Thales Avionics*, 2006 WL 6534230, at *4. Lastly, WTNY, the Service

Department, and CCJW are all overseen by the Governing Body and must abide by

guidelines approved by the Governing Body. (*Id.* at 12 (citing Doc. 192-4 at 4;

Doc. 952-5 at 5; Doc. 192-6)); *Thales Avionics*, 2006 WL 6534230, at *4.

    The Court disagrees with WTNY that the Plaintiffs' exhibits "grossly

mislead" the Court into accepting facts that are no longer true because of the age of

the documents. To the contrary, Plaintiffs are transparent in acknowledging the

age of the documents but assert that they are all the evidence they have to work off

of. Since WTNY provides no evidence to counter the present validity of Plaintiffs'

asserted facts, the Court accepts them as true. Additionally, the documents WTNY

---

[2] Plaintiffs frame Breaux's service in various roles as simultaneous. (*See* Doc. 192 at 16-17).
However, the depositions and exhibits cited by Plaintiffs are from various years and do not
indicate that he held each role at the same time. Thus, the Court infers from the documents that
Breaux held each role at some point in time but not necessarily simultaneously.

uses as examples of Plaintiffs' "egregious" actions are the circuit overseer reports that Plaintiffs are trying to get access to and have no bearing on the facts Plaintiffs use to evidence WTNY's control over other entities' documents. (*See* Docs. 192-1, 192-2).

WTNY's adamance that Plaintiffs are fabricating its legal right to demand post-March 2001 documents from CCJW and the Service Department is further undermined by a California court of appeals decision cited by Plaintiffs that found that WTNY had custody and control over such documents. *Padron v. Watchtower Bible & Tract Society of New York, Inc.*, 225 Cal. Rptr. 3d 81 (Cal Ct. App. 2017). In *Padron*, the plaintiff requested "All letters, emails, facsimiles, or other documentary, tangible, or electronically stored information of any kind [WTNY] received in response to the Body of Elder Letter dated March 14, 1997." *Id*. at 87. WTNY initially objected that the volume of responsive documents made the request burdensome. *Id*. at 88. The district court overruled the objection and required production. *Id*. at 89. WTNY then refused to produce documents from after March 2001, arguing it did not have custody or control over such documents because the Service Department began operating through CCJW instead of WTNY in March 2001. *Id*. at 90. The plaintiff disagreed, contending that the distinction between WTNY and CCJW "was unimportant," and that WTNY could command the Service Department to search for and produce such documents. *Id.*

The court appointed a discovery referee, who agreed with the plaintiff:

The structure of the Jehovah's Witnesses is complicated, and at the risk of oversimplification, based on the evidence presented in this motion, an entity known as the United States Branch oversees the Jehovah's Witnesses in the United States through a committee known as the U.S. Branch Committee. The various activities of the United States Branch are carried out through corporations or departments. Watchtower is one of the corporations and the service department is one of the departments. The service department communicates with various Jehovah's Witnesses congregations and bodies of elders in the United States, and up until March 2001, when CCJW was formed, the service department operated through Watchtower. In March 2001, after the formation of CCJW, the service department began operating through CCJW. The evidence indicates that the creation of CCJW was primarily to reinforce the concept that the Jehovah's Witnesses are a religion as opposed to simply a printing corporation, as Watchtower was apparently being perceived, but there was no substantive change in the purpose or operation of the service department after March 2001. The service department has received responses to the March 14, 1997 Body of Elders letter since 1997 and continuing to the present.

*Id*. at 91. The discovery referee further found that WTNY's legal department provides legal services to WTNY and CCJW. *Id*. In fact, a member of the Service Department declared in 2015 that the WTNY legal department "was physically examining each file to locate correspondence to the March 14, 1997 letter." *Id*. Without any rebuttal declarations or evidence from WTNY, the discovery referee found that WTNY had access to and control of the responsive documents before and after March 2001 and recommended WTNY be required to produce responsive documents. *Id*. at 92. The district and appellate courts affirmed. *Id*.[3]

---

[3] The *Padron* court went on to sanction WTNY for refusing to comply with the order to produce the documents, stating that WTNY "abused the discovery process" by "cavalierly refus[ing] to

Here, despite Plaintiffs' discussion of *Padron* (Doc. 192 at 23-24), WTNY refuses to address *Padron*'s application.  Without any rebuttal by WTNY, the Court finds *Padron*'s holding that WTNY has control over post-March 2001 documents held by CCJW and the Service Department on point.

Lastly, the Court refuses to deny the motion on the grounds that Plaintiffs allegedly have not attempted service on CCJW.  Plaintiffs assert they asked if they could serve WTNY's lawyers—who also represent CCJW—but WTNY's lawyers said no without further explanation.  (Doc. 207 at 7).  WTNY does not directly respond to Plaintiffs' argument but instead just states Plaintiffs never attempted to obtain the records from CCJW and the motion should be denied.  Given WTNY's failure to respond to Plaintiffs' recollection of the events, the Court refuses to deny the motion on this basis.

Thus, based on Plaintiffs' evidence and the lack of any substantive response from WTNY, the Court finds WTNY has the legal right to command the Service Department and CCJW to search their records and produce responsive documents. The Court grants the motion as to the Service Department and CCJW.

As to the U.S. Branch Office, Plaintiffs did not meet their burden to provide evidence demonstrating WTNY has a right to command responsive documents.

---

acknowledge the consequences of [its] losses and the validity of the court's orders" to produce responsive documents." *Id*. at 104.

Plaintiffs state WTNY has control over the U.S. Branch Office's documents because (1) the Service Department is part of the U.S. Branch Office, (2) WTNY and the U.S. Branch Office have indistinguishable purposes, so they are the same entity, and (3) the U.S. Branch Office uses WTNY's letterhead to communicate with elders and congregations in the United States.  (Doc. 192 at 15 (citing Doc. 192-4 at 11); Doc. 207 at 2-3 (citing Doc. 207-1 at 2-3; Doc. 207-2; Doc. 117-1 at 3-4)).  None of these facts show WTNY has a legal right to command anything from the U.S. Branch Office.  At most, they show the U.S. Branch Office and WTNY are affiliated.  Given the weakness of Plaintiffs' evidence, Plaintiffs have not met their burden.  The Court denies the motion as to the U.S. Branch Office.

## IV.    Conclusion

IT IS SO ORDERED that Plaintiffs Tracy Caekaert and Camillia Mapley's motion (Doc. 191) is GRANTED with respect to searches of and production of responsive documents from the Service Department and CCJW, and denied as to the U.S. Branch Office.  IT IS FURTHER ORDERED that WTNY must search or order a search of the documents at the Service Department and CCJW, and produce all responsive documents.

DATED the 22nd day of May, 2023.

*Susan P. Watters*

SUSAN P. WATTERS
United States District Judge

14