IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT and CAMILLIA MAPLEY,<br><br>Plaintiffs,<br><br>vs.<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIERY OF PENNSYLVANIA, INC.<br><br>Defendants. | CV 20-52-BLG-SPW<br><br>ORDER |

Before the Court is Plaintiffs Tracy Caekaert and Camillia Mapley's Motion to Compel Production of Non-Privileged Information in Documents Withheld on Basis of Clergy-Penitent Privilege. (Doc. 187). Plaintiffs request production, or, in the alternative, *in camera* review, of 14 documents withheld by Defendant Watchtower Bible and Tract Society of New York, Inc. ("WTNY"), which asserts they are protected by clergy-penitent privilege. (*Id.*). The parties filed responsive briefing (Docs. 193, 203), and the motion is ripe.

For the following reasons, the Court grants *in camera* review of Documents 27-34, 36, 37, and 38 in WTNY's privilege log (Doc. 188-3). As to Documents 35, 39, and 40, the Court finds they are protected by clergy-penitent privilege and were properly withheld by WTNY.

1

I.  **Relevant Background**

The Court is familiar with the facts of this case and will reiterate only those necessary to this motion.

On January 1, 1997, WTNY published an article setting forth the scriptural principles regarding child molesters. (Doc. 193-1 ("January Article")). The article describes how a child molester may repent for their act(s) but cannot serve in a position of responsibility in the congregation. (*Id.* at 5). On March 14, 1997, WTNY communicated to the Jehovah's Witness congregations in the United States that they must provide WTNY with reports on any known child molesters currently or formerly in appointed positions in the congregation. (Doc. 188-4 at 3-4 ("WTNY Letter")). The reports were to include details about the molester, the victim, the abuse, and any disciplinary action taken. (*Id.* at 4). The letter also required congregations with known child molesters to notify other congregations if the molesters moved congregations. (*Id.* at 3). The notifications were to include details about the abuse, what the elders in the old congregation did to assist the abuser, and any necessary precautions. (*Id.*). The old congregation also was required to send a copy of the notification to WTNY. (*Id.*).

II. **Legal Standard**

Under Federal Rule of Civil Procedure 45(e)(2)(A):

A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must: (i)

2

expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

In civil cases, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Montana Code Annotated § 26-1-804 provides that "[a] member of the clergy or priest may not, without the consent of the person making the confession, be examined as to any confession made to the individual in the individual's professional character in the course of discipline enjoined by the church to which the individual belongs." A party asserting clergy-penitent privilege has the burden to prove the withheld documents/communications contain (1) a confession or other non-penitential statement made to a member of the clergy; (2) in confidence; (3) for the purpose of seeking or receiving religious guidance, admonishment, or advice; (4) so long as the cleric was acting in their religious role pursuant to the established practices of the subject church. *Montana v. MacKinnon*, 957 P.2d 23, 28 (Mont. 1998).

When a party seeks *in camera* review to contest assertions of privilege, "the party opposing the privilege need only show a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *In re Grand Jury Investigation*, 974 F.2d 1068, 1075 (9th Cir. 1992). The threshold for this showing "need not be a

stringent one" so as to discourage abuse of privilege and "ensure that mere assertions of [] privilege will not become sacrosanct." *Id.* at 1072.

## III. Analysis

Before discussing the merits of Plaintiffs' motion with respect to each document, the Court will resolve a dispute between the parties over the scope of clergy-penitent privilege. Plaintiffs emphasize that clergy-penitent privilege must be strictly construed, and "[j]ust because information about child sex abuse is considered confidential by the Jehovah's Witness church does not mean it is privileged under applicable law." (Doc. 188 at 11 (citing Doc. 79 at 19)). Accordingly, statements made to a cleric without a corresponding request for advice, statements of confessions that are not kept confidential, and reports of known child molesters are not privileged. (*Id.* at 12).

WTNY acknowledges that privileges must be strictly construed but points out that the Court's ruling cannot undermine the statutory purpose of a privilege—here, to protect confidential confessions and the constitutional right to the free exercise of religion. (Doc. 193 at 10-11). As such, clergy-penitent privilege "must be interpreted broadly to protect all *confidential*—not just *penitential*—communications." (*Id.* at 11 (citing *MacKinnon*, 957 P.2d at 27-28)). In determining what is confidential, courts must defer to churches. (*Id.* at 14). Additionally, the Court must give "'special solicitude to the rights of religious

4

organizations' to operate according to their faith without government interference." (*Id.* at 13 (quoting *Seattle's Union Gospel Mission v. Woods*, 142 S. Ct. 1094, 1094 (2022) (internal citation omitted))). This includes providing churches autonomy in their practice of religious discipline. (*Id.* at 14).

The Court recognizes the deference it must give religious groups in the organization of their internal affairs. However, as this Court has held, such deference does not mean a religious organization determines for the Court what is privileged merely by contending that it is confidential under the religious body's doctrine. (Doc. 79 at 11). The Court was clear in Doc. 79 that *Nunez* did not enact such an expansion of Montana's clergy-penitent privilege, since its discussion was limited to the state's mandatory reporter statute. (*Id.* (citing *Nunez v. Watchtower Bible and Tract Society of New York, Inc.*, 455 P.3d 829 (2020))). "Simply labeling the communications as confidential does not make them privileged. Confidentiality is just one element required under the privilege statute. To hold otherwise would be to ignore the remaining express language" of the clergy-penitent privilege statute. (*Id.* at 12).

At the same time, the Court recognizes that the privilege is not so narrow so as to exclude non-penitential statements made in the course of the church's disciplinary process. *MacKinnon*, 957 P.2d at 28. If WTNY demonstrates, with

5

sufficient factual support, that a confidential statement is made to a clergy member as part of the church's disciplinary process, it is privileged.

Having clarified the scope of clergy-penitent privilege, the Court will address its application to each document sought by Plaintiffs.

*A.   Documents 27-34, 36*

Documents 27-34 and 36 are reports on known child molesters sent from congregations to WTNY pursuant to the March Letter. (Doc. 188-3 at 4). Document 29 was sent from the Hardin Congregation, while the other documents were sent from third party congregations. (*Id.*). Each is described in the privilege log as "confidential communications re: seeking or receiving religious guidance, admonishment, or advice concerning" Gunnar Hain, Bruce Mapley, Martin Svenson, or a third party identified by their initials. (*Id.* at 22-23).

WTNY notes that the Court already determined, after *in camera* review, that Document 29 is privileged. (*Id.* at 22 (citing Doc. 82 at 3-4)). WTNY describes Documents 27, 28, 30-34, and 36 as the same kinds of reports, except from third party congregations. (*Id.* at 4). So, WTNY argues, the Court should apply its reasoning in Doc. 82 and deny production of the documents. (*Id.*).

The Court finds it instructive to detail the briefing and orders leading up to Doc. 82. On April 21, 2021, Plaintiffs filed a Motion to Compel Re: Hardin Congregation of Jehovah's Witnesses Subpoena. (Doc. 58). The withheld

6

documents were described in the privilege log much like the documents withheld here are: "Correspondence from Hardin Congregation elders made in confidence to Watchtower New York for the purpose of seeking or receiving religious guidance, admonishment, or advice," for example. (Doc. 59-3 at 2). The only difference is that the privilege log related to this motion references a person about whom the congregation was seeking advice.

After a hearing on the matter (Doc. 75), the Court ordered *in camera* review because "the Privilege Log provides no details regarding the documents other than vague descriptions of the source of the correspondence and its intended audience." (Doc. 79 at 17). "The difficulty facing the Court is that the Privilege Log contains so few details concerning the documents that the Court is unable to determine whether the communications were made for a religious or secular purpose." (*Id.* at 20). However, because the Hardin Congregation identified the documents in response to Plaintiffs' request for documents relating to the abuse of the plaintiffs, the Court could, at a minimum, find that they were related to the question of the plaintiffs' abuse allegations. (*Id.* at 20-21). In the context of the vague privilege log, the Court found that this was a sufficient factual showing for the Court to order *in camera* review. (*Id.* at 21).

On *in camera* review, the Court reviewed what is labeled as Document 29 in the privilege log in the instant motion. The Court held that, although the document

7

did not include a plea for religious guidance or questions of a religious nature, the Hardin Congregation stated that it learned of information contained in the document from a confession by Gunnar Hain. (Doc. 82 at 3-4). Because the report was based on information learned in a confession, the Court ruled it was subject to the clergy-penitent privilege. (*Id.*).

As to whether Document 29 should be produced here, Plaintiffs acknowledge the Court's past ruling but note they subsequently learned that Hain disclosed his molestation of Plaintiffs to a non-cleric and thus waived the privilege. (Doc. 188 at 18). Plaintiffs filed a motion to compel based on waiver in *Caekaert* (Doc. 132) and argue here that, if the Court agrees with its waiver argument, it should compel production of Document 29. (Doc. 188 at 18-19). If the Court disagrees, Plaintiffs request that the information learned from the privileged confession be redacted and all other information in the report be produced. (*Id.* at 19). Plaintiffs explain they did not previously request redaction because the Hardin Congregation did not disclose that the document was a corporate report requested by the March Letter, so Plaintiffs could not brief how clergy-penitent privilege may or may not apply to certain parts of the document. (*Id.* at n.7).

WTNY argues Document 29 is a letter reporting accusations made against Hain, Martin Svenson, and Bruce Mapley Sr., and references a penitential statement made by Hain. (Doc. 193 at 18). WTNY argues that the document is

8

privileged because the Hardin elders are seeking spiritual guidance and advice from their clergy, and the document contains clergy-privileged communications with parishioners. (*Id.*). As to the waiver issue, WTNY asserts that disclosing facts does not waive a privilege; disclosing the communication does. (*Id.* at 24).

As an initial matter, the Court rejected Plaintiffs' waiver argument in its March 20, 2023, order. (Doc. 217). However, Plaintiffs raise sufficient factual questions concerning the extent to which clergy-penitent privilege protects the entire report based on their current understanding of the document. WTNY did not rebut this specific argument other than to reiterate the Court's reasoning in Doc. 82 and make conclusory statements about the application of clergy-penitent privilege. Given the new context in which Plaintiffs and the Court understand Document 29, *in camera* review is appropriate.

As for the remaining documents—Documents 27, 28, 30-34, and 36—the Court orders *in camera* review for two reasons. First, WTNY did not describe the documents with sufficient specificity for the Court to determine that they are entitled to the same protections granted in Doc. 82. The Court recognizes the documents are generally the same kinds of letters but still is left questioning how they are different (if at all), whether they asked for spiritual or religious guidance, and whether they were based on information obtained from a privileged confession. WTNY's only attempts at assuaging the Court's concerns are

9

conclusory and lack evidentiary support. (*See* Doc. 193 at 17-20). WTNY's privilege log and supporting briefing are just as vague as those in Doc. 79, where the court ordered their *in camera* review.

Second, even assuming that the documents are identical to Document 29, WTNY has not rebutted Plaintiffs' assertion that the portions of the report containing privileged information can be redacted and the remainder produced. Accordingly, like Document 29, redaction may be appropriate if portions of the document are not privileged.

WTNY also wrote in its response to Plaintiffs' requests for production that it was withholding the documents based on the Court's reasoning in Order Granting in Part and Denying in Part the Motion to Compel re the Hardin Congregation Subpoena at 3-4, Rowland v. Watchtower Bible and Tract Society of New York, Inc., CV 20-59-BLG-SPW (D. Mont. Sept. 20, 2021), Doc. 77).[1] (Doc. 188-3 at 12-13, 16-17). There, the Court found that clergy-penitent privilege applied to notes taken by Hardin elders during a meeting with Rowland, Schulze, and others concerning Rowland and Schulze's repressed memories of their abuse. (Rowland, Doc. 77 at 3). However, because the notes were based on Rowland and Schulze's

---

[1] The Court assumes that Doc. 77 in Plaintiffs' brief refers to Doc. 77 in the companion case, *Rowland v. Watchtower Bible and Tract Society of New York, Inc.*, CV 20-59-BLG-SPW, since Doc. 77 in this case is an order granting a motion for pro hac vice. Given the references to filings in *Rowland* throughout the parties' briefing on this motion, the Court will hereinafter refer to documents filed in *Rowland* without a parallel filing in this case as "Rowland, Doc. XX." Filings in this case will be referred to as "Doc. XX."

statements, they could waive the privilege and gain access to the documents. (*Id.* at 4). The Court required the documents to be redacted because they contained statements made to elders by two non-party individuals who had not waived the privilege. (*Id.*).

WTNY did not clarify which part(s) of the Court's holding supports its privilege assertion here. Based on the Court's comparison of its past order and the documents at issue here, the Court assumes WTNY intended to assert that both documents are notes from meetings in which confidential, confessional statements were made to members of the clergy in order to seek spiritual guidance. However, WTNY still needs to provide evidence, not just conclusory assertions, that the documents contain such statements.

Lastly, WTNY argues that Documents 27, 28, 30-34, and 36 should not be produced because they are irrelevant to the case. (Doc. 193 at 26-27). The Court disagrees. Plaintiffs' claims hinge on their allegations that WTNY and Defendant Watch Tower Bible and Tract Society of Pennsylvania, Inc. enacted policies and procedures designed to hide allegations of sexual abuse, retain sexual abusers in the church, and ultimately leave minors vulnerable to future abuse. (*See* Doc. 22 at 4-7). Such policies and procedures allowed the continuous sexual abuse of Plaintiffs by members of the church. (*Id.* at 6-11). Despite Plaintiffs' raising this assertion in their opening brief, WTNY did not respond to it. Accordingly, the

11

Court finds that the practices of WTNY in handling allegations of sexual abuse are not only relevant, but central to Plaintiffs' allegations. Additionally, as Plaintiffs' note, their punitive damages claim is informed by the extent of WTNY's alleged wrongdoing and WTNY's intent in committing the alleged wrongs. (Doc. 188 at 16). The reports at issue may inform both factors, and WTNY provided no argument for the Court to conclude otherwise.

Thus, the Court orders *in camera* review of Documents 27-34 and 36.

*B.     Document 35*

Document 35 is described in the privilege log as a "Confidential communication" from "Be. Congregation" to the Service Department "re: seeking or receiving religious guidance, admonishment, or advice concerning Third Party (K.M.)." (Doc. 188-3 at 23). WTNY asserted in its response to the request for production that the Court's rulings in Doc. 82 and Rowland, Doc. 77 equally apply and justify the application of privilege. (*Id.* at 4, 12-13).

In its response brief, WTNY clarifies that Document 35 is a letter sent from the Belgrade Congregation to WTNY about abuse by a man of his stepdaughter prior to him becoming a Jehovah's Witness. (Doc. 193 at 19-20). WTNY further explains that the letter is "based, at least in part, on privileged communications with the perpetrator." (*Id.* at 20). WTNY quotes the letter to show that it was sent to obtain spiritual guidance: "Please provide us with any additional guidelines that

would help us in determining how we might use a brother such as the perpetrator within the congregation." (*Id.*).

The Court finds WTNY's description in its response brief of Document 35 is sufficient to demonstrate that the Belgrade Congregation was seeking religious guidance from WTNY (*i.e.* how to incorporate a known child molester into the congregation, particularly in light of the March Letter) and contained information gained from a privileged conversation with the perpetrator (*see* Doc. 82 at 2-3). Accordingly, the Court finds that clergy-penitent privilege protects the document and denies Plaintiffs' motion.

C. *Document 37*

Document 37 is an introduction letter for Hain from the Hardin Congregation elders to the Pacific Washington Congregation elders, pursuant to the March Letter. (Doc. 188 at 21; Doc. 193 at 21). It is described in the privilege log as a "Confidential communication Re: seeking or receiving religious guidance, admonishment, or advice concerning Third Party Gunnar Hain." (Doc. 188-3 at 23). In its response to the request for production, WTNY explained that Doc. 82 and Rowland, Doc. 77 apply. (*Id.* at 9-10, 15-17). In briefing, WTNY argues the letter is protected because it is "based, at least in part," on confidential communication between Hain and the Hardin congregation, and because "one

13

purpose of the letter is to give spiritual guidance to clergy in Hain's new congregation so they can minister to him and protect the flock." (Doc. 193 at 21).

WTNY's description of Document 37 and asserted bases for privilege suffer from the same vagueness defects as Documents 27, 28, 30-34, and 36. Additionally, its explanation that the letter is "based, at least in part" on a confidential communication and that "one purpose"—not *the* purpose—of the letter is to give spiritual to guidance, implies that the letter, if not entirely unprivileged, could be redacted to exclude those legitimately privileged parts. Accordingly, the Court orders *in camera* review of Document 37.

### D.  *Document 38*

Document 38 is an "elder-to-elder letter" from Tom Meyers at the Hardin Congregation to WTNY regarding Svenson. (Doc. 193 at 21). The privilege log describes it as a "Confidential communication Re: seeking or receiving religious guidance, admonishment, or advice concerning Svenson." (Doc. 188-3 at 24). In its response brief, WTNY only says the letter "serves no purpose other than being a communication seeking spiritual guidance and advice about how to handle a difficult situation," so it is privileged. (Doc. 193 at 21).

WTNY's asserted basis for privilege for Document 38 is even more vague than Documents 27, 28, 30-34, and 36. Neither the privilege log nor the response brief provide any evidentiary basis for the Court to accept WTNY's assertion of

privilege. Accordingly, the Court orders *in camera* review to determine if Document 38 sought spiritual guidance and advice pursuant to the clergy-penitent privilege.

E.   *Document 39*

Document 39 is an "elder-to-elder letter" from WTNY to the Hardin elders regarding Hain. (*Id.* at 22). It is described in the privilege log as a "Confidential communication Re: providing religious guidance, admonishment, or advice concerning Third Party Gunnar Hain." (Doc. 188-3 at 24). In briefing, WTNY describes the letter as offering spiritual guidance and advice to the Hardin elders based on the scriptural teachings in the January Article after "prayerful consideration" of the matter. (Doc. 193 at 22).

For the same reasons the Court denies production of Document 35, the Court denies production of Document 39. Though WTNY's description of and asserted basis for privilege in the privilege log and responses to requests for production are non-responsive, WTNY provided in its brief sufficient evidence to show that WTNY was offering spiritual advice (after "prayerful consideration" of the matter) to the Hardin elders concerning Hain. Given the general rules of confidentiality for internal communications described in the March Letter, the Court is satisfied with WTNY's showing that clergy-penitent privilege protects Document 39 and denies Plaintiffs' motion.

F.  *Document 40*

Document 40 is a disfellowship form for Bruce Mapley. It is described in the privilege log as a "Confidential communication" from the Canyon Ferry Congregation in Helena, Montana to WTNY, "re: seeking or receiving religious guidance, admonishment, or advice concerning Mapley." (Doc. 188-3 at 24).

Plaintiffs contend WTNY has not produced any evidence establishing that the form, or any information on it, was obtained during a confidential clergy-penitent process. (Doc. 188 at 20). Plaintiffs also make the waiver argument the Court rejected in Caekaert, Doc. 217. (*Id*. at 20-21).

In its response brief, WTNY explains that Document 40 is a Notification of Disfellowshipping or Disassociation for Mapley from the Body of Elders from the Canyon Ferry Congregation in Helena to WTNY and is based on sins Mapley confessed. (Doc. 193 at 22). WTNY attached an affidavit from Thomas Jefferson, Jr., who is familiar with WTNY operations and was authorized by its Board of Directors to submit the affidavit, explaining the disfellowship process. (Doc. 194). WTNY also points to a Washington Court of Appeals case holding that a similar excommunication notification from a Church of Jesus Christ of Latter Days Saints congregation to the church's headquarters was protected by clergy-penitent privilege. (Doc. 193 at 22-23 (citing *Jane Doe v. Corp. of Pres. Of Church of Jesus Christ of Latter-Day Saints*, 90 P.3d 1147 (Wash. App. Ct. 2004))).

16

The Court finds that Document 40 is protected as a non-penitential statement made in the course of the church's disciplinary process. WTNY sufficiently explains that disfellowship results from a judicial committee's determination that a person who committed a serious sin is unrepentant and must be removed from the faith community. (Doc. 194 at 13-14). The judicial committee's process of dealing with known molesters in the faith, described at length in Jefferson's affidavit (*id.*) and WTNY's brief (Doc. 193 at 6-8), culminates in the notification of disfellowship. WTNY's explanation of the judicial process resulting in the notification of disfellowship also is sufficient to demonstrate that Mapley's disfellowship is based, at least in part, on confessions he made. Accordingly, WTNY met its burden to show that clergy-penitent privilege applies, and the Court denies Plaintiffs' motion.

G.   *Future Privilege Assertions by WTNY*

The Court lastly will address the consistent insufficiency of WTNY's assertions of privilege in its responses to Plaintiffs' requests for production and its privilege log. Every document description provided in the privilege log and WTNY's responses to requests for production are so vague that they provide no basis for Plaintiffs to understand what the documents contain, let alone why a privilege may legitimately apply. In lieu of specificity, WTNY effectively asks Plaintiffs—and by extension the Court—to rely on its assurances that the privilege

applies without any factual support. Otherwise, Plaintiffs have to move to compel, just so WTNY can then, at best, provide the information necessary to assert privilege or, at worst, maintain its obscurity and force *in camera* review.

WTNY should know this is unacceptable, given the Court's previous admonishment of WTNY for being non-responsive in its answers to discovery requests (Doc. 85) and the Court's characterization of the Hardin Congregation's discovery responses as too vague to properly assess privilege (Rowland, Doc. 77). WTNY also has proven through its briefing that it is willing to provide more detailed descriptions of the documents, direct quotes to support its assertions of privilege, and supporting affidavits. (*See* Doc. 193 at 19-26; Doc. 194). Had WTNY not supplemented its document descriptions of and bases for privilege for Documents 25, 39, and 40, the Court would have likewise ordered their *in camera* review.

To prevent the future expense of the Court's and the parties' time and resources, the Court orders WTNY to provide as much information as it can without waiving privilege in describing any withheld documents and asserting its bases for privilege in the privilege log and its responses to requests for production, as required by Rule 45(e)(2)(A). WTNY's support in its response brief for Documents 35, 39, and 40, as well as the Jefferson affidavit (Doc. 194) are examples for future discovery. If WTNY provides such sufficient support for its

18

withheld documents and Plaintiffs still disagree, then the Court can intervene. Failure to heed the Court's warning will be grounds for sanctions.

## IV. Conclusion

IT IS HEREBY ORDERED that Plaintiffs Tracy Caekaert and Camillia Mapley's Motion to Compel Production of Non-Privileged Information in Documents Withheld on Basis of Clergy-Penitent Privilege (Doc. 187) is DENIED as to Documents 35, 39, and 40 and STAYED as to Documents 27-34, 36, 37, and 38 pending the Court's *in camera* review of the documents.

IT IS FURTHER ORDERED that WTNY produce unredacted versions of Documents 27-34, 36, 37, and 38 in the Privilege Log (Doc. 188-3) for *in camera* review within fourteen (14) days of this Order.

DATED the 22nd day of May, 2023.

*Susan P. Watters*
SUSAN P. WATTERS
UNITED STATES DISTRICT JUDGE