IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT and CAMILLIA MAPLEY,<br><br>Plaintiffs,<br><br>vs.<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIERY OF PENNSYLVANIA,<br><br>Defendants. | CV 20-52-BLG-SPW<br><br>ORDER |

Before the Court is Plaintiffs Tracy Caekaert and Camillia Mapley's Motion to Compel *In Camera* Review of Documents Withheld on the Basis of Attorney-Client Privilege. (Doc. 195). Plaintiffs seek *in camera* review of notes from and summaries of calls between Jehovah's Witness congregations and Defendant Watchtower Bible and Tract Society of New York, Inc.'s ("WTNY") Legal Department, as well as client intake forms sent by the Hardin Congregation to the Legal Department, to determine whether they must be produced. (*Id.*). WTNY opposes the motion, asserting the documents are protected by attorney-client privilege. (Doc. 204). Plaintiffs argue on reply that WTNY failed to show attorney-client privilege applies and thus production of the documents is warranted. (Doc. 208).

1

After Plaintiffs filed their reply, WTNY moved for leave to file a surreply to respond to Plaintiffs' new argument that the Court should compel production of the disputed documents rather than review them *in camera*. (Doc. 211).

Both motions are ripe. For the following reasons, the Court denies the motions.

I. **Relevant Background**

The Court is well-acquainted with the facts of this case and will only reiterate those relevant to the instant motion.

In 1989, WTNY sent a letter to elders nationwide instructing them to contact WTNY's Legal Department ("Legal Department") if they receive reports of physical or sexual abuse of a child, if a lawsuit against a congregation or elders is filed, and before making any statements to secular authorities. (Doc. 196-1 at 4). The Legal Department would instruct elders on whether they were required to report the abuse to law enforcement. (*Id.*).

Plaintiffs seek the notes from and summaries of the calls made by Jehovah's Witness congregations to the Legal Department pursuant to the 1989 policy. (Doc. 196-2). In the privilege log, the notes and summaries are described as authored by the Legal Department "re: legal advice" about people accused of sexual abuse in this case and the companion case, and third parties identified by their initials. (*Id.* at 53-57).

2

The other documents sought by Plaintiffs are client intake forms authored by the Hardin Congregation and sent to the Legal Department. (*Id.* at 59-60). The contents of the client intake forms are described as "Client seeking legal advice. Re: Seeking legal advice involving" David Means, Nellie Means, or unrelated third parties identified by their initials. (*Id.*). WTNY argues both sets of documents are protected by attorney-client privilege.

## II. Legal Standard

Under Federal Rule of Civil Procedure 45(e)(2)(A):

A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

In civil cases, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Montana Code Annotated § 26-1-803 protects communications between an attorney and their client made in confidence for the purposes of obtaining or communicating legal advice. A party asserting attorney-client privilege has the burden to prove eight elements: (1) legal advice of any kind is sought (2) from a professional legal adviser in their capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at this instance permanently protected (7) from disclosure by the client or the legal adviser, (8) unless the

3

protection be waived. *State ex rel. U.S. Fidelity Guar. Co. v. Mont. Second Jud. Dist. Ct.*, 783 P.2d 911, 914-15 (Mont. 1989). Affidavits by the client or attorney are commonly used as evidence of the existence of an attorney-client relationship. *See In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992).

When a party seeks *in camera* review to contest assertions of privilege, "the party opposing the privilege need only show a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *Id.* at 1075. The threshold for this showing "need not be a stringent one" in order to discourage abuse of privilege and "ensure that mere assertions of the attorney client privilege will not become sacrosanct." *Id.* at 1072.

"If the party makes such a showing, the decision whether to conduct the review rests within the discretion of the district court." *Id.* The factors guiding the district court's discretion are "the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through *in camera* review, together with other available evidence then before the court, will establish that" attorney-client privilege applies. *United States v. Zolin*, 491 U.S. 554, 572 (1989).

## III. Discussion

The parties primarily dispute whether the elders were clients of the Legal Department whose communications are privileged. Whether the elders are clients depends on the parties' framing of the legal structure of WTNY in relation to the Jehovah's Witness faith community.

WTNY contends that WTNY and the elders, acting in their capacity as ministers of the Jehovah's Witness faith and their respective congregations, are each distinct clients of the Legal Department. A religious community, WTNY explains, "is a collection of people with shared religious beliefs and practices." (Doc. 204 at 3). That community needs a place to worship, the ability to contract, a bank account, and legal advice. (*Id.*). To fulfill those needs, religious communities create legal entities—or, corporations—to support them. (*Id.*). Regardless of their interactions, the religious community and the corporation are separate entities. (*Id.*). This structure is different from a secular corporation, where the brand "does not exist apart from its corporate existence." (*Id.*).

Thus, the Legal Department is in-house counsel for WTNY—the corporation—as well as "the broader religious community of elders, congregations of Jehovah's Witnesses, and other legal entities used by Jehovah's Witnesses." (*Id.* at 5). When elders called the Legal Department to report physical or sexual abuse of a child to determine their reporting obligations, as instructed by WTNY,

5

the elders called in their capacity as ministers for the religious community. (*Id.* at 6). By calling in that capacity, the elders were clients of the Legal Department seeking legal advice. (*Id.*). The elders called with the expectation of confidentiality, and thus the communications are privileged. (*Id.*). WTNY provided an affidavit from Mario Moreno, who worked as associate general counsel for the Legal Department between 1994 and 2016, to corroborate each of its assertions. (Doc. 204-1).

Plaintiffs argue that the laws governing representation by in-house legal departments and of corporations apply, and under those laws, the elders are not clients of the Legal Department. (Doc. 196 at 7-8). Plaintiffs assert that WTNY legally operates as an organization, regardless of its association with a religious faith. (*Id.* at 7). Under laws applicable to organizations, "[a] lawyer employed or retained by an organization represents the organization acting through its duly authorized agents." (*Id.* (citing *Inter-Fluve v. Mont. Eighteenth Jud. Dist. Ct.*, 112 P.3d 258, 263-64 (Mont. 2005))). Importantly, the constituents of the organization client are not the lawyer's client. (*Id.* at 8 (citing Model R. Pro. Conduct r. 1.13 cmt. 2 (Am. Bar Ass'n 2019)).

Under Plaintiffs' theory, the elders could only be clients of the Legal Department if they were calling in their "organizational capacity" as WTNY employees or agents. (*Id.* (citing *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D.

6

482, 496-97 (S.D.N.Y. 2019))). WTNY has maintained throughout the litigation that the elders are not its agents or employees. (*Id.* (citing Doc. 196-4 at 3)). Thus, under Plaintiffs' in-house counsel theory, WTNY failed to meet its burden to show that an attorney-client relationship exists.

Further, according to Plaintiffs, the broader religious faith is too amorphous to be considered a client. (Doc. 208 at 7). In an ethics opinion, the State Bar of Montana wrote that an entity client must be "a clearly definable client with identifiable lines of authority," in part so the lawyer has "concrete and adequate standards" for regulating their conflict. (Doc. 208-1 at 3 (State Bar of Mont., Ethics Opinion 940202)). A faith community is not definable and thus not a valid client. (Doc. 208 at 7).

Since the broader religious faith is not a valid client and the elders were not acting as agents or employees of WTNY, then the Legal Department must have formed an independent attorney-client relationship with any elder who calls to report child abuse in order for the privilege to apply. (Doc. 196 at 9-10). Plaintiffs argue WTNY did not produce any evidence showing the elders "were calling their privately retained attorneys for legal advice." (*Id.* at 10). Instead, the evidence shows the elders called pursuant to a WTNY policy, and that the Legal Department "was representing the interest of its corporate client during the subject phone calls, not the interests of the elders." (*Id.*). Additionally, for the Legal Department to

represent any elder nationwide, the Legal Department would need lawyers licensed to practice in each state from which an elder called and waivers for the "obvious conflict that arises between WTNY and the elder."[1] (*Id.* at 10-11). WTNY has produced evidence of neither, so WTNY has not met its burden to show attorney-client privilege exists.

Lastly, Plaintiffs point out that Moreno's testimony that the elders do not call the Legal Department as private individuals contradicts WTNY's previous statement that the "elders communicate with WTNY's Legal Department individually and on behalf of their Congregations." (*Cf.* Doc. 208 at 1-2 and Doc. 204-1 at 3). Plaintiffs characterize WTNY's inability to concretely and consistency identify the client as evidence of the insincerity of WTNY's attorney-client privilege claim. (Doc. 208 at 2).

The Court finds WTNY provided sufficient evidence showing that the elders, acting in their capacity as ministers of faith, were clients of the Legal Department, and the communications from which the disputed documents were generated were made for the purposes of seeking legal advice. WTNY asserts the basis for the attorney-client privilege in its briefing and supports each claim with

---

[1] Plaintiffs argue that conflicts of interest would "inevitably arise when the corporate legal interests diverge from individual elder's legal interests because WTNY has an interest in keeping child sex abuse within the church quiet, whereas the elders have an interest to report and avoid criminal liability. (Doc. 196 at 11-12). WTNY maintains that both parties have "identical interests: obeying the law and observing their religion." (Doc. 204 at 11).

testimony from Moreno's affidavit: Moreno declared that WTNY attorneys are in-house counsel for WTNY, the broader religious community of elders, and congregations of Jehovah's witnesses. (Doc. 204-1 at 3). He declared that elders "speak as ministers to legal counsel for the faith and with the expectation of confidentiality." (*Id.*). Lastly, Moreno declared that the Legal Department's attorneys understand they represent both WTNY and the elders in their clerical capacity, "and that their communications are privileged." (*Id.*). These are not bare assertions of privilege, but rather a detailed outline of the structure of the Legal Department's attorney-client relationships.

Plaintiffs do not address Moreno's affidavit or provide factual support for the Court to question its accuracy. Further, Plaintiffs provide no factual support or caselaw to justify the application of conventional in-house counsel rules other than WTNY's designation generally as an organization. To the contrary, the inherent differences between a secular and religious organization factor into the Court's understanding of the Legal Department's clients.

The description of the documents in the privilege log further confirm that the elders communicated with the Legal Department to obtain legal advice about various people implicated in this litigation and other alleged child sex abusers. (*See* Doc 196-2 at 53-57). Calling for such a purpose was a long-standing practice, as evidenced by the 1989 letter. (Doc. 196-1 at 4-6).

9

The evidence of the elder's expectation of confidentiality is bolstered by the "heavy emphasis" the Jehovah's Witness church generally places on confidentiality within its chapters and organizations. (Doc. 79 at 9 (citing *Nunez v. Watchtower Bible and Tract Society of New York, Inc.*, 455 P.3d 829, 833 (Mont. 2020))). "Within that doctrine was an established practice to handle reports of child abuse using a committee of local elders and to conduct all investigations internally after contacting Watchtower's legal department for guidance." (*Id.* (citing *Nunez*, 455 P.3d at 833)).

Plaintiffs' argument that WTNY's identified client is too amorphous to recognize fails in light of the privilege log's consistent description of the client as a specific congregation. Each Jehovah's Witness congregation is a concrete entity that an elder can speak on behalf of. The Ethics Opinion relied upon by Plaintiffs is inapplicable because it concerns the attorney-client relationship between a government attorney and government agency. *See* State Bar of Mont., Ethics Opinion 904202.

Additionally, the contradiction between Moreno's affidavit and the disclosure by WTNY's attorneys about whether elders call the Legal Department as individuals is immaterial. The privilege log is clear that, with respect to the disputed documents, the elders corresponded with the Legal Department as representatives of their respective congregations, not as individuals. (Doc. 196-2

10

at 53-57 (callers described as specific congregations); Doc. 196-2 at 59-60 (author of client intake forms described as the Hardin Congregation)). Thus, whether the elders ever called as individuals and were considered clients in their individual capacities is not factual support that rebuts WTNY's assertion that the elders, acting in their capacity as ministers of their congregations, were clients.

Plaintiffs also provide no legal support for their assertion that the Legal Department attorneys must be admitted to practice law in each state from which an elder called. WTNY, on the other hand, correctly points out that the ABA Model Rule of Professional Responsibility 5.5(d) allows a lawyer practicing as in-house counsel to provide limited legal services in states in which they are not admitted so long as the services do not require pro hac vice admission. *See also* Mont. R. Pro. Conduct r. 5.5(d) (State Bar of Mont.).

Lastly, whether the Legal Department has a conflict of interest between its representation of WTNY and the elders does not impact the existence of an attorney-client relationship. *See New Phoenix Sunrise Corp. v. Comm'r of Internal Revenue*, 408 Fed. Appx. 908 (6th Cir. 2010) ("the fact that *an attorney* has a conflict of interest does not mean that *the client* forfeits the benefits of the attorney-client privilege.").

Given the evidence demonstrating that an attorney-client relationship exists between the Legal Department and the elders, acting on behalf of their

11

congregations, the Court finds that the contested documents are protected by attorney-client privilege. The privilege log adequately describes each as a communication between the elders, on behalf of their congregations, and the Legal Department made for the purpose for obtaining legal advice with the expectation of confidentiality. Plaintiffs did not provide sufficient factual support to rebut WTNY's evidence of privilege and to compel the Court to order *in camera* review of the documents. As such, the Court denies Plaintiffs' motion to compel.

Because WTNY met its burden to show attorney-client privilege applies to the disputed documents and that *in camera* review is not warranted, a surreply on whether the Court should order WTNY to compel the production of documents is unnecessary. The Court denies WTNY's motion.

## IV. Conclusion

For these reasons, Plaintiffs Tracy Caekaert and Camillia Mapley's Motion to Compel In Camera Review of Documents Withheld (Doc. 195) and Defendant Watchtower Bible and Tract Society of New York, Inc.'s Motion for Leave to File Surreply (Doc. 211) are DENIED.

DATED this 22nd day of May, 2023.

*Susan P. Watters*
SUSAN P. WATTERS
UNITED STATES DISTRICT JUDGE