Gerry P. Fagan
Christopher T. Sweeney
Jordan W. FitzGerald
MOULTON BELLINGHAM PC
27 North 27th Street, Suite 1900
P.O. Box 2559
Billings, Montana 59103-2559
Telephone: (406) 248-7731
Fax: (406) 248-7889
Gerry.Fagan@moultonbellingham.com
Christopher.Sweeney@moultonbellingham.com
Jordan.FitzGerald@moultonbellingham.com

*Attorneys for Defendant Watch Tower Bible and Tract Society of Pennsylvania*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT and CAMILLIA MAPLEY,<br><br>                    Plaintiffs,<br><br>    -vs-<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR.,<br><br>                    Defendants. | Case No. CV-20-00052-SPW-TJC<br><br><br><br>**DEFENDANT WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL RESPONSES BY CAMILLIA MAPLEY** |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA,<br>                    Cross-Claimants, | |

-vs-

BRUCE MAPLEY SR.,

                    Cross-Defendant.

Plaintiff Mapley claimed that a "careful review" of the discovery requests and her responses revealed that WTPA was only "intent on harassing Plaintiff without any reasonable justification." (Mapley Opposition Brief, Doc. no. 229, p. 3) WTPA agrees with her idea of a "careful review." That review will show that the requests seek on their face specific factual evidence that is relevant to Mapley's allegations and WTPA's defenses to those allegations, as well as show that Mapley's responses are packed with her accusatory questions, Wikipedia cut-and-paste answers, boilerplate objections, her counsel's novel theory about discovery, and broad reference to documents without any specification at all.

This should not be this hard. These requests are straightforward requests for specific factual information that Plaintiff can and should answer. Mapley should be compelled to provide compliant responses to WTPA's Request for Production Nos. 10 and 36 and Interrogatories Nos. 3 and 5-7.

//

//

//

//

**ARGUMENT**

## I. PLAINTIFF MAPLEY SHOULD BE COMPELLED TO SERVE ANSWERS TO INTERROGATORIES NOS. 3 & 5-7 WHICH COMPLY WITH THE RULES OF CIVIL PROCEDURE.

Plaintiff argued WTPA's discovery requests at issue all "are objectionable, including contention interrogatories that should either never require an answer, or only be answered after discovery is complete." (Mapley Brf., p. 2) She also argued she provided compliant responses anyway. (*Id.*) In addition, she argued that WTPA's "central complaint" is it wants Plaintiff to "personally answer its contentions interrogatories" for no justifiable reason and is only harassing her. (*Id.* at pp. 2-3) Plaintiff is wrong about each point.

First, the Interrogatories are not improper "contention" interrogatories. WTPA's interrogatories were appropriate under the Rules and even under the case law Plaintiff cited.

Despite Plaintiff's contention argument to the contrary, contention interrogatories are specifically allowed by the Federal Rules of Civil Procedure. Federal Rule 33(a)(2) provides that an "Interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." Even the caselaw that Plaintiff relied upon held that contention interrogatories are appropriate if the requests are tailored to specific categories of documents and specific information or allegations. (Mapley Brf., at p. 5, *citing*

3

*Aldapa v. Fowler Packing Co.*, 310 F.R.D. 583, 591 (E.D. Cal. 2015) & *Shqeirat v. U.S. Airways Group, Inc.*, 2008 WL 4322018 (D. Minn. 2008)).

Indeed, in *Shqeirat*, the court specifically **allowed** the two interrogatories that a party challenged as allegedly prohibited contention interrogatories. *See Shqeirat*, 2008 U.S. Dist. LEXIS 108338, *13. The challenged interrogatories requested defendants to identify all facts and individuals which supported their probable cause and reasonable suspicion arguments. *Id.* The *Shqeirat* court held that the interrogatories at issue were appropriate because "[s]aid contention interrogatories bear on specific and relevant allegations in the case as Plaintiffs ask the MAC Defendants to identify 'all facts' and identities of individuals supplying such facts to support its probable cause and reasonable suspicion arguments." *Id.*

In this case, WTPA's Interrogatories Nos. 3 and 5-7 also are appropriate because they "bear on specific and relevant allegations in the case." These requests are intended to, and would, if properly responded to, provide a potential basis for a dispositive motion by WTPA for a lack of evidence to support the allegations, such as whether Plaintiff has actual proof that several persons were acting as agents for WTPA. Interrogatory No. 3 requested the identification of facts which were relevant to Plaintiff's negligence claim. Interrogatory No. 5 requested the identification of the facts which showed WTPA knew that any person who Plaintiff alleged had abused her had previously abused a minor. Interrogatory No. 6 requested facts which

were relevant to an allegation made by Plaintiff that three alleged abusers were agents of WTPA. Interrogatory No. 7 requested the identification of actions Plaintiff contended WTPA should have taken to prevent the alleged sexual abuse. (Interr. Nos. 3 & 5-7, Doc. no. 224-8)

What is generally prohibited in terms of contention interrogatories are requests that require a narrative version of the opposition's case or that seek "each and every fact" related to every allegation in a complaint. Courts have generally held that contention interrogatories seeking a narrative version are overly broad and unduly burdensome. Both *Shqeirat* and *Aldapa* recognized exactly that proposition. *See Shqeirat*, at *13 ("a contention interrogatory will be considered overly broad and unduly burdensome if it seeks all facts supporting a claim or defense, such that the answering party is required to provide a narrative account of its case."); *Aldapa,* 310 F.R.D. at 591 ("[c]ontention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents." The court in *Aldapa* required the propounding party to rephrase three discovery requests "to seek specific categories of documents and specific information" and ordered that one request that sought every document that related to any of the claims asserted by the plaintiff need not be answered because it was unduly burdensome. *Id.* at *18-19.

5

In this case, WTPA has not sought a narrative version of Plaintiff's case, nor has it sought the identification of every fact related to every claim in the complaint. WTPA simply requested the identification of facts or conduct that were relevant to specific allegations by Plaintiff. (Doc. no. 224-8) WTPA has also previously informed Plaintiff's counsel that it was not seeking or demanding a narrative response. (Doc. no. 224-1)

The purpose of discovery is to provide a way for making the relevant information available to the litigants. *See Burlington N. Ry. v. District Ct. Mont.*, 408 F.3d 1142, 1148-49 (9th Cir. 2005). An additional important purpose behind discovery is to reveal what evidence the opposing party has, which assists the propounding party to determine what facts are disputed in anticipation of dispositive motions and what facts must be resolved at trial. *See Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1117 (9th Cir. 2004). Contention interrogatories may be helpful to accomplish those purposes, too, because " 'they may narrow and define the issues for trial and enable the propounding party to determine the proof required to rebut the responding party's claim or defense.' " *Shqeirat*, 2008 U.S. Dist. LEXIS 108338, *12-13 (citation omitted).

Those purposes are precisely why WTPA requested Plaintiff to identify specific facts in Interrogatories Nos. 3 and 5-7 and those purposes are also precisely why Plaintiff should be compelled to answer them. Rule 33 expressly allows WTPA

to request, and expressly requires the plaintiffs to identify, specific facts that are relevant to or that support their specific allegations or specific claims. WTPA respectfully suggests that the Court reject Plaintiff's "contention" interrogatory argument and order Plaintiff to answer Interrogatories Nos. 3 and 5-7 to identify the specific facts that are relevant to the specific allegations and claims identified in the requests.

Second, Plaintiff did not provide WTPA "responsive, compliant answers" to the Interrogatories, despite Plaintiff's argument that she did. Plaintiff argued she fully complied by identifying responsive information and evidence to each Interrogatory. (Mapley Brf., pp. 2 & 7-8) She even argued that her responses went beyond what was required. (*Id.*)

However, Plaintiff argued in generics and did not address, reveal, or discuss the actual content of her responses, which is a telling omission. WTPA quoted most of her responses in its initial Brief in Support (pp. 22-26 of Doc. no. 224) and attached them in full as an exhibit (Doc. no. 224-8). We believe it is very clear on their face that her responses were not compliant. For example, her <u>entire</u> response to Interrogatory No. 5 (requesting specification of facts relevant to her allegations that WTPA knew she was being sexually abused) was: "*What difference does it make if they abused 100 million children before me, the organization was made aware of multiple children being abused and did nothing but hush it.*"

In addition, to the extent Plaintiff argued that her responses were compliant because she or her counsel attempted to respond to the Interrogatories by citing to broad categories of documents, such as entire deposition transcripts, affidavits, and lists of documents (*see e.g.,* Doc. no. 224-8, pp 3-4), that argument too must fail. Plaintiff ignored the case law cited by WTPA that established the general rule is mere references in response to broad categories of documents is not a sufficient interrogatory response. (Doc. no. 224, at pp. 28-29) Plaintiff's failure to address this case law is telling of the lack of merit of her argument that she complied merely by referencing deposition transcripts and the like. The Court can and should deem Plaintiff's failure to address WTPA's incorporation argument as an indication that WTPA's argument is well-taken. *Liberty Mut. Ins. Co. v. Cont'l Res.*, 2011 U.S. Dist. LEXIS 80152, *24, 2011 WL 2982221 (Judge Ostby ruling that failure to respond is indication that argument is well-taken); *see also*, *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132.

Third, Plaintiff's arguments about "forcing" her to personally answer discovery requests even though she is not a trained lawyer are misplaced and meritless. Plaintiff argued it was inherently unfair and unreasonable to require Plaintiff to answer the Interrogatories herself, and in fact, it constituted sanctionable conduct to attempt to do so. (Mapley Brf., pp. 9-13) Plaintiff further argued the parties are not required to know all of the fact in the case and are not able to apply

8

facts to law because they are not lawyers. (*Id.* at p. 9) Plaintiff argued those things are "precisely what their lawyers are hired to do," so it "serves no conceivable purpose to force layperson parties" to answer contention interrogatories. (*Id.*) In short, Plaintiff argued she cannot, and does not have to, answer discovery because she is not trained as a lawyer to understand legal elements and relevancy concepts.

It is well worth noting that Plaintiff could not cite any authority whatsoever for her argument that she is not required to answer the Interrogatories because she is not a lawyer. The only citation to authority was her reference to sanctions. (*See Id.*) Her argument about answering interrogatories as a layperson is entirely a creation of her counsel.

Not surprisingly, there does not seem to be any case law that supports her argument. However, it is clearly recognized that while a party must answer and verify their discovery responses, the role of their attorney is to assist them in answering discovery. *See United States v. Quebe*, 321 F.R.D. 303, 309 (S.D. Oh. 2017) (attorneys "very likely assist their clients when answering Interrogatories"); *see also, Sitterson v. Evergreen Sch. Dist. No. 114*, 196 P.3d 735, 739 (2008 Wash. App.) ("Answering discovery requests is generally a matter in which the attorney has authority to speak and act for the client.") It is also clear that a plaintiff must answer discovery to include the information known by her attorney; the client cannot limit her answer to only what she personally knows. *See, e.g., In re Asbestos Prods.*

*Liab. Litig. v. A.C.*, 2012 U.S. Dist. LEXIS 165332, *16-18 (E.D. Pa. 2012) (rejecting argument party only obligated to produce responses that were based upon personal knowledge of party and not their counsel; "[a]ssistance of counsel is clearly contemplated by the Federal Rules of Civil Procedure" when a party is completing responses) (citations omitted); *Schneck v. IBM*, 1993 U.S. Dist. LEXIS 21576, *14-15 (D. N.J. 1993) (party "may not limit her answers to discovery to her own personal knowledge. She must answer with any and all information available to her, including information held by her attorneys") Indeed, Federal courts have chastised attorneys that fail to assist and counsel their clients when preparing discovery responses. *See, e.g., Richard v. Dignean*, 332 F.R.D. 450, 460 (W.D.N.Y. 2019) ("Indeed, it appears defense counsel simply sent the interrogatory requests to his client to be completed on his own, without doing what an attorney should do—assisting and counseling his client in the preparation of the responses.").

Plaintiff is required to answer the Interrogatories using her own knowledge and information as well as her attorneys, and her attorneys can and should assist her in drafting compliant responses; it is one of the most important things attorneys are hired to do. Plaintiff's argument, if accepted, would also establish an extraordinarily bad discovery policy. Virtually every party in every lawsuit is not a trained lawyer. If Plaintiff was correct that every party who was not a trained lawyer did not have to

respond to interrogatories, it is easy to see how the discovery rules would quickly be eviscerated.

Plaintiff also argued briefly that Ms. Mapley has been deposed since serving her supplemental responses and she was questioned about "some of these very issues." (Mapley Brf., p. 12) Plaintiff's argument on this point was not clear, but she seemed to imply that a deposition of Plaintiff acted as sort of a remedy for any non-compliant response, since WTPA had the opportunity to question her.

However, there is no Rule of Civil Procedure that allows a party to not answer an Interrogatory in compliance with the Rules merely because she was or could be deposed. Furthermore, such a rule also would establish bad policy because it would allow for willful noncompliance of the Rules governing written discovery.

WTPA is entitled to written responses that comply with the Rules of Civil Procedure, regardless of depositions. There is added value to receiving written responses from the responding party because the party, as noted above, is required to respond with relevant information known or held by both the responding party and her attorney. Discovery is intended to uncover the relevant facts, not hide them until a motions deadline or trial. *See Burlington N. Ry., supra*, 408 F.3d 1142 at 1148; *Computer Task Group, Inc., supra*, 364 F.3d at 1117 .

Finally, it is necessary to address Plaintiff's demand for sanctions. As this Court has recognized before (Doc. no. 222 at p. 8), Plaintiffs seem to assume the

defendants are constantly acting in bad faith. Plaintiff's counsel certainly is not shy about accusing others of bad faith and seeking sanctions. Counsel for WTPA do not lightly decide to file an additional motion, nor routinely (if ever) accuse others of bad faith and seek sanctions.

However, in this case, Mapley's responses, as well as the boilerplate objections, coupled with the meritless argument advanced by Plaintiff's counsel that it is it "inherently unfair" (and even sanctionable) to require a party to identify in writing facts that are relevant to specific claims and allegations, left WTPA with little choice but to assert a motion to compel responses which comply with the Rules of Civil Procedure. WTPA has offered substantial supporting authority for its positions. These are circumstances which "substantially justified" the motion. Pursuant to Rule 37(a)(5)(B) of the Federal Rules of Civil Procedure, sanctions against WTPA are not supported under these circumstances, even if the Court disagreed with WTPA's position and denied its Motion. *See Pacific Hide & Fur Depot v. Great Am. Ins. Co.*, 2013 U.S. Dist. LEXIS 189913, *14-15 (D. Mont. 2013) (fees not appropriate because motion "was not so unjustified as to require costs and fees in this matter," with propounding party supporting its position with case law).

In conclusion, Plaintiff's own responses and objections are not compliant on their face, her counsel's attempts to refer to over a thousand pages of documents did

MOULTON BELLINGHAM PC
ATTORNEYS AT LAW

not comply with the Rules, and her "not a trained lawyer" argument is meritless. Plaintiff should be compelled to produce responses to Interrogatories Nos. 3 & 5-7 which specifically identify relevant facts to the specific claims and allegations referenced in the respective Interrogatories. Compelling her to do so will help to accomplish the purposes behind discovery.

## II.   PLAINTIFF SHOULD BE COMPELLED TO PRODUCE DOCUMENTS RESPONSIVE TO RFP NOS. 10 & 36.

Plaintiff's arguments to avoid producing documents about sexual abuse that her counsel has previously admitted having possession of tried to skirt around or deflect the issues. Plaintiff failed to address:

-   documents possessed by a party's attorney are considered in the control of the party for purposes of discovery production. (Doc. no. 224, pp. 11-12)

-   boilerplate objections, such as those made by Plaintiff to the two requests at issue, are rejected as a general rule. (*Id.*, pp. 15-16)

-   Plaintiff waived any privilege to the documents by failing to serve a privilege log. (*Id.*, p. 17)

These arguments by WTPA are accordingly deemed well-taken because Plaintiff failed to address them. *Liberty Mut. Ins. Co., supra,* 2011 U.S. Dist. LEXIS 80152, *24; *Stichting Pensioenfonds, supra*, 802 F. Supp. 2d at 1132.

In addition, while Plaintiff avoided acknowledging that her counsel has already admitted he has responsive documents about sexual abuse involving

13

Jehovah's Watchtower "in my file" (Doc. no. 224-3), counsel did offer to essentially trade those documents in exchange for a stipulation of his design. (Mapley Brf., p. 16) This is an extraordinary offer, one that is unprecedented in the undersigned's experience. Essentially, counsel is holding his file about "Jehovah's Witnesses child sex abuse claims" hostage and will only produce it voluntarily if Plaintiff also gains something in return she feels will benefit her. There is no support to justify this extraordinary demand. It is why WTPA denied it. (*See* Letters, attached as Exh. A & B) And it is why Plaintiff needs to be compelled to produce it. In addition, WTPA already had voluntarily responded to Plaintiff's requests which were not limited to Montana, which seemed to be the point of the stipulation. (*See e.g.,* Exh. A)

It cannot be emphasized enough that Plaintiff's counsel literally has possession of a file about "Jehovah's Witnesses child sex abuse claims," yet both refuses to produce it and denies it is relevant to this case. Plaintiff's relevancy arguments consisted of her efforts to concoct far-fetched examples of the alleged burden on her counsel and staff. But those arguments are sleight of hand. Her counsel possesses an actual file with the responsive documents. It would not be overly burdensome to produce that file, nor has Plaintiff bothered to argue that it would be; her examples are disingenuous and should be ignored.

Furthermore, in regard to relevancy, Plaintiff ignored case law that recognized it's "well established" the party claiming irrelevancy has the burden to demonstrate

that. *Painters Joint Comm. v. Emple. Painters Trust Health & Welfare Fund*, 2011 U.S. Dist. LEXIS 113278, *16-17 (D. Nev. 2011), *citing, in part, Blankenship v. Hearst Corp.,* 519 F.2d 418, 429 (9th Cir. 1975). Judge Christensen has also ruled that "a party opposing discovery carries a 'heavy burden' of showing why discovery should not be allowed. *Pac. Hide, supra*, 2013 U.S. Dist. LEXIS 189913 (9th Cir. citation omitted). The two decisions Plaintiff cited (Mapley Brf., p. 14) are not on point because they addressed primarily the burdens of production of potentially millions of pages of documents.

And while not necessarily admissible at trial, it is also clear that documents about "Jehovah's Witnesses child sex abuse claims" would certainly be relevant or at least reasonably calculated to lead to admissible evidence in a lawsuit about that very claim. If there is any actual doubt about relevancy, and understanding that WTPA does not yet know what the actual contents of Plaintiff's sexual abuse file are, including whether the file has documents related to other jurisdictions, or Montana, or both, we respectfully suggest that Plaintiff be ordered to submit their file to the Court for an in-camera review of the file to determine relevancy.

**DATED** this 26th day of May, 2023.

MOULTON BELLINGHAM PC


By ___/s/ Gerry Fagan___
      Gerry Fagan
      Chris Sweeney
      Jordan Fitzgerald

      *Attorneys for Watch Tower Bible and*
      *Tract Society of Pennsylvania*

MOULTON BELLINGHAM PC
ATTORNEYS AT LAW

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(d)(2)(E), I certify that this brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double-spaced, with left, right, top, and bottom margins of one inch; and that the word count calculated by Microsoft Word is 3,248 words, excluding the Table of Contents, Table of Authorities, Certificate of Compliance, and Certificate of Service.


By */s/  Gerry Fagan*
Gerry Fagan

Moulton Bellingham PC
Attorneys at Law

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of May, 2023, a copy of the foregoing was served on the following persons:

1.      U.S. District Court, Billings Division

2.      Robert L. Stepans
        Ryan R. Shaffer
        James C. Murnion
        MEYER, SHAFFER & STEPANS, PLLP
        430 Ryman Street
        Missoula, MT 59802
        *Attorneys for Plaintiffs*

3.      Jon A. Wilson            Joel M. Taylor, Esq. (*pro hac vice*)
        Brett C. Jensen         MILLER MCNAMARA & TAYLOR LLP
        BROWN LAW FIRM, P.C.    100 South Bedford Road, Suite 340
        315 North 24th Street    Mount Kisco, NY 10549
        P.O. Drawer 849
        Billings, MT 59103-0849
        *Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

4.      Bruce G. Mapley, Sr.
        3905 Caylan Cove
        Birmingham, AL 35215

By the following means:

        1, 2, 3   CM/ECF                    _____ Fax
        _____  Hand Delivery             _____ E-Mail
        _____  U.S. Mail                 _____ Overnight Delivery Services
           4      Certified Mail, Return Receipt Requested


                                    By   */s/ Gerry Fagan*
                                         Gerry Fagan

4881-0412-1419, v. 2