Robert L. Stepans
Ryan R. Shaffer
James C. Murnion
Victoria K.M. Gannon
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT  59802
Tel: (406) 543-6929
Fax: (406) 721-1799
rob@mss-lawfirm.com
ryan@mss-lawfirm.com
james@mss-lawfirm.com
katy@mss-lawfirm.com
*Attorneys for Plaintiffs*

Matthew L. Merrill (appearing *pro hac vice*)
Merrill Law, LLC
6631 Mariposa Court
Denver, CO  80221
Tel: (303) 947-4453
matthew@merrillwaterlaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | )<br>)<br>) |
| Plaintiffs, | ) |
| vs. | )<br>) |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA., | )<br>)<br>)<br>) |
| Defendants, | )<br>) |

Case No. CV-20-52-BLG-SPW

**PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANT WTNY'S MOTION FOR PROTECTIVE ORDER (DOC. 234)**

///

///

## **Table of Contents**

SUMMARY OF PLAINTIFFS' OPPOSITION.........................................................1

RELEVANT FACTUAL BACKGROUND.....................................................4

  1.  At Issue in this Case is the Corporate Defendants' Conduct Between 1973 and 1992...................................................................................4

  2.  The Unique, Personal Experience and Knowledge of Messrs. Shuster, Breaux, and Smalley ...........................................................5

     a.  Allen Shuster ....................................................................6

     b.  Gary Breaux...................................................................9

     c.  Gene Smalley ...............................................................11

  3.  Plaintiffs' Efforts to Obtain Discoverable Information Regarding the Corporate Defendants' Structure and Conduct Between 1973 and 1992........11

     a.  Interrogatories 25 & 26 to WTPA and Interrogatory Nos. 9 & 15 to WTNY ...................................................................12

     b.  Interrogatory No. 8 to WTNY ......................................13

     c.  Interrogatory No. 20 to WTNY....................................13

  4.  WTNY's Refusal to Provide Alternative Witnesses with Comparable Personal Experience and Knowledge ..........................................14

APPLICABLE LAW ...............................................................................15

  1.  Parties are typically permitted to obtain discovery necessary to evaluate their case in the sequence that they desire....................................15

  2.  Orders prohibiting the taking of fact depositions are not favored..................15

  3.  The party seeking a protective order must demonstrate *good cause* with particular and specific facts as opposed to stereotyped and conclusory statements..........................................................................16

  4.  A corporation's agents may be deposed personally regardless of whether a Rule 30(b)(6) deposition is conducted........................................17

  5.  The apex witness doctrine .............................................................18

ARGUMENT ........................................................................................19

**Plaintiff's Opposition to WTNY's Motion for Protective Order (Doc. 234)**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*

i

1. Plaintiffs have noticed the depositions of three material witnesses with unique personal experience and knowledge of Defendants' conduct during the 1970s, 1980s, and 1990s. .............................................................19

2. Even if Messrs. Shuster and Breaux are properly characterized as Apex Witnesses, they are still subject to deposition on their personal knowledge and experience. ..............................................................................................20

3. There is no legitimate basis to limit Plaintiffs to a Rule 30(b)(6) deposition. 22

4. Defendants provide no actual facts justifying an order prohibiting the noticed depositions. ..........................................................................................24

CONCLUSION .......................................................................................................26

**Plaintiff's Opposition to WTNY's Motion for Protective Order (Doc. 234)**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*

ii

## **Table of Authorities**

**Cases**

*Apple Inc. v. Samsung Elecs. Co., Ltd*,
  282 F.R.D. 259 (N.D. Cal. 2012) .................................................................. 18, 21

*Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*,
  231 F.R.D. 426 (M.D. Fla. 2005) ......................................................................16

*Blankenship v. Hearst Corp.*,
  519 F.2d 418 (9th Cir. 1975) ............................................................................17

*Brewer v. BNSF Ry. Co.*,
  CV 14-65-GF-BMM, 2015 WL 13810744, at *2 (D. Mont. Nov. 5, 2015) ........18

*Doe v. Trump*,
  329 F.R.D. 262 (W.D. Wash. 2018 ............................................................. 17, 24

*Harris v. Clay County, Mississippi*,
  514 F. Supp. 3d 880, 881–82 (N.D. MS Aberdeen Div. 2021) ............... 16, 24, 26

*Jennings v. Family Management*,
  201 F.R.D. 272 (D.D.C. 2001) .........................................................................16

*Keith H. v. Long Beach Unified Sch. Dist.*,
  228 F.R.D. 652 (C.D. Cal. 2005) ......................................................................15

*Motsinger v. Flynt*,
  119 F.R.D. 373 (M.D. N.C. 1988) ............................................................ 16, 24, 26

*Purofied Down Prod. Corp. v. Royal Down Prod., Inc.*,
  87 F.R.D. 685 (W.D. Mich. 1980) .....................................................................15

*Salter v. Upjohn Co.*,
  593 F.2d 649 (5th Cir. 1979) ...................................................................... 16, 24

*Stein v. Tri-City Healthcare Dist.*,
  No. 12-CV-2524-BTM BGS, 2014 WL 458021, at *2 (S.D. Cal. Feb. 4, 2014).15

*U.S. E.E.O.C. v. Caesars Ent., Inc.*,
  237 F.R.D. 428 (D. Nev. 2006) .........................................................................17

*U.S. v. One Parcel of Real Est. at 5860 N. Bay Rd., Miami Beach, Fla.*,
  121 F.R.D. 439 (S.D. Fla. 1988) .......................................................................17

**Plaintiff's Opposition to WTNY's Motion for Protective Order (Doc. 234)**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
iii

**Statutes**

Fed. R. Civ. P. 26 .......................................................................................15
Fed. R. Civ. P. 26(c)....................................................................................16
Fed. R. Civ. P. 26(d) ...................................................................................15
Fed. R. Civ. P. 30(b)(6)........................................................... 17, 22, 23, 24

Plaintiffs, Tracey Caekaert and Camillia Mapley respond in opposition to Defendant Watchtower Bible and Tract Society of New York's Motion for Protective Order ("WTNY's Motion").  (Doc. 234).

## SUMMARY OF PLAINTIFFS' OPPOSITION

While this case was filed because Plaintiffs were sexually abused by members of the Jehovah's Witness church, the case is substantially about the corporate Defendants: who they are, what they did and didn't do, what they knew and didn't know, who they acted on behalf of, who acted on behalf of them, their policies, their practices, and their conduct.  Ultimately, it is this information that will establish the Defendants' role in the known, but unreported, sexual abuse of young girls occurring within the Hardin Jehovah's Witness congregation between 1973 and 1992.

Plaintiffs have noticed the depositions of three Jehovah's Witnesses officials who served at the Defendants' headquarters during the 1970s, 1980s, and 1990s.[1] Plaintiffs noticed these depositions because each witness has unique, personal experience and knowledge material to the questions about the Defendants identified above:

- ▪ Allen Shuster began serving at the New York headquarters in the 1970s, he was a deskman and overseer in the Service Department which received

[1] *See* Doc. 236-9

reports of child sex abuse, he has substantial personal knowledge of the Defendants' policies and practices for handling reports of child sex abuse, and he has been previously designated by WTNY as the person most knowledgeable about correspondence between the Defendants and local congregations pertaining to child sex abuse, the corporate administrative structure of the JW Organization, and managerial staff functions within the JW Organization.

- Gary Breaux has served Defendants as an elder in a Missouri congregation, as an elder at the Defendants' headquarters, and as a travelling "overseer" who would visit local congregations to ensure that they understood and implemented the Defendants policies and practices, including those dealing with child sex abuse.  Mr. Breaux has at one time or another, and often simultaneously, served both Defendants and other corporate and non-corporate entities located at the Defendants' headquarters.  Mr. Breaux was previously designated by WTNY as the person most knowledgeable about, *inter alia*, the Jehovah's Witnesses' policies for handling accusations of child sex abuse from 1970 to the present, including warnings sent to congregations when a known child molester moved (or was moved) to a new congregation.

- ▪ Gene Smalley is an elder who served at the Defendants' headquarters in the Writing Department during the 1970s and 1980s where he would receive correspondence from local congregations regarding child sex abuse.  He is a voting member of both corporate Defendants in this case and has personal knowledge of what the Defendants knew about child sex abuse between 1973 and 1992.

Contrary to WTNY's assertions, these three depositions are not about harassment, they are not violative of a court order, and they are not cumulative.  They are targeted fact depositions of three elders who are in the unique position of being able to offer material testimony about the Defendants' conduct during the times relevant to this case.

WTNY's opposition to the depositions is based solely on unsupported, conclusory statements of counsel.  WTNY offers no actual justification for a court order prohibiting routine fact witness depositions of Jehovah's Witness officials, two of whom have been designated by WTNY as the "people most knowledgeable" on several subjects that are material to this case.  WTNY's Motion should be denied, and it should be sanctioned for continued discovery obstruction without any good faith justification.

## RELEVANT FACTUAL BACKGROUND

### 1. At Issue in this Case is the Corporate Defendants' Conduct Between 1973 and 1992

Plaintiffs have sued the Defendants because it was their policies and conduct that allowed known pedophiles within the Hardin, MT Jehovah's Witness congregation to sexually abuse young girls in secret and unabated.  In particular, Plaintiffs allege that the Jehovah's Witness Organization ("JW Organization") acted through the Defendants to institute and enforce specific policies requiring Jehovah's Witnesses in Hardin, MT to keep the sexual abuse of Plaintiffs a secret, thereby protecting the abusers while failing to protect the victims.  *See, e.g.,* First Amend. Comp. at ¶¶ 11–32, 39-51 (Doc. 22).  Thus, a significant part of Plaintiffs' case is proving how the JW Organization was organized, how it conducted itself, and how it developed, published, and enforced specific policies that permitted the sexual abuse at issue to continue unabated, including:

> ➢ The structure of, and relationship between, the JW Organization's corporate entities, including the two corporate Defendants.  *Id.* at ¶¶ 11, 12, 17-21.

> ➢ The degree that the named corporate Defendants worked together to devise, draft, publish, and distribute policies that dictated the way in which local elders and local congregations grossly mishandled reports of child sex abuse.  *Id.* at ¶¶ 11, 12, 17-31.

➢ How the corporate Defendants communicated with local congregations. *Id.* at ¶¶ 11, 12, 17-31.

➢ Whether there is any actual distinction between the two corporate Defendants for the time period at issue. *Id.* at ¶ 32.

➢ Whether local congregations are agents of the corporate Defendants. *Id.* at ¶¶ 11-16.

➢ Whether elders, including local elders, are agents of the corporate Defendants. *Id.* at ¶¶ 11-16.

➢ Whether travelling elders sent by the JW Organization to Hardin, MT are agents of the corporate defendants. *Id.* at ¶¶ 11-16.

## 2. The Unique, Personal Experience and Knowledge of Messrs. Shuster, Breaux, and Smalley

Because the issues identified above are front and center in Plaintiffs' case, they have served notices to take the depositions of Messrs. Shuster, Breaux, and Smalley. Plaintiffs are seeking to depose these witnesses because they were uniquely and personally involved in the JW Organization during the 1970s and 1980s, including being involved with both corporate Defendants, communicating with local congregations regarding child sex abuse, and instructing local congregations on how to handle child sex abuse reports and investigations.

### a. Allen Shuster

Allen Shuster is an elder who has served at the JW Organization's New York headquarters since 1976.  Aff. of Allen Shuster, ¶ 3 (Sept. 21, 2011) (Doc. 170-4).  Mr. Shuster has extensive experience working with the JW Organization's Service Department dating back to 1981, where he was responsible for providing "spiritual guidance" to local congregations who called or wrote seeking help in handling problems, such as child sex abuse.  *Id.*  Mr. Shuster has personal experience in monitoring the staffing of local congregations, including reviewing the qualifications for the appointment of local elders.  *Id.* at ¶ 4.  Mr. Shuster's experience at the Service Department provided him personal knowledge of what the JW Organization expected of local elders during the "1970's through the 1990's."  *Id.* at ¶¶ 19–31.  Mr. Shuster has personal knowledge of how the JW Organization appointed and communicated with local elders during the time period relevant to this case, i.e., "1970's through the 1990's."  *Id.* at ¶¶ 38–45.

Mr. Shuster has previously provided testimony regarding his extensive personal experience working at the JW Organization's headquarters.  His prior testimony included references to trips he took to instruct local congregations on the JW Organization's policies that local elders were expected to follow.  Deposition of Allen Shuster at 16:6–22, *Dorman and Gamboa v. Does 1-100, et al.* (Mar. 27, 2012) (No. 37-2010-92450-CU-PO-CTL) (cited excerpts attached as **Exhibit A**).

Based on his personal experience in the Service Department, Mr. Shuster provided extensive testimony regarding how the JW Organization handled reports about child sex abuse in the "early 70s and 80s", including:

➢ How reports of child sex abuse were handled in the Service Department. **Ex. A** at 53:10–54:6; 63:19.

➢ The JW Organization's policies for dealing with child sex abuse. **Ex. A** at 66:8–67:18.

➢ His opinion that local elders should have been aware of what "grooming" was. **Ex. A** at 70:10–71:7.

➢ Changes made in the 1980s to the JW Organization's policies for investigating child sex abuse. **Ex. A** at 89:23–90:14.

➢ The JW Organization's policies and practices for keeping reports of child sex abuse secret in the 1980s and early 1990s. **Ex. A** at 92:10–94:7.

➢ The JW Organization's policies for monitoring admitted child molesters. **Ex. A** at 95–100.

Given his extensive personal experience, Mr. Shuster was previously identified by the JW Organization as the **Person Most Qualified** to be deposed about: (a) correspondence between the JW Organization's headquarters and local congregations about child sex abuse; (b) the corporate administrative structure of

the JW Organization; and (c) managerial staff functions within the JW

Organization.  Deposition of Allen Shuster at 9:9–12:17, *Doe v. WTNY, et al.* (Feb.

15, 2012) (No. HG11558324) (cited excerpts attached as **Exhibit B**).  Mr.

Shuster's testimony consistently weaved in his first-hand knowledge of the

administrative structure of the JW Organization before 2001, including how

WTNY, the Service Department, the Branch Office, and the Governing Body

relate to, and interact with, each other.  *See, e.g.,* **Ex. B** at 13:3–22:12; 34:12–20.

Mr. Shuster testified to his first-hand knowledge of the written policies and

guidelines that applied to the Service Department's handling of allegations of child

sex abuse.  *See, e.g.,* **Ex. B** at 33:19–34:20; 35:13–36:13 (noting his 31 years of

experience in the Service Department); 37:6–44:22, 107:14–109:2, 111:8–113:11.

Mr. Shuster testified to his personal knowledge of the JW Organization's policies

for dealing with child sex abuse, including the "two witness rule" that local

congregations are required to follow.  **Ex. B** at 59:23–60:7 (noting that the JW

Organization's "two witness rule" was promulgated by the Governing Body and

has been the JW Organization's policy since Mr. Shuster first worked in the

Service Department).  Mr. Shuster testified to how JW Organization expected local

elders to conduct investigations into alleged child sex abuse, including during

times at issue in this case.  **Ex. B** at 39:25–54:25.

### b. Gary Breaux

Gary Breaux has extensive personal experience as a local elder and as an elder at the Jehovah's Witness headquarters in New York.  He served as an elder in a Missouri congregation from 1972 to 1975, and again from 1981 to 1986. Deposition of Gary Breaux at 11, *Doe v. Watchtower* (May 29, 2015) (No. DC-14-12402) (cited excerpts attached as **Exhibit C**).   In between his stints as a local elder, he served as a travelling overseer who would visit local congregations and report his observations to the JW Organization's headquarters in New York.  *Id.* Mr. Breaux has served in various positions at the JW Organization's headquarters, including positions with many of their corporate entities.  Mr. Beaux has been a member of the Religious Order of Jehovah's Witnesses since 1986, a voting member of Defendant Watch Tower Bible and Tract Society, Inc. ("WTPA") since 2002, and the overseer of the Service Department since 1994. **Ex. C** at 10; (Doc. 170-3 at 6; Declaration of Gary N. Breaux at ¶¶ 2, 8, *Vigue, et al. v. WTNY, et al.* (Oct. 3, 2006) (No. 04-2-02451-4) (Attached as **Exhibit D**).  Mr. Breaux has also been a voting member of the Christian Congregation of Jehovah's Witnesses ("CCJW") and has identified himself in documents as the "Assistant Secretary" of Defendant Watchtower Bible and Tract Society of New York, Inc.  **Ex. D**, ¶ 9; (Doc. 170-3 at 6).

In a California Jehovah's Witness child sex abuse case dealing with abuse dating back to the 1970s, Mr. Breaux was designated as the **person most knowledgeable** to testify about, *inter alia*: (1) any and all policies that the Jehovah's Witness organization had for handling accusations and proof of child sexual abuse from the 1970s to the present; and (2) any and all policies that the Organization had for warning congregations and their members when a known child molester joined the congregation from 1970 to the present.  Memorandum of Points and Authorities in Support of Motion to Compel PMK Deposition and Document Request Regarding the Legal Department at 2, Exhibit 2 at 227:18–228:11 *Charissa W. and Nicole D. v. WTNY* (Sep. 15, 2006) (No. 26-22191) (Attached as **Exhibit E**).  In a Washington Jehovah's Witness child sex abuse case dealing with abuse dating back to 1983, Mr. Breaux was identified as a rebuttal expert regarding the JW Organization's practices and procedures for handling child sex abuse.  Defendants Watchtower and Othello (North) Spanish Congregation's Disclosures re: Expert Witnesses at 4, *Rodriguez v. WTNY, et al* (Jun. 5, 2003) (No. CS-02-0190-EFS) (attached as **Exhibit F).**  In a Texas Jehovah's Witness child sex abuse case dealing with abuse dating back to the 1980s, Mr. Breaux provided testimony indicating he had substantial personal experience as a deskman and overseer in the Service Department who implemented the JW Organization's policies and procedures for handling allegations of child sex abuse.  Mr. Breaux

has also provided testimony regarding WTPA's corporate record keeping and its activities in the United States since the 1960s. **Ex. C** at 9-21; **Ex. D** ¶ 10.

### c. Gene Smalley

Gene Smalley is an elder who has served at the JW Organization's headquarters in the Writing Department for decades. He is a voting member of both corporate Defendants in this case. (Doc. 160-3, ¶ 6). Mr. Smalley's role in the Writing Department dates back to the 1970s, where he would open and read correspondence from local congregations regarding child sex abuse.[2] Mr. Smalley has unique, personal knowledge of what the JW Organization knew about child sex abuse occurring at local congregations dating back to the 1970s and how the JW Organization handled that knowledge.

### 3. Plaintiffs' Efforts to Obtain Discoverable Information Regarding the Corporate Defendants' Structure and Conduct Between 1973 and 1992

Plaintiffs served written discovery attempting to learn about how the corporate Defendants were organized and operated during the period 1973 to 1992.

---

[2] Mr. Smalley's October 18, 2022, Declaration states that he has "proofread materials involving child abuse and Jehovah's Witnesses" and that he has "never been responsible for drafting or writing those materials." It is unclear what is meant by his use of the word "materials", but it is likely a reference to articles published in various magazines and books distributed by the JW Organization. Regardless, Mr. Smalley's Declaration fails to state that during the time-period at issue in this case he routinely opened and reviewed correspondence from local congregations regarding child sex abuse and he was personally involved in the JW Organization's efforts to understand the full extent of its child sex abuse problem.

However, the Defendants have refused to provide meaningful answers.  Examples of Defendants' failure to provide meaningful, detailed information when answering written discovery is attached as **Exhibit G** (WTPA's Answers to Pls.' Interrog. Nos. 25, 26 and WTNY's Answers to Pls.' Interrog. Nos. 8, 9, 15 and 20).

### a.  Interrogatories 25 & 26 to WTPA and Interrogatory Nos. 9 & 15 to WTNY

Plaintiffs served the above referenced interrogatories on WTPA and WTNY to learn what their respective roles in the JW Organization were, and what role the Governing Body played in controlling the JW Organization, between 1970 and 1995.  However, the Defendants have refused to provide any meaningful information in response.

First, the Defendants served answers that were "vague to the point of non-responsive" and were therefore ordered by the Court to "fully and completely" answer the interrogatories.  (Doc. 85 at 11).  But, in defiance of the Court's Order, both Defendants have yet to provide any meaningful information when answering Plaintiffs' interrogatories.  WTPA provided very general, cursory information about the Governing Body and stated is not aware of any relationship between WTNY, WTPA, or the Governing Body when it comes to how the JW Organization responded to reports of child sex abuse.  **Ex. G** (WTPA's Supp. Ans. to Interrog. Nos. 25 and 26).   WTNY followed suit and provided Plaintiffs essentially no information about what the Governing Body does and how it relates

to or interacts with the various corporate entities that make up the JW

Organization.  **Ex. G** (WTNY's Supp. Ans. to Interrog. Nos. 9 and 15).  Thus,

while Plaintiffs have attempted to discover information about the structure and

control of the JW Organization by the Defendants, they have refused to provide

any such information.

### b.  Interrogatory No. 8 to WTNY

Plaintiffs asked WTNY to describe how local elders are selected and

approved.  Rather than answer by describing that process, WTNY referred

Plaintiffs to 26 pages of a 224-page document full of scriptural references that

never actually describes how elders are selected and approved.[3]  **Ex. G** (WTNY

Ans. to Interrog. No. 8).

### c.  Interrogatory No. 20 to WTNY

Plaintiffs' Interrogatory No. 20 asked WTNY to describe how circuit and

district overseers, sent out by the JW Organization, assisted in the training of local

elders.  WTNY answered by stating that the district and circuit overseers may have

provided such training, but the exact nature of such assistance "is unknown."  **Ex**

**G** (WTNY Supp. Ans. to Interrog. No. 20).

---

[3] In contrast to Defendants' non-answer, Allen Shuster has provided sworn
statements detailing the process for appointing elders at local congregations.  Doc.
170-4, ¶¶ 38-47.

### 4. WTNY's Refusal to Provide Alternative Witnesses with Comparable Personal Experience and Knowledge

During the conferral process, Plaintiffs attempted to find alternative

witnesses to Messrs. Shuster, Breaux, and Smalley who would have comparable

personal knowledge and experience.  Specifically, Plaintiffs asked for

identification of:

> [I]ndividuals that you will produce for deposition who have substantially similar personal history and personal knowledge (for all time periods at issue in this case) of the JW Organization's corporate structure, the policies and procedures in place for handling accusations of child sex abuse, how the Service Department communicated with local congregations, and the process for the appointment and deletion of elders and ministerial servants . . .

(Doc. 236-4).  WTNY responded by stating it will make Thomas Jefferson, Jr. and

former WTNY attorney, Mario Moreno, available as "the most knowledgeable

alternative witnesses."  (Doc. 236-5 at 3).  But WTNY offered no information

indicating that Mr. Jefferson or Mr. Moreno had the same type of first-hand,

personal experience and knowledge as Messrs. Shuster, Breaux, and Smalley

clearly do.  For instance, there is no indication that either of the witnesses that

WTNY wants the Plaintiffs to depose worked in the Service or Writing

Departments during the 1970s and 1980s, like Mr. Shuster and Mr. Smalley.  Thus,

while Plaintiff attempted to find alternative witnesses with the same personal

history and knowledge as Messrs. Shuster, Breaux, and Smalley, WTNY did not

identify any.

## APPLICABLE LAW

At issue is whether Plaintiffs can take fact depositions of three Jehovah's Witness elders who served in various roles at the Organization's New York headquarters during the 1970s, 1980s, and 1990s and have knowledge about contested fact issues in this case.

### 1. Parties are typically permitted to obtain discovery necessary to evaluate their case in the sequence that they desire.

"Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." *Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D. 652, 655 (C.D. Cal. 2005) (citing *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D.Cal.1998). "Under Fed. R. Civ. P. 26(d), discovery generally may be conducted by any party in any sequence desired." *Stein v. Tri-City Healthcare Dist.*, No. 12-CV-2524-BTM BGS, 2014 WL 458021, at *2 (S.D. Cal. Feb. 4, 2014); *see also Purofied Down Prod. Corp. v. Royal Down Prod., Inc.*, 87 F.R.D. 685, 691 (W.D. Mich. 1980) (citing 4A Moore & Lucas, Moore's Federal Practice, P 33.09, 33–64 (1980) for the proposition that under Rule 26, various discovery devices can be used in combination, and in any order).

### 2. Orders prohibiting the taking of fact depositions are not favored.

"It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be

in error." *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (citing sources).

"Absent a strong showing of good cause and extraordinary circumstances, a court

should not prohibit altogether the taking of a deposition." *Motsinger v. Flynt*, 119

F.R.D. 373, 378 (M.D. N.C. 1988).  "[T]he complete prohibition of a deposition

[is] 'an extraordinary measure[] which should be resorted to only in rare

occasions.'" *Jennings v. Family Management,* 201 F.R.D. 272 (D.D.C. 2001)

(citing cases); *see also Harris v. Clay County, Mississippi*, 514 F. Supp. 3d 880,

881–82 (N.D. MS Aberdeen Div. 2021) ("An order prohibiting the taking of a

deposition is both 'unusual and unfavorable[,]'" absent extraordinary

circumstances.").

3. **The party seeking a protective order must demonstrate *good cause* with particular and specific facts as opposed to stereotyped and conclusory statements.**

"The party seeking a protective order has the burden to demonstrate good

cause and must make 'a particular and specific demonstration of fact as

distinguished from stereotyped and conclusory statements' supporting the need for

a protective order." *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231

F.R.D. 426, 429–30 (M.D. Fla. 2005) (quoting *United States v. Garrett*, 571 F.2d

1323, 1326 n.3 (5th Cir. 1978)).  "All motions under [Rule 26(c)] must be

supported by 'good cause' and a strong showing is required before a party will be

denied entirely the right to take a deposition." *Blankenship v. Hearst Corp.*, 519

F.2d 418, 429 (9th Cir. 1975) (quoting 4 J. Moore, *Federal Practice* ¶ 26.69, 26-

494—26-495 (2d ed. 1974)).  "A mere showing that the discovery may involve

some inconvenience or expense does not suffice to establish good cause under

Rule 26(c)."  *U.S. E.E.O.C. v. Caesars Ent., Inc.*, 237 F.R.D. 428, 432 (D. Nev.

2006) (citing *Turner Broadcasting System, Inc. v. Tracinda Corporation*, 175

F.R.D. 554, 556 (D.Nev.1997)).

### 4. A corporation's agents may be deposed personally regardless of whether a Rule 30 (b)(6) deposition is conducted

"[A] party who wishes the deposition of a specific officer or agent of a

corporation may still obtain it and is not required to allow the corporation to decide

for itself whose testimony the other party may have." *U.S. v. One Parcel of Real*

*Est. at 5860 N. Bay Rd., Miami Beach, Fla.*, 121 F.R.D. 439, 440 (S.D. Fla. 1988)

(quoting 8 *Wright & Miller, Federal Practice and Procedure: Civil* § 2103, at 375

(2d ed. 1970)).  Rule 30 (b)(6) expressly provides that "[t]his paragraph (6) does

not preclude a deposition by any other procedure allowed by these rules."  Fed. R.

Civ. P. 30(b)(6); *see also*, Advisory Committee note to 1970 amendment ("if the

examining party believes that certain officials who have not testified pursuant to

this subdivision have added information, he may depose them.").  Indeed, parties

"are entitled to seek both types of discovery[], and the court does not consider

these forms of discovery 'duplicative' even if they address similar or overlapping

subject matters."  *Doe v. Trump,* 329 F.R.D. 262, 273–74 (W.D. Wash. 2018).

### 5.  **The apex witness doctrine**

The exception to the general rule that parties are allowed to depose corporate representatives is known as the "apex witness doctrine". *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259 (N.D. Cal. 2012). "'In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods.'" *Id.* at 263 (quoting *In re Google Litig.*, C 08–03172 RMW (PSG), 2011 WL 4985279, at *2, 2011 U.S. Dist. LEXIS 120905, at *10 (N.D.Cal. Oct. 19, 2011)).

The party opposing an apex deposition still "carries a heavy burden to show why discovery should be denied.'" *Id.* (quoting *Celerity, Inc. v. Ultra Clean Holding, Inc.*, C 05–4374MMC(JL), 2007 WL 205067, at *3 (N.D.Cal. Jan. 25, 2007)). "'A claimed lack of knowledge, by itself it is insufficient to preclude a deposition.'" *Id.* (quoting *WebSideStory, Inc. v. NetRatings, Inc.*, 06CV408 WQH (AJB), 2007 WL 1120567, at *2 (S.D.Cal. Apr. 6, 2007). "'When a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition.'" *Id.* (quoting *WebSideStory*, at *2); *see also Brewer v. BNSF Ry. Co.*, CV 14-65-GF-BMM, 2015 WL 13810744, at *2 (D. Mont. Nov. 5, 2015) (allowing personal deposition of Defendant's CEO).

**ARGUMENT**

1. **Plaintiffs have noticed the depositions of three material witnesses with unique personal experience and knowledge of Defendants' conduct during the 1970s, 1980s, and 1990s.**

This case involves the Defendants' conduct dating back to the 1970s. Finding fact witnesses with personal knowledge of the Defendants' conduct dating that far back is not easy.  It is therefore remarkable that Messrs. Shuster, Breaux, and Smalley – all of whom served the at the Defendants' headquarters in New York during the time-period at issue in this case – are still alive and able to offer their personal knowledge as testimony regarding the Defendants' conduct during that period.

It is routine and typically uncontroversial for parties to depose witnesses with the personal experience and knowledge that Messrs. Shuster, Breaux, and Smalley have.  Indeed, two of the three men have been deposed in similar cases where they were designated as the "people most knowledgeable" of several subjects that are at issue in this case and for the time-period at issue in this case. This is not a situation where Plaintiffs are attempting to depose the head of a government agency or corporation who had no personal involvement in the events at issue.  To the contrary, Messrs. Shuster, Breaux, and Smalley were each personally involved, and have substantial first-hand personal knowledge of, the

Defendants' conduct that is at issue in this case during the 1970s, 1980s, and 1990s.

Indeed, Defendants were unable to identify <u>any</u> other witnesses with comparable first-hand knowledge and experience as these three men.  When asked for witnesses with substantially similar knowledge and experience, Defendants provided two individuals as "the most knowledgeable alternative witnesses." (Doc. 236-5 at 3).  But "the most knowledgeable alternative witnesses" does not provide any information about their actual personal experience and knowledge. For instance, WTNY fails to identify the positions the alternative witnesses have held, the time periods they served at the Organization's headquarters, and any role that they may have had in the creation, promulgation, and enforcement of the Organization's policies and procedures related to child sex abuse during the 1970s, 1980s, and 1990s.  Despite being given an opportunity to produce witnesses with comparable personal experience to Messrs. Shuster, Breaux, and Smalley, WTNY failed to do so.

## 2.  Even if Messrs. Shuster and Breaux are properly characterized as Apex Witnesses, they are still subject to deposition on their personal knowledge and experience.

There are serious questions about whether the apex witness doctrine applies at all to Messrs. Shuster and Breaux here.  According to Defendants, these men currently hold executive positions with CCJW, one of the Organization's many

corporate entities that was not formed until the year 2000.  But Plaintiffs intend to

obtain their personal knowledge from the 1970s, 80s, and 90s concerning how

WTNY and WTPA conducted themselves, not the then non-existent CCJW.  By

analogy, if Mr. Shuster witnessed a car accident in 1982, his status as an executive

in a corporation today would obviously not render him immune from deposition

regarding the accident.  Defendants are actually proposing some rule other than the

apex witness doctrine: any executive of any corporation, related to the litigation or

not, that they don't want deposed cannot be deposed.[4]

Even if the Court finds that the apex witness doctrine applies to Messrs.

Shuster and Breaux, Defendants have failed to meet their "heavy burden" to show

why the depositions should be denied.  *Apple Inc.*, 282 F.R.D. at 263.  Plaintiffs

demonstrated above that Messrs. Shuster and Breaux have unique first-hand

knowledge of facts at issue for the time period involved in this case.

Consistent with the law, Plaintiffs have attempted to utilize other discovery

methods to obtain information about the Defendants' roles in the JW Organization

and their conduct during the relevant time-period.  However, the Defendants have

refused to answer such discovery in a meaningful way.  *See supra* pp. 11-13.

Contrary to WTNY's position, Plaintiffs have attempted to utilize other methods of

---

[4] The *Apple Inc.* court was specifically concerned that an expansion of the doctrine
could "become a tool for evading otherwise relevant and permissible discovery[.]"
282 F.R.D. at 263.

discovery, but the Defendants are unwilling to participate in good faith in that

process.  In sum, the Apex doctrine does not prohibit the depositions of witnesses

like Mr. Shuster and Mr. Breaux, who have personal knowledge of facts and

information that is material to Plaintiffs' claims.

### 3. There is no legitimate basis to limit Plaintiffs to a Rule 30(b)(6) deposition.

WTNY argues that Plaintiffs should have to use a "less intrusive" method of

discovery before being permitted to depose Messrs. Shuster, Breaux, and Smalley.

(Doc. 235 at 2).  WTNY suggests that this means Plaintiffs should be limited to a

Rule 30(b)(6) deposition, whereby WTNY gets notice of the topics and can prepare

a witness to answer questions to WTNY's liking.  (*See, e.g.,* Doc. 235 at 16).

WTNY's proposition makes no sense because there is no deposition more

burdensome or intrusive than a Rule 30(b)(6) deposition:

> It should be apparent that this procedure is different in significant
> ways from a normal deposition. For the organization served with the
> notice or subpoena, the specification of topics affords valuable
> advance insight into the focus of the questioner. Despite the assistance
> provided by this specification, **the burdens faced by the responding
> party are considerably more challenging than with an ordinary
> deposition**. It must choose the person to testify. There is no obligation
> to select a person with personal knowledge of the events in question,
> but there is an obligation to proffer a person who can answer
> regarding "information known or reasonably available to the
> organization." Thus, unlike all other depositions, there is an implicit
> obligation to prepare the witness. As specified in the rule, this
> preparation is not limited to matters of which the witness has personal
> knowledge, but extends to all information reasonably available to the
> responding organization. That obligation can present difficulties when

the events in question occurred long ago, or when there have been significant changes in corporate personnel (due, sometimes, to such corporate transactions as mergers and the like) resulting in the departure from the company's employ of all those who knew about the events in question. Rule 30(b)(6), in short, provides the organization's adversary with a very effective device for procuring information **and also can impose considerable burdens on the opposing party**.

8A Charles Alan Wright, Arthur R. Miller, *Federal Practice and Procedure* § 2103 (3d ed. 2023) (emphasis added).  The burdens of preparing a witness imposed by a Rule 30(b)(6) deposition are particularly acute when, as here, the topics regard events in the distant past.  *Id*. at n. 9 (citing Sinclair & Fendrich, *Discovering Corporate Knowledge and Contentions: Rethinking Rule 30(b)(6) and Alternative Mechanisms*, 30 Ala. L. Rev. 651 (1999)).  Alternatively, WTNY has no obligation to prepare Messrs. Shuster, Breaux, and Smalley for their personal depositions; they only need to appear and testify truthfully.

WTNY's motive in attempting to limit Plaintiffs to only a Rule 30(b)(6) deposition is transparent: it wants advance notice of the questions that Plaintiffs' counsel will be asking its witnesses.  As the above referenced section from *Wright and Miller* explains, Rule 30(b)(6) depositions afford the responding party "valuable advance insight into the focus of the questioner."  *Id*.  WTNY is not really interested in less burdensome discovery methods: it is interested in gaining an unjustified tactical advantage.

WTNY's motives aside, the law does not support WTNY's position.  Rule 30(b)(6) is explicit that it is not intended to be a replacement for fact witness depositions:

> [t]his paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

Fed. R. Civ. Pro. 30(b)(6); *see also Doe v. Trump*, 329 F.R.D. 262, 273–74 (W.D. Wash. 2018) (noting that the deposition of an individual and the deposition of the same person as a representative of the organization are two distinct matters and can be utilized as distinct forms of evidence even when they address overlapping subject matters).  As *Wright and Miller* note:

> [a] party who wishes the deposition of a specific officer or agent of a corporation may still obtain it and is not required to allow the corporation to decide for itself whose testimony the other party may have.

8A Charles Alan Wright, Arthur R. Miller, *Federal Practice and Procedure* § 2103 (3d ed. 2023).  WTNY's position that Plaintiffs should be limited to only a Rule 30(b)(6) deposition is contrary to the law and should be rejected.

### 4. Defendants provide no actual facts justifying an order prohibiting the noticed depositions.

Parties seeking extraordinary relief are required to produce extraordinary evidence.  *Salter*, 593 F.2d at 651; *Motsinger*, 119 F.R.D. at 378; *Harris County*, 514 F. Supp. 3d at 881–82.  Here, WTNY seeks the extraordinary relief of a court order prohibiting depositions of three men with first-hand, personal knowledge and

experience that bears on significant fact issues in this case.  Yet, all they offer the Court is conclusory and unsupported assertions of counsel that the depositions are "intrusive," "cumulative," "harassing," a "hardship" and "in direct violation" of this Court's prior order.  None of these conclusory assertions are supported by facts or evidence, and WTNY fails to meet the extraordinary burden that the law places on it.

For Messrs. Shuster and Breaux, neither of their declarations offer any facts establishing that sitting for a deposition would genuinely interfere with their duties as servants to CCJW.  They only set forth their positions and certain responsibilities that they have.  But most fact witnesses who are deposed have jobs and associated responsibilities.  Having a job with associated responsibilities is not extraordinary and does not establish "extraordinary circumstances" justifying the extreme relief of a deposition prohibition.  Glaringly absent from Messrs. Shuster's and Breaux's declarations is any fact establishing what the alleged burden of sitting for a seven (7) hour deposition would have on their respective duties.

Without any factual support, WTNY asserts that Messrs. Shuster and Breaux are "critical to the operations of CCJW today."  (Doc. 235 at 10).  But neither Mr. Shuster, nor Mr. Breaux, make such a factual declaration; WTNY's assertion is nothing more than the conclusory statement of counsel that is plainly insufficient to meet its burden.  WNTY next asserts that Messrs. Shuster and Breaux would

have to "spend several days each to prepare for depositions about past operations of WTNY and about past practices of Jehovah's Witnesses in the 1970s and 1980s in the area of child abuse." *Id*.  This is also not true.  Rule 30 places no such obligation on personal depositions of fact witnesses.  Messrs. Shuster's and Breaux's only obligation is to appear and answer questions truthfully.

As it pertains to Mr. Smalley, WTNY simply asserts that because he is 83 years old, he is too old to be deposed.  However, this case involved events that occurred 40-50 years ago.  As such, witnesses of Mr. Smalley's generation are the most likely to have material and discoverable knowledge.  Thus, his age, combined with his personal experience in the Writing Department handling correspondence from local congregations about child sex abuse, make him a material fact witness on issues important to this case.  The fact that Mr. Smalley is 83 years old, without some indication that he is infirm, ill, or will otherwise be harmed by the deposition, is not a basis to prohibit the deposition.  *See Harris v. Clay County, Mississippi*, 514 F. Supp. 3d 880, 882 (N.D. Miss. 2021) (a "particularized showing" that the witness would be harmed is required).

## CONCLUSION

When WTNY filed its Motion, it had an obligation to make a "strong showing of good cause and extraordinary circumstances" for the extreme relief sought.  *Motsinger v. Flynt*, 119 F.R.D. 373, 378 (M.D. N.C. 1988).  It cannot meet

its burden with generalized, conclusory assertions of counsel.  WTNY failed to

meet its burden and instead relies on conclusory assertions that the noticed

depositions will be cumulative and constitute harassment.  None of WTNY's

conclusory are supported by facts on the record and none of them are true.  Messrs.

Shuster, Breaux, and Smalley have unique knowledge of material facts about the

Defendants and their conduct based on their personal experience at the JW

Organization's New York headquarters.  Ultimately, WTNY provides the Court no

facts or evidence justifying the extreme relief sought and its Motion should be

denied.  Moreover, because WTNY filed a motion seeking extraordinary relief

without any factual or legal justification that has delayed this case, it should be

ordered to pay Plaintiffs' fees and costs of litigating this Motion.

DATED this 1st day of June, 2023.


By: /s/ Ryan Shaffer
Ryan R. Shaffer
MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 1.4, this document has been served on all parties via electronic service through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

By: /s/ Ryan Shaffer
       Ryan R. Shaffer
       MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*


## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), Plaintiff hereby certifies that this brief complies with the length requirement for briefs, and that this brief contains 6,077 words, excluding the caption, certificates of service and compliance, table of contents and authorities, and exhibit index.

By: /s/ Ryan Shaffer
       Ryan R. Shaffer
       MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*