*Exhibit E*

1   Rudy Nolen,  SBN 59808
    Stephen W. Owens, SBN 84859
2   NOLEN & ASSOCIATES
    1501 28th Street
3   Sacramento, CA 95816
    Telephone: (916) 733-0600
4   Facsimile: (916) 733-0601

5   Hartley Hampton, SBN 0227400
    FIBICH, HAMPTON & LEEBRON, LLP
6   Five Houston Center
    1401 McKinney, Suite 1800
7   Houston, TX 77010
    Telephone: (713) 751-0025
8
    Greg Love,  SBN 12592020
9   LOVE & NORRIS
    314 Main Street, Suite 300
10  Fort Worth, TX 76102-7423
    Telephone: (817) 335-2800
11  Facsimile: (817) 335-2912

12  Attorneys for Plaintiffs
    CHARISSA W. and NICOLE D.
13

**FILED**

SEP 1 5 2006

Clerk of the Napa Superior Court
By: _J. Oliver_
Deputy

14
15              SUPERIOR COURT OF CALIFORNIA
16                   COUNTY OF NAPA

17  CHARISSA W. and NICOLE D.,          ) CASE NO: 26-22191
                                        )
18            Plaintiffs,               ) Judicial Council Coordination
                                        ) Proceeding No. 4374
19  vs.                                 )
                                        ) **MEMORANDUM OF POINTS AND**
20  WATCHTOWER BIBLE AND TRACT SOCIETY  ) **AUTHORITIES IN SUPPORT OF**
    OF NEW YORK, INC., et al.           ) **MOTION TO COMPEL PMK**
21                                      ) **DEPOSITION AND DOCUMENT**
              Defendants.               ) **REQUEST REGARDING THE LEGAL**
22                                      ) **DEPARTMENT.**
    _____    )
23                                      ) **(DISCOVERY MOTION 3)**
    AND COORDINATED ACTIONS             )
24                                      ) Date:   October 10, 2006
                                        ) Time:   8:30 a.m.
25                                      ) Dept:   A
    _____    ) Judge:  Hon. Raymond A. Guadagni
26

27  ///

28  ///

# INTRODUCTION

Plaintiffs are moving to compel the Watchtower Defendants to produce documentation and deposition testimony consistent with the PMK Notice of Taking Deposition which is currently set for October 18-19, 2006. (A copy of the Notice of Taking Deposition is attached as **Exhibit 1.**)

On November 15, 2005, Gary N. Breaux was deposed as the person most knowledgeable about, among other things, "any and all policies that the Jehovah's Witnesses organization had for handling accusations and proof of child sexual abuse from 1970 to the present." During the course of the deposition, Mr. Breaux identified certain functions that were handled by the legal department, rather than the service department in which he worked. He was unable to answer several questions about the role of the legal department in the formation and implementation of the policies in question.

# LEGAL AUTHORITY

California Code of Civil Procedure § 2025.450(a) provides that a party may move for an order "compelling the deponent's attendance and testimony, and the production for inspection of any document or tangible thing described in the deposition notice."

In addition, California Code of Civil Procedure § 2020.480(a) provides that a "party seeking discovery may move the court for an order compelling" an answer to a question or the production of a document which is under a deponent's control and is not answered or produced at the deposition.

# CATEGORIES OF TESTIMONY TO BE COMPELLED

The deposition notice in question designates matters fairly included within the scope of "any and all policies that the Jehovah's Witnesses organization had for handling accusations and proof of child sexual abuse from 1970 to the present." Specifically, it designates the following matters:

1. The organization, staffing and operation of the Legal Department from the date of the department's creation until the present.

2. The Legal Department's role in responding to and investigating allegations of child sexual abuse within the Jehovah's Witnesses organization from the date of the department's creation until the present.

Neither designation invades the attorney-client privilege or seeks to inquire about work product. The designations concern policies and their implementation and, but for his lack of personal knowledge, Mr. Breaux would have addressed them.  (See excerpts of deposition of Gary N. Breaux attached hereto as **Exhibit 2.**)

**TESTIMONY ABOUT PRODUCED DOCUMENTS TO BE COMPELLED**

At the depositions, Defendants produced many documents pursuant to a duces tecum.   However, several of the documents were created and utilized by the Legal Department and, again, Mr. Breaux did not have sufficient personal knowledge to testify about those documents.  (The produced documents in question would be attached hereto as **Exhibit 3** except that they may still be subject to a Stipulated Protective Order.  For that reason, they will be provided to the Court at the time of the hearing.)   Items 3 through 5 address three of those documents:

3. The development and use of "Child Abuse Telememos."

4. Records kept by or under the direction of the Legal Department concerning allegations of child sexual abuse.

5. Answers to the "Survey Questions" on p.2 or the 1993 "Child Abuse Telememo, page WTNY 00570 of the exhibits to the deposition of Gary N. Breaux and J. Richard Brown, Bates numbers SR 00000094.

Items 3 and 5 pertain to actual documents produced at the depositions.  Exemplars of the "Child Abuse Telememos" were produced and Plaintiffs are entitled to examine defendant about the development and use of those documents.  The "Survey" questions

1  were found on one of the "Child Abuse Telememos" and Plaintiffs seek only to learn the

2  results of that survey.

3          Item 4 seeks only to discover, generally, information about the type of records kept

4  by the legal department, how long such records have been kept, the number of records,

5  etc., in order to determine whether a request for specific documents would be appropriate.

6

7          **GOOD CAUSE JUSTIFIES THE PRODUCTION OF THE DOCUMENTS AND**

8          **ANSWERS TO THE QUESTIONS**

9          These questions and documents go to the heart of the Plaintiffs' accusations of

10  child sexual abuse and defendants' knowledge of that abuse.  The knowledge of various

11  individuals in the Jehovah's Witnesses organization is key to Plaintiffs' proof of their

12  case in these matters.

13          The individual who was produced as the person most knowledgeable was unable

14  to address various topics due to his lack of knowledge.  Plaintiffs, through this motion,

15  seek to have the Watchtower Defendants produce an individual with knowledge of the

16  applicable topics and documents.

17

18          **CONCLUSION**

19          Plaintiffs respectfully request that this Court find that the above discovery matters

20  are not protected by the attorney-client privilege or the work product doctrine, and issue

21  an order compelling the Watchtower Defendants to produce a witness or witnesses that

22  will provide testimony in connection with the above five categories of inquiry.

23

24  Date: September _14_, 2006                    Respectfully Submitted,

25

26                                              NOLEN & ASSOCIATES

27

28                                              Rudy Nolen
                                                Attorney for Plaintiffs

## MOTION # 3
**Memorandum of Points and Authorities in Support of Motion to Compel PMK
Deposition and Document Request Regarding the Legal Department**


# Exhibit 1

**Copy of Notice of Taking Deposition**

**EXHIBIT 1**

Rudy Nolen, SBN 59808
Stephen W. Owens, SBN 84859
NOLEN & ASSOCIATES
1501 28th Street
Sacramento, CA  9586
Telephone: (916) 733-0600
Facsimile: (916) 733-0601

Hartley Hampton, SBN 08874400
FIBICH, HAMPTON & LEEBRON, LLP
1401 McKinney, Suite 1800
Houston, Texas  77010
Telephone: (713) 751-0025
Facsimile: (713) 650-6458

Greg Love, SBN 12592020
LOVE & NORRIS
314 Main Street, Suite 300
Fort Worth, Texas 76102-7423
Telephone: (817) 335-2800
Facsimile: (817) 335-2912

Attorneys for Plaintiffs

SUPERIOR COURT OF CALIFORNIA
COUNTY OF YOLO

| | | |
|---|---|---|
| DANIEL WEST, SHANE PENCE, and AMBER PENCE | § § § | Case No. CV03-1439 |
| vs. | § § | **NOTICE OF TAKING DEPOSITION** |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., et al | § § | |

**TO DEFENDANT WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and ITS ATTORNEYS OF RECORD**

DATE:

TIME:

PLACE:          Brooklyn, New York

WITNESS:      Person(s) Most Knowledgeable regarding:

The deposition will be taken before a certified court reporter and will continue from day to day until completed.   The deposition will also be videotaped. You are hereby authorized to attend and cross examine the witness.

The deposition of Defendant shall concern the matters set forth below. The Defendant is to designate a person or persons to testify as to the matters that are known or reasonably available to the corporation.  The matters to be inquired about during the deposition are as follows:

1.      The organization, staffing and operation of the Legal Department from the date of the department's creation until the present.

2.      The legal department's role in responding to and investigating allegations of child sexual abuse within the Jehovah's Witnesses organization from the date of the department's creation until the present.

3.      The development and use of "Child Abuse Telememos."

4.      Records kept by or under the direction of the Legal Department concerning allegations of child sexual abuse.

5.      Answers to the  "Survey Questions" on p. 2 of the 1993 "Child Abuse Telememo", page WTNY 00570 of the exhibits to the depositions of Gary N. Breaux and J. Richard Brown, Bates numbers SR00000094.

This Notice of Deposition will also serve as a subpoena duces tecum and the representative(s) designated by Defendant shall bring with them to the deposition, the following items:

1. Any documents that describe the organization, staffing and operation of the Legal Department from the date of the department's creation until the present.

2. Any documents that describe the legal department's role in responding to and investigating allegations of child sexual abuse within the Jehovah's Witnesses organization from the date of the department's creation until the present.

3. Any documents that describe the records kept by or under the direction of the Legal Department concerning allegations of child sexual abuse from the date of the department's creation until the present.

4. Any documents that pertain to the "Survey Questions" on p. 2 of the 1993 "Child Abuse Telememo", page WTNY 00570 of the exhibits to the depositions of Gary N. Breaux and J. Richard Brown, Bates numbers SR00000094, including any documents that describe or tabulate the answers to such questions.

5. The actual documents that contain the answers to the Answers to the "Survey Questions" on p. 2 of the 1993 "Child Abuse Telememo", page WTNY 00570 of the exhibits to the depositions of Gary N. Breaux and J. Richard Brown, Bates numbers SR00000094.

## MOTION # 3
**Memorandum of Points and Authorities in Support of Motion to Compel PMK Deposition and Document Request Regarding the Legal Department**

# Exhibit 2

### Excerpts of Deposition of Gary N. Breaux

EXHIBIT 2

SUBJECT TO PROTECTIVE ORDER
ORAL DEPOSITION OF GARY N. BREAUX
November 15, 2005

CONDENSED TRANSCRIPT AND CONCORDANCE
PREPARED BY:

**Sunbelt Reporting & Litigation Services**
(713) 667-0763 Houston
(214) 747-0763 Dallas
(361) 882-0763 Corpus

**SUBJECT TO PROTECTIVE ORDER**
**ORAL DEPOSITION OF GARY N. BREAUX**

### Page 97

```
 1  the congregation. Right?                        11:23:38
 2      A.  That's right.                            11:23:40
 3      Q.  But you've also told us that the         11:23:41
 4  elders are not trained in the type of            11:23:43
 5  investigative techniques that law enforcement    11:23:46
 6  employs. True?                                   11:23:49
 7      A.  That's right.                            11:23:50
 8      Q.  So my question is -- is not              11:23:51
 9  directed at anybody other than the -- than the   11:23:54
10  expectation of what the elders should do. My     11:23:56
11  question is simply this: Why don't the elders,   11:23:59
12  as soon as they receive an allegation of child   11:24:03
13  sexual abuse, pick up the phone and call the     11:24:07
14  police and ask the police to come in and         11:24:10
15  investigate?                                     11:24:13
16      A.  You're speaking of prior to '94?         11:24:13
17      Q.  Yes, sir.                                11:24:16
18      A.  Well, it would depend -- many            11:24:17
19  states didn't require it. And the position of    11:24:20
20  the body of elders is to -- is to care for that  11:24:22
21  individual within the confines of the            11:24:24
22  congregation. But at times it did require        11:24:27
23  individuals to call the authorities.             11:24:30
24      Q.  Okay.                                    11:24:31
25      A.  And certainly the family and             11:24:32
```

### Page 98

```
 1  those -- those that are knowledgeable of it to    11:24:37
 2  inform the authorities for extra protection.      11:24:39
 3      Q.  But prior to 1994, it was not             11:24:40
 4  the policies -- I don't know what the policy is   11:24:42
 5  after '94 and I'm not suggesting what it is       11:24:45
 6  after '94. But at least up through 1994, it       11:24:48
 7  was not the policy of the Jehovah's Witnesses     11:24:52
 8  to have the elders pick up the phone and call     11:24:55
 9  the police and have them come over and            11:24:58
10  investigate allegations of child sexual abuse     11:25:00
11  across the board, was it?                         11:25:03
12      A.  Well, no, it was not a policy,            11:25:04
13  but it doesn't mean that the congregation         11:25:06
14  didn't do something to protect. Certainly they    11:25:08
15  didn't encourage people not to call the          11:25:12
16  authorities.                                      11:25:14
17      Q.  Well, one of the things that you         11:25:17
18  are designated as the person most knowledgeable   11:25:32
19  about is number 8 on the deposition notice.      11:25:35
20  I'll read it. It says, the "Person most          11:25:42
21  knowledgeable regarding any and all policies     11:25:47
22  that the Jehovah's Witness organization had for  11:25:49
23  handling accusations and proof of child sexual   11:25:52
24  abuse from 1970 to the present." Correct?        11:25:55
25      A.  Yes.                                      11:25:59
```

### Page 99

```
 1      Q.  Now, you've told me that you             11:25:59
 2  don't know anything about these forms produced   11:26:00
 3  by the legal department, including this child    11:26:08
 4  abuse telememo that's Bates numbered 566. You    11:26:10
 5  know nothing about that.                          11:26:17
 6      A.  That is correct. I -- I'm not            11:26:20
 7  in the legal department and I was not involved   11:26:21
 8  in the preparation of this form.                  11:26:23
 9      Q.  Okay. But one thing that you do          11:26:25
10  know, Mr. Breaux, is that it has been the        11:26:30
11  policy since you first became associated with    11:26:34
12  the Jehovah's Witnesses that the first thing     11:26:36
13  that an elder is expected to do if he receives   11:26:41
14  an allegation or any information that suggests   11:26:44
15  that a child has been the victim of sexual       11:26:49
16  abuse, that elder is supposed to call the legal  11:26:53
17  department. True?                                 11:26:56
18      A.  Yes. I think -- I think about           11:26:57
19  the middle of the 1980s that was the direction   11:26:58
20  given.                                            11:27:01
21      Q.  Well, that's been the direction          11:27:01
22  given way before the 1980s, wasn't it? That      11:27:04
23  was the direction given as early as 1965, when   11:27:07
24  you joined the organization, wasn't it, or when  11:27:11
25  you came to Brooklyn?                             11:27:14
```

### Page 100

```
 1      A.  If there was some legal issue?           11:27:15
 2  I don't even think we had a legal department     11:27:18
 3  back in the sixties.                              11:27:20
 4      Q.  Well, you have -- you have              11:27:21
 5  actually produced some documents that --         11:27:22
 6      THE VIDEOGRAPHER:  Excuse me,                11:27:41
 7  counsel. We need to change tapes.                11:27:41
 8      MR. HAMPTON:  Let's change the               11:27:48
 9  tape. This is a good time to do it.              11:27:48
10      THE VIDEOGRAPHER:  The time is               11:27:48
11  11:27 a.m. This concludes tape number one in     11:27:48
12  the deposition of Gary Breaux. We're off the     11:27:57
13  record.                                          11:28:00
14      (A recess was taken from 11:27 a.m.          11:30:29
15  to 11:38 a.m.)                                   11:30:29
16      THE VIDEOGRAPHER:  The time is               11:30:29
17  11:38 a.m. This is cassette two in the           11:30:33
18  deposition of Gary Breaux. We're on the          11:30:37
19  record.                                          11:30:40
20      Q.  Mr. Breaux, before we took a            11:30:41
21  break, you said that you -- you said something   11:30:43
22  about you didn't know when -- or you didn't      11:30:46
23  think you had a legal department before a        11:30:50
24  certain period of time and -- I don't remember   11:30:53
25  exactly what you said. And I bring that -- I'm   11:30:54
```

Pages 97 to 100

**SUBJECT TO PROTECTIVE ORDER**
**ORAL DEPOSITION OF GARY N. BREAUX**



### Page 225

| | | |
|---|---|---|
| 1 | A.    If he's moving into a | 03:35:02 |
| 2 | congregation and he's served previously and | 03:35:04 |
| 3 | that search has already been done, then no, | 03:35:06 |
| 4 | it's -- there won't be a second search. | 03:35:09 |
| 5 | Q.    I'm sorry. I didn't understand | 03:35:19 |
| 6 | that. Can you run that by me one more time? | 03:35:21 |
| 7 | A.    He's an elder in one | 03:35:24 |
| 8 | congregation and now he's -- he moves to a | 03:35:25 |
| 9 | different congregation, then when he moves, a | 03:35:28 |
| 10 | recommendation is made and at that time he will | 03:35:30 |
| 11 | be reappointed. | 03:35:34 |
| 12 | Q.    Well, what if he doesn't want to | 03:35:36 |
| 13 | be reappointed? What if an elder in | 03:35:38 |
| 14 | congregation A moves to congregation B and does | 03:35:42 |
| 15 | not choose to seek appointment as an elder? | 03:35:44 |
| 16 | First of all, the branch office is notified of | 03:35:47 |
| 17 | that move. Correct? | 03:35:51 |
| 18 | A.    If he is not going to be | 03:35:53 |
| 19 | recommended in the next congregation, then | 03:35:55 |
| 20 | we're not notified that he's moving. | 03:35:57 |
| 21 | Q.    I want to make sure that we're | 03:35:59 |
| 22 | on the same page. When you say "recommended," | 03:36:01 |
| 23 | do you mean recommended as an elder, or | 03:36:04 |
| 24 | recommended for membership in the congregation? | 03:36:06 |
| 25 | A.    No. As an elder or an appointed | 03:36:08 |

### Page 226

| | | |
|---|---|---|
| 1 | position. | 03:36:11 |
| 2 | Q.    So there's no notification if an | 03:36:12 |
| 3 | elder moves from congregation A to congregation | 03:36:14 |
| 4 | B unless he seeks reappointment. | 03:36:17 |
| 5 | A.    That's correct. To the branch | 03:36:19 |
| 6 | office. | 03:36:20 |
| 7 | Q.    Okay. In that case, the only | 03:36:21 |
| 8 | information about that elder's past that would | 03:36:25 |
| 9 | be reported through Jehovah's Witness channels, | 03:36:30 |
| 10 | if you will, would be in the letter of | 03:36:34 |
| 11 | introduction that accompanies him to the new -- | 03:36:37 |
| 12 | or that goes to the new congregation. | 03:36:39 |
| 13 | A.    That would be. | 03:36:42 |
| 14 | Q.    And if the individual moving | 03:36:44 |
| 15 | from congregation A to congregation B were not | 03:36:50 |
| 16 | an elder or a ministerial servant or a pioneer, | 03:36:50 |
| 17 | there would be nothing -- there would never be | 03:36:55 |
| 18 | a report to the branch office under any | 03:36:56 |
| 19 | circumstances, would there? | 03:37:00 |
| 20 | A.    Unless there was some other | 03:37:03 |
| 21 | judicial issues or questions to be raised. But | 03:37:05 |
| 22 | normally not; there would not be a copy of the | 03:37:07 |
| 23 | introduction letter sent to the branch when a | 03:37:11 |
| 24 | person moves to another congregation. | 03:37:14 |
| 25 | Q.    Normally there would only be the | 03:37:15 |

### Page 227

| | | |
|---|---|---|
| 1 | introduction letter to the new congregation. | 03:37:18 |
| 2 | A.    That's correct. | 03:37:20 |
| 3 | Q.    Okay. Now, you say if there | 03:37:20 |
| 4 | were judicial issues and some other things, | 03:37:21 |
| 5 | there might be a report to the branch office? | 03:37:23 |
| 6 | Under what circumstances would that happen? | 03:37:25 |
| 7 | A.    If there was some complicated | 03:37:29 |
| 8 | issue that the judicial committee was having | 03:37:31 |
| 9 | problems with and they needed some further | 03:37:33 |
| 10 | spiritual guidance. | 03:37:36 |
| 11 | Q.    And that would depend on there | 03:37:38 |
| 12 | being an ongoing judicial committee | 03:37:40 |
| 13 | investigation at the time the individual moved. | 03:37:43 |
| 14 | A.    Yes, that's -- that's right. | 03:37:46 |
| 15 | Q.    Okay. Other than that, there | 03:37:49 |
| 16 | wouldn't be a report? | 03:37:50 |
| 17 | A.    There would not be. | 03:37:52 |
| 18 | Q.    Okay. The -- this -- this | 03:37:52 |
| 19 | notice asked that a person be designated who | 03:38:01 |
| 20 | was most knowledgeable regarding any and all | 03:38:08 |
| 21 | policies that the Jehovah's Witnesses -- | 03:38:11 |
| 22 | Jehovah's Witness organization had for handling | 03:38:16 |
| 23 | accusations and proof of child sexual abuse | 03:38:20 |
| 24 | from 1970 to the present. Can you think of | 03:38:21 |
| 25 | anything we haven't discussed that pertains to | 03:38:23 |

### Page 228

| | | |
|---|---|---|
| 1 | those policies? | 03:38:25 |
| 2 | A.    No, nothing comes to my mind. | 03:38:30 |
| 3 | Q.    All right. Similarly, you were | 03:38:33 |
| 4 | designated to testify about the policies the | 03:38:37 |
| 5 | Jehovah's Witness organization had for warning | 03:38:44 |
| 6 | congregations and their members when a known | 03:38:47 |
| 7 | child molester joined the congregation from | 03:38:50 |
| 8 | 1970 to the present. Can you think of anything | 03:38:52 |
| 9 | that we haven't discussed that pertains to | 03:38:55 |
| 10 | those policies? | 03:38:57 |
| 11 | A.    Nothing comes to my mind. | 03:39:01 |
| 12 | Q.    All right. My understanding is | 03:39:04 |
| 13 | that you are not going to answer any questions | 03:39:05 |
| 14 | about documents produced by the legal | 03:39:10 |
| 15 | department in response to our document request, | 03:39:13 |
| 16 | even if those documents pertain to policies | 03:39:16 |
| 17 | that the Jehovah's Witness organization had for | 03:39:21 |
| 18 | handling accusations and proof of child sexual | 03:39:26 |
| 19 | abuse. Is that correct? | 03:39:30 |
| 20 | MR. SCHNACK:  I think that | 03:39:31 |
| 21 | misstates my objections. He doesn't have | 03:39:32 |
| 22 | personal knowledge about the legal forms and | 03:39:32 |
| 23 | the legal department procedures, is what the | 03:39:32 |
| 24 | objection was. | 03:39:35 |
| 25 | Q.    Well, regardless of what the | 03:39:36 |

Pages 225 to 228

**SUBJECT TO PROTECTIVE ORDER**
**ORAL DEPOSITION OF GARY N. BREAUX**

### Page 229

```
1  objection was, are you -- are you prepared to        03:39:38
2  answer questions about the documents produced        03:39:42
3  by the legal department and how they're used         03:39:46
4  and their purpose?                                    03:39:48
5           MR. SCHNACK:  He lacks personal             03:39:50
6  knowledge in that regard.  That was the              03:39:51
7  objection.                                            03:39:53
8           MR. HAMPTON:  Okay.                         03:39:54
9           MR. SCHNACK:  His own testimony             03:39:54
10 supports that.                                        03:39:55
11          MR. HAMPTON:  And I believe he              03:39:55
12 was instructed not to answer as well.                03:39:56
13      Q.   Is that correct?  Were you                 03:39:58
14 instructed not to answer?                             03:39:59
15          MR. SCHNACK:  Well, let's --                03:40:01
16 let's go question by question if you want to         03:40:01
17 pursue it, because if there are questions I'll       03:40:04
18 allow him to answer -- just the way it's             03:40:06
19 stated, I can't blanket say no.                       03:40:13
20      Q.   My understanding is that you're            03:40:13
21 produced here today without -- that you have no      03:40:15
22 personal knowledge about the role of the legal       03:40:19
23 department in carrying out, implementing the         03:40:22
24 policies that the Jehovah's Witness                   03:40:27
25 organization has concerning accusations and         03:40:29
```

### Page 230

```
1  proof of child sexual abuse.  Is that true?          03:40:32
2           MR. SCHNACK:  From 1994 and                03:40:36
3  prior.                                                03:40:38
4           MR. HAMPTON:  That's correct.              03:40:38
5  Well, actually from 1990 -- 1970 to the             03:40:38
6  present, is what the notice says.                    03:40:42
7           MR. SCHNACK:  But we did object            03:40:43
8  to the notice based on dates.                         03:40:44
9           MR. HAMPTON:  Regardless.  Any             03:40:46
10 date.                                                 03:40:48
11          MR. SCHNACK:  It's not                     03:40:48
12 regardless.                                           03:40:48
13      Q.   Any date.  You have -- you do              03:40:49
14 not have personal knowledge of how the legal        03:40:50
15 department fits into this, these policies.  Is       03:40:52
16 that fair?                                            03:40:55
17          MR. SCHNACK:  Within the time              03:40:56
18 frame up through '94.  That's what he's here to      03:40:57
19 testify about.                                        03:41:00
20          MR. HAMPTON:  Okay.                        03:41:01
21      Q.   Up through '94, you don't know            03:41:02
22 how the legal department participates in these      03:41:05
23 policies for handling accusations and proof of      03:41:06
24 child sexual abuse, do you?                           03:41:09
25      A.   I do not know how those forms             03:41:11
```

### Page 231

```
1  were used by the legal department.                   03:41:13
2       Q.   You don't know how -- what the             03:41:15
3  legal department does in participating in these     03:41:16
4  policies, do you?                                     03:41:20
5           MR. SCHNACK:  With respect to              03:41:23
6  the same time frame, go ahead and answer.           03:41:23
7       A.   No, I don't.                               03:41:26
8       Q.   So we have to talk to somebody            03:41:27
9  from the legal department about that.                03:41:29
10      A.   Yes, you would.                            03:41:31
11      Q.   We'd have to talk to somebody in          03:41:32
12 the legal department about the forms that were      03:41:33
13 produced by the legal department that we've         03:41:35
14 already talked about, wouldn't we?                    03:41:37
15      A.   Yes, that's correct.                       03:41:40
16      Q.   Okay.  Have you understood all            03:41:41
17 my questions?                                         03:41:42
18      A.   Yes, I have.                               03:41:44
19          MR. HAMPTON:  Well I appreciate            03:41:47
20 your time.  I enjoyed meeting you and talking       03:41:48
21 to you.                                               03:41:51
22          THE WITNESS:  Thank you very               03:41:53
23 much.                                                 03:41:53
24          MR. SCHNACK:  Let's go off the             03:41:55
25 record for just a second.  I think we're going      03:41:56
```

### Page 232

```
1  to be done, but I just want to make sure.            03:41:58
2           THE VIDEOGRAPHER:  The time is             03:49:05
3  3:41.  We're off the record.                         03:49:06
4           (A recess was taken from 3:41 p.m.         03:49:06
5  to 3:48 p.m.)  We're on the record.                 03:49:09
6  EXAMINATION                                           03:49:09
7  BY MR. SCHNACK:                                       03:49:09
8       Q.   Mr. Breaux, I just have a few             03:49:10
9  questions.                                            03:49:12
10           When you were answering                    03:49:12
11 Mr. Hampton's questions there at the end about      03:49:13
12 the legal department, your answers referred to      03:49:16
13 the forms that were produced in connection with     03:49:19
14 your deposition.  Is that correct?                    03:49:21
15      A.   That's correct.                            03:49:23
16      Q.   And that you're not sure how              03:49:23
17 those forms are specifically used in the legal      03:49:24
18 department.  Is that correct?                         03:49:26
19      A.   That's correct.                            03:49:27
20      Q.   Do you have a general                      03:49:28
21 understanding what the legal department does        03:49:29
22 when elders from local congregations in the         03:49:30
23 United States call in?                                03:49:33
24      A.   Yes, I do.                                 03:49:34
25      Q.   Just tell us generally what your          03:49:35
```

Pages 229 to 232

**MOTION # 3**
**Memorandum of Points and Authorities in Support of Motion to Compel PMK**
**Deposition and Document Request Regarding the Legal Department**

# Exhibit 3

**The produced documents in question**
**(copies of the Child Abuse Telememos)**

**EXHIBIT 3**

SRS000000089

DOCUMENTS RESPONSIVE TO REQUEST NO. 4 IN PLAINTIFFS'
FIRST AMENDED NOTICE OF TAKING DEPOSITION DUCES TECUM
OF PERSON MOST KNOWLEDGEABLE IN "TRACK I" CASES,
PRODUCED SUBJECT TO THE CONFIDENTIALITY AND
NONDISCLOSURE TERMS CONTAINED IN THE "STIPULATED
PROTECTIVE ORDER AND NONDISCLOSURE AGREEMENT
ENTERED BY THE NAPA COUNTY (CALIFORNIA) SUPERIOR COURT
ON OR ABOUT 06/13/2005

SRS000000090

Legal _____          **C H I L D   A B U S E   T E L E M E M O**          Service _____

1. Date and time of telephone call: _____

2. Person handling call: _____

3. Name and phone number of caller: _____

4. Congregation name, city, and state of caller: _____

5. Name, age, and congregation status of offender: _____

6. Name, age, and congregation status of victim: _____

7. Briefly describe the nature and extent of abuse: _____

_____

_____

_____

8. When did the abuse occur? _____

9. Is victim in same home with offender? _____

10. What efforts are being made to protect victim? _____

_____

_____

11. Has a report been made to authorities? YES-☐  NO-☐

12. Give details of how reported: _____

_____

13. Who else has knowledge of abuse? _____

14. Have any elders been contacted by authorities for testimony or cong. records? YES-☐  NO-☐

15. Direction given:

**NONREPORTING** ☐                              **REPORTING** ☐

The elders have no duty to report child abuse under the _____ child abuse reporting law. Whether others who have knowledge make a report or pursue the matter legally is a personal decision. We explained the Society's policy of confidentiality and directed the elders to contact the Legal Department if they are subpoenaed. We had no legal objection to the elders handling this matter as they would any other case of serious wrongdoing. The elders should refer to the *Awake!* issues on child abuse (6-22-82, 1-22-85, 12-22-86, 10-1-83) in giving appropriate spiritual assistance to the family. Positive steps should be taken to prevent further abuse. The elders should monitor the situation carefully for the protection of other potential victims.

The elders have a duty to report child abuse under the child abuse reporting law. They should speak to the offender directly and find out if he is willing to turn himself in. If he is unwilling, there may be someone else who has knowledge of the abuse who will make a report. If no one who has knowledge of the abuse is willing to make a report, two elders should make an anonymous phone report from a neutral location, such as a phone booth. They should keep a written record of who made the call, to whom it was made, the date and time of the call, and other pertinent factors. This record should then be signed by the two elders and placed in congregation files as proof that a report of child abuse was made in compliance with the law. We explained the Society's policy of confidentiality and directed the elders to contact the Legal Department if they are subpoenaed. We had no legal objection to the elders handling this matter as they would any other case of serious wrongdoing. The elders should refer to the *Awake!* issues on child abuse (6-22-82, 1-22-85, 12-22-86, 10-1-83) in giving appropriate spiritual assistance to the family.

16. Other direction: _____

_____

_____

17. Follow up required: _____

*See Reverse Side* ☐

1989

WTNY 00566

SRS000000092

DESK:       *Legal*                    *Service*

# CHILD ABUSE TELEMEMO

Date of telephone call:

Person handling call:

Name of caller:

Congregation name, city, and state of caller:

Name, age, and congregation status of offender:

Name, age, and congregation status of victim:

Briefly describe the nature and extent of abuse:


Direction given:


Follow up required:


1992

WTNY 00568

SRS000000093

Legal      **C H I L D   A B U S E   T E L E M E M O**      Service \_\_\_\_\_

1. Date and time of telephone call: _____
2. Person handling call: _____
3. Name and phone number of caller: _____
4. Congregation name, city, and state of caller: _____
5. Name, age, and congregation status of offender: _____
6. Name, age, and congregation status of victim: _____
7. Briefly describe the nature and extent of abuse: _____

_____
_____

8. When did the abuse occur? _____ ☐ Confessed   ☐ Denied   ☐ Unknown
9. Is victim in same home with offender? _____
10. What efforts are being made to protect victim? _____

_____
_____

11. Has a report been made to authorities? YES-☐ NO-☐
12. Give details of how reported: _____

13. Who else has knowledge of abuse? _____
14. Have any elders been contacted by authorities for testimony or cong. records? YES-☐ NO-☐
15. Direction given:

| NONREPORTING ☐ | REPORTING ☐ |
|---|---|
| Elders have no duty to report child abuse under the _____ child abuse reporting law. Whether others who have knowledge make a report or pursue the matter legally is a personal decision. We explained the Society's policy of confidentiality and asked the elders to review the letter of July 1, 1989. Encourage parties not to involve the congregation if authorities investigate. Contact the Legal Department if they are subpoenaed. No legal objection to the elders handling this as any other case of serious wrongdoing. The elders should refer to the letter of March 23, 1992, and use the articles cited on child abuse in giving appropriate spiritual assistance to the family. (See also *Awake!* 10-8-93) Treat victim with extreme thoughtfulness and kindness. Is it necessary to make the sexual abuse victim, who is still a minor, confront the accused? Positive steps should be taken to prevent further abuse. The elders should monitor the situation carefully for the protection of other potential victims. | Elders have a duty to report child abuse under the _____ child abuse reporting law. They should speak to the offender directly and find out if he is willing to turn himself in. If he is unwilling, there may be someone else who has knowledge of the abuse who will make a report. If no one has knowledge of the abuse is willing to make a report, two elders should make an anonymous phone report from a neutral location, such as a phone booth. They should keep a written record of who made the call, to whom it was made, the date and time of the call, and other pertinent factors. This record should then be signed by the two elders and placed in congregation files as proof that a report of child abuse was made in compliance with the law. We explained the Society's policy of confidentiality and asked the elders to review the letter of July 1, 1989. Encourage parties not to involve the congregation if authorities investigate. Contact the Legal Department if they are subpoenaed. No legal objection to the elders handling this as any other case of serious wrongdoing. The elders should refer to the letter of March 23, 1992, and use the articles cited on child abuse in giving appropriate spiritual assistance to the family. (See also *Awake!* 10-8-93) Treat victim with extreme thoughtfulness and kindness. Is it necessary to make the sexual abuse victim, who is still a minor, confront the accused? Positive steps should be taken to prevent further abuse. The elders should monitor the situation carefully for the protection of other potential victims. |

16. Other direction: _____

_____

17. Follow up required: _____

*See Reverse Side* ☐
1993

WTNY 00569

3412

SRS000000094

18.  Additional comments: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

## SURVEY QUESTIONS

1.  What action has been taken by the elders? _____

2.  How long have the elders known of the accusation before calling Legal? _____ - _____

3.  Have the elders reviewed the letter of:   Yes   No

      July 1, 1989            ___   ___

      March 23, 1992       ___   ___

      February 3, 1993    ___   ___

4.  Have previous accusations been made against the accused? _____

5.  Has the child received a medical examination? _____

6.  What person brought this charge to the elders? _____

7.  Where did any conversations with the child occur? _____

8.  Did the elders talk directly with the child? _____

9.  How many elders felt that the victim was somewhat at fault or willingly participated in the acts? _____

WTNY 00570

SRS000000095

# CM PROFILE

### Attorney-Client Privileged                              *CONFIDENTIAL*

Legal:                                                        Service:
1.      Date entered:                                        Person handling call:
2.      Caller's name:                                       Phone number:
        Congregation:                                        City:          State:
3.      Accused:                                             Congregation status:
        Congregation:                                        Date of Baptism:
        Date of Birth:                                       Age:
        Did he ever serve as an elder, ministerial servant, or pioneer?      ○ No  ○ Yes
        When did he serve?  In what capacity?
        Relationship(s) of accused to victim(s)?
4.      Victim(s):                                           Congregation status:
        Congregation:                                        Age:
5.      Who reported:                                        When first told elders:
        Relationship of reporter to victim?  to accused?
6.      Have elders spoken with the accused?      ○ No  ○ Yes
        Under what circumstances?
        Admitted to elders?  Denied?      ○ Confessed  ○ Denied      ○ Unknown
7.      Briefly, the nature and extent of abuse:
8.      Categorize the abuse:
9.      When did abuse occur?
10.     Now living in same home?      ○ No  ○ Yes
11.     Other minors living in same home?
12.     What efforts to protect victim(s)?
13.     Reported to authorities?      ○ No  ○ Yes
        Give details of how reported:
14.     Who has knowledge of abuse?
15.     Elders contacted by authorities?      ○ No  ○ Yes
        Direction given:                                     See Statutes book

16.     Other direction:

17.     Comments...

18.     Follow-up description:
        Follow-up date:


                                    1993


WTNY 00571

SRS000000096

DOCUMENTS RESPONSIVE TO REQUEST NO. 5 IN PLAINTIFFS'
FIRST AMENDED NOTICE OF TAKING DEPOSITION DUCES TECUM
OF PERSON MOST KNOWLEDGEABLE IN "TRACK I" CASES,
PRODUCED SUBJECT TO THE CONFIDENTIALITY AND
NONDISCLOSURE TERMS CONTAINED IN THE "STIPULATED
PROTECTIVE ORDER AND NONDISCLOSURE AGREEMENT
ENTERED BY THE NAPA COUNTY (CALIFORNIA) SUPERIOR COURT
ON·OR ABOUT 06/13/2005