Robert L. Stepans             Matthew L. Merrill (appearing *pro hac vice*)
Ryan R. Shaffer               Merrill Law, LLC
James C. Murnion              6631 Mariposa Court
Victoria K.M. Gannon          Denver, CO  80221
Meyer, Shaffer & Stepans, PLLP   Tel: (303) 947-4453
430 Ryman Street              matthew@merrillwaterlaw.com
Missoula, MT  59802
Tel: (406) 543-6929
Fax: (406) 721-1799
rob@mss-lawfirm.com
ryan@mss-lawfirm.com
james@mss-lawfirm.com
katy@mss-lawfirm.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA., | ) ) ) ) |
| Defendants, | ) ) ) |

Case No. CV-20-52-BLG-SPW

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION TO STRIKE AND ORDER DEPOSITIONS TAKEN AS NOTICED**

## INTRODUCTION

Plaintiffs began attempting to set the depositions of Allen Shuster, Gary Breaux, and Gene Smalley (the "Witnesses") nine months ago.[1]  During the entire nine months, the Defendants' counsel made it clear that conferral and depositions notices needed to go through them:

1. Upon first learning that Plaintiffs wanted to depose the Witnesses, counsel for the Defendants requested notices so that they could consult with the Witnesses.

2. Thereafter, Plaintiffs provided a separate Rule 30(b)(1) deposition notice for each of the Witnesses.

3. After speaking with the Witnesses, Defendants' attorneys filed briefing with the Court making representations about the Witnesses' personal knowledge and the hardship that the depositions would allegedly impose on the Witnesses.

4. After the Court ordered the parties to engage in additional conferral, Defendants requested a new set of deposition notices so that the dispute would be "ripe" for the Court's consideration.

---

[1] The basis for the Witnesses' depositions have been set forth in three separate briefs already and will not be repeated here.  (Doc. 154; Doc. 170; Doc. 243).

5. Thereafter, Plaintiffs again provided a Rule 30(b)(1) deposition notice for each of the Witnesses.

6. WTNY then filed its Motion for Protective Order Pursuant to Fed. R. Civ. P. 26(c) ("WTNY's Motion) and supporting brief setting forth the same objections that they had made throughout the prior eight months, i.e. the Witnesses do not have discoverable information, Shuster and Breaux are apex, and Smalley is too old. (Doc. 234; Doc. 235).

Without exception, counsel for Defendants always indicated they were in contact with the Witnesses and they were the attorneys to confer with regarding the depositions. At no time did they indicate the Witnesses had other counsel or that the lack of a subpoena was an obstacle to taking the depositions.

Then, WTNY filed a Reply Brief in Support of its recent Motion for Protective Order ("Reply") and argued for the first time that the depositions should not go forward because subpoenas had not been served. (Doc. 247). WTNY's purpose in raising the new *subpoena* argument is stated expressly in its Reply, where it notifies Plaintiffs and the Court that the Witnesses should get the opportunity to have another lawyer enter an appearance in the case and file another set of motions over these depositions. (Doc. 247 at 10).

WTNY has violated well-known rules requiring good faith conferral, as well as orders of this District and Circuit that prohibit raising new arguments in a reply

brief.  Accordingly, Plaintiffs respectfully request that the Court: (1) strike the

*subpoena* argument in WTNY's Reply Brief; and (2) order that the depositions be

taken as noticed.

## BACKGROUND

### 1. Defendants' Counsel Invites Plaintiffs' Counsel to Spend Eight Months Conferring Over the Rule 30(b)(1) Personal Deposition Notices for the Witnesses

Defendants' counsel invited eight months of conferral and engagement over

the setting of the Witnesses' depositions by Rule 30(b)(1) notice while never

asserting the absence of a subpoena was an obstacle to the depositions.

### a. Conferral Round 1 (September/October 2022)

On September 27, 2022, Plaintiffs' counsel emailed WTNY's/WTPA's

counsel regarding various discovery matters, including "We would also like to get

Gene Smalley, Gary Breaux and Allen Shuster deposed."  Email from Ryan

Shaffer, to Jon Wilson, et al., NY Depos; Plaintiff Depos (Sept. 27, 2022, 6:25 PM

MDT) (attached as **Exhibit A**).  On September 28, defense counsel replied by

requesting the individual notices so they could "consult" with the Witnesses:

> Regarding the depositions of Gene Smalley, Gary Breaux and Allen
> Shuster, we understand that they are members of the faith in New
> York, but neither WTPA nor WTNY has ever communicated with
> them regarding any potential depositions.  **As such, we would need to
> consult with them and evaluate any notices addressed to them
> individually to assess next steps.**

Email from Christopher Sweeney, to Ryan Shaffer, et al., NY Depos; Plaintiff

Depos (Sept. 28, 2022, 3:56 PM MDT) (emphasis added) (attached as **Exhibit B**).

The next day, Plaintiffs' counsel sent Defendants' counsel a letter that included

Rule 30(b)(1) notices for the personal depositions of the Witnesses:

> Please find enclosed draft deposition notices for Phillip Brumley,
> Gary Breaux, Gene Smalley, and Allen Shuster. We are anticipating
> about a half-day for each of these witnesses.  Please confirm that you
> will produce these gentlemen for depositions (or specifically state that
> you will not) and let us know dates that work for each as soon as you
> can.

Letter from Ryan Shaffer, to Jon Wilson, et al, NY Depos; Plaintiff Depos 1 (Sept.

29, 2022) (attached as **Exhibit C**).  On October 4, having received no response

from Defendants' counsel regarding the depositions of the Witnesses, Plaintiffs'

counsel sent a letter stating:

> In our 9/29/22 correspondence, we asked whether you will agree to
> produce Phillip Brumley, Gary Breaux, Gene Smalley, and Allen
> Shuster for depositions in New York. As I understand it, WTPA has
> agreed to produce Mr. Brumley for a deposition so we will need to
> find a date for that. On 9/28/22 Chris Sweeney stated that counsel
> would need to consult with the other three gentlemen "and evaluate
> any notices addressed to them individually to assess next steps." We
> provided draft notices to you on 9/29/22 and are again asking whether
> you will produce Gary Breaux, Gene Smalley, and Allen Shuster for
> depositions? Alternatively, if you are not willing to make these
> gentlemen available, please state the reason so that we may evaluate
> your position.

Letter from Ryan Shaffer, to Jon Wilson, et al, NY Depos 1 (Oct. 4, 2022)

(attached as **Exhibit D**).  On October 5, defense counsel responded by making

specific representations about the Witnesses' respective knowledge, indicating that

they had indeed consulted with the Witnesses:

> Second, as to the proposed depositions of Messrs. Breaux, Shuster,
> and Smalley, we are concerned that the requests may be inappropriate,
> premature, or ultimately unnecessary. None of them have any direct
> knowledge of any of the claims, none of them have ever met your
> clients or co-defendant Mr. Mapley, and none of them were executive
> officers or members of the boards of directors of either corporation
> during the relevant time period. Moreover, because of their important
> roles in connection with the religion, they may be subject to protection
> under the apex doctrine. In addition, Mr. Smalley is over 82 years old.
> Can you provide the basis for the necessity of these depositions,
> especially since there has yet to be a Rule 30(b)(6) deposition of the
> defendants? Thereafter, we will decide whether to seek the Court's
> assistance with protective orders.

Email from Brett Jensen, to Ryan Shaffer, et al., Caekaert and Rowland Cases

(Oct. 5, 2022 2:05 PM MDT) (attached as **Exhibit E**).  At no point during this

initial conferral process did Defendants' lawyers assert that the Witnesses had

other lawyers or that a subpoena would be necessary.

b. WTNY Briefing Round 1 (October 2022)

On October 6, 2022, Plaintiffs filed a Motion to Compel Depositions

requesting, *inter alia*, the Court compel Defendants to produce the Witnesses for

deposition.  (Doc. 154).  With the Rule 30(b)(1) personal deposition notices in

hand, WTNY filed a response brief in opposition, to which WTPA joined.  (Doc.

160; Doc. 163).  Attached to WTNY's response were declarations from Messrs.

Shuster, Breaux, and Smalley.  (Doc. 160-1; Doc. 160-2; Doc. 160-3).  It is clear

from WTNY's briefing that it understood Plaintiffs wanted to take personal depositions of the Witnesses, e.g. "[Mr. Breaux's] own personal experience and time with WTNY in New York would thereafter be entirely irrelevant to Plaintiffs' claims." (Doc. 160 at 19).

WTNY raised several objections on the Witnesses' behalf, but at no point did it state that the absence of subpoenas was an obstacle to the depositions or that the Witnesses had other lawyers. On April 18, 2023, the Court denied Plaintiffs' motion, finding that Plaintiffs had failed to sufficiently meet and confer and ordered "meaningful meet and confer about the depositions of Shuster, Breaux, and Smalley. If any disputes remain, Plaintiffs may re-file their motion to compel." (Doc. 222 at 8).

c. Conferral Round 2 (April/May 2023)

Pursuant to the Court's Order, on April 19, 2023, Plaintiffs' counsel emailed Defendants' lawyers requesting a time to speak about the depositions of the Witnesses and requesting clarification on three specific issues: (1) how Defendants determine who is an apex witness; (2) identification of alternative witnesses with "substantially similar personal history and knowledge" for the relevant time periods regarding specific topics; and (3) all reasons why Plaintiff should not be permitted to depose Mr. Smalley. Email from Ryan Shaffer, to Jon Wilson, et al., Deps of Shuster, Breaux, Smalley (April 19, 2023 3:57 PM MDT) (attached as

**Exhibit F**).  On April 25, counsel conferred about the depositions by phone call but no agreements were reached.  On April 26, Plaintiffs' counsel emailed Defendants' counsel where the deposition notices for the Witnesses were again specifically discussed:

> On our call you refused to tell me if you would produce Shuster, Breaux, or Smalley for deposition unless and until you saw their deposition notices. I can assure you the notices will be substantially similar to the draft notices we sent you on September 29, 2022 and will contain the name of the deponent, their address (if known), and the time and place of the deposition—exactly what Rule 30(b)(1) requires to be in a deposition notice.

Email from James Murnion, to Jon Wilson, et al, Deps of Shuster, Breaux, Smalley (April 26, 2023 12:33 PM MDT) (attached as **Exhibit G**).

On May 1, defense counsel responded, reiterating their argument that the Witnesses do not have discoverable knowledge and suggesting Plaintiffs take a Rule 30(b)(6) deposition instead of the personal depositions of the Witnesses. Letter from Jon Wilson, to Ryan Shaffer, et al., Deps. of Shuster, Breaux, Smalley 1–2 (May 1, 2023) (attached as **Exhibit H**).  Defense counsel also proposed producing alternative individuals for personal depositions, not with "substantially similar personal history and knowledge" as requested, but "the most knowledgeable alternative".  **Ex. H** at 3.  Defendants' proposal for producing individuals who are "the most knowledgeable alternative witnesses" is effectively meaningless because it fails to provide any information about whether those

witnesses were even present at the Jehovah's Witnesses headquarters during the 1970s, 1980s, or 1990s, let alone whether they have substantially similar knowledge and experience.

After more conferral, on May 3, Defendants' counsel stated: "When and if you issue deposition notices directed to Messrs. Breaux, Shuster, and Smalley, <u>this issue will be ripe for consideration by the Court</u>, and we will proceed with filing a motion for protective order."  Letter from Jon Wilson, to Ryan Shaffer, et al., Deps. of Shuster, Breaux, Smalley 1–2 (May 3, 2023) (*emphasis added*) (attached as **Exhibit I**).  Accordingly, on May 17, Plaintiffs' counsel served a new set of Rule 30(b)(1) notices of deposition for each of the Witnesses.  Letter from Ryan Shaffer, to Jon Wilson, et al., Notices of Depositions to Gene Smalley, Gary Breaux, and Allen Shuster (May 17, 2023) (attached as **Exhibit J**).

At no point during the meet and confer process occurring between April 19 and May 17 did Defendants' lawyers state that the absence of a subpoena was an obstacle to the noticed depositions, or that the Witnesses had other lawyers.

d. <u>WTNY Briefing Round 2 (May/June 2023)</u>

With a second set of Rule 30(b)(1) personal deposition notices in hand – which in WTNY's own words made the propriety of the depositions "ripe" for resolution by the Court – WTNY filed its Motion seeking a protective order to stop the noticed depositions of the Witnesses.  (Doc. 234).  Consistent with its course of

conduct over the prior eight months, WTNY's brief never asserted that the Witnesses have other lawyers or that the absence of subpoenas was an obstacle to the depositions.  (Doc. 235).  Instead, WTNY's arguments focused on "the burden to these three men[.]"; and argued "the depositions in this case would constitute a hardship on all three." (Doc. 235 at 13, 16).

Based on the arguments raised in WTNY's Motion and briefing, Plaintiffs responded by refuting WTNY's arguments with the reasons that the proposed depositions were proper.  (Doc. 243).  Plaintiffs' response brief never mentioned Rule 45 or argued that subpoenas were not necessary because WTNY had never asserted or even implied that they were.  Then, on June 15, 2023, WTNY raised its new argument that the depositions should not proceed because subpoenas had not been issued.  (Doc. 247).[2]

## 2.  When Defendants' Counsel Did Not Assert to Control a Witness, They Said So

In stark contrast to their conduct and representations regarding the depositions of the Witnesses, Defendants' counsel told Plaintiffs' counsel to contact other Jehovah's Witnesses directly.  For example, in the Fall of 2022, when

---

[2] Plaintiffs' counsel subsequently conferred with defense counsel about the impropriety of raising new arguments in WTNY's Reply, repeatedly requesting such arguments be withdrawn.  WTNY's counsel refused, alleging that they were confused about the Rule 30(b)(1) notices and thought they were Rule 30(b)(6) notices, or something else, all the while suggesting Plaintiffs' counsel were to blame for their confusion.

Plaintiffs were initially seeking to set the depositions of the Witnesses, they were also inquiring into setting a deposition of former Jehovah's Witnesses Circuit Overseer, Joseph Polakowski.  Plaintiffs' counsel inquired into whether Plaintiffs needed to go through counsel to contact and arrange Mr. Polakowski's deposition. Email from Ryan Shaffer, to Christopher Sweeney, et al., NY Depos; Plaintiff Depos 1 (Sept. 28, 2022 5:01 PM MDT) (attached as **Exhibit K**).  Defendants' counsel responded: "Turning to Joseph Polakowski, our understanding is he is located in Wisconsin, and **you do not need to go through us to schedule his deposition**."  Email from Jon Wilson, to Ryan Shaffer, et al., NY Depos; Plaintiff Depos (Sept. 29, 2022 12:19 PM MDT) (emphasis added) (attached as **Exhibit L**). Thus, it was obvious when Defendants' counsel was not controlling a witness because they specifically advised that there was no need to go through counsel to arrange the deposition.

## APPLICABLE LAW

### 1.  Obligation to Confer in Good Faith

Rule 26(c) requires that parties confer in good faith to resolve discovery disputes without court action.  Fed. R. Civ. Pro. 26(c).  This District's Local Rules expand upon Rule 26(c), requiring conferral on "**all disputed issues**" before a motion for protective order is sought.  L.R. 26.3(c)(1) (emphasis added).

The intent of the meet and confer requirement is "to lessen the burden on the court and reduce the unnecessary expenditure of resources by litigants, through promotion of informal, extra-judicial resolution of discovery disputes." *Osborne v. Billings Clinic,* CV 14-126-BLG-SPW, 2015 WL 1643379, at *1 (D. Mont. Apr. 13, 2015) (citations omitted).  For the meet and confer obligations to serve their purpose, "the parties [must] treat the informal negotiation process as a substitute for, and not simply a formal prerequisite to, judicial review of discovery disputes." *Id.*  In order to accomplish this,

> [t]he parties must present to each other the merits of their respective positions with the same candor, specificity, and support during informal negotiations as during the briefing of discovery motions. Only after all the cards have been laid on the table, and a party has meaningfully assessed the relative strengths and weaknesses of its position in light of all available information, can there be 'a sincere effort' to resolve the matter.

*Id.* at 2 (citation omitted).

Judicial intervention should only occur when informal negotiations on the disputed substantive issues have reached an impasse, or one party has acted in bad faith by refusing to negotiate or provide specific support for its claims.  *Id.*  In ruling on Plaintiffs' October 2022 Motion to Compel Depositions of the Witnesses, the Court specifically ordered: "the parties shall engage in a meaningful meet and confer about the depositions of Shuster, Breaux, and Smalley."  (Doc. 222 at 8).

## 2. Arguments not Raised are Waived

The law of this District and Circuit is unambiguous: new arguments may not be raised for the first time in a reply brief. *E.g.*, *Rocky Mt. Biologicals, Inc. v. Microbix Biosystems, Inc.,* 986 F. Supp. 2d 1187, 1197 (D. Mont. 2013) (citing *State of Nevada v. Watkins*, 914 F.2d 1545, 1560 (9th Cir.1990) ("the Court need not address arguments raised for the first time in a reply brief"); *U.S. v. Rocha*, CR 15-20-M-DLC, 2015 WL 6440958, at *3 (D. Mont. Oct. 15, 2015) (citing Ninth Circuit cases for the rule that "it is axiomatic that nothing may be raised for the first time in reply that has not been raised in an opening brief.").

## 3. The Court's Power to Strike Reply Briefs

"The Court has 'inherent power to strike a party's submissions' based on its ability to enforce rules it has enacted for the management or litigation." *Thompson v. City of Bozeman*, CV 18-75-BU-BMM-KLD, 2019 WL 4307965, at *1 (D. Mont. Sept. 11, 2019).  Indeed, this Court has previously stricken improper reply briefs.  *Star Ins. Co. v. Iron Horse Tools, Inc.*, CV-16-48-BLG-SPW, 2018 WL 1378751, at *1 (D. Mont. Mar. 19, 2018).

## ARGUMENT

### 1. WTNY's *subpoena* arguments should be stricken because WTNY's counsel chose not to properly raise them.

Defendants' counsel invited Plaintiffs' counsel into an eight-month process of conferring and litigating three depositions pursuant to Rule 30(b)(1) notices.

The notices were unambiguous: one to each of the three Witnesses in their individual capacities and containing the information required by Rule 30(b)(1).  If the absence of subpoenas under Rule 45 was a genuine obstacle to taking the Witnesses' depositions on June 15, 2023, it was just as "ripe" eight months earlier, and Defendants had a clear obligation to raise that issue during the conferral process and in WTNY's Motion.  They did neither.

Had WTNY timely raised the subpoena issue, Plaintiffs' counsel could have addressed it in a timely and efficient manner without eight months of conferring and litigating over the Rule 30(b)(1) deposition notices.  The parties conferred multiple times during two separate time periods: September/October of 2022 and April/May of 2023, in which defense counsel raised several evolving arguments on why the Witnesses should not be deposed.  Yet, they never asserted that the lack of subpoenas was one such argument, and they simultaneously demanded deposition notices under Rule 30.  Again, even if the lack of a subpoena was a genuine basis to object to the noticed depositions on June 15, 2023, it was just as genuine every preceding day for the previous eight months, but WTNY never raised it.  The *subpoena* argument has been waived several times over and should be stricken from the record.

When WTNY did not assert control over former WTNY/WTPA Circuit Overseer Polakowski, it said so and told Plaintiffs that they could contact Mr.

Polakowski directly.  But for these Witnesses, they did no such thing.  Instead, Defendants' counsel specifically requested notices so that they could consult with the Witnesses about the depositions.  This had the effect of prohibiting Plaintiffs' counsel from communicating directly with the Witnesses to set up the depositions because to do so would violate the prohibition on contacting people being represented by lawyers.  Mont. R. Prof. Cond. 4.2.[3]  Thus, WTNY's counsel established a situation in which they were the only point of contact for setting the depositions and conferring about the depositions.

Permitting WTNY's counsel to insert themselves into a position of control over the Witnesses for the past eight months and then change course to argue that they are not the lawyers who control the witnesses at the last minute, would turn the entire process of setting up depositions into an inefficient, tactical game of cat and mouse, rather than the straightforward and transparent process it is supposed to

---

[3] As WTNY's counsel must know, it is customary to inquire into whether agents of a party can be contacted directly or should be contacted through counsel.  Agents that have managerial responsibility or the capacity to bind the party must be contacted through counsel.  *See generally* State Bar of Mont., Ethics Op. 940430 (attached as **Exhibit M**); *see also* ABA, Rule 4.2 Commc'n With Pers. Represented by Couns. – Comment, at [7] (attached as **Exhibit N**).  There is no question that once Defendants' lawyers intervened on the Witnesses' behalf to receive the deposition notices and consult with them about the depositions, Plaintiffs' lawyers were effectively prohibited from contacting the Witnesses directly.

be.[4]  As such, Plaintiffs respectfully request the Court strike all arguments

regarding the alleged necessity of subpoenas in WTNY's Reply.

### 2.  Rule 26(c)(2) provides the most efficient way to resolve this dispute.

WTNY expressly told the Court its desired course of action going forward:

Plaintiffs subpoena the Witnesses, and they come to Court with new lawyers and

yet another motion.  But the question of whether these depositions are proper as

noticed has been thoroughly litigated and is ready for the Court's resolution.

Rule 26(c)(2) of the Federal Rules of Civil Procedure provides: "If a motion

for a protective order is wholly or partly denied, the court may, on just terms, order

that any party or person provide or permit discovery."  WTNY's Motion is ripe for

decision and Plaintiffs' submit that the Court should deny it and order the

Witnesses' depositions to be taken as noticed under the Rule 30(b)(1) notices that

Defendants repeatedly demanded.

### CONCLUSION

In violation of their obligations under local rule, this Court's order, and the

general duty of candor to the Court and opposing counsel, defense counsel invited

---

[4] Moreover, if WTNY's counsel is now as disconnected from the Witnesses as it wants the Court to believe, it raises serious questions about whether WTNY had standing to file its Motion for Protective Order in the first place.  *See CQI, Inc. v. Mt. W. Farm Bureau Ins. Co.*, CV 08-134-BLG-CSO WL 11530839, at *2 (D. Mont. Aug. 13, 2010) (Parties to litigation can only seek a protective order to stop a non-party deposition when they have established standing to do so).

Plaintiffs to serve deposition notices and litigate said notices over the prior eight months.  Then, defense counsel raised an entirely new issue in its Reply, arguing that the notices they requested and have been litigating over were not effective, and Rule 45 subpoenas are what is required.  This conduct is neither reasonable nor permitted and Plaintiffs' respectfully ask the Court to issue an Order: (1) striking WTNY's improper *subpoena* argument; and (2) order the depositions to proceed based on the deposition notices requested by WTNY's counsel.

DATED this 29th day of June, 2023.

By: /s/ Ryan Shaffer
Ryan R. Shaffer
MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Local Rule 1.4, this document has been served on all parties via electronic service through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

By: <u>/s/ Ryan Shaffer</u>
        Ryan R. Shaffer
        MEYER, SHAFFER & STEPANS PLLP

        *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(d)(2), Plaintiff hereby certifies that this brief complies with the length requirement for briefs, and that this brief contains 3,708 words, excluding the caption, certificates of service and compliance, table of contents and authorities, and exhibit index.

By: <u>/s/ Ryan Shaffer</u>
        Ryan R. Shaffer
        MEYER, SHAFFER & STEPANS PLLP

        *Attorneys for Plaintiffs*