*Exhibit M*

# ETHICS OPINION
## 940430

**QUESTION PRESENTED:** May an attorney representing a client in a claim against the State conduct ex parte interviews with State government employees, including a maintenance worker, supervisor, and engineer, concerning the pending litigation?

**ANSWER:** Yes, unless:

(1) the government employees contacted have significant managerial responsibility in the litigated matter including the power to bind the government to a decision or settle the dispute on its behalf; or

(2) statements by the government employees may be imputed to the government for purposes of civil or criminal liability.

**ANALYSIS:** Model Rule 4.2 and its predecessor DR 7-104(A)(1) contain the ethical standards relevant to this inquiry. Rule 4.2 provides:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

As indicated by the American Bar Association's "code comparison" for Rule 4.2, this rule is "substantially identical" to former DR 7-104(A)(1). Thus, discussion by other courts and ethics commissions regarding application of former DR 7-104(A)(1) is relevant and helpful in analyzing Rule 4.2 in the instant situation.

DR 7-104(A)(1) provides:

During the course of his representation of a client a lawyer shall not communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

The generally accepted policy justification for both Rule 4.2 and former DR 7-104(A)(1) is the need to prevent adverse counsel from taking advantage of a represented party. *Frey v. Dept. of Health and Human Services*, 106 F.R.D. 32, 34 (E.D.N.Y. 1985). See also, *Wright v. Group Health Hospital*, 103 Wash.2d 192, 195; 691 P.2d 564, 567 (Wash. 1984). Courts have had little trouble applying the concepts contained in Rule 4.2 where only private parties are involved. *Chancellor v. Boeing Co.*, 678 F.Supp. 250, 251 (D. Kan. 1988). Where a government agency is a party to litigation, other jurisdictions have frequently applied this corporate party rule to government agencies. Fla. Eth. Op. 87-2. See also, Lawyer's Manual on Professional Conduct (ABA/BNA) 71:305 (1988). While Rule 4.2 clearly applies to government parties, courts have

struggled to define the word "party" in the government context. Chancellor, 678 F.Supp. at 251 (discussing application in the context of former DR 7-104(A)(1)).

The comment to Rule 4.2 states in part that "the right of a party to a controversy with a government agency to speak with government official about the matter" is a communication authorized by law. Research indicates that no courts have explicitly addressed the scope of the term "government official." However, it is clear from the number of cases addressing the issue of when an adverse attorney may contact government employees that not all government employees are deemed "government officials" for the purposes of Rule 4.2.

In the context of both government and private parties, courts have consistently used a balancing approach to apply the concepts contained in Rule 4.2 and former DR 1-104(A)(1). *Frey*, 106 F.R.D. at 36. Courts balance the dangers involved with informally questioning employees against the desire to reveal the truth. Frey, 106 F.R.D. at 35. Where the defendant is the government, individual plaintiffs possess an additional First Amendment interest in ex- parte contact with government employees. *Vega v. Bloomsburgh*, 427 F.Supp. 593, 595 (D. Mass. 1977). The government additionally "has an obligation to advance the public's interest in achieving justice, an obligation that outweighs its narrower interest in winning a lawsuit." 61 Minn. L. Rev. 1007, 1020 (1977); *Frey*, 106 F.R.D. at 37. While courts often treat government entities as private parties for many purposes, some courts have adopted a narrow construction of the term "party" in the government context. *Frey*, 106 F.R.D. at 37.

Under former DR 7-104(A)(1) and Model Rule 4.2, courts and ethics commissions have commonly used the following two approaches to define the term "party" when one party is a corporation or government agency:

(1) The Managing-Speaking Agent Test: The term "party" encompasses those high level employees with the power to speak for and bind the corporation or government on matters at issue in the litigation.

(2) The Imputed Action Test: The term "party" includes those employees having a managerial responsibility on behalf of the corporation or government and whose acts or omissions may be imputed to the corporation or government for purposes of civil or criminal liability.

*Frey*, 106 F.R.D. at 528. See also, *Wright*, 691 P.2d at 568-569 (enumerating these same categories under former DR 7-104(A)(1)). 723 Practicing Law Institute/Corporate Law and Practice Course Handbook Series, 185 (1991) (enumerating these categories under Rule 4.2). Adverse counsel may not conduct ex parte interviews with government employees if the employees fall within one of these two categories.

The United States District Court in Montana has indicated support for both the Managing-Speaking Agent Test as well as the Imputed Action Test. *Porter v. ARCO Metals Co, Div. of Atlantic Richfield Co.*, 642 F.Supp. 1116. (D. Mont. 1986). In *Porter*, the Court adopted the principles inherent in the Imputed Action Test in its holding that "current employees may be contacted ex parte so long as they do not have significant managerial responsibility in the matter in question." Id. at 1118. This court additionally indicated support for the Managing-Speaking

Agent test by explicitly following the Washington Supreme Court's reasoning in Wright and the U.S. District Court's reasoning in *Frey*. Id. at 1118. In *Wright*, the Court held the term "party" includes "only those employees who have the legal authority to 'bind' the corporation in a legal evidentiary sense, i.e., those employees who have 'speaking authority' for the corporation." *Porter*, 642 F.Supp. at 1118, citing *Wright*, 691 P.2d at 569. In *Frey*, the term "party" encompassed those government employees "who could bind the government entity to a decision or settle controversies on its behalf". *Frey*, 106 F.R.D. at 35.

Various ethics commissions have also used similar reasoning in determining the scope of the term "party" in applying the principles which exist in both DR 7-104(A)(1) and Rule 4.2. The New York State Bar Association's Committee on Professional Ethics concluded that an attorney may communicate with an official or employee of a governmental entity in connection with pending litigation provided the employees contacted lack the power to bind the entity. N.Y. Eth. Op. 652 (1993). Specifically, that Committee stated that:

DR 7-104(A)(1) prohibits only communications with government officials who have the authority, individually or as part of a larger body, to bind the government or to settle a litigable matter, or whose act or omission gave rise to the matter in controversy. Id.

Additionally, the Oregon State Bar has concluded under the Code that the term "party" includes managerial employees whose conduct is at issue in the litigation. Or. Eth. Op. 1991-80.

The Florida Ethics Committee concluded under Rule 4.2 that when the opposing party is a government agency represented by counsel, an attorney may not communicate concerning the matter with the agency's management or any other employee whose act or omission in connection with the matter may be imputed to the agency or whose statement may constitute an admission on the part of the agency, unless consent of the agency's counsel is obtained. Fla. Eth. Op. 87-2. 1987.

A test defining the term "party" as including employees who have the legal authority to bind the corporation is consistent with the following: (1) The ABA's most recent approach on the issue as stated in Lawyer's Manual on Professional Conduct (ABA/BNA) 71:314 (1984); (2) the protective purpose of the rule; (3) the flexible policy of keeping the testimony of employee witnesses accessible to both parties. *Wright*, 691 P.2d at 569; *Chancellor*, 678 F.Supp. at 253; *Frey*, 106 F.R.D. at 35.

**CONCLUSION:** Not every state employee is a represented "party." However, Rule. 4.2 does not provide an unqualified legal right to communicate with any government employee. Under the Managing-Speaking Agent Test and the Imputed Action Test, the inquiring attorney in the instant situation may communicate with government agency employees who lack the authority to bind the government and settle disputes on its behalf and with those whose statements may not be imputed to the government for purposes of civil or criminal liability.

**THIS OPINION IS ADVISORY ONLY**