

## BROWN LAW FIRM, PC

315 N. 24th Street | PO Drawer 849 | Billings, Montana 59103-0849
Phone: 406.248.2611 | Fax: 406.248.3128

Michael P. Heringer
Guy W. Rogers
Scott G. Gratton
Kelly J.C. Gallinger*
Jon A. Wilson
Seth A. Cunningham
Shane A. MacIntyre
Brett C. Jensen*
Nathan A. Burke
Alex J. Ames
Zachary A. Hixson
Michael Sarabia
John R. Knisely
Kai B. Thorsgard*

Of Counsel
Robert L. Sterup

Retired
Rockwood Brown
John Walker Ross
Margy Bonner
John J. Russell

*also licensed in
North Dakota

Jon A. Wilson
jwilson@brownfirm.com

Brett C. Jensen
bjensen@brownfirm.com

Michael P. Sarabia
msarabia@brownfirm.com

June 21, 2023

**VIA EMAIL and U.S. MAIL**
Robert L. Stepans / rob@mss-lawfirm.com
Ryan R. Shaffer / ryan@mss-lawfirm.com
James C. Murnion / james@mss-lawfirm.com
Victoria K. Gannon / katy@mss-lawfirm.com
MEYER SHAFFER & STEPANS PLLP
430 Ryman Street
Missoula, MT 59802

Re:   *Tracy Caekaert and Camillia Mapley v. Watchtower Bible and Tract Society of New York, Inc., et al.*
USDC Billings Division 20-CV-52-SPW-TJC
File No. 78280.001

*Ariane Rowland and Jamie Schulze v. Watchtower Bible and Tract Society of New York, Inc., et al.*
USDC Billings Division 20-CV-59-SPW-TJC
File No. 78280.002

Greetings:

We are writing in response to Ryan's June 20, 2023, letter (hereinafter "June 20 Letter"). To address the issues therein, a recitation of the events regarding the dispute as to the requested depositions of Messrs. Gene Smalley, Gary Breaux, Allen Shuster is necessary.

By e-mail dated June 29, 2022, Ryan indicated Plaintiffs wanted to take a "foundation deposition of WTNY" per the attached 30(b)(6) notice. By e-mail dated July 14, 2022, Brett noted there were concerns about the parameters of the requested foundational

Brown Law Firm, P.C.
June 21, 2023
Page 2 of 8

30(b)(6) deposition. By letter dated August 15, 2022, Jon explained WTNY had no objection to 30(b)(6) topics addressing record keeping and the like temporally related to the time period of the alleged abuse or substantially related to the handling of specific documents identified on the privilege log. By letter dated August 18, 2022, Ryan noted WTNY's concerns were resolved, and a final notice would be provided by August 25, 2022. At that point, the parties were in agreement as to the scope of the requested 30(b)(6) deposition, and there were no outstanding issues left to be resolved.

By letter dated September 9, 2022, Ryan set forth certain "expectations" for the 30(b)(6) deposition, including that the 30(b)(6) deponent should be prepared to discuss unspecified databases or other information "in the current possession of other Jehovah's Witnesses entities that WTNY has reasonable access to." Ryan then sent an e-mail dated September 12, 2022, that new Scheduling Orders were needed and that the Brumley and 30(b)(6) depositions needed to be completed to evaluate possible motions as to the privilege log. At that time, Ryan noted he was hopeful about completing the depositions that month, but was waiting to hear back as to Mr. Brumley's availability. By letter dated September 15, 2022, I advised WTNY did not agree to any attempt in the September 9 letter to change the parameters agreed to in the letters dated August 15 and August 18, and did not agree to any expansion of topics.

Following a call on September 19, 2022, Ryan sent a letter dated September 23, 2022, advising that additional 30(b)(6) topics would be raised in the future. By letter dated September 26, 2022, Jon advised that WTNY did not envision producing a 30(b)(6) representative on multiple occasions and noted the 7-hour limit per the Rules of Civil Procedure. By e-mail dated September 27, 2022, Ryan noted concern about being ready for the depositions scheduled for October 11 and 12, 2022, including the 30(b)(6) deposition of WTNY. Ryan advised that Plaintiffs were considering adding topics, and for the first time, noted that Plaintiffs would like to depose Messrs. Smalley, Breaux, and Shuster.

Since Plaintiffs' request to depose Messrs. Smalley, Breaux, and Shuster was in the context of communications related to 30(b)(6) issues, and since they had not previously been identified in discovery or other case-related activities, WTNY's understanding was that Plaintiffs wanted to depose them in relation to 30(b)(6) topics. By e-mail dated September 28, 2022, Chris Sweeney noted his understanding that Messrs. Smalley, Breaux, and Shuster were members of the faith in New York, but that WTNY and WTPA had never communicated with them regarding potential depositions. Chris explained that it was necessary to consult with them and evaluate any notices addressed to them individually to address next steps. By e-mail dated September 28, 2022, Ryan indicated he was not sure why deposition notices were necessary, but that such notices could be sent.

By letter dated September 29, 2022, Ryan cancelled the forthcoming 30(b)(6) deposition. This letter included draft deposition notices and asked whether "you will produce these gentlemen for

Brown Law Firm, P.C.
June 21, 2023
Page 3 of 8

depositions[.]" By e-mail dated October 5, 2022, and in response to that letter (which WTNY's counsel did not receive until October 4, 2022), Brett advised that WTNY was concerned that the requests to depose Messrs. Breaux, Shuster, and Smalley "may be inappropriate, premature, or ultimately unnecessary." Brett noted none of them have direct knowledge of the claims, none of them had met Plaintiffs or Mr. Mapley, and "none of them were executive officers or members of the boards of directors of either corporation during the relevant time period." Brett's e-mail requested: "Can you provide the basis for the necessity of these depositions, especially since there has yet to be a Rule 30(b)(6) deposition of the defendants?" This e-mail again reflects WTNY's understanding that Plaintiffs' request to depose Messrs. Smalley, Breaux, and Shuster was in the context of 30(b)(6). This understanding was enforced by Ryan's e-mail dated October 5, 2022, which asserted: "these gentlemen have been a part of the Jehovah's Witness organization in New York during the time period relevant to this case and have knowledge relevant to issues in this case."

WTNY's understanding in this regard was further enforced by Plaintiffs' Motion to Compel, Doc. 153,[1] which identified the requested depositions as follows: "The deposition of three Jehovah's Witness Elders in New York who have worked at the Jehovah's Witness Organization's headquarters during all times relevant to Plaintiffs' claims and who have substantial knowledge and information relevant to Plaintiffs' case[.]" Plaintiffs' Brief in Support of Motion to Compel, Doc. 154, further asserted at page 5: "Plaintiffs have asked WTNY to make three elders at the Jehovah's Witness New York headquarters available for deposition." Plaintiffs' Motion to Compel also sought the opportunity to stagger depositions as to potential 30(b)(6) topics.

WTNY's understanding that Plaintiffs' request to depose Messrs. Smalley, Breaux, and Shuster was in the context of 30(b)(6) was reflected in WTNY's Response Brief to the Motion to Compel, Doc. 160, noting at page 19: "Messrs. Shuster and Breaux do not know more than any other person who may be designated by WTNY as its 30(b)(6) deponent to address the beliefs and practices of Jehovah's Witnesses, including the topics Plaintiffs say they want to explore." WTNY noted on page 20 as to Mr. Smalley: "For the sake of judicial economy, it simply makes more sense to depose a 30(b)(6) deponent whose memory is keen , who can withstand the rigors of a deposition, who knows how Jehovah's Witnesses handle allegations of child abuse, and who is younger than Mr. Smalley." WTNY continued on page 21: "If any deposition is needed as to a privilege asserted by WTNY, WTNY will offer a 30(b)(6) deponent who will be fully knowledgeable and competent to testify about this topic and any other properly noticed topic." WTNY also noted that Messrs. Shuster and Breaux are executive officers with the Christian Congregation of Jehovah's Witnesses, not WTNY.

---

[1] Citations herein are to the *Caekaert* case.

Brown Law Firm, P.C.
June 21, 2023
Page 4 of 8

Plaintiffs' Reply Brief to the Motion to Compel, Doc. 170, further reinforced WTNY's understanding, asserting on page 3:

> Allen Shuster, Gary Breaux and Gene Smalley are elders who have served in various supervisory roles at the Organization's headquarters since the 1970s. These men have unique, personal knowledge of the policies, practices, and events that are central to this case, including information that is foundational to WTNY's privilege claims. Shuster and Breaux have previously been designated by the Organization for deposition as ***People Most Knowledgeable/Qualified*** on these very subjects.

(emphasis in original). Page 5 of the Reply Brief even noted: "If WTNY was genuinely interested in good faith conferral, it could have offered to produce alternative witnesses with comparable first-hand knowledge of how the Organization was responding to reports of child sex abuse during the 1970s, 1980s, and 1990s. The Reply Brief continued on pages 7-8:

> Beyond questions of privilege, the unique, personal knowledge of Shuster, Breaux, and Smalley will also be directly relevant to other issues in this case, such as what WTNY knew about child sex abuse occurring in Hardin during the 1970s, 1980s, and 1990s (either directly, or through its agents) and when it knew it.

In total, the communications regarding these depositions prior to the filing of the Motion to Compel, and the briefing in relation to the Motion to Compel, supported WTNY's understanding that Plaintiffs sought to depose these gentlemen in the context of 30(b)(6).

The 30(b)(6) context of these requested depositions was again highlighted in Ryan's first communication following the Court's Order denying the Motion to Compel, Doc. 222. By e-mail dated April 19, 2023, Ryan asked for the following:

> Identification of individuals that you will produce for deposition who have substantially similar personal history and personal knowledge (for all time periods at issue in this case) of the JW Organization's corporate structure, the policies and procedures in place for handling accusations of child sex abuse, how the Service Department communicated with local congregations, and the process for the appointment and deletion of elders and ministerial servants[.]"

This point was reiterated by James as follows in his letter dated April 26, 2023:

> Please let me know as soon as possible if there are other non 'apex' witnesses with substantially similar first hand, personal knowledge as Shuster, Breaux, and Smalley (for all time periods at issue in this case) of the Jehovah's Witness

Brown Law Firm, P.C.
June 21, 2023
Page 5 of 8

> Organization's corporate structure, the policies and procedures in place for handling accusations of child sex abuse, how the Service Department communicated with local congregations, and the process for the appointment and deletion of elders and ministerial servants.

Following consideration of these identified topics, which at the very least are similar to those identified in Plaintiffs' prior draft 30(b)(6) notices, I responded by letter dated May 1, 2023:

> The call [on April 25, 2023] began with our attempt to confer by asking James to identify the topics you want to address in depositions of Mr. Breaux, Mr. Shuster, and Mr. Smalley in order for us to evaluate whether your unilateral designation of these individuals as witnesses with 'personal knowledge' is an attempt to take multiple 30(b)(6) depositions; importantly, we cannot identify witnesses who are best suited as alternatives without knowing the topics you want to discuss.

This letter also identified the following alternative witnesses: Thomas Jefferson, Jr. (minister and Service Department elder), Mario Moreno (former attorney for WTNY), and Alan Browning (accounting).

Having provided alternative witnesses as requested, we were surprised by James' letter dated May 1, 2023, which rejected such alternatives out of hand and asserted with no support or explanation: "None of those people have close to the same personal experience and knowledge that Mr. Shuster, Mr. Breaux, and Mr. Smalley have on issues critical to this case." Given this rejection of the suggested alternative witnesses, Jon's letter dated May 3, 2023, noted the parties appeared to be at an impasse, and the issue would be ripe for the Court's consideration upon the issuance of deposition notices. James' letter dated May 15, 2023, discussed these depositions in relation to 30(b)(6) style topics:

> Given the significant fact questions in this case about the JW Organization's practices and policies surrounding child sex abuse during the 1970s, 1980s, and 1990s, as well as fact questions about what each of the named defendant corporations were doing individually and in concert during the same time period, the testimony of Mr. Shuster, Mr. Breaux, and Mr. Smalley are very important to this case.

WTNY's Brief in Support of its Motion for Protective Order, Doc. 235, again evidenced understanding that the depositions were being requested in the context of 30(b)(60). WTNY noted at pages 2-3:

> These three men do not have unique knowledge regarding Plaintiffs' purported deposition topics. Their knowledge about the topics Plaintiffs are interested in is

Brown Law Firm, P.C.
June 21, 2023
Page 6 of 8

      as at best equal to that of the person WTNY offers as a 30(b)(6) witness in this case, and whom WTNY proposed as an alternative as part of its earnest meet-and-confer efforts: namely, Thomas Jefferson, Jr.

Pages 5-9 of the Brief in Support then explained how "the very topics on which Plaintiffs want to depose them are the same as those about which WTNY's designated 30(b)(6) witness would testify."

In total, and until Plaintiffs' Response Brief to the Motion for Protective Order, Doc. 243, all of the communications and briefing in relation to the requested depositions of Messrs. Smalley, Breaux, and Shuster had been in the context of 30(b)(6). Then, in Plaintiffs' Response Brief, the following new arguments were made:

- Plaintiffs cited a case arguing that noticing the deposition of a corporation's particular officer, director, or managing agent requires that such individuals must then be produced for deposition: *United States v. One Parcel of Real Estate*, 121 F.R.D. 439, 440 (S.D. Fla 1988). (Doc. 243, p. 17). Plaintiffs argued, through this case, that Plaintiffs can take the deposition of a specific officer or agent of a corporation (by noticing the same) and are not required to allow the corporation to decide for itself whose testimony the other party may have. Given this argument, WTNY was entitled to argue in its Reply Brief that mere noticing did not require WTNY to produce these individuals because Rule 45 requires a subpoena.

- "**4. A corporation's agents may be deposed personally regardless of whether a Rule 30(b)(6) deposition is conducted.**" (Doc. 243, p. 22 (emphasis in original)). Plaintiffs go on to argue that Rule 30(b)(6) does not apply because these are personal depositions, (*id.*), and that WTNY is, thus, required to produce them. (*Id.*, pp. 22, 24). Given this argument, WTNY was entitled to argue in its Reply Brief that, if these are personal depositions, and not an attempt to take 30(b)(6) depositions binding WTNY, WTNY was not required to produce them and Rule 45 requires a subpoena.

- Plaintiffs characterized the proposed depositions of these individuals as "'ordinary depositions'" that are less burdensome than 30(b)(6) depositions because they do not come with an "'obligation to prepare the witness.'" (Doc. 243, p. 27). Plaintiffs continued that "…WTNY has no obligation to prepare Messrs. Shuster, Breaux, and Smalley for their personal depositions." (Doc. 243, p. 28). Given this argument, WTNY was entitled to argue that if the depositions were not going to be taken pursuant to 30(b)(6), WTNY was not required to produce them and Rule 45 requires a subpoena.

- Plaintiffs argued: "Rule 30(b)(6) is explicit that it is not intended to be a replacement for fact witness depositions[...]" (Doc. 243, p. 29). Given this argument, WTNY was entitled to argue that if the depositions were not going to be taken pursuant to 30(b)(6), WTNY was not required to produce them and Rule 45 requires a subpoena.

- Refuting WTNY's argument that it would have to "spend several days each to prepare [them] for depositions about past operations of WTNY and about past practices..." Plaintiffs argued "Rule 30 places no such obligation on personal depositions of fact witnesses. Messrs. Shuster's and Breaux's only obligation is to appear and answer questions truthfully." (Doc. 243, p. 31). Given this argument, WTNY was entitled to argue that if the depositions were not going to be taken pursuant to 30(b)(6), WTNY was not required to produce them and Rule 45 requires a subpoena.

In total, until Plaintiffs' filed their Response Brief to the Motion for Protective Order, WTNY's understanding was that Plaintiffs wanted to depose Messrs. Smalley, Breaux, and Shuster in relation to 30(b)(6).[2] Such understanding was reasonable in light of the communications and briefing discussed above, and nothing from Plaintiffs suggested such understanding was incorrect until the Response Brief to the Motion for Protective Order. As such, we disagree that that there were any issues as to the meet and confer process as suggested in the June 20 Letter. Also, given the new arguments raised in the Response Brief to the Motion for Protective Order, it was appropriate for WTNY to address those arguments in its Reply Brief in support of the Motion for Protective Order. *See Applied Materials, Inc. v. Demaray LLC*, 2020 WL 8515132, *1 (N.D. Cal. 2020); and *Kapor v. RJC Inv., Inc.*, 2019 MT 41, ¶ 29, 394 Mont. 311, 434 P.3d 869.

For these reasons, WTNY is unwilling to withdraw the Rule 45 argument and would object to any Motion to Strike regarding the same. However, in an effort to resolve this dispute and the apparent misunderstanding regarding the requested depositions, WTNY would not object to Plaintiffs filing a sur-reply brief. Such proposed resolution, which was ignored in the June 20 Letter, would make unnecessary the inefficient motions practice the June 20 Letter purportedly seeks to avoid.

---

[2] We note Plaintiffs requested that WTNY produce them for deposition. Plaintiffs made no such request as to Bradley Lovett, and we were unaware Plaintiffs wanted to depose him until receiving the notice of subpoena.

Brown Law Firm, P.C.
June 21, 2023
Page 8 of 8

Additionally, page 3 of the June 20 Letter suggests this issue could be resolved by the issuance of subpoenas. Please be advised that Messrs. Smalley, Breaux, and Shuster are represented by the following counsel:

Margaret T. Korgul, Esq.
MarKorLaw, LLC
One Bridge Plaza North, Suite 275
Fort Lee, NJ 07024
Phone: (551) 220-0010
E-mail: mkorgul@markorlaw.com

We understand Ms. Korgul, whom we have copied on this e-mail, is willing to accept service of subpoenas addressed to Messrs. Smalley, Breaux, and Shuster on their behalf. However, this willingness to accept service of process would not constitute a waiver of the right to evaluate the subpoenas and, if necessary, seek protective remedies, including but not limited to the filing of a Motion for Protective Order. Please advise if such procedure would be agreeable to Plaintiffs and resolve the issues raised in the June 20 Letter.

Sincerely,

*/s/ Jon A. Wilson*

Jon A. Wilson
Michael P. Sarabia
JAW/MPS
cc:   Joel M. Taylor (via e-mail)
      Gerry Fagan, Christopher Sweeney, Jordan Fitzgerald (via e-mail)
      Margaret T. Korgul (via e-mail)