Jon A. Wilson
Brett C. Jensen
Michael P. Sarabia
BROWN LAW FIRM, P.C.
315 North 24th Street
P.O. Drawer 849
Billings, MT 59103-0849
Tel. (406) 248-2611
Fax (406) 248-3128

Joel M. Taylor, Esq. (appearing *pro hac vice*)
MILLER MCNAMARA & TAYLOR LLP
100 South Bedford Road, Suite 340
Mount Kisco, New York 10549
Tel./E-Fax (845) 288-0844
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | Cause No. CV 20-52-BLG-SPW |
| Plaintiffs, | **DEFENDANT WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.'S BRIEF IN SUPPORT OF MOTION FOR ORDER DIRECTING RULE 35, FED. R. CIV. P., EXAMS** |
| vs. | |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR., | |
| Defendants. | |

WATCHTOWER BIBLE AND                 )
TRACT SOCIETY OF NEW YORK,           )
INC.                                 )
                                     )
              Cross-Claimant,        )
                                     )
vs.                                  )
                                     )
BRUCE MAPLEY SR.,                    )
                                     )
              Cross-Claim Defendant. )
                                     )

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS……………………………………………………… i

TABLE OF AUTHORITIES…………………………………………………ii

EXHIBIT INDEX …………………………………………………… iii, iv

INTRODUCTION …………………………………………………… 1

STANDARD …………………………………………………………… 2

BACKGROUND………………………………………………………… 3

ARGUMENT………………………………………………………… 12

      I.  Generally, the Court Should Order the Examinations of Tracy Caekaert and Camillia Mapley to Occur in the Manner Specified by Dr. Bütz……. 12

      II.  The Court Should Order the Rule 35 Exams to Take Place in Person, and All Costs of Travel Should be Borne by Plaintiffs ……………………… 13

      III.  The Court Should Order Plaintiffs' Counsel and Unqualified Experts Are not Entitled to Dr. Bütz's Raw Test Data because Applicable Ethics Guidelines and Regulations Forbid It …………………………………… 15

      IV.  The Court Should Reserve Judgment as to any Potential Waiver of Attorney-Client Privilege During the Rule 35 Exams until a Dispute Arises and Counsel Should Follow the Procedure Provided by the Federal Rules of Evidence. ……………………………………………………………… 16

CONCLUSION………………………………………………………… 19

CERTIFICATE OF COMPLIANCE …………………………………… 20

CERTIFICATE OF SERVICE…………………………………………… 21

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page**

*Am. Zurich Ins. Co. v. Mont. Thirteenth Jud. Dist.*, 2012 MT 61,
364 Mont. 299, 280 P.3d 240)……………………………………………… 17

*Cannon v. Austal USA LLC,* 2017 WL 11687286 *1 (S.D. Cal. 2017) ………… 13

*Copenhaver vs. Cavagna Grp. S.p.a. Omeca Div.*, *7, 2021 WL 3171787
(D. Mont. 2021) ……………………………………………………… 12, 13, 14, 17

*Galieti v. State Farm Mut. Auto. ins. Co.*, 154 F.R.D. 262, 265
(D. Colo. 1994)……………………………………………………………… 17

*Halliday v. Spjute*, 2015 WL 3988903 at *4 (E.D. Cal. 2015)…………………… 13

*Levick v. Steiner Transocean Ltd.*, 228 F.R.D. 671, 672
(S.D. Fla. 2005) ……………………………………………………………… 13

*McCloskey v. United Parcel Serv. Gen. Servs. Co.*, 171 F.R.D. 268, 270
(D. Or. 1997) ……………………………………………………………… 13

*McDaniel v. Toledo, Peoria and Western R. Co.,* 97 F.R.D. 525, 526
(C.D. Ill. 1983) ……………………………………………………………… 17

*Ornelas v. Southern Tire Mart, LLC*, 292 F.R.D. 388 (S.D. Tex. 2013)………… 13

*Schlagenhauf v. Holder*, 379 U.S. 104, 85 S. Ct. 234 (1964)…………………… 12

*State v. Tadewaldt*, 2010 MT 177, 357 Mont. 208, 237 P.3d 1273 …………… 17

*Winslow v. Montana Rail Link, Inc.*, 2001 MT 269, 307 Mont. 269,
38 P.3d 148 ……………………………………………………………… 12, 13

**Statutes and Rules**

Fed. R. Civ. P. 35 …………………………………………………………… 1, 2

Fed. R. Evid. 502(b) ................................................................ 11, 18

Mont. Admin. R. 24.189.2305(9) ................................................ 15

Mont. R. Evid. 503 ................................................................... 17

**EXHIBIT INDEX**

**Exhibit 1**   WTNY's August 16, 2023 Proposed Memorandum of Agreement ................................. 1, 8, 9, 13, 15, 18

**Exhibit 2**   Plaintiffs' August 30, 2023 Memorandum of Understanding ............................ 1, 2, 10, 14, 15, 16, 17

**Exhibit 3**   Letter to Plaintiffs' Counsel dated April 10, 2023 ................ 3

**Exhibit 4**   Letter from Plaintiffs' Counsel dated April 20, 2023 ............ 3

**Exhibit 5**   Letter to Plaintiffs' Counsel dated April 26, 2023 with attachments ................................................ 3

**Exhibit 6**   Letter from Plaintiffs' Counsel dated May 4, 2023 ............... 3

**Exhibit 7**   Letter to Plaintiffs' Counsel dated June 1, 2023 with attachments ............................................. 4, 14

**Exhibit 8**   Email to Plaintiffs' Counsel dated June 23, 2023 with attachments ............................................ 4, 13

**Exhibit 9**   Follow-up Email to Plaintiffs' Counsel dated June 23, 2023 with attachments ........................... 4, 13

**Exhibit 10**   Letter from Plaintiffs' Counsel dated June 30, 2023 with attachment ................................... 4, 5, 15, 16, 17

**Exhibit 11**   Letter to Plaintiffs' Counsel dated June 27, 2023 with attachments ........................................ 5, 15, 16

**Exhibit 12**       Letter from Plaintiffs' Counsel dated June 28, 2023
with attachments…………………………………………………5

**Exhibit 13**       Email to Plaintiffs' Counsel dated July 31, 2023 ……………6

**Exhibit 14**       Email from Plaintiffs' Counsel dated July 31, 2023……………6

**Exhibit 15**       Email from Plaintiffs' Counsel dated July 31, 2023 and
WTNY's response regarding Dr. Bütz's travel ………………6

**Exhibit 16**       Email to Plaintiffs' Counsel dated August 7, 2023 ……….6, 16

**Exhibit 17**       Letter from Plaintiffs' Counsel dated August 8, 2023
with attachment and Email to Plaintiff's Counsel ……………7

**Exhibit 18**       Email to Plaintiffs' Counsel dated August 9, 2023 …………7

**Exhibit 19**       Email to Plaintiffs' Counsel dated August 14, 2023…………8

**Exhibit 20**       Email to Plaintiffs' Counsel dated August 15, 2023…………8

**Exhibit 21**       Email to Plaintiffs' Counsel dated August 17, 2023
with attachment…………………………………………………8

**Exhibit 22**       Email exchanges with Plaintiffs' Counsel between
August 21, 2023 and August 23, 2023……………………9, 10

**Exhibit 23**       Email exchanges with Plaintiffs' Counsel between
August 24, 2023 and August 25, 2023……………………… 10

**Exhibit 24**       Email to Plaintiffs' Counsel dated September 19, 2023……. 11

**Exhibit 25**       Email to Plaintiffs' Counsel dated September 20, 2023……. 11

**Exhibit 26**       Letter from Plaintiffs' Counsel dated September 20, 2023 … 11

**Exhibit 27**       Dr. Bütz's Article "Threats to the integrity of psychological
assessment: The misuse of test raw data and materials"
…………………………………………………………… 15

**COMES NOW**, Defendant Watchtower Bible and Tract Society of New York, Inc. ("WTNY"), by and through its attorneys of record, and respectfully submits its Brief in Support of Motion for an Order Directing Rule 35, Fed. R. Civ. P., mental examinations of the Plaintiffs Tracy Caekaert and Camillia Mapley by Michael Bütz, Ph.D.

<u>**INTRODUCTION**</u>

WTNY has requested that Plaintiffs Tracy Caekaert and Camillia Mapley submit to Rule 35, Fed. R. Civ. P., mental examinations with Michael Bütz, Ph.D. WTNY expects Dr. Bütz will assist the triers of fact in determining the existence, nature, and extent of the psychological conditions Plaintiffs have placed at issue in this case by claiming injuries and damages secondary to various instances of alleged childhood sexual abuse.

Months of conferral about the scope and conditions of the Rule 35 exams have culminated in two competing proposed Memoranda of Agreement: WTNY's August 16, 2023 Memorandum of Agreement (hereafter "WTNY's Proposed Memorandum"),[1] and Plaintiffs' August 30, 2023, Memorandum of Understanding (hereafter "Plaintiffs' Proposed Memorandum").[2] As a threshold matter, the parties

---

[1] Ex. 1, attached hereto. WTNY's counsel provided the Proposed Memorandum to Plaintiffs' counsel via email on August 17, 2023.
[2] Ex. 2, attached hereto.

agree Dr. Bütz is a suitably licensed and certified examiner to conduct the subject mental examinations. The parties further stipulate that there is "good cause" within the meaning of Rule 35(a)(2)(A), Fed. R. Civ. P., for the subject mental examinations to occur.

However, the parties disagree significantly with respect to certain aspects of the "time, place, manner, conditions, and scope" of the proposed examinations pursuant to Fed. R. Civ. P. 35(a)(2)(B). It is on these matters that WTNY requests the assistance of the Court.[3]

## <u>STANDARD</u>

Rule 35, Fed. R. Civ. P., provides as follows concerning an Order for An Examination:

> (1) In General. The court where the action is pending may order a party whose mental or physical condition—including blood group—is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.

> (2) Motion and Notice; Contents of the Order. The order:

>> (A) may be made only on motion for good cause and on notice to all parties and the person to be examined; and
>> (B) must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.

---

[3] The parties have further agreed the subject mental examinations may be scheduled and proceed while they seek resolution of their disagreements from the Court. *See* Ex. 2, p. 3.

## BACKGROUND

Counsel for WTNY first requested Plaintiffs' mental examinations by Dr. Bütz on April 10, 2023. *See* Ex. 3. The request included copies of Dr. Bütz's CV and specialized training in the areas of clinical neuropsychology, developmental disabilities, and forensic psychology.

In their response letter dated April 20, 2023, *see* Ex. 4, Plaintiffs' counsel raised issues concerning "manner, conditions, and scope of the examination[s]." The letter also raised concerns about travel and costs pertaining to Camillia Mapley, who lives in Mansfield, VIC, Australia, and Tracy Caekaert, who lives in Searcy, Arkansas.

Counsel for WTNY responded on April 26, 2023, *see* Ex. 5, and included a detailed response drafted by Dr. Bütz containing his proposed scope of the subject mental examinations. WTNY offered the concession that Dr. Bütz would consider traveling to Australia and Arkansas assuming Plaintiffs would cover his travel costs.

For the first time on May 4, 2023, *see* Ex. 6, Plaintiffs signaled their intention to dictate the technical aspects of Dr. Bütz's examinations. They requested Dr. Bütz delineate the time needed for each of the examinations, whether each exam would be completed in one day, ensuring adequate rest for the examinees, and even sought to limit the kinds of questions Dr. Bütz could ask during the examinations.

Dr. Bütz and Counsel for WTNY attempted to accommodate some of these requests. *See* Ex. 7 (June 1, 2023, letter from counsel enclosing May 25, 2023, letter from Dr. Bütz). However, they suggested a flexible approach that deferred to Dr. Bütz's clinical expertise in most respects.

By email dated June 23, 2023, counsel for WTNY sent Plaintiffs' counsel a proposed Memorandum of Agreement regarding the Rule 35 Exams, which had already been workshopped with Dr. Bütz, along with studies by Kaufmann and Morel supporting Dr. Bütz's position on the sharing of test raw data, and an A-V Recording Agreement. *See* Ex. 8.[4] Later that day, counsel for WTNY forwarded by email Dr. Bütz's Authorization for Forensic Consultation/Psychological Assessment: Informed Consent & Fee Agreement ("Dr. Bütz's Authorization"), along with Client Preparation for Psychological Assessment Disclosure. *See* Ex. 9. Dr. Bütz's Authorization, in pertinent part, addresses his ethical obligations as a psychologist regarding the handling of test raw data, and, specifically, that it will only be disclosed per those ethical rules and to appropriately qualified experts.

By letter dated June 30, 2023, *see* Ex. 10, Plaintiffs' counsel continued to disagree regarding the scope and parameters of the proposed exam. Plaintiffs attached a draft of a memorandum ("Plaintiffs' Draft Memorandum") to this letter.[5]

---

[4] WTNY's original proposed Memorandum of Agreement Regarding Independent Medical Examinations in Pending Causes is the final attachment to this June 23, 2023 email.
[5] Plaintiffs' Draft Memorandum is included in the attached Ex. 10.

Dr. Bütz can accommodate a few of Plaintiffs' requests in this letter (i.e., Paragraph Nos. 3, 4, and 5 of Plaintiffs' Draft Memorandum).  However, several other of their requests are unreasonable and presented an intractable problem: they demand Dr. Bütz agree to release his test raw data to Plaintiffs' counsel and their experts, and also want an agreement that Plaintiffs' counsel can be present during the exam, and/or that any voluntary disclosure of privileged information by Plaintiffs will not constitute a waiver. *See* Ex. 10, p. 2; Plaintiffs' Draft Memorandum, p. 2.

On July 27, 2023, counsel for WTNY responded to the June 30, 2023 letter, informing Plaintiffs' counsel that many conditions in their Draft Memorandum are contrary not only to the law, but ethics rules governing Dr. Bütz's practice. *See* Ex. 11. WTNY's counsel also provided a letter from Dr. Bütz, and other documents, explaining the ethical violations entailed by Plaintiffs' counsel's proposed conditions for the examinations, and asked whether the parties have any additional areas of agreement before WTNY filed the instant Motion. *See id.*, p. 2.

Plaintiffs' counsel responded on July 28, 2023, and advised they were in agreement with WTNY's counsel and Dr. Bütz in re the latter's proposed language for Paragraph 6 of Plaintiffs' Draft Memorandum regarding the scope of the examinations. *See* Ex. 12, p. 1. They further agreed time stamping the audio recording of the examinations would not be necessary. *Id*. However, they continued to dispute Dr. Butz's request for in-transit travel costs to Arkansas and Australia for

the examination of Ms. Caekaert and Ms. Mapley, respectively, and insisted all costs could be avoided by conducting the examination via video conference. *Id*. Plaintiffs' counsel asked whether Dr. Bütz would agree to provide test raw data to counsel and Plaintiffs' retained psychologist and psychiatrist, and continued to press for a waiver of any waiver of attorney-client privilege. *Id*.

On July 31, 2023, WTNY's counsel e-mailed Plaintiffs' counsel to schedule a telephone call to discuss the aforementioned July 28, 2023 letter. *See* Ex. 13. Counsel conferred on a phone call on July 31, 2023. *See* Ex. 14

Following the telephone call, Plaintiffs' counsel emailed WTNY's counsel and stated "so long as Dr. Bütz agrees to provide the raw test data to our experts (Bone and Holmberg) we are good not requiring disclosure to Plaintiffs' counsel." Ex. 15, p. 2.

On August 1, 2023, WTNY's counsel emailed Plaintiffs' counsel and proposed a solution to the disagreement about Dr. Bütz's travel costs: WTNY would offer to cover upgrades to business class airfare if Plaintiffs covered the cost of seats in economy and the Dr.'s in-transit travel time. *See* Ex. 15, p. 1.

WTNY's counsel sent an email on August 7, 2023, advising Plaintiffs' counsel that Dr. Bütz agreed to release the test raw data to Plaintiffs' expert, Dr. Bone, but not to Dr. Holmberg as there is no documentation showing the latter has experience conducting psychological assessments. *See* Ex. 16. This email also

explained Dr. Bütz's requirement that his time-in-transit travel costs, limited to an 8-hour day, be paid.

In an August 8, 2023 letter and email, Plaintiffs' counsel agreed to Dr. Bütz's position that the test raw data be shared only with Dr. Bone, on the condition that Dr. Bütz's report "include a data sheet that identifies the tests given, with a corresponding score and T score/percentile rank for each such test." Ex. 17, p. 1.[6] Plaintiffs' counsel also insisted on language allowing counsel and expert psychiatrist, Dr. Holmberg, "to discuss and reference the raw testing data provided to Dr. Bone for the purpose of this litigation." *Id*.  Regarding Dr. Bütz's travel costs to Australia for Ms. Mapley's examination, however, Plaintiffs' counsel insisted the "most reasonable solution is to conduct her exam and testing remotely[.]" *Id*., pp. 1-2. Plaintiffs' counsel simultaneously acknowledged the reasons for conducting the exam in-person, while questioning whether the benefit justifies the cost of doing so. *Id*.

WTNY's counsel emailed Plaintiffs' counsel on August 9, 2023, and suggested the parties leave their dispute about travel costs for the Judge to decide, while putting a final Memorandum of Agreement in place regarding those issues for which the parties have found agreement. *See* Ex. 18.

---

[6] The August 8, 2023 email is contained in Ex. 17, following Plaintiffs' counsel's August 8, 2023 letter.

On August 14, 2023, WTNY's counsel emailed Plaintiffs' counsel to provide Dr. Bütz's response to Plaintiffs' latest proposals, including language regarding the sharing of test raw data. *See* Ex. 19. As Dr. Bütz aptly pointed out, Plaintiffs' proposed language regarding the sharing of test raw data was a kind of bait-and-switch: it seemed to agree the data would only be shared with the duly qualified Dr. Bone, but then continued with a provision that would give Plaintiffs' counsel, and the unqualified Dr. Holmberg, access to this data—despite Plaintiffs' counsel's earlier representation that they would be willing to accept Dr. Bütz's position that only qualified experts, like Dr. Bone, would have access. *Id*. WTNY's counsel further proposed language for a Memorandum of Agreement that would incorporate Dr. Bütz's authorization form, which in turn sets forth his long-held policy regarding the handling of test raw data in compliance with applicable ethics rules. *Id*.

On August 15th, 2023, counsel exchanged emails with a limited agreement: disagreement remained in re Plaintiffs' counsel's insistence that attorney-client privilege could not be waived, and their contention that psychological test raw data can be shared in contravention of the ethical rules governing Dr. Bütz. *See* Ex. 20. WTNY's counsel then stated a Memorandum of Agreement would be circulated reflecting the areas of agreement.

WTNY's counsel provided to Plaintiffs' counsel, by email dated August 17, 2023, its Proposed Memorandum. *See* Ex. 21 (email); *see also* Ex. 1 (WTNY's

Proposed Memorandum). WTNY's Proposed Memorandum set forth several paragraphs of agreement, and several paragraphs of disagreement between the parties. *See* Ex. 1, pp. 1-5. In sum, the parties appear to agree to the following: (1) the time and place of the mental examinations for Tracy Caekaert and Camillia Mapley; (2) that the manner, conditions, and scope of the exams are set forth in Dr. Bütz's letters dated April 25, 2023, and May 26, 2023, and that, generally, the scope of examination will be to determine the existence, nature, and extent of psychological conditions Plaintiffs have placed at issue; (3) Dr. Bütz will provide Plaintiffs' counsel the name(s) and version(s) of tests given, as well as the time each test will have started and stopped, and the duration of any breaks in testing, but that any recordings of the exams will not be time stamped; (4) the exams will be audio recorded from the moment an examinee begins interacting with Dr. Bütz until the conclusion of both the history and mental status interview portions of the exams, but not of any testing portions; (5) no party will be allowed to have a representative attend the examinations; and (6) expert reports generated by Dr. Bütz will be automatically subject to the Stipulated Protective Order (Doc. 110-1).

Between August 21st through August 23, 2023, counsel exchanged emails regarding, inter alia, a dispute about Dr. Bütz's Authorization. *See* Ex. 22. Plaintiffs' counsel emailed WTNY's counsel to have a phone call. *Id*., p. 7. Plaintiffs' counsel sent an email, dated August 23, 2023, with Plaintiffs' counsel's summation of the

parties' areas of agreement and disagreement. *See* Ex. 22, p. 1. On August 24th, through August 25, 2023, counsel continued a discussion about the Authorization, and how concerns about it could be alleviated by modifications to any Memorandum of Agreement. *See* Ex. 23.

On August 30, 2023, Plaintiffs' counsel emailed Plaintiffs' Proposed Memorandum. *See* Ex. 2.[7] Plaintiffs' Proposed Memorandum presents several significant issues, including limiting language that would override Dr. Bütz's Authorization Form. *See* Ex. 2, p. 1. Comparing Plaintiffs' Proposed Memorandum with WTNY's, the following areas of disagreement require resolution from the Court:

(1) whether Plaintiffs should either have to (a) travel to the forum they chose for this action for purposes of their Rule 35 examinations; (b) pay for all of Dr. Bütz's associated costs for having to travel to them; or (c) conduct the exams remotely.

(2) the handling of test raw data: Defendants and Dr. Bütz contend test raw data should be handled in accordance with applicable ethics rules and practices, and be provided only to and, interpreted only by, experts duly qualified in conducting psychological assessments, which includes, at this time, only Dr. Bütz himself and Plaintiffs' expert, Dr. Bone. Plaintiffs

---

[7] The August 30, 2023 email is on the final page of Ex. 2.

contend, on the other hand, that Dr. Bütz should violate applicable ethics rules by disclosing the test raw data to unqualified individuals, including Plaintiffs' counsel and expert psychiatrist, Dr. Holmberg.

(3) potential waiver of attorney-client privilege: Defendants and Dr. Bütz have agreed the latter will not ask any questions soliciting attorney-client privileged material, but that the parties should be allowed to reserve their right to argue for or against waiver of attorney-client privilege, respectively, in the event Plaintiffs voluntarily disclose such information; further, Defendants contend Rule 502(b), Fed. R. Evid., shall govern in the event of an inadvertent disclosure of attorney-client privileged information. Plaintiffs, on the other hand, have insisted on an ex ante facto agreement that there can be no waiver of attorney-client privilege.

Despite the expenditure of significant time and resources by WTNY's counsel and Dr. Bütz, the parties continue to dispute the above summarized issues. *See* Exs. 24-26.[8] WTNY respectfully requests the Court grant the instant Motion for the reasons stated herein.

---

[8] Plaintiffs' counsel emailed WTNY's counsel on September 19, 2023, to see whether a Memorandum of Agreement could be reached in order to move forward with the exams. *See* Ex. 24, pp. 1-2. WTNY's counsel emailed Plaintiffs' counsel on September 19, 2023, to note the parties' impasse and need for Court determination of the scope and conditions of the Rule 35 examinations. *Id*., p. 2.

Plaintiffs' counsel responded by letter, attached to an email, dated September 20, 2023. Exs. 25 (email) and 26 (letter). In that letter, counsel insisted Plaintiffs' Proposed Memorandum "captures our agreement completely[,]" taking issue with WTNY's earlier comment that Plaintiffs' Proposed Memorandum was completely unacceptable. While the Plaintiffs' Proposed Memorandum does accurately capture a few points of agreement between the parties

## <u>ARGUMENT</u>

I.   **Generally, the Court Should Order the Examinations of Tracy Caekaert and Camillia Mapley to Occur in the Manner Specified by Dr. Bütz.**

In *Copenhaver v. Cavagna Grp. S.p.a. Omeca Div.*, *7, 2021 WL 3171787 (D. Mont. 2021), Judge Cavan considered the scope of a Rule 35 Mental Examination. He held, inter alia, the scope of the proposed neuropsychological examination "will be the same as is typical for a neuropsychological examination" and the Court would not "otherwise limit the scope of the examinations."

Judge Cavan's Order is fully consistent with the general rule regarding scope, which must be defined "at least in a general sense." *Winslow v. Montana Rail Link, Inc.*, 2001 MT 269, ¶ 15, 307 Mont. 269, 38 P.3d 148. Relying on U.S. Supreme Court precedent, the Court in *Winslow* held the proper scope of an examination is to determine the "existence and extent" of the claimed injuries. *Id.* at ¶ 16 (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 85 S. Ct. 234 (1964)).

---

(i.e., that the test raw data will be provided to Dr. Bone alone, that Dr. Butz will provide a list of the tests given as well as their duration, but without the need for timestamping any recording of the tests), the section listing the disagreements between the parties does not fully and fairly characterize WTNY's position. For example, it does not explain why WTNY opposes the sharing of the test raw data with anyone but Plaintiffs' expert Dr. Bone: Dr. Bone is Plaintiffs' only duly qualified expert to interpret the test raw data, and sharing it with Plaintiffs' counsel, or Dr. Holmberg, would be a violation of applicable ethics rules. Further and finally, of course, Plaintiffs' position regarding the sharing of test raw data, the location of the exam and associated travel costs, and their insistence that any disclosure of attorney-client privileged information be automatically stricken are unacceptable to WTNY.

Here, and generally, the Court should order Dr. Bütz's examinations to occur pursuant to the manner, conditions, and scope set forth in his letters dated April 25, 2023, and May 26, 2023. *See* WTNY's Proposed Memorandum, ¶ 5. The Court should, likewise, require the Plaintiffs to execute Dr. Bütz's Authorization Form and A-V Recording Agreement. *See* Exs. 8-9.  This requested relief is consistent with the rules and rationale in *Copenhaver* and *Winslow supra*, which allow the expert examiner to conduct his exam pursuant to his ordinary clinical practice.

## II.     The Court Should Order the Rule 35 Exams to Take Place in Person, and All Costs of Travel Should be Borne by Plaintiffs.

Federal courts have routinely required a plaintiff to travel to the forum in which s/he brought an action for purposes of Rule 35 physical and mental examinations. *See, e.g., McCloskey v. United Parcel Serv. Gen. Servs. Co.,* 171 F.R.D. 268, 270 (D. Or. 1997); *Cannon v. Austal USA LLC,* 2017 WL 11687286, at *1 (S.D. Cal. 2017) (citing *McCloskey*); *Ornelas v. Southern Tire Mart, LLC,* 292 F.R.D. 388 (S.D. Tex. 2013); *Levick v. Steiner Transocean Ltd.,* 228 F.R.D. 671, 672 (S.D. Fla. 2005). Further, the burden is not on the Defendant to establish that an adequate examination cannot be had by other means, but rather the Plaintiffs have the burden of establishing that travel to the examinations poses undue burden or hardship. *See Ornelas,* 292 F.R.D. at 400 (internal citations omitted); *see also Halliday v. Spjute,* 2015 WL 3988903, at *4 (E.D. Cal. 2015) (quoting *Ornelas*).

Here, Plaintiffs Tracey Caekaert and Camilia Mapley are located in Arkansas and Australia, respectively, yet they chose Billings, Montana as their forum for this action. WTNY found an expert, Dr. Bütz, in the forum chosen by Plaintiffs. WTNY respectfully requests the Court order Plaintiffs to travel to the forum for their Rule 35 examinations, or else pay all reasonable costs associated with Dr. Bütz having to travel to them, including (1) costs associated with the Dr. having to obtain the required certifications in Australia and/or Arkansas; (2) all travel costs, as well as the Dr.'s time-in-transit at his regular rate of pay. These are costs that would not be incurred but for Plaintiffs' desire to not travel to their chosen forum.

Plaintiffs contend the examinations can be conducted remotely in order to save costs. Ex. 2, p. 4. However, only in-person examinations of this type, as explained by Dr. Bütz, provide the requisite degree of scientific certainty. *See* Ex. 7, pp. 3, 6. Again, this Court's decision in *Copenhaver* is instructive: examinations are conducted in a way that is "the same as is typical" for a psychologist's practice. *Copenhaver*, 2021 WL 3171787, at *7 (D. Mont. 2021).

WTNY respectfully requests the Court rule the exams shall be conducted in-person, and any costs of travel for these exams—either to the forum Plaintiffs chose, or for WTNY's forum-located expert to travel to them—should be borne by the Plaintiffs.

III.    **The Court Should Order Plaintiffs' Counsel and Unqualified Experts Are not Entitled to Dr. Bütz's Test Raw Data because Applicable Ethics Guidelines and Regulations Forbid It.**

The American Psychological Association's code of ethics prohibits the release of raw psychological test data to "those who do not have the appropriate level of training, supervision and experience to interpret it" in the intended scientific manner. Ex. 11, p.3 (Dr. Bütz's July 17, 2023, letter). Crucially, the Administrative Rules of Montana also forbid sharing such data with unqualified individuals. *See* Mont. Admin. R. 24.189.2305(9). Dr. Bütz recently co-authored a scholarly article thoroughly addressing the ethical issues associated with the release of test raw data to unqualified individuals. *See* Ex. 27.

Plaintiffs' position is unreasonable: they ask Dr. Bütz to commit professional misconduct by agreeing to release test raw data to both Plaintiffs' counsel, and "Plaintiffs' retained experts" with no qualification that those experts must have the appropriate level of training, supervision, and experience to interpret said data. *See* Ex. 2, pp. 4-5; Ex. 10, p. 2; *see also* Plaintiffs' Draft Memorandum, ¶¶ 7-8.

The Court should order the handling of this information in accordance with Dr. Bütz's longstanding policies, which are not only in compliance with the aforementioned ethics rules, but also are supported by Kaufmann's (2009) and Morel's (2009) guidance on those matters. *See* Ex. 11, pp. 5-6 (July 17, 2023 letter from Dr. Bütz); *see also* WTNY's Proposed Memorandum, ¶ 11. Plaintiffs' request

for test raw data to be released to their counsel and retained expert witnesses is not a proper protocol and enjoys no known support in law or the practice of forensic psychology. *See* Ex. 11, pp. 5-6. Dr. Bütz and WTNY have agreed to provide the test raw data to Plaintiffs' expert, Dr. Bone, precisely because Plaintiffs have provided documentation establishing Dr. Bone as duly qualified to conduct psychological assessments and interpret the test raw data at issue. *See* Ex. 16, p. 1. However, they have not established their expert psychiatrist, Dr. Holmberg, is duly qualified. *See id.*

Plaintiffs also ask Dr. Bütz to provide a list of the tests conducted after they are administered. *See* Ex. 10, p. 2. Dr. Bütz agrees to provide Plaintiffs' counsel an account of the testing administered to each Plaintiff, including, at a minimum, the specific name and version of the test given, the time that each test started and stopped, and the time and duration of breaks in testing. Further, he will list the tests and describe his testing protocols in his IME reports, and he will be available for deposition testimony regarding the same. Plaintiffs' counsel will receive the requested testing information in that fashion.

**IV.    The Court Should Reserve Judgment as to any Potential Waiver of Attorney-Client Privilege During the Rule 35 Exams until a Dispute Arises and Counsel Should Follow the Procedure Provided by the Federal Rules of Evidence.**

Plaintiffs' counsel have proposed to automatically strike from the record any and all attorney-client privileged information disclosed during the exams. *See* Ex. 2,

p. 5; Ex. 10, p. 2. Alternatively, they have requested the presence—even if only remotely—of counsel during the exams so counsel can intervene and coach Plaintiffs to not disclose potentially privileged information. *See* Ex. 2, p. 5.

This is a highly unusual request for which there is no apparent authority. It runs contrary to the principle that the attorney-client privilege "is held by the client and may be waived by voluntary disclosure." *Am. Zurich Ins. Co. v. Mont. Thirteenth Jud. Dist.*, 2012 MT 61, ¶ 20, 364 Mont. 299, 280 P.3d 240 (citing Mont. R. Evid. 503; *State v. Tadewaldt*, 2010 MT 177, ¶ 17, 357 Mont. 208, 237 P.3d 1273).

Further, Ninth Circuit courts expressly forbid the attendance at Rule 35 exams of a plaintiff's representatives, including a plaintiff's counsel or physician, precisely because the exam should be divested of any adversarial character. *See, e.g.*, *Copenhaver*, 2021 WL 3171787, at *6 (D. Mont. 2021) (citing collection of cases); *see also McDaniel v. Toledo, Peoria and Western R. Co.*, 97 F.R.D. 525, 526 (C.D. Ill. 1983). Plaintiffs' only argument that counsel should be allowed at the exams—or any disclosure of privileged information should be automatically stricken—is that "Dr. Bütz is a retained representative of the Defendants in an adversarial proceeding[.]" Ex. 10, p. 2; *see also* Ex. 2, p. 5. This specific argument has been rejected by federal courts. *See, e.g., Galieti v. State Farm Mut. Auto. Ins. Co.*, 154 F.R.D. 262, 265 (D. Colo. 1994).

In an effort to address Plaintiffs' concern, WTNY and Dr. Bütz have proposed that Dr. Bütz, during the subject mental examinations, will not ask any questions intended to elicit responses from Plaintiffs concerning privileged communications with their counsel, law firm staff, or consultants. *See* WTNY's Proposed Memorandum, ¶ 13. Additionally, WTNY proposes that, in the event of an inadvertent disclosure of attorney-client privileged information within the meaning of Rule 502(b), Fed. R. Evid., Plaintiffs' counsel shall follow the procedure set forth in subsection (3) of that Rule. In other words, the parties should be allowed to reserve their right to argue for, or against, the waiver of attorney-client privileged information: the Rules of Evidence and Procedure, along with governing case law, provide the proper procedure for resolving such a dispute, should one arise.

WTNY's and Dr. Bütz's proposal is consistent with the law of privilege and common sense. Plaintiffs' proposal seeks an unfair advantage by allowing information to be stricken from the record if Plaintiffs fail to abide by their counsel's direction, or else choose to waive the privilege that is theirs to waive. Further, Plaintiffs' counsel's proposal for an automatic striking of information disclosed provides no mechanism for determining what constitutes a voluntary versus inadvertent waiver. The mechanism that should be used, of course, is judicial determination and application of the Federal Rules of Evidence and Procedure in the event of a dispute.

In total, WTNY requests the Court order the mental examinations of Plaintiffs Tracy Caekaert and Camilla Mapley in accordance with the time, place, manner, conditions, and scope as argued herein.

## CONCLUSION

For the reasons discussed above, WTNY requests the Court order the Rule 35, Fed. R. Civ. P., mental examinations of Tracy Caekaert and Camilla Mapley as stated herein.

DATED this 27th day of September, 2023.

By:   /s/ Brett C. Jensen
        Brett C. Jensen
        Michael P. Sarabia
        BROWN LAW FIRM, P.C.
        *Attorneys for Defendant Watchtower*
        *Bible and Tract Society of New York,*
        *Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(d)(2)(E), the undersigned hereby certifies this brief complies with L.R. 7.1(d)(2)(A). According to the word-processing unit used to prepare this brief, the word count is **4,514** words excluding caption and certificates of service and compliance.

DATED this 27th day of September, 2023.

By:   /s/ Brett C. Jensen
          Brett C. Jensen
          Michael P. Sarabia
          BROWN LAW FIRM, P.C.
          *Attorneys for Defendants Watchtower*
          *Bible and Tract Society of New York,*
          *Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on September 27, 2023, a copy of the foregoing was served on the following person(s):

1. U.S. District Court, Billings Division

2. Robert L. Stepans/Ryan R. Shaffer/James C. Murnion
 MEYER, SHAFFER & STEPANS, PLLP
 430 Ryman Street
 Missoula, MT 59802

3. Matthew L. Merrill (appearing *pro hac vice*)
 MERRILL LAW, LLC
 1863 Wazee Street, Suite 3A
 Denver, CO 80202

4. Gerry P. Fagan/Christopher T. Sweeney/Jordan W. FitzGerald
 MOULTON BELLINGHAM PC
 P.O. Box 2559
 Billings, MT 59103-2559

5. Bruce G. Mapley Sr.
 3905 Caylan Cove
 Birmingham, AL 35215

by the following means:

| 1-4 | CM/ECF | | Fax |
|---|---|---|---|
| | Hand Delivery | | E-Mail |
| 5 | U.S. Mail | | Overnight Delivery Services |

By:   /s/ Brett C. Jensen
    Brett C. Jensen
    Michael P. Sarabia
    BROWN LAW FIRM, P.C.
    *Attorneys for Defendant Watchtower*
    *Bible and Tract Society of New York,*
    *Inc.*