<u>Memorandum of Understanding</u>
<u>Regarding Defense Medical Examinations in the Pending Causes:</u>

*Tracy Caekaert and Camillia Mapley v. Watchtower Bible and Tract Society of*
*New York, Inc., et al.* USDC Billings Division 20-CV-52-SPW-TJC
AND
*Ariane Rowland and Jamie Schulze v. Watchtower Bible and Tract Society of New*
*York, Inc., et al.* USDC Billings Division 20-CV-59-SPW-TJC

**RECITALS**

Defendants Watchtower Bible and Tract Society of New York, Inc.
(hereinafter "WTNY"), and Watch Tower Bible and Tract Society of Pennsylvania
(hereinafter "WTPA") (hereinafter collectively "Defendants"), have retained
Michael Butz, Ph.D ("Dr. Butz") to examine Plaintiffs Tracy Caekaert, Camillia
Mapley, Ariane Rowland, and Jamie Schulze (hereinafter collectively "Plaintiffs")
pursuant to Rule 35, Fed. R. Civ. P., who Defendants expect will assist the triers of
fact in determining the existence, nature, and extent of the psychological
conditions Plaintiffs have placed at issue in the above causes of action by claiming
injuries and damages secondary to various instances of childhood sexual abuse.

The parties stipulate as a threshold matter that Dr. Bütz is a suitably licensed
and certified examiner to conduct the subject mental examinations within the
meaning of Rule 35(a)(1). The parties further stipulate as a threshold matter that
there is "good cause" within the meaning of Rule 35(a)(2)(A), Fed. R. Civ. P., for
the subject mental examinations to occur. Notwithstanding the foregoing
stipulations, Plaintiffs reserve the right to challenge any and all aspects of Dr.
Bütz's examinations, testing, opinions, reports, and testimony in later briefing or at
trial.

The parties have conferred and reached agreement on the terms and
conditions set forth in **Section A** of this Memorandum of Understanding ("MOU").
Areas of disagreement are set forth in **Section B** of the MOU and shall be litigated
by submission of separate motion(s) to the District Court.

In the event of any conflict between (1) the terms, conditions, or
requirements of this MOU and (2) any form Dr. Butz requires Plaintiffs to sign, the
parties agree that the terms of the MOU shall control and be binding.

Page 1 of 6 – Memorandum of Understanding

**EXHIBIT**

2

## SECTION A

Pursuant to Rule 35(a)(2)(B), Fed. R. Civ. P., the parties stipulate that the mental examinations of Plaintiffs Ariane Rowland, Jamie Schulze, and Tracy Caekaert will occur subject to the following time, place, manner, conditions, and scope:

1. Ariane Rowland's mental examination will occur at a time to be agreed to by the parties at the offices of Dr. Bütz located at the Transwestern 1 Building, 404 North 31st Street, Suite 202 in Billings, Montana.

2. Jamie Schulze's mental examination will occur at a time to be agreed to by the parties at the offices of Dr. Bütz located at the Transwestern 1 Building, 404 North 31st Street, Suite 202 in Billings, Montana.

3. If Tracy Caekaert is healthy enough to travel her mental examination will occur at a time to be agreed to by the parties at the offices of Dr. Butz located at the Transwestern 1 Building, 404 North 31st Strett, Suite 202 in Billings, MT. If Tracy Caekaert is not healthy enough to travel, her mental examination will occur at a time and place agreed by the parties in Littlerock, Arkansas. Dr. Bütz has specifically agreed to become appropriately licensed and certified to conduct Ms. Caekaert's mental examination within the state of Arkansas, if necessary, as part of this agreement.

4. As to each of the subject mental examinations, the manner, conditions, and scope have been set forth in Dr. Bütz's letters dated April 25, 2023, and May 26, 2023, which are attached hereto as Exhibits XX and XX and are incorporated herein by reference. Dr. Bütz has also provided a list of general categories of testing in his letter dated July 17, 2023, which is attached hereto as Exhibit XX and is incorporated herein by reference. The parties generally understand that the scope of the subject examinations will be to determine the existence, nature, and extent of the psychological conditions Plaintiffs have placed at issue in the above causes of action by claiming injuries and damages secondary to various instances of childhood sexual abuse.

> **Commented [RS1]:** We need to know if he is proposing neuropsychological testing.

5. Dr. Bütz agrees to keep and provide Plaintiffs' counsel an account of the testing administered to each Plaintiff. The account shall include, at a minimum, the specific name and version of the test given, the time that

Page 2 of 6 – Memorandum of Understanding

the administration of each test started and stopped, and the time and duration of breaks in testing. Dr. Bütz will not be required to time stamp any recording as part of the assessment process.

6. As to recordation, the parties agree that Dr. Butz shall audio record from the moment an examinee begins interacting with Dr. Bütz until the conclusion of the history and mental status interview portions of the examinations. No party will be authorized to send a representative to attend any portion of the examinations, nor will an audio recording be made of the testing portions of the examinations. The subject recordings will be automatically subject to the Stipulated Protective Orders (Doc. 110-1 in Caekaert/Mapley; Doc. 99-1 in Rowland/Schulze) and a copy of the audio recording will be provided to Plaintiffs' counsel within twenty (20) days of the exam. Prior to the commencement of each exam Plaintiffs shall execute Dr. Bütz's Authorization for Audio/Visual Recording (see attached Exhibit XX).

7. The reports generated by Dr. Bütz will be automatically subject to the Stipulated Protective Orders (Doc. 110-1 in Caekaert/Mapley; Doc. 99-1 in Rowland/Schulze) and provided to Plaintiffs' counsel, along with like reports of all earlier examinations.

8. The raw test data generated by Dr. Butz will be automatically subject to the Stipulated Protective Orders (Doc. 110-1 in Caekaert/Mapley; Doc. 99-1 in Rowland/Schulze) and provided to Plaintiffs' expert, Dr. Jonathon Bone.

## SECTION B

After conferral the parties were unable to reach agreement on the issues set forth below that will either be resolved through additional conferral or submitted by separate motion(s) to the District Court for resolution. Such disputes notwithstanding, the parties stipulate the subject mental examinations of Plaintiffs Caekaert, Schulze, and Rowland may be scheduled and proceed while the parties either resolve or litigate the remaining disputes.

1. The parties disagree about whether the costs of conducting Plaintiff Camilia Mapley's mental examination in person is justified.

     a. Defendants and Dr. Bütz contend the subject mental examinations must occur in person within the United States District Court for the District of Montana, Billings Division, where Plaintiffs filed suit. To the extent any of the subject mental examinations cannot occur within the Billings Division due to circumstances personal to the Plaintiff(s), Defendants and Dr. Bütz contend Plaintiffs must bear all additional costs associated with Dr. Bütz's travel outside of the Billings Division to complete the subject mental evaluations in person. This includes the costs associated with Dr. Bütz obtaining the required certification(s) to conduct the subject mental examination(s) within the venue(s) at issue, all travel costs, and Dr. Bütz's time in transit at his regular rate of pay.

     b. Plaintiff Camilia Mapley resides in Australia and contends that any benefit gained from an in-person exam, as opposed to an exam conducted remotely as Plaintiffs' experts did, is not justified by the financial and logistical costs. Nevertheless, Plaintiffs offered to cover Dr. Butz's basic airfare, hotel, and ground transport to Australia to conduct Ms. Mapley's exam in person. However, after considering Dr. Butz's various travel demands, including a business class ticket, payment of professional fees for the days he was travelling, and the cost of becoming licensed in Australia, the minimum costs of an in-person examination were at least $23,000.00. Therefore, Ms. Mapley contends her exam should occur via remote means.

2. The parties disagree about whether Plaintiffs' counsel and expert witness, Dr. Trent Holmberg, shall be permitted to view and discuss Dr. Bütz's raw test data for the purpose of direct and cross examination (both deposition and trial).

     a. Defendants and Dr. Butz contend that only Dr. Bone is entitled to view, access, and discuss the raw test data and that Plaintiffs' counsel and Dr. Holmberg shall not be permitted to view, access, and discuss the raw test data.

     b. Plaintiffs contend that if Dr. Butz is going to offer testimony under Fed. R. Evid. 701-705, he is required to produce his raw test data under Fed. R. Civ. Pro. 26 so that it may be used and referred to by

Plaintiffs' counsel during direct and cross examination as deemed necessary by Plaintiffs' counsel.

3. The parties disagree about how to handle the potential disclosure of attorney-client privilege communications during Dr. Butz's mental examinations:

   a. Defendants and Dr. Butz agree that Dr. Bütz will not ask any questions during the subject mental examinations intended to elicit responses from Plaintiffs concerning privileged communications with their counsel, law firm staff, or consultants. Defendants further contend that, in the event of an inadvertent disclosure of attorney-client privileged information within the meaning of Rule 502(b), Fed. R. Evid., Plaintiffs' counsel shall follow the procedure set forth in subsection (3) and promptly meet and confer with counsel for Defendants.

   b. Plaintiffs contend that Dr. Butz has been retained as an agent of the Defendants and intends to ask Plaintiffs questions on behalf of the Defendants, including questions that could elicit the inadvertent disclosure of attorney-client privileged information.  In order to prevent the inadvertent disclosure of such privileged information, Plaintiffs proposed either: (a) permitting a lawyer for Plaintiffs to listen remotely to the subject interviews so that they could intervene and prevent such disclosure; or (b) striking from the record any attorney-client privileged information disclosed during the exams.

APPROVED BY:

_____
Ryan R. Shaffer
MEYER SHAFFER & STEPANS PLLP
*Attorneys for Plaintiffs*

_____
Brett C. Jensen
BROWN LAW FIRM, P.C.
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

Page 5 of 6 – Memorandum of Understanding

_____
Christopher T. Sweeney
MOULTON BELLINGHAM, P.C.
*Attorneys for Defendant Watch Tower Bible and Tract Society of Pennsylvania*

_____
Michael R. Bütz, Ph.D.
ASPEN PRACTICE, P.C.
*Independent Medical Evaluator*

Page 6 of 6 – Memorandum of Understanding

| | |
|---|---|
| **From:** | Jessica Yuhas |
| **To:** | Jon Wilson; Brett Jensen; Michael Sarabia; Joel Taylor (jtaylor@mmt-law.com |
| **Cc:** | Ryan Shaffer; Rob Stepans; James Murnion; Katy Gannon; Matthew Merrill; Barbara Bessey; Sylvia Basnett; Vivian Smith; Jared Brannan |
| **Subject:** | RE: Letter to WTNY re WTNY003968 |
| **Date:** | Wednesday, August 30, 2023 3:53:37 PM |
| **Attachments:** | 2023-08-30 Ltr. to WTNY re WTNY003968.pdf |

Counsel,

Attached please find our letter of today's date.  This will follow via U.S. Mail.

Thank you,

Jessica Yuhas
Paralegal



Meyer, Shaffer & Stepans, PLLP

*Montana Office:*
430 Ryman St.
Missoula, MT  59802
Tel: 406-543-6929
Fax: 406-721-1799

*Wyoming Office:*
3490 Clubhouse Drive, Suite 104
Wilson, WY 83014
Tel: 307-734-9544
Fax: 307-733-3449

The information contained in this email is confidential and privileged. If you are not the intended recipient, please ignore and delete this message and inform the sender of the mistake. This email may be subject to the attorney-client privilege and attorney work product doctrine. If you are not the intended recipient, please ignore and delete this message and inform the sender of the mistake.