

Meyer, Shaffer & Stepans, PLLP

RECEIVED

JUL - 6 2023

**Ryan Shaffer** | ryan@mss-lawfirm.com
**Robert L. Stepans** | rob@mss-lawfirm.com
**James Murnion** | james@mss-lawfirm.com
**Katy Gannon** | katy@mss-lawfirm.com

June 30, 2023

<u>**Via Email and U.S. Mail**</u>

Jon A. Wilson
Brett C. Jensen
Michael P. Sarabia
BROWN LAW FIRM, P.C.
PO Drawer 849
Billings, MT  59103
jwilson@brownfirm.com
bjensen@brownfirm.com
msarabia@brownfirm.com

Joel M. Taylor, Esq. *pro hac vice*
Miller McNamara & Taylor LLP
100 South Bedford Road, Suite 340
Mount Kisco, NY  10549
jtaylor@mmt-law.com

Christopher T. Sweeney
Gerry P. Fagan
Jordan W. FitzGerald
Moulton Bellingham
27 North 27th Street, Suite 1900
P.O. Box 2559
Billings, MT  59103
christopher.sweeney@moultonbellingham.com
gerry.fagan@moultonbellingham.com
jordan.fitzgerald@moultonbellingham.com

Re: Memorandum of Agreement Regarding Independent Medical Examinations
*Caekaert & Mapley v. Watchtower Bible and Tract Society of New York, Inc., et al.*
*Rowland & Schulze v. Watchtower Bible and Tract Society of New York, Inc., et al.*

Dear Brett,

This letter is in response to your 6/23/2023 email containing your proposed draft of the Memorandum of Agreement Regarding Independent Medical Examinations of Plaintiffs.

1. Ms. Mapley resides near Mansfield, Victoria, Australia. There are hotels and conference rooms available to book there. I am not sure what other amenities Dr. Bütz will require in order for her evaluation to occur, however, if you identify what those might be I can verify that they are available.

2. Mrs. Caekaert lives in Searcy, AR. There should be sufficient amenities in the area for Dr. Bütz to stay and conduct his examinations.

Below, I have identified areas where further clarification is requested. The numbers correspond to the paragraph numbers in your draft MOA:

#3. Mrs. Caekaert's examination will either take place in Searcy, AR, or at Dr. Bütz 's office in Billings, MT if she is able to travel by the time her examination is to be conducted.

**EXHIBIT**

**10**

#5. We would like clarification on what costs are being contemplated as "out of pocket costs associated with the examinations." We understand reasonable travel expenses are included, such as airfare, ground transportation, and accommodations. However, we do not know what is being contemplated beyond that. Please provide a general idea of what you are referring to.

#6. As it pertains to the manner and scope of the examinations, we are requesting identification of the broad categories of tests that shall be given to the Plaintiffs, i.e., broad measures of personality function, validity testing, etc. To be clear, we are not asking for Dr. Bütz to provide us with a list of the actual tests that he will give, just the categories of tests.

#7. Plaintiffs request an addition to the MOA requiring Dr. Bütz to release the test raw data to Plaintiffs' retained experts. Additionally, we would like an agreement that after the tests have been administered, we will receive a list of the specific tests administered to include the version, the start and stop times of all tests, and indications of whether breaks were taken during or in between tests and the length of the breaks.

#8. We cannot agree that no party will be authorized to send a representative to attend any portion of the subject mental examinations until we have an agreement that any unintentional / inadvertent disclosure of attorney-client privileged communications shall not constitute a waiver of such privilege and such unintentional / inadvertent disclosure shall be stricken and unavailable for use in the case. We obviously do not believe that this will become an issue. However, because Dr. Bütz is a retained representative of the Defendants in an adversarial proceeding, we believe that it is both appropriate and reasonable to account for the possibility of unintentional / inadvertent disclosures of privileged communication by Plaintiffs, who are not trained in understanding what may or may not be privileged. Furthermore, we ask that the recording be timestamped to identify when the interview is being conducted, and when breaks are being taken.

#9. We are not in agreement on this, and would like to understand your position as to why you believe that the unintentional / inadvertent disclosures of attorney-client privileged information by Plaintiffs in an exam conducted by the Defendants' retained representative is a legitimate source of evidence or information to be used in this case? This is an adversarial process and Plaintiffs are being interviewed by a retained representative of the Defendants. In any other similar situation where Plaintiffs are being questioned by the defendants or an agent of the defendants, Plaintiffs would have their counsel present to ensure that attorney-client privilege is not waived. We can see no reason as to why you would not agree that the unintentional and inadvertent disclosure of privileged information is off limits in this case, but perhaps further clarification of your reasoning would help us understand your position.

Sincerely,

MEYER, SHAFFER & STEPANS, PLLP

Victoria K. Gannon

# Memorandum of Agreement
## Regarding Independent Medical Examinations in the Pending Causes:

*Tracy Caekaert and Camillia Mapley v. Watchtower Bible and Tract Society of New York, Inc., et al.* USDC Billings Division 20-CV-52-SPW-TJC
AND
*Ariane Rowland and Jamie Schulze v. Watchtower Bible and Tract Society of New York, Inc., et al.* USDC Billings Division 20-CV-59-SPW-TJC

Defendants Watchtower Bible and Tract Society of New York, Inc., and Watch Tower Bible and Tract Society of Pennsylvania (hereinafter collectively "Defendants"), have requested that Plaintiffs Tracy Caekaert, Camillia Mapley, Ariane Rowland, and Jamie Schulze (hereinafter collectively "Plaintiffs") submit to Rule 35, Fed. R. Civ. P., mental examinations with Michael Bütz, Ph.D., who Defendants expect will assist the triers of fact in determining the existence, nature, and extent of the psychological conditions Plaintiffs have placed at issue in the above causes of action by claiming injuries and damages secondary to various instances of childhood sexual abuse.

The parties stipulate as a threshold matter that Dr. Bütz is a suitably licensed and certified examiner to conduct the subject mental examinations. The parties further stipulate as a threshold matter that there is "good cause" within the meaning of Rule 35(a)(2)(A), Fed. R. Civ. P., for the subject mental examinations to occur. Plaintiffs reserve the right to challenge Dr. Bütz as a witness and any part of his examination reports in later briefing or at trial. ~~However, this will not pertain to the matter of attorney-client privilege, which has been specifically addressed in #8 below.~~

Pursuant to Rule 35(a)(2)(B), Fed. R. Civ. P., the parties stipulate that the subject mental examinations will occur subject to the following time, place, manner, conditions, and scope:

1. Ariane Rowland's mental examination will occur at a time to be agreed to by the parties at the offices of Dr. Bütz located at the Transwestern 1 Building, 404 North 31st Street, Suite 202 in Billings, Montana.

2. Jamie Rowland's mental examination will occur at a time to be agreed to by the parties at the offices of Dr. Bütz located at the Transwestern 1 Building, 404 North 31st Street, Suite 202 in Billings, Montana.

3. Tracy Caekaert's mental examination will occur at a time to be agreed to by the parties at [location] in [town],Searcy, Arkansas, or at the offices of Dr. Butz located at the Transwestern 1 Building, 404 North 31st Street, Suite 202 in Billings, Montana, provided Mrs. Caekaert is healthy enough to travel. Dr. Bütz has specifically agreed to become appropriately licensed and certified to conduct Ms. Caekaert's mental examination within the state of Arkansas as part of this agreement.

4. Camillia Mapley's mental examination will occur at a time to be agreed to by the parties at [location] in [town],Mansfield, VIC, Australia. Dr. Bütz has specifically agreed to become appropriately licensed and certified to conduct Ms. Caekaert's mental examination in Australia as part of this agreement.

5. In consideration of Dr. Bütz becoming appropriately licensed and certified to conduct mental examinations in Arkansas and Australia, Plaintiffs have agreed to pay his travel costs and other out of pocket expenses which would include (list of reasonable expected expenses) associated with the mental examinations of Plaintiffs Tracy Caekaert and Camillia Mapley in advance based on Dr. Bütz's estimated travel cost. If costs exceed the estimate, a detailed invoice will be offered and if it is agreed that those costs are reasonable, and directly related to costs incurred in association with the mental examinations of Plaintiffs, those costs will be paid by Plaintiffs. -The parties shall work to resolve any dispute regarding the propriety of the reimbursement sought and if no resolution is reached shall submit the dispute to the Court. and it is agreed those costs will be paid by Plaintiffs upon receipt.

6. As to each of the subject mental examinations, the manner, conditions, and scope have been set forth in Dr. Bütz's letters dated April 25, 2023, and May 26, 2023, which are attached as Exhibits XX and XX, list of general categories of testing-respectively hereto and are incorporated herein by reference. The parties generally understand that the examinations and testing shall be tailored to the psychological history and symptoms exhibited and placed at issue by Plaintiffs' claims.  e scope of the subject examinations will be to determine the existence, nature, and extent of the psychological conditions Plaintiffs have placed

~~at issue in the above causes of action by claiming injuries and damages~~
~~secondary to various instances of childhood sexual abuse.~~

7. In the authorizations completed by the Plaintiffs' parties individually, the *Authorization for Forensic Psychological Assessment: Informed Consent & Fee Agreement*, attached as Exhibits XXX-XXX, specifically describes Dr. Bütz's long-held policy on the handling and management of test raw data and copywritten materials from test vendors. It is specifically expected that these policies will be honored.~~,~~ It is further agreed that all~~and that if~~ test raw data shall be~~is~~ released ~~it will only be~~ to a ~~psychologist with equally, or better, qualifications and in keeping what Kaufmann (2009) and separately Morel's (2009) guidance on these matters (see attached).~~ Plaintiffs for review by their attorneys and[2] retained experts ~~experts~~. Further, at no point will Dr. Bütz be requested to release copywritten forms for psychological instruments/tests as this would violate his user agreements with various instrument/test vendors.

~~7~~8. Dr. Butz agrees to keep and provide Plaintiffs' counsel an account of the testing administered to each Plaintiff. The account shall include, at a minimum, the specific name and version of the test given, the time that the administration of each test started and stopped, and the time and duration of breaks in testing. ~~Upon administration of the tests, a list of specific tests to include their specific names and versions will be provided to Plaintiffs' counsel. Furthermore, this list shall include start and stop times of each test, and indicate when breaks were taken, and the duration of said breaks.~~

~~8~~9. As to recordation, the parties agree that Dr. Butz shall audio record~~an audio recording will be made by Dr. Bütz of~~ all components of the exam except for the testing. ~~the history taking portion~~ *only* ~~of the subject mental examinations. No party will be authorized to send a representative to attend any portion of the subject mental examinations.~~ Such recording will be automatically subject to the Stipulated Protective Orders (Doc. 110-1 in Caekaert/Mapley; Doc. 99-1 in Rowland/Schulze). It is further agreed that recordation will be conducted in keeping with Dr. Bütz's Authorization for Audio/Visual Recording (see attached Exhibit XX).

~~9~~10. As to attorney-client privilege, the parties have agreed Dr. Bütz will not ask any questions during the subject mental examinations intended to

elicit responses from Plaintiffs concerning privileged communications with their counsel, law firm staff, or consultants. ~~Conversely,~~ Plaintiffs' counsel will instruct the Plainitffs ~~agree they will be prepared in advance pursuant to the instruction of their counsel~~ not to voluntarily divulge the contents of any such privileged communications. However, it is further acknowledged that for the purpose of the examinations Dr. Butz is a retained representative of the Defendants and the Plaintiffs are not trained in identifying questions that may elicit a privileged communication. Therefore, if a Plaintiff unintentionally or inadvertabtly discloses a ~~if~~ privileged communication during their exam, the Parties stipulate that the privilege shall be maintained and any such communications ~~s are unintentionally disclosed,~~ shall ~~those statements will~~ be stricken / redacted from the record of the exam. ~~from the record.~~

~~10.~~11. As to the expert reports to be generated by Dr. Bütz, such reports will be automatically subject to the Stipulated Protective Orders (Doc. 110-1 in Caekaert/Mapley; Doc. 99-1 in Rowland/Schulze).

APPROVED BY:

Ryan R. Shaffer
MEYER SHAFFER & STEPANS PLLP
*Attorneys for Plaintiffs*

Brett C. Jensen
BROWN LAW FIRM, P.C.
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

Christopher T. Sweeney
MOULTON BELLINGHAM, P.C.
*Attorneys for Defendant Watch Tower Bible and Tract Society of Pennsylvania*

Michael R. Bütz, Ph.D.
ASPEN PRACTICE, P.C.
*Independent Medical Evaluator*

Page 4 of 4 – Memorandum of Agreement