Ryan R. Shaffer
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT 59802
Tel: (406) 543-6929
Fax: (406) 721-1799
ryan@mss-lawfirm.com
*Attorney for Plaintiffs/Appellees*

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | No. 23-35329 |
| Plaintiffs – Appellees, | |
| vs. | D.C. No. CV-20-52-BLG-SPW U.S. District Court for Montana, Billings |
| WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, | |
| Defendant – Appellant, | **APPELEES' MOTION TO DISMISS FOR LACK OF APPELLATE JURISDICTION AND FOR SANCTIONS** |
| and | |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., BRUCE MAPLEY, Sr. | |
| Defendants, | |

COMES NOW, Plaintiffs/Appellees Tracy Caekaert and Camillia Mapley ("Mapley sisters"), by and through undersigned counsel, and hereby respectfully request the Court dismiss the above-captioned matter for lack of appellate jurisdiction. The Mapley sisters further requests sanctions in the form of attorneys'


EXHIBIT A

fees and costs pursuant to Rule 38 and the Court's inherent authority because this appeal is frivolous pursuant to *Stanley v. Woodford*, 449 F.3d 1060 (9th Cir. 2006) and *Cunningham v. Hamilton County, Ohio*, 527 U.S. 198 (1999). Appellant Philip Brumley, Esq.'s counsel was contacted regarding these motions and opposes them.

## BACKGROUND

During the 1970s and 80s, when they were still minors, the Mapley sisters were sexually molested by two local officials of the Jehovah's Witnesses religion in Hardin, Montana, including Bruce Mapley, Sr.. Pre-litigation investigation showed that two of the Jehovah's Witnesses' corporations, Defendant/Appellant Watch Tower Bible and Tract Society of Pennsylvania ("WTPA") and Defendant Watchtower Bible and Tract Society of New York, Inc. ("WTNY"), worked in concert to promulgate and enforce policies and procedures that effectively instructed local officials to keep child sex abuse secret and to permit known pedophiles to have continued access to their victims, including the Mapley sisters. Prefiling investigation showed that WTPA and WTNY, through their appointed, local officials in Hardin, MT (known as "elders" and "ministerial servants") and regionally (known as "travelling overseers") were on notice of at least some of the abuse but failed to act reasonably to prevent it. In particular, despite a mandatory reporting statute in Montana, the local elders followed WTPA's and WTNY's

2

policy of not reporting known child sex abuse to secular authorities. As such, the sexual abuse continued unhindered and unknown to law enforcement for years, giving rise to claims of negligence and negligence per se against WTPA and WTNY.

Instead of answering the Complaint, WTPA filed a Motion to Dismiss Pursuant to Rule 12(b)(2), Fed.R.Civ.P. ("WTPA's Motion to Dismiss"), arguing that the United States District Court for the District of Montana ("District Court") lacked personal jurisdiction over it. (District Court Clerk's Record (hereinafter "C.R."), Doc. 13). WTPA's Motion to Dismiss was supported by a single affidavit signed by its general counsel, Appellant Philip Brumley, Esq. (C.R., Doc. 14-1). Mr. Brumley generally asserted that WTPA had nothing to do with Montana and merely held copyrights and provided international humanitarian aid. *Id.*

In response, the Mapley sisters' counsel submitted to the District Court multiple documents created by WTPA/WTNY indicating that Mr. Brumley's representations to the District Court about WTPA were not accurate. (C.R., Doc. 21-1; Doc. 21-2; Doc. 21-3; Doc. 21-4). The Mapley sisters accordingly requested the opportunity to conduct jurisdictional discovery. (C.R., Doc. 21 at 16–18).

WTPA opposed the Mapley sisters' request for jurisdictional discovery and implored the District Court to accept Mr. Brumley's statements as true. (C.R., Doc. 25 at 13, 14). WTPA simultaneously filed a second affidavit from Mr.

3

Brumley, attempting to convince the District Court that the documents contradicting his first affidavit should be ignored and opposing the Mapley sisters' request to conduct jurisdictional discovery. (C.R., Doc. 26).

After WTPA replied, but before the District Court ruled on WTPA's Motion to Dismiss, the Mapley sisters' counsel obtained additional documentary evidence—from sources other than WTPA, WTNY, or their lawyers—further indicating that Mr. Brumley had misrepresented WTPA's activities to the District Court. (C.R., Doc. 29-1; Doc. 29-2; Doc. 29-3; Doc. 29-4; Doc. 29-5). The Mapley sisters accordingly sought to supplement the record with the same. (C.R., Doc. 28; Doc. 29). WTPA opposed this Motion. (C.R., Doc. 31).

The District Court agreed that Mr. Brumley's representations of WTPA's activities in Montana appeared to be incomplete and granted jurisdictional discovery. (C.R., Doc. 32). Jurisdictional discovery dragged on for 17 months because of several contentious discovery disputes that necessitated multiple motions to compel. (C.R., Doc. 56; Doc. 58). The District Court granted the motion to compel against WTPA and WTNY in its entirety, noting that their answers to written discovery were "vague to the point of non-responsive" and awarded the Mapley sisters their costs and fees because "a significant number of [Defendants' objections] were not substantially justified." (C.R., Doc. 85 at 11, 18; Doc. 93).

The Mapley sisters' counsel obtained indisputable documentation that Mr. Brumley's representations to the District Court, which were made for the purpose of getting his client dismissed from the case, were highly misleading. Accordingly, the Mapley sisters' counsel sent WTPA a letter in August of 2021 identifying documents and information contradicting Mr. Brumley's representations to the District Court and requesting that the Motion to Dismiss be withdrawn before more time and effort was wasted. (C.R., Doc. 102-3). WTPA refused to withdraw its motion, and the Mapley sisters' lawyers spent hundreds of hours over the next several months marshalling all the evidence contradicting Mr. Brumley's misrepresentations and briefing the same. (*See* C.R., Doc. 144; Doc. 144-2; Doc. 144-3; Doc. 144-4; Doc. 144-5; Doc. 144-6). In October of 2021, and pursuant to Fed. R. Civ. Pro. 11, the Mapley sisters' counsel again requested WTPA withdraw its motion by serving a proposed Rule 11 Motion. (C.R., Doc. 102 at 7; C.R., Doc. 106-1). Again, WTPA refused to do so. Then, after forcing the Mapley sisters' counsel to spend 17 months litigating Mr. Brumley's misrepresentations, WTPA chose to withdraw its Motion to Dismiss at the last minute. (C.R., Doc. 95; 96).

///

///

///

Thus, in summation:

- WTPA's general counsel Mr. Brumley filed a misleading and incomplete affidavit for the purposes of getting WTPA dismissed from the case;

- When confronted with contradictory evidence, Mr. Brumley urged the District Court to disregard it;

- WTPA objected to the Mapley sisters conducting jurisdictional discovery into the veracity of Mr. Brumley's representations, arguing Mr. Brumley's representations alone should decide the issue;

- WTPA objected to the Mapley sisters supplementing the record with additional evidence contradicting Mr. Brumley's mischaracterizations;

- During discovery, WTPA, WTNY, and the local congregation in Hardin obstructed discovery for months, causing further delay, two granted motions to compel, and sanctions against WTPA/WTNY; and

- Despite being confronted with overwhelming evidence that Mr. Brumley's representations to the District Court, and its Motion to Dismiss, were not supported by evidence, and were in fact materially misleading, WTPA refused to withdraw its Motion to Dismiss.

Based on the above dilatory tactics, *inter alia*, the Mapley sisters requested the District Court issue sanctions against Mr. Brumley because of his conduct on behalf of his client, WTPA. (C.R., Doc. 101). The District Court agreed that

6

sanctions were appropriate, finding "at minimum, a reckless disregard for providing an accurate and truthful accounting of WTPA's role." (C.R., Doc. 135 at 13). For needlessly "multiplying the proceedings for 17 months through jurisdictional discovery and motions to compel," the District Court ultimately awarded $154,448.11 in fees and costs pursuant to 28 U.S.C. § 1927. (C.R., Doc. 219).

The District Court specifically noted that "an interlocutory appeal would fail because an order of sanctions is not an immediately appealable issue." (C.R., Doc. 219 at 20 (citing *Beck v. Test Masters Edu. Servs.*, Inc., 937 F. Supp. 2d 85, 87 (D.D.C. 2013)). Nevertheless, and despite blackletter Ninth Circuit law stating § 1927 sanctions are not immediately appealable, Mr. Brumley now appeals the § 1927 sanctions in continuation of WTPA's vexatious litigation tactics.

## APPLICABLE LAW

"Section 1291 of the Judicial Code generally vests courts of appeals with jurisdiction over appeals from 'final decisions' of the district courts." *Cunningham*, 527 U.S. at 203. The Supreme Court of the United States has repeatedly interpreted Section 1291 "to mean that an appeal ordinarily will not lie until after final judgment has been entered in a case." *Id.* at 203 (citing cases). This "final judgment rule" has several purposes:

> "It emphasizes the deference that appellate courts owe to the trial judge as the individual initially called upon to decide the many

7

questions of law and fact that occur in the course of a trial. Permitting piecemeal appeals would undermine the independence of the district judge, as well as the special role that individual plays in our judicial system. In addition, <u>the rule is in accordance with the sensible policy of avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals</u> from the various rulings to which a litigation may give rise, from its initiation to entry of judgment. The rule also serves the important purpose of promoting efficient judicial administration."

*Id.* (emphasis added) (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981)). As such, ordinarily a decision is not final, and thus not appealable, unless it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Id.* (internal quotation marks omitted (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521–522, (1988)).

While a small category of orders that do not terminate the litigation can be appealable, the *Cunningham* Court unanimously found that Rule 37 sanctions against an attorney fail to fall into that category and are therefore not immediately appealable. *Id.* at 209–210. After *Cunningham* was decided, this Court had the opportunity to decide whether the prohibition on immediately appealing Rule 37 sanctions applied equally to attorney sanctions issued pursuant to § 1927. *Stanley*, 449 F.3d at 1063. The *Stanley* Court ruled, with unmistakable clarity, that § 1927 sanctions are not immediately appealable. *Id.* at 1065.

Important to the issue here: "[A]n attorney's continued participation in a case does not affect whether a sanctions order is 'final' for purposes of § 1291" because

8

"the efficiency interests served by limiting immediate appeals far outweigh any nominal monitoring costs borne by attorneys." *Stanley*, 449 F.3d at 1063 (quoting *Cunningham*, 527 U.S. at 209).

## ARGUMENT

Resolution of this appeal and instant motion is straightforward: federal courts of appeal lack jurisdiction to decide appeals of § 1927 sanctions before final judgment; no final judgment has been issued[1]; as such, this Court lacks jurisdiction to review the § 1927 sanctions. *Cunningham*, 527 U.S. at 209–210; *Stanley*, 449 F.3d at 1063. Mr. Brumley and his counsel of course know this, as not only did the Mapley sisters' counsel inform them of *Stanley*[2], but the District Court also told them the order was not immediately appealable. (C.R., Doc. 219 at 20 (citing *Beck v.*, 937 F. Supp. 2d at 87 (relying on *Cunningham*, inter alia, to determine an interlocutory appeal from sanctions is "frivolous"). Mr. Brumley's appeal is exactly the kind of continued "delaying and harassing tactics" that the *Cunningham* Court sought to protect courts and litigants from by ruling attorney sanctions are not immediately appealable. 527 U.S. at 208.

---

[1] The case below is still in the discovery phase, with trial set in 2024. (C.R., Doc. 205).
[2] The Mapley sisters' counsel informed Mr. Brumley's counsel of *Stanley* in an effort to avoid the wasted time and effort on this appeal.

9

Mr. Brumley may argue that his status as WTPA's general counsel, and not litigation counsel, somehow changes the analysis under § 1927. However, the Court need look no further than *Cunningham* and *Stanley*: "[A]n attorney's continued participation in a case does not affect whether a sanctions order is 'final' for purposes of § 1291" because "the efficiency interests served by limiting immediate appeals far outweigh any nominal monitoring costs borne by attorneys." *Stanley*, 449 F.3d at 1063 (quoting *Cunningham*, 527 U.S. at 209). Moreover, unlike a civil contempt order, "which is 'designed to force the contemnor to comply with an order of the court,' a [] sanctions order 'lacks any prospective effect and is not designed to compel compliance.'" *Id.* (quoting *Cunningham*, 527 U.S. at 207). Indeed, "[a]n attorney sanctioned for causing delay or costs to other litigants from inappropriate filings 'by and large suffers no inordinate injury from a deferral of appellate consideration of the sanction.'" *Id.* (quoting *Cunningham*, 527 U.S. at 208). As such, the *Cunningham* Court and the *Stanley* Court rightfully recognized that if an attorney could participate in a case, harass and delay until sanctioned, and then cease participation to trigger an appeal, the very purposes of Rule 37 and § 1927 of avoiding delay and harassment would be undermined. *Id.* at 1064 (9th Cir. 2006); *Cunningham*, 527 U.S. at 208).

Here, Mr. Brumley has been WTPA's general counsel for 35 years. WTPA's Resp. to Plfs.' Interrog. No. 4 (attached as **Exhibit A**). He is not a

disinterested third-party witness who was untruthful with the District Court; rather, he is WTPA's lawyer, and he chose to insert himself into this case by submitting statements to the District Court that were, "at minimum, a reckless disregard for providing an accurate and truthful accounting of WTPA's role." (C.R., Doc. 135 at 13). To be sure, Mr. Brumley only signed the affidavits that ended up wasting 17 months of the Mapley sisters' time for the purpose of serving his client, WTPA, with the hope that the District Court would dismiss his client from the case without any inquiry into the veracity of his statements.

In sum, there is no meaningful difference between litigation counsel engaging in sanctionable conduct and a party's in-house or general counsel doing the same on behalf of his or her client. Thus, the reasoning in *Cunningham* and *Stanley* applies equally to a party's in-house or general counsel who chooses to participate in litigation with sanctionable conduct as it does to their attorneys of record who do the same. As the *Cunningham* and *Stanley* courts rightfully recognized, if an attorney could participate in a case with sanctionable conduct, and then cease participation to trigger an appeal, the very purposes of Rule 37 and § 1927 of avoiding delay and harassment would be undermined. *Id.* at 1064 (9th Cir. 2006); *Cunningham*, 527 U.S. at 208).

While the *Cunningham* Court left open the possibility that some sanctions orders could be completely divorced from the merits of the case and thus

11

potentially subject to the collateral order doctrine, that is not the case here. *See* 527 U.S. at 206 ("Perhaps not every discovery sanction will be inextricably intertwined with the merits, but we have consistently eschewed a case-by-case approach to deciding whether an order is sufficiently collateral."). Mr. Brumley's misleading statements to the District Court about his client's case-linked activities in Montana go directly to the merits of Plaintiffs' case. For instance, some of the activities Brumley failed to disclose included sending corporate agents known as "travelling overseers" to Montana and printing and publishing policy and procedure manuals that local officials known as "elders" in Montana were required to follow. (*See generally* C.R., Doc. 96). These are some of the very activities that are alleged to form the basis of the Mapley sisters' negligence claims against WTPA and are therefore "inextricably intertwined with the merits." *Cunningham*, 527 U.S. at 206).

## REQUEST FOR RULE 38 SANCTIONS

"If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Fed. R. App. P. 38. "The purpose of Rule 38 is to discourage litigants from wasting the time and resources of both their opponents and the judicial system with arguments that are without merit." *Transnatl. Corp. v. Rodio & Ursillo, Ltd.*, 920 F.2d 1066,

12

1072 (1st Cir. 1990) (citing cases). Federal appellate courts can issue sanctions for frivolous litigation tactics even if they have no jurisdiction to decide the merits of the appeal: "The fact that we have no jurisdiction to consider the merits of this appeal does not preclude us from imposing sanctions under Fed.R.App.P. 38 or the court's inherent authority. Our inherent jurisdiction to condemn and punish the abusive conduct of litigants and their attorneys who appear before us is separate and apart from our jurisdiction to adjudicate the merits of their claims." *Trohimovich v. C.I.R.*, 776 F.2d 873, 875 (9th Cir. 1985) (internal citations omitted) (citing cases).

This appeal is frivolous because the blackletter law under *Cunningham* and *Stanley* renders § 1927 sanctions unappealable until final judgment. Mr. Brumley and his counsel were told this by both the Mapley sisters' counsel and the District Court but are choosing to proceed anyway. As such, the Mapley sisters hereby expressly request the Court grant them attorneys' fees and costs for the wasted time on this frivolous appeal.

## CONCLUSION

This Court respectfully lacks jurisdiction to decide Mr. Brumley's appeal of the District Court's § 1927 sanctions. Mr. Brumley and his lawyers know this but are intent on causing additional distractions and vexatious collateral litigation. The Court should accordingly dismiss this appeal and order Mr. Brumley, his lawyers,

13

or both, to pay the Mapley sisters' attorneys' fees and costs expended litigating this frivolous appeal.

DATED this 26th day of May, 2023.

By: /s/ Ryan Shaffer
Ryan R. Shaffer
MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs/Appellees*

14

## CERTIFICATE OF COMPLIANCE

I hereby certify that the forgoing **APPELEES' MOTION TO DISMISS FOR LACK OF APPELLATE JURISDICTION AND FOR SANCTIONS** complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(a)(A) because it contains 2,795 words and the typeface and type style requirements of Federal Rules of Appellate Procedure 27(d)(a)(E) because this brief has been prepared in a proportionally spaced typeface using 14-point Times New Roman typeface.

By: /s/ Ryan Shaffer
Ryan R. Shaffer

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of May, 2023, the forgoing **APPELEES' MOTION TO DISMISS FOR LACK OF APPELLATE JURISDICTION AND FOR SANCTIONS** was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

By: /s/ Ryan Shaffer
Ryan R. Shaffer