Robert L. Stepans
Ryan R. Shaffer
James C. Murnion
Victoria K.M. Gannon
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT  59802
Tel: (406) 543-6929
Fax: (406) 721-1799
rob@mss-lawfirm.com
ryan@mss-lawfirm.com
james@mss-lawfirm.com
katy@mss-lawfirm.com

Matthew L. Merrill (appearing *pro hac vice*)
Merrill Law, LLC
6631 Mariposa Court
Denver, CO  80221
Tel: (303) 947-4453
matthew@merrillwaterlaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, <br><br> Plaintiffs, <br><br> vs. <br><br> WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA., <br><br> Defendants, | Case No. CV-20-52-BLG-SPW <br><br> **PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANT WTNY'S MOTION FOR ORDER DIRECTING RULE 35, FED. R. CIV. P., EXAMS (DOC. 266)** |

Plaintiffs Camillia Mapley and Tracy Caekaert respond in opposition to

Defendant Watchtower Bible and Tract Society of New York's ("WTNY") Motion

for Order Directing Rule 35, Fed. R. Civ. P., Exams ("Motion").  (ECF No. 266).

## SUMMARY OF PLAINTIFFS' POSITION

The primary obstacle to the examinations sought by WTNY is its retained examiner, Dr. Bütz:

➢ Despite applicable rules and multiple courts telling him that he has an obligation to produce the raw test data underlying his opinions, he will not agree to do so;

➢ He insists that the Plaintiffs sign an inappropriate authorization form that contradicts applicable federal rules of civil procedure, misrepresents his role in the case, and requires the Plaintiffs to personally pay fees that the Defendants are paying him; and

➢ He will not disclose even the general categories of testing he intends to conduct, including whether he intends to subject Plaintiffs to neuropsychological testing.

Additionally, when it comes to Camillia Mapley's exam, rather than agreeing to conduct her exam remotely, as Plaintiffs' experts did, Dr. Bütz is insisting on an unreasonably expensive and burdensome in-person exam that requires international travel to and from Australia that will have little or no impact on the scientific validity of the results.

In the interest of trying to efficiently complete the requested exams, Plaintiffs' counsel made significant concessions, including agreeing to pay for all

necessary travel to complete the exam of Tracy Caekaert, who resides in Arkansas. But Dr. Bütz's indefensible positions, many of which are contrary to applicable law, have prevented the exams from going forward.  Accordingly, Plaintiffs respectfully request that the Court exercise its discretion under Rule 35 and require:

1. Dr. Bütz to disclose and justify all components of his proposed exam to ensure that the scope of his testing is appropriate for the conditions Plaintiffs have put in controversy;

2. Dr. Bütz to provide Plaintiffs all of the reports required by Fed. R. Civ. Pro. 35;

3. Dr. Bütz to produce all information, including testing data, that he intends to rely on for his opinions as required by Fed. R. Civ. Pro. 26;

4. Dr. Bütz to complete the exams without forcing Plaintiffs to sign his inappropriate and unnecessary authorization form; and

5. Dr. Bütz to complete Camillia Mapley's exam remotely.

## CONFERRAL

WTNY's Brief in Support sets forth its characterization of the lengthy conferral process and resulting agreement for the proposed Rule 35 exams. Plaintiffs' counsel disagrees with WTNY's characterizations of both, but does not set forth a laundry list of those disagreements herein.  If the Court believes the

conferral process is material to the present dispute, Plaintiffs direct the Court to the record rather than WTNY's characterizations of the record.  Ultimately, efforts of counsel to reach an agreement for the exams failed when WTNY filed the present Motion.  Plaintiffs' objections to the proposed exams are set forth herein.

## APPLICABLE LAW

Rule 35 of the Federal Rules of Civil Procedure provides the following:

(a) Order for an Examination.

(1) In General. The court where the action is pending may order a party whose mental or physical condition–including blood group–is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.

(2) Motion and Notice; Contents of the Order. The order:

(A) may be made only on motion for good cause and on notice to all parties and the person to be examined; and
(B) must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.

District Courts have the discretion to set the specific parameters of a Rule 35 examination.  *See e.g.  Halliday v. Spjute*, No. 1:07-CV-00620-AWI, 2015 WL 3988903 at *2 (E.D. Cal. June 30, 205).

///

///

///

# ARGUMENT

## I.   Dr. Bütz is required to provide Plaintiffs' counsel the entirety of his file, including reports and raw test data.

Defendants state that they have retained Dr. Bütz to examine Plaintiffs and offer expert opinions at trial *See* WTNY's Motion (Sept. 27, 2023) (ECF No. 267 at 7).  Accordingly, he is required to provide Plaintiffs: (a) a report of his findings; (b) a copy of all like reports from his earlier examinations of similar conditions; and (c) all information and data that he relies on for his opinions, including his raw testing data.  *See* Fed. R. Civ. P. 35 (b)(1); Fed.R.Civ.P. 26 (a)(2)(B)(ii) (requiring witnesses offering expert opinion to produce the data relied on in forming those opinions); *Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 824 (9th Cir. 2011).  Indeed, if Dr. Bütz is going to offer opinions at trial Plaintiffs' counsel is entitled to all information he relies on, including his test data, for the purpose of cross-examination.  *See e.g.* Fed. R. Evid. 705.

The rules requiring Dr. Bütz to produce all of the material described above are well established, not controversial, and apply equally to all expert witnesses retained to conduct a physical or mental examination and offer opinions at trial.  But Dr. Bütz wants to conduct a Rule 35 exam and offer opinions at trial without producing the required materials.  Plaintiffs have found three other cases where Dr. Bütz attempted to withhold the same material, only to be subsequently ordered to produce it after lengthy and wasteful motions practice.  *See e.g.* Orders requiring

Dr. Bütz to produce his complete files, including raw test data (attached as **Exhibit A**).

Dr. Bütz and WTNY know that he is required to produce the material identified in Rules 26 and 35 if he is going to serve as an expert witness who examines the Plaintiffs and testifies at trial.  But he is refusing to do so.  In fact, he is demanding that the Plaintiffs sign an authorization form where they agree to waive their right to obtain such material.[1]  Authorization for Forensic Consultation/Psychological Assessment: *Informed Consent & Fee Agreement* at 2 (attached as **Exhibit B**).  Dr. Bütz's refusal to comply with the disclosure rules governing his role as a Rule 35 examiner who is going to offer opinions at trial is the primary reason Plaintiffs have not stipulated to his exams.

Dr. Bütz wrongly argues that ethical rules prohibit him from producing his raw testing data.  *See* Dr. Bütz's Letter to Brett Jensen (July 17, 2023) (ECF No. 267-11 at 2).  This is not true.  The plain language of the applicable ethical code specifically provides that Dr. Bütz may release his raw test data: (1) pursuant to a release signed by the patient; or (2) when required by law or court order.  American Psychological Association Code of Ethics Section 9.04 *Release of Test*

---

[1] In at least one other case Dr. Bütz relied on this clause in his authorization form to argue that an opposing party waived its right to obtain his raw testing data.

*Data* (attached as **Exhibit C**).[2]  Here, two separate clauses in Section 9.04 permit

production of the raw test data to Plaintiffs because they will sign a release, and

Fed. R. Civ. Pro. 26(a)(2)(B)(ii) requires it.  Even if Dr. Bütz's ethical obligations

were as strict as he represents – which they clearly are not – that does not mean he

is permitted to examine Plaintiffs and offer expert opinions without complying

with Rules 26 and 35.  Rather, it means he is prohibited from offering expert

opinions in this case because he refuses to comply with the mandatory disclosure

requirements.

It makes no sense to subject Plaintiffs to the arduous process of an

examination by an examiner who preemptively refuses to comply with the

mandatory disclosure requirements of Rules 26 and 35.  Nobody is forcing Dr.

Bütz to serve as an expert witness in this case.  If he does not believe that he is

permitted to produce the material required by Rules 26 and 35, then he should not

be an expert witness.  There is no special exception to the rules for Dr. Bütz.

Accordingly, the Court should only order the exams sought by Defendants if it

simultaneously orders Dr. Bütz to produce all of the material required under Rules

26 and 35, including reports from Plaintiffs' exams, similar reports from earlier

---

[2] Furthermore, the applicable Administrative Rules of Montana do not forbid
sharing such data with unqualified individuals.  Rather, the rule states that a
psychologist should make reasonable efforts to avoid the release of raw data to
untrained persons. *See* Mont. Admin. R. 24.189.2305.

exams of like conditions, and all of the information and data he relies on to reach his opinions, including his raw test data.

## II.     Plaintiffs should not be required to sign Dr. Bütz's authorization form.

Another entirely avoidable obstacle to the requested exams is Dr. Bütz's insistence that Plaintiffs sign his authorization forms which are inappropriate for the proposed Rule 35 exams.  Among other problems, Dr. Bütz's forms require Plaintiffs to:

> ➤ Certify that they were "referred" to Dr. Bütz when they were not;
>
> ➤ Certify that Dr. Bütz is a neutral and objective evaluator when in fact he was hired by the Defendants and Plaintiffs have no basis to certify whether he is objective or not;[3]
>
> ➤ Waive their rights to obtain the reports, information, raw data, and other material that Dr. Bütz is required to provide Plaintiffs under Rules 26 and 35;[4]

---

[3] Whether or not Dr. Bütz is objective is a question for the jury to answer and Plaintiffs should never have to make such a concession as part of a Rule 35 exam by the Defendants' retained examiner.

[4] This clause is particularly problematic because Dr. Bütz has a history of using it as a weapon against opposing parties who are forced to file motions to compel production of his raw test data.  *See In re Marriage of Horton, DR 11-0978.*

> ➢ Certify that Dr. Bütz is not required to speak to anyone besides
> WTNY about his conclusions and report when in fact Plaintiffs are
> entitled to cross-examine Dr. Bütz about them; and

> ➢ Pay any professional fees that Defendants agreed, but failed, to pay.

**Ex. B**.  These clauses are contrary to the facts and applicable law.  Plaintiffs should not be required to sign an authorization form with any of these clauses.

In an effort to get the exams going, Plaintiffs tried to work around Dr. Bütz's forms.  First, Plaintiffs suggested using a more typical form, such as a simple "consent for examination" form, but Dr. Bütz refused.  Next, Plaintiffs suggested edits to Dr. Bütz's forms, but he again refused.  Finally, Plaintiffs proposed adding a clause to the parties' Memorandum of Understanding ("MOU") that would resolve any conflict between the terms of the MOU and Dr. Bütz's forms by relying on the MOU.  WTNY and Dr. Bütz again refused.

Nothing in Rule 35, or any other applicable authority, requires Plaintiffs to sign authorization forms, especially forms that are inconsistent with reality and in conflict with the rules governing production of materials under Rules 26 and 35.  Defendants and Dr. Bütz provide no justification for requiring Plaintiffs to do so, other than stating that these are the forms Dr. Bütz uses.  This is no reason at all.  If the Court is inclined to order the exams sought by WTNY, it should require them to be taken without forcing Plaintiffs to sign Dr. Bütz's inappropriate forms.

**III.    Neuropsychological testing is not appropriate in this case and Dr. Bütz refuses to state whether he intends to subject Plaintiffs to such testing.**

As a threshold matter, before he is permitted to examine Plaintiffs, Dr. Bütz must identify the scope of the exams he intends to conduct.  Rule 35 provides that the order/notice for an exam must "specify the time, manner, conditions, and scope of the examination". Fed. R. Civ. P. 35.  A general statement that "psychological testing" will be conducted is not sufficient to define the scope of a proposed Rule 35 exam. *Marroni v. Matey*, 82 F.R.D. 371, 372 (E.D. Pa. 1979) (citing to *Schlagenhauf v. Holder*, 379 U.S. 104, n. 16 (1964).[5]

Of particular importance in this case, Dr. Bütz must state whether his proposed exams include neuropsychological testing.  Plaintiffs' counsel has repeatedly asked this simple question but WTNY and Dr. Bütz refuse to answer. *See* Correspondence from Ryan Shaffer to Brett Jensen (Aug. 25, 2023) (ECF No. 267-23.); (Sept. 20, 2023) (ECF No. 267-26).  Dr. Bütz will only state that he intends to conduct "a number of standardized psychological assessment

---

[5] Plaintiffs' counsel searched but could not find a Ninth Circuit case stating whether a Rule 35 applicant must disclose its intent to conduct neuropsychological testing.  The Third Circuit's *Marroni* decision is the most applicable persuasive authority found.  In a 2005 unreported opinion, a federal district court in the Ninth Circuit cited to *Marroni* for the same principle at issue here. *Williams v. Roche*, No. CIV-02-1901 DFL-JFM-PS, 2005 WL 8176527, at *2 (E.D. Cal. 2005). WTNY cites to the Montana Supreme Court's holding in *Winslow,* but even that case held that the scope of a proposed Rule 35 exam must be defined "at least in a general sense." *Winslow v. Montana Rail Link, Inc.*, 2001 MT 269, ¶ 15, 307 Mont. 269, 38 P.3d 148.

instruments." <u>See</u> <u>Dr. Bütz Letter to Brett Jensen (April 25, 2023)</u> (ECF No. 267-5 at 4).  This provides no indication of the types of testing that he intends to perform. Affidavit of Dr. Trent Holmberg and Dr. Jonathan Bone, ¶16 (attached as **Exhibit D**).

WTNY cites *Copenhaver* to argue that Dr. Bütz has sufficiently identified the scope of his proposed exams.  *See* WTNY's Motion (Sept. 27, 2023) (ECF No. 267 at 18).  But in that case, the question was whether the examiner needed to provide a list of questions and protocols in advance of the testing.  *See* Cavagna Group S.p.a. Reply Brief in Support of Cavagna's Motion to Compel Rule 35 Examinations at 10, Copenhaver v. Cavagna Grp. S.p.a. Omeca Div., No. CV 19-71-BLG, (D. Mont. Feb. 2, 2021), (ECF No. 170 at *10).  Here, Plaintiffs are simply trying to determine if Dr. Bütz is even proposing to conduct neuropsychological testing, not the specific questions he intends to ask.  According to Plaintiffs' experts this is a reasonable and normal request.  **Ex. D**, ¶¶ 16-18.

It is unclear why Dr. Bütz wants to keep the general types of testing he intends to deploy in a black box.  Dr. Bütz must disclose the general categories of testing he intends to conduct so that Plaintiffs and the Court can determine whether the scope of his proposed exams are appropriate given what is "in controversy" in this case.  **Ex. D**, ¶17-18.

///

### a.  Plaintiffs are not alleging neuropsychological injuries.

Plaintiffs are only seeking damages for the emotional distress caused by childhood sexual abuse, and that is what Plaintiffs' experts will provide opinions about.  **Ex. D**, **¶¶7-8**.  These damages include conditions such as Posttraumatic Stress Disorder ("PTSD") and Dissociative Identity Disorder or Multiple Personality Disorder ("DID/MPD").  **Ex. D**, ¶10.

Conversely, Plaintiffs are not seeking damages for, and have not put at issue, neuropsychological injuries, which are injuries to the brain resulting from physical/mechanical trauma, such as a traumatic or hypoxic brain injury.  **Ex. D**, ¶¶7-10.  The emotional distress caused by sexual abuse at issue in this case is a fundamentally different type of injury than the physical or mechanical trauma to the brain involved in a traumatic or hypoxic brain injury.  **Ex. D**, ¶¶7-11.

### b.  Because neuropsychological injuries are not in controversy neuropsychological testing is not appropriate.

Rule 35 only permits an examination of the conditions that are "in controversy" in this case.  Fed. R. Civ. Pro. 35(a)(1).  As such, WTNY must show that its proposed Rule 35 exam is appropriate for the issues in controversy, and specifically, the emotional damages caused by childhood sexual abuse. *Schlagenhauf v. Holder*, 379 U.S. 104, 118, 85 S. Ct. 234,242,13 L. Ed. 2d 152 (1964) ("Rule 35, therefore, requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a

mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements."). *Id* at 118

In this case, the Plaintiffs are not making any claim for a brain injury that would require neuropsychological testing to assess. **Ex. D**, ¶¶8-11. The purpose of a neuropsychological examination is to assess a change in cognitive functioning resulting from a brain injury. *Id*. Neuropsychological injuries are not at issue in this case and neuropsychological testing is not appropriate. Therefore, Plaintiffs request that any order permitting the exams to go forward prohibit neuropsychological testing.

## IV.   <u>Plaintiff Camillia Mapley's Exam Should Be Conducted Remotely</u>

Plaintiffs have always agreed to pay for the travel costs associated with Tracy Caekaert's in-person examination and that is not at issue here.[6]  However, Plaintiffs do not agree that the extreme financial and logistical burdens of conducting an in-person exam of Camillia Mapley can be justified. Instead, Dr. Bütz should conduct his exam remotely just as Plaintiffs' experts did.

///

///

///

---

[6] Plaintiffs agreed that if Dr. Bütz is to travel to Arkansas to examine Tracy Caekaert, they will pay for his travel and licensing. However, Plaintiffs maintain they should not have to pay his hourly professional fees while he is in transit, and they should not have to pay for airline upgrades that Dr. Bütz demands.

### a.  <u>Undue burden of in-person exam</u>

The general rule relied on by WTNY as set forth in *McCloskey* - that a plaintiff should bear the expense of traveling to the forum state for a Rule 35 exam - is based primarily on the concern of obtaining the examining doctor's presence at trial. *McCloskey v. United Parcel Serv. Gen. Servs. Co.*, 171 F.R.D. 268, 270 (D. Or. 1997).  But that is not a concern in this case because Dr. Bütz resides in Montana and Defendants can certainly obtain his presence at trial regardless of where he conducts Ms. Mapley's exam.

On the other hand, where traveling to an in-person exam results in an "undue burden or hardship" other locations or means may be ordered by the Court. *Halliday,* WL 3988903, at *4.  Here, Ms. Mapley is the single mother of an 11-year-old boy, Adler.  They live together in Jamieson, Victoria, Australia. Declaration of Camillia Mapley, ¶1 (Oct. 24, 2023) (attached as **Exhibit E**); Declaration of Natasha Misko, ¶¶1-8 (Oct. 20, 2023) (attached as **Exhibit F**).  Ms. Mapley is Adler's sole caretaker and his biological father, who is abusive, has no contact with him.  **Ex. E**, ¶¶2-5, 8; **Ex. F**, ¶¶7-8.  While Ms. Mapley is working hard to obtain a passport for Adler, that process is not yet complete, and Adler cannot now travel outside of Australia.  **Ex. E**, ¶¶10-12; **Ex. F**, ¶¶9-11.  As a result, if Ms. Mapley were ordered to appear in the United States for a Rule 35 exam she would either have to hire childcare, which she cannot afford to do, or

leave Adler with his biological father who subjects him to physical and emotional abuse. **Ex. E,** ¶8, 11; **Ex. F,** ¶¶4-5.

Additionally, because of the significant distance between Montana and Australia, an in-person exam would require approximately one week of travel for Ms. Mapley. Declaration of Jessica Yuhas (Oct. 25, 2023) (attached as **Exhibit G**). Without even considering the cost of airfare and hotels for the trip, making up for the lost wages would require her to spend the entirety of her savings account. **Ex. E,** ¶¶13-17. In short, an in-person exam would place an extreme financial and logistical burden on Ms. Mapley.[7]

### b. <u>Little or no impact on scientific validity for a remote exam</u>

A remote exam of Ms. Mapley can be, and in fact has been, completed with much less burden and no demonstrable impact on the validity. Plaintiffs' experts completed Ms. Mapley's exam remotely without a problem. **Ex. D,** ¶15. There is no reason that Dr. Bütz could not do the same. *Id*. While in-person exams are always preferred, in-person exams are not required for scientific validity. *Id*. at ¶14. The article referenced by Dr. Bütz does not state otherwise:

➤ The Daffern article does <u>not</u> conclude that remote forensic exams cannot be reliable; and

---

[7] Alternatively, sending Dr. Bütz to Australia would cost at least $23,000.00.

➢ Over 80% of psychologists and psychiatrists expressed the opinion that

individuals with mental illness are suitable candidates for remote

assessment;

*Id*. at ¶¶12-13.  As Plaintiffs' experts noted, "the substantial logistical and cost

concerns of examining Camillia Mapley in person outweigh what little would be

gained by an in-person assessment."  *Id*. at ¶19.  Ultimately, WTNY and Dr. Bütz

cannot justify the extreme costs and burdens of an in-person exam for Camillia

Mapley.  Accordingly, it is appropriate for the Court to direct that Ms. Mapley's

examination be conducted remotely.

**V.     Any Unintentional Waiver of Attorney Client-Privileged Information
        Should Be Stricken From the Record.**

The parties disagree about how to handle the inadvertent disclosure of

attorney-client protected information during the exams.  Dr. Bütz is a defense

retained expert and is therefore an agent of the Defendants.  Typically, to prevent

the inadvertent disclosure of privileged information, Plaintiffs' counsel would be

permitted to be present when an agent of the Defendant is interviewing the

Plaintiffs.  However, because that could impact the course of an exam, Plaintiffs'

counsel suggested a reasonable compromise, whereby the inadvertent disclosure of

attorney-client privileged information would be stricken from the record and not

available for use in this case.  Defendants disagree with such an arrangement.

Therefore, Plaintiffs ask the Court to order that any disclosure of attorney-client

privileged information during Dr. Bütz's exams be stricken and unavailable for use in this case.

## VI.    Documenting the Exams.

If the Court orders the exams requested by WTNY, Plaintiffs request that the Order include requirements that Dr. Bütz: (1) audio record his social history interviews; and (2) make a written record of each test given, the time each test started and ended, and any breaks in the testing.  The parties had agreed to these provisions and they are necessary to ensure transparency in the examination process.

## CONCLUSION

For the reasons discussed above, if the Court orders the proposed exams to be taken, Plaintiffs request the following requirements:

A. Dr. Bütz must produce to Plaintiffs' counsel all material required to be produced under Rules 26 and 35, including his raw test data;

B. Plaintiffs shall not be required to sign Dr. Bütz's authorization forms;

C. Dr. Bütz is prohibited from conducting neuropsychological testing;

D. Dr. Bütz's examination of Camillia Mapley shall be conducted remotely;

E. Any inadvertent disclosure of attorney-client privileged information stricken from the record; and

F.  Dr. Bütz shall audio record his social history interviews and make a

written record of each test given, the time each test started and ended,

and any breaks in the testing.

DATED this 25th day of October, 2023.


By: /s/ Ryan Shaffer
    Ryan R. Shaffer
    MEYER, SHAFFER & STEPANS PLLP

    *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 1.4, this document has been served on all parties via electronic service through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

By: /s/ Ryan Shaffer
    Ryan R. Shaffer
    MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), Plaintiff hereby certifies that this brief complies with the length requirement for briefs, and that this brief contains 3,801 words, excluding the caption, certificates of service and compliance, table of contents and authorities, and exhibit index.

By: /s/ Ryan Shaffer
    Ryan R. Shaffer
    MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*