*Exhibit D*

Robert L. Stepans
Ryan R. Shaffer
James C. Murnion
Victoria K.M. Gannon
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT 59802
Tel: (406) 543-6929
Fax: (406) 721-1799
rob@mss-lawfirm.com
ryan@mss-lawfirm.com
james@mss-lawfirm.com
katy@mss-lawfirm.com

Matthew L. Merrill (appearing *pro hac vice*)
Merrill Law, LLC
6631 Mariposa Court
Denver, CO 80221
Tel: (303) 947-4453
matthew@merrillwaterlaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | ) ) ) Case No. CV-20-52-BLG-SPW |
| Plaintiffs, | ) ) ) |
| vs. | ) **AFFIDAVIT OF** ) **DR. TRENT HOLMBERG AND** ) **DR. JONATHAN BONE** |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA., | ) ) ) ) ) |
| Defendants, | ) ) |

| | |
|---|---|
| ARIANE ROWLAND, and JAMIE SCHULZE<br><br>                Plaintiff,<br><br>vs.<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA,<br><br>                Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. CV-20-59-BLG-SPW

We, Dr. Trent Holmberg and Dr. Jonathan Bone, swear and affirm that the following is true and correct:

1. I, Dr. Trent Holmberg, am over the age of 21 years and am competent to and do state the facts and matters contained in this affidavit are true and based upon my personal knowledge.

2. I, Dr. Trent Holmberg, have been certified in **adult** psychiatry by the American Board of Psychiatry since 2004 and certified in forensic psychiatry since 2005. In addition to my clinical practice, I have been retained by both Plaintiffs and Defendants as an expert witness in these fields many times and have testified as an expert thirty-nine (39) times since 2018.

3. I, Dr. Trent Holmberg, have been retained by Plaintiffs' lawyers in this case to evaluate the emotional trauma and injuries resulting from childhood sexual abuse that occurred during the 1970s and 1980s.

4. I, Dr. Jonathan Bone, am over the age of 21 years and am competent to and do state the facts and matters contained in this affidavit are true and based upon my personal knowledge.

5. I, Dr. Jonathan Bone, have been certified in psychology since 2008.  In addition to my clinical practice, I also serve as a designated examiner for the Utah Department of Human Services, Division of Substance Abuse and Mental Health.

6. I, Dr. Jonathan Bone, have been retained by Plaintiffs' lawyers in this case to administer and interpret psychological testing to assist in the evaluation of the emotional trauma and injuries resulting from childhood sexual abuse that occurred during the 1970s and 1980s.

7. Through our combined education and professional experience, we are familiar with and competent to testify to the types of testing that is appropriate to diagnose, understand, and evaluate the sorts of psychiatric and emotional harms that are being claimed by the Plaintiffs in this case.

**Affidavit of Dr. Trent Holmberg and Dr. Jonathan Bone**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
*Rowland and Schulze v. Watchtower Bible Tract of New York, Inc., et. al.*
3

8. The Plaintiffs in this case are seeking damages for emotional distress and they are not claiming to have suffered a diminishment in neurocognitive functioning due to physical or mechanical brain trauma.

9. *Emotional* trauma (psychologically upsetting events) is fundamentally different from *physical/mechanical* trauma, to the brain which typically involves mechanical forces or a lack of oxygen brought to bear on the brain that in turn causes injury to brain cells, i.e. traumatic brain injury.

10. This case involves psychiatric diagnoses such as Posttraumatic Stress Disorder (PTSD) and Dissociative Identify Disorder or Multiple Personality Disorder (DID/MPD).  Physical/mechanical trauma to the brain that results in injury to brain cells is not an element of these diagnoses, and these conditions cannot be caused by mechanical or hypoxic brain injury.

11. Neuropsychological examination – as opposed to psychiatric examination - would be indicated for a case involving a motor vehicle/industrial accident (or something similar) where the examinee expressed a change in cognitive functioning after a mechanical/physical impact or lack of oxygen to the brain, i.e. concussion, traumatic brain injury (TBI).  In this case, no TBI-related claim (or any similar brain or head injury claim such as prolonged oxygen deprivation) has been made by any plaintiff, and damages claims are limited to emotional distress related to childhood abuse that is alleged to

Affidavit of Dr. Trent Holmberg and Dr. Jonathan Bone
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
*Rowland and Schulze v. Watchtower Bible Tract of New York, Inc., et. al.*
4

have occurred decades ago.  We are not aware of any neuropsychological test that can help in confirming or excluding whether the Plaintiffs were emotionally (not physically) injured by the alleged, remote childhood sexual abuse.  Therefore, neuropsychological testing is not called for or appropriate for the Plaintiffs in this case.

12. As it pertains to the Daffern article provided by Dr. Bütz:

- The authors conclude, "Overall, there appears to be a range of benefits to using tele-services for remote forensic assessment and treatment practice, but there are issues that need to be considered."  In this article, the authors do <u>not</u> conclude that remote forensic assessment cannot reliably be done.  They simply conclude that comprehensive best-practice guidelines have yet to be developed.  Incidentally, they also advocated for psychologists and psychiatrists to become more conversant and knowledgeable in this area, not to refuse to do remote assessment.

- The vast majority of respondents in this international survey of 295 psychologists and psychiatrists (over 80%) expressed the opinion that individuals with psychopathology/mental illness are suitable candidates for remote assessment.

**Affidavit of Dr. Trent Holmberg and Dr. Jonathan Bone**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
*Rowland and Schulze v. Watchtower Bible Tract of New York, Inc., et. al.*
5

- Over 92% of respondents expressed the same opinion with respect to individuals with mood disorders such as depression.

- Concerns expressed in the article about the quality of the therapeutic relationship with treatment clients are not relevant to this case since no treatment will be provided and Dr. Bütz will not be acting in the capacity of a treating psychologist for any of the Plaintiffs.

- As noted in the article, some clients/evaluees express a preference for remote assessment over in-person assessment, and remote assessment offers obvious advantages not just in terms of cost, but also in terms of convenience, safety, client comfort, and flexibility.

- Concerns expressed in the article regarding the difficulty in administering physical tasks such as block-based subtests of cognitive test batteries are irrelevant since such testing is not indicated in this case.

- The authors specifically noted, "Previous research broadly supports the validity of neuropsychological testing by videoconference, particularly for verbally mediated tasks."

- Simple adaptations such as reading test instructions and items aloud instead of having the examinee read the instructions or items were also discussed in the article.

**Affidavit of Dr. Trent Holmberg and Dr. Jonathan Bone**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
*Rowland and Schulze v. Watchtower Bible Tract of New York, Inc., et. al.*
6

13. In summary, this article does not demonstrate that any of the proposed examinations cannot be conducted remotely.

14. In-person interviews and testing are not required for scientific validity.

15. Ms. Mapley was already evaluated remotely by Dr. Bone and Dr. Holmberg. The interview portion of her exam was conducted via video conferencing. She completed testing at a testing center in Australia due to her being unable to travel to Utah. Counsel for Ms. Mapley established a proctor at the testing center to ensure the testing was administered in a standardized fashion. Ms. Mapley completed the MMPI-3, the MCMI-IV, and the PAI via remote, on-screen administration, and the process was smooth and entirely free of difficulties. There is no reason that this could not be repeated for Dr. Bütz.

16. Dr. Bütz's description of the testing he intends to administer is vague and fails to adequately identify whether it includes neuropsychological testing. However, his request for 7.5 to 12 hours of examination is excessive for an exam to evaluate the sorts of damages claimed by the Plaintiffs in this case, i.e. psychiatric injuries from emotional trauma.

17. While it is not out of the ordinary for a defense-retained neuropsychological expert to not disclose the tests that will be administered in advance, Dr. Bütz should disclose the general category of tests he is proposing so it can be

**Affidavit of Dr. Trent Holmberg and Dr. Jonathan Bone**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
*Rowland and Schulze v. Watchtower Bible Tract of New York, Inc., et. al.*
7

determined if the proposed domains to be tested are appropriate for the claims being made by the Plaintiffs. Examples of general categories of testing that can be requested but do not require disclosure of specific tests to be administered include:

- Tests of effort and performance validity

- Tests of intellectual ability (e.g. IQ tests)

- Tests of academic ability/achievement

- Tests of auditory and visual-spatial processing

- Language tests

- Tests of attention (simple, divided, sustained, etc.)

- Tests of executive functioning

- General memory tests

- Verbal memory tests

- Visual memory tests

- Tests of sensory and motor skills

- Tests of visual motor integration or vision

- Tests of social and emotional functioning, including those with embedded symptom validity scales

- Self-report symptom checklists

- Testing batteries

**Affidavit of Dr. Trent Holmberg and Dr. Jonathan Bone**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
*Rowland and Schulze v. Watchtower Bible Tract of New York, Inc., et. al.*
8

18. There is no reason that Dr. Bütz cannot disclose these general categories of tests to help understand whether his proposed evaluations are appropriate for the damages at issue in this case.

19. In this case, the substantial logistical and cost concerns of examining Cami Mapley in person outweigh what little would be gained by an in-person assessment.

10. In order to evaluate the examination and testing conducted by Dr. Bütz, Dr. Bone will need to have all of the raw testing data and Dr. Holmberg will need to see a summary of the results of each test administered (including the name of the test and the score). Without this information, Dr. Bone and Dr. Holmberg will not be able to make an independent assessment regarding the conclusions and opinions reached by Dr. Bütz and whether they are justified by the data and scores on the various tests.

DATED this ___13th___ day of ~~September, 2022.~~ October 2023

By: _____
Dr. Trent Holmberg

///

///

///

**Affidavit of Dr. Trent Holmberg and Dr. Jonathan Bone**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
*Rowland and Schulze v. Watchtower Bible Tract of New York, Inc., et. al.*
9

STATE OF UTAH                              )
                                          ) ss.
COUNTY OF SALT LAKE                        )

This instrument was signed and sworn to before me on October _13_, 2023

by Dr. Trent Holmberg.

_____
(Notary Signature)

Samantha Jeide
Print Name of Notary Public
Notary Public for the State of _Utah_
Residing at: _Draper_
My Commission Expires: _12-2-2026_

**SAMANTHA JEIDE**
NOTARY PUBLIC ● STATE of UTAH
COMMISSION NO. 728164
COMM. EXP. 12-02-2026

DATED this _11th_ day of October, ~~2022.~~
                                    2023

NOTARY PUBLIC
Anastasiya Mokhnyuk
731471
My Commission Expires
June 5, 2027
STATE OF UTAH

By: _____
      Dr. Jonathan Bone

STATE OF UTAH                              )
                                          ) ss.
COUNTY OF SALT LAKE                        )

This instrument was signed and sworn to before me on October _11th_, 2023

by Dr. Jonathan Bone.

_____
(Notary Signature)

Anastasiya Mokhnyuk
Print Name of Notary Public
Notary Public for the State of _Utah_

**Affidavit of Dr. Trent Holmberg and Dr. Jonathan Bone**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
*Rowland and Schulze v. Watchtower Bible Tract of New York, Inc., et. al.*
10