Robert L. Stepans
Ryan R. Shaffer
James C. Murnion
Victoria K.M. Gannon
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT  59802
Tel: (406) 543-6929
Fax: (406) 721-1799
rob@mss-lawfirm.com
ryan@mss-lawfirm.com
james@mss-lawfirm.com
katy@mss-lawfirm.com

Matthew L. Merrill (appearing *pro hac vice*)
Merrill Law, LLC
6631 Mariposa Court
Denver, CO  80221
Tel: (303) 947-4453
matthew@merrillwaterlaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | Case No. CV-20-52-BLG-SPW |
| Plaintiffs, | **PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR SANCTIONS RE: WTNY'S NON-COMPLIANCE WITH COURT ORDER (ECF No. 85)** |
| vs. | |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA., | |
| Defendants, | |

Plaintiffs Tracy Caekaert and Camillia Mapley submit the following Brief in

Support of their Motion for Sanctions re: Watchtower Bible and Tract Society's

("WTNY") non-compliance with this Court's prior order requiring it to provide

"full and complete" answers to Interrogatories Nos. 9 and 15. Ord. at 11–12, ECF

No. 85 (hereinafter referred to as "Order").

## INTRODUCTION

Plaintiffs have been trying to learn how the Jehovah's Witnesses

Organization's various corporations and unincorporated bodies, offices,

committees, and departments (the "Organization's Entities") were structured and

related to one another during the 1970s, 1980s, and 1990s.  This structure, and

these relationships, are directly material to important issues in the case, including,

*inter alia*: (1) which entities various Jehovah's Witnesses officials were acting on

behalf of at different points in time; and (2) which entities had knowledge (actual

or constructive) of information about child sex abuse.

WTNY hopes to rely on confusion over the Jehovah's Witnesses'

organizational structure to defend against Plaintiffs' claims.  For instance, it wants

to argue that notice of child sex abuse received by certain Jehovah's Witnesses

officials does not constitute notice to WTNY.  But this argument can only be

sustained if WTNY is able to conceal the degree to which the Organization's

Entities were centrally controlled, worked together, and shared agents.

In furtherance of its litigation strategy, WTNY refuses to provide candid and

complete information in discovery about the Jehovah's Witnesses' organizational

structure.   WTNY is now in open contempt of this Court's Order that it provide

Plaintiffs' "full and complete" interrogatory answers about the Organization's Entities.  Instead, it has provided only a recitation of its litigation position followed by a series of vague, meaningless statements.

The time for WTNY to comply with its obligation to provide complete and accurate information is long overdue.  The record in this case and others establishes that WTNY openly spites these obligations until – and even after – truly meaningful sanctions are imposed.  WTNY will surely pay the "costs and fees" of discovery motions for the opportunity to stifle Plaintiffs' cases by hiding material information.  More orders to compel will only result in more word games and more delays.

WTNY's refusal to provide candid and complete discovery answers stands to significantly prejudice Plaintiffs' cases and must be addressed.  Accordingly, Plaintiffs request an order prohibiting WTNY from relying on purported distinctions between the Jehovah's Witnesses' organizational components as part of its defense.

## FACTUAL BACKGROUND

Plaintiffs asked WTNY two interrogatories aimed at discovering the structure of, and relationship amongst, the Organization's Entities.  Ex. A, Pls.' Interrog. Nos. 9 & 15 to WTNY.  Plaintiffs have learned essentially nothing from the answers.  Instead, Plaintiffs have had to resort to other sources of information,

all of which demonstrate two things: (1) the Organization's Entities were centrally controlled and acted in concert for the time period at issue in this case; and (2) WTNY is attempting to obfuscate this fact by withholding material information and perpetuating vague interrogatory answers that ultimately mean nothing.

### 1. Interrogatory No. 9

Interrogatory No. 9 sought information about the Jehovah's Witnesses Governing Body.  WTNY's original answer provides no meaningful information about what the Governing Body is, what it does, or what it is responsible for.  Ex. A, WTNY's Answer to Interrog. No. 9.  Additionally, Plaintiffs demonstrated that WTNY omitted material information about the Governing Body's role in the appointment of local elders.  Br. in Supp. of Mot. to Compel at 16, ECF No. 57. The Court concluded that WTNY's answer was "vague to the point of non-responsive" and ordered WTNY to answer "fully and completely."  Order at 12.

On September 21, 2021, WTNY supplemented without providing any new information:

> **FIRST SUPPLEMENTAL ANSWER:**  WTNY restates and reiterates its objections and responses noted above.  Subject to and without waiving its objection:  WTNY further responds that it is not the Governing Body of Jehovah's Witnesses, but upon information and belief, the Governing Body provides spiritual guidance and direction to all Jehovah's Witnesses, including, but not limited to, setting forth the scriptural beliefs and practices of the faith in conformance with the model set by first century Christians as recorded in the Bible.  The Governing Body does not direct the day-to-day affairs of any congregation of Jehovah's Witnesses, but,

> during the time period in question, experienced elders in New York
> (members of the religious order) acknowledged the appointment of
> congregation elders and ministerial servants.  Acknowledgement of
> these appointments was communicated to congregations by WTNY.

Ex. A.  WTNY's supplement provides no new information about what the

Governing Body does or is responsible for.  Instead, WTNY's lawyers crafted a

confusing sentence that starts off referring to what the Governing Body *does not do*

and then switches to a reference to what "experienced elders in New York

(members of the religious order)" do.  *Id.* at WTNY's First Supp. Answer to

Interrog. No. 9.  As intended, the supplemental answer is incomprehensible and

merely sets forth what Plaintiffs used to prove WTNY was not forthcoming in its

original answer: the Governing Body appoints local congregation elders.  This is

not an accident; WTNY's intent is to create confusion, not clarity.

## 2.  Interrogatory No. 15

Interrogatory No. 15 asked WTNY to identify the relationships between

several of the Organization's Entities.  WTNY answered with obvious facts about

how WTNY and WTPA are organized, vague facts about what they do, and vague

facts about what the U.S. Branch Office and the Governing Body are and do.  *Id.* at

WTNY's Answer to Interrog. No. 15.  Missing is any meaningful description of

their relationship with one another in carrying out the goals and purposes of the

Jehovah's Witnesses Organization.  As with Interrogatory No. 9, the Court

concluded that WTNY's Answer was "vague to the point of non-responsive" and ordered it to answer "fully and completely."  Order at 12.

On September 21, 2021, WTNY supplemented its Answer to Interrogatory No. 15, but it provided no new, meaningful information:

> **FIRST SUPPLEMENTAL ANSWER:** WTNY restates and reiterates its objections and response noted above. Subject to and without waiving its objection: WTNY further responds that it is not the Governing Body of Jehovah's Witnesses, but upon information and belief, the Governing Body provides spiritual guidance and direction to all Jehovah's Witnesses, including, but not limited to, setting forth the scriptural beliefs and practices of the faith in conformance with the model set by first century Christians as recorded in the Bible. The Governing Body does not direct the day-to-day affairs of any congregation of Jehovah's Witnesses, but, during the time period in question, experienced elders in New York (members of the religious order) acknowledged the appointment of congregation elders and ministerial servants.  Acknowledgement of these appointments was communicated to congregations by WTNY.

Ex. A.  WTNY's supplement repeated the same vague, confusing statements that were set forth in its supplement to Interrogatory No. 9.  Glaringly absent is any meaningful description of how the Organization's Entities relate to one another in carrying out the goals and purposes of the Jehovah's Witnesses' religion.

### 3.  Information about the Governing Body obtained from other sources.

Plaintiffs know that WTNY is withholding responsive information about the Governing Body because it exists in other places:

➤ The Governing Body adopts guidelines for the qualifications of local congregation elders and authorizes local congregation elders to hear confessions and provide spiritual counsel.  Ex. B, Campbell Decl. ¶¶ 5, 9.

➤ The Governing Body approves the content of letters sent to all Jehovah's Witnesses congregations that contain matters of policy.  Ex. C, Ashe Dep. at 35:24–36:12.

➤ The Governing Body "oversees the promulgation of policies and procedures" of "all persons associated with the Jehovah's Witnesses[.]"  Ex. D, Defs.' Answer ¶ 5.

➤ The Governing Body has ultimate authority to bar a person from serving in certain positions of responsibility within the Jehovah's Witnesses Organization.  *Id.* at ¶ 6.

➤ The Governing Body establishes policies and procedures for local congregation elders to investigate and respond to allegations of serious sin, which includes child sexual abuse.  *Id.* at ¶ 8.

This is just a partial list of material information about what the Governing Body is and what it controlled that WTNY refuses to disclose.

///

///

///

**4. Information about the U.S. Branch Office obtained from other sources.**

Plaintiffs know that WTNY is intentionally withholding responsive, material information about the U.S. Branch Office and how it relates to WTNY and local congregations.  For instance:

➢ The U.S. Branch Office puts on training conventions to teach local elders how to do their jobs.  Ex. E, Lovett Dep at 62:1–16, 67:17–70:6.

➢ Questions from elders about how to follow Jehovah's Witnesses policies are directed to the "branch."  *Id.* at 84:21–85:14.

➢ Jehovah's Witnesses circuit overseers, who visit and report on activities of local congregations, report back to the "branch office."  *Id.* at 111:1–3.

➢ Reports about known child abusers, like the 1978 report about known Hardin, Montana child abuser, Gunnar Hain, were sent to the U.S. Branch Office.  *Id.* at 181:10–186:5.

➢ From the 1970s to 2001, the U.S. Branch Office "worked in concert with" WTNY to inform local congregations of the appointment and removal of elders.  Ex. F, Jefferson Decl. ¶ 11.

Based on this evidence, it appears that the U.S. Branch Office is the United States division of the Jehovah's Witnesses Organization where central control over U.S.

congregations is based.[1]  Instead of saying this, or saying anything revealing about the U.S. Branch Office, WTNY states only that it is "a religious construct that cares for the spiritual interests of Jehovah's Witnesses in the United States."  Ex A., WTNY's Answer to Interrog. No. 15.

**5. Information about how local congregations are controlled obtained from other sources.**

WTNY is withholding material information about the relationship of local congregations to the Organization's Entities.  For example:

➤ WTNY "is the parent organization of all congregations of Jehovah's Witnesses in the United States."  Ex. H, Adams Aff. ¶ 3.

➤ "The mere fact that a legal corporation or trustee arrangement has been made [by a local congregation] does not mean that a separate organization has been formed . . ."  Instead, operation of a local congregation's kingdom hall owned by a legal corporation or trustee arrangement is done "under the direction of the theocratic organization", i.e. the Governing Body, WTNY, and the U.S. Branch Office.  *Id.* at ¶ 21.

---

[1] This is consistent with the conclusion of a discovery referee appointed in a California case, where it was determined that: "The structure of the Jehovah's Witnesses is complicated, and at the risk of oversimplification, based on the evidence presented in this motion, an entity known as the United States Branch oversees the Jehovah's Witnesses in the United States through a committee known as the U.S. Branch Committee. The various activities of the United States Branch are carried out through corporations or departments."  Ex. G, Ord. at 13.

> A prospective local congregation must apply to WTNY and/or the U.S. Branch Office to be approved as a congregation within the Organization's Entities. *See* Ex. I, Ltr. from WTNY to Hardin Congregation; Ex. J, Branch Organization at 4-1–2, ¶¶ 6, 7.

> Local congregations operate "under the direction of the Governing Body[.]". Ex. J, Branch Organization at 4-1, ¶ 6; Ex. H, Adams Aff. ¶ 4.

> From the 1970s to 2001, the U.S. Branch Office assisted local elders in administering discipline to local congregation members who committed serious sin. Ex. F, Jefferson Decl. ¶ 11.

Based on this evidence, it is apparent that local congregations could not exist without the express permission of the U.S. Branch Office, including WTNY and the Governing Body. Yet, WTNY's discovery responses asking for the relationship amongst local congregations and these other Organization's Entities says nothing of the sort; they merely repeated WTNY's legal position in this case: local congregations are "separate and distinct" from the other Organization's Entities.

**6. WTNY refuses to supplement.**

On October 9, 2023, Plaintiffs asked WTNY to do what the Court has already ordered: provide full and complete answers to Interrogatories Nos. 9 and 15. Ex. K, Ltr. from Shaffer to Wilson at 1. WTNY refused to do so, stating that

its Supplemental Answers were "full and thorough."  Ex. L, Ltr. From Wilson to

Shaffer at 1–2.

## LAW

"'Wide access to relevant facts serves the integrity and fairness of the

judicial process by promoting the search for the truth.' . . . Discovery

noncompliance must be addressed and sanctioned to promote respect for the open

discovery process." *Lake v. Corecivic, Inc.*, No. CV-21-116-GTF-BMM, 2023

WL 6379349, at *3 (D. Mont. Sept. 29, 2023) (quoting *Shoen v. Shoen*, 5 F.3d

1289, 1292 (9th Cir. 1993)).  "District courts have broad discretion in deciding

whether to impose sanctions under Rule 37." *Gersh v. Anglin, No.* CV 17-50-M-

DLC-KLD, 2022 WL 2466782, at *2 (D. Mont. May 11, 2022), *report and*

*recommendation adopted*, No. CV 17-50-M-DLC, 2022 WL 4534269 (D. Mont.

Sept. 28, 2022)

Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure provides, in

pertinent part:

> If a party or a party's officer, director, or managing agent—or a
> witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an
> order to provide or permit discovery, including an order under Rule
> 26(f), 35, or 37(a), the court where the action is pending may issue
> further just orders. They may include the following:
>
> > (i) directing that the matters embraced in the order or other
> > designated facts be taken as established for purposes of the
> > action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part; or

. . .

(vi) rendering a default judgment against the disobedient party.

## ARGUMENT

### 1. WTNY refuses to play by the rules.

Despite being ordered to do so, WTNY refuses to provide candid and complete information when answering interrogatories about the structure, control, and relationships between the Organization's Entities.  Plaintiffs have shown that the information exists and has been disclosed in other situations, where WTNY's lawyers believed it suited WTNY's interests.  For instance, when WTNY wanted to assert control over a rogue congregation in Texas, it fully disclosed the significant, central control over local congregations exercised by it and the Governing Body.

The integrity and fairness of the judicial process depends on parties being candid.  While Plaintiffs must rely on WTNY to provide honest and complete information, WTNY has proven itself to be unreliable.  Plaintiffs have learned substantially more about the Governing Body, the U.S. Branch Office, local congregations, and how these entities relate to one another from hundreds of hours

Case 1:20-cv-00052-SPW   Document 288   Filed 11/06/23   Page 13 of 18

of research outside of the discovery process than they have learned from direct questions to WTNY.  *See supra* pp. 6–10.

Why won't WTNY provide Plaintiffs candid and complete information in discovery?  It is not for lack of information at its disposal.  The only conceivable answer is that WTNY is intentionally attempting to hide the truth to achieve an outcome that is not warranted by the facts.  Indeed, hiding facts is an accepted Jehovah's Witnesses practice referred to as "theocratic warfare."  Ex. M, Use Theocratic War Strategy ("At all times they must be very careful not to divulge any information to the enemy that he could use to hamper the preaching work.").  WTNY's lawyers have done it repeatedly in this case:

> ➢ The same lawyers representing WTNY today submitted misleading statements about the activities of WTPA and then fought Plaintiffs' effort to conduct discovery into such activities with the hope that the Court would not find out the truth.   Ord., ECF No. 135.

> ➢ When drafting privilege logs, WTNY's lawyers routinely provided partial document descriptions intended to mislead the reader by describing only the allegedly privileged portions while not disclosing that large portions were not privileged.  Ord. ECF No. 251.

**Plaintiffs' Brief in Support of Motion for Sanctions re: WTNY's Noncompliance with Court Order**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
13

➢ Even after its practice of providing misleading document descriptions was exposed, WTNY's lawyers again attempted to hide more non-privileged material from Plaintiffs.  Ord. ECF No. 285.[2]

➢ In what the Court properly referred to as a violation of their duty of candor to Plaintiffs and the Court, WTNY's lawyers intentionally misrepresented their relationship with several high-ranking Jehovah's Witnesses officials to prevent Plaintiffs from speaking to them.  Ord. at 13–14, ECF No. 268.

It is extremely rare to have even one of these transgressions occur in a case.  But to have consistent, multiple instances – where the intent is to obtain an unwarranted outcome by hiding facts – demonstrates a truly troubling disregard for the rules that protect Plaintiffs' right to a fair trial.

WTNY's track record establishes that it knows exactly what it is doing and is in fact willing to face severe discovery sanctions in exchange for hiding information and evidence.  In a California case, Watchtower was ordered to pay $4,000 per day for its persistent refusal to comply with the court's discovery orders.  Ex. N, Ord. at 2–3.  In two other California cases, terminal sanctions were

---

[2] WTNY's lawyers refused to certify that Document 39 did not contain non-privileged information, and simultaneously objected to Plaintiffs' efforts to have the document reviewed *in camera*.  Pls.' Br. in Supp., ECF No. 273; WTNY's Mot. re: Recons. of Ord., ECF No. 282.  Seeing the writing on the wall, and certainly not wanting the Court to see how little of the document was actually privileged, WTNY's lawyers produced a redacted version to Plaintiffs on November 3, 2023.

imposed on Watchtower because it would not produce documents showing its institutional awareness of childhood sexual abuse by Jehovah's Witnesses.  Ex. O Ord. at 11; Ex. P, Ord at 4.  In a recent Montana case, Watchtower was under the imminent threat of terminal sanctions for repeated discovery abuses.  Ords., Ex. Q. Plaintiffs raise these other instances of WTNY's discovery abuses because they go directly to WTNY's intent in this case and demonstrate that simply paying costs and fees does not deter it from discovery abuse.

There is no good faith interpretation of the Court's Order that would permit WTNY to persist with vague, meaningless answers while simultaneously withholding substantial, material information.  Moreover, WTNY's conduct is not isolated.  It is consistent with the Defendants' pattern of intentionally hiding material information from Plaintiffs and the Court to achieve an outcome not warranted by the facts.

## 2. WTNY must be prohibited from using its non-compliance as a defense in this case.

WTNY wants to defend this case by creating confusion about who controlled the critical decisions that permitted known child molesters in the Hardin, Montana congregation of Jehovah's Witnesses to repeatedly abuse Plaintiffs.  *See, e.g.*, Answer to First Amend. Compl. at Affirmative Def. Nos. 5,

10, 12, 17, & 18, ECF No. 27.[3]  Evidence of this tactic – whereby WTNY attempts to sow confusion rather than provide clarity about how the Organization's Entities related to one another – can be seen in the intentionally vague and non-responsive interrogatory answers that are the subject of this Motion.  Moreover, as evidenced by the significant amounts of responsive information Plaintiffs have sourced outside of the discovery process, WTNY is continuing its established practice of intentionally hiding material facts from Plaintiffs.

WTNY's refusal to "fully and completely" answer Interrogatories Nos. 9 and 15 is part of a larger effort to undermine the Plaintiffs' right to a fair trial.  The Court has broad discretion to fashion an appropriate remedy.  Here, in the face of repeated instances of WTNY not being candid with Plaintiffs and the Court, an appropriate and measured sanction is to prohibit WTNY from using its intentional discovery violations to defend itself.  Accordingly, Plaintiffs respectfully request the following relief:

> ➢ An order prohibiting WTNY from defending against Plaintiffs' claims by introducing evidence or arguing that the acts, omissions, knowledge, policies, and conduct of WTNY, WTPA, the Branch Office, the Governing

---

[3] Even short of proving an affirmative defense, WTNY's trial strategy will be to sow confusion about the Jehovah's Witnesses' organizational structure and argue that it cannot be liable for the knowledge, acts, and omissions of local, regional, and national Jehovah's Witnesses agents.

Body, and local congregations are not attributable to WTNY.  Fed. R. Civ. P. 37(b)(2)(A)(ii).

➤ An order prohibiting WTNY from defending against Plaintiffs' claims by introducing evidence or arguing asserting that the acts, omissions, knowledge, policies, and conduct of the Governing Body are distinct from the acts, knowledge, policies, and conduct of the WTNY.  Fed. R. Civ. P. 37(b)(2)(A)(ii), (iii).

➤ Striking all WTNY Affirmative Defenses that rely on the assertion that WTNY is not responsible for the acts and conduct of other Jehovah's Witnesses entities, including the Governing Body, WTPA, the U.S. Branch Office, and the Hardin Congregation.  Fed. R. Civ. P. 37(b)(2)(A)(iii).

➤ A ruling that WTNY, WTPA, the U.S. Branch Office, the Governing Body, and local congregations are all alter egos of each other and are (1) vicariously liable for each other's actions during the time period at issue in this case; and (2) notice of the child sexual abuse occurring in Hardin to one of these entities constituted notice to all.  Fed. R. Civ. P. 37(b)(2)(A)(i).

DATED this 6th day of November, 2023.

By: /s/ Ryan Shaffer
    Ryan R. Shaffer
    MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(d)(2), Plaintiff hereby certifies that this brief complies with the length requirement for briefs, and that this brief contains 3,495 words, excluding the caption, certificates of service, and compliance, table of contents, and authorities, and exhibit index.

By: /s/ Ryan Shaffer
Ryan R. Shaffer
MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 1.4, this document has been served on all parties via electronic service through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

By: /s/ Ryan Shaffer
Ryan R. Shaffer
MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*