Jon A. Wilson
Brett C. Jensen
Michael P. Sarabia
BROWN LAW FIRM, P.C.
315 North 24th Street
P.O. Drawer 849
Billings, MT 59103-0849
Tel. (406) 248-2611
Fax (406) 248-3128

Joel M. Taylor, Esq. (appearing *pro hac vice*)
MILLER MCNAMARA & TAYLOR LLP
100 South Bedford Road, Suite 340
Mount Kisco, New York 10549
Tel./E-Fax (845) 288-0844
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | Cause No. CV 20-52-BLG-SPW |
| Plaintiffs, | **DEFENDANT WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR ORDER DIRECTING RULE 35, FED. R. CIV. P. EXAMS** |
| vs. | |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR., | |
| Defendants. | |

| | |
|---|---|
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC. | ) ) ) ) |
| Cross-Claimant, | ) ) ) |
| vs. | ) ) ) |
| BRUCE MAPLEY SR., | ) ) ) |
| Cross-Claim Defendant. | ) ) ) |

**COMES NOW**, Defendant Watchtower Bible and Tract Society of New York, Inc. ("WTNY"), by and through its attorneys of record, and respectfully submits its Reply Brief in Support of Motion for an Order Directing Rule 35, Fed. R. Civ. P., mental examinations of the Plaintiffs Tracy Caekaert and Camillia Mapley by Michael Bütz, Ph.D.

## INTRODUCTION

Plaintiffs' Response Brief in Opposition to Defendant WTNY's Motion for Order Directing Rule 35, Fed. R. Civ. P., Exams (Doc. 280, hereafter "Response Br.") provides little to no authority in support of the arguments therein. Plaintiffs' arguments are address below, but they are distractions: the focus should be on WTNY's entitlement to Rule 35 examinations, and the scope thereof, as addressed in WTNY's opening Brief.

## **ARGUMENT**

### I. Plaintiffs fail to establish Dr. Bütz has an obligation to provide test raw data to unqualified individuals.

Plaintiffs allege "multiple courts" have informed Dr. Bütz that "he has an obligation to produce the raw test data underlying his opinions." (Response Br., pp. 2; *see also* Response Br., pp. 5-6). In support of this argument, Plaintiffs attached as exhibits several non-binding orders from state district courts. Two of these orders involved a parenting evaluation statute that is not applicable here, and the other involved an agreed-to protective order that disclosed data to only a qualified psychologist.

In *Shepherd, et al. v. Matrix Production Company, et al.*, No. 17594 (Wyo. Dist. 2021), the court entered a protective order, based on an agreement between the parties and Dr. Bütz, providing, inter alia, that Dr. Bütz was to provide test raw data to David Hartman, Ph.D. (*See* Doc. 280-1, pp. 5-6; *see also* Bütz Aff., ¶ 6).[1] Far from supporting Plaintiffs' position that test raw data should be provided to unqualified individuals such as Plaintiffs' counsel and Dr. Holmberg, the protective order in *Shepherd* actually supports WTNY and Dr. Bütz's position: it required Dr. Bütz to provide the test raw data only to Dr. David Hartman, who is/was a qualified psychologist like Plaintiffs' expert, Dr. Bone. (Bütz Aff., ¶¶ 6, 31).

---

[1] Dr. Bütz's Affidavit, with its accompanying exhibits, is filed herewith as Exhibit A.

The Judge Todd order Plaintiffs provide—*Horton v. Horton*, No. DR11978 (Mont. Dist. 2021)—also does not support their position. There, Dr. Bütz served as the court's appointed investigator in a parenting evaluation matter. (*See* Doc. 280-1, pp. 14-15; *see also* Bütz Aff., ¶ 7). Pursuant to a statute governing court-appointed investigators in family law matters (Mont. Code Ann. § 40-4-215), the court ordered Dr. Bütz to produce his investigative file, including all raw data. (*See* Doc. 280-1, pp. 15-17; *see also* Bütz Aff., ¶ 7)). In this case, Dr. Bütz is not serving as a court-appointed investigator in a parenting evaluation, and he is not governed by Mont. Code Ann. § 40-4-215, nor is his work in this case governed by Montana administrative rules that apply to "psychologists who perform parenting plan evaluations[,]" as was the situation in *Horton v. Horton*. (*See* Doc. 280-1, p. 15). To the contrary, in this case Mont. Admin. R. 24.189.2305(9) applies to require Dr. Bütz to protect test raw data from unqualified individuals. (*See* Bütz Aff., ¶ 33). *Horton v. Horton*, then, is inapposite.[2] Moreover, the terms and conditions of Dr. Bütz's contracts with test developers require him to protect copywritten material, a critical fact wholly ignored by Plaintiffs. (*See* Bütz Aff., ¶¶ 5, 34).

---

[2] For the same reasons, the third court order provided by Plaintiffs, from the case of *Ramsey v. Ramsey*, No. DR200160 (Mont. Dist. 2021), is also inapposite as it was another Montana family law case where Dr. Bütz was ordered to provide his investigative file. (*See* Doc. 280-1, p. 19). In both *Horton v. Horton* and *Ramsey v. Ramsey*, Dr. Bütz was appointed as an investigator under the aforementioned statute, rather than a parenting plan evaluator as he had been accustomed to, and the appointment took him by surprise. (Bütz Aff. ¶ 7). For a more complete discussion by Dr. Bütz of his appointment in these cases, *see* Bütz Aff. ¶¶ 7-8, 10-11.

Finally, Plaintiffs incorrectly allege "Dr. Bütz wrongly argues that ethical rules prohibit him from producing his raw testing data[,] (Response Br., p. 6), and do not fully address WTNY and Dr. Bütz's argument that Mont. Admin. R. 24.189.2305(9) requires him to protect test raw data from unqualified individuals. (*See* Doc. 267, p. 21 of 27).[3] Plaintiffs' only argument regarding that administrative rule is that it merely requires a psychologist to "make reasonable efforts to avoid the release of such data to untrained persons." (Response Br., p. 7, fn. 2). WTNY's Motion, and its argument that the test raw data should not be provided to unqualified individuals, is that reasonable effort. (*See* Bütz Aff. ¶ 33). Further, Plaintiffs fail to address the fact Dr. Bütz is contractually required to protect test security and the copyrights of vendors and test developers such as Pearson. (*Id.*, ¶¶ 5, 34).

In total, Dr. Bütz should not be required to provide test raw data to unqualified individuals because (1) Dr. Bone will receive and interpret the data on behalf of Plaintiffs; (2) the applicable Montana regulation requires Dr. Bütz to protect the test raw data from unqualified individuals; and (3) he is contractually required to protect it.

---

[3] Clearly, Dr. Bütz will provide the test raw data when compelled by a Court—as was in the case in the aforementioned *Horton v. Horton* and *Ramsey v. Ramsey*. (*See* Bütz Aff. ¶¶ 7-8, 10).

## II.  For purposes of the Rules of Civil Procedure, Dr. Bütz has disclosed sufficient information about the testing, and scope of the testing, he intends to administer.

Plaintiffs argue WTNY and Dr. Bütz have not sufficiently defined the scope of the proposed Rule 35 examinations. (*See* Response Br. pp. 10-11). Their authority for this argument is, primarily, *Marroni v. Matey*, 82 FRD 371, 372 (E.D. Pa. 1979), which they cite for the rule that "a general statement that 'psychological testing' will be conducted is not sufficient to define the scope of a proposed Rule 35 exam'"). (*See* Response Br. pp. 10 (internal citations omitted)).

However, WTNY and Dr. Bütz have provided much more than just a "general statement" that psychological testing will be conducted: "These will be academic, cognitive and personality assessment instruments." (Doc. 267-11, p. 5; *see also* Bütz Aff. ¶¶ 13, 24, 28, 39).  Dr. Bütz's letters of April 25, 2023, May 26, 2023, and July 17, 2023 all provide sufficient information about the type of testing to be done. (*See* Doc. 267-5, p. 4; Doc. 267-7, pp. 5-6; 267-11, p. 5). The information provided in these letters is fully responsive to Plaintiffs' previous position that they "are requesting identification of the broad categories of tests that shall be given to the plaintiffs…" (Doc. 267-10, p. 2).

Plaintiffs go on to argue they need to know whether the proposed examinations will include "neuropsychological testing." (Response Br. p. 10). They represent they can find no Ninth Circuit Court of Appeals authority on whether a

Page 6 of 14

Rule 35 examiner is required to disclose an intent to conduct neuropsychological testing, and instead rely solely on the *Marroni* rule—which, as discussed above, only states that a mere general statement that psychological testing will be conducted is insufficient. *Marroni* does not support their position: Unlike the proposed Rule 35 examination in this case, *Marroni* involved not only a general request for psychological testing without the specific categories of tests, but also a failure by the requesting party to identify a Rule 35 examiner. *See Marroni*, 82 F.R.D. at 372 (E.D. Pa. 1979).[4]

In total, WTNY and Dr. Bütz have provided sufficient information about the proposed Rule 35 examinations in compliance with the binding precedent of *Schlagenhauf v. Holder*, 379 U.S. 104 (1964), and in accordance with the guidance of the Montana Supreme Court in *Winslow v. Montana Rail Link, Inc.*, 2001 MT 269, 307 Mont. 269, 38 P.3d 148. Plaintiffs have stated "Dr. Bütz must disclose the general categories of testing…" (Doc. 267-11, p. 5). He has. (*See, e.g.*, Bütz Aff., ¶ 13). While the academic, cognitive, and personality assessments Dr. Bütz intends to administer could be considered part of a neuropsychological evaluation, he does not intend to conduct a neuropsychological evaluation. (*See* Bütz Aff., ¶¶ 28-30).

---

[4] Plaintiffs also cite *Williams v. Roche*, No. CIVS021901DFLJFMPS, 2005 WL 8176527, at *2 (E.D. Cal. July 15, 2005), stating it addressed "the same principle at issue here." (Response Br., p. 10, fn 5). The *Williams* case does not address the issue here regarding Plaintiffs' insistence that Dr Butz must state whether his tests constitute neuropsychological testing. *See Williams v. Roche*, No. CIVS021901DFLJFMPS, 2005 WL 8176527, at *2 (E.D. Cal. July 15, 2005). It simply reiterated *Marroni*, which is inapplicable to the dispute here, as noted above. *Roche*, in fact, ordered the psychological testing be conducted and did not address whether the request therefore was too general.

To the extent Plaintiffs have requested more specific information—including the actual questions that will be administered—their request should be denied: Dr. Bütz typically does not provide specific questions because it would jeopardize the integrity of the tests by allowing putative examinees to potentially cheat. (*See* Bütz Aff., ¶¶ 24, 34, 40).

### III. The categories of tests Dr. Bütz intends to administer are appropriate to address Plaintiffs' alleged mental and psychological damages.

Building on their argument that Dr. Butz needs to disclose whether the proposed examinations will include neuropsychological testing, Plaintiffs claim that the damages they allege here—including PTSD, Dissociative Identity Disorder and Multiple Personality Disorder—are not "neuropsychological injuries," and thus any neuropsychological tests would be inappropriate to administer. (Resp. Br. p. 12). Neuropsychological tests, Plaintiffs argue, address only "mechanical" trauma. (*Id*.). Plaintiffs' definition of neuropsychological testing is, at best, misleading. (Bütz Aff., ¶¶ 28-30).[5]

The categories of tests Dr. Bütz intends to administer, and which have been disclosed to Plaintiffs, are appropriate to address the damages and conditions in

---

[5] Dr. Bütz has provided, for the Court's review, citations to several scholarly publications that provide an in-depth picture of the relation between trauma and neuropsychology. (Bütz Aff., ¶ 30).

controversy in this case, including Plaintiffs' alleged PTSD, Dissociative Identity Disorder and Multiple Personality Disorder. (Bütz Aff., ¶ 39).

### IV. A remote examination of Plaintiff Mapley is not adequate and it is not unduly burdensome to conduct an in-person examination.

Plaintiffs argue both that (1) a remote examination of Plaintiff Mapley would have "no demonstrable impact on the validity" thereof; (Response Br., p. 15); and (2) it would be unduly burdensome for the examination to take place in person because of the expenses of either paying for Dr. Bütz to travel to Australia, or for Plaintiff Mapley to travel to Montana. (Response Br., pp. 13-14).

First, as stated in WTNY's opening Brief, only in-person examinations of the type appropriate here provide the requisite degree of scientific certainty. (Doc. 267, p. 20; *see also* (Bütz Aff., ¶¶ 26, 41). There are no generally accepted governing norms or standards for conducting remote forensic examinations—they are simply inappropriate. (*See* Bütz Aff., ¶ 41).

Secondly, Plaintiff Mapley has provided a declaration alleging the difficulties she would face if she were forced to travel to the in-state forum, but without addressing the difficulty of attending an in-person examination in Australia by Dr. Bütz. (*See* Response Br., pp. 14-15; *see also* Doc. 280-5). While Plaintiffs allege in a footnote it would cost "at least $23,000.00" to send Dr. Bütz to Australia, they have historically agreed to pay for Dr. Bütz's "reasonable" travel costs to Australia—including coach-class airfare and hotel—and have heretofore only

disputed his in-transit professional fees. (*See* Doc. 267-12, p. 2 of 14). Plaintiffs argue the general rule in *McCloskey v. United Parcel Serv. Gen. Servs. Co.*, 171 F.R.D. 268 (D. Or. 1997) "is based primarily on the concern of obtaining the examining doctor's presence at trial." (Response Br. p. 14). Plaintiffs mischaracterize the policy rationale of this general rule:

> The general rule is that the party being examined must pay his or her own travel expenses to an examination in the forum state. *Eckmyre v. Lambert*, 1988 Lexis 10849 (D.Kan.1988). The rule is a sensible one—usually the plaintiff is being examined in the forum chosen by the plaintiff. In such a case, the plaintiff is expected to pay the costs of the litigation carried on in that forum. Furthermore, a doctor's presence at trial is made more likely if the doctor is chosen within the jurisdiction of the court. The plaintiffs before this court have cited no case in which the party requesting physical examinations was required to pay travel expenses for those being examined.

*McCloskey v. United Parcel Serv. Gen. Servs. Co.*, 171 F.R.D. 268, 270 (D. Or. 1997)(emphasis added). Clearly, the primary rationale supporting the rule is that a plaintiff is sensibly "expected to pay the costs of the litigation carried on in" the forum the plaintiff chooses. The likelihood of the doctor's presence at trial is a secondary rationale—thus the use of "[f]urthermore" to introduce the sentence about securing a doctor's presence at trial. Importantly here, just as in *McCloskey*, "[t]he plaintiffs before this court have cited no case in which the party requesting physical examinations was required to pay travel expenses for those being examined." *Id*.

> **V.    Plaintiffs provide no authority for the notion the Rules of Civil Procedure forbid Dr. Bütz's authorization forms, which are typically used for the types of tests to be administered.**

Plaintiffs claim the authorization forms Dr. Bütz asks them to sign require waiver of their right to material Dr. Bütz has to disclose pursuant to Rules 26 and 35, Fed. R. Civ. P. (Response Br., p. 6).[6] First, WTNY and Dr. Bütz have agreed to provide the test raw data to Plaintiffs' expert Dr. Bone—there is thus no waiver of any right they may have. (*See* Bütz Aff., ¶¶ 4, 25, 32, 36). Secondly, Plaintiffs have not provided any authority that there is a right, under the Rules of Civil Procedure, for unqualified individuals to review and interpret test raw data.

The material in question and at issue is the above-discussed test raw data—which the authorization form protects. (*See* Doc. 280-2). As discussed above, Dr. Bütz should not be required to disclose test raw data to unqualified individuals, and any argument to the contrary makes little sense.

Plaintiffs argue for the use of "a more typical form[.]" (Response Br., p. 9). The authorization forms—at Doc. 280-2—are typical forms for these types of examinations. (Bütz Aff., ¶ 37). As for some of Plaintiffs' other concerns—e.g., who is required to pay Dr. Bütz's fees—the forms can be revised. (*Id.* ¶¶ 37-38). To be

---

[6] Plaintiffs cite *Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 824 (9th Cir. 2011) in support of their position that Fed. R. Civ. P. 26 requires Dr. Butz to provide test raw data to unqualified individuals. (Resp. Br., p. 3). *Goodman*, however, did not involve the court requiring disclosure of psychological test raw data; rather, the court noted the plaintiff's treating physicians did not disclose their causation opinions—which were not contained in her medical records—and therefore the lower court was correct to exclude their testimony. *See Goodman*, 644 F.3d at 824; *see also* (Pls.' Resp. Br., p. 3).

clear, Plaintiffs will not be required to pay any of Dr. Bütz's fees. Dr. Bütz has represented he is a neutral evaluator. (Bütz Aff., ¶ 12). However, WTNY has already agreed the authorization forms are a shield, not a sword, and WTNY will stipulate that the forms cannot be used to impeach Plaintiffs at trial: Plaintiffs will maintain their right to challenge Dr. Bütz's objectivity.

### VI. The Court Should Reserve Judgment as to any Potential Waiver of Attorney-Client Privilege During the Rule 35 Exams until a Dispute Arises and Counsel Should Follow the Procedure Provided by the Federal Rules of Evidence.

Plaintiffs continue to insist that "any unintentional waiver of attorney-client privilege should be stricken" from any examination. (Response Br. 16). However, they provide no authority supporting this argument. WTNY stands by its arguments in its opening Brief. (See Doc. 280, pp. 16-18).

## CONCLUSION

For the reasons discussed above and in WTNY's opening Brief in Support of Motion for Order Directing Rule 35, Fed. R. Civ. P. Exams, WTNY requests the Court grant its Motion.

DATED this 8th day of November, 2023.

By: /s/ Brett C. Jensen
Brett C. Jensen / Michael P. Sarabia
BROWN LAW FIRM, P.C.
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on November 8th, 2023, a copy of the foregoing was served on the following person(s):

1. U.S. District Court, Billings Division

2. Robert L. Stepans/Ryan R. Shaffer/James C. Murnion
   MEYER, SHAFFER & STEPANS, PLLP
   430 Ryman Street
   Missoula, MT 59802

3. Matthew L. Merrill (appearing *pro hac vice*)
   MERRILL LAW, LLC
   1863 Wazee Street, Suite 3A
   Denver, CO 80202

4. Gerry P. Fagan/Christopher T. Sweeney/Jordan W. FitzGerald
   MOULTON BELLINGHAM PC
   P.O. Box 2559
   Billings, MT 59103-2559

5. Bruce G. Mapley Sr.
   3905 Caylan Cove
   Birmingham, AL 35215

by the following means:

| | | | |
|---|---|---|---|
| _1-4_ | CM/ECF | ____ | Fax |
| ____ | Hand Delivery | ____ | E-Mail |
| _5_ | U.S. Mail | ____ | Overnight Delivery Services |

By:  /s/ Brett C. Jensen
Brett C. Jensen
BROWN LAW FIRM, P.C.
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(d)(2)(E), the undersigned hereby certifies this brief complies with L.R. 7.1(d)(2)(A). According to the word-processing unit used to prepare this brief, the word count is 2,765 words excluding caption, table of contents and authorities, exhibit index, and certificates of service and compliance.

DATED this 8th day of November, 2023.

By: /s/ Brett C. Jensen
Brett C. Jensen
BROWN LAW FIRM, P.C.
*Attorneys for Defendants Watchtower Bible and Tract Society of New York, Inc.*