Jon A. Wilson
Brett C. Jensen
Michael P. Sarabia
BROWN LAW FIRM, P.C.
315 North 24th Street
P.O. Drawer 849
Billings, MT 59103-0849
Tel. (406) 248-2611
Fax (406) 248-3128

Joel M. Taylor, Esq. (appearing *pro hac vice*)
MILLER MCNAMARA & TAYLOR LLP
100 South Bedford Road, Suite 340
Mount Kisco, New York 10549
Tel./E-Fax (845) 288-0844
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, <br><br> Plaintiffs, <br><br> vs. <br><br> WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR., <br><br> Defendants. | Cause No. CV 20-52-BLG-SPW <br><br> **DEFENDANT WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS (DOC. 287).** |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ ii-iii

EXHIBIT INDEX ..................................................................................iv

INTRODUCTION ................................................................................ 1

FACTUAL BACKGROUND ..............................................................2-3

LEGAL ARGUMENT ......................................................................... 3

    A.    Plaintiffs' Motion for Sanctions Should Be Denied for Their Failure to Adequately Meet and Confer in Violation of L.R. 7(c)()1 and 26(c)(1). ...................................................................3-4

    B.    Plaintiffs' Motion is Untimely .........................................4-6

    C.    WTNY Provided Appropriate Responses to Interrogatories 9 and 15 ...........................................................................6-12

    D.    Plaintiffs' Use of Documents from Other Cases Does Not Support Sanctions.....................................................13-19

    E.    Plaintiffs' Proposed Sanctions are Unwarranted ........19-21

CONCLUSION .................................................................................. 21

CERTIFICATE OF COMPLIANCE.................................................... 23

CERTIFICATE OF SERVICE ........................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Brandt v. Vulcan, Inc.*
    30 F.3d 752 (7th Cir. 1994) .......................................................................... 5

*Clark v. U.S.*
    (D. Haw.) Case No. 06-CV-00544 ............................................................. 4, 5

*Goodyear v. Haeger*
    581 U.S. 101 (2017).................................................................................... 10

*Insurance Company of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*
    456 U.S. 694, 102 S.Ct. 2099 (1982) ....................................................19-20

*Kedroff v. St. Nicholas Cathedral*
    344 U.S. 94 (1952)...................................................................................... 12

*Lopez v. Watchtower*
    246 Cal.App.4th 566 (2016) ..................................................................18-19

*Mercy v. County of Suffolk, New York*
    748 F.2d 52 (2d Cir.1984) ........................................................................... 5

*Osborne v. Billings Clinic*
    2015 WL 150252 (D. Mont. 2015)............................................................... 4

*Pressley v. Boehlke*
    33 F.R.D. 316 (W.D.N.C. 1963).................................................................. 9

*Primus Auto Fin. Servs., Inc. v. Batarse*
    115 F.3d 644 (9th Cir. 1997) ...................................................................... 1

*R&R Sails, Inc. v. Insurance Co. of Pennsylvania*
    673 F.3d 1240 (9th Cir. 2012) .................................................................... 1

*Shamis v. Ambassador Factors Corp.*
    34 F. Supp. 2d 879 (S.D.N.Y.1999) ........................................................... 5

*THEC International-Hamdard Cordova Group-Nazari*
*Constr. Co. v. Cohen Mohr, LLP*
      301 F.Supp.3d 1 (D.D.C. 2018)................................................................4, 5

*Treasure Island, LLC v. Affiliated Fm Insurance Co.*
      2023 WL 62955500 (D. Nev. 2023)..........................................................4, 5

*Yankeeclub, LLC v. Fendley*
      2021 WL 3603053 (D. Mont. 2021)..............................................................3

## **Other Authorities**

8B FED. PRAC. & PROC. CIV. § 2177 (3d ed.) ...........................................................9

8B FED. PRAC. & PROC. CIV. § 2285 (3d ed.) ...........................................................4

## **Rules**

L.R. 7.1(c)(1) ...........................................................................................................3, 4

L.R. 26(c)(1) ...........................................................................................................3, 4

# **EXHIBIT INDEX**

| | |
|---|---|
| Exhibit 1 | WTNY's Second Supplemental Responses to Plaintiffs' Second Set of Jurisdictional Discovery on September 21, 2021 (without exhibits) |
| Exhibit 2 | October 13, 2022, letter from Plaintiffs' counsel to WTNY |
| Exhibit 3 | October 28, 2022, letter from WTNY to Plaintiffs' counsel. |
| Exhibit 4 | November 4, 2022, letter from Plaintiffs' counsel to WTNY. |
| Exhibit 5 | November 11, 2022, letter from WTNY to Plaintiffs' counsel. |
| Exhibit 6 | October 9, 2023, letter from Plaintiffs' counsel to WTNY. |
| Exhibit 7 | WTNY's Responses to Plaintiffs' Fourth Set of Combined Interrogatories, Requests for Production and Requests for Admissions |

**COMES NOW**, Defendant Watchtower Bible and Tract Society of New York, Inc. ("WTNY"), and submits its Response Brief in Opposition to Plaintiffs' Motion for Sanctions (Doc. 288).

## INTRODUCTION

More than two years after WTNY provided supplemental responses pursuant to the Court's order (Doc. 85), and without responding to WTNY's meet-and confer letter, Plaintiffs move for sanctions (Doc. 288). WTNY has never refused to provide additional information. Plaintiffs have never specified what they're looking for, raising only vague objections to WTNY's responses. WTNY is willing to provide additional information—and the best way to do this is through a 30(b)(6) deposition. Plaintiffs have ignored WTNY's repeated offers of a 30(b)(6) deposition.

Plaintiffs' motion for sanctions violates local rules, is untimely, and has no merit. Sanctions "should be reserved for the rare and exceptional case …." *See Primus Auto Fin. Servs., Inc. v. Batarse,* 115 F.3d 644, 649 (9th Cir. 1997). This is not such a case. Especially so when the purported failure to disclose information is harmless. *R&R Sails, Inc. v. Insurance Co. of Pennsylvania,* 673 F.3d 1240, 1247 (9th Cir. 2012). Any harm Plaintiff perceives can be cured by a Rule 30(b)(6) deposition or an appropriate meet-and-confer discussion wherein any supposed deficiencies can be addressed.

## FACTUAL BACKGROUND

The Court's Order re Motion to Compel Jurisdictional Discovery Responses and for Costs and Fees dated August 24, 2021 (Doc. 85) (hereinafter "Order re Motion to Compel"), ordered WTNY to provide further responses to certain discovery by September 21, 2021.   WTNY served its Second Supplemental Responses to Plaintiffs' Second Set of Jurisdictional Discovery on September 21, 2021 (hereinafter "Second Supplemental Responses").  A copy, without exhibits, is attached as Exhibit 1.  The Second Supplemental Responses included Supplemental Answers to Interrogatory Nos. 9 and 15.

More than a year later, by letter dated October 13, 2022, Plaintiffs raised issues with some aspects of those Second Supplemental Responses.  *See* Exhibit 2.  But Plaintiffs raised no issues with the Supplemental Answers to Interrogatories 9 and 15.  WTNY provided additional information by letter dated October 28, 2022.  *See* Exhibit 3 (without enclosures).  Plaintiffs raised issues with WTNY's response by letter dated November 4, 2022.  *See* Exhibit 4.  That letter likewise raised no issues with the Supplemental Answers to Interrogatories 9 and 15.  WTNY responded by letter dated November 11, 2022.  *See* Exhibit 5.

By letter dated October 9, 2023, Plaintiffs for the first time raised concerns with the Supplemental Answers to Interrogatories 9 and 15 served over two years before.  *See* Exhibit 6. Plaintiffs said only that "WTNY has never produced a full

and thorough answer to the interrogatories." *Id.*, p. 2. Plaintiffs offered no specifics, just this vague objection.

WTNY responded by letter dated October 23, 2023. (Doc. 288-12.) In response to Plaintiffs' vague concerns about Interrogatories 9 and 15, WTNY referred Plaintiffs to the Second Supplemental Responses, which WTNY noted "provided full and thorough answers to these Interrogatories in compliance with the Court's Order at Doc. 85." *Id.*, pp. 2-3.

Plaintiffs did not respond to WTNY's October 23, 2023, letter. Rather, Plaintiffs filed this Motion for Sanctions. (Doc. 287).

## **LEGAL ARGUMENT**

**A.    PLAINTIFFS' MOTION FOR SANCTIONS SHOULD BE DENIED FOR THEIR FAILURE TO ADEQUATELY MEET AND CONFER IN VIOLATION OF L.R. 7.1(c)(1) AND 26(c)(1)**

L.R. 7.1(c)(1) requires in pertinent part: "The text of a non-dispositive motion must state that other parties have been contacted and state whether any party objects to the motion." As Chief District Judge Brian Morris has recognized, this rule "forces the parties to contact each other with their issues before involving the Court." *Yankeeclub, LLC v. Fendley*, 2021 WL 3603053, *6 (D. Mont. 2021). Plaintiffs violated this requirement.

Plaintiffs also failed to confer in good faith before filing this motion. L.R. 26(c)(1) provides:

> The court will deny any discovery motion unless the parties have conferred concerning all disputed issues before the motion is filed. The mere sending of a written, electronic, or voicemail communication does not satisfy this requirement. Rather, this requirement can be satisfied only through direct dialogue and discussion in a face-to-face meeting (whether in person or by electronic means), in a telephone conversation, or in detailed, comprehensive correspondence.

After waiting over two years to raise any concerns with the Supplemental Answers to Interrogatories 9 and 15, Plaintiffs raised a perfunctory demand for a "full and thorough" response. As this Court has recognized, sending a demand is insufficient to satisfy the requirements of L.R. 26(c)(1). *Osborne v. Billings Clinic*, 2015 WL 150252, *1 (D. Mont. 2015). Further, Plaintiffs ignored WTNY's response to their demand. Plaintiffs' Motion for Sanctions should be denied due to Plaintiffs' violations of both L.R. 7.1(c)(1) and L.R. 26(c)(1).

## B.   PLAINTIFFS' MOTION IS UNTIMELY.

Courts "will often deny" Rule 37 motions "because the moving party delayed too long." 8B Fed. Prac. & Proc. Civ. § 2285 (3d ed.). "Although Rule 37 does not establish any express time limits within which a motion for sanctions must be filed, unreasonable delay may render such a motion untimely." *THEC International-Hamdard Cordova Group-Nazari Constr. Co. v. Cohen Mohr, LLP*, 301 F.Supp.3d 1, 11 (D.D.C. 2018)(brackets and citations omitted).[1] The timeliness of a Rule 37

---

[1] Counsel has not been able to find a Ninth Circuit Court of Appeals case addressing this issue of timeliness of a Rule 37 motion. However, a few district courts in the Ninth Circuit have addressed it. *See Treasure Island, LLC v. Affiliated Fm Insurance Co*., 2023 WL 62955500 (D. Nev. 2023); and *Clark v. U.S*. (D. Haw.), Case No. 06-CV-00544 (1/7/2011 Order), discussed *infra*.

4

motion for sanctions "depends on such factors as when the movants learned of the discovery violations, how long they waited before bringing those alleged violations to the court's attention, and whether discovery has been completed." *Id*. at 11-12 [brackets and citations omitted].  *See also Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756 (7th Cir. 1994) (in the context of Rule 37(b), "unreasonable delay" standard applies); *Mercy v. County of Suffolk, New York*, 748 F.2d 52, 56 (2d Cir.1984) ("[A] motion for Rule 37 sanctions should be promptly made, thereby allowing the judge to rule on the matter when it is still fresh in his mind...."); *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 886 (S.D.N.Y.1999) ("unreasonable delay may render [Rule 37] motions untimely"); *Treasure Island, LLC v. Affiliated Fm Insurance Co.*, 2023 WL 62955500 (D. Nev. 2023) (Slip Copy, 9/26/2023 Order in Case No. 2:20-cv-00965-JCM-EJY ("Courts agree 'that a motion for sanctions, regardless of the source of authority for the imposition of sanctions, must be timely filed [citations omitted].  Courts also conclude 'that unreasonable delay in filing a motion for sanctions … may render the request untimely.' [citations omitted]; *Clark v. U.S.* (D. Haw.), Case No. 06-CV-00544 (1/7/2011 Order ["The timeliness of a motion for sanctions depends on such factors as when the movant learned of the discovery violation, how long [she] waited before bringing it to the court's attention, and whether discovery has been completed."].)

Plaintiffs have known of this purported issue with an alleged discovery violation for more than two years.  The deadline for completion of written discovery related to jurisdiction was February 26, 2021 (Doc. 42), and the deadline for depositions related to jurisdiction was April 30, 2021 (Doc. 49).

The motion is also untimely because the jurisdictional discovery to which it relates is moot.  WTPA withdrew its motion to dismiss for lack of jurisdiction and expressly "waive[d] its defense of lack of personal jurisdiction in this case" more than two years ago.  (Doc. 94).  To the extent the information relates to Plaintiffs' case in chief, different interrogatories in Plaintiffs' Fourth Set of Combined Interrogatories, Requests for Production, and Requests for Admissions covered the same issue, as discussed below.  And any perceived harm can be addressed by deposition or an appropriate meet-and-confer discussion.  For these reasons, Plaintiffs' Motion for Sanctions should be denied.

## C.  WTNY PROVIDED APPROPRIATE RESPONSES TO INTEROGATORIES 9 AND 15.

Interrogatory No. 9 contains five parts: "Identify [1] what the governing body does, [2] where it is located, [3] what it is responsible for, [4] how it makes decisions, [5] etc.?"  WTNY's response covered each part except for "etc."  First, WTNY stated that the Governing Body is a small group[2] of spiritually-mature Christians that

---

[2] There is no set number of persons who have membership on the Governing Body. The number fluctuates.

"provides spiritual guidance to Jehovah's Witnesses worldwide," Second, "Governing Body serves in Warwick, New York."  Third, its responsibility is to "provide[] spiritual guidance."  Fourth, it "follows the pattern set by 'the apostles and elders in Jerusalem' in the first century, who made important decisions on behalf of the entire Christian congregation.  (Acts 15:2)."[3]

On September 21, 2021, in response to the Court's Order re Motion to Compel, WTNY supplemented its response by explaining: "the Governing Body provides spiritual guidance and direction to all Jehovah's Witnesses, including, but not limited to, setting forth the scriptural beliefs and practices of the faith in conformance with the model set by first century Christians as recorded in the Bible." Further, anticipating the issue presently before the Court, WTNY volunteered information about what the Governing Body does not do.  "The Governing Body does not direct the day-to-day affairs of any congregation of Jehovah's Witnesses, but, during the time period in question, experienced elders in New York (members

---

[3] The Bible book of Acts, chapter 15 describes an issue that arose in the Christian congregation in connection with the Jewish requirement for circumcision.  The apostles and elders in Jerusalem examined Scriptural texts, held an "intense discussion," followed the leadings of holy spirit.  The decision is recorded at Acts 15:28-29: "For the holy spirit and we ourselves have favored adding no further burden to you except these necessary things:  to keep abstaining from things sacrificed to idols, from blood, from what is strangled, and from sexual immorality.  If you carefully keep yourselves from these things, you will prosper.  Good health to you!"  In other words, the religious decision was that Christians are not required to be circumcised to please God.  The Governing Body today follows the same pattern.  When an issue is addressed to them, they examine Scriptural texts, discuss the matter, follow the leadings of holy spirit and, after reaching a unanimous decision, communicate their decision on the issue.  That is the process described in WTNY's response to Interrogatory No. 9.  It is also described in various articles in the discovery material WTNY produced to Plaintiff.

of the religious order) acknowledged the appointment of congregation elders and ministerial servants."

Interrogatory 15 mentions seven distinct entities, some definite (Governing Body, WTPA, WTNY, United States Branch Office) others indefinite (United States District Offices, United States Circuit Offices, and local Kingdom Halls/congregations) and asks for WTNY's description of the relationships between them "including whether any of these bodies oversee or direct, in any way, the activities of any other of these bodies."  WTNY pointed out that there are no known District Offices or Circuit Offices, so the response was limited to a description of the four definite entities and local congregations.  WTNY responded:

- Each legal entity is separate and distinct from one another.
- WTNY prints Bibles and Bible literature used by Jehovah's Witnesses, some of it used in the ministry done by Jehovah's Witnesses in connection with Jesus' commission at Matthew 28:19, 20 [to make disciples and teach them].
- WTPA supports the worldwide preaching work, which includes printing bibles and bible literature.
- Congregations form to allow Jehovah's Witnesses and other interested ones to have meetings and gather for worship.
- The United States Branch Office has no legal or corporate control over any entity used by Jehovah's Witnesses.
- The Governing Body of Jehovah's Witnesses is an ecclesiastical group that cares for the spiritual interests of Jehovah's Witnesses.  It has no legal or corporate control over any entity used by Jehovah's Witnesses.

After consultation with Plaintiffs' counsel, WTNY supplemented its response to clarify how the Governing Body provides spiritual guidance:

- The Governing Body sets forth "the scriptural beliefs and practices of the faith in conformance with the model set by first century Christians as recorded in the Bible."

- The Governing Body does not direct the day-to-day affairs of any congregation.

WTNY provided a fair response to these interrogatories, especially considering the questions asked. "[E]ach answer must be read in the light of the question in deciding its sufficiency." 8B FED. PRAC. & PROC. CIV. § 2177 (3d ed.). "One reason Rule 33 works so well in practice is that vague and argumentative questions usually contain a built–in penalty." *Pressley v. Boehlke*, 33 F.R.D. 316, 317 (W.D.N.C. 1963). The "built-in penalty" for asking a broad and general question is a broad and general answer. *Id*. If an attorney asked a 30(b)(6) witness, "What does the Governing Body do?"[4] the witness might appropriately respond, "Could you please be more specific?" Or because it's such a general question, an appropriate and truthful response would be: "It provides spiritual guidance and direction to all Jehovah's Witnesses, including but not limited to, setting forth the scriptural beliefs and practices of the faith in conformance with the model set by first

---

[4] Such a question is akin to…"What the does the Pope do?", without more specificity, the answerer is left to provide a general response.

century Christians as recorded in the Bible." That is precisely what the supplemental response says.

Plaintiff could have used the meet-and-confer process to explain how WTNY's responses were deficient or to identify more precisely what information they wanted. Instead, Plaintiffs ignored that process and prematurely moved for sanctions. Plaintiffs could also have accepted WTNY's repeated offer of a 30(b)(6) deposition. Plaintiffs appear to have been more interested in manufacturing a discovery dispute than in getting information. This is a recognized ploy termed "litigation by sanction" and discussed in the article "The U.S. Supreme Court Reins in Discovery Sanctions," IADC Committee Newsletter, September 2017 issue. Describing *Goodyear v. Haeger*, 581 U.S. 101 (2017), the article states:

> Many plaintiffs' lawyers are skilled at leveraging discovery requests to trigger sanctions. They create a perception of bad faith by inundating courts with motions to compel additional discovery and motions for sanctions based upon speculation that responsive material is being withheld with nefarious intent. The lawyer's goal is to stroke a judge's anger, accuse the other party of obstructing justice, and seek sanctions. This practice is termed "litigation by sanction" because, by racking up enough sanctions, the merits of the case might never be reached at all." This strategy contravenes the strong public policy favoring trial on the merits.

WTNY's responses should also be viewed in light of other discovery in this case. Other interrogatories addressed the internal religious structure of Jehovah's Witnesses. For instance, Interrogatory 20 in Plaintiffs' Fourth Set of Combined

Interrogatories, Requests for Production and Requests for Admissions prompted a 5-page response, including specific citation to documents produced within the over 70,000 pages disclosed in this case. *See* Ex. 7.

Like Interrogatory 15 (jurisdictional discovery), Interrogatory 20 (discovery for the case in chief) describes definite entities (Service Department, Branch Office, Governing Body) and indefinite entities (Corporations and other groups). The response explained:

- Elders in the "Service Department"[5] provide Scripturally-based guidance to congregation elders. (WTNY provided the names of all the elders who worked in the Service Department during the relevant time.) Those elders were responsible for reviewing the Scriptural qualifications of elders and, working through WTNY, acknowledged any appointments on WTNY letterhead.

- The "Service Committee" was a group of Service Department elders responsible for oversight of the Service Department. WTNY provided the names of individuals on the committee during the relevant time, and identified the documents where those names may be found.

- The "Legal Department" did not exist in the 1970s, but was staffed in the early-1980s by paralegals who were assisted by private attorneys. In-house counsel was obtained in the late 1980s. A variety of ways the Legal Department assists Jehovah's Witnesses is set out.

- Before 2001, WTNY supported the faith by entering into contracts to rent facilities for conventions, facilitated communications between the Service Department and congregations throughout the United States, and any other business/religious needs of Jehovah's Witnesses. WTNY provided the names of the members of the Board of Directors during the relevant time.

---

[5] These are the "experienced elders" in New York who are responsible for evaluating recommendations for potential elders and ministerial servants in congregations of Jehovah Witnesses.

- The "Governing Body" is an ecclesiastical group that provides spiritual guidance to all who practice the faith of Jehovah's Witnesses. It sets forth the Scriptural beliefs and practices of the faith. It considers Jesus Christ to be its leader. WTNY provided the names of the members of the Governing Body during the relevant time.

It is admittedly difficult to explain religious terms to people who do not belong to the religion. Some terms are often used interchangeably to refer to religious functions that may be handled differently in different countries. A reader who is one of Jehovah's Witnesses would understand where a non-Jehovah's Witness may be confused.[6] WTNY has no ill-intent. WTNY responded in good faith to Plaintiffs' interrogatories, which ask WTNY to provide information about third parties that are not before the Court.

The fact that Plaintiff remains confused about the internal religious construct is irrelevant to the issue of sanctions.[7] Plaintiffs can easily obtain clarification by simply taking the deposition of WTNY's designated witness under Rule 30(b)(6).

---

[6] For instance, the terms "Society," "branch office," and "Service Department" are often used interchangeably but there is a distinct difference depending on time, place, and context. In addition, terms like "elder," "overseer," and "older man" may be used interchangeably, whereas the term "traveling overseer" could mean circuit and/or district overseers. A lack of contextual information could lead the uninformed to confusion, and may sound misleading. This could unjustifiably result in a judicial inquisition with a concomitant chilling effect on religion. These are harmful effects against which the Religion Clauses of the First Amendment to the U.S. Constitution and Article II, § 5 of the Montana Constitution provide protection. *See also Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 110, 116 (1952) (describing the church autonomy doctrine as interposing a structural barrier between internal ecclesiastical affairs and civil power by guaranteeing a sphere of activity with "independence from secular control or manipulation" i.e., a sphere where "civil courts exercise no jurisdiction."

[7] WTNY's responses were full and complete. Each entity is separate and distinct from the others, even though they work in close cooperation to facilitate the religious activities of Jehovah's Witnesses.

**D.     PLAINTIFFS' USE OF DOCUMENTS FROM OTHER CASES DOES NOT SUPPORT SANCTIONS.[8]**

In an unfair attempt to portray WTNY as a bad actor, Plaintiffs provide the Court with documents they claim were obtained from sources outside discovery in this case.  Only Exhibits A and E attached to Plaintiffs' Brief relate directly to this case.

Exhibit B is a Declaration from a case in Oregon.  It describes various religious activities related to the appointment of elders.  Plaintiffs misrepresent the content of the Declaration and intentionally omit the many references to the Bible to secularize an ecclesiastical process despite the declarant's statement that elders who make decisions rely on "guidelines outlined in the Holy Scriptures adopted by the Governing Body of Jehovah's Witnesses."  (Plaintiffs' Ex. B at ¶ 5).  This is entirely consistent with WTNY's responses to Interrogatories 9 and 15 wherein spiritual oversight is vested in the Governing Body.  Plaintiff impugns WTNY's evidence in this case based on the content of that Declaration without cross-examining any witness to explain their perceived contradictions which are wholly rooted in Plaintiffs' willful blindness.  The Declaration is irrelevant to the facts of this case.  It sheds no light on whether WTNY had a duty to report or whether WTNY was negligent in connection with Plaintiffs' purported abuse.

---

[8] The Exhibits A-Q referenced in this section are the exhibits attached to Plaintiffs' Brief in Support of Motion for Sanctions (Doc. 288).

Exhibit C is an excerpt from a PMK deposition in a California case.  Contrary to Plaintiffs' assertion that WTNY "refuses to disclose" information in that transcript, WTNY produced it in this case.[9]  Plaintiffs take a statement out of context and misrepresent a response to a hypothetical and incomplete question regarding "matters of policy" requiring approval by the Governing Body.  But Mr. Ashe also said that the Governing Body does <u>not</u> approve every letter containing directions to congregations.  (Plaintiffs' Ex. C, 35:9-23).  Mr. Ashe's testimony is consistent with WTNY's Responses to Interrogatories 9 and 15.  The Governing Body sets forth "the scriptural beliefs and practices of the faith." Those religious practices (policies) have existed for centuries as recorded in the Bible.

Exhibit D is an Answer filed in the Eastern District of Washington more than 20 years ago.  Contrary to Plaintiffs' contentions, that Answer is consistent with WTNY's Responses to Interrogatories 9 and 15 in this case.  It describes the Governing Body's "spiritual oversight" in terms of the "worldwide" association of Jehovah's Witnesses "as well as for all mankind in general."  The terminology needs to be understood in its spiritual context i.e., the context of Bible verses such as Matthew 24:14 (the Good News of God's Kingdom must be preached "in the entire inhabited earth") and Matthew 28:19-20 ("make disciples of people in all the nations").  The Governing Body has a spiritual obligation to tell people everywhere

---

[9] WTNY produced the entire transcript marked Confidential at WTNY 002174 – 002247.

about God's Kingdom to the benefit of the spiritual welfare of all people.  Clearly, nobody can literally oversee everyone worldwide.  Plaintiffs read more into those statements than is reasonable.  It is impossible for the Governing Body to do what Plaintiff seeks to imply, i.e. personal involvement in the spiritual oversight of every person or personal involvement in the appointment of every elder in every congregation. They provide spiritual guidance based on the Bible.

Exhibit E is a transcript of a fact witness in this case.[10]  Mr. Lovett does not speak for WTNY.  Notably, Plaintiffs misrepresent Mr. Lovett's testimony.  He acknowledged that he prepared a report on his visit to the Hardin Congregation. Plaintiffs took Mr. Lovett's testimony and extrapolated that "Reports about known child abusers, like the 1978 report about known child abuser, Gunnar Hain, were sent to the U.S. Branch Office".  The troubling part about this extrapolation is that it suggests a non-fact.  Plaintiffs can point to no evidence that WTNY or any religious construct in New York associated with Jehovah's Witnesses had any knowledge of Mr. Hain  and abuse in the 1970s. To the extent Mr. Lovett's use of the term "U.S. Branch" is perceived to be inconsistent with WTNY's position, Plaintiff is entitled to use it to cross-examine WTNY's designated representative.

Exhibit F is a declaration by Thomas Jefferson, WTNY's designated witness in this case, from a state court case in Oregon from a time period different from this

---

[10] The first page is erroneously labeled an "Expert" deposition of Bradley Lovett.

case.  The information contained in that Declaration is consistent with WTNY's discovery responses in this case and it contains information readily available to Plaintiffs upon a 30(b)(6) deposition. And importantly, this declaration was provided by WTNY at Bates-numbers WTNY000980-000992.

Exhibit G is an Order from an appellate court in California addressing a discovery dispute involving nationwide religious records that implicated thorny issues of attorney-client and minister-communicant privilege, none of which are at issue in this case.  In this case, WTNY has gone above and beyond what is required to comply with discovery rules and this Court's orders.  For instance, WTNY has answered in good faith 150 interrogatories[11] when Fed. R. Civ. P. 33(a)(1) limits them to 25, including all discrete subparts.  Collectively, Defendants (WTNY and WTPA) have produced more than 70,000 pages of documents in an electronically searchable format that allows Plaintiffs to identify all information Jehovah's Witnesses have published on every subject from 1973 to 1992. WTNY has also responded to specific demands that pre- and post-date that time period. WTNY has not concealed *any* information.  There are no missing documents.  Plaintiffs' reliance on this Order is nothing more than an effort to create a perception of bad faith and provoke this Court's anger to avoid reaching the merits of this case.

---

[11] Plaintiffs have propounded 150 Interrogatories (including discrete subparts), 99 Requests for Production, and 33 Requests for Admission in Cause No. CV-20-59-BLG-SPW; 80 Interrogatories (including discrete subparts), 101 Requests for Production, and 33 Requests for Admission, to date in Cause No. CV-20-52-BLG-SPW, in the general discovery phase alone. WTNY has responded and answered all of these demands.

Exhibit H is an affidavit of Don Adams, Deceased.    This document has been in Plaintiffs' possession since at least March 2022 and was attached as an exhibit to a prior motion (Doc 117-1).  It uses the term "parent" in a religious sense, not as a legal term.   WTNY has produced hundreds of pages of corporate and financial records, demonstrating its corporate activities.  But Plaintiffs appears determined to have WTNY adopt their demonstrably false statements relating the legal relationship between WTNY and congregations as fact.   Although Mr. Adams is not available for cross-examination, WTNY has repeatedly offered a 30(b)(6) witness who could explain the contents of this Affidavit.   Any discrepancies go to the weight of evidence and not whether WTNY has met its discovery obligations in this case.

Exhibit I is a letter from WTNY, communicating with the Jehovah's Witnesses in Hardin, Montana regarding an application to form a new congregation.  It says nothing about oversight or control by WTNY.  This letter is entirely consistent with WTNY's responses to Interrogatories 9 and 15.

Exhibit J is an excerpt from a manual called "Branch Organization" as it existed nearly a half century ago.  It says nothing about oversight or control by WTNY and is consistent with WTNY's responses to Interrogatories 9 and 15.  Any perceived discrepancies are owing to the fact that it is a religious manual drafted by ministers with a religious purpose in mind, not a secular one.  As noted with other purported discrepancies, Plaintiffs can address any concerns to WTNY's 30(b)(6)

witness.  To the extent Plaintiff continues to believe there is contradictory evidence, the arguments should go to the trier of fact.

Plaintiffs' description of Exhibit M is offensive.  It is an article published in 1957 about a situation in Communist Germany when government officials were viciously persecuting Jehovah's Witnesses.  It has nothing to do with civil litigation in the United States.  It is certainly not admissible evidence that WTNY has done anything improper in this case.

Exhibits N – Q are of the same type, each designed to assassinate character, not to address facts relevant to discovery in this case.  Specifically, Exhibit N is a minute order from the same California case involved in Exhibit G.  The Minute Order mentions evaluation of whether sanctions previously issued "have been effective."  In other words, did the imposition of sanctions lead WTNY to disclose documents?  Regardless of the impact sanctions had in that case, the evidence in this case shows that there has been no attempt to withhold information.  As noted in the discussion of Exhibit G, WTNY has responded to 150 interrogatories.  Collectively, Defendants have produced more than 70,000 pages of documents in an electronically searchable format.  WTNY has not concealed *any* information.

Exhibit O is a "Notice of Ruling" in another California State court used to assassinate WTNY's character.  Plaintiffs fail to inform the court that the Court of Appeals *reversed* that decision.  *See Lopez v. Watchtower,* 246 Cal.App.4th 566

(2016).   Regardless, as previously stated, WTNY has responded to all Plaintiffs'
discovery demands and has repeatedly invited Plaintiffs to depose its designated
30(b)(6) witness.

Exhibit P is a Minute Order regarding an order for terminating sanctions
related to the production of documents that are not at issue in this case.   Again, *in
this case*, WTNY has produced all the reports, publications, and records it possesses.
It has gone above and beyond what the Court required to fully disclose information.

And, finally, Exhibit Q is a "Warning of Sanctions" in a state court action.
Plaintiff fails to inform the Court that no sanctions were issued.   The issue involved
encroachment on the attorney-client privilege based on a purported waiver of the
privilege.  It had nothing to do with interrogatory responses.

WTNY has been in existence since 1909, and Plaintiffs have certainly scoured
the earth looking for every lawsuit involving Jehovah's Witnesses and only bring to
the Court's attention a few cases in California and one in Montana that support their
narrative while ignoring the bevy of cases that do not.  This attempt to seek sanctions
by besmirching the reputation of WTNY (and its attorneys) speaks more to Plaintiffs
inability to find liability in this case than to WTNY as a litigant.

## E.    PLAINTIFFS' PROPOSED SANCTIONS ARE UNWARRANTED.

"[A]ny imposed sanction under Rule 37(b)(2) must be 'specifically related to
the particular 'claim' which was at issue in the order to provide discovery."

*Insurance Company of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 707, 102 S.Ct. 2099 (1982) (finding the sanction was not proportionate to the discovery misconduct because the discovery was not sufficiently related to the claims for which he seeks [] sanctions."). Here, the proposed sanctions outlined at the end of their Brief do not fit the purported offense. Plaintiffs ask the Court to prohibit WTNY from introducing evidence, to strike certain unspecified affirmative defenses, and to enter a pretrial ruling that "all component entities are all alter egos[12] and vicariously liable for the actions of the other defendants and that 'notice' to one defendant is notice to all defendants." But the Order relates to jurisdiction over WTPA – not notice, not alter ego, and not vicarious liability.[13]

Plaintiffs' overreaching likely flows from the realization of their own error in failing to name the Hardin Congregation as a defendant. So much so that they now seek the extraordinary remedy of holding WTNY responsible for the purported acts, omissions and knowledge of multiple non-parties.[14]

It is beyond question that the Hardin Congregation is a legal entity that is separate and distinct from WTNY. Indeed, Plaintiffs subpoenaed records from that

---

[12] Alter egos have more in common than religious devotion e.g., they may have common ownership interest and share financial accounts.   None of which can be established by the information sought in Interrogatories 9 and 15, in the corporate records of WTNY, or in the documents the Hardin Congregation produced pursuant to subpoena.
[13] *See* Order at 10-11 where the Court frames the issue with Interrogatories 9 and 15 in the context of jurisdictional discovery as "Plaintiffs are attempting to determine what control the Governing Body has over WTNY, WTPA, and Jehovah's Witnesses such as approving the selection or deletion of local congregation elders."
[14] For that matter, Plaintiffs literally seek to attribute to WTNY the knowledge of all congregations of Jehovah's Witnesses earth-wide.  Such a sanction is nonsensical and offensive to the norms of due process.

entity under Rule 45.  Plaintiffs supply no evidence of alter-ego but  use two moot Interrogatories as a basis to essentially add a time-barred defendant to this lawsuit. Such a sanction is both unwarranted and disproportionate to any perceived inconsistencies in the descriptions of religious entities.

Additionally, Plaintiffs' proposed remedies would impose punishment on WTPA far beyond the Hardin Congregation's purported acts and WTNY's discovery conduct, preventing it from introducing evidence of its separate existence.

WTNY believes it has acted in good faith.  If the Court disagrees, a more appropriate sanction might be to require WTNY to pay the cost of deposing the witness designated under Rule 30(b)(6).

## **CONCLUSION**

In sum, Plaintiffs' motion is premature because Plaintiffs made no effort to meet and confer in good faith.  It is untimely because Plaintiffs waited more than two years to raise any concerns with WTNY's supplemental responses to Interrogatories 9 and 15 on a jurisdictional issue that is moot.  It has no merit because WTNY's responses to Interrogatories 9 and 15, especially in light of other discovery responses in this case, were more than adequate.  And Plaintiffs' proposed sanction is disproportionate to the purported discovery violation.  Plaintiffs' motion should be denied.

DATED this 20th day of November, 2023.

By: ___/s/ Jon A. Wilson_____
Jon A. Wilson / Brett C. Jensen /
Michael P. Sarabia
BROWN LAW FIRM, P.C.
*Attorneys for Defendants Watchtower*
*Bible and Tract Society of New York,*
*Inc.*


By: ___/s/ Joel M. Taylor_____
Joel. M. Taylor (appearing *pro hac*
*vice*)
MILLER MCNAMARA & TAYLOR
LLP
*Attorneys for Defendants Watchtower*
*Bible and Tract Society of New York,*
*Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(d)(2)(E), the undersigned hereby certifies this brief complies with L.R. 7.1(d)(2)(A). According to the word-processing unit used to prepare this brief, the word count is 5,415 words excluding caption, table of contents and authorities, exhibit index, and certificates of service and compliance.

DATED this 20th day of November, 2023.

By:   /s/ Jon A. Wilson
       Jon A. Wilson / Brett C. Jensen /
       Michael P. Sarabia
       BROWN LAW FIRM, P.C.
       *Attorneys for Defendants Watchtower*
       *Bible and Tract Society of New York,*
       *Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 20th, 2023, a copy of the foregoing was

served on the following person(s):

1.      U.S. District Court, Billings Division

2.      Robert L. Stepans/Ryan R. Shaffer/James C. Murnion
          MEYER, SHAFFER & STEPANS, PLLP
          430 Ryman Street
          Missoula, MT 59802

3.      Matthew L. Merrill (appearing *pro hac vice*)
          MERRILL LAW, LLC
          1863 Wazee Street, Suite 3A
          Denver, CO 80202

4.      Gerry P. Fagan/Christopher T. Sweeney/Jordan W. FitzGerald
          MOULTON BELLINGHAM PC
          P.O. Box 2559
          Billings, MT 59103-2559

5.      Bruce G. Mapley Sr.
          3905 Caylan Cove
          Birmingham, AL 35215

by the following means:

| | | | |
|---|---|---|---|
| _1-4_ | CM/ECF | _____ | Fax |
| _____ | Hand Delivery | __5__ | E-Mail |
| _____ | U.S. Mail | _____ | Overnight Delivery Services |

By:   _/s/ Jon A. Wilson_____
          Jon A. Wilson / Brett C. Jensen /
          Michael P. Sarabia
          BROWN LAW FIRM, P.C.
          *Attorneys for Defendant Watchtower*
          *Bible and Tract Society of New York,*
          *Inc.*

24