**Meyer, Shaffer & Stepans, PLLP**

**Ryan Shaffer** | ryan@mss-lawfirm.com
**Robert L. Stepans** | rob@mss-lawfirm.com
**James Murnion** | james@mss-lawfirm.com

RECEIVED OCT 18 2022

October 13, 2022

**Via Email and U.S. Mail**

Jon A. Wilson
Brett C. Jensen
BROWN LAW FIRM, P.C.
P.O. Drawer 849
Billings, MT 59103

jwilson@brownfirm.com
bjensen@brownfirm.com

>   Re: *Caekaert & Mapley v. Watchtower Bible and Tract Society of New York, Inc., et al.*
>   *Rowland & Schulze v. Watchtower Bible and Tract Society of New York, Inc., et al.*

Dear Counsel:

I am writing to confer about discovery issues that we would like to resolve.

**Diligent Search**

As the Court has already noted, where Defendants assert that its search failed to turn up responsive information, it is to describe the search "with sufficient specificity to allow the Court to determine whether [it] made a reasonable inquiry and exercised due diligence." Doc. 85 at 16-27.

On this front, one of Plaintiffs' biggest concerns is that it is unclear to what degree WTNY is relying on the Jehovah's Witnesses Organization's opaque and evolving structure to assert that responsive documents were not found. For instance, did WTNY's diligent search include searching the files of the U.S. Branch Office, the Governing Body, the various Committees of the Governing Body, the Service Department, the Legal Department, and CCJW? It is important for WTNY to affirmatively take a position on these questions so that Plaintiffs can evaluate if we have a dispute over what constitutes "custody and control" under Fed. R. Civ. Pro. 26.

**First Amendment, Establishment Clause, and Equal Protection Clause Objections**

The constitutional objections lack merit. The case cited by WTNY (*Serbian Eastern Orthodox Diocese for US. Of America and Canada v. Milivojevich*, 426 U.S. 696, 724-25 (1976)), does not apply to the circumstances of Plaintiffs' discovery requests. Moreover, we

are unable to determine if documents or information are being withheld based on these objections. Please clarify.

## Clarify Documents Being Withheld Based on Objections

Regarding all answers and responses in all three sets of Plaintiffs' combined discovery responses to WTNY, please indicate whether any documents are being withheld based on any objections lodged by WTNY. In particular, please identify the specific objection being relied upon to withhold documents so that Plaintiffs can evaluate which objections need to be challenged, if any.

## Privilege Log

On April 13, 2022, we made specific inquiries regarding WTNY's vague and sweeping claims of testimonial privilege. Seven months later, many of those questions remain unanswered. Ultimately, WTNY has the burden of establishing that its privilege claims are valid. As it stands, the privilege log and the explanations set forth in counsels' May 2, 2022 letter do not meet this burden, and Plaintiffs intend to challenge the privilege claims.

## Interrogatory No. 8 (Caekaert/ Rowland) and Request for Production No. 10 (Caekaert) and No. 9 (Rowland)

We believe you are construing the Courts order in ECF Doc. 82 too broadly. While the Judge's prior logic may apply if any of the withheld documents include an actual confession, other information in the documents should be produced because they are religious in nature. With this in mind, we are requesting that you state whether any of the withheld documents actually include a confession from a penitent to a member of the Jehovah's Witness clergy. If so, we are requesting that the document be produced with the confession redacted.

Additionally, WTNY objects that this request is overbroad, burdensome, and not reasonably calculated to lead to the discovery of admissible information and is not proportional to the needs of the case. This is obviously not a valid objection to the discovery at issue. *U.S. v. 2121 Celeste Rd. SW, Albuquerque, N.M.*, 307 F.R.D. 572, 582 (D.N.M. 2015). This objection lacks merit.

## Interrogatory No. 11 (Caekaert) and No. 10 (Rowland)

On 9/26/2022 WTNY produced supplemental documents to RFP 52. These documents indicate that WTNY does in fact know the name of at least one Circuit Overseer in the relevant time period, and has a report from that Circuit Overseer. Based on our 9/19/2022 phone call, we understood that all of these documents were destroyed in the ordinary course of business. We are curious about where this document was found. Additionally, it appears

that this document should permit WTNY to supplement other discovery seeking information about Circuit Overseers who visited the Hardin Congregation.

### Interrogatory No. 14 (Caekaert) and No. 13 (Rowland)

This answer is nonresponsive to what happened to the documents once placed in the secure filing cabinet. Nor does the answer tell us where these documents are now, whether they were scanned into a system or database for preservation, whether the hard copies were thrown away, and if so, when. Please clarify.

### Interrogatory No. 15 (Caekaert) and No. 14 (Rowland)

This answer is nonresponsive because we ask for identification of the records custodian over time, yet the answer is in the present tense. Additionally, we did not ask for your corporate records custodian. It appears from previous testimony on behalf of WTNY that you have had several records custodians over the relevant time period. *See* previously produced document bates CAEKAERT/MAPLEY 004040-004049, and WTNY's answer to Interrogatory No. 7. If it is the position of WTNY that at the relevant time, you had several records custodians, depending on the department or office, please identify those records custodians and what records they were the custodians of. The goal is to provide Plaintiffs the names of people who know and understand WTNY's records storage and management practices over time.

### Request for Production No.'s 14-17 (Caekaert) and No.'s 12-15 (Rowland)

Please clarify whether the documents produced in RFP 10 are responsive to this request and if not, please explain why. We are trying to understand if there is a difference between the documents produced in response to RFP 10 and what was sent to WTNY in the special blue envelopes referenced in the March 14, 1997 letter.

### Request for Production No. 28 (Caekaert) and 26 (Rowland)

This answer is nonresponsive. Please supplement.

### Request for Production No. 31 (Caekaert) and No. 29 (Rowland)

Based on this response, we understand that the Shepherding Textbook and the Kingdom Ministry School Course are the same document, is this correct?

### Request for Production No. 33 (Caekaert) and No. 31 (Rowland)

Please clarify with your knowledge of what happened to the supplemental letter referenced in ROW_HARDIN000062.

### Interrogatories No. 17-18 (Caekaert) and No. 16-17 (Rowland)

Your answer indicates you do not understand what "reporting allegations" means. While we feel that words in the English language are likely discernable on your part, we are happy to provide clarification. As stated in our interrogatory, we are asking what the process was for a traveling overseer or elder to report allegations of child sexual abuse occurring within congregations back to the society. Please supplement accordingly.

### Request for Production No. 41 (Caekaert) and No. 39 (Rowland)

This answer is nonresponsive as to clergy penitent privilege. The time period objection is without merit because the time period of the abuse at issue is but one part of the much longer time period that WTNY is claiming certain privileges have been maintained. In particular, WTNY's privilege log asserts privilege over documents dated 1992 through to today.

### Request for Production No. 43 (Caekaert) and No. 41 (Rowland)

This answer is nonresponsive. Please provide us with a definition and certainty as to what religious guidance means as you claim it on your privilege log. Your time period objection is also without merit. WTNY is claiming testimonial privileges over numerous documents in your privilege log with dates from 1992 to today. For those privileges to stand, the sanctity of those privileged documents must have been maintained during our relevant time period, but also currently. Otherwise, they would no longer be privileged. Please supplement.

### Request for Production No. 46 (Caekaert) and No. 44 (Rowland)

Please clarify whether WTNY is saying there is no manual in the service department. It is our hope that you are not playing word games simply because we do not know the exact title of a manual that is of your creation and at use in your service department.

### Request for Production No. 52-53 (Caekaert) and No. 50-51 (Rowland)

It is our understanding that the Jehovah's Witness Organization maintains a permanent file for each congregation, including the Hardin Congregation. Please confirm that this entire file has now been produced, and if not, please identify what documents have not been produced and the associated privilege justifying withholding such documents.

### Request for Production No. 54 (Caekaert) and No. 52 (Rowland)

Please clarify what happened to this supplemental letter. Was it ever in the possession of WTNY, was it destroyed, and if so, when? In bates document ROW_HARDIN000062 it is indicated that the "circuit overseer will send this form to the society along with his report

4

following his visit to the congregation". This document along with the document references the same supplemental letter that is mentioned in ROW_HARDIN000058.

Thank you in advance for addressing our concerns in the above listed matters. Please let me know if you have any questions.

          Sincerely,

          MEYER, SHAFFER & STEPANS, PLLP

          Ryan R. Shaffer

5