Robert L. Stepans
Ryan R. Shaffer
James C. Murnion
Victoria K.M. Gannon
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT  59802
Tel: (406) 543-6929
Fax: (406) 721-1799
rob@mss-lawfirm.com
ryan@mss-lawfirm.com
james@mss-lawfirm.com
katy@mss-lawfirm.com

Matthew L. Merrill (appearing *pro hac vice*)
Merrill Law, LLC
6631 Mariposa Court
Denver, CO  80221
Tel: (303) 947-4453
matthew@merrillwaterlaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | )<br>)<br>) | Case No. CV-20-52-BLG-SPW |
| Plaintiffs, | ) |  |
| vs. | )<br>) | **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SANCTIONS RE: WTNY'S NON-COMPLIANCE WITH COURT ORDER (ECF No. 85)** |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA., | )<br>)<br>)<br>)<br>) |  |
| Defendants, | ) |  |

Plaintiffs Tracy Caekaert and Camillia Mapley submit the following Reply

Brief in Support of their Motion for Sanctions re: Watchtower Bible and Tract

Society's ("WTNY") Non-Compliance with Court Order (ECF No. 85).

## THE 1978 CIRCUIT OVERSEER REPORT AND
## WTNY'S REFUSAL TO PROVIDE CANDID INFORMATION ABOUT
## THE JEHOVAH'S WITNESSES' ENTITIES

No issue highlights the importance of Plaintiffs' present Motion like
WTNY's attempt to distance itself from the March 1978 Circuit Overseer Report
(the "1978 Report") notifying the Jehovah's Witnesses' U.S. Branch Office about a
problem with Hardin Congregation Ministerial Servant, Gunnar Hain. Ex. A, 1978
Report. The 1978 Report was signed and sent to the U.S. Branch Office by
Jehovah's Witnesses' official, Brad Lovett, who had visited the Hardin
Congregation as part of his official duties on behalf of the Jehovah's Witnesses
Organization. *Id.* The 1978 Report noted that Gunnar Hain was "restricted," and
that local officials were going to "immediately" write to the "Society" about the
situation.[1] *Id.* Mr. Lovett testified that he was sent to Hardin by "the Branch" and
that he sent the 1978 Report to "the Branch" to summarize what he learned. Lovett
Dep. at 111:1–3, 181:10–186:5, ECF No. 288-5.

Thus, the 1978 Report establishes that: (1) a Jehovah's Witnesses' official
was sent to Hardin in 1978 to check in on the congregation; (2) he was informed
about a problem with Gunnar Hain that resulted in Hain being "restricted"; (3) he

---

[1] Plaintiffs obtained the 1978 Report from a third-party. WTNY has not produced
a copy of it, or any other Hardin Congregation Circuit Overseer Reports for the
1970s and 1980s.

was informed that local officials were going to immediately notify the "Society" about this problem; and (4) this was all reported to the U.S. Branch Office.  Other documents establish that the 1978 problem with Gunnar Hain is that he had sexually molested four children in Hardin.  *See, e.g.,* Aff. of Gibson, ECF No. 22-1; Ex. B, Ltr. from Hardin Cong. to Pacific Cong.; Ex. C, Memo. of Record re: Hain.[2]

Thus, the 1978 Report establishes that local Jehovah's Witnesses officials knew that Gunnar Hain molested four young girls, and reported this problem to a national official who was visiting the Congregation.  That national official then reported this information to the U.S. Branch Office.  Furthermore, at the same time, local Jehovah's Witnesses officials were also notified that Hardin ministerial servant Bruce Mapley was sexually abusing young girls and instructed their mother to keep it secret.  Aff. of Gibson.  Jehovah's Witnesses officials failed to report Hain's and Mapley's sexual abuse to secular authorities and failed to take any action to protect the young girls in Hardin.  *Id.*; Aff. of Rowland, ECF No. 22-2. Plaintiffs in both this case and its companion case (*Rowland v. Watchtower Bible and Tract Society of New York, Inc.*, CV-20-59-BLG-SPW) were subsequently sexually abused by Hain and Mapley.

---

[2] WTNY attempted to hide these documents from Plaintiffs and only produced them after substantial discovery litigation left it no choice.

WTNY's Response Brief reveals exactly how it intends to use confusion and fabricated distinctions between Jehovah's Witnesses' entities to defend against this evidence: WTNY will argue that the knowledge of local and national officials, including those at the U.S. Branch Office who received the 1978 Report, cannot be imputed to WTNY.  *E.g.,* WTNY's Resp Br. at 20, ECF No. 290.[3]  Thus, WTNY's litigation strategy is to create as much confusion as possible about which entities these officials were acting on behalf of so that it can argue that WTNY is not responsible for their knowledge, acts, and omissions.  This is why WTNY refuses to provide coherent, candid, and complete information in discovery about the Jehovah's Witnesses Organizational structure.

## WTNY'S ANSWER TO INTERROGATORY 20

WTNY argues that its failure to provide full and complete answers to Interrogatories Nos. 9 & 15 should be viewed in context with its answer to Interrogatory 20, which asked WTNY to identify all Departments, Offices, Committees, Bodies, Corporations, and "any other groups or entities that were utilized by the Jehovah's Witnesses to carry out the purposes goals, functions,

---

[3] WTNY asserts that Plaintiffs have "no evidence that WTNY or any religious construct in New York associated with the Jehovah's Witnesses had any knowledge of Mr. Hain and abuse in the 1970s."  while Plaintiffs do not know what the phrase "religious construct in New York associated with the Jehovah's Witnesses" means, it is clear that WTNY is arguing that notice to its local and national agents, as well as notice to the U.S. Branch Office, is not notice to WTNY.

ministries, and work of the Jehovah's Witnesses faith."  ECF No. 290-7 at 3–4.
But WTNY's answer to Interrogatory No. 20 only serves to highlight its refusal to
provide candid, complete answers to discovery.  For instance, despite being asked
to identify all "Offices" utilized by the Jehovah's Witnesses, WTNY's answer
omits any information about the "U.S. Branch Office" which received the 1978
Report.  Why does WTNY refuse to provide Plaintiffs **any** information about the
U.S. Branch Office?    As it pertains to the Governing Body, WTNY's answer to
Interrogatory No. 20 is just as vague and non-responsive as it was to Interrogatory
No. 9; it simply recites the familiar and effectively meaningless phrase that the
Governing Body is "an ecclesiastical group" of men that provides spiritual
guidance to Jehovah's Witnesses.  *Id.* at 6–7.   Why does WTNY refuse to provide
Plaintiffs **any** coherent, responsive information about the Governing Body?

WTNY states that it is difficult to explain "religious terms" to people who
do not belong to the religion, and therefore Plaintiffs' confusion about the
Jehovah's Witnesses organizational structure is effectively Plaintiffs' problem.
WTNY's Resp. Br. at 17.  But Plaintiffs' discovery does not ask for an explanation
of religious terms; Plaintiffs' discovery asks what the Jehovah's Witnesses entities
do and how they are related to one another.  As evidenced by Exhibits B through F
to Plaintiffs' Opening Brief, the answers to Plaintiffs' interrogatories exist in real
world, secular terms.  For instance:

➢ The Governing Body establishes policies and procedures for local congregation elders to investigate allegations of serious sin, including child sex abuse;

➢ The U.S. Branch received reports about problems at local congregations from national Jehovah's Witnesses officials; and

➢ Local congregations operate under the direction of the Governing Body.

*See* ECF No. 288 at 7–10. Instead of providing this responsive information to Plaintiffs, WTNY insists on avoiding answering altogether or answering with vague, non-responsive phrases that mean nothing. Ultimately, WTNY's reference to its Answer to Interrogatory No. 20 only serves to further highlight its refusal to provide candid, complete, coherent information in discovery.

## CONFERRAL

WTNY wrongly asserts that Plaintiffs failed to confer about WTNY's answers to Interrogatories 9 and 15 and that if Plaintiffs' counsel had just conferred the present Motion could have been avoided. WTNY's argument is contradicted by the facts, is disingenuous, and should be rejected.

Plaintiffs first conferred about the problems with WTNY's answers to Interrogatories Nos. 9 and 15 prior to filing their discovery motion. Not. of Conferral Efforts, ECF No. 54. This conferral included three sets of detailed

correspondence and a telephone call between counsel. *Id.* at 3. During that conferral process the exact problems that continue to characterize WTNY's interrogatory answers were specifically identified, namely: (1) WTNY's answers are full of vague phrasing that is non-responsive to the question asked; and (2) WTNY intentionally omits meaningful, responsive information from the answers. The Court agreed with Plaintiffs, and in doing so noted that WTNY was aware of specific, responsive information that it chose to omit from its answers. Ord. at 12, ECF No. 85.

Thus, WTNY has consistently been notified by both Plaintiffs and the Court that vague, non-responsive answers which intentionally omit material information are not acceptable. Despite knowing full well what Plaintiffs' concerns are, and despite being told by the Court to fix it, WTNY's supplemental answers have the same problems: they are filled with vague, non-responsive language and intentionally omit large quantities of responsive information.

Plaintiffs sent another letter to WTNY stating that the supplemental answers to Interrogatories 9 and 15 were not complete and did not comply with the Court's Order. Ltr. from Shaffer to Wilson, ECF No. 288-11. WTNY did not respond to Plaintiffs' letter by seeking clarification or inviting a discussion about Plaintiffs' concerns. WTNY did not respond to Plaintiffs' letter by making the baseless arguments it now makes to the Court, i.e. the interrogatories are moot, Plaintiffs'

concerns are untimely, and Plaintiffs should just take a deposition if they want an answer.  *Id*.  Instead, WTNY's counsel responded with the demonstrably false assertion that the supplemental answers were "full and thorough."  Ltr. from Wilson to Shaffer, ECF No. 288-12.

Plaintiffs have conferred, the Court has spoken, and WTNY knows that vague, non-responsive answers that omit materially responsive information are not acceptable and are sanctionable.  Ultimately, the problem is that WTNY is not interested in good faith conferral or answering Plaintiffs' discovery.  Instead, WTNY wants to play a game of providing vague discovery answers that intentionally withhold responsive information until it is caught doing so.[4]

## LOCAL RULE 7.1

Local Rule 7.1 is intended to encourage the resolution of minor and uncontested issues by requiring the parties to contact each other prior to filing. *Yankeecub, LLC v. Fendley*, 2021 WL 3603053, *6 (D. Mont. 2021).  Here, Plaintiffs' counsel sent WTNY's counsel a letter stating that they believed WTNY's answers were not in compliance with the Court's Order.  WTNY

---

[4] For instance, WTNY asserts that Plaintiffs should inform WTNY "what information they wanted." WTNY's Response Br. at 15.  WTNY's proposition attempts to turn discovery on its head.  WTNY is the party that knows what the Governing Body does and how the Jehovah's Witnesses Organization is structured, organized, and works.  Plaintiffs' want what the Court ordered: full and complete answers.

responded that it disagreed and that its answers complied with the Court's Order. This correspondence established a contested issue to be resolved by the Court, and Plaintiffs' Motion is not in violation of Local Rule 7.1.

## TIMELINESS

WTNY always has the advantage of knowing what information it is withholding when it crafts and serves its vague, non-responsive discovery answers. Plaintiffs, on the other hand, have to go find that information from other sources and this takes time.  Exhibits B, C, D, and F to Plaintiffs' Brief, which show that WTNY is intentionally withholding responsive information from its answers to Interrogatories 9 & 15, are documents Plaintiffs had to obtain and review from other cases.  Exhibit E is the transcript of a deposition that was taken on August 11, 2023, in this case.  In short, it takes time to obtain and review the information showing that WTNY is unwilling to be candid in discovery.  That is not Plaintiffs' fault.

At the same time, Plaintiffs' counsel has had to triage discovery motions in this case.  Plaintiffs' first goal was to obtain all relevant documents prior to taking depositions.  This entailed multiple motions to obtain documents that should have either been produced entirely or with limited redactions 18 months ago.  ECF Nos. 132, 187, 191, 237, 239, 251, 272.  WTNY then refused to produce important witnesses for depositions that it had voluntarily produced in other cases.  ECF Nos.

153, 234, 268.  In the face of sustained obstruction and bad faith conduct by
WTNY, Plaintiffs have diligently pursued discovery and discovery motions in this
case.

The cases cited by WTNY note that there is no express time limit within
which a motion for sanctions must be filed, but that an unreasonable delay may
render such a motion untimely.  "Timeliness" depends on when the movant learned
of the discovery violations, how long they waited before bringing the violations to
the court's attention, and whether discovery has been completed.  *THEC
International-Hamdard Cordova Group-Nazari Constr. Co., Ltd. Joint Venture v.
Cohen Mohr, LLP*, 301 F.Supp. 3d 1, 11 (D.D.C. 2018).  A federal district court in
the Ninth Circuit noted that "Courts agree that the last day on which a party may
file a motion seeking discovery sanctions is the deadline for filing dispositive
motions."  *Treasure Island, LLC v. Affiliated Fm. Ins. Co.*, 2023 WL 6295500, *2
(D. Nev. 2023).

Here, Plaintiffs first moved to compel full and complete answers to
Interrogatories Nos. 9 & 15 soon after the non-compliant answers were served.
The Court then ordered compliant answers.  Since that time, Plaintiffs have been
litigating a litany of discovery motions to obtain documents and set depositions.
Plaintiffs' counsel also had to review thousands of documents obtained outside of
discovery and take a deposition in August of 2023 to realize the full magnitude of

WTNY's intentional omissions in the supplemental answers to Interrogatories 9 & 15.  Neither the discovery nor the dispositive motions deadlines have passed in this case, and WTNY identifies no prejudice to the timing of Plaintiffs' Motion.  Given the foregoing, and given the significant obstruction to discovery posed by WTNY's litigation tactics, any delay in bringing the present Motion is not "unreasonable" and does not represent a factual or legal basis for denying Plaintiffs' Motion.

## WTNY'S BRIEF PROVES ITS ANSWERS ARE NOT FULL AND THOROUGH

Plaintiffs submitted voluminous exhibits showing that WTNY is intentionally withholding critical, responsive information from its answers to Interrogatories 9 & 15.  ECF No. 288 at 6–9.  WTNY's Response brief evidences more of the same.  Interrogatory No. 15 asked WTNY to describe the relationships between various Jehovah's Witnesses entities.  WTNY's answers never acknowledge that any of those entities work together or cooperate with one another in any way.  Yet, in a footnote to its Response, WTNY states for the first time that the entities "**work in close cooperation to facilitate the religious activities of Jehovah's Witnesses.**"  WTNY Resp. Br. at 12, n. 7.  Why is this just now being disclosed in a brief?  Had it been disclosed earlier, as required, Plaintiffs could have noticed a topic for a Rule 30(b)(6) deposition seeking the details of how the

entities work in close cooperation.  Instead, Plaintiffs are still trying to get a complete answer from WTNY.

Just the same, WTNY now tells the Court that the "Society," the "Branch Office," and the "Service Department" are "often used interchangeably but there is a distinct difference depending on time, place, and context."  Why has WTNY not included this information in its answers to Interrogatories Nos. 15 & 20?  This reflects a pattern of conduct whereby WTNY forces Plaintiffs to file a motion to compel, only to provide new, responsive information in briefing that could and should have been disclosed in discovery.  *E.g.*, Ord. at 17–18, ECF No. 239.

## WTNY CANNOT AVOID ANSWERING BY TELLING PLAINTIFFS TO GO TAKE A DEPOSITION

WTNY cites nothing in support of its position that if Plaintiffs want answers to Interrogatories Nos. 9 & 15 they should go take a deposition.  WTNY has not raised any such objection to the Interrogatories and this position flies in the face of the Court's Order requiring full and complete answers.  Moreover, courts addressing WTNY's argument have universally rejected it.[5]  *Robbins & Myers, Inc. v. J.M. Huber Corp.*, No. 01-CV-0201-E(F), 2003 WL 21384304, at *5 (W.D.N.Y. May 9, 2003) ("R & M's objection that the information sought may be

---

[5] Plaintiffs are mindful of the Court's prior admonition to consult cases of this District and Circuit before relying on out of district cases.  To that end, Plaintiffs were unable to locate any cases in this District deciding the issue.

'elicited through deposition testimony' is improper because a responding party may not dictate which discovery device the requesting party should employ or in what order they should be employed."); *Glick v. McKesson & Robbins*, 10 F.R.D. 477, 479 (W.D. Mo. 1950) ("it is no valid objection to allege that the information called for in interrogatories is 'best available to plaintiff by deposition.'"); *Compagnie Francaise d'Assurance Pour le Com. Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 43 (S.D.N.Y. 1984) (quoting *In re Shopping Carts Antitrust Litigation*, 95 F.R.D. 299, (S.D.N.Y.1982) (information in interrogatory answers "may effect judicial economy and economic savings to the parties. Plaintiffs will know whom they have to depose; unnecessary depositions may be avoided; . . . important conversations, communications and documents will be highlighted; delay may be avoided; and the issues for trial may be narrowed."); *In re Potash Antitrust Litig.*, 161 F.R.D. 405, 409 (D. Minn. 1995) (citing cases) ("we agree with the Courts which have preceded us in recognizing the superiority of Interrogatories in effectively ferreting out information that could be ascertained by the more invasive and costly means of a deposition—at least as a classic instrument of first-wave discovery.").

As illustrated above, with regard to WTNY's recent disclosure that the Jehovah's Witnesses entities "work in close cooperation" together, information learned in written discovery helps Plaintiffs limit and inform the issues for

depositions.  This is consistent with the law, which recognizes that Plaintiffs are not limited to either interrogatories or depositions, but they work together to make discovery effective and efficient.  Fed. R. Civ. P. 34(d)(3)(A) ("methods of discovery may be used in any sequence[.]"; *In re Potash*, 161 F.R.D. at 409.

## CONCLUSION

This Court has ordered WTNY to provide full and complete answers to Interrogatories 9 & 15.  The record establishes that WTNY has not done so and has no interest in doing so.  WTNY's real interest is in sowing confusion about the Jehovah's Witnesses' organizational structure as a defense against Plaintiffs' claims.  Court orders to supplement and court orders to pay financial sanctions do not matter to WTNY.  Plaintiffs therefore respectfully request that the Court issue an order prohibiting WTNY from relying on the confusion it hopes to perpetuate about the Jehovah's Witnesses' Organization in defending against Plaintiffs' claims.

DATED this 4ᵗʰ day of December, 2023.

By: /s/ Ryan Shaffer
Ryan R. Shaffer
MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.3(d)(2), Plaintiff hereby certifies that this brief complies with the length requirement for briefs, and that this brief contains 2,947 words, excluding the caption, certificates of service, and compliance, table of contents, and authorities, and exhibit index.

By: /s/ Ryan Shaffer
    Ryan R. Shaffer
    MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

Pursuant to Local Rule 1.4, this document has been served on all parties via electronic service through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

By: /s/ Ryan Shaffer
    Ryan R. Shaffer
    MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*