Jon A. Wilson
Brett C. Jensen
Michael P. Sarabia
BROWN LAW FIRM, P.C.
315 North 24th Street
P.O. Drawer 849
Billings, MT 59103-0849
Tel. (406) 248-2611
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

Joel M. Taylor, Esq. (*pro hac vice*)
MILLER MCNAMARA & TAYLOR LLP
100 South Bedford Road, Suite 340
Mount Kisco, New York 10549
Tel./E-Fax (845) 288-0844

Gerry P. Fagan
Christopher T. Sweeney
Jordan W. FitzGerald
MOULTON BELLINGHAM PC
27 North 27th Street, Suite 1900
P. O. Box 2559
Billings, Montana 59103-2559
Telephone: (406) 248-7731
Fax: (406) 248-7889
*Attorneys for Defendant Watch Tower Bible and Tract Society of Pennsylvania*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT and CAMILLIA MAPLEY,<br><br>Plaintiffs,<br><br>-vs-<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA,<br><br>Defendants. | Cause No. CV 20-52-BLG-SPW<br><br>**DEFENDANTS WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC. AND WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA'S BRIEF IN SUPPORT OF JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P 56** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

INTRODUCTION ....................................................................................... 1

LEGAL STANDARDS ................................................................................ 3

ARGUMENT ............................................................................................. 6

I.     The Court should grant summary judgment in favor of Defendants on Plaintiffs' negligence per se claim (Second Claim) precisely because, at all relevant times, Montana's mandatory reporting statute did not confer a private cause of action. ................................................................. 7

     A.     A private right of action is inconsistent with the pre-1979 reporting statute as a whole. ................................................................. 8

     B.     Nothing in the plain language of the pre-1979 statute reflects any intent to create a private right of action. ............................................. 10

     C.     Finding a private right of action in the pre-1979 statute is not necessary to avoid absurd results. ....................................................... 12

     D.     No agency construction suggests an implied private right of action under the statute ..................................................................... 16

II.    The Court should further grant summary judgment in favor of Defendants on Plaintiffs' negligence per se claim because, at all relevant times, Defendants were not members of the class of persons regulated by the reporting statute, and/or Plaintiffs were n longer among the class of persons protected thereby. ........................................................................... 17

III.   The Court should grant summary judgment to WTNY and WTPA because the reporting statute does not create vicarious liability. ................................ 21

IV.   Alternatively, the Court should grant summary judgment to WTNY and WTPA for abuse by Gunner Haines because any failure to report was not the proximate cause of such abuse. ............................................................... 23

CONCLUSION ......................................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986) ........................................ 4

*Arbaugh v. Bd. of Educ.*, 591 S.E.2d 235 (W.Va. 2003) ............................................................. 16

*Becker v. Mayo Found.*, 737 N.W.2d 200 (Minn. 2007) ............................................................. 14

*Bentley v. Carroll*, 734 A.2d 697 (Md. 1999) ........................................................................... 13

*BNSF Ry. Co. v. Feit*, 2012 MT 147, 365 Mont. 359, 281 P.3d 225 ............................................. 7

*Boettcher v. Montana Guar. Fund*, 2007 MT 69, 336 Mont. 393, 154 P.3d 629 .......................... 7

*Borne v. Northwest Allen County School Corp.*, 532 N.E.2d 1196 (Ind. App. 1989) ................. 15

*Bradley v. Ray*, 904 S.W.2d 302 (Mo. App. 1995) ................................................................... 14

*Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044 (9th Cir. 1995) ....................................... 3, 4

*C.B. v. Bobo*, 659 So.2d 98 (Ala. 1995) ................................................................................. 13

*Cechman v. Travis*, 414 S.E.2d 282 (Ga. App. 1991) ............................................................... 13

*Celotex Corp. v. Catrett*, 477 U.S. 316, 106 S.Ct. 2548 (1986) ................................................ 3

*Child M. v. Fenes*, 2016 WL 4473253 (N.J. Sup. Ct. App. Div. Aug. 25, 2016) ........................ 14

*Cooper Clinic, P.A. v. Barnes*, 366 Ark. 533, 237 S.W.3d 87 (2006) .................................. 20, 22

*Cuyler v. United States*, 362 F.3d 949 (7th Cir. 2004) ....................................................... 14, 15

*Doe v. Bradley*, 2011 WL 290829 (Del. Sup. Ct. Jan. 21, 2011) ............................................. 16

*Doe v. D'Agostino*, 367 F. Supp. 2d 157 (D. Mass. 2005) ....................................................... 13

*Doe v. Marion*, 645 S.E.2d 245 (S.C. 2007) ........................................................................... 14

*Doe v. The Corporation of the President of The Church of Jesus Christ of Latter-day Saints*,
    98 P.3d 429 (Utah App. 2004) ............................................................................................ 14

*Doyle v. Clark*, 2011 MT 117, 360 Mont. 450, 254 P.3d 570 ........................................... 5, 7, 11

*E. J. T. v. Jefferson Cnty.*, 370 Or. 215 (Or. 2022) ................................................................. 14

*Essex Ins. Co. v. Moose's Saloon, Inc.,* 2007 MT 202, 338 Mont. 423, 166 P.3d 451 ................. 8

*Faust v. Utility Solutions*, 2007 MT 326, 340 Mont. 183, 173 P.3d 1183 .................................. 7

*Freehauf v. Sch. Bd. of Seminole Cnty.*, 623 So. 2d 761 (Fla. App. 1993) ............................... 15

*Gross v. Myers*, 229 Mont. 509, 748 P.2d 459 (1987) ............................................................. 10

*Hansen v. United States*, 7 F.3d 137 (9th Cir. 1993) ................................................................ 4

*In re First T.D. & Inv., Inc.*, 253 F.3d 520 (9th Cir. 2001) ....................................................... 18

*Isley v. Capuchin Province*, 880 F. Supp. 1138 (D. Mich. 1995) ............................................. 14

*Jamison v. Kaiser Found.* (E.D. Cal. June 18, 2014No. 2:14-cv-1104 LKK KJN P, 2014 U.S.
    Dist. LEXIS 83788 ............................................................................................................. 13

*Jamison v. Kaiser Found.*, 2014 U.S. Dist. LEXIS 83788 (E.D. Cal. June 18, 2014) ................ 13

*Kansas State Bank & Trust Co. v. Specialized Transp. Services, Inc.*, 819 P.2d 587 (Kan. 1991) .................................................................................................................. 10, 13

*Kornec v. Mike Horse Mining*, 120 Mont. 1, 180 P.2d 252 (1947) .............................................. 22

*Kwan v. SanMedica Int'l*, 854 F.3d 1088, (9th Cir. 2017) ........................................................... 4

*Larson v. State By & Through Stapleton*, 2019 MT 28, 394 Mont. 167, 434 P.3d 241 ................ 8

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 110 S.Ct. 3177 (1990) ............................ 4

*Mark Ibsen, Inc. v. Caring for Montanans, Inc.*, 2016 MT 111, 383 Mont. 346, 371 P.3d 446 ........................................................................................................ 8, 10

*Marquay v. Eno*, 662 A.2d 272 (N.H. 1995) .............................................................................. 14

*Massee v. Thompson,* 2004 MT 121, 321 Mont. 210, 90 P.3d 394 ............................................... 7

*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 572, 106 S.Ct. 1348 (1986) .................... 3

Mont. Code Ann. § 41-3-101 ..................................................................................................... 21

*Mont. Sports Shooting Ass'n v. State*, 2008 MT 190, 344 Mont. 1, 185 P.3d 1003 ..................... 19

*Newville v. State, Dep't of Fam. Servs.*, 267 Mont. 237, 883 P.2d 793 (1994) ........................... 19

*Nunez v. Watchtower Bible & Tract Soc'y of New York, Inc.*, 2020 MT 3, 398 Mont. 261, 455 P.3d 829 ................................................................................................................. 20, 21

*Parents of Minor Child v. Charlet*, 135 So.3d 724 (La. App. 2013) ............................................ 13

*Paulson v. Sternlof*, 15 P.3d 981 (Okla. App. 2000) .................................................................. 14

*Perry v. S.N.*, 973 S.W.2d 301, 306 (Tex. 1998) ....................................................................... 15

*Peterson-Tuell v. First Student Transp., LLC*, 2014 MT 307, 377 Mont. 113, 339 P.3d 16 .......... 5

*Prindel v. Ravalli County*, 2006 MT 62, 331 Mont. 338, 133 P.3d 165 .................................. 5, 17

*Rodriguez v. Sandhill Cattle Co.*, 427 S.W.3d 507 (Tex. App. 2014) ......................................... 21

*S.E.C. v. Seaboard Corp.*, 677 F.2d 1301 (9th Cir. 1982) ........................................................... 3

*Schmill v. Liberty Nw. Ins. Corp.*, 2005 MT 144, 327 Mont. 293, 114 P.3d 204 ........................ 21

*Somers v. Cherry Creek Dev., Inc.*, 2019 MT 101, 395 Mont. 389, 439 P.3d 1281 ............... 10, 12

*State ex rel. Dick Irvin, Inc. v. Anderson*, 164 Mont. 513, 525 P.2d 564 (1974) ....................... 12

*State v. Heath*, 2004 MT 126, 321 Mont. 280, 90 P.3d 426 ...................................................... 19

*State v. Triplett*, 2008 MT 360, 346 Mont. 383, 195 P.3d 819 .................................................... 6

*State, Dep't of Livestock v. Sand Hills Beef*, 196 Mont. 77, 639 P.2d 480 (1981) ...................... 18

*Stipe v. First Interstate Bank-Polson*, 2008 MT 239, 344 Mont. 435, 188 P.3d 1063 ....... 5, 21, 23

*Tanya S. v. N. Cent. Behavioral Health Sys., Inc.*, 816 N.E.2d 4 (Ill. App. 2004) ...................... 13

*Waschle ex rel. Birkhold-Waschle v. Winter Sports, Inc.*, 144 F. Supp. 3d 1174 (D. Mont. 2015) ....................................................................................................................... 18

*Wombold v. Assocs. Fin. Servs. Co. of Montana*, 2004 MT 397, 325 Mont. 290, 104 P.3d 1080 ................................................................................................ 8, 11

## Statutes

Mont. Code Ann. § 1-2-203 ..................................................................................... 12

Mont. Code Ann. § 27-2-216 ................................................................................... 22

Mont. Code Ann. § 41-3-207 ..................................................................................... 6

R.C.M. § 10-1303 ................................................................................... 9, 18, 19, 21

R.C.M. § 10-1304 ................................................................................................... 18

R.C.M. § 10-1305 ..................................................................................................... 9

R.C.M. § 10-1309 ..................................................................................................... 9

R.C.M. § 10-1310 ..................................................................................................... 9

R.C.M. § 10-1313 ................................................................................................... 11

R.C.M. § 10-1315 ..................................................................................................... 9

R.C.M. Title 10, Ch. 13 (1975) ............................................................................. 7, 9

## Other Authorities

*Prosser and Keeton on the Law of Torts* § 36, at 221 (5th ed. 1984) .......................... 11

## Rules

Fed. R. Civ. P. 56 ..................................................................................................... 3

Defendants Watchtower Bible and Tract Society of New York, Inc. ("WTNY") and Watch Tower Bible and Tract Society of Pennsylvania ("WTPA") (collectively "Defendants") hereby submit this Brief in Support of their Joint Motion for Partial Summary Judgment as to Plaintiffs Tracy Caekaert and Camillia Mapley's (collectively "Plaintiffs") Second Claim for Negligence Per Se. For the reasons set forth herein, Defendants respectfully request the Court grant their Motion and rule that Plaintiffs' negligence per se claim against Defendants fails as a matter of law.

## INTRODUCTION

Plaintiffs brought this action asserting claims for negligence and negligence per se against Defendants WTNY and WTPA. Plaintiffs' claims stem from their alleged sexual abuse as children, their involvement in the Jehovah's Witnesses' faith, and Defendants' alleged conduct in responding to reports of sexual abuse. (*See, generally,* Doc. 22.) Plaintiffs' father, Bruce Mapley Sr., had been molesting them "for several years" before they began associating with Jehovah's Witnesses in 1973. (SUF ¶ 3.) Plaintiffs' mother was aware that her husband was a pedophile. (SUF ¶ 4.) Plaintiffs began attending non-party Hardin Congregation of Jehovah's Witnesses in Hardin, Montana (the "Congregation") in 1973 or 1974. (SUF ¶ 5.) Plaintiffs also allege they were molested by Gunner Haines, another member of the Congregation, in 1976 or 1977. (SUF ¶ 6.) Plaintiffs allege that their father and

Haines both confessed to Congregation elders around 1979, and that the elders did not report the sexual abuse to law enforcement or child protective services. (SUF ¶ 7.) Plaintiffs allege that their father continued abusing them after 1979, but not beyond 1983. (SUF ¶ 8.) Haines, however, did not abuse them again after his confession to Congregation elders. (SUF ¶ 9.) Plaintiffs' second of three causes of action is for negligence per se and alleges that "Defendants violated Montana's mandatory reporting statute as it existed at all times relevant to this case, including all years before 1979, by not reporting the sexual abuse of Plaintiffs …." (Doc. 22 at ¶ 67.)[1]

After extensive discovery, Plaintiffs' negligence per se claim fails as a matter of law against WTNY or WTPA because, at the relevant time, Montana's mandatory reporting statute did not provide a private cause of action and, in any case, the reporting statute did not apply to WTNY or WTPA. Additionally, the reporting statute does not create vicarious liability. Moreover, Haines did not abuse Plaintiffs after confessing, so any failure to report was not the proximate cause of any subsequent abuse by him. Consequently, Defendants are entitled to judgment as a matter of law on Plaintiffs' claim for negligence per se based on the undisputed facts relating to that cause of action.

---

[1] Plaintiffs' first cause of action for general negligence will be the subject of a later motion by Defendants, and Plaintiffs have voluntarily dismissed their third cause of action for battery against Bruce Mapley Sr. (Doc. 175, 176).

## LEGAL STANDARDS

### 1.    Fed. R. Civ. P. 56

A moving party is entitled to summary judgment on a claim when there are no genuine issues of material fact and the party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 316, 323, 106 S.Ct. 2548, 2552 (1986).  "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth."  *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).  A moving party can meet its burden of showing no genuine dispute by identifying those parts of the record—including any pleadings, depositions, interrogatories, or admissions and affidavits on file—that "indicate the absence of a genuine issue of material fact."  *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1048 (9th Cir. 1995) (internal citations omitted).  Once the moving party has made this showing, the nonmoving party must "designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

Federal courts draw inferences from facts in the light most favorable to the non-moving party, but the non-moving party must do more than simply show there is some "metaphysical doubt" regarding material facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 572, 586-87, 106 S.Ct. 1348, 1356 (1986).  There is no issue for trial without "sufficient evidence favoring the non-moving party for a jury

to return a verdict for that party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986). The non-movant does not defeat a motion for summary judgment by merely showing a "scintilla of evidence" in support of its claim. *Id*., 477 U.S. at 252. Further, a non-moving party cannot defeat a motion for summary judgment with conclusory allegations. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). Rather, the non-moving party must come forward with at least one sworn averment of fact essential to its claim or defense. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89, 110 S.Ct. 3177, 3188-89 (1990); *see also Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995).

If the evidence on a claim or defense is enough to allow a reasonable jury to return a verdict in favor of the non-moving party, then there is a genuine issue of material fact as to that claim or defense. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A reasonable jury could not return a verdict in favor of the non-moving party where the evidence is "merely colorable…or is not significantly probative[.]" *Id*. at 249-50, 106 S.Ct. at 2511 (citations omitted).

Although federal procedural rules (such as Rule 56) apply in diversity actions, state substantive law applies to the claims therein. *See Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1095-1098 (9th Cir. 2017).

## 2.        Negligence Per Se

Negligence per se is an alternative means by which a plaintiff may prove the duty and breach elements of a negligence claim. *See Stipe v. First Interstate Bank-Polson*, 2008 MT 239, ¶ 14, 344 Mont. 435, 188 P.3d 1063. "A negligence per se theory, however, does not relieve a plaintiff from proving causation and damages to establish liability." *Id*. (internal citations omitted). To establish negligence per se, a plaintiff must prove the following:

(1) the defendant violated a particular statute;

(2) the statute was enacted to protect a specific class of persons;

(3) the plaintiff is a member of that class;

(4) the plaintiff's injury is of the sort the statute was enacted to prevent; and

(5) the statute was intended to regulate members of defendant's class.

*Prindel v. Ravalli County*, 2006 MT 62, ¶ 27, 331 Mont. 338, 133 P.3d 165. "In addition to these five elements, however, is the requirement that the statute allegedly violated allows a private right of action." *Doyle v. Clark*, 2011 MT 117, ¶ 32, 360 Mont. 450, 254 P.3d 570, superseded by statute on other grounds as stated in *Peterson-Tuell v. First Student Transp., LLC*, 2014 MT 307, 377 Mont. 113, 339 P.3d 16. "[I]f the statute in question may be enforced only by the state, a private individual may not attempt to recover for violation of the statute under a negligence per se claim." *Doyle*, ¶ 32 (citations omitted). The interpretation and construction

of a statute is a matter of law. *State v. Triplett*, 2008 MT 360, ¶ 13, 346 Mont. 383, 195 P.3d 819.

## ARGUMENT

Under Montana law, a claim for negligence per se must be based on a statute that allows a private right of action. *Doyle*, ¶ 32. Montana's current reporting statute creates a private right of action. *See* Mont. Code Ann. § 41-3-207 ("Any person … who fails to [report] … is civilly liable for the damages proximately caused by the act or omission."). However, the reporting statute in effect at all times relevant to this case <u>did not</u> provide a private cause of action and therefore cannot be used to support Plaintiffs' negligence per se claim. Plaintiffs attached a copy of the operative reporting statute—in effect before 1979—to their First Amended Complaint. (*See* Doc. 22-4; *see also* Doc. 22 at ¶ 67.) Plaintiffs' claim for negligence per se, therefore, fails as a matter of law.

Even if a private cause of action had existed, Plaintiffs' negligence per se claim still fails because (1) Defendants were not members of the class regulated by the reporting statute; (2) by the time the statute was amended to make clergy mandatory reporters, Plaintiffs were adults and were not being abused; and (3) the reporting statute does not create vicarious liability. As such, Defendants are further entitled to summary judgment on Plaintiffs' second claim.

I.   **The Court should grant summary judgment in favor of Defendants on Plaintiffs' negligence per se claim (Second Claim) precisely because, at all relevant times, Montana's mandatory reporting statute did not confer a private cause of action.**

At the threshold, Plaintiffs must establish that "the statute allegedly violated allows a private right of action." *Doyle*, ¶ 32 (citation omitted). "Whether a statute creates by implication a private right of action presents a matter of statutory construction" and is therefore a question of law. *Faust v. Utility Solutions*, 2007 MT 326, ¶ 24, 340 Mont. 183, 173 P.3d 1183.

Plaintiffs allege that Defendants violated Montana's pre-1979 mandatory reporting statute. (Doc. 22 at ¶ 67.) This is the statute that must be applied to any allegation that Defendants violated a duty to report before 1979. *See Massee v. Thompson,* 2004 MT 121, ¶ 34, 321 Mont. 210, 90 P.3d 394 (the relevant statute for a negligence per se claim is the version that was in effect when the underlying incidents occurred); *Boettcher v. Montana Guar. Fund*, 2007 MT 69, ¶ 14, 336 Mont. 393, 154 P.3d 629 (citation omitted); *see also BNSF Ry. Co. v. Feit*, 2012 MT 147, ¶ 33, 365 Mont. 359, 281 P.3d 225 (Rice, J., dissenting) ("To impose liability upon a party based upon law not in effect at the time of the party's actions violates this principle and raises questions of fundamental fairness.")

Montana's pre-1979 reporting statute did not expressly create a private right of action. *See* R.C.M. Title 10, Ch. 13 (1975). "[A] party is not entitled to obtain private enforcement of a regulatory statute that is not intended by the legislature to

be enforceable by private parties." *Mark Ibsen, Inc. v. Caring for Montanans, Inc*., 2016 MT 111, ¶ 41, 383 Mont. 346, 371 P.3d 446.  In other words, "every statutory violation or noncompliance by another does not afford a private right of action to every party adversely affected thereby." *Larson v. State By & Through Stapleton*, 2019 MT 28, ¶ 27, 394 Mont. 167, 434 P.3d 241 (compiling example cases).

In narrow circumstances, a statute can "create[ ] a private cause of action by implication." *Wombold v. Assocs. Fin. Servs. Co. of Montana*, 2004 MT 397, ¶ 35, 325 Mont. 290, 104 P.3d 1080, overruled on other grounds by *Essex Ins. Co. v. Moose's Saloon, Inc.,* 2007 MT 202, ¶ 35, 338 Mont. 423, 166 P.3d 451.  Montana courts consider four factors before interpreting a statute to imply a private right of action:

> (1) Is the interpretation consistent with the statute as a whole? (2) Does the interpretation reflect the intent of the legislature considering the plain language of the statute? (3) Is the interpretation reasonable so as to avoid absurd results? and (4) Has the agency charged with the administration of the statute placed a construction on the Statute?

*Wombold*, ¶ 35 (citation omitted).  In this case, none of these factors support finding a private right of action in the pre-1979 reporting statute.

### A.   A private right of action is inconsistent with the pre-1979 reporting statute as a whole.

A private right of action is not consistent with the statute as a whole.  The statute was placed within a chapter of the Montana code regarding abused, neglected,

and dependent minors. *See* R.C.M. Title 10, Ch. 13.[2]  The express policy of the

statutes in this chapter is stated as follows:

> It is intended that **the mandatory reporting of such cases** by professional people and other community members to the appropriate authority **will cause the protective services of the state to** seek to prevent further abuses, protect and enhance the welfare of these children, and preserve family life wherever possible.

R.C.M. § 10-1303 (emphasis added).  In furtherance of this policy, the statutes in

this chapter empower *state and local governments*, not private individuals, to

enforce its provisions. *See, e.g*., R.C.M. § 10-1305 (upon a report under R.C.M. §

10-1304, "the social worker shall conduct a thorough investigation… the department

shall provide protective services…); R.C.M. § 10-1309 (emergency protective

service authorized by any department social worker, the county welfare department,

peace officer, or county attorney); R.C.M. § 10-1310 (county attorney responsible

for filing all petitions alleging abuse, neglect and dependency, which "is a civil

action brought in the name of the state of Montana"); R.C.M. § 10-1315 (department

of social and rehabilitation services and county welfare department responsible for

providing protective services authorized by the act).  These provisions can *only* be

enforced by government actors, "not private parties." *Somers v. Cherry Creek Dev.,*

---

[2] A portion of this chapter is attached to Plaintiffs' First Amended Complaint and Jury Demand at Doc. 22-4.

*Inc.*, 2019 MT 101, ¶ 12, 395 Mont. 389, 439 P.3d 1281 ("RISA requires the Department to enforce its provisions, not private parties").

The Montana Supreme Court has acknowledged the purpose and policy of the reporting statute: "[t]he purpose of the statutory requirement for the report of child abuse is to allow qualified persons in [the Department of Social and Rehabilitation Services], the county attorney, or peace officers to make the necessary investigation." *Gross v. Myers*, 229 Mont. 509, 512, 748 P.2d 459, 461 (1987) (applying 1985 version of the statute). *See also Kansas State Bank & Trust Co. v. Specialized Transp. Services, Inc.*, 819 P.2d 587, 604 (Kan. 1991) ("The purpose of the reporting statute is to provide for the protection of children who have been abused by encouraging the reporting of suspected child abuse and by ensuring the thorough and prompt investigation of such reports. There is no express indication of legislative intent to impose any liability for failure to report.").

Thus, precisely because the statutory scheme can only be enforced by state and local government, finding a private right of action would be inconsistent with the statutory scheme. *See Mark Ibsen*, ¶ 47.

**B.    Nothing in the plain language of the pre-1979 statute reflects any intent to create a private right of action.**

The plain language of the statute does not reflect any legislative intent to create a private right of action.  There is no civil remedy, no attorney's fee provision, no standards or procedural rules applicable to a civil claim, nor anything else to

indicate any intent to create a private right of action.  *Cf. Wombold*, ¶ 42 ("The inclusion of the attorney fee provision is proof of a legislative intent to recognize a private right of action …."). Again, under R.C.M. § 10-1303, the mandatory reporting of abuse triggers only *government* action. "[T]he social worker shall conduct a thorough investigation …. [T]he department shall provide protective services to protect the child …." etc. Further, the statute was enforced through criminal and administrative remedies. *See*, *e.g.*, R.C.M. § 10-1313 (fines/monetary sanctions against parents for costs of supporting the child in foster care) -1322(1) ("[i]f the evidence indicates violation of the Criminal Code, it shall be the responsibility of the county attorney to file appropriate charges against the alleged offender.")

As the Montana Supreme Court said when applying generally-applicable principles of statutory construction to another statute: "[n]othing in the statute suggests that the Legislature intended to grant individuals a private right of action." *See Doyle*, ¶ 33. "The obvious conclusion must usually be that when the legislators said nothing about it, they either did not have the civil suit in mind at all, or deliberately omitted to provide for it." *Prosser and Keeton on the Law of Torts* § 36, at 221 (5th ed. 1984).

In addition, the Montana Legislature's decision to revise the reporting statute in 1979 to create a private right of action, *see* Mont. Code Ann. § 41-3-207, strongly

suggests that such a right did not previously exist. *See* Mont. Code Ann. § 1-2-203 (noting that "new provisions [in an amended statute] are to be considered as having been enacted at the time of the amendment"). There would be no reason for the Legislature to amend the statute to add a private right of action if that right already existed in the statute. In fact, the rules of statutory construction do not allow for an interpretation that a private right of action existed before the Legislature acted to amend the statute to provide for such a right. *See State ex rel. Dick Irvin, Inc. v. Anderson*, 164 Mont. 513, 523-24, 525 P.2d 564, 570 (1974) ("The court will presume that the legislature would not pass useless or meaningless legislation.") (citation omitted).

For all of these reasons, it's clear the legislature did not intend the pre-1979 statute to provide a private right of action. *See Somers*, ¶ 13.

### C. Finding a private right of action in the pre-1979 statute is not necessary to avoid absurd results.

Sometimes a statute makes no sense without a private right of action. For example, denying a private right of action is absurd when it leaves the statute without any enforcement mechanism. *See Somers*, ¶ 17. That is not the case here. To the contrary, this statute could only be enforced by state actors. Private individuals have no authority to enter someone's home to investigate allegations of child abuse, or to remove an abused child from their home.

And far from absurd, nearly every state to consider whether a reporting statute that is silent[3] on the matter of civil liability nevertheless creates a private right of action has rejected a private cause of action.[4]   "[A]n imposing line of cases …

_____

[3] Statutes in Arkansas, Colorado, Iowa, Kentucky, Michigan, New York, Rhode Island, and now, of course, Montana, expressly create civil liability.

[4] *See C.B. v. Bobo,* 659 So.2d 98, 102 (Ala. 1995) ("[T]he primary thrust of the legislation is to help those who are abused or neglected by establishing child protection services and a method of conducting investigations.  While the Act imposes a duty on an individual to make such a report, there is no indication of any legislative intent to impose civil liability for failure to report."); *Jamison v. Kaiser Found.*, 2014 U.S. Dist. LEXIS 83788, at *8 (E.D. Cal. June 18, 2014) ("plaintiff cannot pursue a claim for damages under § 11166 because the statute does not provide a private right of action"); *Cechman v. Travis*, 414 S.E.2d 282, 283-84 (Ga. App. 1991) ("there would appear to be nothing within the provisions of OCGA § 19-7-5 which purports to create a private cause of action in tort in favor of an alleged victim of child abuse"); *Tanya S. v. N. Cent. Behavioral Health Sys., Inc.*, 816 N.E.2d 4, 7-8 (Ill. App. 2004) ("The Reporting Act provides criminal sanctions for failure to report…. The plaintiffs have not explained why this sanction is insufficient to assure compliance with the provisions of the statute."); *Kansas State Bank & Trust Co. v. Specialized Transp. Services, Inc.*, 819 P.2d 587 (Kan. 1991) ("The purpose of the reporting statute is to provide for the protection of children who have been abused by encouraging the reporting of suspected child abuse and by insuring the thorough and prompt investigation of such reports. There is no express indication of legislative intent to impose any liability for failure to report."); *Parents of Minor Child v. Charlet*, 135 So.3d 724, 736 (La. App. 2013) ("There are no civil remedies provided in the entire statutory scheme. Accordingly, we find there is no civil remedy, and therefore, no civil cause of action for an alleged breach of the mandatory reporter duty to report. That remedy is expressly delegated to criminal law enforcement."); *Bentley v. Carroll*, 734 A.2d 697, 705 n.8 (Md. 1999) ("[T]he current case law governing tort claims in Maryland courts views the rule that the violation of a statute is evidence of negligence strictly as a rule of evidence, and not as a rule of substantive law implying a cause of action within any given statute relied upon for such evidence."); *Doe v. D'Agostino*, 367 F. Supp. 2d 157, 176 (D. Mass. 2005) ("D'Agostino and the Arlington Defendants are correct that section 51A does not provide a private right of action against mandatory reporters who fail to report an incident of child abuse."); *Bradley v. Ray*, 904 S.W.2d 302, 312-14 (Mo. App.

dealing with the private-right question under very similar, indeed materially identical, child-abuse notification statutes … have held that a private remedy should *not* be implied." *Cuyler v. United States*, 362 F.3d 949, 954 (7th Cir. 2004) (citation omitted); s*ee also Becker v. Mayo Found.*, 737 N.W.2d 200, 208 (Minn. 2007) (the "vast majority of courts" have "held that their reporting statutes do not create a civil cause of action").

These courts explain that such a claim "would represent an abrupt and sweeping departure from a general common law rule of nonliability" for cases of nonfeasance. *Marquay v. Eno*, 662 A.2d 272, 278 (N.H. 1995). It would "create a large and new field of tort liability beyond what existed at common law without clear

---

1995) ("because the Act makes individuals who do not report abuse subject to criminal penalties but does not provide a civil remedy, we do not believe Plaintiff has demonstrated a clear legislative intention to provide for civil remedies"); *Child M. v. Fenes*, 2016 WL 4473253, at *6 (N.J. Sup. Ct. App. Div. Aug. 25, 2016) (violation of the reporting statute "does not constitute negligence per se or create a private cause of action"); *Paulson v. Sternlof*, 15 P.3d 981, 984 (Okla. App. 2000) ("the child abuse reporting statutes do not create a private right of action"); *E. J. T. v. Jefferson Cnty.*, 370 Or. 215, 235 (Or. 2022) ("[P]laintiff identifies nothing in the child-abuse-reporting statutes to persuade us that the legislature intended to create a new statutory right of action that would exist independently of whatever common-law claim the court might recognize."); *Doe v. Marion*, 645 S.E.2d 245 (S.C. 2007) (because reporting statute "is silent as to civil liability" the "legislative intent was for the reporting statute not to create civil liability"); *Doe v. The Corporation of the President of The Church of Jesus Christ of Latter-day Saints*, 98 P.3d 429, 432, n. 7 (Utah App. 2004) ("COP's failure to report Tilson's acts of child sexual abuse did not create a private cause of action for Plaintiffs"); *Isley v. Capuchin Province*, 880 F. Supp. 1138, 1148 (D. Mich. 1995) (applying Wisconsin law) ("this Court finds nothing to indicate that the Wisconsin legislature intended to authorize a private cause of action for failure to report").

legislative direction to do so." *Freehauf v. Sch. Bd. of Seminole Cnty.*, 623 So. 2d 761, 764 (Fla. App. 1993). "[R]ecognizing a new, purely statutory duty" would "have an extreme effect upon the common law" especially because a reporting statute "criminalizes inaction rather than action." *Perry v. S.N.*, 973 S.W.2d 301, 306 (Tex. 1998).

These courts also explain complex issues of causation that would arise from creating civil liability for failure to report. One of the "reason[s] behind the common law's settled reluctance to create" liability for inaction "is that issues of causation tend to be more difficult to resolve in a case of nonfeasance … than in one of misfeasance." *Cuyler*, 362 F.3d at 955-56. In one such case, the Seventh Circuit explained:

> Suppose the Great Lakes Naval Hospital had promptly reported the abuse of the Norman child to the state's child welfare department. What would have ensued? Would Higgs, who did not admit having abused the child, have been arrested? …. Of course, just the commencement of an investigation might well have deterred her from further child abuse, but that is speculation too. The speculative character of causal inquiries in good Samaritan cases is another reason to doubt that the Illinois legislature intended to create tort liability by enacting a statute that does not purport to do so.

*Id*. *See also Borne v. Northwest Allen County School Corp.*, 532 N.E.2d 1196, 1203 (Ind. App. 1989) (private right of action "would raise substantial questions of causation since the failure would not in the direct sense be a proximate cause of the injury to the child").

Page 15

Causation issues are "further complicated when one considers" that reporting statutes require "the exercise of judgment of an individual reporter who may become aware of a possible case of child abuse only through rumors, innuendo or second-hand reports." *Arbaugh v. Bd. of Educ.*, 591 S.E.2d 235, 240-41 (W.Va. 2003).

> The diverse backgrounds, professions and occupations represented in the statutorily defined class of persons required to report make it all the more difficult to define what conduct is required in various conceivable situations. Under such nebulous circumstances, we are unwilling to recognize a new and broad field of tort liability without express legislative designation of a private cause of action.

*Id. See also Doe v. Bradley*, 2011 WL 290829 (Del. Sup. Ct. Jan. 21, 2011) (noting that reporting statutes "require the reporter to exercise judgment before making the report" but "offer no direction to the courts (or the reporters) as to how these standards should be applied in the tort context").

In sum, the absence of a private right of action would not make the statute absurd.  Given the complicated issues such a cause of action creates, it is an issue that should be left to the legislature.

### D.   No agency construction suggests an implied private right of action under the statute.

The Department of Social and Rehabilitation Services was charged with the administration of the pre-1979 Act.  There is no evidence that the Department has ever construed the act to create a private right of action.  The legislative history under the pre-1979 Act is sparse and does not provide guidance about the Department's

construction of the statute.  The only potentially relevant statement in the legislative history is that "[i]t was brought out that the [Department] can handle this legislation without any additional staff."  (*See* Legis. Hist. of L. 1973, Ch. 292 (S.B. 408) at p. 2, attached hereto as Exhibit A.)  In other words, the Department recognized that enforcement was its responsibility.  The Legislature's intent to grant authority to the state alone to enforce the pre-1979 Act is express and persuasive.  *See Somers*, ¶ 18.

As such, none of the *Wombold* factors support finding a private right of action in the pre-1979 reporting statute, and Plaintiffs' negligence per se claim therefore fails as a matter of law.

## II. The Court should further grant summary judgment in favor of Defendants on Plaintiffs' negligence per se claim because, at all relevant times, Defendants were not members of the class of persons regulated by the reporting statute, and/or Plaintiffs were no longer among the class of persons protected thereby.

As noted *supra*, Plaintiffs must prove five elements to establish negligence per se:

> (1) the defendant violated a particular statute;
> (2) the statute was enacted to protect a specific class of persons;
> (3) the plaintiff is a member of that class;
> (4) the plaintiff's injury is of the sort the statute was enacted to prevent; and
> (5) the statute was intended to regulate members of defendant's class.

*Prindel*, ¶ 27.  Plaintiffs cannot satisfy the first or fifth elements.

From 1973 to 1979, the reporting statute listed the following as mandatory reporters:

> Any physician who examines, attends or treats a person under the age
> of majority, or any nurse, teacher, social worker, attorney or law
> enforcement officer or any other person who has reason to believe that
> a child has had serious injury or injuries inflicted upon him or her as a
> result of abuse or neglect, or has been willfully neglected…

R.C.M. § 10-1304.  The reporting statute imposes a duty only on the specified professionals or "persons" with knowledge of the abuse or neglect, but not on their employers or principals (assuming arguendo that elders in Hardin Congregation were agents of WTNY and/or WTPA (they were not)).  The Legislature's policy statement clarifies that the mandatory reporting would be "by professional people **and other community members**."  R.C.M. § 10-1303 (emphasis added).  In that context, the statute at least creates an ambiguity regarding the scope of mandatory reporters under R.C.M. § 10-1304 and whether Defendants would be included, which requires the reviewing court to conduct a statutory construction analysis.[5]  *See State, Dep't of Livestock v. Sand Hills Beef*, 196 Mont. 77, 83, 639 P.2d 480, 483 (1981) (The Montana Supreme Court "is committed to the wholesome and generally recognized rule that statutes imposing burdens, either *civil* or criminal, upon the citizens must be clear and explicit.") (emphasis in original).

---

[5] "A federal court sitting in diversity interprets a state statute applying state rules of statutory construction."  *Waschle ex rel. Birkhold-Waschle v. Winter Sports, Inc.*, 144 F. Supp. 3d 1174, 1179 n. 3 (D. Mont. 2015) (citing *In re First T.D. & Inv., Inc.,* 253 F.3d 520, 527 (9th Cir. 2001)).

Courts "construe a statute by reading and interpreting the statute as a whole, without isolating specific terms from the context in which they are used by the Legislature." *Mont. Sports Shooting Ass'n v. State*, 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003.  The legislative intent behind a statute "may not be gained from the wording of any particular section or sentence, but only from a consideration of the whole." *State v. Heath*, 2004 MT 126, ¶ 27, 321 Mont. 280, 90 P.3d 426 (citations omitted).  Further, when the plain meaning of a statute is subject to more than one reasonable interpretation, a court will examine the legislative history to aid its interpretation. *Heath*, ¶ 33 (citation omitted).

Here, the policy statement for the reporting requirement indicated that it applied to individuals in Montana, rather than entities/institutions located in other states.   *See* R.C.M. § 10-1303 (reporting "by professional people and other community members"); *see also Newville v. State, Dep't of Fam. Servs.*, 267 Mont. 237, 269-70, 883 P.2d 793, 812 (1994) (interpreting later version of immunity provision for mandatory reporters and stating that "it is intended to protect individuals … who are required to report suspected abuse").  The legislative history of the 1973 amendment also supports a narrower application to individuals only.  A representative of the Department of Social and Rehabilitation Services testified that, along with the two additional professions added as required reporters by the amendment, "neighbors and friends would be included" as well.  (*See* Ex. A at p. 6.)

At least one other court has already held that only the persons clearly and specifically enumerated in a mandatory reporting statute are subject to liability for a failure to report. *See Cooper Clinic, P.A. v. Barnes*, 366 Ark. 533, 538-42, 237 S.W.3d 87, 91-93 (2006) (despite civil liability statute for failure to report by an "institution," holding that medical clinic was not directly liable for failing to report suspected child abuse). Therefore, the pre-1979 reporting statute should not be interpreted to include entities such as WTNY and WTPA.

To the extent Plaintiffs allege any reporting violations from 1979 to 1991, the post-1979 version of the reporting statute, which adopted a more defined list of mandatory reporters, was also not intended to regulate Defendants. Assuming arguendo again that elders in Hardin Congregation were agents of WTNY and/or WTPA (again, they were not), such elders in congregations of Jehovah's Witnesses are clergy under Montana law. *See Nunez v. Watchtower Bible & Tract Soc'y of New York, Inc*., 2020 MT 3, ¶¶ 13, 32-33, 398 Mont. 261, 455 P.3d 829 (acknowledging Jehovah's Witnesses elders as clergy). With that, the mandatory reporting statute did not apply to clergy until 1991, *see Nunez* at ¶ 27, and it has never listed religious entities as mandatory reporters.

When the 1991 amendment added clergy to the class of persons regulated by the statute, Plaintiffs Caekaert and Mapley were adults (both over the age of 20), and thus no longer members of the class of persons protected by the statute, and they

were no longer being abused.  (*See* SUF ¶¶ 1-2, 8-9.)  *See also* R.C.M. § 10-1303

and Mont. Code Ann. § 41-3-101(2) (noting the purpose of the reporting statute is

to "protect and enhance the welfare of these children…").  Further, after the 1991

amendment to the statute, the clergy-confidentiality exception would have applied,

shielding elders from any reporting requirements as it is undisputed that they learned

about the abuse only through confidential confessions.  *See Nunez*, ¶¶ 32-33.[6]

Finally, any failure to report in 1991 could not have been the proximate cause

of the abuse, which had already ended.  "A negligence per se theory does not relieve

a plaintiff from proving causation …." *Stipe*, ¶ 14.

## III. The Court should grant summary judgment to WTNY and WTPA because the reporting statute does not create vicarious liability.

Even assuming the pre-1979 version of the reporting statute created an

implied private right of action, the Court must consider against whom such a cause

of action might be asserted.  When a statute imposes a duty that does not exist under

the common law, "the duty being a creature of statute, its scope is defined by the

statute creating it." *Rodriguez v. Sandhill Cattle Co.*, 427 S.W.3d 507, 509 (Tex.

App. 2014).  The pre-1979 statute imposed a reporting duty on physicians, nurses,

---

[6] Although the *Nunez* opinion is dated long after the alleged occurrence of reporting violations in this matter, its rule applies.  *See Schmill v. Liberty Nw. Ins. Corp.*, 2005 MT 144, ¶ 13, 327 Mont. 293, 114 P.3d 204 ("the opinions of this Court regarding questions of state law are presumptively retroactive").  Further, *Nunez*, and the clergy-confidentiality exception, are based on a long-line of First Amendment precedent.  *See Nunez*, ¶¶ 29-30.

teachers, social workers, and other individuals.  It imposed no duty on their employers or organizations generally.

Additionally, Plaintiffs filed suit under Mont. Code Ann. § 27-2-216, which revived certain previously-barred claims.  It only applies to an "entity that owed a duty of care to the plaintiff …."  Mont. Code Ann. § 27-2-216(3).  Again, the pre-1979 version of the reporting statute did not impose a duty on entities.

Further, vicarious liability attaches when an agent acts "in furtherance of his master's interest" or "for the benefit of his master."  *Kornec v. Mike Horse Mining*, 120 Mont. 1, 8, 180 P.2d 252, 256 (1947).  The Arkansas Supreme Court rejected vicarious liability based on an employee's violation of a reporting duty because "it is individuals … who are listed as mandatory reporters, not institutions" and because reporting is done to avoid criminal liability, not to benefit an employer.  *Cooper Clinic*, 237 S.W.3d at 92.  The same holds true here.  An entity or organization that cannot violate the reporting statute and owes no duty to the plaintiff under the statute cannot be vicariously liable for another's violation of the statute.  Imposing vicarious liability would create liability against clinics, hospitals, schools, municipalities, the State, and other employers of mandatory reporters who fail to report.  There is no evidence the Montana Legislature intended to create such expansive liability.

**IV.     Alternatively, the Court should grant summary judgment to WTNY and WTPA for abuse by Gunner Haines because any failure to report was not the proximate cause of such abuse.**

As noted, "[a] negligence per se theory does not relieve a plaintiff from proving causation …." *Stipe*, ¶ 14.  Plaintiffs do not allege that Gunner Haines abused them after he confessed to the elders.  Accordingly, failure to report cannot have been the proximate cause of any abuse he committed.

## CONCLUSION

The pre-1979 reporting statute plainly did not create a private right of action. None of the factors Montana courts consider support an implied private right of action.  In any case, WTNY and WTPA did not violate the pre-1979 statute because it did not apply to members of Defendants' class.  By the time clergy were added as mandatory reporters in 1991, Plaintiffs were adults and were no longer being abused. In any case, the reporting statute does not create vicarious liability.  It imposes a duty only on individual reporters, not institutions.  Thus, WTNY and WTPA respectfully request judgment be entered in their favor on Plaintiffs' Second Claim. Plaintiffs can still try to prove negligence, but the pre-1979 reporting statute does not help them.

**DATED** this 26th day of December, 2023.

BROWN LAW FIRM, P.C.


By:   */s/ Michael P. Sarabia*
       JON A. WILSON
       BRETT C. JENSEN
       MICHAEL P. SARABIA

*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*


MOULTON BELLINGHAM PC


By:   */s/ Jordan W. FitzGerald*
       GERRY P. FAGAN
       CHRISTOPHER T. SWEENEY
       JORDAN W. FITZGERALD

*Attorneys for Defendant Watch Tower Bible and Tract Society of Pennsylvania*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(d)(2)(E), the undersigned hereby certify this brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double-spaced, with left, right, top, and bottom margins of one inch; and that the word count calculated by Microsoft Word is 6,105 words, excluding the Table of Contents, Table of Authorities, Certificate of Compliance, and Certificate of Service.

**DATED** this 26th day of December, 2023.

BROWN LAW FIRM, P.C.


By:  _/s/ Michael P. Sarabia_
     JON A. WILSON
     BRETT C. JENSEN
     MICHAEL P. SARABIA
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*


MOULTON BELLINGHAM PC


By:  _/s/ Jordan W. FitzGerald_
     GERRY P. FAGAN
     CHRISTOPHER T. SWEENEY
     JORDAN W. FITZGERALD
*Attorneys for Defendant Watch Tower Bible and Tract Society of Pennsylvania*