| | |
|---|---|
| Robert L. Stepans | Matthew L. Merrill (appearing *pro hac vice*) |
| Ryan R. Shaffer | Merrill Law, LLC |
| James C. Murnion | 1401 Delgany St. #404 |
| Victoria K.M. Gannon | Denver, CO 80202 |
| Meyer, Shaffer & Stepans, PLLP | Tel: (303) 947-4453 |
| 430 Ryman Street | matthew@merrillwaterlaw.com |
| Missoula, MT 59802 | |
| Tel: (406) 543-6929 | |
| Fax: (406) 721-1799 | |
| rob@mss-lawfirm.com | |
| ryan@mss-lawfirm.com | |
| james@mss-lawfirm.com | |
| katy@mss-lawfirm.com | |

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | Case No. CV-20-52-BLG-SPW |
| Plaintiffs, | **PLAINTIFFS' BRIEF IN SUPPORT OF THEIR NOTICE OF NON-COMPLIANCE WITH COURT ORDER (ECF NO. 293) AND MOTION FOR PROTECTIVE ORDER** |
| vs. | |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA., | |
| Defendants, | |

Plaintiffs submit the following brief in support of their Notice of Non-Compliance with Court Order (ECF No. 293) and Motion for Protective Order.

///

## SUMMARY

As conditions of conducting Rule 35 exams in this case, the Defendants' expert, Dr. Michael Butz, was ordered to, *inter alia*: (1) disclose if he intended to conduct neuropsychological testing; and (2) remove any references to being a "neutral and objective" evaluator from his Authorization form.  Ord. at 16, ECF No. 293 (hereinafter referred to as "Order").  Dr. Butz refuses to comply with these conditions.  As a result, Plaintiffs seek an order protecting them from examination by Dr. Butz until he certifies that he will not conduct neuropsychological testing.

## FACTUAL AND PROCEDURAL BACKGROUND

1. Plaintiffs allege psychological injuries from the sexual abuse at issue in this case and were evaluated for such injuries by Plaintiffs' retained experts, Dr. Trent Holmberg and Dr. Jonathan Bone.  Aff. of Dr. Trent Holmberg and Dr. Jonathan Bone, ¶¶ 7-11 (ECF No. 280-4).

2. Defendants retained Dr. Michael Butz to test and evaluate Plaintiffs' alleged injuries at issue in this case.  Brf. In Supp. Of Mot. for Ord. Directing Rule 35 Exams at 9 (ECF No. 267).

3. The parties engaged in extensive efforts to negotiate a memorandum of agreement ("MOA") that would permit Dr. Butz to complete the proposed exams without the Court's intervention.  *See e.g.* Correspondence (ECF No. 267-1 - 267-26).

4. However, throughout that process Dr. Butz's refused to state whether he intended to conduct neuropsychological testing:

    a. On June 30, 2023, Plaintiffs asked Dr. Butz to provide the "broad categories of tests" that he intended to conduct.  ECF No. 267-10 at 2.

    b. On July 17, 2023, Dr. Butz responded that he intended to conduct "academic, cognitive, and personality" testing.  ECF No. 267-12 at 1.

    c. On August 25, 2023, Plaintiffs' counsel requested clarification as to whether the broad categories of tests described by Dr. Butz included neuropsychological tests.  ECF No. 267-23 at 1.

    d. With no answer to Plaintiffs' question about neuropsychological testing, On August 30, 2023, Plaintiffs' counsel again requested clarification, noting "Before finalizing [the MOA], we still need to know whether Dr. Butz is proposing the general category neuropsych testing."  ECF No. 267-25 at 3.

    e. After not hearing from the Defendants for three (3) weeks, Plaintiffs' counsel inquired about the status of the MOA, specifically noting that it appeared that the parties "agreed to the scope of the exam (<u>with the only point of clarification being whether [Dr. Butz] was proposing neuropsych testing, which I believe we are entitled to know</u>").  ECF No. 267-26 at 2.

5. The parties' efforts to reach an agreement for Dr. Butz's exams failed for multiple reasons, but primary among them was Dr. Butz's refusal to state whether his broadly described "academic, cognitive, and personality testing" included neuropsychological tests.  Pls. Resp. to WTNY's Mot. for Order Directing Rule 35 Exams at 10-13 (ECF No. 280).

6. Plaintiffs also objected to the proposed exams because, *inter alia*, Dr. Butz demanded that the Plaintiffs sign authorization forms requiring them to agree that Dr. Butz was a "neutral, objective evaluator" and that his written reports would be "a neutral and objective work product."  Pls. Resp. to WTNY's Mot. For Order Directing Rule 35 Exams at 8-9 (ECF No. 280).

7. After considering these issues and others, on November 21, 2023, the Court ordered Dr. Butz to:

   a. "[D]isclose if he intends to conduct any neuropsychological testing"; and

   b. "Delete any references to . . . being a 'neutral and objective evaluator,'" from his Authorization form.  Ord. at 16.

8. Three weeks later, Dr. Butz drafted a letter and revised Authorization form addressing the Court's Order.  Ex. A, Ltr. from Dr. Butz. to Brett Jensen; Ex. B, Revised Authorization form.

9. Dr. Butz's letter states that he has "no intention of performing a neuropsychological assessment" but does not disclose whether he intends to conduct neuropsychological testing.[1]  Ex. A.

10. Dr. Butz's Revised Authorization form removed the previous "neutral and objective" references, but then reinserted them into a footnote for the purpose of indicating that it is language he would typically include in such forms.  Ex. B, Revised Authorization at 3.

## ARGUMENT

**1.  Dr. Butz will not disclose whether he intends to conduct neuropsychological testing on the Plaintiffs.**

Plaintiffs have been asking Defendants and Dr. Butz to disclose whether he intends to conduct neuropsychological testing on the Plaintiffs for four (4) months.  This is a basic question about the scope of his proposed exam that should be easily answered.  Indeed, the Court has ordered Dr. Butz to answer this question, and in doing so stated "the need for explicit clarification from Dr. Butz on the issue."  Ord. at 6-7.  Instead of providing the explicit clarification ordered by the Court, Dr.

---

[1] Plaintiffs' counsel endeavored to determine whether Dr. Butz's use of the phrase "neurological assessment" rather than "neurological testing" was the result of a misunderstanding or irrelevant semantics.  The response from WTNY's counsel was that Dr. Butz "answered the [Court's] question in a technically and scientifically accurate manner" and Plaintiffs' counsel was "confusing nuance as a lack of directness."  Ex. C, Correspondence Re: Dr. Butz's Letter.

Butz intentionally evades the Court's question and answers a completely different question, i.e. whether he intends to conduct a "neuropsychological assessment." Dr. Butz's refusal to answer the Court's question about "neurological testing" indicates that he is intent on leaving the door open to such testing, but just not as part of a "neurological assessment."

Dr. Butz is only entitled to examine the Plaintiffs on matters that are genuinely in controversy and where Defendants show good cause. Fed. R. Civ. P. 35(a)(1); *Schlagenhauf v. Holder*, 379 U.S. 104, 106 (1964). Here, the Court concluded that Defendants did not show good cause for neuropsychological testing because the Plaintiffs are not asserting neuropsychological harm, and "thus the results of those tests would be irrelevant." Ord. at 7. Furthermore, as the Court reasoned when it ordered Dr. Butz to disclose whether he was going to conduct neuropsychological testing, "Plaintiffs must have the opportunity to object, particularly because the exam risks re-traumatizing Plaintiffs." Ord. at 6.

Whether or not Dr. Butz intends to conduct neuropsychological testing is not a difficult question:

> ➢ Neuropsychological testing includes tests for "memory, cognition, verbal communication, and motor skills."
>
> https://my.clevelandclinic.org/health/diagnostics/4893-neuropsychological-testing-and-assessment

> ➢ Neuropsychological testing "is an in-depth assessment of skills and abilities linked to brain function.  The evaluation measures such areas as attention, problem solving, memory, language, I.Q., visual spatial skills, academic skills, and social-emotional functioning." https://childadolescentpsych.cumc.columbia.edu/articles/what-neuropsychological-evaluation

In plain violation of this Court's Order, Dr. Butz refuses to state whether he intends to subject the Plaintiffs to neuropsychological testing, which is understood to be tests of their brain functioning, i.e. tests that measure attention, problem solving, memory, language, I.Q., visual spatial skills, academic skills, and social-emotional functioning.  As a result, the proposed scope of Dr. Butz's examination remains unclear.

**2. Dr. Butz's "neutral and objective" protest footnote is evidence that he is unwilling to comply with the authorities governing his role in this case.**

Plaintiffs objected to language in Dr. Butz's Authorization form requiring Plaintiffs to agree that he, and his yet to be seen report, would be "neutral and objective."  As the Court noted, these components of the Authorization form were relatively insignificant and dispensable.  Ord. at 9.  Nevertheless, to eliminate any implication that Dr. Butz was not hired by Defendants, the Court ordered any "neutral and objective" references to be deleted from the Authorization form.  Ord. at 16.

Dr. Butz removed the "neutral and objective" references as they existed in his original form, but then he reinserted the references in a protest footnote.[2] Ex. B at 3. This is contrary to the Court's order that he "Delete any references to being a 'neutral and objective evaluator.'" Ord. at 16.

This is another instance of Dr. Butz refusing to comply with the Court's order. When viewed in context with his prior unwillingness to produce materials subject to disclosure under Rules 26 and 35, and his refusal to answer the direct question posed by the Court about neuropsychological testing, Dr. Butz's protest footnote is further evidence that he is unwilling to play by the rules that govern Rule 35 exams.

3. **Plaintiffs should be protected from examination by Dr. Butz until he certifies that he will not conduct neuropsychological testing.**

The Court has concluded that Defendants did not establish good cause for subjecting the Plaintiffs to neuropsychological testing. Ord. at 6–8, 16. The basis for this order was straightforward: Plaintiffs have not put their neuropsychological condition at issue in this case and the results of neuropsychological testing would therefore be irrelevant. Ord. at 8.

Plaintiffs have never understood much about the types of tests that Dr. Butz was proposing to conduct. In July of 2023, he would only identify the three broad

---

[2] While Dr. Butz employed strikethrough font in the footnote, the words are clearly and intentionally legible to the reader.

**Plaintiffs' Brief in Support of Notice of Non-Compliance with Court Order and Motion for Protective Order**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
8

categories of "academic, cognitive, and personality" tests. Throughout August and September of 2023, Plaintiffs asked for clarification as to whether these broad categories included neuropsychological testing, which is a distinct category of tests from psychological testing. Dr. Butz would not answer this basic question. The Court then ordered him to answer, and he still refuses to do so. Not even the lawyers that hired Dr. Butz can answer this question. Ex. C.

Because Dr. Butz is intentionally evading the question he was ordered to answer about the scope of his proposed testing, Plaintiffs should be protected from his exams until he certifies that he will not conduct neuropsychological testing, which is generally understood to be tests of skills and abilities linked to brain function, such as attention, problem solving, memory, language, I.Q., visual spatial skills, academic skills, verbal communication, motor skills, and social-emotional functioning.[3]

## CONCLUSION

Experts are routinely retained and designated under Rule 35 to conduct the exam of a party's mental condition and do so without controversy. Defendants did not retain one of these experts. Instead, they hired Dr. Butz, who has a track

---

[3] Plaintiffs do not object to psychological testing and tests for malingering, exaggeration, and dissimulation because these tests all bear on disputed issues that are in controversy in this case.

record of refusing to produce the information required to be produced under Rules 26 and 35, and who now refuses to comply with this Court's Order. *See e.g.* Orders requiring Dr. Butz to produce his complete files in other cases (ECF No. 280-1). This has resulted in unnecessary litigation and significant delays in completion of the exams. Based upon the foregoing, Plaintiffs respectfully request an order protecting them from examination by Dr. Butz until he certifies that he will not conduct neuropsychological testing.

DATED this 29th day of December, 2023.

By: /s/ Ryan Shaffer
Ryan R. Shaffer
MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(d)(2), Plaintiff hereby certifies that this brief complies with the length requirement for briefs, and that this brief contains 1,791 words, excluding the caption, certificates of service, and compliance, table of contents, and authorities, and exhibit index.

                    By: /s/ Ryan Shaffer
                        Ryan R. Shaffer
                        MEYER, SHAFFER & STEPANS PLLP

                    *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 1.4, this document has been served on all parties via electronic service through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

                    By: /s/ Ryan Shaffer
                        Ryan R. Shaffer
                        MEYER, SHAFFER & STEPANS PLLP

                    *Attorneys for Plaintiffs*