*Exhibit A*

**Aspen Practice P.C.**
dba, Michael R. Bütz, Ph.D.

December 12, 2023

Brett C. Jensen, Esq.
Brown Law Firm, P.C.
315 North 24th Street
P.O. Drawer 849
Billings, Montana 59103-0849

RE: *Order* regarding "Motion for Order Directing Rule 35 Examinations", November 20, 2023, in *Caekaert & Mapley v. Watchtower Bible and Tract Society of New York, Inc.* #CV 20-52-BLG-SPW.

Dear Mr. Jensen:

I apologize for the delay in responding to Judge Watters' *Order*, as unfortunately other matters such as hearings, out-of-town, and out-of-state cases, etc. have kept me from responding in a more timely manner. Per our discussion regarding these matters on the 27th of November, I will do my best to respond with my thoughts on how to address the *Order*, and to also provide updated documentation. In addition, I do plan to go about addressing the logistical and scheduling matters involved with arranging these examinations starting this weekend. As you might imagine, this may take some time to organize with our calendar of cases, the licensure matters involved, scheduling flights, etc.

It would appear to be most expedient to respond to Pages 16-17 of Judge Watters' *Order* numerically and in series. Thus, this begins with the following:

> "1. Dr. Bütz is required to disclose if he intends to conduct any neuropsychological testing;"

As we discussed this becomes a difficult question to address given the confines and understanding expressed in the correspondence and the *Order* about what neuropsychological testing actually involves. To her credit, Judge Watters did express the understanding that (p. 5, apx. lines 11-14):

> "a '[n]neuropsychological evaluation covers the same general functions as are assessed by test that are commonly employed in other contexts and fields,' including psychologist testing."

Hence, the references from the National Academy of Neuropsychology in my Affidavit that describe two informational documents (11.8.23): *Patient Information* and *Definition of a Clinical Neuropsychologist*. As you are aware, I have no intention of performing a neuropsychological assessment, otherwise I would have stated such. Instead, what I have consistently described is the intention of conducting a psychological assessment with (7.17.23): "...academic, cognitive and personality assessment instruments." It does seem,

however, that my meaning in addressing a patently false statement by other experts that neuropsychological functioning and the diagnosis and/or symptoms associated with Posttraumatic Stress Disorder are mutually exclusive was taken as an indication of the intent to conduct a neuropsychological assessment. Again, clarifying that matter, and providing a ready half-dozen references to make this point[1], was meant simply to supply scientifically accurate information to the Court. *It was not intended to signal the plan to conduct a neuropsychological assessment.*

"2. *To the degree that Dr. Bütz intended to conduct neuropsychological tests that are different from those psychological tests to which Plaintiffs agreed, Dr. Bütz cannot conduct such tests;*"

This aspect of the Court's *Order* is rather confusing in light of the Court's earlier cited statement that recognized the overlap in use of particular psychological instruments/tests (p. 5, apx. lines 11-14) that occur in both neuropsychological assessments and psychological assessments. Again, I have no aim of performing a neuropsychological assessment. What I have consistently described is the intent to conduct a psychological assessment with (7.17.23): "...academic, cognitive and personality assessment instruments."

"3. *WTNY and Dr. Butz must make the following amendments to the Authorization Form:*

   a. *Delete sentence one in paragraph one, and replace it with language indicating that Plaintiffs are undergoing a psychological assessment pursuant to WTNY's motion and the Court's order;*

As indicated in my Affidavit that was filed with WTNY's Motion (11.8.23), I was ready and willing to do this as I have in numerous other cases, and have attached an updated *Authorization for Forensic Psychological Assessment: Informed Consent & Fee Agreement* specifically designated to this case with this language.

   b. *Delete any references to Dr. Bütz being a 'neutral and objective evaluator,' including the references in paragraph three;*

Though the Court has so ordered the deletion of this language, and this has been done; nevertheless, I continue to hold with the *Ethical principles of psychologists and code of conduct* as a Fellow of the American Psychological Association and as a scientist-practitioner - *as I have my entire career.* That is why such language appears in the *Authorization for Forensic Psychological Assessment: Informed Consent & Fee Agreement*, and its purpose is to inform clients, since the aforementioned *Ethical Principles* instruct psychologists to adhere to:

---

[1] And, there are numerous other references that may be supplied to illustrate these matters.

Bütz Response – *Order*, November 20, 2023, CV 20-52-BLG-SPW

2

> **"Principle C: Integrity**
> Psychologists seek to promote accuracy, honesty, and truthfulness in the science, teaching, and practice of psychology. In these activities psychologists do not steal, cheat, or engage in fraud, subterfuge, or intentional misrepresentation of fact."
>
> **"2.04 Bases for Scientific and Professional Judgments**
> Psychologists' work is based upon established scientific and professional knowledge of the discipline."
>
> **"9.01 Bases for Assessments**
> (a) Psychologists base the opinions contained in their recommendations, reports, and diagnostic or evaluative statements, including forensic testimony, on information and techniques sufficient to substantiate their findings. (See also Standard 2.04, Bases for Scientific and Professional Judgments.)
> (b) Except as noted in 9.01c, psychologists provide opinions of the psychological characteristics of individuals only after they have conducted an examination of the individuals adequate to support their statements or conclusions."

To be ordered to remove such language tends to be, by default, akin to implicitly stating that an evaluator will be biased in the work conducted, and that the evaluator will operate with a lack of scientific integrity simply because of who has requested their services. Respectfully, this act, this demand to remove such language, creates a precedent in the case before the examinations have ever been conducted; seemingly an assumption that examinations will be inequitable and partial, and the inference that the evaluator will conduct themselves in a manner that is not trustworthy. This language in the *Authorization for Forensic Psychological Assessment: Informed Consent & Fee Agreement* is meant to inform clients about the standards in the field and the orientation of the services to be provided, which by design is to be conducted with integrity, in a neutral and objective fashion, regardless of who requests such services. Additionally, the language in this *Authorization* very clearly delineates to Defendants, and Plaintiffs alike, that: "I understand that the final report may help my case, have no effect on my case, or harm my case." There is no guaranteed outcome for either side when such examinations are conducted in an impartial scientific manner.

3

c. *Revise paragraph four to reflect that Dr. Butz is obligated to produce a report to Plaintiffs and that he must make himself available for deposition by Plaintiffs and participate in any cross-examination at trial; and*

As indicated in my Affidavit, I was ready and willing to do this as I have in numerous other cases, and have attached an updated *Authorization for Forensic Psychological Assessment: Informed Consent & Fee Agreement* specifically designated to this case with this language.

d. *Revise paragraph five to reflect that, pursuant to the parties' agreement and the Court's order, Dr. Bütz will disclose the raw testing data only to Plaintiffs' expert, Dr. Jonathan Bone, and that Dr. Bone may discuss with Plaintiffs and Plaintiffs' other expert, Dr. Trent Holmberg, his assessment of and conclusions based off of the data, without discussing the data itself;*

These adjustments have been made, and Jonathan Bone, Psy.D., has been identified as the recipient of the test raw data from these examinations.

"4. *Camillia Mapley must be deposed in-person, and Plaintiffs will pay for Dr. Bütz's reasonable travel costs to Australia, including coach-class airfare, hotels, in-transit professional fees for an eight-hour day, and other expenses the parties agreed to in their conferral. Plaintiffs also must pay for Dr. Bütz's travel costs to Arkansas for Tracy Caekaert's deposition, including coach- class airfare, hotels, in-transit professional fees for up to an eight-hour day, and other expenses the parties agreed to in their conferral;"*

As noted earlier, addressing this aspect of the *Order* is a complex matter and I will addressing the logistical and scheduling matters involved with arranging these examinations. Such efforts may take some time to organize with our calendar of cases, the licensure matters involved, and the scheduling of flights, etc.

"5. *Any privileged information that Plaintiffs inadvertently disclose during their exams shall be inadmissible and do not constitute a waiver of the attorney-client privilege."*

This statement seems to be best managed through the attorneys and the Court, since it is clear that my work is to conduct the psychological assessments in this case. Thus, leaving the finer points of law to those most able to address the topics of inadvertently disclosure and attorney-client privilege.

4

It is my hope that this letter addresses the matters in Judge Watters' *Order* from November 20, 2023. As always, if there are any needed clarifications and/or questions, please feel free to contact our office.

Sincerely yours,

Michael R. Bütz, Ph.D.
Fellow, American Psychological Association
Licensed Psychologist
Montana #365
Wyoming #818

att:   Revised per *Order* (11.20.23) CV 20-52-BLG-SPW - *Authorization for Forensic Psychological Assessment: Informed Consent & Fee Agreement.*

xc:    File.