Jon A. Wilson
Brett C. Jensen
Michael P. Sarabia
BROWN LAW FIRM, P.C.
315 North 24th Street
P.O. Drawer 849
Billings, MT 59103-0849
Tel. (406) 248-2611
Fax (406) 248-3128

Joel M. Taylor, Esq. (appearing *pro hac vice*)
MILLER MCNAMARA & TAYLOR LLP
100 South Bedford Road, Suite 340
Mount Kisco, New York 10549
Tel./E-Fax (845) 288-0844
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, <br><br> Plaintiffs, <br><br> vs. <br><br> WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR., <br><br> Defendants. | Cause No. CV 20-52-BLG-SPW <br><br> **DEFENDANT WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' NOTICE OF NON-COMPLIANCE WITH COURT ORDER AND MOTION FOR PROTECTIVE ORDER (DOC. 307).** |

## INTRODUCTION

Plaintiffs' primary allegation in their Motion is that Dr. Bütz has not indicated whether he will conduct "neuropsychological testing." (*See*, *e.g.*, Plaintiffs' Brief in Support of Their Notice of Non-Compliance with Court Order and Motion for Protective Order, Doc. 308, p. 2).[1] However, Dr. Bütz has repeatedly informed Plaintiffs he will not conduct a neuropsychological *assessment*. (*See* Decl. of Michael R. Bütz, PhD, ¶ 5, Jan. 9, 2024).[2] This verbiage is not to Plaintiffs' satisfaction—they insist that any test that could be used in a neuropsychological assessment is necessarily a neuropsychological test that is irrelevant for purposes of this case:

> …Dr. Butz refuses to state whether he intends to subject the Plaintiffs to neuropsychological testing, which is understood to be tests of their brain functioning, i.e. tests that measure attention, problem solving, memory, language, I.Q., visual spatial skills, academic skills, and social-emotional functioning.

(*See* Plaintiffs' Mot. for Protective Order, p. 7). The problem is that tests that measure, for example, "academic skills", are commonly employed in, and relevant to, other evaluations as well—including the intended psychological evaluation of Plaintiffs by Dr. Bütz. (*See* Bütz Decl., ¶ 8).

---

[1] Referred to hereafter as "Plaintiffs' Mot. for Protective Order."
[2] The January 9, 2024 Declaration of Michael R. Bütz, PhD, is filed contemporaneously herewith, and will hereafter be referred to as Bütz Aff.

Defendant Watchtower Bible and Tract Society of New York, Inc. ("WTNY") recognized the Court's Order (Doc. 293) did not resolve the dispute between the parties as to what types of tests are irrelevant neuropsychological tests (as opposed to tests commonly used in psychological assessments), and for that reason suggested the parties jointly seek clarification from the Court in an effort to avoid further motion practice. (*See* Ex. A attached hereto). Plaintiffs rejected such suggestion, and instead filed the instant Motion for Protective Order. This Motion is just the latest example of Plaintiffs' interference with WTNY's right to Rule 35 mental status examinations, and another attempt to delay the same.

## ARGUMENT

1. **The academic, cognitive, and personality tests Dr. Bütz intends to administer are commonly employed in, and relevant to, psychological assessments and that use is critical to understanding these tests as being part of a broad category of "psychological" or "neuropsychological."**

Plaintiffs seek to define academic skills tests, among others, as irrelevant neuropsychological tests. (*See* Plaintiffs' Mot. for Protective Order, pp. 6-7, 9). However, the Court appeared to acknowledge these tests are employed in other contexts, beyond neuropsychological evaluations: "The Court also understands that a "[n]europsychological evaluation covers the same general functions as are assessed by tests that are commonly employed in other contexts and fields," including psychological testing." (Doc. 293, p. 5).

2

Indeed, the academic, cognitive, and personality tests Dr. Bütz intends to administer *are not neuropsychological tests* precisely because he has expressed the intention to use them as part of a psychological assessment—not as part of a neuropsychological assessment. (*See* Bütz Decl., ¶ 9). Thus, Dr. Bütz has complied with the Court's requirement that he "disclose if he intends to conduct a neuropsychological examination" (Doc. 293, p. 5)—he does not. It is critical to understand the intent and use of testing when attempting to characterize a test as "psychological" or "neuropsychological." (*See* Bütz Decl., ¶¶ 5, 9). As the Court recognized:

> The Court interprets the framework of a mental exam as such: Dr. Bütz's exam may assess the academic, cognitive, and personality profile of the Plaintiffs, while the lens through which Dr. Bütz would assess those characteristics is, for instance, neuropsychology.

(Doc. 293, p. 5). Of course, the Court has ordered Dr. Bütz cannot administer neuropsychological tests. Again, Dr. Bütz's repeatedly stated intention is to conduct a *psychological* assessment, to use a *psychological* lens rather than a neuropsychological lens. (*See* Bütz Decl., ¶ 5). These academic, cognitive, and personality tests are relevant to a psychological assessment of the Plaintiffs. (*Id.*, ¶ 8).

Ultimately, the Court has not explicitly confirmed whether Dr. Bütz is allowed to conduct academic, personality, and cognitive tests so long as the "lens through which Dr. Bütz" assesses those tests is a psychological one (as opposed to

3

neuropsychological). These academic, cognitive, and personality measures are necessary to ensure the integrity of the testing process and the validity of the results. (*See* Bütz Decl., ¶¶ 6-7). Thus, WTNY respectfully requests the Court deny Plaintiffs' Motion for Protective Order to the extent it seeks to prevent Dr. Bütz from administering academic, cognitive, and personality tests as part of a *psychological* assessment.

2. **Dr. Bütz's agrees to remove the stricken footnote in his authorization form.**

Plaintiffs note "Dr. Butz removed the 'neutral and objective' references as they existed in his original form, but then he reinserted the references in a protest footnote." (Plaintiffs' Mot. for Protective Order, p. 8). They unjustly argue that this footnote "is further evidence that he is unwilling to play by the rules that govern Rule 35 exams." (*Id*.). This is untrue: Dr. Bütz included the footnote—clearly marked with a strikethrough—only to signal he considers himself to, at all times, uphold the standards of his scientific profession as a psychologist. (Bütz Decl., ¶ 10). Nonetheless, to avoid further argument, he agrees to remove this footnote from the authorization form. (*Id*.).

3. **WTNY and Dr Bütz request clarification of the Court's 11/21/23 Order**

WTNY and Dr. Bütz request additional clarification about his disclosure requirements. On the one hand, the Court has stated "Plaintiffs do not have a right (nor did they assert one) to the identification of the specific tests that will be

4

conducted." (Doc. 293, p. 6) (internal citation omitted). On the other, the Court has stated "Plaintiffs must have the opportunity to object" to the types of tests to be administered. (*Id*.)

Heretofore, Dr. Bütz has repeatedly disclosed the general types of tests he intends to administer: academic, cognitive, and personality tests. His contemporaneously filed Declaration explains the relevancy of these tests. However, Plaintiffs' instant motion suggests this is not enough information for them to exercise their opportunity to object. WTNY and Dr. Bütz respectfully request further direction and detail from the Court as to how much, and what detail—short of disclosing the specific tests that will be conducted—they are required to provide under the Court's Order (Doc. 293).

## **CONCLUSION**

In sum, the issue is whether Dr. Bütz can administer academic, cognitive, and personality tests in the overall framework of a psychological assessment, or whether—simply because those tests can also be used in neuropsychological assessments—he is barred from doing so. WTNY respectfully submits the Court, for the reasons herein and in Dr. Bütz's Affidavit and Declaration on file, should rule these types of tests can be administered in the overall framework of a psychological assessment, as opposed to a neuropsychological assessment.

WTNY has diligently, and extensively, met-and-conferred with Plaintiffs about the scope of these Rule 35 examinations. WTNY wants these examinations to get under way without further delay and argument, and respectfully requests the Court provide further guidance as explained herein.

DATED this 11th_ day of January, 2024.

By:  /s/ Brett C. Jensen
Jon A. Wilson / Brett C. Jensen / Michael P. Sarabia
BROWN LAW FIRM, P.C.
*Attorneys for Defendants Watchtower Bible and Tract Society of New York, Inc.*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(d)(2)(E), the undersigned hereby certifies this brief complies with L.R. 7.1(d)(2)(A). According to the word-processing unit used to prepare this brief, the word count is 1,207 words excluding caption, table of contents and authorities, exhibit index, and certificates of service and compliance.

DATED this 11th day of January, 2024.

> By: /s/ Brett C. Jensen
> Jon A. Wilson / Brett C. Jensen / Michael P. Sarabia
> BROWN LAW FIRM, P.C.
> *Attorneys for Defendants Watchtower Bible and Tract Society of New York, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that, on January 11th, 2024, a copy of the foregoing was served on the following person(s):

1. U.S. District Court, Billings Division

2. Robert L. Stepans/Ryan R. Shaffer/James C. Murnion
   MEYER, SHAFFER & STEPANS, PLLP
   430 Ryman Street
   Missoula, MT 59802

3. Matthew L. Merrill (appearing *pro hac vice*)
   MERRILL LAW, LLC
   1863 Wazee Street, Suite 3A
   Denver, CO 80202

4. Gerry P. Fagan/Christopher T. Sweeney/Jordan W. FitzGerald
   MOULTON BELLINGHAM PC
   P.O. Box 2559
   Billings, MT 59103-2559

5. Bruce G. Mapley Sr.
   3905 Caylan Cove
   Birmingham, AL 35215

by the following means:

| | | | |
|---|---|---|---|
| _1-4_ | CM/ECF | ___ | Fax |
| ___ | Hand Delivery | ___ | E-Mail |
| _5_ | U.S. Mail | ___ | Overnight Delivery Services |

By:   /s/ Brett C. Jensen
      Jon A. Wilson / Brett C. Jensen / Michael P. Sarabia
      BROWN LAW FIRM, P.C.
      *Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

8