IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT and CAMILLIA MAPLEY,<br><br>Plaintiffs,<br><br>vs.<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIERY OF PENNSYLVANIA, INC.<br><br>Defendants. | CV 20-52-BLG-SPW<br><br>ORDER |

Before the Court is Plaintiffs Tracy Caekaert and Camillia Mapley's motion for an order prohibiting the Rule 35 mental examinations that Defendant Watchtower Bible and Tract Society of New York, Inc. ("WTNY") seeks to conduct. (Doc. 307). Plaintiffs assert the proposed examiner, Dr. Michael Bütz, refuses to disclose whether he intends to conduct neuropsychological testing in violation of a previous order from this Court (Doc. 293).[1] (Doc. 308 at 1). Plaintiffs maintain that

---

[1] Plaintiffs also assert in their opening brief that Dr. Bütz's revised authorization form did not comply with the Court's order directing him to remove the references to him being a "neutral and objective" evaluator. (Doc. 308 at 7–8). Dr. Bütz removed the references from the body of the revised form but included a footnote explaining that he usually includes the neutral and objective language in his form but that it was ordered to be excluded. (Doc. 308-2 at 4). The language Dr. Bütz usually includes about being a neutral and objective evaluator is marked with a strikethrough. (*Id.*). In his affidavit attached to WTNY's brief, he agrees to remove the footnote. (Doc. 312 at 4). Plaintiffs stated in their reply that the issue was resolved given Dr. Bütz's agreement. (Doc. 314 at 4). Accordingly, the issue is moot.

1

neuropsychological tests are per se irrelevant, since they are not alleging neuropsychological injuries, and so they must know if such tests will be conducted for them to object. (*Id.* at 6).

WTNY responds that Dr. Bütz properly disclosed that he intends to administer academic, cognitive, and personality tests. (Doc. 311 at 3). Plaintiffs' characterization of the tests as irrelevant neuropsychological tests is incorrect. (*Id.*). WTNY explains that the tests can be used in a neuropsychological assessment but also can be used in a psychological assessment, as Dr. Bütz has disclosed he intends to do. (*Id.* at 3–4). Given Dr. Bütz specified that he intends to administer the tests as part of a psychological, not neuropsychological examination, WTNY contends an order of protection is not warranted.

WTNY filed a declaration from Dr. Bütz explaining his position on the matter. (Doc. 312). According to Dr. Bütz, whether a test is neuropsychological or psychological does not necessarily depend on the specific test administered, since one test can be used in both kinds of examinations. (*Id.* at 2). Rather, whether a test is considered neuropsychological or psychological depends on the evaluator's "intent." (*Id.*). Here, Dr. Bütz explained that his intent is to conduct the academic, cognitive, and personality tests as a part of a psychological assessment, not a neuropsychological one. (*Id.* at 4).

2

Dr. Bütz then specifies that the academic tests are "necessary in order to assure that the examinee has adequate academic skills to read the instruments/tests proposed to be administered. This is important to ensure the reliability and validity of their responses across the protocol that speak to the integrity of the findings." (*Id.* at 3). As to the cognitive testing, Dr. Bütz writes:

> It is likewise fundamentally important to know the cognitive capabilities of a Plaintiff. Do they have the capacity to make abstractions, to learn, and to deal with novel situations? This translates into whether or not a Plaintiff may have adequate abilities to appreciate their environment, matters involved in their case, the quality of their interpersonal interactions, and even the reasonableness of their statements as well as those of others. Thus, cognitive assessment is used to gauge if a Plaintiff has limitations in these areas of functioning or whether or not they possess a certain level of sophistication about these matters. Either way, these considerations are basic to day-to-day functioning in adult life, and like reading, conducting an assessment absent measuring cognitive abilities would be remiss.

(*Id.* at 3).

On reply, Plaintiffs state they "do not object to Dr. Bütz administering an academic test to measure Plaintiffs' reading skills so that he can be assured Plaintiffs have the ability to read the other instruments and tests he intends to administer." (Doc. 314 at 3). Plaintiffs question why Dr. Bütz refused to disclose this information until now. (*Id.*). At the same time, they maintain that Dr. Bütz's proposed cognitive testing "remains vague," as he did "not state why cognitive testing is important to evaluating any of the issues Plaintiffs have put at issue in the case." (*Id.*).

The Court declines to issue a protective order. As an initial matter the Court agrees with WTNY that the key question here is whether Dr. Bütz intends to administer the academic, cognitive, and personality tests through the lens of neuropsychology or psychology, since, as explained in the Court's original order, neuropsychological and psychological examinations can involve the administration of the same tests. (*See* Doc. 293 at 5).

The Court's previous order directed Dr. Bütz to make this distinction for Plaintiffs and to specify the type of testing to demonstrate to Plaintiffs this distinction was accurate. (*Id.* at 6). Dr. Bütz has done as much in his affidavit with respect to the academic testing: He claims that the academic testing will be done within the scope of a psychological assessment, defines the purpose of the testing, and explains how academic testing for that purpose falls within the scope of a psychological assessment.

Contrary to Plaintiffs' argument, Dr. Bütz also has complied with the Court's order for more specificity with respect to the cognitive testing. Again, Dr. Bütz states that he intends to employ the cognitive testing as part of a psychological assessment, outlines what the testing will assess (*aka* its purpose), and explains how such testing falls within the scope of a psychological assessment. Dr. Bütz's statement complies with the Court's order.

4

Like Plaintiffs, the Court is left wondering why such disclosures were not made prior to this motion, let alone Plaintiffs' first motion. Instead, Plaintiffs were yet again forced to come to the Court with their conflict, only for WTNY and its expert to resolve the matter in briefing. The Court expects WTNY (and the other parties) to avoid trapping Plaintiffs in this kind of quandary yet again for the remainder of this case.

IT IS SO ORDERED that Plaintiffs Tracy Caekaert and Camillia Mapley's Motion for Protective Order (Doc. 307) is DENIED.

DATED the 23rd day of January, 2024.

/s/ Susan P. Watters
SUSAN P. WATTERS
UNITED STATES DISTRICT JUDGE