Robert L. Stepans
Ryan R. Shaffer
James C. Murnion
Victoria K.M. Gannon
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT 59802
Tel: (406) 543-6929
Fax: (406) 721-1799
rob@mss-lawfirm.com
ryan@mss-lawfirm.com
james@mss-lawfirm.com
katy@mss-lawfirm.com

Matthew L. Merrill (appearing *pro hac vice*)
Merrill Law, LLC
1401 Delgany St. #404
Denver, CO 80202
Tel: (303) 947-4453
matthew@merrillwaterlaw.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, <br><br> Plaintiffs, <br><br> vs. <br><br> WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA., <br><br> Defendants, | Case No. CV-20-52-BLG-SPW <br><br> **PLAINTIFFS' STATEMENT OF DISPUTED FACTS RE: WTNY'S AND WTPA'S JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56 (ECF NO. 302)** |

Plaintiffs submit the following Statement of Disputed Facts re: Defendants

Watchtower Bible and Tract Society of New York, Inc.'s ("WTNY") and Watch

Tower Bible and Tract Society of Pennsylvania's ("WTPA") Motion for Partial Summary Judgment Pursuant to Fed. R. Civ. P. 56 (ECF No. 302).

## PLAINTIFFS' RESPONSES TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

1. Plaintiff Tracy Caekaert was born on May 21, 1966.  Depo. Tracy Caekaert 11:25-12:3 (Feb. 9, 2023), excerpts attached hereto as Exhibit 1.

    a. **Plaintiffs' position: Undisputed.**

2. Plaintiff Camillia Mapley was born on June 2, 1968.  Depo. Camillia Mapley 12:25-13:1 (Nov. 29, 2022), excerpts attached hereto as Exhibit 2.

    a. **Plaintiffs' position: Undisputed.**

3. Plaintiffs' father, Bruce Mapley, Sr., had been molesting them as children "for several years" before they began associating with Jehovah's Witnesses in 1973.  Doc. 22 at ¶¶ 33-34.

    a. **Plaintiffs' position: Undisputed.**

4. Plaintiffs' mother was aware that her husband was a pedophile.  Doc. 22 at Ex. A.

    a. **Plaintiffs' position:  Disputed and Immaterial.**

    b. Defendants' statement of undisputed fact is unclear and vague as to time and it is immaterial to any question before the Court on Defendants' Motion.

    c. Plaintiffs dispute Defendants' suggestion that their mother was always aware Bruce Mapley, Sr. was a pedophile, but do not dispute that she became aware when Hardin Congregation elder Harold Rimby told her, as she testified at her deposition. *See infra*, Additional Facts Relied on by Plaintiffs, ¶ 14.

5. Plaintiffs began attending non-party Hardin Congregation of Jehovah's Witnesses in Hardin, Montana (the "Congregation") in 1973 or 1974. Ex. 1, Depo. Caekaert at 35:20-36:24; Ex. 2, Depo. Mapley at 35:17-36:22.

    a. **Plaintiffs' position: <u>Undisputed and Immaterial.</u>**

6. Plaintiffs also allege they were molested by Gunner Hains, another member of the Congregation, in 1976 or 1977. Doc. 22 at ¶ 36.

    a. **Plaintiffs' position: <u>Disputed.</u>**

    b. This Statement references an allegation made in Plaintiffs' First Amended Complaint. While it accurately reflects what was alleged in the Amended Complaint nearly four (4) years ago, the allegation has been superseded by the discovery of evidence that Defendants' Statement fails to acknowledge. This evidence establishes that Plaintiff Mapley was abused by Hain in 1977 or 1978, and Plaintiff Caekaert was abused by Hain in 1977. *See infra*, Additional Facts Relied on by Plaintiffs, ¶¶ 10, 11.

7. Plaintiffs allege that their father and Hain both confessed to Congregation elders around 1979, and that the elders did not report the sexual abuse to law enforcement or child protective services. Doc. 22 at ¶¶ 39-40, 46.

   a. **Plaintiffs' Position:  <u>Disputed.</u>**

   b. Defendants' Statement misrepresents the actual allegation in Plaintiffs' First Amended Complaint, which alleges Hain confessed "before 1979", not "around 1979." ECF No. 22, ¶ 39.

   c. The referenced allegation has been superseded by the discovery of evidence that Defendants' Statement fails to acknowledge. Plaintiffs have obtained evidence that Hardin elders had reason to believe Hain was sexually abusing minors as early as 1974 and confessed to sexually abusing a non-party minor as early as 1976. *See infra*, Additional Facts Relied on by Plaintiffs, ¶ 8.

   d. The evidence also establishes that elders in the Hardin Congregation knew that Mapley, Sr. had molested Plaintiff Caekaert as early as 1977. *See infra*, Additional Facts Relied on by Plaintiffs, ¶ 14.

   e. Moreover, Defendants continue to withhold information regarding what was known by their agents in Hardin Montana about Hain's and Mapley, Sr.'s sexual abuse of minors, and exactly when it was known. *See infra*, Additional Facts Relied on by Plaintiffs, ¶ 17.  This puts

    Plaintiffs at a significant disadvantage when it comes to any factual question regarding the dates of confessions or dates that Defendants' Montana agents had reason to know that Hain and Mapley, Sr. had sexually abused a minor. So long as Defendants are withholding evidence regarding what and when they knew about Hain's and Mapley, Sr.'s abuse of minors it is inappropriate for the Court to rely on any representations from the Defendants – or make factual determinations against the Plaintiffs – on these factual questions. *See e.g. Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (a party is not permitted to simultaneously withhold evidence under a privilege and then rely on the absence of that evidence to seek relief).

f. Further, Plaintiffs will be seeking relief from the Court alleging that Defendants have spoliated evidence regarding the sexual abuse at issue in this case, including evidence of what Defendants' agents knew about Hain's and Mapley, Sr.'s abuse of minors and when they knew it. Plaintiffs anticipate that this Motion will be filed by the dispositive motion deadline of April 12, 2024. *See infra*, Additional Facts Relied on by Plaintiffs, ¶ 18.

g. **Undisputed** that the elders did not report Hain or Mapley, Sr. to secular authorities.

8. Plaintiffs allege that their father continued abusing them after 1979, but not beyond 1983. *See* Doc. 22 at ¶ 48; Ex. 1, Depo. Caekaert at 87:1-8; Ex. 2, Depo. Mapley at 56:14-18.

    a. **Plaintiffs' Position: <u>Undisputed.</u>**

9. Hain, however, did not abuse them again after his confession to Congregation elders. *See* Doc. 22 at ¶¶ 36, 39-40, 46; Ex. 1, Depo. Caekaert at 112:18-113:4; Ex. 2, Depo. Mapley at 65:21-25.

    a. **Plaintiffs' Position: <u>Disputed.</u>**

    b. Disputed because it is vague as to which of Hain's confessions it is referring to, vague as to what date such confession occurred, and the evidence indicates that Hain abused Plaintiffs after Defendants learned that Hain had molested a non-party minor in 1976. *See infra*, Additional Facts Relied on by Plaintiffs, ¶ 8.

    c. Moreover, Defendants continue to withhold information regarding what was known by their agents in Hardin Montana about Hain's and Mapley, Sr.'s sexual abuse of minors, and exactly when it was known. *See infra*, Additional Facts Relied on by Plaintiffs, ¶ 17. This puts Plaintiffs at a significant disadvantage when it comes to any factual question regarding the dates of confessions or dates that Defendants' Montana agents had reason to know that Hain and Mapley, Sr. had

sexually abused a minor. So long as Defendants are withholding evidence regarding what and when they knew about Hain's and Mapley, Sr.'s abuse of minors it is inappropriate for the Court to rely on any representations from the Defendants – or make factual determinations against the Plaintiffs – on these factual questions. *See e.g. Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (a party is not permitted to simultaneously withhold evidence under a privilege and then rely on the absence of that evidence to seek relief).

d. Further, Plaintiffs will be seeking relief from the Court alleging that Defendants have spoliated evidence regarding the sexual abuse at issue in this case, including evidence of what Defendants' agents knew about Hain and Mapley, Sr.'s abuse of minors and when they knew it. Plaintiffs anticipate that this Motion will be filed by the dispositive motion deadline of April 12, 2024. *See infra*, Additional Facts Relied on by Plaintiffs, ¶ 18.

## ADDITIONAL FACTS RELIED ON BY PLAINTIFFS

1. For purposes of liability and agency there was no distinction between WTNY and WTPA during the relevant time-period.

    a. From 1973 to 1992, WTNY and WTPA were controlled by the same group of men and these men used Defendants interchangeably to

**Plaintiffs' Statement of Disputed Facts: re WTNY's & WTPA's Joint Motion for Partial Summary Judgment**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
7

    pursue the Jehovah's Witnesses' organizational purposes. Ex. A, 1973–1992 Summary; Ex. B, 1977 Branch Organization, 1-4 ¶ 34.

2. For all times material, WTNY and WTPA worked in concert to manage and oversee the operation of all local congregations in the United States, including the Hardin Congregation. Ex. C, Adams Aff., ¶¶ 3–17, 27; Ex. D, WTNY Ans., ¶ 5; Ex. B, 1977 Branch Organization, 1-4 ¶ 34; Ex. E, 1970 Yearbook of JWs, 38.

3. For all material times, WTNY and WTPA worked in concert to write, publish, disseminate, teach, and enforce policies and procedures to be implemented and followed at local congregations in the United States, including the Hardin Congregation, including policies and procedures that governed how local congregations were to handle reports of child sex abuse. *See* Ex. F, Summary of Defendants' Publication containing relevant policies and procedures, including copyright holders and publishers.

4. For purposes of their Motion, the Defendants do not contest or argue against the legal conclusion that their Montana clergy, including local and traveling elders who were informed about Hain and Mapley, Sr.'s molestation of minors, were their agents and acting within the course and scope of their agency. Moreover, abundant evidence supports such a conclusion:

a. WTNY has admitted in other cases that local congregation elders are agents. Ex. G, Prior Admiss.

b. The elders and other officials of the Hardin Congregation from all years up to and including 1979 were appointed by WTNY. Ex. H, Hardin Congregation Servant Appointments; Ex. I, Lovett Dep., 36:15–37:7, 56:5–57:25, 58:23–61:24; *see also* Ex. C, Adams Aff., ¶¶ 3–17, 27; *see also* Ex. J, Hardin Congregation S-2 Forms; *see also* Ex. K, Trans. of Proceedings, 4:18–5:9; Ex. D, WTNY Ans., ¶ 8; Ex. L, Steele Aff., ¶¶ 4, 7.

c. Local congregation elders are so appointed to, *inter alia*, investigate and handle wrongdoing within their congregation pursuant to the written policies set forth by Defendants' publications. *E.g.*, Ex. I, Lovett Dep., 37:22–38:15, 61:25–62:16; Ex. M, James Rowland Dep., 66:4–72:21; 104:25–113:13; Ex. N, Gibson Dep., 66:21–68:10; 82:8–23; Ex. O, 1977 Pay Attention to Yourselves and to All the Flock, 55–77; Ex. P, 1972 Kingdom Ministry School Course, 72–74, 84–86, 114–17, 123–26; Ex. L, Steele Aff., ¶¶ 8, 10, 11.

d. Defendants trained local congregation elders on the policies they were required to follow at regional trainings known as Kingdom Ministry

      School. Ex. I, Lovett Dep., 63:24–67:6, 162:19–163:5; Ex. M, James Rowland Dep., 66:4–72:21.

    e. The elders and other officials of the Hardin Congregation from all years up to and including 1979 could only be removed against their will by WTNY. Ex. I, Lovett Dep., 85:15–87:5 *see also* Ex. J, Hardin Congregation S-2 Forms; *see also* Ex. K, Trans. of Proceedings, 4:18–5:9; *see also* Ex. C, Adams Aff., ¶¶ 3–17, 27; *see also* Ex. D, WTNY Ans., ¶ 6.

    f. Local congregation elders, including the Hardin Congregation elders, are expected to follow Defendants' policies or face removal from their position. Ex. M, James Rowland Dep., 130:15–131:7; *see also*, Ex. Q, *Nunez* Trans., 246:24–247:13; Ex. I, Lovett Dep., 67:19–69:12, 72:20–74:15, 85:15–87:5; Ex. R, April 1, 1971 Watchtower, 223.

5. At all times relevant to Defendants' Motion, they did not have a policy that local congregation elders were to comply with secular mandatory reporting laws. *See* Ex. S, 1989 All Bodies of Elders Letter; Ex. I, Lovett Dep., 142:4–25.

6. Rather, Defendants' policies at issue here and in effect up to and including 1979 were: (1) to encourage congregation members to bring all matters of wrongdoing (including allegations of child sex abuse) to the elders for

investigation and resolution by the body of elders; (2) to keep all such matters confidential; and (3) if secular law and Jehovah's Witnesses' policies conflicted, to follow Jehovah's policies.  Ex. O, 1977 Pay Attention to Yourselves and to All the Flock, 65, 89; Ex. P, 1972 Kingdom Ministry School Course, 18, 91–93; Ex. R, April 1, 1971 Watchtower, 223; *see also* Ex. S, 1989 All Bodies of Elders Letter, 2 (citing pre-1979 policies); Ex. M, James Rowland Dep., 130:15–131:7; Ex. I, Lovett Dep., 72:20–74:15, 147:19–24; 202:8–212:5; Ex. L, Steele Aff., ¶¶ 7–14.

7. Jehovah's Witnesses are taught that failure to follow Jehovah's policies, including the confidentiality policy, will be judged by God.  Ex. I, Lovett Dep., 202:24–204:7.

8. Elders of the Hardin Congregation heard rumors that Gunnar Hain was molesting children as early as 1974, and in any event, knew he was by 1976. Ex. M, James Rowland Dep., 150:25–152:2; Ex. T, Klessens Dep., 11:15–16:9.

9. Following established Jehovah's Witness policies, the elders of the Hardin Congregation never reported Gunnar Hain's abuse of minors to Montana secular authorities.

10. Gunnar Hain sexually abused Plaintiff Mapley in 1977 or 1978.  Ex. U, Mapley Dep., 65:21–22.

11. Gunnar Hain sexually abused Plaintiff Caekaert in 1977.[1]  Ex. V, Caekaert Dep., 66:4–17, 67:8–17, 91:7–92:22; Ex. N, Gibson Dep., 60:18–63:6.

12. Bruce Mapley, Sr. repeatedly sexually abused Plaintiff Mapley from a time she is too young to remember to 1982.  Ex. U, Mapley Dep., 56:9–57:6.

13. Bruce Mapley, Sr. repeatedly sexually abused Plaintiff Caekaert from approximately 1971 to 1983.  Ex. V, Caekaert Dep., 84:3–87:5.

14. Elders in the Hardin Congregation were aware Bruce Mapley, Sr. was molesting children as early as 1977 when they informed Plaintiffs' mother that both Mapley, Sr. and Hain had molested her daughter.  Ex. N, Gibson Dep., 60:17–64:10; *see also* Ex. V, Caekaert Dep., 95:12–96:17; *see also* Ex. M, James Rowland Dep., 185:16–19.

15. Following established Jehovah's Witness policies, the elders of the Hardin Congregation never reported Bruce Mapley, Sr.'s abuse of children to Montana secular authorities as required by R.C.M. § 10-1304.

---

[1] Plaintiff Caekaert does not have a clear memory exactly when Gunnar abused her, her testimony is she was either nine or ten years old, so sometime within May 1975 and May 1977.  However, she did clearly testify the abuse occurred very close in time to Bruce Mapley, Sr. discovering it and holding a meeting where he confessed to also abusing Plaintiff.  Plaintiffs' mother testified unequivocally that this meeting occurred in 1977.  As such, to the extent Defendants' contest this fact, the jury could certainly conclude Gunnar abused Caekaert in 1977.

16. Further, when Plaintiffs' mother asked Hardin Congregation elder Harold Rimby if they should report Hain and Mapley, Sr. to secular authorities, he told her that it would be handled internally.  Ex. W, Gibson Aff., ¶ 5.

17. Defendants withhold material evidence under claims of privilege.

    a. WTNY is withholding material evidence regarding the child abuse committed by Bruce Mapley, Sr. and Gunnar Hain in Hardin during the 1970s and 1980s.  Ex. X, WTNY's 4th Supp. Privilege Log (PL Entries 1–4, 6, 7, 10, 11, 40–44, and 52 have been withheld entirely; PL Entries 37, 39, 51, 56, 57, 60, 61, 88, and 93 were produced with redactions); Ex. 25, Hardin Congregation's Privilege Log, Caekaert/Mapley Case (PL Entries 1–3 withheld entirely); Hardin Congregation's Privilege Log, Rowland/Schultz (PL Entries 5–10 withheld entirely; PL Entry 2 produced with redactions).

    b. On the one hand, Defendants have made the decision to exercise their right to withhold evidence regarding what they know about the sexual abuse allegations and reports involving Hain and Mapley, Sr., including what Defendants' Montana agents knew and when they knew it.  On the other hand, they come to the Court asking for dispositive relief based on the date specific details of that same evidence.  That law does not permit Defendants to exercise their right

to withhold material evidence under a claim of privilege, and then use Plaintiffs' inability to access and use that evidence as a basis for relief. *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (noting that a party is not permitted to simultaneously withhold evidence under a privilege and then rely on the absence of that evidence to seek relief). Thus, so long as Defendants withhold material evidence from Plaintiffs, they are not permitted to advance any arguments seeking relief that could implicate such evidence, their present Motion included.

18. Plaintiffs will be moving the Court for an order concluding that Defendants have spoliated evidence regarding the sexual abuse at issue in this case, including evidence of what Defendants' agents knew about Hain and Mapley, Sr.'s abuse of minors and when they knew it. Plaintiffs anticipate that this Motion will be filed by the dispositive motion deadline of April 12, 2024.

DATED this 6th day of February, 2024.

By: /s/ Ryan Shaffer
Ryan R. Shaffer
MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 1.4, this document has been served on all parties via electronic service through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

                                        By: /s/ Ryan Shaffer
                                                  Ryan R. Shaffer
                                                  MEYER, SHAFFER & STEPANS PLLP

                                        *Attorneys for Plaintiffs*