Jon A. Wilson  
Brett C. Jensen  
Michael P. Sarabia  
BROWN LAW FIRM, P.C.  
315 North 24th Street  
P.O. Drawer 849  
Billings, MT 59103-0849  
Tel. (406) 248-2611  
Fax (406) 248-3128  

Joel M. Taylor, Esq. (appearing PHV)  
MILLER MCNAMARA & TAYLOR LLP  
100 South Bedford Road, Suite 340  
Mount Kisco, New York 10549  
Tel./E-Fax (845) 288-0844  

*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

Gerry P. Fagan  
Christopher T. Sweeney  
Jordan W. FitzGerald  
MOULTON BELLINGHAM PC  
27 North 27th Street, Suite 1900  
P.O. Box 2559  
Billings, MT 59103-2559  
Tel. (406) 248-7731  
Fax: (406) 248-7889  

*Attorneys for Defendant Watchtower Bible and Tract Society of Pennsylvania*

**IN THE UNITED STATES DISTRICT COURT  
FOR THE DISTRICT OF MONTANA  
BILLINGS DIVISION**

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, <br><br> Plaintiffs, <br><br> vs. <br><br> WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR., <br><br> Defendants. | Cause No. CV 20-52-BLG-SPW <br><br> **DEFENDANT WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC. AND WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA'S REPLY BRIEF IN SUPPORT OF JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56** |

# ARGUMENT

**I.  There are no disputed material facts.**

Defendants' motion raises questions of law:

- Did the pre-1979 mandatory reporting statute ("MRS") create a private right of action?
- Did the MRS require Defendants to report abuse?
- Can an entity be held vicariously liable under the MRS if an agent violated a duty to report?

The only question that turns on facts is Defendants' contention that failure to report cannot have been the proximate cause of the abuse, which is discussed below.

**II.  The pre-1979 MRS did not create a private right of action.**

Plaintiffs say this "is not a *private enforcement of a statute* case because Plaintiffs have not filed claims under the authority of the MRS …." (Dkt. 319 at 11.)  Such argument is misplaced, as Defendants cited to the private enforcement cases to invoke the Court's methodology on whether an implied private right of action existed under the MRS, not whether Plaintiffs could privately enforce a regulatory statute.  The "fundamental question in every negligence case is whether the alleged tortfeasor owed a legal duty of care to the claimant(s) under the particular circumstances of that case …." *Maryland Cas. Co. v. Asbestos Claims Ct.*, 460 P.3d 882, 894 (Mont. 2020).  Duty is "a threshold matter of law." *Id*.  Plaintiffs' negligence-per-se claim alleges "Defendants violated Montana's mandatory reporting statute … by not reporting the sexual abuse of Plaintiffs." (Dkt. 22 at 14.)

2

That presents a legal question: Can Plaintiffs utilize a statutory duty to report to create a negligence per se claim?

The near-unanimous answer is no.  (*See* Dkt. 303 at 13-14, footnotes 3-4.)  Consider two similar cases.  First, *Cuyler v. United States*, 362 F.3d 949 (7th Cir. 2004), involved a claim alleging medical personnel violated the Illinois reporting statute.  "A conventional principle of tort law," Judge Posner explained for a unanimous court, "is that if a statute defines what is due care in some activity, the violation of the statute either conclusively or … presumptively establishes that the violator failed to exercise due care." *Id*. at 952.  But this makes no difference "unless the tort plaintiff establishes that the defendant owes a *duty of care* to the person he injured …." *Id*. (emphasis added).  Importantly, "the mere fact that a statute *defines* due care does not in and of itself create a duty enforceable by tort law." *Id*.  In other words, there is a critical difference between relying on a statute for the *standard of care* versus the *legal duty*.  In *Cuyler*, the court explained: :

> If A saw that B was about to be struck on the head by a flowerpot thrown from a tenth-story window, and A knew that B was unaware of the impending catastrophe and also knew that he could save B with a shout, yet he did nothing and as a result B was killed, still, A's inaction . . . would not be actionable. ***The result would not be changed if there were a statute that made it a crime to fail without justification to try to save an endangered person, unless the statute itself created, expressly or by implication, a tort remedy for its violation*** . . . .  If B's survivors attempted to base liability on the fact that the legislature had declared that due care required a rescue attempt in the circumstances,

3

> they would be met with the argument that, while undoubtedly A had failed to exercise due care, that could not be a basis for liability because A had no duty to B to exercise due care.

*Id*. (emphasis added). The court concluded: "Illinois common law did not impose on the hospital's employees a tort duty running to the Cuylers' child" and the Illinois reporting statute did not create a "private right of action." *Id*. at 954.

Second, in *Marquay v. Eno*, 662 A.2d 272 (N.H. 1995), the court explained the difference between claims relying on a common-law duty and claims based on a statutory duty. The latter arises only when the legislature "intended violation of that statute to give rise to civil liability." *Id*. at 277. "If no common law duty exists, the plaintiff cannot maintain a negligence action, even though the defendant has violated a statutory duty" unless the statute creates civil liability. *Id*. The court concluded no common-law duty existed and "the reporting statute does not support a private right of action … because we find no express or implied legislative intent to create such civil liability." *Id*. at 278.

Considering Plaintiffs' assertion that this "is not a *private enforcement of a statute* case because Plaintiffs have not filed claims under the authority of the [1974] MRS[,]" , Plaintiffs' distinction is misplaced – the MRS must grant an implied private cause of action for their negligence per se claim to survive, not a cause of action to privately enforce the statute itself. In that context, Plaintiffs would have to establish their negligence-per-se claim is based on a common-law duty if there is no

4

implied private right of action for negligence per se under the MRS. Plaintiffs make no attempt to do that—nor could they.[1] Instead, Plaintiffs admit they are "us[ing] a statute to establish the duty element …." (Dkt. 319 at 4.) To do this, the statute must create "a private right of action." *Doyle v. Clark*, 254 P.3d 570, 577 (Mont. 2011). That is a question of law. *Faust v. Utility Solutions*, 173 P.3d 1183, 1187 (Mont. 2007). Plaintiffs' reliance on *Larson v. State By & Through Stapleton*, 434 P.3d 241 (Mont. 2019), is likewise misplaced (*See* Dkt. 319 at 11-12.), asthe plaintiffs there were trying to privately enforce an election statute on signature gathering; not relying on the statute for a negligence per se claim.

The parties agree nothing in the pre-1979 MRS *expressly* creates civil liability. In rare cases, a private remedy can be *implied*. *Faust* at 1187. The parties agree on the four factors used to make this determination: "(1) consistency within the statute as a whole; (2) the intent of the legislature considering the statute's plain language; (3) the avoidance of absurd results; and (4) any construction of the statute by the agency charged with its administration." *Id*. Defendants addressed these factors in their motion. To summarize:

---

[1] There is "no authority" in any state for the imposition of a "duty on the part of a church to prevent its members from harming each other," even if church agents knew the perpetrator posed a danger. *Conti v. Watchtower Bible & Tract Soc'y of New York, Inc.*, 235 Cal.App.4th 1214, 1227 (2015).

First, the pre-1979 MRS is enforced by the state. Private enforcement would be inconsistent with the statutory scheme. *See Somers v. Cherry Creek Dev., Inc.*, 439 P.3d 1281, 1284 (Mont. 2019) ("RISA requires the Department to enforce its provisions, not private parties"). Plaintiffs misconstrue the implied private cause of action analysis by asserting every provision in a statutory scheme must be tied to either a public or private enforcement mechanism. (*See* Dkt. 319 at 8-12.) Such a requirement would be both unreasonable and unwieldy. Instead, the analysis looks to the statutory scheme as a whole. Here, the Legislature clearly intended the overall provisions to be carried out by state and local governments as shown by R.C.M. § 10-1322(1), which establishes an overall criminal mechanism to enforce the abuse and neglect statutes: "If the evidence indicates violation of the Criminal Code, it shall be the responsibility of the county attorney to file appropriate charges against the alleged offender." *Id.*

Second, and most important, "[n]othing in the statute suggests that the Legislature intended to grant individuals a private right of action." *See Doyle*, 254 P.3d at 577. "The obvious conclusion must usually be that when the legislators said nothing about it, they either did not have the civil suit in mind at all, or deliberately omitted to provide for it." *Prosser and Keeton on the Law of Torts* § 36, at 221 (5th ed. 1984).

6

<u>Third</u>, recognizing a private right of action is not necessary to avoid absurd results. Rather, the "vast majority of courts" have "held that their reporting statutes do not create a civil cause of action" and no absurdity has resulted. *Becker v. Mayo Found.*, 737 N.W.2d 200, 208 (Minn. 2007). In contrast, recognizing a private right of action would result in absurdity. *See Freehauf v. Sch. Bd. of Seminole Cnty.*, 623 So.2d 761, 764 (Fla. App. 1993).

<u>Fourth</u>, no agency construction suggests a private right of action.

Nothing suggests the Legislature intended to create civil liability. The statute provides no standards for such a claim. *See Doe v. Bradley*, 2011 WL 290829 (Del. Sup. 2011) (reporting statutes "offer no direction to the courts (or the reporters) as to how these standards should be applied in the tort context").

To conclude otherwise would require believing the Legislature silently intended to impose new and potentially massive civil liability on "any person" who failed to report without providing any guidance for such a claim. Plaintiffs' position goes even further by suggesting the Legislature also intended to hold employers liable.

Plaintiffs argue *Conway v. Monidah Tr. Co.*, 132 P. 26, 27 (Mont. 1913), established: "plaintiffs are permitted to use a statute to establish the duty element of negligence in what is recognized as negligence per se …." (Dkt. 319 at 4.) *Conway*, which involved a trespasser injured by a dangerous condition on the defendant's

land, said no such thing. Property owners owe a *common-law duty* to trespassers. *See Driscoll v. Clark*, 80 P. 373 (Mont. 1905). *Conway* explained the common law standard of care owed to trespassers is only to refrain from intentional injury, but the legislature had heightened the standard of care by statute. Nothing in *Conway* establishes that statutory duties are always enforceable through negligence-per-se claims. If that were the law, every statute would give rise to civil liability, which is contrary to the express holding of *Doyle*.

Since the pre-1979 MRS plainly does not create civil liability, Defendants' motion should be granted.

**III. Religious organizations are not mandatory reporters under the MRS.**

Alternatively, Defendants are entitled to summary judgment because the MRS applies only to *individuals*. Plaintiffs respond: "[i]t is black letter law that corporate principals, like the Defendants, are liable for the negligence of their agents." (Dkt. 319 at 12.) That is true when an individual commits a tort while acting vicariously for the principal. *HD Irrigating, Inc. v. Kimble Properties, Inc.*, 8 P.3d 95, 106 (Mont. 2000). Here, however, Plaintiffs are suing for violation of a statutory duty expressly imposed only on individuals and has nothing to do with their employer. "The test of the employer's liability is whether the act complained of arose out of and was committed in prosecution of *the task the servant was performing for his master*." *L.B. v. United States*, 515 P.3d 818, 823 (Mont. 2022) (emphasis added).

8

When a person fulfills a statutory duty to report, that person is not performing a task "for his master," *Id.*; it is not "as if the master were acting." *Kornec v. Mike Horse Mining & Milling Co.*, 180 P.2d 252, 256 (Mont. 1947).

Assume a store clerk sees a father physically abuse a child in the store. If the clerk does not report and further abuse occurs later, could the store be sued for failure to report? Clearly not. The clerk had no duty to report as an employee, but as a member of the public. There is no principled reason to treat churches differently.

Plaintiffs contend: "Defendants trained and instructed their Montana clergy to keep the child abuse committed by Hain and Mapley, Sr. secret rather than to report it to secular authorities." (Dkt. 319 at 14.) Plaintiffs cite a document dated more than a decade after the abuse that actually reveals Defendants' efforts to obey reporting laws: "Many states have child abuse reporting laws. When elders receive reports of physical or sexual abuse of a child, they should contact the Society's Legal Department immediately. Victims of such abuse need to be protected from further danger." (Dkt. 320-19.) Plaintiffs cite no evidence that Defendants ever instructed anyone to disobey reporting laws.

Plaintiffs contend the law sometimes imputes an agent's knowledge to the principal. *See Palmer v. Great Norther Ry. Co.*, 170 P.2d 768 (Mont. 1946). That makes no difference. A person cannot report based on imputed knowledge, and Defendants had no duty to report whether they had actual or imputed knowledge.

9

Ultimately, Defendants cannot be directly liable for violating the pre-1979 MRS because it does not apply to them. They cannot be vicariously liable because an agent's failure to report is not imputed to the principal. As one court recognized, "it is individuals … who are listed as mandatory reporters, not institutions[.]"*Cooper Clinic, P.A. v. Barnes*, 237 S.W.3d 87, 92 (Ark. 2006).[2]

## IV.  Causation – Gunner Haines.

"[B]reach of a statutory duty" must be the "proximate cause of the damages for negligence to be predicated on the violation of the statute.'" *Yates v. Hedges*, 585 P.2d 1290, 1294 (Mont. 1978) (quotation marks and brackets omitted). Defendants contend any failure to report allegations that Gunner Hain abused Plaintiffs could not have caused such abuse because he did not abuse them after Defendants learned about the abuse. Plaintiffs respond: "evidence established that Defendants' Montana clergy had reason to report Hain as early as 1974." (Dkt. 319 at 23.) Plaintiffs contend that Hain molested them both once around 1977. (Dkt. 320 at 11-12.)

In asserting Defendants were aware Hain abused someone else as early as 1974, Plaintiffs cite the declaration of James Rowland attached to Plaintiffs'

---

[2] Plaintiffs cite *Lee v. Detroit Med. Ctr.*, 775 N.W.2d 326 (Mich. App. 2009), which allowed vicarious liability for violation of a reporting statute. Unlike the MRS, the Michigan statute expressly created a private right of action. *Id*. at 335.

Complaint: "Around 1974 I first started hearing rumors that Gunner Hain, a member of our congregation at the time, was sexually abusing children in the congregation. I brought the subject up with other elders …." Rowland does not say whom he heard these rumors from or share any of the substance of these rumors.

Rowland subsequently testified:

> Q. …. Who did you hear the rumors from in 1974?
> A. Probably young people.
> Q. Do you remember the names of any of these young people?
> A. No. It was too long ago. I'm too old for that.

(J. Rowland Dep. at 177:1-6.)

Plaintiffs' theory is that if elders had reported those rumors, Hain would not have abused them. The pre-1979 MRS required "any person" to report if they had "reason to believe that a child has had serious injury or injuries inflicted upon him or her as a result of abuse or neglect …." Plaintiffs present no evidence that what Rowland allegedly told the elders would have triggered a duty to report. In *R.A. v. First Church of Christ*, 748 A.2d 692, 696 (Pa. Super. 2000), the court concluded church employees had no duty to report because there was no evidence they had "reliable knowledge of facts that would lead them" to the conclusion that R.A. had been abused. *Id*. at 696. "[T]he *only* information they ever had on the subject was a comment by Chick concerning his own passing suspicions, which he did not support by reference to any specific evidence of abuse." *Id*. The same is true here.

11

Moreover, Plaintiffs present no proof that a report based on Rowland's rumors would have prevented Hain's abuse. While a report might have resulted in an investigation, and in some action against Hain, such speculation is insufficient to overcome summary judgment. One reason courts have refused to infer a private right of action under reporting statutes is that such a claim raises complex causation questions. *See Borne v. Northwest Allen County School Corp.*, 532 N.E.2d 1196, 1203 (Ind. App. 1989) (private right of action "would raise substantial questions of causation since the failure would not in the direct sense be a proximate cause of the injury to the child").

Moreover, Defendants' alleged failure to report a suspicion that Hain abused someone else cannot support Plaintiffs' claim. In *Marcelletti v. Bathani*, 500 N.W.2d 124, 127 (Mich. App. 1993), the plaintiff sued a physician who failed to report previous abuse of another child by the same babysitter. The court held the "statutory reporting duty, with its attendant civil liability," did not run "to any other person than the allegedly abused child." *Id*. at 127. The court "surveyed jurisdictions" and found "no authority" to support Plaintiffs' position. *Id*. *See also P.S. v. San Bernardino City Unified Sch. Dist.*, 174 Cal.App.4th 953, 965 (2009) (duty is only to "the child about whom" a report should have been made); ; *Curran v. Walsh Jesuit High School*, 651 N.E.2d 1028, 1030 (Ohio App. 1995) (reporting statute "is not … designed to protect the public at large" but "a specific child who is reported as abused or

neglected"); *Owens v. Garfield*, 784 P.2d 1187, 1191 (Utah 1989) (reporting statute creates a duty to "identified children" who are suspected of being abused, not subsequently abused children). If Plaintiffs' position were adopted, a mandatory reporter "that fails to report suspected child abuse affecting one child … could be held liable, perhaps years later, to any other children abused by the same person …. Neither legislative intent nor public policy would support such a broad extension of liability." *Randi W. v. Muroc Joint Unified Sch. Dist.*, 929 P.2d 582, 595 (Cal. 1989).

Plaintiffs say questions of causation are not susceptible to summary judgment. (Dkt. 319 at 22.) That is true only if Plaintiffs put forward evidence of proximate cause, *see Craig v. Schell*, 975 P.2d 820, 822-23 (Mont. 1999), and they have not. "Unsupported conclusory or speculative statements do not raise a genuine issue of material fact. The trial court has no duty to anticipate possible proof." *Abraham v. Nelson*, 46 P.3d 628, 633 (Mont. 2002) (quotation marks omitted).

## V. Privileged evidence does not prevent a defendant from moving for summary judgment.

Plaintiffs contend Defendants' motion should be denied because Defendants "continue to withhold material evidence … including evidence that may bear on what Defendants knew and when they knew it." (Dkt. 319 at 24.) Defendants are not "withholding" evidence. They have properly asserted evidentiary privileges that have been upheld by the Court. Plaintiffs can cite no case in which a motion for summary judgment has been denied because an evidentiary privilege made it harder

13

for the plaintiffs to prove their case. A party cannot use a privilege as a shield and a sword by, for example, alleging actions were taken in good-faith reliance on an attorney's advice, but then refusing to disclose that advice. That is the only proposition the case cited by Plaintiffs *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003), supports. It goes no further.

Plaintiffs' unsupported insinuation of spoliation, Dkt. 319 at 25, also cannot create a cause of action, when none exists as a matter of law.

## CONCLUSION

Plaintiffs' negligence-per-se claim fails as a matter of law.

DATED this 20th day of February, 2024.

By: /s/ Michael P. Sarabia
Michael P. Sarabia
BROWN LAW FIRM, P.C.
*Attorneys for Defendants Watchtower Bible and Tract Society of New York, Inc.*

By: /s/ Jordan W. FitzGerald
JORDAN W. FITZGERALD
MOULTON BELLINGHAM PC
*Attorneys for Defendant Watch Tower Bible and Tract Society of Pennsylvania*

14

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(d)(2)(E), the undersigned hereby certifies this brief complies with L.R. 7.1(d)(2)(A). According to the word-processing unit used to prepare this brief, the word count is 3,172 words excluding caption, table of contents and authorities, exhibit index, and certificates of service and compliance.

DATED this 20th day of February, 2024.

By:  /s/ Michael P. Sarabia
Michael P. Sarabia
BROWN LAW FIRM, P.C.
*Attorneys for Defendants Watchtower Bible and Tract Society of New York, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on February 20, 2024, a copy of the foregoing was served on the following person(s):

1. U.S. District Court, Billings Division

2. Robert L. Stepans/Ryan R. Shaffer/James C. Murnion
   MEYER, SHAFFER & STEPANS, PLLP
   430 Ryman Street
   Missoula, MT 59802

3. Matthew L. Merrill (appearing *pro hac vice*)
   MERRILL LAW, LLC
   1863 Wazee Street, Suite 3A
   Denver, CO 80202

4. Gerry P. Fagan/Christopher T. Sweeney/Jordan W. FitzGerald
   MOULTON BELLINGHAM PC
   P.O. Box 2559
   Billings, MT 59103-2559

5. Bruce G. Mapley Sr.
   3905 Caylan Cove
   Birmingham, AL 35215

by the following means:

| 1-4 | CM/ECF | | Fax |
|---|---|---|---|
| | Hand Delivery | | E-Mail |
| 5 | U.S. Mail | | Overnight Delivery Services |

By: /s/ Michael P. Sarabia
Michael P. Sarabia
BROWN LAW FIRM, P.C.
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

16