Robert L. Stepans
Ryan R. Shaffer
James C. Murnion
Victoria K.M. Gannon
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT  59802
Tel: (406) 543-6929
Fax: (406) 721-1799
rob@mss-lawfirm.com
ryan@mss-lawfirm.com
james@mss-lawfirm.com
katy@mss-lawfirm.com

Matthew L. Merrill (appearing *pro hac vice*)
Merrill Law, LLC
1401 Delgany Street, #404
Denver, CO  80202
Tel: (303) 947-4453
matthew@merrillwaterlaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | | |
|---|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | ) ) ) | Case No. CV-20-52-BLG-SPW |
| Plaintiffs, | ) ) | **PLAINTIFFS' BRIEF IN SUPPORT OF MOTION RE: SANCTIONS FOR SPOLIATION OF EVIDENCE** |
| vs. | ) ) | |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA., | ) ) ) ) ) | |
| Defendants, | ) ) | |

///

///

///

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

FACTUAL BACKGROUND...........................................................................2

   1.  Correspondence from local congregations regarding child sexual abuse, including correspondence from the Hardin congregation, was subject to a legal hold no later than 2013. .............................................................2

   2.  The Service Department uses correspondence from the Hardin Congregation to create summaries of the allegations against Gunnar Hain, Bruce Mapley, Sr., and Martin Svenson. ................................................................3

   3.  WTNY is unable to produce the documents that formed the factual basis for the Memorandums and acknowledges they could have been "discarded."......4

   4.  At least one of the Memorandums includes references to documents that have not been produced and have therefore been destroyed. ..........................6

   5.  WTNY attempted to keep the Memorandums secret. .....................................7

   6.  Beginning in 2011 the WTNY Legal Department received repeated threats of litigation about child sexual abuse in Hardin, MT......................................8

LAW......................................................................................................9

ARGUMENT ...........................................................................................11

   1.  WTNY has created a situation where the preservation of critical evidence of the child sexual abuse at issue in this case is in doubt. .................................11

   2.  WTNY must be accountable for the missing documents. .............................12

     a. WTNY's obligation to preserve at the time evidence was destroyed........12

     b. Evidence destroyed with a culpable state of mind.....................................13

     c. Evidence was relevant to claims or defenses such that reasonable trier of fact could find that it would support claims or defenses.........................15

   3.  Sanctions...................................................................................16

CONCLUSION .......................................................................................19

**Plaintiffs' Brief in Support of Motion for Sanctions re: Spoliation of Evidence**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.,*
  *69 F.3d 337 (9th Cir. 1995)* ...................................................................19

*BNSF Ry. Co. v. Quad City Testing Laboratory, Inc.,*
  *No. CV-07-170-BLG-RFC, 2009 WL 10678241 (D. Mont. Nov. 30, 2009)* .........17

*Gregory v. State of Montana,*
  *No. CV-20-51-GF-BMM, 2022 WL 742446 (D. Mont. Mar. 11, 2022)* ........ 17, 18

*Hamilton v. Signature Flight Support Corp.,*
  *2005 WL 3481423 (N.D. Cal. 2005)* ...................................................14

*Io Group, Inc. v. GLBT Ltd.,*
  *2011 WL 4974337 (N.D. Cal. 2011)* ...................................................17

*Knight v. Deere & Co.,*
  *No. 208CV01903GEBEFB, 2010 WL 1948311 (E.D. Cal. May 11, 2010)* ...........9

*Laub v. Horbaczewski,*
  *No. CV 17-6210-JAK (KSX), 2020 WL 7978227 (C.D. Cal. Nov. 17, 2020)* .......10

*Leon v. IDX Systems Corp.,*
  *464 F.3d 951 (9th Cir. 2006)* ...................................... 14, 16, 17, 18, 19

*Montana State Univ.-Bozeman v. Montana First Jud. Dist. Ct.,*
  *2018 MT 220* ...........................................................................9

*OmniGen Research v. Yongqiang Wangi,*
  *321 F.R.D. 367 (D. Or. 2017)* ............................................................10

*Peschel v. City of Missoula,*
  *664 F. Supp. 2d 1137 (D. Mont. 2009)* ...............................................17

*Pride Energy Co. v. Long Trusts,*
  *No. CV 20-182-BLG-SPW, 2023 WL 3198412 (D. Mont. Feb. 27, 2023)*  9, 10, 12

**Plaintiffs' Brief in Support of Motion for Sanctions re: Spoliation of Evidence**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*

ii

*Residential Funding Corp. v. DeGeorge Financial Corp.,*
  *306 F.3d 99 (2nd Cir. 2002)* .......................................................................... *14*

*Silvestri v. Gen. Motors Corp.,*
  *271 F.3d 583 (4th Cir. 2001)* .......................................................................... *9*

*State Farm Fire and Cas. Co. v. Broan Manufacturing,*
  *523 F. Supp. 2d 992 (D. Ariz. 2007)* ............................................................. *18*

*Steshenko v. McKay,*
  *No. 09-CV-05543-RS, 2014 WL 12787653 (N.D. Cal. Dec. 1, 2014)* ........... *16, 17*

*Webster v. Psychiatric Med. Care, LLC,*
  *386 F. Supp. 3d 1358 (D. Mont. 2019)* ........................................................... *16*

## Rules

Fed. R. Civ. P. 37 ............................................................................................ 9

Fed. R. Civ. P. 37(e) ........................................................................................ 18

Fed. R. Evid. 401 ............................................................................................ 15

**Plaintiffs' Brief in Support of Motion for Sanctions re: Spoliation of Evidence**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
iii

## INTRODUCTION

Defendant Watchtower Bible and Tract Society of New York, Inc. ("WTNY") has not produced certain documents that were used by the Service Department to create internal Memorandums of Record about the child sexual abuse at issue in this case. At one point in time, WTNY said these documents were subject to a litigation hold and should have been in the sole possession of its Legal Department. At another point in time, WTNY said the documents were subject to a litigation hold and were in the possession of the Legal Department, but the Service Department "had a redundant copy of some of the records until 2019." WTNY also acknowledges that the documents could have been "discarded once the memorandums were completed."

The documents used by the Service Department to create the Memorandums of Record are critical for Plaintiffs to see because they contain information regarding the sexual abuse at issue in this case, including what the Defendants knew and when they knew it. Yet, WTNY is unable to provide a consistent, straightforward answer as to the whereabouts of the documents. WTNY's internally inconsistent representations about the documents, in conjunction with the acknowledgment that the documents were subject to a litigation hold but may have been destroyed, create significant unanswered questions about what WTNY

did with the documents.  Ultimately, WTNY should be ordered to produce the

documents or be subject to sanctions for destroying them.

## FACTUAL BACKGROUND

1. **Correspondence from local congregations regarding child sexual abuse, including correspondence from the Hardin congregation, was subject to a legal hold no later than 2013.**

According to WTNY's counsel "all records, communications, and reports

relating to child abuse during the period 1979 to 2013" were placed in the

possession of the Legal Department under a legal hold:

> A litigation hold was issued in Jose Lopez v. WTNY, et al., Superior
> Court of the State of California, County of San Diego, Case No. 37-
> 2012-00099849 for case specific records, but in 2013 during the
> course of discovery two document demands expanded the scope of the
> records needing to be held.  The demands included all of the U.S.
> congregations' responses to the March 14, 1997 letter from WTNY
> and all records, communications, and reports relating to child abuse
> from 1979 to 2013.  The hold was lifted at the conclusion of the case,
> but WTNY has maintained the responsive documents in the Legal
> Department because subsequent litigation involving the law firm
> representing Mr. Lopez included demands for the same records.  The
> Service Department had a redundant copy of some of the records until
> 2019 when it transitioned into HuB.

Ex. A, Ltr. from Jon Wilson to Ryan Shaffer, 4. Based on representations in

counsel's letter, documents subject to the litigation hold were being maintained by

the Legal Department and the Service Department had a "redundant copy" of some

of those records.

Contrary to attorney Wilson's letter, WTNY's amended answer to Interrogatory 14 indicated that the litigation hold documents were only accessible to the Legal Department without mentioning copies in the Service Department:

> Later in the 2010s, in response to litigation holds, WTNY's Legal Department took possession of the PDF documents. Those documents remain in the possession of WTNY's Legal Department and are only accessible by Legal Department staff in connection with litigation.

Ex. B, WTNY's First Supp. Ans. to Interrog. No. 14. While WTNY's representations about access to the legal hold documents has changed, one thing is consistent: as of 2013 correspondence and reports about child sexual abuse in Hardin that were sent or received between 1979 and 2013 were subject to a legal hold and in possession of the WTNY Legal Department.

**2. The Service Department uses correspondence from the Hardin Congregation to create summaries of the allegations against Gunnar Hain, Bruce Mapley, Sr., and Martin Svenson.**

According to WTNY, between 2016 and 2019 the Jehovah's Witnesses' Service Department used "correspondence/communications" from the Hardin Congregation to create Memorandums of Record regarding allegations of child sexual abuse against Hain, Mapley, Sr., and Svenson (the "Memorandums"). Ex. C, Memos.; Ex. D, WTNY's Fourth Amended Privilege Log, Nos. 88, 89, 93.

According to WTNY, each Memorandum was drafted by elders in the Service Department "based on correspondence/communications from elders

describing accusations of serious sin" involving Hain, Mapley, Sr., and Svenson.

Ex. D.  Moreover, each of the Memorandums was created after the litigation hold

was instituted in 2013: the Memorandum pertaining to Gunnar Hain is dated

October 20, 2016; the Memorandum pertaining to Martin Svenson is dated

December 23, 2017; and the Memorandum pertaining to Bruce Mapley, Sr. is

dated November 16, 2019.  Ex. C; Ex. D.

### 3. WTNY is unable to produce the documents that formed the factual basis for the Memorandums and acknowledges they could have been "discarded."

Because the documents that formed the basis of the Memorandums are

plainly discoverable and contain critical information, Plaintiffs asked WTNY to

produce them.  To be sure, while the Memorandums reference some of the

information contained in the supporting "correspondence/communications" it

remained unknown what information was left out of the Memorandums.  In

response, WTNY stated:

> WTNY has no way of determining what specific records and/or documents formed the factual basis for the documents identified as Privilege Log Nos. 87-93.  All documents related to the documents identified as Privilege Log Nos. 87-93 have either been produced, identified in the privilege log, **or no longer exist.**

Ex. E, WTNY's Resp. to Pls.' RFP No. 95.  WTNY's response to RFP 95 provides

three possibilities for the status of the documents used by the Service Department

to create the Memorandums.  They were either: (1) produced; (2) identified in a privilege log; or (3) no longer exist.

Most concerning about WTNY's response to RFP No. 95 was the admission that it does not know which documents were used by the Service Department to draft the Memorandums.  It should go without saying that if WTNY "has no way of determining what specific correspondence and/or communications formed the factual basis" of the Memorandums then it should not be swearing under oath that such correspondence and communications have been produced or are referenced in its privilege log.

Given WTNY's internally inconsistent and troubling representations about the critical documents that formed the basis for the Memorandums, Plaintiffs served an interrogatory asking for more details about the documents the Service Department used as the factual basis for the Memorandums.  According to WTNY:

> WTNY is unable to answer this Interrogatory and subparts because it has no way of knowing whether any such documents ever existed. When the Memorandums of Record were created, the elder in the Service Department had the liberty to rely on any then existing religious documents and had the option to call the elders for details contained in the Memorandums. WTNY cannot reverse engineer how the Service Department elder created the Memorandums of Record and therefore would only be guessing what specific records and/or documents formed the factual basis for the Memorandums. Every existing document that could have formed the basis for the Memorandums has either been produced or identified in the privilege log. **If there were any other records/documents that formed the factual basis for the Memorandums of Record when they were**

**created, such records/documents were discarded once the memorandums were completed**.

Ex. F, WTNY's Ans. to Pls.' Interrog. No. 33.  Thus, after attempting to learn as much as possible about the documents used to create the Memorandums, Plaintiffs learned two things: (1) WTNY cannot produce any still existing correspondence; and (2) WTNY acknowledges that the documents may have been "discarded once the memorandums were completed."

### 4. At least one of the Memorandums includes references to documents that have not been produced and have therefore been destroyed.

One of the Memorandums includes internal references to documents that WTNY has not produced in discovery.  The November 16, 2019, Bruce Mapley, Sr. Memorandum references a letter sent to a local congregation noting that, "restrictions were clearly conveyed in a letter of introduction."  Ex. C.  No such letter of introduction has been produced or identified in WTNY's privilege log.  The Memorandum also notes that "Tracy [Caekaert] raised a cry of complaint over the abuse not being reported to the authorities and his not being registered as a sex offender."  *Id*.  This document has also not been produced or identified in WTNY's privilege log.  The Mapley Sr. Memorandum also references three other documents that have not been produced or identified in a privilege log:

1. A "07/19/2004 #1" letter sent to Jehovah's Witnesses congregation #46052;

2. A "06/24/2010 #1" letter sent to Jehovah's Witnesses congregation #46771; and

3. A "11/18/2019 #1" letter sent to Jehovah's Witnesses congregation #60087.

*Id*. The Memorandum's internal references to these documents indicates that they existed. Yet, WTNY has not produced any of them, nor has it identified them in its privilege log. Thus, either WTNY is wrongfully withholding such documents, or it destroyed them.

**5. WTNY attempted to keep the Memorandums secret.**

WTNY hoped that Plaintiffs would never know the Memorandums existed. While they are clearly discoverable, WTNY did not identify their existence in any of its first four privilege logs and production of them was not voluntary. It was not until July of 2023 - after the Court ordered WTNY to produce or identify all Service Department records pertaining to the sex abuse at issue in this case - that WTNY even listed the Memorandums in its privilege log. Even then, Plaintiffs had to demand production of the Memorandums because the descriptions did not support the asserted privileges. If WTNY had its way Plaintiffs would not even know about the existence of the Memorandums.

**6. Beginning in 2011 the WTNY Legal Department received repeated threats of litigation about child sexual abuse in Hardin, MT.**

According to WTNY's Fourth Supplemental Privilege Log, WTNY's Legal Department had received repeated threats of legal action related to Hain, Mapley, Sr., and Svenson prior to drafting the Memorandums:

➢ On May 5, 2011, the Hardin Congregation sent a letter to the Jehovah's Witnesses' Legal Department about threatened legal action over child sexual abuse committed by Gunnar Hain, Bruce Mapley, Sr., and Martin Svenson. Ex. D, No. 41. The Legal Department then sent a memorandum about this threat to the Service Department. Ex. D, No. 42.

➢ Between May 18, 2011, and September 23, 2019, the Jehovah's Witnesses' Legal Department had sixteen (16) separate phone calls with eleven (11) different Jehovah's Witnesses' congregations related to threatened litigation involving child sexual abuse committed by Bruce Mapley, Sr. Ex. D, Nos. 2, 3, 6, 7; Ex. G, Ltr. from Jon Wilson to Ryan Shaffer, 3–6.

➢ Between May 18, 2011, and December 10, 2018, the Jehovah's Witnesses' Legal Department had six (6) separate phone calls with four (4) different Jehovah's Witnesses' congregations related to threatened litigation involving child sexual abuse alleged against Martin Svenson. Ex. D, Nos. 2, 3, 6, 7, 24; Ex. G, 3, 5, 6, 10.

Based on these entries in WTNY's privilege log, when each of the Memorandums were created (Hain on 10/20/2016, Svenson on 12/23/2017, and Mapley, Sr. on 11/16/2019) the Legal Department was on specific notice of repeated litigation threats involving child sexual abuse by Hain, Mapley, Sr., and Svenson.

## LAW

When sitting in diversity jurisdiction, this Court applies federal law to evaluate whether a party has spoliated evidence. *Pride Energy Co. v. Long Trusts*, No. CV 20-182-BLG-SPW, 2023 WL 3198412, at *3–4 (D. Mont. Feb. 27, 2023) (noting that the authority to issue sanctions for spoliation comes from Fed. R. Civ. P. 37 and the inherent power of federal courts to issue sanctions for abusive litigation practices.); *see also Knight v. Deere & Co.*, No. 208CV01903GEBEFB, 2010 WL 1948311, at *3 (E.D. Cal. May 11, 2010) (citing cases) ("When a federal court exercises its inherent power to sanction a party for failure to preserve evidence, federal law controls the inquiry."); *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001).[1]

As this Court recently noted:

> There are two sources of authority under which a district court can sanction a party who has despoiled evidence: the inherent power of federal courts to levy sanctions in response to abusive litigation

---

[1] When evaluating whether a party has spoliated evidence (as opposed to the private cause of action for third-party spoliation of evidence) the Montana Supreme Court refers to federal case law. *See, e.g., Montana State Univ.-Bozeman v. Montana First Jud. Dist. Ct.*, 2018 MT 220, ¶¶ 20–26.

practices, and the availability of sanctions under Rule 37 against a party who 'fails to obey an order to provide or permit discovery.' " Regardless of the source of authority relied upon, the district court has broad discretion to fashion appropriate sanctions.

The Ninth Circuit has "not set forth a precise standard for determining when spoliation sanctions are appropriate." The majority of trial courts in the circuit have adopted the following test: (1) "the party having control over the evidence had an obligation to preserve it at the time it was destroyed"; (2) "the records were destroyed with a culpable state of mind"; and (3) "the evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." The party seeking spoliation sanctions bears the burden of establishing each element.

The Ninth Circuit also has not defined when the duty to preserve evidence is triggered. However, "there is no question" that a party's duty to preserve relevant evidence may arise even before litigation is formally initiated. As such, trial courts in this circuit generally agree that the duty to preserve relevant evidence before litigation commences is triggered "[a]s soon as a potential claim is identified." Litigation need not be immediate or certain. Rather, litigation must be "more than a possibility."

*Pride Energy*, 2023 WL 3198412 at *3, *4 (citing cases throughout).  The Ninth

Circuit has also not identified the standard of proof for spoliation motions, but the

majority of district courts in the Ninth Circuit use the preponderance of evidence.

*E.g.*, *Laub v. Horbaczewski*, No. CV 17-6210-JAK (KSX), 2020 WL 7978227, at

*17 (C.D. Cal. Nov. 17, 2020); *OmniGen Research v. Yongqiang Wangi*, 321

F.R.D. 367, 372 (D. Or. 2017).

## ARGUMENT

### 1. WTNY has created a situation where the preservation of critical evidence of the child sexual abuse at issue in this case is in doubt.

WTNY's shifting representations and explanations about the status of the "correspondence/communications" used to create the Memorandums are unsustainable:

➢ First, WTNY swore under oath that such documents used to create the Memorandums had either been produced, identified in a privilege log, or discarded.

➢ Then, WNTY admits it does not know which documents were used as a basis to create the Memorandums.

➢ Next, WTNY states that the documents used to create the Memorandums were subject to a legal hold and in the exclusive possession of the Legal Department.

➢ Then, WTNY states that the documents were subject to a legal hold, and the Service Department also had copies.

WTNY seems to be making it up as it goes along, and its statements have created far more questions about the documents than answers. For instance, why would documents subject to a legal hold be given to the Service Department to create summary memorandums in the first place? And if they were, why would the Service Department be permitted to "discard them after the memorandums were

completed"?  Finally, why did WTNY try to keep the very existence of these Memorandums a secret?

Nothing that WTNY represents about the Memorandums makes any sense. WTNY's contrary and puzzling representations make it impossible to truly know what happened to the critical documents used to create the Memorandums.  At the same time, it is clear the documents contained important, discoverable information. Ultimately, it must be WTNY, and not Plaintiffs, that bears the burden of the missing documents.

### 2.  WTNY must be accountable for the missing documents.

As set forth below, the WTNY Legal Department's failure to preserve evidence in its possession under a litigation hold constitutes spoliation.

### a.  WTNY's obligation to preserve at the time evidence was destroyed.

"Trial courts in this circuit generally agree that the duty to preserve relevant evidence before litigation commences is triggered "[a]s soon as potential claim is identified."  *Pride Energy*, 2023 WL 3198412 at *4 ("litigation need not be immediate or certain, but must be more than a possibility.").  Here, WTNY acknowledges that, as of 2013, it was under a legal duty to preserve "all records, communications, and reports" received between 1979 and 2013 relating to child sexual abuse, including child sexual abuse occurring at the Hardin congregation. Ex. A, Ex. B.  WTNY further acknowledges that the duty to maintain those

documents continues today.  *Id*.  Therefore, the record establishes that, as of 2013, WTNY had a continuing obligation to preserve all correspondence and reports of child sexual abuse received from the Hardin Congregation between 1979 and 2013. The last known time that documents existed were 2016 (Hain), 2017 (Svenson), and 2019 (Mapley, Sr.) when they were used to create the Memorandums.  Now, in 2024, WTNY is unable to produce the documents and acknowledges that they may have been discarded after the memorandums were completed.  Thus, the record establishes that WTNY was under a duty to preserve the documents at the time they disappeared.

While the 2013 legal hold is certainly sufficient to establish a duty to preserve the documents, WTNY was also on notice of threatened litigation over the child sexual abuse of Hain, Mapley, Sr., and Svenson.  WTNY's privilege log establishes that when the Service Department created the Memorandums it had been receiving specific and consistent threats of litigation regarding all three men going back to 2011 and as recently as 2018 and 2019.  This is further evidence that WTNY was under an obligation to preserve the documents when they went missing.

### b.  Evidence destroyed with a culpable state of mind.

Evidence that is destroyed "knowingly, even if without intent to [breach a duty to preserve it], or negligently" satisfies the *state of mind* element of spoliation.

*Hamilton v. Signature Flight Support Corp.*, 2005 WL 3481423 (N.D. Cal. 2005)

(*citing Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 107

(2nd Cir. 2002).  "A party's destruction of evidence qualifies as willful spoliation if

the party has some notice that the documents were potentially relevant to the

litigation before they were destroyed."  *Leon v. IDX Systems Corp.*, 464 F.3d 951,

959 (9th Cir. 2006).

WTNY's spoliation was willful because it had notice that the

"correspondence/communications" which were used to create the Memorandums

were relevant to litigation.  First, the documents were under a litigation hold in the

*Lopez* case because they were relevant to that litigation.  Additionally, the Legal

Department had been receiving consistent threats of litigation surrounding Hain,

Mapley, Sr., and Svenson.  WTNY had ample reason to know that any

"correspondence/communication" it gave to the Service Department to create the

Memorandums was relevant to both ongoing and threatened litigation.

Under these circumstances, where the WTNY Legal Department knows of

threats of litigation and is under an obligation to preserve the documents subject to

a legal hold, there is no non-nefarious explanation as to why it would permit

records, reports, or correspondence about child sexual abuse to be "discarded."

One explanation would be that WTNY wanted to get rid of documents about

specific instances of childhood sexual abuse while whitewashing the contents of

those documents into short summaries.  Based on the record, the Court can

certainly conclude that the Legal Department had a culpable state of mind when it

permitted documents under the 2013 legal hold to be given to the Service

Department and then "discarded."

### c. Evidence was relevant to claims or defenses such that reasonable trier of fact could find that it would support claims or defenses.

Evidence is relevant if: (a) it has any tendency to make a fact more or less

probable than it would be without the evidence; and (b) the fact is of consequence

in determining the action.  Fed. R. Evid. 401.  Here, based on the contents of the

Memorandums, it is obvious that the documents used to create them contained

relevant evidence.  For instance, the Hain Memorandum includes a reference to

"many accusations of child molestation stretching over many years" and four

separate *clergy / penitent* redactions that ostensibly related to confession by Hain

about such molestation.  The Mapley Memorandum summarizes some allegations

of child sexual abuse and includes a lengthy *clergy / penitent* redaction that must

be related to one or more child sexual abuse confessions.  The Svenson

Memorandum outlines various allegations of child sexual abuse against him, and

therefore the documents used to create the Memorandum must have contained that

information, which would certainly be relevant to Plaintiffs' claims.

In just the Mapley Memorandum alone there are up to five (5) documents

referenced that have not been produced or identified in WTNY's privilege log.

Ultimately, Plaintiffs will never know the exact contents of those documents. Plaintiffs will never know if the Memorandums accurately and completely captured the facts that were set forth in the destroyed documents, or whether important facts were left out of the Memorandums.  But that cannot be used against Plaintiffs in the spoliation analysis.  *Webster v. Psychiatric Med. Care, LLC*, 386 F. Supp. 3d 1358, 1368 (D. Mont. 2019) (quoting *Leon*, 464 F.3d at 959) ("'[B]ecause "the relevance of destroyed documents cannot be clearly ascertained [when] the documents no longer exist," a party "can hardly assert any presumption of irrelevance as to the destroyed documents."'").  It is impossible for Plaintiff to know the full extent and content of the documents that the Legal Department gave to the Service Department for the purpose of drafting the Memorandums. However, it is clear that at least some, if not all, of those documents were destroyed.

### 3. Sanctions

"A trial court's discretion regarding the form of a spoliation sanction is broad, and sanctions can range from the minor, such as the awarding of attorney fees, to the more serious, such as dismissing claims or instructing the jury that it may draw an adverse inference." *Steshenko v. McKay*, No. 09-CV-05543-RS, 2014 WL 12787653, at *1 (N.D. Cal. Dec. 1, 2014), *adhered to*, No. 09-CV-05543-RS, 2014 WL 12787649 (N.D. Cal. Dec. 29, 2014); *see also Gregory v.*

*State of Montana*, No. CV-20-51-GF-BMM, 2022 WL 742446, at *2 (D. Mont. Mar. 11, 2022) (citing *Leon*, 464 F.3d at 958).

"The determination of an appropriate sanction 'is assessed on a case-by-case basis.'" *Steshenko*, 2014 WL 12787653 at *1 (quoting *Io Group, Inc. v. GLBT Ltd.*, 2011 WL 4974337, at *3 (N.D. Cal. 2011)). Courts typically consider three factors when determining the appropriate sanction for spoliation: (1) the degree of fault; (2) the degree of prejudice; and (3) whether a lesser sanction will avoid unfairness to the opposing party. *Id*. Courts in this district seek to fashion a sanction that:

> (1) sufficiently penalizes the spoliating party;
> (2) has a sufficient deterrent value to the immediate spoliating party and future litigants;
> (3) sufficiently cures any prejudice to an affected party by restoring that party to the position it would have been in but for the spoliation;
> (4) sufficiently restores the accuracy of the fact-finding process; and
> (5) places the risk of an erroneous judgment on the spoliating party.

*Peschel v. City of Missoula*, 664 F. Supp. 2d 1137, 1142–43 (D. Mont. 2009).

Where a party has "some notice that the documents were potentially relevant to the litigation before they were destroyed" it constitutes "willful spoliation." *Leon*, 464 F.3d at 959. "A litigant's sophistication is relevant to determining whether that party had notice that particular evidence was potentially relevant." *BNSF Ry. Co. v. Quad City Testing Laboratory, Inc.*, No. CV-07-170-BLG-RFC, 2009 WL 10678241, at *4 (D. Mont. Nov. 30, 2009), *report and recommendation*

*adopted*, No. CV-07-170-BLG-RFC, 2010 WL 11534510 (D. Mont. Feb. 25, 2010)

(citing *State Farm Fire and Cas. Co. v. Broan Manufacturing*, 523 F. Supp. 2d

992, 996 (D. Ariz. 2007)); *see also* Fed. R. Civ. P. 37(e) Advisory Committee

Notes to the 2015 Amendment ("The court should be sensitive to the party's

sophistication with regard to litigation in evaluating preservation efforts; some

litigants, particularly individual litigants, may be less familiar with preservation

obligations than others who have considerable experience in litigation.")

WTNY is a sophisticated, experienced litigant that has been a party in

dozens, if not hundreds, of civil cases across the county.  The Legal Department's

hold on "all records, communications, and reports relating to child abuse from

1979 to 2013" is clear evidence that it knew that correspondence regarding child

sexual abuse within the Hardin congregations was "potentially relevant" to

litigation.  The Legal Department had also received more than a dozen threats of

litigation over child sexual abuse within the Hardin congregation.  Such notice

would render any subsequent destruction "willful."  *Leon*, 464 F.3d at 959.  Under

these circumstances, the Legal Department's decision to give the Service

Department records that were under a litigation hold, without ensuring their

preservation, constitutes acting with a culpable state of mind.  *Gregory*, 2022 WL

742446 at *2 ("A court may levy sanctions when a party knew, or should have

known, that the spoliated evidence could prove relevant to a claim.  The imposition

of sanctions does not require bad faith by the offending party. Simple notice of the potential relevance to the litigation will suffice.").

The prejudice inquiry 'looks to whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon*, 464 F.3d at 959.  The Ninth Circuit found prejudice when a party's refusal to provide certain documents "forced Anheuser to rely on incomplete and spotty evidence" at trial.  *Id.* (quoting *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995).

Here, because the child sexual abuse at issue occurred decades ago and most of the people involved are deceased, documentary evidence about the events in Hardin during the 1970s and 1980s is crucial.  The destruction of documents that described not only the sexual abuse allegations, but who was notified about those allegations and when, stands to be extremely prejudicial to Plaintiffs.

## CONCLUSION

WTNY's story about the documents that the Service Department used to create the Memorandums is ever changing and inconsistent in significant respects. WTNY is unable to produce or identify those documents, and it acknowledges that they could have been discarded.  WTNY and its Legal and Service Departments have created an untenable situation whereby it is unable to assure Plaintiffs and the

Court that critical evidence in its possession has been produced.  Under such

circumstances, WTNY must bear the burden of the situation it has created.

Accordingly, if WTNY cannot produce the documents that were relied on by the

Service Department to create the Memorandums, the Court should issue an order

as follows:

A. The jury shall be instructed that: (1) the WTNY Legal Department was
   under an obligation to maintain and preserve documents pertaining to the
   sexual abuse at issue in this case and used by the Service Department to
   create the Memorandums about Hain, Mapley, Sr., and Svenson; and (2)
   those documents were destroyed after the Memorandums were created; and

B. The jury shall be instructed that it may infer the destroyed documents would
   have been unfavorable to WTNY.

DATED this 3rd day of April, 2024.

By: /s/ Ryan Shaffer
    Ryan R. Shaffer
    MEYER, SHAFFER & STEPANS PLLP

    *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.3(d)(2), Plaintiff hereby certifies that this brief complies with the length requirement for briefs, and that this brief contains 4,559 words, excluding the caption, certificates of service, and compliance, table of contents, and authorities, and exhibit index.

By: /s/ Ryan Shaffer
      Ryan R. Shaffer
      MEYER, SHAFFER & STEPANS PLLP

      *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Local Rule 1.4, this document has been served on all parties via electronic service through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

By: /s/ Ryan Shaffer
      Ryan R. Shaffer
      MEYER, SHAFFER & STEPANS PLLP

      *Attorneys for Plaintiffs*