Robert L. Stepans  
Ryan R. Shaffer  
James C. Murnion  
Victoria K.M. Gannon  
Meyer, Shaffer & Stepans, PLLP  
430 Ryman Street  
Missoula, MT 59802  
Tel: (406) 543-6929  
Fax: (406) 721-1799  
rob@mss-lawfirm.com  
ryan@mss-lawfirm.com  
james@mss-lawfirm.com  
katy@mss-lawfirm.com  

Matthew L. Merrill (appearing *pro hac vice*)  
Merrill Law, LLC  
1401 Delgany Street, #404  
Denver, CO 80202  
Tel: (303) 947-4453  
matthew@merrillwaterlaw.com  

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | Case No. CV-20-52-BLG-SPW |
| Plaintiffs, | **PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION RE: SANCTIONS INTERROGATORY NOS. 9 AND 15 (ECF No. 85 & 318)** |
| vs. | |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA., | |
| Defendants, | |

## INTRODUCTION

Understanding how the Jehovah's Witnesses Organization's (the "Organization") corporate and non-corporate entities worked together to accomplish the Organization's mission is critical to understanding the role that the

corporate Defendants had in causing Plaintiffs' injuries.  In the ordinary case, with a defendant who participates in good faith, Plaintiffs would serve a series of interrogatories asking for an explanation and the defendant would share everything it knew that was responsive to the interrogatories.  In this case, Plaintiffs have served those interrogatories, but WTNY refuses to provide the responsive information.  As a result, Plaintiffs have been relegated to finding what they can from other sources.

Defendants' goal is to keep this information as opaque as possible so the Court and the jury will be confused about the structure of the Organization and the role played by the corporate entities.  Indeed, if Defendants can keep the full extent of their relationship with non-corporate entities secret, they can argue the acts and omissions giving rise to liability should be attributed to non-parties.  In furtherance of this strategy, WTNY has refused to be forthcoming with discoverable information about the Organization's operational structure and how the Organization used the corporate Defendants to accomplish its mission.

The Court has already determined that WTNY violated its obligation to be forthcoming with information sought by Plaintiffs about the relationship amongst the Organization's corporate and non-corporate entities.  The Court's recent Order addressed some of WTNY's intentional omissions from its Answer to Interrogatory No. 15.  ECF No. 318.  Nevertheless, important gaps in discoverable

information remain unanswered by WTNY. Specifically, WTNY refuses to set forth the way that the Governing Body and the U.S. "branch" used the corporate Defendants to carry out the Organization's work during the 1970s, 1980s, and 1990s. Accordingly, Plaintiffs respectfully request an order finding additional facts, as set forth fully below, are established as a sanction for WTNY's continued refusal to be forthcoming in discovery.

## FACTUAL BACKGROUND

The origin of the parties' dispute over WTNY's answers to Interrogatory Nos. 9 and 15 is outlined in detail in the Background sections of Orders issued by this Court. ECF Nos. 85 and 318. Plaintiffs' most recent Motion referred to a selection of exhibits demonstrating that WTNY has intentionally omitted material facts from its' answers to Interrogatory Nos. 9 and 15. These exhibits were not an exhaustive list of that evidence. Rather, it was a sample intended to demonstrate that WTNY had intentionally withheld material information from its answers.[1]

Finding WTNY failed to provide meaningful interrogatory answers, the Court agreed sanctions were appropriate but rejected Plaintiffs' proposed relief. Ord. at 32–40, ECF No. 318. As an alternative, the Court deemed certain designated facts evidenced in the exhibits submitted by Plaintiffs as established.

---

[1] The Court recognized Plaintiffs could have additional evidence not submitted with their motion that would help justify the relief sought. Ord. at 3, ECF No. 318.

*Id.* at 38–40.  These facts address and remedy much of WTNY's non-compliance.  At the same time, critical facts regarding how the Organization's non-corporate entities used the corporate Defendants to carry out the Organization's mission remain unaddressed.  Accordingly, and for the purpose of completeness, Plaintiffs present further evidence that WTNY continues to withhold facts responsive to Interrogatory No. 15.

    **1. The Governing Body's use of WTNY and WTPA.**

Interrogatory No. 15 asked WTNY to describe, *inter alia*, the relationship between the Governing Body and the corporate Defendants.  WTNY refuses to set forth how the Governing Body used the corporate Defendants as part of its answer to Interrogatory No. 15.[2]  Information responsive to this question is readily available and set forth in various sworn statements and documents:

> ➢ "To implement their decisions, the Governing Body uses a hierarchical organization together with corporate entities, when appropriate, to accomplish its worldwide work of teaching and declaring the good news of God's established Kingdom. The principal

---

[2] Plaintiffs also asked WTNY to set forth which corporations the Governing Body acted and communicated through during the period 1973 to 1992 in other interrogatories.  WTNY refused to provide responsive information to those interrogatories as well.  *See* Ex. A, WTNY's Answers to Interrog. Nos. 20 & 21.

corporation used by the Governing Body is the Watch Tower Bible and Tract Society of Pennsylvania." Ex. B, Adams Aff. at ¶ 6.

- "A 'Society' was organized in 1881 to expand the distribution of printed material; this was legally incorporated in 1884 and is now called Watch Tower Bible and Tract Society of Pennsylvania. Other corporations were formed to operate in various places, such as, in 1909, the one now known as Watchtower Bible and Tract Society of New York, Inc., and International Bible Students Association formed in England in 1914, etc. These all serve as instruments of the 'faithful and discreet slave' class and its governing body." Ex. C, 1972 Kingdom Ministry School Course at 79.

- "Under the Watch Tower Bible and Tract Society of Pennsylvania, the Governing Body directs 95 branches through Branch Committees that report their progress to the Governing Body and implement the directives of the Governing Body in a uniform manner." Ex. B, Adams Aff. at ¶ 7.

- "The Watch Tower Bible and Tract Society of Pennsylvania is the parent corporate agency of Jehovah's Witnesses. It works with its subsidiary legal agencies such as the Watchtower Bible and Tract Society of New York, Inc., the International Bible Students

Association, and many others scattered throughout the earth, for carrying on the business that must be done in order to print and ship the good news. All these agencies are subject to and work under the direction of the 'faithful and discreet slave' class and its Governing Body." Ex. D, 1977 Branch Organization Manual at ¶ 34.

➢ WTNY "… further admits that the Governing Body used Watchtower Bible and Tract Society of Pennsylvania, to help carry out the activities of Jehovah's Witnesses worldwide." Ex. E, WTNY's Answer at ¶ 5.

➢ "So really the governing body of Jehovah's Witnesses is the board of directors of the Watch Tower Bible and Tract Society of Pennsylvania, all of whom are dedicated to Jehovah God and anointed by his holy spirit. They are keenly interested in advancing the knowledge of God and promoting his purposes world wide. Jehovah's blessing has been upon the Watch Tower Society and the other societies that cooperate fully with the Pennsylvania corporation. The charters of these other corporations are similar to that of the Pennsylvania corporation. Some of such corporations are the Watchtower Bible and Tract Society of New York, Inc…" Ex. F, 1970 Yearbook of Jehovah's Witnesses at 38.

- ➢ "The Pennsylvania corporation is not the only legal entity used by the Jehovah's Witnesses. There are others. One is the Watchtower Bible and Tract Society of New York, Inc. It facilitates our work in the United States. Jehovah's blessing has clearly been upon that corporation, though its directors and officers have been mainly of the 'other sheep.' The International Bible Students Association is used in Britain. Other legal entities are used to promote Kingdom interests in other lands. All of them harmoniously assist and have a role to play in getting the good news preached earth wide. No matter where they are located or who serve as directors or officers, these entities are theocratically guided and used by the Governing Body." Ex. G, *How the Governing Body Differs from a Legal Corporation* at 2.

- ➢ "As long as conditions in this world permit, the Governing Body, representing 'the faithful and discreet slave,' will make use of legal entities. These are convenient, but they are not indispensable." *Id*. at 4.

- ➢ The Governing Body used WTNY to communicate its appointment and deletion of local clergy, including the Hardin elders.  Ex. H, Hardin Elder Appointment/Deletion Docs.

- The policies and procedures established by the Governing Body for investigating allegations of serious sin, including child sexual abuse, were published and communicated to local congregations by WTNY and WTPA.  Ex. I, Summary of Relevant WTNY and WTPA Publications; Ex. J, Relevant WTNY All Body of Elder Letters.
- The Governing Body sanctioned the formation of the Hardin Congregation and its original set of elders (then known as "servants") through WTNY.  Ex. H.

## 2. Prior to 2001, the U.S. Branch Office was referred to as "the branch" and it communicated through WTNY.

Interrogatory No. 15 also asked WTNY to describe, *inter alia*, the relationship between the corporate Defendants and the U.S. Branch.  WTNY has been intentionally opaque about this in written discovery and has refused to provide Plaintiffs' and the Court any meaningful explanation about the U.S. Branch's role in the Organization during the time period at issue in this case.

WTNY's failure to be forthcoming with responsive information has created significant confusion about what the U.S. Branch was and did during the time period at issue in this case.  While such information was plainly in WTNY's possession, it chose to withhold it.  As a result, some of the facts deemed established in the Court's recent order require further explanation.  For instance, during recent corporate depositions, it was revealed that the formal "U.S. Branch

Office" did not come into existence until 2001.  As set forth below, it was then clarified that references to the "branch" in the United States prior to that point in time were references to the various departments at the New York Headquarters, such as the Service Department, which communicated through WTNY.  Had WTNY provided this simple explanation when answering Interrogatory No. 15, years of confusion, motions practice, and the Court's time attending to all of the above could have been avoided.

While WTNY still refuses to supplement its answer to Interrogatory No. 15's request to describe the relationship between the U.S. Branch and the corporate Defendants, the evidence establishes that: (1) the U.S. Branch was not formally established until 2001; (2) prior to 2001, what is now the U.S. Branch was effectively the departments at the Organization's New York Headquarters, including the Service Department, and they were collectively referred to as "the "branch"; and (3) WTNY was the corporation used to communicate actions of the branch in the United States:

> ➢ Prior to 2001, there was not a formal U.S. Branch Office.  Ex. K, WTNY Rule 30(b)(6) Dep. (Jefferson) at 77:13–17, 156:23–158:6.
> ➢ Prior to 2001, what is now the U.S. Branch Office was referred to as "Bethel" or the "branch".  Ex. L, WTNY Rule 30(b)(6) Dep.

(Moreno) at 64:6–13; Ex. M, WTPA Rule 30(b)(6) Dep. (Moreno) at 26:8–17; 47:19–48:4; 49:17–50:15; 52:8–12.

- Prior to 2001, WTNY, a.k.a. the "Society," was understood to be the "branch". Ex. N, Lovett Dep. at 44:2–10, 63:17–24, 90:14–21, 95:7–12, 221:14–222:11.

- Prior to 2001, the "branch" was the Departments in New York that currently make up what is now referred to as the U.S. Branch Office. Ex. L, WTNY Rule 30(b)(6) Dep. (Moreno) at 49:17–50:15; Ex. M, WTPA Rule 30(b)(6) Dep. (Moreno) at 51:17–52:4; Ex. K, WTNY Rule 30(b)(6) Dep. (Jefferson) at 155:12–158:15.

- "The Watchtower Bible and Tract Society of New York, Inc. is a branch used to administer the needs of Jehovah's Witnesses in the United States." Ex. B, Adams Aff. at ¶ 8.

- "Defendant Watchtower is a New York religious corporation located in Brooklyn, New York. At the time of the alleged abuse of Plaintiff, Watchtower was the entity used by the U.S. Branch Office of Jehovah's Witnesses, at the national level, to communicate with and disseminate information to congregations of Jehovah's Witnesses. Ex. O, Def's Joint Statement of Undisputed Facts in *Lewis* at ¶ 5 (citing Chappel Aff. of August 10, 2016, ¶¶ 3, 26).

- "Watchtower NY stipulates that actions taken by the U.S. Branch (and its Service Department) prior to March 2001 on its behalf or on its letterhead are ratified by Watchtower NY." Ex. P, Proposed Pretrial Order Stipulations in *Nunez* at ¶ 3.

- "Prior to March 2001, the spiritual assistance provided by the Service Department, along with the appointment of elders, was communicated to all congregations of Jehovah's Witnesses through Watchtower Bible and Tract Society of New York, Inc." Ex. Q, Dec. of Breaux in *Vigue* at ¶ 8.[3]

- "Prior to March 2001, all communications from the U.S. Branch (and its Service Department) to local congregations about how to handle reports of child abuse were done on behalf of Watchtower NY and were ratified by Watchtower NY." Ex. P, Proposed Pretrial Order Stipulations in *Nunez* at ¶6.

## LAW

WTNY has an ongoing obligation to supplement its discovery answers, including its answer to Interrogatory No. 15. Fed. R. Civ. P. 26(e)(1)(A). The purpose of such supplements is to ensure that Plaintiffs have the evidence they are

---

[3] Plaintiffs requested production of this Declaration of Gary Breaux in discovery and it was withheld by WTNY.

entitled to before trial. *Lake v. Corecivic, Inc.*, No. CV-21-116-GTF-BMM, 2023 WL 6379349, at *3 (D. Mont. Sept. 29, 2023) ("'Wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth.' . . . Discovery noncompliance must be addressed and sanctioned to promote respect for the open discovery process.").

Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure provides, in pertinent part:

> If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
>> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; or
>>
>> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

"District courts have broad discretion in deciding whether to impose sanctions under Rule 37." *Gersh v. Anglin,* No. CV 17-50-M-DLC-KLD, 2022 WL 2466782, at *2 (D. Mont. May 11, 2022), *report and recommendation adopted*, No. CV 17-50-M-DLC, 2022 WL 4534269 (D. Mont. Sept. 28, 2022) (citing *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007)).

# ARGUMENT

WTNY continues to intentionally withhold critical facts from its answer to Interrogatory No. 15. It is now doing so in violation of two Court Orders and applicable federal rule, which provides that a party who learns that its discovery responses are incomplete or incorrect "must supplement or correct its disclosure or response." Fed. R. Civ. P. 26(e)(1)(A).

While this Court's prior Order addressed much of the information that WTNY left out of its answer to Interrogatory No. 15, key facts about the Governing Body's use of the corporate Defendants during the relevant time period remain unaddressed. Moreover, because WTNY has not been forthcoming with facts about the U.S. Branch Office in written discovery, it is apparent that facts clarifying what constituted the "branch" prior to 2001 should be deemed established.

While WTNY may argue that Plaintiffs should just present this evidence to the jury and prove these additional facts at trial, this would give WTNY the benefit of its continued refusal to provide complete information in discovery. Even today, with two court orders telling it that its answers to Interrogatory No. 15 do not comply with the rules, WTNY refuses to supplement its answer. Plaintiffs should not be required to spend valuable time in front of the jury proving facts that WTNY has an obligation to set forth in an interrogatory answer. Accordingly,

Plaintiffs request that the Court issue an Order supplementing the facts previously deemed established with the following additional facts:

a) During the period 1973 to 1992, the Governing Body acted through WTNY when it appointed and removed elders at local congregations;

b) During the period 1973 to 1992, the Governing Body acted through WTNY and WTPA when it promulgated the policies and procedures elders at local congregations were to follow when handling allegations of child sexual abuse;

c) During the period 1973 to 1992, the Governing Body was acting through WTNY and WTPA for all purposes relevant to this case;

d) Prior to the formation of the U.S. Branch Office in 2001, Jehovah's Witnesses referred to the departments at the New York Headquarters that oversaw U.S. congregations, including the Service Department, as the "branch"; and

e) Up to 2001, the "branch" communicated to local congregations through WTNY.

Each of these facts should have been disclosed by WTNY as part of its answer to Interrogatory No. 15, are supported by independent evidence and admissions, and are necessary to clarify facts previously deemed established by the Court.

DATED this 4th day of April, 2024.

By: /s/ Ryan Shaffer
    Ryan R. Shaffer
    MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(d)(2), Plaintiff hereby certifies that this brief complies with the length requirement for briefs, and that this brief contains 2,796 words, excluding the caption, certificates of service, and compliance, table of contents, and authorities, and exhibit index.

By: /s/ Ryan Shaffer
Ryan R. Shaffer
MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 1.4, this document has been served on all parties via electronic service through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

By: /s/ Ryan Shaffer
Ryan R. Shaffer
MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*