Jon A. Wilson
Brett C. Jensen
Michael P. Sarabia
BROWN LAW FIRM, P.C.
315 North 24th Street
P.O. Drawer 849
Billings, MT 59103-0849
Tel. (406) 248-2611
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

Joel M. Taylor, Esq. (*pro hac vice*)
MILLER MCNAMARA & TAYLOR LLP
100 South Bedford Road, Suite 340
Mount Kisco, New York 10549
Tel./E-Fax (845) 288-0844

Gerry P. Fagan
Christopher T. Sweeney
Jordan W. FitzGerald
MOULTON BELLINGHAM PC
27 North 27th Street, Suite 1900
P. O. Box 2559
Billings, Montana 59103-2559
Telephone: (406) 248-7731
Gerry.Fagan@moultonbellingham.com
Christopher.Sweeney@moultonbellingham.com
Jordan.Fitzgerald@moultonbellingham.com
*Attorneys for Defendant Watch Tower Bible and Tract Society of Pennsylvania*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT and CAMILLIA MAPLEY,<br><br>                              Plaintiffs,<br><br>     -vs-<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA,<br><br>                              Defendants. | Cause No. CV 20-52-BLG-SPW<br><br>**DEFENDANTS WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC. AND WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA'S BRIEF IN SUPPORT OF JOINT MOTION FOR SUMMARY JUDGMENT** |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ................................................................................................... 1

LEGAL STANDARD ............................................................................................... 3

ARGUMENT ......................................................................................................... 4

    I.    The Court should grant summary judgment in Defendants' favor on Plaintiffs' negligence claim because Defendants did not have a special relationship with either the Plaintiffs or their alleged abusers.................................................................................. 4

    II.    The Court should grant summary judgment in Defendants' favor on Plaintiffs' negligence claim because the alleged abuse did not occur on Defendants' premises or during religious activities Defendants controlled, and there is no evidence the abuse arose ou of the prosecution of any Congregation-related tasks. ....................................... 16

    III.    Because Plaintiffs' causes of action for negligence and negligence per se fail as a matter of law, their claim for punitive damages similarly fails. ............................................... 22

CONCLUSION ....................................................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Aaronoff v. Martinez-Senftner*, 136 Cal. App. 4th 910 (2006) ..................................................... 21

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................. 3

*Berry v. Watchtower Bible & Tract Soc'y*, 879 A.2d 1124 (N.H. 2005) ................................... 8, 9

*Brenden v. City of Billings*, 2020 MT 72, 470 P.3d 168 ............................................................ 19

*Bryan R. v. Watchtower Bible & Tract Soc'y*, 738 A.2d 839 (Me. 1999) ............................. 13, 14

*C.J.C. v. Corp. of the Catholic Bishop of Yakima*, 985 P.2d 262 (Wash. 1998) ........................... 8

*Celotex Corp. v. Catrett*, 477 U.S. 316 (1986) ............................................................................. 3

*Conti v. Watchtower Bible & Tract Soc'y*, 235 Cal. App. 4th 1214 (2015). ................. 2, 8, 15, 16

*Doe v. Corp. of the Catholic Bishop* (E.D. Wash. 2013)
    957 F. Supp. 2d 1225 ............................................................................................................ 21

*Doe v. Corp. of the President of The Church of Jesus Christ of Latter-day Saints*, 98 P.3d
    429 (Utah App. 2004) ...................................................................................................... 14, 15

*Emanuel v. Great Falls School Dist.*, 2009 MT 185, 209 P.3d 244 ............................................... 5

*Hatch v. State Dep't of Highways*, 269 Mont. 188, 887 P.2d 729 (1994) ..................................... 5

*In re T.W.*, 2005 MT 340, 126 P.3d 491 ...................................................................................... 8

*Jacobson v. Allstate Ins. Co.*, 2009 MT 248, 351 Mont. 464, 215 P.3d 649 ............................. 22

*Kornec v. Mike Horse Mining & Milling Co.*, 180 P.2d 252 (Mont. 1947) ................................. 19

*L.B. v. United States*, 2022 MT 166, 409 Mont. 505, 515 P.3d 818 ................................ 5, 17, 18

*L.B. v. United States*, No. CV 18-74-BLG-SPW, 2023 U.S. Dist. LEXIS 138238 (D. Mont.
    Aug. 8, 2023) ........................................................................................................................ 18

*Langford v. Roman Catholic Diocese of Brooklyn*, 677 N.Y.S.2d 436 (Sup. Ct. 1998) ........ 12, 13

*Lewis v. Bellows Falls Congregation of Jehovah's Witnesses*, 95 F. Supp. 3d 762 (D. Vt.
    2015) ...................................................................................................................................... 20

*Maguire v. State*, 254 Mont. 178, 835 P.2d 755 (1992) ............................................................ 17

*Md. Cas. Co. v. Asbestos Claims Ct.*, 2020 MT 70, 460 P.3d 882 ..................................... 2, 4, 5, 6

*Meyer v. Lindala*, 675 N.W.2d 635 (Minn. App. 2004) ......................................................... 9, 10

*Nelson v. Driscoll*, 1999 MT 193, 983 P.2d 972 ........................................................................ 6

*Peterson v. Eichhorn*, 2008 MT 250, 189 P.3d 615 ................................................................... 22

*Presbyterian Church v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S.
    440 (1969) .............................................................................................................................. 12

*R.A. v. First Church of Christ*, 748 A.2d 692 (Pa. Sup. Ct. 2000) .............................................. 19

*Roman Catholic Bishop v. Superior Court*, 42 Cal. App. 4th 1556 (1996) ...................... 11, 12, 20

*S.E.C. v. Seaboard Corp.*, 677 F.2d 1301 (9th Cir. 1982) .............................................................. 3

*Stipe v. First Interstate Bank—Polson*, 2008 MT 239, 344 Mont. 435, 188 P.3d 1063).............. 22

*Werre v. David*, 275 Mont. 376, 913 P.2d 625 (1996) .................................................................... 6

**Other Authorities**

Restatement (Second) of Agency, § 213 (2nd 2010) ............................................................... 5, 17

Victor E. Schwartz *et al., Defining the Duty of Religious Institutions to Protect Others:*
    *Surgical Instruments, Not Machetes, Are Required*, 74 U. Cin. L. Rev. 11 (2005) .............. 6, 7

**Rules**

Fed. R. Civ. P. 56 ............................................................................................................................ 3

Defendants Watchtower Bible and Tract Society of New York, Inc. ("WTNY") and Watch Tower Bible and Tract Society of Pennsylvania ("WTPA") (collectively "Defendants") respectfully submit this Brief in Support of their Joint Motion for Summary Judgment as to Plaintiffs Tracy Caekaert and Camillia Mapley's (collectively "Plaintiffs") first cause of action for general negligence. Defendants previously moved for partial summary judgment as to Plaintiffs' second cause of action for negligence per se.  (Doc. 302.)

As explained herein, the undisputed material facts demonstrate Plaintiffs' alleged abuse occurred at the hands of their father Bruce Mapley, Sr., and family friend Gunnar Hain, in private residences not associated with the Hardin Congregation of Jehovah's Witnesses ("Hardin Congregation"), WTNY or WTPA, and never during the course of congregation-sanctioned activities.   Therefore, Defendants did not have a duty of care to protect Plaintiffs from the alleged child sexual abuse as a matter of Montana law.  Because both causes of action directed to Defendants fail as a matter of law, Plaintiffs' claim for punitive damages also fails as a matter of law, and Defendants are entitled to dismissal of this action with prejudice.  Defendants respectfully request this relief.

## **INTRODUCTION**

This case is about sexual violence that occurred in private homes by Plaintiffs' natural father and a friend of the family.  Plaintiffs' father, Bruce Mapley, Sr., began

sexually abusing Plaintiffs years before they were associated with the Hardin Congregation.   (*See* Joint Statement of Undisputed Facts ("SUF") ¶ 5.)   At all relevant times, Plaintiffs were in the custody and control of their parents, and the alleged abuse occurred outside of any religious context.   (*See* SUF ¶¶ 6-10.) Defendants simply had no connection with the alleged abuse.

No court has held a religious organization (or any organization) liable for a father's abuse of his own children.  The "fundamental question in every negligence case is whether the alleged tortfeasor owed a legal duty of care to the claimant(s) under the particular circumstances of that case …." *Md. Cas. Co. v. Asbestos Claims Ct.*, 2020 MT 70, ¶ 26, 460 P.3d 882, 894.  Churches do not have a duty to protect their parishioners, as there is "no authority" imposing a "duty on the part of a church to prevent its members from harming each other." *Conti v. Watchtower Bible & Tract Soc'y*, 235 Cal. App. 4th 1214, 1227 (2015).  A church has no more *legal* duty to act than does a stranger who sees a parent abuse a child.

Plaintiffs also allege they were each abused a single time by Gunner Hain, another member of the Hardin Congregation.  (*See* SUF ¶ 6.)  This abuse occurred in Hain's home (*id.*), not while Plaintiffs were in Defendants' custody and control.

Plaintiffs are expected to argue there were "rumors" that Mr. Hain had molested other children in the Congregation.  Even if true, Defendants had no legal

duty to warn other Congregation members, nor did they have a duty to monitor sleepovers or other private activities at which abuse might occur.

Ultimately, Defendants had no duty of care to protect Plaintiffs from any abuse suffered at the hands of their father and family friend, which abuse occurred outside of any religious events or on property owned and controlled by any religious organization.  Absent a duty, there can be no liability.

## STATEMENT OF UNDISPUTED FACTS

A Joint Statement of Undisputed Facts is filed contemporaneously herewith in accordance with L.R. 56.1(a).

## LEGAL STANDARD

A moving party is entitled to summary judgment when there are no genuine issues of material fact and the party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 316, 323 (1986).  "A material issue of fact is one that affects the outcome of the litigation …." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).  There is no issue for trial without "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

For the purposes of this Motion, it is not material whether Plaintiffs' father molested them, if the abuse continued after Defendants became aware of it, if Congregation member Gunner Hain molested Plaintiffs, or if Defendants were aware

of "rumors" about Hain molesting others in the congregation.  Defendants owed no legal duty of care to Plaintiffs under the undisputed material facts of this case, which must be resolved by the Court as a matter of law.

## ARGUMENT

Plaintiffs' First Amended Complaint ("FAC") (Doc. 22) alleges Defendants, inter alia, (1) control how sex abuse allegations are handled (Doc. 22 at ¶ 19); (2) adopted their own process for handling sex abuse allegations (*id.* at ¶ 21); and, (3) "[b]y prohibiting church members from reporting sexual abuse to law enforcement and enacting its own Watchtower Protocols, [Defendants] have accepted the unique and special responsibility of protecting minors from sexual predators" (*id.* at ¶ 28).  Such allegations do not establish a duty owed by Defendants in this case, and neither does Plaintiffs' recitation of a legal conclusion regarding a "special responsibility."

I.   **The Court should grant summary judgment in Defendants' favor on Plaintiffs' negligence claim because Defendants did not have a special relationship with either the Plaintiffs or their alleged abusers.**

The "fundamental question in every negligence case is whether the alleged tortfeasor owed a legal duty of care to the claimant(s) under the particular circumstances of that case …." *Md. Cas. Co.*, ¶ 26.  This is "a threshold matter of law" for the Court to resolve.  *Id*.  While the existence of duty is one of four elements that must be proved in a negligence action, the absence of a genuine issue of material

fact as to a single element requires summary judgment in favor of Defendants.  *Hatch v. State Dep't of Highways*, 269 Mont. 188, 193, 887 P.2d 729, 732 (1994).

A person has a duty to prevent foreseeable harm arising from his own conduct. *Md. Cas. Co.,* ¶ 26.  But foreseeability alone does not create a duty to prevent harm caused by someone else.  *Id*. at ¶¶ 28-29.   "[T]here is no duty to protect others against harm from third persons, absent a special relationship of custody or control." *Emanuel v. Great Falls School Dist.*, 2009 MT 185, ¶ 12, 209 P.3d 244, 247. Churches do not have a "special relationship of custody and control" with their parishioners by virtue of membership alone, and even a principal/master only has a duty to prevent the harmful conduct of its agents that "occurs upon [their] premises or with instrumentalities under [their] control."  *See* Restatement (Second) of Agency, § 213 (2nd 2010).  In this same vein, intentional, illegal acts of violence generally fall outside the course and scope of employment for purposes of respondeat superior liability unless "the act complained of arose out of and was committed in the prosecution of the task the servant was performing for his master." *L.B. v. United States*, 2022 MT 166, ¶ 11, 409 Mont. 505, 514, 515 P.3d 818, 822 (internal citation omitted).

Montana law "recognizes various qualifying special relationships giving rise to a special duty of care to protect others from harm directly caused by third parties." *Md. Cas. Co.*, ¶ 30.  As recently listed by the Montana Supreme Court, these are:

(1) where the defendant had custody and control of the tortfeasor, as with the state's custody of a dangerous prisoner; (2) where the defendant had custody and control of the victim, as with a school's custody of a student; (3) the relationship between a common carrier and its passengers; (4) a parent-child relationship; (5) a master-servant relationship; and (6) a property owner and its invitees. *Id.*

"[T]he terms *custody* and *custodial relationship* contemplate a degree of control akin to possession, or a degree of control which results in a physical or legal restraint on one's liberty." *Nelson v. Driscoll*, 1999 MT 193, ¶ 35, 983 P.2d 972, 981 (emphasis in original). Parents have a custodial relationship with their children and the attendant duty of protecting them from sexual abuse. *See Werre v. David*, 275 Mont. 376, 392, 913 P.2d 625, 635 (1996). Churches do not have that kind of relationship with their parishioners. Victor Schwartz, the co-author of Prosser and Keeton on Torts, explains: "'[S]pecial relationships' are characterized by the significant degree of practical control that the actor has over the perpetrator or the victim" and churches "have very limited, if any, practical control over a member …." Victor E. Schwartz *et al., Defining the Duty of Religious Institutions to Protect Others: Surgical Instruments, Not Machetes, Are Required*, 74 U. Cin. L. Rev. 11, 30 (2005).

> This creates a very real and practical difference from situations where courts have found a 'special relationship.' In all of the 'special relationships' where an actor owes a duty of care to a third person for risks posed by another, the relationships are characterized by the

> significant degree of practical control that the actor has over the
> perpetrator or the victim.  By contrast, while churches … may have
> religious influence over their members' religious practices and beliefs,
> they have little if any 'control' over their day-to-day activities.

*Id*.  Professor Schwartz explains that "[r]eligious affiliation is a matter of personal

choice and preference, not control."  *Id*.  "Clearly, a religious institution does not

have the qualitative or quantitative control over its members that" exists in the

recognized special relationships.  *Id*.

Plaintiffs' mother understood this.  She testified that everything about her

relationship with Jehovah's Witnesses was voluntary:

> Q. …. As one of Jehovah's Witnesses, is there any aspect of your
> worship that is not voluntary?
>
> A. No.
>
> Q. Is all of it voluntary?
>
> A. Yes.
>
> Q. Can the elders stop you from doing anything?
>
> A. No.
>
> Q. Can the elders make you do something?
>
> A. No.

(Depo. Shirley Gibson 161:17-162:2 (Apr. 14, 2022), excerpts attached hereto as

Exhibit 1.)

The Defendants did not have a relationship of custody or control with either

the Plaintiffs or their alleged abusers.  No court has found a special relationship, for

purposes of establishing a duty to prevent child abuse, between a religious

organization and its parishioners solely because of membership.  Thus, there is "no

authority" imposing a "duty on the part of a church to prevent its members from harming each other." *Conti*, 235 Cal. App. 4th at 1227. There is "no special relationship between the church and all of the children in the Congregation simply because they were members of the church." *Id.* at 1231.

There are numerous cases like this one where parishioners have attempted to hold their church liable for abuse by a parent or another parishioner. In each one, the court held that the church owed no duty.[1]

In *Berry v. Watchtower Bible & Tract Soc'y*, 879 A.2d 1124, 1129 (N.H. 2005), two girls alleged their mother reported to congregation leaders that their father was molesting them. Congregation leaders failed to report the abuse and improperly counseled their mother, and the abuse continued. The plaintiffs argued "that a special relationship existed between them and Watchtower and Wilton Congregation because 'they and their family were members of the Wilton

---

[1] To be clear, churches are not immune from liability for sexual abuse. Churches have a duty to protect children who are "delivered into the custody and care of a church and its workers, whether it be on the premises for services and Sunday school, or off the premises at church sponsored activities or youth camps." *C.J.C. v. Corp. of the Catholic Bishop of Yakima*, 985 P.2d 262, 274 (Wash. 1998). "This is because in taking the individual into custody the actor 'deprive[s] the other of his normal opportunities for protection,' and makes the individual reliant on him." *In re T.W.*, 2005 MT 340, ¶ 43, 126 P.3d 491, 500 (quoting Restatement (Second) of Torts § 314A(4)). But here, Plaintiffs were not in Defendants' custody and care when their father or Gunner Hain molested them. This case involves abuse in private homes arising out of private relationships.

Congregation and relied to their detriment on elders of the congregation for moral, spiritual and practical guidance.'" *Id*. at 1129 (alteration omitted). The court rejected the argument, noting the children were not within the "custody or control" of the congregation when their father abused them. *Id*. "We decline to hold that the fact of church membership or adherence to church doctrine by the plaintiffs' parents creates a special relationship between the plaintiffs and Watchtower or Wilton Congregation." *Id*.

In *Meyer v. Lindala*, 675 N.W.2d 635 (Minn. App. 2004), the plaintiffs alleged elders of the Annandale Congregation received a report that Congregation member Derek Lindala had molested a child. "The elders investigated the allegation, did not immediately report the information to law enforcement, and allowed Lindala to continue as a member of Annandale Congregation." *Id*. at 638. Lindala later molested Meyer "at various locations, including Lindala's parents' home." *Id*. Lindala also abused Doe. Both plaintiffs alleged that when they disclosed the abuse, the Congregation elders told them to remain silent and not report it to anyone else. *Id*.

Meyer and Doe filed suit, alleging the Annandale Congregation and WTNY "owed a common law duty of care" to them based on a "special relationship." *Id*. at 637. They pointed to "Jehovah's Witnesses doctrine" and argued it required them to "rely on congregation elders for all of their concerns," which gave the

Congregation "control" over them, creating a special relationship. *Id.* at 640. They also asserted their religious beliefs allowed them to "only associate with other Jehovah's Witnesses who are in good standing." *Id.* "Meyer and Doe argue[d] that this amounts to significant control, which deprived Meyer and Doe of normal opportunities for self-protection." *Id.*

The court rejected their argument because the "Annandale Congregation and Watchtower did not have custody or control over Meyer and Doe at the time of the alleged misconduct" which "took place at Lindala's residence, on a snowmobile, and in an automobile" and not "during Annandale Congregation functions or on Annandale Congregation property." *Id.* The plaintiffs' "contention of control [was] premised on faith-based advice given to Meyer, Doe, and other congregants" and "[p]roviding faith-based advice or instruction, without more, does not create a special relationship."[2] *Id.*

Here, Plaintiffs make similar allegations, contending Defendants "instruct [ ] … members to report wrongdoing to their local Elders, rather than reporting such conduct to law enforcement" and that Defendants deal with misconduct through

---

[2] The court in *Meyer* also concluded that the Congregation and WTNY could not be held liable for allegedly violating Minnesota's reporting statute. "This court previously determined that section 626.556 does not create a private cause of action for violation of its reporting requirements or create a duty which could be enforced through a common-law negligence action." *Id.* at 641. *See also* Doc. 303 and the cases cited therein.

"private reproof, public reproof, or disfellowship."  (Doc. 22 at ¶¶ 20-27.)  Plaintiffs

misrepresent Defendants' beliefs.  Plaintiffs' mother testified that no one ever told

her she should not call law enforcement:

> Q.  ….. [D]id you understand you could go to the authorities if you wanted to?
>
> A.  Yeah.  He [a congregation elder] didn't tell me I couldn't…. And I should have done it.
>
> ….
>
> Q.  Were you permitted to tell people about [the abuse]?
>
> A.  I could have, but I didn't.
>
> Q.  Okay. So you understood that you could, you could have gone to the authorities, or you could have told people about it, but you didn't.
>
> A.  Yes.
>
> Q.  You chose not to.
>
> A.  I chose not to.
>
> Q.  Okay.
>
> A.  It was a mistake.

(Ex. 1, Depo. Gibson at 65:6-13, 66:8-18.)

In any case, a church's beliefs and teachings do not create the kind of custodial

control necessary for a "special relationship" to exist.  A "religious belief … does

not create a civil duty."  *Roman Catholic Bishop v. Superior Court*, 42 Cal. App. 4th

1556, 1568 (1996).  A church has "no … civil duty based upon its religious tenets."

*Id*.  Moreover, the First Amendment prohibits courts from interpreting church

doctrine and imposing duties based on that doctrine.  Civil courts cannot "engage in

the forbidden process of interpreting and weighing church doctrine." *Presbyterian Church v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 451 (1969) Such a process, the United States Supreme Court has held, "can play no role in any . . . judicial proceedings" because it unconstitutionally "inject[s] the civil courts into substantive ecclesiastical matters." *Id.* at 450-51.

Likewise, the trust and confidence parishioners might place in those in authority in a church because of their religious devotion does not create a special relationship or a legally enforceable duty. In *Roman Catholic Bishop*, the plaintiff alleged she trusted the priest who abused her because the church had placed him in "a unique position of trust and confidence" that gave him an "aura of spiritual power and authority." *Roman Catholic Bishop*, 42 Cal. App. 4th at 1567-68. The court held that such things "do[] not create a civil duty." *Id*. 1568.

Similarly, in *Langford v. Roman Catholic Diocese of Brooklyn*, 677 N.Y.S.2d 436 (Sup. Ct. 1998), the plaintiff argued she was "vulnerable" and "dependent" on her priest because of her religious devotion. "In order to consider the validity of plaintiff's claims of dependency and vulnerability," the court held, "the jury would have to weigh and evaluate, *inter alia,* the legitimacy of plaintiff's beliefs, the tenets of the faith insofar as they reflect upon a priest's ability to act as God's emissary and the nature of the healing powers of the church." *Id.* at 439. But "[t]o instruct a jury

on such matters is to venture into forbidden ecclesiastical terrain." *Id.* (footnotes omitted).

In short, the First Amendment prohibits a court from imposing a legal duty on a church based on its teachings or a parishioner's alleged devotion to those teachings. Plaintiffs cannot defeat summary judgment here by alleging they did not report the abuse to authorities or take other action because of their (false) assertions about Jehovah's Witnesses' doctrine or their religious devotion to that doctrine.

Furthermore, and beyond these constitutional constraints, Plaintiffs' claims fail because the common law simply does not impose a duty based on such allegations. In *Bryan R. v. Watchtower Bible & Tract Soc'y*, 738 A.2d 839 (Me. 1999), the plaintiff alleged he was sexually abused by Larry Baker, "an adult member of his church." *Id.* at 842. The plaintiff alleged that "[t]he elders of the Augusta congregation knew that Baker had molested" another child in the congregation. *Id.* As a result, the elders had "demoted" Baker, but "did not alert the members of the church to Baker's misdeeds" and "[e]ventually, Baker was allowed by the defendants to resume activities as an ordinary member of the church." *Id.* Bryan "allege[d] that Baker was able to earn his trust and confidence because the church placed him in a position of leadership and respect." *Id.* "Bryan was molested by Baker from 1989 through 1992 while Bryan was a teenager and lived next door to Baker. He allege[d] that his stepfather, who was aware of Baker's history,

nonetheless allowed Baker to spend time alone with Bryan at his home." *Id*.  As

summarized by the court:

> The crux of Bryan's claim is that the church, because of an alleged
> special relationship with its members, has a duty to protect its members
> from each other, at least when the church and its agents are aware of a
> potential danger posed by a member.  Because the church elders knew
> of Baker's propensity to abuse children, Bryan argues they had an
> independent duty to protect him from Baker.

*Id*. at 843-44.

The court rejected that argument.   "The allegation that Bryan placed

'substantial trust and confidence' in the elders of the church and trusted them 'to

protect him and guide him' [did] not set forth the factual foundations for a special

responsibility on the part of the church." *Id*. at 847.  "The creation of an amorphous

common law duty on the part of a church or other voluntary organization requiring

it to protect its members from each other would give rise to both unlimited liability

and liability out of all proportion to culpability." *Id*. (quotation marks omitted).

In *Doe v. Corp. of the President of The Church of Jesus Christ of Latter-day

Saints*, 98 P.3d 429 (Utah App. 2004), the plaintiffs claimed sexual abuse by another

church member, George Tilson.  The plaintiffs alleged that the church had "received

several complaints from its members that Tilson was sexually abusing children

within his ward." *Id*. at 460.  Tilson allegedly abused Jane and John Doe after

enticing them into his home.  The trial court granted the church's motion to dismiss,

and the court of appeals affirmed, explaining that, absent a special relationship, the

church had no duty to protect the plaintiffs or control Tilson.  A special relationship is based on "custody and control."  *Id*. at 431.  And the plaintiffs had "not alleged any facts demonstrating that [the church] had custody and control over Tilson at the time he sexually abused" them.  *Id*.  The plaintiffs did not allege "that the abuse occurred on [church] property, during a [church] sponsored activity, or in connection with Tilson's position as a High Priest or scout leader."  *Id*. at 432.  Plaintiffs argued that the church had the power to excommunicate Tilson and to revoke his title as a high priest.  But "these facts alone are insufficient to establish that [the church] had custody and control over Tilson."  *Id.*  Therefore, the court concluded that "no special relationship existed between [the church] and Tilson at the time Plaintiffs were sexually abused."  *Id*.

Churches do, of course, have a special relationship with their volunteers and with the children entrusted to those volunteers during church-sponsored events.  For example, in *Conti*, the court held the Congregation could be held liable for abuse that occurred during "field service," a Congregation-sponsored activity that Kendrick and Conti participated in together.  *Conti*, 235 Cal. App. 4th at 1217.  Such liability was based on the Congregation's failure to properly supervise a known child molester *while he participated in a Congregation-sponsored activity*.  But the court rejected liability for abuse that occurred outside of Congregation-sponsored field

service, and the court specifically refused to impose a duty to warn. *Id*. The court

reasoned:

> While it is readily foreseeable that someone who has molested a child
> may do so again, the burden the duty to warn would create and the
> adverse social consequences the duty would produce outweigh its
> imposition. The burden would be considerable because the precedent
> could require a church to intervene whenever it has reason to believe
> that a congregation member is capable of doing harm, and the scope of
> that duty could not be limited with any precision. For example, would
> the duty to warn be triggered by an accusation, or only an admission,
> of misconduct? Would one warning be sufficient, or would continuous
> warnings be required to ensure that new congregation members are
> alerted to the danger? Child molestation is a particularly heinous evil,
> but which other potential harms would the church have a duty to avert?
> Would the duty be limited to crimes and, if so, which ones?

*Id*. at 1228.

Here, the undisputed material facts demonstrate none of Plaintiffs' alleged

abuse occurred during a church-sponsored event or on Defendants' property. (*See*

SUF ¶¶ 5-10.) Instead, Plaintiffs have produced vague evidence of "rumors" about

Hain. A duty to warn in this case would conceivably impose upon a congregation a

duty to announce such rumors, perhaps repeatedly. No court has imposed such a

duty on a church or any other organization. And imposing such a duty based on

*rumors* would be problematic. How would a church or other organization protect

itself from liability for defamation if the rumors turned out to be false?

**II.     The Court should grant summary judgment in Defendants' favor on
         Plaintiffs' negligence claim because the alleged abuse did not occur on
         Defendants' premises or during religious activities Defendants**

**controlled, and there is no evidence the abuse arose out of the prosecution
of any Congregation-related tasks.**

Even assuming that agency gave rise to a duty to control Plaintiffs' abusers—
and it did not—any duty owed would be limited to activities that occurred on
Defendants' premises or during religious activities Defendants controlled.  *See*
Restatement (Second) of Agency, § 213 (2nd 2010).  Here, all alleged acts of abuse
took place in private homes, outside of any Congregation-controlled religious
activity or context—there are no allegations that abuse occurred on Hardin
Congregation property, much less on property owned or controlled by the
Defendants.  (*See* SUF ¶ 9; Doc. 22 at ¶ 34.)  The only connection the Plaintiffs and
their alleged abusers had with the Hardin Congregation was the fact they were
members thereof.

Simply put, a principal's duty to control its agent is limited to the scope of
agency.  *See Maguire v. State*, 254 Mont. 178, 182-183, 835 P.2d 755, 758 (1992)
(holding master not liable for a servant's intentional acts that occur outside the
course and scope of agency).  To the extent Plaintiffs will argue Defendants had
respondeat superior liability for the alleged abuse, there is no evidence that these
alleged acts of abuse "arose out of and [were] committed in prosecution of the task
the servant was performing for his master." *L.B. v. United States*, ¶ 11.  In *L.B.*, the
Montana Supreme Court, on a certified question from the Ninth Circuit, ultimately
concluded the government could be liable for a BIA police officer's sexual assault

to the extent it was incidental to the officer's authorized act—i.e., an investigation under the authority he had as a police officer. *Id*. at ¶ 19. There, the police officer in question was on duty and investigating a DUI when he threatened to charge L.B. with a criminal offense in order to obtain her consent for sexual intercourse. *See id*. at ¶¶ 18-19. For those reasons, the Court concluded it was possible for "a trier of fact to conclude that Officer Bullcoming's wrongful conduct was predicated upon and incident to his employment as a BIA officer." *Id*. at ¶ 19.

Here, unlike *L.B.*, there are no alleged acts of abuse that occurred incident to any agency/employment the abusers may have had with the Hardin Congregation, let alone with the Defendants. However, even if Plaintiffs' abusers, like the police officer in *L.B.*, used their authority as agents of Defendants during the prosecution of some religious activity—and they did not and there are no such allegations or evidence suggesting they did—then this Court's subsequent order dated August 8, 2023, in *L.B.* is instructive (Case 1:18-cv-000074-SPW, Doc 149). This Court held that because the police officer's actions were based solely on serving his personal interests, summary disposition was appropriate. *L.B. v. United States*, No. CV 18-74-BLG-SPW, 2023 U.S. Dist. LEXIS 138238, at *12-13 (D. Mont. Aug. 8, 2023). Here, like *L.B.*, Plaintiffs' abusers were serving their own personal interests when they abused Plaintiffs, not for any religious purpose. Further, the unauthorized acts were not incidental to the performance of an authorized act. *See Kornec v. Mike*

*Horse Mining & Milling Co.,* 180 P.2d 252, 256 (Mont. 1947).  Even if Plaintiffs' abusers were agents of Defendants, the tortious conduct occurred outside the scope of any agency relationship.  *See Brenden v. City of Billings*, 2020 MT 72, ¶ 14, 470 P.3d 168, 173.

Critically, churches have no control over family relationships, sleepovers, or other activities that occur because of friendships that arise from shared religious faith, even if the perpetrator is a church employee or agent.  In *R.A. v. First Church of Christ*, 748 A.2d 692 (Pa. Sup. Ct. 2000), a minister's daughter "struck up a friendship with seven-year-old plaintiff R.A., who lived with her parents … on the same street as the Chick [the minister's] family."  *Id*. at 695.  "R.A. was often at the Chick house and sometimes attended First Church with her mother or the Chick family" and "also participated in other First Church activities, including an elementary level after school program …."  *Id*.  Chick abused R.A. "at Chick's house except on one occasion when some of the abuse may have occurred at R.A.'s own home," but "[n]one of the abuse occurred on First Church's premises."  *Id*.  The court rejected R.A.'s claims, explaining that "the Church can have no liability … for failing to exercise reasonable care to control Chick … because none of the harm was caused on Church premises or on premises to which he gained admittance only as a Church employee."  *Id*. at 699.  Chick's home was "owned by him and his wife and they were the only parties who had control thereof."  *Id*.

In *Lewis v. Bellows Falls Congregation of Jehovah's Witnesses*, 95 F. Supp. 3d 762 (D. Vt. 2015), plaintiff Lewis alleged that True, an elder in the congregation, "molested her on his personal property, not on property belonging to the Congregation or Watchtower." *Id*. at 768. Lewis argued that "the Congregation had a duty to protect her from True because it was aware of True's prior abuse of minor congregants," but as the court explained, "mere foreseeability is insufficient to establish a duty to control if the servant is not on the master's premises or using a chattel of the master." *Id*. Thus, the court concluded there was "no 'special relationship' between the Congregation and True giving rise to a duty when he [was] not on the Congregation's premises or carrying out the Congregation's business, and therefore the Congregation had no duty to control True when he was babysitting a child outside Congregation activities." *Id*.

In *Roman Catholic Bishop*, a church faced no liability on summary judgment where the 15-year-old plaintiff was sexually abused by her parish priest because there were "no specific allegations or facts the church somehow placed [the victim] in [the priest's] actual custody or control." *Roman Catholic Bishop*, 42 Cal. App. 4th at 1567. "[N]early all of the contact [the victim] had with [the priest] occurred when [the priest] took [her] from her home to various public places and hotels." *Id*.

Here, Defendants obviously did not place Plaintiffs in their father's custody, and there is no evidence that Defendants placed Plaintiffs in Hain's custody. Hain

abused them at his home where Plaintiffs went with their parents' permission for a private event.  Thus, the fact that Hain was allegedly a ministerial servant makes no difference.   He abused Tracy and Camillia in his own home, not during a Congregation-sponsored activity or in connection with any responsibilities he held as a ministerial servant in the Hardin Congregation.  (*See* SUF ¶¶ 6-10.)

Defendants have been unable to find any case where a court has ever held a church (or any other private organization) has a duty to prevent parent-child abuse. That abuse "arose out of the parental relationship between [father] and the plaintiff[s] [and] was not a product of the parties' relationship with" Jehovah's Witnesses, as evidenced by the fact that Bruce began molesting his daughters long before they became Jehovah's Witnesses.  *See Aaronoff v. Martinez-Senftner*, 136 Cal. App. 4th 910, 914 (2006).  A third-party church or employer "would have neither the ability nor responsibility to 'take reasonable steps, and to implement reasonable safeguards,' to prevent the [employee] from assaulting his or her own child, *even if the employer had knowledge of prior assaults*."  *Id*. at 922 (emphasis added).  *See also Doe v. Corp. of the Catholic Bishop*, 957 F. Supp. 2d 1225, 1226, 1232-1233 (E.D. Wash. 2013) (stepfather's sexual abuse of his stepchildren had nothing to do with the Church, despite his honorific title of "High Priest," because the Church did not "provide him the means to gain access to the victims").

In summary, the undisputed material facts demonstrate Plaintiffs were never abused while in Defendants' custody. Accordingly, Defendants owed them no duty. "[I]n order for there to be a genuine issue of material fact in a negligence case, there must be a duty imposed on the defendant …." *Peterson v. Eichhorn*, 2008 MT 250, ¶ 24, 189 P.3d 615, 621. In this case, Defendants did not owe a duty and, therefore, there are no disputed issues of material fact. Defendants are entitled to summary judgment.

## III.  Because Plaintiffs' causes of action for negligence and negligence per se fail as a matter of law, their claim for punitive damages similarly fails.

It is well established in Montana that, if there can be no award of compensatory damages, a claim for punitive damages must also fail. *Jacobson v. Allstate Ins. Co.*, 2009 MT 248, ¶ 67, 351 Mont. 464, 215 P.3d 649 (citing *Stipe v. First Interstate Bank—Polson*, 2008 MT 239, ¶ 23, 344 Mont. 435, 188 P.3d 1063). Because Defendants are entitled to summary judgment as to Plaintiffs' first cause of action for negligence as discussed here, and summary judgment as to Plaintiffs' second cause of action for negligence per se for the reasons stated in their Motion for Partial Summary Judgment (Doc. 302), this forecloses Plaintiffs' ability to claim compensatory damages, which also forecloses their ability to claim punitive damages as a matter of law.

## <u>CONCLUSION</u>

As discussed herein, the undisputed material facts demonstrate that the circumstances of Plaintiffs' alleged abuse lacked any religious connection, as all alleged instances of abuse arose from the parent-child or family friend-child relationship, with no connection to property owned by Defendants or the Congregation, and never during any religious-sanctioned activity.   Because Defendants do not, as a matter of law, have a general duty of care to protect congregants from each other and no other apparent exception exists, Defendants are entitled to judgment as a matter of law on Plaintiffs' cause of action for general negligence.   Since there is no avenue for an award of compensatory damages, Plaintiffs' claim for punitive damages must also fail as a matter of law.   Defendants are therefore entitled to dismissal from this cause of action with prejudice, and they respectfully request such relief.

**DATED** this 12th day of April, 2024.

BROWN LAW FIRM, P.C.

By:   _/s/ Jon A. Wilson_____
JON A. WILSON
BRETT C. JENSEN
MICHAEL P. SARABIA
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

MOULTON BELLINGHAM PC


By:   */s/ Jordan W. FitzGerald*
      GERRY P. FAGAN
      CHRISTOPHER T. SWEENEY
      JORDAN W. FITZGERALD
*Attorneys for Defendant Watch Tower Bible*
*and Tract Society of Pennsylvania*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(d)(2)(E), the undersigned hereby certify this brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double-spaced, with left, right, top, and bottom margins of one inch; and that the word count calculated by Microsoft Word is 5,650 words, excluding the Table of Contents, Table of Authorities, Certificate of Compliance, and Certificate of Service.

**DATED** this 12th day of April, 2024.

BROWN LAW FIRM, P.C.


By:   _/s/ Jon A. Wilson_____
JON A. WILSON
BRETT C. JENSEN
MICHAEL P. SARABIA
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*


MOULTON BELLINGHAM PC


By:   _/s/ Jordan W. FitzGerald_____
GERRY P. FAGAN
CHRISTOPHER T. SWEENEY
JORDAN W. FITZGERALD
*Attorneys for Defendant Watch Tower Bible and Tract Society of Pennsylvania*