| | |
|---|---|
| Robert L. Stepans | Matthew L. Merrill (appearing *pro hac vice*) |
| Ryan R. Shaffer | Merrill Law, LLC |
| James C. Murnion | 1401 Delgany Street, #404 |
| Victoria K.M. Gannon | Denver, CO 80202 |
| Meyer, Shaffer & Stepans, PLLP | Tel: (303) 947-4453 |
| 430 Ryman Street | matthew@merrillwaterlaw.com |
| Missoula, MT 59802 | |
| Tel: (406) 543-6929 | |
| Fax: (406) 721-1799 | |
| rob@mss-lawfirm.com | |
| ryan@mss-lawfirm.com | |
| james@mss-lawfirm.com | |
| katy@mss-lawfirm.com | |

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | Case No. CV-20-52-BLG-SPW |
| Plaintiffs, | **PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT RE: HARDIN ELDERS ARE AGENTS OF A JOINT ENTERPRISE BETWEEN WTNY AND WTPA** |
| vs. | |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA., | |
| Defendants, | |

Plaintiffs submit this brief in support of their Motion for Partial Summary Judgment re: Hardin Elders are Agents of a Joint Enterprise Between WTNY and WTPA and respectfully request the Court establish as a matter of law the agency

relationship between this enterprise and all Hardin Congregation elders during the relevant time period of 1973 to 1992 ("Hardin Elders").[1]

## INTRODUCTION

Between 1973 and 1992, the Jehovah's Witnesses' Organization (the "Organization"), including both corporate Defendants ("WTNY" and "WTPA") operated in the United States under the control of one group of men. There is no evidence to permit a finder of fact to determine that this group of men was acting on behalf of one entity to the exclusion of the other at any given time. To the contrary, the evidence establishes that their conduct was so intertwined and overlapping as to make any asserted distinctions between the corporate Defendants a mirage. They used the same offices, shared the same legal department, and shared funds to accomplish shared purposes.

The Defendants will never admit that WTNY and WTPA worked in concert and as a single entity for the purpose of appointing and controlling local elders. They will rely on often repeated, conclusory assertions of counsel like, "WTNY is not the Governing Body" and "WTNY is a corporation organized under the laws of

---

[1] Plaintiffs' have also filed a Motion for Partial Summary Judgment seeking an order that the Hardin Elders were agents of WTNY. Montana law recognizes that a person can act as an agent of more than one principal at the same time. *H-D Irrigating, Inc. v. Kimble Properties, Inc.*, 8 P.3d 95, 106 (Mont. 2000). In this case, while the Hardin Elders were appointed and controlled by WTNY, the evidence also establishes that there was really no distinction between WTNY and WTPA and that they were acting as a joint venture.

**Plaintiffs' Brief in Support of Motion for Partial Summary Judgment Re:
Hardin Elders Are Agents of a Joint Enterprise Between WTNY and WTPA**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
2

New York." While perhaps technically true, these conclusory statements ignore reality: it was one group of men making all of the decisions and performing all the work related to the appointment and control of the Hardin Elders.

## FACTUAL BACKGROUND

At all times relevant the Organization used two corporate entities (WTNY and WTPA) to accomplish their shared purpose. Plaintiffs' Statement of Undisputed Facts, ¶¶ 1a–b (hereinafter, "SUF"). Included in this work was appointing and overseeing elders who operated the Organization's local congregations. SUF, ¶¶ 6a–d, 7a–e. The corporate Defendants were controlled by one group of men, they operated from the same offices, they had one legal department, and they shared funds to accomplish their common purpose. SUF ¶¶, 1a, 1b, 2a, 2b, 3a, 4a–c, 5a–c. They were collectively and without distinction referred to as the "Society". SUF, ¶ 8a–b.

WTNY and WTPA worked in concert to appoint local elders who then oversaw the Organization's local congregations. SUF, ¶¶ 6a–d. While WTNY was ultimately on the paperwork for the appointment of local elders, WTPA played critical roles in the process, including sending out Circuit Overseers who assisted in the appointment process and providing WTNY operating funds. SUF, ¶¶ 5a–c, 6c. WTNY and WTPA then worked in concert to compile, publish, and disseminate the written materials that the Hardin Elders relied on to understand and

**Plaintiffs' Brief in Support of Motion for Partial Summary Judgment Re:**
**Hardin Elders Are Agents of a Joint Enterprise Between WTNY and WTPA**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
3

perform their duties, including responding to allegations of child sex abuse.  SUF, ¶¶ 7a–c.  The imprimatur of both corporations is found on the written material that the Hardin Elders relied on to understand and perform their duties.  *Id*.  WTPA's Circuit Overseers would then routinely visit the Hardin Congregation to assist with oversight of the Hardin Elders.  SUF ¶ 6a.  WTPA and WTNY worked in concert to hold elder training schools.  SUF ¶ 7d.  WTNY's Service and Legal Departments would provide oversight and answer questions that the Hardin Elders would have related to handling reports of child sex abuse.  SUF ¶ 7e.

## SUMMARY JUDGMENT STANDARD

A Plaintiff may move for summary judgment on part of its claim: "A party claiming relief may move…for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(a).  Partial summary judgment is "intended to avoid a useless trial of facts and issues over which there was really never any controversy and which would tend to confuse and complicate a lawsuit." *In re Lau Capital Funding, Inc.*, 321 B.R. 287, 295 (Bankr. C.D. Cal. 2005); § 2737 Cases Not Fully Adjudicated on Motion, 10B Fed. Prac. & Proc. Civ. § 2737 (4th ed.).  The existence of an agency relationship is one such issue.  *See, e.g.*, g *Vinion v. Amgen Inc.*, No. CV 03-202-M-DWM, 2005 WL 6763338, at *6 (D. Mont. Nov. 9, 2005), *aff'd*, 272 Fed. Appx. 582 (9th Cir. 2008)(unpublished) (deciding agency issue on summary judgment); *see also Read v. Teton Springs Golf & Casting Club, LLC*,

**Plaintiffs' Brief in Support of Motion for Partial Summary Judgment Re:
Hardin Elders Are Agents of a Joint Enterprise Between WTNY and WTPA**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
4

No. CV 08-CV-00099, 2010 WL 11531376, at *7–9 (D. Idaho Aug. 13, 2010), *report and recommendation adopted*, No. CV08-099-E-EJL-REB, 2010 WL 11531377 (D. Idaho Sept. 28, 2010) (granting in part motion for partial summary judgment regarding agency).

"Summary judgment may properly be granted only when no genuine issue of material fact exists and the moving party is clearly entitled to prevail as a matter of law." *May Dept. Store v. Graphic Process Co.*, 637 F.2d 1211, 1214 (9th Cir. 1980) (citing *Real v. Driscoll Strawberry Assocs.*, 603 F.2d 748, 753 (9th Cir. 1979)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Even if the Court "does not grant all the relief requested by the motion, it may enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g). "[T]he primary purpose of the rule is to salvage some results from the effort involved in the denial of a motion for summary judgment." § 2737 Cases Not Fully Adjudicated on Motion, 10B Fed. Prac. & Proc. Civ. § 2737 (4th ed.) (citing cases).

///

**Plaintiffs' Brief in Support of Motion for Partial Summary Judgment Re:
Hardin Elders Are Agents of a Joint Enterprise Between WTNY and WTPA**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
5

## ARGUMENT

The undisputed facts establish that WTNY and WTPA were operating a joint enterprise to operate local congregations in the United States, including the appointment and control of local elders who oversaw those congregations. Accordingly, the Hardin Elders were the agents of both WTNY and WTPA.

### 1. Defendants' Joint Enterprise

"'Broadly speaking, a joint adventure may be characterized as a quasi-partnership in a single adventure undertaken for mutual gain. The terms joint adventure and joint venture are synonymous. [] If the venture be for pleasure rather than profit, it is sometimes called a joint enterprise." *Murphy v. Redland*, 583 P.2d 1049, 1053 (Mont. 1978) (quoting *Bradbury v. Nagelhus, et al.*, 319 P.2d 503, 509 (Mont. 1957)). "As between themselves, the members of a joint adventure are principals for themselves and as to the other members, are agents. Thus, they undertake a dual status, at the same time, that of principal and that of agent." *Id.* (citing 48 C.J.S. Joint Adventures 5c, 827). "To qualify as joint venturers, the parties must have: (1) an express or implied agreement or contract creating a joint venture; (2) a common purpose; (3) community of interest; and (4) an equal right

**Plaintiffs' Brief in Support of Motion for Partial Summary Judgment Re:
Hardin Elders Are Agents of a Joint Enterprise Between WTNY and WTPA**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
6

to control the venture. *Pearson v. McPhillips*, 381 P.3d 579, 582 (Mont. 2016) (citing *Brookins v. Mote*, 292 P.3d 347, 357 (Mont. 2012)).[2]

### a. An implied agreement can be inferred from Defendants' conduct.

"Under the first element, the parties' intent is crucial to determining whether a joint venture exists." *Id.* (citing *Rae v. Cameron*, 114 P.2d 1060, 1064 (Mont. 1941)). Whether two parties intended to enter a joint enterprise is analyzed "in accordance with the ordinary rules governing the interpretation and construction of contracts." *Id.* (quoting *Rae*, 114 P.2d at 1064). An express agreement to enter a joint enterprise is not required, and it "may be inferred from the conduct of the parties or from facts and circumstances which make it appear that a joint enterprise was in fact entered into." *Rae*, 114 P.2d at 1064; *see also Larson v. Robinson,* 136 F. Supp. 469, 471 (D. Mont. 1955). "The consideration for such an agreement may be a promise, express or implied, to contribute capital or labor to the undertaking." *Larson,* 136 F. Supp. at 471 (citing cases).

---

[2] Under the related doctrine of "single business enterprise", which likewise holds closely related corporations liable for each other's actions, courts consider "common ownership, common directors and officers, a disregard for corporate formalities, shared employees, shared offices and resources, the comingling of assets, joint accounts, centralized accounting and records, nonexistent records, integrated transactions, undocumented or not-at-arms-length transactions, similar or identical trade names, and excessive fragmentation of a single enterprise into separate entities." 50 A.L.R.7th Art. 2 (Originally published in 2020) (citing myriad cases). Montana has yet to reject or accept this doctrine.

**Plaintiffs' Brief in Support of Motion for Partial Summary Judgment Re:
Hardin Elders Are Agents of a Joint Enterprise Between WTNY and WTPA**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
7

Here, Defendants' intent to form a joint enterprise can be inferred from their conduct. For example:

- WTNY and WTPA worked in concert to publish, print, and distribute written policies and procedures to local congregation elders. SUF, ¶ 7b.

- WTPA used office space owned by WTNY without any written agreement, and WTNY paid the bills. SUF, ¶¶ 3a, 5a. As WTPA testified at its deposition: "the directors from Pennsylvania and the directors from New York never got together to work out an agreement, oral or written in that regard. They have the same purpose, the same function, and so there was never a need to do that." SUF, ¶ 5a.

- WTNY and WTPA shared the same legal department in New York. SUF, ¶¶ 4a–c.

- WTPA sent Circuit Overseers to visit all US local congregations, while WTNY paid them. SUF, ¶¶ 5a, b.

Furthermore, WTPA routinely contributed capital to the joint venture by providing significant funds to WTNY for its operations. SUF, ¶¶ 5b, c. It did so without an arms-length agreement. *Id*. This is evidence of consideration to support the joint venture.

**Plaintiffs' Brief in Support of Motion for Partial Summary Judgment Re:**
**Hardin Elders Are Agents of a Joint Enterprise Between WTNY and WTPA**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
8

### b. Defendants had a common purpose.

The common purpose of the joint venture was to "spread the good word," which meant to promote and expand the Jehovah's Witnesses' religion within the United States, and to collect donations. WTNY and WTPA's charters are similar and were set up to support the same goal of promoting Bible education throughout the world: "The charters of these other corporations are similar to that of the Pennsylvania corporation." SUF, ¶ 1a. WTNY and WTPA worked together and cooperated fully in order to accomplish their common purpose. SUF, ¶ 1b.

### c. Defendants had a community of interest.

The "community of interest" element of a joint venture is satisfied where each participant supplied different, necessary components of the joint venture. *Weisner v. BBD Partn.*, 845 P.2d 120, 123 (Mont. 1993). In *Weisner,* a "community of interest" was established where each participant played a vital role in the expertise and capital necessary for the venture. *Id*.

Here, the undisputed evidence is overwhelming that WTPA and WTNY both contributed to the necessary components of appointing, training, and overseeing of the Hardin Elders:

- ➢ They each played a role in the appointment of the Hardin Elders, with WTPA being the entity that sent the Circuit Overseer to Hardin who then

**Plaintiffs' Brief in Support of Motion for Partial Summary Judgment Re:**
**Hardin Elders Are Agents of a Joint Enterprise Between WTNY and WTPA**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
9

communicated the Congregation's recommendations to WTNY and Governing Body.  SUF, ¶¶ 6a–d.

- They each played a role in the training and oversight of the Hardin Elders, including implementation of the policies for handling reports of child sex abuse.  SUF, ¶¶ 7a–e.
- WTPA provided WTNY operating capital.  SUF, ¶¶ 5a–c.
- WTNY provided the Legal Department, Service Department, and offices used by WTNY.  SUF, ¶¶ 3a, 4a–c.

While WTNY's signature was ultimately on the paperwork appointing the Hardin Elders to their positions, WTPA made important contributions to the appointment process and training of those elders.  The undisputed evidence establishes a community of interest.

### d.  Defendants had an equal right to control the enterprise.

As to the fourth element "Although management may be delegated to one joint venturer while the others retain the right of control, [] it must be an equal right of control."  *Weingart v. C & W Taylor Partn.*, 809 P.2d 576, 579 (Mont. 1991) (citing *Murphy*, 583 P.2d 1049.  Likewise, "one or more members of the joint adventure may entrust certain performances of the enterprise to one or more of the other members."  *Murphy*, 583 P.2d at 1053 (citing 48 C.J.S. Joint Adventures 5c, 828).

**Plaintiffs' Brief in Support of Motion for Partial Summary Judgment Re:
Hardin Elders Are Agents of a Joint Enterprise Between WTNY and WTPA**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
10

The same group of men, i.e. the Organization's Governing Body, controlled both corporate Defendants throughout the relevant time period.  SUF, ¶ 2a.  These men used WTPA to control the venture through capital contributions and permitting WTNY to use WTPA's copyrighted materials to train the Hardin Elders.  SUF, ¶¶ 5a–c, 7b.  These men used WTNY to control the venture through use of WTNY's offices and Departments.  SUF, ¶¶ 3a, 4a–c, 7e.  With respect to control of elder-agents, the two corporations performed overlapping functions:

- ➢ The boards of both corporations, acting as the Governing Body, made the decision about appointments, choosing WTNY to communicate them.  SUF, ¶¶ 6a–d.
- ➢ Both of them created manuals that directed elders how to respond to allegations of serious sin.  SUF, ¶ 7a–b.
- ➢ Both were involved in conducting the elder trainings known as Kingdom Ministry School.  SUF, ¶ 7c–d.
- ➢ Both of them contributed to supervising and directing the elders:
  - WTPA used circuit overseers appointed by the Governing Body through WTNY.  SUF, ¶ 6a.
  - WTNY had the Service Department and Legal Department that responded to elder inquiries and provided directions on specific questions.  SUF, ¶ 7e.

**Plaintiffs' Brief in Support of Motion for Partial Summary Judgment Re:
Hardin Elders Are Agents of a Joint Enterprise Between WTNY and WTPA**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
11

The Governing Body had equal ability to control individual aspects of the agency through either corporation by deciding to wear either the WTNY or WTPA corporate hat in taking action.

Plaintiffs asked WTNY and WTPA to identify all evidence (or types of evidence) in their possession that the Court or a jury could refer to which would indicate which entity these men were acting on behalf of at any given time. Neither WTNY nor WTPA could identify any evidence that the Court or a jury could refer to for that purpose. SUF, ¶ 2b. Accordingly, in many instances there is no way to determine which entity the Governing Body was acting on behalf of. The division of individual duties was arbitrary and subservient to the overall advancement of the common goal and communal interest. As such, the undisputed facts support a finding that WTPA and WTNY were operating a joint enterprise during all times relevant to this case.

## 2. Local Hardin Congregation Elders Were Agents of Defendants' Joint Enterprise.

"An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency." MPI2d 10.00 (2003) (citing Mont. Code Ann. § 28-10-101). "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control." *Weingart*, 809 P.2d at 579

**Plaintiffs' Brief in Support of Motion for Partial Summary Judgment Re:**
**Hardin Elders Are Agents of a Joint Enterprise Between WTNY and WTPA**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
12

(citing cases).  "Integral to any agency relationship are the elements of consent and control." *Wolfe v. Schulz Refrigeration*, 614 P.2d 1015, 1018 (Mont. 1979).

"Any person [corporation] may appoint an agent and any person [corporation] may be an agent."  MPI2d 10.01 (citing Mont. Code Ann. § 28-10-104).  "One may be an agent although he/she receives no payment for his/her services."   MPI2d 10.02 (citing Mont. Code Ann. § 28-10-202).  "An agency may be created and an authority may be conferred by a precedent authorization or a subsequent ratification."  Mont. Code Ann. § 28-10-201.  A person can be an agent to more than one principal at a time.  *H-D Irrigating, Inc.*, 8 P.3d at 106.

While Defendant WTNY's signature is on the documents appointing the Hardin Elders to their positions, it was the joint venture between WTNY and WTPA that facilitated the appointment.  SUF, ¶¶ 6a–d.  WTPA provided the funds that permitted WTNY to operate when it was facing a deficit.  SUF, ¶ 5b.  Thus, so long as the Hardin Elders were in their appointed positions, they were in those positions with the consent of the joint enterprise between WTNY and WTPA, as orchestrated by the Governing Body.

Similarly, the joint enterprise controlled the Hardin Elders by providing them written materials setting forth their duties and responsibilities as elders, including handling reports of child sexual abuse.  SUF, ¶¶ 7a–c.  These written materials were created and distributed by WTNY and WTPA acting in concert,

**Plaintiffs' Brief in Support of Motion for Partial Summary Judgment Re:
Hardin Elders Are Agents of a Joint Enterprise Between WTNY and WTPA**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
13

with one publishing and the other printing, or one holding copyright and the other publishing and printing. *Id*. WTNY and WTPA worked in concert to arrange and pay for the Kingdom Ministry Schools that trained them in such duties and responsibilities using Defendants' written materials. SUF, ¶ 7d. The Governing Body used WTNY to appoint and pay Circuit Overseers who were sent by WTPA to oversee activities at the Hardin Congregation, including the appointment of local elders and the provision of assistance in understanding their duties. SUF, ¶¶ 6c, 7d. WTNY provided the Hardin Elders legal advice and guidance if they ever had a question about how to apply and enforce the Organization's policies regarding child sexual abuse. SUF, ¶ 7e.

In *Moses v. Diocese of Colorado,* the jury found an agency relationship between a priest and the Diocese defendant.[3] 863 P.2d 310, 323 (Colo. 1993). In upholding the jury's agency determination, the court noted "the structure of the Episcopal Church is basically hierarchal." *Id.* at 325. According to that structure, the Diocese, acting through its Bishop, hired the priest. *Id.* Likewise, the Diocese controlled the disciplining of priests, their training, and had printed regulations the priests were to follow. *Id.* at 327. "All of these facts indicate that a priest is not independent of the Diocese but is controlled by the Diocese and the bishop." *Id.*

---

[3] Plaintiffs' counsel has been unable to locate any Montana case, state or federal, analyzing whether an agency relationship existed between clergy and a religious organization.

Plaintiffs' Brief in Support of Motion for Partial Summary Judgment Re:
Hardin Elders Are Agents of a Joint Enterprise Between WTNY and WTPA
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
14

Here, like in *Moses* where the Diocese hired its agent priest, the joint enterprise used WTNY to appoint the Hardin Elders. Like in *Moses* where the Diocese controlled the disciplining of priests, here the joint enterprise used WTNY to control the removal of elders. The joint enterprise used WTNY and WTPA to provide and oversee the training of the Hardin Elders, just like the Diocese in *Moses*. Finally, like in *Moses*, where the Diocese provided printed regulations to control the priest's conduct, here, the joint/single enterprise used both WTNY and WTPA to provide the Hardin Elders its printed regulations to control how they handled reports of child sexual abuse. As such, *Moses* is persuasive authority that the Hardin Elders were the agents of the joint enterprise between WTNY and WTPA.

## CONCLUSION

While the undisputed facts establish that the Hardin Elders were agents of WTNY, the undisputed facts also show that WTPA was so involved and entwined in the process that the two corporate Defendants were acting as a joint venture that appointed, controlled, and oversaw the Hardin Elders during the relevant time period. Accordingly, Plaintiffs respectfully request an order ruling as a matter of law that the Hardin Elders were acting as agents of a joint venture between WTNY and WTPA at all times relevant to this case.

///

**Plaintiffs' Brief in Support of Motion for Partial Summary Judgment Re:**
**Hardin Elders Are Agents of a Joint Enterprise Between WTNY and WTPA**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
15

DATED this 12th day of April, 2024.

                                  By: /s/ Ryan Shaffer
                                         Ryan R. Shaffer
                                         MEYER, SHAFFER & STEPANS PLLP

                                  *Attorneys for Plaintiffs*

**Plaintiffs' Brief in Support of Motion for Partial Summary Judgment Re:
Hardin Elders Are Agents of a Joint Enterprise Between WTNY and WTPA**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
16

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(d)(2), Plaintiff hereby certifies that this brief complies with the length requirement for briefs, and that this brief contains 3,244 words, excluding the caption, certificates of service, and compliance, table of contents, and authorities, and exhibit index.

By: /s/ Ryan Shaffer
Ryan R. Shaffer
MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

Pursuant to Local Rule 1.4, this document has been served on all parties via electronic service through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

By: /s/ Ryan Shaffer
Ryan R. Shaffer
MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

**Plaintiffs' Brief in Support of Motion for Partial Summary Judgment Re:
Hardin Elders Are Agents of a Joint Enterprise Between WTNY and WTPA**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
17