*Exhibit Z*

# "Pay Attention to Yourselves

## and to

## All the Flock."—Acts 20:28.

Kingdom Ministry School

Textbook

CAEKAERT/MAPLEY 000626

Published by

WATCHTOWER BIBLE AND TRACT SOCIETY
OF NEW YORK, INC.
Brooklyn, New York, U.S.A.

SEPTEMBER 1977

Made in the United States of America

CAEKAERT/MAPLEY 000627

# Overseers 'Ruling for Justice Itself'

Jehovah, as a wonderful Provider, has provided overseers to "rule as princes for justice itself." (Isa. 32:1, 2) Jehovah God is holy. He requires that all those who worship him be spiritually and morally clean. (1 Pet. 1:14-16) You have a large part in safeguarding the cleanness of the congregation.

Protective care is a basic idea in the word overseer (*e·pi′sko·pos*), which carries also the thought of one who watches over, a guardian, a shepherd of the flock. You have the responsibility to cultivate in the hearts of the brothers a love for what is good and a hatred for what is bad, wicked. (Rom. 12:9) By holding to God's Word and by effectively using the art of teaching, you will be able to help your brothers not only to understand what is right and what is wrong, but also to have an active part in keeping the congregation clean and chaste for public service to Jehovah.

## ALL ELDERS HAVE A RESPONSIBILITY

Not just the elders on the designated judicial committee but all elders are responsible to shepherd the flock, to teach, reprove, reprimand and exhort as necessary. (Titus 1:9-14)

By your teaching, make clear what God requires and encourage faithful obedience to his righteous principles.

At the meetings and in personal conversation help the brothers to appreciate their responsibility to keep the congregation clean.

55

56

> Help them to understand that this is done by—
> Their own personal conduct.
> Resisting temptations.
> Refusing to feed their minds on wrong ideas.
> Parents' properly training and disciplining their children.
> Younger ones' being obedient to parents.
> Refusing to imitate the world and its ways.
> Properly teaching interested persons the Bible's high moral standards.

> If a person is guilty of serious wrongdoing it is wise for him to speak to one or more of the elders. (Jas. 5:16)

> Where one has certain knowledge of wrongdoing that poses a threat of or indicates contamination of the congregation, such a one is obligated to report the matter in order to keep the congregation clean. (Deut. 13:12-14; Num. 15:32-34)

Set a fine example in conduct, attitude and speech, so others can imitate your "faith." (Heb. 13:7)

> Display the traits of a "spiritual man." Do not give way to unclean practices as a "physical man" would. Your example will help your brothers to "have the mind of Christ." (1 Cor. 2:14-16)

Take the initiative to help any in the congregation who may take "some false step"; "try to readjust" him. (Gal. 6:1)

> Encourage good association. Warn the brothers to be on guard against bad association both inside and outside the congregation. (1 Cor. 15:33)

CAEKAERT/MAPLEY 000681

57

Some associated with the congregation do not yet have perceptive powers that have been trained to distinguish right and wrong. (Heb. 5:14) 'Keep a watch over their souls.' You will render an account for them too. (Heb. 13:17)

Deal with your brothers as Jehovah would deal with them. (Eph. 5:1)

Give them direction from his Word, not your opinions. (2 Tim. 4:2)

Be just, kind, humble in all your dealings.

"He has told you, O earthling man, what is good. And what is Jehovah asking back from you but to exercise justice and to love kindness and to be modest in walking with your God?" (Mic. 6:8)

## WHAT IS BAD IN JEHOVAH'S EYES

(As time permits, discuss the following items or those that will be most appropriate.)

What Scriptural evidence is there that Jehovah forbids the following among his clean people? Also, what benefits come to those who obey Jehovah's laws on these matters?

*Manslaughter:* also suicide, which is self-murder. (1 John 3:15; Prov. 6:17)

How could a degree of guilt result from careless driving habits? Careless maintenance of one's automobile? (Compare Deuteronomy 22:8.) Or participation in violent sports?

*Adultery, fornication (porneia):* includes all perverted sex practices and lewd acts, among which

CAEKAERT/MAPLEY 000682

58

are homosexuality, sodomy, lesbianism, bestiality. (1 Cor. 6:9, 10; Rom. 1:24, 26, 27, 32; Lev. 20:10, 13, 15, 16)

*Apostasy:* teaching false doctrines; supporting or promoting false religion and its holidays; interfaith activities. (Deut. 13:13, 15; 2 Cor. 6:14, 15, 17, 18; 2 John 7, 9, 10; Rev. 18:4)

Why could working secularly for a false religious organization put one in a position similar to that of one preaching false doctrine? (2 Cor. 6:14-16)

How would you explain that celebrating a false religious holiday is similar to performing any other act of false worship? (Jer. 7:16-19)

What does the Bible say about: (1) causing divisions and promoting sects? (Rom. 16:17; Titus 3:10, 11) (2) the practice of spiritism? (Deut. 18:9-13; 1 Cor. 10:21, 22; Gal. 5:20) (3) idolatry? (1 Cor. 6:9, 10; 10:14)

Why could idolatry include the possession and use of images and pictures that are used in false religion?

*Drunkenness.* (1 Cor. 5:11; 6:9, 10)

*Stealing, thievery, fraud.* (Lev. 6:2, 4; 1 Cor. 6:9, 10; Eph. 4:28)

*Lying, bearing false witness.* (Prov. 6:16, 19; Col. 3:9; Rev. 22:15)

*Reviling, slander.* (Lev. 19:16; 1 Cor. 6:10)

*Obscene speech.* (Eph. 5:3-5; Col. 3:8)

*Failure to 'abstain from blood.'* (Gen. 9:4; Acts 15: 20, 28, 29)

CAEKAERT/MAPLEY 000683

59

*Greed—gambling, extortion.* (1 Cor. 5:10, 11; 6:10; 1 Tim. 3:8)

*Refusal to provide materially for those of your family.* (1 Tim. 5:8)

*Nonneutral activities.* (Isa. 2:4; John 6:15; 17:16)

*Fits of anger, violence.* (Prov. 22:24, 25; Mal. 2:16; Gal. 5:20)

*Misuse of tobacco and other addictive drugs.* (2 Cor. 7:1; Mark 15:23; Rev. 21:8; 22:15, *Int.*—druggers)

*[handwritten note, right margin: CHILD ABUSE — 11/89 DIST OVERSEER & CIR. ASS. ALWAYS CONTACT THE SOCIETY FIRST WHN DEALING W/CHILD ABUSE.]*

## CAN YOU HELP THE PERSON?

We want to help people if we can.

Some matters may be handled by the elder who hears of the wrongdoing. (Gal. 6:1)

If you feel that your counsel will suffice to restore the individual, it is advisable also to inform the presiding overseer of the matter. There may be other factors involved; the matter may have come up before or there may have been other wrongdoing concerning which he has knowledge.

There are cases that the body of elders is responsible to investigate and, where necessary, appoint a committee to handle. (See Unit 4 [b], page 68.) These include:

Gross sins that have brought the congregation into public disrepute. (Rom. 2:21-24; 1 Cor. 5:1; 2 Cor. 7:11)

Any serious sin that constitutes a clear threat of contaminating the cleanness of the congregation. (1 Cor. 5:6, 9-11; Gal. 5:19-21; 1 Tim. 1:9, 10)

CAEKAERT/MAPLEY 000684

60

> Where an individual is an elder or a ministerial servant and commits a gross wrong, he is morally obligated to inform the body of elders of his being reprehensible.
>
> Such ones should serve with a clean conscience.
> (1 Tim. 3:2, 8, 9; Titus 1:6)

Baptized minors.

When a baptized minor becomes involved in wrongdoing that becomes a threat to the cleanness of the congregation, the committee should meet with such an individual just as they would with any other member of the congregation.

It would be best to meet with the youth and his parents.

> They have the responsibility to raise him and train him.

Try to restore the individual if this is possible.

If efforts bring no response, then disfellowship.

Married people.

If the wrongdoer is the wife, it would be best to meet with her and her husband. He is her head and his efforts to restore her and direct her can be very helpful.

Try to lead the person to repentance.

If there is no response to efforts to bring about repentance, then wrongdoer should be disfellowshiped.

Unbaptized associates.

Even unbaptized ones who have been regularly associating and who by their serious wrongdoing pose

61

a threat to the cleanness of the congregation, thus constituting 'leaven,' should be dealt with in a way similar to that for baptized individuals.

If the individual is a minor, it would be best to meet with the youth and his parents, as outlined above.

Your goal in dealing with unbaptized associates, whether youths or adults, is to help them.

If they are unrepentant and thus are found not to be good associates, a brief announcement to the congregation is made that all should avoid close association with them to protect the congregation where there is a clear threat of contamination.

Baptized persons who have not associated for some time.

If you learn of serious wrongdoing on the part of such a person, the matter should be investigated if it poses a threat to the congregation's welfare or causes a public scandal.

If there is no repentance, disfellowshiping action would be taken.

The fact that the individual has isolated himself for some time does not absolve the committee from taking action where needed.

If there is great difficulty in locating the individual and gathering all the facts, and the individual is not now recognized by the congregation or outsiders as one of Jehovah's Witnesses, the elders need not spend a lot of time pursuing the matter.

If a baptized person insists that he wants to be no part of the congregation and he wants his name removed from all our records, we can comply with his request.

CAEKAERT/MAPLEY 000686

62

If he takes such an adamant position, it would be well to encourage him to put his request in writing and it can be held in the congregation files.

In a case like this the Society should be notified and a brief announcement should be made to the congregation. The person will be viewed as "disassociated" and he would have to apply for reinstatement in the regular way in order to become a member of the congregation again.

Remember, our goal is to help people if we can.

## IF THE DECISION IS TO DISFELLOWSHIP

The Branch should be notified of the person's name, the reason for the disfellowshiping, a brief review of the evidence that was presented and the date of the action.

Those who are disfellowshiped should be viewed as such.

There is no reason for publishers to seek them out to greet them.

In cases of occurrences of real trouble, humanitarian help could be extended to such. (Luke 10:29-37)

The disfellowshiping of a mate does not end one's responsibilities in marriage.

When minors are disfellowshiped, parents of disfellowshiped minors are still responsible for raising, training and teaching them, even using God's Word in doing so.

If an individual has changed his course and gives evidence of repentance, it would be proper for an elder

CAEKAERT/MAPLEY 000687

63

to approach him and tell him what steps he can take to gain reinstatement, if this is his wish. Such repentant ones could be greeted but are not to be sought after by members of the congregation.

If an individual is trying to influence others to take a wrong course or is trying to deceive others, all should avoid him. He is described at 2 John 9-11.

If an individual believes he has not been dealt with fairly, he can appeal the decision to disfellowship.

In this case it would be best for the elders to write the Society and get their recommendation of who might best serve on the appeal committee.

The appeal committee will rehear the whole case. Their decision should be final.

## REINSTATEMENT

If the wrongdoer is sincerely repentant, has discontinued his former wrong conduct and is "doing works that befit repentance," he can be reinstated. (Acts 26:20)

Sincere repentance, not the passage of a certain amount of time or the attitude of others, is what determines when reinstatement can be granted. (Compare 1 Corinthians 5:1, 11-13; 2 Corinthians 2:6, 7.) It may take time, however, for repentance to become evident. (2 Cor. 12:21)

It may be best for the elders of the congregation that disfellowshiped to handle the plea for reinstatement, assigning certain of their number as a committee.

CAEKAERT/MAPLEY 000688

64

When an individual is reinstated, he may still need much spiritual assistance. The elders should see that this is provided.

It will be up to the elders to decide when certain privileges may be restored.

The privilege of sharing with the congregation in the field service is restored when the individual is reinstated.

Other privileges, such as commenting at meetings, handling parts on the program, offering prayer at meetings, and so forth, can be restored when it is determined that the individual has progressed spiritually to the point that he is eligible for them and when it is judged by the elders that the extending of such privileges will not be offensive to the congregation.

The privilege of serving as a ministerial servant or an elder can be recommended only when the individual is again "free from accusation." (1 Tim. 3:10)

He must 'live down' the reproach and build up a convincing record of righteousness, which may take a number of years.

## COOPERATION

When a case requires the cooperation of two congregations, do not hesitate to provide the assistance needed.

If more than one congregation is involved, do not make the matter of jurisdiction an issue.

Do you have the facts? Can you handle the case

CAEKAERT/MAPLEY 000689

65

most effectively? Then it may be appropriate for you to follow through without delay.

If another congregation is involved, seek their assistance, benefit from their observations.

Do not let a matter remain unattended.

## CONFIDENTIALITY

*— 11/89 Dist. Ovr. @Cir. Ass. means not even revealing the fact of a judicial committy*

NOTE: Reports have been received where elders have revealed confidential matters to their wives or others in the congregation. This has caused bad feelings to develop and undermines the confidence in and respect for the body of elders. Publishers expect personal matters will be kept confidential and hesitate to approach elders who have been indiscreet, and failed to do so. Sometimes elders will discuss certain matters on the telephone or in other places where other members of the family can hear the conversation or do so at the Kingdom Hall within earshot of other brothers.

Why is failing to keep confidence Scripturally unwise? (See Proverbs 11:13; 25:9, 10.)

Where there is a lack of good judgment in this matter, what could result? (See James 3:5.)

## BE "IMITATORS OF GOD"

Jehovah is a God of justice; he is merciful, kind, loving and patient. (Ps. 37:28; Ex. 34:6, 7)

As you deal with your brothers, imitate Jehovah in displaying these qualities and you will be an honor to him and a blessing to your brothers.

# Sharing on the Judicial Committee

"When having a hearing between your brothers, you must judge with righteousness." (Deut. 1:16) Judging matters that affect people's lives and relationships is a serious responsibility. Elders cannot properly decide matters on the basis of limited knowledge, but must have a reasonably *complete* picture when hearing a matter. They also need *heavenly wisdom* to make proper application of God's Word and in order to determine how far their showing *mercy* should extend. At all times they must act with impartiality.—1 Tim. 5:21; see w77, pp. 146-152.

## ELDERS ARE TEACHERS AND JUDGES

Jehovah has raised up elders who are in a position to serve as counselors and judges. (Isa. 1:26)

Your responsibility not only involves handling judicial matters; you must also teach and make clear what God requires and encourage the rendering of whole-souled service to God and faithful obedience to his righteous principles.

Cases of serious wrongdoing require special attention by the elders to determine what is needed to preserve the spiritual health of all.

In such cases, elders serving as a judicial committee must weigh matters carefully, knowing that certain factors may distinguish one situation from another.

Instead of looking for rigid rules for guidance, you will need to think in terms of principles and judge each case on its own merits.

66

CAEKAERT/MAPLEY 000691

67

You should be confident that, with accurate knowledge, with experience and discernment, and with the help of God's spirit, you can judge in righteousness, wisdom and mercy.

## JUDICIAL COMMITTEES ADMINISTERING GOD'S LAWS

NOTE: Adjustments in the operation of the judicial committees were announced at the 1977 District Assemblies to become effective as of September 1977.

What will be some of the benefits the congregation will receive from the following judicial committee adjustments?

There will be no permanent judicial committee of three elders as in the past made up of the current service committee of three—the presiding overseer, the field overseer and the Bible study overseer.

A suitable judicial committee is formed to handle judicial cases as they arise.

At such time one elder is designated to serve as the chairman for that case.

Elders present at the Kingdom Hall assume responsibility to select the judicial committee necessary for the case.

These will take into consideration that the problem may require certain elders who are experienced in handling the particular type of case that has arisen.

More than one judicial committee may operate at a given time depending on cases that arise.

The judicial committee need not be limited to three members. Where the gravity of the case involved

CAEKAERT/MAPLEY 000692

68

warrants having four or even five experienced elders to serve, this may be arranged.

## HEARINGS BEFORE THE JUDICIAL COMMITTEE

REMEMBER: There are cases that the body of elders is responsible to investigate and, where necessary, appoint a committee to handle. These include:

Gross sins that have brought the congregation into public disrepute. (Rom. 2:21-24; 1 Cor. 5:1; 2 Cor. 7:11)

Any serious sin that constitutes a clear threat of contaminating the cleanness of the congregation. (1 Cor. 5:6, 9-11; Gal. 5:19-21; 1 Tim. 1:9, 10)

Where an individual is an elder or a ministerial servant and commits a gross wrong, he is morally obligated to inform the body of elders of his being reprehensible. (1 Tim. 3:2, 8, 9; Titus 1:6)

In some cases the individual will come voluntarily seeking aid and confessing his wrongdoing.

In other cases an accusation may be brought against some member of the congregation.

The committee should consider whether the accusation gives evidence of having substance or not and if a meeting with the committee is required.

Some accusations involve misunderstandings and can best be handled on a personal basis.

When you invite an individual to meet with the committee, at times a written invitation may be advisable.

Information should be given as to the time and place

CAEKAERT/MAPLEY 000693

of the hearing, the reason for it, and what the person's course of action is supposed to have been.

If he wishes to bring witnesses who can speak in his defense regarding the matter, he may do so.

If the person repeatedly fails to come to the hearing, the committee will go ahead with the hearing, but will not make a decision until evidence and testimony are considered. The committee should not take action against the person unless the evidence clearly proves this necessary.

What kind of evidence is acceptable?

There must be two or three eyewitnesses, not just persons repeating what they have heard; no action can be taken if there is only one witness. (Deut. 19:15; John 8:17)

Confession (admission of wrongdoing) can be accepted as conclusive proof without other corroborating evidence. (1 John 1:9)

Strong circumstantial evidence, such as pregnancy, or evidence (testified to by at least two witnesses) that one stayed all night in the same house with a person of the opposite sex (or in the same house with a known homosexual) under improper circumstances, is acceptable.

The testimony of youths may be considered.
　It is up to the elders to determine if it has the ring of truth.

The testimony of unbelievers may also be considered, but it must be carefully weighed.

If there are two or three witnesses to wrongdoing but each of them is a witness to a separate event, this

CAEKAERT/MAPLEY 000694

70

also can be considered. Such witnesses may be allowable but it is preferable to have two witnesses to the same event.

## JUDGING WITH RIGHTEOUSNESS, WISDOM AND MERCY

Elders must exercise godly qualities in their judging.

In giving counsel or rendering decisions it is one thing to express an opinion; it is quite another matter to judge in *righteousness*. (Deut. 1:16, 17)

To isolate main points and to see how a problem developed. or why something was done, you must ask pertinent, discreet questions and seek divine *wisdom* to relate Bible laws to the issues raised or the charges being considered. (Jas. 1:5; 3:17, 18)

You must exercise *mercy* in matters of judgment, not only by showing compassion to soften the judgment but by expressing kind consideration and pity in an effort to heal and restore those who are repentant and by trying to bring them to repentance. (Rom. 2:14; Jude 22, 23)

In cases where it is established that a serious offense was actually committed, the judicial committee can consider such factors as these (Students explain why these are important):

What were the circumstances leading up to the wrongdoing?

Was there evidence of the person's craving wrongful things or 'courting trouble'? (Jas. 4:1)

Has he been admonished before that his course was leading toward danger? (1 Thess. 5:14).

CAEKAERT/MAPLEY 000695

71

Was it a single offense or was it committed more than once?

Was his confession voluntary or did he have to be accused by others before confessing?

And, above all, does he show true repentance and manifest a heartfelt desire to avoid repetition of the wrong?

Even though the wrongdoer is guilty of a serious offense, elders on the judicial committee realize that their aim is to help, whenever possible, the one who has fallen into a wrong course.

If he 'listens to them,' showing true repentance, it may be that he can be "gained" as a brother and thus spared from being disfellowshiped. (Matt. 18:15-17)

Neither the gravity of the wrong nor bad publicity is what finally determines if the person(s) should be disfellowshiped; rather the determining factor is the individual's sincere repentance or lack of it.

Some manifest repentance right after their sin and take steps immediately to confess; others do so later, even at the meeting with the judicial committee.

It is to the person's favor when he voluntarily confesses, but still the important factor is, Is he repentant?

There is good reason for you to weigh claims of repentance carefully where the individual has shown himself to be guilty of hypocrisy, lying and deliberate efforts to deceive, or where it is apparent that the wrong act was preceded by deliberate scheming, perhaps in a cold, calculating way. 

CAEKAERT/MAPLEY 000696

72

> This is quite different from an individual's 'caving in' due to human weakness under the unexpected pressure of certain tempting circumstances.

How can true repentance be recognized by the judicial committee?

Has the individual contritely prayed to Jehovah and sought his forgiveness and mercy?

Has he admitted his wrongdoing either voluntarily to some of the elders before the hearing or when confronted by his accusers?

What motivates whatever sadness, remorse and regret he shows? Is it worldly sadness or godly sadness? (2 Cor. 7:8-11)

Does he have a deep regret over a damaged relationship with Jehovah, a heartfelt wanting to come back into God's favor, a remorse over the reproach he has brought upon Jehovah's name and people? (2 Cor. 7:11, 12)

Does his attitude include a heart-motivated rejection of the bad course as repugnant, hated? (Rom. 12:9)

Is he displaying "works that befit repentance"? (Acts 26:20) May take time to determine this.

## EXERCISING BALANCE AND JUDGMENT IN WEIGHING THE NEED

In any case of serious wrongdoing, whether the repentant one seeks your help or you, instead, go to him, as a judicial committee you will want to be satisfied that there is sincere repentance and that he is earnestly endeavoring to hold to a right course. (w76, pp. 717-735)

If the person's own heart has not reproved him and moved him to abandon the wrong, then the respon-

CAEKAERT/MAPLEY 000697

73

sible elders should reprove him so as to bring about this needed result.

If a Christian commits some wrong one or more times, but thereafter his conscience moves him to repent and he turns away from such wrongdoing, abandoning it, the wrongdoer himself, in effect, has already reproved himself.

His own conscience does the accusing, God's Word and spirit do the convicting and his heart moves him to repent; he does not require someone else to "lay bare his fault" in order to get him to acknowledge and correct his wrong.

This does not mean that he does not need help to strengthen his resolve and determination not to return to his wrong. (Luke 22:31, 32)

He would do well to speak to an elder about the matter and if the wrong committed is of a nature serious enough to be handled by a selected judicial committee, this may be arranged.

Such a one is like one physically ill; he still needs a physician to help him recover. (Luke 5:31)

Your responsibility would be to give sound Scriptural counsel to impress upon him the seriousness of the situation and get him to appreciate more fully the danger of 'letting down his guard' even momentarily, and his need to 'keep working out his own salvation with fear and trembling.' (Phil. 2:12)

The fact that a person has reproved himself in his own heart and no disfellowshiping has resulted does not necessarily mean that he would continue to carry out all the functions in the congregation that he did up until that time.

74

The judicial committee may judge it advisable not to use such a one in matters of responsibility for a time, perhaps feeling that this restriction could contribute to the person's becoming 'readjusted.' (Gal. 6:1)

Where circumstances show that a person's own heart has not reproved him and the wrong is not acknowledged, the elders are obliged to present the wrongdoer with the "convincing evidence" of his wrong course. (John 16:8)

The person who persists in wrongdoing generally excuses himself in his own mind, even convinces himself that God will condone what he is doing.

You should seek to help him to see the wrong in its true colors and why it should be hated by him; your aim is to bring him to repentance and an abandoning of the wrong course, not only in deed but in mind and heart. (Titus 1:9)

If you feel that more time is needed for him to think and pray about what you have said in counsel and reproof as a judicial committee, this may be allowed; you may need to talk with him several times to bring him to restored spiritual health. Endeavor to do so "with all long-suffering and art of teaching." (2 Tim. 4:2)

What, then, of the apostle Paul's instruction to reprove "before all onlookers" those persisting in sin? (1 Tim. 5:20)

Since we cannot be dogmatic as to just how comprehensive the phrase "before all onlookers" is in its application, it would seem that the *need existing* should guide the judicial committee in the way it is applied.

CAEKAERT/MAPLEY 000699

75

If you determine that the reproof needs to be brought to the attention of the whole congregation by announcement and later on by a Scriptural talk on the matter, then this should be done. Or the reproof may be given before all who are concerned in the matter, when the judicial committee is handling the case, that they "also may have fear." (1 Tim. 5:20)

In many cases, you as members of the judicial committee may determine that a talk at a later meeting by an elder is all that is needed; such a talk could show how it is that people are led into the particular kind of wrongdoing involved, why it is so condemnable and harmful, as well as giving sound counsel on ways to fortify oneself against falling into such a snare.

On the occasion of such a talk, however, there would be no names mentioned.

In the case of one who repents only as a result of being convinced (by reproof) of his sinful course, the removal of responsibility or privileges would likely follow as contributing to a "disciplining in righteousness." (2 Tim. 3:16)

If you decide that restrictions should be applied, such as not to use the person to represent the congregation in prayer or to share in the giving of instructions from the platform, and so forth, then he would be removed also from responsibilities as an elder, a ministerial servant or a pioneer.

In all cases, the elders on the judicial committee must weigh such factors as the seriousness of the wrong committed, the length of time that has passed since

CAEKAERT/MAPLEY 000700

76

it occurred, the circumstances that led up to it, and the extent to which a measure of willfulness was shown or there was failure to give heed to earlier warning counsel.

After reasonable efforts to "readjust" the wrongdoer have been exhausted, those who have committed serious sins and are unrepentant must be disfellowshiped.

> You must show respect for Jehovah's standard of righteousness and holiness; also, you must protect the congregation from willful sinners. The text at 1 Corinthians 5:9-13 demonstrates that there may be flagrant cases where there is no need to delay prompt action to disfellowship.

The same principles will govern the judgment on the part of a judicial committee in cases of reinstatement.

> Genuine repentance and the turning away from the wrong course, not the specific act committed nor merely the time elapsed, are the chief determining factors in deciding when a person may be reinstated.

## THE RESPONSIBILITY OF JUDGMENT IS A WEIGHTY ONE

Judging matters that affect people's lives and relationships is a serious responsibility; it calls for balance and judgment, discernment and understanding.

Elders on a judicial committee must weigh carefully both the interests of the individual and of those of the congregation as a whole.

> On the other hand, you must feel keenly your obligation before God to prevent wrongdoing from infiltrating and spreading within the congregation.

77

At the same time, you must show just as deep a concern that your manner of dealing with your brothers always reflects Jehovah's own wise and merciful ways. (Jude 3, 4, 21-23)

Unit 5 (a)

# How the Elders Work Together as a Body

Proverbs 15:22 states, "In the multitude of counselors there is accomplishment." A congregation is blessed to have a "body of older men" who work closely together. But what is the key to their being able to work in unity? What is involved in their recognizing Jesus Christ as head of the Christian congregation, and how will this affect their unity?

When elders meet together, their meetings should be well arranged. (1 Cor. 14:40) They should try to reach decisions on matters discussed. Arrangements should be made for someone to carry out the decisions that are made. What can the presiding overseer do to work toward meaningful elders' meetings? What must each individual elder do to make a positive contribution to these meetings? These are the matters we will be discussing now.

## RECOGNIZING THE HEADSHIP OF CHRIST UNITES THE BODY

Although Jehovah God is the "shepherd and overseer of [our] souls," he has appointed Jesus Christ as head of the Christian congregation. (1 Pet. 2:25; Eph. 1:22, 23) Why does accepting Jesus Christ as head of

CAEKAERT/MAPLEY 000702