*Exhibit AA*

# "Pay Attention to Yourselves and to All the Flock."—Acts 20:28.

### Kingdom Ministry School
### Textbook (*ks*81)

CAEKAERT/MAPLEY 000756

Published by

WATCHTOWER BIBLE AND TRACT SOCIETY
OF NEW YORK, INC.
Brooklyn, New York, U.S.A.

SEPTEMBER 1981

Made in the United States of America

# Handling Cases of Wrongdoing

Wrongdoing dates from man's rebellion in Eden. We have Jehovah's example of prompt action in handling the case. (Gen. 3:8-19) How are cases of wrongdoing handled today? Appointed elders serve as qualified judges:

(a) To keep out spirit of the world. (1 Cor. 2:12; Eph. 2:1, 2)

(b) To readjust or reprove wrongdoers. (Titus 1:9)

(c) To preserve the cleanness of the congregation by removing unrepentant wrongdoers. (1 Cor. 5:7, 13)

What qualifications must elders have to care for this responsibility? (Deut. 1:13, 16-18) Heavenly wisdom, good judgment, impartiality; must be acquainted with Jehovah's righteous laws and principles.—Ps. 19:7-11.

## PROCEDURE IN HANDLING CASES

Individual elder, or elders, who may be informed of wrongdoing approaches presiding overseer, who in turn arranges for meeting with body of elders.

Body of elders now determines whether accusation gives evidence of having substance. Is judicial committee necessary? (*ks*77, p. 68, par. 1)

If committee is needed, body determines which elders should serve and also designates chairman. (*km* 9/77, pp. 5, 6)

160

CAEKAERT/MAPLEY 000787

161

Chairman of judicial committee invites accused to meet with them. (*ks*77, pp. 68, 69)

If he repeatedly fails to appear, action should be taken if there is sufficient evidence. (*ks*77, p. 69)

Conducting the Hearing:

Open with prayer.

Chairman states reason for meeting and invites accused to make personal statement.

Present witnesses, unless wrongdoer confesses.

Committee probes in effort to establish facts and ascertain attitude of accused. Is there evidence to establish serious wrongdoing? Isolate specific offenses and evidence available.

When it is appropriate, dismiss wrongdoer and carefully review evidence and attitude of accused.

Has accusation or charge been established?

If so, is wrongdoer repentant? There must be works befitting repentance. If repentance is manifest, how was it demonstrated?

Depending on whether guilt established and repentance shown, determine whether reproof or disfellowshipping necessary. If in doubt, convene at later date. Seek Jehovah's guidance and wisdom through prayer.

When decision is finalized, inform individual orally. Inform his or her right to appeal and steps necessary for future reinstatement. (*km* 1/80 p. 4) If appeal not made within 7 days, inform congregation. If appeal is lodged within the alloted time, no announcement is made.

SEE PAGE 179

CAEKAERT/MAPLEY 000788

162

When disfellowshipping action is taken, notify Branch Office, supplying the necessary details as outlined in *ks*77, page 62.

Where appointed servants or pioneers commit serious wrongs, the Branch Office should also be notified, even if no disfellowshipping ensues. (*or,* p. 170, par. 3)

Prepare written summary of case that can be put in an envelope and placed in congregation file. (See letter dated April 12, 1978, addressed to "All Bodies of Elders.")

## PROBLEMS THAT ARISE IN HANDLING CASES OF WRONGDOING

What is Scriptural view on reporting serious wrongdoing? (Lev. 5:1; Prov. 28:13; 29:24; compare 1 Corinthians 1:11.)

Consider example.

Not every case of wrongdoing requires a judicial committee.

[Example: A highly respected elder and a sister in the congregation failed to put in writing a business transaction. Each later charged the other with lying, slander and fraud. The body of elders wanted to convoke a judicial committee to act against the sister, siding with their fellow elder. The matter was handled in line with Matthew 18:15, 16 with the help of a traveling overseer who provided counsel not to get involved prematurely. Judicial committee never had to come into picture.]

CAEKAERT/MAPLEY 000789

Judicial committee not automatically formed even when one is accused of serious sin.

What should be done if there is only one witness to a serious sin?

Witness should confront the accused to encourage him to confess.

If there is no response, one or two elders can discuss the matter with the individual. If he denies it, leave matter in Jehovah's hands. (1 Tim. 5:19, 24, 25)

If there is another witness to the same type of sin on the part of the accused person, this would be basis to convoke a judicial committee.

Why is it important to let the accused FACE his accusers?

Reasonable for accused to know source of charge.

Accusers should be willing to assume their responsibility, as was the case in Israel. (Deut. 17:6, 7; 19:16-21)

Why would witnesses not need to be present for the entire hearing?

No need for them to hear details and testimony that does not affect them. However, witnesses to the wrongdoing should be present later if it becomes necessary to reprove the accused "before all onlookers." (1 Tim. 5:20)

Elders should be quick to listen, but slow to commit themselves.

CAEKAERT/MAPLEY 000790

164

Wait until you have heard all the facts before reaching conclusions and making decisions. (Prov. 18:13)

Defer making a decision if not sure of Bible's direction and the Society's counsel.

[Example: Elders directed brother who had been legally divorced before baptism that he was free to remarry even though he had not committed adultery, nor had proof of his former wife's committing adultery. Do you see any problem here? (Matt. 19:9)]

## CLARIFICATIONS IN HANDLING CASES OF WRONGDOING

If there is question about the mental state of a baptized individual who commits some deed for which he might be disfellowshipped, a judicial committee should consider the facts of the case. Weigh the evidence and extent of mental incompetence and then decide whether some announcement should be made or whether disfellowshipping should occur.

Though there may be a basis for showing more than ordinary consideration and patience, the elders must protect the cleanness and spiritual well-being of the congregation. (1 Thess. 5:14)

In the case of unbaptized persons, regularly associating with congregation, who unrepentantly continue in wrongdoing despite all efforts to help them, an announcement can be made that the congregation should avoid associating with such persons. (1 Cor. 15:33) They would be treated as disfellowshipped persons.

CAEKAERT/MAPLEY 000791

165

When an appeal committee reverses the decision of the original judicial committee, the matter should be referred to the Branch Office for review. Both the original committee's letter regarding its decision to disfellowship and the appeal committee's reasons for reversing that decision should be submitted.

The appeal committee should not inform the disfellowshipped person of its decision.

The final decision, as approved by the Branch Office, will be transmitted to the parties involved by the original judicial committee.

However, when the decision of the appeal committee is to uphold the disfellowshipping, the letter from the original committee telling of its decision to disfellowship as well as the appeal committee's letter upholding the decision should come to the Branch Office together, so that the records of the Branch Office will be complete. In such a case there is no need to wait to hear from the Branch Office before the decision of the two committees is revealed to the wrongdoer.

While there should be no hasty action in reinstating individuals, consideration should be given to a plea for reinstatement when repentance is definitely shown.

When could a reinstated brother be recommended for responsibility?

Circumstances of each case govern length of time that should elapse before a recommendation could be made.

166

Good judgment required on the part of the elders. Determine the standing of the individual with the congregation after he has had ample time to prove himself. (Compare Acts 16:1, 2.)

Carefully consider possible effect if individual were to be appointed.

Would it be a cause for stumbling among the brothers? (2 Cor. 6:3)

In cases of scandal, he might never be able to live down his wrongdoing sufficiently so as to qualify.

## PROGRESSING IN UPHOLDING JEHOVAH'S RIGHTEOUSNESS

We are surrounded with increasing wrongdoing. Such can infiltrate and have bad effect on Christian congregation. (2 Tim. 3:1-5, 13; Jude 3, 4, 11-13)

Brothers need to tighten up in holding to Jehovah's righteous standards regarding the following:

*Causing Division:* Deliberate action disturbing unity of congregation or undermining confidence of brothers in Jehovah's arrangement. May involve or lead to apostasy. (Rom. 16:17, 18)

*Apostasy:* A "standing away from," "a falling away, defection," "rebellion, abandonment."

Action taken against true worship of Jehovah or his established order among his dedicated people. (Jer. 17:13; 23:15; 28:15, 16; compare 2 Thessalonians 2:9, 10.)

167

Apostates: Persons stubbornly holding to and speaking about or *deliberately spreading* teachings contrary to Bible truth as taught by Jehovah's Witnesses, or who join another religious organization.

Outcome of such a course could be very serious. (2 Pet. 2:1-3)

How should apostates be viewed? (See Titus 3:10, 11; 1 John 2:19.)

Those with sincere doubts should be helped, dealt with mercifully. (Jude 22, 23; see *Watchtower,* August 1, 1980, pages 21, 22.)

*Conduct with Opposite Sex:* Should never bring reproach upon Jehovah or the Christian congregation. (1 Pet. 2:11, 12)

Sexual misconduct would include: (1) Touching sexual parts or caressing breasts. Calls for strong counsel, warning and needed help. (2) *Porneia,* involving misuse of another's genitals. Requires judicial action. (w73, pp. 574-576)

Courting or dating when one party is not Scripturally free to marry is wrong.

Strong counsel should be given, and, if ignored, individuals should be marked.

Could lead to denial of special privileges in the congregation if repeated warnings and reproofs not heeded by those involved. (2 Thess. 3:14, 15; w68, pp. 255, 256; w80 8/1, pp. 30, 31; w81 9/1, pp. 19-21)

CAEKAERT/MAPLEY 000794

168

*Divorce and Related Matters:* The Scriptures urge married persons to remain together as "one flesh." (Gen. 2:22-24; Matt. 19:4-6; 1 Cor. 7:10-16)

Many marital problems can be resolved by following principle of Matthew 18:15.

What divorce concession did the law of Moses allow?

The husband, not the wife, had power to divorce on broad grounds of "something indecent." (Deut. 24:1)

What about divorce for Christians?

Only for "fornication," or *porneia*. (Matt. 5:32; 19:9)

So Jesus tightened up marriage for Christians.

Equal power of divorce for wife. (Mark 10:11, 12)

Sex relations outside marriage union: Marriage bond not automatically broken in God's eyes.

Innocent mate can forgive. (1 Cor. 13:4-8; Hos. 3:1-3)

While elders should be informed one way or the other, it is up to innocent mate to decide on whether to divorce or not.

The innocent mate should be informed that resuming sexual relations would indicate forgiveness and cancel Scriptural ground for divorce.

Forgiven adultery could not later be used as a basis for divorce, but unrevealed instances of adultery, if later brought to light, could be so used.

CAEKAERT/MAPLEY 000795

169

A divorce freeing a Christian for remarriage should be obtained by innocent mate if possible, or by guilty mate with innocent mate's consent; both now free to remarry.

If the guilty one unilaterally obtains a divorce, does this of itself free that one to remarry?

No; if he does, it is an *adulterous marriage*. (Luke 16:18)

Calls for congregation action in addition to any already taken.

However, this frees the innocent mate to remarry.

In all cases of adulterous marriages in the future, even after reinstatement, it will be a rare case if one is recommended to serve in an official position in the congregation—at least until the death or remarriage of the first mate.

In any event, a considerable number of years should have passed. (1 Tim. 3:2, 12; w80 9/15, p. 31)

Where there is evidence of conspiracy between individuals to put away their mates and marry each other, considerable time should elapse before any request for reinstatement is even entertained. (w79 11/15, pp. 31, 32)

A divorced couple having sex relations with each other commit fornication. (Heb. 13:4)

*Marriage:* Of divine origin.

Engagement is a serious commitment and normally a personal matter. (Matt. 5:37)

170

However, breaking an engagement may require inquiry if the one concerned has an organizational position of responsibility. (See *The Watchtower*, June 15, 1975, pages 382-384.)

Marrying an unbeliever: This would result in disqualification from all special privileges for the time being. If the parent is an elder, ministerial servant or pioneer and allows the marriage, this raises questions regarding his qualifications. (1 Tim. 3:2, 4, 5, 12, 13)

Use of Kingdom Halls: Would not be used for marriages of unbelievers, non-baptized Christians or the reenactment of marriages such as on occasions of anniversaries. (w74, p. 276; *km* 1/77, p. 4)

In each case, the body of elders will decide when the Kingdom Hall can be used for a wedding.

Wedding vows: See May 1, 1974, issue of *The Watchtower*, page 275.

These vows, or a modification of them according to the local law, should be used, and not privately chosen and worded vows.

## TREATMENT OF DISFELLOWSHIPPED AND DISASSOCIATED PERSONS

Members of the Christian congregation should avoid contact and have no spiritual association with disfellowshipped and disassociated persons. (1 Cor. 5:11)

We need to be especially cautious about contact with disfellowshipped persons who have apostatized and those who continue practicing their immoral conduct.

CAEKAERT/MAPLEY 000797

171

These can affect the congregation like gangrene. (2 Tim. 2:16-18)

Whereas disfellowshipping is an action taken by a judicial committee against unrepentant wrongdoers, disassociation is an action taken by an individual who has decided that he no longer desires to be one of Jehovah's Witnesses. (1 John 2:19)

A person would be viewed as one who has disassociated himself when he advises the congregation, usually in writing, that he no longer desires to be recognized as one of Jehovah's Witnesses.

Or, if the individual takes a course contrary to the neutral position of the Christian congregation, then the congregation is compelled to view him as one who has chosen to separate from us. (Isa. 2:4; John 15:17-19; see *Kingdom Ministry School Textbook,* 1977, pp. 61, 62.)

Those who disassociate themselves should be viewed and treated the same as disfellowshipped persons.

A brief announcement should be made to the congregation that this individual is, by his chosen course, no longer desirous of being one of Jehovah's Witnesses, and the Branch Office should be notified.

If one who disassociates himself wants to return to the congregation, he must request a hearing for reinstatement just like one who has been disfellowshipped.

CAEKAERT/MAPLEY 000798

172

(Page for additional student notes)

CAEKAERT/MAPLEY 000799

Unit 9 (b)

# Judging with Righteous Judgment

It is important to judge impartially and with righteous judgment. (1 Pet. 1:17; John 7:24) Individual overseers and elders making up judicial committees are called upon to counsel, correct, reprove and take disfellowshipping action where necessary. By following principles and laws set out in God's Word they judge for Jehovah and he is with them in the matter of judgment.—2 Chron. 19:6.

## JEHOVAH MAKES PROVISION TO CORRECT HIS PEOPLE

Why is correction needed? (Prov. 14:12; Jer. 10:23, 24)

As a loving heavenly Father, He provides correction and discipline whenever needed. (Heb. 12:4-6)

Human instrumentalities among the various agencies used to correct.

In Israel, prophets and kings spoke in name of Jehovah and in accord with his Word. (1 Sam. 15:22, 23; 2 Sam. 23:2; Jer. 2:1, 20, 29-31)

Overseers used in early Christian congregation and modern-day visible organization. (Titus 1:5; Heb. 13:17)

God's Word is basis for giving needed correction. (2 Tim. 3:14-17)

If authoritative Scriptural counsel and admonition are ignored and individuals persist in walking disorderly or in course not yet serious enough for judicial action, such may be "marked." (2 Thess. 3:14, 15)

173

CAEKAERT/MAPLEY 000800

174

What are some situations where such 'marking' would be appropriate? (See *The Watchtower,* September 1, 1981, pages 19-21, pars. 12-21.)

## JUDGMENT RELATED TO REPENTANCE

What is genuine repentance in situations where dedicated Christians are concerned? (See *ad,* p. 1385, pars. 12-14; *ks*77, p. 72.)

Consider example.

Why is it so vital for wrongdoers?

First step leading back to God. (Rom. 2:4)

In handling cases of wrongdoing, why should elders be careful in deciding whether someone is repentant? (See *The Watchtower,* September 1, 1981, pages 24-26, paragraphs 13-19 and 24.)

Distinguish between genuine and seeming repentance. (See *The Watchtower,* September 1, 1981, pages 24, 25, paragraphs 16, 17.)

Seeming repentance in relation to repeated sin.

Does one's pattern of life really give evidence of 'producing fruit that befits repentance'? (Matt. 3:8) If gross sin extended over period of time, would be questionable whether wrongdoer belongs in God's congregation. (See *The Watchtower,* September 1, 1981, page 26, paragraphs 23, 25.)

Consider example.

What is involved in "works that befit repentance"? (Acts 26:20) (See *The Watchtower,* September 1, 1981, pages 25, 26, pars. 20-22.)

CAEKAERT/MAPLEY 000801

*@ CIR. "' OFFENSE IS NOT of A DISFELLOWSHIPPING MATTER? NO*

175

## QUESTIONS REGARDING REPROOF

Who has the responsibility to reprove wrongdoers in the congregation? (2 Tim. 4:1, 2; Titus 1:9)

How is reproof administered "before all onlookers"? Under what circumstances? (1 Tim. 5:20; see *The Watchtower,* September 1, 1981, pages 24, 26, paragraphs 11, 12, 26.)

In cases where sin is widely known or will no doubt become known, what steps are taken to safeguard entire congregation from corrupting influence? (See *The Watchtower,* September 1, 1981, pages 26, 27, paragraphs 27-30.)

## APPLYING JESUS' COUNSEL
## ON HANDLING CERTAIN WRONGS

Consider steps outlined in Matthew 18:15-17.

These could be serious sins that might be settled initially on personal basis.

Under what circumstances would first step be taken? (Matt. 18:15)

Petty, personal offenses or differences not meant here.

What cases of sinning are handled directly by judicial committee? (See *The Watchtower,* September 15, 1981, page 17, footnote on paragraph 9.)

What is involved in second step, if necessary? (Matt. 18:16)

Who qualify as witnesses in such procedure?

CAEKAERT/MAPLEY 000802

176

When would third step be taken, and how? (Matt. 18:17)

What is meant if one is to be treated "as a man of the nations and as a tax collector"? (See *The Watchtower,* September 15, 1981, pages 18-20, paragraphs 15-21.)

## PROPRIETY OF DISFELLOWSHIPPING

Purposes served by such action:

1. Upholds Jehovah's name and standard of righteousness. (Acts 15:14; 1 Pet. 1:14-16; compare Isaiah 52:5.)

2. Protects purity of congregation. (1 Cor. 5:1-5; 2 Cor. 7:11)

3. Can affect wrongdoer, jolting him to his senses.

Implications of disassociation.

What does God's Word say about those who renounce way of truth, either by written notice or by actions? (1 John 2:19; Rev. 19:17-21; Isa. 2:4; see *The Watchtower,* September 15, 1981, page 23, paragraphs 14-16.)

How should disfellowshipped and disassociated ones be treated?

What Scriptural and historical guidelines do we have? (See *The Watchtower,* September 15, 1981, pages 22, 23, paragraphs 9-12.)

Explain the full import of Paul's words at 1 Corinthians 5:11-13. (See *The Watchtower,* September 15, 1981, page 24, paragraphs 18-20.)

CAEKAERT/MAPLEY 000803

177

What about speaking to or associating with disfellow-shipped or disassociated person? (2 John 9-11; see *The Watchtower,* September 15, 1981, pages 24, 25, paragraphs 21-24.)

Why should we adhere to John's counsel about not being a 'sharer in their wicked works'? (See *The Watchtower,* September 15, 1981, pages 25, 26, paragraphs 26-28.)

Consider example.

If someone asks about being restored to God's favor or gives evidence of repentance and desires to be reinstated, who initiates action? (See *The Watchtower,* September 15, 1981, page 25, paragraph 24.)

How might problems result where relatives are concerned?

Name some situations. (See *The Watchtower,* September 15, 1981, page 27, paragraphs 5-7.)

How do Jesus' words at Matthew 10:34-38 have a bearing on this matter?

What special problems may arise in relation to family and social gatherings? (See *The Watchtower,* September 15, 1981, page 30, paragraphs 22-24.)

How are funerals involved, and what governs arrangements that might be made? (See *The Watchtower,* September 15, 1981, page 31, paragraph 26.)

What tests do these matters bring on all involved? (See *The Watchtower,* September 15, 1981, page 31, paragraphs 27, 28.)

The Bible speaks of reproving "with severity, that they may be healthy in the faith." (Titus 1:13) When? How?

178

Remember, administering reproof is not just making a decision or even announcing it; rather, it requires convicting, convincing the wrongdoer of the error of his way, so that he stops doing all that is bad and establishes himself as a practicer of good. This includes helping him to see how lesser sins led to serious deflection from Jehovah's law.

Some wrongdoers have gone so far into a practice of sin that it may be difficult for them to show sufficient fruitage of repentance to justify allowing them to remain in the congregation. (Consider Paul's command concerning the man at Corinth, 1 Corinthians 5:3-5, 13.)

Deciding the case.

If the person is guilty of gross, serious sins, such as those listed in *ks*77, pages 57-59, and he is unrepentant, he must be disfellowshipped.

If, although guilty of such a sin, he has truly repented and is producing fruitage of repentance, thus no longer posing a threat to the cleanness of the congregation or bringing it into public disrepute, then he should be reproved rather than disfellowshipped.

In the case of reproof, there may be good reasons why an announcement of the reproof should be made to the congregation. (See *The Watchtower*, December 1, 1976, page 734; September 1, 1981, pages 26, 27, paragraphs 27-29.)

In almost all cases of reproof, restrictions should be imposed. (See *Organization*, page 167; *Our Kingdom Service*, March 1975, page 4; *The Watchtower*, September 1, 1981, page 27, paragraph 29.)

CAEKAERT/MAPLEY 000805

*11/84 [illegible] IF PERSON APPEALS AFTER SOUTH [illegible] SOCIETY AND GET DIRECTION.*

179

## APPEAL HEARINGS

Consider reasons for appeal. (*km* 1/80 p. 4)

If the disfellowshipped person believes a serious error in judgment was committed:

He should make known in writing his reason for requesting an appeal, doing so within one week from the time he was notified of the committee's decision and addressing it to the body of elders of the congregation which took the action.

Does he deny that he is guilty of committing a disfellowshipping offense?

If he admits guilt on a disfellowshipping charge, does he claim that at the time of the hearing he was repentant? If he does, had he produced "works that befit repentance" to a sufficient degree so as to offset the sin(s) committed, thus establishing that he was no longer a threat to the cleanness of the congregation? (Acts 26:20)

When an appeal is heard, it is necessary to rehear all the evidence relevant to the case, including that which was presented originally and any new evidence now available.

Wherever possible, the judicial committee that heard the original case should be present at the appeal hearing(s) and should furnish the appeal committee whatever written records they have on the first hearing(s).

If they believe that earlier testimony is being changed, they can so state.

The appeal committee may also wish to question them *privately* as to their reasons for reaching the conclusion they did.

CAEKAERT/MAPLEY 000806

180

Was there an error in judgment or was decision of original committee basically sound according to evidence, factors available and attitude of accused at their hearing(s)?

Major goals are to ascertain whether there was a Scriptural basis for the original action taken and whether the individual was repentant at the time the action was taken.

If the appeal committee determines that really it was a "matter of judgment" and there was a basis for the action taken, although it might have been decided another way, they would likely decide to leave the decision as it is, trusting the judgment of the committee that was on the scene when the case was first heard.

It may be found that there is no valid basis for the disfellowshipping on the ground the initial committee used, but there is another ground for taking action to disfellowship, so that there is no reason to rescind the disfellowshipping.

Consider example.

If the appeal committee decides to reverse the disfellowshipping, they should first refer their decision to the Branch Office for review, supplying reasons for their decision and giving a copy to the original judicial committee. If, for some reason, the original committee does not concur with the appeal committee, they should submit their observations as well as their original letter outlining their disfellowshipping decision along with the letter from the appeal committee.

CAEKAERT/MAPLEY 000807

181

The disfellowshipped party should not be given, at this time, any intimation of the decision to rescind the disfellowshipping.

After the Branch Office has approved which decision applies, the original judicial committee will be advised and will inform the parties involved accordingly.

Examples and problems:

1. A youth disfellowshipped for drug abuse appeals because he has 'the right to do so' and desires another committee to hear the case. (See *km* 1/80, p. 4.)

2. A sister, appealing her disfellowshipping, admitted she celebrated a religious holiday with her relatives but claims to have been reached by the counsel given during the hearings. She states that she will never again become involved in the sin and has informed her relatives of her decision.

3. This man lied about his sins and tried to cover them over by bringing accusations against others, until finally the necessary witnesses were found. After being informed of the decision to disfellowship, he came to his senses, corrected the problems (sins), producing fruitage of repentance, and on this basis appealed.

## REINSTATEMENT

(See *Kingdom Ministry School Textbook,* 1977, pp. 63, 64; *Organization,* pp. 176-178; *The Watchtower,* March 1, 1977, page 152.)

In hearing pleas for reinstatement, elders need to be balanced.

182

It is not just a matter of accepting a person back simply because of his request and the passing of some time.

Before making a decision the elders must determine whether the wrongdoer is truly repentant.

Consider the overall pattern, whether the person is repentant over wrongdoing of which he really was guilty and for which clear evidence existed.

Generally, the elders of the congregation that originally disfellowshipped the person will consider the plea and decide whether there are grounds for reinstatement.

Consider example.

Much is involved in judging with righteous judgment.

By following Scriptural principles and procedures outlined, elders will be able to discharge their responsibility to Jehovah and toward the flock. (2 Tim. 4:1, 2)

CAEKAERT/MAPLEY 000809