Gerry P. Fagan
Christopher T. Sweeney
Jordan W. FitzGerald
MOULTON BELLINGHAM PC
27 North 27th Street, Suite 1900
P.O. Box 2559
Billings, Montana 59103-2559
Gerry.Fagan@moultonbellingham.com
Christopher.Sweeney@moultonbellingham.com
Jordan.FitzGerald@moultonbellingham.com

*Attorneys for Defendant Watch Tower Bible and Tract Society of Pennsylvania*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT and CAMILLIA MAPLEY,<br><br>Plaintiffs,<br><br>-vs-<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA,<br><br>Defendants. | Cause No. CV 20-52-BLG-SPW<br><br>**DEFENDANT WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: VICARIOUS LIABILITY** |

Defendant Watch Tower Bible and Tract Society of Pennsylvania ("WTPA") respectfully submits this Brief in Support of its Motion for Summary Judgment regarding Plaintiffs Tracy Caekaert and Camillia Mapley's (collectively "Plaintiffs") allegations and claims that WTPA is vicariously liable for the underlying conduct alleged in this matter.   WTPA has also requested summary judgment jointly with co-Defendant Watchtower Bible and Tract Society of New York, Inc. ("WTNY") on both causes of action asserted by Plaintiffs in this case. (*See* Doc. 302 (negligence per se); Doc. 346 (general negligence).)

As presented herein, WTPA is further entitled to judgment as a matter of law because the undisputed material facts demonstrate no agency or alter ego relationships existed between WTPA and the other relevant parties in this matter, including WTNY and the local members of the Hardin Congregation of Jehovah's Witnesses ("Hardin Congregation"), during the relevant time period of 1973 to 1992. As such, WTPA cannot be held vicariously liable for the alleged conduct of those other parties pursuant to Montana law and, therefore, WTPA respectfully requests the Court enter an order precluding such claims by Plaintiffs.

## **INTRODUCTION**

This case is about sexual violence that occurred four decades ago in private homes by Plaintiffs' natural father and a friend of the family, both of whom were also members of the Hardin Congregation.   Plaintiffs began attending the Hardin

1

Congregation of Jehovah's Witnesses in Hardin, Montana in 1973 or 1974. (*See* Statement of Undisputed Facts ("SUF") ¶ 1.) Plaintiffs' father, Bruce Mapley Sr., had been molesting them "for several years" before they began associating with Jehovah's Witnesses in 1973. (SUF ¶ 2.) Plaintiffs also allege they were molested by Gunner Haines, another member of the Congregation, in 1977 or 1978. (SUF ¶ 3.)

Plaintiffs allege that their father and Haines both confessed about their abuse of Plaintiffs to Congregation elders in or around 1977, and that the elders did not report the sexual abuse to law enforcement or child protective services. (SUF ¶ 4.) Plaintiffs allege that their father continued abusing them after 1979, but not beyond 1983. (SUF ¶ 5.) Haines, however, did not abuse them again after his confession to Congregation elders. (SUF ¶ 6.) Plaintiffs further allege that Martin Svensen, an elder in the Hardin Congregation, investigated the allegations of sexual abuse against Mapley Sr. and Haines while he was also sexually abusing children. (SUF ¶ 7.)

Plaintiffs have now sued two entities affiliated with Jehovah's Witnesses, one being a national organization (WTNY) and the other is an international organization (WTPA). After extensive discovery, there is no evidence in the record to show that any person working for or on behalf of WTPA ever directly knew or should have known during the relevant time about the alleged abuse. As such, Plaintiffs must argue that WTPA is vicariously liable for the alleged conduct of others, particularly

2

the members of the Hardin Congregation and/or WTNY, in order to maintain their claims against WTPA.  (*See* Doc. 22 at ¶¶ 16, 32, 41, 44, 55, 64.)  Specifically, Plaintiffs allege that:

- "Baptized Publishers, Ministerial Servants, and Elders are all agents of their local congregation and Watchtower [] PA."  (*Id.* at ¶ 16.)

- "Mapley Sr. and Haines were both Ministerial Servants with the Hardin Congregation, and thus agents of the Church, when they were sexually abusing Plaintiffs."  (*Id.* at ¶ 41.)

- "Svensen, Mapley Sr., and Haines were agents of … Watchtower PA."  (*Id.* at ¶ 44.)

- WTPA or its agents "knew, had reason to know, or were otherwise on notice of sexual abuse against Plaintiffs by employees, officers, directors, officials, volunteers, representatives, and/or agents and failed to take reasonable steps to prevent future acts of such unlawful sexual abuse."  (*Id.* at ¶ 55.)

- WTPA and WTNY "are the alter egos of each other that have been used as a subterfuge to defeat public convenience, justify wrong, and/or perpetuate fraud, such that piercing the corporate veil is appropriate."  (*Id.* at ¶ 32.)

However, Plaintiffs' claims for vicarious liability against WTPA fail as a matter of law because (1) Plaintiffs cannot establish that WTPA had an agency relationship with either the local congregation members or WTNY; and (2)

Plaintiffs' alter ego theory of liability with WTNY does not apply to the circumstances in this case. Consequently, WTPA is entitled to judgment as a matter of law regarding Plaintiffs' allegations and claims that WTPA is vicariously liable for the underlying conduct alleged in this matter.

## STATEMENT OF UNDISPUTED FACTS

A Statement of Undisputed Facts is filed concurrently with this Brief in accordance with L.R. 56.1(a).

## LEGAL STANDARD

A moving party is entitled to summary judgment on a claim when there are no genuine issues of material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 316, 323, 106 S.Ct. 2548, 2552 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp*., 677 F.2d 1301, 1306 (9th Cir. 1982). A moving party can meet its burden of showing no genuine dispute by identifying those parts of the record— including any pleadings, depositions, interrogatories, or admissions and affidavits on file—that "indicate the absence of a genuine issue of material fact." *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1048 (9th Cir. 1995) (internal citations omitted). Once the moving party has made this showing, the nonmoving party must

"designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

Federal courts draw inferences from facts in the light most favorable to the non-moving party, but the non-moving party must do more than simply show there is some "metaphysical doubt" regarding material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 572, 586-87, 106 S.Ct. 1348, 1356 (1986). There is no issue for trial without "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986). The non-movant does not defeat a motion for summary judgment by merely showing a "scintilla of evidence" in support of its claim. *Id*., 477 U.S. at 252. Further, a non-moving party cannot defeat a motion for summary judgment with conclusory allegations. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). Rather, the non-moving party must come forward with at least one sworn averment of fact essential to its claim or defense. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89, 110 S.Ct. 3177, 3188-89 (1990); *see also Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995).

If the evidence on a claim or defense is enough to allow a reasonable jury to return a verdict in favor of the non-moving party, then there is a genuine issue of material fact as to that claim or defense. *Anderson*, 477 U.S. at 248, 106 S.Ct. at

2510.  A reasonable jury could not return a verdict in favor of the non-moving party where the evidence is "merely colorable…or is not significantly probative[.]" *Id*. at 249-50, 106 S.Ct. at 2511 (citations omitted).

According to the Montana Supreme Court, "allegations of agency often involve questions of fact which preclude resolution by summary judgment." *Semenza v. Kniss*, 2008 MT 238, ¶ 19, 344 Mont. 427, 189 P.3d 1188 (citation omitted).  However, "summary judgment is appropriate where a party fails to present sufficient evidence to give rise to a genuine issue of material fact regarding an agency relationship." *Id.* (internal quotations omitted).  Therefore, "[w]here the undisputed evidence concerning the status of the parties defendant to each other is reasonably susceptible of but a single inference, the question of their legal relationship . . . is one purely of law." *Id.* (quoting *Contreraz v. Michelotti-Sawyers,* 271 Mont. 300, 311, 896 P.2d 1118, 1124 (1995)).

## ARGUMENT

Vicarious liability is defined as:  "The imposition of liability on one person for the actionable conduct of another, based solely on a relationship between the two persons."  Bouvier Law Dictionary – *Vicarious Liability*.; *see also* Restatement of the Law Third, Torts: Miscellaneous Provisions TD 2 § 1 ("Vicarious liability is liability that is imposed on the defendant based solely on the tortious act of another.").  The record in this case lacks any evidence that WTPA could be directly

liable for Plaintiffs' claims.  Therefore, Plaintiffs seek to impute liability against WTPA through the alleged conduct of others by claiming that the Hardin Congregation and WTNY are agents of WTPA, or that WTNY is the "alter ego" of WTPA.  However, Plaintiffs' claims for vicarious liability fail as a matter of law.

To begin, Plaintiffs cannot establish that the members of the Hardin Congregation were agents for WTPA.  The record is devoid of evidence that could establish any meaningful relationship between WTPA and the local congregation, let alone evidence showing that WTPA exercised any control over Hardin. Therefore, WTPA cannot be held liable for the acts or omissions of the congregation members.

WTPA further cannot be liable for the alleged conduct or knowledge of WTNY because that separate, distinct entity likewise did not have an agency relationship with WTPA.  Specifically, neither religious entity controls the other, and one does not need the consent of the other to act, which are the critical elements needed to establish an agency relationship.  Plaintiffs' asserted claim that WTPA and WTNY are "alter egos of each other" also fails because that theory of liability narrowly focuses on the personal liability of controlling shareholders for the debts and obligations of a corporation, so it simply does not apply here.

MOULTON BELLINGHAM PC
ATTORNEYS AT LAW

## I.   PLAINTIFFS CANNOT SHOW THAT LOCAL CONGREGATION MEMBERS AND OFFICIALS WERE AGENTS FOR WTPA.

As there is no evidence showing that WTPA was directly involved with or knowledgeable of the Plaintiffs' alleged abuse, they argue instead that WTPA should be liable for the alleged actions and knowledge of the Hardin Congregation members because they were agents of WTPA.   (*See* Doc. 22 at ¶¶ 16, 41, 44, 55, 64.) However, there is no evidence in the record which would support such a conclusion. Namely, Plaintiffs cannot point to any material facts establishing that WTPA exercised any appreciable control or authority over the local congregation.

"An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency." Mont. Code Ann. § 28-10-101. "Agency is 'the fiduciary relation which results from the manifestation of consent by one person to another' that the agent shall act on behalf of the principal subject to the principal's control and consent." *Associated Mgmt. Servs., Inc. v. Ruff*, 2018 MT 182, ¶ 36, 392 Mont. 139, 424 P.3d 571 (quoting *Butler Mfg. Co. v. J & L Implement Co.*, 167 Mont. 519, 523, 540 P.2d 962, 965 (1975)).   "Integral to any agency relationship are the **elements of consent and control**." *Wolfe v. Schulz Refrigeration,* 188 Mont. 511, 517, 614 P.2d 1015, 1018 (1979) (emphasis added); *see also Dick Irvin Inc. v. State*, 2013 MT 272, ¶ 49, 372 Mont. 58, 310 P.3d 524.

Under Montana law, an agency is either actual or ostensible:

> An agency is actual when the agent is really employed by the principal. An agency is ostensible when the principal intentionally or by want of ordinary care causes a third person to believe another to be the principal's agent when that person is not really employed by the principal.

Mont. Code Ann. § 28-10-103(1).

With that, Montana law provides that "a principal is liable for the negligence and wrongful acts of the agent that are committed within the scope of either actual or ostensible agency." *Butler v. Unified Life Ins. Co.*, No. CV 17-50-BLG-SPW-TJC, 2019 U.S. Dist. LEXIS 170668, at *47-48 (D. Mont. Aug. 9, 2019) (citing Mont. Code Ann. §§ 28-10-601, -602). A principal may also be deemed to have notice of the facts and information known to its agent "that the agent should, in good faith and exercising due care and diligence, have communicated to the principal." *Kaeding v. W.R. Grace & Co.*, 1998 MT 160, ¶ 26, 289 Mont. 343, 961 P.2d 1256 (citing Mont. Code Ann. § 28-10-604). Further:

> A corporation can acquire knowledge or notice only through its officers and agents, and is charged with knowledge of all material facts of which they acquire knowledge while acting in the course of their employment and within the scope of their authority, even though they do not in fact communicate it.

*Palmer v. Great N. Ry. Co.*, 119 Mont. 68, 82-83, 170 P.2d 768, 775-76 (1946) (quoting 19 C.J.S., Corporations, § 1078, p. 613).

Here, there is no evidence demonstrating the required elements of consent and control which would establish an agency relationship between WTPA and the

9

MOULTON BELLINGHAM PC<br>
ATTORNEYS AT LAW

Hardin Congregation. *See Wolfe,* 188 Mont. at 517, 614 P.2d at 1018. WTPA's primary role during the relevant time period was to hold the copyright and publish some of the Jehovah's Witnesses publications, including their most prized possession, the New World Translation of Holy Scriptures. (*See* SUF ¶ 8.) While Plaintiffs have moved for summary judgment to establish that the elders of the Hardin Congregation were agents of WTNY (Doc. 339), an argument which WTPA does not concede to, there is no such support to establish that the elders were also agents of WTPA. For example, there is no evidence showing that WTPA appointed, removed, or trained any of the local congregation officials, and WTPA played no role in the formation of the Hardin Congregation. Indeed, the undisputed evidence demonstrates the opposite. (*See* SUF ¶¶ 9-10.) WTPA also was not responsible for assigning or appointing circuit overseers. (*See* SUF ¶ 9.)

More importantly, there is nothing that would demonstrate that the Congregation was subject to the control of WTPA, that the congregation members were continually subjected to the will of WTPA, or that the elders held power to alter the legal relations WTPA, meaning that no agency existed between WTPA and the Hardin Congregation. *See Lewis v. Bellows Falls Congregation of Jehovah's Witnesses*, 248 F. Supp. 3d 530, 542-43 (D. Vt. 2017) (holding that male member of congregation was not an agent of national religious organization); *see also Gillet v. Watchtower Bible & Tract Soc. of Pennsylvania, Inc.*, 913 So. 2d 618, 620-21 (Fla.

MOULTON BELLINGHAM PC
ATTORNEYS AT LAW

Dist. Ct. App. 2005) (finding that congregation member was not an agent of WTPA when she was involved in an accident on the way to conduct religious activity); *Eckler v. Gen. Council of the Assemblies of God*, 784 S.W.2d 935 (Tex. App. 1990), *writ denied* (Feb. 6, 1991) (religious council's lack of supervisory power over local churches within congregation including through constitution and bylaws giving no authority to churches or ministers to act on behalf of general council, established lack of agency relationship with local church as matter of law). And again, the undisputed evidence in the record establishes those factors did not exist between WTPA and the Congregation. (*See* SUF ¶¶ 11.)

Accordingly, the undisputed material evidence in the record establishes that the Hardin Congregation was not an agent of WTPA as a matter of law. *See Semenza*, ¶ 19. Therefore, WTPA cannot be vicariously liable for the alleged conduct of the Congregation relating to Plaintiffs' alleged sexual abuse.

## II.   AS A MATTER OF LAW, WTPA CANNOT BE VICARIOUSLY LIABLE FOR WTNY BECAUSE WTPA AND WTNY HAD NO AGENCY RELATIONSHIP AND WERE NOT ALTER EGOS OF EACH OTHER.

As there is no evidence showing that the Hardin Congregation acted as an agent for WTPA, Plaintiffs argue instead that WTPA should be liable for the alleged actions and knowledge of WTNY or the agents of WTNY, which Plaintiffs assert would include the Hardin Congregation. (*See* Doc. 22 at ¶ 32; Doc. 201 at 11; Doc. 339.) To that end, Plaintiffs previously requested leave of the Court to amend their

Complaint to add allegations regarding the purported alter ego relationship between WTPA and WTNY in order to further Plaintiffs' theory of shared liability between the two entities for each other's conduct.  (*See* Doc. 189, 190, 201.)  The Court rejected those substantive amendments as untimely.  (Doc. 238.)  Even if Plaintiffs had been able to assert those new allegations, the undisputed material facts demonstrate that WTPA could not be vicariously liable for WTNY's alleged conduct, either through an agency relationship or as its "alter ego."

### A.   NO AGENCY RELATIONSHIP EXISTED BETWEEN WTPA AND WTNY.

As provided *supra*, the elements of consent and control are "[i]ntegral to any agency relationship."  *Wolfe,* 188 Mont. at 517, 614 P.2d at 1018.  While the two entities cooperate together to achieve their share religious goals, neither WTPA nor WTNY exercise legal control over the other to establish an agency relationship.  For example, there is nothing in WTPA's corporate charter that indicates any control or authority over any other corporations used by Jehovah's Witnesses, including WTNY. (SUF ¶¶ 13.)  Such lack of control is dispositive to the issue of agency.

Plaintiffs are likely to argue that WTPA and WTNY were agents of one another because they shared directors and officers during the relevant time period.  However, such an arrangement is not legally dispositive to the issue of agency.  According to the Restatement 3d of Agency:

> The fact that a corporation or other entity owns a majority of the voting equity in another entity does not create a relationship of agency between

12

them or between each entity and the other's agents. Likewise, common ownership of multiple entities does not create relationships of agency among them. An entity becomes the agent of another entity, and an individual becomes an entity's agent, only when they are linked by the elements of an agency relationship.

> ***Within a related group of corporations or other entities the same individuals may serve as officers or directors of more than one entity***. An overlapping cast in multiple organizational roles does not in itself create relationships of agency that are not otherwise present.

Restatement 3d of Agency, § 7.03 (emphasis added) (internal cross-references omitted).  At least one circuit court has likewise rejected such an agency argument when considering the relationship between a parent corporation and its subsidiary. In *Lusk v. Foxmeyer Health Corp*., 129 F.3d 773, 778 (5th Cir. 1997), the Fifth Circuit held that only evidence of control suggesting a significant departure from the ordinary relationship between a parent and its subsidiary is sufficient to rebut the presumption that a subsidiary corporation is not an agent for a parent entity.  The Fifth Circuit also observed that "courts have recognized that the mere existence of common management and ownership are not sufficient to justify treating a parent corporation and its subsidiary as a single employer." *Id.  See also City of Los Angeles v. San Pedro Boat Works*, 635 F.3d 440, 453 (9th Cir. 2011) (knowledge of wholly-owned subsidiary's employee could not be imputed to parent corporation).

Consequently, the undisputed material facts demonstrate that no agency relationship existed between WTPA and WTNY as a matter of law.

**B.   THE ALTER EGO THEORY OF LIABILITY DOES NOT APPLY IN THIS CASE.**

Plaintiffs alternatively allege an "alter ego" theory to hold WTPA liable for the alleged conduct of WTNY.  However, alter ego is not a viable theory in this case. Claiming that one is the alter ego of another is a theory to allow a plaintiff to "pierce" the veil of a corporate entity.

The Montana Supreme Court has also defined "alter ego" in the following context:

> [A] corporation's separate identity may be disregarded when such corporation is under the control of an individual, and acted as that individual's agent as to the particular transaction, or, when the corporation's identity is so identified with the individual sought to be held liable as to make the corporation and the individual one.

*Drilcon, Inc. v. Roil Energy Corp.*, 230 Mont. 166, 174, 749 P.2d 1058, 1063 (1988).

"The doctrine is used to impose liability on an individual who uses an entity merely as an instrumentality to conduct his or her own personal business; such liability results from fraud or injustice perpetrated not on the corporation, but on third persons dealing with the corporation...."  *See* 114 Am. Jur. *Proof of Facts* 3d 403 § 5 (Westlaw 2014); 1 Fletcher Cyc. Corp. §§ 41.10 and 41.20.  The "alter ego theory narrowly focuses on the personal liability of controlling shareholders."  *See* Jody J. Brewster, Comment, *Piercing the Corporate Veil in Montana*, 44 Mont. L. Rev. 91, 106-10.  As a matter of law, an "alter ego" theory clearly does not apply in this case.

As a matter of law, a corporation is a legal entity "separate and distinct" from its shareholders. *Zempel v. Liberty*, 2006 MT 220, ¶ 14, 333 Mont. 417, 143 P.3d 123; *State ex rel. Monarch Fire Ins. Co. v. Holmes.* 113 Mont. 303, 308, 124 P.2d 994, 996 (1942). Distinct from its individual shareholders, a corporation is a fictional legal entity created and authorized by law for lawful operation by its agents in the public interest. 1 Fletcher Cyc. Corp. § 41 (Westlaw 2014); *see also Scott v. Prescott*, 69 Mont. 540, 557, 223 P. 490, 495 (1924). The public purpose of the fiction is to promote economic activity by allowing shareholders to make capital investments for lawful purposes free of personal liability for corporate debts and liabilities by "isolate[ing] the actions, profits, and debts of the corporation from the individuals who invest in and run" it. *McCallum Family LLC. v. Winger*, 221 P.3d 69, 73-74 (Colo. App. 2009) (internal quotation marks omitted). Thus, as a matter of public policy, corporate shareholders are generally not liable for corporate acts, debts, and liabilities. *See Zempel*, ¶¶ 14-15; *Phillips.* 187 Mont. at 424-25, 610 P.2d at 157-58; *see also* § 35-1-535(2)(b), MCA (passive corporate shareholders not personally liable except under veil piercing doctrine).

However, regardless of the essential public purpose of a corporation, equity may occasionally require disregard of the protection of the corporate veil if a controlling shareholder abuses the privilege of using the corporation in a lawful manner. 1 Fletcher Cyc. Corp. §§ 41, 41.10, 41.20, and 41.25; *see also Hando v.*

*PPG Industries, Inc.*, 236 Mont. 493, 498, 771 P.2d 956, 960 (1989) (equitable purpose of veil piercing is to "curb injustices resulting from improper use of corporate entity").

With that, the Third Circuit has held that alter ego theory is not a "mechanism for imposing legal liability" but for "remedying the fundamental unfairness that will result from failure to disregard corporate form." *Trustees of Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 193 fn.6 (3rd Cir. 2003). Further, in contrast to the broader focus of the agency theory on the personal conduct of corporate agents, the alter ego theory narrowly focuses on the personal liability of controlling shareholders. Jody J. Brewster, Comment, *Piercing the Corporate Veil in Montana*, 44 Mont. L. Rev. 91, 106-10 (Winter 1983) (noting confusing failure of Montana case law to clearly distinguish between agency and alter ego theories of personal liability).

Therefore, the foregoing authority establishes that Plaintiffs' alter ego theory of liability fails as a matter of law.

## CONCLUSION

As provided herein, the undisputed material facts in the record demonstrate that WTPA cannot be held vicariously liable for the alleged conduct of either WTNY or the Hardin Congregation as a matter of law. Therefore, WTPA is entitled to

summary judgment regarding Plaintiffs' allegations and claims that WTPA is vicariously liable for the underlying conduct alleged in this matter.

**DATED** this 12th day of April, 2024.

MOULTON BELLINGHAM PC


By:   */s/ Jordan W. FitzGerald*
      GERRY P. FAGAN
      CHRISTOPHER T. SWEENEY
      JORDAN W. FITZGERALD
      27 North 27th Street, Suite 1900
      P.O. Box 2559
      Billings, Montana 59103-2559

      *Attorneys for Defendant Watch Tower Bible
      and Tract Society of Pennsylvania*

17

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(d)(2)(E), the undersigned hereby certifies this brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double-spaced, with left, right, top, and bottom margins of one inch; and that the word count calculated by Microsoft Word is 3,919 words, excluding the Certificate of Compliance.

**DATED** this 12th day of April, 2024.

MOULTON BELLINGHAM PC


By:   */s/ Jordan W. FitzGerald*
   GERRY P. FAGAN
   CHRISTOPHER T. SWEENEY
   JORDAN W. FITZGERALD
   *Attorneys for Defendant Watch Tower Bible*
   *and Tract Society of Pennsylvania*

**MOULTON BELLINGHAM PC**
ATTORNEYS AT LAW