Jon A. Wilson
Brett C. Jensen
Michael P. Sarabia
BROWN LAW FIRM, P.C.
315 North 24th Street
P.O. Drawer 849
Billings, MT 59103-0849
Tel. (406) 248-2611
Fax (406) 248-3128

Joel M. Taylor, Esq. (appearing *pro hac vice*)
MILLER MCNAMARA & TAYLOR LLP
412 Clock Tower Commons Dr.
Brewster, NY 10509

Tel./E-Fax (845) 288-0844
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY,<br><br>Plaintiffs,<br><br>vs.<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR.,<br><br>Defendants. | Cause No. CV 20-52-BLG-SPW<br><br>**DEFENDANT WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION RE: SANCTIONS FOR SPOLIATION OF EVIDENCE (DOC. 328).** |

i

**COMES NOW**, Defendant Watchtower Bible and Tract Society of New York, Inc. ("WTNY"), and submits its Response Brief in Opposition to Plaintiffs' Motion Re: Sanctions for Spoliation of Evidence (Doc. 328).

## INTRODUCTION and FACTUAL BACKGROUND

Plaintiffs have filed yet another motion seeking sanctions and making harsh accusations at WTNY. Weaving an argument driven by their self-serving and selective version of discovery and production, Plaintiffs accuse WTNY of attempting to keep documents "secret," intentionally hiding other evidence, and willfully destroying evidence. However, Plaintiffs bear the burden of proving that spoliation occurred. *See Pride Energy Co. v. Trusts*, 2023 U.S. Dist. LEXIS 79118, at *11 (D. Mont. Feb. 24, 2023) (internal citation omitted). Plaintiffs' spin on discovery is not accurate, their accusations are false, and they did not satisfy their burden. Their Motion should be denied.

Contrary to the suggestions by Plaintiffs' counsel, WTNY's representations regarding the documents at issue have been consistent. Following the Court's Order dated May 22, 2023 (Doc. 237), WTNY supplemented its prior discovery production to include responsive documents from the Service Department and the Christian Congregation of Jehovah's Witnesses (hereinafter "CCJW"). A copy of these supplemental discovery responses dated July 5, 2023, is attached as Exhibit 1. The supplemental discovery responses confirmed that "All WTNY, CCJW, and Service

1

Department documents responsive to this request have either been listed on a privilege log or produced." *See, e.g.*, Ex. 1, First Supplemental Response to Request for Production No. 10, p. 4.  WTNY's fourth supplemental privilege log, a copy of which is attached as Exhibit 2, was produced along with the supplemental discovery responses.  Certain of the entries in the fourth supplemental privilege log referenced internal summaries/memorandums "based on correspondence/communications from elders."  *See, e.g.*, Ex. 2, PL No. 87, p. 29.

By letter dated August 2, 2023, a copy of which is attached as Exhibit 3, Plaintiffs' counsel sought clarification regarding references to "correspondence/communications" in the privilege log, and a reference to "our records" in relation to one of the documents produced with the supplemental discovery responses.  *See* Ex. 3, pp. 1-2.  By letter dated August 7, 2023, a copy of which is attached as Exhibit 4, WTNY's counsel explained:

> WTNY has no way of determining what "correspondence/communications" or "our records" are being referred to in the documents identified, with the use of the term "communications" suggesting some of the references may have been to telephone calls.  All documents related to the documents identified have either been produced, identified in the privilege log, or no longer exist.

*See* Ex. 4, pp. 1-2.  Plaintiffs' counsel reiterated this question in various discovery requests, and WTNY provided consistent responses.  In WTNY's Responses to Plaintiffs' Sixth Set of Combined Discovery dated October 2, 2023, a copy of which is attached as Exhibit 5, WTNY explained: "All documents related to the documents

2

identified as Privilege Log Nos. 87-93 have either been produced, identified in the privilege log, or no longer exist." *See* Ex. 5, Response to Request for Production No. 94, pp. 2-3. In WTNY's Responses to Plaintiffs' Seventh Set of Combined Interrogatories and Requests for Production, Exhibit 6 hereto, WTNY explained as follows in response to a request for production about documents related to the internal summaries that no longer exist:

> WTNY is unable to answer this Interrogatory and subparts because it has no way of knowing whether any such documents ever existed. When the Memorandums of Record were created, the elder in the Service Department had the liberty to rely on any then existing religious documents and had the option to call the elders for details contained in the Memorandums. WTNY cannot reverse engineer how the Service Department elder created the Memorandums of Record and therefore would only be guessing what specific records and/or documents formed the factual basis for the Memorandums. Every existing document that could have formed the basis for the Memorandums has either been produced or identified in the privilege log. If there were any other records/documents that formed the factual basis for the Memorandums of Record when they were created, such records/documents were discarded once the memorandums were completed.

*See* Ex. 6, Answer to Interrogatory No. 33, pp. 8-9. In total, WTNY has always been consistent that the documents upon which the internal summaries/memorandums were based have been produced, identified in the privilege log, or no longer exist.

The language quoted at page 2 of Plaintiffs' Brief was not in response to a question about those internal summaries/memorandums. Rather, by letter dated November 20, 2023, a copy of which is attached as Exhibit 7, Plaintiffs' counsel asked a question regarding a reference to "litigation holds" in WTNY's Answer to

3

Interrogatory No. 14. By letter dated December 7, 2023, a copy of which is attached as Exhibit 8, WTNY's counsel explained that such reference was to a case titled *Jose Lopez v. WTNY, et al.*, Superior Court of the State of California, County of San Diego. Ex. 8, p. 4. While Plaintiffs attempt to conflate the communications regarding the internal summaries/memorandums with the communications regarding Interrogatory No. 14, there is no inconsistency as explained in the Affidavit of Mario Moreno (hereinafter "Moreno Aff." or "Ex. 9") attached as Exhibit 9.

In 2013, WTNY initiated a litigation hold in the *Lopez* litigation (hereinafter "*Lopez* Hold") that dealt with records sent to WTNY from elders in congregations of Jehovah's Witnesses in response to a March 14, 1997, letter to all bodies of elders, as well as records sent to WTNY regarding child sexual abuse from 1979 to 2013. *See* Ex. 9, Moreno Aff., ¶¶ 7-8. Prior to mid-March 2001, congregations of Jehovah's Witnesses would correspond with WTNY about numerous religious subjects, and experienced elders in the Service Department would respond on WTNY letterhead. *Id.*, ¶ 3.[1] Starting in mid-March 2001, congregations of Jehovah's Witnesses began corresponding with non-party Christian Congregation of Jehovah's Witnesses about the aforementioned religious subjects, and experienced elders in the Service Department would respond on CCJW letterhead. *Id.*, ¶ 4.[2]

---

[1] Those communications were maintained in hardcopy until the mid-2000s, when they were progressively converted to electronic format. *Id.*, ¶ 4.
[2] Such correspondence was separate from legal correspondence, which was directed to WTNY both before and after mid-March 2001. *Id.*, ¶ 9.

Since congregations stopped sending religious correspondence regarding child abuse to WTNY in mid-March 2001, it had no post-mid-March 2001 records responsive to the *Lopez* Hold except for later correspondence involving legal matters in the Legal Department, and all such legal records responsive to Plaintiffs' requests in the present case have been produced or identified on the privilege log. *Id.*, ¶ 9. Also, unlike in the present case, WTNY was not compelled to produce documents directed to CCJW in the *Lopez* case, so those records were not subject to the *Lopez* Hold. Ex. 9, ¶ 10.[3] To comply with the *Lopez* Hold, the Legal Department secured all correspondence related to child sexual abuse and sent to WTNY through mid-March 2001, and continues to maintain those documents. *Id.*, ¶ 11.

The Service Department, which had responded to correspondence on WTNY letterhead, had a redundant copy of the child sexual abuse correspondence secured by the Legal Department in compliance with the *Lopez* Hold. *Id.*, ¶¶ 3, 12. The Service Department also had records unrelated to child sexual abuse, which could have contained information such as a person's date of birth, baptism date, congregation move date, and date of death. *Id.*, ¶ 13. In the mid- to late-2010s, the Service Department began in some cases to consolidate multiple PDFs into one

---

[3] In separate litigation previously cited by this Court (case 1:20-cv-00052-SPW, Doc 237, at 11), *Padron v. Watchtower, et al.*, a California trial court adopted a discovery referee's finding that WTNY had custody and control of CCJW records ("Padron decision"). However, that case involved a narrower set of documents, responses to the March 14, 1997, letter to all bodies of elders, not <u>all</u> records related to child sexual abuse. *See Padron v. Watchtower Bible & Tract Society of New York, Inc.*, 225 Cal. Rptr. 3d 81 (Cal Ct. App. 2017) at 87. Thus, the Padron decision only triggered a duty to preserve responses CCJW received to that specific letter, not records generally.

5

Memorandum of Record to facilitate ease of access to information and reduce the amount of data maintained. Ex. 9, ¶ 14. These Memorandums of Record were used to summarize information that may be scattered across a number of documents from one or more congregations, or to capture information obtained from oral communications such as telephone calls with elders in a congregation. *Id.*, ¶ 15. While some records unrelated to child sexual abuse used in preparing Memorandums of Record may no longer exist, no WTNY record containing child sexual abuse information would have been destroyed that was not already preserved by the Legal Department, and all such records responsive to Plaintiffs' requests in the present case have been produced or identified on the privilege log. *Id.*, ¶ 16.

On page 6 of their brief, Plaintiffs take particular issue with a Memorandum regarding Bruce Mapley, Sr., that is dated November 16, 2019 (hereinafter "Mapley Memo"), and references a "letter of introduction" from a March 2015 move. Neither WTNY nor CCJW generate letters of introduction, which are generally sent between congregations when a congregant moves from one congregation to another. *See* Ex. 9, ¶ 19. The "letter of introduction" referenced in the Mapley Memo could have been sent to CCJW, or the elder in the Service Department preparing the Mapley Memo may have telephoned the congregations for details and information that was conveyed orally, so that the mention of a "letter of introduction" does not evidence its existence or non-existence at CCJW. *Id.*, ¶¶ 20. The Mapley Memo also notes

that Tracy "raised a cry of complaint," which phrase reflects Biblical language found in Genesis 18:20, 21, and Exodus 2:23-25 to describe when a congregant is suffering and seeking assistance. *Id.*, ¶ 21. The Mapley Memo also references three letters from 2004, 2010, and 2019 that were sent to congregations numbered 46052, 46771, and 60087, respectively. *Id.*, ¶ 22. Those congregation numbers refer to congregations in Iron River, Wisconsin; Shawano, Wisconsin; and Roebuck, Birmingham, Alabama. Ex. 9, ¶ 23. Those letters were sent by CCJW, meaning they were not subject to the *Lopez* Hold. *Id.*, ¶ 24. Also, while copies of the letters were not maintained in the ordinary course, a reference to the type of letter was maintained, which explains the reference to a "#1 letter," which is a templated letter. *Id.* Notably, none of these letters was subject to any litigation hold.

Page 8 of Plaintiffs' brief also references "repeated threats of legal action" related to PL Nos. 2, 3, 6, 7, 24, 41, and 42. Such reference is in relation to a letter to Plaintiffs' counsel dated May 2, 2022, a copy of which was attached as Exhibit G to Plaintiffs' brief, providing further explanation regarding items in the privilege log, including those specified by Plaintiffs. Of the privilege log entries identified by Plaintiffs, PL Nos. 6, 7, 24, 41, and 42 do not include any information received after May 7, 2019, the effective date of the amendment of Mont. Code Ann. § 27-2-216. *See* Ex. 2, pp. 2, 4, 6. As to PL Nos. 2 and 3, only five of the telephone calls identified in the May 2, 2022, letter involve communications that occurred after May 7, 2019

7

and all of those calls were received by the Legal Department at WTNY about purported allegations from decades earlier. Those calls may have triggered an obligation on the part of WTNY to maintain any then existing potentially responsive records. WTNY had done just that. CCJW was not party to the calls, not subject to any litigation holds, and did not exist when the allegations discussed in those calls allegedly occurred thus those calls triggered no duty on the party of CCJW to do anything.[4]

## LEGAL STANDARD

"Spoliation is an evidentiary doctrine under which a district court can, in its discretion, sanction a party that destroys evidence, if the party is on notice that the evidence is potentially relevant to pending litigation." *Leeson v. Transamerica Disability Income Plan*, 279 F. App'x 563, 565 (9th Cir. 2008) (quoting *United States v. Kitsap Physicians Serv.,* 314 F.3d 995, 1001 (9th Cir. 2002)).

---

[4] The first and second of these are telephone calls from elders at the Park Place Congregation in Oregon, to the Legal Department at WTNY on May 30, 2019 and July 25, 2019, regarding a litigation threat involving Mr. Mapley's alleged conduct from decades earlier with no indication of any potential litigation involving non-party CCJW. *See* Ex. G to Plaintiffs' brief, p. 4. The third and fourth of these are telephone calls from elders at the Center Point Congregation in Alabama, to the Legal Department at WTNY on June 12, 2019, and September 23, 2019, regarding a litigation threat involving Mr. Mapley's alleged conduct from decades earlier with no indication of any potential litigation involving non-party CCJW. *Id.* The fifth of these is a telephone call from an elder at the Roebuck Congregation in Alabama, to the Legal Department at WTNY on October 1, 2019, regarding legal obligations involving Mr. Mapley's alleged conduct, from decades earlier with no indication of any potential litigation involving non-party CCJW. *Id.* While not referenced in Plaintiffs' brief, the May 2, 2022, letter's discussion regarding PL Nos. 8 and 9 references two calls from elders in the West Laurel Congregation on May 1, 2020, regarding legal obligations involving alleged conduct by Martin Svenson; and the discussion regarding PL Nos. 10 and 11 references two calls from elders in the Hardin Congregation on October 17, 2019, and December 13, 2019, regarding legal obligations involving alleged conduct by Gunnar Hain. See Ex. G. to Plaintiffs' brief, p. 6. None of these communications suggested any threat of litigation. In total, none of the communications related to those privilege log entries identified by Plaintiffs involved a threat of litigation against CCJW after May 7, 2019. Indeed, all of the alleged tortious conduct in this case occurred years (and in some instances decades) before CCJW came into existence.

If a party has destroyed evidence, the party requesting sanctions for spoliation then must establish that:

(1) "the party having control over the evidence had an obligation to preserve it at the time it was destroyed";
(2) "the records were destroyed with a culpable state of mind"; and
(3) "the evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."

*Pride Energy*, 2023 U.S. Dist. LEXIS 79118, at *10-11 (D. Mont.) (quoting *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F. Supp. 2d 976, 989-90 (N.D. Cal. 2012)); *see also Leon*, 464 F.3d at 958 (outlining a similar test for determining when to "impos[e] the harsh sanction of dismissal") (citation and internal quotations omitted).

The duty to preserve evidence does not continue indefinitely. *See Head v. Cnty. of Sacramento*, No. 2: 19-cv-1663 TLN KJN P, 2023 U.S. Dist. LEXIS 16136, at *11 (E.D. Cal. Jan. 31, 2023) (internal citation omitted). Instead, the duty to preserve evidence ends at the point when the possibility of future litigation becomes not reasonably foreseeable. *See Edwards v. Hearst Communs., Inc.*, No. 15-CV-9279 (AT) (JLC), 2017 U.S. Dist. LEXIS 207540, at *10-11 (S.D.N.Y. Dec. 18, 2017) (finding that duty to preserve ended on dismissal of a lawsuit with prejudice). For example, the possibility of future litigation is not reasonably foreseeable when the underlying claims have become time-barred. *See Sussman v. ABC*, 971 F. Supp.

9

432, 435-36 (C.D. Cal. 1997) (dismissing independent claim for spoliation of evidence where other claims were barred by statute of limitations).

## LEGAL ARGUMENT

**A.   The Court should deny Plaintiffs' motion because WTNY did not destroy any documentation regarding child sexual abuse and complied with applicable legal holds at all relevant times.**

Plaintiffs argue WTNY did not preserve "critical evidence of child sex abuse at issue in this case[.]" (Doc. 329, p. 15 of 25). That's just not true. While it is true that WTNY has acknowledged some documents (if existing, likely CCJW's) used to generate the Memorandums may have been discarded,[5] no WTNY documents regarding or related to child sex abuse have been discarded since WTNY's Legal Department, in response to the *Lopez* litigation hold in 2013, preserved copies of those documents and maintained them. (*See* Ex. 9, ¶¶ 7, 11, 16). WTNY possesses all of its documents regarding or related to child sex abuse to this day, and, regarding those relevant to the accusations in this case, it has either produced them or entered them on the privilege log. (*Id.*). WTNY complied with and continues to comply with the spirit of the litigation hold in *Lopez* even though that case has long since been dismissed. (*Id.*).

Plaintiffs also argue a document showing that "Tracy [Caekaert] raised a cry of complaint over the abuse not being reported to the authorities and his not being

---

[5] *See* Ex. 6, pp. 8-9.

registered as a sex offender" must have been destroyed, as it has "not been produced or identified in WTNY's privilege log." (Doc. 329, p. 10 of 25). However, that phrasing does not refer to a document, but rather language found in the Bible. (*Id.*, ¶ 21). Further, the elder who prepared the respective Memorandum may have gained that knowledge about Tracy's complaint from a telephone conversation. (*See* Ex. 9, ¶¶ 15, 20). In any case, and again, all documents responsive to Plaintiffs' requests in the present litigation have either been produced or entered on the privilege log. (Id., ¶ 16).

In short, WTNY did not discard any documents subject to a litigation hold or duty to preserve.

> **B.     The Court should deny Plaintiffs' motion because any documents that formed the basis for Memorandums which were subsequently "discarded" were not subject to a legal hold and neither WTNY nor any entity who discarded them had a duty to preserve those documents at the time they were discarded.**

Now, the internal Memorandums could have been generated, at least in part, on non-child-sex-abuse documents which were never subject to a litigation hold at any relevant time. (*See* Ex. 9, ¶¶ 10, 13, 15-16). It is possible, then, that records not subject to a litigation hold but which were used, in part, to generate internal Memorandums were discarded. (*Id.*, ¶16). Further and in any case, non-party Christian Congregation of Jehovah's Witnesses ("CCJW") itself was never subject

11

to the *Lopez* litigation hold, or any other litigation hold, at any time records would have been discarded (*See id.*, ¶ 10).

    C.    **The Court should Deny Plaintiffs' motion because May 6, 2019 is the earliest trigger date for a duty to preserve records potentially relevant to the instant case, and other than those already preserved in relation to *Lopez*, as the claims herein were time-barred before the enactment of the "revival" portion of Mont. Code Ann. § 27-2-216(5)(b), and WTNY did not breach any duty to preserve.**

Plaintiffs attempt to establish May 5, 2011, as the triggering date for a duty to preserve documents potentially relevant to the instant case by arguing WTNY was on notice of threatened litigation concerning child sex abuse allegations against the Gunnar Hain, Bruce Mapley, Sr., and Martin Svenson. (*See* Doc. 329, pp. 12 and 17 of 25). Plaintiffs are mistaken for a few reasons.

First, the scope of the *Lopez* litigation hold extended to all records sent to WTNY by elders of congregations in response to WTNY's March 14, 1997, letter to all bodies of elders, and to all child abuse records from 1979 to 2013. (Ex. 9, ¶¶ 7-8). All of these documents in WTNY's possession involving child sexual abuse were preserved in compliance with the *Lopez* litigation hold, and, at this point, have either been produced in discovery or entered on the privilege log. (*Id.*, ¶¶ 11, 16). However, the scope of the *Lopez* litigation hold did not extend to all documents referencing individuals in this case—i.e., there may have been documents, for instance, mentioning "Gunnar Hain," but not in connection with any child sexual abuse allegation, and not in response to WTNY's March 14, 1997 letter. Further, CCJW

12

and documents sent to it were not subject to the litigation hold. (*Id.*, ¶ 10). Documents like these are the ones that could have been destroyed/discarded prior to the filing of the instant lawsuit, and such destruction would not have violated any applicable litigation hold. (*Id.*, ¶ 16).

Secondly and critically, in 2011—and until May 6, 2019—WTNY could not have foreseen or expected any litigation of Plaintiffs' claims precisely because those claims were time-barred in Montana—indeed, had been time-barred for many years—and there can be no duty to preserve documents relevant to time-barred cases. *See Sussman v. ABC*, 971 F. Supp. 432, 435-36 (C.D. Cal. 1997).

It was not until May 6, 2019, that the Montana legislature enacted the "revival" portion of Mont. Code Ann. § 27-2-216(5)(b), which effectively revived Plaintiffs' claims in this case. Accordingly, to the extent any documents potentially relevant to this case—and which were not subject to a litigation hold—were discarded prior to the May 6, 2019, revival statute, there was no duty to preserve and thus no spoliation. The relevant time period for purposes of identifying events that could have triggered a duty to preserve relevant documents,[6] then, is post-May 6, 2019.

Plaintiffs cite "sixteen (16) phone calls with eleven (11) different Jehovah's Witnesses' congregations related to threatened litigation involving [alleged] abuse child sex abuse committed by Bruce Mapley, Sr." (Doc. 329, p. 12 of 25). To the

---

[6] Again, documents not subject to any litigation hold.

extent these calls between May 6, 2019, and the filing of the lawsuit triggered any duty to preserve, WTNY fulfilled that duty because it maintained and continues to maintain all documents related to child sex abuse, and those, again, have either been produced or listed on the privilege log. Further, any documents generated in response to these calls have been maintained and either produced or listed on the privilege log as well. Finally, CCJW could not have had notice of threatened litigation by Plaintiffs from any of these calls: it was not in existence at the time of the alleged abuse herein.

## **CONCLUSION**

In total, all child sexual abuse records subject to any duty to preserve have been preserved. Any records which may have been discarded were not subject to a litigation hold or duty to preserve at the time they were discarded. Plaintiffs, therefore, cannot establish their spoliation claim. *See Pride Energy*, 2023 U.S. Dist. LEXIS 79118, at *10-11 (quoting *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F. Supp. 2d 976, 989-90 (N.D. Cal. 2012))(outlining elements required to establish spoliation, including an applicable duty to preserve any documents that were destroyed). Therefore, WTNY respectfully requests Plaintiffs' spoliation motion (Doc. 328) be denied.

DATED this 17th day of April, 2024.

          By: /s/ Michael P. Sarabia
              Jon A. Wilson / Brett C. Jensen / Michael P. Sarabia
              BROWN LAW FIRM, P.C.
              *Attorneys for Defendants Watchtower Bible and Tract Society of New York, Inc.*

          By: /s/ Joel M. Taylor
              Joel. M. Taylor (appearing *pro hac vice*)
              MILLER MCNAMARA & TAYLOR LLP
              *Attorneys for Defendants Watchtower Bible and Tract Society of New York, Inc.*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(d)(2)(E), the undersigned hereby certifies this brief complies with L.R. 7.1(d)(2)(A). According to the word-processing unit used to prepare this brief, the word count is 3,889 words excluding caption, table of contents and authorities, exhibit index, and certificates of service and compliance.

DATED this 17TH day of April, 2024.

> By: /s/ Michael P. Sarabia
> Jon A. Wilson / Brett C. Jensen / Michael P. Sarabia
> BROWN LAW FIRM, P.C.
> *Attorneys for Defendants Watchtower Bible and Tract Society of New York, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on April 17th, 2024, a copy of the foregoing was served on the following person(s):

1. U.S. District Court, Billings Division

2. Robert L. Stepans/Ryan R. Shaffer/James C. Murnion
   MEYER, SHAFFER & STEPANS, PLLP
   430 Ryman Street
   Missoula, MT 59802

3. Matthew L. Merrill (appearing *pro hac vice*)
   MERRILL LAW, LLC
   1401 Delgany Street, #404
   Denver, CO 80202

4. Gerry P. Fagan/Christopher T. Sweeney/Jordan W. FitzGerald
   MOULTON BELLINGHAM PC
   P.O. Box 2559
   Billings, MT 59103-2559

5. Bruce G. Mapley Sr.
   3905 Caylan Cove
   Birmingham, AL 35215

by the following means:

| | | | |
|---|---|---|---|
| _1-4_ | CM/ECF | ____ | Fax |
| _1_ | Hand Delivery | _5_ | E-Mail |
| ____ | U.S. Mail | ____ | Overnight Delivery Services |

By: /s/ Michael P. Sarabia
Jon A. Wilson / Brett C. Jensen /
Michael P. Sarabia
BROWN LAW FIRM, P.C.
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

17