# Exhibit 7



**Meyer, Shaffer & Stepans, PLLP**

Ryan Shaffer | ryan@mss-lawfirm.com
Robert L. Stepans | rob@mss-lawfirm.com
James Murnion | james@mss-lawfirm.com
Katy Gannon | katy@mss-lawfirm.com

November 20, 2023

**Via Email and U.S. Mail**

Jon A. Wilson
Brett C. Jensen
Michael P. Sarabia
BROWN LAW FIRM, P.C.
PO Drawer 849
Billings, MT 59103
jwilson@brownfirm.com
bjensen@brownfirm.com
msarabia@brownfirm.com

Joel M. Taylor, Esq. *pro hac vice*
Miller McNamara & Taylor LLP
100 South Bedford Road, Suite 340
Mount Kisco, NY 10549
jtaylor@mmt-law.com

Re:  Discovery Conferral
     *Caekaert & Mapley v. Watchtower Bible and Tract Society of New York, Inc., et al.*
     *Rowland & Schulze v. Watchtower Bible and Tract Society of New York, Inc., et al.*

Dear Jon and Joel:

Plaintiffs are writing to address discovery concerns with the hope that we can resolve them swiftly without additional discovery motions.

**Reliance on Objections**

While WTNY has lodged voluminous objections to nearly every discovery request, as we understand it, the only objections that WTNY is relying on to withhold documents and information are: (1) attorney-client privilege; (2) clergy-penitent privilege; and (3) the alleged third-party privacy privilege. Furthermore, we understand that all such documents and information that are being withheld are identified in WTNY's privilege log. Please confirm that our understanding is correct.

**Scope of search for documents where a "diligent search" resulted in no responsive documents.**

For all RFPs where WTNY has stated that a "diligent search" resulted in no responsive documents, WTNY is to state the details of that diligent search. *See e.g.* RFP Nos. 21, 28, 54, 87. Of particular importance is identification of what files and databases were searched and which were not searched. For instance, were all files and file cabinets, databases, or other document repositories in the U.S. Branch Office searched? Same question for the files, databases, and document repositories of the Governing Body.

November 20, 2023
Page 2

As it stands, Plaintiffs cannot determine what files, databases, and document repositories have been searched and which have not. As a result, Plaintiffs cannot determine the extent of the search that has occurred.

**Databases, File Cabinets, Other Collections of Documents (Int. No. 31 and 32)**

WTNY's answer to these interrogatories are non-responsive.

The interrogatories seek identification of every database, data management system, file cabinet, document storage system, document repository, or other collection of documents which currently contains (Int. No. 31) or previously contained (Int. No. 32) documents pertaining to allegations of child sex abuse. A responsive answer will identify present and former databases, data management systems, file cabinets, document storage systems, document repositories, or other collections of documents that contain documents pertaining to child sex abuse.

For instance, WNTY's answer to Int. No. 5 implies that what has been previously referred to as a "CM database" is actually an "attorney note-taking system". *See* Ans. to Int. No. 5 (March 25, 2022). The answer to Int. No. 5 then goes on to state that "the database no longer exists." Thus, this "database" would be responsive to Int. No. 32, which seeks identification of databases that no longer exist.

In the same vein, WTNY's answers to Int. No. 14 states that for a period of time elders in the Service Department maintained documents pertaining to child sex abuse in a secure filing cabinet and that at some point over the period 2000 to 2010 those documents were scanned in and converted to PDF format. *See* Ans. to Int. No. 14 (Oct. 23, 2023). Thus, this would constitute a filing cabinet containing documents pertaining to child sex abuse that no longer exists that is responsive to Int. No. 32. That same answer goes on to state there is now a current document storage system for the remaining PDF documents in possession of the WTNY Legal Department. This would constitute a data storage system or document repository pertaining to child sex abuse that currently exists and is responsive to Interrogatory No. 31.

Finally, Interrogatories 31 and 32 are not limited to only WTNY's and CCJW's databases, data management systems, file cabinets, document storage systems, document repositories, or other collections of documents. Rather, the interrogatories seek WTNY's knowledge of the existence of all such databases, data management systems, file cabinets, document storage systems, document repositories, or other collections of documents that exist anywhere. This would include all Jehovah's Witnesses' databases, data management systems, file cabinets, document storage systems, document repositories, or other collections of documents.

In sum, Plaintiffs' Interrogatories 31 and 32 are asking for a clear, coherent, and unqualified recitation of: (1) the databases and files that presently contain documents pertaining to allegations of child sex abuse; and (2) the databases and files that previously contained such

November 20, 2023
Page 3

documents but no longer exist. I hope this clears up any misunderstanding regarding what Interrogatories 31 and 32 are requesting. Please provide responsive answers.

**Document retention and destruction policies and practices**

WTNY occasionally states that documents would, or would not, be kept "in the ordinary course." *See e.g.* Ans. to Int. No. 14. This phrase is vague, and Plaintiffs don't know what it means. What is the "ordinary course"?

At the same time, WTNY states that it had no document retention or destruction policies, but that records would be kept "as long as there was a religious need" or "legal need" to do so. *See e.g.* Ans. Int. No. 30. Here again, this phrase is too vague to have any practical meaning. What constitutes a "religious need" or a "legal need"? Ultimately, Plaintiffs have attempted to learn when Jehovah's Witnesses officials kept and discarded documents pertaining to child sex abuse. WTNY's answers seem to dance around providing a meaningful answer by using vague phrasing that fails to provide any meaningful indication of when a particular document (or category of documents) would be kept or discarded. Please supplement.

**Files for local congregations at the U.S. Branch Office / Circuit**

As we understand it, the U.S. Branch Office maintains a file for each of the congregations in the United States and those files typically contain reports received from circuit overseers.

In this case, we have asked for production of local congregation files and the production has been extremely thin, with very few documents and essentially no circuit overseer reports being produced. *See e.g.* RFP Nos. 52, 87, 88, 89. Please explain why the documents produced from the U.S. Branch Office's local congregation files in this case do not match the sorts of documents described in Mr. Juarez's Declaration about the documents that those files should contain.

**Request for Production No. 44 – Service Department Secretary Manual**

Please confirm the extent of the "diligent search" you completed for the document requested in RFP No. 44, including identification of all file cabinets, databases, and electronic storage repositories that were searched.

**Redaction of the names of material witnesses**

In several documents that WTNY has produced pertaining to the events at issue in this case it has redacted the names of material witnesses under the auspices of "third-party" privilege. *See e.g.* WTNY 3957-3967; 3978-79. As we understand it, you are relying on the Court's statement that the names of "third parties not involved in this litigation" may be redacted. As we have stated previously, people who have knowledge of the abuse at issue in this case, knowledge of the abusers and their conduct, and knowledge of the failure of Jehovah's Witnesses officials to stop

November 20, 2023
Page 4

the abuse from continuing are people involved in this case and there is no legitimate basis to hide their identifies from Plaintiffs. Ultimately, there is no special legal rule that allows the Jehovah's Witnesses to redact the names of fact witnesses from documents being produced in discovery. Therefore, we are asking you to reconsider your position on this matter.

### Litigation Holds

WTNY's answer to Interrogatory No.14 makes a vague reference to "litigation holds" during the "2010s." This part of WTNY's answer is vague. Please clarify: (a) what specific litigation holds are being referred to; (b) the dates of such holds; (c) whether those litigation holds applied to any documents pertaining to any of the child sex abuse alleged in this case; and (d) whether the Service Department continued to have access to the documents that the Legal Department took possession of as part of the litigation holds.

In addition, outside of your Answer to Interrogatory No. 14, please clarify whether any documents pertaining to the child sex abuse at issue in this case were subject to litigation holds after the "2010s." And for each such litigation hold, please state the date that the hold was instituted, whether it is still in effect, and whether the Service Department continues to have access to documents that are subject to the hold.

### WTNY's obligation to only withhold privileged information

WTNY has routinely overclaimed privilege in this case. In violation of its duty to accurately represent the full contents of withheld documents, WTNY's practice is to only describe parts of the documents, and then withhold the entirety of those documents, including portions that are clearly not privileged.

Consistent with your duty to accurately describe documents and information being withheld based on privilege, Plaintiffs request that WTNY fully review its description of documents in its privilege log and certify that all such descriptions are complete and accurate. If they are not, please provide full, complete, and accurate descriptions.

Additionally, consistent with your duty to only withhold information that is privileged, Plaintiffs request that WTNY review the Court's orders regarding the application of the clergy-penitent privilege and produce all non-privileged information that is still being withheld in this case.

For instance, and by way of example only, Plaintiffs refer WTNY to PL entries 56 and 60. Descriptions of these documents are incomplete, and even the descriptions provided indicate that non-privileged information is being withheld. The details of the serious sin committed by Mr. Mapley is not protected from production by the clergy-penitent privilege unless it is obtained from a confession (as opposed to an account from another person). Moreover, all of the withheld communication in these documents occurred after completion of the judicial process that WTNY claims the privilege applies to.

November 20, 2023
Page 5

We look forward to WTNY coming into complete and timely compliance with its obligation to accurately describe information being withheld on privileges, as well as its obligation to produce non-privileged information.

        Sincerely,

        MEYER, SHAFFER & STEPANS, PLLP

        Ryan R. Shaffer