# Exhibit 9

Jon A. Wilson
Brett C. Jensen
Michael P. Sarabia
BROWN LAW FIRM, P.C.
315 North 24th Street
P.O. Drawer 849
Billings, MT 59103-0849
Tel. (406) 248-2611
Fax (406) 248-3128

Joel M. Taylor, Esq. (appearing *pro hac vice*)
MILLER MCNAMARA & TAYLOR LLP
412 Clock Tower Commons Drive
Brewster, New York 10509
Tel./E-Fax (845) 288-0844
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, <br><br> Plaintiffs, <br><br> vs. <br><br> WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR., <br><br> Defendants. | Cause No. CV 20-52-BLG-SPW <br><br> **AFFIDAVIT OF MARIO F. MORENO** |

STATE OF NEW YORK )
                                     :ss
County of Putnam )

I, Mario F. Moreno, first being duly sworn, hereby depose and state:

1. I am over 21 years of age, of sound mind, and competent to submit this affidavit.

2. I provide this affidavit in support of the Response in Opposition to Plaintiffs' Motion for Sanctions *re* Spoliation of Evidence, filed by Watchtower Bible and Tract Society of New York, Inc. ("WTNY") and have personal knowledge of the matters set forth herein.

3. Prior to mid-March 2001 congregations of Jehovah's Witnesses would correspond with WTNY about numerous religious subjects, and experienced elders in the Service Department would respond on WTNY letterhead.

4. Those communications were maintained in hardcopy until the mid-2000s, when they were progressively converted from hardcopy to electronic format (pdf).

5. Starting in mid-March 2001, congregations of Jehovah's Witnesses began corresponding with non-party Christian Congregation of Jehovah's Witnesses

("CCJW") about the aforementioned religious subjects, and experienced elders in the Service Department would respond on CCJW letterhead.

6. Before and after mid-March 2001, legal correspondence and communications involving congregations where directed to WTNY.

7. In 2013, WTNY initiated a litigation hold in *Jose Lopez v. WTNY* ("*Lopez* Hold") that dealt with records sent to WTNY from elders in congregations of Jehovah's Witnesses in response to its March 14, 1997, letter to all bodies of elders.

8. The *Lopez* Hold also included records sent to WTNY involving child sexual abuse from 1979 to 2013.

9. Since congregations stopped sending religious correspondence regarding child abuse to WTNY in mid-March 2001, it had no post mid-March 2001 records responsive to the *Lopez* Hold excepting any later correspondence involving legal matters in the Legal Department. All such documents which are responsive to Plaintiffs' requests in the present matter have either been produced or listed on the privilege log.

10. Unlike in this case, in the *Lopez* case WTNY was not compelled to produce documents directed to non-party CCJW, so those records were not subject to

the *Lopez* Hold. Attached as Exhibit A is a true and accurate copy of a Minute Order from the *Lopez* court.

11. To comply with the *Lopez* Hold, the Legal Department secured all correspondence related to child sexual abuse and sent to WTNY through mid-March 2001, and continues to maintain those documents.

12. At the same time, the Service Department had a redundant copy of those same records and other records unrelated to child sexual abuse.

13. Some of the records unrelated to child sexual abuse could have contained information like a person's date of birth, baptism date, death, congregation move date, or other details.

14. In the mid- to late- 2010s, the Service Department began, in some cases, to consolidate multiple pdfs into one Memorandum of Record to facilitate ease of access to information and to reduce the amount of data it maintained.

15. Memorandums of Record are used to summarize information that may be scattered across a number of documents from one or more congregations, or to capture information obtained from oral communications with elders in a congregation (i.e. telephone calls).

16. While some records unrelated to child sexual abuse used in preparing Memorandums of Record may no longer exist, no WTNY record containing

child sexual abuse information would have been destroyed that was not already preserved by the Legal Department. All such documents which are responsive to Plaintiffs' requests in the present litigation have either been produced or listed on the privilege log.

17. On page 6 of Plaintiffs' brief, Plaintiffs reference a November 16, 2019 Memorandum of Record regarding Bruce Mapley, Sr. ("Mapley Memo").

18. The Mapley Memo references a "letter of introduction" from a March 2015 move.

19. Neither WTNY nor CCJW generate letters of introduction; such letters are generally sent between congregations when a congregant moves from one congregation to another.

20. In relation to the Mapley Memo, a copy of the "letter of introduction" from the March 2015 move may have been sent to non-party CCJW consistent with Paragraph 4 above, or the elder in the Service Department who prepared the Mapley Memo may have telephoned the congregation for details and information was conveyed orally. As such, the mention of the "letter or introduction" does not evidence its existence or non-existence at CCJW.

21. The Mapley Memo also references that Tracy "raised a cry of complaint." That phrase does not refer to an actual document, it reflects religious language

used by Jehovah's Witnesses and found in the Bible to describe when someone expresses anguish over acts of injustice or wickedness and is desirous of godly assistance (see for example, Genesis 18:20, 21 and Exodus 2:23-25).

22. The Mapley Memo also references three letters from 2004, 2010, and 2019, that were sent to congregations numbered 46052, 46771, 60087 respectively.

23. I have reviewed the above congregation numbers and can identify them as follows: Iron River, WI; Shawano, WI; and Roebuck, Birmingham, AL.

24. Those letters would have been sent by non-party CCJW, were not subject to the *Lopez* Hold, and copies of the letters were not maintained in the ordinary course, however a reference to the type of letter sent was maintained, thus the reference to a "#1 letter" which is a templated letter.

FURTHER THIS AFFIANT SAYETH NAUGHT.

DATED this 17th day of April, 2024.

By: _____
Mario F. Moreno

SUBSCRIBED and SWORN to before me by, this 17th day of April, 2024.

By: _____
Notary Public for the State of New York

JONATHAN D. COLLYMORE
Notary Public, State of New York
Reg. No. 01CO6362241
Qualified in Putnam County
Commission Expires July 31, 2025

# EXHIBIT A

SUPERIOR COURT OF CALIFORNIA,
COUNTY OF SAN DIEGO
CENTRAL

MINUTE ORDER

DATE: 01/06/2017                TIME: 10:00:00 AM        DEPT: C-71
JUDICIAL OFFICER PRESIDING: Gregory W Pollack
CLERK: Terry Ray
REPORTER/ERM: Lorena Barron, CSR#12058, 619-233-2030
BAILIFF/COURT ATTENDANT: L. Wilks

CASE NO: **37-2012-00099849-CU-PO-CTL**  CASE INIT.DATE: 06/29/2012
CASE TITLE: **Lopez vs. Doe 1 Linda Vista Church [IMAGED]**
CASE CATEGORY: Civil - Unlimited    CASE TYPE: PI/PD/WD - Other

**EVENT TYPE**: Motion Hearing (Civil)
MOVING PARTY: Watchtower Bible and Tract Society of New York Inc
CAUSAL DOCUMENT/DATE FILED: Motion for Protective Order, 12/13/2016

**APPEARANCES**
Devin M Storey, counsel, present for Respondent on Appeal,Plaintiff(s).
Francis J McNamara, counsel, present for Defendant(s).
Dean A. Olson, specially appearing for counsel Beth A Kahn, present for Defendant,Appellant,Plaintiff(s).
Irwin M. Zalkin, counsel, present for Plaintiff(s).

The Court orally advises the parties of its tentative ruling, after which oral argument is conducted. Upon completion of oral argument, the court makes the below ruling:

I.

**INTRODUCTION**

The issues before the court are the following:

1. The nature and extent of any protective order to govern defendant's production of documents responsive to item request numbers 5 and 12 in plaintiff's notice of deposition of defendant's person most qualified; and

2. Whether the production of documents (post-March 2001) now in the physical possession of non-party CCJW can be compelled through a discovery request on Watchtower, or must plaintiff subpoena the records directly from CCJW.

II.

**PROTECTIVE ORDER**

| | |
|---|---|
| CASE TITLE: Lopez vs. Doe 1 Linda Vista Church [IMAGED] | CASE NO: **37-2012-00099849-CU-PO-CTL** |

The court has carefully considered all briefings submitted by both sides. In addition, the court has carefully reviewed the recently published appellate opinion in this case, *Lopez v. Watchtower Bible & Tract Society of New York, Inc.* (2016) 246 Cal.App.4th 566.

Both sides agree that the production of the subject documents can be properly subject to a protective order. The dispute is over the precise nature and extent of the "third party" redactions.

The court does believe that a protective order is appropriate. Further, the court does not believe that Judge Lewis' contemplated redaction of third-party identifying information, upheld by the appellate court, was limited, or even ought to be limited, to alleged victims. The court adopts Watchtower's proposed protective order subject to the below-described modifications:

In lieu of paragraph 1 proposed by Watchtower, the following shall constitute paragraph 1:

*Defendant Watchtower may redact the following from documents responsive to request number 12, which includes documents responsive to request number 5, in plaintiff Jose Lopez's notice of deposition of defendant Watchtower's person most qualified ("responsive documents"):*

*1. All names, addresses, email addresses, telephone numbers, Social Security numbers and other identifying information of any **alleged victim of childhood sexual abuse**. Individuals subject to these redactions shall be referred to by pseudonym, e.g., V1, V2, etc.*

*2. All names, addresses, email addresses, telephone numbers, Social Security numbers and other identifying information of any **alleged childhood sexual abuse perpetrators** who have not admitted or conceded having committed childhood sexual abuse, have not been reported to a police agency by Watchtower or a Jehovah's Witness congregation member for committing childhood sexual abuse, or have not been criminally charged or prosecuted for having committed childhood sexual abuse. Individuals subject to these redactions shall be referred to by pseudonyms, e.g., P1, P2, etc.*

*3. Identities of any **congregation**, except those congregations where membership includes one or more alleged perpetrators who have admitted or conceded to having committed childhood sexual abuse, have been reported to a police agency by Watchtower or a Jehovah's Witness congregation member for having committed childhood abuse, or have been criminally charged or prosecuted for having committed childhood sexual abuse. Unless coming within one of these exceptions for which redaction is not permissible, congregations shall be referred to by pseudonyms, e.g., C1, C2, etc.*

*4. The names, addresses, email addresses, telephone numbers, Social Security numbers and other identifying information of any **non-victim/non-perpetrator witnesses**. Individuals subject to these redactions shall be referred to by pseudonym, e.g., W1, W2, etc.*

The last sentence of paragraph 11 in the proposed protective order of Watchtower is stricken ("Because documents responsive to request no. 12 are responsive to request no. 5, no further response to request no. 5 is required.").

III.

**CCJW DOCUMENTS**

CCP §2031.010 requires production of evidence in a party's "possession, custody, or control."

| | | |
|---|---|---|
| DATE: 01/06/2017<br>DEPT: C-71 | MINUTE ORDER | Page 2<br>Calendar No. 17 |

CASE TITLE: Lopez vs. Doe 1 Linda Vista Church   CASE NO: **37-2012-00099849-CU-PO-CTL**
[IMAGED]

That two entities may be related or in some fashion affiliated does not necessarily mean that a document request served upon one obligates it to produce documents in the possession, custody, or control of another. For example, in *People ex. rel. Lockyer v. Superior Court* (2004) 122 Cal.App.4th 1060, 1076-1077, the court held, in an action by the State of California against vision companies for violation of statutes governing the practice of optometry, that the vision companies' request for documents served on the State of California did not require production of documents from any state agency.

CCJW, which evidently has the post-March 2001 documents, is not a party to this action. Watchtower does not have possession, custody or control over non-party CCJW's documents and cannot produce them. Watchtower does not have access to or control of the records of the United States Branch Service Department post-March 2001. Post-March 2001, Watchtower ceased working with the Service Department, with CCJW taking over that function. CCJW and Watchtower are separate corporations, each with its own separate and distinct Board of Directors and bank accounts. Neither has authority over the other. Presumably, they could sue each other.

Should plaintiff wish to obtain documents in the possession, custody, or control of non-party CCJW, plaintiff will need to proceed by way of a subpoena upon this non-party. However, if post-March 2011 documents were, in fact, sent to Watchtower, of which it now has possession, custody or control, such documents need to be produced by Watchtower, subject to the redactions specified in section II, *supra*.

IV.

**FUTURE DATES**

- March 3, 2017 at 10:00 a.m. – Hearing on plaintiff's motion for sanctions

- April 10, 2017 – Deadline to produce category 12 documents

- April 14, 20917 at 10:00 a.m. – Hearing on defendant's motion for summary judgment

- June 15, 2017 – Deadline to produce category 5 documents

Judge Gregory W Pollack

DATE: 01/06/2017   MINUTE ORDER   Page 3
DEPT: C-71   Calendar No. 17