# *Exhibit H*

## Gary N. Breaux
2891 Route 22
Patterson, New York  12563
845/306-1000

I have been one of Jehovah's Witnesses since 1956. I graduated from Sulphur High School, Sulphur, Louisiana in 1965, and began my career as a pioneer minister (one who is engaged in the preaching work on a full-time basis) in 1964, and was appointed to serve as an elder in 1972. In 1975 I was appointed by the Governing Body of Jehovah's Witnesses to serve as a circuit overseer, a role I held for 14 1/2 years.

As a circuit overseer, I was assigned by the branch office to make regular visits on a number of congregations that make up a "circuit." These visits were usually made twice a year. During these visits, I would check the congregations' records (e.g., the Congregation's Publisher Record cards, monthly field service reports, meeting attendance records, territory records and the accounts), in order to gain insight as to the spiritual needs of the congregation and how I could be of assistance to the members of the congregation. I would meet with the congregations' elders and ministerial servants, sharing appropriate Scriptural counsel, suggestions and encouragement that further helped them shoulder their responsibilities in serving and shepherding the flock in their care. I would also meet with the pioneers to encourage them in their work and give personal assistance with any problems they may be encountering in their ministry. During these visits, I gave several Scriptural talks to the congregation with the objective of encouraging, fortifying, and motivating the congregations' members. One of my primary objectives was to provide leadership in the public ministry of Jehovah's Witnesses. As a circuit overseer, I was also responsible for the operation of the twice-yearly meetings that were held for all the congregations in my circuit.

In 1994, I was invited to serve in the Service Department of the U.S. Branch office. My duties included monitoring the functioning, organization, and staffing of existing congregations, and reviewing qualifications for the establishment of new congregations of Jehovah's Witnesses in the United States. I would also field calls and provide direction to district overseers, circuit overseers, and local congregation elders. Additionally, I write and review articles in *Our Kingdom Ministry* as well as other publications used by Jehovah's Witnesses in their ministry and religious meetings.

I currently serve as an elder and the Presiding Overseer of the East Congregation, Danbury, Connecticut. In addition, I am a member of the Watch Tower Bible and Tract Society of Pennsylvania and the Christian Congregation of Jehovah's Witnesses. As a representative of the U.S. Branch office, I also travel throughout the United States speaking to large gatherings of Jehovah's Witnesses, both on the circuit and district level. I also serve as an instructor for the Kingdom Ministry School (a school that is arranged by the U.S. Branch office to provide periodic training to congregation elders).

I will provide testimony as to the structure of the organization of Jehovah's Witnesses, both from a branch and congregation level. I will also explain that Jehovah's Witnesses adhere to the Bible's view of child molestation, viewing it as the repugnant

1

crime that it is. I will describe that when congregation elders learn of an allegation that a child has been abused, they are instructed:

1. To treat victims of child abuse with kindness and compassion;
2. To immediately telephone Watchtower's Legal Department in order to obtain legal advice on whether their particular state requires ministers to report such allegations. If their state dictates that ministers are required to report the allegation under the facts of that particular case, then one of Watchtower's attorneys will provide the legal direction to that elder to do so. This is true even if there are no witnesses to the alleged abuse;
3. That the victim or any other party may report the alleged abuse to the authorities—without congregation sanction—if they so desire;
4. That it is the parents' personal decision whether to remain living with their child in the same home as the alleged abuser;
5. That the role of congregation elders in matters related to child abuse is to provide spiritual support to the victim, and to mete out discipline to the alleged abusers in the manner outlined in the Bible;
6. That known child abusers are not to serve in the congregation in any appointed capacity;
7. That child abusers are not allowed to be alone with children;
8. That child abuses are not allowed to engage in the public ministry without another adult present.

I have previously testified as an expert in <u>Berry v. Watchtower, et al.</u>, in the State of New Hampshire. I am providing my services without cost.

_____
Gary N. Breaux

2