*Exhibit J*

1  Robert J. Schnack, SBN 191987
   BULLIVANT HOUSER BAILEY PC
2  11335 Gold Express Drive, Suite 105
   Sacramento, California  95670-4491
3  Telephone: 916.852.9100
   Facsimile: 916.852.5777
4  E-Mail: bob.schnack@bullivant.com

5  Attorneys for The Church Defendants

**FILED**

SEP 3 0 2005

Clerk of the Napa Superior Court
By: _____
                  Deputy

6

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                            COUNTY OF NAPA

10  CHARISSA W. and NICOLE D.          Case No.: 26-22191

                    Plaintiffs,        Judicial Council Coordination Proceeding no.
11                                     4374

12         v.                          **DECLARATION OF ROBERT J.**
                                       **SCHNACK IN SUPPORT OF MOTION**
    WATCHTOWER BIBLE AND TRACT         **FOR PROTECTIVE ORDER**
13  SOCIETY OF NEW YORK, INC., et      **REGARDING THE DEPOSITION**
    al.,                               **NOTICE FOR J.R. BROWN**
14
                    Defendants.        DATE:      October 12, 2005
15                                     TIME:      8:30 a.m.
                                       DEPT:      C
16

17                                     TRIAL DATE:  Not yet set   **RECEIVED**

18  AND COORDINATED CASES                                         SEP 3 0 2005
19
                                                          COURT EXECUTIVE OFFICER
20
         I, Robert J. Schnack, declare as follows:
21
         1.      I am an attorney licensed to practice law in California and Oregon, a shareholder
22
    in the law firm of Bullivant Houser Bailey PC, and one of the Church Defendants' attorneys of
23
    record in these coordinated actions.  I am legally competent in all respects and make the
24
    following statements from personal knowledge, or on information and belief where so stated.
25
         2.      On September 15, 2005 I received plaintiffs' notice of deposition for the
26
    deposition of J.R. Brown.  I am advised that Mr. Brown is the Director of the Office of Public
27
    Information for Watchtower Bible and Tract Society of New York, Inc. ("Watchtower NY").
28

                                          – 1 –
    DECLARATION OF ROBERT J. SCHNACK IN SUPPORT OF CHURCH DEFENDANTS' MOTION FOR
        PROTECTIVE ORDER REGARDING THE DEPOSITION SUBPOENA OF J.R. BROWN
                                         3024

1    Plaintiffs' counsel have since issued a first amended deposition notice for a later date for the

2    noticed deposition of J.R. Brown. A true and correct copy of the first amended deposition notice

3    for J.R. Brown is attached hereto as Exhibit A.

4        3.    On September 15, 2005, I also received a notice of deposition for the person

5    most knowledgeable, or "PMK," regarding certain topics or categories of subjects contained in a

6    May 9, 2002 letter addressed to Betsan Powys of BBC Panorama. The letter reveals that J.R.

7    Brown signed the letter in his capacity as Director of the Office of Public Information ("OPI").

8    Plaintiffs' counsel have since issued a first amended PMK deposition notice for a later date for

9    this noticed deposition. A true and correct copy of that first amended PMK deposition notice,

10   with the May 9, 2002 letter attached as Exhibit 1 to the PMK deposition notice, is attached

11   hereto as Exhibit B.

12       4.    On September 20, 2005, I spoke by telephone with one of plaintiffs' attorneys,

13   Hartley Hampton, regarding the above-referenced deposition notices. I advised him that while

14   J.R. Brown had signed the May 9, 2002 letter as the Director of the OPI, I had been advised that

15   Mr. Brown does not have any unique or superior personal knowledge regarding the contents of

16   the letter. In addition, I told plaintiffs' attorney that I had been advised that Mr. Brown does not

17   have any personal knowledge regarding the California coordinated cases. I also told plaintiffs'

18   attorney that Watchtower NY had designated Gary Breaux as the person most knowledgeable

19   about the topics identified in the original PMK deposition notice regarding the May 9, 2002

20   letter and that Gary Breaux would sit for the PMK deposition on a mutually agreeable date in

21   October or November 2005.  Given that Mr. Brown has no unique or superior personal

22   knowledge regarding the May 9, 2002 letter and signed only as the Director of the OPI, I asked

23   that plaintiffs withdraw the deposition notice regarding J.R. Brown.  Plaintiffs have declined to

24   withdraw the notice for J.R. Brown's deposition. Therefore, Watchtower NY had no option but

25   to file the instant motion for protective order.

26       I declare under penalty of perjury under the laws of the State of California that the

27   foregoing is true and correct, except where stated on information and belief, in which case I am

28   informed and believe the information to be true and correct.

– 2 –

DECLARATION OF ROBERT J. SCHNACK IN SUPPORT OF CHURCH DEFENDANTS' MOTION FOR
PROTECTIVE ORDER REGARDING THE DEPOSITION SUBPOENA OF J.R. BROWN

3025

1    Executed this 29th day of September, 2005 at Gold River, California.

2

3

4                                              By_____
                                                  Robert J. Schnack

5    5033042.1

                                                      *****
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        – 3 –
DECLARATION OF ROBERT J. SCHNACK IN SUPPORT OF CHURCH DEFENDANTS' MOTION FOR
PROTECTIVE ORDER REGARDING THE DEPOSITION SUBPOENA OF J.R. BROWN
                              3026

1   Rudy Nolen, Esq., SBN 59808
    Jonathan Saul, Esq., SBN 189271
2   William L. Brelsford, Esq.,
    SBN 202839
3   NOLEN SAUL BRELSFORD
    350 University Avenue, Suite 280
4   Sacramento, CA 95825
    Telephone: (916) 564-9990
5   Facsimile: (916) 564-9991

6   Hartley Hampton, Esq.,
    SBN 0227400
7   FIBICH, HAMPTON & LEEBRON, LLP
    Five Houston Center
8   1401 McKinney, Suite 1800
    Houston, TX 77010
9   Telephone: (713) 751-0025

10  Greg Love, Esq., SBN 12592020
    LOVE & NORRIS
11  314 Main Street, Suite 300
    Fort Worth, TX 76102-7423
12  Telephone: (817) 335-2800
    Facsimile: (817) 335-2912
13
    Attorneys for Plaintiffs
14  CHARISSA W. and NICOLE D.

15

16                    SUPERIOR COURT OF CALIFORNIA

17                         COUNTY OF NAPA

18  CHARISSA W. and NICOLE D.,           )   CASE NO: 26-22191
                                         )
19           Plaintiffs,                 )   Judicial Council Coordination
                                         )   Proceeding No. 4374
20  vs.                                  )
                                         )   FIRST AMENDED NOTICE OF
21  WATCHTOWER BIBLE AND TRACT)              TAKING DEPOSITION DUCES
    SOCIETY OF NEW YORK, INC., et al.   )   TECUM
22                                       )
             Defendants.                 )
23  _____)

24      TO ALL PARTIES HEREIN, AND TO THEIR ATTORNEYS OF RECORD:

25          DATE:     October 25, 2005

26          TIME:     1:00 p.m.

27          PLACE:    New York Marriott at the Brooklyn Bridge
                      333 Adams Street, Brooklyn, New York
28
            WITNESS:  J.R. BROWN                        EXHIBIT A

                                    1
            FIRST AMENDED NOTICE OF TAKING DEPOSITION - J.R. BROWN
                                  3027

At the date, time and place specified above, the parties represented by Attorney Hartley Hampton of Fibich, Hampton & Leebron, LLP, will take the deposition of the above named witness before a certified shorthand reporter or before any notary public authorized to administer oaths in the State of New York who is present at the specified time and date. In addition, the parties intend to record the deposition by videotape as well as stenographically.

The deposition will continue day to day, excepting Saturdays, Sundays and holidays, until completed.

Date: September 20, 2005

NOLEN SAUL BRELSFORD

William Brelsford
Attorney for Plaintiffs

| | |
|---|---|
| 1 | **CASE NAME:** Charissa W., et al. v. Watchtower Bible Tract and Society of New York, Inc., et al. |
| 2 | **COURT:** Napa County Superior Court |
| | **CASE NO.:** 26-22191 |

### PROOF OF SERVICE

I am a citizen of the United States, employed in the County of Sacramento, State of California. My business address is 350 University Avenue, Suite 280, Sacramento, California 95825. I am over the age of 18 years and not a party to the above-entitled action.

On September 20, 2005, I caused the within **FIRST AMENDED NOTICE OF TAKING DEPOSITION DUCES TECUM**, the original of which was produced on recycled paper, to be served as follows:

**X** **MAIL** – I am readily familiar with the Nolen Saul Brelsford's practice for collection and processing of correspondence for mailing with the United States Postal Services. Pursuant to said practice, each document is placed in an envelope, the envelope is sealed, the appropriate postage is placed thereon and the sealed envelope is placed in the office mail receptacle. Each day's mail is collected and deposited in a U.S. mailbox at Sacramento, California at or before the close of each day's business. (CCP Section 1013a(3).)ss

— **FACSIMILE** – On September 20, 2005 at _____ a.m./p.m., by use of facsimile machine telephone number (916) 564-9991, I served a true copy of the aforementioned document(s) on the parties in said action by transmitting by facsimile machine to the numbers as set forth above. The facsimile machine I used complied with California Rules of Court, Rule 2003(3) and no error was reported by the machine. Pursuant to California Rules of Court, Rule 2008(e), I caused the machine to print a transmission record of the transmission, a copy of which is attached to this Declaration.

*Attorney for Watchtower Defendants*
Robert J. Schnack
BULLIVANT HOUSER BAILEY
11335 Gold Express Drive, Suite 105
Gold River, CA 95670-6310
*Facsimile No.* (916) 852-5777

*Co Counsel for Plaintiffs*

Greg Love
Kimberlee Norris
**LOVE & NORRIS**
314 Main Street, Suite 300
Fort Worth, TX 76104

Tommy Fibich, Esq.
Hartley Hampton, Esq.
Mike Leebron, Esq.
**FIBICH, HAMPTON & LEEBRON**
1401 McKinney, Suite 1800
Five Houston Center
Houston, TX 77010

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on September 20, 2005, at Sacramento, California.

Susan Gilbert

1 | Rudy Nolen, Esq., SBN 59808
  | Jonathan Saul, Esq., SBN 189271
2 | William L. Brelsford, Esq.,
  | SBN 202839
3 | NOLEN SAUL BRELSFORD
  | 350 University Avenue, Suite 280
4 | Sacramento, CA 95825
  | Telephone: (916) 564-9990
5 | Facsimile: (916) 564-9991

6 | Hartley Hampton, Esq.,
  | SBN 0227400
7 | FIBICH, HAMPTON & LEEBRON, LLP
  | Five Houston Center
8 | 1401 McKinney, Suite 1800
  | Houston, TX 77010
9 | Telephone: (713) 751-0025

10 | Greg Love, Esq., SBN 12592020
   | LOVE & NORRIS
11 | 314 Main Street, Suite 300
   | Fort Worth, TX 76102-7423
12 | Telephone: (817) 335-2800
   | Facsimile: (817) 335-2912

13

Attorneys for Plaintiffs
14 CHARISSA W. and NICOLE D.

15

16 | SUPERIOR COURT OF CALIFORNIA

17 | COUNTY OF NAPA

18 | CHARISSA W. and NICOLE D.,     )   CASE NO: 26-22191
                                   )
19 |        Plaintiffs,            )   Judicial Council Coordination
                                   )   Proceeding No. 4374
20 | vs.                           )
                                   )   FIRST AMENDED NOTICE OF
21 | WATCHTOWER BIBLE AND TRACT)    TAKING DEPOSITION DUCES
    | SOCIETY OF NEW YORK, INC., et al. )   TECUM
22 |                               )
                                   )
23 |        Defendants.            )
    | _____)

24 | TO ALL PARTIES HEREIN, AND TO THEIR ATTORNEYS OF RECORD:

25 | DATE:     October 25, 2005

26 | TIME:     9:00 a.m.

27 | PLACE:    New York Marriott at the Brooklyn Bridge
           333 Adams Street, Brooklyn, New York
28
    | WITNESS:  Person Most Knowledgeable                 EXHIBIT B

1
FIRST AMENDED NOTICE OF TAKING DEPOSITION - PMK
3030

At the date, time and place specified above, the parties represented by Attorney Hartley Hampton of Fibich, Hampton & Leebron, LLP, will take the deposition of the above named witness before a certified shorthand reporter or before any notary public authorized to administer oaths in the State of New York who is present at the specified time and date. In addition, the parties intend to record the deposition by videotape as well as stenographically.

NOTICE IS FURTHER GIVEN that the matters on which examination is requested are as follows:

(1)     Person most knowledgeable regarding information contained in May 9, 2002, letter from J.R. Brown, director for the office of public information, Watch Tower Bible and Tract Society of Pennsylvania, to Ms. Betsan Powys with the BBC Panorama, attached as Exhibit 1 to this notice;

(2)     Person most knowledgeable regarding the "records" referred to in the 11th paragraph of the May 9, 2002 letter that J.R. Brown wrote to Ms. Betsan Powys (attached as Exhibit 1 to this notice).

(3)     Person most knowledgeable regarding the process by which the "records", referred to in the 11th paragraph o f the May 9, 2002 letter that J.R. Brown wrote to Ms. Betsan Powys and attached as Exhibit 1 to this notice, are maintained, updated and accessed.

(4)     Person most knowledgeable regarding the Jehovah's Witness organization's efforts to utilize the "records", referred to in the 11th paragraph of the May 9, 2002 letter that J.R. Brown wrote to Ms. Betsan Powrys and attached as Exhibit 1 to this notice, to "protect the flock from harm," as that phrase is used in the 11th paragraph of such letter.

(5)   Person most knowledgeable regarding the position of elder within the Jehovah's Witness organization including, but not limited to, the appointment and removal of elders, the duties, responsibilities and authority of elders, and the relationship between elders and members of their congregation.

(6)   Person most knowledgeable regarding the position of ministerial servant within the Jehovah's Witness organization including, but not limited to, the appointment and removal of ministerial servants, the duties, responsibilities and authority of ministerial servants, and the relationship between ministerial servants and members of their congregation.

(7)   Person most knowledgeable regarding the role, responsibility and duties of judicial committees within the Jehovah's Witness organization including the process by which judicial committees are comprised and their proceedings are conducted.

(8)   Person most knowledgeable regarding any and all policies that the Jehovah's Witness organization had for handling accusations and proof of child sexual abuse from 1970 to the present.

(9)   Person most knowledgeable regarding any and all policies that the Jehovah's Witness organization had for warning congregations and their members when a known child molester joined the congregation from 1970 to the present.

NOTICE IS FURTHER GIVEN that the Person Most Knowledgeable shall bring and produce at the deposition the following:

1.   Any and all drafts of the May 9, 2002 letter that J.R. Brown wrote to Ms. Betsan Powys, attached as Exhibit 1 to this notice;

2.    Any other correspondence between J.R. Brown and Ms. Betsan Powrys other than J.R. Brown's May 9, 2002 letter, which is attached hereto as Exhibit 1;

3.    A blank or redacted copy of any form(s) used in connection with the "records" referred to in the May 9, 2002 letter that J.R. Brown wrote to Ms. Betsan Powrys and attached hereto as Exhibit 1;

4.    A blank or redacted copy of any form(s) used in connection with allegations or proof of child sexual abuse;

5.    A blank or redacted copy of the form used when an elder is appointed;

6.    A blank or redacted copy of the form used when an elder is removed;

7.    A blank or redacted copy of the form used when a ministerial servant is appointed;

8.    A blank or redacted copy of the form used when a ministerial servant is removed;

9.    Any and all documents that pertain in any way to any policies that the Jehovah's Witness organization had for handling accusations and proof of child sexual abuse from 1970 to the present; and,

10.   Any and all documents that pertain in any way to any policies that the Jehovah's Witness organization had for warning congregations and their members when a known child molester joined the congregation from 1970 to the present.

The deposition will continue day to day, excepting Saturdays, Sundays and holidays, until completed.

///

1   Date: September 20, 2005

**NOLEN SAUL BRELSFORD**

William Brelsford
Attorney for Plaintiffs

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

Aug 10 05 11:07a        LOVE NORRIS ATTY              8173352912                    P.2



# WATCH TOWER

Bible and Tract Society of Pennsylvania

Office of Public Information
25 Columbia Heights, Brooklyn, NY 1:201-2483, U.S.A.
Phone: (718) 560-5600  Fax: (718) 560-5619

*Original via fax*

May 9, 2002

Betsan Powys
BBC Panorama

Dear Ms. Powys:

This is in response to your fax of April 30, 2002, in which you advise us that BBC-TV is preparing a program on the way Jehovah's Witnesses handle child abuse matters. You have kindly offered us the opportunity to be interviewed on-camera; however, we must respectfully decline.

We are not opposed to giving interviews in general; however, it is likely that among those whose views will be expressed on your broadcast will be some persons who are Jehovah's Witnesses. In our view, it would be neither proper nor Scriptural for us to place ourselves in what might turn out to be an adversarial position with our Christian brothers and sisters in a public setting. (1 Corinthians 6:1-8; Ephesians 4:2) We trust that you will understand our position in this regard.

Although unable to participate in an interview, we are certainly willing to comment on the questions that you raised in your fax. We note that these center almost exclusively on the nature of the records that we keep on alleged child abusers. You tell us that it is vital that we answer your questions on our record-keeping procedures because of the "very serious nature of the allegations made to the programme," although you do not specify what the allegations are. First of all, however, please allow us to comment on the way that child abuse accusations are handled by Jehovah's Witnesses. We realize that you did not ask us to touch on this aspect; nevertheless, it is essential that we comment on it to provide an appropriate, frank answer.

In the United States, when any one of Jehovah's Witnesses is accused of an act of child abuse, the local elders are expected to investigate. The procedure is as follows. Two elders meet separately with the accused and the accuser to see what each says on the matter. If the accused denies the charge, the two elders may arrange for him to have the opportunity to confront the accuser in their presence. If during that meeting the accused still denies the charges and there are no others who can substantiate them, the elders cannot take action within the congregation at that time. Why not? As a Bible-based organization, we must adhere to what the Scriptures say, namely, "No single witness should rise up against a man respecting any error or any sin . . . at the mouth of two witnesses or at the mouth of three witnesses the matter should stand good." (Deuteronomy 19:15) Jesus reaffirmed this principle as recorded at Matthew 18:15-17.

When the branch office receives an allegation of child abuse, a check of the records might reveal that similar, uncorroborated allegations were lodged against the same person in the past, perhaps when he was living in another part of the country. When a second credible allegation by a different person is lodged against the same individual, the elders are authorized by the Scriptures to handle the case.

Betsan Powys
May 9, 2002
Page 2

However, even if the elders cannot take congregational action, they are expected to report the allegation to the branch office of Jehovah's Witnesses in their country, if local privacy laws permit. Again, privacy laws permitting, a record is made at the branch office that the individual has been accused of child abuse. Each branch office of Jehovah's Witnesses keeps its own records, if that is allowed by local jurisdiction. In the United States we do not have records of child abusers who live in other lands. If privacy laws do not allow such records to be kept, the elders do whatever is permitted within the law to see to it that children are protected. The aim is to balance the right to privacy of the individual with the overriding need to protect the safety of children.—1 Timothy 5:19.

In addition to making a report to the branch office of Jehovah's Witnesses, the elders may be required by law to report even uncorroborated or unsubstantiated allegations to the authorities. If so, we expect the elders to comply. Additionally, the victim may wish to report the matter to the authorities, and it is his or her absolute right to do so. In the United States, reporting requirements vary from state to state. It can be quite a challenge to keep abreast of the reporting requirements, but our Legal Department makes every effort to do so.

If, when confronted, the accused confesses that he is guilty of child abuse, the elders take appropriate action. If he is not repentant, he will not be permitted to remain a member of the congregation. Even if he is repentant--is cut to the heart, and is thus resolutely determined to avoid such conduct in the future--what was stated in the January 1, 1997, issue of *The Watchtower* applies. The article said: "For the protection of our children, a man known to have been a child molester does not qualify for a responsible position in the congregation. Moreover, he cannot be a pioneer [full-time missionary of Jehovah's Witnesses] or serve in any other special, full-time service." (1 Timothy 3:2, 7-10) We take such action because we are concerned with maintaining Bible standards and protecting our children. Everyone in our organization is expected to meet the same requirements, namely, to be clean physically, mentally, morally, and spiritually.—1 Corinthians 7:1; Ephesians 4:17-19; 1 Thessalonians 2:4.

In a few instances, individuals guilty of an act of child abuse have been appointed to positions within the congregation if their conduct has been otherwise exemplary for decades. All of the circumstances would need to be considered carefully. Suppose, for example, that a long time ago a 16-year-old boy had sexual relations with a consenting 15-year-old girl. Depending upon the U.S. jurisdictions where he lived when this happened, elders are required to <u>report</u> this as an incident of child abuse. Let us say that twenty years have passed. The child abuse reporting law may have changed; he may even have married the girl! Both have been living exemplary lives and they are respected. In such a rare case, the man could possibly be appointed to a responsible position within the congregation.

Our <u>procedures</u> have been refined over time. Our <u>policy</u> over the past several years has been that at least twenty years must have passed before an individual who committed an act of child abuse could even be considered for appointment to a responsible position in the congregation, if ever. The Bible teaches that individuals can repent of their sins and "turn to God by doing works that befit repentance," and we accept what the Bible says. (Acts 26:20) Still, the safety of our children is of the utmost importance, so we realize that the local elders must be very careful when recommending individuals who may have been guilty of an act of child abuse in the distant past.

You have been told that here in the United States we have compiled a list of 23,720 names of child abusers. That is false. First of all, the total number of names in our records is considerably lower

3037

Aug 10 05 11:07a    LOVE NORRIS ATTY    ●8133352912    P.4

Betsan Powys
May 9, 2002
Page 3

than that. In addition, it is not meaningful to focus on the number of names we have in our _records_. This is because our figures include the names of many persons who have only been accused of child abuse whereas the charges have not been substantiated. We keep these _records_ to document our compliance with what the law requires in many U.S. jurisdictions. Also included on our list are allegations made on the basis of so-called "repressed memories," the validity of which many authorities challenge. Then there are the names of persons who have been accused of abusing children before becoming Jehovah's Witnesses as well as individuals who have never been baptized Witnesses but whose names we are obliged to keep because of their association with the Witnesses. (An example of this would be a non-Witness father or step-father who is accused by his Witness children or step-children of abusing them.) To be safe, we also list the names of persons who may or may not be considered as child abusers, depending upon the jurisdiction where they live (for example, that 16-year-old boy who had sexual relations with the consenting 15-year-old girl). The name of an individual who was guilty of voyeurism or involved with child pornography, as further examples, would also be included on the list. And, to be sure, the list also includes names of persons who are actually guilty of child abuse. We do not apologize for keeping such records here in the United States. Apart from being legally needed, they have been very helpful to us in our efforts to protect the flock from harm. (Isaiah 32:2) Christian parents can rightly feel secure in the knowledge that such efforts are made to screen out possible child abusers from appointment to responsible positions within the congregation.

Ms. Powys, please do not conclude that we believe that our system is perfect. No human organization is perfect. But we do believe that we have a strong, Bible-based policy on child abuse. Anyone in a responsible position who is guilty of child abuse would be removed from his responsibilities without hesitation. We certainly would not knowingly transfer him to serve elsewhere.

Child abuse is abhorrent to us. Even one abused child is one too many. At least since 1981, our journals, _The Watchtower_ and _Awake!_, have featured articles to educate both Witnesses and the public regarding the importance and need to protect children from child abuse. Among others, there was the article "Let Us Abhor What Is Wicked!" published in the January 1, 1997, issue of _The Watchtower_; "Help For the Victims of Incest" in the October 1, 1983, _Watchtower_; "Your Child Is in Danger!", "How Can We Protect Our Children?", and "Prevention in the Home," all in the October 8, 1993, _Awake!_, as well as "Child Molesting—Every Mother's Nightmare" in the January 22, 1985, _Awake!_ Over the years, as we have noted areas where our policies could be strengthened, we have followed through. We are continuing to refine them.

We trust that you will find the information in this letter to be helpful. As you will note, we have responded to the broad issues you raise rather than providing specific answers to your detailed list of questions. We note that you sent a similar list of questions to our offices in London. We understand they are answering your questions in accordance with their procedures and adherence to British law. With every good wish, I am,

Very truly yours,

J. R. Brown
Director
Office of Public Information

JRB:at

3038

1   CASE NAME:       Charissa W., et al. v. Watchtower Bible Tract and Society of New
                     York, Inc., et al.
2   COURT:           Napa County Superior Court
    CASE NO.:        26-22191
3                                   **PROOF OF SERVICE**

4           I am a citizen of the United States, employed in the County of Sacramento, State
    of California.  My business address is 350 University Avenue, Suite 280, Sacramento,
5   California 95825.  I am over the age of 18 years and not a party to the above-entitled
    action.
6
            On September 20, 2005, I caused the within **FIRST AMENDED NOTICE OF
7   TAKING DEPOSITION DUCES TECUM**, the original of which was produced on recycled
    paper, to be served as follows:
8
    _X_     **MAIL** –I am readily familiar with the Nolen Saul Brelsford's practice for collection
9           and processing of correspondence for mailing with the United States Postal
            Services.  Pursuant to said practice, each document is placed in an envelope, the
10          envelope is sealed, the appropriate postage is placed thereon and the sealed
            envelope is placed in the office mail receptacle.  Each day's mail is collected and
11          deposited in a U.S. mailbox at Sacramento, California at or before the close of each
            day's business.  (CCP Section 1013a(3).)ss
12
    __      **FACSIMILE** – On September 20, 2005 at _____ a.m./p.m., by use of facsimile
13          machine telephone number (916) 564-9991, I served a true copy of the
            aforementioned document(s) on the parties in said action by transmitting by
14          facsimile machine to the numbers as set forth above.  The facsimile machine I used
            complied with California Rules of Court, Rule 2003(3) and no error was reported by
15          the machine.  Pursuant to California Rules of Court, Rule 2008(e), I caused the
            machine to print a transmission record of the transmission, a copy of which is
16          attached to this Declaration.

17  _Attorney for Watchtower Defendants_          _Co Counsel for Plaintiffs_
    Robert J. Schnack
18  BULLIVANT HOUSER BAILEY                       Greg Love
    11335 Gold Express Drive, Suite 105           Kimberlee Norris
19  Gold River, CA 95670-6310                      **LOVE & NORRIS**
    _Facsimile No. (916) 852-5777_                 314 Main Street, Suite 300
20                                                 Fort Worth, TX 76104

21                                                 Tommy Fibich, Esq.
22                                                 Hartley Hampton, Esq.
                                                   Mike Leebron, Esq.
23                                                 **FIBICH, HAMPTON & LEEBRON**
                                                   1401 McKinney, Suite 1800
24                                                 Five Houston Center
                                                   Houston, TX 77010
25
            I declare under penalty of perjury under the laws of the State of California that the
26  foregoing is true and correct, and that this declaration was executed on September 20,
    2005, at Sacramento, California.
27
                                                   Susan Gilbert
28

                                          3039

## PROOF OF SERVICE

I am a citizen of the United States and am employed in Sacramento County, where this mailing occurs. My business address is 11335 Gold Express Drive, Suite 105, Gold River, California 95670. I am over the age of eighteen (18) and not a party to this within cause.

On **September 29, 2005,** the following ordinary business practice, I served the foregoing document(s) described as:

**DECLARATION OF ROBERT J. SCHNACK IN SUPPORT OF MOTION FOR PROTECTIVE ORDER REGARDING THE DEPOSITION NOTICE OF J.R. BROWN**

in the following manner, by placing a true copy(ies) thereof in a sealed envelope(s) addressed as follows:

| | |
|---|---|
| **Attorneys for Plaintiffs  BY FAX & MAIL**<br>Rudy Nolen<br>NOLEN SAUL BRELSFORD<br>350 University Ave., Suite 280<br>Sacramento, CA  95825<br>Fax: 916-564-9991 | **Attorneys for defendant Harriman**<br>Craig Diamond<br>Diamond, Baker, Phillips & Walters LLP<br>PO Box 1147<br>Cedar Ridge, CA  95924<br>**Fax:  530-272-8463** |
| **Attorneys for Plaintiffs BY FAX & MAIL**<br>Gregory S. Love<br>LOVE & NORRIS<br>314 Main St., Ste 300<br>Fort Worth, TX 76102<br>Fax:  817-335-2912 | **BY FAX & MAIL**<br>Hartley Hampton<br>Fibich, Hampton & Leebron<br>Five Houston Center<br>1401 McKinney, Ste. 1800<br>Houston, TX  77010<br>Fax 713-751-0030 |
| **In Pro Per**<br>James Henderson<br>25 Gilmore Rd., #17<br>Red Bluff, CA  96080 | |
| **Attorneys for Defendant Carlos Vasquez**<br>William E. Bernard<br>1624 Santa Clara Dr., #210<br>Roseville, CA  95661<br>Fax: 916-789-7557 | **Defendant in pro per**<br>Alvin Heard<br>Two Rivers Correctional Institute<br>82911 Beach Access Road<br>Umatilla, OR  97882 |

XXX   (BY MAIL)     I caused such envelope(s) with First Class postage thereon fully prepaid to be placed in the U.S. Mail in Gold River, California.  I am readily familiar with my employer's normal business practice for collection and processing of correspondence and other material for mailing with the U.S. Postal Service, and that practice is that said material is deposited with the U.S. Postal Service the same day as the day of collection in the ordinary course of business.

_____   (BY MESSENGER)  I caused such envelope(s) to be hand delivered to

_____   (BY FEDERAL EXPRESS)  I caused such envelope(s) to be hand-delivered by an authorized Federal Express agent, this date to.

XXX   (BY FACSIMILE)  I caused to be transmitted the aforementioned document, via facsimile machine, to each of the above identified  parties' FAX numbers

– 1 –

the hours of 9:00 a.m. and 5:00 p.m. on September 29, 2005 and received verification of each complete transmission.

[ X ]   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[   ]   (Federal) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on **September 29, 2005**, at Gold River, California.

By   _Claudia Pohlman_
Claudia Pohlman

– 2 –

3041