Robert L. Stepans
Ryan R. Shaffer
James C. Murnion
Victoria K.M. Gannon
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT  59802
Tel: (406) 543-6929
Fax: (406) 721-1799
rob@mss-lawfirm.com
ryan@mss-lawfirm.com
james@mss-lawfirm.com
katy@mss-lawfirm.com

Matthew L. Merrill (appearing *pro hac vice*)
Merrill Law, LLC
1401 Delgany Street, #404
Denver, CO  80202
Tel: (303) 947-4453
matthew@merrillwaterlaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | | |
|---|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | ) ) ) | Case No. CV-20-52-BLG-SPW |
| Plaintiffs, | ) ) | **PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SANCTIONS RE: WTNY'S PATTERN OF DECEPTION AND DISCOVERY ABUSE** |
| vs. | ) ) | |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA., | ) ) ) ) ) | |
| Defendants, | ) ) | |
| | ) | |

///

///

///

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

SUMMARY ........................................................................................1

PATTERN OF DECEPTION AND HIDING EVIDENCE .......................................2

   A. Defendants attempt to hide evidence of WTPA's role in the Jehovah's
      Witness church and trick the court into dismissing WTPA. ...........................2

   B. WTNY withholds material evidence during jurisdictional discovery until
      Plaintiffs found it on their own. .......................................................3

   C. WTNY is dishonest about the evidence re of child sex abuse in Hardin
      under its control. .......................................................................4

   D. WTNY repeatedly misrepresented the contents of documents to overclaim
      privilege and hide evidence. ...........................................................5

   E. WTNY disregards the court's order and refuses to provide discoverable
      information about the relationships between the Jehovah's Witnesses'
      corporate and non-corporate entities. .................................................7

   F. WTNY attempted to hide witnesses from Plaintiffs.........................................8

   G. Obstruction and perjury during the depositions of Breaux and Shuster. .........9

   H. WTNY spoliates evidence. .............................................................10

   I. WTNY withholds material sworn statements from prior litigation
      (RFP No. 72)..........................................................................10

ARGUMENT .....................................................................................12

   A. WTNY does not care about its obligation of candor and good faith and
      continues to withhold evidence from Plaintiffs..........................................14

   B. WTNY's pattern of obstruction has prevented Plaintiffs from obtaining
      evidence for trial. .....................................................................15

      1. WTNY's role in the appointment of elders, implementation of child
         sex abuse policies, and training elders in those policies .............................16

**Plaintiffs' Brief in Support of Motion for Sanctions re: Pattern of Deception and Discovery Abuse**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*

i

2.  When defendants learned about the child sex abuse at issue in this case ....17

3.  WTNY's policies for handling reports of child sex abuse..........................20

4.  Appropriate sanction .....................................................................................21

## Cases

*Adriana Intern. Corp. v. Thoeren*,
   913 F.2d 1406 (9th Cir. 1990) ...................................................................23

*Anheuser–Busch, Inc. v. Natural Beverage Distribs.*,
   69 F.3d 337 (9th Cir.1995) .......................................................... 22, 23

*Chamberlain v. Les Schwab Tire Center of California*,
   2012 WL 6020103 (E.D. Cal. Dec. 3, 2012) ......................................15

*Combs v. Rockwell Int'l Corp.*,
   927 F.2d 486 (9th Cir. 1991) ...................................................... 21, 25

*Da-Silva v. Smith's Food & Drug Centers, Inc.*,
   No. 2:12-CV-00595-GMN, 2013 WL 2558302 (D. Nev. Jun 8, 2013) ..............22

*Leon v. IDX Sys. Corp.*,
   464 F.3d 951 (9th Cir. 2006) ....................................................................22

*Lopez v. WTNY*,
   201 Cal. Rptr. 3d 156 (Cal. App. 4th Dist. 2016) .................................13

*Newman v. Brandon*,
   2012 WL 4933478 (E.D. Cal. 2012) ......................................................15

*Padron v. WTNY*,
   225 Cal. Rptr. 3d 81 (Cal. App. 4th Dist. 2017) ...................................14

*Surowiec v. Cap. Title Agency, Inc.*,
   790 F. Supp. 2d 997 (D. Ariz. 2011) .....................................................23

*TeleVideo Systems, Inc. v. Heidenthal*,
   826 F.2d 915 (9th Cir. 1987) ...................................................... 21, 25

*Valley Engineers Inc. v. Elec. Eng'g Co.*,
   158 F.3d 1051 (9th Cir. 1998) ................................................... 21, 22

*Wyle v. R.J. Reynolds Industries, Inc.*,
   709 F.2d 585 (9th Cir. 1983) ..................................................................21

**Plaintiffs' Brief in Support of Motion for Sanctions re: Pattern of Deception and Discovery Abuse**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
iii

Plaintiffs submit the following brief in support of their Motion for Sanctions re: WTNY's Pattern of Deception and Discovery Abuse.

## INTRODUCTION

Plaintiffs moved for sanctions at various times in this case to try and obtain discovery and dissuade Watchtower Bible and Tract Society of New York, Inc., and its various counsel ("WTNY") from further obstruction.  The Court has granted relief in the form of fees and costs, and deeming certain matters established for trial.  Plaintiffs' motions have not addressed the entirety of WTNY's sanctionable conduct, nor have they addressed the impact of WTNY's pattern of obstruction on Plaintiffs right to a fair trial on the merits.  Moreover, as set forth herein WTNY has not been dissuaded from further discovery obstruction. The purpose of the present Motion is to set forth and obtain relief for the entirety of WTNY's misconduct as provided by applicable law.

## SUMMARY

The integrity of the civil litigation process depends on parties acting in good faith and being candid in discovery.  The party answering discovery is the only one that knows the complete, unvarnished truth about the existence of discoverable information and documents.  As a result, the entire process depends on their willingness to be honest, candid, and forthcoming with information and

documents.  Parties who engage in deception and refuse to be candid undermine the possibility of reaching a fair and just outcome.

WTNY has shown a consistent and disconcerting willingness to employ deception and dishonesty to hide material facts from Plaintiffs and the Court. While one, or even two, instances of intentionally deceptive misconduct is rare, WTNY has engaged in a relentless campaign of such conduct.  It is apparent that WTNY has made a calculation that the cost of sanctions is worth the opportunity to subvert Plaintiffs' cases.

WTNY's deception has extended into every corner of the case and polluted the sanctity of the process, making it impossible to guarantee that a jury will be presented the "facts."  WTNY's repeated violations of their duty of candor and good faith have eliminated the ability to trust their representations about the evidence that they control and thus the Plaintiffs' right to a fair trial based on the facts.  In circumstances like this, the law demands severe sanctions to protect Plaintiffs' rights and the integrity of the judicial process.

## PATTERN OF DECEPTION AND HIDING EVIDENCE

A. <u>Defendants attempt to hide evidence of WTPA's role in the Jehovah's Witness church and trick the court into dismissing WTPA.</u>

Defendants' efforts to deceive began immediately after Plaintiffs filed the case when Watch Tower Bible and Tract Society of Pennsylvania ("WTPA")

submitted a highly misleading affidavit from their in-house counsel.[1]  As the Court noted, WTPA's filings exhibited,

> **[A] conscious decision to provide only a limited depiction of WTPA's corporate activities and a reckless disregard of documents and other evidence** describing a different WTPA in the 1970s and 1980s-the relevant timeframe for Plaintiffs' claims.

Ord. at 13, ECF No. 135.  WTPA then doubled down and sought to prevent Plaintiffs from conducting discovery into the veracity of the affidavit.  As it turns out, this was a preview of WTNY's litigation strategy: withhold material facts; obstruct discovery; present half-truths to the Court to try and trick it into granting relief not supported by the evidence.

### B. WTNY withholds material evidence during jurisdictional discovery until Plaintiffs found it on their own.

WTNY withheld evidence during the jurisdictional phases of this case to try and obstruct Plaintiffs' ability to respond to WTPA's Motion to Dismiss.  For instance, when Plaintiffs attempted to learn how the Governing Body related to the corporate Defendants, WTNY refused to provide any meaningful information. Ord. at 11–12, ECF No. 85.  In doing so, WTNY chose to withhold specific tasks that the Governing Body oversaw, including approval of local elder appointments. *Id*.  WTNY's strategy was sitting in plain view: withhold material information; obstruct discovery; and hope the Court does not find out.

---

[1] At this point in the case, WTNY and WTPA were being represented by WTNY's lawyers.

C. <u>WTNY is dishonest about the evidence of child sex abuse in Hardin under its control.</u>

WTNY's lawyers attempted to trick the Court into believing that they had produced all the evidence pertaining to the child sex abuse at issue in this case, when in fact it knew it was sitting on hundreds of pages of direct communication between the Organization and its clergy in Hardin.  WTNY used a series of carefully qualified phrases to convince the Court that no other discoverable documents existed:

> [A]fter a diligent search of records, Watchtower Bible and Tract Society of New York, Inc. ("WTNY") has produced to Plaintiffs or listed on a privilege log, every document in its possession that is responsive to any discovery demand.
>
> WTNY has been forthcoming in identifying not only records in its possession, but also its belief that *all* responsive documents in existence through March 2001(excepting its logged legal records which go to the present) have, in fact, been identified and either produced or logged.

WTNY's Resp. Br. at 2, 11, ECF No. 202 (emphasis in original).  Based on the above representations, the uninitiated reader could easily conclude that WNTY had in fact produced all of the discoverable documents in its possession.   But nothing was further from the truth.  While WTNY was attempting to convince the Court that it had no other discoverable documents, it was sitting on hundreds of pages of material evidence, including:

➢ Dozens of documents detailing to child sex abuse that occurred within the Hardin Congregation;

➢ Documents evidencing concern about a "cover-up" of child sexual abuse in the Hardin Congregation; and

➢ Service Department Memorandums indicating that WTNY's Legal Department spoliated documents pertaining to the sex abuse perpetrated by Bruce Mapley, Sr., Gunnar Hain, and Martin Svenson.

WTNY will certainly assert that the evidence at issue was in the "Service Department." But this is a fabricated distinction without any legal merit that WTNY routinely employs <u>for the very purpose of hiding evidence</u>. WTNY knows well that it can produce all child sex abuse documents in its Service Department, and it has been ordered to do so over-and-over again. Rather than just producing evidence of the child sex abuse at issue in this case, WTNY played games, hoping the Court would buy its sham argument and Plaintiffs would never see hundreds of pages of material evidence.

D. <u>WTNY repeatedly misrepresented the contents of documents to overclaim privilege and hide evidence.</u>

WTNY attempted to hide substantial evidence from Plaintiffs by deceptively describing documents withheld based on the clergy-penitent privilege. WTNY attempted to shroud clearly discoverable, non-privileged information within vague and meaningless document descriptions:

> Every document description provided in the privilege log and WTNY' s responses to requests for production are so vague that they provide no basis for Plaintiffs to understand what the documents contain, let alone why a privilege may legitimately apply. **In lieu of specificity, WTNY effectively asks Plaintiffs-and by extension the Court-to rely on its assurances that the privilege applies without any factual support.** Otherwise, Plaintiffs have to move to compel, just so WTNY can then, at best, provide the information necessary to assert privilege or, at worst, maintain its obscurity and force *in camera* review. **WTNY should know this is unacceptable,** given the Court's previous admonishment of WTNY for being non-responsive in its answers to discovery requests (Doc. 85) and the Court's characterization of the Hardin Congregation's discovery responses as too vague to properly assess privilege (Rowland, Doc. 77).

Ord. at 17–18, ECF No. 239.

When WTNY's document descriptions were put to the test, it was revealed that many of them contained little or no privileged information at all. *See generally* Ord., ECF No. 251. WTNY misled the Court by providing a limited description of portions of documents that may have been privileged, while intentionally omitting descriptions of non-privileged portions. *See generally* Br. in Supp., ECF No. 273. This practice left the unsuspecting reader with the impression that the entire document was privileged, when in fact little or none of the document was privileged.

Even after being admonished by the Court, WTNY persisted in wrongfully withholding documents from Plaintiffs. For instance, it was obvious that the document at privilege log entry No. 39 was not privileged, but WTNY forced Plaintiffs to file multiple motions to obtain it. As the Court recognized:

> Plaintiffs correctly note that the Court determined on in camera review that multiple documents withheld by WTNY contained only small portions of privileged material and ordered the production of those documents with the redaction of those privileged portions. *(See* Doc. 251 ). Some of the documents were entirely unprivileged, save the names of certain third parties. *(E.g. id.* at 9-10). **The Court's findings indicated a potential pattern of discovery abuse**, which constitutes a new material fact."

Ord. at 3, ECF No. 285. If left to its own devices ,WTNY would have undoubtably withheld hundreds of pages of discoverable evidence from Plaintiffs. WTNY's strategy was again laid bare: hide evidence and try to trick the Court until it gets caught.

E.  <u>WTNY disregards the court's order and refuses to provide discoverable information about the relationships between the Jehovah's Witnesses' corporate and non-corporate entities.</u>

It is extremely difficult for anyone outside of the Jehovah's Witness Organization to understand how its various corporate and non-corporate entities are structured and relate to one another. Plaintiffs asked WTNY to explain it and they refused. As a result, the Court ordered WTNY to do so. Ord., ECF No. 85. In violation of the Court's Order, WTNY failed to remedy its deficient answers. Ord. at 14–31, ECF No. 318. To this day, WTNY refuses to supplement its insufficient answers. Thus, in furtherance of hiding evidence from Plaintiffs, WTNY stands in violation of this Court's order requiring it to rectify its deficient answers. *Id*.

F.  <u>WTNY attempted to hide witnesses from Plaintiffs.</u>

WTNY attempted to hide critical witnesses from Plaintiffs.  Here again,

WTNY's conduct was marked by deception.  First, for the purpose of preventing

Plaintiffs from contacting witnesses Gary Breaux and Allen Shuster, WTNY

represented that they controlled the witnesses and therefore all contact needed to go

through WTNY's counsel.  Then, after nearly a year of litigation over the depositions,

WTNY switched course and argued they did not control the witnesses.  As the Court

noted, WTNY's conduct was plainly in bad faith and was an effort to hide evidence

from the Plaintiffs:

> In short, Plaintiffs' characterization of WTNY's conduct as a bait and
> switch is accurate . . . the Court can only infer that [WTNY] sought to
> gatekeep access to the Deponents however possible.  But WTNY
> cannot have it both ways, and **such conduct violates WTNY's duty
> of candor to the Court, as well as to Plaintiffs**."

.     .     .

> The Court has issued ad nauseum reprimands to the parties and
> reminders of the parties' obligations to engage in discovery in good
> faith. . . .  **For WTNY to act in bad faith here despite the Court's
> repeated rebukes in unacceptable** and justifies the Court's
> conclusions herein.

Ord. at 13–15, ECF No. 268.  As the Court recognized, WTNY continued to

obstruct and attempt to hide evidence from Plaintiffs through bad faith despite

"repeated rebukes." *Id*. at 15.

G. Obstruction and perjury during the depositions of Breaux and Shuster.

As set forth in a separate filing, WTNY's lawyers worked with its corporate members, Breaux, and Shuster, to obstruct Plaintiffs ability to obtain candid and complete testimony from both men.  Pls.' Mot. for Sanctions re: Deps. of Breaux and Shuster, ECF No. 362.  WTNY's tactics included arming Breaux with a stock refusal to answer questions about most topics.  Pls.' Br. in Supp. of Mot. for Sanctions re: Deps. of Breaux and Shuster at 9 n. 2, ECF No. 363.[2]  When that failed, Breaux pretended that he had no memory or knowledge of matters to which he has extensive knowledge and experience.  *Id*. at 6–18.  With Shuster, counsel used baseless objections to cue repeated, non-responsive answers to questions that he had extensive personal knowledge and experience with.  *Id*. at 6 n.3.  The extent of obstruction and deception in the Breaux and Shuster depositions cannot be overstated.  Both men repeatedly lied about their personal knowledge of facts material to this case.  *Id*. at 6–22.  Furthermore, given the efforts of WTNY to hide both witnesses from Plaintiffs, it is no coincidence that they both had a premeditated plan to obstruct discovery of their knowledge.  The Court can

---

[2] It is not believable that Breaux devised this strategy on his own.  Plaintiffs have never encountered a witness who repeated such a stock refusal to answer basic questions.  The Court can certainly infer that such a stock response was prepared by counsel.

rightfully infer that their obstruction was part and parcel of WTNY's campaign to obstruct and hide evidence from Plaintiffs.

### H. WTNY spoliates evidence.

As set forth in a separate filing, WTNY is unable to produce the documents that its Service Department relied on to draft Memorandums of Record regarding the child sex abuse perpetrated by Gunnar Hain, Bruce Mapley, Sr., and alleged against Martin Svenson.  Pls. Br. in Supp. Mot. for Sanctions re: Spoliation, ECF No. 329.  While the missing documents certainly contained information relevant to Plaintiffs' claims, the exact contents of the documents will never be known or available to Plaintiffs at trial.

### I. WTNY withholds material sworn statements from prior litigation (RFP No. 72).

Because WTNY has been unwilling to voluntarily disclose information responsive to Plaintiffs' written discovery, Plaintiffs have been relegated to obtaining bits and pieces of these facts from other sources.  *See, e.g.,* ECF Nos. 288, 332.  Primary among these sources has been the WTNY's own sworn statements in other litigation.  *Id*.  Accordingly, Plaintiffs asked for production of all Jehovah's Witnesses affidavits and declarations pertaining to key issues in this case:

> Please produce a copy of all affidavits, declarations, or any other sworn statements by Jehovah's Witness Organization officials (whether representatives of WTNY, WTPA, CCJW, or otherwise)

regarding the following issues: attorney-client privilege; clergy-penitent privilege; storage or retention of information regarding child sex abuse at Jehovah's Witness congregations; and the organization of the various Jehovah's Witness entities, departments, and offices over time.

Ex. A, Pls.' Req. for Prod. No. 72 to WTNY.  After setting forth a litany of invalid objections, WTNY produced affidavits and declarations from various Organizational representatives.  However, WTNY withheld at least twenty-three (23) responsive sworn statements.  Ex. B, List of Withheld Affs. and Decls. Included in this list are:

➢ A 2006 Gary Breaux declaration in a Washington case involving child sex abuse within a Jehovah's Witnesses congregation dating back to 1984. Breaux's declaration was submitted in support of a dispositive motion filed by the Organization's corporate entities and described some of his knowledge about how those entities were structured, what they did and did not do, and how they related to each other over time.  Ex. C, *Vigue* Breaux Decl.

➢ A 2006 Mario Moreno declaration submitted in a consolidated California cases involving child sex abuse occurring within various California Jehovah's Witnesses congregations during the 1970s and 1980s (the "Charissa case").  Moreno's declaration set forth the relationship between the Legal Department and the Organization's corporate entities for the

purpose of asserting attorney-client privilege over documents requested in
discovery.  .  Ex. D, *Charissa* Moreno Decl.

➢ A 2004 Richard E. Abrahamson affidavit submitted in the Charissa case
with detailed information about WTPA's role in the Organization's
structure.  Ex. E, *Charissa* Abrahamson Aff.

WTNY's past sworn statements have been instrumental in identifying where they
have been dishonest in this case.  It is therefore no surprise that WTNY has
withheld such statements from discovery.

## ARGUMENT

In a case where WTNY's central argument is that they should not be liable
because they had no role in the child sex abuse that occurred at their Hardin, MT
Congregation, one would expect them to engage in discovery with their palms up,
describing in clear and accurate detail exactly who they are, what role they played
in the Jehovah's Witness Organization, what they knew, and when they knew it.
This is also what the law requires.  Rather than doing that - and rather than
complying with their obligations of candor and good faith – WTNY has engaged in
an intentional and well-documented effort to hide who they are, the role they
played in the Jehovah's Witness Organization, what they knew, and when they
knew it.  Thus, in furtherance of making the only argument that could possibly

absolve them, WTNY engaged in a pattern of discovery violations hoping to hide its role in the abuse.

Here, and in numerous other cases involving their hiding of child sexual abuse, WTNY consistently and unequivocally chooses to see what it can get away with, thumbing its nose at courts and the rules for as long as it can:

➢ In *Nunez v. WTNY*, after being warned that its bad faith conduct would no longer be tolerated, WTNY continued to obstruct discovery and "unabashedly" misrepresent the truth.  Ex. F, *Nunez* Ord. at 2.  Ultimately, the Court concluded that "Watchtower has been deliberate in its violations of the Court's orders, and the Plaintiffs' right to discovery. Its claims that it could not understand the plain language in the Court's orders are absurd and frivolous.  Its decision to obstruct has wasted many hours of scarce time and resources for the Plaintiffs, and for the Court itself, and has prevented Nunez from preparing for trial, which is obviously Watchtower's intent." *Id.* at 6.

➢ In *Lopez v. WTNY,* the court found that Watchtower's refusal to comply with its discovery orders was willful and that WTNY had misused the discovery process, ultimately warranting terminal sanctions.  201 Cal. Rptr. 3d 156, 162 (Cal. App. 4th Dist. 2016).[3]

---

[3] The appellate court vacated the terminal sanctions and remanded for consideration of less severe sanctions, not because WTNY's conduct was not sanctionable, but

➤ In *Padron v. WTNY*, the court found that WTNY had repeatedly abused the discovery process and shown little respect for the Court's orders, ultimately warranting substantial daily fines in lieu of terminating sanctions.  225 Cal. Rptr. 3d 81, 85 (Cal. App. 4th Dist. 2017)

Plaintiffs raise these examples with the Court because they show that WTNY's pattern of discovery abuse in this case is intentional.  WTNY and its lawyers are making a calculated decision to see what they can get away with.

A. <u>WTNY does not care about its obligation of candor and good faith and continues to withhold evidence from Plaintiffs.</u>

Despite being repeatedly rebuked by this Court, WTNY continues to violate the rules and obstruct Plaintiffs ability to discover the evidence:

➤ In May of 2023, WTNY was admonished because it should have known its failure to accurately describe privileged documents was unacceptable.

➤ In September 2023, WTNY was admonished for ignoring the Court's previous rebukes of its bad faith discovery conduct.

➤ In October of 2023, the Court warned WTNY it observed a "potential pattern of discovery abuses" related to mischaracterizations of withheld documents.

---

because the trial court's first sanction was terminal.  *Id.* at 605–06.  Here, the Court has already attempted several forms of lesser sanctions to no avail.

WTNY's response to these warnings from the Court was to prepare and coach its members, Shuster, and Breaux, to withhold evidence and testify dishonestly to obstructing Plaintiffs' depositions.  Failing to disclose material facts in a deposition constitutes perjury and irreparably undermines the civil litigation process.  *Chamberlain v. Les Schwab Tire Center of California*, 2012 WL 6020103 (E.D. Cal. Dec. 3, 2012); *Newman v. Brandon*, 2012 WL 4933478, at *4 (E.D. Cal. 2012) ("[P]erjury on any material fact strikes at the core of the judicial function and warrants a dismissal of one's right to participate at all in the truth seeking process.").  In addition, to this day WTNY continues to withhold information and documents responsive to Interrogatories Nos. 9, 15, 17, and 18 and Request for Production No. 72.  *See supra* pp. 7, 10-12; *infra* p. 20.  To be sure, a litigant that was genuinely concerned with its discovery obligations would supplement answers to discovery requests that have been deemed insufficient.  Here, WTNY has not done so, and has in fact continued to violate the Court's admonitions and its obligation to act in good faith.

B.  <u>WTNY's pattern of obstruction has prevented Plaintiffs from obtaining evidence for trial.</u>

WTNY's discovery conduct has made it impossible to distinguish fact from fiction on several critical areas in this case.

### 1. WTNY's role in the appointment of elders, implementation of child sex abuse policies, and training elders in those policies

It is impossible to separate fact from fiction on the critical question of what role the corporate Defendants played in the operations of the Jehovah's Witnesses' Organization during the 1970s, 1980s, and early 1990s. Their answers to interrogatories on the issue say nothing about the role that they played in appointing and controlling local elders or establishing the Organization's policies for handling child sex abuse reports at local congregations. When senior executives from the Jehovah's Witnesses' Organization were deposed on these same matters, they perjured themselves. Yet, it is evident from documents on WTNY letterhead that it played a central role in the appointment and training of the Hardin elders who were responsible for implementing the Organization's policies on handling reports of child sex abuse.

Rather than being able to present the jury with clear facts about WTNY's role in appointing elders, implementing policies, and training elders on those policies, Plaintiffs are faced with having to present the jury with incomplete evidence that paints a partial picture, at best, of WTNY's actual role.

While the Court has ordered a series of facts about the Organization's structure and operations deemed established, WTNY's obstruction has handicapped this effort. Ord. at 38 –40, ECF No. 318. There are still unanswered gaps in knowledge regarding the corporate WTNY's role and relationship to

activities carried out by the Governing Body and the U.S. Branch Office.[4]  For instance, to this day, while the Hardin Congregation formation and elder appointment documents are on WTNY letterhead and signed by WTNY, it refuses to acknowledge that it played any role in either activity.  As a result, Plaintiffs are faced with presenting hours of confusing testimony and historical documents to the jury about things that should have been admitted and acknowledged by WTNY in discovery years ago.  Moreover, it remains unknown what information relevant to these questions that WTNY continues to withhold.  This is highly prejudicial to Plaintiffs and is a direct result of WTNY's obstruction and deception.

### 2.  When defendants learned about the child sex abuse at issue in this case

Nothing that WTNY says about when it first learned of the child sex abuse occurring in Hardin makes sense or is credible.  In written discovery, WTNY asserts it did not learn about Plaintiffs' sexual abuse until this case was filed in 2020.  Ex. G, WTNY Supp. Ans. to Pls.' Interrogs. 26 and 27.  But Defendants have produced documents and a privilege log establishing that their Legal Department was corresponding with the Hardin Congregation in 1992 about the

---

[4] Even the existence of the "U.S. Branch Office" during the 1970s–1990s is unclear because WTNY refuses to provide a clear answer about it.  *See, e.g.,* Br. in Supp. at 8–11, ECF No. 332.

Plaintiffs' perpetrators.  For instance, in a document that WTNY only produced after being compelled to by this Court, it is noted that:

> in March 1994, Brothers Howard Earl and Scott Duffy called the Legal Department to report an accusation of child abuse by Brother Svenson.  In addition to that, in January 1997, Brother Norman Kufner called the Legal Department to report two accusations of child abuse leveled against Brother Svenson.  The alleged victims would have been ages 5 and 3 respectively when the matter occurred twenty-six years ago.

Ex. H, Forsyth Congregation Ltr.  Thus, when WTNY swore that it was unaware of Plaintiffs' abuse until 2020, it was betting its obstruction would prevent Plaintiffs from ever seeing documents like this one.

Moreover, Privilege log entry number 1, dated July 22, 1992, states that the WTNY Legal Department had a call with the "Hardin, MT, Congregation" regarding "Legal Advice concerning Bruce Mapley, Sr."  Ex. I, WTNY's Fourth Supp. Privilege Log.  Other entries document that the Legal Department and Service Department were in constant communication with the Hardin Congregation about Plaintiffs' sexual abuse well before 2020.  *See, e.g., Id.* at Nos. 2, 3, 5-7, 37–44.  Indeed, Defendants have asserted that many of those documents include confessions of child sex abuse and therefore should be redacted or withheld altogether.  *See* WTNY's Resp. Br. re: Clergy Penitent Privilege at 21–23, ECF No. 193 (describing privilege log entries 37-40 as documents sent to WTNY regarding child sex abuse that occurred in Hardin).

It is impossible to square WTNY's assertion that it did not become aware of the child sex abuse at issue in this case until 2020 with its own Privilege Log and documents.  The prejudice to Plaintiffs on this issue is magnified by WTNY's spoliation of evidence documenting the sexual abuse committed by Hain, Mapley, Sr. and Svenson.  *See generally* Pls. Br. in Supp. Mot. for Sanctions re: Spoliation, ECF No. 329.[5]

WTNY is likely to try and explain its unbelievable interrogatory answer about when it learned of the sex abuse in this case by raising artificial distinctions between WTNY, the WTNY Legal Department, the Service Department, and CCJW.  This is all part of WTNY's litigation game: create arbitrary, unsupported distinctions between different parts of the Jehovah's Witness Organization and pretend that each is disconnected from the other without ever providing any proof or evidence of such.  At the same time, WTNY refuses to coherently explain how its knowledge could be any different than that of the Legal Department, the Service Department, or even CCJW.  Thus, through intentionally inaccurate interrogatory answers, obstruction of discovery, and the spoliation of evidence, WTNY has obstructed Plaintiffs' ability to present the "truth" to the jury.

---

[5] WTNY filed a brief that fails to settle any of the uncertainty about its handling of the "correspondence/communications" that formed the basis of the Memorandums of Record regarding Hain, Mapley, Sr., and Svenson.  *See generally* WTNY's Resp. Br., ECF No. 359.

### 3.  WTNY's policies for handling reports of child sex abuse

Central to Plaintiffs' claims are the policies that the Hardin Congregation

elders were required to follow when responding to reports of child sex abuse,

including what is commonly referred to as the "two witness rule" and the

obligation to keep such reports secret even when the perpetrators confessed.

WTNY's representatives have routinely acknowledged the existence of these

policies in other cases.  *See, e.g.,* Ex. J, *Nunez* Trans. Vol. I at 199:3–203:14;

211:23–213:24.  Yet, in this case, when Plaintiffs asked WTNY to identify those

policies in written discovery, it did not do so.  Ex. K, WTNY's Ans. to Pls.'

Interrog. Nos. 17 and 18.  When Plaintiffs deposed the men that WTNY had

previously designated as the *most knowledgeable* on these policies, they followed

the coaching of their WTNY appointed lawyer and pretended that there have never

been any such policies.[6]  This was a lie hatched by WTNY's lawyers and

perpetuated with false testimony to obstruct Plaintiffs' discovery of evidence.

---

[6] The Hardin Congregation, which is being represented by a WTNY retained
attorney, could not identify any of the policies that were in place during the period
1973 to 1992.  Ex. L, Hardin 30(b)(6) Dep. at 146:6–147:9.  That is because the
Hardin Congregation chose not to designate the only elder who was alive during
that time period, Del Hiebert.  While Mr. Hiebert is alive and well in Hardin, and
he certainly had the best knowledge of what policies the Hardin Congregation
followed during the relevant time period, Hardin's WTNY retained lawyer
designated a young man who has only been in the Hardin Congregation for four (4)
years as its representative.  This is but one of many instances of discovery abuse
that Plaintiffs have not brought to the Court's attention in a discrete motion.

WTNY's lawyers are free to argue to the jury that the Organization's policies for handling child sex abuse are "bible-based principles."  However, WTNY's lawyers are not permitted to prepare and coach witnesses to offer dishonest testimony to support that argument.  When the man who previously appeared at a deposition about the Organization's policies with a notebook titled *Historical Development of Jehovah's Witnesses' Child Abuse Policy* testifies that he is not aware of any child sex abuse policies, it is obvious that he is lying.  The record also demonstrates that the lie is being perpetuated by WTNY's lawyers as part of their litigation strategy.

### 4. Appropriate sanction

Case dispositive sanctions are "appropriate where a 'pattern of deception and discovery abuse made it impossible' for the district court to conduct a trial 'with any reasonable assurance that the truth would be available.'"  *Valley Engineers Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057-58 (9th Cir. 1998); *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, 589 (9th Cir. 1983).  Willful deceit of the court, including perjury, is a legitimate basis for issuing dispositive sanctions.  *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).  A party who provides false deposition testimony "attempt[s] to deceive the district court on material matters before it," *Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991), which "constitutes a fraud on the court," *Da-Silva v. Smith's Food &*

*Drug Centers, Inc.*, No. 2:12-CV-00595-GMN, 2013 WL 2558302, at *2 (D. Nev. Jun 8, 2013). As the *Valley* court noted, "There is no point to a lawsuit, if it merely applies law to lies." 158 F.3d at 1058.

This Circuit has established a five-part test to determine whether a terminating sanction is just: "'(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.' " *Valley Eng'rs*, 158 F.3d at 1057 (citation omitted); *see also Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (citing *Anheuser–Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir.1995)). In discussing these factors, a district court noted:

> The first two factors favor a default judgment. Because the Court and the public have a strong interest in judicial efficiency and the prompt resolution of litigation, Capital's failure to preserve evidence, and the resulting delay caused by multiple discovery disputes and the instant motion for sanctions, weigh in favor of default judgment. The fourth factor, as always, weighs against a terminating sanction. The fifth factor also weighs against a case-dispositive sanction as the lesser sanction of an adverse inference instruction is available. The third factor—prejudice—looks to whether the spoliating party's actions impaired the non-spoliating party's ability to go to trial or threatened to interfere with the rightful decision of the case. While it is apparent that Plaintiff has been prejudiced by the spoliation of emails and other communications concerning Romley's involvement with the Shamrock Glen development, the Court cannot conclude that the spoliation will force Plaintiff to rely on incomplete and spotty evidence at trial.

*Surowiec v. Cap. Title Agency, Inc.,* 790 F. Supp. 2d 997, 1009 (D. Ariz. 2011) (cleaned up).  Trial courts are to look at the entirety of a party's misconduct when weighing a subsequent sanction motion.  *Adriana Intern. Corp. v. Thoeren*, 913 F.2d 1406, 1411 (9th Cir. 1990).  It is appropriate to reject lesser sanctions where the court anticipates continued deceptive misconduct.  *Anheuser-Busch*, 69 F.3d at 352.

The record in this case establishes that WTNY has engaged in a clear pattern of deception and discovery abuse.  WTNY's lawyers, working in concert with WTPA at the time, misrepresented WTPA's jurisdictional activities.  They withheld evidence until Plaintiffs found it from other sources.  They misrepresented their ability to produce reams of material evidence in their possession and control.  They serially mischaracterized the contents of documents being withheld under privilege claims.  They refused to provide forthcoming information on their role in operations of the Jehovah's Witness Organization during the 1970s, 1980s, and 1990s.  They misrepresented their control over key witnesses and then participated in furthering dishonest and false testimony from those witnesses.  They failed to produce prior sworn statements from their representatives in other cases.  They have been dishonest about when they learned about the child sex abuse involved in this case and they are unable to produce

critical documents that were previously in their possession that bear on that question.

WTNY's willingness to deceive and obstruct is genuinely shocking and far exceeds anything counsel has ever confronted in a career full of hard-fought litigation. The admonishments and rebukes from the Court have been consistent. Yet, as evidenced by its conduct in December 2023 in the Shuster and Breaux depositions, and its continuing refusal to supplement its interrogatory answers despite a Court Order to do so, WTNY is unaffected by the Court's words or monetary sanctions. Rather than correcting its dishonorable conduct, WTNY chose to double down and obstruct more. This is not the conduct of a party that can be trusted to be candid and forthcoming with the Court and the jury. It is the conduct of a party that refuses to acknowledge, respect, and comply with the rules that make civil litigation a fair endeavor.

The Court should consider what would have happened in this case if WTNY's various representations had been accepted at face value: WTPA would have been dismissed; WTNY would be withholding hundreds of pages of documents under false claims of privilege; WTNY would be sitting on dozens of other documents evidencing the sexual abuse at issue in this case by claiming (without evidence) that they are the sole property of a sister corporation; Plaintiffs would know nothing about the corporate Defendants' role in the appointment of

elders, the promulgation of policies pertaining to child sex abuse within the Jehovah's Witness Organization, and the training of its elders on those policies. The magnitude of the fraud that WTNY would perpetrate on Plaintiffs and the Court if left to its own devices is astonishing.

By itself, the false and dishonest testimony from WTNY members Shuster and Breaux on critical topics to this case is a basis for dispositive sanctions. *TeleVideo Systems,* 826 F.2d at 917; *Combs,* 927 F.2d at 488.  Indeed, with the assistance of WTNY retained lawyers, both men perpetuated a fraud on Plaintiffs and the Court by repeatedly lying when asked about key subjects in this case.  Of course, this misconduct was on the heels of three full years of repeated sanctionable discovery obstruction and deception.   While Plaintiffs have been able to prove some of WTNY's deception by referring to other documents and lawsuits, the actual scope of the deception is unknown, and Plaintiffs and the Court will never be able to know all instances where key facts and documents remain hidden. Yet, at the same time, it is an established fact that WTNY will hide evidence and attempt to deceive the Court.

Plaintiffs are now faced with going to trial with "incomplete and spotty" evidence on several potentially dispositive questions, including questions about the corporate Defendants' roles in appointing and training the Hardin elders and promulgating the policies implemented by the Hardin elders that kept Plaintiffs'

sexual abuse secret.  Under no circumstances should Plaintiffs have to go to trial

without clear and unambiguous evidence on these topics; this would turn the law

on its head and require Plaintiffs to bear the burden of WTNY's misconduct.

There is no way for the Court to conclude that WTNY has been, or will be,

forthcoming with its production of evidence.  To the contrary, the record is that

WTNY hides evidence until it gets caught doing so.

Accordingly, and pursuant to applicable law set forth herein, Plaintiffs

respectfully submit that under the current circumstances a trial on the merits is not

possible, and the Court should implement the following sanctions as a remedy:

A. For all times relevant to this case, including the period 1973 to 1992, an

order deeming the following matters established as fact with corresponding

jury instructions:

1. The formation of the Hardin Congregation as part of the Jehovah's

Witnesses' U.S. organization was approved by WTNY;

2. WTNY and WTPA worked in concert to compile, publish, and train

the Hardin elders on how to respond to reports of child sex abuse,

including implementation of the following policies:

i. The "two-witness" principle which provides that unless two

witnesses attest to an instance of reported child sex abuse, the

Jehovah's Witnesses deem the abuse to have not occurred and

will not report it to secular authorities or take action to protect the victim;

ii. Unless told otherwise by the Jehovah's Witnesses' Legal Department, Jehovah's Witnesses are required to keep known child sex abuse confidential from each other and the secular world; and

iii. The Jehovah's Witnesses' "shunning" policy provides that if one of Jehovah's Witnesses violates his or her duty to keep child sex abuse confidential he or she will be banished from the community, including banished from his or her family.

3. The Hardin Congregation's elders were agents of WTNY, who trained and controlled the way that the Hardin Congregation's elders responded to reports of child sex abuse at the Hardin Congregation;

4. As agents of WTNY, the knowledge and conduct of the Hardin elders is also the knowledge and conduct of WTNY; and

5. WTNY had knowledge of the child sex abuse at issue in this case when the Hardin elders had such knowledge.

B. By virtue of appointing the Hardin elders and assigning them the task of responding to Plaintiffs' reports of child sex abuse, WTNY assumed a duty to Plaintiffs.

C.  WTNY is prohibited from introducing evidence or making argument that the acts or omissions of other components of the Jehovah's Witnesses' Organization (i.e., other corporations, committees, departments, or bodies) are responsible for the acts and omissions alleged by Plaintiffs in this case.

D.  Any other relief the Court deems necessary or appropriate under the law to remedy the conduct at issue, including terminal sanctions.

DATED this 19th day of April, 2024.

By: /s/ Ryan Shaffer
Ryan R. Shaffer
MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.3(d)(2), Plaintiff hereby certifies that this brief

complies with the length requirement for briefs, and that this brief contains 6,367

words, excluding the caption, certificates of service, and compliance, table of

contents, and authorities, and exhibit index.

By: /s/ Ryan Shaffer
Ryan R. Shaffer
MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Local Rule 1.4, this document has been served on all parties via

electronic service through the Court's Case Management/Electronic Case Filing

(CM/ECF) system.

By: /s/ Ryan Shaffer
Ryan R. Shaffer
MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*