| | |
|---|---|
| Robert L. Stepans | Matthew L. Merrill (appearing *pro hac vice*) |
| Ryan R. Shaffer | Merrill Law, LLC |
| James C. Murnion | 1401 Delgany St. #404 |
| Victoria K.M. Gannon | Denver, CO 80202 |
| Meyer, Shaffer & Stepans, PLLP | Tel: (303) 947-4453 |
| 430 Ryman Street | matthew@merrillwaterlaw.com |
| Missoula, MT 59802 | |
| Tel: (406) 543-6929 | |
| Fax: (406) 721-1799 | |
| rob@mss-lawfirm.com | |
| ryan@mss-lawfirm.com | |
| james@mss-lawfirm.com | |
| katy@mss-lawfirm.com | |

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | ) )  Case No. CV-20-52-BLG-SPW |
| Plaintiffs, | ) ) **PLAINTIFFS' REPLY BRIEF** |
| vs. | ) **IN SUPPORT OF MOTION** |
| | ) **RE: SANCTIONS FOR** |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA., | ) **SPOLIATION OF EVIDENCE** ) **(ECF NO. 328)** ) ) ) |
| Defendants, | ) ) |

## PLAINTIFFS' REPLY

At issue in Plaintiffs' Motion is WTNY's inability to produce or identify the correspondence/communications that its Service Department used to draft three

Memorandums of Record about the child sexual abuse at issue in this case (the "Memorandums"). Plaintiffs want to know what was in those documents because they contain material information about this case that Plaintiffs have not seen.

WTNY's response boils down to one argument: *ignore the facts and trust us*. Ignore the fact that WTNY cannot identify or produce the documents that formed the factual basis for the Memorandums. Ignore the fact that documents used to draft the Memorandums "may have been" destroyed. Ignore WTNY's prior representations about the scope of the *Lopez* litigation hold. Ignore the fact that WTNY's Legal Department also represents CCJW and the Service Department and had an obligation to preserve their child sexual abuse records. Ignore the fact that WTNY had been receiving consistent threats of litigation regarding Hain, Mapley, and Svenson but failed to institute a litigation hold. WTNY asks the Court to ignore all these facts and trust its conclusory assertion that evidence was not spoliated.

### 1. WTNY CANNOT IDENTIFY THE DOCUMENTS USED TO DRAFT THE MEMORANDUMS AND ACKNOWLEDGES THAT SOME OF THOSE DOCUMENTS COULD HAVE BEEN DESTROYED.

Plaintiffs and the Court are reliant on WTNY to explain what happened to the "correspondence/communications" used to draft the Memorandums. But, as evidenced by a series of hedged and uncertain representations in its response,

WTNY is unable to offer such an explanation or any certainty that evidence was properly preserved:

- "some records unrelated to child sexual abuse used in preparing the Memorandums of Record **may** no longer exist . . ." WTNY's Resp. in Opp'n at 7, ECF No. 359 (emphasis added) (hereinafter "WTNY's Response").[1]
- "The 'letter of introduction' referenced in the Mapley Memo **could have been** sent to CCJW or the elder in the Service Department preparing the Mapley Memo **may have** telephoned the congregation for details . . ." *Id.* (emphasis added).
- The "elder who prepared the [Mapley Memo] **may have** gained that knowledge about Tracy's complaint from a telephone conversation." *Id*. at 12 (emphasis added).
- The Memorandums "**could have been** generated, **at least in part**, on non-child sex abuse documents . . ." *Id*. (emphasis added).
- "**It is possible**, then, that records not subject to a litigation hold but which were used in part, to generate internal Memorandums were discarded." *Id*. (emphasis added).

---

[1] All pinpoint citations are to the ECF generated page number.

> ➢ There "**may have been** documents, for instance, mentioning 'Gunnar Hain,' but not in connection with any child sex abuse allegation . . . that **could have been** destroyed . . ." *Id*. at 13 (emphasis added).

While WTNY asks the Court to conclude that no evidence was spoliated, the only thing that is clear from WTNY's Response is that it does not know if that is true, and it is unable to produce the "correspondence/communications" used by the Service Department to draft the Memorandums.

### 2. WTNY'S UNTENABLE VIEW OF ITS DUTIES TO PRESERVE EVIDENCE.

Faced with acknowledging that it "may" or "could" have destroyed evidence, WTNY has been forced to make unbelievable assertions about its various duties to preserve evidence. WTNY's arguments end up highlighting the fact that its Legal Department failed to preserve the very evidence that is at issue on Plaintiffs' Motion.

#### a. The ability to raise an affirmative defense does not eliminate the duty of WTNY's Legal Department to preserve evidence.

The factual record is unambiguous: WTNY was receiving consistent threats of litigation regarding the child sexual abuse committed by Hain, Svenson, and Mapley. WTNY does not, and cannot, dispute this fact. Moreover, WTNY never asserts that it's Legal Department initiated a litigation hold in response to such litigation threats.

Instead, WTNY makes the untenable argument that, in the face of constant litigation threats, its Legal Department can dispense with its duty to preserve evidence by subjectively determining that a potential statute of limitations defense exists. WTNY's Response at 14. Thus, as WTNY would have it, a party threatened with litigation can effectively destroy evidence that it knows could be relevant to that litigation by unilaterally determining it has an affirmative defense.

The duty to preserve is triggered when a "potential claim is identified." *Pride Energy Co. v. Long Trusts,* No. CV 20-182-BLG-SPW, 2023 WL 3198412, at *4 (D. Mont. Feb. 27, 2023). This duty applies to evidence that a party "knows, or reasonably should know" is relevant to potential litigation and requires that party to "identify, locate, and maintain" such evidence. *AMC Tech., LLC v. Cisco Sys., Inc.,* No. 11-CV-3403 PSG, 2013 WL 3733390, at *3 (N.D. Cal. July 15, 2013); *see also Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217–18 (S.D.N.Y. 2003) (the duty to preserve evidence extends to any "information that is relevant to the claims or defenses of *any* party . . .").

Here, WTNY's Legal Department was receiving consistent threats of litigation over the child sexual abuse outlined in the Memorandums for years. Thus, potential claims related to the child sexual abuse perpetrated by Hain, Mapley, and Svenson were known to WTNY's Legal Department beginning in 2011 and continuing through 2018 and 2019. Accordingly, WTNY had a duty to

"identify, locate, and maintain" evidence that it reasonably knew was relevant to that threatened litigation, including all information related to the sexual abuse perpetrated by Hain, Mapley, and Svenson used to draft the Memorandums.

WTNY's proposed exception to the duty to preserve evidence would effectively eliminate the duty altogether by giving the possessor of the evidence unilateral authority to destroy it. That is obviously an unworkable rule. Just like every other legal defense, WTNY's statute of limitations defense must be proven. What if Plaintiffs have evidence that tolls the statute of limitations, or can prove it does not apply? Unproven defenses are not a free pass to destroy evidence that WTNY's Legal Department had a duty to preserve.

The only case cited by WTNY for its position, *Sussman v. ABC, Inc.*, is inapplicable because the party accused of spoliating evidence in that case <u>did not receive threats of litigation</u>. 971 F.Supp. 432 (C.D. Cal. 1997).[2] If anything, *Sussman* serves to reinforce that WTNY had a duty to preserve "evidence needed for prospective litigation" that was made known through repeated and consistent litigation threats. WTNY's misguided argument only serves to highlight the fact that it's Legal Department failed to properly institute a litigation hold to preserve the evidence that WTNY is now unable to produce.

---

[2] The *Sussman* court was evaluating tort claims for spoliation under California law and noted that "the tort of spoliation of evidence applies only to the 'destruction of evidence needed for prospective litigation.'" 971 F.Supp. at 435–36.

**Plaintiffs' Reply Brief in Support of Motion Re: Sanctions for Spoliation of Evidence (ECF No. 328)**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
6

### b. **WTNY's unsupportable position on the scope of the *Lopez* litigation hold.**

Relying on the affidavit of in-house counsel, Mario Moreno, WTNY asserts that the *Lopez* hold only applied to "WTNY documents." WTNY's Response at 5; Moreno Aff. at ¶¶ 7–8, ECF No. 359-9.[3] WTNY's new position on the scope of the *Lopez* litigation hold is yet another example of WTNY's propensity to play games with evidence.

Prior to Plaintiffs' spoliation motion being filed, WTNY's lawyers stated that the *Lopez* litigation hold included, *inter alia*, "**all records communications, and reports relating to child abuse from 1979 to 2013**." Ltr. from Brown Law Firm to Meyer, Shaffer, & Stepans at 4, ECF No. 329-1 (emphasis added). However, now, with a spoliation motion pending and WTNY having acknowledged that it "may have" destroyed evidence, WTNY's in-house counsel asserts that the 2013 *Lopez* litigation hold only applied to documents "sent to WTNY." WTNY's Response at 5.

---

[3] There are internal inconsistencies between Moreno's statements and WTNY's argument to the Court regarding the scope of the *Lopez* litigation hold. Moreno states the 2013 hold **included** documents sent to WTNY, but he never states that the hold excluded other documents. Moreno Aff. at ¶8. Whereas WTNY's briefing effectively asks the Court to believe the hold was only for documents sent to WTNY.

WTNY's new position is not credible.  First, WTNY and Moreno fail to acknowledge that the discovery request at issue in *Lopez* was not limited to documents "sent to WTNY" as Moreno now suggests.  Request No. 5 sought:

> Any and all individual written accounts, reports, summaries, letters, emails, facsimiles, and records, whether or not compiled, concerning reports of sexual abuse of children by members of the Jehovah's Witnesses, including but not limited to, Governing Body members, district overseers, circuit overseers, elders, ministerial servants, pioneers, publishers, baptized publishers, and individuals from the time period of 1979 to the present.

*Lopez v. Watchtower Bible & Tract Socy. of New York, Inc.*, 201 Cal. Rptr. 3d 156, 165 (Cal. App. 4th Dist. 2016).  Nothing in the language of the request for production that resulted in the litigation hold supports the new limitation being urged by WTNY.  Furthermore, the minute order cited by Moreno as limiting the scope of the *Lopez* litigation hold is dated January 6, 2017, which is four (4) years after he says that the litigation hold was initiated.  Moreno Aff. at ¶7.  WTNY does not explain how a minute order issued in 2017 impacted the scope of a 2013 litigation hold.[4]

---

[4] For instance, is it WTNY's position that prior to the 2017 Minute Order the *Lopez* litigation hold covered "all reports, communications, and records related to child abuse from 1979 to 2013" but the Minute Order subsequently narrowed the scope of the hold, and therefore it was free to destroy documents that it previously had a duty to preserve?

Second, while unstated, WTNY's new position about the scope of the *Lopez* litigation hold is based on a game WTNY plays with evidence of child sexual abuse. Namely, WTNY argues that if evidence of child sexual abuse was received by the Service Department before some date in "mid-March 2001" then that evidence is in the possession of WTNY (and subject to the *Lopez* litigation hold), but evidence in those same Service Department files received after the mid-March date belongs to its related corporation, CCJW (and is not subject to the *Lopez* litigation hold).

WTNY's game is laid bare once it is revealed that its Legal Department also represents CCJW and the Service Department and therefore has easy access to all Service Department documents. *See, e.g.,* Moreno Aff. at ¶ 2, ECF No. 352-14; Moreno Aff. at ¶ 9, ECF No. 204-1. As WTNY itself asserted when asking this Court to extend the attorney-client privilege to every communication between WTNY and local congregation elders:

> Thus, the WTNY Legal Department provides legal guidance and advice not just to WTNY, but to elders around the nation who take the lead in caring for the ministry of Jehovah's Witnesses. **These attorneys are in-house counsel not just for WTNY, but for the broader religious community of elders, congregations of Jehovah's Witnesses, and other legal entities used by Jehovah's Witnesses**.

WTNY's Resp. Br. at 5, ECF No. 204 (emphasis added). If WTNY's representations to this Court about the scope of its Legal Departments' clients are

true, then WTNY's Legal Department has knowledge and functional possession of all child sexual abuse evidence received by all Jehovah's Witness entities and Departments at all times.

WTNY's "mid-March 2001" game is a farce with one purpose: giving it plausible deniability to say it has produced all evidence in its possession, while silently withholding other evidence.  That is exactly what it did in this case.  *See, e.g.,* Pls.' Br. in Supp. of Mot. for Sanctions at 8–9, ECF No. 366.  WTNY repeatedly assured Plaintiffs and this Court that it had "been forthcoming in identifying not only records in its possession, but also its belief that *all* responsive documents in existence through March 2001 have, in fact, been identified and either produced or logged produced."  WTNY's Resp. in Opp'n at 11, ECF No. 202.  In reality, WTNY was hiding dozens of documents establishing that a cover up of child sexual abuse had occurred in Hardin.  As one court noted about WTNY's game:

> We find it curious that the existence of CCJW and the March 2001 cut off only became an issue after Watchtower produced documents and Padron complained that the production was not sufficient.  It appears Watchtower argued that it had access to the documents after March 2001 when it was to its benefit to support its burden argument, but only after losing that argument, it claimed to not have access to documents after a certain point of time to justify its limited production.  Such gamesmanship has no place in civil discovery.

*Padron v. Watchtower Bible & Tract Society of New York, Inc.*, 16 Cal.App.5th 1246, 1268–69, n9 (2017).

While WTNY's "mid-March 2001" game may give it plausible deniability to silently withhold material evidence from discovery, it does not mean that its Legal Department can shirk its obligation to preserve evidence. Pursuant to the *Lopez* litigation hold, WTNY's Legal Department was charged with preserving "all records, communications, and reports of child abuse from 1979 to 2013." This duty extends to preserving all evidence that WTNY's Legal Department reasonably knew, or should have known, would be relevant to the potential litigation. *AMC Tech.,* 2013 WL 3733390, at *3; *see also Zubulake*, 220 F.R.D. at 217–18.

WTNY's Legal Department simultaneously represents WTNY, CCJW, and the Service Department. It knows full well that all evidence of child sexual abuse in the Service Department files - whether received before or after "mid-March 2001" - is likely to be relevant to any case involving child sexual abuse. Thus, if WTNY's Legal Department knows that it had a duty under the *Lopez* hold to preserve evidence possessed by WTNY, it also knows it has a duty to preserve such evidence possessed by CCJW or the Service Department.

It is telling that WTNY asserts that its Legal Department can simultaneously represent a series of related entities - all of whom have evidence subject to a litigation hold - but only be required to preserve evidence purportedly possessed by one of those clients while permitting the others to destroy such evidence. This is

exactly the type of game that WTNY likes to play with critical evidence. WTNY's Legal Department should not be permitted to undermine the purpose of a litigation hold with unsupportable distinctions about the date the evidence was received. Ultimately, WTNY's untenable position serves to further highlight the fact that its Legal Department failed to properly preserve all evidence subject to the *Lopez* litigation hold, including the evidence subject to Plaintiffs' Motion.

### 3. EVEN ACCEPTING WTNY'S UNTENABLE POSITIONS ON ITS DUTY TO PRESERVE EVIDENCE DOES NOT ABSOLVE IT OF SPOLIATION.

Even if the Court accepts WTNY's positions on its various duties to preserve evidence, the record establishes that it still spoliated evidence. WTNY cannot account for specific documents referenced in the Mapley Memo, which was drafted on November 16, 2019, over six months after Montana adopted the child sexual abuse revival statute that WTNY asserts triggered its duty to preserve evidence. None of WTNY's excuses for not preserving evidence used to draft the Mapley Memo are valid.

WTNY asks the Court to infer that the documents referenced in the Mapley Memo merely contained immaterial evidence such as "date of birth, baptism date, congregation move date, and date of death." WTNY's Response at 6. No evidence supports such a finding and WTNY is not entitled to the benefit of such inferences. *Webster v. Psychiatric Med. Care, LLC*, 386 F. Supp. 3d 1358, 1368

(D. Mont. 2019) (quoting *Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) ("'[B]ecause "the relevance of destroyed documents cannot be clearly ascertained [when] the documents no longer exist," a party "can hardly assert any presumption of irrelevance as to the destroyed documents."'").

Regarding the three missing "#1 letters" in the Mapley Memo that have never been produced, WTNY asserts that they were sent by CCJW and were therefore "not subject to the *Lopez* Hold." WTNY's Response at 8. Even if this is true, the Mapley Memo was drafted well after the WTNY Legal Department had received repeated threats of litigation about Mapley's child sexual abuse and after Montana's revival statute was adopted in May of 2019. Thus, these three letters were subject to even the most narrow construction of WTNY's duty to preserve evidence. Even accepting WTNY's view of when its duty to preserve evidence arose, the record establishes that WTNY spoliated documents referenced in and used by the Service Department to draft the Mapley Memo.

## CONCLUSION

The record establishes WTNY had multiple duties to preserve the correspondence/communications that were used as the factual basis for the Memorandums. Consistent with its efforts to play games with evidence, the record establishes that WTNY took tortured and untenable views of its duty to preserve evidence to intentionally exclude evidence that was required to

be preserved. Finally, the record establishes that WTNY did not preserve, and therefore spoliated, documents used to create the Memorandums. Accordingly, Plaintiffs respectfully ask the Court to look at the record and ignore the conclusory assertions of WTNY's counsel that are contrary to that record.

DATED this 1st day of May, 2024.

By: /s/ Ryan Shaffer
Ryan R. Shaffer
MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(d)(2), Plaintiff hereby certifies that this brief complies with the length requirement for briefs, and that this brief contains 2,863 words, excluding the caption, certificates of service, and compliance, table of contents, and authorities, and exhibit index.

By: /s/ Ryan Shaffer
Ryan R. Shaffer
MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 1.4, this document has been served on all parties via electronic service through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

By: /s/ Ryan Shaffer
Ryan R. Shaffer
MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*