# EXHIBIT 6

Page 1

```
IN THE UNITED STATES DISTRICT COURT
       FOR THE DISTRICT OF MONTANA
           BILLINGS DIVISION
TRACY CAEKAERT and CAMILLIA MAPLEY,

                          PLAINTIFFS,

       -against-         Case No.:
                         CV-20-52-BLG-SPW


WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW
YORK, INC., and WATCH TOWER BIBLE AND TRACT
SOCIETY OF PENNSYLVANIA,


                          DEFENDANTS.
-------------------------------------------X
ARIANE ROWLAND and JAMIE SCHULZE,


                          PLAINTIFFS,


       -against-         Case No:
                         CV-20-59-BLG-SPW
WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW
YORK, INC., and WATCH TOWER BIBLE AND TRACT
SOCIETY OF PENNSYLVANIA,
                          DEFENDANTS.
-------------------------------------------X

              DATE: December 5, 2023
              TIME: 9:21 A.M.



       VIDEO RECORDED EXAMINATION
BEFORE TRIAL of the Non-Party Witness, GARY
BREAUX, taken by the Plaintiffs, pursuant
to a Subpoena, held at the offices of
```

Page 2

1
2  Veritext Legal Solutions, 50 Main Street,
3  3rd Floor, White Plains, New York 10606,
4  before Alison DiTuro, a Notary Public of
5  the State of New York.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1
 2   A P P E A R A N C E S:
 3
 4   MEYER SHAFFER & STEPANS PLLP
        Attorneys for the Plaintiffs
 5      TRACY CAEKAERT, CAMILLIA MAPLEY, ARIANE
        ROWLAND and JAMIE SCHULZE
 6      3490 Clubhouse Drive, Suite 104
        Wilson, Wyoming 83014
 7      BY: ROBERT STEPANS, ESQ.
                -and-
 8          RYAN R. SHAFFER, ESQ.
                -and-
 9          KATY GANNON, ESQ., via Zoom
10
11   MERRILL LAW, LLC
        Attorneys for the Plaintiffs
12      TRACY CAEKAERT, CAMILLIA MAPLEY, ARIANE
        ROWLAND and JAMIE SCHULZE
13      1401 Delgany Street, #404
        Denver, Colorado 80202
14      BY: MATTHEW MERRILL, ESQ.
15
16   MILLER MCNAMARA & TAYLOR LLP
        Attorneys for the Defendant
17      WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW
        YORK, INC.
18      100 South Bedford Road, Suite 340
        Mount Kisco, New York 10549
19      BY: JOEL M. TAYLOR, ESQ.
20
21   WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW
     YORK, INC., OFFICE OF THE GENERAL COUNSEL
22      Attorneys for the Defendant
        WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW
23      YORK, INC.
        100 Watchtower Drive
24      Patterson, New York 12563
        BY: JOSEPH TORRES, ESQ.
25
```

```
 1
 2   BROWN LAW FIRM, P.C.
        Attorneys for the Defendant
 3      WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW
        YORK, INC.
 4      315 North 24th Street
        Billings, Montana 59101
 5      BY: MICHAEL P. SARABIA, ESQ., via Zoom
 6
 7   MOULTON BILLINGHAM, P.C.
        Attorneys for the Defendant
 8      WATCH TOWER BIBLE AND TRACT SOCIETY OF
        PENNSYLVANIA
 9      27 North 27th Street, Suite 1900
        Billings, Montana 59103
10      BY: GERRY P. FAGAN, ESQ., via Zoom
                 -and-
11          JORDAN FITZGERALD, ESQ., via Zoom
                 -and-
12          CHRISTOPHER T. SWEENEY, ESQ., via
            Zoom
13
14
     MARKOR LAW, LLC
15      Attorneys for the Witness
        BY: MARGARET T. KORGUL, ESQ.
16      Mkorgul@markorlaw.com
17
18   ALSO PRESENT:
        Corey Wainaina
19
20              *         *         *
21
22
23
24
25
```

Page 20

1                  G. BREAUX
2    with what they do?
3         A.    I'm not in a position to
4    explain the Christian Congregation of
5    Jehovah's Witnesses.
6         Q.    And why is that?
7         A.    I'm not representing them.  I'm
8    representing myself.
9         Q.    And I'm sorry.  I -- I feel
10   like you might be a little bit confused
11   about the way I'm asking these questions,
12   so let me clarify.
13               Any question I'm asking you is
14   based on your personal knowledge.  I'm not
15   asking you to represent anyone else because
16   that's not what you're here to do.  Your
17   personal knowledge is what we're here to
18   understand.
19               And so when I ask you a
20   question, it is based upon your personal
21   knowledge.  I'm not asking for you to
22   represent any other entity.  Do you
23   understand that?
24        A.    Would you make that clear every
25   time you ask me a question?

Page 22

1              G. BREAUX
2    knowledge, do you have an understanding of
3    the functions that Watchtower Bible and
4    Tract Society of New York carries out?
5         A.   No, I -- I do not.
6         Q.   Did you at any point in time
7    have knowledge of that?
8         A.   I possibly did in the past.
9         Q.   When?
10        A.   When I was more educated about
11   Watchtower New York.
12        Q.   Okay.  And what was that period
13   of time?
14        A.   I don't remember.
15        Q.   Can you give me an approximate?
16        A.   I probably -- I don't remember
17   that.  Probably the -- I would say the 90s.
18        Q.   Okay.  And the same question,
19   based upon your personal knowledge, do you
20   currently have an understanding of what
21   Watch Tower Bible and Tract Society of
22   Pennsylvania does?
23        A.   Well, I thought that was a
24   statement.  Was that a statement or -- or
25   was that a question?

```
                                              Page 25
 1                    G. BREAUX
 2              MR. STEPANS:  Strike that.
 3              MS. KORBEL:  -- to the form.
 4              MR. STEPANS:  Strike it.
 5         Strike it.
 6         Q.    What does a congregation elder
 7   do?
 8         A.    Well, I can tell you what I do
 9   as an elder.  I can't talk about all the
10   congregation elders.
11         Q.    Once again, just please, based
12   upon your personal knowledge and your
13   experience, tell me.
14              So once again, what did you do
15   as an elder?
16         A.    Okay.  Thank you.
17              As an elder, I -- I go from
18   door to door.  I -- I -- I take active part
19   in preaching the good news.  I prepare
20   talks for our congregation meetings.  I
21   give spiritual advice to those that are
22   asking, take care of humanitarian needs of
23   those that are in need.
24         Q.    How long were you a
25   congregation elder?
```

```
 1                    G. BREAUX
 2   appoint myself.  I -- I -- I do not know.
 3       Q.    Do you remember how you got
 4   word that you were a circuit overseer?
 5       A.    I do not remember.  It's been
 6   too many years ago.
 7       Q.    Who did you answer to as a
 8   circuit overseer?  Who did you report to?
 9       A.    Can you explain your question?
10   Report?
11       Q.    If I understood correctly, you
12   said you traveled around to various
13   congregations providing information,
14   gathering information.  To whom did you
15   share the information that you gathered
16   from the congregations?
17             MS. KORGUL:  Objection to the
18       form.
19       A.    I -- I sent reports to service
20   department.
21       Q.    What's the service department?
22       A.    It's a group of -- no.  I --
23   I -- I -- I don't know.  I'm not here,
24   really, to explain to you what the service
25   department's all about.
```

Page 70

1  G. BREAUX
2  condition of the congregation, yes.
3     Q.  And would you report on the
4  recommendations as it pertained to
5  appointment of elders?
6     A.  If there was a recommendation,
7  yes.
8     Q.  And that would go in a written
9  report or a verbal report to the service
10 department?
11    A.  Written.
12    Q.  And was there a form that you
13 used or would it be sort of a letter?
14    A.  I do not recall.  It's been
15 years ago.
16    Q.  And those reports, was there --
17 did you ever receive feedback, do you
18 recall, regarding the reports that you sent
19 as a circuit overseer to the service
20 department?
21    A.  I don't recall.
22    Q.  And during that period of time,
23 would you make recommendations as well,
24 personally, based on your observations?
25 And by that, I mean to the service

Page 140

1              G. BREAUX
2  how to deal with calls involving reports of
3  child sex abuse in your role as a desk man
4  at the service department?  At the service
5  desk, excuse me.
6      A.   Handling it as a shepherd, just
7  to shepherd the brothers.
8      Q.   And I guess my question is a
9  little bit more general.  I'm asking if you
10 were ever instructed or taught how to --
11 how to handle those calls.
12     A.   I do not -- I do not remember.
13         MR. TAYLOR:  Excuse me.
14     Q.   You don't remember?
15     A.   I do not remember.  It's been
16 years ago.
17     Q.   You don't know whether you were
18 given specific directions or general
19 guidance about how to handle calls that
20 came in to report instances of child sex
21 abuse.
22         MS. KORGUL:  Objection to the
23    form.
24     A.   I don't remember directions
25 back -- back in the 90s when I was a desk

Page 156

```
 1                      G. BREAUX
 2   man and received a report of child sex
 3   abuse because -- if I understand
 4   correctly -- the elders in the congregation
 5   that you were communicating with would call
 6   the legal department to determine their
 7   obligations insofar as reporting these
 8   allegations externally.
 9              Is that accurate?
10        A.    Yes.
11        Q.    And at -- so when you were a
12   desk man, then, would you direct the elders
13   to call the legal department if they asked
14   you a question about reporting to secular
15   authorities?
16        A.    I don't remember.  It's been so
17   many years ago.
18        Q.    Would you -- do you remember
19   whether you just answered those questions
20   for them?
21        A.    No.  I -- you mean the
22   reporting?
23        Q.    Yes.
24        A.    Legal reporting, no.  I
25   wouldn't answer it.
```

```
                                              Page 159
 1                    G. BREAUX
 2   you -- your responsibility was to direct
 3   those elders who were asking that question
 4   to legal?
 5             MS. KORGUL:  Objection to the
 6        form.
 7        Q.   Or did you make that decision
 8   on your own?
 9        A.   I don't know.
10        Q.   Where did you -- did you have
11   anything that you referred to, any
12   documents or handbooks, anything you
13   referred to to help you do your job when
14   you were a desk man in the service
15   department?
16        A.   It's a long time ago.  I'm sure
17   there was some information, but I don't
18   recall what we used.
19        Q.   Do you recall at all what you
20   used then?
21        A.   The only thing I recall is a
22   textbook that the elders have.  That's --
23   that's the extent that I remember.
24        Q.   And do you remember what it's
25   called?
```