Jon A. Wilson
Brett C. Jensen
Michael P. Sarabia
BROWN LAW FIRM, P.C.
315 North 24th Street
P.O. Drawer 849
Billings, MT 59103-0849
Tel. (406) 248-2611
Fax (406) 248-3128

Joel M. Taylor, Esq. (appearing *pro hac vice*)
MILLER MCNAMARA & TAYLOR LLP
412 Clock Tower Commons Dr.
Brewster, NY 10509
Telephone/E-Fax: (845) 288-0844
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | Cause No. CV 20-52-BLG-SPW |
| Plaintiffs, | **DEFENDANT WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS RE: WTNY'S PATTERN OF DECEPTION AND DISCOVERY ABUSE (DOC. 365).** |
| vs. | |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR., | |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................. iii

EXHIBIT INDEX ........................................................................ iv

INTRODUCTION ......................................................................... 1

LEGAL STANDARDS ....................................................................... 2

    I.    Rule 59(e) ....................................................................... 2

    II.   Discovery-Based Sanctions.................................................... 2

ARGUMENT ............................................................................... 3

    I.    PLAINTIFFS' MOTION SHOULD BE DENIED AS VIOLATIVE OF  RULE 59(e) AND LOCAL RULE 7.1(d)(2)(D) ....................................... 3

    II.   WTNY HAS NOT ENGAGED IN A "PATTERN OF DECEPTION" 4

        1.    The sanctions the Court imposed on Philip Brumley are irrelevant to Plaintiffs' request for sanctions against WTNY. .............. 6

        2.    WTNY's responses to jurisdictional discovery do not support Plaintiffs' request for sanctions. ........................................... 7

        3.    The discovery dispute about WTNY's alleged control over CCJW and the U.S. Branch Office does not support Plaintiffs' request for sanctions. ........................................................ 9

        4.    The discovery dispute over application of the clergy-penitent privilege to a handful of documents does not support Plaintiffs' request for sanctions. .............................................. 10

        5.    The Court sanctioned WTNY for violating the Court's order to fully respond to Interrogatories 9 and 15.  Plaintiffs offer no justification for further sanctions ....................................... 11

        6.    WTNY did not "hide" Shuster and Breaux, and sanctions are not justified. ........................................................... 12

        7.    WTNY did not participate in preparing Breaux and Shuster for their depositions, and sanctions are not justified. ..................... 15

        8.    Plaintiffs' accusation of spoliation of evidence is false and does not support their request for sanctions. ................................ 16

      9.     Plaintiffs' false accusation that WTNY withheld sworn statements requested in discovery does not support their request for sanctions. ............................................................................................16

III.    PLAINTIFFS ARE NOT ENTITLED TO SANCTIONS .................17

IV.    NONE OF PLAINTIFFS' PROPOSED SANCTIONS ARE JUSTIFIED ...................................................................................20

V.    NONE OF THE ALLEGED MISCONDUCT INTERFERES WITH THE RIGHTFUL DECISION OF THE CASE ............................................25

CONCLUSION ......................................................................................27

# TABLE OF AUTHORITIES

## Cases

*Anheuser–Busch, Inc. v. Natural Beverage Distribs.*,
  69 F.3d 337 (9th Cir.1995)....................................................................2
*BNSF Ry. Co. v. Tyrell*,
  137 S. Ct. 1549, 1558 (2017)..............................................................7
*Computer Task Group, Inc. v. Brotby*,
  364 F.3d 1112 (9th Cir. 2004) .........................................................19
*Exxon Shipping Co. v. Baker*,
  554 U.S. 471 (2008)...........................................................................2
*Leon v. IDX Sys. Corp.*,
  464 F.3d 951 (9th Cir. 2006)....................................................... 18, 19
*Navellier v. Sletten*,
  262 F.3d 923 (9th Cir. 2001)............................................................21
*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
  140 S. Ct. 2049 (2020)......................................................................23
*Payne v. Exxon Corp.*,
  121 F.3d 503 (9th Cir. 1997)............................................................20
*Phoeceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*,
  682 F.2d 802, 806 (9th Cir. 1983)....................................................14
*Puri v. Khalsa*,
  844 F.3d 11152 (9th Cir. 2017) ........................................................23
*Unigard Sec. Ins. Co. v. Lagewood Eng'g & Mfg. Corp.*,
  982 F.2d 363, 368 (9th Cir. 1992)......................................... 1, 17, 18
*Valley Engineers, Inc. v. Electric Eng'g Co.*,
  158 F.3d 1051 (9th Cir.1998)........................................... 3, 18, 19, 25
*Wanderer v. Johnston*,
  910 F.2d 652 (9th Cir. 1990)............................................................20
*Wood v. Ryan*,
  759 F.3d 1117 (9th Cir. 2014) ...........................................................2
*Wyle v. R.J. Reynolds Indus., Inc.*,
  709 F.2d 585 (9th Cir. 1983)...................................................... passim

## Rules

Fed. R. Civ. P. 37(b)(2) .................................................... 1, 17, 24

## EXHIBIT INDEX

1        WTPA Response to Jurisdictional Discovery Interrogatory No. 14

2        30(b)(6) Deposition Transcript Excerpts

3        Mario Moreno Transcript Excerpts

4        Shirley Gibson Transcript Excerpts

**COMES NOW**, Defendant Watchtower Bible and Tract Society of New York, Inc. ("WTNY"), and respectfully submits its Response Brief in Opposition to Plaintiffs' Motion for Sanctions (Doc. 365) ("Motion").

## INTRODUCTION

The instant Motion is the culmination of Plaintiffs' years-long onslaught of motions practice with one specific goal in mind—to establish dispositive sanctions in a case where WTNY owed no duty of care as a matter of law. In so doing, Plaintiffs largely recite previous complaints already raised with the Court, and even recycle material from a separate motion for sanctions filed the day before. (Docs. 362-363). While Plaintiffs' Motion and Brief in Support (Doc. 366) fail to identify the statute or rule on which Plaintiffs base their Motion, it appears to largely re-litigate complaints dealt with in previous Orders and so should be governed, and barred, by Rule 59(e).  Further, Plaintiffs' Motion appears to be violative of Local Rule 7.1(d)(2)(D).

Assuming Plaintiffs' Motion is based on Rule 37 of the Federal Rules of Civil Procedure, the most fundamental problem with Plaintiffs' Motion is that sanctions may be imposed under Rule 37 only "[i]f a party … fails to obey an order to provide or permit discovery …."  Fed. R. Civ. P. 37(b)(2).  Rule 37 "has never been read to authorize sanctions for more general discovery abuse."  *Unigard Sec. Ins. Co. v. Lagewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992).

For all the heat in Plaintiffs' Motion, they identify *one* Order WTNY violated—the Court's Order (Doc. 85) telling WTNY to provide a complete response to Interrogatories 9 and 15.  The Court already imposed sanctions for that.  (Doc. 318).  The rest of what Plaintiffs rely on is a series of routine discovery disputes litigated in good faith which Plaintiffs attempt to smear with their spin and accusations.  WTNY did not disobey any Court Order issued in response to those discovery disputes.  There is no basis for any further sanctions.

## LEGAL STANDARDS

### I.     Rule 59(e)

"[A] Rule 59(e) motion is an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014) (internal quotation marks omitted).

It is axiomatic that Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (internal citation omitted).

### II.    Discovery-Based Sanctions

The Court may award terminating and monetary sanctions pursuant to its inherent powers. *Anheuser–Busch, Inc. v. Natural Beverage Distribs*., 69 F.3d 337, 348 (9th Cir.1995). Dismissal is an available sanction in extraordinary

circumstances. *Valley Engineers, Inc. v. Electric Eng'g Co.*, 158 F.3d 1051, 1057

(9th Cir.1998). In the Ninth Circuit, "extraordinary circumstances exist where there

is a pattern of disregard for Court orders and deceptive litigation tactics that

threaten to interfere with the rightful decision of a case." *Id*.

**ARGUMENT**

## I.   PLAINTIFFS' MOTION SHOULD BE DENIED AS VIOLATIVE OF RULE 59(e) AND LOCAL RULE 7.1(d)(2)(D)

Plaintiffs lodge a series of complaints about WTNY, including: (1) an

affidavit submitted in support of WTPA's Motion to Dismiss for lack of personal

jurisdiction; (2) the sufficiency of discovery during the jurisdictional phase of the

case; (3) WTNY's alleged failure to produce documents of other Jehovah's Witness

entities; (4) WTNY's use of privilege to withhold certain documents; (5) WTNY's

responses to Interrogatory Nos. 9 and 15; (6) alleged misconduct relating to non-

party fact witnesses Breaux and Shuster; (7) alleged spoliation of evidence; and (8)

alleged obstruction with Plaintiffs' efforts to obtain information about WTNY's

role in appointing elders, implementing policies, and training elders on those

policies.

As more fully discussed below, every one of the above complaints relates to

a previous filed and ruled-upon motion, or is the subject of a separate motion

pending before the Court. To the extent such complaints have already been

litigated and decided, Plaintiffs arguments are barred by Rule 59(e) because they

have not followed the procedural requirements of the Rule and do not even discuss, much less demonstrate, how their arguments comport with the Rule 59(e) standard. To the extent they are the subject of a separate pending Motion, Local Rule 7.1(d)(2)(D) prohibits the filing of serial motions "to avoid word limits and may result in the denial of all such motions." The most egregious such example is the argument relating to alleged deposition misconduct, which was the subject of a separate motion for sanctions (Doc. 362) filed only the day before the present Motion, the brief in support of which was a mere 29 words under the 6,500-word count prescribed by Local Rule 7.1(d)(2)(a). (Doc. 363).

Plaintiffs' utter disregard for rules of procedure in the filing of the present Motion dictates denial of their Motion on those grounds alone.

## II.   WTNY HAS NOT ENGAGED IN A "PATTERN OF DECEPTION"

Plaintiffs claim "WTNY has shown a consistent and disconcerting willingness to employ deception and dishonesty to hide material facts from Plaintiffs and the Court." (Doc. 366 at 2).[1] That is untrue. To be sure, this case has been aggressively litigated by both sides. Plaintiffs seek to hold WTNY (and WTPA) liable for alleged abuse by their father and a family friend that occurred in private residences not associated with the Hardin Congregation, WTNY, or WTPA,

---

[1] Page references herein are to the page numbers on the filed document, not the ECF-generated page numbers.

and did not occur during the course of congregation-sanctioned activities.  (Doc. 347 at 2).  While no court has imposed a duty on a church in such circumstances, Plaintiffs have nevertheless used these weak claims to seek decades of intrusive discovery.

The weakness of Plaintiffs' claims does not excuse WTNY from its discovery obligations, and certainly not from its duty to obey Court Orders.  To that end, WTNY produced thousands of pages and has fully and completely responded to hundreds of discovery requests.  There have been several discovery disputes.  The Court resolved each and (with one exception) WTNY promptly obeyed the Court's Order.  The one exception is the Court's conclusion that WTNY did not obey its order to fully respond to Interrogatories 9 and 15, which the Court resolved by imposing sanctions on WTNY.  This was regretfully a mistake on the part of WTNY, but one which the Court has already remedied, and Plaintiffs are clearly not entitled to more bites at that apple.

Nothing in these discovery disputes supports Plaintiffs' allegation that WTNY has engaged in a "pattern" of "deception and dishonesty" to "obstruct" Plaintiffs' attempt to gather evidence.  The only "pattern" in this case is Plaintiffs' pattern of polluting their filings with overheated and untrue accusations of misconduct.  That pattern continues in this Motion.  Accordingly, WTNY will briefly recount each of the nine episodes Plaintiffs point to as part of WTNY's

alleged pattern of "deception and dishonesty" to show what really happened.

WTNY will then explain why no sanctions should be imposed.

**1.    The sanctions the Court imposed on Philip Brumley are irrelevant to Plaintiffs' request for sanctions against WTNY.**

Plaintiffs argue "Defendants' efforts to deceive began immediately after

Plaintiffs filed the case when [WTPA] submitted a highly misleading affidavit from

their in-house counsel" Philip Brumley.  (Doc. 366 at 2-3).  However, that has

nothing to do with WTNY.

Plaintiffs previously moved for sanctions against WTPA's General Counsel,

Philip Brumley, under 28 U.S.C. § 1927.[2]  (Doc. 101).  Plaintiffs contended that

Brumley made false and misleading statements in an affidavit he submitted in

support of WTPA's motion to dismiss for lack of personal jurisdiction.  (Doc. 13).

The Court said Brumley "framed the information [in his affidavit] in a confusing

manner" and did not address the relevant timeframe.  (Doc. 135 at 10).  The Court

determined: "Brumley's actions demonstrate, at minimum, a reckless disregard for

providing an accurate and truthful accounting of WTPA's role."  (*Id*. at 13).  But

the Court pointed to nothing false in his affidavit—only to statements that did not

---

[2] Plaintiffs also sought sanctions against Joel Taylor.  The Court denied that request, noting Taylor's only involvement in the case up to that point was submitting a motion for pro hac vice admission. (Doc. 135 at 7-8).

address WTPA's actions during the time frame at issue here.  In other words, the

Court concluded portions of his affidavit were irrelevant.[3]

In any event, Brumley's affidavit was not filed on behalf of WTNY, and the

fact that it failed to dispositively resolve the issue of personal jurisdiction for

WTPA is not a proper basis for sanctions against WTNY.

### 2. WTNY's responses to jurisdictional discovery do not support Plaintiffs' request for sanctions.

Plaintiffs contend that WTNY "withheld evidence" during the jurisdictional

phase of discovery to "obstruct" Plaintiffs' ability to respond to WTPA's Motion to

Dismiss.  (Doc. 366 at 3).  Not true.  At worst, WTNY's responses to two

interrogatories were incomplete.

On April 20, 2021, Plaintiffs filed a motion to compel further responses to

certain jurisdictional discovery.  (Docs. 56-57).  Plaintiffs explained: "[c]ounsel for

the parties have conferred numerous times" and "[s]everal areas of disagreement

were resolved," but "critical areas of disagreement remain …."  (Doc. 57 at 4).

The primary basis for this discovery dispute was a good-faith disagreement

over the relevant timeframe.  The Court permitted Plaintiffs "to conduct discovery

---

[3] Plaintiffs' claims are based on conduct that occurred four decades ago.  "[A] court may assert
general jurisdiction over foreign (sister-state or foreign-country) corporations" only "when their
affiliations with the State are so 'continuous and systematic' as to render them essentially at home
in the forum state."  *BNSF Ry. Co. v. Tyrell*, 137 S. Ct. 1549, 1558 (2017).  That analysis requires
consideration of the defendant's *current* contacts with the state, and WTPA's motion argued the
Court has neither general nor specific jurisdiction.  (Docs. 13-14).

into WTPA's and WTNY's corporate relationship from 1973 to 1992." (Doc. 47 at 5). Most of WTNY's objections to Plaintiffs' discovery requests were because Plaintiffs sought documents created before 1973 or after 1992. (Doc. 67 at 13-14).

Plaintiffs filed a motion to compel, which the Court granted in part. The Court agreed that "documents and information produced after 1992" were not relevant, but found that documents created before 1973 could be relevant, so a "blanket objection" was invalid. (Doc. 85 at 7). The Court granted the motion in re Interrogatories 6, 7, 9, and 15.[4] (*Id*. at 8-12). Regarding Interrogatories 6 and 7, the Court merely ordered WTNY to "explain what reasonable efforts were made to discover the information" at issue. (*Id.* at 10). That issue was resolved without further Court involvement.

Regarding Interrogatories 9 and 15, the Court found that WTNY's responses were "vague to the point of non-responsive" and ordered WTNY to "fully and completely respond to Interrogatory Nos. 9 and 15 ...." (*Id.* at 11-12). WTNY supplemented its answer and believed it complied with the Court's Order, although

---

[4] Plaintiffs' motion twice mentions Interrogatories 17 and 18. (Doc. 366 at 15, 20). WTNY fully responded to Interrogatories 17 and 18. If Plaintiffs think otherwise, they made no attempt to meet and confer. Additionally, Plaintiffs assert, "Even the existence of the 'U.S. Branch Office' during the 1970s-1990s is unclear because WTNY refuses to provide a clear answer about it." (Doc. 366 at 17, n. 4). Plaintiffs do not identify an Interrogatory or RFP on which this allegation is based, nor any attempt to meet and confer regarding this issue. Regardless, co-Defendant WTPA provided a clear Answer to Plaintiffs' Interrogatory No. 14, seeking information about all branch offices nearly **four years ago**. (Ex. 1). Plaintiffs' argument in this regard is a red herring.

this Court later found the supplement insufficient as more fully discussed below.

(Doc. 318).

In sum, this was a routine discovery dispute involving no "deception" or

"dishonesty," and provides no basis for the sanctions Plaintiffs seek.

### 3. The discovery dispute about WTNY's alleged control over CCJW and the U.S. Branch Office does not support Plaintiffs' request for sanctions.

Plaintiffs claim WTNY tried to "to trick the Court into believ[ing] that

[WTNY] had produced all the evidence pertaining to the child sex abuse at issue in

this case, when in fact [WTNY] was sitting on hundreds of pages of direct

communication between the Organization and its clergy in Hardin." (Doc. 366 at

4). Not true.

As the Court explained in resolving Plaintiffs' motion to compel, "Plaintiffs

initially asked the Court to require [WTNY] to search for, obtain, and produce all

discoverable information and documents at the Jehovah's Witnesses' New York

Headquarters" but "[o]n reply, Plaintiffs narrowed their request for relief to include

only two Jehovah's Witnesses entities at the New York headquarters—the U.S.

Branch Office, including the Service Department, and the Christian Congregation

of Jehovah's Witnesses ('CCJW')." (Doc. 237 at 1-2). So, after filing their

motion, Plaintiffs apparently recognized they were overreaching and narrowed

their request, which shows WTNY was not acting in bad faith.

WTNY argued the U.S. Branch Office and CCJW are separate entities not under WTNY's control and that Plaintiffs should subpoena them directly.  (Doc. 202 at 7-8).  The Court agreed with WTNY that "[a]s to the U.S. Branch Office, Plaintiffs did not meet their burden to provide evidence demonstrating WTNY has a right to command responsive documents."  (Doc. 237 at 13).  The Court disagreed regarding CCJW and ordered WTNY to produce documents in CCJW's possession.  (*Id.* at 7-13.)  WTNY promptly complied.  But WTNY's position was hardly frivolous.  Other courts have concluded WTNY does *not* control CCJW documents.  (Doc. 359-9 at 10-13).

In short, this was a good-faith discovery dispute and WTNY promptly complied with the Court's order on the portion of the dispute it lost.  Nothing in this episode supports Plaintiffs' request for sanctions.

### 4. The discovery dispute over application of the clergy-penitent privilege to a handful of documents does not support Plaintiffs' request for sanctions.

Plaintiffs accuse WTNY of "deceptively describing documents withheld based on the clergy-penitent privilege."  (Doc. 366 at 5).  Untrue again.

Plaintiffs' motion to compel complained of 14 documents WTNY withheld based on the clergy-penitent privilege.  (Doc. 188-3).  The Court found some of the documents "are protected by the clergy-penitent privilege and were properly withheld by WTNY."  (Doc. 239 at 1).  The Court ordered *in camera* review of the

rest because "WTNY did not describe the documents with sufficient specificity for the Court to determine" if they are privileged.  (*Id*. at 10).  WTNY promptly produced the documents for *in camera* review, and after the Court's review, it ordered WTNY to produce some of the documents (with redactions) while concluding others were privileged.  (Doc. 251).

Regarding this dispute, the Court faulted WTNY for what it believed was the "consistent insufficiency of WTNY's assertions of privilege in its responses to Plaintiffs' requests for production and its privilege log."  (Doc. 239 at 17).  The Court also provided guideposts for "future discovery."  (*Id*. at 18).  WTNY complied with the Court's Order, and in future privilege log entries provided robust descriptions of withheld documents while being careful not to waive privileged information.  (Doc. 320-24 at 7-32). Nothing here supports Plaintiffs' request for sanctions, especially since the Court agreed with WTNY as to 5 of the 11 documents after reviewing them *in camera* and ordered the other 6 documents to be produced with redactions to protect clergy-penitent information and the identities of third parties. (Doc 239).

### 5. The Court sanctioned WTNY for violating the Court's order to fully respond to Interrogatories 9 and 15.  Plaintiffs offer no justification for further sanctions

Plaintiffs' fifth assertion of WTNY's alleged pattern of deception relates to WTNY's September 21, 2021, supplemental responses to Interrogatories 9 and 15

in response to the Court's order (Doc. 85).  Plaintiffs believed the supplemental

responses were still insufficient, and (two years later) moved for sanctions.  (Doc.

287).

Interrogatories 9 and 15 were part of jurisdictional discovery, and WTPA

withdrew its motion to dismiss.  (Doc. 94).  WTNY believed this mooted any

remaining dispute over Interrogatories 9 and 15, and Plaintiffs were silent

regarding WTNY's supplemental responses for two years before finally contending

that they were still insufficient.  (Doc. 288-11 at 2).

The Court agreed with Plaintiffs and awarded sanctions against WTNY, but

rejected Plaintiffs' proposed sanction as too harsh.  (Doc. 318 at 34-36).  Instead,

the Court determined 16 facts about the Governing Body and the U.S. Branch

Office would be deemed established.  (*Id*. at 38-39).  Plaintiffs' request for

additional sanctions based on the same discovery order is unjustified.

### 6.    WTNY did not "hide" Shuster and Breaux, and sanctions are not justified.

Plaintiffs accuse WTNY of "attempt[ing] to hide critical witnesses."  (Doc.

366 at 8).  Completely wrong.  Plaintiffs are referring to Gary Breaux and Allen

Shuster, who know nothing about the facts of this case, and WTNY did nothing to

"hide" them from Plaintiffs.

Plaintiffs sent WTNY an email dated September 27, 2022, asking to depose

Shuster and Breaux.  (Doc. 249-1).  WTPA's counsel responded that "neither

WTPA nor WTNY has ever communicated with them regarding any potential depositions" and that "we would need to consult with them and evaluate any notices addressed to them individually to assess next steps."  (Doc. 249-2). Plaintiffs then sent draft deposition notices for Breaux and Smalley, but they contained no topics. (Doc. 249-3).  Plaintiffs subsequently asked whether WTNY was "willing to make these gentlemen available" for a deposition.  (Doc.249-4). WTNY's counsel explained neither of them had any knowledge of the facts of this case and they were not "executive officers or members of the boards of directors of either corporation during the relevant time period."  (Doc. 249-5).  WTNY also said the "apex" doctrine might protect them from a deposition.[5]  WTNY asked: "Can you provide the basis for the necessity of these depositions, especially since there has yet to be a Rule 30(b)(6) deposition of the defendants?"  (*Id*.)  Plaintiffs filed a motion to compel the next day.  (Doc. 153).  The Court denied that motion because Plaintiffs failed their meet-and-confer obligation.  (Doc. 222).

Following the denial of their motion to compel, Plaintiffs again expressed interest in deposing Shuster and Breaux.  (Doc. 249-6).  WTNY again asked for the topics Plaintiffs wanted to address and identified alternative witnesses who could better address any topics Plaintiffs might raise.  (Doc. 249-8).  Plaintiffs refused

---

[5] Plaintiffs' own motion on this issue recognized the potential applicability of the "apex" doctrine by referring to them as "two of the most senior . . . figures within the Jehovah's Witnesses' Organization." (Doc. 363 at 1).

WTNY's ' offer of alternative witnesses, so WTNY moved for a protective order. (Doc. 234).

WTNY argued the "apex" doctrine applied, pointed out that Breaux and Shuster had no personal knowledge, and said they had identified other officials with equal or greater knowledge of any relevant topics.  (Doc. 235).  On reply, WTNY also said they did not control Breaux and Shuster, so Plaintiffs would have to subpoena them.  (Doc. 247).  *Defendants had never said anything to the contrary*.  In denying WTNY'S motion for a protective order, the Court noted WTNY raised this control argument for the first time in their reply.  (Doc. 268 at 10).  A fair point.  The Court also agreed with "Plaintiffs' characterization of WTNY's conduct as a bait and switch …." (*Id*. at 13).  WTNY respectfully disagrees; it was an argument WTNY should have raised sooner but raised in reply to Plaintiffs' arguments.[6]

Ultimately, Breaux and Shuster were deposed, and WTNY also produced the alternative witnesses it had identified, Thomas Jefferson and Mario Moreno, as 30(b)(6) witnesses.  Plaintiffs deposed Jefferson and Moreno on a host of topics.

---

[6] Even if WTNY had taken contrary positions regarding their control over Breaux and Shuster, this would not justify the sanctions Plaintiffs seek.  *See Phoeceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1983) (where defendant deliberately deceived court not about merits of controversy but rather about the peripheral matter of his availability for trial, no legitimate inference regarding the merits of defendant's position could be drawn and entry of default against him was improper).

They thoroughly answered Plaintiffs' questions, and Plaintiffs have raised no concerns about their responses.

This, again, was a routine discovery dispute resolved by the Court. Since WTNY did not violate any Court order, this dispute cannot support sanctions.

### 7. WTNY did not participate in preparing Breaux and Shuster for their depositions, and sanctions are not justified.

Plaintiffs allege: "WTNY's lawyers worked with its corporate members, Breaux and Shuster, to obstruct Plaintiffs' ability to obtain candid and complete testimony from both men" and accuse WTNY of "arming Breaux with a stock refusal to answer questions about most topics," having Breaux "pretend[ ] that he had no member or knowledge" of certain matters, and using "baseless objections to cue repeated, non-responsive answers" to questions to Shuster. (Doc. 366 at 9).

As WTNY explained in more depth in its opposition to Plaintiffs' separate motion for sanctions on this issue (Doc. 362), WTNY did not participate in preparing Breaux and Shuster for their deposition.[7] (Doc. 375). Plaintiffs' accusations are baseless, and do not support sanctions against WTNY.

---

[7] Plaintiffs' complaints regarding the 30(b)(6) deponents of the Hardin Congregation, a non-party, is also not a basis for any sanctions against WTNY, which did not pay for or retain counsel for the Hardin Congregation, and did not participate in the preparation or selection of the 30(b)(6) deponents. (Doc. 374-3, ¶¶ 4-5).

**8.    Plaintiffs' accusation of spoliation of evidence is false and does not support their request for sanctions.**

Plaintiffs accuse WTNY of destroying evidence.  (Doc. 366 at 10).  That false allegation is the subject of a pending motion for sanctions.  (Doc. 332). WTNY has responded to that meritless motion (Doc. 359) and has nothing to add here.

**9.    Plaintiffs' false accusation that WTNY withheld sworn statements requested in discovery does not support their request for sanctions.**

Plaintiffs asked WTNY to produce "a copy of all affidavits, declarations, or any other sworn statements by Jehovah's Witnesses Organization officials … regarding the following issues …."  (Doc. 366 at 10-11).  Plaintiffs accuse WTNY of withholding 23 sworn statements.  (*Id*. at 11).

WTNY conducted a good-faith search and produced every responsive sworn statement it found.  Some of the statements Plaintiffs discovered independently in the public domain appear to have been prepared by local counsel and may not have been kept by WTNY, or may have been destroyed in the normal course of business. WTNY did not withhold anything in its possession, and had no obligation to search court dockets or other such sources.  Moreover, Plaintiffs made no attempt to meet and confer regarding this issue, and have failed to identify anything in those 23 statements that is not contained in the statements WTNY produced.  Nothing here supports Plaintiffs' request for sanctions.

## III.   <u>PLAINTIFFS ARE NOT ENTITLED TO SANCTIONS</u>

Plaintiffs seek "[c]ase dispositive" sanctions against WTNY—sanctions that would defeat at least some of WTNY's defenses.  (Doc. 366 at 21-22.)  Under Fed. R. Civ. P. 37(b)(2), a court may order sanctions "[i]f a party … fails to obey an order to provide or permit discovery …."  The Court sanctioned WTNY for not providing a complete response to Interrogatories 9 and 15, as the Court had ordered.  WTNY has not disobeyed any other Court order, so there is no basis for further sanctions.  Rule 37 "has never been read to authorize sanctions for more general discovery abuse." *Unigard Sec. Ins. Co.*, 982 F.2d at 368.

Plaintiffs point to WTNY's alleged violation of Court orders in *other* cases. But they have no relevance.  "[T]he sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 591 (9th Cir. 1983) (quotation marks omitted).  Sanctions cannot be imposed for "an infraction that did not threaten to interfere with the rightful decision of the case" at issue.  *Id*.

Before imposing sanctions that take the merits of a case away from a jury, the Court must analyze five factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Valley*

*Engineers*, 158 F.3d at 1057.  Further, "a finding of willfulness, fault, or bad faith is required for" dispositive sanctions.  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).  The Ninth Circuit has said "where a court order is violated, factors 1 and 2 support sanctions and 4 cuts against case-dispositive sanctions, so 3 and 5, prejudice and availability of less drastic sanctions, are decisive." *Valley Engineers Inc.*, 158 F.3d at 1057.  Plaintiffs identify only one Court Order WTNY violated, and the Court already imposed sanctions.  Other discovery disputes were resolved when the Court ruled on various motions and, to the extent WTNY lost those motions, it promptly complied with the Court's Orders.

If WTNY had some outstanding discovery obligation pursuant to a Court order, the fifth factor would become important.  "[F]actor 5 involves consideration of three subparts: whether the court explicitly discussed alternative sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of dismissal." *Id*.  None of those factors supports the sanctions Plaintiffs request.  Because Plaintiffs do not identify any Court order WTNY disregarded, there have been no discussion of alternative sanctions and no warnings about possible sanctions.  Again, Rule 37 "has never been read to authorize sanctions for more general discovery abuse." *Unigard Sec. Ins. Co.*, 982 F.2d at 368.  And, in any case, Plaintiffs fail to identify even "general discovery abuse."

None of the cases Plaintiffs cite justify the sanctions Plaintiffs seek.  In *Leon*, 464 F.3d at 960, the plaintiff filed suit against his former employer and then intentionally destroyed 2,200 "obvious[ly] relevan[t]" files on his work computer. The court concluded that Leon acted in bad faith because he knew the files were relevant and had been told to preserve them.

In *Valley Engineers*, 158 F.3d at 1054, the court dismissed Electric Engineers' claims after it lied about and repeatedly failed to produce a "smoking gun" memorandum, even going so far as blotting out references to the memorandum in other documents while witnesses lied about its existence.  No such history of discovery abuse is present here.

In *Wyle*, PEEL sued Sea-Land under Sec. 4 of the Clayton Act, accusing Sea-Land of paying $20 million in illegal rebates.  Sea-Land counterclaimed against PEEL for paying similar rebates.  "PEEL through its officers gave sworn testimony and filed sworn answers to interrogatories denying that the company had paid rebates …." *Id.*, 709 F.2d at 588.  After PEEL entered bankruptcy, a court-appointed trustee revealed that PEEL had paid illegal rebates.  PEEL's "knowingly false" statements about a central issue in the case "deliberately deceived" the court, and PEEL "willfully failed to comply with discovery orders to produce rebating documents possessed by PEEL or its agents." *Id.* at 590.  *See also Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004) (dispositive sanctions

warranted where defendants "engaged in a consistent, intentional, and prejudicial practice" of "not complying with repeated court orders and not heeding multiple court warnings"); *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997) (district court "imposed lesser sanctions on four separate occasions" and identified "the specific conduct" that would trigger further sanctions, which plaintiff disobeyed); and *Wanderer v. Johnston*, 910 F.2d 652, 655 (9th Cir. 1990) (defendants failed to appear without justification at nine depositions; plaintiffs obtained nine court orders compelling production of documents and defendants still withheld documents; defendants failed to answer interrogatories for over a year and then provided incomplete answers; and "lesser sanctions imposed by the magistrate have been met with complete indifference by defendants").

WTNY's alleged conduct in this case—e.g., inadequate descriptions on privilege logs, contradictory claims about control over a witness, withholding documents in the control of a related corporation, inadequate interrogatory responses (for which WTNY was already sanctioned), etc.—comes nowhere near the kind of conduct that has resulted in the kind of sanctions Plaintiffs seek.

## IV.   <u>NONE OF PLAINTIFFS' PROPOSED SANCTIONS ARE JUSTIFIED</u>

Even if some kind of sanctions were warranted, the sanctions Plaintiffs seek are unjustified.  Due process limits a court's power to issue dispositive sanctions. *Wyle*, 709 F.2d at 589, 591.  Such sanctions are permissible "only when the

deception relates to the matters in controversy, and because dismissal is so harsh a penalty, it should be imposed only in extreme circumstances." *Id*.

1.  Plaintiffs argue that WTNY's alleged obstruction has made it "impossible" for Plaintiffs to establish what role WTNY "played in the operations of the Jehovah's Witnesses' Organization during the 1970s, 1980s, and early 1990s." (Doc. 366 at 16).  Defendants provided ample discovery on this issue. Among other things, Plaintiffs have every sworn statement that addresses this issue.  Moreover, the Court's previous sanctions established a number of facts regarding this issue. (Doc. 318 at 39-40).

2.  Plaintiffs argue: "[n]othing that WTNY says about when it first learned about the child sexual abuse occurring in Hardin makes sense or is credible." (Doc. 366 at 17).  Plaintiffs point to no discovery request still in dispute that relates to this issue.  Interrogatories 26 and 27 were not the subject of a meet-and-confer, and Interrogatories 9 and 15 have nothing to do with this issue.  Breaux and Shuster know nothing about this issue.  WTNY has fully responded to every discovery request dealing with knowledge of abuse in the Hardin Congregation.  A fact may be deemed established "for failure to obey a discovery order *as long as the established issue bears a reasonable relationship to the subject of discovery that was frustrated by sanctionable conduct*."  *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001) (emphasis added).  WTNY's position on notice was based on

its assertion of privilege that the Court evaluated and upheld.  As to notice, the documents speak for themselves and post-date the alleged abuse.  This newly raised issue has nothing to do with any evidence WTNY supposedly failed to produce and does not warrant sanctions.

3. Plaintiffs argue: "Central to Plaintiffs' claims are the policies that the Hardin Congregation elders were required to follow when responding to reports of child sex abuse, including what is commonly referred to as the 'two witness rule' and the obligation to keep such reports secret even when the perpetrators confessed."  (Doc. 366 at 20).  Defendants have produced reams of documents detailing the beliefs and practices of Jehovah's Witnesses, and WTNY's 30(b)(6) witness was asked and fully answered all questions regarding what Plaintiffs allege is a "two-witness rule."  (Ex. 2, Jefferson Dep., 183-203).

4. Plaintiffs request that the following fact be deemed established:

> The formation of the Hardin Congregation as part of the Jehovah's Witnesses' U.S. organization was approved by WTNY.

The Court's previous sanctions already address this very issue. (Doc. 318 at 39-40, (n) and (p)).  Also, WTNY has never denied its role in the formation of the Hardin Congregation.

5.  Plaintiffs request the Court deem as established fact several statements that are matters of religious doctrine which Plaintiffs have mischaracterized. (Doc. 366 at 26-27, proposed facts 2.i., ii., and iii.).

Whether as a sanction or in the normal course of litigation, a court cannot decide matters of Church doctrine.  The First Amendment "require[es] … that courts decide disputes involving religious organizations without resolving underlying questions over religious doctrine."  *Puri v. Khalsa*, 844 F.3d 11152, 1164 (9th Cir. 2017) (quotation marks omitted).  "[A]ny attempt by [the] government to dictate or even influence such matters" is wholly "outlaw[ed]."  *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020).

Moreover, each of the statements Plaintiffs seek to establish is an *irrelevant* matter of doctrine.  Plaintiffs fail to explain what the "two-witness" principle has to do with this case.[8]  The Legal Department does not and has never instructed elders on whether to keep a matter confidential or not.  It provides legal advice on reporting requirements under state law, and as explained by Mr. Moreno, reporting requirements have nothing to do with having "two witnesses". (Ex. 3., Moreno Dep., 123-130). Moreover, Jehovah's Witnesses cannot "require" anyone to keep sex abuse confidential.  Plaintiffs' mother, Shirley Gibson, testified she could have reported the abuse, but chose not to.  (Ex. 4, S. Gibson Dep. at 65:6-10).  She also testified—consistent with common sense—that Jehovah's Witnesses have no real control over what anyone does:

---

[8] Plaintiffs contend WTNY refused to acknowledge the existence of the two-witness rule in response to Interrogatory Nos. 17 and 18. (Doc. 366 at 20).  Neither interrogatory has been the subject of any meet and confer, and neither asks about the two-witness rule.  (Doc. 366-11 at 4).

> Q. …. As one of Jehovah's Witnesses, is there any aspect
> of your worship that is not voluntary?
>
> A. No.
>
> Q. Is all of it voluntary?
>
> A. Yes.
>
> Q. Can the elders stop you from doing anything?
>
> A. No.
>
> Q. Can the elders make you do something?
>
> A. No.

(Ex. 4, S. Gibson Dep. at 161:17-162:2).

Plaintiffs' third statement related to "shunning" is *not* what Jehovah's

Witnesses believe, nor does "shunning" have anything to do with this case.

6.  The next three facts Plaintiffs asks the Court to deem established relate to

the relationship between WTNY and the elders in the Hardin Congregation (Doc.

366 at 27, proposed facts 3, 4, 5), and Plaintiffs ask the Court to hold that "[b]y

virtue of appointing the Hardin elders and assigning them the task of responding to

Plaintiffs' report of child sex abuse, WTNY assumed a duty to Plaintiffs." (Doc.

366 at 27).

Plaintiffs fail to explain what Court order WTNY allegedly violated that

would justify such sanctions. *Wyle*, 709 F.2d at 591. It would be an abuse of

discretion to deem these "facts" established because, as explained in Defendants'

summary judgment briefing, there is no duty for a religious organization to prevent

the abuse of a child by a father or a family friend in a private home when there is

no religious connection to the abuse, and no duty during the relevant timeframe for clergy to make reports to law enforcement.  (Docs. 303 and 347).  As to the assumption of duty sanction sought by Plaintiffs, nothing in Rule 37 authorizes the Court to declare that a *legal duty* exists where one would not exist. Fed. R. Civ. P. 37(b)(2)(A)(i).  This is like asking the Court to give a jury instruction that is contrary to the law.

> 7.   The final sanction Plaintiffs seek is this:

> A.  WTNY is prohibited from introducing evidence or making argument that the acts or omissions of other components of the Jehovah's Witnesses' Organization (i.e., other corporations, committees, departments, or bodies) are responsible for the acts and omissions alleged by Plaintiffs in this case.

(Doc. 366 at 28).  Again, nothing in the discovery disputes Plaintiffs identify would justify this sanction.  Plaintiffs do not point to a discovery request on this topic that is still the subject of dispute, much less a Court order that WTNY refused to obey.

## V.   <u>NONE OF THE ALLEGED MISCONDUCT INTERFERES WITH THE RIGHTFUL DECISION OF THE CASE</u>

As discussed in *Valley Engineers, supra*, the key inquiry as to case dispositive sanctions is whether "disregard for Court orders and deceptive litigation tactics threaten to interfere with the rightful decision of a case." Plaintiffs have expended considerable energy attempting to hit the bullseye of the wrong target. The Court has before it two pending case dispositive motions on behalf of

Defendants (Docs. 302 and 346), which rely on legal interpretations and the facts as Plaintiffs have asserted them in the record.

It cannot be disputed that every fact Plaintiffs have sought to establish through discovery is entirely irrelevant and immaterial to the issues they must prove to establish liability against WTNY: (1) whether there was a legal duty for clergy to report Plaintiffs' alleged child sexual abuse to law enforcement under Montana statute during the relevant timeframe; and (2) whether WTNY had a common law duty to protect Plaintiffs as congregation members from alleged child sexual abuse arising from activities with no religious connection. Plaintiffs have no evidence, nor could they develop such evidence in discovery, to create a legal duty under the undisputed material facts of this case as a matter of law.

Defendants are entitled to summary judgment because they owed no duty of care to Plaintiffs as a matter of law. That is the rightful decision of this case. Realizing this fact, Plaintiffs have waged a campaign of motions practice hoping the Court will ultimately exercise its inherent authority and relieve them of the burden of proving their case, and in the process, establish a duty of care that would otherwise not exist. However, that is the exact reason why the Court should decline to order case dispositive sanctions—nothing Plaintiffs have sought to discover about WTNY would establish a duty of care, hence there could not have been any interference with the rightful decision of the case.   The Court should rightfully

decline to grant a conclusion of law, a legal duty, as a sanction in this case; instead, WTNY respectfully requests the Court address the merits of Plaintiffs' claims as set forth in Defendants' pending Motions for Summary Judgment.

## CONCLUSION

The vast majority of Plaintiffs' grounds for sanctions warrant denial because they relitigate old matters, which is not allowed by Rule 59(e), or because their repetition here runs afoul of L.R. 7.1.(d)(2)(D).  Plaintiffs' other stated grounds and complaints about WTNY's conduct are not supported by the record, and/or Plaintiffs have failed to provide legal reasoning as to why such grounds warrant sanctions.  Finally, Plaintiffs' request for dispositive sanctions are not warranted because summary judgment in favor of  WTNY is the rightful decision in this case, and sanctions would create a duty of care where none exists.  For all of these reasons, WTNY respectfully requests the Court deny Plaintiffs' Motion (Doc. 365).

DATED this 3rd day of May, 2024.

By:   /s/ Jon A. Wilson
       Jon A. Wilson / Brett C. Jensen /
       Michael P. Sarabia
       BROWN LAW FIRM, P.C.
       *Attorneys for Defendants Watchtower Bible and Tract Society of New York, Inc.*

By:   /s/ Joel M. Taylor
       Joel. M. Taylor (appearing *pro hac vice*)

MILLER MCNAMARA & TAYLOR LLP
*Attorneys for Defendants Watchtower Bible and Tract Society of New York, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(d)(2)(E), the undersigned hereby certifies this brief complies with L.R. 7.1(d)(2)(A). According to the word-processing unit used to prepare this brief, the word count is 6,373 words excluding caption, table of contents and authorities, exhibit index, and certificates of service and compliance.

DATED this 3rd day of May, 2024.

By:   /s/ Jon A. Wilson
Jon A. Wilson / Brett C. Jensen /
Michael P. Sarabia
BROWN LAW FIRM, P.C.
*Attorneys for Defendants Watchtower*
*Bible and Tract Society of New York,*
*Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 3rd, 2024, a copy of the foregoing was served on the following person(s):

1.    U.S. District Court, Billings Division

2.    Robert L. Stepans/Ryan R. Shaffer/James C. Murnion
    MEYER, SHAFFER & STEPANS, PLLP
    430 Ryman Street
    Missoula, MT 59802

3.    Matthew L. Merrill (appearing *pro hac vice*)
    MERRILL LAW, LLC
    1401 Delgany Street, #404
    Denver, CO 80202

4.    Gerry P. Fagan/Christopher T. Sweeney/Jordan W. FitzGerald
    MOULTON BELLINGHAM PC
    P.O. Box 2559
    Billings, MT 59103-2559

5.    Bruce G. Mapley Sr.
    3905 Caylan Cove
    Birmingham, AL 35215

by the following means:

| | | | |
|---|---|---|---|
| _1-4_ | CM/ECF | _____ | Fax |
| _1_ | Hand Delivery | _____ | E-Mail |
| _5_ | U.S. Mail | _____ | Overnight Delivery Services |

By:   /s/ Jon A. Wilson
    Jon A. Wilson / Brett C. Jensen /
    Michael P. Sarabia
    BROWN LAW FIRM, P.C.
    *Attorneys for Defendant Watchtower*
    *Bible and Tract Society of New York,*
    *Inc.*