# Exhibit 2

Page 1

```
 1
 2       IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MONTANA
 3              BILLINGS DIVISION
 4   TRACY CAEKAERT and CAMILLIA MAPLEY,
 5                        PLAINTIFFS,
 6          -against-        Case No.:
                         CV-20-52-BLG-SPW
 7
     WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW
 8   YORK, INC., and WATCH TOWER BIBLE AND TRACT
     SOCIETY OF PENNSYLVANIA,
 9
                         DEFENDANTS.
10   ----------------------------------------X
     ARIANE ROWLAND and JAMIE SCHULZE,
11
                         PLAINTIFFS,
12
            -against-        Case No:
13                       CV-20-59-BLG-SPW
14   WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW
     YORK, INC., and WATCH TOWER BIBLE AND TRACT
15   SOCIETY OF PENNSYLVANIA,
16                       DEFENDANTS.
     ----------------------------------------X
17
18              DATE: March 8, 2024
19              TIME: 9:06 A.M.
20
21
22          VIDEO-RECORDED DEPOSITION of the
23   Defendant by a witness, THOMAS JEFFERSON,
24   JR., taken by the respective parties,
25   pursuant to a Notice and to the Federal
```

Page 183

```
 1                 T. JEFFERSON
 2   the testimony of two witnesses or on the
 3   testimony of three witnesses, the matter
 4   should be established."
 5              Jehovah's Witnesses adhere to
 6   this scriptural exhortation and direction
 7   that, before taking any action that is in
 8   the context of whether someone should or
 9   should not be established as guilty of
10   misconduct, there needs to be two witnesses
11   or a confession.
12              But this thought of a two
13   witness rule, no.  Jehovah's Witnesses
14   don't have a two witness rule.  We have
15   what the Bible says to establish a certain
16   accusation.
17        Q.    The Bible principle you just
18   quoted to me is elaborated upon in numerous
19   publications that Jehovah's Witnesses have
20   sent to elders to guide them in their
21   duties; correct?
22        A.    Yes.
23        Q.    What do you call that
24   principle?
25        A.    Just that, a Bible principle.
```

Page 184

```
 1              T. JEFFERSON
 2      Q.    Well, the Bible has lots of
 3  principles; right?
 4      A.    Yes.
 5      Q.    So which Bible principle is it?
 6      A.    It's a Bible principle that
 7  outlines how conduct is established in the
 8  absence of a confession.
 9      Q.    So your no answer to my
10  previous question was about the use of the
11  word rule?
12      A.    I believe, in the form of your
13  original question, you asked me about a two
14  witness rule -- not an exact quote -- that
15  Jehovah's Witnesses adhere to.  We don't
16  have a two witness rule.  We have a Bible
17  principle that helps elders to see that,
18  when establishing an accusation, you need
19  to abide by the fact that there are two
20  witnesses -- eye witnesses to the conduct.
21      Q.    That's a lot of words for me
22  to use as a shorthand referring to that
23  principle.  Could we call it the two
24  witness principle?
25      A.    We can call it what the Bible
```

Page 185

1                    T. JEFFERSON

2    calls it that, namely, you need two

3    witnesses to establish whether an

4    accusation of conduct can be upheld,

5    period.  Obviously, I can't dictate what

6    you call it, but that's what I'd like to

7    call it.

8         Q.    To the extent that principle is

9    addressed in the publications that are

10   provided to elders that we've discussed

11   earlier today, that -- those publications

12   contain Jehovah's Witnesses' interpretation

13   of the relevant Bible verses regarding that

14   principle; correct?

15        A.    Those publications explain what

16   Deuteronomy 19:15 and several other Bible

17   verses say with regard to assisting people

18   who are alleged to have been involved in

19   some form of conduct that conflicts with

20   the Bible.  Elders are instructed to be

21   guided by that principle before determining

22   whether a person should or should not

23   remain as one of Jehovah's Witnesses.

24        Q.    And that would apply to elders

25   in the Hardin Congregation during the

```
 1                    T. JEFFERSON
 2    relevant time period; correct?
 3         A.    Yes.
 4         Q.    Were there any changes to that
 5    principle between 1973 and 1992?
 6         A.    Deuteronomy 19:15 is unchanged.
 7         Q.    Were there any changes to
 8    Jehovah's Witnesses' interpretation of that
 9    principle between 1973 and 1992?
10         A.    And I'd ask you to clarify what
11    you mean by interpretation since I repeated
12    two or three times already what we do
13    understand, and that remains unchanged.
14    Maybe I'm missing something respectfully.
15         Q.    We've talked all day about how
16    the manuals contain or the publications
17    contain interpretations of Bible principles
18    that are helpful to guide elders; right?
19         A.    Yes.
20               MR. TAYLOR:  Objection to form.
21         Q.    That was a yes?
22         A.    Yes, we have.
23         Q.    So that's the definition of
24    interpretation I'd like you to use in
25    answering the question that's pending.
```

1              T. JEFFERSON

2      A.     So what question would you like

3   to pose again, Counsel?

4              MR. MERRILL:  Would you please

5        read it back?

6              THE REPORTER:  Okay.

7              (Whereupon, the referred to

8        question was read back by the

9        Reporter.)

10     A.     No.

11     Q.     The principle that we're

12   discussing from the Bible regarding the

13   presence of two witnesses is interpreted in

14   the 1972 Kingdom Ministry School Course and

15   in the Pay Attention to Yourselves and All

16   the Flock publications; correct?

17     A.     Perhaps.  I don't know if

18   there's a specific reference you would like

19   me to draw attention to or is that a

20   general question as to whether it appears

21   in the document?

22     Q.     It appears in both documents;

23   correct?

24     A.     I don't know unless I look

25   exactly.  I mean, I don't know.  Is there a

Page 188

```
 1                   T. JEFFERSON
 2    specific reference you want me to comment
 3    on or...
 4         Q.    You testified earlier that you
 5    spent hours reading those documents to
 6    prepare for this deposition.  Do you recall
 7    that?
 8              MR. TAYLOR:  Objection to the
 9         form.  It's not a memory test.
10         A.    I testified that I spent hours
11    reviewing documents in preparation for the
12    deposition.  I did not say I read every
13    single word and sentence in those
14    documents, Counsel.
15              So if there is something
16    specific you'd like me to comment on, I'd
17    be more than happy to address it.
18         Q.    I'd like you to please read
19    topic 26B into the record.  Please start
20    with 26, and then you can skip to B, you
21    know, skip over A.  Thank you.
22         A.    "All details of what is
23    commonly referred to as the two witness
24    rule or two witness principle as it existed
25    between 1973 and 1992 including how the
```

1                    T. JEFFERSON

2    rule and any changes to it were

3    communicated to elders, including any and

4    all written guidance provided to local

5    congregations regarding application of the

6    rule and whether that guidance was ever

7    communicated on WTNI -- WTNY letterhead or

8    contained in WTNY documents."

9          Q.    Your testimony, as you sit here

10   today, is that you don't know whether that

11   two witness principle is included in the

12   documents 1972 Kingdom Ministry School

13   Course or versions of Pay Attention to

14   Yourself and All the Flock.  Is that

15   correct?

16         A.    No.  My testimony is I cannot

17   comment specifically on what was said.  I'm

18   not denying that it may have been

19   mentioned, not by any stretch.  But what

20   specifically, where, context, at this

21   moment, I cannot say exactly.

22         Q.    I'm not asking you whether it

23   may have been mentioned.  I'm asking you

24   whether it was mentioned.

25         A.    And I'm telling you I don't

Page 190

                    T. JEFFERSON
1
2   recall exactly.
3               MR. MERRILL:  And I'll object
4         to that answer as nonresponsive to
5         topic 26B.
6         Q.    Are there other publications
7   during the relevant time period where the
8   principle was discussed?
9         A.    Yes.
10        Q.    Which ones?
11        A.    Watchtowers, Awakes.
12  Deuteronomy 19:15 is discussed multiple
13  times in our publications.  It would be a
14  voluminous review for me to try to sit down
15  and point to every sentence in every
16  article where Deuteronomy 19:15 appears.
17              So the answer is yes to your
18  question.  In multiple places, in study
19  articles, in the Watchtower, it -- it is
20  mentioned frequently throughout the
21  publications and certainly over the
22  relevant period.
23        Q.    If this principle of needing
24  two witnesses or a confession to establish
25  a matter was discussed in the 1972 Kingdom

Page 191

```
 1                    T. JEFFERSON
 2   Ministry School Course or in versions of
 3   Pay Attention to Yourselves and All the
 4   Flock, would that discussion guide elders?
 5        A.    Yes.
 6        Q.    If, during the relevant period,
 7   elders received a report that a young girl
 8   in a Jehovah's Witness congregation was
 9   sexually abused by another member of the
10   congregation and the alleged abuser denies
11   that allegation, and there are no witnesses
12   besides the young girl and the elder or --
13   excuse me -- the alleged abuser -- pardon
14   me -- do I understand correctly that the
15   truth of the matter of the allegation would
16   not be able to be established?
17        A.    If a child accused an adult of
18   child sexual abuse during the relevant
19   period and the elders investigating the
20   matter were unable to establish through
21   confession from the accused or testimony of
22   two witnesses that this actual allegation
23   is true, then there would be no judicial
24   action taken against the accused.
25        Q.    That means that the accused
```

                    T. JEFFERSON
1
2    would continue to be in the congregation;
3    correct?
4         A.    Correct.
5         Q.    The accused could continue to
6    participate in the field service?
7         A.    Correct.
8         Q.    Let's talk about topic 27.  Was
9    there any rule or principle or policy about
10   keeping certain information within
11   Jehovah's Witness congregations
12   confidential during the relevant period?
13        A.    And so Counsel, in Proverbs
14   11:13 -- this is what guided the elders
15   then and still does today -- "A slanderer
16   goes about revealing confidential talk, but
17   the trustworthy person keeps confidence."
18             This guidance then, in the
19   relevant period, served to guide elders
20   related to information that came to their
21   attention about the conduct of congregants.
22        Q.    And you said that was -- was it
23   Proverbs did you say?
24        A.    Yes, sir.  Proverbs 11 and --
25   and verse 13.

```
 1              T. JEFFERSON
 2       Q.    Is that verse discussed in
 3  Jehovah's Witness publications?
 4       A.    Yes, it is.
 5       Q.    And would those publications
 6  include the Jehovah's Witnesses'
 7  interpretation of that verse and guidance
 8  on how to apply it?
 9       A.    Yes.
10       Q.    Can you give me a general
11  statement of what that verse means and how
12  it's interpreted?
13       A.    Congregants who encounter
14  difficulties in their life seek pastoral
15  help from shepherds, what we read about
16  earlier in First Peter 5.  A wide range of
17  problems from marital difficulties to
18  serious health concerns are discussed with
19  elders who -- by congregants who are
20  seeking comfort and guidance.
21            Other times, though,
22  congregants approach elders because they've
23  made a serious error in judgment, and they
24  want help to see how to work out their
25  problem.  When that happens, they approach
```

Page 194

                    T. JEFFERSON

1

2   the elders, and they share that

3   confidential information with them.

4            It's understood that elders, in

5   discussing this problem, will not share

6   that information with their wives or their

7   children or anyone else not entitled to

8   know about it.  That's the application of

9   that principle.

10       Q.    Who else is entitled to know

11  about it?

12       A.    If the information that the

13  congregant has shared requires that

14  attention needs to be given as to whether

15  they remain Jehovah's Witnesses or not, the

16  body of elders as a whole will be informed.

17       Q.    Other than the body of elders

18  of that congregation, would any other

19  Jehovah's Witnesses in the congregation be

20  informed?

21       A.    Generally not, no.

22       Q.    What's the exception to your...

23       A.    Well, let's say that the

24  congregant who is approaching the elders is

25  16 years old.  He's just confessed that, in

Page 195

```
 1                    T. JEFFERSON
 2    his relationship with a friend, they
 3    actually committed a crime.  His parents,
 4    who are Jehovah's Witnesses, are unaware of
 5    it.
 6              However, the elders realize
 7    that in order for him to receive the help
 8    he needs, even though he doesn't want his
 9    parents to know, they're going to have to
10    know.  They'll see to it that the parents
11    are informed.  They'll the give the minor
12    the chance to inform his parents, and
13    they'll even give him time.
14              A man who is married to his
15    wife goes on a business trip.  And on his
16    business trip, they close a contract and
17    they go to dinner with the business
18    partners.  For reasons he can't explain,
19    when he wakes up the next morning, his
20    secretary is beside him in the bed, and he
21    doesn't know how she got there because they
22    both had quite a bit to drink that night.
23              He loves his wife very much,
24    but he tells the elders, I've done
25    something seriously wrong, and I need help,
```

                    T. JEFFERSON

1

2   and I don't know how to tell my wife.  Can

3   you help me?

4           That's an example of where the

5   elders will see to it that his wife knows

6   through him.  They'll help him, but she has

7   to know.  And also, they'll keep the matter

8   confidential because others outside of his

9   wife -- his brother in the same

10  congregation, his cousin in the same

11  congregation -- they don't need to know.

12          That's an example of applying

13  the principle I just discussed with you and

14  why elders are urged not to discuss it with

15  others, even though the man's wife is the

16  elder's wife's best friend.  Those are two

17  examples to illustrate my point, Counsel.

18      Q.    Do elders ever share

19  information they received in confidence

20  with non-Jehovah's Witnesses?

21      A.    Yes.

22      Q.    When?

23      A.    When a crime is committed, such

24  as child sexual abuse, the elders will

25  oftentimes report it, and that reporting

Page 197

```
 1                 T. JEFFERSON
 2   will go to the secular authorities who are
 3   not Jehovah's Witnesses.
 4        Q.    Are you referring to the
 5   current practice of calling -- elders
 6   calling the legal department for advice on
 7   reporting requirements when they hear of an
 8   allegation?
 9        A.    That's part of it, yes.
10        Q.    Prior to 1992, did the
11   Jehovah's Witnesses provide any guidance or
12   direction to elders to call local
13   authorities in the event of an allegation
14   of child sex abuse?
15        A.    It was first in July of 1989
16   that elders were advised to call the legal
17   department to seek such advice.
18        Q.    What other circumstances would
19   elders share information they received in
20   confidence with non-Jehovah's Witnesses?
21        A.    Sometimes what happens,
22   Counsel, is that elders may become aware
23   that someone plans to commit a serious
24   crime.  For example, they want to blow up a
25   place.  They plan to -- to shoot up a
```

Page 198

```
 1              T. JEFFERSON
 2   place, for example.
 3              Elders become aware of that
 4   even if they become aware of it in
 5   confidence.  Then if the prospect of such a
 6   crime looms before them, they will call the
 7   authorities and apprise them of it.  That's
 8   an example.
 9        Q.    Have there been changes in the
10   obligation with respect to the obligation
11   of elders to keep information confidential
12   when they received in it confidence during
13   the relevant period --
14        A.    Well, that's --
15        Q.    -- besides the 1989 letter that
16   you referenced about calling the legal
17   department?
18        A.    First, excuse my interruption.
19   And when you say changes, what do you mean,
20   Counsel?
21        Q.    What does the word change mean
22   to you?
23        A.    Well, change can mean a variety
24   of things from changing my clothes to
25   changing my posture, any number of things.
```

Page 199

```
 1              T. JEFFERSON
 2         But I just want to make sure I
 3    understand what you're saying by change or
 4    else I'll start an explanation that may not
 5    address your question because I don't fully
 6    understand it, Counsel.
 7              MR. MERRILL:  Excuse me.  I
 8         just have to note for the record an
 9         objection that that was
10         nonresponsive.
11    Q.    Please tell me about all the
12    written guidance that's been provided to
13    local congregations during the relevant
14    period regarding this principle about
15    keeping information received in confidence
16    confidential.
17    A.    During the relevant period,
18    there have been a variety of letters,
19    Watchtower and Awake articles, certainly
20    the publications that are listed here that
21    remind elders of the principle we just read
22    in Deuteronomy 11.  Here again, like
23    Deuteronomy 19:15, there have been multiple
24    references over that -- that 30-year or so
25    period.  '72 -- 20 years or so.
```

```
 1                T. JEFFERSON
 2            So I couldn't pinpoint exactly
 3    every time that principle appeared,
 4    Counsel.  I can say, though, without
 5    equivocation there have been numerous
 6    reminders over that period of time in
 7    various publications.
 8        Q.    And those publications provide
 9    guidance and direction to elders with
10    regard to that principle; correct?
11        A.    And to -- to the congregants in
12    general as well because often, Counsel,
13    guidance to elders is not always just to
14    elders.  It's published in the Watchtower
15    so that all the congregants can read it.
16    So same thing with the publications we
17    discussed earlier like the Lamp book, the
18    Organized book, as we discussed earlier,
19    all the congregants receive it.
20            But those reminders on
21    confidentiality are published so that all
22    congregants see it so that they can be
23    assured that when they share confidential
24    information with elders, it will remain
25    just that.  That's why it's published that
```

Page 201

1                 T. JEFFERSON

2    way.

3         Q.    Now, if a child made an

4    allegation regarding child sexual abuse in

5    a congregation during the relevant period,

6    even if the child and their parents did not

7    wish to keep the allegation confidential,

8    the elders would be required to keep it

9    confidential; correct?

10        A.    And so as stated, the elders

11   would maintain confidentiality.  They

12   wouldn't discuss it with their wives, their

13   children, their friends or anyone else.

14   But the elders do not bar others, such as,

15   for example, in your illustration, the

16   parents and the child.  They wouldn't bar

17   them.

18        Q.    And I think you just mentioned

19   that the -- the principle applies not just

20   to elders, but to all Jehovah's

21   Witnesses -- correct -- in Deuteronomy?

22        A.    The idea in Deuteronomy 19:15

23   of two witnesses to establish, that's

24   Deuteronomy 19:15.  Are you referring --

25        Q.    I'm sorry.  I should've

```
 1                    T. JEFFERSON
 2   referred to Proverbs.  Forgive me.  I think
 3   I was trying to refer to the Proverbs --
 4        A.     Proverbs 11.
 5        Q.     -- regarding keeping things
 6   confidential.
 7        A.     Yes.  So what I said is it's
 8   published so that all Jehovah's Witnesses
 9   will be aware that when you confide in your
10   elders, they will observe the principle of
11   confidentiality.  That's what I believe I
12   pointed out earlier.
13        Q.     So I want to go back to this
14   example I gave of an allegation that's been
15   made in the -- about child sex abuse within
16   a congregation during the relevant period,
17   and the child and their parents have no
18   desire to keep the allegation confidential.
19               Is it acceptable for them to
20   discuss it with other members of the
21   congregation?
22        A.     Yeah.  So if a parent wants to
23   discuss it with the authorities, the school
24   or anybody else if parents feel -- or a
25   doctor -- that's up to the parents to --
```

1                    T. JEFFERSON
2    to -- to care for their child, whatever
3    they need to do.
4               Parents are reminded, of
5    course, that an accusation is not
6    established unless there are -- are two
7    witnesses, but parents are not told you
8    can't -- you can't report this.  You can't
9    allege to the authorities that he molested
10   your child, no.  They're not told that.
11   It's their choice.
12        Q.    If they choose to share that
13   information, then they'll be judged by God;
14   correct?
15        A.    If they choose to share that
16   information as a personal decision, that
17   would be up to them.  I -- I can't say
18   judged by God.  I would say that's their
19   personal decision.
20        Q.    Would you say they'd be
21   answerable to God with respect to that
22   decision?
23        A.    Any decision we all make makes
24   us answerable to God, Counsel.  Any
25   decision.

Page 223

1              T. JEFFERSON

2          D E C L A R A T I O N

3

4       I hereby certify that having been

5    first duly sworn to testify to the truth, I

6    gave the above testimony.

7

8       I FURTHER CERTIFY that the foregoing

9    transcript is a true and correct transcript

10   of the testimony given by me at the time

11   and place specified hereinbefore.

12

13

14

                _____

15                      THOMAS JEFFERSON, JR.

16

17

18   Subscribed and sworn to before me

19   this _____ day of _____ 20___.

20

21

     _____

22      NOTARY PUBLIC

23

24

25