Robert L. Stepans
Ryan R. Shaffer
James C. Murnion
Victoria K.M. Gannon
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT  59802
Tel: (406) 543-6929
Fax: (406) 721-1799
rob@mss-lawfirm.com
ryan@mss-lawfirm.com
james@mss-lawfirm.com
katy@mss-lawfirm.com

Matthew L. Merrill (appearing *pro hac vice*)
Merrill Law, LLC
1401 Delgany Street, #404
Denver, CO  80202
Tel: (303) 947-4453
matthew@merrillwaterlaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | | |
|---|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | ) ) ) | Case No. CV-20-52-BLG-SPW |
| Plaintiffs, | ) ) | **PLAINTIFFS' BRIEF IN RESPONSE TO WTPA'S MOTION FOR SUMMARY JUDGMENT RE: VICARIOUS LIABILITY (ECF NO. 354)** |
| vs. | ) ) | |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, | ) ) ) ) ) | |
| Defendants, | ) ) ) | |

///

///

///

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

WHY VICARIOUS LIABILITY MATTERS IN THIS CASE ..............................2

FACTUAL BACKGROUND..................................................................................4

SUMMARY JUDGMENT STANDARD .................................................................5

AGENCY LAW......................................................................................................6

ARGUMENT ..........................................................................................................8

  1.  Plaintiffs' evidence establishes that WTPA and WTNY acted as one
      for the purpose of appointing and controlling the Hardin elders. ...................8

     a.   An implied agreement can be inferred from Defendants' conduct.............9

     b.   Defendants had a common purpose. ..........................................................11

     c.   Defendants had a community of interest...................................................11

     d.   Defendants had an equal right to control the enterprise. ..........................12

  2.  Plaintiffs have produced evidence by which the jury can conclude that
      Defendants were agents of each other and the Hardin Elders were agents
      of their join enterprise.....................................................................................14

  3.  Whether it is called "alter ego," "joint venture," or "joint enterprise,"
      Plaintiffs plead the facts establishing the relationship between WTPA
      and WTNY...................................................................................................17

  4.  Disputed material facts relevant to the agency relationship between
      WTPA and Hardin Elders preclude summary judgment.................................19

CONCLUSION.....................................................................................................23

**Plaintiffs' Brief in Response to WTPA's Motion for Summary Judgment re:
Vicarious Liability (ECF No. 354)**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*

i

# TABLE OF AUTHORITIES

## Cases

*Albino v. Baca*,
  747 F.3d 1162 (9th Cir. 2014) ...................................................................6

*Anderson v. Liberty Lobby*,
  477 U.S. 242 (1986) ...................................................................................6

*Bradbury v. Nagelhus, et al.*,
  319 P.2d 503 (Mont. 1957) ........................................................................8

*Brookins v. Mote*,
  292 P.3d 347 (Mont. 2012) .........................................................................9

*Frlekin v. Apple, Inc.*,
  979 F.3d 639 (9th Cir. 2020) ......................................................................6

*In re Agric. Research and Tech. Group, Inc.*,
  916 F.2d 528 (9th Cir. 1990) ......................................................................6

*Larson v. Robinson*,
  136 F. Supp. 469 (D. Mont. 1955).........................................................9, 10

*May Dept. Store v. Graphic Process Co.*,
  637 F.2d 1211 (9th Cir. 1980) ...............................................................5, 21

*Moses v. Diocese of Colorado*,
  863 P.2d 310 (Colo. 1993)..................................................................... 16, 17

*Murphy v. Redland*,
  583 P.2d 1049 (Mont. 1978)................................................ 8, 12, 13, 15

*Pearson v. McPhillips*,
  381 P.3d 579 (Mont. 2016) .........................................................................9

*Rae v. Cameron*,
  114 P.2d 1060 (Mont. 1941) .......................................................................9

*Real v. Driscoll Strawberry Assocs.*,
  603 F.2d 748 (9th Cir. 1979) ......................................................................5

Plaintiffs' Brief in Response to WTPA's Motion for Summary Judgment re:
Vicarious Liability (ECF No. 354)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
ii

*Semenza v. Kniss*,
   189 P.3d 1188 (Mont. 2008)..................................................................7

*Weingart v. C & W Taylor Partn.*,
   809 P.2d 576 (Mont. 1991)...............................................................6, 12

*Weisner v. BBD Partn.*,
   845 P.2d 120 (Mont. 1993)..................................................................11

*Wolfe v. Schulz Refrigeration*,
   614 P.2d 1015 (Mont. 1979)..................................................................6

## Statutes

Montana Code Annotated:

   § 28-10-101 ..........................................................................................6

   § 28-10-104 ..........................................................................................6

   § 28-10-201 ..........................................................................................6

   § 28-10-202 ..........................................................................................6

   § 28-10-401 ..........................................................................................7

   § 28-10-402 ..........................................................................................7

   § 28-10-403 ..........................................................................................7

   § 28-10-405 ..........................................................................................7

   § 28-10-602 ..........................................................................................7

   § 28-10-604 ..........................................................................................7

## Other Authorities

48 Corpus Juris Secundum, Joint Adventures 5c, 827 ...............................8

48 Corpus Juris Sescundum Joint Adventures 5c, 828.............................13

50 American Law Reports 7th Art. 2.........................................................9

**Plaintiffs' Brief in Response to WTPA's Motion for Summary Judgment re:**
**Vicarious Liability (ECF No. 354)**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
iii

Montana Pattern Jury Instructions:

MPI2d 10.00.........................................................................................6

MPI2d 10.01.........................................................................................6

MPI2d 10.02.........................................................................................6

MPI2d 10.03.........................................................................................7

**Plaintiffs' Brief in Response to WTPA's Motion for Summary Judgment re:
Vicarious Liability (ECF No. 354)**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
iv

## INTRODUCTION

Between 1973 and 1992, Watch Tower Bible and Tract Society of Pennsylvania ("WTPA") worked interchangeably and in concert with Defendant Watchtower Bible and Tract Society of New York, Inc. ("WTNY") to control and manage local congregations of Jehovah's Witnesses, including control over the way that the Hardin Congregation and their elders chose to hide the sexual abuse at issue in this case.  WTPA is a defendant in this case because it played a central role in this joint endeavor by, *inter alia*:

1. Providing WTNY the money it needed to operate;

2. Sending circuit overseers to monitor and report the functioning of local congregations and their elders;

3. Working together with WTNY to publish, implement, and train local elders on the policies and procedures for handling reports of child sexual abuse; and

4. Sharing offices, staff, and lawyers with WTNY to accomplish their shared purposes.

Plaintiffs' evidence establishes that the Hardin Congregation elders ("Hardin Elders") and circuit overseers followed WTPA's/WTNY's policies and procedures and that this permitted the child sexual abuse at issue in this case to continue unhindered for years.

WTPA's Motion relies solely on the conclusory statements of its appointed 30(b)(6) witnesses who try to create the impression that WTPA did little more than hold copyright to Defendants' publications.  But the evidence does not support such a conclusion.  Myriad WTPA/WTNY documents from before and during the relevant time period show WTPA played a central role in funding WTNY's operations, sending circuit overseers to the Hardin Congregation, appointing and training the Hardin Elders, and providing the child sexual abuse policies and procedures to the Hardin Elders.  Based on all of this evidence, Plaintiffs moved for a partial summary judgment determination that WTPA and WTNY operated as a joint enterprise and are vicariously liable for each other's and their appointed agents' acts and omissions.  ECF No. 350.  Accordingly, WTPA's Motion for Summary Judgment should be denied.

## WHY VICARIOUS LIABILITY MATTERS IN THIS CASE

Plaintiffs' case against the Defendants alleges that they created and implemented a system, a.k.a. the Watchtower Protocols, whereby Hardin Congregation members were required to bring all matters of serious sin, including allegations of child sexual abuse, to Defendants' clergy who were then responsible for handling such matters in a way that protected the victims and punished the wrongdoers.  *See generally* Pls.' First Amend. Compl., ECF No. 22.  For all intents and purposes, the Watchtower Protocols were designed and implemented by

Plaintiffs' Brief in Response to WTPA's Motion for Summary Judgment re:
Vicarious Liability (ECF No. 354)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
2

Defendants to stand in place of secular processes for handling allegations of child sexual abuse in the Hardin community of Jehovah's Witnesses.

Plaintiffs sued the Defendants for the abuse committed by Gunner Hain because when their Hardin clergy learned that he had abused a young minor in 1975, they failed to report it to secular authorities, or to take any other reasonable steps that would have protected the Plaintiffs, which permitted Hain to continue abusing young girls in Hardin, including Plaintiffs. Plaintiffs have also sued the Defendants for the abuse committed by Bruce Mapley, Sr. because after he admitted to sexually abusing Plaintiff Caekaert, Defendants Montana clergy instructed Plaintiffs' mom to keep the abuse quiet, told her they would "handle it", and then failed to report the abuse to secular authorities or take any other reasonable action to prevent future abuse.

Plaintiffs' evidence will establish that when Defendants' Montana clergy chose to keep Hain's and Mapley's admitted sexual abuse secret, they were doing as Defendants instructed and intended. Thus, Plaintiffs' vicarious liability claims seek to hold the Defendants liable for the acts and omissions of their Montana clergy, who had a duty to act to protect Plaintiffs from abuse by Hain and Mapley and failed to do so.

## FACTUAL BACKGROUND

At all times relevant, the Jehovah's Witnesses' Organization

("Organization") used two corporate entities (WTNY and WTPA) to accomplish

their shared purpose.  Pls.' Statement of Disputed Facts, ¶¶ 14a–c (hereinafter,

"SDF").  Contrary to WTPA's suggestion that all it did was hold copyrights,

WTPA's documents from around the relevant time period shows WTPA's

purposes included acting as the "governing agency" of Jehovah's Witnesses

worldwide, appointing agents such as local congregation elders to distribute its

literature door to door, maintaining and organizing the Kingdom Ministry Schools

that trained local congregation elders, supervising the printing and publication of

"all the literature", and sending circuit overseers to local congregations.  SDF, ¶ 8a.

Moreover, the corporate Defendants were controlled by one group of men,

they operated from the same offices, they had one legal department, and they

shared funds to accomplish their common purpose.  SDF, ¶¶ 14a–c, 15a, 15c, 16a,

17a–c, 18a–c.  They were collectively and without distinction referred to as the

"Society".  SDF, ¶¶ 21a, 21b.  WTPA worked in concert with WTNY to appoint

local elders who then oversaw the Organization's local congregations.  SDF, ¶¶

19a–g.  While WTNY was ultimately on the paperwork for the appointment of

local elders, WTPA played critical roles in the process, including sending out

circuit overseers who assisted in the appointment process, appointing the "branch

Plaintiffs' Brief in Response to WTPA's Motion for Summary Judgment re:
Vicarious Liability (ECF No. 354)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
4

servants" who oversaw the circuit overseers, and providing WTNY operating funds.  SDF, ¶¶ 18b, 19a–g.  Moreover, WTPA then worked in concert with WTNY to compile, publish, and disseminate the written materials that the Hardin Elders relied on to understand and perform their duties, including responding to allegations of child sexual abuse.  SDF, ¶¶ 20a–j, 22a–i.  The imprimatur of both corporations is found in the written material that the Hardin Elders relied on to understand and perform their duties.  SDF, ¶ 20g.  WTPA's circuit overseers would then routinely visit the Hardin Congregation to assist with oversight of the Hardin Elders.  SDF, ¶¶ 22a–i.  Finally, WTPA and WTNY worked in concert to hold elder training schools known as Kingdom Ministry School.  SDF, ¶ 19i.

## SUMMARY JUDGMENT STANDARD

"Summary judgment may properly be granted only when no genuine issue of material fact exists and the moving party is clearly entitled to prevail as a matter of law."  *May Dept. Store v. Graphic Process Co.*, 637 F.2d 1211, 1214 (9th Cir. 1980) (citing *Real v. Driscoll Strawberry Assocs.*, 603 F.2d 748, 753 (9th Cir. 1979)).  "[S]ummary judgment is an extreme remedy.  It should not be granted unless the movant has established its right to judgment with such clarity as to leave no room for controversy.  It must be found that the other party is not entitled to recover under any discernable circumstances."  *Id.*  "The evidence is viewed 'in the light most favorable to the non-moving party.'"  *Frlekin v. Apple, Inc.*, 979 F.3d

Plaintiffs' Brief in Response to WTPA's Motion for Summary Judgment re:
Vicarious Liability (ECF No. 354)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
5

639, 643 (9th Cir. 2020) (quoting *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) (en banc)).  "All reasonable inferences from the evidence are drawn in favor of the non-moving party."  *In re Agric. Research and Tech. Group, Inc.*, 916 F.2d 528, 534 (9th Cir. 1990) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986)).

## AGENCY LAW

"An agent is one who represents another, called the principal, in dealings with third persons.  Such representation is called agency."  MPI2d 10.00 (2003) (citing Mont. Code Ann. § 28-10-101).  "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control."  *Weingart v. C & W Taylor Partn.*, 809 P.2d 576, 579 (Mont. 1991) (citing cases).  "Integral to any agency relationship are the elements of consent and control."  *Wolfe v. Schulz Refrigeration*, 614 P.2d 1015, 1018 (Mont. 1979).

"Any person [corporation] may appoint an agent and any person [corporation] may be an agent."  MPI2d 10.01 (citing Mont. Code Ann. § 28-10-104).  "One may be an agent although he/she receives no payment for his/her services."   MPI2d 10.02 (citing Mont. Code Ann. § 28-10-202).  "An agency may be created and an authority may be conferred by a precedent authorization or a subsequent ratification."  Mont. Code Ann. § 28-10-201.

**Plaintiffs' Brief in Response to WTPA's Motion for Summary Judgment re:
Vicarious Liability (ECF No. 354)**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
6

"An agent has the authority  that the principal actually or ostensibly confers upon the agent."  Mont. Code Ann. § 28-10-401.  "Actual authority is authority that the principal intentionally confers upon the agent or intentionally or by want of ordinary care allows the agent to believe that the agent possesses."  Mont. Code Ann. § 28-10-402.  "Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess."  Mont. Code Ann. § 28-10-403.  "An agent has authority to . . . do everything necessary and proper and usual, in the ordinary course of business, for effecting the purpose of the agency[.]"  Mont. Code Ann. § 28-10-405.

"Any act or omission of an agent [name of agent] is the act or omission of a principal [name of principal]."  MPI2d 10.03; *see also* Mont. Code Ann. § 28-10-602.  "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other."  Mont. Code Ann. § 28-10-604.

While the issue of agency "often involve questions of fact which preclude resolution by summary judgment . . . summary judgment is appropriate where a party 'fail[s] to present sufficient evidence to give rise to a genuine issue of material fact regarding an agency relationship[.]'"  *Semenza v. Kniss*, 189 P.3d 1188, 1191 (Mont. 2008) (citing cases).  Stated differently, if the undisputed

evidence gives rise to but one reasonable inference, the question of legal relationship is one purely of law. *See Id.*

## ARGUMENT

The evidence establishes that WTNY and WTPA were operating together, as one (the "Joint Enterprise"), to manage and oversee local congregations in the United States, including the appointment and control of local elders who oversaw those congregations. WTNY and WTPA were both agents of the Joint Enterprise, as were the Hardin Elders. As a result, Plaintiffs can put forth evidence by which a jury can conclude that WTPA is vicariously liable for the acts and omissions of WTNY and the Hardin Elders.

### 1. Plaintiffs' evidence establishes that WTPA and WTNY acted as one for the purpose of appointing and controlling the Hardin elders.

"'Broadly speaking, a joint adventure may be characterized as a quasi-partnership in a single adventure undertaken for mutual gain. The terms joint adventure and joint venture are synonymous. If the venture be for pleasure rather than profit, it is sometimes called a joint enterprise." *Murphy v. Redland*, 583 P.2d 1049, 1053 (Mont. 1978) (quoting *Bradbury v. Nagelhus, et al.*, 319 P.2d 503, 509 (Mont. 1957)). "As between themselves, the members of a joint adventure are principals for themselves and as to the other members, are agents. Thus, they undertake a dual status, at the same time, that of principal and that of agent." *Id.* (citing 48 C.J.S. Joint Adventures 5c, 827). "To qualify as joint venturers, the

Plaintiffs' Brief in Response to WTPA's Motion for Summary Judgment re:
Vicarious Liability (ECF No. 354)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
8

parties must have: (1) an express or implied agreement or contract creating a joint venture; (2) a common purpose; (3) community of interest; and (4) an equal right to control the venture. *Pearson v. McPhillips*, 381 P.3d 579, 582 (Mont. 2016) (citing *Brookins v. Mote*, 292 P.3d 347, 357 (Mont. 2012)).[1]

### a. An implied agreement can be inferred from Defendants' conduct.

"Under the first element, the parties' intent is crucial to determining whether a joint venture exists." *Id.* (citing *Rae v. Cameron*, 114 P.2d 1060, 1064 (Mont. 1941)). Whether two parties intended to enter a joint enterprise is analyzed "in accordance with the ordinary rules governing the interpretation and construction of contracts." *Id.* (quoting *Rae*, 114 P.2d at 1064). An express agreement to enter a joint enterprise is not required, and it "may be inferred from the conduct of the parties or from facts and circumstances which make it appear that a joint enterprise was in fact entered into." *Rae*, 114 P.2d at 1064; *see also Larson v. Robinson,* 136 F. Supp. 469, 471 (D. Mont. 1955). "The consideration for such an agreement may

---

[1] Under the related doctrine of "single business enterprise", which likewise holds closely related corporations liable for each other's actions, courts consider "common ownership, common directors and officers, a disregard for corporate formalities, shared employees, shared offices and resources, the comingling of assets, joint accounts, centralized accounting and records, nonexistent records, integrated transactions, undocumented or not-at-arms-length transactions, similar or identical trade names, and excessive fragmentation of a single enterprise into separate entities." 50 A.L.R.7th Art. 2 (Originally published in 2020) (citing myriad cases). Montana has yet to reject or accept this doctrine.

Plaintiffs' Brief in Response to WTPA's Motion for Summary Judgment re:
Vicarious Liability (ECF No. 354)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
9

be a promise, express or implied, to contribute capital or labor to the undertaking." *Larson,* 136 F. Supp. at 471 (citing cases).

Here, Defendants' intent to form a joint enterprise can be inferred from their conduct.  For example:

> ➤ WTNY and WTPA worked in concert to publish, print, and distribute
> written policies and procedures to local congregation elders.  SDF, ¶
> 20g.

> ➤ WTPA used office space owned by WTNY without any written
> agreement, and WTNY paid the bills.  SDF, ¶¶ 16a, 18a.  As WTPA
> testified at its deposition: "the directors from Pennsylvania and the
> directors from New York never got together to work out an
> agreement, oral or written in that regard.  They have the same
> purpose, the same function, and so there was never a need to do that."
> SDF, ¶ 18a.

> ➤ WTNY and WTPA shared the same legal department in New York.
> SDF, ¶¶ 17a–c.

> ➤ WTPA sent circuit overseers to visit all local congregations in the
> United States, while WTNY paid them.  SDF, ¶¶ 19a, 19b.

Furthermore, WTPA routinely contributed capital to the joint venture by providing significant funds to WTNY for its operations.  SDF, ¶ 18b.  It did so without an

**Plaintiffs' Brief in Response to WTPA's Motion for Summary Judgment re:**
**Vicarious Liability (ECF No. 354)**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
10

arms-length agreement.  *Id*.  This is evidence of consideration to support the joint venture.

### b.  Defendants had a common purpose.

The common purpose of the joint venture was to "spread the good word," which meant to promote and expand the Jehovah's Witnesses' religion within the United States, and to collect donations.  *See* SDF, ¶ 12.  WTNY and WTPA's charters are similar and were set up to support the same goal of promoting Bible education throughout the world: "The charters of these other corporations are similar to that of the Pennsylvania corporation."  SDF, ¶ 14a.  WTNY and WTPA worked together and cooperated fully in order to accomplish their common purpose.  SDF, ¶¶ 12, 14b, 18a.

### c.  Defendants had a community of interest.

The "community of interest" element of a joint venture is satisfied where each participant supplied different, necessary components of the joint venture. *Weisner v. BBD Partn*., 845 P.2d 120, 123 (Mont. 1993).  In *Weisner,* a "community of interest" was established where each participant played a vital role in the expertise and capital necessary for the venture.  *Id*.

Here, the evidence is overwhelming that WTPA and WTNY both contributed to the necessary components of appointing, training, and overseeing of the Hardin Elders:

➢ They each played a role in the appointment of the Hardin Elders, with WTPA being the entity that sent the circuit overseer to Hardin who then communicated the Congregation's recommendations to WTNY and Governing Body.  SDF, ¶¶ 19a–g.

➢ They each played a role in the training and oversight of the Hardin Elders, including implementation of the policies for handling reports of child sexual abuse.  SDF, ¶¶ 20a–j.

➢ WTPA provided WTNY operating capital.  SDF, ¶¶ 18a–c.

➢ WTNY provided the Legal Department, Service Department, and offices used by WTPA.  SDF, ¶¶ 16a, 17a–c.

While WTNY's signature was ultimately on the paperwork appointing the Hardin Elders to their positions, WTPA made important contributions to the appointment process and training of those elders.  The evidence establishes a community of interest.

### d.  Defendants had an equal right to control the enterprise.

As to the fourth element "Although management may be delegated to one joint venturer while the others retain the right of control, [] it must be an equal right of control."  *Weingart*, 809 P.2d at 579 (citing *Murphy*, 583 P.2d 1049).  Likewise, "one or more members of the joint adventure may entrust certain

**Plaintiffs' Brief in Response to WTPA's Motion for Summary Judgment re:**
**Vicarious Liability (ECF No. 354)**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
12

performances of the enterprise to one or more of the other members." *Murphy*, 583 P.2d at 1053 (citing 48 C.J.S. Joint Adventures 5c, 828).

The same group of men, i.e. the Organization's Governing Body, controlled both corporate Defendants throughout the relevant time period.  SDF, ¶ 15a.  These men used WTPA to control the venture through capital contributions and permitting WTNY to use WTPA's copyrighted materials.  SDF, ¶¶ 18a–c, 20g. These men used WTNY to control the venture through use of WTNY's offices and Departments.  SDF, ¶¶ 15b, 16a, 17a–c, 20j.  With respect to control of elder-agents, the two corporations performed overlapping functions:

➢ The boards of both corporations, acting as the Governing Body, made the decision about appointments, choosing WTNY to communicate them.  SDF, ¶¶ 19a–g.

➢ Both of them created manuals that directed elders how to respond to allegations of serious sin.  SDF, ¶¶ 20g, 20h.

➢ Both were involved in conducting the elder trainings known as Kingdom Ministry School.  SDF, ¶ 20i.

➢ Both of them contributed to supervising and directing the elders:

  • WTPA used circuit overseers appointed by the Governing Body through WTNY.  SDF, ¶ 19a.

- WTNY had the Service Department and Legal Department that responded to elder inquiries and provided directions on specific questions.  SDF, ¶ 20j.

The Governing Body had equal ability to control individual aspects of the agency through either corporation by deciding to wear either the WTNY or WTPA corporate hat in taking action.

Plaintiffs asked WTNY and WTPA to identify all evidence (or types of evidence) in their possession that the Court or a jury could refer to which would indicate which entity these men were acting on behalf of at any given time. Neither WTNY nor WTPA could identify any evidence that the Court or a jury could refer to for that purpose.  SDF, ¶ 15c.  Accordingly, in many instances there is no way to determine which entity the Governing Body was acting on behalf of; rather, the division of individual duties was arbitrary and subservient to the overall advancement of the common goal and communal interest.  As such, the facts support a finding that WTPA and WTNY were operating a joint enterprise during all times relevant to this case.

**2. Plaintiffs have produced evidence by which the jury can conclude that Defendants were agents of each other and the Hardin Elders were agents of their join enterprise.**

While WTNY's signature is on the documents appointing the Hardin Elders to their positions, it was the joint venture between WTNY and WTPA that

Plaintiffs' Brief in Response to WTPA's Motion for Summary Judgment re:
Vicarious Liability (ECF No. 354)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
14

facilitated the appointment.  SDF, ¶¶ 19a–g.  Thus, so long as the Hardin Elders were in their appointed positions, they were in those positions with the consent of the joint enterprise between WTNY and WTPA, as orchestrated by the Governing Body.

Under Montana law, joint venturers are agents of each other and of the joint venture.  *See e.g. Murphy*, 583 P.2d at 1053.  Plaintiffs' evidence establishes that the Defendants' joint enterprise controlled the Hardin Elders by providing them written materials setting forth their duties and responsibilities as elders, including handling reports of child sexual abuse.  SDF, ¶¶ 20a–j, 22a–i.  These written materials were created and distributed by WTNY and WTPA acting in concert, with one publishing and the other printing, or one holding copyright and the other publishing and printing.  SDF, ¶¶ 20g, 20h.  WTNY and WTPA worked in concert to arrange and pay for the Kingdom Ministry Schools that trained them in such duties and responsibilities using Defendants' written materials.  SDF, ¶ 20i.  The Governing Body used WTNY to appoint and pay circuit overseers who were sent by WTPA to oversee activities at the Hardin Congregation, including the appointment of local elders and the provision of assistance in understanding their duties.  SDF, ¶¶ 19a–f.  The Governing Body used WTPA to appoint the "branch servants" that oversaw the circuit overseers.  SDF, ¶ 19a.  WTNY provided the

**Plaintiffs' Brief in Response to WTPA's Motion for Summary Judgment re:**
**Vicarious Liability (ECF No. 354)**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
15

Hardin Elders legal and other advice if they ever had a question about how to apply and enforce the Organization's policies regarding child sexual abuse.  SDF, ¶ 20j.

In *Moses v. Diocese of Colorado,* the jury found an agency relationship between a priest and the Diocese defendant.[2]  863 P.2d 310, 323 (Colo. 1993).  In upholding the jury's agency determination, the court noted "the structure of the Episcopal Church is basically hierarchal."  *Id.* at 325.  According to that structure, the Diocese, acting through its Bishop, hired the priest.  *Id.*  Likewise, the Diocese controlled the disciplining of priests, their training, and had printed regulations the priests were to follow.  *Id.* at 327.  "All of these facts indicate that a priest is not independent of the Diocese but is controlled by the Diocese and the bishop."  *Id.*

WTPA argues that sharing a related group of corporate officers and directors does not "in itself create a relationship of agency."  WTPA's Brf. in Supp. at 12-13, ECF No. 355.  If sharing corporate officers and directors was Plaintiffs' only evidence of a "relationship of agency" then WTPA may have a point.  But Plaintiffs have produced voluminous evidence that WTPA and WTNY did far more than share corporate officers and directors.  *See generally* SDF.

Like in *Moses* where the Diocese controlled the disciplining of priests, here the joint enterprise used WTNY to control the removal of elders.  The joint

---

[2] Plaintiffs' counsel has been unable to locate any Montana case, state or federal, analyzing whether an agency relationship existed between clergy and a religious organization.

Plaintiffs' Brief in Response to WTPA's Motion for Summary Judgment re:
Vicarious Liability (ECF No. 354)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
16

enterprise used WTNY and WTPA to provide and oversee the training of the

Hardin Elders, just like the Diocese in *Moses*.  Finally, like in *Moses*, where the

Diocese provided printed regulations to control the priest's conduct, here, the

joint/single enterprise used both WTNY and WTPA to provide the Hardin Elders

its printed regulations to control how they handled reports of child sexual abuse.

As such, *Moses* is persuasive authority that the Hardin Elders were the agents of

the joint enterprise between WTNY and WTPA.

Plaintiffs have produced admissible evidence by which a jury may conclude

that WTPA and WTNY were engaged in a joint enterprise for the purpose of

managing local congregations, and that this included appointing, training, and

controlling the Hardin congregation elders.  *See generally* SDF.  Accordingly,

WTPA has not, and cannot, meet its burden of establishing that it is entitled to

judgment as a matter of law and its Motion for Summary Judgment should be

denied.

### 3. Whether it is called "alter ego," "joint venture," or "joint enterprise," Plaintiffs plead the facts establishing the relationship between WTPA and WTNY.

Based on the limited information in their possession when this case was

filed, Plaintiffs generally alleged that the Organization (referred to as the "Church"

in their Complaints) acted through both WTPA and WTNY to ultimately cause

Plaintiffs' damages.  *See* First Amend. Compl. at ¶¶ 18–21, 27, 28, 32, 44, 63, ECF

Plaintiffs' Brief in Response to WTPA's Motion for Summary Judgment re:
Vicarious Liability (ECF No. 354)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
17

No. 22.  Each of these allegations asserted that WTPA and WTNY worked together and in concert to appoint, train, and oversee the Hardin elders.  Thus, Defendants have been on notice since the beginning of this case that Plaintiffs alleged WTPA and WTNY acted together and in concert to cause Plaintiffs' damages.[3]

Nevertheless, in the face of unending discovery obstruction regarding the relationship amongst the Organization's various entities, Plaintiffs were forced to go outside of the discovery process, and in doing so discovered substantial evidence that WTPA and WTNY were acting as a single entity during the relevant time period.  Accordingly, Plaintiffs sought to amend their complaint to expressly add allegations regarding, *inter alia*, single enterprise and joint venture.  ECF No. 189.  The Court ultimately denied the request because Plaintiffs did not provide enough specificity as to when the evidence supporting such allegations was obtained by Plaintiffs.  Ord. at 5–6, ECF No. 238.

To this day, Defendants have not provided complete information regarding their relationship with each other and the Organization's other entities and

---

[3] While Plaintiffs originally alleged Defendants were "alter egos" of one another and now allege they were operating a joint venture, this distinction is immaterial because the critical facts under either theory focus on whether each corporation was operating as a distinct and individual entity or not.  Defendants cannot claim any prejudice because they have had over three years to gather evidence and prepare its defense that WTNY and WTPA were separate and distinct entities not liable for each other's actions.

Plaintiffs' Brief in Response to WTPA's Motion for Summary Judgment re:
Vicarious Liability (ECF No. 354)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
18

departments.  Defendants thus would rather stand in open contempt of the Court's order than provide such information.[4]  ECF No. 85.  As such, there are still facts and evidence bearing on the relationship between WTNY and WTPA that Plaintiffs do not have, and Plaintiffs have been more than diligent pursuing the same through an unheard number of motions for sanctions to correct the obstruction.  To the extent that WTPA's Motion asks the Court to grant it dispositive relief that rewards its obstruction, the Court should not do so.

**4. Disputed material facts relevant to the agency relationship between WTPA and Hardin Elders preclude summary judgment.**

Plaintiffs' evidence also establishes that the Hardin Elders were acting as WTPA's agents during the relevant time period and can therefore be held vicariously liable for the conduct of those elders.  For instance:

➢ Plaintiffs produced evidence disputing WTPA's position that all it did was hold copyright.  SDF, ¶ 8.

➢ Plaintiffs produced evidence disputing WTPA's position that it was not involved in training local congregation elders.  SDF, ¶ 9.

---

[4] WTNY even tried to use its obstruction to argue against Plaintiffs' request to amend their complaint: "WTNY's argument that Plaintiffs had the facts they seek to add to their complaint as early as November 20, 2020, December 29, 2020, or January 15, 2021, is unpersuasive **and made in bad faith**."  Ord. at 6, n. 1, ECF No. 238.

- ➢ Plaintiffs produced evidence disputing WTPA's position that it was not involved in sending circuit overseers to local congregations.  SDF, ¶ 9.

- ➢ Plaintiffs produce evidence disputing WTPA's position that it was not involved in monitoring local congregations.  SDF, ¶ 11.

- ➢ Plaintiffs produced evidence disputing WTPA's position that it did not control local congregations.  SDF, ¶ 11.

- ➢ Plaintiffs produce evidence disputing WTPA's suggestion that the Hardin Congregation was a separate legal entity during the relevant time period.  SDF, ¶ 11.

- ➢ Plaintiffs produce evidence disputing WTPA's position that it was not the parent of WTNY.  SDF, ¶ 13.

WTPA relies exclusively on the testimony of its appointed 30(b)(6) witness, Richard Devine, for its positions.  Conversely, Plaintiffs rely on various WTPA publications and documents from before and during the relevant time period to dispute the assertions of Mr. Devine.  Thus, the jury must decide whether to believe Mr. Devine's representations about WTPA's role and involvement with local congregations during the relevant time period, or to believe information contrary to Mr. Devine's testimony found in the evidence produced by Plaintiffs.

**Plaintiffs' Brief in Response to WTPA's Motion for Summary Judgment re:**
**Vicarious Liability (ECF No. 354)**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
20

WTPA is not entitled to summary judgment unless it "established its right to judgment with such clarity as to leave no room for controversy." *May Dept. Store*, 637 F.2d at 1214.  When the evidence and all reasonable inferences drawn therefrom, are viewed in the light most favorable to Plaintiffs, a reasonable jury could conclude that the Hardin elders were agents of WTPA for the purpose of investigating and handling the child sexual abuse at issue in this case.  *See generally* SDF.   For instance, if the jury believes WTPA's own documents and corporate charter, then it would believe that WTPA's role was to act as the "governing agency" of Jehovah's Witnesses worldwide; print and distribute literature; "authorize and appoint agents, servants, employees, teachers, instructors, evangelists, missionaries and ministers" to distribute such literature door to door; maintain private schools; and train ministers.  SDF, ¶ 8a.  If the jury believes what WTPA said in the past in a 1970 WTPA/WTNY publication, then it would be further established that WTPA was the entity organizing the local congregation elder trainings known as the Kingdom Ministry School, supervising the printing and publication of "all the literature", arranging conventions, building printing plants, and sending circuit overseers to local congregations.  SDF, ¶ 8a.  If the jury believes what WTPA said in 1977 and 1980 publications, then it would be established that WTPA was the parent of WTNY.  It would thus be established that WTPA controlled the Hardin Elders because it: (1) instructed the Hardin Elders

**Plaintiffs' Brief in Response to WTPA's Motion for Summary Judgment re:**
**Vicarious Liability (ECF No. 354)**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
21

how to handle allegations of child sexual abuse through various publications it published, held copyright to, or both; (2) trained the Hardin Elders on the same publications at Kingdom Ministry School; and (3) ensured compliance with such policies and procedures by sending its circuit overseers to the Hardin Congregation.

Moreover, the evidence establishes that WTPA consented to the appointment of the Hardin Elders because the same men who appointed them through WTNY, the governing body, simultaneously controlled WTPA.  SDF, ¶ 15a.  Indeed, as the Court already found, "The Governing Body has the ultimate authority to bar a person from serving in positions of responsibility with the Jehovah's Witnesses Organization."  SDF, ¶ 22a.  In WTPA's own words from 1977 and 1980 publications, WTPA was the parent of WTNY.  SDF, ¶ 13.  It would make no sense to say the governing body's right hand (WTNY) consented to the Hardin Elder's appointment while the left hand (WTPA) did not.

In the end analysis, even in the absence of the joint venture between WTNY and WTPA, material factual disputes regarding WTPA's role in the control of the Hardin Elders precludes granting WTPA's request for summary judgment that the Hardin Elders were not its direct agents.

**Plaintiffs' Brief in Response to WTPA's Motion for Summary Judgment re:**
**Vicarious Liability (ECF No. 354)**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
22

## CONCLUSION

Plaintiffs have produced substantial evidence showing WTPA, both individually and working in concert with WTNY, played a central role in the operation of local congregations generally and the Hardin Congregation specifically during the relevant time period.  Critically, this includes controlling the Hardin Elders to the extent necessary to conclude they were operating as WTPA's (and WTNY's) agents when handling reports of child sexual abuse.  WTPA disputes all of this, arguing that it merely held copyrights (based solely on the testimony of its 30(b)(6) witness).  As such, material factual disputes preclude WTPA's request for judgment as a matter of law that it is not vicarious liable for acts and omissions of WTNY and the Hardin Elders.

DATED this 8th day of May, 2024.

By: /s/ Ryan Shaffer
    Ryan R. Shaffer
    MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

**Plaintiffs' Brief in Response to WTPA's Motion for Summary Judgment re:
Vicarious Liability (ECF No. 354)**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
23

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(d)(2), Plaintiff hereby certifies that this brief complies with the length requirement for briefs, and that this brief contains 5,043 words, excluding the caption, certificates of service, and compliance, table of contents, and authorities, and exhibit index.

By: /s/ Ryan Shaffer
    Ryan R. Shaffer
    MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 1.4, this document has been served on all parties via electronic service through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

By: /s/ Ryan Shaffer
    Ryan R. Shaffer
    MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

**Plaintiffs' Brief in Response to WTPA's Motion for Summary Judgment re:**
**Vicarious Liability (ECF No. 354)**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
24