Robert L. Stepans
Ryan R. Shaffer
James C. Murnion
Victoria K.M. Gannon
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT 59802
Tel: (406) 543-6929
Fax: (406) 721-1799
rob@mss-lawfirm.com
ryan@mss-lawfirm.com
james@mss-lawfirm.com
katy@mss-lawfirm.com

Matthew L. Merrill (appearing *pro hac vice*)
Merrill Law, LLC
1401 Delgany St. #404
Denver, CO 80202
Tel: (303) 947-4453
matthew@merrillwaterlaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | | |
|---|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | ) ) ) | Case No. CV-20-52-BLG-SPW |
| Plaintiffs, | ) ) | **PLAINTIFFS' STATEMENT** |
| vs. | ) ) | **OF DISPUTED FACTS RE:** **WTPA'S MOTION FOR** |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA., | ) ) ) ) ) | **SUMMARY JUDGMENT RE:** **VICARIOUS LIABILITY** **(ECF NO. 354)** |
| Defendants, | ) ) | |

Plaintiffs submit the following Statement of Disputed Facts re: Watch Tower

Bible and Tract Society of Pennsylvania's ("WTPA") Motion for Summary

Judgment re: Vicarious Liability. ECF No. 354.

## PLAINTIFFS' RESPONSES TO DEFENDANTS'
## STATEMENT OF UNDISPUTED FACTS

**1.** Plaintiffs began attending non-party Hardin Congregation of Jehovah's Witnesses in Hardin, Montana (the "Congregation") in 1973 or 1974. Depo. Tracy Caekaert 35:20-36:24 (Feb. 9, 2023), excerpts to be filed as Exhibit A under seal; Depo. Camillia Mapley 35:17-36:22 (Nov. 29, 2022), excerpts to be filed as Exhibit B under seal.

**a. Plaintiffs' Position: <u>Undisputed.</u>**

**2.** Plaintiffs' father, Bruce Mapley Sr., had been molesting them as children "for several years" before they began associating with Jehovah's Witnesses in 1973. Doc. 22 at ¶¶ 33-34.

**a. Plaintiffs' Position: <u>Undisputed.</u>**

**3.** Plaintiffs also allege they were molested by Gunner Haines, another member of the Congregation, in 1977 or 1978. *See* Doc. 320 at 11-12, ¶¶ 10-11.

**a. Plaintiffs' Position: <u>Undisputed.</u>**

**4.** Plaintiffs allege that their father and Haines both confessed about their abuse of Plaintiffs to Congregation elders in or around 1977, and that the elders did not report the sexual abuse to law enforcement or child protective services. Doc. 22 at ¶¶ 39-40, 46; Ex. A, Depo. Caekaert at 89:8-90:13, 95:12-96:17; Depo. Shirley Gibson 60:17-63:6 (Apr. 14, 2022), excerpts attached hereto as Exhibit C.

Plaintiffs' Statement of Disputed Facts re: WTPA's Motion for Summary Judgment re:
Vicarious Liability (ECF No. 354)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
2

    **a. Plaintiffs' Position: <u>Undisputed.</u>**

**5.**      Plaintiffs allege that their father continued abusing them after 1979, but not beyond 1983. *See* Doc. 22 at ¶ 48; Ex. A, Depo. Caekaert at 87:1-8; Ex. B, Depo. Mapley at 56:14-18.

    **a. Plaintiffs' Position: <u>Undisputed.</u>**

**6.**      Haines, however, did not abuse them again after his confession to Congregation elders. *See* Doc. 22 at ¶¶ 36, 39-40, 46; Ex. A, Depo. Caekaert at 112:18-113:4; Ex. B, Depo. Mapley at 65:21-25.

    **a. Plaintiffs' Position: <u>Disputed</u>** because it is vague as to which of Hain's confessions it is referring to, vague as to what date such confession occurred, and the evidence indicates that Hain abused Plaintiffs after Defendants learned that Hain had molested a non-party minor in 1976. Ex. A, James Rowland Dep., 150:25–152:2; Ex. B, Klessens Dep., 11:15–16:9; Ex. C, Caekaert Dep., 66:4–17, 67:8–17, 91:7–92:22; Ex. D, Gibson Dep., 60:18–63:6.

**7.**      Plaintiffs allege that Martin Svensen, an elder in the Hardin Congregation, investigated the allegations of sexual abuse against Mapley Sr. and Haines while he was also sexually abusing children. Doc. 22 at ¶¶ 42-43.

    **a. Plaintiffs' Position: <u>Undisputed.</u>**

**RELATIONSHIP BETWEEN WTPA AND LOCAL CONGREGATION:**

**8.** WTPA's primary role during the relevant time period was to hold the copyright and publish some of the Jehovah's Witnesses publications, including their most prized possession, the New World Translation of Holy Scriptures. *See* Rule 30(b)(6) Depo. WTPA/Richard Devine 38:21-40:8, 97:10-99:16, 121:25-122:23, 126:4-128:2, 130:3-131:8 (Mar. 7, 2024), excerpts to be filed as Exhibit D under seal.

   a. **Plaintiffs' Position:  Disputed.** Ex. E, 1945 WTPA Articles of Amend., 3–4 (listing all of WTPA's chartered purposes/functions, including: act as the "governing agency" of Jehovah's Witnesses worldwide; print and distribute literature; "authorize and appoint agents, servants, employees, teachers, instructors, evangelists, missionaries and ministers" to distribute such literature door to door; maintain private schools; and train ministers); Ex. F, 1970 Yearbook of Jehovah's Witnesses at 37–41 (listing various WTPA functions, including: organizing the local congregation elder trainings known as the Kingdom Ministry School, supervising the printing and publication of "all the literature", arranging conventions, building printing plants, and sending circuit overseers to local congregations).

Plaintiffs' Statement of Disputed Facts re: WTPA's Motion for Summary Judgment re:
Vicarious Liability (ECF No. 354)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
4

9.     During the relevant time period, WTPA was not responsible for or involved in the training schools for elders, the appointment or removal of elders, or the assignment of circuit overseers.  *See* Ex. D, 30(b)(6) Depo. WTPA/Devine 112:3-113:10, 113:23-114:19, 121:14-130:2.

    a.  **Plaintiffs' Position:  <u>Disputed</u>** that WTPA was not responsible or involved in the training schools for elders or assignment of circuit overseers.  Ex. E, 1945 WTPA Articles of Amend., 3–4; Ex. F, 1970 Yearbook of Jehovah's Witnesses at 38–40 (WTPA "sends out special ministers, such as circuit and district servants, to visit all the congregations of Jehovah's Witnesses throughout the world.  These servants come under the direction of branch servants who are appointed by the president of the Watch Tower Bible and Tract Society of Pennsylvania."  The Kingdom Ministry School, i.e. the school local congregation elders are trained through, "was especially organized by the governing body of Jehovah's Witnesses of [WTPA] for the benefit of overseers in the congregations of Jehovah's Witnesses.")  **<u>Disputed</u>** that the appointment and removal of local congregation elders by the governing body acting through WTNY is not attributable to WTPA.  *See generally* Pls.' Mot. for PSMJ re: WTPA/WTNY Joint Venture, Br. in Supp., and SUF, ECF Nos. 350–

52; *see also infra*, Plaintiffs Additional Facts, ¶¶ 14–22.  **Undisputed**

that WTPA was not the entity the governing body used to

communicate the appointment and removal of local congregation

elders.

10.    WTPA was also not involved in the application or approval of new

congregations.  Ex. D, 30(b)(6) Depo. WTPA/Devine 131:13-23.

    **a.  Plaintiffs' Position:  Disputed** that the approval of new

    congregations is not attributable to WTPA.  *See generally* Pls.' Mot.

    for PSMJ re: WTPA/WTNY Joint Venture, Br. in Supp., and SUF,

    ECF Nos. 350–52; *see also infra*, Plaintiffs Additional Facts, ¶¶ 14–

    22.  **Undisputed** that WTPA was not the entity the governing body

    used to process applications for or communicate the approval of new

    congregations.

11.    From 1973 to 1992, WTPA was not responsible monitoring the

functions or organization of local congregations.    Ex. D, 30(b)(6) Depo.

WTPA/Devine 129:8-13.  Each congregation forms its own legal entity to operate

its kingdom hall and other functions.  Ex. D, 30(b)(6) Depo. WTPA/Devine 32:16-

33:16.  WTPA does not exercise control or authority over those congregational

entities.  *Id.*

**Plaintiffs' Statement of Disputed Facts re: WTPA's Motion for Summary Judgment re:**
**Vicarious Liability (ECF No. 354)**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
6

a. **Plaintiffs' Position:  __Disputed__** that WTPA did not monitor and control local congregations because it directly sent circuit overseers to local congregations to do just that and further worked in concert with WTNY to monitor and control local congregations.  Ex. F, 1970 Yearbook of Jehovah's Witnesses, 38–40 (WTPA "sends out special ministers, such as circuit and district servants, to visit all the congregations of Jehovah's Witnesses throughout the world.); Ex. G, 1972 *Kingdom Ministry School Course*, 106–08 (discussing role of circuit overseer); s*ee generally* Pls.' Mot. for PSMJ re: WTPA/WTNY Joint Venture, Br. in Supp., and SUF, ECF Nos. 350–52; *see also infra*, Plaintiffs Additional Facts, ¶¶ 14–22.  **__Disputed__** that generally each congregation forms its own legal entity and specifically that the Hardin Congregation formed its own legal entity during the relevant time period.  Ex. H, Montana Secretary of State Information on Hardin Congregation (showing the Hardin Congregation was not a separate legal entity until 2011).

## RELATIONSHIP BETWEEN WTPA AND WTNY:

12.     WTPA and Watchtower Bible and Tract Society of New York, Inc. ("WTNY") are separate legal entities, but they assist one another when needed to

**Plaintiffs' Statement of Disputed Facts re: WTPA's Motion for Summary Judgment re:
Vicarious Liability (ECF No. 354)**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
7

accomplish their shared purpose – to preach the good news of God's kingdom worldwide.  *See* Ex. D, 30(b)(6) Depo. WTPA/Devine 38:21-40:8.

    a.  **Plaintiffs' Position:  <u>Disputed</u>** as to the suggestion that WTPA and WTNY were acting as separate entities during the relevant time period.  S*ee generally* Pls.' Mot. for PSMJ re: WTPA/WTNY Joint Venture, Br. in Supp., and SUF, ECF Nos. 350–52; s*ee infra*, Plaintiffs' Additional Facts, ¶¶ 14–22.  **<u>Undisputed</u>** that WTPA and WTNY have a shared purpose and "assist one another", i.e. work in concert, to achieve it.

13.    WTPA's corporate charter contains no indication that it controled or had authority over any other corporations used by Jehovah's Witnesses during the relevant time, including over WTNY.  Ex. D, 30(b)(6) Depo. WTPA/Devine 32:16-33:16, 100:6-101:25.  WTPA also was not the parent corporation of WTNY during that time.  Ex. D, 30(b)(6) Depo. WTPA/Devine 100:6-106:21.

    a.  **Plaintiffs' Position:  <u>Disputed.</u>**  Ex. E, 1945 WTPA Articles of Amend., 3 (WTPA's purpose is to "act as the servant of and the legal world-wide governing agency for the body of Christen persons known as Jehovah's witnesses[.]"); Ex. F, 1970 *Yearbook of Jehovah's Witnesses*, 38 ("all of these corporations . . . look to [WTPA] as the mother organization[.]"); Ex. I, 1977 *Branch Organization*, 1-4, ¶ 34

(WTPA "is the parent corporate agency of Jehovah's Witnesses. It works with its subsidiary legal agencies such as the Watchtower Bible and Tract Society of New York, Inc."); Ex. J, 1980 *Yearbook of Jehovah's Witnesses*, 257 (WTPA "is the parent of similar religious corporations formed world wide. Among such are the Watchtower Bible and Tract Society of New York, Inc."); Ex. K, *In re Holocaust Victim Asset Litigation* Proposed Plan of Allocation, 2 (WTPA is "the corporate agency directing the administrative and religious work of Jehovah's Witnesses worldwide[.]")

### ADDITIONAL FACTS RELIED ON BY PLAINTIFFS

14. **At all times relevant WTNY and WTPA shared a common purpose and had fully aligned interests of facilitating the world-wide preaching of the word of God and printing, publishing, and disseminating Bibles and Bible based materials.**

   a. WTNY and WTPA's charters are similar and were set up to support the same goal of promoting Bible education throughout the world. WTNY and WTPA assist each other in accomplishing this goal: "The charters of these other corporations are similar to that of the Pennsylvania corporation."  Pls. SUF in Supp. of MPSJ Hardin Elders Agents of Joint Enterprise between WTNY and WTPA, ¶ 1a, ECF No. 352 (hereinafter "Pls.' SUF re: JV").

b.  WTNY and WTPA work together and cooperate fully in order to accomplish their common purpose.  Pls.' SUF re: JV, ¶ 1b.

c.  "The Watch Tower Bible and Tract Society of Pennsylvania is the parent corporate agency of Jehovah's Witnesses.  It works with its subsidiary legal agencies such as the Watchtower Bible and Tract Society of New York, Inc. . . . for carrying on the business that must be done in order to print and ship the good news.  All these agencies are subject to and work under the direction of the 'faithful and discreet slave' class and its Governing Body."  Pls.' SUF in Supp. of PMSJ re: Hardin Elders Agents of WTNY, ¶ 3d, ECF No. 341 (hereinafter "Pls.' SUF re: WTNY Agency").

15. **At all times relevant WTNY and WTPA were managed, directed, and operated by the same men and there is no way to distinguish who they were ever acting on behalf of at any given time.**

a.  During the period 1973 to 1992 the same group of men who were on the Organization's Governing Body also managed and directed WTNY and WTPA.  Pls.' SUF re: JV, ¶ 2a.

b.  WTNY and WTPA, among other entities, served as instruments of the Governing Body.  Ex. G, 1972 *Kingdom Ministry*, 79.

c.  There is no way to determine which entity the men on the governing body were acting on behalf of when advancing the interests of their

Plaintiffs' Statement of Disputed Facts re: WTPA's Motion for Summary Judgment re:
Vicarious Liability (ECF No. 354)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
10

respective corporations and the interests of the Jehovah's Witnesses'

Organization.  Pls.' SUF re: JV, ¶ 2b.

**16.At all times relevant WTNY and WTPA were managed, directed, and operated from the same offices.**

   a.  WTPA did not have its own offices but used WTNY's offices at the

   Organization's headquarters and did so without any written

   agreement.  Pls.' SUF re: JV, ¶ 3a.

**17.At all times relevant WTNY and WTPA shared the same legal department and lawyers.**

   a.  The Organization's Legal Department (a.k.a. the Watchtower Legal

   Department) is part of, and operates through, WTNY.  Pls.' SUF re:

   JV, ¶ 4a.

   b.  WTNY's "Watchtower Legal Department's clients include various

   corporations of Jehovah's Witnesses in the United States."  Pls.' SUF

   re: JV, ¶ 4b.

   c.  Phillip Brumley is a lawyer who oversees the Watchtower Legal

   Department and serves as general counsel for both WTNY and

   WTPA.  Pls.' SUF re: JV, ¶ 4c.

///

///

Plaintiffs' Statement of Disputed Facts re: WTPA's Motion for Summary Judgment re:
Vicarious Liability (ECF No. 354)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
11

18. **At all times relevant WTNY and WTPA shared funds without any evidence of arms-length agreements between them and these funds were used by both to carry out their shared purpose.**

   a. There were no agreements or terms between WTNY and WTPA regarding the shared use of facilities between the two or the bills associated with the use of said facilities, WTNY owned the premises and paid all the bills: "the directors from Pennsylvania and the directors from New York never got together to work out an agreement, oral or written in that regard. They have the same purpose, the same function, and so there was never a need to do that." Pls.' SUF re: JV, ¶ 5a.

   b. WTNY and WTPA used their funds to assist one another in achieving their common purpose and if WTNY was running a deficit, WTPA would give it money. Pls.' SUF re: JV, ¶ 5b.

   c. WTNY and WTPA's financial statements and disclosures demonstrate that they were not functioning as separate and distinct entities. Pls.' SUF re: JV, ¶ 5c.

19. **At all times relevant WTPA worked in concert with WTNY in the appointment and monitoring of the Hardin Elders by sending out circuit overseers.**

   a. WTPA "sends out special ministers, such as circuit and district servants, to visit all the congregations of Jehovah's Witnesses

throughout the world.  These servants come under the direction of branch servants who are appointed by the president of the Watch Tower Bible and Tract Society of Pennsylvania."  Pls.' SUF re: JV, ¶ 6a.

b.  The Overseers sent out by WTPA would receive a stipend from WTNY.  Pls.' SUF re: JV, ¶ 6b.

c.  The Governing Body appointed these circuit overseers through WTNY.  Pls.' SUF re: WTNY Agency, ¶ 6l.

d.  "Jehovah's Witnesses circuit overseers visit local congregations and report on their activities to the U.S. Branch Office."  Ord. at 39, ECF No. 318.

e.  Circuit overseers were expected to know of any serious sins committed by elders or ministerial servants from the local congregations in their circuit.  Pls.' SUF re: WTNY Agency, ¶ 6n.

f.  The Circuit Overseers sent by WTPA and paid for by WTNY met with the local congregations and filled out a form identifying recommendations for elders and sent the form to the "branch" for review and approval.  Pls.' SUF re: JV, ¶ 6c.

g.  After the Governing Body reviewed and approved the

recommendation, WTNY communicated such approval back to the

local congregation.  Pls.' SUF re: JV, ¶ 6d.

**20. At all times relevant to this case WTNY and WTPA worked in concert with each other to train and instruct the Hardin Elders on how to handle matters of serious sin, including child sex abuse.**

a.  WTNY and WTPA worked in concert to manage and oversee the

operation of all local congregations in the United States.  Pls.' SUF re:

WTNY Agency, ¶ 4e.

b.  "WTNY is the legal parent organization of all congregations in the

U.S."  Ord. at 39, ECF No. 318.

c.  "Local congregations operate under the direction of the Governing

Body."  Ord. at 39, ECF No. 318.

d.  Local congregation elders are responsible for responding to and

investigating reports of serious sin within their congregation and are

required to follow the Organization's policies when doing so.  Pls.'

SUF re: JV, ¶ 7b.

e.  Local congregation elders were required to follow the policies and

procedures set forth in various WTNY/WTPA publications and

letters, and they could be removed from their positions for failing to

do so.  Pls.' SUF re: WTNY Agency, ¶ 6b.

Plaintiffs' Statement of Disputed Facts re: WTPA's Motion for Summary Judgment re:
Vicarious Liability (ECF No. 354)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
14

f.  "The Governing Body establishes policies and procedures for local congregation elders to investigate and respond to allegations of serious sin, including child sex abuse." Ord. at 38, ECF No. 318.

g.  WTNY and WTPA worked in concert to publish and distribute printed material instructing the Hardin Elders on how to respond to reports of serious sin, including child sex abuse.  WTPA was often the copyright holder of such material and WTNY would be the publisher.  However, in other instances, WTNY would hold the copyright and publish the material.  Pls.' SUF re: JV, ¶ 7b.

h.  The Hardin Elders learned how to perform their duties from the publications, schools, and instruction provided by WTNY and WTPA. Pls.' SUF re: JV, ¶ 7c.

i.  The Governing Body, WTPA, and WTNY were all working in concert to organize and hold training sessions, a.k.a. Kingdom Ministry School, to teach local elders how to do their jobs.  Pls.' SUF re: JV, ¶ 7d.

j.  WTNY, acting through the Service and Legal Departments answered questions that local elders had regarding implementation of the Organization's policies, including question on how to handle reports of child sex abuse.  Pls.' SUF re: JV, ¶ 7e.

**Plaintiffs' Statement of Disputed Facts re: WTPA's Motion for Summary Judgment re:
Vicarious Liability (ECF No. 354)**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
15

**21.The Jehovah's Witnesses' entities in New York were collectively and without distinction referred to as the "Society."**

    a.  The Jehovah's Witnesses' own Circuit Overseer acknowledged that the Organization's publications often simply referred to the "Society" without distinguishing between corporate entities.  Pls.' SUF re: JV, ¶ 8a.

    b.  Jehovah's Witnesses commonly referred to the Organization's entities as the "Society."  Pls.' SUF re: JV, ¶ 8b.

**22.At All Times Relevant to This Case, All Elders in Hardin Montana Were Appointed and Controlled by the Governing Body through WTNY/WTPA.**

    a.  "The Governing Body has the ultimate authority to bar a person from serving in positions of responsibility with the Jehovah's Witnesses Organization."  Ord. at 38, ECF No. 318.

    b.  The Hardin Congregation was established in 1971 with the approval of WTNY.  Pls.' SUF re: WTNY Agency, ¶ 7a.

    c.  Recommendations for the position of Elder in Hardin were sent to WTNY for approval by the Governing Body and WTNY and then sent back to Hardin.  Pls.' SUF re: WTNY Agency, ¶ 7b.

d.  Newly appointed elders were instructed by WTNY to become familiar with their duties as outlined in the WTNY/WTPA publications provided to them by WTNY.  Pls.' SUF re: WTNY Agency, ¶ 7c.

e.  Elders in the Hardin Congregation learned how to perform their various duties from WTNY/WTPA publications, "All Bodies of Elders" letters, and trainings/schools, all of which were provided to/for them by WTPA/WTNY.  Pls.' SUF re: WTNY Agency, ¶ 7d.

f.  Hardin Congregation elders were appointed to, *inter alia*, investigate and handle wrongdoing within their congregation pursuant to the written policies set forth in WTPA/WTNY publications and letters. Pls.' SUF re: WTNY Agency, ¶ 7e.

g.  The elders and other officials of the Hardin Congregation for all years material to this case could only be removed against their will by the Service Department acting through WTNY.  Pls.' SUF re: WTNY Agency, ¶ 7f.

h.  The Hardin Congregation follows the direction from the top of the Organization's hierarchy, whether communicated by a Circuit Overseer, the Service Department, the "branch", WTNY or otherwise. Pls.' SUF re: WTNY Agency, ¶ 7g.

Plaintiffs' Statement of Disputed Facts re: WTPA's Motion for Summary Judgment re:
Vicarious Liability (ECF No. 354)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
17

i.  The elders of the Hardin Congregation in the mid-seventies attended

Kingdom Ministry School.  Pls.' SUF re: WTNY Agency, ¶ 7h.

DATED this 8th day of May, 2024.

By: /s/ Ryan Shaffer
     Ryan R. Shaffer
     MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Local Rule 1.4, this document has been served on all parties via electronic service through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

By: <u>/s/ Ryan Shaffer</u>
Ryan R. Shaffer
MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*