Jon A. Wilson
Brett C. Jensen
Michael P. Sarabia
BROWN LAW FIRM, P.C.
315 North 24th Street
P.O. Drawer 849
Billings, MT 59103-0849
Tel. (406) 248-2611
Fax (406) 248-3128

Joel M. Taylor, Esq. (appearing *pro hac vice*)
MILLER MCNAMARA & TAYLOR LLP
412 Clock Tower Commons Dr.
Brewster, NY 10509
Telephone/E-Fax: (845) 288-0844
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | Cause No. CV 20-52-BLG-SPW |
| Plaintiffs, | **DEFENDANT WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: HARDIN ELDERS ARE AGENTS OF WTNY (DOC. 339)** |
| vs. | |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR., | |
| Defendants. | |

Defendant Watchtower Bible and Tract Society of New York, Inc. ("WTNY"), submits its Response Brief in Opposition to Plaintiffs' Motion for Summary Judgment Re: Hardin Elders Are Agents of WTNY (Doc. 339).

## INTRODUCTION

The issue of agency should be submitted to the jury. Because there exist genuine disputes over material facts that govern the issue, Plaintiffs improperly ask to usurp the role of the jury to decide whether congregation elders in Montana are agents of WTNY, a New York corporation. Thus, Plaintiffs' motion should be denied.

## BACKGROUND

Plaintiffs failed to sue the non-party Hardin Congregation for purported misdeeds by its elders and now belatedly seek to bootstrap those claims to WTNY by arguing agency arising out of religious appointments and purported control of elders by WTNY. In doing so, Plaintiffs ignore this Court's prior order that established as a fact in this case that the U.S. Branch Office – not WTNY – has "central control" over congregations and that congregations operate "under the direction of the theocratic organization." *See* ECF Doc. 318, p. 39 §§ (j) and (l). Contrary to that Order, Plaintiffs point to seven "facts" about elders, five of which relate to the way congregation elders are appointed and function within the religion (the theocratic part) of Jehovah's Witnesses. Though Plaintiffs claim these seven

"facts" are undisputed, all seven are. Please see the attached Statement of Disputed Facts. There is a material dispute over each "fact" Plaintiffs assert.

Plaintiffs ask the court to hold, as a matter of law, that the evidence conclusively establishes the existence of an agency relationship (based on control) between those elders and a New York corporation (WTNY).[1]

Even assuming Plaintiffs' arguments on the law were correct, which they aren't, the material facts are in dispute. That dispute precludes summary adjudication of the issue.

## DISPUTED MATERIAL FACTS

Every "Fact" asserted by Plaintiffs as "undisputed" and most subpoints Plaintiffs assert are disputed by Defendants. Please see the attached Statement of Disputed Facts ("SDF").

---

[1] Plaintiffs' continue to conflate multiple legal and religious entities to argue agency. That analysis violates proscriptions of the First Amendment to the U.S. Constitution and Article II, 5 of the Montana Constitution. *See Serbian Eastern Orthodox Diocese v. Milivoievich,* 426 U.S. 696, 710 (1976) (explaining that the church autonomy doctrine "applies with equal force to church disputes over church polity and church administration.") Civil courts exercise no jurisdiction over "a matter which concerns . . . ecclesiastical government . . ." *Id*., 426 U.S. at 713-714. *Kedroff v. St. Nicholas Cathedral,* 344 U.S. 94, 110, 116 (1952) (describing the church autonomy doctrine as interposing a structural barrier between internal ecclesiastical affairs and civil power by guaranteeing a sphere of activity with "independence from secular control or manipulation[.]"

## LEGAL ARGUMENT

In ruling on a motion for summary judgment, "[t]he evidence of the non-movant [WTNY] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986).  Plaintiffs cite a very old case to establish the requirements for summary adjudication of an issue (*May Dept. Store v. Graphic Process Co.,* 637 F.2d 1211, 1214 (9th Cir. 1980)); the law is the same today.  *See Speaks v. Mazda Motor Corp.*, 118 F.Supp.3d 1212 (D. Mont. 2015).  A party is not entitled to summary judgment unless it can demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. at 1222.

It is not disputed that the issue of agency is a question of state law.  And Plaintiffs correctly inform the court that the issue of agency often involves questions of fact that preclude summary judgment.  (Doc. 340 at 9).

Neither of the cases Plaintiffs cite on page 7 resulted in the kind of blanket ruling Plaintiffs seek here. *Vinion v. Amgen Inc.,* No. CV03-202-M-DWM 2005 WL 6763338 (D. Mont. 2005) decided against summary adjudication of agency. *Id*. at *7. And in *Read v. Teton Springs Golf & Casting Club*, LLC, No. CV 08-CV-00099, 2010 WL 11531376, the court ruled on a very discrete point but emphasized that "a battleground of competing arguments exists [parenthetical omitted] that, based upon the record now before this Court, cannot be reconciled via summary judgment." *Id.*

3

at *9 (emphasis added.)  The same is true here.  Since the United States Supreme Court requires this Court to believe all of WTNY's evidence and give WTNY all justifiable inferences from that evidence, the facts here do not conclusively establish agency.  The motion for summary adjudication should be denied.  *See Anderson v. Liberty Lobby, supra.*

A.   **Disputed Material Facts Preclude Summary Adjudication of the Agency Issue.**

It is well established that in every diversity action, the Court applies Montana substantive law and federal procedural law.  *Erie R. Co. v. Tompkins,* 304 U.S. 64, 79 (1938).  In Montana, agency is governed by Title 28 of the Montana Code Annotated.   The issues of consent and control are "integral to any agency relationship." *Wolfe v. Schulz Refrigeration,* 614 P.2d 1015, 1018 (Mont. 1979). Plaintiffs do not point to any evidence that WTNY consented to having Hardin Congregation elders act as its agents nor do the Plaintiffs point to any evidence that those elders considered themselves agents of WTNY.  Rather, Plaintiffs point to facts showing religious control.  This Court previously ruled that the U.S. Branch Office has "central control" over congregations; congregations operate "under the direction of the theocratic organization;" and "congregations operate under the direction of the Governing Body."[2]

---

[2] *See* ECF Doc. No. 318, Order at p. 39 §§ (j)(l) and (m).

Contrary to that prior order, Plaintiffs ask the court to conclude that it was not the U.S. Branch Office or the Governing Body, but WTNY that actually exercised control over the Hardin Congregation.[3]  Further analysis shows that any "control" that WTNY exercised is much like the control the Montana State Bar Association and Montana Courts exercise over attorneys who practice law in the State of Montana.  That kind of relationship does not establish agency.

### (1)   There is a dispute over who appointed Hardin elders.

Plaintiff contends that WTNY appointed congregation elders.  (Doc. 340 at 2, 4.)  Evidence shows that the Service Department, authorized by the governing body of Jehovah's Witnesses, appointed the Hardin Congregation elders.   The appointment was communicated by WTNY – not made by WTNY.  *See* Statement of Disputed Facts, No. 3(b).  This is consistent with the Court's order finding that during the relevant time, the U.S. Branch Office "worked in concert with WTNY" to inform local congregations of the appointment and removal of elders.  (ECF Doc. 318, p. 39, § (i).)

WTNY points to Chapter 4 of the book Organization for Kingdom-preaching and Disciple-making ("*Organization*"), published in 1972 by WTNY, which describes the process of how elders were appointed during the relevant years.  *See* SDF, Ex. K.  Highlighted excerpts show, first, that local elders who are already

_____

[3] *See* footnote 1, *supra.*

serving their congregation as elders reviewed Bible verses about who may qualify to serve as an elder. Those local elders met to discuss the men in the congregation who are "reaching out" to serve. If any appeared to qualify, the local elders recommended them to the governing body of Jehovah's Witnesses. Next, through its appointed representatives,[4] the governing body either approved or rejected the local elders' recommendation.

Plaintiffs point to testimony from Bradley Lovett, who agreed that the letter from WTNY announcing the appointment of Hardin elders appeared to indicate that "Watch Tower Society" had approved the appointments (Plaintiffs' Exhibit AA, Doc. 341-27). But Lovett's testimony is not binding on WTNY and, as discussed below, the term "Watch Tower Society" does not refer to WTNY. At best, Lovett's testimony creates a dispute in facts that precludes summary adjudication.

Since the Court must accept WTNY's evidence as true, it should conclude that WTNY did not approve the appointments; it merely communicated information about the appointment to the congregation. Since the Plaintiffs' evidence is in dispute, the Court should deny the motion.

---

[4] During the relevant time, the "appointed representatives" were elders in the Service Department. (*See* SDF, Ex. G, WTNY 30(b)(6) Jefferson Depo 47:11-55:20)

**(2)      There is a dispute whether WTNY could remove the Hardin elders from their positions.**

Plaintiffs contend that WTNY had authority to remove Hardin elders from their positions.  (Doc. 340 at 2, 10.)  This Court's prior Order speaks to this issue when it decided as a fact of this case that during the relevant time period "the U.S. Branch Office worked in concert with WTNY to inform local congregations of the appointment and removal of elders."  (ECF Doc. 318, p. 39 § (i).)  This finding does not support Plaintiffs' contention that WTNY had authority to remove Hardin elders.

SDF Exhibit K (Organization) shows that elders were removed by the local elders who recommended them in the first place.  A highlighted sentence says: "If an elder or ministerial servant were ever to engage in unchristian conduct of such a nature that he was disfellowshipped or was, because of wrongdoing, restricted in the assignments and duties that he could perform, the local body of elders would remove him as an elder or ministerial servant. Notification of this action would always be sent to the branch office of the Watch Tower Society."  SDF, Ex. K (emphasis added.)

As the Court previously found, WTNY was only involved in communications about appointments or deletions – it was not the entity that acted to appoint or delete.

**(3)     There is a dispute whether WTNY could assign the Hardin Elders their duties and responsibilities.**

Plaintiffs argue that WTNY could assign Harding elders duties through various written materials that set forth "policies and procedures" they were to follow. (Doc. 340 at 2.)  Evidence shows that elders looked to the Bible for their guidance. SDF, No. 7(e). The publications copyrighted by WTPA and printed by WTNY quote the Bible, explain it, and provide interpretive examples so elders can understand how the Scriptures apply to situations they handle. SDF, Ex. G, WTNY 30(b)(6) Depo. 88:11-89:7.

Again, SDF Exhibit K (Organization) provided the official position of Jehovah's Witnesses about who assigned elders their responsibilities during the relevant time period.[5]  Those assignments were not made by WTNY, WTPA, the Service Department or the governing body.  Rather, the local elder body determined which elder would assume particular responsibilities in the congregation.  SDF Ex. K, *Organization*.

SDF Exhibit K contains an excerpt from Organization that provides suggestions for elders to consider in designating who will serve in a given role.  A rotation system gave each elder an opportunity to fill a role for a year, but if a

---

[5] "Organization" was replaced by the 1983 publication "Organized to Accomplish Our Ministry" ("Organized").

particular elder felt that he was not well qualified to perform certain tasks or if the other elders felt that way, then the local elders could modify the rotation to fit local needs.  SDF Ex. K, *Organization*.  Regardless, WTNY was not involved with the assignment of elders to roles in the congregation.

This evidence shows that there is a genuine dispute over a fact that bears on the issue of agency. Thus, the Plaintiffs' motion should be denied.

**(4)     There is a dispute whether WTNY trained the Hardin Elders how to perform duties.**

Plaintiffs contend that WTNY trained Hardin elders to perform duties at in-person training sessions known as Kingdom Ministry Schools.  (Doc. 340 at 2.)  But the Court previously found that it was "The U.S. Branch Office" that held training conventions to teach local elders.  *See* ECF Doc. 318, p. 38 § (f).  Regardless, providing lecturers and study materials to help elders understand Scriptural principles does not make elders WTNY's agents any more than a high school or college providing instructors and class materials makes the students agents of the school, or a bar association conducting CLE seminars makes attending bar-member attorneys agents of their bar association.

Analogy to a bar association is particularly appropriate since every attorney is required to attend for a specific number of hours a course that teaches ethics.  It is imperative for an attorney to learn how to interact with the general public as well as

in law practice with sound ethical standards.   That training does not make the attorney an agent of the entity that presented the lecture or the bar association that approved the course.

Nor does acceptance of an attorney as qualified to practice law in a state, nor issuance of a bar card, nor Board Certification of attorneys who achieve specialization in a selected area of practice make that attorney an agent of the bar association or judiciary.   Indeed, courts and bar associations regulate speech and conduct, both inside and outside the practice of law. Yet, lawyers are agents of their law firm, not the courts and bar associations that regulate them.   The same is true of elders.   They receive training in how to live by Bible principles, how to interact with people in a way that meets the standards for Christian living.   But that training does not make them elders of the entity that presented the training.

SDF Exhibits A, B, H, and K show how WTPA and WTNY are educators of elders as students of the Bible and are not "principals" with elders being their "agents."   Elders were not authorized to hold themselves out as agents of WTNY. This fact disputes Plaintiff's contention and creates a genuine issue of fact.   The plaintiffs' motion should be denied.

**(5)     There is a dispute over the role of circuit overseers.**

Plaintiffs argue that WTNY appointed and paid Circuit Overseers who visited the Hardin Congregation and reported to WTNY on activities, including the

wrongdoing of its appointed officials. This Court's prior order determined that "Jehovah's Witness circuit overseers" performed that task. *See* ECF 318, p. 38, § (h). Thus, it is undisputed that circuit overseers did visit congregations and reported on their spiritual health and activities to the Service Department (incorrectly identified as U.S. Branch Office).

But evidence shows that the appointment of circuit overseers was made by the Governing Body, not WTNY.

To the extent Plaintiffs have identified statements about the relationship between WTPA, WTNY, the governing body, branches, etc. that are inconsistent, Rule 801, Fed. R. Evid., applies. A statement made in the course of any judicial proceeding by a party or the party's attorney that is inconsistent with the position the party now assumes is admissible as an informal judicial admission that constitutes evidence, but is not conclusive evidence of the fact(s) admitted. Except in the Second Circuit, a prior inconsistent statement of a witness is available for impeachment only, not as substantive evidence. At best, the evidence contradicts WTNY's position here and creates a genuine issue of material fact that precludes summary adjudication.

## CONCLUSION

Any relationship between elders and WTNY (if one exists) would be akin to that between attorneys and their bar association. Bar associations govern the practice of law within a state, promulgate codes of ethics that lawyers must obey,

11

and sponsor educational programs.  But lawyers cannot bind the bar association to any contract, cannot write checks for their bar associations, and cannot properly claim to be agent of the bar association.  Same with elders and WTNY. Further, and importantly, even if agency is established (and it is not), under no circumstances can Plaintiffs change the law to establish that the alleged abuse in this case fell within the scope of any agency. (*See, generally,* Doc. 347).

Because there are genuine disputes over the facts Plaintiffs claim are material to the issue of agency, this Court must view WTNY's evidence in a light most favorable and deny Plaintiffs' motion for summary adjudication.

DATED this 9th day of May, 2024.

By:    /s/ Jon A. Wilson
        Jon A. Wilson / Brett C. Jensen /
        Michael P. Sarabia
        BROWN LAW FIRM, P.C.
        *Attorneys for Defendants Watchtower*
        *Bible and Tract Society of New York,*
        *Inc.*

By:    /s/ Joel M. Taylor
        Joel. M. Taylor (appearing *pro hac*
        *vice*)
        MILLER MCNAMARA & TAYLOR
        LLP
        *Attorneys for Defendants Watchtower*
        *Bible and Tract Society of New York,*
        *Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(d)(2)(E), the undersigned hereby certifies this brief complies with L.R. 7.1(d)(2)(A). According to the word-processing unit used to prepare this brief, the word count is 2,676 words excluding caption, table of contents and authorities, exhibit index, and certificates of service and compliance.

DATED this 9th day of May, 2024.

By:   /s/ Jon A. Wilson
Jon A. Wilson / Brett C. Jensen /
Michael P. Sarabia
BROWN LAW FIRM, P.C.
*Attorneys for Defendants Watchtower*
*Bible and Tract Society of New York,*
*Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 9th, 2024, a copy of the foregoing was served on

the following person(s):

1.      U.S. District Court, Billings Division

2.      Robert L. Stepans/Ryan R. Shaffer/James C. Murnion
      MEYER, SHAFFER & STEPANS, PLLP
      430 Ryman Street
      Missoula, MT 59802

3.      Matthew L. Merrill (appearing *pro hac vice*)
      MERRILL LAW, LLC
      1401 Delgany Street, #404
      Denver, CO 80202

4.      Gerry P. Fagan/Christopher T. Sweeney/Jordan W. FitzGerald
      MOULTON BELLINGHAM PC
      P.O. Box 2559
      Billings, MT 59103-2559

5.      Bruce G. Mapley Sr.
      3905 Caylan Cove
      Birmingham, AL 35215

by the following means:

| | | | |
|---|---|---|---|
| _1-4_ | CM/ECF | _____ | Fax |
| _1_ | Hand Delivery | _____ | E-Mail |
| _5_ | U.S. Mail | _____ | Overnight Delivery Services |

By:   /s/ Jon A. Wilson
           Jon A. Wilson / Brett C. Jensen /
           Michael P. Sarabia
           BROWN LAW FIRM, P.C.
           *Attorneys for Defendant Watchtower*
           *Bible and Tract Society of New York,*
           *Inc.*