Jon A. Wilson
Brett C. Jensen
Michael P. Sarabia
BROWN LAW FIRM, P.C.
315 North 24th Street
P.O. Drawer 849
Billings, MT 59103-0849
Tel. (406) 248-2611
Fax (406) 248-3128

Joel M. Taylor, Esq. (appearing *pro hac vice*)
MILLER MCNAMARA & TAYLOR LLP
412 Clock Tower Commons Dr.
Brewster, NY 10509
Telephone/E-Fax: (845) 288-0844
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, <br><br> Plaintiffs, <br><br> vs. <br><br> WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR., <br><br> Defendants. | Cause No. CV 20-52-BLG-SPW <br><br> **DEFENDANT WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.'S STATEMENT OF DISPUTED FACTS RE: PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: HARDIN ELDERS ARE AGENTS OF WTNY (DOC. 340)** |

Defendant Watchtower Bible and Tract Society of New York, Inc. ("WTNY"), submits the following Statement of Disputed Facts Re: Plaintiffs' Motion for Summary Judgment Re: Hardin Elders Are Agents of WTNY (Doc. 340).

1. **WTNY Has Previously Admitted / Stipulated That Local Congregation Elders are Agents of WTNY.**

**WTNY Response: Disputed and immaterial. (see below and Additional Facts Relied on By Defendant WTNY)**

    a. In *Doe v. WTNY*, WTNY admitted that a local elder was its agent.  Ex. A, *Doe* WTNY Resps. to RFA, 3–4.

**WTNY Response: Disputed.** WTNY's admission was limited to 1993 to 1998 (post any abuse in this case) and was further limited to only those times when the local elders of the North Congregation, Fremont, California were acting in the course and scope of their duties as elders for that congregation. (*See* Doc. 341-1, Pls.' Ex A.)

    b. In *Lopez v. WTNY*, WTNY stipulated that it made the final determination about which men would serve as elders and ministerial servants in local congregations and such elders and ministerial servants were agents of WTNY.  Ex. B, *Lopez* Stip., 7–9.

**WTNY Response: Disputed.** Nothing in that case-specific stipulation acknowledged that WTNY made the final determination about which men would serve as elders and ministerial servants in local congregations and the admission that local elders were agents was limited as that term is defined under California Civil

Code section 2295. Further, that stipulation has no evidentiary value in this case pursuant to its own terms, which states: "The agreements reached herein are not intended to be used, and are specifically intended to be of no effect in any other action." (*See* Doc. 341-2, Pls.' Ex. B, *Lopez* Stip., 2)

**2. The Jehovah's Witnesses are a Hierarchical Religion Governed from the Top Down by the Governing Body.**

**WTNY Response: Disputed and immaterial. (See below and Additional Facts Relied on By Defendant WTNY)**

    a.  The Jehovah's Witnesses are a hierarchical religion that is governed from the top down by the Governing Body.  Ex. C, *Cobb* Tr. of Proc., 4–5.

**WTNY Response: Disputed and immaterial**. Attorney Rouse was representing an individual, not WTNY, in that matter, and therefore WTNY cannot be bound by Attorney Rouse's representation. Jehovah's Witnesses are not a hierarchical religion. *See* Exh. A, WTPA003135-003136; Exh. B, WTPA016732, WTPA016860, WTPA016884, WTPA016901, WTPA016902, WTPA016916, WTPA016937, WTPA016964; Exh. CWTPA Rog RESP. No. 5.; Doc. 341-3, Pls.' Ex. C, *Cobb* Tr. of Proc., 4–5.

    b.  "The Governing Body oversees the promulgation of policies and procedures for all persons associated with the Jehovah's Witnesses." Ord. at 38, ECF No. 318.

**WTNY Response: Undisputed that the Court made that finding**.

> c. "The Governing Body approves all letters to congregations concerning matters of policy."  Ord. at 38, ECF No. 318.

**WTNY Response: Undisputed that the Court made that finding**.

**3. During All Times Relevant to this Case, WTNY was Controlled by the Governing Body.**

**WTNY Response: Disputed. (See below and Additional Facts Relied on By Defendant WTNY)**

> a. With almost no exception, the group of men who comprised the Governing Body were the exact same men who sat on the board of directors and served as the corporate officers for both WTNY and WTPA.  Ex. D, Summary and Comparison; Ex. E, 1970 Yearbook of JWs, 38 ("So really, the governing body of Jehovah's witnesses is the board of directors of the Watch Tower Bible and Tract Society of Pennsylvania[.]").

**WTNY Response: Disputed and immaterial.** The Governing Body and the board of the WTNY have never been one and the same. The Governing Body has varied in number whereas the board of directors of WTNY has remained constant.  The purported facts regarding WTPA predate the alleged abuse in this case and are immaterial to WTNY. See Exh. D, WTNY ROG RESP. No. 2, Exh. E WTPA ROG RESP. No. 23, Exh. F, WTPA 30(b)(6) Devine Depo.115:4-116:14.

b. The Governing Body acted through WTNY when (1) appointing/removing local congregation elders and ministerial servants; and (2) providing to local elders the policies and procedures regarding allegations of child sexual abuse. *See, e.g.,* Ex. F, WTNY 30(b)(6) Jefferson Dep., 71:11–72:24, 100:2–103:9; Ex. G, Adams Aff., ¶¶ 6–8; Ex. H, 1983 Organized to Accomplish Our Ministry, 26–27; Ex. F, WTNY 30(b)(6) Jefferson Dep., 100:2–103:9, 124:6–125:2; Ex. I, WTNY 30(b)(6) Moreno Dep., 15:14–18.

**WTNY Response: Disputed.** The Governing Body or those authorized by the Governing Body conveyed appointments through WTNY, in the United States. Local elders removed elders and ministerial servants when necessary and notified WTNY afterward. Plaintiff's use of the term "policies and procedures" is vague and ambiguous and excludes the fact that the Bible is the guideline the elders rely on when responding to allegations of serious sin, including child abuse. Exh. G, WTNY 30(b)(6) Jefferson Depo. 47:11-55:20; 172:19-173:25.

c. WTNY served as an instrument of the Governing Body. Ex. J, 1972 Kingdom Ministry, 79.

**WTNY Response: Undisputed.**

d. "The Watch Tower Bible and Tract Society of Pennsylvania is the parent corporate agency of Jehovah's Witnesses. It works with its

subsidiary legal agencies such as the Watchtower Bible and Tract Society of New York, Inc. . . . . for carrying on the business that must be done in order to print and ship the good news.  All these agencies are subject to and work under the direction of the 'faithful and discreet slave' class and its Governing Body."   Ex. K, 1977 Branch Organization, 1-4 ¶ 34.

**WTNY Response: Undisputed that this is an accurate quote from the referenced publication.** Disputed that the quote created a legal relationship between WTPA and/or WTNY.  See Exh. C WTPA RFA RESP. No. 2

    e.  Prior to 2001, every activity carried out by the U.S. Branch Office (and its Service Department) under WTNY letterhead or on behalf of WTNY has been ratified by WTNY.  Ex. L, *Nunez* Chappel Dep., 44:13–25; Ex. M, *Nunez* Prop. Final Pretrial Ord., 18–19.

**WTNY Response: Undisputed.**

**4.  During all times Relevant to this Case, Local Congregations were Controlled from the Top of the Hierarchical Structure Through WTNY.**

**WTNY Response: Disputed.** Exh. B WTPA016732, WTPA016860, WTPA016884, WTPA016901, WTPA016902, WTPA016916, WTPA016937, WTPA016964; Exh. A, WTPA003135-03136 (*See* **also below and Additional Facts Relied on By Defendant WTNY)**

     a.  "Local congregations could not exist without the express permission of the U.S. Branch Office, which includes WTNY and the Governing Body."  Ord. at 40, ECF No. 318.

**WTNY Response: Undisputed that the Court made that finding**.

     b.  "The operation of a local congregation's Kingdom Hall is done under the direction of the theocratic organization, i.e. the Governing Body, WTNY, and the U.S. Branch Office."  Ord. at 39, ECF No. 318.

**WTNY Response: Undisputed that the Court made that finding**. The affidavit of Don Adams provides the evidentiary basis for this fact and it appears that the Court adopted Plaintiffs' paraphrasing of the affidavit. However, Paragraph 21 does not enumerate "the Governing Body, WTNY, and the U.S. Branch Office." Instead, regarding the operation of a congregation's Kingdom Hall, it states:

"The operation of the Kingdom Hall, making repairs and improvements, payment of expenses and obligations and all other business in connection with owning and maintaining the property are all under the direction of the theocratic organization through the elders and ministerial servants appointed by the Society." (Doc. 288-8, at 7)

     c. "The U.S. Branch Office is the U.S. division of the Jehovah's Witnesses Organization where central control over U.S. Congregations is based." Ord. at 39, ECF No. 318.

**WTNY Response: Undisputed that the Court made that finding**. This fact is not directed toward WTNY.

     d. "A prospective local congregation must apply to WTNY or the U.S. Branch Office to be approved as an entity with the Organization." Ord. at 39, ECF No. 318.

**WTNY Response: Undisputed that the Court made that finding.**

     e. WTNY and WTPA worked in concert to manage and oversee the operation of all local congregations in the United States. Ex. G, Adams Aff., ¶¶ 3–17, 27; Ex. N, *Rodriguez* WTNY Ans., ¶ 5; Ex. K, 1977 Branch Organization, 1-4 ¶ 34; Ex. E, 1970 Yearbook of JWs, 38.

**WTNY Response: Disputed.** Plaintiffs' use of the terms "manage and oversee" is vague, ambiguous and inaccurate. As to WTPA, it played no role in the operation of congregations in the United States. Exh. F WTPA 30(b)(6) Devine Depo 129:8-13.

     f. "WTNY is the legal parent organization of all congregations in the U.S." Ord. at 39, ECF No. 318.

**WTNY Response: Undisputed that the Court made that finding.**

g. "Local congregations operate under the direction of the Governing Body."  Ord. at 39, ECF No. 318.

**WTNY Response: Undisputed that the Court made that finding.**

h. "Jehovah's Witnesses circuit overseers visit local congregations and report on their activities to the U.S. Branch Office."  Ord. at 39, ECF No. 318.

**WTNY Response: Undisputed that the Court made that finding.**

i. "Elders direct questions on how to follow Jehovah's Witnesses policies to the U.S. Branch Office" Ord. at 38, ECF No. 318.

**WTNY Response: Undisputed that the Court made that finding.**

**5.  Local Elders are Appointed by the Governing Body through WTNY.**

**WTNY Response: Disputed. (See below and Additional Facts Relied on By Defendant WTNY)**

a. "The Governing Body has the ultimate authority to bar a person from serving in positions of responsibility with the Jehovah's Witnesses Organization."  Ord. at 38, ECF No. 318.

**WTNY Response: Undisputed that the Court made that finding.**

b. When the Organization's leaders (i.e. the Governing Body) decide to remove an elder from service, that decision is final, binding, and that

person no longer has authority in the local congregation.  Ex. C, *Cobb Tr. of Proc.*, 4–5.

**WTNY Response: Disputed and immaterial.** Attorney Rouse was representing an individual, not WTNY, in that matter, and therefore WTNY cannot be bound by Attorney Rouse's representation. Jehovah's Witnesses do not consider the Governing Body to be their leader. An elder may be removed without any input from the Governing Body. *See* Exh. H, WTPA039321-039322, Exh. G, WTNY 30(b)(6) Jefferson Depo at  93:20-94:12; Doc. 341-3, Pls' Ex. C, *Cobb* Tr. of Proc., 4–5.]

      c.  "The Governing Body adopts guidelines for the qualifications of for the appointment of local elders based on the Holy Scriptures."  Ord. at 38, ECF No. 318.

**WTNY Response: Undisputed that the Court made that finding.**

      d.  The Governing Body delegated its authority to the Service Department of the U.S. Branch Office to approve or deny the recommendations for local elder and ministerial servant appointment/removal, and the decision was communicated to the local congregation elders on a letter from WTNY.  Ex. O, WTNY's Ans. to Interrog. No. 20; Ex. F, WTNY 30(b)(6) Jefferson Dep., 54:15–57:6, 77:18–22; Ex. P, 1960 Preaching and Teaching in Peace and Unity, 27–28; Ex. H, 1983 Organized to

Accomplish Our Ministry, 41; Ex. Q, *Vigue* Breaux Decl., ¶ 8; Ex. R, *Alston* Jefferson Decl, ¶ 11.

**WTNY Response: Undisputed.**

    e.  There is no other method to becoming a local congregation elder; stated another way: every local congregation elder is appointed by the Service Department through WTNY.  Ex. G, Adams Aff., ¶¶ 3–17, 27; *see also* Ex. C, *Cobb* Tr. of Proc., 4–5; *see also* Ex. N, *Rodriguez* WTNY Ans., ¶ 8; *see also* Ex. S, *Doe* Steele Aff., ¶¶ 4, 7.

**WTNY Response: Undisputed for the relevant time-period.**

    f.  "From the 1970s to 2001, the U.S. Branch Office worked in concert with WTNY to inform local congregations of the appointment and removal of elders."  Ord. at 39, ECF No. 318.

**WTNY Response: Undisputed that the Court made that finding.**

    g.  Local congregation elders could only be removed against their will by the Service Department acting through WTNY.  Ex. C, *Cobb* Tr. of Proc., 4–5; *see also* Ex. G Adams Aff., ¶¶ 3–17, 27; see also Ex. N, *Rodriguez* WTNY Ans., ¶ 6.

**WTNY Response: Disputed.**  Elders may be removed without any input from the Service Department and/or WTNY. Exh. H, WTPA039321-039322. Attorney Rouse was representing an individual, not WTNY, in that matter, and therefore WTNY

cannot be bound by Attorney Rouse's representation. Doc. 341-3, Pls' Ex. C, *Cobb Tr. of Proc.*, 4–5. Further, Plaintiffs' use of the term "only...against their will" is vague and ambiguous. Plaintiffs also exclude reference to the Bible as being the determining factor in whether an elder can serve as such. Local congregation elders are expected to the meet the Scriptural qualifications as set out in the Bible and Christian publications. Failure to do so could result in their removal. ("So if an elder or a ministerial servant failed to meet the scriptural qualifications as outlined in the Bible and in Christian publications, including the explanations of those qualifications, then the potential is there for his being removed.") Exh. G, WTNY 30(b)(6) Jefferson Depo., 88:25–89:7

**6.  Local Elders are Controlled by the Governing Body through WTNY.**

**WTNY Response: Disputed.** Exh. B, WTPA016732, WTPA016860, WTPA016884, WTPA016901, WTPA016902, WTPA016916, WTPA016937, WTPA016964; Exh. A, WTPA003135-03136; Exh. K, 1972 *Organization* publication.

**(See also below and Additional Facts Relied on By Defendant WTNY)**

> a.  Local congregation elders are so appointed to, *inter alia*, investigate and handle wrongdoing within their congregation pursuant to the written policies and procedures set forth in WTPA/WTNY publications

and letters.[1] *E.g.,* Ex. S, *Doe* Steele Aff., ¶¶ 8, 10, 11; Ex. T, *Lopez* Ashe Dep. Vol I, 190:25–192:18; Ex. U, *Lopez* Ashe Dep. Vol. II, 320:8–322:14; Ex. V, 1949 Counsel on Theocratic Organization for Jehovah's Witnesses, 57–58; Ex. J, 1972 Kingdom Ministry School Course, 72–74, 84–86,114–17, 123–26, 131–35; Ex. W, 1977 Pay Attention to Yourselves and to All the Flock, 55–77; Ex. X, 1981 Pay Attention to Yourselves and to All the Flock, 160–82; Ex. Y, 1991 Pay Attention to Yourselves and to All the Flock, 90–142; Ex. Z, July 1, 1989 All Bodies of Elders Ltr.; Ex. H, 1983 Organized to Accomplish Our Ministry, 138–53.

**WTNY Response: Disputed.** Plaintiffs' use of the term "policies and procedures" is vague and ambiguous and Plaintiffs exclude reference to the Bible being the guidelines elders follow. Pls' Ex. S, *Doe* Steele Aff., ¶¶ 8 ("congregation elders are authorized to hear confessions and other private, confidential communications and to provide spiritual guidance and counsel by virtue of the **Holy Scriptures** and the religious beliefs and practices of Jehovah's Witnesses. (Proverbs 28:13; Galatians 6:1; James 5:13-20).")

---

[1] There are tens of thousands of pages of WTNY/WTPA documents setting forth the way elders were supposed to carry out their duties. The ones cited here are meant to be examples, not an exhaustive list.

b. Local congregation elders were required to follow the policies and procedures set forth in various WTNY/WTPA publications and letters, and they could be removed from their positions for failing to do so.  *See* Ex. F, WTNY 30(b)(6) Jefferson Dep., 88:6–92:14; Ex. AA, Lovett Dep., 67:19–69:12, 72:20–74:15, 85:15–87:5; *see also* Ex. G, Adams Aff., ¶¶ 15, 16; *see also* Ex. C, *Cobb* Tr. of Proc., 4–5; Ex. BB, *Nunez* Trial Trans., 246:24 –247:13; *see also* Ex. CC, April 1, 1971 Watchtower, 223; *see also* Ex. DD, James Rowland Dep., 79:13–80:19.

**WTNY Response: Disputed.** Plaintiffs' use of the term "policies and procedures" is vague and ambiguous and Plaintiffs exclude reference to the Bible as being the determining factor in whether an elder can serve as such. Local congregation elders are expected to meet the Scriptural qualifications as set out in the Bible and Christian publications. Failure to do so could result in their removal. ("So if an elder or a ministerial servant failed to meet the scriptural qualifications as outlined in the Bible and in Christian publications, including the explanations of those qualifications, then the potential is there for his being removed.") Exh. G, WTNY 30(b)(6) Jefferson Depo., 88:25–89:7

c. "The U.S. Branch Office puts on training conventions to teach local elders how to do their jobs."  Ord. at 38, ECF No. 318.

**WTNY Response: Undisputed that the Court made that finding.**

d.  WTNY and WTPA worked in concert to write, publish, disseminate, teach, and enforce policies and procedures to be implemented and followed at local congregations in the United States, including the Hardin Congregation, including policies and procedures that governed how local congregations were to handle reports of child sexual abuse. Ex. EE, Summary of Relevant Publication.

**WTNY Response: Disputed.** Plaintiffs' Ex. EE does not identify any specific citation for the proposition contained in this purported fact. *See* Additional Facts Relied On by Defendant WTNY below.

e.  WTPA generally held the copyright for and published many of the Jehovah's Witnesses publications containing their policies and procedures.   Ex. FF, WTPA 30(b)(6) Devine Dep., 97:10–99:16, 121:25–122:23, 126:4–128:2, 130:3–131:8.

**WTNY Response: Undisputed and immaterial.**

f.  WTNY printed these publications, published the ones WTPA did not, and provided them to local congregation elders to guide them in their duties.  Ex. F, WTNY 30(b)(6) Jefferson Dep., 100:2–103:9, 124:6–125:2; Ex. I, WTNY 30(b)(6) Moreno Dep., 15:14–18.

**WTNY Response: Undisputed.**

g.  "All Bodies of Elders" letters were sent by WTNY to all local congregation elders in the United States containing further explanation of the policies and procedures elders were to follow.  *See* Ex. F, WTNY 30(b)(6) Jefferson Dep., 127:23–131:15; Ex. AA, Lovett Dep., 64:12–65:8.

**WTNY Response: Undisputed.**

h.  These letters were created and sent under the direction of the Governing Body.  Ex. F, WTNY 30(b)(6) Jefferson Dep., 136:7–138:13.

**WTNY Response: Undisputed.**

i.  "The Governing Body establishes policies and procedures for local congregation elders to investigate and respond to allegations of serious sin, including child sex abuse." Ord. at 38, ECF No. 318.

**WTNY Response: Undisputed that the Court made that finding.**

j.  "From the 1970s to 2001, the U.S. Branch Office assisted local elders in administering discipline to local congregation members who committed serious sin." Ord. at 39, ECF No. 318.

**WTNY Response: Undisputed that the Court made that finding.**

k.  WTNY paid for these training sessions and provided the written materials for them.  Ex. FF, WTPA 30(b)(6) Moreno Dep., 42:20–22;

> Ex. F, WTNY 30(b)(6) Jefferson Dep., 110:5–111:2, 216:25–218:3; Ex. I, WTNY 30(b)(6) Moreno Dep., 15:19–23.

**WTNY Response: Disputed.** From 1973-1974, Kingdom Ministry School expenses were cared for by WTNY; at other periods of time, expenses were cared for by the local congregations. Exh. G, WTNY 30(b)(6) Jefferson Depo., 217:6-218:9

> l.  WTNY paid circuit overseers a monthly stipend and other compensation that permitted them to devote their lives to overseeing local congregations.  Ex. FF, WTPA 30(b)(6) Moreno Dep., 39:17–41:2; Ex. AA, Lovett Dep. 117:20–118:23; 130:18–132:5, 221:11–22

**WTNY Response: Disputed.** Circuit overseers were not compensated by WTNY. Expenses were cared for by the local congregations. WTNY provided a small monthly stipend of probably less than $50 a month.  Exh. I, WTPA 30(b)(6) Moreno Depo., 40:17-41:2;

> m. The Governing Body appointed circuit overseers through WTNY.  Ex. F, WTNY 30(b)(6) Jefferson Dep., 142:22–144:5.

**WTNY Response: Undisputed.**

> n.  Circuit overseers were expected to know of any serious sins committed by elders or ministerial servants from the local congregations in their circuit.  Ex. F, WTNY 30(b)(6) Jefferson Dep., 163:1–8.

**WTNY Response: Disputed.** Circuit overseers did not conduct any investigation of wrongdoing in the congregation and were reliant on local elders to convey any details regarding serious wrongdoing. Exh. G, WTNY 30(b)(6) Jefferson Depo. at 220:17-221:5.

> o. The WTNY Legal Department provided legal guidance and advice to the Hardin Elders regarding how they should handle reports of child sex abuse in their official capacity as clergy. Br. at 1, 5-6, 9, ECF No. 204 (citing Moreno Aff., ¶¶ 5-6, 8-9, ECF No. 204-1).

**WTNY Response: Disputed.** Plaintiffs' use of the term "how they should handle" is vague and ambiguous. The purported fact is also overbroad as to time. WTNY informed congregations of the availability of legal assistance about reporting obligations starting in 1989. *See* Doc. 196-1, July 1, 1989 BOE Ltr.

**7. At All Times Relevant to This Case, All Elders in Hardin Montana Were Appointed and Controlled by the Governing Body through WTNY.**

**WTNY Response: Disputed.** Exh. B WTPA016732, WTPA016860, WTPA016884, WTPA016901, WTPA016902, WTPA016916, WTPA016937, WTPA016964; Exh. A, WTPA003135-03136; Exh. K, 1972 *Organization* publication.

**(*See* also below and Additional Facts Relied on By Defendant WTNY)**

> a. The Hardin Congregation was established in 1971 with the approval of WTNY. Ex. GG, Ltrs. from WTNY to Hardin Congregation.

**WTNY Response: Undisputed.**

b. Recommendations for the position of Elder in Hardin were sent to WTNY for approval by the Governing Body and WTNY and then sent back to Hardin.  Ex. HH, Hardin Congregation Appointments; Ex. AA, Lovett Dep, 56:2–57:24; *see also* Ex. II, Meyers Dep., 74:1–24.

**WTNY Response: Disputed**. Experienced elders in the Service Department were tasked with approving appointments of elders. The acknowledgment of such appointments was conveyed with a WTNY letterhead. *See* Ex. G, WTNY 30(b)(6) Jefferson depo at 55:9-57:6.

c. Newly appointed elders were instructed by WTNY to become familiar with their duties as outlined in publications provided to them by WTNY. Ex. AA, Lovett Dep., 36:23–38:15; Ex. GG, Ltrs. from WTNY to Hardin Congregation.

**WTNY Response: Undisputed.**

d. Elders in the Hardin Congregation learned how to perform their various duties from WTNY/WTPA publications, "All Bodies of Elders" letters, and trainings/schools, all of which were provided to/for them by WTPA/WTNY.  Ex. AA, Lovett Dep., 61:25–62:16, 64:12–65:8, 66:25–67:6, 70:22–71:9, 79:22–80:25; *see also* Ex. JJ, Hardin 30(b)(6) Dep., 61:15–64:4, 67:17–25; *see also* Ex. KK, Hiebert Dep., 42:3–11,

18

43:1–7, *see also* Ex. II, Meyers Dep., 45:3–47:17, 130:11–19, *see also* Ex. DD, James Rowland Dep., 66:16–67:7, 69:14–21.

**WTNY Response: Undisputed.**

> e.  Hardin Congregation elders were appointed to, *inter alia*, investigate and handle wrongdoing within their congregation pursuant to the written policies set forth in WTPA/WTNY publications and letters. *E.g.,* Ex. AA, Lovett Dep., 37:22–38:15, 61:25–62:16; Ex. DD, James Rowland Dep., 66:4–72:21; 104:25–113:13; Ex. LL, Gibson Dep., 66:21–68:10; 82:8–23.

**WTNY Response: Disputed.** Plaintiffs' use of the term "written policies" is vague and ambiguous and Plaintiffs exclude reference to the Bible as being the guideline elders follow. Doc. 341-19, Pls' Ex. S, *Doe* Steele Aff., ¶¶ 8 ("congregation elders are authorized to hear confessions and other private, confidential communications and to provide spiritual guidance and counsel by virtue of the **Holy Scriptures** and the religious beliefs and practices of Jehovah's Witnesses. (Proverbs 28:13; Galatians 6:1; James 5:13-20).")

> f.  The elders and other officials of the Hardin Congregation for all years material to this case could only be removed against their will by the Service Department acting through WTNY.  *See* Ex. AA, Lovett Dep., 85:15–87:5; *see also* Ex. HH, Hardin Congregation Appointments.

**WTNY Response: Disputed.** Plaintiffs' use of the term "only...against their will" is vague and ambiguous. Plaintiffs also exclude reference to the Bible as being the determining factor in whether an elder can serve as such. Local congregation elders are expected to the meet the Scriptural qualifications as set out in the Bible and Christian publications. Failure to do so could result in their removal. ("So if an elder or a ministerial servant failed to meet the scriptural qualifications as outlined in the Bible and in Christian publications, including the explanations of those qualifications, then the potential is there for his being removed.") Exh. G, WTNY 30(b)(6) Jefferson Depo., 88:25–89:7. The Governing Body or those authorized by the Governing Body conveyed appointments through WTNY, in the United States. Local elders removed elders and ministerial servants when necessary and notified WTNY afterward. Elders may be removed without any input from the Service Department and/or WTNY. Exh. H, WTPA039321-039322; Exh. G, WTNY 30(b)(6) Jefferson Depo. 47:11-55:20; 172:19-173:25.

> g. The Hardin Congregation follows the direction from the top of the Organization's hierarchy, whether communicated by a Circuit Overseer, the Service Department, the "branch", WTNY or otherwise. Ex. MM, Report on CO's Visit with Hardin Congregation ("At the next elders meeting, which should be held soon, the brothers need to follow thru on the direction of the Society in their letter to this body (SCL:SSN

October 16, 1992). "Discussed with the elders what steps to take to follow thru on a pending judicial matter involving a young sister in the congregation. They will be corresponding with the Society in the near future to obtain further direction in this matter."); Ex. NN, Ltr. from Hardin Congregation to WTNY ("There is only so much we can do without two witnesses to a matter and while trying to maintain confidentiality."); Ex. OO, Society's Copy of Ltr. from Hardin Congregation to Pacific Wash. Congregation ("In harmony with the Societies letter last March we need to inform you that Gunnar is a child molester."); Ex. PP, Ltr. from Hardin Congregation to WTNY ("The next day I phoned the Service Department and asked if it was me who had the wrong understanding. I had heard several brothers comment that the Society was now leaning toward the idea that no repressed memories are valid. The brother said that the 11-1-95 Wt was still the current viewpoint and noted that they are not to be considered as Judicial matters. I agree. He suggested I put my question in writing and I did."); Ex. QQ, Ltr. from Hardin Congregation to CCJW ("We recently received the enclosed letter from the Body of Elders in Forsyth, Montana Congregation concerning Brother Martin Svenson. We have several questions about this matter and would like some Direction so

that we might act in a way that will demonstrate our loyalty to Jehovah's arrangement of things. We last wrote them a response via your direction through our circuit overseer[.]"); Ex. RR, Ltr. from Hardin Congregation ("Her mother tells me that Brother Polocowksi, the Circuit Overseer, recommended she get professional help. It is unclear if this professional help influenced her accusations or not." "Our Circuit Overseer instructed us to open the envelope in the file regarding the case."); Ex. SS, Ltr. from Bruce ("In my notes when Bro. Milneck was serving Ronda Bell was still making charges against Gunnar feeling nothing had been dealt with.  Bro Milneck said to inform her that it had been dealt with and she would have to be satisfied."); Ex. TT, Ltr. from Hardin Congregation to CCJW ("When we learned of this several months later we called Brother Hall our CO and told him what happened. He called the Service Desk and then called us back. He told us that Brother Svensen would be a 'limited' MS and would not be used for public talks."); Ex. UU, Ltr. from Hardin CO to CCJW ("Apparently, the body of elders recently sent two letters to the branch in response to a letter from Brother Aafedt dated December 3, 2010, not the letter dated December 31, 2010. When I showed them the December 31, 2010 letter, they said that was the first time that they had seen it. I

encouraged them to examine that letter closely and then respond to the branch promptly, as requested."); Ex. VV, Ltr. from Hardin Congregation to CCJW ("Brother Rowland did meet with the Hardin and Forsyth elders about these matters in the early 1990's and Circuit Overseer Melneck presided over the meeting. It was a stormy meeting. Brother Melneck was a difficult brother and did side with Brother Svensen on many issues, all of which turned out to be wrong."); Ex. WW, Ltr. from Hardin Congregation to Deer Lodge Congregation ("our Circuit Overseer has instructed us to write you."); Ex. XX, Ltr. from Hardin Congregation to Service Department ("The Hardin body of elder's desires to call the Service desk very soon. We are requesting direction on how to proceed with a current situation . . . "); Ex. YY, Ltr. from Hardin Congregation to Branch Service Desk ("We await any direction you brothers have for us."); *see also* Ex. II, Meyers Dep., 45:3–47:17, 88:23-89:8, 93:8-20; *see also* Ex. KK, Hiebert Dep., 20:23 – 21:18, 22:11-24:25.

1. **WTNY Response: Disputed.** Plaintiffs' mischaracterize the faith of Jehovah's Witnesses as hierarchical.  WTNY is unable to opine on the mindset of non-party, Hardin Congregation. *See* Exh. C, WTPA Rog RESP. No. 5. ; Exh. G, WTNY 30(b)(6) Jefferson Depo  33:18-34:21; Exh. B, WTPA016732,

23

WTPA016860, WTPA016884, WTPA016901, WTPA016902, WTPA016916, WTPA016937, WTPA016964; Exh. A, WTPA003135-03136

h.  The elders of the Hardin Congregation in the mid-seventies attended Kingdom Ministry School.  Ex. DD, James Rowland Dep., 66:16–67:7, 69:14–21.

**WTNY Response: Undisputed.**

**ADDITIONAL FACTS RELIED ON BY DEFENDANT WTNY**

2.  **Local Congregation Elders are not Agents of or Controlled by WTNY.** Ex. G WTNY 30(b)(6) Jefferson Depo at 34-37; Ex. J, WTNY RFA RESP. No. 12, Exh. B WTPA016732, WTPA016860, WTPA016884, WTPA016901, WTPA016902, WTPA016916, WTPA016937, WTPA016964; Exh. A, WTPA003135-03136; Exh. K, 1972 *Organization* publication.

3.  **Jehovah's Witnesses are Not a Hierarchical Religion and They View Their Leader as Jesus Christ, Not the Governing Body.** Ex. G WTNY 30(b)(6) Jefferson Depo at 34-37; *See* Exh. C WTPA Rog RESP. No. 5.; Exh. B, WTPA016732, WTPA016860, WTPA016884, WTPA016901, WTPA016902, WTPA016916, WTPA016937, WTPA016964; Exh. A, WTPA003135-03136

4.  **During All Times Relevant to this Case, WTNY was Controlled by Its Board of Directors, not The Governing Body.** *See* Exh. D, WTNY RFA RESP. No. 1

DATED this 9th day of May, 2024.

By:    /s/ Jon A. Wilson
       Jon A. Wilson / Brett C. Jensen /
       Michael P. Sarabia
       BROWN LAW FIRM, P.C.
       *Attorneys for Defendants Watchtower*
       *Bible and Tract Society of New York,*
       *Inc.*

By:    /s/ Joel M. Taylor
       Joel. M. Taylor (appearing *pro hac vice*)
       MILLER MCNAMARA & TAYLOR LLP
       *Attorneys for Defendants Watchtower*
       *Bible and Tract Society of New York,*
       *Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on May 9th, 2024, a copy of the foregoing was served on

the following person(s):

1.      U.S. District Court, Billings Division

2.      Robert L. Stepans/Ryan R. Shaffer/James C. Murnion
          MEYER, SHAFFER & STEPANS, PLLP
          430 Ryman Street
          Missoula, MT 59802

3.      Matthew L. Merrill (appearing *pro hac vice*)
          MERRILL LAW, LLC
          1401 Delgany Street, #404
          Denver, CO 80202

4.      Gerry P. Fagan/Christopher T. Sweeney/Jordan W. FitzGerald
          MOULTON BELLINGHAM PC
          P.O. Box 2559
          Billings, MT 59103-2559

5.      Bruce G. Mapley Sr.
          3905 Caylan Cove
          Birmingham, AL 35215

by the following means:

| | | | |
|---|---|---|---|
| _1-4_ | CM/ECF | _____ | Fax |
| _1_ | Hand Delivery | _____ | E-Mail |
| _5_ | U.S. Mail | _____ | Overnight Delivery Services |

By:  _/s/ Jon A. Wilson_
        Jon A. Wilson / Brett C. Jensen /
        Michael P. Sarabia
        BROWN LAW FIRM, P.C.
        *Attorneys for Defendant Watchtower*
        *Bible and Tract Society of New York,*
        *Inc.*