*Exhibit B*

James P. Molloy
**GALLIK, BREMER &MOLLOY, P.C.**
777 E. Main Street, Suite 203
PO Box 70
Bozeman, MT 59771-0070
Ph: (406) 404-1728
Fax: (406) 404-1730
jim@galliklawfirm.com

D. Neil Smith - *(Pro Hac Vice)*
Ross Leonoudakis - *(Pro Hac Vice)*
**NIX, PATTERSON &ROACH, LLP**
1845 Woodall Rodgers Fwy., Suite 1050
Dallas, Texas 75201
Ph: (972) 831-1188
Fax: (972) 444-0716
dneilsmith@me.com
RossL@nixlaw.com
*Attorneys for Plaintiffs*

FILED July 23, 2018

Candace Fisher
SANDERS COUNTY CLERK OF DISTRICT COURT
BY_____ DEPUTY

## MONTANA TWENTIETH JUDICIAL DISTRICT COURT
## SANDERS COUNTY

| | | |
|---|---|---|
| ALEXIS NUNEZ and HOLLY McGOWAN,<br><br>Plaintiffs,<br><br>vs.<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.; WATCHTOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, INC.; CHRISTIAN CONGREGATION OF JEHOVAH'S WITNESSES, and THOMPSON FALLS CONGREGATION OF JEHOVAH'S WITNESSES,<br><br>Defendants/Third-Party Plaintiffs,<br><br>vs.<br><br>MAXIMO NAVA REYES,<br><br>Third-Party Defendant. | § § § § § § § § § § § § § § § § § § § § § § § | Cause No. DV 16-84<br>Hon James A. Manley<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO THE CLAIMS BROUGHT BY ALEXIS NUNEZ, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF INDIVIDUAL CLAIMS** |

86

### A. Defendants Owed A Duty to Alexis Nunez Under the Montana Mandatory Reporter Statute

"Any person, official, or institution required by law to report known or suspected child abuse or neglect who fails to do so or who prevents another person from reasonably doing so is civilly liable for the damages proximately caused by such failure or prevention." Mont. Code Annot. §41-3-207(1).

Despite the clear Montana Law on this point, Defendants argue that they did not owe a duty to Alexis Nunez because 1) Max was not acting as their agent when he abused Alexis[1] and 2) they did not have a special relationship of custody or control with Alexis. However, Defendants fail to carry their burden on summary judgment because neither argument is determinative as to whether Defendants owed Alexis Nunez a duty.

Indeed, Defendants' motion entirely ignores the statutorily created duty imposed on Defendants by the State of Montana. Montana's Mandatory Reporter statute imposes a duty on clergy to report child abuse. Mont. Code. Annot. § 41-3-201(2)(h). Defendants do not dispute that the Jehovah's Witness elders are clergy. Exhibit A, Chappel Depo at 61:16-20; Exhibit B, Gary Breaux Affidavit, November 19, 2004 at ¶6. Thus, the remaining question is whether Alexis was a member of the class that the statute was intended to protect. *Fisher v. Swift Transp. Co.*, 2008 MT 105, ¶ 22, 342 Mont. 335, 341, 181 P.3d 601, 607 ("Where a duty is established by statute, we look to the class of people the statute intended to protect to determine whether the plaintiff is a member of that class. If so, he is a foreseeable plaintiff.") (citations omitted). The statute at issue in the instant case was enacted to protect children from abuse. Here, Alexis Nunez was a minor

---

[1] Plaintiffs are no longer pursuing a theory of vicarious liability against the Defendants for the intentional acts of abuse perpetrated by Max Reyes. Plaintiffs do still contend that Defendants are vicariously liable for the acts of their Elders. Further, Plaintiffs do not concede that Max Reyes was not ever acting as an agent of Defendants.

child that participated in the Thompson Falls congregation for 5 years.[2] Thompson Falls is the local congregation where elders received written, confirmed, and confessed notice that Max Reyes was abusing his family members. Exhibit D, Notice of Disfellowship. Defendants knew that Alexis was a family member and knew that she participated in Thompson Falls congregation with Joni and Max Reyes *after* Defendants had knowledge that Max Reyes was a child molester. *Supra*, n. 2. Thus, Alexis Nunez, a minor child, was a member of the protected class.

Further, because Nunez is a member of the protected class, she in fact is considered to be in a special relationship with Defendants. *See Massee v. Thompson*, 2004 MT 121, ¶ 42, 321 Mont. 210, 225, 90 P.3d 394, 403 (citing *Nelson v. Driscoll*, 1999 MT 193, ¶ 22, 295 Mont. 363, 371, 983 P.2d 972, 978 ("a special relationship gives rise to a special duty, and can be established . . . by a statute intended to protect a specific class of persons of which the plaintiff is a member from a particular type of harm . . .")) Thus, Defendants' motion for summary judgment that they did not owe a duty to Alexis Nunez should be denied.

### B. Defendants Undertook A Duty to Protect Alexis Nunez From Further Abuse by Max Reyes

Defendants argument that they did not owe Nunez a specific legal duty to supervise Max in his home where the abuse occurred should be denied. *See* Defs. Mot. at 10. Even if it is true that the Religious Defendants did not initially owe Alexis Nunez a specific duty to supervise Max Reyes and monitor his conduct, Defendants assumed this duty when they created policies and procedures to take it upon themselves to investigate and handle cases of child abuse rather than

---

[2] "[Alexis] attended the Thompson Falls Congregation of Jehovah's Witnesses with her grandmother Joni Reyes between 2002 and 2007. Her attendance was weekly during the first year but monthly afterward. She engaged in field service with that congregation from age 6 to 10 . . . " Exhibit C, Defendants' Expert Report at 3.

3

report that abuse to authorities. *Nelson v. Driscoll,* 1999 MT 193, ¶ 36, 295 Mont. 363, 377, 983 P.2d 972, 981. ("Where a person undertakes to do an act or discharge a duty by which the conduct of another may be properly regulated and governed, he is bound to perform it in such a manner that those who are rightfully led to a course of conduct or action on the faith that the act or duty will be properly performed shall not suffer loss or injury by reason of negligent failure so to perform it.") Montana imposes a statutory duty on members of clergy to report child abuse to law enforcement. However, rather than reporting Max Reyes to law enforcement, Defendants—all of which are clergy—took it upon themselves to investigate and discipline Max Reyes for sexually abusing children. Defendants were well aware of the dangers Max Reyes presented to other children in the congregation. Indeed, Defendants even instructed elders how they were supervise Max Reyes and to limit his interaction with children. Exhibits E, F TF0000151-152; CCJW000147-148 (August 25, 2005 Letter from CCJW to Thompson Falls).

> Please be reminded of the following direction that appears in the **March 14, 1997** confidential letter to all bodies of elders regarding known child molesters: "Individuals who have manifested a weakness in this regard should be sensitive to their need not to be alone with children. They should refrain from holding children or displaying other forms of affection for them. It would be appropriate for elders to give kindly cautions to any who are doing things that may be a temptation or a cause for concern to others in the congregation." (1 Corinthians 10:12, 32) This would include not allowing children (other than his own) to spend the night in his home, not working in field service with a child, not cultivating friendships with children, and the like.
>
> Additionally, former child abusers should not work alone in the field ministry. They should always be accompanied by another adult publishers who is in good standing in the congregation. This also apples to working with their own minor children in the field ministry. If they choose to do so, there still should always be another adult present. This service to protect the minor who might answer the door, the former abuser and the reputation of the congregation.

*Id.* (emphasis added)

4

By taking these affirmative steps to investigate reports child abuse and monitor the abusers interactions with children—while at the same time preventing law enforcement from doing so— Defendants assumed a duty to protect children, including Alexis Nunez, from further harm by Max Reyes. Thus, because Defendants assumed a duty to protect children in the Thompson Falls congregation from abuse by Max Reyes, Defendants did owe Alexis Nunez a duty to protect her from further abuse by Max Reyes.

### C. Alexis Nunez Is the Type of Victim that Montana's Mandatory Reporter Seeks to Protect

Defendants claim that Alexis Nunez's claim for Negligence *per se* fails for two reasons. First Defendants claim the statute does not regulate corporate activities. Second, Defendants claim that because Alexis Nunez was not a resident of Montana in 1998, she was not the type of victim that the statute seeks to protect. Neither argument has merit and should be denied.

First, Defendants' argument that Montana's Mandatory Reporter statute does not regulate corporate activities was raised in Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment and Cross-Motion for Partial Summary Judgment (Exhibit G at 19-20) and Plaintiffs responded in Plaintiffs' Opposition to Defendants' Cross-Motion for Summary Judgment on Count II (Exhibit H at 11-14). For the reasons described therein, Defendants' arguments that Montana's Mandatory Reporter statute does not regulate corporate activities is misplaced.

Second, as to whether Alexis Nunez was the type of victim that the statute seeks to protect, there is nothing in the statute that limits the reporting requirement to children who were born in Montana. *See generally* MCA § 41-3-201. The statute imposes a duty to report child abuse regardless of where that child was born. Indeed, the statute is intended to protect *all* future victims of a known child sexual abuser. Jehovah's Witnesses recruit families with children all across the

country to join their organization. This statute is intended to protect those children that Defendants bring into their local congregations, especially where the elders know a child molester is a member. Plaintiffs allege that the Mandatory Reporter statute was triggered in 1998 and in 2004. Plaintiffs allege they were abused in Montana. Ex. C at 3-4; Ex. J, Alexis Nunez Depo. at 71-77; Ex. K, Holly McGowan Depo. at 13, 88, 112. Whether Defendants knew that Max Reyes had sexually abused children as of 1998 is a disputed fact in this case. It is undisputed however, that in 2004, Defendants knew that Max Reyes abused children in Montana while those children lived in the State of Montana. Ex. C, at 3-4; Ex. D; Ex. J, Alexis Nunez Depo 71-77; Ex. K, Holly McGowan Depo at 13, 88, 112. And it is undisputed that Alexis Nunez was abused both before and after 2004 by Max Reyes in the State of Montana, while she lived in the State of Montana. Ex. C at 3, 4; Ex. J, Alexis Nunez Depo 71-77. Alexis Nunez, a minor child that was in fact later abused by Max for years in the State of Montana, is certainly the type of victim that the statute seeks to protect. Thus, Defendants' motion for Summary Judgment should be denied.

### D. Respondeat Superior Theory of Liability Applies to This Case

As mentioned above, Plaintiffs do not assert that Max Reyes was acting in the course and scope of his agency with Defendants when he molested the victims. As such, Plaintiffs do not assert any vicariously liability based on such a theory for the intentional criminal acts of Max Reyes. *Supra*, n. 1. However, Plaintiffs do assert that Defendants are liable for the negligent acts of Jehovah's Witness elders acting within the scope of their agency. Indeed, Defendants have recently stipulated that the elders of the Service Department and Legal Department were acting on behalf of Defendants CCJW and Watchtower respectively.[3] Whether that is considered an

---

[3] On July 12, 2018, at the second deposition of Defendants' 30(b)6 witness Douglas Chappel, Defendants' counsel stipulated on the record that the Service Department was acting on behalf of CCJW and the Legal Department was acting on behalf of Watchtower.

independent claim for recovery or a theory of recovery can sometimes be a matter of semantics. Nevertheless, Defendants have not shown that Plaintiffs cannot pursue a claim or theory of *Respondeat Superior* against Defendants for the acts of the elders of any of the Defendants. Defendants do not, and now cannot, argue that any of the elders were acting outside the scope of their agency relationship with Defendants. Thus, Defendants fail to carry their burden to show that no genuine issue of material fact exists as to whether the Plaintiffs can pursue a claim or theory of *Respondeat Superior* against Defendants.

### E. Breach of Fiduciary Duty

Defendants claim that Plaintiff Alexis Nunez's claim for breach of fiduciary duty fails because the Defendants did not have a special relationship with Nunez. Defs. Mot. at 16. Defendants allege in conclusory fashion that no fiduciary duty can arise from religious affiliation. *Id.* at 18-19. However, the Montana Supreme Court has refused to draw such a clear line. *Davis v. Church of Jesus Christ of Latter Day Saints*, 258 Mont. 286, 296, 852 P.2d 640, 646 (1993). As Defendants point out, the questions of whether a special relationship giving rise to a fiduciary duty is a question of law, not fact, that may be resolved on summary judgment **when no genuine issues of material fact remain.**" *Gliko v. Permann*, 2006 MT 30, ¶ 24, 331 Mont. 112, 120, 130 P.3d 155, 16 (emphasis added). However, "the circumstances of the particular relationship are factual, and disputes over material facts will preclude summary judgment." *Id.*

Here, Defendants fail to show that no genuine issues of material fact remain as to the existence of a fiduciary duty to Alexis Nunez. The existence of a fiduciary duty depends upon satisfactory proof of a special relationship. *Davis,* 258 Mont. 286, 296, 852 P.2d 640, 646 (1993). Indeed, the "special relationship" that gives rise to the fiduciary duty in this case is statutorily created by Montana's Mandatory Reporter statute. *See Massee v. Thompson*, 2004 MT 121, ¶ 42,

321 Mont. 210, 225, 90 P.3d 394, 403 (citing *Nelson v. Driscoll*, 1999 MT 193, ¶ 22, 295 Mont. 363, 371, 983 P.2d 972, 978 ("a special relationship gives rise to a special duty, and can be established . . . by a statute intended to protect a specific class of persons of which the plaintiff is a member from a particular type of harm . . .")). Here, in 2004, when Defendants received reports of sexual abuse by Max Reyes, they knew that Alexis Nunez would stay Max and Joni Reyes's house and attend services at Thompson Falls Congregation. Because Defendants, as clergy, were mandatory reporters and because Alexis Nunez was a member of the protected class, Defendants had a special relationship with Alexis Nunez.

Further, even if the special relationship was not created by statute, the facts surrounding Alexis Nunez relationship with Defendants is, at a minimum, a disputed fact question. A fiduciary duty may exist where there is a relationship of "trust and confidence" between two parties. *Gliko v. Permann*, 2006 MT 30, ¶ 16, 331 Mont. 112, 116, 130 P.3d 155, 159 (quoting *Deist v. Wachholz* (1984), 208 Mont. 207, 216-17, 678 P.2d 188, 193.) Here, it is undisputed that Defendants consider their Elders to be in positions of trust. Exhibit I, July 20, 1998 - Confidential Letter to Bodies of Elders ("Those who are appointed to privileges of service, such as elders and ministerial servants, **are put in a position of trust**. One who is extended privileges in the congregation is judged by others as being worthy of trust.") (emphasis added). Further, it is undisputed that Defendants' elders consider their relationship with their members confidential as they have premised much of their defense in this case on the alleged confidentiality of that relationship. *See generally* Exhibit G. Thus, the evidence shows that Defendants consider their relationship with Jehovah's Witnesses to be a relationship of "trust and confidence." Defendants have not presented any evidence to show that their relationship with their members or "publishers" changes or is treated differently based on whether they are baptized or not. Unlike many other

8

religions, Defendants go door to door to actively recruit families and children into their congregations. Defendants' elders then teach those families and children that Elders are the spiritual shepherds that are to be trusted and confided in. Here, Alexis Nunez attended Thompson Falls Congregation from 2002-2007. Thus, the question of whether her relationship with the Thompson Falls Elders constituted a special relationship is, at a minimum, a disputed fact question that should be resolved by the jury.

## F. Defendants Have Not Shown that No Genuine Issue of Material Fact Exists as to Plaintiff Alexis Nunez's Claim for Punitive Damages

For the reasons described above, Defendants' motion for summary judgment as to Alexis Nunez's claims for compensatory damages should be denied.

Further, Defendants' bare assertion that their behavior does not warrant punitive damages does not prove that no genuine issue of material fact exists as to whether Defendants are guilty of malice. Liability for punitive damages must first be determined by the trier or fact, which in this case will be the jury. MCA 27-1-221(6). It is undisputed that: 1) Defendants knew that Max Reyes was a child molester, Ex. D (Notice of Disfellowship) 2) Defendants knew that child molesters are likely to repeat their abusive behavior. Exhibits E, F) ("experience has shown that such an adult may well molest other children.") 3) Defendants knew that Max Reyes had children and grandchildren that were active in the Thompson Falls congregation. *Supra* n. 2.  4) Defendants never reported Max Reyes to authorities; and 5) Max Reyes continued to abuse children after Defendants had knowledge that he was a child molester. Ex. D, Notice of Disfellowship; Exhibit C at 4, ("Alexis described abuse by her step-grandfather between the years of 2002 and 2007 or 2008.") Thus, the undisputed evidence is sufficient to raise a question of fact for the jury regarding whether punitive damages should be awarded.

9

DATED: July 19, 2018

Attorney for Plaintiffs:

By: _____
Ross Leonoudakis

**NIX, PATTERSON &ROACH, LLP**
1845 Woodall Rodgers Fwy., Suite 1050
Dallas, Texas 75201
Ph: (972) 831-1188
Fax: (972) 444-0716
dneilsmith@me.com
RossL@nixlaw.com
*Attorneys for Plaintiff*

**GALLIK, BREMER & MOLLOY, P.C.**
777 E. Main St., Suite 203
Bozeman, MT 59771-0070
Telephone: (406) 404-1728
Facsimile: (406) 404-1730
jim@galliklawfirm.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been served upon all attorneys of record via Email on this the 19th day of July, 2018.

Kathleen L. DeSoto
Tessa A. Keller
Garlington, Lohn & Robinson, PLLP
PO Box 7909
Missoula MT  59807-7909
523-2500
kldesoto@garlington.com
takeller@garlington.com

Joel M. Taylor
Associate General Counsel
Watchtower Bible and Tract Society of New York, Inc.
100 Watchtower Derive
Patterson NY 12563
845-306-1000
jmtaylor@jw.org

Matthew A. McKeon
McKeon Law Firm, PLLC
257 W. Front St, Suite A
Missoula MT  59802
matthew@mckeaonlawoffice.com

Maximo Reyes                                                First class mail postage prepaid
PO Box 566
Plains MT  59859-0566


_____
Ross Leonoudakis

11