*Exhibit J*

# WATCHTOWER
### BIBLE AND TRACT SOCIETY OF NEW YORK, INC.

CABLE WATCHTOWER

25 COLUMBIA HEIGHTS, BROOKLYN, NEW YORK 11201, U.S.A.   PHONE (718) 625-3600

July 1, 1989

TO ALL BODIES OF ELDERS IN THE UNITED STATES

CONFIDENTIAL

Dear Brothers:

We are writing to help all of you as individual elders be aware of a growing concern regarding the handling of your duties that may involve legal issues or questions. **Due to its importance, the presiding overseer should arrange for a special meeting of the body of elders to read and consider this letter carefully.**

In spreading the Kingdom message, it is appropriate that we be bold and outspoken. Jesus commanded that "what you hear whispered, preach from the housetops." (Matthew 10:27) Even when worldly authorities demand that we keep silent, we reply as did the apostles: "We cannot stop speaking about the things we have seen and heard." (Acts 4:20) The Christian congregation will continue to declare the Kingdom message boldly until Jehovah says the work is done.

Elders share the obligation to shepherd the flock. However, they must **be careful not to divulge information about personal matters to unauthorized persons.** There is "a time to keep quiet," when "your words should prove to be few." (Ecclesiastes 3:7; 5:2) Proverbs 10:19 warns: "In the abundance of words there does not fail to be transgression, but the one keeping his lips in check is acting discreetly." Problems are created when elders unwisely reveal matters that should be kept confidential. Elders must give special heed to the counsel: "Do not reveal the confidential talk of another." (Proverbs 25:9) Often the peace, unity, and spiritual well-being of the congregation are at stake. Improper use of the tongue by an elder can result in serious legal problems for the individual, the congregation, and even the Society.

While we as Christians are ready to forgive others who may wrong us, those in the world are not so inclined. Worldly persons are quick to resort to lawsuits if they feel their "rights" have been violated. Some who oppose the Kingdom preaching work readily take advantage of any legal provisions to interfere with it or impede its progress. Thus, elders must especially guard the use of the tongue. Jesus faced opposers who tried to "catch him in speech, so as to turn him over to the government." (Luke 20:20) He instructed us to be "cautious as serpents and yet innocent as doves" in such situations. (Matthew 10:16) Where such a threat exists, our position as elders should be in line with David's words: "I will set a muzzle as a guard to my own mouth, as long as anyone wicked is in front of me."—Psalm 39:1.

CAEKAERT/MAPLEY 002782

TO ALL BODIES OF ELDERS
July 1, 1989
Page 2

In recent years, this matter has come to be a cause for increasing concern. The spirit of the world has sensitized people regarding their legal "rights" and the legal means by which they can exact punishment if such "rights" are violated. Hence, a growing number of vindictive or disgruntled ones, as well as opposers, have initiated lawsuits to inflict financial penalties on the individual, the congregation, or the Society. **Many of these lawsuits are the result of the misuse of the tongue.** As elders, remember that ill-advised statements or actions on your part can sometimes be interpreted legally as violating others' "rights."

**The need for elders to maintain strict confidentiality has been repeatedly stressed.** Please see The Watchtower of April 1, 1971, pages 222-4, and September 1, 1987, pages 12-15. The September 1977 Our Kingdom Service, page 6, paragraph 36, and the ks77 text-book, page 65, also provide helpful direction and counsel. That material strongly emphasized the elders' responsibility to avoid revealing confidential information to those not entitled to it.

The legal consequences of a breach of confidentiality by the elders can be substantial. If the elders fail to follow the Society's direction carefully in handling confidential matters, such mistakes could result in successful litigation by those offended. Substantial monetary damages could be assessed against the elders or congregation. In some cases where the authorities are involved, certain complications could lead to a fine or imprisonment. These possibilities underscore **the need for elders to be discerning and to follow carefully directions provided by the Society.**

## I. WHAT TO DO IN SPECIFIC CASES

### A. Judicial Committee Matters

Judicial committees must follow carefully the Society's instructions in carrying out their duties. (Note ks77, pages 66-70; ks81, pages 160-70.) Anything submitted in writing to the committee by the alleged wrongdoer or by witnesses should be kept in strict confidence. If it is necessary to continue at a later time a committee hearing, the members of the committee should submit to the chairman any personal notes they have taken. The chairman will keep these notes in a secure place to prevent breaches of confidentiality. The notes may be returned to the individual elders when the hearing resumes. Upon conclusion of the case, the chairman should place only necessary notes and documents, a summary of the case, and the S-77 forms in a sealed envelope for the congregation file. Nothing should be preserved outside of this sealed envelope (including unnecessary personal notes) by any elder on the committee. Obviously, no committee will ever allow judicial proceedings to be tape recorded or allow witnesses testifying before the committee to take notes.

### B. Child Abuse

Many states have child abuse reporting laws. When elders receive reports of physical or sexual abuse of a child, they should contact the Society's Legal Department immediately. Victims of such abuse need to be protected from further danger.—See "If the Worst Should Happen," Awake! January 22, 1985, page 8.

### C. Search Warrants and Subpoenas

1. A search warrant is a court order authorizing the police to search premises to locate evidence that may be used in a criminal prosecution. No elder should ever consent to the search of a Kingdom Hall or any other place where confidential records are stored. However, armed with a search warrant the police do not need consent and may even use force to accomplish their task. Likely before obtaining a search warrant, the police or other governmental officials will make inquiries regarding confidential records, make request to obtain the records, or indicate that they will seek a search warrant if the elder(s) involved does not cooperate. In any such situation, the Society's Legal Department should be called immediately.

At any time an elder is confronted with a search warrant (whether given advance notice or not), the elder should first ask to read the warrant. After reading it he should ask if he can call for legal guidance and then call the Society's Legal Department. If for some reason the Legal Department cannot be contacted, the elders involved should make every effort to obtain the assistance of a local attorney for the purpose of protecting the confidentiality of the records. It may be impossible to stop determined officers from conducting the search authorized by the warrant. Conscientious elders will want to do all they reasonably and peaceably can to preserve the confidentiality of the congregation in harmony with the principle set out in Acts 5:29.

2. Subpoenas are demands for records or for the appearance of an individual at a trial or deposition to give testimony. Subpoenas may be issued by a court or in some cases by a governmental agency or an attorney. If an elder receives a subpoena, he should contact the Society's Legal Department immediately. Never turn over records, notes, documents, or reveal any confidential matter sought by subpoena without receiving direction from the Legal Department.

### D. Crimes and Criminal Investigations

In some cases the elders will form judicial committees to handle alleged wrongdoing that also could constitute a violation of Caesar's criminal laws (e.g., theft, assault, etc.). Generally, a secular investigation into a matter that is a concern to the congregation should not delay conducting a judicial hearing. To avoid entanglement with the secular authorities who may be investigating the same matter, the strictest confidentiality (even of the fact that there is a committee) must be maintained.

CAEKAERT/MAPLEY 002784

If the alleged wrongdoer confesses to the sin (crime), no one else should be present besides the members of the committee. When evidence supports the accusation but genuine repentance is not displayed resulting in a decision to disfellowship, this should be handled in the normal course regarding advice of appeal rights and announcements to the congregation. In cases of serious criminal wrongdoing (e.g., murder, rape, etc.), or where the criminal conduct is widely known in the community, the body of elders should contact the Society before proceeding with the judicial committee process.

### E. When Servants and Publishers Move

A considerable number of publishers, including **elders and ministerial servants move from one congregation to another.** Sometimes the circumstances surrounding their departure are unsettled. Some appointed brothers may be experiencing problems that have brought their qualifications into question. It is not uncommon for a body of elders to hold back in giving counsel, allowing a brother to move without discussing his problem. Thereafter, they decline to recommend his reappointment in his new congregation. Often such a brother protests, requiring extensive correspondence between the bodies of elders. Much personal, and sometimes embarrassing, information must then be passed on. Such mishandling of things greatly increases the potential for serious repercussions. Problems can be avoided by the body of elders assuming its responsibility to inform a brother that he will not be favorably recommended, fully explaining the reasons why. **Every effort should be made to resolve any difference before he leaves, eliminating any need for controversy involving his new congregation.** The body should assign two elders to meet with him before he moves, letting him know whether they are recommending him to the new congregation.

This would likewise apply to publishers who move at a time when their personal conduct requires investigation by the elders. If **serious accusations of wrongdoing have been made against an individual and he moves to another congregation before matters are finalized, usually it is best for the elders in the original congregation to follow through in handling matters, if possible and if distance permits.** They are acquainted with the individual and the circumstances surrounding the alleged wrongdoing; this ordinarily puts them in the best position to get the facts and to handle the case. Handling matters in this way will eliminate the need to reveal confidential information unnecessarily about the private lives of individuals.

### F. When Lawsuits Are Threatened

If the congregation or the elders (in their capacity as elders) are threatened with a lawsuit, the Society's Legal Department should be contacted immediately. No statements should be made by any member of the body of elders about the merits or validity of an actual or threatened lawsuit without authorization from the Society.

TO ALL BODIES OF ELDERS
July 1, 1989
Page 5

### G. Child Custody

Elders may learn that a publisher is facing a dispute over child custody in a divorce proceeding. If the parental rights of such is challenged on the basis of our Christian beliefs, or on the assertion that our beliefs are harmful to a child's best interests, the elders should immediately write to the Society's Legal Department. In a rare emergency, a telephone call may be necessary. The Legal Department will assess the facts and determine the degree of its involvement, if any. Elders have no authority to make any promises about the Society's paying legal fees or handling specific cases. There is no need to contact the Society if there is no indication that the beliefs and practices of Jehovah's Witnesses will be attacked in a child custody dispute.

When you write to the Society's Legal Department about a specific case, please provide the following information:

1. The names of the parents and their attorneys.
2. The number of children involved and their ages.
3. A brief description of the facts, including the presence of any apostates.
4. An assessment of the Christian parent's spiritual condition—Is he or she new in the truth? Active? Inactive? Balanced?
5. The status of the legal proceedings—Has the matter gone to trial? Has the trial date been set? If so, when?

## II. POINTS TO REMEMBER

### A. Appreciate the Importance of Maintaining Confidentiality

Elders must exercise extraordinary caution when it comes to handling confidential information about the private lives of others. Do not mistakenly minimize the gravity of a breach of confidentiality. Unauthorized disclosure of confidential information can result in costly lawsuits. Even if a lawsuit turns out favorably, valuable time and energy that could have been devoted to Kingdom interests will be lost.

### B. Do Not Make Statements to Secular Authorities Until You Receive Legal Advice from the Society

You are not legally required to make immediate responses to secular authorities about matters that could involve the disclosure of confidential information. Voluntarily allowing the Kingdom Hall or confidential records to be searched, where no search warrant is produced, could infringe on the legal rights of the congregation or of others. No statements should be made until you have an understanding of your legal position from the Society's Legal Department.

CAEKAERT/MAPLEY 002786

TO ALL BODIES OF ELDERS
July 1, 1989
Page 6

### C. Be Extremely Careful with Written Material

All material related to judicial matters should be kept in a safe place, accessible only to elders. **Final reports on the handling of judicial matters should be placed in a sealed envelope in the congregation file.** A judicial committee should avoid sending to an individual any kind of correspondence that accuses him of specific wrongdoing. (Note ks77, pages 68-9.) **Nothing should be put in writing to any disfellowshipped person to advise him of his status or the reasons for it without specific direction from the Society.** The rules and procedures of Jehovah's Witnesses do not require such written disclosures. Anything in writing submitted to a judicial committee should be kept in strict confidence. If a judicial committee disfellowships an individual, he should be informed **orally** of the action taken and of the right to appeal. If the wrongdoer refuses to attend the hearing, two members of the judicial committee should attempt to contact the individual at his home and inform him **orally** of the decision. If this is not possible, the two elders may be able to inform him by telephone.

### D. Guard the Use of Your Tongue

Think before you speak. Do not discuss private and judicial matters with members of your family, including your wives, or with other members of the congregation. Be extremely careful not to inadvertantly disclose private information when others are present, such as when speaking on the telephone with others listening in or nearby. (Note ks77, page 65.) At times, complicated judicial cases may necessitate consultation with an experienced, mature elder in another congregation or with the circuit overseer. Unless the circuit overseer is the elder consulted, only the pertinent details should be discussed and names should not be used.

Elders bear a heavy responsibility in ministering to the needs of the Christian congregation, and observing confidentiality as they do so. (1 Corinthians 16:13) We trust that the information in this letter will help you carry this burden. Please be assured of our love and prayers, and may Jehovah continue to bless you as you shepherd his flock.—1 Peter 5:1-3.

Your brothers,

Watchtower B. & T. Society
OF NEW YORK, INC.

P.S. Due to the importance of the information that is presented herein it is suggested that the body of elders jointly read and consider this letter as soon as possible after its receipt in the congregation. Please do not make any copies of this letter, nor should it be read by others. It should be kept in the congregation's confidential files for any future reference that may be required by the body of elders.