*Exhibit M*

CAUSE NO. DC-14-12402

| | | |
|---|---|---|
| JOHN DOE I, ET AL | : | DISTRICT COURT |
| | : | 14th DISTRICT COURT |
| v. | : | DALLAS COUNTY, TX |
| WATCHTOWER, et al. | : | MARCH 6, 2015 |

## AFFIDAVIT OF A. HERNAN STEELE

I, A. HERNAN STEELE, of my own personal knowledge attest as follows:

I am over 21 years of age, of sound mind, and competent to make this Affidavit.  I have personal knowledge of the matters contained herein and they are all true and correct.

1.      I reside in Patterson, New York, have been one of Jehovah's Witnesses since January 5, 1980, and have served as an elder in the faith of Jehovah's Witnesses since October 23, 1990.

2.      Since September 25, 1993, I have served in the Service Department at the U.S. Branch Office of Jehovah's Witnesses which has been located in Patterson, New York since June of 1995 (hereinafter "Service Department").

3.      I, along with other appointed elders in the Service Department provide spiritual advice, assistance, and guidance to elders in congregations of Jehovah's Witnesses throughout the United States who may call or write to the Service Department for spiritual advice and counsel in accordance with the Holy Scriptures and the religious beliefs and practices of Jehovah's Witnesses.

4.      For all times relevant herein, the elders in the Service Department also monitored the functioning and organization of congregations of Jehovah's Witnesses, including reviewing the qualifications for the appointment of elders to congregations of Jehovah's Witnesses in the

United States.  Up until mid-March 2001 the elders in the Service Department communicated through Watchtower.

5.      I am thoroughly familiar with the religious beliefs and practices of Jehovah's Witnesses, and with Scriptural precedents for those religious beliefs and practices.  I also have personal knowledge of the documents at issue in this Motion.  They are confidential spiritual documents that are sent between elders in the Service Department and the bodies of elders from congregations for the purpose of seeking and giving spiritual advice and/or guidance in accordance with the Holy Scriptures.  They are sent with the expectation that the content of the letters to and from congregation elders and reports from circuit overseers (traveling elders who visit congregations periodically) would remain private and confidential pursuant to the Holy Scriptures and the religious beliefs and practices of Jehovah's Witnesses.

6.      In accord with the beliefs and practices of Jehovah's Witnesses, elders serving in the Service Department are ordained ministers and appointed congregation elders.

7.      Congregations of Jehovah's Witnesses are provided spiritual oversight by a small group of lay individuals who serve as appointed congregation elders (hereinafter "elders"). (Philippians 1:1; 1Timothy 4:14; Titus 1:5).  At all times relevant herein, before elders are appointed, they must meet the Scriptural qualifications outlined in the Bible and be recommended and approved by current elders, a circuit overseer, and elders in the Service Department at the U.S. Branch Office of Jehovah's Witnesses in New York.  (1Timothy 3:1-7; Titus 1:5-9).  Once an individual is approved and appointed to serve as a congregation elder, a letter from the Branch Office is read to the congregation and the individual is officially vested with authority as an ordained minister and appointed elder.  ("Questions from Readers—How Are Elders and Ministerial Servants Appointed in Each Congregation?" *The Watchtower* of

November 15, 2014, pp. 28-29; "Overseers and Ministerial Servants Theocratically Appointed," *The Watchtower* of January 15, 2001, p. 12). All elders of the Central English Dallas, Plano and Greenville congregations are and were at all times relevant to this case ordained ministers and spiritual shepherds of the congregation. Similarly, elders in the Service Department are also ordained ministers who provide spiritual assistance, guidance, and answer questions raised by elders in congregations of Jehovah's Witnesses who may call or write to the Service Department for help or encouragement.

      8.     The congregation elders are responsible for the spiritual teaching of the members of the congregation as well as for pastoral care. (1 Peter 5:1-3; "Shepherds, Imitate the Greatest Shepherds," *The Watchtower* of November 15, 2013, p. 26; "'Shepherd the Flock of God in Your Care,'" *The Watchtower* of June 15, 2011, p. 20). Elders frequently provide spiritual counsel and advice to members of the congregation concerning confidential personal and spiritual matters. For example, congregation elders are authorized to hear confessions and other private, confidential communications and to provide spiritual guidance and counsel by virtue of the Holy Scriptures and the religious beliefs and practices of Jehovah's Witnesses. (Proverbs 28:13; Galatians 6:1; James 5:13-20). Congregation elders keep confessions and other confidential spiritual communications confidential. (Proverbs 10:19; 11:13; 25:9; see, e.g., "'An Overseer Must Be ... Self-Controlled,'" *The Watchtower* of November 15, 1991, pp. 19, 23; "Overseers— Be Fine Examples to 'the Flock,'" *The Watchtower* of September 1, 1980, pp. 21, 24; "Where Can You Turn with Confidence?" *The Watchtower* of December 15, 1975, pp. 764, 766).

      9.     Congregation elders regularly communicate with each other and occasionally communicate with elders in the Service Department matters of doctrine, spiritual counsel, pastoral care, and organizational procedure. (Proverbs 11:14; 15:22; "Congregation Elders—

'Preside in a Fine Way'!" *The Watchtower* of March 1, 1977, pp. 153, 154).  All such spiritual communications are strictly confidential in accordance with the Scripturally-based beliefs and practices of Jehovah's Witnesses.

10.    Congregation elders also investigate reports and confessions of wrongdoing (sin) by congregation members.  In cases of serious wrongdoing, the body of elders will appoint a judicial committee, usually consisting of three elders, to provide pastoral counsel and to administer any needed spiritual discipline to the erring member.    ("Elders, Judge with Righteousness," *The Watchtower* of July 1, 1992, p. 14).  The purpose of such investigations and judicial action is to help those who have erred regain their spiritual health and repair their relationship with God and to ensure that the congregation remains spiritually and morally clean. The elders on a judicial committee will give the erring one spiritual counsel and will administer appropriate spiritual discipline based on Jehovah's Witnesses' understanding of the Bible. Jehovah's Witnesses believe that investigations by at least two elders and judicial committees of at least three elders provide better, more complete spiritual counsel and advice based on the greater experience and knowledge of multiple elders.  Pursuant to the beliefs and practices of Jehovah's Witnesses, all of these spiritually-based communications during investigations or judicial committee proceedings are considered private and are to be kept confidential by all present, including the accused congregant and elders.

11.    In cases of serious misconduct, elders on the judicial committee may privately or publicly reprove or disfellowship (expel) the erring one depending on the individual's repentance.  When a member is publicly reproved or disfellowshipped, an announcement is made to the congregation to the effect that "[name] has been reproved" or "[name] is no longer one of Jehovah's Witnesses."    When a congregation member is disfellowshipped, the judicial

committee elders notify elders in the Service Department of the disfellowshipping to ensure that their decision was supported by the Holy Scriptures and the religious beliefs and practices of Jehovah's Witnesses. The notice of disfellowshipping includes the name of the disfellowshipped person, the date the disfellowshipping was announced, and the Scriptural basis for disfellowshipping.

12.     The confidentiality of spiritual communication between congregation members and congregation elders is a fundamental religious belief and practice of Jehovah's Witnesses. Jehovah's Witnesses accept the Bible's admonition to confess one's sins to God and believe there is a great benefit in speaking to congregation elders confidentially about spiritual matters. (James 5:14, 15)   Accordingly, Jehovah's Witnesses encourage those who are distressed or spiritually weak to approach the congregation elders, confide in them, and receive spiritual assistance. Notes of judicial committees, including their application of the Scriptures to the facts and their evaluation of the erring one's repentance, are kept in a sealed envelope and under lock and key.   On the outside of the envelope the names of the three members of the judicial committee are written and in usual circumstances only those three elders are allowed access to the contents of the envelope.[1]

13.     Because open and free communication with congregation elders is essential to the spiritual welfare of congregation members, the importance of privacy and confidentiality is cannot be overstated. The confidentiality of spiritual communications has been discussed often in publications of Jehovah's Witnesses, such as those referred to in Paragraph 8 of this Affidavit. Congregants expect that spiritual communications with congregation elders will remain confidential.  Moreover, if an elder were to be compelled to disclose confidential information,

---

[1] In case an elder moves away, is no longer serving as an elder, or dies, another elder would be appointed to take that one's place on the judicial committee.

his credibility and effectiveness as an elder and the credibility and effectiveness of all elders would be compromised. Congregants would be hesitant to reveal their personal and spiritual problems to the elders if such private information could be disclosed in legal proceedings.

14.     On the basis of Scriptures such as those referred to in Paragraph 8 of this Declaration, Jehovah's Witnesses believe that the confidentiality of private spiritual communications with elders is not limited to confessions only. All private communications of a spiritual nature, including those that take place in the course of an investigation or a judicial committee proceeding are confidential. Additionally, based upon the Holy Scriptures and the religious beliefs and practices of Jehovah's Witnesses, such confidentiality extends to congregation files, notes, papers, reports, minutes or other documents prepared in conjunction with, or as a result of, private spiritual communications. Any such files, notes, papers, reports, minutes or other documents of this nature are kept in sealed envelopes under lock and key, making them accessible only to those local elders who served on the judicial committee (and to elders in the Service Department as needed). If the disclosure of such documents were to be compelled, the credibility and effectiveness of those entrusted with the spiritual welfare of the congregation would be compromised.

* * *

Executed this 6th day of March, 2015 at Patterson, New York.

_____
A. Hernan Steele

Subscribed and sworn to before me by A. Hernan Steele, known to me personally, this 6th day of March, 2015.

_____
Notary Public, State of New York

COREY R STEWART
NOTARY PUBLIC-STATE OF NEW YORK
No. 01ST6263503
Qualified in Putnam County
My Commission Expires June 11, 2016

6

Affidavit of A. Hernan Steele