*Exhibit P*

1  MONTANA TWENTIETH JUDICIAL DISTRICT COURT, SANDERS COUNTY

2  CAUSE NUMBER: DV-16-84

3  ALEX NUNEZ and HOLLY McGOWAN,    )
                                    )
4         Plaintiffs,               )
                                    )
5         vs.                       )     REPORTER'S TRANSCRIPT
                                    )        VOLUME I of III
6  WATCHTOWER BIBLE AND TRACT       )
   SOCIETY OF NEW YORK, INC.;       )
7  WATCHTOWER BIBLE AND TRACT       )
   SOCIETY OF PENNSYLVANIA, INC.; )
8  CHRISTIAN CONGREGATION OF        )
   JEHOVAH'S WITNESSES and          )
9  THOMPSON FALLS CONGREGATION OF )
   JEHOVAH'S WITNESSES,             )
10                                  )
          Defendants.               )
11 _____)
                                    )
12 WATCHTOWER BIBLE AND TRACT       )
   SOCIETY OF NEW YORK, INC,;       )
13 CHRISTIAN CONGREGATION OF        )
   JEHOVAH'S WITNESSES and          )
14 THOMPSON FALLS CONGREGATION      )
   OF JEHOVAH'S WITNESSES,          )
15                                  )
          Third-Party Plaintiffs, )
16                                  )
          vs.                       )
17                                  )
   MAXIMO NAVA REYES, MARCO NUNEZ,)
18 and IVY McGOWAN-CASTLEBERRY,     )
                                    )
19        Third-Party Defendants. )
   _____ )
20

21            Taken at the Sanders County Courthouse
                        1111 Main Street
22                  Thompson Falls, Montana
                  Monday, September 24, 2018
23                        9:30 a.m.

24

25            Honorable James A. Manley, presiding

MARSHALL & MARSHALL REPORTING SERVICE
POLSON, MONTANA   (406) 883-5237

CAEKAERT/MAPLEY 007837

1 testimony, right?  Is that correct?

2      A.  Yes.

3      Q.  Let's look at some of the policies that the

4 Jehovah's Witnesses have.  And I'll get my board up here.

5 First of all, I want to ask you about the two witness

6 policy.  Are you familiar with the two witness policy?

7      A.  Yes.

8      Q.  All right.  The two witness policy -- it's a

9 real thing, isn't it?

10      A.  As Jehovah's Witnesses we believe the Bible

11 principles and --

12      Q.  And we'll get into that, Mr. Chapel.  I don't

13 want to cut you off.  My question, just to the jury so

14 that they know, is the two-witness principle -- is it

15 something real?  Is it a real policy?

16      A.  There are two parts to this.  One is what we

17 heard earlier.  One is Biblical and the other has to do

18 with a crime.

19      Q.  Mr. Chapel --

20         MR. SMITH:  If I can, Judge, I'm just going

21 to --

22 BY MR. SMITH:

23      Q.  I want to go back to my question, which is

24 simply -- I'm not making this up, am I, the two witness

25 policy?  It's a real policy that the Jehovah's Witnesses

CAEKAERT/MAPLEY 008035

1  have?

2          A.  For our faith, yes, we have a two witness

3  principle.

4          Q.  And the two witness rule is used by the

5  Jehovah's Witnesses and they apply it to the reporting of

6  child abuse, don't they?

7          A.  No.  They're two separate things.  If it's

8  required --

9              MR. SMITH:  Would you get Page 71.

10  BY MR. SMITH:

11         Q.  I just want to get that correct.  You're

12  telling me that the two witness rule is not applied by

13  the Jehovah's Witnesses to the reporting of child abuse?

14         A.  That is correct.  We will report an accusation

15  of child abuse by one accuser when it's required by law.

16         Q.  Okay.  We'll come back to that.

17             MR. SMITH:  It's from his first deposition.

18  BY MR. SMITH:

19         Q.  Mr. Chapel, I want to show you again more of

20  your sworn testimony that's in here.

21             MR. SMITH:  I need the page behind it, too.

22  BY MR. SMITH:

23         Q.  Let me hand you Page 71 of the sworn testimony

24  that you gave under oath.  All right.  Do you see where I

25  asked you, "Has the two witness principle changed over

1  time as it applies to the reporting of child abuse?"  Do

2  you see where I asked that?

3         A.  No, I'm sorry, I don't see that on Page 71.

4         Q.  Look at Page 71.

5         A.  Uh-huh.

6         Q.  Line 25 begins with, "Has the two witness

7  principle" -- sir, Line 25.  I'm going to point to it.

8  Do you see where it says, "Has the two witness principle

9  changed over time?"  Do you see that?

10        A.  Yes.

11        Q.  It's on that page, isn't it?

12        A.  Yes, part of it.

13        Q.  You understand we're on Page 71 and you'll

14  need to flip to Page 72.

15        A.  Thank you.

16        Q.  Yes, sir.  Let me read my question.  I asked

17  you -- when you were under oath and I had a chance to

18  prepare this case for my clients to present to this jury

19  I asked, "Has the two witness principle changed over time

20  as it applies to the reporting of child abuse?"  Do you

21  see where I asked that?

22        A.  Yes.

23        Q.  Your answer was, "Like I mentioned, the need

24  for two or three witnesses goes back to Deuteronomy 17,

25  Verse 9 so that's quite a few thousand years."  And I

1  asked, "So it has not changed?"  And you answered, "Not

2  to my knowledge."

3       A.  The two witness principle has not changed.

4       Q.  It hasn't changed as it applies to the

5  reporting of child abuse.  Isn't that my question, sir?

6       A.  Yes.

7       Q.  And you answered like I just read, didn't you?

8       A.  Yes.

9       Q.  All right.  Let's talk about how your religion

10  uses that rule in instances of child abuse.

11            MR. SMITH:  We're going to need Page 7.

12  BY MR. SMITH:

13       Q.  All right.  Would you agree with me that if

14  just one child reports abuse the church will not take

15  judicial action.

16       A.  What do you mean by "judicial action"?

17       Q.  Sir, is judicial action a term that your

18  religious faith uses?

19       A.  If it has to do with the Bible.

20       Q.  Is it a term that your religious faith uses?

21       A.  When it has to do with our religion, yes, but

22  by "judicial" are you referring to the law -- crime or

23  the sin?

24       Q.  Well, let me be very simple.  If just one

25  child says, "I'm being sexually assaulted" and there is

CAEKAERT/MAPLEY 008038

1  only one witness, does your organization allow local

2  Elders to form a judicial committee?

3       A.  No.

4       Q.  And they cannot take judicial action, can

5  they?

6       A.  No.

7       Q.  And that is because of the two witness rule,

8  right?

9       A.  Because of the two witness principle.  You

10  need two witnesses to establish anything as fact.

11       Q.  Including child abuse?

12       A.  Any serious sin --

13       Q.  I understand.

14       A.  -- including child abuse.

15       Q.  Gotcha.  All right.  Let's talk about this

16  other policy about keeping things secret.  Do you know

17  what it means to keep something a secret?

18       A.  I do.

19       Q.  And would you agree with me that there are

20  policies that the Jehovah's Witnesses have that require

21  Elders to keep secrets?

22       A.  I do not agree with that.

23       Q.  All right.  Is it fair to say that Elders

24  within Jehovah's Witnesses have a confidentiality policy?

25       A.  Based on Proverbs -- a number of places in

CAEKAERT/MAPLEY 008039

1 the information confidential.  This is also from your

2 sworn testimony that the court reporter wrote down.  It's

3 Page 150.

4               MR. TAYLOR:  Your Honor, deposition one or

5 two?

6               MR. SMITH:  It's the second time he was

7 under oath, number two.

8 BY MR. SMITH:

9      Q.  Line 7.  Follow along while I read my question

10 and your answer that you gave before the jury came in

11 here.  I said, "Well, wait a second, Mr. Chapel.  I'm

12 asking you about instances where the legal department

13 says you don't have to report it.  In that instance do

14 you teach Elders that they must keep the information

15 confidential"?  Now my first question to you is, did I

16 read my question exactly as it was written down?

17      A.  Yes, you did.

18      Q.  And tell me if I read your answer 100 percent

19 correct.  Your answer was, "Yes."

20      A.  Yes.

21      Q.  That's not your answer today, is it?

22      A.  It is.

23      Q.  So today and now so this jury knows, Jehovah's

24 Witnesses teach Elders if the legal department says you

25 don't have to report, they're expected to keep the

1  information confidential?

2        A.  Yes.

3        Q.  Thank you, sir.  And that means that the

4  Elders are told not to call the police even -- this is

5  very important -- even when the child who's reporting it

6  says to the Elders, "Please help.  I'm not coming to you

7  in confidence"?

8              MR. TAYLOR:  Objection, your Honor.  It

9  assumes facts that are not in evidence.  That's not this

10 case.

11             THE COURT:  Overruled.

12 BY MR. SMITH:

13       Q.  Okay, let me get back and make sure this is

14 very clear because we are talking about what Jehovah's

15 Witnesses' Elders are taught, what the policies are.

16 They are taught that if the legal department says "you

17 don't have to report" -- do you follow me?

18       A.  Yes.

19       Q.  That the Elders are taught, "You must keep it

20 confidential."  Yes?

21       A.  Yes.

22       Q.  They must -- they're taught they must keep it

23 confidential.  Even if the child says, and I quote, "This

24 is not me asking for confidentiality," the Elders are

25 still instructed "You keep your mouth shut and you don't

CAEKAERT/MAPLEY 008048

1  report it."  That's true, isn't it?

2       A.  Yes.

3       Q.  They even go -- Jehovah's Witnesses even go a

4  step further and they tell these Elders, "If you tell

5  Child Protective Services after legal tells you 'We don't

6  think you have to report'" -- they tell the Elders

7  "You're breaking our confidentiality policy"?

8       A.  Yes.

9       Q.  And the Elders are taught it is a bad thing to

10 report a known child molester to the police if legal

11 tells you not to report it?

12      A.  No.  We're told -- the legal department tells

13 them what the law is.

14      Q.  Sir, I'm looking at your first sworn

15 testimony, Page 141, Line 20.  First of all my question,

16 "Is it a bad thing that he reported to law enforcement?"

17 Your answer is, "Well, it wasn't required and so he knows

18 what the Bible says about confidentiality in Proverbs and

19 so if he decides to go ahead and report it, then that's

20 between him and Jehovah.  He knows what Jehovah requires

21 of him as an Elder and so if he decides to do something

22 different, then he has to answer to Jehovah for that."

23 That was your testimony, wasn't it?

24      A.  Yes.

25      Q.  That's the testimony you swore to under oath

CAEKAERT/MAPLEY 008049