*Exhibit U*

```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MONTANA
                    BILLINGS DIVISION
_____

 TRACY CAEKAERT, and          Case No.
 CAMILLIA MAPLEY,             CV-20-52-BLG-SPW

        Plaintiffs,

    vs.

 WATCHTOWER BIBLE AND
 TRACT SOCIETY OF
 NEW YORK, INC., et al,

        Defendants,

 WATCHTOWER BIBLE AND         VIDEO-RECORDED
 TRACT SOCIETY OF             DEPOSITION UPON ORAL
 NEW YORK, INC., et al,       EXAMINATION OF DELBERT
                              HIEBERT
        Cross Claimants,

    vs.

 BRUCE MAPLEY, SR.,

        Cross Defendant.


 ARIANE ROWLAND, and
 JAMIE SCHULZE,

        Plaintiffs,           Cause No.
                              CV 20-59-BLG-SPW
    vs.

 WATCHTOWER BIBLE AND
 TRACT SOCIETY OF
 NEW YORK, INC., et al,

        Defendants.
_____
```

| | |
|---|---|
| 1 | Q.   Anything else? |
| 2 | A.   Of course the demeanor is gentle, kind, |
| 3 | loving.  You know, you're -- you're handling |
| 4 | children in that case, you know. |
| 5 | Q.   And any specific teaching or training on |
| 6 | interviewing children who are victims of child sex |
| 7 | abuse? |
| 8 | A.   There again, we will call the branch and |
| 9 | ask them, what do we do. |
| 10 | Q.   And the branch would tell you what to do. |
| 11 | A.   Yeah, they'll give us legal advice, you |
| 12 | know.  And, you know, handling a child who's been a |
| 13 | child molestation victim, of course we have to be |
| 14 | very gentle, and, you know, don't be hammering |
| 15 | them, you know, for -- or accusing them.  You know, |
| 16 | you never accuse someone who comes forward of |
| 17 | lying.  You assume the best, that they're coming |
| 18 | through with good motive, you know. |
| 19 | Q.   And how did you learn to do that, to take |
| 20 | that tack in those situations? |
| 21 | A.   Learn it.  It's part of being a good |
| 22 | Elder, you know.  You just know how to treat |
| 23 | people.  You treat people kindly and gently and |
| 24 | tactfully and to try and get the truth in the most |
| 25 | humane way you can, you know.  But you've got to |

48

Delbert Hiebert

```
 1   her husband had done.
 2           MR. MAPLEY:  Objection.
 3   BY MR. STEPANS:
 4      Q.  All right.  Please go ahead.
 5      A.  That's all I had to say.
 6      Q.  Okay.  When -- is it your understanding
 7   that -- strike that.
 8           We were talking earlier -- Del, I kind of
 9   wanted to circle back.  We were talking earlier
10   about when a report or an accusation, an allegation
11   of child abuse, and specifically child sex abuse,
12   comes to the attention of an Elder, you -- you
13   indicated the process that you go through.
14           And one thing you did not talk about in
15   there is whether or not there was any reporting or
16   consideration of reporting those events to law
17   enforcement.  Is that a part of the evaluation when
18   the Elders meet?
19      A.  We get our legal advice from the branch,
20   the legal desk there.  Whatever they would tell us
21   to do, that's what we would do.
22      Q.  Okay. So you wouldn't have -- you didn't
23   have any discretion in making a decision to discuss
24   calling law enforcement about these allegations?
25      A.  I don't know if I can answer that.  I
```

85

Delbert Hiebert

```
 1  would -- I would -- in my recollection, this stuff
 2  had already been reported to law enforcement.
 3       Q.   Understood.  And I want to sort of remove
 4  us from these things that are many years after the
 5  fact going back to when -- just talking about the
 6  process of a judicial committee.
 7       A.   Right.
 8       Q.   And so would that be a discussion that the
 9  judicial committee would have, whether to call law
10  enforcement?
11       A.   Our discussion would only be to what --
12  what advice we got from the legal department in
13  New York.  They may tell us, this has to be
14  reported, you know, that we would go with whatever
15  we're advised to do.  We're spiritual advisors.
16  We're not lawyers or policemen, you know.  We would
17  do what we're told by the legal department.
18       Q.   And you'd follow their directions.
19       A.   Right.  That's what we're -- that's what
20  we're to do.
21       Q.   And so let's say you encountered a
22  situation where you thought it would be reasonable
23  to call law enforcement personally.  Would you feel
24  like you could do that, or would you need direction
25  from legal before you decided?
```

86

Delbert Hiebert

1  A.   I don't know.  I'd have to think about
2  that and get advice.  You'd have to get legal
3  advice on that.
4  Q.   So you wouldn't make your own decision
5  about whether or not to call law enforcement.
6  A.   I would make the decision to follow
7  direction, the direction I got from the branch.
8  The branch would probably say, this needs to be
9  reported, and then there would be a report made.  I
10 wouldn't run ahead on my own.
11 Q.   Oh, I wanted to, yeah, touch -- touch one
12 more thing on this Exhibit 17.  Sitting here today,
13 do you have any -- think how to ask you this
14 question.  Is it your -- did you believe Tracy, I
15 guess, at the time that this call happened?
16 A.   I had no reason not to believe her.  Yeah,
17 I would say I believed her.  And I felt terrible
18 for her.
19 Q.   And since then, have you come to
20 understand whether or not what Tracy was saying
21 is true based on other corroborative information?
22 A.   Well, you know, I -- when I got off the
23 phone with her, as you can see, I made this letter
24 up, and I started phoning around to find out what
25 others had to say.  And I wrote it all down to pass

87