Gerry P. Fagan
Christopher T. Sweeney
Jordan W. FitzGerald
MOULTON BELLINGHAM PC
27 North 27th Street, Suite 1900
P.O. Box 2559
Billings, Montana 59103-2559
Telephone: (406) 248-7731
Fax: (406) 248-7889
Gerry.Fagan@moultonbellingham.com
Christopher.Sweeney@moultonbellingham.com
Jordan.FitzGerald@moultonbellingham.com

*Attorneys for Defendant Watch Tower Bible and Tract Society of
Pennsylvania*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT and CAMILLIA MAPLEY,<br><br>　　　　　　　Plaintiffs,<br><br>　　-vs-<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR.,<br><br>　　　　　　　Defendants. | Case No. CV-20-00052-SPW-TJC<br><br>**DEFENDANT WTPA'S RESPONSE BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: HARDIN ELDERS ARE AGENTS OF A JOINT ENTERPRISE BETWEEN WTNY AND WTPA** |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................ ii

BACKGROUND ....................................................................................1

ARGUMENT ........................................................................................4

I.  PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON AN ALLEGED "JOINT ENTERPRISE" BECAUSE THEY DO NOT HAVE SUCH A CLAIM PLEADED. ...........................................................4

II. EVEN IF PLAINTIFFS HAD A PLEADED CLAIM FOR JOINT ENTERPRISE THAT WAS PROPERLY SUBJECT TO SUMMARY JUDGMENT, THEIR CLAIM WOULD FAIL AS A MATTER OF LAW. ....................................................................................9

CONCLUSION .....................................................................................19

## TABLE OF AUTHORITIES

**Cases**

*Bahm v. Dormanen*, 168 Mont. 408, 543 P.2d 379 (1975)......................................13

*Bender v. Bender*, 144 Mont. 470, 397 P.2d 957 (1965)................................. 11, 17

*Bradbury v. Nagelhus*, 132 Mont. 417, 319 P.2d 503 (1957) ..................................5

*Brookins v. Mote*, 2012 MT 283, 367 Mont. 193, 292 P.3d 347 ..................... 10, 12

*Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir. 2000)..................................9

*Dreamstime.com, LLC v. Google LLC*, 2022 U.S. App. LEXIS 33546 (9th Cir. Dec. 6, 2022) ...............................................................................................9

*Fershtadt v. Verizon Commc'ns, Inc.*, 2010 U.S. Dist. LEXIS 13937, 2010 WL 571818 (S.D.N.Y. Feb. 9, 2010) .......................................................................8, 9

*Hammerquist v. Emp't Sec. Div. of Mont. Dep't of Labor & Indus.*, 230 Mont. 347, 749 P.2d 535 (1988)...................................................................................13

*Jacobs v. Tapscott*, 2006 U.S. Dist. LEXIS 68619, 2006 WL 2728827 (N.D. Tex. Sept. 25, 2006) ...................................................................................9

*Kirkindoll v. Nat'l Credit Union Admin. Bd.*, 2014 U.S. Dist. LEXIS 174675 (N.D. Tex. Dec. 17, 2014).................................................................................8, 9

*Krivo Indus. Supply Co. v. National Distillers & Chem. Corp.*, 483 F.2d 1098 (5th Cir.1973)...................................................................................................16

*Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773 (5th Cir. 1997)..............................16

*MacArthur Co. v. Stein*, 282 Mont. 85, 934 P.2d 214 (1997)..................................11

*Nat'l Gypsum Co. v. Johnson*, 182 Mont. 209, 595 P.2d 1188 (1979) ....................13

*Papp v. Rocky Mountain Oil & Minerals*, 236 Mont. 330, 769 P.2d 1249 (1989) .........................................................................................................14

*Pearson v. McPhillips*, 2016 MT 257, 385 Mont. 171, 381 P.3d 579....................................................................... 10, 11, 12, 17

*Rae v. Cameron*, 112 Mont. 159, 114 P.2d 1060 (1941)................................. 11, 14

*Ritter v. BJC Barnes Jewish Christian Health Sys.*, 987 S.W.2d 377 (Mo. Ct. App. 1999)......................................................................................................15

*Ronnfeldt Farms, Inc. v. Arp*, 1 N.W.3d 540 (2023) .............................................15

*Sumner v. Amacher*, 150 Mont. 544, 437 P.2d 630 (1968) ....................................14

**MOULTON BELLINGHAM PC**
ATTORNEYS AT LAW

*Sunbird Aviation v. Anderson*, 200 Mont. 438, 651 P.2d 622 (1982) ....................13

*Weingart v. C & W Taylor P'ship*, 248 Mont. 76, 809 P.2d 576 (1991) ................13

*Wiesner v. BBD P'ship*, 256 Mont. 158, 845 P.2d 120 (1993) ................................14

## Statutes

§ 28-3-303, Mont. Code Ann. ...................................................................................11

## Other Authorities

48A C.J.S. Joint Ventures (1981) ........................................................................5, 10

Restatement 3d of Agency, § 7.03 .........................................................................16

## Rules

Fed. R. Civ. P. 56 .................................................................................................5, 6

iii

Plaintiffs' Motion for Partial Summary Judgment Re: Hardin Elders Are Agents of a Joint Enterprise Between WTNY and WTPA should be denied for two reasons. First, it is not a valid Rule 56 Motion for Summary Judgment because Plaintiffs do not have any claims actually pleaded in this case for "joint enterprise." In fact, Plaintiffs sought at one time to amend their Complaint to add such a claim, but this Court denied their Motion to Amend. (*See* Doc. 238) Because they have no pleaded claim for joint enterprise, Rule 56 does not apply and Plaintiffs cannot be granted summary judgment. Second, even if assuming for the sake of argument that a Rule 56 Motion was valid and applicable, Plaintiffs' argument about joint enterprise fails as a matter of law.

## BACKGROUND

Plaintiffs had previously, and clearly, alleged in their Amended Complaint that "Watchtower NY is the head of the religion and the Church." (Doc. 22, ¶ 12.) They alleged that Watchtower NY "exercises control of the Church and the operation of local congregations." (*Id.*) And they acknowledged that WTPA is the "publishing wing of the Church." (*Id.,* ¶ 17.)

Now, in order to justify their latest Motion, Plaintiffs attempt to abandon their previously clear pleaded allegations about the operation and control of the Jehovah Witnesses Church. For starters, Plaintiffs shift from calling it the "Church" to instead choose to call it the "Organization." (Doc. 351, p. 3.) They also shift from alleging

1

that WTNY "exercises control of the Church" to instead argue "the Organization used two corporate entities (WTNY and WTPA) to accomplish their shared purpose." (*Id.*)

Plaintiffs' shifts in allegations and arguments are transparent and unsupported. In addition, their factual allegations about the nature and operation or WTPA are inaccurate. WTPA's primary role during the relevant time period from 1973 to 1992 was to hold the copyright and publish some of the Jehovah's Witnesses publications, including their most prized possession, the New World Translation of Holy Scriptures. *See* WTPA's Stmt. of Disputed Facts & Additional Facts Relied Upon In Opposing Summary Judgment ("WTPA Stmt."), Sec. II, ¶ 1. WTPA and WTNY are separate legal entities, but they assist one another when needed to accomplish their shared purpose – to preach the good news of God's kingdom worldwide and promote Bible education.  *Id.*, Sec. II, ¶ 2.

While WTNY and WTPA both seek to accomplish the same goal of promoting Bible education, WTNY's efforts are conducted in the United States and WTPA has interests all over the world.  *Id.*, Sec. II, ¶ 3.

WTPA's corporate charter contains no indication that it controlled or had authority over any other corporations used by Jehovah's Witnesses during the relevant time, including over WTNY. *Id.*, Sec. II, ¶ 4. WTPA also was not the parent corporation of WTNY during that time. *Id.*

WTNY and WTPA each operate through their respective boards of directors and officers. *Id.*, Sec. II, ¶ 5. Directors for WTPA are required to be members of the Worldwide Religious Order of Special Full-Time Servants, and they are chosen primarily due to their spiritual qualifications. *Id.*

Each board of directors would take actions through separate meetings, votes, and resolutions by each entity. *Id.*, Sec. II, ¶ 6. For WTPA, there was no veto power beyond the WTPA Board of Directors' vote and approval of an action. *Id.* However, WTNY and WTPA would sometimes hold joint board meetings. *Id.*

Throughout the relevant time period, members of the Governing Body also served as directors for WTPA. *Id.*, Sec. II, ¶ 7. Prior to that, the Governing Body and the Board of Directors for WTPA were identified together; however, starting in 1971, Jehovah's Witnesses no longer considered them as the same group of actors. *Id.*

During the relevant time period, WTNY and WTPA largely shared the same offices as cooperating entities for Jehovah's Witnesses, because their directors and volunteers used the same offices given to them as part of their work assignment as members of the Religious Order within the Bethel structure. *Id.*, Sec. II, ¶ 8. However, WTNY and WTPA were not served by all the various departments at Bethel during that time. *Id.*

WTPA had no employees from 1973 to 1992 – its tasks were carried out by members of the Religious Order. *Id.,* Sec. II, ¶ 9. During the relevant time period, besides being the copyright holder or publisher of Jehovah's Witnesses publications, WTPA was not responsible for or involved in the training schools for elders, the appointment or removal of elders, or the assignment of circuit overseers in the United States. *Id.*, Sec. II, ¶ 10. WTPA also does not sponsor any activities at the congregation level in Montana or participate in the appointment of elders or ministerial servants in congregations in Montana. *Id*.

WTPA was not involved in the application or approval of new congregations. *Id.*, Sec. II, ¶ 11. From 1973 to 1992, WTPA was not responsible for monitoring the functions or organization of local congregations. *Id.*, Sec. II, ¶ 12. Each congregation formed its own legal entity to operate its kingdom hall and other functions. *Id.*

## **ARGUMENT**

### I.   **PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON AN ALLEGED "JOINT ENTERPRISE" BECAUSE THEY DO NOT HAVE SUCH A CLAIM PLEADED.**

Plaintiffs argued in their Motion that the Court should grant them "partial summary judgment on the parts of their claims alleging that the elders of the Hardin Congregation were agents of a Joint Venture[1] Between Defendants Watchtower

---

[1] Plaintiffs use the terms "joint enterprise" and "joint venture" interchangeably in their Motion and Brief. The terms are often used interchangeably without a

Bible and Tract Society of New York, Inc. and Watch Tower Bible and Tract Society of Pennsylvania for all times and purposes relevant to Plaintiffs' causes of action." (Doc. 350, pp. 1-2) Plaintiffs also tossed in a footnote mentioning a concept called the "single business enterprise." (Doc. 351, p. 7, n. 2) Plaintiffs argued that there is allegedly a joint enterprise between WTNY and WTPA "to operate local congregations in the United States." (Doc. 351, p. 6) This is part of Plaintiffs' increasingly convoluted liability chain: a Hardin congregation member allegedly abused his daughters in their home; the local elders learned about it and acted improperly in overseeing their congregation by failing to report it; WTNY is liable for the elders' alleged inactions because the elders are allegedly agents of WTNY; and now WTPA is also allegedly liable for the Hardin congregation's elders' alleged failure to report the abuse by a local member of his own children in his own home because WTPA is allegedly part of a "joint enterprise" with WTNY to operate local congregations in the United States.

As Plaintiffs correctly noted in their Brief, a party "may move for summary judgment on part of its claim." (*Id.*, p. 4, *citing* Fed. R. Civ. P. 56(a)) Rule 56 does indeed state that a "party may move for summary judgment, identifying each claim

---

significant distinction. *See e.g.*, 48A C.J.S. Joint Ventures § 3 (1981). *See also*, *Bradbury v. Nagelhus*, 132 Mont. 417, 426, 319 P.2d 503, 509 (1957) (terms joint adventure and joint venture are synonymous, and sometimes called joint enterprise) (citation omitted).

MOULTON BELLINGHAM PC
ATTORNEYS AT LAW

or defense – or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a). For purposes of their Motion, the critical – and obvious – word in Rule 56 is "claim." Plaintiffs simply do not have a pleaded claim for joint enterprise, or joint venture, or even a pleaded allegation of such. While Plaintiffs have alleged that the elders of local congregations are "all agents of their local congregations and Watchtower NY and PA," as well that "Watchtower PA and NY are the alter egos of each other" so that the "corporate veil" can be pierced (*see* Doc. 22, ¶¶ 16 & 32), Plaintiffs plainly and undisputedly do **not** have any claim or allegation pleaded that WTNY and WTPA were part of a "joint enterprise" or acted pursuant to any "joint enterprise," or created a "joint enterprise," or that WTPA is vicariously liable for acts of the Hardin Congregation elders because it was part of a "joint enterprise."

In fact, well over a year ago, Plaintiffs tried to plead those very allegations and claims, but this Court expressly rejected that attempt because Plaintiffs' effort was very untimely. On January 6, 2023, Plaintiffs attempted to add allegations of what they called "shared efforts and corporate relationship between WTNY and WTPA" in their Motion to Amend Complaint through a Second Amended Complaint. (*See* Doc. 190, p. 4) To do so, Plaintiffs sought to add paragraphs 11, 16-34, 44, 46-49, 74-76, 81-83, and 90 in their proposed Second Amended Complaint. (*Id.*) Plaintiffs sought to add proposed allegations that the operations of WTNY and

WTPA were so integrated that they effectively were one entity to carry out the common purpose of operating a church and acted in concert as a single enterprise to achieve a common purpose. (Doc. 189-1, ¶¶ 28 & 44) Plaintiffs also sought to assert an allegation that WTNY and WTPA "had an implied or express agreement that created a joint venture to achieve a common purpose, including perpetuation of the Watchtower Protocols and asserting control over the manner in which local congregations, including the Hardin congregation, handled allegations of child sex abuse." (*Id.*, ¶ 47) In addition, Plaintiffs sought to allege a joint venture existed between WTNY and WTPA. (*Id.*, ¶ 49) Plaintiffs further sought to add to their negligence claim a proposed paragraph that alleged "Defendants Watchtower NY and Watchtower PA are vicariously liable for the acts and omissions of each other and their agents that caused Plaintiffs' damages." (*Id.*, ¶ 81)

On May 22, 2023, this Court denied their Motion to Amend as untimely. (Doc. 238) Therefore, Plaintiffs have pleaded none of those allegations or claims in this case, including "single business enterprise."[2] Yet despite the Court's express ruling,

---

[2] Plaintiffs may attempt to argue that their pleaded allegations of agency and alter ego are basically the same claims as their joint enterprise and vicarious liability claims so it is proper to seek summary judgment on joint enterprise, but that argument would fail. Agency, alter ego, and joint enterprise are not the same claims. They each have different elements and caselaw interpreting them. In addition, if that argument would be correct, why then did they attempt in the first place to amend their Complaint in order to plead new allegations of joint enterprise and vicarious liability?

7

Plaintiffs persist to attempt again to litigate allegations and claims that a joint enterprise existed between WTNY and WTPA so as to hold WTPA vicariously liable for alleged actions or inactions of local congregation members and elders. With all due respect, Plaintiffs' seeming unwillingness or inability to accept an express "no" from the Court should not be condoned or allowed. The Court expressly denied their attempt to amend their pleadings to allege the existence of a joint venture and vicarious liability. They should not now be allowed to ignore the Court's previous ruling to litigate those issues anyway.

Plaintiffs' Motion should be denied for the obvious reason that they do not have a pleaded "claim" for joint venture or joint enterprise so Rule 56 does not apply. *See* Fed. R. Civ. P. 56(a). Plaintiff also does not have a pleaded claim for the concept they mentioned in a footnote, "single business enterprise" (and which they admitted had not even been accepted in Montana). "A movant can neither obtain summary judgment nor avoid the opposing party's summary judgment motion based on an unpleaded claim." *See Kirkindoll v. Nat'l Credit Union Admin. Bd.*, 2014 U.S. Dist. LEXIS 174675, at *20 (N.D. Tex. Dec. 17, 2014), *citing Fershtadt v. Verizon Commc'ns, Inc.*, 2010 U.S. Dist. LEXIS 13937, *18, 2010 WL 571818, at *7 (S.D.N.Y. Feb. 9, 2010) (denying motion for summary judgment that sought judgment on unpleaded claims because "[a]ny claims not raised in his complaint, including the 502(c) claim, are not properly before this Court.") and *Jacobs v.*

8

*Tapscott*, 2006 U.S. Dist. LEXIS 68619, 2006 WL 2728827, at *8 (N.D. Tex. Sept. 25, 2006) ("Plaintiffs cannot avoid summary judgment, however, based on unpleaded claims."). Indeed, the Ninth Circuit has held that district courts do not err when they refuse to allow a plaintiff to litigate new claims at the summary judgment stage. *See Dreamstime.com, LLC v. Google LLC*, 2022 U.S. App. LEXIS 33546, at *2-3 (9th Cir. Dec. 6, 2022), *citing Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). Plaintiffs literally have no claim pleaded or pending in this case about whether WTNY and WTPA had or created a joint enterprise, or a joint venture, or if WTPA is vicariously liable because it is in an alleged joint enterprise or venture. Therefore, summary judgment is not proper. *See Kirkindoll, supra; Fershtadt, supra; Jacobs, supra; Dreamstime.com, LLC; supra;* and *Coleman, supra*. Plaintiffs' Motion fails as a matter of law and should be denied.

## II.   EVEN IF PLAINTIFFS HAD A PLEADED CLAIM FOR JOINT ENTERPRISE THAT WAS PROPERLY SUBJECT TO SUMMARY JUDGMENT, THEIR CLAIM WOULD FAIL AS A MATTER OF LAW.

Plaintiffs argue that there is allegedly a joint enterprise between WTNY and WTPA "to operate local congregations in the United States." (Doc. 351, p. 6) Because there is not an express agreement to create a joint venture, or clear evidence of intent to create a joint venture, Plaintiffs cobble together an argument that WTNY's and WTPA's conduct evidenced an implied or inferred intent to enter into

MOULTON BELLINGHAM PC
ATTORNEYS AT LAW

a joint enterprise to do so. (Doc. 351, pp. 7-8) Almost their entire argument that the parties intended to create a joint enterprise consists of evidence that WTNY and WTPA shared such things as some offices, occasionally funds, and directors. Plaintiffs' argument fails as a matter of law. They have nowhere close to sufficient evidence to establish that the parties intended to create a joint enterprise.

In an action to establish liability arising from an alleged joint venture, its existence will not be presumed and the burden of proving it exists is on the plaintiff. *See* 48A C.J.S. Joint Ventures § 70 (1981). One member of a joint venture or enterprise can be generally liable for the acts of another member on a vicarious liability theory. *Id.*, § 63. That liability is founded on the voluntary relationship that has arisen between the parties. *Id.* It is a form of "quasi partnership."

Under Montana law, "a joint venture is an 'association of two or more persons to carry on a single business enterprise for profit.'" *Pearson v. McPhillips*, 2016 MT 257, ¶ 8, 385 Mont. 171, 381 P.3d 579, *citing Brookins v. Mote*, 2012 MT 283, ¶ 43, 367 Mont. 193, 292 P.3d 347 (internal quotation omitted). To qualify as joint venturers, the parties must have: (1) an express or implied agreement or contract creating a joint venture; (2) a common purpose; (3) community of interest; and (4) an equal right to control the venture. *Pearson*, ¶ 8, *citing Brookins*, ¶ 43.

In *Pearson*, a scrap metal recoverer caused a grassfire when he was using a cutting torch to remove metal from a property owner's land in exchange for 65% of

the proceeds from the sale of recovered metals. A nearby landowner sued for the grassfire damage and alleged the scrap metal recoverer and the property owner had created a joint venture that made them both liable for the grassfire damage. The Supreme Court recognized that under "the first element, the parties' intent is crucial to determining whether a joint venture exists." *Pearson*, *citing Rae v. Cameron*, 112 Mont. 159, 168, 114 P.2d 1060, 1064 (1941) ("As between the parties themselves, the relationship of joint adventurers is a matter of intent, and arises only where they intend to associate themselves as such.") (internal citation omitted). When there is a contract in writing between the parties, "'the intention of the parties is to be ascertained from the writing alone if possible.'" *Pearson*, ¶ 9, *citing* § 28-3-303, Mont. Code Ann. However, when, as in *Pearson*, there was no express agreement, the intent to enter a joint enterprise "'must be established from all the facts, circumstances, actions, and conduct of the parties.'" *Pearson, citing MacArthur Co. v. Stein*, 282 Mont. 85, 90, 934 P.2d 214, 217 (1997) (citation omitted); and *accord Bender v. Bender*, 144 Mont. 470, 480, 397 P.2d 957, 962 (1965) (holding that, to establish a joint venture or partnership, "'[t]he intention of the parties has to be clearly manifested, and must be ascertained from all the facts and circumstances and the actions and conduct of the parties'") (internal citations omitted).

The trial court in *Pearson* considered what evidence existed that supported the intent to create a joint enterprise in the absence of an express agreement. The

11

Court found that while the property owner had dictated where on her property the metals recoverer could go to recover scrap metal, the recoverer decided or provided everything else, including his own equipment, the days and hours he worked, who worked with him, and the methods he used. The court also considered affidavits submitted by several other landowners who had entered into similar agreements, all of whom believed the recoverer was an independent business person removing scrap metal from the landowners' property in exchange for a portion of the proceeds. Based on these facts, the court ruled there was no evidence to establish that either party intended to create a joint venture. *Id.*, ¶ 11. The Supreme Court affirmed, rejecting the appellant's argument that the intention to create a joint venture could be implied from the facts. *Id.*

In *Brookins*, the Supreme Court considered whether there was a joint venture between a hospital and a physician who had admitting privileges at the hospital and had used its facilities to operate on the plaintiff. The plaintiff claimed the parties had a "mutually beneficial business relationship" where the hospital granted the physician the privilege to use its facilities and the physician used its facilities. *Brookins*, *supra*, 2012 MT 283, ¶ 44. The trial court granted summary judgment to defendants and the Supreme Court affirmed it, finding that there an "[a]ssertion of a mutually beneficial relationship, without more, is insufficient to establish" the fourth required element, an "equal right and control" of a joint venture. *Id.*, ¶ 44.

In addition to rejecting the joint venture claims in *Pearson* and *Brookins*, the Supreme Court has rejected many, if not most, allegations of a joint venture. *See, e.g., Sunbird Aviation v. Anderson*, 200 Mont. 438, 444, 651 P.2d 622, 625 (1982) (co-ownership arrangement between parties of airplane that divided up responsibility for costs of usage, repair and maintenance did not create joint venture); *Weingart v. C & W Taylor P'ship*, 248 Mont. 76, 80, 809 P.2d 576, 579 (1991) (affirming summary judgment on joint venture claim involving potential purchasers of land and investors because investors did not have equal right of control of venture); *Bahm v. Dormanen*, 168 Mont. 408, 413, 543 P.2d 379, 382 (1975) (affirming summary judgment to defendant on joint venture claim because there was no community of pecuniary interest in purported joint venture to go on hunting trip as well as no evidence of joint control of vehicle used in alleged joint venture); *Hammerquist v. Emp't Sec. Div. of Mont. Dep't of Labor & Indus.*, 230 Mont. 347, 350, 749 P.2d 535, 537 (1988) (affirming decision that no joint venture existed between the parties because there were no partnership or joint venture accounts, parties did not file income tax as partnership and did not sign contract or papers as partnership or joint venture); *Nat'l Gypsum Co. v. Johnson*, 182 Mont. 209, 213, 595 P.2d 1188, 1190 (1979) (affirming summary judgment to defendant on joint venture claim holding that mere issuance of joint venture license was insufficient to indicate that joint venture actually existed); *Sumner v. Amacher*, 150 Mont. 544, 553, 437

13

P.2d 630, 635 (1968) (holding joint venture in operating automobile involved in accident was not established as matter of law because there was no evidence of common pecuniary interest in purpose of trip nor facts to establish right of control of automobile in alleged joint venturer). In fact, it appears from a review of Montana case law that perhaps the only decisions finding the existence of an actual joint venture involved an actual written agreement between the parties that was found to have acknowledged or created a joint venture. *See, e.g., Papp v. Rocky Mountain Oil & Minerals*, 236 Mont. 330, 343-44, 769 P.2d 1249, 1257 (1989) (finding that co-owners in oil and gas lease had created joint venture by written agreement, including filing joint venture tax returns, rendering both parties immune from negligence liability pursuant to workers' compensation immunity); *Wiesner v. BBD P'ship*, 256 Mont. 158, 162, 845 P.2d 120, 123 (1993) (finding that written agreement referring to "this joint venture" created joint venture); *Rae v. Cameron*, 112 Mont. 159, 171, 114 P.2d 1060, 1066 (1941) (holding that written agreement to operate mine created a joint venture making joint venturers liable to wage and rental claims incurred by mining operation).

In this case, Plaintiffs' Motion fails on the merits. First off, the undersigned is unaware of any case law, and Plaintiffs have not cited any legal authority, that supports their attempt to impose third-hand or fourth-hand vicarious liability on WTPA through the use of a joint venture or enterprise theory. That is, we are

unaware of any case law adopting or applying Plaintiffs' novel theory that they can properly hold WTPA vicariously liable on a joint enterprise theory for WTNY's own alleged vicarious liability on an agency theory for actions or inactions of local congregation's elders which in turn was derivative of the actions of Plaintiffs' own father. The lack of legal support for their convoluted, extenuated theory is fatal to both their theory and their Motion.

Second, while the undersigned was unable to find case law in Montana which specifically addressed this issue, other courts have considered similar joint enterprise or analogous agency claims when there was an already existing corporate structure in place. Those courts have rejected efforts to disregard the corporate forms to impose a joint venture or other agency liability. *See, e.g., Ritter v. BJC Barnes Jewish Christian Health Sys.*, 987 S.W.2d 377, 387 (Mo. Ct. App. 1999) (rejecting argument that hospital system parent company's "right of control over budget matters and the board of directors [for affiliated hospital] is sufficient" is sufficient to form a joint venture with affiliated hospital because courts will generally "not imply a joint venture where the evidence indicates that the parties created a different business form.") In addition, "a close relationship between two parties does not create an implied joint venture." *See Ronnfeldt Farms, Inc. v. Arp*, 1 N.W.3d 540, 552 (2023) (affirming dismissal of joint venture claim involving two corporations because "joint venture can exist only by voluntary agreement of the parties and

15

cannot arise by operation of law.") *see also Krivo Indus. Supply Co. v. National Distillers & Chem. Corp*., 483 F.2d 1098, 1102 (5th Cir.1973) (corporate form is not disregarded lightly since the law created corporations primarily to allow limited liability); *Lusk v. Foxmeyer Health Corp*., 129 F.3d 773, 779 (5th Cir. 1997) (common ownership and management do not create agency liability under "well established principle that directors and officers holding positions with a parent and its subsidiary can and do "change hats" to represent the two corporations separately, despite their common ownership, without creating agency liability."); Restatement 3d of Agency, § 7.03 ("overlapping" officers or directors between entities does not create agency relationship between entities). Plaintiffs' similar efforts in their Motion to disregard, overlook, and overcome the actual legal status of WTPA and WTNY should be rejected too.

Third, Plaintiffs do not have sufficient evidence to support the necessary elements of a joint enterprise claim under Montana law. Plaintiffs in particular lack actual evidence to establish the critical element of a joint enterprise claim -- that WTPA and WTNY intended to create a joint enterprise. At best, Plaintiffs cite several examples of sharing of resources by WTPA and WTNY that Plaintiffs argue is evidence to prove that they intended to create a joint enterprise to operate local congregations in the United States. (Doc. 351, p. 8) Plaintiffs' efforts are woefully

inadequate to prove for purposes of summary judgment that WTPA and WTNY intended to create a joint enterprise.

Plaintiffs must establish that the parties' intention to establish a joint venture was "clearly manifested" from "all the facts and circumstances and the actions and conduct of the parties." *See Pearson, supra, citing Bender, supra*, 144 Mont. at 480, 397 P.2d at 962. To accomplish that, Plaintiffs cite four facts that they claim are undisputed: WTNY and WTPA "worked in concert to publish, print, and distribute written policies and procedures to local congregation elders;" WTPA used some office space of WTNY; they shared a legal department; and WTPA sent circuit overseers to visit local congregations. (*Id.*) Their argument is both highly inaccurate and disputed (*see* WTPA Stmt., pp. 5-6, 8, & 9-13), and immaterial. Plaintiffs' arguments, even if they were true and undisputed – which they are not – do not establish an agreement to create a joint venture under any of the Montana case law cited above. At best, it shows nothing more than some sharing of resources and cooperation between WTPA and WTNY. That showing is far short of proving that WTPA and WTNY underlineintended to create a joint venture. Plaintiffs' additional argument that WTPA contributed capital as evidence of intent similarly fails because they do

MOULTON BELLINGHAM PC
ATTORNEYS AT LAW

not have any admissible evidence for the claim (*see Id.* at pp. 9-11[3]), nor does contributing funds demonstrate on its own an <u>intent</u> to create a joint venture. Plaintiffs plainly did not "clearly manifest" from the undisputed material facts in the record an intention between WTPA and WTNY to create a joint enterprise, so their joint enterprise claim fails as a matter of law.

Similarly, Plaintiffs did not establish through material facts in the record that WTPA and WTNY had a community of interest for purposes of creating an alleged joint enterprise. Plaintiffs argue that WTPA sent circuit overseers to the local congregations and both WTPA and WTNY "played a role in the training and oversight of the Hardin Elders." (Doc. 351, p. 9) Plaintiffs are incorrect on both factual statements. During the relevant time period, besides being the copyright holder or publisher of Jehovah's Witnesses publications, WTPA was not responsible for or involved in the assignment of circuit overseers in the United States. (*See* WTPA's Stmt., p. 8) Furthermore, WTPA played no role in the training of Elders other than to publish some of the materials used for training. (*Id.*, pp. 12-14) Plaintiffs' arguments on the community of interest border on disingenuous and should be rejected. At the very least, they rely on facts which are disputed.

---

[3] Plaintiffs cite their "SUF, ¶¶ 5a, b" for the purported source for this allegation, but it appears they meant ¶¶ 6(a) & (b) instead. But regardless, their allegation is inaccurate and inadmissible.

Finally, Plaintiffs' argument about element four, equal right to control the alleged joint enterprise, rely only on the same factual allegations we have already addressed (Doc. 351, pp. 10-12), such as alleged training of Elders by WTPA and WTPA allegedly providing circuit overseers, and which are both inaccurate and disputed. (WTPA's Stmt., pp. 8 & 12-14) Their claim fails again for an inability to establish element four through undisputed material facts.

## CONCLUSION

Plaintiffs' Motion must be denied. Their Motion is not properly subject to Rule 56, requiring that it be denied, and even if it was subject to Rule 56, Plaintiffs utterly failed to support their motion through undisputed material facts.

**DATED** this 10th day of May, 2024.

MOULTON BELLINGHAM PC


By   /s/ Gerry P. Fagan
        GERRY P. FAGAN
        CHRISTOPHER T. SWEENEY
        JORDAN W. FITZGERALD
        27 North 27th Street, Suite 1900
        P.O. Box 2559
        Billings, Montana 59103-2559

        *Attorneys for Watch Tower Bible and*
        *Tract Society of Pennsylvania*

19

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(d)(2)(E), the undersigned hereby certify this brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double-spaced, with left, right, top, and bottom margins of one inch; and that the word count calculated by Microsoft Word is 4,628 words, excluding the Table of Contents, Table of Authorities, Certificate of Compliance, and Certificate of Service.

**DATED** this 10th day of May, 2024.

By: _/s/ Gerry P. Fagan_

MOULTON BELLINGHAM PC
ATTORNEYS AT LAW