Gerry P. Fagan
Christopher T. Sweeney
Jordan W. FitzGerald
MOULTON BELLINGHAM PC
27 North 27th Street, Suite 1900
P.O. Box 2559
Billings, Montana 59103-2559
Gerry.Fagan@moultonbellingham.com
Christopher.Sweeney@moultonbellingham.com
Jordan.FitzGerald@moultonbellingham.com

*Attorneys for Defendant Watch Tower Bible and Tract Society of Pennsylvania*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT and CAMILLIA MAPLEY,<br><br>Plaintiffs,<br><br>-vs-<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA,<br><br>Defendants. | Cause No. CV 20-52-BLG-SPW<br><br>**DEFENDANT WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA'S STATEMENT OF DISPUTED FACTS RE: PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: HARDIN ELDERS ARE AGENTS OF A JOINT ENTERPRISE BETWEEN WTNY AND WTPA & ADDITIONAL FACTS RELIED ON IN OPPOSITION TO PLAINTIFFS' MOTION** |

Pursuant to Local Rule 56.1(b), Defendant Watchtower Bible and Tract Society of Pennsylvania ("WTPA") provides the following Statement of Disputed

Facts in response to Plaintiffs' Motion for Partial Summary Judgment re: Hardin Elders are Agents of a Joint Enterprise between WTNY and WTPA (Doc. 350):

**I.     RESPONSES TO PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS.**

1. **At all times relevant WTNY and WTPA shared a common purpose and had fully aligned interests of facilitating the world-wide preaching of the word of God and printing, publishing, and disseminating Bibles and Bible based materials.**

    a.  WTNY and WTPA's charters are similar and were set up to support the same goal of promoting Bible education throughout the world. WTNY and WTPA assist each other in accomplishing this goal: "The charters of these other corporations are similar to that of the Pennsylvania corporation."  Ex. A., *1970 Yearbook of Jehovah's Witnesses* 38 (1970); Ex. B., WTPA 30(b)(6) Devine Dep., 37:15 – 39:9; *see also* Ex. C, WTNY Corp. Charter at 6(a); *see also* Ex. D, WTPA Corp. Charter.

    i.  **WTPA's response: <u>Disputed</u>.** While WTNY and WTPA both seek to accomplish the same goal of promoting Bible education, WTNY's efforts are conducted in the United States and WTPA has interests all over the world.  *See* Rule 30(b)(6) Depo. WTPA/Richard Devine 18:15-19:7, 39:17-42:8, 44:20-46:6, 105:18-106:9 (Mar. 7, 2024), excerpts to be filed as Exhibit 1 under seal; Rule 30(b)(6) Depo. WTPA/Mario Moreno 13:19-

14:19 (Mar. 7, 2024), excerpts to be filed as Exhibit 2 under seal; *see also* Doc. 352-3 at 4-5, ¶¶ 6(a) and (b).

b. WTNY and WTPA work together and cooperate fully in order to accomplish their common purpose. Ex. E, *Branch Organization Manual* 1-4, ¶ 34 (1977); *see also* Ex. F, WTNY Ans. to Int. No. 15; *see also* Ex. A, *1970 Yearbook of Jehovah's Witnesses* 38 (1970); *see also* Ex. G, *1980 Yearbook of Jehovah's Witnesses* 257 (1980); *see also* Ex. B, WTPA 30(b)(6) Devine Dep., 37:15 – 39:9; *see also* Ex. H, *Organized to Accomplish Our Ministry* (1989) at 26-27.

    i. **WTPA's response:** **Disputed.** WTNY and WTPA work together and assist one another when needed to accomplish their shared purpose. *See* Ex. 1, 30(b)(6) Depo. WTPA/Devine at 37:15-40:8, 100:6-101:12.

2. **At all times relevant WTNY and WTPA were managed, directed, and operated by the same men and there is no way to distinguish who they were ever acting on behalf of at any given time.**

a. During the period 1973 to 1992 the same group of men who were on the Organization's Governing Body also managed and directed WTNY and WTPA. Ex. I, 1973-1992 Summary and Comparison of WTPA and WTNY Corporate Officers and Governing Body Members (as identified in Def. WTPA's 2d Supp. Resps. To Plfs. 2d Set of

3

ATTORNEYS AT LAW

        Jurisdictional Disco., Interrog. Nos. 20-21, 23; Def. WTNY's 3d Supp. Resps. To Plfs.' 1st Set of Jurisdictional Disco., Interrog. Nos. 2-4).

    i. **WTPA's response: <u>Disputed</u>.** Not all of the corporate officers during that time period also served on the Governing Body. *See* Doc. 352-9 at 1981, 1983, and 1992; *See also* Ex. 1, 30(b)(6) Depo. WTPA/Devine at 83:13-85:13, 115:5-117:21, 118:25-120:11; Ex. 2, 30(b)(6) Depo. WTPA/Moreno at 34:14-38:19.

b. There is no way to determine which entity these men were acting on behalf of when advancing the interests of their respective corporations and the interests of the Jehovah's Witnesses' Organization. Ex. J, WTNY Ans. to Int. No. 23 and WTPA Ans. Int. No. 16.

    i. **WTPA's response: <u>Disputed</u>.** WTNY and WTPA each operated through their respective boards of directors and officers. *See* Doc. 352-3 and 352-4; Ex. 1, 30(b)(6) Depo. WTPA/Devine at 20:20-23:8 (directors and officers of WTPA). Each board of directors would take actions through separate meetings, votes, and resolutions by each entity. *See, e.g.,* Ex. 1, 30(b)(6) Depo. WTPA/Devine at 18:15-20:19, 27:11-19, 42:9-23. For WTPA, there was no veto power beyond the WTPA Board of Directors' vote and approval of an action. Ex. 1, 30(b)(6) Depo.

WTPA/Devine at 50:13-51:13.  However, WTNY and WTPA would sometimes hold joint board meetings.  *See, e.g.,* Ex. 2, 30(b)(6) Depo. WTPA/Moreno at 86:9-88:2.

3. **At all times relevant WTNY and WTPA were managed, directed, and operated from the same offices.**

   a. WTPA did not have its own offices but used WTNY's offices at the Organization's headquarters and did so without any written agreement. Ex. K, Rule 30(b)(6) WTPA Moreno Dep., 67:6-72:21.

      i. **WTPA's response: <u>Disputed</u>.**  During the relevant time period, WTNY and WTPA largely shared the same offices as cooperating entities for Jehovah's Witnesses, because their directors and volunteers used the same offices given to them as part of their work assignment as members of the Religious Order within the Bethel structure.  *See* Ex. 2, 30(b)(6) Depo. WTPA/Moreno at 62:14-66:15, 67:6-69:17; *see also* Ex. 1, 30(b)(6) Depo. WTPA/Devine at 32:16-33:16, 34:19-37:14. However, WTNY and WTPA were not both served by all the various departments at Bethel during that time.  *See, e.g.,* Ex. 1, 30(b)(6) Depo. WTPA/Devine at 28:17-31:9, 44:20-46:6 (WTPA used the Treasurer's Office for its financial matters while WTNY used the U.S. Accounting Department).  WTPA

5

had no employees from 1973 to 1992 – its tasks were carried out by members of the Religious Order. Ex. 2, 30(b)(6) Depo. WTPA/Moreno at 66:17-67:5, 69:24-70:22.

4. **At all times relevant WTNY and WTPA shared the same legal department and lawyers.**

   a. The Organization's Legal Department (a.k.a. the Watchtower Legal Department) is part of, and operates through, WTNY. Ex. L, Moreno Dep., 38:14 - 40:21, *Lopez v. Does*.; Ex. M, Shuster Dep., 22:13-23:8.

      i. **WTPA's response: Disputed.** There was no legal department at Bethel serving WTNY or WTPA in 1970s and into the 1980s. *See* Ex. 1, 30(b)(6) Depo. WTPA/Devine at 107:11-23; Ex. 2, 30(b)(6) Depo. WTPA/Moreno at 19:4-17.

   b. WTNY's "Watchtower Legal Department's clients include various corporations of Jehovah's Witnesses in the United States." Ex. N, Moreno Dec. at ¶ 2, *Charissa W. & Nicole D. v. WTNY, et al.*.

      i. **WTPA's response: Undisputed.**

   c. Phillip Brumley is a lawyer who oversees the Watchtower Legal Department and serves as general counsel for both WTNY and WTPA. Ex. O, Brumley Aff. at ¶ 3, *Does I–IV v. WTNY*; Ex. P, Brumley Aff. at ¶¶ 1-2, *Caekaert et al. v. WTNY, et al.*.

      i.    **WTPA's response: <u>Disputed and Immaterial</u>.** While Philip Brumley has served as general counsel for both WTNY and WTPA, the affidavits cited by Plaintiffs were made years apart, and they demonstrate that Mr. Brumley did not serve in those roles for the vast majority of the relevant time period. *See* Doc. 352-16 and 353-4.

5. **At all times relevant WTNY and WTPA shared funds without any evidence of arms-length agreements between them and these funds were used by both to carry out their shared purpose.**

   a.   There were no agreements or terms between WTNY and WTPA regarding the shared use of facilities between the two or the bills associated with the use of said facilities, WTNY owned the premises and paid all the bills: "the directors from Pennsylvania and the directors from New York never got together to work out an agreement, oral or written in that regard. They have the same purpose, the same function, and so there was never a need to do that." Ex. K, 30(b)(6) WTPA Moreno Dep., 67:6-72:21.

      i.    **WTPA's response: <u>Undisputed</u>.**

   b.   WTNY and WTPA used their funds to assist one another in achieving their common purpose and if WTNY was running a deficit WTPA

would give it money. Ex. K, 30(b)(6) WTPA Moreno Dep., 39:17-41:2, 41:24-44:4, 47:22-48:18,56:24-62:13, 86:9-89:11.

    i. **WTPA's response: <u>Disputed</u>.** WTPA would make donations to WTNY when needed to accomplish their shared purpose. *See* Ex. 1, 30(b)(6) Depo. WTPA/Devine at 37:6-14.

c. WTNY and WTPA's financial statements and disclosures demonstrate that they were not functioning as separate and distinct entities. Ex. Q. Yonce Expert Rep. at 2.

    i. **WTPA's response: <u>Disputed</u>.** Plaintiffs rely on an expert report to support this Statement, but such reports cannot be considered for purposes of summary judgment without a supporting affidavit verifying its authenticity. *See Scott v. Edinburg*, 346 F.3d 752, 759-60 (7th Cir. 2003); *see also* L.R. 56.1(a)(2). Defendants also have a rebuttal expert report disputing this statement. *See* Lawless Rebuttal Expert Rpt., attached here as Exhibit 3.

6. **At all times relevant WTPA worked in concert with WTNY in the appointment of the Hardin Elders by sending out the circuit overseers who communicated the elder recommendations to WTNY.**

a. WTPA "sends out special ministers, such as circuit and district servants, to visit all the congregations of Jehovah's Witnesses

throughout the world. These servants come under the direction of branch servants who are appointed by the president of the Watch Tower Bible and Tract Society of Pennsylvania." Ex. A, 1970 Yearbook of Jehovah's Witnesses at 37-41.

    i.    **WTPA's response: <u>Disputed</u>.** During the relevant time period, besides being the copyright holder or publisher of Jehovah's Witnesses publications, WTPA was not responsible for or involved in the assignment of circuit overseers in the U.S. *See* Ex. 1, 30(b)(6) Depo. WTPA/Devine at 113:23-114:19; Rule 30(b)(6) Depo. WTNY/Thomas Jefferson, Jr. 142:8-145:6 (Mar. 8, 2024), excerpts to be filed as Exhibit 4 under seal. From 1973 to 1992, WTPA was not responsible monitoring the functions or organization of local congregations. Ex. 1, 30(b)(6) Depo. WTPA/Devine at 129:8-13.

b.    The Overseers sent out by WTPA would receive a stipend from WTNY. Ex. K, 30(b)(6) WTPA Moreno Dep., 40:5-41:2.

    i.    **WTPA's response: <u>Disputed</u>.** During the relevant time period, besides being the copyright holder or publisher of Jehovah's Witnesses publications, WTPA was not responsible for or involved in the assignment of circuit overseers in the U.S. *See*

Ex. 1, 30(b)(6) Depo. WTPA/Devine at 113:23-114:19; Ex. 4, 30(b)(6) Depo. WTNY/Jefferson at 142:8-145:6. From 1973 to 1992, WTPA was not responsible monitoring the functions or organization of local congregations. Ex. 1, 30(b)(6) Depo. WTPA/Devine at 129:8-13.

c. The Circuit Overseers sent by WTPA and paid for by WTNY met with the local congregations and filled out a form identifying recommendations for elders and sent the form to the "branch" for review and approval. Ex. R, Lovett Dep., 56:2–57:25; Ex. S, Meyers Dep., 73:21-74:24.

    i. **WTPA's response: <u>Disputed</u>.** During the relevant time period, besides being the copyright holder or publisher of Jehovah's Witnesses publications, WTPA was not responsible for or involved in the assignment of circuit overseers in the U.S or the appointment or removal of elders. *See* Ex. 1, 30(b)(6) Depo. WTPA/Devine at 113:23-114:19 (assignment of circuit overseers), 121:14-130:2 (appointment and removal of congregation elders and ministerial servants); Ex. 4, 30(b)(6) Depo. WTNY/Jefferson at 46:13-57:6 (appointment process of elders in the U.S.), 142:8-145:6 (appointment and removal of

       traveling overseers). From 1973 to 1992, WTPA was not responsible monitoring the functions or organization of local congregations. Ex. 1, 30(b)(6) Depo. WTPA/Devine at 129:8-13.

   d.   After the Governing Body reviewed and approved the recommendation WTNY communicated such approval back to the local congregation. *See e.g.* Ex. T, Hardin Congregation Appointments.

       i.   **WTPA's response: <u>Disputed</u>.** Experienced elders in the Service Department were tasked with approving appointments of elders. The acknowledgment of such appointments was conveyed with a WTNY letterhead. *See* Ex. 4, 30(b)(6) Depo. WTNY/Jefferson at 55:9-57:6.

7. **At all times relevant to this case WTNY and WTPA worked in concert with each other to train and instruct the Hardin Elders on how to handle matters of serious sin, including child sex abuse.**

   a.   Local congregation elders are responsible for responding to and investigating reports of serious sin within their congregation and are required to follow the Organization's policies when doing so. Ex. U, Steele Aff., ¶¶ 8, 10, 11, *Doe v. Watchtower et al.*; Ex. V, Ashe Dep. Vol. I, 190:25–192:18, *Lopez*; Ex. W, Ashe Dep. Vol. II, 320:8–322:14, *Lopez*; Ex. X 1949 Counsel on Theocratic Organization for Jehovah's

11

   Witnesses, 57–58; Ex. Y, 1972 Kingdom Ministry School Course, 72–74, 84–86, 114–17, 123–26, 131–35; Ex. Z, 1977 Pay Attention to Yourselves and to All the Flock, 55–77; Ex. AA, 1981 Pay Attention to Yourselves and to All the Flock, 160–82; Ex. BB, 1991 Pay Attention to Yourselves and to All the Flock, 90–142; Ex. CC, July 1, 1989 All Bodies of Elders Ltr.; Ex. DD, 1983 Organized to Accomplish Our Ministry, 138–53; Ex. B, WTPA 30(b)(6) Devine Dep., 97:10–99:16, 121:25–122:23, 126:4–128:2, 130:3–131:8; Ex. EE, WTNY 30(b)(6) Jefferson Dep., 100:2–103:9, 124:6–125:2; Ex. FF, WTNY 30(b)(6) Moreno Dep., 15:14–18; Ex. A, 1970 Yearbook of Jehovah's Witnesses at 38-39.

  i. **WTPA's response: <u>Disputed</u>.** While WTPA may have been the copyright holder and/or publisher of Jehovah's Witnesses publications during the relevant time period, WTPA was not involved in the distribution or instruction of those materials. *See* Ex. 4, 30(b)(6) Depo. WTNY/Jefferson at 98:11-103:9.

b. WTNY and WTPA worked in concert to publish and distribute printed material instructing the Hardin Elders on how to respond to reports of serious sin, including child sex abuse. WTPA was often the copyright holder of such material and WTNY would be the publisher. However,

        in other instances, WTNY would hold the copyright and publish the material.  Ex. GG, Summary of Relevant Publications; *see also* ECF No. 341-31(documents supporting Summary of Relevant Publications).

    i.    **WTPA's response:  <u>Disputed</u>.**  While WTPA may have been the copyright holder and/or publisher of Jehovah's Witnesses publications during the relevant time period, WTPA was not involved in the distribution or instruction of those materials.  *See* Ex. 4, 30(b)(6) Depo. WTNY/Jefferson at 98:11-103:9.  Those publications were written largely by the writing department at Bethel.  *See* Ex. 1, 30(b)(6) Depo. WTPA/Devine at 79:2-80:6.  However, WTPA had no involvement relating to any all bodies of elders letters which were sent during the relevant period.  Ex. 1, 30(b)(6) Depo. WTPA/Devine at 135:6-136:22.

c.    The Hardin Elders learned how to perform their duties from the publications, schools, and instruction provided by WTNY and WTPA. Ex. R, Lovett Dep., 61:25–62:16, 64:12–65:8, 66:25–67:6, 70:22–71:9, 79:22–80:25; Ex. HH, Hardin 30(b)(6) Dep., 61:15–64:4, 67:17–25; Ex. II, Hiebert Dep., 42:3–11, 43:1–7 ; Ex. R, Meyers Dep., 45:3–47:17, 130:11–19 ; Ex. JJ, James Rowland Dep., 66:16–67:7, 69:14–21.

   i. **WTPA's response:  <u>Disputed</u>.**  While WTPA may have been the copyright holder and/or publisher of Jehovah's Witnesses publications during the relevant time period, WTPA was not involved in the distribution or instruction of those materials.  *See* Ex. 4, 30(b)(6) Depo. WTNY/Jefferson at 98:11-103:9.  Those publications were written largely by the writing department at Bethel.  *See* Ex. 1, 30(b)(6) Depo. WTPA/Devine at 79:2-80:6.  However, WTPA had no involvement relating to any all bodies of elders letters which were sent during the relevant period.  Ex. 1, 30(b)(6) Depo. WTPA/Devine at 135:6-136:22.  Finally, besides being the copyright holder or publisher of Jehovah's Witnesses publications, WTPA was not responsible for or involved in the training schools for elders during the relevant time period.  *See* Ex. 1, 30(b)(6) Depo. WTPA/Devine at 112:3-113:10; Ex. 2, 30(b)(6) Depo. WTPA/Moreno at 62:7-13.

 d. The Governing Body, WTPA, and WTNY were all working in concert to organize and hold training sessions, a.k.a. Kingdom Ministry School, to teach local elders how to do their jobs.  Ex. A, 1970 Yearbook of JWs, 40; Ex. E, 1977 Branch Organization, 23-1 ¶¶ 1–3; Ex. K, WTPA 30(b)(6) Moreno Dep., 42:20–22; Ex. EE, WTNY 30(b)(6) Jefferson

      Dep., 110:5–111:2, 216:25–218:3; Ex. FF, WTNY 30(b)(6) Moreno Dep., 15:19–23.

    i.    **WTPA's response: <u>Disputed</u>.**  Besides being the copyright holder or publisher of Jehovah's Witnesses publications, WTPA was not responsible for or involved in the training schools for elders during the relevant time period.  *See* Ex. 1, 30(b)(6) Depo. WTPA/Devine at 112:3-113:10; Ex. 2, 30(b)(6) Depo. WTPA/Moreno at 62:7-13.

e.    WTNY, acting through the Service and Legal Departments answered questions that local elders had regarding implementation of the Organization's policies, including question on how to handle reports of child sex abuse.  Ord. at 38, ECF No. 318; Br. at 1, 5-6, 9, ECF No. 204 (citing Moreno Aff., ¶¶ 5-6, 8-9, ECF No. 204-1).

    i.    **WTPA's response:  <u>Undisputed</u>.**

8. **The Jehovah's Witnesses' entities in New York were collectively and without distinction referred to as the "Society."**

a.    The Jehovah's Witnesses' own Circuit Overseer acknowledged that the Organization's publications often simply referred to the "Society" without distinguishing between corporate entities.  Ex. R, Lovett Dep. 62:17–63:23.

   i. **WTPA's response: <u>Disputed and Immaterial</u>.** Use of the term "Society" by Jehovah's Witnesses during the relevant time period was a catchall term used to encompass all the legal entities used by Jehovah's Witnesses, and it did not refer to any particular legal corporation or entity. Ex. 1, 30(b)(6) Depo. WTPA/Devine at 108:25-109:13, 134:8-135:5.

b. Jehovah's Witnesses commonly referred to the Organization's entities as the "Society." Ex. B, WTPA 30(b)(6) Devine Dep., 108:25–109:13.

   i. **WTPA's response: <u>Disputed and Immaterial</u>.** Use of the term "Society" by Jehovah's Witnesses during the relevant time period was a catchall term used to encompass all the legal entities used by Jehovah's Witnesses, and it did not refer to any particular legal corporation or entity. Ex. 1, 30(b)(6) Depo. WTPA/Devine at 108:25-109:13, 134:8-135:5.

## II. <u>ADDITIONAL FACTS RELIED ON IN OPPOSITION TO PLAINTIFFS' MOTION.</u>

1. WTPA's primary role during the relevant time period from 1973 to 1992 was to hold the copyright and publish some of the Jehovah's Witnesses publications, including their most prized possession, the New World Translation of Holy Scriptures. *See* Ex. 1, 30(b)(6) Depo. WTPA/Devine at 38:21-40:8, 97:10-99:16, 121:25-122:23, 126:4-128:2, 130:3-131:8.

2. WTPA and Watchtower Bible and Tract Society of New York, Inc. ("WTNY") are separate legal entities, but they assist one another when needed to accomplish their shared purpose – to preach the good news of God's kingdom worldwide and promote Bible education. *See* Ex. 1, 30(b)(6) Depo. WTPA/Devine at 37:15-40:8, 100:6-101:12.

3. While WTNY and WTPA both seek to accomplish the same goal of promoting Bible education, WTNY's efforts are conducted in the United States and WTPA has interests all over the world. *See* Ex. 1, 30(b)(6) Depo. WTPA/Devine at 18:15-19:7, 39:17-42:8, 44:20-46:6, 105:18-106:9; Ex. 2, 30(b)(6) Depo. WTPA/Moreno at 13:19-14:19; *see also* Doc. 352-3 at 4-5, ¶¶ 6(a) and (b).

4. WTPA's corporate charter contains no indication that it controlled or had authority over any other corporations used by Jehovah's Witnesses during the relevant time, including over WTNY. Ex. 1, 30(b)(6) Depo. WTPA/Devine at 32:16-33:16, 100:6-101:25. WTPA also was not the parent corporation of WTNY during that time. Ex. 1, 30(b)(6) Depo. WTPA/Devine at 100:6-106:21.

5. WTNY and WTPA each operate through their respective boards of directors and officers. *See* Doc. 352-3 and 352-4; Ex. 1, 30(b)(6) Depo. WTPA/Devine at 20:20-23:8 (directors and officers of WTPA). Directors for WTPA are required to be members of the Worldwide Religious Order of Special

Full-Time Servants, and they are chosen primarily due to their spiritual qualifications. Ex. 1, 30(b)(6) Depo. WTPA/Devine at 23:9-24:4, 27:11-28:16.

6. Each board of directors would take actions through separate meetings, votes, and resolutions by each entity. *See, e.g.,* Ex. 1, 30(b)(6) Depo. WTPA/Devine at 18:15-20:19, 27:11-19, 42:9-23. For WTPA, there was no veto power beyond the WTPA Board of Directors' vote and approval of an action. Ex. 1, 30(b)(6) Depo. WTPA/Devine at 50:13-51:13. However, WTNY and WTPA would sometimes hold joint board meetings. *See, e.g.,* Ex. 2, 30(b)(6) Depo. WTPA/Moreno at 86:9-88:2.

7. Throughout the relevant time period, members of the Governing Body also served as directors for WTPA. Ex. 1, 30(b)(6) Depo. WTPA/Devine at 83:13-85:13. Prior to that, the Governing Body and the Board of Directors for WTPA were identified together; however, starting in 1971, Jehovah's Witnesses no longer considered them as the same group of actors. *See* Ex. 1, 30(b)(6) Depo. WTPA/Devine at 115:5-117:21, 118:25-120:11; Ex. 2, 30(b)(6) Depo. WTPA/Moreno at 34:14-38:19.

8. During the relevant time period, WTNY and WTPA largely shared to the same offices as cooperating entities for Jehovah's Witnesses, because their directors and volunteers used the same offices given to them as part of their work assignment as members of the Religious Order within the Bethel structure. *See* Ex.

18

2, 30(b)(6) Depo. WTPA/Moreno at 62:14-66:15, 67:6-69:17; *see also* Ex. 1, 30(b)(6) Depo. WTPA/Devine at 32:16-33:16, 34:19-37:14.  However, WTNY and WTPA were not both served by all the various departments at Bethel during that time.  *See, e.g.,* Ex. 1, 30(b)(6) Depo. WTPA/Devine at 28:17-31:9, 44:20-46:6 (WTPA used the Treasurer's Office for its financial matters while WTNY used the U.S. Accounting Department).

9. WTPA had no employees from 1973 to 1992 – its tasks were carried out by members of the Religious Order.  Ex. 2, 30(b)(6) Depo. WTPA/Moreno at 66:17-67:5, 69:24-70:22.

10. During the relevant time period, besides being the copyright holder or publisher of Jehovah's Witnesses publications, WTPA was not responsible for or involved in the training schools for elders, the appointment or removal of elders, or the assignment of circuit overseers in the U.S.  *See* Ex. 1, 30(b)(6) Depo. WTPA/Devine at 112:3-113:10 (organization of Kingdom Ministry School training), 113:23-114:19 (assignment of circuit overseers), 121:14-130:2 (appointment and removal of congregation elders and ministerial servants); Ex. 2, 30(b)(6) Depo. WTPA/Moreno at 62:7-13 (payment of costs for Kingdom Ministry Schools); Ex. 4, 30(b)(6) Depo. WTNY/Jefferson at 46:13-57:6 (appointment process of elders in the U.S.), 142:8-145:6 (appointment and removal of traveling overseers).  WTPA also does not sponsor any activities at the congregation level in

Montana or participate in the appointment of elders or ministerial servants in congregations in Montana. Ex. 2, 30(b)(6) Depo. WTPA/Moreno at 138:2-23.

11.     WTPA was also not involved in the application or approval of new congregations. Ex. 1, 30(b)(6) Depo. WTPA/Devine at 131:13-23.

12.     From 1973 to 1992, WTPA was not responsible for monitoring the functions or organization of local congregations. Ex. 1, 30(b)(6) Depo. WTPA/Devine at 129:8-13. Each congregation forms its own legal entity to operate its kingdom hall and other functions. Ex. 1, 30(b)(6) Depo. WTPA/Devine at 32:16-33:16.

**DATED** this 10th day of May, 2024.

        MOULTON BELLINGHAM PC

        By: */s/ Gerry P. Fagan*
            GERRY P. FAGAN
            CHRISTOPHER T. SWEENEY
            JORDAN W. FITZGERALD
            27 North 27th Street, Suite 1900
            P.O. Box 2559
            Billings, Montana 59103-2559

        *Attorneys for Defendant Watch Tower Bible and Tract Society of Pennsylvania*