Robert L. Stepans
Ryan R. Shaffer
James C. Murnion
Victoria K.M. Gannon
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT  59802
Tel: (406) 543-6929
Fax: (406) 721-1799
rob@mss-lawfirm.com
ryan@mss-lawfirm.com
james@mss-lawfirm.com
katy@mss-lawfirm.com

Matthew L. Merrill (appearing *pro hac vice*)
Merrill Law, LLC
1401 Delgany Street, #404
Denver, CO  80202
Tel: (303) 947-4453
matthew@merrillwaterlaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | | |
|---|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | ) ) ) | Case No. CV-20-52-BLG-SPW |
| Plaintiffs, | ) ) | **PLAINTIFFS' REPLY BRIEF** |
| vs. | ) ) | **IN SUPPORT OF THEIR MOTION FOR SANCTIONS** |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA., | ) ) ) ) ) | **RE: WTNY'S PATTERN OF DECEPTION AND DISCOVERY ABUSE (ECF NO. 365)** |
| Defendants, | ) ) | |

## REPLY

WTNY argues Plaintiffs' Motion should be denied because it has already

been sanctioned for some of its bad faith conduct and it believes Plaintiffs' cases

should be dismissed on summary judgment.  This attempt at sleight-of-hand—whereby WTNY asserts that its ongoing pattern of deception and obstruction should be ignored because the "rightful decision" is "we win"—should be rejected. WTNY has proven that it will engage in deception to obtain an outcome that is not justified by the facts unless and until it is caught.  Indeed, as will be set forth in more detail herein, to this day WTNY is still attempting to deceive the Court and take advantage of confusion it has created about the inner workings of the Jehovah's Witnesses Organization to obtain relief it is not entitled to.

WTNY attempts to minimize its pattern of bad faith, deceptive conduct as nothing more than "routine discovery disputes."  Intentionally mischaracterizing the contents of documents being withheld under a claim of privilege is not a "routine discovery dispute."  Defying court orders to provide full and complete discovery is not a "routine discovery dispute."  Misrepresenting your relationship to fact witnesses is not a "routine discovery dispute."  Failing to institute a litigation hold and then subsequently destroying evidence in the face of consistent litigation threats is not a "routine discovery dispute."

While Plaintiffs have spent an inordinate amount of time uncovering WTNY's deception, it is impossible to know what still remains buried.  The sum total of WTNY's conduct in this case amounts to a pattern of deception and

discovery abuse that has made it impossible to have any reasonable assurance that the jury will be presented the "truth" at trial.

### 1.  WTNY continues to choose deception over transparency.

Plaintiffs have long been concerned that WTNY is refusing to provide accurate, discoverable information about the structure of the Jehovah's Witnesses' Organization so that it can use confusion about that structure as a defense.  *See, e.g.,* ECF Nos. 287, 288, 331, 332.  As predicted, WTNY is now attempting to do just that.  On May 9, 2024, WTNY submitted a brief arguing that Plaintiffs' Motion for Partial Summary Judgment Re: Agency of Hardin Elders should be denied because, *inter alia*, it argues that the Court entered findings that the U.S. Branch Office, not WTNY, was responsible for various acts relevant to the agency analysis:

> ➢ "Plaintiffs ignore this Court's prior order that established as a fact in this case that the U.S. Branch Office – not WTNY – has 'central control' over congregations and that congregations operate 'under the direction of the theocratic organization.'"  Def. WTNY's Resp. in Opp'n to Pls.' MPSJ re: Hardin Elders are Agents of WTNY at 2, ECF No. 379 (quoting Ord. at 39, ECF No. 318).[1]

---

[1] All pinpoint citations to ECF documents herein refer to the ECF page number at the top of the page.

➢ "Contrary to that prior order, Plaintiffs ask the court to conclude that it was not the U.S. Branch Office or the Governing Body, but WTNY that actually exercised control over the Hardin Congregation." *Id.* at 6.

➢ "This Court's prior Order speaks to this issue when it decided as a fact of this case that during the relevant time period 'the U.S. Branch Office worked in concert with WTNY to inform local congregations of the appointment and removal of elders.' [] This finding does not support Plaintiffs' contention that WTNY had authority to remove Hardin elders." *Id.* at 8 (quoting Ord. at 39, ECF No. 318).

➢ "Plaintiffs contend that WTNY trained Hardin elders to perform duties at in person training sessions known as Kingdom Ministry Schools.  [] But the Court previously found that it was 'The U.S. Branch Office' that held training conventions to teach local elders." *Id.* at 10 (quoting Ord. at 38, ECF No. 318).

WTNY fails to tell the Court that after the Court made the above-referenced findings, but before WTNY filed its Response, WTNY testified at its 30(b)(6) deposition that the U.S. Branch Office did not even formally exist during the

Plaintiffs' Reply Brief in Support of Their Motion for Sanctions re: WTNY's Pattern of Deception and
Discovery Abuse (ECF No. 365)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
4

relevant time period.[2]  Ex. A, WTNY 30(b)(6) Dep. (Jefferson), 77:13–17,

156:23–158:6.

The cynicism in WTNY's argument is difficult to overstate.  As WTNY

knows, the above referenced findings were the result of Plaintiffs and the Court

attempting to piece together information from documents because WTNY refused

to provide that information in written discovery.  This presented WTNY an

opportunity to be transparent and forthcoming with facts, to correct the record on

the formation of the U.S. Branch Office in 2001, as well as the true nature of the

"branch" as it existed prior to 2001 and its relationship with WTNY during the

relevant time period.  Indeed, this is what any litigant who cared about a trial based

on the truth and the merits would do.  Instead, WTNY chose to maintain its

contempt of this Court's order requiring it to supplement its answer to

Interrogatory No. 15,[3] sit silently as the Court made factual findings that do not

reflect reality, and then attempted to use those findings to its own benefit.

_____

[2] The Court recently issued an Order clarifying the same.  Ord. at 5, ECF No. 388.

[3] WTNY takes the position that because the Court has already issued sanctions on
this issue, no further sanctions are justified.  WTNY's Resp. in Opp'n to Pls.'
Motion at 7, ECF No. 376 (hereinafter "WTNY's Br.").  But WTNY is still in
contempt of the Court's prior order.  Nothing in Rule 37 prevents the Court from
issuing further sanctions for the ongoing contempt like it recently did.  Ord., ECF
No. 319.

Virtually every time WTNY is presented with the choice of transparency or deception, it chooses deception.  WTNY has demonstrated that "lesser sanctions" will not stop it from being deceptive and dishonest.  It is this type of repeated deception, with no end in sight, that the Ninth Circuit has identified as warranting severe sanctions.  *See Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 352 (9th Cir. 1995) (lesser sanctions are not appropriate where continued deceptive misconduct is anticipated).

**2.  WTNY lied about when it had notice of Plaintiffs' sexual abuse.**

In establishing that WTNY has engaged in an extensive a pattern of deception, Plaintiffs pointed out that WTNY swore in an interrogatory answer that it did not have "notice" of the sexual abuse in this case until 2020, when in fact its own privilege log and documents show that it had notice no later than 1992.  Why would WTNY lie about when it had notice of the sexual abuse at issue in this case? The answer is simple: if it can say it didn't know about the abuse then it can argue it had no duty to stop it.

First, it is important to note that when WTNY swore under oath that it first received notice in 2020, it was withholding (and hoping Plaintiffs would never see)

the documents showing that it had notice no later than 1992.[4]  Thus, WTNY

believed it could sustain its lie by continuing to wrongfully withhold evidence.

WTNY argues its dishonest interrogatory answer is justified because it "was

based on its assertion of privilege that the Court evaluated and upheld."  WTNY's

Br. at 26–27.  This makes no sense: notice is notice, and reality is reality.  WTNY

does not get to create alternative facts and reality by asserting privilege.  WTNY is

well aware that the assertion of the clergy-penitent privilege protects

communications, not facts.[5]  WTNY's assertion of the clergy-penitent privilege did

not create an alternate reality, or give it license to lie about when it first received

notice of the sexual abuse at issue in this case.  WTNY had an obligation to

disclose when it first received notice and could have easily done so without

waiving any privilege.  Instead, it chose to lie.

WTNY complains that Plaintiffs did not confer about its dishonest

interrogatory answer.  WTNY's Br. at 26.  It is unclear why WTNY believes that it

---

[4] To be clear, Plaintiffs are not asserting that 1992 is when WTNY first got notice
of the abuse.  Rather, the evidence shows WTNY got notice through its various
agents in the mid-70s.

[5] WTNY has itself acknowledged that disclosing facts, like when it received notice
of the sexual abuse at issue in this case, does not waive the privilege over the
content of communications.  *E.g.*, Def. WTNY's Resp. Br. in Opp'n to Pls.' Mot.
to Compel at 24–25, ECF No. 193.  The Court agreed with WTNY, and such is
now the law of the case.  Ord. at 6, ECF No. 217; Ord. at 9, ECF No. 239.

Plaintiffs' Reply Brief in Support of Their Motion for Sanctions re: WTNY's Pattern of Deception and
Discovery Abuse (ECF No. 365)
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
7

needs Plaintiffs' counsel to call and remind it of its duty to answer interrogatories honestly.

WTNY's excuses for lying about when it received notice of the sexual abuse at issue only serves to highlight its propensity to justify any and all manner of deception without compunction or remorse.  Moreover, it raises the question: what else has WTNY lied about under the dubious justification that the clergy-penitent privilege permits it to do so?  Plaintiffs and the Court will never know.  This is exactly the type of insidious deception that courts in the Ninth Circuit recognize as undermining the ability to have a fair trial on the merits.  *See, e.g., TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1991) (willful deceit of the court is a legitimate basis for issuing dispositive sanctions).

### 3. WTNY's deception and discovery abuse goes to the heart of Defendants' Motion for Summary Judgment re: duty.

WTNY wants everyone to believe that all the facts and evidence bearing on Defendants' request for summary judgment for lack of duty have been disclosed. *See* WTNY's Br. at 30–32.  Not only does WTNY's repeated deception and discovery abuse belie its suggestion, the history of WTNY's obstruction into Plaintiffs' discovery of facts and evidence bearing on the duty analysis shows otherwise.  For example:

> ➤ One of the central questions in the duty analysis is whether "the harm at issue is of a type reasonably foreseeable under the

circumstances[.]" *See* Pls.' Br. in Resp. to Defs.' Joint MSJ at 10,

ECF No. 382 (*Md. Cas. Co. v. Asbestos Claims Ct.*, 460 P.3d 882, 894

(Mont. 2020).).  If WTNY was aware that men in the Hardin

Congregation were sexually abusing young girls, then the harm

Plaintiffs suffered was reasonably foreseeable.  Yet, WTNY lied

about when it received notice of such abuse.

➤ Montana imposes a duty on principals to hire, train, and supervise its

agents.  *See* Pls.' Br. in Resp. to Defs.' Joint MSJ at 22, ECF No. 382

(citing Montana cases).  Which of the Organization's entities and

departments were appointing, training, and supervising the Hardin

Elders is thus relevant, and WTNY has obstructed discovery into the

same.

These are just two examples of known instances that WTNY's obstruction touch

on the duty analysis.

Plaintiffs have also established that WTNY failed to preserve documents

material to this case after it had a duty to do so.  *See* ECF Nos. 328, 329, 373.  It is

impossible to know what information was in these documents that could bear on

the Court's duty analysis.  This is exactly why the law provides that parties who

engage in a pattern of discovery abuse and deception are subject to severe, even

dispositive, sanctions: the integrity of the process is so compromised that an outcome based on the facts and merits cannot be reasonably assured.

### 4. Brumley's deceptive affidavit.

WTNY asserts that the Court should not consider Philip Brumley's effort to mislead the Court about WTPA's jurisdictional activities because his affidavit was not filed on behalf of WTNY. WTNY's Br. at 11–12. However, WTNY fails to tell this Court, both now and previously, what was revealed for the first time at the Ninth Circuit: Brumley's affidavit was "prepared with the assistance and advice of WTPA's counsel in the litigation." Ex. B, Appellant's Opening Br. at 8. At this point in time, WTNY's current counsel was also representing WTPA. Thus, the misleading Brumley affidavit was apparently drafted by the same lawyers who have engaged in all of the conduct at issue on this Motion and it is proper for the Court to consider that conduct.

### 5. Plaintiffs' Motion is not seeking double relief.

While the Court has issued orders sanctioning WTNY along the way, Plaintiffs' present motion is different: it seeks relief for the "pattern of deception and discovery abuse" taken as a whole because it has "made it impossible for the district court to conduct a trial 'with any reasonable assurance that the truth would be available.'" *Valley Engineers Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057–58 (9th Cir. 1998) (quoting *Anheuser–Busch*, 69 F.3d at 348). Even where conduct

has been sanctioned along the way, courts evaluating whether the prospect of a fair

trial has been compromised must look at the entirety of that sanctionable conduct.

*Adriana Intern. Corp. v. Thoeren*, 913 F.2d 1406, 1411 (9th Cir. 1990).[6]

### 6. Plaintiffs' motion is not one for reconsideration under Rule 59(e) or a serial motion under Local Rule 7.1(d)(2)(D).

WTNY incorrectly argues that Plaintiffs' Motion should be denied for

failing to adhere to Federal Rule of Civil Procedure 59(e).[7]  WTNY's Br. at 8–9.

But Rule 59(e) provides a procedural avenue for a party to "alter or amend a

judgment", and Plaintiffs are not seeking to alter or amend any judgment, calling

into question the correctness of a prior ruling, or seeking an alteration of a prior

ruling.

Local Rule 7.1(d)(2)(D) states "Filing serial motions to avoid word limits

may result in denial of all such motions."  While Plaintiffs have had to file motions

when WTNY attempts to deceive and obstruct discovery, none of those motions

---

[6] WTNY claims Plaintiffs failed to identify the statute or rule relied on.  WTNY's Br. at 6.  However, the applicable Ninth Circuit cases cited by Plaintiffs in their opening brief use one or both of Rule 37 and the Court's inherent authority. Indeed, the Ninth Circuit has "held that dismissal sanctions under Rule 37 and a court's inherent powers are similar.  We, therefore, use cases involving dismissal under Rule 37 and inherent powers interchangeably."  *Adriana Intern. Corp. v. Thoeren*, 913 F.2d at 1412, n. 4 (citing *United States for the Use and Benefit of Wiltec Guam, Inc. v. Kahaluu Construction Co.*, 857 F.2d 600, 603, n. 5 (9th Cir.1988)).

[7] WTNY's confused Rule 59(e) argument was recently rejected by the Court in relation to a separate motion.  Ord. at 4, ECF No. 388.

have been designed or filed to avoid word limits.  WTNY claims the "most egregious" example is related to the depositions of Shuster and Breaux.  WTNY's Br. at 9.  But all Plaintiffs did was summarize, in one paragraph, the supporting brief while repeatedly citing thereto as one instance of the pattern of deception and discovery abuse WTNY has engaged in.  Pls.' Br. in Support of Pls.' Motion at 9–10, ECF No. 366.  Plaintiffs did not file a serial motion to avoid the word limits; the Court should reject this argument.

### 7. Plaintiffs are not asking the Court to decide matters of religious doctrine.

WTNY repeats its familiar, strained argument that it is immune from secular laws because it has a religious purpose, therefore the Court cannot order the sanctions proposed by Plaintiffs.  WTNY's Br. at 28.  But Plaintiffs are not asking the Court to decide matters of religious doctrine or resolve church employment disputes, they are asking the Court and jury to consider whether the corporate policies and procedures WTNY imposed on its subsidiary congregations, *inter alia*, negligently caused Plaintiffs' damages.  Indeed, the First Amendment does not give WTNY "general immunity from secular law."  *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020).

Just like every other instance where WTNY raised this argument, the cases cited do not support its position.  In *Puri v. Khalsa*:

> The question before us is whether the Free Exercise and
> Establishment Clauses of the First Amendment preclude a civil court
> from granting relief on the plaintiffs' claims, which seek declaratory
> and injunctive relief in the form of placement on the management
> boards of organizations associated with the Sikh Dharma religious
> community as well as damages for lost compensation due to their
> previous exclusion from those boards.

844 F.3d 1152, 1157 (9th Cir. 2017).  The Ninth Circuit answered in the negative,

the First Amendment did not prohibit consideration of plaintiff's claims because

neutral, secular laws could be applied to the dispute.  *Id.* at 1167.  "The dispute,

'which concern[s] the [d]efendants' actions, not their beliefs,' turns entirely on

'what the [defendants] did, ... and the texts guiding [their] actions can be subjected

to secular legal analysis.'"  *Id.* at 1167 (quoting *Elvig v. Calvin Presbyterian

Church*, 375 F.3d 951, 953 (9th Cir. 2004)).

Here, the policies and procedures Plaintiffs seek established as a sanction for

WTNY's pattern of deception and discovery abuse are all found within manuals

WTNY required its Hardin Congregation Elders to follow.[8]  Plaintiffs are only

asking that the neutral laws of Montana be applied here, just like the Ninth Circuit

determined was proper in *Puri*.

///

///

---

[8] The specific policies and procedures at issue in this case were set forth in detail
and with supporting evidence conjunction with pending motions for summary
judgment.  Pls.' SUF at ¶¶ 7a, ECF No. 352; Pls.' SDF at ¶¶ 17a–j, ECF No. 383.

## CONCLUSION

WTNY's response attempts to whitewash all of its deceptive and dishonest conduct and then sweep it all away with its subjective conclusion that it should win this case on summary judgment.  This is a disservice to the facts and the law.  The integrity of the civil litigation process is wholly dependent on parties being honest, forthcoming, and transparent with discoverable information.  Parties that engage in a pattern of deception and bad faith conduct undermine the integrity of that process.  WTNY has demonstrated that it has no problem deceiving Plaintiffs and the Court unless and until it gets caught.  While Plaintiffs have unearthed many instances of sanctionable conduct, it is impossible to know the full scope of WTNY's deception.  Accordingly, Plaintiffs respectfully submit that WTNY's deception must be remedied to ensure that their right to a fair trial, based on truth, is preserved.

DATED this 17th day of May, 2024.


By: /s/ Ryan Shaffer
    Ryan R. Shaffer
    MEYER, SHAFFER & STEPANS PLLP

    *Attorneys for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.3(d)(2), Plaintiff hereby certifies that this brief complies with the length requirement for briefs, and that this brief contains 3,028 words, excluding the caption, certificates of service, and compliance, table of contents, and authorities, and exhibit index.

By: /s/ Ryan Shaffer
     Ryan R. Shaffer
     MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

Pursuant to Local Rule 1.4, this document has been served on all parties via electronic service through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

By: /s/ Ryan Shaffer
     Ryan R. Shaffer
     MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*