*Exhibit L*

Robert L. Stepans
Ryan R. Shaffer
James C. Murnion
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT 59802
Tel: (406) 543-6929
Fax: (406) 721-1799
rob@mss-lawfirm.com
ryan@mss-lawfirm.com
james@mss-lawfirm.com

Matthew L. Merrill (appearing *pro hac vice*)
Merrill Law, LLC
1863 Wazee Street, #3A
Denver, CO 80202
Tel: (303) 947-4453
matthew@merrillwaterlaw.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | | |
|---|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | ) | |
| Plaintiffs, | ) | Case No. CV-20-52-BLG-SPW |
| vs. | ) | |
| | ) | |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR., | ) | |
| Defendants, | ) | |
| | ) | |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., | ) | |
| Cross Claimant, | ) | |
| | ) | |
| BRUCE MAPLEY, SR., | ) | |
| Cross Defendant. | ) | |

ARIANE ROWLAND, and JAMIE    )
SCHULZE                       )
                             )       Cause No. CV 20-59-BLG-SPW
            Plaintiff,        )
                             )
        vs.                   )
                             )
WATCHTOWER BIBLE AND TRACT    )
SOCIETY OF NEW YORK, INC., and )
WATCH TOWER BIBLE AND TRACT   )
SOCIETY OF PENNSYLVANIA,      )
                             )
            Defendants.       )
                             )

## AMENDED NOTICE OF RULE 30(b)(6) FOUNDATIONAL DEPOSITION OF DEFENDANT WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC. REGARDING THE INFORMATION PERTAINING TO CHILD SEX ABUSE

**PLEASE TAKE NOTICE** that Plaintiffs, by and through undersigned

counsel, hereby cancels the deposition of Defendant Watchtower Bible and Tract

Society of New York, Inc. ("WTNY") previously noted for **Tuesday, September**

**27, 2022,** starting at **9:00 a.m. (ET)**, at **Miller, McNamara & Taylor, LLP, 100**

**South Bedford Road, Suite 340, Mount Kisco, NY 10549** and reschedules this

deposition as set forth below.  Pursuant to Federal Rule of Civil Procedure

30(b)(6), and for the purpose of obtaining foundational testimony regarding the

Jehovah's Witness Organization's policies and practices pertaining to the existence

of information about child sex abuse, the Plaintiffs in the above-entitled actions

will take the oral deposition of Defendant Watchtower Bible and Tract Society of

New York, Inc. ("WTNY") on **Tuesday, October 11, 2021** starting at **9:00 a.m. (ET)** and continuing thereafter until the same shall be completed.  The deposition will take place at **Veritext Legal Solutions, 50 Main Street, 3rd Floor, White Plains, NY  10606**.  The deposition will be recorded by stenographic means before a duly qualified court reporter and by audiovisual  means.

WTNY shall designate and prepare one or more officers, officials, directors, managing agents, employees, or other person who has knowledge to testify on its behalf, setting forth in the designation, for each person designated, the matters on which the person will testify on the following topics:

1.  Identification of each database[1] or filing system which contains, or previously contained, information about child sex abuse allegations involving a person or persons associated with the Jehovah's Witnesses organization (including all local congregations) in any capacity at any time.[2]

---

[1] For the purpose of this Notice, a "database" is commonly understood to be an organized collection of information, regardless of format or label.

[2] Because Plaintiffs do not know all of the organized collections of data with information about child sex abuse at Jehovah's Witness congregations, this topic is intended to require WTNY to prepare a witness to inform Plaintiffs about the existence of each such organized collections of data without limitation, but certainly including:

> ➢ Files maintained by the Service Department for each congregation.  *See Lopez v. Watchtower Bible and Tract Socy. Of New York, Inc.*, 201 Cal. Rptr. 3d 156, 169 (Cal.App. 4th Dist. 2016);
> ➢ The CM database, as referenced by Joel Taylor in the attached transcript of proceedings. Reporter's Transcript, 25:16 – 26:11 (Aug. 11, 2021) (attached as **Exhibit A**);

2.  For each database or filing system responsive to Topic No. 1, the following information:

    a.  The date that the database or filing system was created;

    b.  The number of years the database or filing system was actively managed and maintained;

    c.  The format of the data and information contained in the database or filing system (i.e. was it digital, and if so, what format?);

    d.  Each category of information contained in the database or filing system;

    e.  The types of information contained in the database or filing system, including identification of whether the database or filing system contains (or contained) information about historical child sex abuse at Jehovah's Witness congregations;

    f.  The source material for all information contained in the database or filing system;

---

➢ The raw data, electronic data, call logs, or whatever other information was collected and organized as referenced by Joel Taylor in the attached transcript of proceedings.  **Ex A**, 27:1-12; and

➢ The HuB database.

g.  The location of the database or filing system, including identification of any digital platform, server, or computer system hosting the database or filing system;

h.  The person(s) responsible for entering information into the database or filing system;

i.  The person(s) responsible for maintaining the information in the database or filing system;

j.  Identification of person(s) with access to the database or filing system, including members of the Governing Body;

k.  Identification of person(s) who were excluded from having access to the database or filing system, including members of the Governing Body;

l.  How information in the database or filing system is disseminated and/or retrieved by intended users;

m. The available methods of searching the database or filing system;

n.  Whether the database or filing system still exists; and

o.  For any database or filing system that no longer exists, the current location of all information previously contained in that database or filing system.

p. For any database or filing system that no longer exists, identification of the person(s) responsible for integrating the information previously contained therein into any other database or filing system.

3. All policies (written or unwritten) pertaining to the entry, maintenance, and deletion of information for all databases or filing systems responsive to Topic No. 1.

4. All policies (written or unwritten) pertaining to restricting access to each database or filing system responsive to Topic No. 1.

5. Identify each entity, department, individual, or group of individuals, regardless of corporate affiliation, who is responsible for obtaining and storing information about child sex abuse allegations involving a person or persons associated with the Jehovah's Witnesses organization (including all local congregations) in any capacity at any time.

6. Function and operation of the Legal Department, including but not limited to (1) all jobs, positions, roles, titles, etc. for personnel in the Legal Department, and the duties and qualifications of each; (2) the intake process for clients of the Legal Department, including whether conflict checks are conducted and conflict waivers are used, attorney-client agreements exist, how the scope of the representation is determined, how intake information is stored, who has access to the intake information, and whether reports of

child sex abuse are handled differently than other reports of wrongdoing; (3) the representation process, including whether the scope of the representation is described to the client, how the client file is stored and maintained, who has access to the client file, any limitations on the type of legal work that may be performed by the Legal Department (civil, criminal, business, etc.); and (4) how documents generated by the Legal Department, or received directly from local congregations, are stored and maintained.

7. Function and operation of the Service Department, including but not limited to (1) all jobs, positions, roles, titles, etc. for personnel in the Service Department, and the duties and qualifications of each; (2) the intake process for anyone who talks to the Service Department about child sex abuse; (3) whether reports of child sex abuse are handled differently than reports of other types of wrongdoing; (4) how documents generated by the Service Department, or received directly from local congregations, are stored and maintained.

8. Please identify all written and unwritten policies and procedures that apply to the obtaining and storing of information about child sex abuse allegations occurring within Jehovah's Witness congregations.

9. Identify how elders have been instructed to report instances or allegations of child sex abuse to WTNY, WTPA, CCJW, or any other Jehovah's Witness

entity or group responsible for managing and responding to instances or allegations of child sex abuse.

10. Procedures for receiving calls from elders about allegations of child sex abuse as they existed during the time period 1973 to 1992.

    a. How calls received from elders were passed from the Legal Department to the Service Department;

    b. Documentation of the calls to and information received by the Service Department;

    c. How the Service department information is stored in the HuB database; and

    d. Sharing of information between legal department and service department regarding calls from elders about allegations of child sex abuse.

11. Procedures for receiving calls from elders about allegations of child abuse.

    a. How calls received from elders are passed from the Legal Department to the Service Department;

    b. Documentation of the calls to and information received by the Service Department;

    c. How the Service department information is stored in the HuB database; and

d.  Sharing of information between legal department and service

department regarding calls from elders about allegations of child sex

abuse.

DATED this 22nd day of September, 2022.

MEYER, SHAFFER & STEPANS, PLLP

/s/ Ryan Shaffer
Ryan R. Shaffer

*Attorneys for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of September, 2022, a true and accurate copy of the foregoing was served on the following via email and U.S. Mail:

Jon A. Wilson
Brett C. Jensen
BROWN LAW FIRM, P.C.
315 North 24th Street
PO Drawer 849
Billings, MT  59103
jwilson@brownfirm.com
bjensen@brownfirm.com

Joel M. Taylor, Esq. *pro hac vice*
Miller McNamara & Taylor LLP
100 South Bedford Road, Suite 340
Mount Kisco, NY  10549
jtaylor@mmt-law.com
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

Gerry P. Fagan
Christopher T. Sweeney
Jordan W. FitzGerald
27 North 27th Street, Suite 1900
P.O. Box 2559
Billings, MT  59103
gerry.fagan@moultonbellingham.com
christopher.sweeney@moultonbellingham.com
jordan.fitzgerald@moultonbellingham.com
*Attorneys for Defendant Watch Tower Bible and Tract Society of Pennsylvania*

Bruce G. Mapley, Sr.
3905 Caylan Cove
Birmingham, AL 35215
bruce_mapley@yahoo.com

/s/ Ryan Shaffer

Robert L. Stepans
Ryan R. Shaffer
James C. Murnion
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT  59802
Tel: (406) 543-6929
Fax: (406) 721-1799
rob@mss-lawfirm.com
ryan@mss-lawfirm.com
james@mss-lawfirm.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | | |
|---|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | ) ) | Case No. CV-20-52-BLG-SPW |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, and BRUCE MAPLEY SR., | ) ) ) ) ) | |
| Defendants, | ) | |
| | ) | |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., | ) ) | |
| Cross Claimant, | ) | |
| | ) | |
| BRUCE MAPLEY, SR., | ) | |
| Cross Defendant. | ) | |

ARIANE ROWLAND, and JAMIE )
SCHULZE )        Cause No. CV 20-59-BLG-SPW
                    Plaintiff, )
        vs. )
WATCHTOWER BIBLE AND TRACT )
SOCIETY OF NEW YORK, INC., and )
WATCH TOWER BIBLE AND TRACT )
SOCIETY OF PENNSYLVANIA, )
                    Defendants. )
                               )
                               )
                               )
                               )
_____ )

## FIRST AMENDED NOTICE OF 30(b)(6) DEPOSITION OF DEFENDANT WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA

**PLEASE TAKE NOTICE** that pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiffs in the above-entitled actions will take the deposition of Defendant Watch Tower Bible and Tract Society of Pennsylvania ("WTPA") on October 19, 2021, starting at 9:00 a.m. EST, and continuing thereafter until the same shall be completed.  The deposition will take place at the office of Miller, McNamara & Taylor, LLP, 100 South Bedford Road, Suite 340, Mount Kisco, New York, 10549.

**PLEASE ALSO TAKE NOTICE** that pursuant to Federal Rule of Civil Procedure Rule 30(b)(3) the deposition will be taken before a certified court

*First Amended Notice of 30(b)(6) Deposition of*
*Defendant Watch Tower Bible and Tract Society of Pennsylvania*
Cases: CV 20-52-BLG-SPW & CV 20-59-BLG-SPW
2

reporter who will record the deposition by stenographic means and may also be recorded audio-visually.

Pursuant to Fed. R. Civ. Pro. 30(b)(6) WTPA shall designate one or more officers, officials, directors, managing agents, employees, or other person who has knowledge to testify on its behalf, setting forth in the designation, for each person designated, the matters on which the person will testify on the topics set forth in the attached **Exhibit 1**.

DATED this 16th day of September, 2021.

/s/ Ryan Shaffer
Robert L. Stepans
Ryan R. Shaffer
James C. Murnion
*Attorneys for Plaintiff*

**First Amended Notice of 30(b)(6) Deposition of**
**Defendant Watch Tower Bible and Tract Society of Pennsylvania**
Cases: CV 20-52-BLG-SPW & CV 20-59-BLG-SPW
3

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of September, 2021, a true and accurate copy of the foregoing was served on the following via email and U.S. Mail:

Jon A. Wilson
Brett C. Jensen
Guy W. Rogers
BROWN LAW FIRM, P.C.
315 North 24th Street
PO Drawer 849
Billings, MT  59103
jwilson@brownfirm.com
bjensen@brownfirm.com
grogers@brownfirm.com

Joel M. Taylor, Esq. *pro hac vice*
Miller McNamara & Taylor LLP
100 South Bedford Road, Suite 340
Mount Kisco, NY  10549
jtaylor@mmt-law.com

Bruce G. Mapley, Sr. (U.S. Mail ONLY)
3905 Caylan Cove
Birmingham, AL 35215

/s/ Ryan Shaffer

**First Amended Notice of 30(b)(6) Deposition of**
**Defendant Watch Tower Bible and Tract Society of Pennsylvania**
Cases: CV 20-52-BLG-SPW & CV 20-59-BLG-SPW
4

# *Exhibit 1*

EX 1 First Amended Notice of 30(b)(6) Deposition of
Defendant Watch Tower Bible and Tract Society of Pennsylvania

1. 1972 Kingdom Ministry School Course

   a. Who decided that this document would be published by WTPA, when was that decision made, and is there a document memorializing such decision?

   b. Please describe the purpose of this document, including:

      i. What it is the document used for?

      ii. Who is the intended reader or recipient of the document?

   c. Please state who determined that this document was necessary and needed to be compiled and published by WTPA, and when this was determined.

   d. Please describe how this document came to be.  For instance:

      i. How was the structure of the document selected and approved for publishing, including:

         1. Identification of who selected and approved what headings and subheadings would be used in the document and when all such decision were made.

         2. Identification of who chose and approved the "Table of Contents and Schedule for Study" and what order the subjects in the document would appear, and when all such decisions were made.

   ii.  How were the contents of the document selected and approved for publishing, including:

     1.  Identification of who selected and approved the words set forth in the "Explanation of Kingdom Ministry School Course" Section of the document and when all such decisions were made.

     2.  Identification of who selected and approved the biblical references used in each of the sections of the document, and when all such decisions were made.

     3.  Identification of who selected content that is not a direct quote from the bible or any other document.

   iii.  Were there, or are there, prior or subsequent versions of this document, if so, please identify each and be prepared to discuss when they were published, who published them, and any differences between those versions and the 1972 version.

e.  The first copy of this document

   i.  Who made it?

   ii.  Where was it made, please provide the physical address of this location, and the identity of the property owner of such location.

    iii.  How did he or she make it (i.e. typewriter or computer)?

    iv.  What was this person's position in the Jehovah's Witnesses organization?

    v.  What was this person's relationship to WTPA?

    vi.  What was this person's relationship to WTNY?

f.  Subsequent copies of this document

    i.  Who made all subsequent copies of this document?

    ii.  How were subsequent copies of this document produced (i.e. photocopier, if so, whose photocopier)?

    iii.  Where were subsequent copies this document produced, including the physical address of this location and identity of the property owner of such location.

g.  Copyright or proprietary rights to this document

    i.  Who owns such rights?

    ii.  Who determined that the owner would have such rights and was this memorialized in a document?

    iii.  Has the owner of such rights ever placed any limitations on the right of WTPA or WTNY to publish and distribute the document, and if so, were those limitations ever memorialized in a document?

    iv.  Has this document or a copy of it ever been sold by WTPA or WTNY?  If so when, and for how much was it sold, and is there a document memorializing this transaction?

    v.  Has WTPA entered into any agreement with any person or entity regarding the publishing rights, distribution rights, copying rights, or other rights related to use of this document, and if so, is such agreement memorialized in writing?

h.  Distribution of copies of this document

    i.  Describe how copies of the document went from the printing press or copier (or the functional equivalent of these that were used to create copies) to Kingdom Halls and other recipients, including identification of:

        1.  How it was determined where copies would be sent or delivered, including who made such a determination and whether that person was a representative of WTPA or WTNY?

        2.  The person or people who would have completed the printing / copying of the document, who they received their instructions from, and whether he or she was a representative of WTPA or WTNY.

3. The person or people who would have completed the packaging and labeling for distribution, and who they received their instructions from, and whether he or she was a representative of WTPA or WTNY.

4. The person or people who would have completed the mailing or delivery and who they received their instructions from and whether he or she was a representative of WTPA or WTNY.

i. How was the development, printing, copying, and distribution of this document paid for?

j. Please prepare a witness or witnesses to discuss the sections of this document which pertain to the "two-witness" rule.

k. Please prepare a witness or witnesses to discuss the sections of this document which pertain to handling accusations of wrongdoing, including accusations of sexual assault, by church elders, including how such accusations are to be investigated and what information about such allegations and investigations can be shared with members of the congregation and the public.

l.  Please prepare a witness or witnesses to discuss the sections of this document which prohibit disclosure of information which could be detrimental to the church's reputation and standing in the community.

m.  Please prepare a witness or witnesses to discuss the sections of this document which pertain to protecting victims of wrongdoing, including victims of sexual assault.

n.  Please prepare a witness or witnesses to discuss the sections of this document which pertain to the intersection of (and conflicts between) secular laws and God's laws.

2.  1972 Organization for Kingdom-Preaching and Disciple-Making

a.  Who decided that this document would be published by WTNY, when was that decision made, and is there a document memorializing such decision?

b.  Who decided that this document would be copyrighted by WTPA, when was that decision made, and is there a document memorializing such decision?

c.  Please describe the purpose of this document, including:

i.  What it is the document used for?

ii.  Who is the intended reader or recipient of the document?

d.  Please state who determined that this document was necessary and needed to be compiled and published by WTNY, and when this was determined.

e.  Please describe how this document came to be.  For instance:

    i.  How was the structure of the document selected and approved for publishing, including:

        1.  Identification of who selected and approved what headings and subheadings would be used in the document and when all such decision were made.

        2.  Identification of who chose and approved the "Table of Contents" and what order the subjects in the document would appear, and when all such decisions were made.

    ii.  How were the contents of the document selected and approved for publishing, including:

        1.  Identification of who selected and approved the words set forth in the "The Work of Preaching and Disciple-making" Section of the document and when all such decisions were made.

2. Identification of who selected and approved the biblical references used in each of the sections of the document, and when all such decisions were made.

3. Identification of who selected content that is not a direct quote from the bible or any other document.

   iii. Were there, or are there, prior or subsequent versions of this document, if so, please identify each and be prepared to discuss when they were published, who published them, and any differences between those versions and the 1972 version.

f. The first copy of this document

   i. Who made it?

   ii. Where was it made, please provide the physical address of this location, and the identity of the property owner of such location.

   iii. How did he or she make it (i.e. typewriter or computer)?

   iv. What was this person's position in the Jehovah's Witnesses organization?

   v. What was this person's relationship to WTPA?

   vi. What was this person's relationship to WTNY?

g. Subsequent copies of this document

    i.  Who made all subsequent copies of this document?

   ii.  How were subsequent copies of this document produced (i.e.
photocopier, if so, whose photocopier)?

  iii.  Where were subsequent copies this document produced,
including the physical address of this location and identity of
the property owner of such location.

h.  Copyright or proprietary rights to this document

    i.  Who owns such rights?

   ii.  Who determined that the owner would have such rights and was
this memorialized in a document?

  iii.  Has the owner of such rights ever placed any limitations on the
right of WTPA or WTNY to publish and distribute the
document, and if so, were those limitations ever memorialized
in a document?

  iv.  Has this document or a copy of it ever been sold by WTPA or
WTNY?  If so when, and for how much was it sold, and is there
a document memorializing this transaction?

   v.  Has WTPA entered into any agreement with any person or
entity regarding the publishing rights, distribution rights,

copying rights, or other rights related to use of this document, and if so, is such agreement memorialized in writing?

i.   Distribution of copies of this document

   i.   Describe how copies of the document went from the printing press or copier (or the functional equivalent of these that were used to create copies) to Kingdom Halls and other recipients, including identification of:

      1.   How it was determined where copies would be sent or delivered, including who made such a determination and whether that person was a representative of WTPA or WTNY?

      2.   The person or people who would have completed the printing / copying of the document, who they received their instructions from, and whether he or she was a representative of WTPA or WTNY.

      3.   The person or people who would have completed the packaging and labeling for distribution, and who they received their instructions from, and whether he or she was a representative of WTPA or WTNY.

    4. The person or people who would have completed the mailing or delivery and who they received their instructions from and whether he or she was a representative of WTPA or WTNY.

3. Corporate formalities of WTPA, including but not limited to formation, purpose and mission, charter(s), recordkeeping, budgeting, board meetings, bylaws, and filings with government agencies such as the secretary of state and the securities exchange commission.

4. WTPA's financials, including but not limited to income sources, budget, transfers of money to other JW entities such as WTNY, and bank accounts owned or utilized by WTPA.

5. WTPA's relationship to the Service Department, the Writing Department, and the Legal Department.

6. Donations received by WTPA from persons in Montana during the period 1973 to 1992.

7. Training of Elders generally at the local congregation level during the relevant time period, and specifically the elders of the Hardin Congregation, including how they were trained, what materials they were provided, who did the training(s), where the training(s) occurred, how long the training(s)

lasted, the purpose of the training(s), and how often the training(s) occurred.

*See* Depo. of James Rowland at 65:25–68:3.

*Excerpts from James Rowland Deposition*

```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MONTANA
                      BILLINGS DIVISION
_____

TRACY CAEKAERT, and          Case No.
CAMILLIA MAPLEY,             CV-20-52-BLG-SPW

         Plaintiffs,

   vs.

WATCHTOWER BIBLE AND
TRACT SOCIETY OF
NEW YORK, INC.,
WATCH TOWER BIBLE AND
TRACT SOCIETY OF
PENNSYLVANIA, and BRUCE
MAPLEY, SR.,                 VIDEOTAPED DEPOSITION
                             UPON ORAL EXAMINATION
         Defendants.         OF JAMES ROWLAND

WATCHTOWER BIBLE AND
TRACT SOCIETY OF
NEW YORK, INC.,

         Cross Claimant,

BRUCE MAPLEY, SR.,

         Cross Defendant.


ARIANE ROWLAND, and          Cause No.
JAMIE SCHULZE,               CV 20-59-BLG-SPW

         Plaintiffs,

   vs.

WATCHTOWER BIBLE AND
TRACT SOCIETY OF
NEW YORK, INC., and
WATCH TOWER BIBLE AND
TRACT SOCIETY OF
PENNSYLVANIA,

         Defendants.
_____
```

**Charles Fisher Court Reporting**
**442 East Mendenhall, Bozeman MT  59715, (406) 587-9016**

**James Rowland**

1    that I had to do.  And no work to it.  It was just,

2    you know, it was a pleasure to do it.

3        Q.   Would members come to you with questions

4    about scripture or --

5        A.   Yeah.

6        Q.   "Yes"?

7        A.   Yeah, they started, and --

8        Q.   What kind of things would they seek your

9    help with?

10        A.   Well, they could -- I've had questions on

11    some minor problems.

12        Q.   Like what?

13        A.   Just, like, "My oldest son is somewhat

14    rebellious, he's getting rebellious.  I'd like for

15    you to talk to him."  And we had a number of those.

16            And the other ones are, like, "I'm going

17    to be going out in the field service, and I'd like

18    help, if you'd come out with me and we'd go door to

19    door."  So that kind of stuff.

20        Q.   Okay.  When did you begin hearing about

21    girls being sexually abused in Hardin?

22        A.   It was in -- I think in -- to the best of

23    my recollection, in the later seventies.

24        Q.   Okay, in the seventies.

25        A.   Yeah.  Because I was appointed as an elder

65

**James Rowland**

1    in 1974 when I got back from college, University of

2    Oklahoma.  And then they do give training then,

3    because you go to --

4        Q.   Who's "they"?  What do you mean?

5        A.   Pardon?

6        Q.   When you say, "they do give training," who

7    gives the training?

8        A.   The Society.  They have a district

9    overseer that meets with all the elders when they

10   have this training annually.  And it's the finer

11   points of ministry, the finer points of, you know,

12   your duties, stuff like that.

13           So in '75, I think in early -- in January,

14   I went to that Kingdom Ministry School.  And that's

15   when that was.  It took a month.

16       Q.   So that training was called the Kingdom

17   Ministry School?

18       A.   Yeah.

19       Q.   Approximately 1975 for you.

20       A.   Yeah.

21       Q.   Do you remember where that was?

22       A.   Billings.

23       Q.   Billings.  "Yes"?  Billings?

24       A.   Yeah, Billings.  Yes.

25       Q.   Do you remember who was there?

66

**James Rowland**

1      A.    No.   There was about 40 elders in the

2   group, some new ones, some old ones.   And I can't

3   even remember who the instructor was.   He might

4   have been from New York.

5      Q.    Okay.   Someone you hadn't seen before.

6      A.    Yeah, he was just here to teach that class

7   and then go back to New York or whatever.

8      Q.    And in addition to the Bible, were they

9   using other books as part of your training?

10      A.    Yeah.   Yeah, with the -- like, the

11   teaching book, you know, like, one of the

12   publications is to become a better teacher, you

13   know, and --

14      Q.    Let me show you a document.   This is

15   called "Kingdom Ministry School Course."

16      A.    Yeah.

17      Q.    And it's Bates WTPA 1 is the first page of

18   this document.   It's the document that was given to

19   us by WTPA, the Pennsylvania corporation.

20      A.    Yeah.

21      Q.    And you'll see there -- can you read that

22   okay?

23      A.    Yeah.

24      Q.    It's dated October 1972?

25      A.    Uh-huh.   Yeah, that's the thing that --

67

**James Rowland**

1    that's the publication that was used.

2        Q.    For the training as an elder?

3        A.    Yeah.

4        Q.    Can I go back to that cover page for a

5    second?  So "Watch Tower Bible and Tract Society of

6    Pennsylvania, 1972," does that look like the

7    document that maybe you saw when you were being

8    trained in 1975?

9        A.    Yeah.  Yeah, it's a book about like this

10   (indicating).  It's a red -- it's -- what do they

11   call them now?  A real deep red, burgundy almost.

12       Q.    And you were using your hands to describe

13   a very big book, thick?

14       A.    About like that.

15       Q.    Yeah.

16       A.    And that was the Kingdom Ministry School.

17       Q.    How much time did you spend at that

18   training in Billings?  Do you remember?

19       A.    I think it was a month.  It might have

20   been -- it might have been two weeks.  But it was a

21   number of days involved.

22       Q.    Okay.  So fairly extensive, then.

23       A.    Yeah.

24       Q.    And did you stay in Billings or did you

25   drive back and forth?

                                                    68