IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT and CAMILLIA MAPLEY, | CV 20-52-BLG-SPW |
| Plaintiffs, | |
| vs. | ORDER |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIERY OF PENNSYLVANIA, INC., | |
| Defendants. | |

Before the Court is Plaintiffs Tracy Caekaert and Camillia Mapley's Motion for Sanctions re: Depositions of Gary Breaux and Allen Shuster. (Doc. 362). Plaintiffs seek sanctions for Defendant Watchtower Bible and Tract Society of New York, Inc.'s ("WTNY") conduct in response to Plaintiffs' attempts to schedule depositions for Gary Breaux and Allen Shuster, as described in the Court's September 29, 2023, order. (Doc. 363 at 8–9). Plaintiffs also seek sanctions for WTNY's alleged obstruction during Breaux's and Shuster's depositions. (*Id.* at 9).

For the following reasons, the Court grants Plaintiffs' motion as to WTNY's pre-deposition conduct and denies the motion as to any conduct during the depositions.

1

## I.    Background

This motion broadly concerns Plaintiffs' attempts to depose and their eventual deposition of Allen Shuster and Gary Breaux, who served during the time of the alleged abuse in this case and currently serve in various high-level roles within the Jehovah's Witnesses organization.  Plaintiffs moved to compel their depositions in October 2022, which the Court denied in April 2023 because Plaintiffs had not fulfilled their meet and confer obligations.  (Doc. 222).

The parties re-convened and were not able to resolve their dispute.  (*See* Doc. 268 at 3–5).  WTNY filed a Motion for a Protective Order asking the Court to bar Plaintiffs from deposing Shuster and Breaux.  (Doc. 234).  WTNY argued that a protective order was warranted because (1) Shuster and Breaux do not have personal knowledge of the alleged abuse in the case; (2) a Rule 30(b)(6) designee would be more appropriate to speak to the topics Plaintiffs have expressed interest in, and therefore Plaintiffs' desire to depose Shuster and Breaux is actually an attempt to take multiple 30(b)(6) depositions without leave of the Court; and (3) Shuster and Breaux are apex witnesses whose deposition cannot be justified.  (Doc. 235 at 2–3).

Plaintiffs responded that the depositions properly sought Shuster and Breaux's *personal* knowledge and experience with how the Jehovah's Witnesses organization was structured and how it implemented its policies related to sexual abuse.  (Doc.

2

243 at 10).  Plaintiffs provided evidence of their personal knowledge.  (*Id.* at 11–16).

On reply, WTNY asserted that Shuster and Breaux were non-party witnesses that Plaintiffs needed to subpoena under Federal Rule of Civil Procedure 45.  (Doc. 247 at 3–10).  In a letter dated June 21, 2023—six days after WTNY filed its reply—WTNY notified Plaintiffs' counsel that Margaret Korgul would be representing Shuster and Breaux and was willing to accept service of the subpoenas on Shuster and Breaux's behalf.  (Doc. 250-2 at 8).

On June 29, 2023, Plaintiffs moved to strike WTNY's non-party/subpoena argument because WTNY raised it for the first time in front of the Court and generally with Plaintiffs in its reply.  (Doc. 248; Doc. 249 at 3).  Even assuming Shuster and Breaux were non-parties, Plaintiffs challenged WTNY's ability to move for a protective order on behalf of non-parties.  (Doc. 249 at 16 n.4).

The Court denied WTNY's Motion for Protective Order and Plaintiffs' Motion to Strike on September 29, 2023, on the grounds that WTNY had engaged in a "bait and switch" with Plaintiffs: In correspondence with Plaintiffs and up until its reply, WTNY did not argue that Shuster and Breaux were non-parties, instead maintaining that they were party witnesses under either Rule 30(b)(1) or Rule 30(b)(6).  (Doc. 268 at 10–13).  WTNY then, without explanation, decided to assert that Shuster and Breaux were non-party witnesses all along who Plaintiffs must

subpoena. (*Id.*). The Court held that WTNY must have done so "to gatekeep access to [Breaux and Shuster] however possible," and that doing so violated "WTNY's duty of candor to the Court, as well as to Plaintiffs." (*Id.* at 13–14). The Court further held that if Shuster and Breaux were non-party witnesses, WTNY would not have standing to seek a protective order on their behalf. (*Id.* at 13).[1]

After the Court's order, on November 20, 2023, Plaintiffs served the subpoenas on Shuster and Breaux through Korgul. (Doc. 374-2 ¶¶ 3, 5). Plaintiffs deposed Breaux on December 5, 2023, and Shuster on December 6, 2023. (Docs. 363-1, 363-9). In the instant motion, Plaintiffs allege Breaux, Shuster, and Korgul engaged in obstructionist behavior at the direction of WTNY.

## II. Legal Standard

Federal courts have "inherent powers" to issue sanctions for abuses of the judicial process. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017). "This power includes the ability to punish conduct before the court as well as actions beyond the court's confines, regardless of whether that conduct interfered with

---

[1] The Court did not determine whether Shuster and Breaux were party or non-party witnesses, contrary to WTNY's assertion that the Court held that Breaux and Shuster were non-party witnesses, (Doc. 374 at 4). (*See* Doc. 268 at 13 ("*If* [Shuster and Breaux] are non-parties ....") (emphasis added); *id.* at 14 ("As to the order deeming the depositions taken as noticed, *if* [Shuster and Breaux] are in fact non-party witnesses....") (emphasis added)). Rather, the Court denied the parties' motions because WTNY took contradictory positions which could not be squared cleanly with the remedies requested. For WTNY to state in its motion that the Court ruled they are non-parties and that Plaintiffs now ask the Court to "reverse its ruling" is a misrepresentation of the Court's order.

courtroom proceedings." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021). Among the sanctions available to a district court are to dismiss a case in its entirety, bar witnesses, exclude evidence, award attorney fees, or assess fines. *Id.* "'Because of their very potency, inherent powers must be exercised with restraint and discretion.'" *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)).

## III.   Analysis

Plaintiffs seek sanctions related to WTNY's Motion for Protective Order and Plaintiffs' Motion to Strike (Docs. 234, 248), as well as WTNY's alleged conduct during Shuster's and Breaux's respective depositions. The Court will address each in turn.

### A.   *Pre-Deposition Conduct*

Plaintiffs contend that WTNY's initial, nearly year-long position that it represented Shuster and Breaux's interests followed by its sudden, mid-motion shift to asserting that the witnesses are non-parties who need to be subpoenaed warrants sanctions. (Doc. 363 at 8–9). Plaintiffs cite the Court's holding in its order on WTNY's Motion for a Protective Order and Plaintiffs' Motion to Strike that WTNY engaged in a bad faith "bait and switch" that violated WTNY's duty of candor to Plaintiffs and the Court. (*Id.* at 9). Plaintiffs ask the Court to require WTNY to pay a fine for the 12-month delay it caused in taking the Shuster and Breaux depositions,

as well as "all costs and fees related to the vexatious litigation caused by its bad faith conduct." (*Id.* at 33).

WTNY does not address this portion of Plaintiffs' motion.

Since this portion of the motion is unopposed and the Court agrees the at-issue conduct warrants sanctions, the Court grants Plaintiffs' sanctions request. WTNY is ordered to pay Plaintiffs' costs and fees for their work related to WTNY's Motion for a Protective Order and Plaintiffs' Motion to Strike.

As to a fine for the 12-month delay WTNY caused in taking Shuster's and Breaux's depositions, the Court declines to issue one. Given the Court has awarded Plaintiffs' counsel's costs and fees for their work on the issue during that time, any additional fine would be punitive. *See Goodyear*, 581 U.S. at 107–08 (explaining that a court's inherent power to issue sanctions is limited to compensatory sanctions that redress the wronged party "for losses sustained."). "[A]ny punitive sanction imposed under a court's inherent authority against a party in civil litigation requires criminal-type safeguards[.]" *Am. Unites for Kids*, 985 F.3d at 1095 (citing *Goodyear*, 581 U.S. 101). These safeguards require "the same due process protections that would be available in a criminal contempt proceeding." *F.J. Handshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1139 (9th Cir. 2001). "Among those due process protections is that guilt must be proven beyond a reasonable doubt." *Goodyear*, 581 U.S. at 108.

Plaintiffs' request for a fine did not characterize it as punitive or discuss the safeguards the Court must adopt in assessing the appropriateness of a fine. Without any such discussion, and the requirement that the Court exercise restraint in issuing sanctions pursuant to its inherent powers, the Court declines to order any fine.

### B.   *Deposition Conduct*

Plaintiffs also assert WTNY should be sanctioned for its alleged conduct during Shuster's and Breaux's depositions. (Doc. 363 at 9, 26–30). Plaintiffs contend that Breaux and Shuster consistently provided dishonest and evasive answers about topics they had previously testified to on behalf of WTNY and despite having personal knowledge from their positions in the Jehovah's Witnesses organization. (*Id.* at 9–25). Plaintiffs maintain that Shuster and Breaux's "inability to provide any meaningful testimony on topics that they have extensive knowledge of" is due to "a pre-meditated plan to obstruct and deceive" that was devised by WTNY. (*Id.* at 30). Plaintiffs argue that WTNY has maintained control over the witnesses, even after they obtained other counsel, and coached the witnesses to give non-responsive answers both before and during the depositions. (*Id.* at 30–31).

WTNY disagrees with Plaintiffs' characterization of WTNY's relationship with the witnesses and of the witnesses' testimony. (Doc. 374 at 2–3). As to WTNY's relationship to the witnesses, WTNY avers that it did not retain counsel for Shuster and Breaux, help prepare them for the depositions, or coach them during

the depositions. (*Id.* at 4–5, 8 n.2). WTNY argues that "Plaintiffs offer no evidence – just counsel's arguments based on supposition and conjecture [ – ] that there must be bad faith." (*Id.* at 8). In contrast, WTNY's counsel, Joel Taylor, and Korgul provided declarations that "provide undisputed proof" that WTNY did not maintain a relationship with the witnesses with respect to their depositions. (*Id.* (citing Docs. 374-2, 374-3)). As to Plaintiffs' characterization of the witnesses' testimony, WTNY asserts that the witnesses' forgetfulness is a result of their age, the wide range of topics that sometimes concerned events that occurred decades ago, and the lack of notice to the witnesses on what topics they would be asked about. (*Id.* at 2–3).

On reply, Plaintiffs list circumstantial evidence that they contend demonstrates the continued relationship between WTNY and the witnesses. (Doc. 390). Plaintiffs note that WTNY has previously designated the men as its representative in other cases, the witnesses are voting members are WTNY, and that WTNY coordinated all contact with the witnesses and represented their interests in this case until its reply to its Motion for a Protective Order. (*Id.* at 4–5). Plaintiffs also cite to the deposition of Marvin Smalley, another witness at the Jehovah's Witnesses headquarters in New York represented by Korgul, who testified that he learned through Taylor that Korgul was going to be his lawyer two weeks before his December 6, 2023, deposition. (*Id.* at 6–7). Plaintiffs argue this demonstrates that

WTNY arranged the witnesses' representation. (*Id.* at 7). Plaintiffs last note the supposed inconsistency between Korgul's statement that she began representing the witnesses on November 20, 2023, and Taylor's statement that she began her representation in June 2023. (*Id.* at 8).

The Court cannot find based on the evidence in the record that WTNY played a role in Shuster and Breaux's representation beyond the initial coordination with Korgul, such that any alleged misconduct by the witnesses or Korgul could be imputed onto WTNY. The bulk of Plaintiffs' evidence that would show such a relationship pertains to WTNY's conduct prior to its stance that Shuster and Breaux were non-party witnesses with outside counsel, for which the Court has agreed to issue sanctions. (*See id.* at 4–5). Their evidence to support their position that WTNY covertly continued a legal relationship with the witnesses after that point is weak and cannot rebut Taylor's and Korgul's sworn declarations.

Taylor declared that neither WTNY nor its attorneys paid for Shuster and Breaux's legal fees or participated in any of their deposition preparation. (Doc. 374-3 ¶¶ 4, 5). In its brief, WTNY further clarified that WTNY did not "retain" Korgul for Breaux and Shuster. (*Id.* at 4; *see also* Doc. 374-2 ¶ 8 (Korgul stating she "was never retained or paid" by WTNY to represent Shuster and Breaux in connection with the depositions)). Black's Law Dictionary defines "retain" as, "to hire" or "to engage for the provision of services (as by a lawyer, an accountant, an employee,

etc.)." *Retain, Black's Law Dictionary* (11th ed. 2019). A "retainer" is a "client's authorization for a lawyer to act in a case," or some kind of fee a client pays to engage a lawyer. *Retainer, Black's Law Dictionary* (11th ed. 2019). As such, Taylor's declaration can reasonably be read to not contradict WTNY's brief, in that both could be read as saying WTNY did not pay Korgul a fee to represent Shuster and Breaux in their depositions. It is certainly plausible that WTNY coordinated Korgul's representation, as Smalley's testimony seems to indicate, without paying for or getting involved with the representation itself. And even if WTNY had paid for her representation, nothing in the record demonstrates WTNY continued to be involved with the representation thereafter.

Plaintiffs also assert that during Shuster's deposition, Taylor coached Shuster to respond "no" to a question by looking at the witness and shaking his head. (Doc. 363 at 12). Plaintiffs' counsel recounted his interpretation of the moment on the record. (*Id.*). Taylor responded on the record, "I was not signaling anything to anyone. I was just objecting to" Plaintiffs' counsel's statement about Shuster's testimony in another case, "which clearly was not a statement made on the record at the deposition today." (*Id.* at 12–13). In his declaration, Taylor stated that he "vehemently disagree[s] with Plaintiffs' counsel [sic] mischaracterization of the implication of my head nod at the deposition ... As explained on the record then after the false accusation of coaching, my head nod was simply a reflection of my

displeasure with Plaintiffs' counsel [sic] blatant attempt to misuse a leading question to trap the witness, and nothing more." (Doc. 374-3 ¶¶ 6, 8).

The Court cannot conclude based on a he-said-she-said account of subtle, non-verbal communication at the deposition that Taylor was coaching Shuster.  Without any additional evidence to rebut Taylor's sworn declaration, the Court must take him at his word. *See Am. Unites for Kids*, 985 F.3d at 1088 (quoting *Chambers*, 501 U.S. at 44) ("'Because of their very potency, inherent powers must be exercised with restraint and discretion.'")

As to the statements by Taylor and Korgul about the start date of her representation of the witnesses, the Court cannot conclude that the statements demonstrate by a preponderance of the evidence that WTNY was representing Shuster and Breaux.  In Taylor's June 21, 2023 letter, he told Plaintiffs' counsel that Korgul represented Shuster and Breaux and was willing to accept service of the subpoenas on the witnesses' behalf. (Doc. 250-2 at 8).  In Korgul's declaration, she states, "Plaintiffs' counsel contacted me on November 20, 2023, and emailed me deposition subpoenas for Mr. Breaux, Mr. Shuster and Mr. Smalley.  Prior to that date, I never represented Messrs. Shuster, Breaux or Smalley in connection with any deposition in any jurisdiction." (Doc. 374-2 ¶¶ 3–4).  The Court acknowledges that Korgul's declaration can be read as saying her representation began on November 20, 2023.  However, the more plausible interpretation of her declaration is that her

work with Shuster and Breaux effectively began on November 20, 2023, because the subpoenas had not been served until then.  Without the subpoenas, Korgul had no work she needed to do on the case.[2]  The Court cannot infer nefarious conduct solely based on Korgul's inartfully written declaration and without other evidence, like Korgul's contract with the witnesses.

The Court understands Plaintiffs' frustration with the witnesses' testimony, as it seems quite unbelievable that the witnesses, who have held high-level positions for decades in the entities that Plaintiffs seek information about, suddenly have no personal knowledge of the topics Plaintiffs asked about.  The Court also recognizes that Korgul's conduct is questionable, like when she effectively testified on Shuster's behalf that the Jehovah's Witnesses have no policies related to child sexual abuse. (Doc. 363-9 at 23).  However, without stronger evidence demonstrating that WTNY's counsel continued its legal relationship with the men for the purposes of their depositions, the Court cannot impute any misconduct by them or Korgul onto WTNY.  Accordingly, the Court denies Plaintiffs' request for sanctions for conduct that occurred during the depositions.

---

[2] Korgul presumably had a special retainer, which secures a lawyer's representation for a specific case or project, for the witnesses' depositions. *Retainer, Black's Law Dictionary* (11th ed. 2019). If she had a special retainer to represent Breaux and Shuster in the depositions, her representation would not begin until the subpoenas were served on November 20, 2023.  November 20, 2023, is about two weeks before Smalley's deposition when Taylor notified Smalley that Korgul was representing him for the deposition.

## IV.   Conclusion

IT IS SO ORDERED:

(1) Plaintiffs Tracy Caekaert and Camillia Mapley's Motion for Sanctions re: Depositions of Gary Breaux and Allen Shuster (Doc. 362) is GRANTED as to WTNY's pre-deposition conduct and DENIED as to any conduct occurring during the depositions.

(2) WTNY shall pay all Plaintiffs' expenses related to WTNY's Motion for Protective Order and Plaintiffs' Motion to Strike and preparing the instant motion.

(3) Plaintiffs' counsel shall file a pleading setting forth the amount of expenses and attorney's fees recoverable for their work related to WTNY's Motion for Protective Order and Plaintiffs' Motion to Strike and preparing the instant motion. Plaintiffs' counsel also shall file an affidavit itemizing those expenses and fees within 30 days of this order. WTNY shall have 14 days thereafter to respond. The Court will then issue a second order, specifying the amount of the sanctions award and setting the time of payment.

DATED the _10th_ day of June, 2024.

Susan P. Watters
SUSAN P. WATTERS
UNITED STATES DISTRICT JUDGE