Jon A. Wilson                          Joel M. Taylor, Esq. (*pro hac vice*)
Brett C. Jensen                        MILLER MCNAMARA & TAYLOR LLP
Michael P. Sarabia                     12 Clock Tower Commons Dr.
BROWN LAW FIRM, P.C.                    Brewster, New York 10509
315 North 24th Street
P.O. Drawer 849
Billings, MT 59103-0849
*Attorneys for Defendant Watchtower Bible and Tract Society of New York, Inc.*

Gerry P. Fagan
Christopher T. Sweeney
Jordan W. FitzGerald
MOULTON BELLINGHAM PC
27 North 27th Street, Suite 1900
P. O. Box 2559
Billings, Montana 59103-2559
*Attorneys for Defendant Watch Tower Bible and Tract Society of Pennsylvania*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TRACY CAEKAERT and CAMILLIA MAPLEY, | Cause No. CV 20-52-BLG-SPW |
| Plaintiffs, | **DEFENDANTS WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC. AND DEFENDANT WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA'S BRIEF IN SUPPORT OF JOINT MOTIONS IN LIMINE** |
| -vs- | |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA, | |
| Defendants. | |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... ii

LEGAL STANDARDS ..................................................................................................1

LEGAL ARGUMENT ....................................................................................................3

1.   Attempts to establish a standard of care for elders in a Jehovah's
     Witnesses' Congregation based on religious principles. .................................3

2.   Attempts to redefine religious beliefs, practices, and procedures of
     Jehovah's Witnesses...........................................................................................6

3.   Attempts to disparage the reputation of Jehovah's Witnesses, and/or
     attacks on Jehovah's Witnesses beliefs, practices, and theology....................8

4.   References to or discussion of other sexual abuse cases and allegations
     against Jehovah's Witnesses. ............................................................................9

5.   Conclusory statements and legal conclusions. ..............................................10

6.   References to discovery conduct or sanctions................................................12

7.   Reference to allegations against Bruce Mapley, Sr. in other states and
     allegations made after the alleged sexual abuse in this case. .......................14

8.   Testimony of Carla Klessens that is hearsay and/or irrelevant. ....................15

9.   Testimony by Mark O'Donnell....................................................................... 16

10.  Arguments about the "Golden Rule," "Voice of the Community," and
     Public Safety Standards. ................................................................................17

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Baumgartner v. First Church of Christ, Scientist*, 141 Ill. App. 3d 898 (1986),
  cert denied, 479 U.S. 915 (1986) .......................................................................3

*Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938 (9th Cir. 2009) ......................2

*Brewer v. BNSF Ry. Co.*, 2016 U.S. Dist. LEXIS 202661 (D. Mont. 2016)..... 12, 13

*Candy Craft Creations, LLC v. Gartner*, 2015 U.S. Dist. LEXIS 143821 (S.D.
  Ga. 2015)........................................................................................................13

*City of Pomona v. SOM N. Am. Corp.*, 866 F.3d 1060 (9th Cir. 2017).......................2

*Cranska v. Umia Ins., Inc.*, 2024 U.S. Dist. LEXIS 5565 (D. Mont. 2024)............19

*Davis v. Church of Jesus Christ of Latter Day Saints*, 852 P.2d 640 (Mont.
  1993) (overruled on other grounds by *Gliko v. Permann*, 130 P.3d 155 (Mont.
  2006)) ...................................................................................................... 3, 4, 17

*Eriksen v. Wal-Mart Stores, Inc.*, No. CV 14-155-BLG-SPW, 2017 U.S. Dist.
  LEXIS 63062, 2017 WL 1497870 (D. Mont. Apr. 25, 2017)..............................19

*Evox Prods. LLC v. Yahoo Inc.*, 2023 U.S. Dist. LEXIS 131581 (C.D. Cal.
  2023) ...............................................................................................................13

*Gallegos ex rel. Est. of Moe v. BNSF Ry. Co.*, No. CV 22-68-M-DLC, 2023
  U.S. Dist. LEXIS 210492, 2023 WL 8187923 (D. Mont. Nov. 27, 2023)...........19

*Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 142 S. Ct. 2407 (2022)............5

*Lemm v. Goyins*, No. ADV-2004, 2005 Mont. Dist. LEXIS 1424 (1st Jud. Dist.
  Ct. Mont. Nov. 9, 2005) ...................................................................................19

*Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n,* 584 U.S. 617, 138
  S. Ct. 1719 (2018) .............................................................................................8

*McCluskey v. Allstate Ins. Co.*, No. CV 04-191-M-LBE, 2006 U.S. Dist.
  LEXIS 101118 (D. Mont. Feb. 10, 2006) ............................................................11

*Patch v. Hillerich & Brasby Co.*, No. CDV-2006-397, 2008 Mont. Dist. LEXIS
  116 (1st Jud. Dist. Ct. Mont. Mar. 31, 2008) .......................................................19

*Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Mem
  'l Presbyterian Church ("Hull Church"),* 393 U.S. 440 (1969). .................5, 17

*Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015)..................................................12

*Rookaird v. BNSF Ry. Co.*, 2016 U.S. Dist. LEXIS 44147 (W.D. Wash. 2016);.....13

*Serbian E. Orthodox Diocese v. Milivojevich,* 426 U.S. 696 (1976)...................4

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) .........................9

*Teague v. Remington Arms Co., LLC*, No. CV 18-184-M-DLC, 2022 U.S. Dist. LEXIS 211757, 2022 WL 17103236 (D. Mont. Nov. 22, 2022) .........................19

*Trial Laws. Coll. v. Gerry Spences Trial Laws. Coll. at Thunderhead Ranch*, 2022 U.S. Dist. LEXIS 178188 (D. Wyo. 2022) ................................................13

*United States v. Benavidez*, 217 F.3d 720 (9th Cir. 2000) ....................................2, 3

*United States v. Heller*, 551 F.3d 1108 (9th Cir. 2009)...............................................1

*United States v. Moran*, 493 F.3d 1002 (9th Cir. 2007)...........................................11

*Watson v. Jones,* 80 U.S. 679 (1871)..................................................................4, 17

*Wenger v. State Farm Mut. Auto. Ins. Co.*, 2021 MT 37, 403 Mont. 210, 483 P.3d 480....................................................................................................18

*Westphal v. Rubisch*, 40 F.3d 1247 (9th Cir. 1994).................................................14

*Wooten v. BNSF Ry. Co.*, 2018 U.S. Dist. LEXIS 92159 (D. Mont. 2018) .............13

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101 (9th Cir. 2001) ........16

**Other Authorities**

68 A.L.R. Fed. 333 ...............................................................................................18

70 A.L.R.2d 935....................................................................................................18

75A Am. Jur. 2d Trial § 650 (1991) .......................................................................17

9th Cir. Pattern Jury Instr. § 1.2 – Duty of Jury (2017) ...........................................14

Advisory Committee Notes on Federal Rule of Evidence 403, 28 U.S.C.A. Index, p. 252 ...................................................................................................2

**Rules**

Fed. R. Evid. 401 ...................................................................................................2

Fed. R. Evid. 403 ...................................................................................................2

Fed. R. Evid. 404 .................................................................................................15

Fed. R. Evid. 701 .................................................................................................11

Fed. R. Evid. 801 .................................................................................................15

Fed. R. Evid. 802 ............................................................................................ 15, 17

Defendants Watchtower Bible and Tract Society of New York, Inc. ("WTNY") and Watch Tower Bible and Tract Society of Pennsylvania ("WTPA") submit these motions in limine to exclude irrelevant and unduly prejudicial evidence and argument that Plaintiffs will likely attempt to introduce at trial precisely because they have raised such evidence and argument in discovery and briefing with the Court. Many of the below-discussed evidence and topics are precluded not only by the Federal Rules of Evidence, but the First Amendment as well.

The relevant issues in this case are as follows:

(1)    What did Defendants know about the sexual abuse allegations and when did they know it?

(2)    Did the Defendants, on the basis of that knowledge (if any), owe a duty to Plaintiffs?

(3)    Did Defendants breach any duty owed?

(4)    Did any breach cause Plaintiffs to suffer damages?

The trial should be limited to admissible evidence related to these issues and these issues only.

## LEGAL STANDARDS

A motion in limine allows a party to obtain a preliminary ruling on the admissibility of evidence. *See United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Motions in limine are useful procedural devices "to resolve issues which

would otherwise clutter up the trial." *City of Pomona v. SOM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017).

The concept of relevance is central to admissibility determinations.  Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.  Fed. R. Evid. 401; *Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938, 944 (9th Cir. 2009).

Rule 403, Fed. R. Evid., places another important limitation on the admissibility of relevant evidence. Rule 403 provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

"Unfair prejudice within this context means an undue tendency to suggest the decision on an improper basis, commonly, though not necessarily, an emotional one." *See* Advisory Committee Notes on Federal Rule of Evidence 403, 28 U.S.C.A. Index, p. 252. Therefore, relevant evidence may still be excluded for any of the reasons set forth in Rule 403.

In fact, as set forth in *United States v. Benavidez*, 217 F.3d 720 (9th Cir. 2000):

> Once the probative value of a piece of evidence is found to be substantially outweighed by the danger of unfair prejudice, there is no other evidentiary rule that can operate to make that same evidence admissible. In this way, Rule 403 can be viewed as a gateway, albeit a very wide one, through which all evidence must pass prior to admission

2

at trial. Although a trial court may choose to analyze evidence admissibility by assessing the effect of other rules of evidence first, it is under no compulsion to do so.  It is equally acceptable to perform a Rule 403 analysis prior to undertaking any other evidentiary inquiry.

*Id*. at 725-726.

## LEGAL ARGUMENT

Defendants move this Court in limine to preclude any evidence, statements, testimony, arguments, or variations of the following:

**1.     Attempts to establish a standard of care for elders in a Jehovah's Witnesses' Congregation based on religious principles.**

The Montana Supreme Court has explained "the First Amendment bar[s] the judiciary from considering whether certain religious conduct conform[s] to the standards of a particular religious group" and thus prohibits a civil court from inquiring "into the standard of care of a [religious] practitioner and whether those standards were met ... because the court would be required to investigate and evaluate religious tenets and doctrines." *Davis v. Church of Jesus Christ of Latter Day Saints*, 852 P.2d 640, 647 (Mont. 1993) (overruled on other grounds by *Gliko v. Permann*, 130 P.3d 155 (Mont. 2006)), discussing *Baumgartner v. First Church of Christ, Scientist*, 141 Ill. App. 3d 898, 904 (1986), cert denied, 479 U.S. 915 (1986). The *Davis* court relied on cases decided by the United States Supreme Court and accepted the direction to keep "a hands-off policy when courts are asked to review such matters" of religious practices, concluding that tort claims are not a right of the

3

highest order that would overbalance a church's claim to the free exercise of religion. *Davis*, 852 P.2d at 648-649.

Jehovah's Witnesses, through its ecclesiastical Governing Body, has created defined roles for the membership and governance of congregations of Jehovah's Witnesses throughout the world. Civil courts cannot re-define those roles, or contradict the explanations given by the ecclesiastical governing body. Indeed, the "general rule" under the First Amendment to the United States Constitution is that "religious controversies"—and religious questions of any sort—are simply not the proper subject of civil court inquiry. *Serbian E. Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 713 (1976). Indeed, the United States Supreme Court has recognized that secular courts:

> … must be incompetent judges of matters of faith, discipline, and doctrine; and ... if they should be so unwise as to attempt to supervise their judgments on matters which come within their jurisdiction, would only involve themselves in a sea of uncertainty and doubt which would do anything but improve either religion or good morals.

*Watson v. Jones,* 80 U.S. 679, 732 (1871) (citations omitted). The First Amendment forbids civil courts from "determin[ing] matters at the very core of a religion-the interpretation of particular church doctrines and the importance of those doctrines to the religion." *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church ("Hull Church"),* 393

U.S. 440, 450 (1969).

Plaintiffs' First Amended Complaint attempts to create a dispute about religious doctrine, policies, and procedures. (*See* Doc. 22, ¶¶ 18, 20, 23, alleging Defendants instruct members to not report wrongdoing to secular authorities). Indeed, much of their case is a complaint about, and attempt to redefine, religious standards and training of Jehovah's Witnesses. (*See*, *e.g.*, *id*., ¶¶ 50-51, 54, 63). Plaintiffs are expected to raise these disputes at trial, but they are constitutionally prohibited from creating a dispute about religious policy by asking this Court to establish a standard of care for internal training of Jehovah's Witnesses beyond any duties imposed by neutrally applicable mandatory reporting statutes. *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525, 142 S. Ct. 2407, 2422 (2022) (acknowledging that any law or policy that is not neutral or generally applicable is a violation of the free exercise of religion). Similarly, Plaintiffs are constitutionally prohibited from introducing evidence that contradicts what Jehovah's Witnesses say its religious doctrines, practices, and standards are. In other words, only Jehovah's Witnesses can say and interpret what their religious doctrines, beliefs, and practices are, and how various congregation roles relate thereto. *Hull Church,* 393 U.S. at 450.

For these reasons, the Court should prohibit any evidence, testimony, argument, or attempt by Plaintiffs to establish a standard of care for members and elders of Jehovah's Witnesses based on religious principles (with the exception of any applicable and religiously neutral mandatory reporting statute).

## 2. Attempts to redefine religious beliefs, practices, and procedures of Jehovah's Witnesses.

Throughout discovery and in pretrial proceedings, Plaintiffs have offered their personal interpretation of, and have asked witnesses about, their adherence to various religious beliefs and practices of Jehovah's Witnesses, including but not limited to what Plaintiffs' counsel has incorrectly referred to as a "two witness rule." (*See e.g.,* Doc. 366 at 24)  Indeed, Plaintiffs' experts, Drs. Holmberg and Bone, also offer interpretations of Jehovah's Witnesses beliefs, even denigrating them. (*See* Holmberg Report, pp. 14, 32-34 & 38, excerpts attached as Exhibit A; Bone Report, pp. 30-32, excerpts attached as Exhibit B).[1] Assuming, *arguendo,* that any religious belief or religious practice is actually relevant to this case, testimony about religious conduct nevertheless remains

---

[1] For example, Dr. Holmberg, in his report on Plaintiff Caekaert, makes a disparaging reference to the "fear-based teachings" of Jehovah's Witnesses (Ex. A, Holmberg Report, p. 14), and attempts to define and interpret Jehovah's Witnesses religious doctrine and tenets. (*Id.* at pp. 32-34, 38). Plaintiffs' other expert, Dr. Bone, made similar disparaging references and interpretations in his report. (Ex. B, pp. 30-32).

constitutionally prohibited pursuant to *Watson, Hull Church,* and *Davis,* as discussed *supra*.

District courts must decide the cases before them based on neutral principles of law; they may not inquire into the internal doctrine of a religious organization to decide an ordinary civil lawsuit. Finally, if the Court permits the subject of theology, beliefs, and practices to be introduced at trial, it will introduce collateral issues which will unduly delay the proceedings. The Court should grant Defendants' motion and exclude attempts by non-experts in Jehovah's Witnesses theology beliefs, practices, and organization to opine or discuss the same under the First Amendment, as well as under Federal Rules of Evidence 401, 402, 403 and 611(a)(2).

Thus, Plaintiffs should be prohibited from mentioning, disparaging, or improperly characterizing the beliefs, practices, and procedures of Jehovah's Witnesses, including but not limited to:

1. The Bible's substantial evidence principle (which Plaintiffs erroneously refer to as the "Two-Witness Rule") set out in Deuteronomy 17:8, 19:15; Matthew 18:15-16;

2. Jehovah's Witnesses' religious beliefs regarding confidentiality based on Proverbs 11:13, 24:18; 25:9, Exodus 18:21; Nehemiah 7:2; Romans 13:1; and Hebrews 13:17;

3. Jehovah's Witnesses' religious beliefs and/or letters such as the July 1, 1989, letter to all bodies of elders in the United States; and

4. Beliefs and processes relating to the need for repentance, and the process of hearing confessions, assisting a sinner to repent, and administering spiritual discipline based on James 4:17, 5:14-16, 19;Proverbs 11:14, 28:13; 1

John 1:9; Ezra I 0:11; Numbers 5:7; Joshua 7:19; 1 Timothy 2:3-4, 5:20; Acts 3:19, 20:28; 2 Kings 17:16, 21;Isaiah 1:4; 1 Corinthians 6:16-18; 2 Corinthians 5:11-13; 1 John 3:4; Galatians 6:1; Deuteronomy 17:6; Deuteronomy 19:15; Matthew 18:15-17; 2 Corinthians 13:1; 1 Timothy 5:19; 2 Samuel 12:13; & Hebrews 12:13.

5.      Any attempt by Plaintiffs' experts, Drs. Holmberg and Bone, to interpret or malign Jehovah's Witnesses' beliefs and practices.

**3.      Attempts to disparage the reputation of Jehovah's Witnesses, and/or attacks on Jehovah's Witnesses beliefs, practices, and theology.**

The United States Supreme Court puts it well: "official expressions of hostility to religion" are "inconsistent with what the Free Exercise Clause" of the First Amendment requires. *Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n,* 584 U.S. 617, 619, 138 S. Ct. 1719, 1722 (2018).  Throughout discovery and in pretrial proceedings, Plaintiffs have inquired into and commented upon the beliefs of the Jehovah's Witnesses, including providing the Affidavit of Mark O'Donnell, who disparages the Jehovah's Witnesses on the basis of internet research. (*See* Doc. 22-3, and discussion *infra*).  The jury should not be permitted to hear anything that denigrates or disparages the reputation of Jehovah's Witnesses.

In addition to violating the First Amendment, such comments should also be barred under Rule 403, Fed. R. Evid., as they would be unduly prejudicial and have the tendency of unfairly inflaming the passions of the jury.

**4.     References to or discussion of other sexual abuse cases and allegations against Jehovah's Witnesses.**

At times throughout this litigation, Plaintiffs and their experts have referenced or cited to other cases involving sexual abuse allegations against Jehovah's Witnesses. (*See, e.g.,* Doc. 22, ¶ 60; *see also* Ex. A, Holmberg Report, p. 32). Evidence from or reference to these other cases is irrelevant to Plaintiffs' claims that Defendants owed and breached a duty regarding the sexual abuse allegations in this case: these other cases did not involve the same allegations and plaintiffs; evidence of abuse that occurred in a different time, place and by people not involved in this case is obviously irrelevant to the claims in this case. Thus, such evidence should be excluded pursuant to Rules 401 and 402, Fed. R. Evid. Such evidence is also extremely and unduly prejudicial to Defendants and should be excluded pursuant to Rule 403 too.

Plaintiffs have pleaded a punitive damage claim and may argue evidence of these other cases is relevant thereto. However, the Supreme Court has placed significant limitations on the use of evidence of nonclaim-related actions involving a defendant for purposes of establishing punitive damages. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 420-423 (2003). The Supreme Court requires that other actions or conduct "must have a nexus to the <u>specific</u> harm suffered by the plaintiff." *Campbell*, 538 U.S. at 422 (emphasis added). Accordingly, any attempt to use evidence of Defendants' actions in relation to these other cases

should be excluded unless Plaintiffs can establish a sufficient nexus of those other actions to the specific harm of sexual abuse Plaintiffs complain of here.

**5.      Conclusory statements and legal conclusions.**

Based upon their allegations in the pleadings, Defendants anticipate Plaintiffs will attempt to introduce evidence or testimony at trial through either lay witnesses or retained experts to provide conclusory testimony about such legal issues as certain roles in congregations (Doc. 22, ¶¶ 13-14) and that publishers, ministerial servants, and elders are "agents" of Defendants. (*See id.*, ¶ 16). Plaintiffs have also disclosed proposed opinions from an expert accountant, Ben Yonce, that "Defendants were obligated to prepare their financial statements using GAAP[2] rules developed by the APB[3] and FASB[4]," that Defendants' separate Boards demonstrated "common control between WTNY and WTPA;" and various opinions about how Defendants "should" have reported their financial statements in the 1970s and 1980s in order to

---

[2] Yonce means "generally accepted accounting principles." Generally accepted accounting principles "are a set of accounting rules, standards, and procedures issued and frequently revised by the Financial Accounting Standards Board (FASB). Public companies in the U.S. must follow GAAP when their accountants compile their financial statements." *See* https://www.investopedia.com/terms/g/gaap.asp#:~:text=The%20generally%20accepted%20accounting%20principles%20(GAAP)%20are%20a%20set%20of,accountants%20compile%20their%20financial%20statements. However, WTNY and WTPA are not public companies so GAAP does not apply, despite Yonce's opinion.

[3] Accounting Principles Board.

[4] Financial Accounting Standards Board.

comply with Yonce's version of GAAP. (*See* Yonce Report, pp. 5-8, excerpts attached as Exhibit C). Such testimony is improper and should be precluded.

Testimony by a non-expert witness is limited by Rule 701 of the Federal Rules of Evidence. Rule 701 limits a lay witness's testimony "to those opinions or inferences which are (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Accordingly, lay witnesses should not be allowed to provide legal conclusions about such issues as to the roles of church members or whether they are "agents" of Defendant.

Similarly, Plaintiffs' experts should be precluded from providing their legal conclusions about such issues as the applicable accounting principles, "common control," agency and "alter ego" because all of those issues call for legal conclusions. The prohibition against experts providing legal conclusions is clear. *See United States v. Moran*, 493 F.3d 1002, 1008 (9th Cir. 2007) (internal citation omitted); *see also McCluskey v. Allstate Ins. Co.*, No. CV 04-191-M-LBE, 2006 U.S. Dist. LEXIS 101118, at *8-9 (D. Mont. Feb. 10, 2006) (prohibiting any legal opinions or conclusions offered by plaintiff's expert because "such matters are not permissible topics of expert testimony under *Hangarter v. Provident Life and Acc. Ins. Co.* 373 F.3d 998, 1016, (9th Cir. 2004)." Determining whether one corporate entity is

11

separate from, or merely the alter ego of, another is a legal conclusion. *See Ranza v. Nike, Inc*., 793 F.3d 1059, 1073 (9th Cir. 2015) (discussing and applying test to make legal determination re alter ego). Accordingly, Yonce should not be allowed to offer opinions about the legal issues as to what accounting standards actually apply to Defendants, whether Defendants have "common control," or are "alter egos."

## 6.    References to discovery conduct or sanctions.

Given Plaintiffs' focus on and accusations about discovery conduct, Defendants expect Plaintiffs to introduce evidence of, make reference to, and/or present argument about discovery conduct in this case or in other unrelated Watchtower cases (*see e.g.,* Doc. 22, ¶ 60), including that the Court has sanctioned Defendants. The Court should preclude them from doing so.

Judges in the District of Montana have previously ruled that evidence or argument relating to discovery issues or orders during the course of litigation should be excluded from trial.  For example, in *Brewer v. BNSF Ry. Co.*, 2016 U.S. Dist. LEXIS 202661, *11-12 (D. Mont. 2016), the defendant moved for an order in limine to preclude such evidence, arguing it was irrelevant and inadmissible.  *Id.* at *11. The plaintiff countered that the motion was overbroad and that the defendant "should not be allowed to 'hide' from its abuse and/or neglect of the discovery process."  *Id.* Magistrate Judge Johnston granted the motion in limine, however, ruling that the parties' discovery disputes and the court's orders addressing those disputes were not

admissible. *Id.* Judge Johnston explained that "[w]hether and to what extent any party's conduct during discovery was inappropriate in any manner is a matter for the Court to determine, not the jury." *Id.* at \*11-12.  He further held that "evidence or argument concerning such issues would cause confusion of the issues and waste time." *Id.* at \*12.  *See also Wooten v. BNSF Ry. Co.*, 2018 U.S. Dist. LEXIS 92159, \*11 (D. Mont. 2018) (Magistrate Lynch granting motion in limine relating to discovery orders or discovery issues). Federal courts in other jurisdictions have likewise precluded the introduction of previous discovery disputes during trial.  *See, e.g., Rookaird v. BNSF Ry. Co.*, 2016 U.S. Dist. LEXIS 44147, \*11 (W.D. Wash. 2016); *Evox Prods. LLC v. Yahoo Inc.*, 2023 U.S. Dist. LEXIS 131581, \*16-19 (C.D. Cal. 2023); *Candy Craft Creations, LLC v. Gartner*, 2015 U.S. Dist. LEXIS 143821, \*18-20 (S.D. Ga. 2015); *Trial Laws. Coll. v. Gerry Spences Trial Laws. Coll. at Thunderhead Ranch*, 2022 U.S. Dist. LEXIS 178188, \*23-24 (D. Wyo. 2022).

Discovery issues in this or other cases, including sanctions issued by this Court, are not relevant to any claim or defense in this case. Those issues have no tendency to make a consequential fact in this case more or less probable as discovery in this case does not make any actual allegation related to abuse or reporting of the abuse more or less probable. Discovery conduct, including sanctions, should thus be excluded pursuant to Rules 401 and 402, Fed. R. Evid.

In addition, evidence or argument mentioning these issues should also be excluded as unfairly prejudicial under Rule 403. Indeed, such prejudice is almost certainly the reason Plaintiffs would seek to introduce the conduct and is exactly the type of prejudice that Rule 403 seeks to prevent. A jury is required to determine the facts only from the evidence produced in court and not be influenced by sympathy or prejudice.  *See Westphal v. Rubisch*, 40 F.3d 1247 (9th Cir. 1994); *see also* 9th Cir. Pattern Jury Instr. § 1.2 – Duty of Jury (2017) (jury is instructed "you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.").  It may also lead the jury to punish Defendants for discovery conduct for which the Court has already punished Defendants through sanctions, which would clearly be improper, and it would also make the attorneys in this case to be witnesses about the discovery conduct.

### 7. Reference to allegations against Bruce Mapley, Sr. in other states and allegations made after the alleged sexual abuse in this case.

Defendants anticipate Plaintiffs will attempt to introduce evidence of allegations that Bruce Mapley, Sr. committed sexual abuse in Wisconsin at a time after the alleged abuse in this case. For example, during the deposition of Tom Meyers, Plaintiffs introduced an exhibit discussing this issue.

Evidence of any conduct of Bruce Mapley, Sr. occurring after the alleged abuse in this case has no tendency to make a consequential fact in this case more or less probable and should thus be excluded pursuant to Rules 401 and 402,

14

Fed. R. Evid. It should also be precluded pursuant to Rule 404 of the Federal Rules of Evidence. Rule 404 prohibits the introduction of other crimes, wrongs or acts of a person in order prove that person's character. Fed. R. Evid. 404(b).

**8.     Testimony of Carla Klessens that is hearsay and/or irrelevant.**

Defendants anticipate Plaintiffs will attempt to introduce Carla Klessens' deposition testimony about things she allegedly overheard decades ago when she was a young child. For example, she claims that she overheard when she was four years old that her mom, Gunnar Hain, or others said local elders were waiting to hear from New York as to how to handle reporting about Hain's conduct. (*See* Depo. Carla Klessens 34:15-35:15 (Jan. 11, 2024), excerpts attached hereto as Exhibit D).

Such testimony constitutes obvious hearsay, and none of the exceptions enumerated in Rules 803 and 804 apply. Rule 802, Fed. R. Evid., provides that hearsay testimony is inadmissible unless otherwise made admissible by the hearsay exceptions enumerated in Rules 803 and 804.  Hearsay is defined as a statement that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).  Hearsay is not admissible unless otherwise provided in a federal statute, the Federal Rules of Evidence, or other rules prescribed by the United States Supreme Court.  Fed. R. Evid. 802. Thus, the Court should exclude Klessen

repeating statements of others she allegedly heard as obviously inadmissible hearsay testimony. [5]

### 9.  Testimony by Mark O'Donnell.

Defendants anticipate Plaintiffs will attempt to introduce testimony from Mark O'Donnell about his personal opinions and conclusions about Defendants and Watchtower because they attached his affidavit to their First Amended Complaint. (*See* Doc. 22-3). O'Donnell provided his own opinions as to what he believes are Watchtower policies. He opined about such issues as what he claims are policies regarding the handling of child sex abuse allegations, his interpretations of letters distributed long ago, and testimony provided by other people at other trials. (*Id.*).

His testimony is decidedly not admissible in this case. He undisputedly was not involved in any of the events at issue here and to our knowledge, he has never even lived in Montana. He is not a fact witness in this case and Plaintiffs did not disclose him as an expert witness. Therefore, he has no admissible testimony to offer and should be excluded from testifying. *See, e.g.*, *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106, n.1 (9th Cir. 2001) (Rule 37 forbids use at trial

---

[5] Not only is this hearsay that does not satisfy any of the enumerated exceptions in Rules 803 and 804, it is completely unreliable: Carla was four years old at the time that she allegedly heard these statements. (Ex. D, 34:15-20). Further demonstration of the unreliability of Klessens's testimony is the fact she admitted her memory is not reliable because she sustained a significant head injury in 2017. (*Id.*, 50:2-6). She also is not certain of some memories regarding the abuse—they may be memories of dreams she had. (*Id.*, 28:23-29:1).

of "any information required to be disclosed by Rule 26(a)…"). O'Donnell's testimony about religious beliefs, practices, and policies is further prohibited by the First Amendment, as discussed above. *See Watson*, *Hull Church*, and *Davis*, supra.

In addition, much or even all of his testimony is rampant hearsay that is inadmissible. Fed. R. Evid. 802.

## 10.   Arguments about the "Golden Rule," "Voice of the Community," and Public Safety Standards.

Defendants expect Plaintiffs to appeal to the jury to consider matters beyond the facts and applicable law in this case.  Those appeals include what is sometimes called the "golden rule" argument, as well as arguments to establish community standards for conduct or safety which are sometimes referred to as the "reptile" theory. None of those appeals are proper and they all should be precluded from trial.

The golden rule is defined as an argument which:

> either directly or by implication, tells the juror that in assessing damages they should put themselves in the injured person's place and render such a verdict as they would wish to receive were they in plaintiff's position.

75A Am. Jur. 2d Trial § 650 (1991). The golden rule argument is not permitted "because it encourages the jurors to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Id*.  There is no legal authority that permits counsel for a plaintiff to ask the jury to award damages using a golden rule argument; cases considering the topic hold that the argument is

improper. *Id*.; *see also* 70 A.L.R.2d 935; 68 A.L.R. Fed. 333. Accordingly, this Court should enter an order in limine precluding Plaintiffs from making any "golden rule" argument to the jury.

In addition, a similarly inadmissible argument is one that has become known as the "reptile" theory. This is an appeal or argument to the jury to get it to act in the case by applying the juror's self-interests and/or to act as the voice of the community to set what the alleged community standards should be. The Montana Supreme Court has described the theory:

> The litigation strategy is derived from a 1960s neuroscience theory suggesting that the human brain consists of three parts, each building on top of the other and each more specialized than the last. Louis Sirico Jr., The Trial Lawyer and the Reptilian Brain: A Critique, 65 Clev. St. L. Rev. 411, 414. The most basal of these parts, the reptile brain, allegedly controls a person's instinctive fight-or-flight, fear, safety, and survival responses. Sirico, *supra* at 414. The "Reptile Theory" litigation strategy adopts this concept and "instruct[s] lawyers to appeal to the juror's own sense of self-protection in order to persuade jurors to render a verdict for plaintiffs that will, in the collective, effectively reduce or eliminate allegedly 'dangerous' or 'unsafe' conduct and thereby improve the safety of themselves, their family members, and their community." Mo. Baptist Hosp. of Sullivan, No. 4:16CV01394 ERW, 2018 WL 746302 at *3, 2018 U.S. Dist. LEXIS 19689 at *6-7.

*Wenger v. State Farm Mut. Auto. Ins. Co.*, 2021 MT 37, ¶ 31 n. 6, 403 Mont. 210, 483 P.3d 480.

In a ruling earlier this year, Judge Christensen for the District of Montana granted a motion in limine excluding arguments related to the golden rule and reptile theory. *See Cranska v. Umia Ins., Inc.*, 2024 U.S. Dist. LEXIS 5565, *25 (D. Mont.

18

2024). Judge Christensen observed that "Montana state courts have previously stated this type of argument is inadmissible because 'it encourages jurors to exercise personal bias rather than objectivity and neutrality based on the evidence presented.'" *Id.* (*citing Lemm v. Goyins*, No. ADV-2004-43, 2005 Mont. Dist. LEXIS 1424, at *3 (1st Jud. Dist. Ct. Mont. Nov. 9, 2005); *Patch v. Hillerich & Brasby Co.*, No. CDV-2006-397, 2008 Mont. Dist. LEXIS 116, at *13-15 (1st Jud. Dist. Ct. Mont. Mar. 31, 2008)). He also recognized that "[t]his Court has reached the same conclusion." *Id.* (*citing Eriksen v. Wal-Mart Stores, Inc.*, No. CV 14-155-BLG-SPW, 2017 U.S. Dist. LEXIS 63062, 2017 WL 1497870, at *2 (D. Mont. Apr. 25, 2017); *Teague v. Remington Arms Co., LLC*, No. CV 18-184-M-DLC, 2022 U.S. Dist. LEXIS 211757, 2022 WL 17103236, at *15 (D. Mont. Nov. 22, 2022); *Gallegos ex rel. Est. of Moe v. BNSF Ry. Co.*, No. CV 22-68-M-DLC, 2023 U.S. Dist. LEXIS 210492, 2023 WL 8187923, at *4 (D. Mont. Nov. 27, 2023)).

The golden rule and reptile-type arguments to encourage them to decide the case on something other than the admitted facts and given law are inadmissible arguments. They should be precluded from trial.

**DATED** this 14th day of June, 2024.

MOULTON BELLINGHAM PC


By:   */s/ Gerry P. Fagan*
      GERRY P. FAGAN
      CHRISTOPHER T. SWEENEY
      JORDAN W. FITZGERALD
*Attorneys for Defendant Watch Tower Bible*
*and Tract Society of Pennsylvania*

BROWN LAW FIRM, P.C.


By:   */s/ Jon A. Wilson*
      JON A. WILSON
      BRETT C. JENSEN
      MICHAEL P. SARABIA
*Attorneys for Defendant Watchtower Bible*
*and Tract Society of New York, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(d)(2)(E), the undersigned hereby certify this brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double-spaced, with left, right, top, and bottom margins of one inch; and that the word count calculated by Microsoft Word is 4,611 words, excluding the Caption, Tables of Contents and Authorities, Signature Block, and Certificate of Compliance.

**DATED** this 14th day of June, 2024.

MOULTON BELLINGHAM PC

By: _/s/ Gerry P. Fagan_
　　GERRY P. FAGAN
　　CHRISTOPHER T. SWEENEY
　　JORDAN W. FITZGERALD

_Attorneys for Defendant Watch Tower Bible
and Tract Society of Pennsylvania_