**LANGEL YONCE & ASSOCIATES, P.C.**

*Certified Public Accountants*
*3819 Stephens Avenue*
*Missoula, Montana 59801*
*(406) 728-8858*
*Fax (406) 721-6816*

January 8, 2024

Mr. Robert L. Stepans
Mr. Ryan R. Shaffer
Mr. James C. Murnion
Meyer, Shaffer & Stepans, PLLC
430 Ryman Street
Missoula, Montana 59802

RE:   *Caekaert and Mapley (Plaintiffs) v. WTNY., et. al. (Defendants)*
      *(Cause No. CV-20-52-BLG-SPW)*
      *Rowland and Schulze (Plaintiffs) v. WTNY., et. al. (Defendants)*
      *(Cause No. CV-20-59-BLG-SPW)*

Dear Mr. Stepans, Shaffer, and Murnion:

You have requested that we provide you with our opinion concerning certain issues in regard to the matter referenced above. You requested our professional opinion regarding financial business relationship between Watchtower Bible and Tract Society of New York, Inc. (WTNY) and Watchtower Bible and Tract Society of Pennsylvania, Inc. (WTPA) (collectively, Defendants) during the period 1973 to 1992.

**OPINION**

> **It is our opinion that Defendant's financial statements and disclosures did not disclose material intercompany transactions in a manner consistent with generally accepted accounting principles designed to provide financial statement users with sufficient information to demonstrate that WTNY and WTPA functioned as separate and distinct entities.**

**ASSUMPTIONS AND LIMITING CONDITIONS**

In developing our opinion, we relied on information provided by your office. We express no opinion and accept no responsibility for the accuracy and completeness of the information or other data provided to us. We assume that the information or data provided to us is accurate and complete; we have relied upon this information and data in forming our opinion.

Meyer, Shaffer & Stepans, PLLP
Caekaert and Mapley v. WTNY., et. al. (Cause No. CV-20-52-BLG-SPW)
Rowland and Schulze v. WTNY., et. al. (Cause No. CV-20-59-BLG-SPW)
January 8, 2024
Page Five (5 of 10)

Of particular importance throughout the years relevant to this case, and still relevant today, are opinions issued by the APB which were expanded upon by the FASB to deal with the content and structure of financial statements which govern the manner in which non-governmental businesses present information within their financial statements.

These standards are crucial for ensuring that financial information is presented in a consistent manner. GAAP developed by the FASB (1973 to present), including opinions adopted from the APB (1959 through 1973), are required to be followed by companies in preparing their financial statements. The Defendants were obligated to prepare their financial statements using GAAP rules developed by the APB and FASB. While too extensive to reproduce for purposes of this expert report, the opinions of the APB included relevant standards for accurately reporting the following within a company's financial statements:

1. A statement of financial condition or balance sheet showing the assets, liabilities, and net assets on the historical cost basis as of a specific date (i.e., the last day of a fiscal year) (GAAP adopted and expanded by APB and FASB),
2. A statement of changes in net assets or income statement showing revenues and expenses from operations, as well as items of other income and expense, with a resulting disclosure of the net income for a relevant period of time (i.e., for the twelve months ended on the last day of a fiscal year) (APB Opinion 09 – December 1966; adopted and expanded by FASB),
3. A statement reporting the changes in financial position or statement of cash flow for a relevant period of time (i.e., for the twelve months ended on the last day of a fiscal year) (APB Opinion 19 – March 1971; adopted and expanded by FASB),
4. Footnote disclosures clearly describing accounting policies, major customer relationships, major vendor relationships, related party transactions, restatements of prior year financial statements (APB Opinion 22, adopted and expanded by FASB),
5. Materiality as a guide to the requirement to disclose certain financial items on the face of the financial statement, within the footnotes of the financial statements, or both.

As described in the preceding Factual Background and Basis for Opinion section of this report, WTNY and WTPA prepared annual financial statements. Pursuant to authoritative guidance provided by the APB and FASB at all times relevant to this case, management, including the Boards of Directors, were responsible for the fair and accurate presentation of financial activities of WTNY and WTPA. It is our opinion that Defendants did not prepare financial statements that met authoritative standards.

Meyer, Shaffer & Stepans, PLLP
Caekaert and Mapley v. WTNY., et. al. (Cause No. CV-20-52-BLG-SPW)
Rowland and Schulze v. WTNY., et. al. (Cause No. CV-20-59-BLG-SPW)
January 8, 2024
Page Six (6 of 10)

An overriding concept within accounting theory is that of materiality wherein activities that are considered material in substance and in form are to be clearly disclosed within the financial statements, either as specific line items and dollar amounts on the face of the financial statements or as a footnote attached to the financial statements. As previously discussed WTNY and WTPA had significant related party transactions representing an average of 25.89% of WTNY's annual cash flow and an average of 38.12% of WTPA's annual cash flow. Additionally, Boards of Directors of both organizations consisted of the same individuals demonstrating common control between WTNY and WTPA. Authoritative guidance provided by the APB and the FASB would not require that WTNY and WTPA consolidated their financial statements based on the material substance and form of related party transactions and common control, however, related party disclosures would be required to inform users of financial statements regarding the specific dollar amounts of transactions, the type of intercompany pricing that was in place, the amounts and terms of intercompany receivables and payables. The disclosures of material related party balance sheet items such as intercompany receivables and payables would not only need to be shown as a specific line item at their current balances as of the balance sheet date, but also reported in a footnote to the financial statements explaining the type of intercompany receivable or payable, the terms of the receivable or payable (including stated fair market interest rates), and a schedule showing future expected payments pursuant to stated terms. The disclosures of material related party items of income and expenses would not only need to be shown as a specific line item in the amount recognized during the time period covered by the statement of income, but also reported in a footnote to the financial statements explaining the items of intercompany income or expense.

Pursuant to Generally Accepted Accounting Principles (GAAP), materiality is defined by a five percent (5%) rule which holds that a reasonable investor would not be influenced in their investment decisions by fluctuation in net assets or net income of 5% or less. The percentages are intended to be an initial guide to determining whether a financial statement item is significant enough to warrant disclosure on the face of the financial statement or in a note to the financial statement, or if the item is the result of an error that should be corrected or if not corrected, considered a material misstatement to the financial statements, which could lead to a qualified opinion by an independent auditor of an entity's financial statements.

The Reports of the Treasurer of WTNY commonly included a paragraph describing limited data with respect to monies received from WTPA for the printed of materials described above. Also of significant importance, the Reports of the Treasurer notes amounts of monies received from WTPA in excess of the monies received for printing services rendered by WTNY and the accounting application of funds received as an offset to a

Meyer, Shaffer & Stepans, PLLP
Caekaert and Mapley v. WTNY., et. al. (Cause No. CV-20-52-BLG-SPW)
Rowland and Schulze v. WTNY., et. al. (Cause No. CV-20-59-BLG-SPW)
January 8, 2024
Page Seven (7 of 10)

related party receivable from WTPA. The Reports of the Treasurer note regarding intercompany amounts receivable and/or payable between WTNY and WTPA indicate significant dollar amounts (in excess of $14 million noted in the 1978 Report of the Treasurer – Bates WTNY001141). The first disclosure on the face of the balance sheets of WTNY was in 1986 reporting a receivable from WTPA in the amount of $24,039,264.72 (Bates – WTNY000168). Given the materiality of the balance in the intercompany account, there should have also been a disclosure on the balance sheet in all years prior to 1986. Additionally, the financial statements should have included a footnote disclosure describing terms related to the extension or payment of intercompany credit. Without full disclosure of the terms of these intercompany transactions it appears that WTNY and WTPA did not act independently of each other with respect to their cash flow needs.

Additionally, a meeting of the Board of Directors of WTNY included a corporate resolution to indefinitely change the pricing for printing services rendered to help WTNY improve its cash flow (Bates WTNY001131 and WTNY001132). With respect to the financial activities of WTNY there does not appear to be any repayment terms or expectation of repayment (Bates WTPA066721) placed on the intercompany receivable payable accounting between WTNY and WTPA to indicate that these transactions are at an arm's length.

Failure to disclose all intercompany transactions regardless of materiality is considered a departure from GAAP. If undisclosed amounts related to intercompany transactions are also pervasive and of a material amount then a user of the financial statements could be poorly informed and make poor business decisions, or not be aware of instances of fraudulent transactions. Additionally, an auditor of the financial statements would issue an adverse opinion signifying that the financial statements may not be relied upon by financial statement users.

Based on financial information of WTNY, the reader of WTPA Reports of the Treasurer, Minutes of Board Meetings, and financial statements would reasonably expect to see reporting of the intercompany transactions that is consistent with that of WTNY. A receivable (an asset) from WTPA on the books of WTNY would show itself as a payable (a liability) from WTPA to WTNY. From 1973 through 1985 WTPA makes no mention of its intercompany relationship with WTNY nor does WTPA include any notes regarding the cash flow struggles of WTNY which led to the resolution to change the pricing for printing services rendered in 1977. Given the materiality of intercompany transactions and WTNY's reliance on additional cash from WTPA to maintain its operations represents a requirement that WTPA disclose these intercompany transactions during all of the years relevant to this case. In 1986, WTPA begins disclosing the amount payable to WTNY on the face of the WTPA balance sheet and also includes a footnote disclosure. The footnote

Meyer, Shaffer & Stepans, PLLP
Caekaert and Mapley v. WTNY., et. al. (Cause No. CV-20-52-BLG-SPW)
Rowland and Schulze v. WTNY., et. al. (Cause No. CV-20-59-BLG-SPW)
January 8, 2024
Page Eight (8 of 10)

disclosures commonly note that WTNY does not receive enough cash from revenue sources to cover its expenditures and therefore needs additional funds from WTPA. For example, 1989 Footnote C (Bates WTNY000198), 1990 Footnote A (Bates WTNY000201), and 1992 Footnote F (Bates WTPA066801) states that WTNY needed $6,000,000, $10,900,839, and $30,000,000, respectively to help cover its expenditures. With respect to the financial activities of WTPA there does not appear to be any terms placed on the intercompany receivable payable accounting between WTNY and WTPA that indicate that these transactions are at an arm's length.

Common control which leads to related party relationships and intercompany transactions are a normal part of business, however the existence of a related party relationship may expose a reporting entity to risks or provide opportunities which would not have existed in the absence of the relationship. Related party relationships may therefore have a material effect on the financial performance, financial position and financing and investing of a reporting enterprise because related parties may enter into transactions, which unrelated parties would not enter into. Also, transactions between related parties may not be made pursuant to the same terms and conditions as between unrelated parties. The operating results and financial position of an enterprise may be affected by a related party relationship even if related party transactions do not occur. The mere existence of the relationship may be sufficient to affect the transactions of the reporting enterprise with other parties. At all times relevant to this case common control of the Boards of Directors of WTNY and WTPA created the existence of a related party relationship and the intercompany transactions between WTNY and WTPA were of material amounts.

Based on the materiality of the intercompany transactions, WTNY's reliance on WTPA for cash flow needs without arm's length terms, and the lack of disclosure regarding these intercompany transactions it is our opinion that Defendant's financial statements and disclosures did not clearly disclose material intercompany transactions in a manner consistent with generally accepted accounting standards designed to provide financial statement users with sufficient information to demonstrate that WTNY and WTPA functioned as separate and distinct entities.

*ADDITIONAL ITEM OF INTEREST:*

As previously mentioned in this report, both WTNY and WTPA reported results of financial activity on a fiscal year-end basis with a fiscal year-end of August 31. WTPA has continued to use the fiscal year-end of Augst 31 through all years relevant to this case. WTNY, on the other hand, changed its fiscal year-end from August 31 to the last day of February during the 1981/1982 fiscal years by reporting on the short year of September 1, 1981 through February 28, 1982. For all future years WTNY has used the last day of

Meyer, Shaffer & Stepans, PLLP
Caekaert and Mapley v. WTNY., et. al. (Cause No. CV-20-52-BLG-SPW)
Rowland and Schulze v. WTNY., et. al. (Cause No. CV-20-59-BLG-SPW)
January 8, 2024
Page Ten (10 of 10)

**DATA CONSIDERED IN FORMING THE OPINION EXPRESSED**

In addition to the knowledge gained from our professional, educational, and business experience used in forming the opinion expressed, we have reviewed certain information provided by you.

This report provides our opinion financial business relationship between Watchtower Bible and Tract Society of New York, Inc. (WTNY) and Watchtower Bible and Tract Society of Pennsylvania, Inc. (WTPA) (collectively, Defendants). Our opinion was formed based on our investigation, research, and the information and documents that have been provided as of the date of this report, as well as our professional, educational, and business experience. We reserve the right to revise or supplement the opinions and conclusions expressed in this report if more information or documentation becomes available.

Please contact our office if you have any questions or comments regarding this report.

Sincerely,

LANGEL, YONCE & ASSOCIATES, P.C.
Certified Public Accountants

Benjamin F. Yonce, CPA, CVA

/bfy