Robert L. Stepans
Ryan R. Shaffer
James C. Murnion
Victoria K.M. Gannon
Meyer, Shaffer & Stepans, PLLP
430 Ryman Street
Missoula, MT  59802
Tel: (406) 543-6929
Fax: (406) 721-1799
rob@mss-lawfirm.com
ryan@mss-lawfirm.com
james@mss-lawfirm.com
katy@mss-lawfirm.com

Matthew L. Merrill (appearing *pro hac vice*)
Merrill Law, LLC
1401 Delgany Street, #404
Denver, CO  80202
Tel: (303) 947-4453
matthew@merrillwaterlaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | | |
|---|---|---|
| TRACY CAEKAERT, and CAMILLIA MAPLEY, | ) ) ) | Case No. CV-20-52-BLG-SPW |
| Plaintiffs, | ) ) | **PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANTS' JOINT MOTIONS IN LIMINE (ECF NO. 415)** |
| vs. | ) ) | |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., and WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA., | ) ) ) ) ) | |
| Defendants, | ) ) | |

///

///

///

# Table of Contents

GENERALLY APPLICABLE LAW ........................................................................1

FIRST AMENDMENT.......................................................................................2

ARGUMENT ....................................................................................................5

   1.  Defendants' First Motion in Limine...............................................5

   2.  Defendants' Second Motion in Limine ..........................................8

   3.  Defendants' Third Motion in Limine .............................................9

   4.  Defendants' Fourth Motion in Limine .........................................11

   5.  Defendants' Fifth Motion in Limine ............................................13

   6.  Defendants' Sixth Motion in Limine............................................14

   7.  Defendants' Seventh Motion in Limine .......................................16

   8.  Defendants' Eighth Motion in Limine .........................................17

   9.  Defendants' Ninth Motion in Limine ...........................................20

  10.  Defendants Tenth Motion in Limine ............................................20

    A. Motions in limine are intended to establish the admissibility of specific evidence, not limit trial strategy....................................21

    B. Nothing in Plaintiffs' trial strategy violates the "Golden Rule." .................24

    C. Conclusion.......................................................................26

**Plaintiffs' Brief in Response to Defendants' Joint Motions in Limine (ECF No. 415)**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*

i

## **Table of Authorities**

**Cases**

*Agan v. BNSF Ry. Co.*,
No. CV 19-83-BLG-SPW, 2022 WL 3700052 (D. Mont. Aug. 26, 2022) ..........23

*Anderson v. Merit Energy Co.*,
2009 WL 1384098 (D. Colo. May 13, 2009) ......................................................22

*Beagle v. Vasold*,
65 Cal.2d 166 (1966) .........................................................................................26

*Big Sky Colony, Inc. v. Montana Dept. of Lab. and Indus.*,
291 P.3d 1231 (Mont. 2012) ................................................................................3

*BNSF Ry. Co. v. Quad City Testing Laboratory, Inc.*,
No. CV-07-170-BLG-RFC, 2010 WL 4337827 (D. Mont. Oct. 26, 2010) ..........1

*Braunfeld v. Brown*,
366 U.S. 599 (1961) .............................................................................................2

*Cantwell v. State of Connecticut*,
310 U.S. 296 (1940) .............................................................................................2

*Davis v. Church of Jesus Christ of Latter Day Saints*,
852 P.2d 640 (Mont. 1993) ........................................................................... 4, 6, 7

*Dept. of Human Resources of Oregon v. Smith*,
494 U.S. 872 (1990) .............................................................................................3

*Ficek v. Kolberg–Pioneer, Inc.*,
2011 WL 1316801 (D. Mont. Apr. 5, 2011) .........................................................1

*Frost v. BNSF Ry. Co.*,
218 F. Supp. 3d 1122 (D. Mont. 2016) ................................................................1

*Gliko v. Permann*,
130 P.3d 155 (Mont. 2006) ..................................................................................4

*Hawthorne Partners v. AT&T Technologies, Inc.*,
831 F.Supp. 1398 (N.D. Ill. 1993) ......................................................................21

**Plaintiffs' Brief in Response to Defendants' Joint Motions in Limine (ECF No. 415)**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*

ii

*Jacobson v. Cmmw. of Massachusetts*,
  197 U.S. 11 (1905)..................................................................................3

*Johnson v. Celotex Corp.*,
  899 F.2d 1281 (2d Cir. 1990) ..............................................................24

*Lewis v. Buena Vista Mutual Ins. Ass'n.*,
  183 N.W.2d 198 (Iowa 1971) ...............................................................22

*Luce v. United States*,
  469 U.S. 38 (1984)................................................................................21

*McNely v. Ocala Star-Banner Corp.*,
  99 F.3d 1068 (11th Cir. 1996) .............................................................24

*Minden v. Allstate Prop. and Cas. Ins. Co.*,
  No. 2:21-CV-00151-APG-BNW, 2024 WL 2848975 (D. Nev. June 5, 2024)....23

*Prince v. Massachusetts*,
  321 U.S. 158 (1944).................................................................................3

*Rocky Mt. Biologicals, Inc. v. Microbix Biosystems, Inc.*,
  986 F.Supp. 2d 1187 (9th Cir. 1990) ......................................................4

*Sherbert v. Verner*,
  374 U.S. 398 (1963)..............................................................................2, 3

*Shultz v. Rice*,
  809 F.2d 643 (10th Cir. 1986) ..............................................................24

*Sperberg v. Goodyear Tire & Rubber Co.*,
  519 F.2d 708 (6th Cir. 1975) ...............................................................22

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
  538 U.S. 408 (2003)........................................................................ 11, 12

*Stokes v. Delcambre*,
  710 F.2d 1120 (5th Cir.1983) ..............................................................24

*U.S. v. Gay*,
  967 F.2d 322 (9th Cir. 1992) ......................................................... 15, 16

**Plaintiffs' Brief in Response to Defendants' Joint Motions in Limine (ECF No. 415)**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*
iii

*U.S. v. Geston*,
   299 F.3d 1130 (9th Cir. 2002) ...............................................................15

*U.S. v. Heller*,
   551 F.3d 1108 (9th Cir. 2009) ..............................................................1, 5

*Uptain v. Huntington Labs, Inc.*,
   723 P.2d 1322 (Colo. 1986)...................................................................22

*Van Schaick v. Church of Scientology of California, Inc.*,
   535 F. Supp. 1125 (D. Mass. 1982) .........................................................3

*Walden v. Maryland Cas. Co.*,
   No. CV 13-222-M-DLC, 2018 WL 6445549 (D. Mont. Dec. 10, 2018) ............23

*Walzer v. St. Joseph State Hospital*,
   231 F.3d 1108 (8th Cir. 2000) ...............................................................21

*Zrowka v. BNSF Ry. Co.*,
   No. CV-21-61-GF-BMM, 2023 WL 3412465 (D. Mont. May 12, 2023)...........23

**Statutes**

Mont. Code Ann. 27-2-216(5)(a) (2019) ...................................................17

**Rules**

Federal Rules of Evidence:

401....................................................................................................1
402....................................................................................................1
403...............................................................................................1, 15
404........................................................................................ 11, 14, 16
404(b)...............................................................................................15
404(b)(2) ..................................................................................... 11, 16
406...................................................................................................12
607...................................................................................................14
608...................................................................................................14

**Plaintiffs' Brief in Response to Defendants' Joint Motions in Limine (ECF No. 415)**
*Caekaert and Mapley v. Watchtower Bible Tract of New York, Inc., et. al.*

iv

608(b) ........................................................................................................15

801 ....................................................................................................... 18, 19

801(d)(2) .......................................................................................................19

803(1) ...........................................................................................................19

804 ...............................................................................................................19

804(3) ...........................................................................................................19

## Other Authorities

9th Cir. Model Jury Instructions 1.14 ......................................................20

*Black's Law Dictionary*,
  1109 (9th ed. 2009) ...............................................................................21

Montana Pattern Jury Instructions 2d 1.02 .............................................20

## GENERALLY APPLICABLE LAW

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *U.S. v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). "Courts have 'wide discretion' in considering and ruling upon a motion in limine." *Frost v. BNSF Ry. Co.*, 218 F. Supp. 3d 1122, 1133 (D. Mont. 2016) (citing *Ficek v. Kolberg–Pioneer, Inc.*, 2011 WL 1316801, at *1 (D. Mont. Apr. 5, 2011)). "[A] motion in limine should not be used to resolve factual disputes or weigh evidence"; rather, "[t]o exclude evidence on a motion in limine 'the evidence must be inadmissible on all potential grounds.'" *BNSF Ry. Co. v. Quad City Testing Laboratory, Inc.*, No. CV-07-170-BLG-RFC, 2010 WL 4337827, at *1 (D. Mont. Oct. 26, 2010) (citing cases).

"Relevant evidence is admissible unless" another applicable rule applies; "[i]rrelevant evidence is inadmissible." Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

///

# FIRST AMENDMENT

Defendants make sweeping and unsupported arguments asking this Court to transform the constitutionally recognized right to believe and practice religion into immunization from civil liability.  At no point do Defendants acknowledge and apply the applicable First Amendment law to this case or the evidence they wish to exclude.  Instead, they rely on bald assertions that the First Amendment prohibits introduction of broad swaths of unidentified evidence, without any effort to accurately portray or apply First Amendment law.

The First Amendment "embraces two concepts,—freedom to believe and freedom to act.  The first is absolute but, in the nature of things, the second cannot be.  Conduct remains subject to regulation for the protection of society." *Cantwell v. State of Connecticut*, 310 U.S. 296, 303–04 (1940).  The Supreme Court "has rejected challenges under the Free Exercise Clause to governmental regulation of certain overt acts prompted by religious beliefs or principles, for 'even when the action is in accord with one's religious convictions, (it) is not totally free from legislative restrictions.'" *Sherbert v. Verner*, 374 U.S. 398, 402–03 (1963) (quoting *Braunfeld v. Brown*, 366 U.S. 599, 603 (1961)).  The Montana Supreme Court has likewise noted that "[c]ourts uniformly have rejected the notion that a party's religious motivation for undertaking an act can transform a generally applicable regulation into a prohibition on religious conduct." *Big Sky Colony, Inc.*

*v. Montana Dept. of Lab. and Indus.*, 291 P.3d 1231, 1237 (Mont. 2012) (citing

*Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 878 (1990)).

The Supreme Court has "consistently held that the right of free exercise does

not relieve an individual of the obligation to comply with a 'valid and neutral law

of general applicability on the ground that the law proscribes (or prescribes)

conduct that his religion prescribes (or proscribes).'" *Dept. of Human Resources

of Oregon*, 494 U.S. at 879–80 (citing cases). "The conduct or actions so regulated

have invariably posed some substantial threat to public safety, peace or order."

*Sherbert*, 374 U.S. at 403 (citing cases). For example, the Court has upheld under

First Amendment scrutiny laws that require vaccinations in children and laws that

prohibit children from working. *Jacobson v. Cmmw. of Massachusetts*, 197 U.S.

11 (1905); *Prince v. Massachusetts*, 321 U.S. 158 (1944).

Whether First Amendment "immunity exists depends, in part, on whether

the adjudication of the claim would require a judicial determination of the validity

of a religious belief, and, if not, on whether application of the regulation 'is the

least restrictive means of achieving some compelling state interest.'" *Van Schaick

v. Church of Scientology of California, Inc.*, 535 F. Supp. 1125, 1134–35 (D. Mass.

1982) (citing cases). Montana likewise recognizes that the presence of a

compelling state interest subjects a religious organization's actions to judicial

scrutiny without offending the First Amendment. *Davis v. Church of Jesus Christ*

*of Latter Day Saints*, 852 P.2d 640, 649 (Mont. 1993), *overruled on other grounds by Gliko v. Permann*, 130 P.3d 155 (Mont. 2006).

If Defendants had a legitimate First Amendment basis to exclude Plaintiffs' evidence, they had an obligation to identify such evidence with particularity and set forth a proper legal analysis applying First Amendment law to that evidence.[1] Rather than doing this, Defendants cherry picked quotes from cases that are factually distinct and have no application here[2] while completely avoiding the analysis underpinning those decisions, all in hopes that this Court will not undertake a proper legal analysis and issue rulings not supported by the law.

At no point do the Defendants explain how admitting any of Plaintiffs' evidence could impact their right to believe or practice their religion. Moreover, glaringly absent from Defendants' briefing is any discussion of how such purported impact outweighs the State of Montana's compelling interest in protecting children from known sexual abuse. Indeed, protecting children from

---

[1] Because Defendants failed to set forth a valid legal analysis applying First Amendment law to Plaintiffs' evidence in their opening brief, they are prevented from doing so in their reply because this would have the effect of eliminating Plaintiffs' ability to respond to such arguments . *Rocky Mt. Biologicals, Inc. v. Microbix Biosystems, Inc.*, 986 F.Supp. 2d 1187, 1197 (9th Cir. 1990).

[2] The vast majority of First Amendment cases cited by Defendants throughout this case involve disputes over internal church employment/appointment decisions or property disputes. Defendants have yet to cite a single case in which a religious organization's decision to hide child sexual abuse has been protected by the First Amendment.

known pedophiles is a recognized, compelling state interest of the highest order and Defendants do not argue or even suggest otherwise.  Nor do Defendants set forth any evidence or rational argument that complying with the neutrally applicable laws of Montana - like all organizations and corporations that do business in Montana are required to do - burdens their religious beliefs or practices in any way.  The health, safety, and protection of children has repeatedly, and for over one hundred years of Supreme Court decisions, been considered a state interest sufficiently compelling to overcome any incidental burdens it places on religion.  Defendants' failure to engage with First Amendment law in any meaningful way warrants rejection of their First Amendment arguments.

## ARGUMENT

### 1.  Defendants' First Motion in Limine

Defendants ask the Court to prohibit Plaintiffs from establishing the standard of care for elders in the faith of Jehovah's Witnesses.  As a starting point, this Motion does not ask the Court to rule that particular evidence or testimony is inadmissible.  Instead, it asks the Court to prohibit Plaintiffs from proving an element of their negligence claims.  This is not a proper motion in limine.  *Heller*, 551 F.3d at 1111.  But even if it was a motion seeking exclusion of particular evidence or testimony, Defendants fail to provide any reason why evidence of the

///

standard of care would be irrelevant, immaterial, or unfairly prejudicial.  It should be rejected on this basis alone.

As set forth above, Defendants' First Amendment argument is vague, unsupported, and fails to apply the applicable legal analysis.  None of the cases cited support Defendants' argument that Plaintiffs should be prohibited from introducing evidence of the applicable standard of care.  In *Davis*, the plaintiff, a church member, claimed negligent misrepresentation, fraud, and intentional infliction of emotional distress in the handling of her claim for injuries suffered in a fall.  852 P.2d at 643.  The plaintiff was challenging the church's decision to deny her a good standing report (Temple Recommend) and church work (Church Calling) to dissuade her from pursuing claims against the church.  *Id.*  The Supreme Court of Montana affirmed an order in limine concluding that it would be impossible to evaluate the church's decision "without an evaluation of the Mormon religion."  *Id.* at 649.  The court further found there was no compelling state interest implicated in the plaintiff's claims that would permit such an evaluation. *Id.*

Here, neither the Court nor the jury is being called to resolve a dispute concerning Plaintiffs' relationship with the Jehovah's Witnesses.  Instead, the jury will be asked to apply the same laws and standards of care that apply to all people and corporations in Montana.  Plaintiffs are not seeking to establish a standard of

care that applies to Jehovah's Witnesses only; they seek only to hold Defendants to the neutrally applicable standards established by Montana law.  If the manager of the local K-Mart was sexually abusing those he managed, the same standard would apply, and the same types of evidence would be admissible.

Further, unlike *Davis*, this case and the applicable standard of care pertain to the state's compelling interest in protecting children from sexual abuse.  Thus, even if establishment of the standard of care involves aspects of the Jehovah's Witnesses' faith, Defendants failed to put forth any evidence that its religious beliefs or practices would be impacted, and the compelling state interest permits the Court and the jury to consider aspects of the Jehovah's Witnesses' religion which resulted in the hiding of child sexual abuse.

The *Watson* and *Presbyterian Church* cases cited by Defendants were church property disputes and neither case stands for the proposition that Plaintiffs should be prohibited from introducing evidence regarding the standard of care.

While Defendants' motion is titled as one about standard of care, they go on to claim "Plaintiffs are constitutionally prohibited from introducing evidence that contradicts what Jehovah's Witnesses say its religious doctrines, practices, and standards are."  Defs.' Br. in Supp. of Joint MiLs at 9, ECF No. 416 (hereinafter "Defs.' Br.").  But Defendants have not specifically identified any such evidence they believe is inadmissible.  Plaintiffs' evidence of Defendants' policies and

procedures comes from Defendants' own policy and procedure manuals.

Defendants cite no basis for prohibiting Plaintiffs from introducing evidence of

their policies and procedures that is found in their own copyrighted and published

manuals.  Defendants' First Motion in Limine is actually a motion to prevent

Plaintiffs from proving an element of their negligence claim and it lacks any legal

support.

**2. Defendants' Second Motion in Limine**

Defendants argue Plaintiffs should be prohibited "from mentioning,

disparaging, or improperly characterizing the beliefs[3], practices, and procedures of

Jehovah's Witnesses."  Defs.' Br. at 11.  In an overt effort to gut Plaintiffs' case,

the vague and sweeping motion ostensibly covers nearly every document and all

evidence in the case.  Indeed, this case is centered on Defendants' copyrighted and

published policies for the handling and investigation of sexual abuse within the

church.  For example, Plaintiffs' negligence claim alleges Defendants violated

Montana's mandatory reporting statute when their Montana agents followed the

published and established practice of not reporting known child abuse to secular

authorities.  Defendants fail to show how the presentation of this policy, or any

other practices or policies at issue in this case, would in any way prejudice their

---

[3] Defendants' beliefs are not at issue in this case, only their policies and procedures.

right to believe or practice their religion.  Instead, Defendants make a conclusory argument without any analysis that Plaintiffs are constitutionally prohibited from presenting this evidence.  For the same reasons discussed above, Defendants' constitutional arguments are without merit and should be denied.

Defendants list a number of bible verses, practices, and procedures they seek to exclude specifically.  Plaintiffs have no intention of submitting the bible or any verse thereof to the jury or asking the jury and the Court to interpret bible verses.  However, Defendants' books and manuals containing their policies and procedures regarding child abuse refer to various bible verses, and Plaintiffs fully intend to introduce these books and manuals as evidence.  These policies and procedures are indisputably relevant to this case because they were the policies relied on by Defendants' Montana agents when they chose to hide the child sexual abuse occurring in Hardin.  Defendants fail to set forth any valid legal basis for the exclusion of evidence in the Second Motion in Limine.

### 3. Defendants' Third Motion in Limine

Defendants allege, without any argument, that Plaintiffs should be prevented from doing "anything that denigrates or disparages the reputation of Jehovah's Witnesses."  Defs.' Br. at 12.  As an initial matter, it is completely unclear what evidence falls into this vague category, or how the Court is to determine what constitutes denigration or disparagement of the Jehovah's Witnesses' reputation.

For instance, does evidence that Defendants' agents knew about and failed to report known pedophiles within the Hardin Congregation constitute disparagement of the Jehovah's Witnesses?  It is impossible to know because Defendants never explain what they mean.  As such, Defendants' third motion is too vague and subjective to be workable.

Regardless, Plaintiffs have no intention of disparaging the reputation of Jehovah's Witnesses.  At the same time, Plaintiffs' claims involve serious allegations related to the policies and procedures that Defendants had to handle and investigate allegations of child sexual abuse.  The evidence in this case is damning and does not burnish the reputation of the Jehovah's Witnesses.  But that is the nature of the evidence because Defendants' policies required their agents to secretly harbor pedophiles instead of helping their young victims.  While Defendants will undoubtedly dispute this evidence, it is highly relevant to the question of why Defendants failed to report known, admitted to child sexual abuse. The nature of Defendants' conduct is at issue in this case and Plaintiffs are entitled to put evidence of this conduct.  Defendants fail to cite any legally supportable basis for excluding such evidence, even if they feel like it "denigrates" or "disparages" their reputation.

///

///

### 4. Defendants' Fourth Motion in Limine

Defendants argue that Plaintiffs should be prohibited from introducing evidence of other child abuse cases involving Jehovah's Witnesses. Defs.' Br. at 13. Defendants simultaneously recognize that such evidence is relevant to Plaintiffs' punitive damages claim. Likewise, the Court compelled WTNY to produce certain documents not specifically linked to the abuse at issue in this case because "as Plaintiffs' note, their punitive damages claim is informed by the extent of WTNY' s alleged wrongdoing and WTNY's intent in committing the alleged wrongs." Order at 12, ECF No. 239. Rule 404 allows admission of evidence of other crimes, wrongs, and acts for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).[4]

Nevertheless, Defendants attempt to limit Plaintiffs' presentation of such evidence by arguing Plaintiffs must "establish a sufficient nexus of those other actions to the specific harm of sexual abuse Plaintiffs complain of here." Defs.' Br. at 14. Defendants fail to tell the Court that the case they rely on only imposes such requirement on "lawful out-of-state conduct". *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003). Defendants make no attempt to identify

---

[4] Plaintiffs will make themselves available if the Court wants to conduct a pretrial evidentiary hearing on these matters.

specific evidence that they believe involved lawful conduct and would therefore be

subject to the *Campbell* requirement.  Indeed, it is hard to imagine how child

sexual abuse cases could involve lawful conduct.  Moreover, even if the conduct

was lawful, Plaintiffs' cases focus heavily on the nexus between their harm and the

Jehovah's Witnesses policies that all of its congregations were required to follow

and had the effect of ignoring and hiding child sexual abuse.  The myriad of other

instances of child abuse occurring at Jehovah's Witnesses congregations across the

United States present the same nexus of action/inaction to harm and are therefore

admissible.

Additionally, Defendants may argue the local congregation elders and/or

circuit overseers in Hardin "went rogue" and that Plaintiffs' abuse was an isolated

incident.  If Defendants take this position, they would be opening the door to

evidence of how other Jehovah's Witnesses congregations handled reports of child

sexual abuse.  Federal Rule of Evidence 406 permits evidence of "an organization's

routine practice may be admitted to prove that on a particular occasion the person

or organization acted in accordance with the habit or routine practice."  The myriad

of other cases involving child sexual abuse at local congregations is evidence that

Jehovah's Witnesses routinely harbor and fail to report to secular authorities

known child abusers.

///

Plaintiffs have alleged, and the evidence shows, a multi-decade effort by Defendants to hide instances of child sexual abuse involving individuals in their congregations, as well as the mishandling of the reports and allegations of child sexual abuse connected to local congregations because Defendants trained and instructed their representatives in how to deal with those reports and allegations. Any and all allegations of abuse connected with the Hardin congregation are relevant to Plaintiff's underlying claims (as well as punitive damages as further described in this Reply). For all the reasons set forth above, Defendants' motion should be denied.

## 5. Defendants' Fifth Motion in Limine

Defendants seek to prohibit Plaintiffs from offering testimony and evidence regarding what they allege are "legal conclusions" about (1) accounting principles applicable to Defendants; (2) "roles of church members"; (3) "common control"; (4) agency; and (5) alter ego. Defs.' Br. at 14–16. Plaintiffs certainly understand that it is the role of the Court to make legal conclusions and instruct the jury on the law. But Plaintiffs must be permitted to put forth evidence that bears on such legal questions. Plaintiffs are plainly entitled to put on evidence regarding the way the Defendants were managed and controlled during the relevant time period (including the way that they handled their accounting), as well as evidence regarding the roles of church members. All of this evidence bears on questions to

be decided at trial and Defendants offer no argument or explanation as to how such evidence could constitute a prohibited "legal conclusion."  Like its other Motions in Limine, Defendants' Fifth motion improperly seeks to gut Plaintiffs' presentation of such evidence with vague, unsupported arguments that are contrary to the rules of evidence.

### 6. Defendants' Sixth Motion in Limine

Defendants argue that Plaintiffs should be precluded from offering any evidence or argument "about discovery conduct in this case or in other unrelated Watchtower cases."  Defs.' Br. at 16.  Plaintiffs have no intention of introducing the Court's myriad of orders sanctioning Defendants for their discovery conduct, nor do they intend to offer evidence of Defendants' discovery abuse in other cases.

However, the Defendants' request is so broad and vague that, if granted, would prevent Plaintiffs from using Defendants' dishonest conduct as permitted under Federal Rules of Evidence 404, 607, and 608.  For example, WTNY's discovery answers swore it did not receive notice of Plaintiffs' abuse until 2020, yet some of the documents they were ultimately compelled to produce show it received notice decades before.[5]  The fact that WTNY attempted to get away with blatantly lying about a critical fact issue while simultaneously hiding evidence of

---

[5] This issue has been fully briefed in a pending motion for sanctions.  Plfs.' Br. re: Pattern of Discovery Abuse at 21–23, ECF No. 366.

the lie is directly relevant to its credibility at trial. *U.S. v. Geston*, 299 F.3d 1130, 1137 (9th Cir. 2002) ("Specific bad act evidence is admissible under Rule 608(b) 'for the purpose of attacking or supporting the witness credibility' if it is probative of the 'witness' character for truthfulness or untruthfulness' or 'challenges a witness's credibility.'"); *U.S. v. Gay*, 967 F.2d 322, 328 (9th Cir. 1992) ("We thus agree with the Fourth Circuit that 404(b) evidence may be used for impeachment purposes.")

As another example, the Court already determined that WTNY spoliated evidence and determined an adverse jury instruction would be given to the jury. Order, ECF No. 410. There is no basis to prevent Plaintiffs' counsel from discussing this instruction with the jury, just like every other instruction. Yet, Defendants' overbroad motion would do just that.

Without a doubt, Defendants will be prejudiced when the jury learns of their deceptive conduct. But Federal Rule of Evidence 403 only prohibits the admission of evidence if the danger of <u>unfair</u> prejudice <u>substantially</u> outweighs its probative value. There is nothing unfair about a jury learning how a party lied under oath, destroyed evidence, or attempted to withhold relevant documents under uncredible claims of privilege; and Defendants do not even argue that evidence of their dishonest discovery conduct would substantially outweigh its prejudice. The jury deserves to know just how far Defendants have gone to subvert the truth in this

case when determining whether to believe what they say at trial.  The Court should

accordingly deny Defendants' motion.

### 7. Defendants' Seventh Motion in Limine

Defendants argue that Plaintiffs should be precluded from offering any

evidence that Bruce Mapley, Sr. went on to abuse other children after he stopped

abusing Plaintiffs.  Defs.' Br. at 18.  Rule 404 allows admission of evidence of

other crimes, wrongs, and acts for "another purpose, such as proving motive,

opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or

lack of accident."  Fed. R. Evid. 404(b)(2).[6]  Rule 404's "another purpose" list is

not exhaustive; impeachment and punitive damages are permitted purposes.  *Gay*,

967 F.2d at 328.  When assessing the extent of the wrongdoing of not reporting

Bruce Mapley, Sr. to authorities on the punitive damages issue, the jury should

know that he went on to molest other Jehovah's Witnesses children after the abuse

at issue in this case.  Moreover, Bruce Mapley, Sr. was never deposed in this case;

Plaintiffs accordingly cannot clearly anticipate how Rule 404 evidence may

become admissible if he testifies at trial.

Additionally, pursuant to the Montana statute reviving Plaintiffs' claims,

Plaintiffs are required to show that Defendants were on notice of the abuse and

---

[6] Plaintiffs will make themselves available if the Court wants to conduct a pretrial
evidentiary hearing on these matters.

failed "to take reasonable steps to prevent future acts of unlawful sexual conduct." Mont. Code Ann. 27-2-216(5)(a) (2019).  The fact Bruce Mapley, Sr. went on to abuse other Jehovah's Witnesses children is evidence Defendants did not take reasonable steps to prevent future abuse.  As such, if the Court does not outright deny Defendants' motion, it should reserve its ruling for trial.

### 8. Defendants' Eighth Motion in Limine

Defendants argue that Karla Klessens' "deposition testimony should be excluded about things she allegedly overheard decades ago when she was a young child."  Defs.' Br at 19.  As a threshold matter, designations, and objections to the use of deposition testimony at trial are governed by the Court's pretrial procedure. Sched. Order at 7, ECF No. 286.  But in this motion, Defendants only cite one page of deposition testimony they assert is inadmissible.  Neither Plaintiffs nor the Court should be required to comb through an entire deposition transcript and guess what else Defendants are referring to, that is why the Court's pretrial procedure requires specific objections.  As such, Plaintiffs address the one page of Klessens' deposition that Defendants cite to:

```
15 Q. Do you know if the Elders of the Hardin
16 Congregation reported it to anyone?
17 A. I know they were waiting for word back
18 from New York for discipline. When I was four, I
19 remember them not knowing how they were going to
20 take -- or handle it. I know that he had to wait
21 for a week or whatever for -- that was one of the
22 things that he was upset about, you know. Because
```

23 it hadn't been very long that they had made him an
24 Elder, and then had to take that away, so -- but I
25 know -- I know that they did get ahold of New York.

1 Q. And how do you know that?
2 A. Because I remember mom talking about it,
3 about them waiting to see how they were going to
4 handle it. I remember Gunnar sitting down and
5 telling us that this is -- you know, we had to
6 wait. Because for him to be an Elder, he was -- it
7 was something that he made a big deal of in the
8 house, you know, all proud of it and everything.
9 So when they took it, it was something that he made
10 a point to let us girls know that, you know, he
11 wasn't happy, he wasn't -- he worked for a long
12 time to become an Elder, and that just didn't --
13 that little bit of talking out of my mouth, that he
14 lost that. So the guilt that he tried to put, it's
15 just something that sticks out.

Klessens Dep. at 34:15–35:15, ECF No. 416-4.  Defendants do not identify

specifically what they contend is hearsay, but presumably, they mean Klessens'

mother talking "about them waiting to see how they were going to handle it" and

Gunnar Hain telling her "we had to wait" and "he wasn't happy, he wasn't he

worked for a long time to become an Elder, and that just didn't -- that little bit of

talking out of my mouth, that he lost that."  As to her mother's statement, this

would not be offered to prove the matter asserted, that is, that they waited to see

how Gunnar's sexual child abuse would be handled.  Rather, it would be asserted

to prove Defendants had notice of the abuse.  It is thus not hearsay.  Fed. R. Evid.

801.

As to Gunnar's statement, it too would not be asserted to prove that he was unhappy, that he worked a long time to become an elder, or that he lost his position. Rather, it would be asserted to prove Defendant had notice of the abuse. It is thus not hearsay. Fed. R. Evid. 801. Even if considered hearsay, Gunnar is deceased, and thus the exceptions in Rule 804 apply. Specifically, Gunnar's statement that he lost his position as Elder is a statement against interest. Fed. R. Evid. 804(3). Further, his statement that he was unhappy is a present sense impression and thus admissible. Fed. R. Evid. 803(1). Additionally, if the Court agrees with Plaintiffs and rules the elders in Hardin were Defendants' agents, then Gunnar's statement is the admission of a party opponent and not hearsay. Fed. R. Evid. 801(d)(2).

More broadly, Klessens is expected to be called as a live witness at trial, and Plaintiffs do not intend to offer her deposition testimony in lieu of live testimony. Rather than completely bar her testimony based on Defendants' vague, unreasoned motion, the Court should evaluate her testimony live at trial. Indeed, if Defendants make specific objections at trial, it is very likely those objections can be overcome by establishing the circumstances and basis for Klessens' testimony as Plaintiffs did above for the one page of testimony Defendants cited to.

In a footnote, Defendants go on to argue that Klessens' testimony should be excluded because they allege it is unreliable. They cite nothing that would permit

the Court to exclude her testimony on that basis.  The jury will ultimately decide whether to believe her and every other witness.  *See* 9th Cir. MJI 1.14; *see also* MPI2d 1.02.  Defendants can argue to the jury that Klessens is unreliable, but usurping the jury's role to determine credibility based on nothing but a legally unsupported footnote is clearly improper.

### 9. Defendants' Ninth Motion in Limine

Defendants' motion seeks to completely exclude a potential witness, Mark O'Donnell, from testifying.  This is not a proper motion in limine.  Defendants go on to summarily argue his testimony is prohibited by the First Amendment and declare "much or even all of his testimony is rampant hearsay" without identifying a single piece of testimony that fits either of these categories.  It is plainly improper to completely prohibit a witness from testifying without even identifying the testimony that a witness has to offer.  The Court should deny Defendants' motion, and if Plaintiffs call Mark O'Donnell as a witness, Defendants can object at trial to specific areas of inquiry, or questions and the Court can assess those objections specifically.

### 10. Defendants Tenth Motion in Limine

Plaintiffs object to Defendants' nebulous, overbroad motion in limine seeking to prevent Plaintiffs from mentioning community safety or from considering community standards.  The admissibility of evidence at trial is

determined by the rules of evidence, as well as relevant statutes and case law.

Essentially, the motion attempts to muzzle Plaintiffs' counsel completely before

the trial even begins.

### A. Motions in limine are intended to establish the admissibility of specific evidence, not limit trial strategy.

Motions in limine serve a limited purpose: "[a] pretrial request that certain

inadmissible evidence not be referred to or offered at trial." *Black's Law*

*Dictionary*, 1109 (9th ed. 2009).   Evidence is excluded under a motion in limine

"only when evidence is clearly inadmissible on all potential grounds." *Hawthorne*

*Partners v. AT&T Technologies, Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993)

(citing *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984)).  Indeed, *Hawthorne*

*Partners* explains the proper function such motions play in a pre-trial setting:

> Unless evidence meets this high standard, evidentiary rulings should
> be deferred until trial so that questions of foundation, relevancy and
> potential prejudice may be resolved in proper context. Denial of a
> motion *in limine* does not necessarily mean that all evidence
> contemplated by the motion will be admitted at trial. Denial merely
> means that without the context of trial, the court is unable to
> determine whether the evidence in question should be excluded.

*Id.* at 1400–01 (citations omitted).  "Evidentiary rulings made by a trial court

during motions in limine are preliminary and may change depending on what

actually happens at trial." *Walzer v. St. Joseph State Hospital*, 231 F.3d 1108,

1113 (8th Cir. 2000) (citing *Luce*, 469 U.S. at 41).  Moreover, motions in limine

are not intended to be used to limit trial strategy:

> The motion [in limine] is a useful tool, but care must be exercised to
> avoid indiscriminate application of it lest parties be prevented from
> even trying to prove their contentions. That a plaintiff may have a thin
> case or a defendant a tenuous defense is ordinarily insufficient
> justification for prohibiting such party from trying to establish the
> contention. Nor should a party ordinarily be required to try a case or
> defense twice – once outside the jury's presence to satisfy the trial
> court of its sufficiency and then again before the jury.

*Lewis v. Buena Vista Mutual Ins. Ass'n.*, 183 N.W.2d 198, 200–01 (Iowa

1971).  Defendants fail to demonstrate any specific evidence is

inadmissible.  Instead, they seek to summarize for the Court a purported trial

strategy set forth in a book and prevent Plaintiffs' counsel from using that

technique or strategy.

Broad and generic motions in limine may seem innocuous, but their strategic

value is great for the moving party.  Such motions add additional steps to a trial

that the rules of evidence never contemplated.  The proper function of a motion in

limine is to present "questions of evidence admissibility" for determination in

advance.  *Uptain v. Huntington Labs, Inc.*, 723 P.2d 1322, 1330 (Colo. 1986).  Just

as important, rulings on broad and generic motions seeking to "'exclude broad

categories of evidence should rarely be employed.  A better practice is to deal with

questions of admissibility of evidence as they arise.'"  *Anderson v. Merit Energy

Co.*, 2009 WL 1384098, * 1 (D. Colo. May 13, 2009) (quoting *Sperberg v.

Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975)); *Minden v.

Allstate Prop. and Cas. Ins. Co.*, No. 2:21-CV-00151-APG-BNW, 2024 WL

2848975, at *3 (D. Nev. June 5, 2024) ["t]he universe of objectionable phrasings is expansive, and I will not now endeavor to decide matters that require the benefit of verbatim analysis and context to be properly considered").

Broad "Reptile" motions in limine are routinely denied by courts in this district, including this Court, for being vague and overbroad. *Zrowka v. BNSF Ry. Co.*, No. CV-21-61-GF-BMM, 2023 WL 3412465, at *4 (D. Mont. May 12, 2023) ("The Court will not categorically prohibit a trial strategy, particularly without any evidence or examples of how such a theory is likely to arise."); *Agan v. BNSF Ry. Co.*, No. CV 19-83-BLG-SPW, 2022 WL 3700052, at *4 (D. Mont. Aug. 26, 2022) ("The Court will not categorically prohibit a trial strategy, particularly without any evidence or examples of how such a theory is likely to arise. The motion is denied as to the 'reptile theory.'"); *Walden v. Maryland Cas. Co.*, No. CV 13-222-M-DLC, 2018 WL 6445549, at *3 (D. Mont. Dec. 10, 2018) ("The Court will not categorically prohibit a form of trial strategy, particularly given the absence of any reason to believe that reptile theory is likely to rear its head here (or that the Court would be able to identify it if it did).")

Defendants' motion does not target any specific evidence but instead targets a trial strategy.  Trial strategy is not evidence and not a proper subject for a motion in limine.  Defendants should not be allowed to improperly manipulate Plaintiffs' trial strategies.

### B.  Nothing in Plaintiffs' trial strategy violates the "Golden Rule."

A Golden Rule argument is one that asks the jury to put themselves into the shoes of the plaintiff (or victim in a criminal case).  For example, asking the jury what they would accept as payment for suffering the damages a party has suffered.

The Tenth Circuit has aptly articulated that the Golden Rule argument is improper when it is used with respect to damages.  *Shultz v. Rice,* 809 F.2d 643, 651-52 (10th Cir. 1986).  Conversely, Golden Rule arguments are not improper "when urged on the issue of ultimate liability."  *Id.* at 652 (quoting *Stokes v. Delcambre,* 710 F.2d 1120, 1128 (5th Cir.1983)) (internal quotation marks omitted).  Indeed, the majority of circuit courts prohibit Golden Rule arguments on the issue of damages only.[7]  *See e.g., Johnson v. Celotex Corp.*, 899 F.2d 1281, 1289 (2d Cir. 1990); *Stokes,* 710 F.2d at 1128; *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1071 n.3 (11th Cir. 1996).  The prohibition against Golden Rule arguments properly applies only to arguments intended to inflate a jury's award of damages; the prohibition does not apply to arguments relating to the reasonableness of a party's conduct.

This present action is, no doubt, difficult for Defendants to defend.  Having undertaken the responsibility to handle reports of child sexual abuse occurring at local congregations but failing to even attempt to prevent them or at a minimum

---

[7] The Ninth Circuit has never expressly addressed the issue.

refer the perpetrators to secular authorities as required by Montana law is difficult to justify. An appeal to the jury to find violations of Defendants' duties—that is, to find for Plaintiffs on liability—is not an appeal to juror self-interest, except in the most attenuated sense that organizations which conduct themselves foremost to protect their member's children instead of a child molesters will benefit the entire community. The argument does not promise to lower a juror's taxes; it does not threaten to increase municipal services; it does not promise any direct benefit to any particular juror; it certainly does not ask the jurors to put themselves in the shoes of Plaintiffs. Rather, the argument is an appeal to the jury to be the conscience of the community and articulate, through its verdict, that reasonable conduct—what a reasonable organization with knowledge that some of its members are sexually abusing children—is that which places primary emphasis on child safety. Defendants and their counsel may disagree with that argument; they may believe it is unreasonable or unworkable. But that does not make the argument unlawful.

Counsel for Plaintiffs is well aware of the limits of permissible argument to the jury. In addressing the jury in the final argument during trial, counsel for Plaintiffs will not request that the jurors place themselves in the shoes of Plaintiffs or ask themselves what sum they would "charge" to undergo what Plaintiffs experienced. The Golden Rule prohibition cannot be rationally stretched to

include arguments about the unreasonableness of the Defendants' choices, even if the implications of that argument are that, with different choices, the community will be safer.

### C. Conclusion

"Only the most persuasive reasons justify handcuffing attorneys in the exercise of their advocacy within the bounds of propriety." *Beagle v. Vasold*, 65 Cal.2d 166, 181 (1966).  Defendants have, in effect, requested this Court rule in a vacuum without hearing or seeing Plaintiffs' evidence or argument.  Thus, at best, Defendants' motion is premature, overbroad, and inappropriate.  Instead, objections should be made at trial if Defendants feel that improper arguments are made.  As it stands, however, Defendants' motion is an improper attempt to limit Plaintiffs' case and trial strategy in this matter without basis in the law.

DATED this 28th day of June, 2024.

By: /s/ Ryan Shaffer
     Ryan R. Shaffer
     MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(d)(2), Plaintiff hereby certifies that this brief complies with the length requirement for briefs, and that this brief contains 6,152 words, excluding the caption, certificates of service, and compliance, table of contents, and authorities, and exhibit index.

By: /s/ Ryan Shaffer
     Ryan R. Shaffer
     MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 1.4, this document has been served on all parties via electronic service through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

By: /s/ Ryan Shaffer
     Ryan R. Shaffer
     MEYER, SHAFFER & STEPANS PLLP

*Attorneys for Plaintiffs*